IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SMARTMATIC USA CORP., *et al.*, | |
| Plaintiffs, | No. 1:21-cv-02900-CJN |
| v. | |
| HERRING NETWORKS, INC., | Judge Carl J. Nichols |
| Defendant. | **ORAL ARGUMENT REQUESTED** |

**<u>DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS OR TRANSFER</u>**

**<u>TABLE OF CONTENTS</u>**

**Page**

I.     INTRODUCTION ........................................................................................... 1

II.    ARGUMENT .................................................................................................. 2

    A.     The newsgathering exception to personal jurisdiction is dispositive.................... 2

    B.     Even if the newsgathering exception did not apply, Smartmatic's allegations asserted for the first time in the Opposition but not in the Complaint relate only to general jurisdiction, an argument Smartmatic has waived............................................................................................................ 9

    C.     Smartmatic also has not established specific personal jurisdiction .................... 10

        1.     Smartmatic has not adequately pled that OAN has transacted business in this District for the purposes of specific personal jurisdiction ........................................................................................ 11

        2.     Smartmatic has not adequately pled that OAN has caused tortious injury to Smartmatic in this District as a result of actions in this District........................................................................................... 12

        3.     Smartmatic has not adequately pled that OAN has caused tortious injury to Smartmatic in this District as a result of actions outside this District........................................................................................... 17

        4.     The exercise of personal jurisdiction would not comport with due process........................................................................................... 20

    D.     Venue also is improper in this District ............................................................ 22

III.   CONCLUSION.............................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Akbar v. Bangash*,
2017 WL 4334912 (E.D. Mich. July 11, 2017) ..................................................8

*Allen v. Russian Federation*,
522 F. Supp. 2d 167 (D.D.C. 2007) ...............................................................10

*Amr v. Virginia*,
58 F. Supp. 3d 27 (D.D.C. 2014) ....................................................................6

*Ashhab-Jones v. Cherokee Nation Strategic Programs, LLC*,
2020 WL 6262090 (D.D.C. October 23, 2020) ...............................................11

*Badillo v. City of Stockton, Cal.*,
956 F.2d 884 (9th Cir. 1992) .........................................................................19

*Bastin v. Federal Nat. Mortg. Ass'n*,
104 F.3d 1392 (D.C. Cir. 1997) .....................................................................22

*Bellinger v. Bowser*,
2018 WL 4705808 (D.D.C. Sept. 30, 2018) ...................................................19

*Bristol-Myers Squibb Co. v. Super. Ct.*,
137 S. Ct. 1773 (2017) ..................................................................................21

*\* Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ..........................................................................20, 21, 22

*Calder v. Jones*,
465 U.S. 783 (1984) ......................................................................................15

*Church of Scientology v. Adams*,
584 F.2d 893 (9th Cir. 1978) ...........................................................................8

*Corsi v. Caputo*,
2020 WL 1703934 (D.D.C. 2020) .................................................................16

*Corsi v. Stone*,
2020 WL 999053 (D.D.C. March 1, 2020) .....................................................23

*\* Crane v. Carr*,
814 F.2d 758 (D.C. Cir. 1987) ..................................................................17, 19

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Crane v. New York Zoological Soc.*,
   894 F.2d 454 (D.C. Cir. 1990) ........................................................................15

*Davis v. Town of Riverhead*,
   2022 WL 939739 (E.D.N.Y. Mar. 29, 2022) ...................................................19

*Dickerson v. Novartis Corp.*,
   315 F.R.D. 18 (S.D.N.Y. 2016) ......................................................................14

*Dist. Title v. Warren*,
   2015 WL 12964657 (D.D.C. June 1, 2015) .....................................................18

* *Doe v. Roman Cath. Diocese of Greensburg*,
   2022 WL 203455 (D.D.C. Jan. 24, 2022) ....................................................7, 14

*Dole Food Co., et al. v. Patrickson, et al.*,
   538 U.S. 468 (2003) .......................................................................................10

* *FC Inv. Grp. LC v. IFX Mkts., Ltd.*,
   529 F.3d 1087 (D.C. Cir. 2008) ..................................................................18, 22

* *Groop Internet Platform Inc. v. Psychotherapy Action Network ("PsiAN")*,
   2020 WL 353861 (D.D.C. Jan. 21, 2020) ................................................ *passim*

*Helmer v. Doletskaya*,
   393 F.3d 201 (D.C. Cir. 2004) .......................................................................11

*Holder v. Haarmann & Reimer Corp.*,
   779 A.2d 264 (D.C. 2001) ..............................................................................12

*Hurd v. District of Columbia*,
   864 F.3d 671 (D.C. Cir. 2017) .........................................................................8

*IMAPizza, LLC v. At Pizza Ltd.*,
   334 F. Supp. 3d 95 (D.D.C. 2018) ..................................................................12

*J. McIntyre Mach., Ltd. v. Nicastro*,
   564 U.S. 873 (2011) .........................................................................................4

*Johnson v. BAE Sys.*,
   2012 WL 13055684 (D.D.C. 2012) .................................................................16

*Lapointe v. Van Note*,
   2004 WL 3609346 (D.D.C. Nov. 9, 2004) .......................................................15

**TABLE OF AUTHORITIES**
(continued)

Page

* *Lewy v. Southern Poverty Law Center, Inc.*,
    723 F. Supp. 2d 116 (D.D.C. 2010) ..................................................................4, 5, 6

*Lohrenz v. Donnelly*,
    958 F. Supp. 17 (D.D.C. 1997) ...............................................................................3

*Margoles v. Johns*,
    483 F.2d 1212 (D.C. Cir. 1973) ..............................................................................2

*McFarlane v. Esquire Magazine*,
    1994 WL 510088 (D.D.C. June 8, 1994) ...............................................................15

*McIntosh v. Gilley*,
    753 F. Supp. 2d 46 (D.D.C. 2010) .........................................................................18

* *Moncrief v. Lexington Herald–Leader Co.*,
    807 F.2d 217 (D.C. Cir. 1986) ..........................................................................2, 18

*Neely v. Phila. Inquirer Co.*,
    62 F.2d 873 (D.C. Cir. 1932) ..................................................................................3

*Noonan v. Winston Co.*,
    902 F. Supp. 298 (D. Mass. 1995) ........................................................................15

*Nunes v. Cable News Network, Inc.*,
    520 F. Supp. 3d 549 (S.D.N.Y. 2021) ...................................................................14

*Nunes v. WP Company LLC*,
    2021 WL 3550896 (D.D.C. Aug. 11, 2021) ..........................................................14

*Protegrity Corp. v. TokenEx, LLC*,
    2015 WL 222163 (D. Conn. Jan. 14, 2015) .............................................................8

*Quality Air Servs., L.L.C. v. Milwaukee Valve Co.*,
    567 F. Supp. 2d 96 (D.D.C. 2008) .........................................................................11

* *Shirlington Limousine and Transp., Inc. v. San Diego Union-Tribune*,
    566 F. Supp. 2d 1 (D.D.C. 2008) .............................................................................3

*Shoppers Food Warehouse v. Moreno*,
    746 A.2d 320 (D.C. 2000) .....................................................................................11

