UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SMARTMATIC USA CORP., *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>HERRING NETWORKS, INC.,<br><br>*Defendant*. | Civil Action No. 1:21-cv-02900 (CJN) |

**MEMORANDUM OPINION**

Smartmatic USA Corp. and other related corporate entities allege that Herring Networks, Inc., doing business as One American News Network (OAN for short), defamed them in connection with the 2020 election. *See generally* Compl. ("Compl."), ECF No. 1. OAN has moved to dismiss the Complaint, arguing that the Court lacks personal jurisdiction over it or, alternatively, that the Court should transfer the case to the Southern District of California because proper venue does not lie here. *See* OAN's Motion to Dismiss ("OAN's Mot."), ECF No. 21 at 11, 18. Smartmatic opposes OAN's motion. *See* Smartmatic's Opp'n to the Motion to Dismiss ("Smartmatic's Opp'n"), ECF No. 22. The Court denies the motion to dismiss for the reasons discussed below.

### I.   The Parties

Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited are related corporate entities involved in the sale of electronic voting machines and software. *See* Compl. ¶¶ 10–12.[1] Since 2003, Smartmatic, incorporated in Delaware and based

---

[1] The Court, of course, accepts as true all well-pleaded allegations in the Complaint. *See US Dominion, Inc. v. MyPillow, Inc.*, No. 1:21-CV-0445 (CJN), 2022 WL 1597420, at *2 (D.D.C.

1

out of Florida, "has processed more than 5 billion secure votes worldwide without a single security breach." *Id.* ¶ 24. During the 2020 U.S. election, however, Smartmatic played a limited role. It "provided election technology and software for Los Angeles County." *Id.* ¶ 10; *see also id.* ¶ 48 ("In June 2018, Los Angeles County selected Smartmatic to help election authorities manufacture and implement a new election system for the county."). No other county or state used Smartmatic's election technology and software during that election. *Id.* ¶ 10. And even in Los Angeles County, Smartmatic "played no part in the counting or tabulation of votes." *Id.*

Herring Networks, Inc., which does business as One American News Network, operates a cable news network. *Id.* ¶ 14; *see also id.* (noting that the company used to be known as Herring Broadcasting Company before February 2014). Robert Herring Sr. founded OAN in 2013. *See id.* ¶ 77. Charles Herring, Robert Herring Sr.'s son, serves as the president of the network. *Id.* OAN is incorporated in California and based out of California, but Smartmatic alleges it maintains operations in the District, including a news bureau and a broadcast team. *Id.* OAN also operates a website, social media accounts, and streams its content. *Id.* Viewers may purchase OAN's cable content thorough "multiple national providers, including AT&T U-verse, DirecTV, and Verizon FiOS." *Id.* ¶ 16.

## II.   Factual & Procedural Background

This case centers around statements made about the American election held on November 3, 2020. *See generally Compl.* States and localities employed a myriad of procedures to handle early, same-day, and mail-in votes throughout the election cycle. The different procedures resulted

---

May 19, 2022) ("The court accepts all well-pleaded facts in the complaint as true."). The Court also "afford[s] the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Atlas Brew Works, LLC v. Barr*, 391 F. Supp. 3d 6, 11 (D.D.C. 2019) (quotation omitted).

in no clear winner emerging from the presidential election on Tuesday, November 3, 2020. Days later, several news outlets declared Joseph Biden victorious. Those declarations did not end matters. Private citizens and public officials challenged, and local officials audited, election results throughout the country.

In November 2021, Smartmatic filed this lawsuit, claiming that OAN made numerous statements actionable as defamation about Smartmatic and the company's role or lack thereof in the election. *See id.* ¶¶ 440–468; *see also* Smartmatic's Opp'n at 8 ("OAN made dozens of other defamatory statements about Smartmatic in nationwide broadcasts and publications that reached D.C. residents."); *see id.* ("OAN made and recorded many of [] false statements in its television studio in Washington, D.C., where its employees researched, edited, and produced the programs on which the statements appeared."). The heart of Smartmatic's Complaint features five key headers, which outline a variety of the allegedly defamatory and false statements OAN, or at least people appearing on network broadcasts, made about Smartmatic. *See Compl.* ¶¶ 181–237 ("A. OAN falsely stated and implied that Smartmatic's election technology and software were widely used in the 2020 U.S. election;" "B. OAN falsely stated and implied that Smartmatic fixed, rigged, and stole the 2020 U.S. election for Joe Biden and Kamala Harris and the Democratic Party;" "C. OAN falsely stated and implied that Smartmatic's election technology and software were compromised or hacked during the 2020 U.S. election and sent votes to foreign countries to be compromised or hacked;" "D. OAN falsely stated and implied that Smartmatic was founded and funded by corrupt dictators from socialist and communist countries;" "E. OAN falsely stated and implied that Smartmatic's election technology and software were designed to and have fixed, rigged, and stolen elections before").