*Smartmatic USA Corp., et al. v. Fox Corporation, et al.*,
    Case No. 151136/2021 (Supreme Court of the State of New York) .......................25

**TABLE OF AUTHORITIES**
(continued)

Page

*The Urb. Inst. v. FINCON Servs.*,
    681 F. Supp. 2d 41 (D.D.C. 2010) ........................................................18

*U.S. v. Philip Morris Inc.*,
    116 F. Supp. 2d 116 (D.D.C. 2000) ......................................................6

*University of Colorado Health v. Azar*,
    486 F. Supp. 3d 185 (D.D.C. 2020) ......................................................7

* *US Dominion, Inc. v. Powell*,
    554 F. Supp. 3d 42 (D.D.C. 2021) ............................................... *passim*

* *Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ....................................................................13, 21

*Wilson v. Wilson*,
    785 A.2d 647 (D.C. 2001) ...................................................................11

**Statutes**

28 U.S.C. § 1391(b)(2) ................................................................................23

D.C. Code § 13-423 ............................................................................ *passim*

U.S. CONST. art. I, § 4, cl. 1 .......................................................................16

**Other Sources**

4 C. Wright & A. Miller, Fed. Prac. & Proc. § 1051 (3d ed.) .....................10

5B C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 1351 (3d ed.) ............7

District of Columbia Board of Elections General Election 2020 Certified Results,
    available at https://electionresults.dcboe.org/election_results/2020-General-
    Election (last visited May 19, 2022) .....................................................19

https://www.linkedin.com/in/elma-aksalic-9aba87109/ (last visited May 19, 2022) ...................14

Remarks by President Trump at the 2020 Conservative Political Action
    Conference | National Harbor, MD, available at
    https://trumpwhitehouse.archives.gov/briefings-statements/remarks-president-
    trump-2020-conservative-political-action-conference-national-harbor-md/
    (last visited May 19, 2022) .....................................................................8

**<u>TABLE OF AUTHORITIES</u>**
(continued)

**Page**

September 23, 2014 Press Release, available at
https://web.archive.org/web/20150322154643/http://www.oann.com/one-america-news-network-announces-official-cable-network-sponsorship-black-conservative-summit-2014/ (last visited May 19, 2022) ..........................................................7

U.S. Census Bureau Table 2, Resident Population for the 50 States, the District of
Columbia, and Puerto Rico: 2020 Census, available at
https://www.census.gov/data/tables/2020/dec/2020-apportionment-data.html
(last visited May 19, 2022) .........................................................................................19

I.      **Introduction**

The opposition filed by Smartmatic relies largely on the unremarkable fact that defendant Herring Networks, Inc., d/b/a One America News Network ("OAN"), has a news bureau and reporters in this District, covering events in the District.  But that is not enough to establish specific personal jurisdiction, and the newsgathering exception to personal jurisdiction is dispositive. Smartmatic tries to manufacture a causal link between this case and this District, but Smartmatic can point only to years-old press releases and events, none of which has anything to do with the claims at issue in this case.

Although Smartmatic does not explain why it chose to file in this District, rather than in OAN's home district (like Smartmatic did when suing Fox News),[1] it appears Smartmatic chose this District because anti-SLAPP relief is unavailable under current precedent and because Dominion Voting Systems ("Dominion") has sued OAN here.  OAN has sought dismissal, stay, or transfer of Dominion's claims, and Smartmatic lacks a basis to proceed in this District for similar reasons.

The Complaint fails to adequately allege personal jurisdiction over OAN and fails to justify venue in this District.  Accordingly, the case should be dismissed for failure to adequately plead personal jurisdiction.  Alternatively, the case should be transferred to the U.S. Southern District of California based on improper venue in this District.  Regardless, there is no basis for this case to be litigated in Washington, D.C.

---

[1] *See* Motion, p. 13 (noting that Smartmatic sued Fox News in New York, rather than this District, despite Fox News's having a Washington, D.C. bureau).

II.     **Argument**

A.     **The newsgathering exception to personal jurisdiction is dispositive.**

Precedent plainly establishes that if newsgathering activities in this District are the only contacts related to the claims at issue, the exercise of personal jurisdiction here is inappropriate. *See Moncrief v. Lexington Herald–Leader Co.*, 807 F.2d 217, 222 (D.C. Cir. 1986) (applying the newsgathering exception to newsgathering organizations "whose only persistent course of conduct in the District is the maintenance of an office there for gathering news"). There is no dispute that OAN is a news organization based in California and broadcasts exclusively from California (Motion, p. 14), with a bureau located in Washington, D.C. Thus, regardless of the allegations Smartmatic has made related to personal jurisdiction (as set forth *infra* pp. 9-22, those allegations are deficient), the Complaint makes clear that the newsgathering exception applies and is dispositive.

In the Opposition,[2] Smartmatic tries to narrow the newsgathering exception, arguing that it applies only to one prong (the fourth) of the D.C. long-arm statute. (Opp., pp. 9-10, 19-24; D.C. Code § 13-423(a)(1), (3)-(4)). But Smartmatic is incorrect because multiple courts — including those cited by Smartmatic — have analyzed the newsgathering exception under other prongs. For example, in *Moncrief*, a case cited repeatedly by Smartmatic (including for the proposition that "the newsgathering exception applies only to subsection (a)(4)" (Opp., p. 20)), the court specifically addressed Sections (a)(3) and (a)(4) of the D.C. long-arm statute in finding that it lacked personal jurisdiction, 807 F.2d at 76, and addressed Section (a)(1) in *dicta*. *Id.* at n.9. Also cited by Smartmatic (Opp., p. 20), *Margoles v. Johns* analyzed Sections (a)(3) and (a)(4). 483 F.2d

_____

[2] Opposition to Defendant's Motion to Dismiss or Transfer (ECF No. 22, the "Opposition" or "Opp.").

1212, 1214, 1221-22 (D.C. Cir. 1973).  Nothing in these cases suggests that application of the newsgathering exception is limited to Section (a)(4).  *See also Shirlington Limousine and Transp., Inc. v. San Diego Union-Tribune*, 566 F. Supp. 2d 1, 4 (D.D.C. 2008) (citing Sections (a)(1), (a)(3), and (a)(4) of the D.C. long-arm statute in finding personal jurisdiction lacking and holding that the exception "expressly applied to Section 13-423," which is the ***entire*** long-arm statute); *Lohrenz v. Donnelly*, 958 F. Supp. 17, 18 (D.D.C. 1997), (specifically addressing the newsgathering exception in the context of the "transacting business" standard under Section (a)(1)).

Because Smartmatic has not identified contacts related to the claims at issue that go beyond OAN's newsgathering activities — and certainly has not identified any "persistent course of conduct" relating to the claims other than newsgathering — the newsgathering exception applies.