The statements undergirding the five headers vary in length, scope, and content. *See id.* Nonetheless, the Complaint's overarching theme is that OAN defamed Smartmatic by stating that Smartmatic designed its election technology to rig and steal the 2020 election. *Id.* The speakers of the statements vary, too. *See id.* (identifying Alex Salvi, Elma Aksalic, John Hines, Sidney Powell, Rudolph Giuliani, and others as those who made allegedly defamatory statements on OAN). Smartmatic further alleges that OAN researched, edited, produced, and broadcasted multiple allegedly defamatory television segments out of the District. *Id.* ¶¶ 87, 110, 127, 135. Smartmatic claims that, as a result of OAN's allegedly defamatory statements, it has suffered injury to its reputation, including its reputation in the District. *See generally id.* In particular, Smartmatic asserts that the allegedly false and defamatory statements may have caused government officials to lash out at the company and to seek alternative voting systems to use in future elections. *Id.* ¶¶ 434–438. Based on the allegedly defamatory statements, Smartmatic seeks compensatory damages, special damages, punitive damages, attorneys' fees, incurred expenses, and pre- and post-judgment interest. *See id. Prayer for Relief.*

OAN has moved to dismiss the Complaint. *See generally* OAN's Mot. OAN does not argue that the Complaint requires dismissal because it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Instead, OAN argues that the Court lacks personal jurisdiction over the network. *See id.* In the alternative, OAN argues that the Court should transfer the case to the federal court in Southern District of California on venue grounds. *See* OAN's Mot. at 18; *see also* 28 U.S.C. § 1406(a); 28 U.S.C. § 1391(b)(1)–(2).

### III.   Legal Standards

**Civil Rule 12(b)(2).** Federal Rule of Civil Procedure 12(b)(2) requires dismissal of a complaint if the Court "lack[s] personal jurisdiction" over the defendant. Fed. R. Civ. P. 12(b)(2).

The plaintiff "bears the burden of establishing a factual basis for the court's exercise of personal jurisdiction over the defendant." *Capital Bank Int'l Ltd. v. Citigroup, Inc.*, 276 F. Supp. 2d 72, 74 (D.D.C. 2003); *see also Williams v. Romarm, SA*, 756 F.3d 777, 785 (D.C. Cir. 2014). A plaintiff must allege specific facts connecting the defendant to the forum. *Capital Bank*, 276 F. Supp. 2d at 74. Bare allegations and conclusory statements will not suffice. *Id.*

**Civil Rule 12(b)(3).** Federal Rule of Civil Procedure 12(b)(3) requires dismissal of a complaint if the plaintiff filed it in the improper venue. *See* Fed. R. Civ. P. 12(b)(3). When a plaintiff brings suit in an improper venue, the district court "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). In deciding whether venue is proper, courts "accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Herbert v. Sebelius*, 925 F. Supp. 2d 13, 17 (D.D.C. 2013). The Court need not, however, accept the plaintiff's legal conclusions as true, and it may consider material outside of the pleadings. *Id.* A key consideration courts keep in mind when resolving a motion to dismiss for improper venue is "whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." *Exelon Generation Co., LLC v. Grumbles*, 380 F. Supp. 3d 1, 13 n.3 (D.D.C. 2019) (quotation omitted).

### IV.   The Court Possesses Personal Jurisdiction over OAN

Civil Rule 4(k) of the Federal Rules of Civil Procedure provides that federal courts should in certain circumstances (like diversity cases) follow a state's long-arm statute to determine whether it may exercise personal jurisdiction over a defendant. Fed. R. Civ. P. 4(k)(1)(A) ("Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: (A) who is subject to the jurisdiction of a court of general jurisdiction in the state where

5

the district court is located."); *see Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 396 (6th Cir. 2021).  The Parties agree that this case presents one of those circumstances.  *See* OAN's Mot. at 10; Smartmatic's Opp'n at 22.

A court may assert "general," or "all-purpose," jurisdiction over a defendant in its home state (the home state includes the place where defendant is incorporated or headquartered).  *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017).  Or a court may exercise "specific," or case-based, jurisdiction over a defendant if the plaintiff's claims "arise[ ] out of or relate[ ] to" the defendant's forum state contacts.  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quotation omitted).  All agree that this case implicates only specific rather than general personal jurisdiction.  *See* Smartmatic's Opp'n 16 n.1 (clarifying that Smartmatic has never argued that the Court possesses general jurisdiction over OAN).