Smartmatic also argues, without citation to any supporting authority, that operating a television news bureau in Washington, D.C., is fundamentally different from a newspaper's operating a bureau in the District.  But there is no principled argument for this distinction — OAN reporters, just like newspaper reporters, radio reporters, and reporters from any other medium, have been drawn to this District because it is the hub of national news, not because they are specifically targeting or servicing the Washington, D.C. market.[3]  *See Neely v. Phila. Inquirer Co*., 62 F.2d 873, 875 (D.C. Cir. 1932) ("As the seat of national government, Washington is the source of much news of national importance, which makes it desirable in the public interest that many newspapers should maintain vigilant correspondents here.  If the employment of a Washington correspondent, the announcement of his address, and the payment of his office rent, subjects a nonresident newspaper corporation to legal process in Washington for matter appearing in its paper

---

[3] Notably, Smartmatic drastically overstates the size of the Washington, D.C. market and thus the potential revenue available from this market.  *See infra* pp. 18-19.

at home, it would bring in nearly every important newspaper in the nation, and many foreign publishing corporations, which in our opinion the present statute does not do.").  If accepted, Smartmatic's argument that the newsgathering exception does not apply to  "national television programs" would lead to universal jurisdiction for any outlet that publishes nationally, and universal jurisdiction has been squarely rejected by the U.S. Supreme Court.  *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011).

At oral argument on OAN's dismissal motion in the *Dominion* case on April 20, 2022, Dominion's counsel pointed to *Lewy v. Southern Poverty Law Center, Inc*., 723 F. Supp. 2d 116 (D.D.C. 2010) — a case cited throughout the Opposition as a key authority — as a case that should guide the Court's interpretation of the newsgathering exception.  But *Lewy* is irrelevant here because defendant Southern Poverty Law Center's ("SPLC") conduct directed at this District far exceeded newsgathering, and the facts of the two cases are materially distinct in numerous respects.  The chart below compares the facts in *Lewy* to the facts in this case.

| **SPLC** | **OAN** |
|---|---|
| SPLC is not a traditional news outlet. | OAN is a "for-profit cable news channel." (Compl. ¶ 14). |
| SPLC's core function in the District was not newsgathering.  The quarterly publications at issue were ancillary to the mission of the SPLC. | OAN is a "for-profit cable news channel." (Compl. ¶ 14). |
| "SPLC created a network of contacts in the District of Columbia through its website." *Lewy*, 723 F. Supp. 2d at 126. | Smartmatic has not alleged that OAN created a comparable "network of contacts." |
| SPLC was sued by a resident of this District. *Lewy*, 723 F. Supp. 2d at 119. | OAN was sued by plaintiffs whose citizenship is in Florida.  (Compl. ¶ 10). |

| **SPLC** | **OAN** |
|---|---|
| "SPLC staff members have participated in conferences and training programs in the District of Columbia." *Lewy*, 723 F. Supp. 2d at 121. | Smartmatic has not alleged that OAN engaged in comparable participation or training. |
| "SPLC also monitors hate groups in the District of Columbia." *Id.* | Smartmatic has not alleged that OAN is focused on any groups in this District other than news reporting on elected officials. |
| SPLC regularly solicited existing D.C. donors to renew membership to the SPLC and donate more funds. *Id.* at 120-121. | Smartmatic has not alleged that OAN solicits donations from anyone in this District. |
| SPLC made solicitations by mail to individuals and organizations in this District. *Id.* at 121. | Smartmatic has not alleged that OAN sent mailed solicitations (or any other form of solicitations) to residents of this District. |
| "[O]ne of SPLC's Board members resides in D.C." *Id.* | Smartmatic has not alleged that any of OAN's corporate officers reside in this District. |
| "SPLC distributed 12,075 copies of Teaching Tolerance in the District of Columbia. . . . SPLC has also distributed teaching materials (such as handbooks, videos, and learning kits) to educational institutions in the District." *Id.* | Smartmatic has not alleged that OAN distributed any teaching materials in this District. |
| "SPLC awarded two teaching grants to individuals or organizations in the District of Columbia between 2000 and 2008." *Id.* | Smartmatic has not alleged that OAN awarded teaching grants in this District. |

Based on the SPLC facts — which are clearly distinguishable from this case — the court in *Lewy* held that the SPLC had engaged in a "persistent course of conduct" in the District of Columbia pursuant to Section (a)(4) of the long-arm statute. *Id.* at 128. Notably, however, the same court **_granted_** dismissal to individual defendant David Holthouse, reasoning that even though he (1) made a telephone call to an individual in the District while researching his article; (2) had occasionally written articles for national publications distributed in the District; (3) and traveled

to the District four times leading up to publication of the article, this was ***not*** a "persistent course of conduct." *Id.* at 129.

As reflected in the chart above, OAN is materially different from the SPLC because OAN is a news outlet, and Smartmatic has made no effort to allege that OAN engaged in any of the "persistent course of conduct" that led to a finding of jurisdiction over SPLC.  OAN broadcasts its news segments nationwide via a satellite dish in San Diego and does not have contacts with D.C. other than its newsgathering ties to the District.  And although the court in *Lewy* considered SPLC's newsgathering efforts in D.C. as a part of the personal jurisdiction analysis, the court specifically found that SPLC's limited newsgathering contacts were ***not*** determinative of the court's jurisdiction over SPLC — rather, SPLC's numerous other contacts in D.C. created an independent jurisdictional basis.  *Id*. at 127.

To the extent the alleged "persistent" activities are not alleged in the Complaint but rather presented for the first time in the Opposition, they should be disregarded because OAN has challenged whether Smartmatic has ***pled*** a *prima facie* case of personal jurisdiction.  *See  Amr v. Virginia*, 58 F. Supp. 3d 27, 34 (D.D.C. 2014) ("A plaintiff must ***plead*** specific facts providing a basis for personal jurisdiction.") (emphasis added) (citations omitted).  And that *prima facie* case requires "specific factual allegations connecting each defendant to the forum."  *Groop Internet Platform Inc. v. Psychotherapy Action Network ("PsiAN")*, 2020 WL 353861, *3 (D.D.C. Jan. 21, 2020) (granting dismissal for lack of personal jurisdiction even where plaintiffs were located in the District).

Regardless, Smartmatic's alleged "contacts" giving rise to jurisdiction are incorrect, misleading, and/or many years old, and none of them has any connection to the claims in this case. *See U.S. v. Philip Morris Inc.*, 116 F. Supp. 2d 116, n. 4 (D.D.C. 2000) ("In determining whether

a plaintiff has demonstrated that the defendant's contacts with the forum suffice to justify the exercise of personal jurisdiction . . . 'the Court is no longer bound to treat all of plaintiff's allegations as true.'"); 5B C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 1351 (3d ed.) ("The court may receive and weigh the contents of affidavits and any other relevant matter submitted by the parties to assist it in determining the jurisdictional facts."); *see also Groop*, 2020 WL 353861 at *4 (holding that the Court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts").