The District's long-arm statute provides that a court has personal jurisdiction "over a person, who acts directly or by an agent, as to a claim for relief arising from the" person:

"(1) transacting any business in the District of Columbia;

(2) contracting to supply services in the District of Columbia;

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia."  D.C. Code § 13-423(a)(1)–(4).

The District's first prong has "been given an expansive interpretation" that coextends with the Fourteenth Amendment's Due Process Clause.  *See Helmer v. Doletskaya*, 393 F.3d 201, 205 (D.C. Cir. 2004) (quotation omitted).  The Due Process Clause of the Fourteenth Amendment constrains a state court's "power to exercise jurisdiction" over a defendant.  *Ford Motor Co. v.*

*Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).  Under the operative framework, whether a state may hail a defendant into one of its courts depends on the defendant's minimum contacts with the state in which the plaintiff filed the lawsuit. *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 320 (1945).

The Court possesses personal jurisdiction over OAN under § 13-423(a)(1) of the District's long-arm statute.  Recall that § 13-423(a)(1) has been "interpreted to be coextensive with the Constitution's due process requirements." *US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42, 66 n.14 (D.D.C. 2021) (quotation omitted).  That subsection covers "business transactions" in the everyday sense of commercial deal-making activities like advertising, operating office space, and performing contracts. *Id.* (quotation omitted); *see also Quality Air Servs., L.L.C. v. Milwaukee Valve Co.*, 567 F. Supp. 2d 96, 100 (D.D.C. 2008) (quotation omitted) (noting that "a single act may be sufficient to constitute transacting business, so long as that contact is voluntary and deliberate, rather than fortuitous").  According to Smartmatic's Complaint:  OAN launched its network through a partnership with *The Washington Times*; leases office and studio space in the District; built a broadcast studio in the District; broadcasts television programs from the District; issues press releases from the District; advertises in the District to promotes its network; and produces and disseminates content (including allegedly false and defamatory statements about Smartmatic) from the District. *See* Smarmatic's Opp'n at 18–19, 25–26.  As Smartmatic sees it, OAN's allegedly false and defamatory statements arose out of OAN's ties to and business transactions with the District. *Id.* at 19 ("It was through these transactions—all of them in the District of Columbia—that OAN established a television network and a production studio whereby it published defamatory statements about Smartmatic that aired nationally on DirecTV.").  The Court agrees that OAN's past and present business transactions with the District permit the Court

to exercise personal jurisdiction over the network with respect to the allegedly false and defamatory statements. Indeed, but for OAN leasing television production studio and office space, advertising its programming, and promoting its network with guests, OAN's allegedly false and defamatory statements would not have made it on the airwaves.

The Court also has personal jurisdiction over OAN under § 13-423(a)(3) of the District's long-arm statute because OAN "caus[ed] tortious injury in the District of Columbia by an act or omission in the District of Columbia." D.C. Code § 13-423(a)(3). Smartmatic has alleged that OAN made numerous allegedly false and defamatory statements in the District. *See* Compl. ¶ 87 ("Reporter Elma Aksalic," broadcasting out of OAN's "Washington, D.C. news bureau," discussed Sidney "Powell's claims that 'overwhelming evidence of voter fraud is coming to light'"); *id.* ¶ 110 (asserting that broadcast reporter John Hines peddled allegedly false and defamatory statements while broadcasting out of OAN's Washington, D.C. news bureau). Smartmatic has also alleged that OAN in its Washington, D.C. studio researched, edited, produced, and broadcasted interviews with guests who touted allegedly false and defamatory statements. *Id.* ¶¶ 87, 110, 127, 135. And Smartmatic alleges that OAN published its allegedly false and defamatory statements nationwide, including in the District. *Id.* ¶¶ 16, 18, 441, 445, 456, 460.

Though OAN admits that it transacts business in the District, *see* OAN's Mot. at 13, it contends that Smartmatic has not established that any of its claims arise from OAN's business activities in the District, *id*. Put differently, OAN argues that it "broadcasts its news segments nationwide via a satellite dish in San Diego and does not have contacts with D.C. other than its newsgathering ties to the District." OAN's Reply in Supp. of Mot. ("OAN's Reply"), ECF No. 23 at 13. Smartmatic, however, alleges that not only does OAN advertise in and broadcast from the District, but also that the network disseminated some of the allegedly false and defamatory

statements in the District. Those allegations cut against OAN's claim that it just gathers information in the District and sends it back to home base in California.