First, Smartmatic argues that OAN's past lease agreement with *The Washington Times* is material. *See, e.g.,* Opp., p. 3. But there is no "relationship" with *The Washington Times*, and any contacts between the two ceased nearly eight years ago. "OAN's relationship with [*The Washington Times*], . . . was limited to a lease space arrangement."[4] "While [OAN's] Washington, D.C. Bureau was previously located within the TWT building, OAN remains solely owned and operated, including all editorial control, by Herring Networks, Inc., an independent and family-owned national video programming company." *Id.* Certainly a lease for space that OAN has not occupied for nearly eight years does not have any connection to the claims in this case.[5]

---

[4]   *See* September 23, 2014 Press Release, available at https://web.archive.org/web/20150322154643/http://www.oann.com/one-america-news-network-announces-official-cable-network-sponsorship-black-conservative-summit-2014/ (last visited May 19, 2022). "The District Court is free to take judicial notice of publicly available documents as appropriate." *University of Colorado Health v. Azar*, 486 F. Supp. 3d 185 (D.D.C. 2020); *see also Doe v. Roman Cath. Diocese of Greensburg*, 2022 WL 203455, at *9 (D.D.C. Jan. 24, 2022) (considering judicially noticed Web site in deciding motion for lack of personal jurisdiction).

[5]   Smartmatic's reference to a "Press Relations Department" at "3600 New York Ave NE, Washington, D.C. 20002" (Opp., p. 4) also is inaccurate and misleading. The press release cited by Smartmatic addressed *The Washington Times* in the preceding paragraphs and thus included contact information for *The Washington Times*, not OAN. As for the press releases attached to the Opposition at Exhibits 7-10, they all list a **San Diego** phone number with an 858 area code as the point of contact. Thus, there was no "Public Relations Department" in Washington, D.C., and

Second, Smartmatic attempts to rely on advertisements for OAN and OAN sponsorships visible to D.C. audiences as a basis for specific personal jurisdiction.  (Opp., p. 23).  Once again, these promotions have nothing to do with the claims at issue in this case.  But even if that were not the case, nationwide advertising does not create personal jurisdiction in every jurisdiction where it is viewed.  *See, e.g., Akbar v. Bangash*, 2017 WL 4334912, *8 (E.D. Mich. July 11, 2017) (holding that "a nationally broadcast television commercial is nothing more than the sort 'passive availment' . . . that is insufficient to exercise personal jurisdiction"); *Protegrity Corp. v. TokenEx, LLC*, 2015 WL 222163 (D. Conn. Jan. 14, 2015) (holding that nationwide advertising, without any additional showing that it specifically targeted consumers in the state, is insufficient to demonstrate minimum contacts).  Moreover, courts have held that advertising is of no relevance to the jurisdictional inquiry when the plaintiff's claim did not arise out of the advertising.  *See Church of Scientology v. Adams,* 584 F.2d 893, 895 (9th Cir. 1978).  And with respect to CPAC, Smartmatic has referred to promotion of an event in ***Maryland***, which is not part of this District.[6]  Smartmatic similarly claims that OAN launched a "newly organized National White House Correspondents Association" (Opp., p. 18), but once again, this is false.  Smartmatic's own Exhibit

---

these press releases cannot reasonably be said to have been issued "from Washington, D.C." (Opp., p. 23).

[6] *See* Remarks by President Trump at the 2020 Conservative Political Action Conference | National Harbor, MD, available at https://trumpwhitehouse.archives.gov/briefings-statements/remarks-president-trump-2020-conservative-political-action-conference-national-harbor-md/ (last visited May 19, 2022) (recognizing that CPAC took place in National Harbor, Maryland); *Hurd v. District of Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017) (holding that the Court may "take judicial notice of 'a fact that is not subject to reasonable dispute' if it either 'is generally known within the trial court's territorial jurisdiction' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned'").

2 makes clear that OAN reporter Chanel "Rion founded the NWHCA **on her own initiative** in Delaware, April 2020." (emphasis added).[7]

Finally, OAN's alleged performance of its alleged obligations to AT&T, including lobbying work, hiring consultants, and meetings in D.C. (Opp., pp. 5-6), happened **almost six years ago** and is completely untethered to the claims at issue here.[8]  There is no legal support for the notion that meeting with individuals in this District years before the claims at issue in this case arose, about issues that have nothing to do with this case, gives rise to specific personal jurisdiction.  If the theory advocated by Smartmatic were the law, any business that conducted a meeting outside its home district would forever be subject to personal jurisdiction in that foreign district, no matter how much time had passed and no matter how unrelated that meeting was to the claims at issue.  That obviously is not the law, and the Court should disregard these so-called contacts in evaluating the newsgathering exception.  Because the only contacts with this District relevant to this case were newsgathering contacts, the exception applies and the case should be dismissed.

> **B.    Even if the newsgathering exception did not apply, Smartmatic's allegations asserted for the first time in the Opposition but not in the Complaint relate only to general jurisdiction, an argument Smartmatic has waived.**

Even if the newsgathering exception did not apply, Smartmatic still has not alleged in the Complaint — or even belatedly alleged in the Opposition — a *prima facie* case of personal jurisdiction.  Smartmatic admits it is not arguing for general jurisdiction over OAN.  (Opp., n. 1).  But Smartmatic has made a general jurisdiction argument wrapped in the guise of specific personal jurisdiction, asserting various alleged years-old, disparate "contacts" with the District and arguing

---

[7] These allegations were not in the Complaint.

[8] These allegations were not in the Complaint.

that "but for" these contacts, "there would be no OANN, no television studio, no defamatory broadcasts on DirecTV, and no claims." (Opp., p. 12). This is an extreme interpretation of "but for" causation that finds no support in the law. If this were the standard, any person would be subject to personal jurisdiction if the plaintiff could draw a causal link, however flimsy or attenuated, between the jurisdiction and the claims — i.e., a lawyer who has not lived in, practiced, or stepped foot in D.C. for 15 years since graduating from American University could be sued for malpractice in this District for actions occurring elsewhere because, "but for" earning her law degree, she never would have become a lawyer.

"Jurisdiction of the Court depends upon the state of things at the time of the action brought." *Dole Food Co., et al. v. Patrickson, et al.*, 538 U.S. 468, 474 (2003); *Allen v. Russian Federation*, 522 F. Supp. 2d 167, 194 (D.D.C. 2007) ("[P]ersonal jurisdiction contacts are determined at the time the initial complaint is filed."); 4 C. Wright & A. Miller, Fed. Prac. & Proc. § 1051 (3d ed.) (referring to the filing of a "lawsuit" as marking the point in time in which a court must consider "whether personal jurisdiction, diversity jurisdiction, and proper venue exist."). But the Opposition lists myriad past "contacts" (often inaccurately, as set forth above) to create a jurisdictional theory not recognized under the law.

### C.   Smartmatic also has not established specific personal jurisdiction.

Smartmatic claims both in the Complaint (¶ 18) and the Opposition that it has satisfied Sections (a)(1), (a)(3), and (a)(4) of the D.C. long-arm statute (Opp., pp. 9-10; D.C. Code § 13-423(a)(1), (3)-(4)), but Smartmatic fails to plead connections between any alleged "contacts" and the claims at issue. Thus, Smartmatic has not made a *prima facie* case of specific personal jurisdiction, and the Complaint should be dismissed.