OAN advances a fallback argument, arguing that the so-called "newsgathering exception" prohibits the exercise of personal jurisdiction here. OAN's Mot. at 14.[2] To be sure, the District has recognized an exception from long-arm jurisdiction for newsgathering activities in the District. *See Akhmetshin v. Browder*, No. 21-SP-238, 2022 WL 1670987, at *7 n.26 (D.C. May 26, 2022). Under this exception, the mere collection of news material here and the subsequent publication of the material elsewhere does not count as doing business in the District for purposes of the long-arm statute. *Id.* (quotation omitted). The exception serves to "protect a newspaper whose only persistent course of conduct in the District is the maintenance of an office there for gathering news from being subject to the jurisdiction of the District's courts." *See Moncrief v. Lexington Herald–Leader Co.*, 807 F.2d 217, 222 (D.C. Cir. 1986); *Lewy v. S. Poverty L. Ctr., Inc.*, 723 F. Supp. 2d 116, 127 (D.D.C. 2010) (noting that the "exception is intended to protect news organizations who cover national news for a local audience outside the District"). But the exception does not apply here for two different but related reasons. First, OAN did not merely gather news here and broadcast it back in its home state of California; instead, Smartmatic alleges that it aimed its allegedly defamatory and false statements to at least some residents of the District. *See Lewy*, 723 F. Supp. 2d at 127 ("SPLC's newsgathering efforts . . . are aimed at a national audience that

---

[2] The Court assumes without deciding that the newsgathering exception applies to D.C. Code § 13-423(a)(1) and (a)(3). The D.C. Court of Appeals has without question applied the exception to D.C. Code § 13-423(a)(4). *See Akhmetshin*, 2022 WL 1670987 at *7 n.26. But it is less clear whether the exception applies to other prongs of the long-arm statute. *See Shirlington Limousine & Transp., Inc. v. San Diego Union-Trib.*, 566 F. Supp. 2d 1, 4 (D.D.C. 2008) ("The newsgathering exception has been expressly applied to Section 13–423 in subsequent cases.").

includes D.C. residents."). What's more, Smartmatic has alleged facts showing that OAN has transacted business beyond classic newsgathering.

OAN pivots, contending that even if the network's contacts with the District "could support a basis for specific personal jurisdiction under the longarm statute, . . . Smartmatic also must establish that the exercise of personal jurisdiction would be consistent with traditional notions of fair play and substantial justice." OAN's Mot. at 16. OAN also notes that Smartmatic appears to be engaged in forum-shopping, striving to avoid a jurisdiction with an anti-SLAPP provision. *See* OAN's Reply at 8; *see also* Justin W. Aimonetti & M. Christian Talley, *How Two Rights Made A Wrong: Sullivan, Anti-SLAPP, and the Underenforcement of Public-Figure Defamation Torts*, 130 YALE L.J. FORUM 708, 712 (2021) (discussing the advent and evolution of anti-SLAPP provisions). The Court's exercise of specific personal jurisdiction over OAN comports with the requirements of the Due Process Clause. Indeed, if § 13-423(a)(1) has been satisfied then any added requirement emanating from the Due Process Clause has been satisfied, too. *See GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). And although forum-shopping is not a trivial concern, a plaintiff may pick the forum and venue so long as the law allows it.

## V. Proper Venue Lies in the District

Recall that when a plaintiff brings a lawsuit in an improper venue, the district court "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Recall also that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." Here, venue is proper in the District under § 1391(b)(2) because, as Smartmatic alleges, "a substantial part of the events giving rise to the claims in this Complaint occurred in this District."

*See generally* Compl.  In particular, Smartmatic asserts that OAN disseminated allegedly false and defamatory statements in the District.  *Id.* ¶¶ 16, 18, 87, 110, 127, 135, 184, 196, 205, 218, 227, 441, 445, 456, 460.  As a result, venue not only lies in the District, but the Court will not transfer the case to the Southern District of California because § 1406(a) "is premised on an action being brought in the 'wrong' district." *Fam v. Bank of Am. NA*, 236 F. Supp. 3d 397, 407 (D.D.C. 2017) (quotation omitted).  *But see* 28 U.S.C. § 1404(a) (permitting district courts "[f]or the convenience of parties and witnesses" and "in the interest of justice" to "transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented").

OAN pushes back, contending that venue is improper in the District because the most substantial parts of the claims did not occur here.  OAN's Reply at 30.  Even if true, proper venue requires just that "a substantial part" of the claims occurred in the District.  28 U.S.C. § 1391(b)(2); *see also Jalloh v. Underwood*, 300 F. Supp. 3d 151, 155 (D.D.C. 2018) ("Courts have repeatedly explained that even if a substantial part of the events in a case took place in one district, a plaintiff may still file suit in another district if a substantial part of the events also took place there.").  Based on the allegations in the Complaint, a substantial part of the events giving rise to Smartmatic's claims took place in the District.

## VI.  Conclusion

For the foregoing reasons, OAN's motion to dismiss is **DENIED**.  An Order will be entered contemporaneously with this Memorandum Opinion.

DATE:  June 21, 2022

_____
CARL J. NICHOLS
United States District Judge