      **1.**      **Smartmatic has not adequately pled that OAN has transacted business in this District for the purposes of specific personal jurisdiction.**

Section (a)(1) of the D.C. long-arm statute states that specific personal jurisdiction can exist as to "a claim for relief arising from the person's . . . transacting any business in the District of Columbia."   D.C. Code § 13-423(a)(1).   For specific personal jurisdiction, the business transactions must relate to the claims at issue.  *See* D.C. Code § 13-423(b) ("When jurisdiction over a person is based solely upon this section, ***only a claim for relief arising from acts enumerated in this section*** may be asserted against him.") (emphasis added); *see also Ashhab-Jones v. Cherokee Nation Strategic Programs, LLC,* 2020 WL 6262090, *6 (D.D.C. October 23, 2020) (Nichols, J.) ("To satisfy the 'transacting business' prong of the long-arm statute, a plaintiff must prove: 'First, that the defendant transacted business in the District of Columbia; second, that ***the claim arose from the business transacted in D.C.***; and third, that the defendant had minimum contacts with the District of Columbia.'") (emphasis added and internal citations omitted).

In fact, in each of the cases cited by Smartmatic, the contacts had a direct relationship with the claim.  *See Quality Air Servs., L.L.C. v. Milwaukee Valve Co*., 567 F. Supp. 2d 96, 100 (D.D.C. 2008) (the relevant contact occurred when the defendant shipped the product at issue in the product liability case into the District); *Helmer v. Doletskaya*, 393 F.3d 201, 206–07 (D.C. Cir. 2004) (the relevant contact occurred in connection with negotiating and performing the contract that was at issue in the litigation); *Shoppers Food Warehouse v. Moreno*, 746 A.2d 320, 330-32 (D.C. 2000) ("[T]he court may assert specific jurisdiction whenever the defendant has purposefully directed [its] activities at residents of the forum, . . . and the litigation [has] result[ed] from alleged injuries that ***arise out of or relate to those activities***.") (emphasis added and internal citations omitted); *Wilson v. Wilson*, 785 A.2d 647, 650 (D.C. 2001) (the claim related to property removed by the

defendant from an office in the District); *IMAPizza, LLC v. At Pizza Ltd.*, 334 F. Supp. 3d 95, 112 (D.D.C. 2018) ("Of course, it is not enough for [Plaintiff] to show that Defendants engaged in business transactions in the District.  It must also show that its claims 'aris[e] from' these business transactions.").  And notably, in *Holder v. Haarmann & Reimer Corp.*, 779 A.2d 264, 270-71 (D.C. 2001) — a case cited by Smartmatic — the court **upheld dismissal** for lack of personal jurisdiction because the expansive definition of "transacting business" advocated by the plaintiff would have amounted to jurisdiction "in every jurisdiction in this country, and even the world."

Here, the "transactions" alleged by Smartmatic all happened years before the statements giving rise to the claims in this case and had no relationship whatsoever to the claims at issue. *Supra* pp. 7-9.  Because these alleged transactions have no connection to the claims at issue, they are inadequate to establish specific personal jurisdiction.

> **2.   Smartmatic has not adequately pled that OAN has caused tortious injury to Smartmatic in this District as a result of actions in this District.**

Section (a)(3) of the D.C. long-arm statute states that specific personal jurisdiction can exist as to "causing tortious injury in the District of Columbia by an act or omission in the District of Columbia."  D.C. Code § 13-423(a)(3).   Critically, the Complaint specifically claims that the alleged harm done to Smartmatic by OAN was not the result of actions in this District but rather that "[t]he **general and widespread publication and distribution** of OANN's defamatory statements about Smartmatic were a substantial cause of a portion of this business valuation decline."  (Compl. ¶ 438) (emphasis added).  This alone should defeat Smartmatic's claim to specific personal jurisdiction as a result of purported actions and alleged harm wrought against Smartmatic in this District.

Smartmatic's argument that the statements at issue were made "in this District" because the third-party speakers were in this District and OAN "then published" those statements proceeds on multiple misstatements of fact. First, OAN does not "publish" any content in this District. Publication in the context of a television broadcast is tied to the location from which the broadcasting occurs, and in this case, that is California. (Motion, p. 14). Thus, this is a clear distinction from the *US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42, 67 (D.D.C. 2021), where this Court held that "[p]ersonal jurisdiction under § 13-423(a)(3) is proper under the Due Process Clause when, as here, the defendant is physically within the District when [it] took the alleged action." The claims in the *Powell* case are that ***individuals*** made defamatory statements while speaking this District. The claim in this case is that OAN ***broadcast*** defamatory statements of others — that broadcasting did not occur here. That the newsworthy speakers chose to speak from Washington, D.C., reflects no choice by OAN to create contacts with this District. *See Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (holding that in the personal jurisdiction analysis, it is "insufficient to rely on a defendant's 'random, fortuitous, or attenuated contacts'" with this District but rather the focus must be on "contacts that the 'defendant himself' creates with the forum State").

Second, Smartmatic claims that OAN made relevant statements in this District because it has reporters in this District. But despite the numerous statements that Smartmatic has placed at issue in this case, uttered by many different guests and on-air personnel, the Complaint and the Opposition identify only ***three*** OAN employees in connection with these statements that Smartmatic believes are located in Washington, D.C.: Elma Aksalic, John Hines, and Christina Bobb. (Opp., pp. 6-7; Compl., ¶¶ 87, 110, 127, 135, 147). As an initial matter, Smartmatic is simply wrong that Ms. Aksalic "broadcasts out of OANN's Washington, D.C. news bureau."

(Compl., ¶ 87).  Ms. Aksalic has been working out of OAN's San Diego headquarters since 2017.[9]
As for Mr. Hines, who does work out of the Washington, D.C. bureau, the Complaint does not
identify any statements made *by him* that Smartmatic claims to be defamatory — the Complaint
merely alleges that Mr. Hines interviewed subjects who made allegedly defamatory statements.
That Smartmatic would rely on that scenario for personal jurisdiction under Section (a)(3) is
perhaps the best example of why the newsgathering exception exists.  OAN, a California-based
broadcaster, stationed a reporter in Washington, D.C. because of the need to cover matters of
national importance, and when that reporter simply interviewed someone who made an allegedly
defamatory statement, the broadcaster was sued in Washington, D.C.  Even if the Court finds that
the newsgathering exception does not apply here, this patently unfair scenario could be avoided
by determining that this is not conduct "in this District" under Section (a)(3).

Moreover, even if Smartmatic's claims about where and how OAN published the
statements at issue were true (which they are not), OAN did not cause injury to Smartmatic *in this
District*.  In a defamation case where the publication occurs nationally, "the place of greatest harm
. . . is the district where the plaintiff was domiciled, absent strong countervailing circumstances."
*Nunes v. Cable News Network, Inc*., 520 F. Supp. 3d 549, 557 (S.D.N.Y. 2021); *see also Nunes v.
WP Company LLC*, 2021 WL 3550896, *7 (D.D.C. Aug. 11, 2021) (same); *Dickerson v. Novartis
Corp*., 315 F.R.D. 18, 31 (S.D.N.Y. 2016) (same).[10]  If Smartmatic is unwilling to sue OAN in the

---

[9] *See*  https://www.linkedin.com/in/elma-aksalic-9aba87109/ (last visited May 19, 2022).  *See
Cath. Diocese of Greensburg*, 2022 WL 203455 at *9 (considering judicially noticed Web site in
deciding motion for lack of personal jurisdiction).

[10] For these reasons, Washington, D.C. law will not apply in this case.  Smartmatic's counsel
similarly argued for application of D.C. law in another defamation case in this District, but the
court in *Groop* astutely called this a "fruitless attempt," finding that based on applicable choice of
law rules, New York law would apply to that dispute.  2020 WL 353861 at n. 2.

place where publication occurred, it is necessary to evaluate the "effects" of the statements.  *See Calder v. Jones,* 465 U.S. 783, 789-90 (1984).  Here, "the focal point both of the story and of the harm suffered," *id*., California, where Smartmatic had a contract to provide election services, or Florida, where Smartmatic is a citizen.[11]

Smartmatic cites a series of cases discussing the fact that injury can occur both where the allegedly defamatory statement is published and where the subject resides, but fails to properly apply that standard to the facts of this case.  Here, the statements at issue were published from California, and the alleged injury (if any) occurred in California, the only jurisdiction where Smartmatic had a contract to do election work during the 2020 election, or in Florida, where Smartmatic is a citizen.  Smartmatic's case law is consistent.  *See Crane v. New York Zoological Soc.*, 894 F.2d 454 (D.C. Cir. 1990) (finding personal jurisdiction over statement published in New York because harm occurred in D.C., ***where plaintiff resided***); *McFarlane v. Esquire Magazine*, 1994 WL 510088, at *4 (D.D.C. June 8, 1994) (finding personal jurisdiction over statement published in New York and distributed nationally because harm occurred in D.C., ***where plaintiff resided***).  And notably, in *Lapointe v. Van Note,* 2004 WL 3609346, at *6 (D.D.C. Nov. 9, 2004) — a case cited by Smartmatic — the court ***granted*** dismissal for lack of personal jurisdiction because it concluded that the defamatory statements at issue, while ultimately distributed in this District, were published from San Francisco.

---

[11] Additionally, even if there was an "effect" in this District, federal courts have held that "a defamatory 'effect' by itself is not sufficient to confer jurisdiction over a foreign defendant. Rather, to make a *prima facie* showing, the victim of the defamatory statement must demonstrate that its author intended the libel to be felt in the forum state."  *Noonan v. Winston Co.*, 902 F. Supp. 298, 305 (D. Mass. 1995).  Smartmatic has not adequately alleged (nor could it allege) that OAN intended for the statements at issue to have an impact in this District.

In defamation cases, courts in this District have not hesitated to dismiss defamation claims for lack of personal jurisdiction where, as here, the Complaint fails to allege a *prima facie* case that the plaintiff was injured in this District.  In *Corsi v. Caputo*, the court held that the plaintiff failed to show an injury in this District, reasoning that "[c]ourts in this jurisdiction have held that a defamation plaintiff may suffer injury where he lives and works. . . .  But Corsi lives in New Jersey."  2020 WL 1703934, *3 (D.D.C. 2020) (citations omitted); *see also Johnson v. BAE Sys.*, 2012 WL 13055684, *2 (D.D.C. 2012) ("At best, the tortious injury in the District which [plaintiff] claims forms the basis of personal jurisdiction over [defendant] is based on conclusory statements which do not constitute the *prima facie* showing necessary to establish personal jurisdiction.").

Smartmatic again relies on this Court's decision in *Powell*, 554 F. Supp. 3d at 67, to argue that even though Smartmatic has pled no injury in this District, such injury should be presumed because "[t]his District is where elected officials  — some of whom have influence over decisions about elections and government contracts — conduct their business."  *Id.*  But Smartmatic has affirmatively alleged that it does ***not*** have connections in this District.  Smartmatic admits that it has not done any work in Washington, D.C. since 2007.  (Compl. ¶ 30).  Indeed, Smartmatic admits that although its technology was used in Los Angeles during the 2020 election, "[i]ts technology and software were used nowhere else in the country."  (Compl. ¶ 7).  And Smartmatic is not registered to do business in Washington, D.C.  (Motion, n. 6).  Thus, there is no merit to the argument Smartmatic was harmed in this District.  This is particularly true given that the ***states***, not the federal government, are responsible for administering elections.  *See* U.S. CONST. art. I, § 4, cl. 1 ("The Times, Places ***and Manner of holding Elections*** for Senators and Representatives, shall be prescribed ***in each State by the Legislature thereof***.")  (Emphasis added.)  To find that Smartmatic has been harmed in this District — where it has no operations, does no business, and

is not even licensed to do business — simply because individuals in this District could indirectly influence non-federal voting machine contracts in other districts would be tantamount to universal jurisdiction and should not be permitted.

> **3.** **Smartmatic has not adequately pled that OAN has caused tortious injury to Smartmatic in this District as a result of actions outside this District.**

Section (a)(4) of the D.C. long-arm statute states that specific personal jurisdiction can exist as to "causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he [i] regularly does or solicits business, [ii] engages in any other persistent course of conduct, or [iii] derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C. Code § 13-423(a)(4). For the same reasons set forth in Section II.C.2, *supra*, OAN has not caused injury to Smartmatic in this District. Thus, the Court need not consider the "plus factors" set forth at [i], [ii], and [iii] above — it can simply hold that Section (4) does not apply because OAN has not caused injury in this District. Moreover, it is notable that the "plus factors" require a connection between the defendant "***separate from and in addition to the in-state injury***." *Crane v. Carr*, 814 F.2d 758, 762-63 (D.C. Cir. 1987). Thus, the "plus factors" do not change the fact that under D.C. Code § 13-423(b), "only a claim for relief arising from acts enumerated in this section may be asserted." The "plus factors" are not a substitute for the specific personal jurisdiction analysis.

But even if the plus factors were relevant, Smartmatic has not pled facts to suggest that those factors are met. First, as set forth at length in Section II.A, *supra*, OAN does not regularly do or solicit business in this District beyond routine newsgathering. Smartmatic claims that "OANN partners with *The Washington Times*, operates a production studio, broadcasts television programs, sponsors political events, maintains a PR department, issues press releases, and

advertises in this District."  (Opp., p. 17).  But as discussed above, it has been eight years since OAN had a lease with *The Washington Times*, OAN does not broadcast any programs from this District, the political event sponsored by OAN (CPAC) was in **Maryland**, OAN does not have a PR department in this District, and OAN's advertisements are simply part of national advertising campaigns.  The only accurate statement by Smartmatic is that OAN operates a studio in Washington, D.C., and even if the Court declines to apply the newsgathering exception, the mere act of covering the nation's capital should not be considered "regularly doing or soliciting business" in this District.

 Second, for these same reasons, OAN does not engage in a "persistent course of conduct" in this District.  Courts have held that for conduct to be persistent, "[a]t minimum, the contacts should at least be continuing in character."  *Dist. Title v. Warren*, 2015 WL 12964657, *8 (D.D.C. June 1, 2015).  Courts have found that plaintiffs have not alleged a "persistent course of contact" when they can only show attendance at business meetings in the District, *The Urb. Inst. v. FINCON Servs*., 681 F. Supp. 2d 41, 48 (D.D.C. 2010), the mere act of newsgathering in the District, *Moncrief*, 807 F.2d at 222, occasional travel to the District, *McIntosh v. Gilley*, 753 F. Supp. 2d 46, 59 (D.D.C. 2010), direction of conduct from another state into the District via telephone, internet, and mail, *FC Inv. Grp. LC v. IFX Mkts., Ltd*., 529 F.3d 1087, 1096 n. 9 (D.C. Cir. 2008), maintenance of an interactive Web site accessible in this District, *Groop*, 2020 WL 353861 at *5, communications with D.C. residents, *id.*, and membership in D.C.-based trade associations.  *Id.*

The list of actions alleged by Smartmatic at pages 18-19 of the Opposition (in addition to containing various inaccuracies) does not show "persistent" conduct but rather sporadic outreach to contacts in this District for specific reasons over the past decade.  This laundry list of years-old contacts has absolutely nothing to do with the allegations in this case and mirrors the type of

contacts that courts in this District have found inadequate to establish a persistent course of conduct. Accordingly, the second plus factor is not met.

Finally, Smartmatic is simply wrong about the revenue generated from the Washington, D.C. market. As reflected in Exhibits 3-4 to the Opposition, the D.C. television market includes millions of households outside this District. Data from the 2020 census shows that Washington, D.C. represents only about 0.002 percent of the U.S. population.[12] And although Smartmatic notes that OAN was carried on AT&T's U-Verse service (Opp., pp. 4-5),[13] Smartmatic fails to address whether U-Verse was ever available in this District (it was not) before it dissolved. Given that OAN has no meaningful distribution channels into a District that comprises only about 0.002 percent of the U.S. population, the amount of revenue generated by OAN from this District is likely near zero. Even taking into account online viewership, D.C.-based subscriptions for OAN's conservative news content are extremely minimal, given that only 5.4 percent of the votes cast in the 2020 presidential election in this District were for President Trump.[14] The reality is that this District represents only about 0.002 percent of the U.S. population, and the vast majority of those

---

[12] *See* U.S. Census Bureau Table 2, Resident Population for the 50 States, the District of Columbia, and Puerto Rico: 2020 Census, available at https://www.census.gov/data/tables/2020/dec/2020-apportionment-data.html (last visited May 19, 2022); *Bellinger v. Bowser*, No. CV 17-2124 (TJK), 2018 WL 4705808, at *8 (D.D.C. Sept. 30, 2018) ("United States census data is an appropriate and frequent subject of judicial notice.").

[13] These allegations were not included in the Complaint.

[14] *See* District of Columbia Board of Elections General Election 2020 Certified Results, available at https://electionresults.dcboe.org/election_results/2020-General-Election (last visited May 19, 2022); *Badillo v. City of Stockton*, Cal., 956 F.2d 884, 887 (9th Cir. 1992) ("[E]lection results are an appropriate subject of judicial notice."); *Davis v. Town of Riverhead*, 2022 WL 939739, at *5 n.3 (E.D.N.Y. Mar. 29, 2022) (taking judicial notice of the information contained on the Suffolk County, New York Board of Elections' Web site).

people do not have access to OAN and/or have no interest in access to OAN. Accordingly, the amount of revenue generated by OAN from this District is likely near zero.

Because no harm was done in this District and because none of the "plus factors" is met, there is no specific personal jurisdiction under Section (a)(4) of the long-arm statute.

### 4. The exercise of personal jurisdiction would not comport with due process.

As set forth in detail above, Smartmatic has not made a *prima facie* showing that OAN has any contacts in Washington, D.C. that relate to the claims in this case, which is necessary for specific personal jurisdiction (and Smartmatic has waived general jurisdiction). Moreover, exercising personal jurisdiction over OAN would be inconsistent with fair play and substantial justice. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). In *Burger King*, the Supreme Court outlined the following factors for evaluating due process:

> the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* Smartmatic largely ignores the factors, instead arguing that satisfaction of the D.C. long-arm statute is sufficient to meet the requirements of *Burger King* because Sections (a)(1), (a)(3), and (a)(4) have been found to be coextensive with due process. But that does not mean that any facts allegedly satisfying the statutory prongs should automatically be deemed to comport with due process. The intent of the constitutional check on personal jurisdiction is to set "the outer boundary; the local law may be coextensive with due process, or it may be more restrictive than the constitutional limit." *Crane*, 814 F.2d at 762. Thus, the fact that the statute has been found to be coextensive with due process means that the outer limits are the same for both, not that any fact pattern falling under the statute should be given a constitutional rubber stamp of approval. The

Court still must consider fair play and substantial justice.

Smartmatic argues that OAN should be subject to jurisdiction in this District because OAN "purposefully directed" its activities at President Trump, who was then a resident of Washington, D.C. (Opp., p. 27). As an initial matter, it is absurd to suggest that a satellite news network broadcasting around the world is subject to jurisdiction in this District simply because one of its viewers happens to be the President of the United States or because the President happens to Tweet about the network. That is the epitome of a fortuitous contact over which OAN had no control (*Walden*, 134 S. Ct. at 1122) — particularly given the frequency with which President Trump traveled to visit with world leaders and worked from his home in Florida. Certainly no news outlet can reasonably expect to be haled into court anywhere someone happens to watch one of its broadcasts, no matter how well-known or powerful that person is.

In its only acknowledgment of the *Burger King* factors, Smartmatic admits that the burden on the defendant is the "primary concern." (Opp., p. 28) (citing *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1780 (2017)). Smartmatic attempts to downplay the burden on OAN, its California-based management, and its California-based reporters of litigating in this District by arguing that "many other relevant employees work at its D.C. production studio." (Opp., p. 28). But Smartmatic fails to mention that of all the OAN personnel mentioned in the 469-paragraph, 197-page Complaint, only **two** individuals (Bobb and Hines) work from Washington, D.C. (Compl., ¶¶ 110-112, 127, 135-136, 136-147). ***Every other relevant employee***, including all of the other individuals from OAN mentioned by name in the Complaint, reside in California. *See supra* n. 9; Compl., ¶¶ 84, 87, 92, 95, 99, 101, 104, 107, 109, 113, 118-119, 122, 125, 129, 131, 158. Smartmatic then closes with a *non sequitur*: "Litigating this case in Washington, D.C. could not possibly be more burdensome than operating a television studio and a news bureau in the

District for the last nine years."  (Opp., p. 28).  This burden comparison is, of course, completely irrelevant and not tied to any legal standard.

The remaining *Burger King* factors go completely unmentioned by Smartmatic and all weigh in favor of OAN.  As set forth above, D.C. has no interest adjudicating this dispute because it has nothing to do with this dispute.  This case involves a Florida-based plaintiff suing a California-based defendant for broadcasting statements from California to a global audience, with the only possible harm occurred in California, where Smartmatic had a contract during the 2020 election.  This District lacks any interest in this dispute.  Moreover, there is no reason to believe that a court in California or Florida could not provide Smartmatic with convenient and effective relief, and the interstate judicial system and shared interests of the states are not served by having two out-of-District litigants occupying the Court's time and resources in a jurisdiction that has no relationship to the case.

Accordingly, the case should be dismissed for lack of personal jurisdiction.[15]

**D.**     **Venue also is improper in this District.**

Alternatively, even if the Court found that Smartmatic had adequately pled a *prima facie* case of specific personal jurisdiction, the Court should transfer the case to the U.S. Southern

---

[15] At footnote 5 of the Opposition, Smartmatic contends that even if the Court finds that Smartmatic has not alleged sufficient facts to establish personal jurisdiction, Smartmatic should be allowed jurisdictional discovery.  But "[i]n order to engage in jurisdictional discovery, the plaintiff 'must have at least a good faith belief that such discovery will enable it to show that the court has personal jurisdiction over the defendant.' . . .  Such a request for jurisdictional discovery cannot be based on mere conjecture or speculation." *FC Inv. Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 10934-94 (D.C. Cir. 2008) (internal citations omitted).  "The district court does not abuse its discretion when it denies a discovery request that would amount to nothing more than a fishing expedition." *Bastin v. Federal Nat. Mortg. Ass'n*, 104 F.3d 1392, 1395-96 (D.C. Cir. 1997).  Because Smartmatic has not made a *prima facie* showing of personal jurisdiction, jurisdictional discovery should be denied.  Moreover, courts have denied jurisdictional discovery even where the plaintiff made suggestions for what discovery was allegedly necessary. *Groop*, 2020 WL 353861 at *8.  Smartmatic has made no such effort.

District of California based on improper venue.  Smartmatic's only argument for venue is based on 28 U.S.C. § 1391(b)(2),  i.e. that a substantial part of the events giving rise to the claims in this Complaint allegedly occurred in this District.  (Opp., p. 28).  That simply is not true.  The act of publishing the allegedly defamatory statements occurred from California, not D.C.  The allegedly defamatory statements made by OAN reporters were made in California, not D.C.  *See* Motion, p. 14 (establishing that OAN broadcasts exclusively from California); *supra* p. 21 (addressing locations of relevant OAN employees).  The alleged harm (if any) to Smartmatic occurred in California and Florida, not D.C.  In short, the jurisdictionally significant events giving rise to the claim occurred elsewhere.

Unlike the cases cited by Smartmatic, this is not a situation where a substantial part of the events took place in this District, even though it might not be the "best" venue or have the "most substantial" connections.  In *Powell*, this Court held that a substantial part of the relevant events took place in this District because the individual defendants had come to this District and uttered the defamatory phrases in this District.  554 F. Supp. 3d at 68.  This case is fundamentally different because any limited connections to this District are ancillary and insignificant.  To the extent Smartmatic has alleged publication by OAN of statements made by third parties located in Washington, D.C., OAN broadcast those statements from California.  To the extent Smartmatic has alleged publication by OAN of statements made by third parties outside Washington, D.C., OAN also broadcast those statements from California.  And as discussed *supra* p. 21, to the extent Smartmatic has alleged defamatory statements by OAN employees, those employees were in California.  Finally, the harm to Smartmatic occurred, if at all, in California and Florida.  This alone is a basis for finding venue improper.  *See Corsi v. Stone,* 2020 WL 999053, *2-*3 (D.D.C. March 1, 2020) (finding venue improper in this District because plaintiff had not "sufficiently

pleaded or otherwise established that he suffered any harm to his reputation in this District").  Thus, the question OAN is raising is not whether this District has the "most substantial" relationship to these claims, but rather whether it has ***any*** jurisdictionally significant relationship to the claims — the answer is no and venue is improper.

The correct venue, as Smartmatic admits in its Opposition, is "where the defamatory statements at issue were uttered and published."  (Opp., p. 29).  Other than conclusory and untrue statements about OAN "publishing" and "broadcasting" from Washington, D.C., Smartmatic has made no factual allegations to establish that the statements at issue were uttered or published ***by OAN*** in this District.  The reality is that OAN publishes from only one place: San Diego, California.  (Motion, p. 14).  Thus, the Court should find that venue is improper in this District and transfer this case to the U.S. Southern District of California (if it doesn't dismiss for failure to plead a *prima facie* case of specific personal jurisdiction).

Smartmatic's final argument is that transfer would not be in the interests of justice because other cases related to the 2020 U.S. election cases are pending here.  (Opp., p. 31).  But this case is not referendum on the 2020 presidential election — indeed, Smartmatic claims that its machines were barely used in 2020 (Compl., ¶ 7) — but rather an assessment of whether the specific statements alleged in the Complaint are defamatory and give rise to recoverable damages.  This case therefore has nothing to do with the completely separate statements placed at issue by Dominion in litigation against OAN or claims made by Smartmatic against individuals who have no connection with OAN.  But even if those cases were related, the Court is well aware that OAN has sought to dismiss, transfer, or stay the case brought against it by Dominion.  And while it is true that Smartmatic has filed an election-related case against Sidney Powell in this District, the Complaint in that case indicates that it "is materially identical to a prior action pending in the

Supreme Court of the State of New York, *Smartmatic USA Corp., et al. v. Fox Corporation, et al.*, No. 151136/2021 (filed February 4, 2021), except this lawsuit is solely against Ms. Powell.  It is commenced in this Court as a precautionary measure to protect Smartmatic, whose reputation and business has been damaged by Ms. Powell, by preserving Smartmatic's claims under the relevant statute of limitations, and as a prophylactic measure in the event that personal jurisdiction is found lacking in the Supreme Court of the State of New York."  Smartmatic apparently believes the proper venue for its claims against Powell is in New York, where it is proceeding separately against Fox Corporation.   Thus, even if it were proper to have all of the "2020 U.S. election cases" in a single court, Smartmatic is proceeding otherwise.

This venue is improper and the case should be transferred to the U.S. Southern District of California if it is not dismissed.

## III.    Conclusion

For the foregoing reasons, the Court should dismiss the case for failure to plead a *prima facie* case of personal jurisdiction.  Alternatively, the Court should transfer the case to the U.S. District Court for the Southern District of California under Section 1406(a).

Dated: May 19, 2022

Respectfully submitted,

/s/ Blaine Kimrey
Blaine Kimrey, Bar No. IL0091
bkimrey@vedderprice.com
Jeanah Park, Bar No. IL0094
jpark@vedderprice.com
Bryan Clark, Bar No. IL0090
bclark@vedderprice.com
Brian Ledebuhr, Bar No. IL0093
bledebuhr@vedderprice.com
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, IL 60601
T:  +1 312 609 7500
F:  +1 312 609 5005

Brian K. McCalmon, Bar No. 461196
bmccalmon@vedderprice.com
VEDDER PRICE P.C.
1401 New York Avenue, Suite 500
Washington, DC 20005
T:  +1 202 312 3320
F:  +1 202 312 3322

*Counsel for Herring Networks, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of May 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel for the parties.

/s/ Blaine Kimrey
Blaine Kimrey