IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED, | |
| Plaintiffs, | No. 1:21-cv-02900 |
| v. | |
| HERRING NETWORKS, INC., d/b/a ONE AMERICA NEWS NETWORK, | Judge Carl J. Nichols |
| Defendant. | **Jury Trial Demanded** |

**DEFENDANT'S ANSWER TO THE COMPLAINT**

# TABLE OF CONTENTS

Page

RESPONSES TO PLAINTIFFS' INTRODUCTION ................................................. 1

RESPONSES TO PLAINTIFFS' PARTY ALLEGATIONS ...................................... 5

RESPONSES TO PLAINTIFFS' JURISDICTION & VENUE ALLEGATIONS ...................... 9

RESPONSES TO PLAINTIFFS' ALLEGED FACTS ............................................. 11

I.   The reputation of the Smartmatic entities in the United States was bad before the
     2020 U.S. election and deteriorated further after the disaster in Los Angeles
     County ................................................................................................ 12

     A.   No Smartmatic entity has ever been a success in the United States ................... 14

     B.   Smartmatic-related and affiliated technology has not demonstrated itself to
          be secure and reliable ....................................................................... 21

     C.   The use of Smartmatic-related and affiliated technology caused problems
          in Los Angeles County ........................................................................ 23

          1.   Los Angeles County made the unfortunate decision to use
               Smartmatic-related and affiliated technology ....................................... 24

          2.   Los Angeles County gave a significant role to Smartmatic-related
               and affiliated technology in 2020 ..................................................... 26

          3.   The Smartmatic entity performance in Los Angeles County was a
               disaster .................................................................................. 28

     D.   No Smartmatic-related entity had any success to celebrate in Los Angeles
          County ................................................................................................ 32

II.  OAN diligently reported on issues of significant public concern .................................... 35

     A.   Public official and figure claims of insecurity and fraud were pervasive ............ 35

     B.   OAN accurately presented itself to its audience as a reliable source for
          fact-based news ................................................................................ 43

     C.   OAN's diligent reporting on newsworthy events of public concern
          continued ............................................................................................ 44

     D.   Concerns about election integrity and Smartmatic-related entities
          continued, and OAN continued to diligently cover these issues ......................... 92

          1.   OAN continued observing its journalistic responsibilities after
               receiving an ill-founded retraction letter ............................................. 93

          2.   Mike Lindell purchased airtime on OAN to share his own opinions
               on matters of public concern ......................................................... 98

     E.   OAN reported on matters of public concern related to election integrity
          across multiple platforms .................................................................... 110

# TABLE OF CONTENTS
### (continued)

Page

    F.      OAN continued its newsworthy Smartmatic-related coverage ......................... 116

III.      OAN's diligent reporting ................................................ 124

    A.      OAN truthfully reported allegations that election equipment and software with ties to Smartmatic-related entities were widely used in the 2020 U.S. election ...................................................................... 125

    B.      OAN truthfully reported allegations that election equipment and software with ties to Smartmatic-related entities were capable of being and perhaps were manipulated during the 2020 U.S. election ................................................. 134

    C.      OAN truthfully reported allegations that election equipment and software with ties to Smartmatic-related entities facilitated foreign access ..................... 142

    D.      OAN truthfully reported allegations that Smartmatic-related entities were founded and funded by foreign entities ...................................... 149

    E.      OAN truthfully reported allegations that election equipment and software with ties to Smartmatic-related entities were designed to be manipulated in the past ......................................................... 157

IV.      OAN acted ethically and appropriately in its reporting ................................. 166

    A.      OAN had support for its reporting regarding election equipment and software with ties to the Smartmatic-related entities .......................................... 167

          1.      OAN had sources who established a connection between election equipment and software with ties to Smartmatic-related entities and the 2020 U.S. election ................................................. 168

          2.      OAN thoroughly vetted its Smartmatic-related reporting ................... 171

    B.      OAN reporting about election equipment and software with ties to Smartmatic-related entities was accurate .......................................... 172

          1.      OAN knew election equipment and software with ties to Smartmatic-related entities were widely used in the 2020 U.S. election, including in contested states.................................... 173

          2.      OAN knew of allegations that election equipment and software with ties to the Smartmatic-related entities were manipulated during the 2020 U.S. election ............................................... 191

          3.      OAN knew of allegations that election equipment and software with ties to Smartmatic-related entities were compromised during the 2020 U.S. election and facilitated foreign access ........................... 209

          4.      OAN knew Smartmatic-related entities had ties to foreign leaders ....... 217

## <u>TABLE OF CONTENTS</u>
(continued)

Page

     5.   OAN knew of allegations that election equipment and software with ties to Smartmatic-related entities were designed to be manipulated in the past ........................................................................ 224

  C.   OAN had no reason to doubt the veracity of its guests.................................... 228

     1.   OAN's guests provided evidence supporting their statements about the election equipment and software with ties to Smartmatic-related entities ............................................................................... 229

     2.   OAN corroborated the statements made about the election equipment and software with ties to Smartmatic-related entities by OAN's guests ............................................................................... 229

     3.   OAN included counterpoint in its reporting ......................................... 230

     4.   OAN believed its guests were credible.................................................. 239

  D.   OAN complied with journalism ethics ............................................................ 247

  E.   OAN reported ethically without ill will or improper motive............................ 256

V.    OAN's diligent reporting did not unjustifiably harm or financially damage any Smartmatic-related entity.......................................................................................... 257

CAUSES OF ACTION AS ALLEGED BY PLAINTIFFS.......................................................... 269

    FIRST CAUSE OF ACTION (Defamation for False Statements and Implications about Smartmatic) - DENIED............................................................................... 269

    SECOND CAUSE OF ACTION (Injurious Falsehood for False Statements and Implications about Smartmatic's Election Technology and Software) - DENIED ....... 273

ALLEGATIONS IN SUPPORT OF AFFIRMATIVE AND OTHER DEFENSES ................. 277

I.    Parties................................................................................................................... 282

II.   Herring Networks, Inc.'s founding ................................................................... 282

III.  Plaintiffs' troubled history of election-related controversy ........................... 283

IV.  Smartmatic entity troubles worsen in the United States and one or more Smartmatic entities are investigated by the U.S. government ....................................... 285

V.    After investigation by the U.S. government, Smartmatic Corporation USA divests itself of Sequoia, which is eventually sold to Dominion Voting Systems, Inc............. 288

VI.  Smartmatic entities' global reputation continues to suffer ............................ 290

VII.  Smartmatic entities suffered continued financial problems long before the 2020 election.................................................................................................................. 293

VIII. Smartmatic-related flaws are further exposed in the 2020 U.S. election....................... 293

Defendant Herring Networks, Inc. ("Herring" or "Defendant"), by and through its counsel, for its Answer to plaintiffs Smartmatic USA Corp.'s, Smartmatic International Holding B.V.'s, and SGO Corporation Limited's Complaint, answers and alleges as follows:

## RESPONSES TO PLAINTIFFS' INTRODUCTION

### FOOTNOTE NO. 1:

Smartmatic's election technology and software has been used in voting jurisdictions that are predominately Conservative, Liberal, Republican, Democrat, and other. Smartmatic is apolitical. Smartmatic does not take issue with legal challenges being raised regarding the rules implemented by voting jurisdictions during the 2020 U.S. election and the adherence to those rules. Smartmatic's lawsuit is focused on the fact that its election technology and software were not used to fix, rig, or steal the 2020 U.S. election.

**ANSWER:** Defendant is without sufficient information or knowledge to form a belief as to all placed where all Smartmatic entities' technology and software has been used, thus Defendant denies the first sentence of Footnote No. 1. Defendant denies the remaining allegations in Footnote No. 1.

### ALLEGATION NO. 1:

The first time it happened could be a mistake. The second, third, fourth and fiftieth times it happened were intentional choices. OANN had every opportunity to do the right thing after the 2020 election for President and Vice President of the United States. It could have reported the truth. Instead, OANN chose to do the wrong thing every time. It reported a lie.

**ANSWER:** Defendant admits that OAN faithfully and accurately reported the news. Defendant denies the remaining allegations by Plaintiffs against Defendant in Paragraph 1.

### ALLEGATION NO. 2:

OANN knew Joe Biden and Kamala Harris won the 2020 election for President and Vice President of the United States. OANN knew the election was not rigged, fixed, or stolen. OANN knew voting machines did not switch votes from former President Donald Trump to current President Joe Biden. OANN had every opportunity to provide its audience these facts. It chose to do the opposite.

**ANSWER:** Defendant admits that Congress certified Joe Biden and Kamala Harris as the winners of the 2020 election for President and Vice President of the United States.  But Defendant denies that OAN knowingly reported anything that was false (or engaged in reckless disregard for the truth).  Defendant further responds that the allegations of Paragraph 2 are defective and ambiguous because they provide no time reference for what OAN allegedly knew and when.  To the extent further response is required, Defendant denies the remaining allegations by Plaintiffs against Defendant in Paragraph 2.

**ALLEGATION NO. 3:**

Shortly after election night, as other news organizations informed their audience that Joe Biden and Kamala Harris had won the election, OANN told its audience that the election had been stolen and voting machines had switched votes cast for President Trump to President Biden. OANN knew it was not true.  OANN had seen no evidence to support the assertion.  But OANN chose to spread disinformation.

**ANSWER:** Defendant denies that these allegations completely and accurately characterize OAN's reporting.  Defendant further denies the remaining allegations by Plaintiffs against Defendant in Paragraph 3.

**ALLEGATION NO. 4:**

In the months and weeks that followed, as other news organizations reported that government officials and election experts were confirming the security and outcome of the election, OANN told its audience that voting machines were compromised, and that the reported outcome could not be trusted.  OANN knew its reporting was not true.  OANN had seen no evidence to support its assertions.  But OANN chose to spread disinformation.

**ANSWER:** Defendant denies that the allegations completely and accurately characterize OAN's reporting.  Defendant further denies that OAN knowingly reported anything that was false (or engaged in reckless disregard for the truth).  Defendant further denies that OAN lacked evidence to support its reporting.  Defendant further denies that OAN chose to spread disinformation. Defendant further responds that the allegations of Paragraph 4 are defective and ambiguous

because they provide no specific time reference for what OAN allegedly knew and when. Defendant further denies the remaining allegations by Plaintiffs against Defendant in Paragraph 4.

**ALLEGATION NO. 5:**

During that same period, as other news organizations interviewed individuals with firsthand knowledge of the protocols ensuring the accuracy of the election results, OANN published interviews with individuals who did not have firsthand knowledge but who were willing to say that the election had been stolen and voting machines were to blame. OANN knew it was not true. OANN had seen no evidence to support the assertion. But OANN chose to spread disinformation.

**ANSWER:** Defendant denies that the allegations completely and accurately characterize OAN's reporting. Defendant further denies that OAN knowingly reported anything that was false (or engaged in reckless disregard for the truth). Defendant further denies that OAN lacked evidence to support its reporting. Defendant further denies that OAN chose to spread disinformation. Defendant further responds that the allegations of Paragraph 5 are defective and ambiguous because they provide no specific time reference for what OAN allegedly knew and when. Defendant further denies the remaining allegations by Plaintiffs against Defendant in Paragraph 5.

**ALLEGATION NO. 6:**

Then, in December 2020, as other news organization publicly acknowledged that they had seen no evidence to support claims of election fraud or of voting machines switching votes, OANN mocked those news organizations and doubled down on its attacks on voting machines. OANN knew its assertions about Smartmatic were not true. OANN had seen no evidence to support the assertions. But OANN chose to spread disinformation.

**ANSWER:** Defendant denies that the allegations completely and accurately characterize OAN's reporting. Defendant further denies that OAN knowingly reported anything that was false (or engaged in reckless disregard for the truth). Defendant further denies that OAN lacked evidence to support its reporting. Defendant further denies that OAN chose to spread disinformation. Defendant further responds that the allegations of Paragraph 6 are defective and ambiguous

because they provide no specific time reference for what OAN allegedly knew and when. Defendant further denies the remaining allegations by Plaintiffs against Defendant in Paragraph 6.

**ALLEGATION NO. 7:**

Smartmatic provided election technology and services to Los Angeles County during the 2020 U.S. election. Its technology and software were used nowhere else in the country. And yet, OANN published report after report naming Smartmatic as one of the voting machine companies that had conspired to steal the election by switching votes from former President Trump to current President Biden. It was all a lie. And OANN knew it.

**ANSWER:** Defendant admits that one or more Smartmatic entities provided election technology and services to Los Angeles County during the 2020 U.S. election. Defendant denies that the allegations completely and accurately characterize OAN's reporting. Defendant further denies that OAN knowingly reported anything that was false (or engaged in reckless disregard for the truth). Defendant further denies that OAN lacked evidence to support its reporting. Defendant further denies that OAN chose to spread disinformation. Defendant further responds that the allegations of Paragraph 7 are defective and ambiguous because they provide no specific time reference for what OAN allegedly knew and when. Defendant further denies the remaining allegations by Plaintiffs against Defendant in Paragraph 7.

**ALLEGATION NO. 8:**

When it was founded, OANN told its audience that its objective was to provide fact-based, unbiased news. OANN told its audience that it would be their trusted source for facts, not rhetoric and spin. In its fight for ratings and viewers, OANN chose to ignore the promise it made to its audience. OANN chose to publish disinformation about Smartmatic and the 2020 U.S. election instead of fact-based, unbiased news.

**ANSWER:** Defendant admits that OAN told its audience that OAN's objective was to provide fact-based, unbiased news. Defendant further admits that OAN told its audience that OAN would be a trusted source for facts, not rhetoric or spin. Defendant denies that OAN ignored any promise made to OAN's audience. Defendant further denies that OAN chose to publish disinformation about any Smartmatic entity and the 2020 U.S. election instead of fact-based, unbiased news.

Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 8.

**ALLEGATION NO. 9:**

OANN's choices have consequences.  OANN's choices have damaged Smartmatic's reputation and brand by casting it as a corrupt company whose technology and software was used to steal election the 2020 U.S. election.  OANN must be held accountable for its deliberate choice to spread disinformation.

**ANSWER:** Defendant admits that choices often have consequences (such as OAN's choice to cover news truthfully, followed by the consequence of audience enlightenment).  Defendant denies that OAN harmed any Smartmatic entity's reputation in any fashion that gives rise to liability or proximately caused recoverable damages.  Defendant further denies that the allegations completely and accurately characterize OAN's reporting. Defendant further denies that OAN spread disinformation (or did so deliberately).  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 9.

## RESPONSES TO PLAINTIFFS' PARTY ALLEGATIONS

**ALLEGATION NO. 10:**

Plaintiff Smartmatic USA Corp. is an election technology and software company.  The company's principal place of business is in Boca Raton, Florida.  It is incorporated in Delaware. During the 2020 U.S. Presidential election, Smartmatic USA Corp. provided election technology and software for Los Angeles County.  Its election technology and software were not used in any other county or state anywhere in the United States in the 2020 U.S. election.  Even in Los Angeles County, the company played no part in the counting or tabulation of votes.

**ANSWER:** Defendant admits the allegations in the first four sentences of Paragraph 10. Defendant denies that no technology or software associated with or connected to any Smartmatic entity was used outside Los Angeles County during the 2020 U.S. election.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the last sentence of Paragraph

10 and therefore denies it.  Defendant denies any remaining allegations by Plaintiffs against

Defendant in Paragraph 10.

**ALLEGATION NO. 11:**

Plaintiff Smartmatic International Holding B.V. owns Smartmatic USA Corp. (100% ownership).  The company's principal place of business is in Amsterdam, Netherlands.  It is incorporated in the Netherlands.  Smartmatic International Holding B.V. owns multiple companies operating under the Smartmatic brand in almost two dozen countries.  Smartmatic International Holding B.V. did not play any role in the 2020 U.S. election outside of the technology and software provided by Smartmatic USA Corp. for Los Angeles County.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 11 and therefore denies them.

**FOOTNOTE NO. 2:**

Smartmatic International Holding B.V. owns election technology and software companies in United States (Smartmatic USA Corp.), Barbados, Australia, United Kingdom, Panama, Haiti, Belgium, Singapore, Netherlands, Mexico, Ecuador, Brazil, Estonia, Taiwan, and the Philippines as well as branches in Colombia, Argentina, Honduras, Pakistan, Italy, Jamaica, and El Salvador.

**ANSWER:**  Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations in Footnote No. 2 and therefore denies them.

**ALLEGATION NO. 12:**

Plaintiff SGO Corporation Limited owns Smartmatic International Holding B.V. (100% ownership).  The company's principal place of business is in London, United Kingdom.  It is incorporated in the United Kingdom.  SGO Corporation Limited is the parent company of Smartmatic International Holdings B.V.  SGO Corporation Limited did not play any role in the 2020 U.S. election outside of the technology and software provided by Smartmatic USA Corp. for Los Angeles County.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 12 and therefore denies them.

**ALLEGATION NO. 13:**

Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited are collectively referred to as "Smartmatic" in this complaint.  Each of the companies owned by SGO Corporation Limited, directly or through Smartmatic International Holding B.V.,

was injured as a result of OANN's disinformation campaign that irreparably tarnished the Smartmatic brand (corporate and product) in the United States and throughout the world.

**ANSWER:** Defendant admits that Plaintiffs sometimes refer in the Complaint to Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited collectively as "Smartmatic," but Defendant denies that that collective reference in the Complaint is consistent by Plaintiffs and Defendant declines to engage in the same collective reference. Defendant further denies that referring to all Smartmatic entities or Smartmatic-affiliated entities as "Smartmatic" in the Complaint is proper in light of the "of and concerning" defamation doctrine. Defendant further denies that OAN harmed any plaintiff in any fashion that gives rise to liability or proximately caused recoverable damages. Defendant further denies that OAN engaged in a disinformation campaign or that any Smartmatic brand was irreparably tarnished anywhere in the world by OAN in a way that was not justified and protected by the law. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 13.

**ALLEGATION NO. 14:**

Defendant Herring Networks, Inc. d/b/a One America News Network ("OANN") is a for-profit cable news channel. Herring Networks, Inc. was formerly known as Herring Broadcasting Company, Inc. until approximately January 22, 2014. OANN's principal place of business is in San Diego, California, and Herring Networks, Inc. is incorporated in California. In addition to its California presence, OANN maintains a substantial operation in Washington, D.C. OANN has a Washington, D.C. news bureau and broadcasts out of its studio located at 101 Constitution Avenue NW, Washington, D.C. 20001. OANN's "About" page states that OANN "has its primary production operations in California and Washington, DC."

**ANSWER:** Defendant admits that it operates a for-profit cable news channel known as One America News Network ("OAN"). Defendant admits that it was formerly known as Herring Broadcasting Company, Inc. until January 22, 2014, that its principal place of business is in San Diego, California, and that it is incorporated in California. Defendant admits that OAN maintains a newsgathering bureau in Washington, D.C. and that OAN's website states that it has primary production operations in California and Washington, D.C., but denies that OAN maintains

"substantial operations" in Washington, D.C. Defendant further denies that OAN broadcasts out of its newsgathering bureau located at 101 Constitution Avenue NW, Washington, D.C. 20001. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 14.

**FOOTNOTE NO. 3:**

As used in the Complaint, references to OANN include its anchors, reporters, and producers working at the direction of OANN and within the scope of their employment with OANN.

**ANSWER:** Defendant admits that Plaintiffs have defined "OANN" to include "anchors, reporters, and producers working at the direction of OANN and within the scope of their employment with OANN," but denies that the actions of all such individuals are appropriately at issue in this case or attributable to OAN. Defendant further denies that Plaintiffs' attempt to refer to all of these entities as a monolith is proper. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Footnote No. 3.

**ALLEGATION NO. 15:**

In addition to operating a cable news channel, OANN also operates its website, OANN.com, and company social media accounts, including Facebook (https://www.facebook.com/OneAmericaNewsNetwork/), Twitter (https://twitter.com/OANN), and Instagram (https://www.instagram.com/one_america_news_/). OANN makes its content available on its website, on multiple digital platforms including YouTube and Rumble, and on the subscription streaming service, KlowdTV.

**ANSWER:** Defendant admits the allegations in Paragraph 15.

**ALLEGATION NO. 16:**

OANN is available in 35 million homes through national cable providers and regional video providers. (OANN, *One America News Network Has Strong Ratings Going Into The 2020 Presidential Elections*, May 22, 2019 (Exhibit 139).) OANN's cable news channel is available for purchase through multiple national providers, including AT&T U-verse, DirecTV, and Verizon FiOS. OANN is also available for purchase outside of the United States, including in Canada, Germany, and the United Kingdom. In March 2019, OANN claimed that Comscore data, a media analytics company, showed that OANN ranked as "the fourth-highest service" in the "Cable,

News/Business/Info networks" genre.  (*Id.*)  According to the same data, OANN ranked behind only Fox News Channel, MSNBC, and CNN.  (*Id.*)

**ANSWER:**  The referenced document speaks for itself, thus no response is required.  To the extent a response is required, Defendant states that the referenced document is out of date and denies that it is currently accurate.  Defendant denies that OAN is available to 35 million homes through national cable providers and regional video providers or is available on AT&T U-verse, DirecTV, or Verizon FiOS.  Defendant admits OAN is available for purchase outside of the United States, including in Canada, Germany, and the United Kingdom.  Defendant further admits that OAN accurately reported in March 2019 that its Comscore data showed it ranked as "the fourth-highest service" in the "Cable, News/Business/Info networks" genre, behind Fox News Channel, MSNBC, and CNN.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 16.

### RESPONSES TO PLAINTIFFS' JURISDICTION & VENUE ALLEGATIONS

**ALLEGATION NO. 17:**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendant, and the amount in controversy as to each Plaintiff exceeds $75,000.00, exclusive of interests and costs.

**ANSWER:**  Defendant does not contest subject matter jurisdiction but denies that any plaintiff is entitled to any financial recovery in this matter.

**ALLEGATION NO. 18:**

This Court has personal jurisdiction over OANN pursuant to § 13-423 of the District of Columbia Code because (1) OANN transacted business within the District of Columbia, including by maintaining and operating a news bureau in the District of Columbia; producing, reviewing, editing, and broadcasting programming from within the District of Columbia, including the programming featuring defamatory statements at issue in this case; employing D.C. resident reporters who made many of the defamatory statements in the District of Columbia; and offering services to, broadcasting to, and maintaining television and digital platform subscribers in the District of Columbia; (2) OANN caused tortious injury by acts committed within the District of Columbia, including and specifically by making false and defamatory statements about Smartmatic on broadcasts from and within the District of Columbia; and (3) OANN caused

tortious injury by acts committed outside the District of Columbia while regularly doing business within, engaging in persistent conduct within, and deriving substantial revenues from services rendered within the District of Columbia.

**ANSWER:** Paragraph 18 asserts legal conclusions, to which no response is required.  To the extent a response is required, as set forth in Defendant's briefing on its motion to dismiss or transfer (ECF Nos. 21, 23), Defendant denies personal jurisdiction exists in the District of Columbia in this case.  Defendant admits OAN has a newsgathering bureau in the District of Columbia but denies that OAN broadcasts from that location.  Defendant further admits that OAN has employed reporters in the District of Columbia.  Defendant further admits OAN's programming is available in the District of Columbia.  Defendant further admits OAN has viewers in the District of Columbia.  Defendant denies that OAN made false or defamatory statements about any Smartmatic entity that give rise to liability or damages.  Defendant further denies OAN caused tortious injury in the District of Columbia because, as Plaintiffs admit, Plaintiffs have and have had for quite some time no presence or business there (and Plaintiffs claim that the only role any Smartmatic entity had in the 2020 United States election was in Los Angeles).  Defendant further denies that it regularly does business in the District of Columbia, engaged in a persistent course of conduct there, or derived substantial revenue there sufficient to give rise to personal jurisdiction as to the allegations in the Complaint.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 18.

## ALLEGATION NO. 19:

Requiring OANN to litigate these claims in the District of Columbia does not offend traditional notions of fair play and substantial justice and is permitted by the Due Process Clause of the United States Constitution.  Smartmatic's claims arise in part from defamatory statements that OANN made about Smartmatic from and within the District of Columbia.  OANN avails itself of numerous privileges in the District of Columbia, including those set forth above.

**ANSWER:** Paragraph 19 asserts legal conclusions, to which no response is required.  To the extent a response is required, as set forth in Defendant's briefing on its motion to dismiss or transfer

(ECF Nos. 21, 23), Defendant denies that the exercise of personal jurisdiction in this case does not offend traditional notions of fair play and substantial justice under the Due Process Clause of the United States Constitution. Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 19.

## ALLEGATION NO. 20:

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims in this Complaint occurred in this District and, as discussed above, because OANN is subject to the Court's personal jurisdiction in this District.

**ANSWER:** Paragraph 20 asserts legal conclusions, to which no response is required. To the extent a response is required, as set forth in Defendant's briefing on its motion to dismiss or transfer (ECF Nos. 21, 23), Defendant denies that venue is proper in the District of Columbia in this case. Defendant further denies that a substantial part of the events giving rise to the claims in the Complaint occurred here or that Plaintiffs have adequately pled or established personal jurisdiction over Defendant in the District of Columbia in this case. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 20.

## RESPONSES TO PLAINTIFFS' ALLEGED FACTS

## ALLEGATION NO. 21:

Smartmatic is a victim of OANN's decision to increase its viewership and influence by spreading disinformation. As a news channel, OANN prides itself on providing viewers with "credible, honest, unbiased reporting." OANN and its journalists are legally and ethically bound to provide factually accurate information. OANN abused the trust placed in it by viewers and readers in the United States. OANN's disinformation campaign was not only a betrayal of its legal and ethical obligations, but also an action that caused irreparable damage to Smartmatic and contributed to an erosion of trust in the U.S. democratic process.

**ANSWER:** Defendant admits that OAN prides itself on providing viewers with credible, honest, unbiased reporting. In asserting that "OANN and its journalists are legally and ethically bound to provide factually accurate information," Paragraph 21 asserts a legal conclusion to which no response is required; nevertheless, Defendant acknowledges that legal and ethical standards exist

in the journalistic profession and that OAN dutifully abides by those standards.  Defendant denies

the remaining allegations by Plaintiffs against Defendant in Paragraph 21.

I.      **The reputation of the Smartmatic entities in the United States was bad before the 2020 U.S. election and deteriorated further after the disaster in Los Angeles County.[1]**

**ALLEGATION NO. 22:**

Antonio Mugica and Roger Piñate founded Smartmatic in 2000 in Boca Raton, Florida.  At the start, Smartmatic focused mainly on the banking industry, offering secure online protocols enabling hyper-secure interconnection between digital devices.

**ANSWER:** Defendant denies the allegations in Paragraph 22 because it's unclear what

"Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as

"Smartmatic."   Defendant further notes that Mr. Mugica is listed as CEO of "Smartmatic" on

www.smartmatic.com    (see    https://www.smartmatic.com/us/about/leadership/detail/antonio-

mugica/, last visited August 26, 2022), and Mr. Piñate is listed as President of "Smartmatic" on

www.smartmatic.com (*see* https://www.smartmatic.com/us/about/leadership/detail/roger-pinate/,

last visited August 26, 2022), but www.smartmatic.com doesn't specify which "Smartmatic"

entities it's referring to in listing "Smartmatic." Mr. Mugica's Wikipedia entry (*see*

https://en.wikipedia.org/wiki/Antonio_Mugica, last visited August 26, 2022) says, "In the late

1990s, Mugica along with two other Venezuelan colleagues, Alfredo Jose Anzola and Roger

Pinate, created a system where thousands of inputs could be placed into a network simultaneously.

. . .  Smartmatic was formed out of the SBC organization that was owned 51% by Smartmatic,

47%, Venezuelan state telecommunications organization CANTV and 2% by an affiliated

company  Bizta, also owned by the owners of Smartmatic, with a board member from the Bolivian

government during the time an industry-fostering loan from a government institution was in force.

---

[1] The headings used by Plaintiffs in the Complaint are inaccurate; to the extent a response to those erroneous headings is required, Defendant denies them.  Defendant has provided alternative headings that are consistent with the facts.

In 2004 Smartmatic was granted a contract worth $128 million with the CNE, the government's elections agency, to acquire its products (an automated voting system, voting machines and support services) for the Regional Elections scheduled for that year's 2nd semester.   But then, after collecting the required number of citizens' signatures, the 2004 Venezuelan recall referendum was activated to remove Hugo Chavez from the presidency, and Smartmatic had to hastily tailor the Voting System to the changed requirements. . . .   In 2014, Mugica together with British Lord Mark Malloch-Brown announced the launching of the SGO Corporation Limited, a holding company headquartered in London whose primary asset is the election technology and voting machine manufacturer Smartmatic.   Lord Malloch-Brown became chairman of the board of directors of SGO since its foundation, while Mugica remained as CEO of the new venture.   They were joined on SGO's board by Sir Nigel Knowles, Global CEO of DLA Piper, entrepreneur David Giampaolo and Roger Pinate, Smartmatic's COO."   Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 22.

## ALLEGATION NO. 23:

Smartmatic turned its focus to election technology and software following the 2000 U.S. election and the "hanging chad" controversy in Florida.  Mr. Mugica and Mr. Piñate realized that flawed technology had given election automation a bad reputation.  With that in mind, they began to develop advanced voting platforms to restore people's faith in technology-driven elections. They wanted to take the same technology built for secure bank automation and use it to register, count, and transmit votes.  They believed this could give people confidence that their ballots would be accurately counted.

**ANSWER:** Defendant denies the allegations in Paragraph 23 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as "Smartmatic."   Defendant is without knowledge or information sufficient to form a belief as to what Mr. Mugica and Mr. Piñate allegedly realized, what their alleged motivations were, what they allegedly wanted, or what they allegedly believed; therefore, Defendant denies those

allegations.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 23.

**ALLEGATION NO. 24:**

Since 2003, Smartmatic's election technology has processed more than 5 billion secure votes worldwide without a single security breach. Smartmatic has provided election services and implemented election technologies for election commissions in more than 25 countries on five continents.

**ANSWER:** Defendant denies the allegations in Paragraph 24 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as "Smartmatic."  Defendant further denies that no Smartmatic entity has suffered a single security breach since 2003 (and further notes that the reference to 2003 suggests that one or more Smartmatic entities suffered a security breach or security breaches before 2003).  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations by Plaintiffs in Paragraph 24 and therefore denies them.

**ALLEGATION NO. 25:**

With each election, Smartmatic's mission is, and always has been, to increase integrity in the democratic process through enhanced citizen engagement and trust in election systems. Smartmatic harnesses the full power of technology to deliver reliable, accurate and auditable election results.

**ANSWER:** Defendant denies the allegations in Paragraph 25 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as "Smartmatic."  Defendant further denies the remaining allegations by Plaintiffs in Paragraph 25.

A.     **No Smartmatic entity has ever been a success in the United States.**

**ALLEGATION NO. 26:**

Today, Smartmatic provides end-to-end election services to local, state, and national governments.  Its portfolio of products has grown to include a comprehensive suite of technologies and services to make every phase of the election process more efficient and transparent.

**ANSWER:** Defendant denies the allegations in Paragraph 26 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as "Smartmatic."  Defendant further denies that any Smartmatic entity's "portfolio of products has grown to include a comprehensive suite of services to make every phase of the election process more efficient and transparent."  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations by Plaintiffs in Paragraph 26 and therefore denies them.

**ALLEGATION NO. 27:**

Smartmatic's products now include electronic voting machines (voters vote electronically using a voting machine with a touch screen, and those machines count the votes as they are made), electronic counting machines (voters vote with paper ballots that can be counted electronically), ballot marking devices (voters make their selection on touch screen machines that then print a paper ballot to be counted later by the government election authority), voter management (voter databases are built using biographic and/or biometric information to ensure that the voters are legally entitled to vote, and that there is one-voter/one-vote), poll worker support (technology facilitates poll station administration and enforcement of regulations), online voting (convenient and verifiable online voting platforms) and election management platforms (allows authorities to configure their systems, monitor operations, announce results and train staff).

**ANSWER:** Defendant denies the allegations in Paragraph 27 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as "Smartmatic."  Defendant admits that one or more Smartmatic entity(ies) offer products that include various types of voting platforms, but Defendant lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations by Plaintiffs in Paragraph 27 and therefore denies them.

**ALLEGATION NO. 28:**

Smartmatic's growth and product development are a story of industry-leading advancements and successes through relentless attention to reliability, accuracy and auditability. The following are just some of the company's achievements over the years:

**ANSWER:** Defendant denies the allegations in Paragraph 28 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as "Smartmatic." Defendant further denies any remaining allegations by Plaintiffs in Paragraph 28.

**ALLEGATION NO. 29:**

In 2004, Smartmatic's technology was used in the first automated election in Venezuela. It was the first election in the world to have both an electronic record and a paper trail of every vote made, which could be cross-checked and audited, thus ensuring the accuracy of election totals.

**ANSWER:** Defendant denies the allegations in Paragraph 29 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as "Smartmatic." Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations by Plaintiffs in Paragraph 29 and therefore denies them.

**ALLEGATION NO. 30:**

From 2005 to 2007, Smartmatic's election technology and software were used in multiple U.S. states as well as Washington, D.C.

**ANSWER:** Defendant denies the allegations in Paragraph 30 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as "Smartmatic." Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations by Plaintiffs in Paragraph 30 and therefore denies them.

**ALLEGATION NO. 31:**

In 2007, Smartmatic's election technology and software were used in Curacao's election, and results were reported in record time.

**ANSWER:** Defendant denies the allegations in Paragraph 31 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as

"Smartmatic."  Defendant is without knowledge or information sufficient to form a belief as to the

truth of the remaining allegations by Plaintiffs in Paragraph 31 and therefore denies them.

## ALLEGATION NO. 32:

In 2008, Smartmatic won a complex bid to run the Philippines' first fully automated elections, which were conducted two years later.

**ANSWER:** Defendant denies the allegations in Paragraph 32 because it's unclear what

"Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as

"Smartmatic."  Defendant is without knowledge or information sufficient to form a belief as to the

truth of the remaining allegations by Plaintiffs in Paragraph 32 and therefore denies them.

## ALLEGATION NO. 33:

In 2009, Mexico used Smartmatic's biometric technology to register citizens aged 5-17 so that citizens could get new identity cards.  That same year, Smartmatic set the record for fastest biometric voter registration in the world by registering five million Bolivians in record time.

**ANSWER:** Defendant denies the allegations in Paragraph 33 because it's unclear what

"Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as

"Smartmatic."  Defendant is without knowledge or information sufficient to form a belief as to the

truth of the remaining allegations by Plaintiffs in Paragraph 33 and therefore denies them.

## ALLEGATION NO. 34:

In 2010, Smartmatic helped deliver the largest fully outsourced automated election in history.  Fifty million voters in the Philippines participated in the general election, and voters were able to see the results in less than a day.  That same year, the United Nations Development Program selected Smartmatic to supply biometric technology and associated services in order to upgrade Zambia's voter register.  The number of Zambians registered to vote increased by 40%.

**ANSWER:** Defendant denies the allegations in Paragraph 34 because it's unclear what

"Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as

"Smartmatic."  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations by Plaintiffs in Paragraph 34 and therefore denies them.

**ALLEGATION NO. 35:**

In 2011, Smartmatic won an 18-year contract to implement and operate an automated fare collection and fleet management system in Cartagena.

**ANSWER:** Defendant denies the allegations in Paragraph 35 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as "Smartmatic."  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations by Plaintiffs in Paragraph 35 and therefore denies them.

**ALLEGATION NO. 36:**

In 2012, Smartmatic set up election services for Brazil and hired and trained technicians to work across Brazil's thousands of municipalities with more than 500,000 pieces of election equipment.  Belgium awarded Smartmatic a contract to design and manufacture its election hardware and software for the next 15 years.  That same year, Smartmatic deployed 20,000 machines for Belgium's automated election.

**ANSWER:** Defendant denies the allegations in Paragraph 36 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as "Smartmatic."  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations by Plaintiffs in Paragraph 36 and therefore denies them.

**ALLEGATION NO. 37:**

In 2013, Smartmatic's technology processed more than 50 million ballots in just 10 hours in the Philippines.  Venezuela organized its presidential elections in 34 days (record time) thanks to Smartmatic technology and services.  All parties audited the voting platform 15 times, contributing to the public's trust in the election results.  And, in that year, Haiti selected Smartmatic to modernize Haiti's national ID and civil registry system.

**ANSWER:** Defendant denies the allegations in Paragraph 37 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as

"Smartmatic."  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations by Plaintiffs in Paragraph 37 and therefore denies them.

**ALLEGATION NO. 38:**

In 2014, Smartmatic's technology was used in Ecuador's sectional election, and the official results were announced in less than 60 minutes.  Belgium conducted the first European Union Parliamentary election using a voter-verified, e-voting solution with Smartmatic's technology. Bulgaria piloted an e-voting system with a tailor-made Smartmatic solution.  And, that same year, Smartmatic technology was used to expedite the presidential election results in Brazil in fifteen of the country's most remote states.

**ANSWER:** Defendant denies the allegations in Paragraph 38 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as "Smartmatic."  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations by Plaintiffs in Paragraph 38 and therefore denies them.

**ALLEGATION NO. 39:**

In 2015, Smartmatic's technology was used to improve public safety in the Philippines.  In the province of Bataan, a Command Center powered by Smartmatic's technology was created to help authorities improve public safety and emergency management.  That same year, the Election Commission of Zambia partnered with Smartmatic to continue updating its biometric electoral register.  Smartmatic provided Zambia with 2,000 enrollment devices to register new voters and update existing information.  Smartmatic also conducted its first election project in Argentina.  The electronic voting solution delivered official results 45 minutes after the polls closed.

**ANSWER:** Defendant denies the allegations in Paragraph 39 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as "Smartmatic."  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations by Plaintiffs in Paragraph 39 and therefore denies them.

**ALLEGATION NO. 40:**

In 2016, Smartmatic deployed 30,500 biometric devices to authenticate voters in Uganda. Smartmatic's online voting system was used in Utah's Republican caucus.  It was the world's first election using blockchain technology.  For the third time, Smartmatic supplied technology and services to the Philippines.  Over 80% of the results were transmitted by election night.  Brazil used Smartmatic's technology during its municipal election and again streamlined the process by using Smartmatic data and voice communications technology in the fifteen most remote states.

And, that same year, authorities in Oman used Smartmatic vote counting machines in each polling station.

**ANSWER:** Defendant denies the allegations in Paragraph 40 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as "Smartmatic."  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations by Plaintiffs in Paragraph 40 and therefore denies them.

**ALLEGATION NO. 41:**

In 2017, Sierra Leone used Smartmatic's technology to modernize its national civil registry by equipping 2,600 registration sites.  Argentina used Smartmatic's biometric technology to facilitate voter authentication.  Smartmatic also helped the Lombardy region in Italy conduct the country's first fully automated election.  Armenia used Smartmatic's biometric devices to manage voters in polling centers in the country's parliamentary elections.  And, in that same year, Estonia set a new record for online voting participation at 31% during the local elections held in October using Smartmatic's election technology, which was developed with Smartmatic's local partner (Cybernetica).

**ANSWER:** Defendant denies the allegations in Paragraph 41 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as "Smartmatic."  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations by Plaintiffs in Paragraph 41 and therefore denies them.

**ALLEGATION NO. 42:**

In 2018, the Philippines continued to modernize its elections with Smartmatic by acquiring more than 97,000 vote-counting machines.  In May, voters in the northernmost province of Norway used the online voting solution developed by the Smartmatic-Cybernetica Centre of Excellence for Internet Voting during a referendum and 85.5% of the population used online voting.  And, that same year, Belgium used Smartmatic's voting machines with assistive technology for voters with visual disabilities.

**ANSWER:** Defendant denies the allegations in Paragraph 42 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as

"Smartmatic." Defendant is without knowledge or information sufficient to form a belief as to the

truth of the remaining allegations by Plaintiffs in Paragraph 42 and therefore denies them.

## ALLEGATION NO. 43:

In 2019, Estonia once again set a new participation record for online voting using Smartmatic's technology. Over 44% of all votes during its parliamentary elections were cast through online voting. Smartmatic's election technology was used in Estonia, Belgium, and Bulgaria during the elections to the European Parliament. Belgium deployed over 23,000 e-voting machines at 4,200 polling stations and Bulgaria deployed 3,000 e-voting machines. The Philippines used Smartmatic technology to conduct its fourth national automated election, and a manual audit showed 99.9953% accuracy.

**ANSWER:** Defendant denies the allegations in Paragraph 43 because it's unclear what

"Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as

"Smartmatic." Defendant is without knowledge or information sufficient to form a belief as to the

truth of the remaining allegations by Plaintiffs in Paragraph 43 and therefore denies them.

### B. Smartmatic-related and affiliated technology has not demonstrated itself to be secure and reliable.

## ALLEGATION NO. 44:

The secret to Smartmatic's success has been showing its commitment to its mission statement: to provide secure, reliable, and auditable election technology and software. Counties, states, and countries that choose to use Smartmatic's election technology and software understand that they are using a technology that has processed over five billion votes without any security breaches and with an auditable paper trail demonstrating that the elections were not rigged, hacked, or stolen.

**ANSWER:** Defendant denies the allegations in Paragraph 44 because it's unclear what

"Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as

"Smartmatic." Defendant further denies that no Smartmatic entity has suffered a security breach.

Defendant is without knowledge or information sufficient to form a basis as to the truth of the

allegations about the beliefs of counties, states, and countries that choose to use any Smartmatic

entity's election technology and therefore denies those allegations.   Defendant denies the remaining allegations by Plaintiffs in Paragraph 44.

**ALLEGATION NO. 45:**

One of Smartmatic's best marketing tools is case studies.  Case studies are opportunities for Smartmatic to demonstrate to a potential client how Smartmatic's election technology and software have been used by other counties, states and countries to improve the voter experience and provide secure, reliable, and auditable results.  These case studies demonstrate, time and time again, that Smartmatic's election technology and software can ensure quick and accurate voting results.

**ANSWER:** Defendant denies the allegations in Paragraph 45 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as "Smartmatic."  Defendant further denies that all Smartmatic entities have in every instance ensured quick and accurate results.  Defendant is without knowledge or information sufficient to form a basis as to the truth of the remaining allegations by Plaintiffs in Paragraph 45 and therefore denies them.

**ALLEGATION NO. 46:**

Another one of Smartmatic's key marketing tools is references.  Most opportunities for new clients include providing referrals who can talk about their experience with Smartmatic's election technology and software.  Smartmatic's past successes, which the referrals discuss, are critical to new clients.  New clients want to know that Smartmatic's election technology and software are secure, reliable, and auditable.  That is what they learn from Smartmatic's referrals.

**ANSWER:** Defendant denies the allegations in Paragraph 46 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as "Smartmatic."  Defendant is without knowledge or information sufficient to form a basis as to the truth of the allegations in Paragraph 46 and therefore denies them.

**ALLEGATION NO. 47:**

Finally, Smartmatic is also fortunate to have been recognized as one of the best election technology and software companies in the world.  For example, in 2005, the Carter Center and the European Union identified Smartmatic's election technology as one of the most secure, reliable and auditable election technologies in the world.  In 2012, former President Jimmy Carter called

Smartmatic's solution "the best voting system in the world." These accolades and recognitions by some of the world's foremost election authorities are yet another key to Smartmatic's success. Its reputation as one of the "best voting systems in the world" is important for expanding existing relationships and developing new relationships with counties, states and countries looking to improve their election technology.

**ANSWER:** Defendant denies the allegations in Paragraph 47 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as "Smartmatic." Defendant denies Plaintiffs' characterization that any Smartmatic is "one of the best election technology and software companies in the world." Defendant is without knowledge or information sufficient to form a basis as to the truth of the remaining allegations by Plaintiffs in Paragraph 47 and therefore denies them.

### C.   The use of Smartmatic-related and affiliated technology caused problems in Los Angeles County.

**ALLEGATION NO. 48:**

The 2020 U.S. election was a turning point for Smartmatic. In June 2018, Los Angeles County selected Smartmatic to help election authorities manufacture and implement a new election system for the county. This was a significant opportunity for Smartmatic to once again demonstrate the security, reliability and auditability of its election technology—this time on an even bigger stage. Success in Los Angeles County positioned Smartmatic to market its election technology and software to other counties and states in the United States and to voting jurisdictions around the world who were inclined to follow Los Angeles County's lead.

**ANSWER:** Defendant denies the allegations in Paragraph 48 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as "Smartmatic." Defendant admits that a Smartmatic entity's products and/or services were used in Los Angeles County in the 2020 United States election. Defendant denies that the system designed for Los Angeles County has any relevance to any Smartmatic entity's products or services used elsewhere globally. Defendant further denies the foundation-less speculation that "success in Los Angeles County positioned Smartmatic to market its election technology and software to other counties and states in the United States and to voting jurisdictions around the world who were

inclined to follow Los Angeles County's lead." Defendant is without knowledge or information sufficient to form a basis as to the truth of the remaining allegations by Plaintiffs in Paragraph 48 and therefore denies them.

> ### 1. Los Angeles County made the unfortunate decision to use Smartmatic-related and affiliated technology.

**ALLEGATION NO. 49:**

Los Angeles County is the nation's most populous voting jurisdiction with more than 5.4 million registered voters. Los Angeles County is one of the most complex election jurisdictions because of its geographic size, logistics, high bar for certification requirements, multiple language support requirements, and legally-mandated accessibility features for voters with disabilities.

**ANSWER:** Defendant is without knowledge or information sufficient to form a basis as to the truth of the allegations in Paragraph 49 and therefore denies them.

**ALLEGATION NO. 50:**

Since 2009, the Los Angeles County's Registrar-Recorder/County Clerk (the "Department") had been working to improve the voting experience through its Voting Solutions for All People ("VSAP") initiative. Given the size, complexity and demographics of Los Angeles County, one of the Department's top priorities was to remove barriers and obstacles that made it difficult for voters to participate in the electoral process.

**ANSWER:** Defendant is without knowledge or information sufficient to form a basis as to the truth of the allegations in Paragraph 50 and therefore denies them.

**ALLEGATION NO. 51:**

The VSAP initiative sought to ensure that voters in Los Angeles County had greater opportunities to participate by providing expanded options for voting in a manner that is convenient, accessible and secure. The Department described key aspects of the VSAP initiative as follows:

    a.    Redesigned Vote-by-Mail ("VBM") Ballot: The new VBM ballot was introduced to County voters in the November 2018 General Election. The new full-face VBM ballot features larger font sizes and clearer instructions making it easy to read, complete and return. In addition, postage is prepaid, so there is no longer a need to attach a stamp. Voters who prefer to drop off their ballot in-person can do so at any VBM drop-off location or vote center throughout the County.

    b.    Redesigned Ballot Marking Device ("BMD"): The BMD replaces the County's legacy InkaVote system. The BMD allows voters to customize their experience

with both visual and audio access in thirteen languages. The BMD offers accessibility features that provide voters with disabilities equality and independence in casting ballots. For auditability and security, the BMDs produce human-readable paper ballots that exceed national voting system security standards.

c.  New Electronic Pollbook ("e-Pollbook"): The e-Pollbook replaces the printed roster that was previously used at voting centers for voters to check in. The e-Pollbook is connected through a secure private network to the State of California database of eligible voters. This allows voters to check in and cast their ballot at any vote center in the County. The e-Pollbook is updated in real-time and will indicate if a voter has already cast a ballot ensuring voting integrity. In addition, the e-Pollbook enables eligible voters to register to vote at any vote center or update their registration.

d.  New Interactive Sample Ballot ("ISB"): The ISB is a new convenient option to expedite the in-person voting experience. The ISB allows voters to mark their sample ballot digitally through a web-based application accessible through the Department's website. Upon completing selections, a Quick Response Code is generated, producing a Poll Pass that the voter can print or save onto a mobile device and which the voter can then take to any vote center to be scanned on the BMD. The voter's selections will be imported onto the BMD allowing the voter to once again review the selections and make any further changes prior to casting their ballot.

e.  Redesigned Modern Tally System: The Tally System is an innovative solution for paper ballot scanning and tabulation that is specifically designed to support Los Angeles County's need to process millions of ballots. It utilizes high-speed scanners to capture high-definition images of ballots and a message brokering architecture to process large volumes of digital images quickly and accurately. From paper ballot to digital image to final cast vote record, the Tally System captures data about how each ballot is read and processed, allowing for the tracking and auditing of individual ballots to verify the integrity and accuracy of election results.

f.  Redesigned Vote Centers: Vote centers were located throughout the entire County. They each underwent comprehensive surveys and assessments to ensure they met Americans with Disabilities Act accessibility requirements and other qualifying criteria such as on-site parking availability, convenient access to public transit, and hours of operation.

g.  New Mobile Vote Center Program: The Department also implemented a new Mobile Vote Center Program to further expand voting opportunities to the public. The program supplemented existing vote centers that might have been highly congested and provided voting services to communities that might have been geographically isolated or not appropriately served by a standard vote center. Mobile voting units were deployed on a scheduled basis across the County to

provide enhanced voting services and raise voter awareness during the voting period.

**ANSWER:** Defendant denies that the system designed for Los Angeles County has any relevance to any Smartmatic entity's products or services used elsewhere globally.  Defendant is without knowledge or information sufficient to form a basis as to the truth of the remaining allegations by Plaintiffs in Paragraph 51 and therefore denies them.

**ALLEGATION NO. 52:**

The VSAP initiative included the first government-designed and owned voting system. The new system allowed voters to vote at any of the County's 978 centralized vote centers, a change made possible "by advanced technology like electronic poll books and ballot marking devices."

**ANSWER:** Defendant denies that the system designed for Los Angeles County has any relevance to any Smartmatic entity's products or services used elsewhere globally.  Defendant is without knowledge or information sufficient to form a basis as to the truth of the remaining allegations by Plaintiffs in Paragraph 52 and therefore denies them.

> **2.   Los Angeles County gave a significant role to Smartmatic-related and affiliated technology in 2020.**

**ALLEGATION NO. 53:**

Smartmatic was honored to be selected by the Department to assist with the VSAP initiative.  In June 2018, Smartmatic entered into a contract to manufacture (hardware and software) and implement new custom-designed BMDs in collaboration with Los Angeles County as part of its VSAP initiative.

**ANSWER:** Defendant denies the allegations in Paragraph 53 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as "Smartmatic."  Defendant further denies that the system designed for Los Angeles County has any relevance to any Smartmatic entity's products or services used elsewhere globally.  Defendant is

without knowledge or information sufficient to form a basis as to the truth of the remaining allegations by Plaintiffs in Paragraph 53 and therefore denies them.

**ALLEGATION NO. 54:**

Smartmatic's role in the initiative was limited, but important to the company, as it provided an opportunity to demonstrate its technology and software in an important jurisdiction in the United States.  By the end of 2019, Smartmatic had developed the BMDs and was manufacturing 31,100 units for Los Angeles County.  Smartmatic also performed systems integration of the BMDs.

**ANSWER:** Defendant denies the allegations in Paragraph 54 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as "Smartmatic."  Defendant further denies that the system designed for Los Angeles County has any relevance to any Smartmatic entity's products or services used elsewhere globally.  Defendant is without knowledge or information sufficient to form a basis as to the truth of the remaining allegations by Plaintiffs in Paragraph 54 and therefore denies them.

**ALLEGATION NO. 55:**

In total, Smartmatic provided the following technology and services to Los Angeles County under the VSAP initiative: (1) engineered and manufactured the BMD hardware, (2) programmed and installed the BMD software, (3) led the California certification process, (4) created the backend software to manage the devices, (5) provided systems integration services, (6) built the VSAP operations center, (7) handled logistics and setup/breakdown of the vote centers, (8) oversaw real-time data management for deployment, and (9) supplied Help Desk services on Election Day.

**ANSWER:** Defendant denies the allegations in Paragraph 55 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as "Smartmatic."  Defendant further denies that the system designed for Los Angeles County has any relevance to any Smartmatic entity's products or services used elsewhere globally.  Defendant is without knowledge or information sufficient to form a basis as to the truth of the remaining allegations by Plaintiffs in Paragraph 55 and therefore denies them.

      3.      **The Smartmatic entity performance in Los Angeles County was a disaster.**

**ALLEGATION NO. 56:**

Smartmatic's election technology and software were used in the March 3, 2020, California presidential primary in Los Angeles County.  It was an undisputed success.  Loyola Marymount University conducted an exit poll following the primary and concluded that most voters trusted the election and felt the technology made the voting easier.  (3/11/20 Loyola Marymount University, *2020 LA Votes Presidential Primary Exit Poll* (Exhibit 107).)  The key findings included:

This year, LA County implemented new voting technology.  Compared to voting in previous elections, technology made voting in this primary:

- Much easier:          57.5%
- A bit easier:          17.6%
- The same:          13.2%
- A bit more difficult:      7.4%
- Much more difficult:     4.3%

How much do you trust that your vote will be counted as intended?

- Greatly trust:          51.7%
- Somewhat trust:        35.0%
- Somewhat distrust:      9.3%
- Greatly distrust:        4.0%

**ANSWER:** Defendant denies the allegations in Paragraph 56 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as "Smartmatic."  Defendant further denies that the system designed for Los Angeles County has any relevance to any Smartmatic entity's products or services used elsewhere globally.  Defendant further denies that the use of any Smartmatic entity's technology and software was an undisputed success in Los Angeles County; in fact, the poll numbers quoted (which speak for themselves without spin by Plaintiffs) show an **alarmingly high rate of difficulty and distrust experienced**

**by voters who participated in the poll**.  According to the quote, **a statistically significant 11.7 percent of voters found the technology a bit more difficult or much more difficult to use**, and **a statistically significant 13.3 percent of voters found the system untrustworthy (with another 35 percent saying they only "somewhat trust" the system)**.  Moreover, the poll numbers fail to give any comparison to similar poll numbers in other elections. Answering further, Defendant states that the March 2020 election in Los Angeles County was widely criticized, with technical problems causing wait times so severe that Los Angeles County's top elections official apologized and one Los Angeles County supervisor "called for an immediate investigation into" the widespread voting problems.[2]  Additionally, there were numerous "security gaps, [which] if left unfixed, could provide a gateway for a rogue election staffer or someone else with physical access to alter software on the voting machines or their back-end computer systems, **possibly changing votes** or otherwise disrupting the presidential race."[3]  (Emphasis added.)  Defendant is without knowledge or information sufficient to form a basis as to the truth of the remaining allegations by Plaintiffs in Paragraph 56 and therefore denies them.

**ALLEGATION NO. 57:**

The California primary election was the first test for Los Angeles County's VSAP initiative, with more than 860,000 voters casting in-person ballots.  Respondents overwhelmingly agreed that they had positive voting experiences, with more than 85% choosing "excellent" or "good" when asked about their overall experience.

**ANSWER:** Defendant denies that the system designed for Los Angeles County has any relevance to any Smartmatic entity's products or services used elsewhere globally.  Answering further,

---

[2] John Myers, Sonali Kohli, Benjamin Oreskes, Liam Dillon and Dakota Smith, *Investigation into widespread voting problems in L.A. County needed now, supervisor says*, THE LOS ANGELES TIMES, March 4, 2020.

[3] Kim Zetter, *Los Angeles County's risky voting experiment*, POLITICO, March 3, 2020.

Defendant states that these poll results were inconsistent with criticisms that followed the March 2020 election, when a representative of an election integrity advocacy group characterized the flaws in the Smartmatic-designed VSAP technology as "staggering," adding that the flaws "should be disqualifying."[4]  Defendant is without knowledge or information sufficient to form a basis as to the truth of the remaining allegations by Plaintiffs in Paragraph 57 and therefore denies them.

**ALLEGATION NO. 58:**

58.    The VSAP initiative was also well-received in the November general election.  By the numbers:

- 791                  Vote centers open on election day
- 31,000             BMDs manufactured by Smartmatic
- 19,445             BMDs deployed for the election
- 800+                Election workers hired and trained by Smartmatic
- 6,129,494       Citizens eligible to vote
- 5,785,377       Citizens registered to vote
- 73.8%              Turnout of registered voters
- 4,270,129       Votes cast in the 2020 general election
- 834,150           Votes cast in-person in the 2020 general election

**ANSWER:** Defendant denies that the system designed for Los Angeles County has any relevance to any Smartmatic entity's products or services used elsewhere globally.  Defendant also denies that the VSAP initiative was well-received in the November general election or that the numbers set forth in Paragraph 58 are accurate or stand for the proposition for which they're cited. Answering further, Defendant states that the VSAP initiative went so poorly in March 2020 that

---

[4] Tami Abdollah, *LA County is tabulating votes with QR codes.  Security experts think it's a bad idea*, DOT.LA, October 22, 2020, *available at* https://dot.la/la-county-vote-2648436288/particle-2.

California Secretary of State Alex Padilla issued sharp criticism, noting, "In Los Angeles County, too many voters faced unacceptably long wait times," prompting him to demand that Los Angeles County "mail a ballot to every registered voter, and address staffing, logistical, training and equipment issues that bogged down voting in the country's largest jurisdiction on Super Tuesday."[5]  The efforts to encourage mail-in voting to avoid a catastrophe in the November 2020 general election apparently worked, because according to Los Angeles County voter data, approximately 79% of Los Angeles County residents voted by mail in that election.[6]  Therefore, Plaintiffs' assertion that Smartmatic's performance was "well-received" in the 2020 presidential election falls flat, considering that only 834,150 of the nearly 6 million registered Los Angeles County voters cast in-person votes.  Defendant is without knowledge or information sufficient to form a basis as to the truth of the remaining allegations by Plaintiffs in Paragraph 58 and therefore denies them.

## ALLEGATION NO. 59:

The November general election in Los Angeles County from a technology perspective was flawless.  A County official described the system as a "success."  There were no serious problems during the election in Los Angeles County, and voters experienced reduced lines and reduced delays.  No questions were raised about security, reliability or auditability of the results in Los Angeles County.  Expectations were high, and Smartmatic exceeded those expectations.

**ANSWER:** Other than the second sentence, Defendant denies the allegations in Paragraph 59.  As to the second sentence, Defendant is without knowledge or information sufficient to form a basis as to the truth of the allegation and therefore denies it.  Answering further, Defendant notes that

---

[5]  Libby Denkman, *The scramble to fix Los Angeles voting before November (and what went wrong)*, LAIST, March 5, 2020, *available at* https://laist.com/news/los-angeles-voting-lines-wait-times-election-officials-primary-fix-problems.

[6]  *See* LA County Election Results, *available at* https://results.lavote.gov/#year=2020&election=4193.

the reduced lines and reduced delays were likely the result of mail-in voting efforts specifically

designed to avoid the problems created by Smartmatic voting machines in March 2020.

**ALLEGATION NO. 60:**

Smartmatic was thrilled with its success in the Los Angeles County election. Counties and states in the United States and countries across the world pay attention to Los Angeles County when it comes to election technology and software. Smartmatic's contract with Los Angeles County was the largest in the United States. Smartmatic's successful participation in the VSAP initiative was seen as a once-in-a-lifetime opportunity for the company. It provided the company the ability to highlight its role in the largest voting jurisdiction in the United States and its success in facilitating secure, reliable, and auditable election results. This was the big success Smartmatic had been building towards for 20 years.

**ANSWER:** Defendant denies the allegations in Paragraph 60 because it's unclear what

"Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as

"Smartmatic." Defendant further denies that the system designed for Los Angeles County has any

relevance to any Smartmatic entity's products or services used elsewhere globally. Defendant

further denies that any Smartmatic entity was universally viewed as having succeeded in all aspects

of that entity's mission in Los Angeles County. Defendant is without knowledge or information

sufficient to form a basis as to the truth of the remaining allegations by Plaintiffs in Paragraph 60

and therefore denies them.

> **D.    No Smartmatic-related entity had any success to celebrate in Los Angeles County.**

**ALLEGATION NO. 61:**

What should have been a time of celebration for Smartmatic soon turned into an unexpected nightmare. There was no controversy in Los Angeles County. In the 2020 U.S. election, the Democratic candidates for President and Vice President won over 71% of the vote. In the 2016 U.S. election, the Democratic candidates for President and Vice President won over 72% of the vote. There was no material change in the voting pattern in Los Angeles County. Nor were there any allegations or suggestions that the vote in Los Angeles County had been rigged, hacked, or stolen.

**ANSWER:** Defendant denies the allegations in Paragraph 61 because it's unclear what

"Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as

"Smartmatic."  Defendant further denies that the system designed for Los Angeles County has any relevance to any Smartmatic entity's products or services used elsewhere globally.  Defendant further denies that any Smartmatic entity suffered an unexpected nightmare, denies that there was no controversy in Los Angeles County, denies that there was no material change in the voting pattern in Los Angeles County, and denies that there were no allegations or suggestions by anyone throughout the globe that the vote in Los Angeles County had been rigged, hacked, or stolen. Defendant is without knowledge or information sufficient to form a basis as to the truth of the remaining allegations by Plaintiffs in Paragraph 61 and therefore denies them.

## ALLEGATION NO. 62:

Smartmatic did not play any role in the general election outside of Los Angeles County. Smartmatic's election technology, software, equipment, and services were not used in any other county or state for the 2020 U.S. election.  Smartmatic's software was not used in any other county or state. Smartmatic did not license or contract with any third party, including other election technology companies, for the use of Smartmatic's technology, software, machines, or services in any other county or state for the 2020 U.S. election.

**ANSWER:** Defendant denies the allegations in Paragraph 62.

## ALLEGATION NO. 63:

Given that Smartmatic had no role in the general election outside of Los Angeles County, Smartmatic had no reason to be concerned about being embroiled in a discussion about election outcomes in some of the states where the vote tally was closer than it was in California.  For example, Nevada, Arizona, Georgia, Pennsylvania, Michigan, and Wisconsin were states where the vote tally between the Democratic and Republican nominees for President and Vice President were much closer than the margin in California.  But Smartmatic had no role whatsoever in the elections that took place in those states.

    a.    Nevada used election technology supplied by Dominion Voting Systems ("Dominion") and Election Systems & Software ("ES&S").  (Nevada Secretary of State, *Voting System Testing and Security List* (Exhibit 72).)

    b.    Arizona used election technology supplied by multiple companies, including Dominion and ES&S.  (Arizona Secretary of State, *2020 Election Cycle/Voting Equipment* (Exhibit 67).)

    c.    Georgia used election technology supplied by Dominion.  (8/9/19 Georgia Secretary of State, Dominion Voting Systems Certification (Exhibit 52).)

    d.      Pennsylvania certified multiple election technology companies for the 2020 election, including Dominion, ES&S, Unisyn Voting Systems, ClearBallot Group, and Hart InterCivic.  (Pennsylvania Department of State, *Electronic Voting Systems Certified after January 1, 2018* (Exhibit 62).)

    e.      Michigan used election technology supplied by Dominion, ES&S, and Hart InterCivic. (Michigan Voter Information Center, *Voting Systems Map* (Exhibit 58).)

    f.      Wisconsin approved multiple election technology companies for the 2020 election, including Dominion, ES&S, Sequoia Voting Systems, Premier Election Solutions, Populex, Vote-PAD, and ClearBallot Group. (Wisconsin Election Commission, *Voting Equipment List by Municipality February 2020* (Exhibit 69).)

**ANSWER:** Defendant admits that Nevada, Arizona, Georgia, Pennsylvania, Michigan, and Wisconsin were states where the vote tally between the Democratic and Republican nominees for President and Vice President were much closer than the margin in California.  Defendant denies that no Smartmatic entity or Smartmatic-affiliated entity played any role in the 2020 U.S. general election outside of Los Angeles County, including in the aforementioned states outside California. Defendant further denies that no Smartmatic entity or Smartmatic-affiliated entity had any reason to be concerned about being embroiled in a discussion about election outcomes in some of the states where the vote tally was closer than it was in California.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations by Plaintiffs in Paragraph 63 and therefore denies them.

**ALLEGATION NO. 64:**

    Moreover, Smartmatic had no reason to get itself involved in any discussion about the election outcome outside of Los Angeles County.  Apart from commenting on its role in the election in Los Angeles County, Smartmatic made no public comments about the 2020 U.S. election prior to the disinformation campaign.  Smartmatic made no comments about the security, reliability, or auditability of the election technology and software used outside of Los Angeles County.  Smartmatic made no public comments about election technology and software used in the 2020 U.S. election being hacked or compromised.  Smartmatic made no public comments about the 2020 U.S. election being fixed, rigged, or stolen.  Smartmatic had done a great job in Los Angeles County.  It had no interests, and made no public comments, outside of its limited role.

**ANSWER:** Defendant denies the allegations in Paragraph 64 because it's unclear what "Smartmatic" entity the allegations refer to; Plaintiffs have defined all three of themselves as "Smartmatic." Defendant further denies that the system designed for Los Angeles County has any relevance to any Smartmatic entity's products or services used elsewhere globally. Defendant further denies that no Smartmatic entity had a reason to get itself involved in any discussion about the election outcome outside of Los Angeles County. Defendant further denies that it was involved in any disinformation campaign. Defendant further denies that any Smartmatic entity had done a "great job" in Los Angeles County. Defendant further denies that no Smartmatic entity had any interest in what occurred outside Los Angeles County during the 2020 U.S. election. Defendant is without knowledge or information sufficient to form a basis as to the truth of the remaining allegations by Plaintiffs in Paragraph 64 and therefore denies them.

## II.    OAN diligently reported on issues of significant public concern.

### A.    Public official and figure claims of insecurity and fraud were pervasive.

**ALLEGATION NO. 65:**

Joe Biden and Kamala Harris won the 2020 U.S. election for President and Vice President. The Democratic candidates secured 306 electoral votes. The Republican candidates secured 232 electoral votes. On the popular vote, the Democratic candidates received 81 million votes compared to 74 million for the Republican candidates. Among other states, the Democratic candidates won each of the states discussed above—Nevada, Arizona, Georgia, Pennsylvania, Michigan, and Wisconsin. The victories for the Democratic candidates in those states were verified and re-verified by each of their respective Secretaries of State.

**ANSWER:** Defendant admits that Congress certified Joe Biden and Kamala Harris as the winners of the 2020 election for President and Vice President of the United States, based on the electoral count alleged in Paragraph 65. Defendant further admits that the official popular vote tally correlates with what is alleged in Paragraph 65. Defendant further admits that Democratic Party candidates were declared winners in the states listed in Paragraph 65. And without admitting the

efficacy of all verification efforts, Defendant admits the votes in those states were subject to

verification efforts.  Defendant denies any remaining allegations by Plaintiffs in Paragraph 65.

## FOOTNOTE NO. 5:

Outside of the election for President and Vice President, Republican candidates won elections in Nevada, Arizona, Georgia, Pennsylvania, Michigan, and Wisconsin.  Those victories were verified by the respective Secretaries of State.

**ANSWER:**  Defendant admits the allegations in Footnote No. 5.

## ALLEGATION NO. 66:

The security, reliability, and accuracy of the 2020 U.S. election were repeatedly and quickly confirmed.  Governors and Secretaries of State from across the country verified the security, reliability and accuracy of their election results.  For example:

a.   Nevada: Secretary of State Barbara Cegavske reported: "All voting machines undergo extensive pre-election and post-election examination to ensure they function as expected.  The NV Gaming Control Board tests and certifies our systems.  The post-election audits and recounts conducted in Nevada confirmed that the machines accurately tabulated the votes cast."  (Facts v. Myths: Nevada 2020 Post-General Election (Exhibit 74).)

b.   Arizona: Governor Doug Ducey stated: "We have some of the strongest election laws in the country, laws that prioritize accountability and clearly lay out procedures for conducting, canvassing, and even contesting the results of an election."  (Tweet, @DougDucey, December 1, 2020 (Exhibit 68).)

c.   Georgia: Secretary of State Brad Raffensperger reported: "Georgia's historic first statewide audit reaffirmed that the state's new secure paper ballot voting system accurately counted and reported results."  (11/19/20 Georgia Secretary of State, *Historic First Statewide Audit of Paper Ballots Upholds Result of Presidential Race* (Exhibit 54).)

d.   Pennsylvania: Governor Tom Wolf reported: "Allegations of fraud and illegal activity have been repeatedly debunked. Pennsylvania had a free, fair, and secure election."  (Tweet, @GovernorTomWolf, November 12, 2020 (Exhibit 65).)

e.   Michigan: Secretary of State Joselyn Benson reported: "We have not seen any evidence of fraud or foul play in the actual administration of the election . . . What we have seen is that it was smooth, transparent, secure and accurate."  (11/10/20 The New York Times, *The Times Called Officials in Every State: No Evidence of Voter Fraud* (Exhibit 115).)

      f.      Wisconsin: Elections Commission Administrator Meagan Wolfe reported: "At this time, no evidence has been provided that supports allegations of systematic or widespread election issues." (11/19/2020 Wisconsin Star News, *"No evidence has been provided that supports allegations of systemic or widespread election issues"* (Exhibit 142).)

**ANSWER:** These statements speak for themselves, thus no response is required.  To the extent a response is required, Defendant denies that the security, reliability, and accuracy of an election as complex as the 2020 U.S. election could be "repeatedly and quickly confirmed" to any level of scientific precision by the time these statements were made.  Defendant admits the existence of the statements set forth in subparagraphs (a)-(f), but denies that these allegations completely and accurately characterize these statements or the evidence and facts upon which they're based (or facts and evidence later discovered).  Defendant further denies that these statements have any relevance to OAN reporting that predated the statements.  Defendant further denies any remaining allegations by Plaintiffs in Paragraph 66.

**ALLEGATION NO. 67:**

On November 12, 2020, members of the Election Infrastructure Government Coordinating Council ("GCC") Executive Committee and members of the Election Infrastructure Sector Coordinating Council ("SCC") published a joint statement regarding the security, reliability, and accuracy of the election results. (11/12/20 Cybersecurity & Infrastructure Security Agency, *Joint Statement from Elections Infrastructure Government Coordinating Council & the Election Infrastructure Sector Coordinating Executive Committees* (Exhibit 119).) The members included:

- Cybersecurity and Infrastructure Security Agency ("CISA") Assistant Director Bob Kolasky

- U.S. Election Assistance Commission Chair Benjamin Hovland

- National Association of Secretaries of State ("NASS") President Maggie Toulouse Oliver

- National Association of State Election Directors ("NASED") President Lori Augino

- Escambia County (Florida) Supervisor of Elections David Stafford

- Brian Hancock (Chair of SCC, Unisyn Voting Solutions)

- Sam Derheimer (Vice Chair of SCC, Hart InterCivic)

- Chris Wlaschin (Election Systems & Software)

- Ericka Hass (Electronic Registration Information Center)

- Maria Bianchi (Democracy Works)

**ANSWER:** The Cybersecurity & Infrastructure Security Agency Joint Statement prepared by the members set forth in Paragraph 67 speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits the existence of the Cybersecurity & Infrastructure Security Agency Joint Statement prepared by the members set forth in Paragraph 67, but denies that these allegations completely and accurately characterize these statements when taken in context and wholistically, and denies that the conclusions prematurely reached were free of bias, were scientifically sound, or were otherwise efficacious.  Defendant further denies that the statement has any relevance to OAN reporting that predated the statement.  Defendant further denies any remaining allegations by Plaintiffs in Paragraph 67.

**ALLEGATION NO. 68:**

The joint statement stated: "The November 3rd election was the most secure in American history.  Right now, across the country, election officials are reviewing and double checking the entire election process prior to finalizing the result."

**ANSWER:** The Cybersecurity & Infrastructure Security Agency Joint Statement prepared by the members set forth in Paragraph 67 speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits the existence of the Cybersecurity & Infrastructure Security Agency Joint Statement prepared by the members set forth in Paragraph 67, but denies that these allegations completely and accurately characterize these statements when taken in context and wholistically, and denies that the conclusions prematurely reached were free of bias, were scientifically sound, or were otherwise efficacious.  Defendant further denies that the 2020 U.S. presidential election was the most secure in American history (and Defendant states that that

assertion is intrinsically hyperbole incapable of being proven to be scientifically accurate).

Defendant further denies the validity of the assertion that the 2020 U.S. presidential election was

the most secure in history because that assertion is inconsistent with what follows in the statement,

*i.e.* that "across the country, election officials are reviewing and double checking the entire election

process prior to finalizing the result."  Defendant further denies that this statement has any

relevance to OAN reporting that predated the statement.  Defendant denies any remaining

allegations by Plaintiffs in Paragraph 68.

**ALLEGATION NO. 69:**

It continued: "When states have close elections, many will recount ballots.  All of the states with close results in the 2020 presidential race have paper records of each vote, allowing the ability to go back and count each ballot if necessary.  This is an added benefit for security and resilience. This process allows for the identification and correction of any mistakes or errors.  **There is no evidence than any voting system deleted or lost votes, changed votes, or was in any way compromised.**"  (emphasis in original.)

**ANSWER:** The Cybersecurity & Infrastructure Security Agency Joint Statement prepared by the

members set forth in Paragraph 67 speaks for itself, thus no response is required.  To the extent a

response is required, Defendant admits the existence of the Cybersecurity & Infrastructure

Security Agency Joint Statement prepared by the members set forth in Paragraph 67, but denies

that these allegations completely and accurately characterize these statements when taken in

context and wholistically, and denies that the conclusions prematurely reached were free of bias,

were scientifically sound, or were otherwise efficacious.  Defendant further denies that all of the

states with close results in the 2020 presidential race have paper records of each vote, allowing the

ability to go back and count each ballot if necessary.  Defendant further denies that there was no

evidence that any voting system deleted or lost votes, changed votes, or was in any way

compromised.  Defendant further asserts there was in fact evidence of that, and further evidence

of that was uncovered after issuance of this statement.  Defendant further denies that this statement

has any relevance to OAN reporting that predated the statement. Defendant further denies any remaining allegations by Plaintiffs in Paragraph 69.

**ALLEGATION NO. 70:**

And it stated: "Other security measures like pre-election testing, state certification of voting equipment and the U.S. Election Assistance Commission (EAC) certification of voting equipment help to build additional confidence in the voting systems used in 2020."

**ANSWER:** The Cybersecurity & Infrastructure Security Agency Joint Statement prepared by the members set forth in Paragraph 67 speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits the existence of the Cybersecurity & Infrastructure Security Agency Joint Statement prepared by the members set forth in Paragraph 67, but denies that these allegations completely and accurately characterize these statements when taken in context and wholistically, and denies that the conclusions prematurely reached were free of bias, were scientifically sound, or were otherwise efficacious.  Defendant further denies that this statement has any relevance to OAN reporting that predated the statement. Defendant denies any remaining allegations by Plaintiffs in Paragraph 70.

**ALLEGATION NO. 71:**

On June 23, 2021, the Republican-led Michigan Senate Oversight Committee, chaired by Trump ally Senator Ed McBroom, released a 55-page report, which stated that "The Committee found no evidence of widespread or systemic fraud in Michigan's prosecution of the 2020 election" and expressed total confidence that the state's 2020 election outcome—that Biden defeated Trump by about 155,000 votes, or 2.8—"represent[s] the true results of the ballots cast by the people of Michigan." (6/23/21 Michigan Senate Oversight Committee, *Report on the November 2020 Election in Michigan* (Exhibit 152).)

**ANSWER:**  The report speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits the existence of the statements quoted in Paragraph 71, but denies that these allegations completely and accurately characterize the report when taken in context and

wholistically.  Defendant further denies that the report has any relevance to OAN reporting that

predated the report.  Defendant denies any remaining allegations in Paragraph 71.

## ALLEGATION NO. 72:

On June 24, 2021, the Supreme Court of the State of New York, Appellate Division, First
Judicial Department, suspended Rudolph Giuliani from the practice of law after it determined that
he had "made knowing *false and misleading factual statements* to support his claim that the
presidential election was stolen from his client [Donald Trump]," based on "uncontroverted
evidence" that he made such "demonstrably false and misleading statements to courts, lawmakers
and the public at large in his capacity as lawyer for former President Donald J. Trump and the
Trump campaign in connection with Trump's failed effort at reelection in 2020."  (Order, *Matter
of Giuliani*, 197 A.D.3d 1, 3 (1st Dep't 2021) (Exhibit 153).)

**ANSWER:** The opinion speaks for itself, thus no response is required.  To the extent a response

is required, Defendant admits the existence of the opinion quoted in Paragraph 72, but denies that

these allegations completely and accurately characterize the opinion, that the opinion has any

relevance to the allegations against OAN in this case, or that the opinion has any relevance to OAN

reporting that predated the opinion.  Defendant denies any remaining allegations by Plaintiffs in

Paragraph 72.

## ALLEGATION NO. 73:

On June 27, 2021, reporting revealed that Attorney General William Barr had "received
two briefings from cybersecurity experts at the Department of Homeland Security and the FBI"
about the allegations of rigged voting machines, after which he and his team at the Department of
Justice "realized from the beginning it was just bullshit."  Barr further disclosed that "even if the
machines somehow changed the count, it would show up when they were recounted by hand," and
that Dominion's machines were just "counting machine[s], and they save everything that was
counted.  So you just reconcile the two.  There had been no discrepancy reported anywhere, and
I'm still not aware of any discrepancy."  (6/27/21 The Atlantic, *Inside William Barr's Breakup
with Trump* (Exhibit 154).)

**ANSWER:** The article speaks for itself, thus no response is required.  To the extent a response is

required, Defendant admits the existence of the article quoted in Paragraph 73, but denies that

these allegations completely and accurately characterize the article or Mr. Barr's statements or

beliefs at any given time.  Defendant further denies that the article has any relevance to the

allegations in this case, that the article has any relevance to OAN reports that predated the article, or that the quoted material has any relevance to any Smartmatic entity because it refers instead to Dominion.  Defendant denies any remaining allegations by Plaintiffs in Paragraph 73.

**ALLEGATION NO. 74:**

On August 3, 2021, a federal judge in Colorado disciplined two lawyers who filed a frivolous lawsuit based on lies against Dominion following the election, concluding that the case was frivolous and brought in bad faith.  In his 68-page opinion, Judge N. Reid Neureiter concluded: "Albeit disorganized and fantastical, the Complaint's allegations are extraordinarily serious and, if accepted as true by large numbers of people, are the stuff of which violent insurrections are made." (Order, *O'Rourke et al. v. Dominion Voting Systems, Inc. et al.*, No. 20-cv-3747 (D. Colo. Aug. 3, 2021) (Exhibit 155).)

**ANSWER:** The opinion speaks for itself, thus no response is required.  To extent a response

is required, Defendant admits the existence of the opinion set forth in Paragraph 74, but denies that

these allegations completely and accurately characterize the opinion.  Defendant further denies

that the opinion has any relevance to the allegations in this case, to OAN reporting that predated

the opinion, or to any Smartmatic entity because the opinion deals with Dominion.  Defendant

denies any remaining allegations by Plaintiffs in Paragraph 74.

**ALLEGATION NO. 75:**

On August 25, 2021, the United States District Court for the Eastern District of Michigan sanctioned Sidney Powell for filing a frivolous lawsuit against the Governor of Michigan, Gretchen Whitmer, related to the results of the 2020 U.S. election.  The court found that Ms. Powell and the other "attorneys who filed the instant lawsuit abused the well-established rules applicable to the litigation process by proffering claims not backed by evidence (but instead, speculation, conjecture, and unwarranted suspicion); proffering factual allegations and claims without engaging in the required prefiling inquiry; and dragging out these proceedings even after they acknowledged that it was too late to attain the relief sought."  (Opinion and Order, *King, et al., v. Whitmer, et al.*, No. 20-13134 (E.D. Mich. Aug. 25, 2021) (Exhibit 156).)

**ANSWER:** The opinion speaks for itself, thus no response is required.  To the extent a response

is required, Defendant admits the existence of the opinion set forth in Paragraph 75, but denies that

these allegations completely and accurately characterize the opinion.  Defendant further denies

that the opinion has any relevance to the allegations in this case, to OAN reporting that predated

the opinion, or to any Smartmatic entity.  Defendant denies any remaining allegations by Plaintiffs in Paragraph 75.

**ALLEGATION NO. 76:**

The 2020 U.S. election for President and Vice President was not rigged.  It was not compromised.  It was not stolen.

**ANSWER:** Defendant notes that the terms "rigged," "compromised," and "stolen" are intrinsically hyperbolic and incapable of being proven true or false or being admitted or denied without qualification.  As to all three terms, Defendant asserts that there is evidence of "rigging," "compromise," and "theft" associated with the 2020 U.S. presidential election, just as there is with pretty much any election globally.  Errors occurred, both inadvertently and intentionally. Defendant denies any remaining allegations by Plaintiffs in Paragraph 76.

> **B.  OAN accurately presented itself to its audience as a reliable source for fact-based news.**

**ALLEGATION NO. 77:**

OANN was founded in 2013 by Robert Herring Sr. as a fact-based news channel.  (5/8/20 CNN, *Meet OAN, the little-watched right-wing news channel that Trump keeps promoting* (Exhibit 140).)  Charles Herring, Robert Herring Sr.'s son and President of Herring Networks, Inc., stated that prior to OANN's founding it was "really hard to find just the reliable, credible, fact-based news with substance."  (*Id.*)  The Herring family intended to fill that void with OANN. (7/5/17 The Washington Post, *An inside look at One America News, the insurgent TV network taking 'pro- Trump' to new heights* (Exhibit 138).)

**ANSWER:** Defendant admits the allegations in Paragraph 77.

**ALLEGATION NO. 78:**

Prior to launching OANN, the Herring family negotiated and executed a partnership between Herring Broadcasting (Herring Network's former name) and *The Washington Times*. (5/30/13 Herring Broadcasting Press Release, *One America News Cable News Network Announces Debut in Collaboration with The Washington Times* (Exhibit 137).)  Under the partnership, OANN relied on *The Washington Times* "as a key source of news and analysis from the nation's capital." (*Id.*)  OANN also relied on *The Washington Times* to "provide real-time trusted reporting and credible analysis on the pressing issues of the day." (*Id.*)  OANN's Washington, D.C. news bureau was initially located in *The Washington Times*'s newsroom, but around July 2014 moved to its current location in the District of Columbia.  (6/6/14 Herring Broadcasting Press Release, *One*

*America Cable News Network Relocates Washington, D.C. Bureau* (*Id.*).)  At the time, Mr. Herring described the studio at 101 Constitution Avenue, NW as "a newsmaker's dream."  (Herring Broadcasting Press Release, *One America Cable News Network Announces Debut Collaboration with The Washington Times* (*Id.*).)

**ANSWER:** The referenced document speaks for itself, thus no response is required.  To the extent

a response is required, Defendant states that the allegations in Paragraph 78 overstate the nature of

OAN's relationship with *The Washington Times*.  Answering further, Defendant states that it

currently has no relationship with *The Washington Times*.  Defendant denies any remaining

allegations by Plaintiffs in Paragraph 78.

**ALLEGATION NO. 79:**

From its inception, OANN promised its viewers "straight news, no opinion." (7/5/17 The Washington Post, *An inside look at One America News, the insurgent TV network taking 'pro-Trump' to new heights* (Exhibit 138).)  It promoted itself as "the antidote" to other news channels' focus on punditry and hyper focus on one big story of the moment.  (*Id.*)  OANN still makes the same promise to its viewers.  A video on OANN's "About" page on OANN.com states: "There is only one network you can trust to bring you real news.  Straight-shooting, hard-hitting stories the mainstream media doesn't want you to hear.  Credible, honest, unbiased reporting from a source you can trust. One America News Network, your source for credible news."

**ANSWER:** The referenced document and video speak for themselves, thus no response is

required.  To the extent a response is required, Defendant admits that OAN is a trustworthy news

network that provides credible, honest, unbiased reporting.

>       **C.**      **OAN's diligent reporting on newsworthy events of public concern continued.**

**ALLEGATION NO. 80:**

Shortly after the election, Rudolph Giuliani and Sidney Powell decided they would spread a story that the 2020 U.S. election had been rigged in favor of Joe Biden and Kamala Harris and stolen from Donald Trump and Michael Pence.  They also decided that the story would involve manipulation of election technology in select States—ultimately, Nevada, Arizona, Georgia, Pennsylvania, Michigan, and Wisconsin.

**ANSWER:** Defendant is unaware of Mr. Giuliani's or Ms. Powell's intending to disseminate any

false information, thus Defendant denies any implication in Paragraph 80 that Defendant had any

such awareness.  To the extent Mr. Giuliani and Ms. Powell appeared on or were quoted or

paraphrased by OAN, OAN believed its associated reporting was proper on newsworthy events

and statements by public officials and figures operating at the behest of President Trump.  As to

the actual states of mind of Mr. Giuliani and Ms. Powell, Defendant believes Mr. Giuliani and Ms.

Powell intended to tell the truth, but Defendant is without knowledge or information sufficient to

form a belief as to their actual intent and therefore denies any related allegations in Paragraph 80.

Defendant further denies any remaining allegations by Plaintiffs in Paragraph 80.

**ALLEGATION NO. 81:**

The problem with their story, however, was they needed to identify a villain.  Mr. Giuliani
and Ms. Powell settled on two villains: Smartmatic and Dominion.  They had no evidence that
Smartmatic or Dominion had done anything wrong.  Indeed, in the case of Smartmatic, they had
no evidence that Smartmatic's election technology and software were even used in any of the states
that had close outcomes in the 2020 U.S. election.  But casting Smartmatic and Dominion as the
villains made for a good story.

**ANSWER:**  Defendant is unaware of Mr. Giuliani's or Ms. Powell's intending to disseminate any

false information, thus Defendant denies any implication in Paragraph 81 that Defendant had any

such awareness.  To the extent Mr. Giuliani and Ms. Powell appeared on or were quoted or

paraphrased by OAN, OAN believed its associated reporting was proper on newsworthy events

and statements by public officials and figures operating at the behest of President Trump.  As to

the actual states of mind of Mr. Giuliani and Ms. Powell, Defendant believes Mr. Giuliani and Ms.

Powell intended to tell the truth, but Defendant is without knowledge or information sufficient to

form a belief as to their actual intent and therefore denies any related allegations in Paragraph 81.

Defendant further denies that there was no evidence that any Smartmatic or Dominion entity had

done anything wrong.  Defendant further denies that any election technology and software

associated with or connected to any Smartmatic entity or Smartmatic-affiliated entity were not

used in any of the states that had close outcomes in the 2020 U.S. election. Defendant further

denies any remaining allegations by Plaintiffs in Paragraph 81.

## ALLEGATION NO. 82:

By November 12, 2020, Mr. Giuliani and Ms. Powell began to appear on Fox News regularly. Fox News and its anchors gave them a platform to spread disinformation, added their endorsement, and provided their own disinformation. Pushing and disseminating disinformation about Smartmatic was good business for Fox News.

**ANSWER:** Defendant admits that Fox News covered newsworthy events and statements made by

public officials and figures operating at the behest of President Trump related to the 2020 U.S.

election. Defendant further admits that coverage by legitimate, well-regarded, and extremely

popular news source Fox News helped validate related coverage by OAN. Defendant is unaware

of any intent by Fox News to disseminate disinformation and thus denies that allegation.

Defendant is also unaware of whether references to any Smartmatic entity on Fox News were good

for Fox News's business and thus denies that allegation. Defendant also is unaware of when Mr.

Giuliani or Ms. Powell first appeared on Fox News and thus denies that allegation. Defendant

denies any remaining allegations by Plaintiffs in Paragraph 82.

## ALLEGATION NO. 83:

Fox News's success was a problem for OANN. In the immediate aftermath of the election, OANN had a once-in-a-lifetime opportunity to take viewers away from Fox News. Viewers were dissatisfied with Fox News's initial coverage of the election results and were looking for alternative cable news sources. OANN did not want to lose this chance to siphon viewers from its main competition. So OANN decided to cover Mr. Giuliani and Ms. Powell's demonstrably false claims about widespread fraud in the 2020 U.S. election. OANN did not merely cover Mr. Giuliani and Ms. Powell's claims, OANN endorsed their claims and made its own demonstrably false claims about Smartmatic.

**ANSWER:** Defendant denies that Fox News's success was a problem for OAN. Defendant

further denies that after the election, OAN had a once-in-a-lifetime opportunity to take viewers

away from Fox News. Defendant is unaware of what each and every Fox News viewer felt about

Fox News and thus denies that allegation. Defendant further denies that OAN "did not want to

lose this chance to siphon viewers from its main competition."  Defendant further denies that OAN

decided to cover anything that was demonstrably false.  Defendant further denies that OAN

robotically endorsed claims by Mr. Giuliani and Ms. Powell.  Defendant further denies that OAN

made demonstrably false claims about any Smartmatic entity.  Defendant denies any remaining

allegations by Plaintiffs in Paragraph 83.

**ALLEGATION NO. 84:**

On November 12, 2020, Alex Salvi hosted *After Hours with Alex Salvi*. (*After Hours*,
November 12, 2020 (Exhibit 1); Screenshots, *After Hours*, November 12, 2020
(Exhibit 1A).) This was the first time OANN informed its viewers of its disinformation campaign
and the false claims about Smartmatic.  Mr. Salvi discussed the Trump campaign "utilizing
recounts, lawsuits, and allegations of voter fraud to keep the re-election efforts alive."



**ANSWER:** The television segment speaks for itself, thus no response is required.  To the extent a

response is required, Defendant admits that an episode of *After Hours with Alex Salvi* (which is a

political talk show featuring news, commentary, opinion, and more) that aired on November 12,

2020 included the quoted statement.  Defendant denies that Plaintiffs have accurately characterized

this segment generally, particularly when taken as a whole and in context.  Defendant further

denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.

Defendant further denies the quoted statement is "of and concerning" any Smartmatic entity.

Defendant further denies OAN engaged in any disinformation campaign.  Defendant further denies

OAN made false claims about any Smartmatic entity.  Defendant further denies any remaining allegations by Plaintiffs in Paragraph 84.

## ALLEGATION NO. 85:

Mr. Salvi informed viewers that the New York Times reported that claims of "software glitches" involving Dominion machines in Michigan and Georgia are "baseless."  If only he had stopped there.  Instead of accurately informing OANN's viewers that there was no evidence of "software glitches," Mr. Salvi told his viewers not to listen to the New York Times.

> Mr. Salvi: But the sign of confidence from The New York Times, it may help some of you sleep at night, but it also ignores years worth of alarms being raised about these systems.  Professor Andrew Appel, a computer scientist at Princeton University, has been raising the alarms about Dominion Voting Systems for years.  In fact, back in 2008, he was asked to hack into one of those machines as part of an election lawsuit against officials in the state of New Jersey.

> ***

> Mr. Salvi: I understand a lot has changed since 2008.  But the allegations against Dominion Voting did not stop then.  The Washington Examiner reporting this week quote, "the Dominion Voting Systems, which has been used in multiple states where fraud has been alleged in the 2020 US election, was rejected three times by data communications experts from the Texas Secretary of State and Attorney General's Office for failing to meet basic security standards."  But it's not only Dominion.  It's also Dominion's subsidiaries, such as Smartmatic which was used for the Philippine elections back in 2010 and 2013.  The Washington Examiner reporting quote, "litigation over Smartmatic glitches alleges they impacted the 2010 and 2013 midterm elections in the Philippines, raising questions of cheating and fraud.  An independent review of the source codes used in the machines found multiple problems, which concluded the software inventory provided by Smartmatic is inadequate, which brings into question the software credibility."  So when you understand all of this, you begin to realize why Republicans were concerned when they learned this happened in Michigan.



**ANSWER:** The segment speaks for itself, thus no response is required. To the extent a response is required, Defendant admits that an episode of *After Hours with Alex Salvi* (which is a political talk show featuring news, commentary, opinion, and more) that aired on November 12, 2020 included the above quotes and screen capture. Defendant denies that Plaintiffs have accurately characterized this segment generally, particularly when taken as a whole and in context. Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances. Defendant further denies that there were no software glitches (or associated evidence). Defendant further denies that all of the quoted statements are "of and concerning" any Smartmatic entity. Defendant further denies OAN made false claims about any Smartmatic entity. Defendant further denies any remaining allegations by Plaintiffs in Paragraph 85.

**ALLEGATION NO. 86:**

With that, OANN's disinformation campaign had begun. Over the next two months—and beyond—OANN embarked on a disinformation campaign to convince viewers and readers that Smartmatic had rigged the 2020 U.S. election in favor of Joe Biden and Kamala Harris. OANN spread this false story through morning and evening newsroom briefings, evening news programs, and material posted to its website and social media. OANN also invited numerous guests on its programming to spread and corroborate the false story.

**ANSWER:** Defendant admits that OAN invited guests on its programming to discuss the 2020 U.S. election but denies that OAN engaged in a disinformation campaign or the spread or corroboration of a false story that any Smartmatic entity had rigged the election. Defendant further denies that the allegations in Paragraph 86 completely and accurately characterize any OAN newsroom briefings, news programs, or website or social media posts. Defendant denies any remaining allegations by Plaintiffs in Paragraph 86.

**ALLEGATION NO. 87:**

On November 16, 2020, OANN's disinformation campaign began in earnest. During the 5AM hour of OANN's *News Room*, Reporter Elma Aksalic discussed Ms. Powell's claims that "overwhelming evidence of voter fraud is coming to light." (*News Room*, 5AM, November 16, 2020 (Exhibit 2); Screenshots, *News Room*, 5AM, November 16, 2020 (Exhibit 2A).) Ms. Aksalic

broadcasts out of OANN's Washington, D.C. news bureau, and this segment was filmed in the Washington, D.C. bureau. On information and belief, the segment was researched and produced in OANN's Washington, D.C. news bureau.



**ANSWER:** The segment speaks for itself, thus no response is required. To the extent a response is required, Defendant admits that an episode of *News Room* that aired on November 16, 2020 featured a report from Elma Aksalic that addressed, among other things, allegations by Ms. Powell based, at least in part, on Ms. Powell's confident assertions, her role as a lawyer for President Trump, her former service as a federal prosecutor, and known problems with Smartmatic entities and other entities associated with Smartmatic entities and its/their software, hardware, and personnel over the course of time. Defendant denies that the segment was filmed, produced or broadcast from the Washington, D.C. bureau. Defendant further denies that OAN engaged in a disinformation campaign. Defendant further denies that the allegations in Paragraph 87 completely and accurately characterize the segment, particularly when taken in context and as a whole. Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances. Defendant further denies that the quoted language was "of and

concerning" Smartmatic.   Defendant further denies any remaining allegations by Plaintiffs in

Paragraph 87.

**FOOTNOTE NO. 6:**

All times referenced are Eastern Standard Time. All times pleaded are approximate and based upon Smartmatic's current knowledge.

**ANSWER:**  Defendant admits that Plaintiff appears to have attempted to plead all times in Eastern

Standard Time.   Defendant lacks sufficient information to form a belief as to any Smartmatic

entity's "current knowledge" and thus denies any related allegations.

**ALLEGATION NO. 88:**

OANN knew that it had not seen any evidence supporting Ms. Powell's claims of "overwhelming evidence of voter fraud" and that Ms. Powell had not presented any evidence supporting her claims.  Nonetheless, OANN republished portions of an interview Ms. Powell did on *America This Week* with Eric Bolling on or around November 15, 2020.  Ms. Aksalic informed viewers that Sidney Powell was "President Trump's campaign attorney."

> Ms. Aksalic: During an interview on Sunday, attorney Sidney Powell said election results in multiple states are quote, "getting ready to overturn."  Powell cites an overwhelming amount of evidence the President's legal team has received concerning voter fraud and irregularities.  Powell goes on to claim she has enough evidence, some even dating back to 2016, to launch a widespread criminal investigation.  ***She specifically noted a member of Joe Biden's team is also on the board of directors for a software company behind the flawed Dominion Voting Systems.***

> Ms. Powell: They're facing an election that was absolutely rigged.  [W]e are soaking in information through fire hoses of complicated mathematical alterations to the votes.  We have identified the system capability that does it.  It does in fact exist regardless of what the name of it is.  It works through the Dominion company's voting machines that were in 30 states and does indeed alter and flip voting results.

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response

is required, Defendant admits that OAN published the quoted statements based, at least in part, on

Ms. Powell's confident assertions, her role as a lawyer for President Trump, and her former service

as a federal prosecutor.   Defendant denies the allegations in Paragraph 88 completely and

accurately characterize the segment generally and when taken in context and as a whole. Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.   Defendant further denies the quoted statements are "of and concerning" any Smartmatic entity.   Defendant further denies that OAN knew that it had not seen any evidence supporting Ms. Powell's claims (there was in fact such evidence) and that Ms. Powell had not presented any evidence supporting her claims (which isn't true — she did present evidence). Defendant denies any remaining allegations by Plaintiffs in Paragraph 88.

**ALLEGATION NO. 89:**

Ms. Aksalic immediately informed viewers that Ms. Powell was discussing Smartmatic software.  To avoid any confusion, OANN put a graphic of Smartmatic's logo on the screen.



Ms. Aksalic: Powell says the software dubbed ***Smartmatic was designed for the sole purpose of shifting voting results***.

Ms. Powell: It's a feature of the system that was designed with a backdoor so that people could watch in real time and calculate with an algorithm how many votes they needed to change to make the result they wanted to create.

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that OAN published the quoted statements and might have aired the on-screen graphic based, at least in part, on Ms. Powell's confident assertions, her role as a lawyer for President Trump, her service as a federal prosecutor, and known problems with Smartmatic entities and other entities associated with Smartmatic entities and its/their software, hardware, and

personnel over the course of time.  Defendant denies the allegations in Paragraph 88 completely

and accurately characterize the segment generally and when taken in context and as a whole.

Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in

all instances.  Defendant further denies any remaining allegations by Plaintiffs in Paragraph 88.

**ALLEGATION NO. 90:**

> OANN next displayed a November 14, 2020 tweet by "the President's personal attorney, Rudy Giuliani."



Mr. Giuliani wrote: "Did you know a foreign company, DOMINION, was counting our vote in Michigan, Arizona and Georgia and other states.  But it was a front for SMARTMATIC, who was really doing the computing.  Look up SMARTMATIC and tweet me what you think?  It will all come out."  At that time, OANN knew that Mr. Giuliani had not presented any evidence that Dominion is "a front" for Smartmatic or that Smartmatic was counting votes in those states. OANN also knew that it had not seen any evidence to support those claims.

**ANSWER:** The Tweet speaks for itself, thus no response is required.  To the extent a response is

required, Defendant admits that OAN re-published the Tweet by Mr. Giuliani during the segment

set forth in Paragraph 90 based, at least in part, on Mr. Giuliani's confident assertions, his role as

a lawyer for President Trump, his former service as mayor of New York City, his former service

as an Associate U.S. Attorney General, his former service as the U.S. Attorney for the Southern

District of New York, and known problems with Smartmatic entities and other entities associated

with Smartmatic entities and its/their software, hardware, and personnel over the course of time.

Defendant further responds that Smartmatic entities and Dominion entities have shared various technologies via licensing agreements over the course of time; a Smartmatic entity used to own Sequoia Voting Systems; Sequoia Voting Systems eventually was acquired by a Dominion entity as a result of resolution of a federal investigation against one or more Smartmatic entities; and Staple Street Capital, majority owner of Dominion Voting Systems, now owns 100 percent of Sequoia Voting Systems (thus one or more Smartmatic entities and one or more Dominion entities have essentially shared the technology of Sequoia Voting Systems).  Defendant denies the allegations in Paragraph 90 completely and accurately characterize the segment generally and when taken in context and as a whole.  Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.  Defendant further denies that OAN knew Mr. Giuliani had not presented evidence to support these claims or that OAN allegedly knew that it had not seen any evidence to support those claims; the facts are to the contrary.  Defendant denies any remaining allegations by Plaintiffs in Paragraph 90.

**ALLEGATION NO. 91:**

Ms. Aksalic closed the segment by promising viewers "Powell hopes to reveal all pertaining affidavits and evidence of fraud before the election certification deadline." Ms. Aksalic, and others at OANN, knew that Ms. Powell did not have any evidence of fraud.

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that Ms. Aksalic made the quoted statement based, at least in part, on Ms. Powell's confident assertions, her role as a lawyer for President Trump, and her service as a federal prosecutor.  Defendant denies that Ms. Aksalic or anyone else at OAN knew that Ms. Powell allegedly did not have any evidence of fraud (and, in fact, Ms. Powell does have evidence of fraud).  Defendant further denies the allegations in Paragraph 91 completely and accurately characterize the segment generally and when taken in context and as a whole.  Defendant further

denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.

Defendant denies any remaining allegations by Plaintiffs in Paragraph 91.

**ALLEGATION NO. 92:**

Later that day, anchor Kara McKinney joined the disinformation campaign on *Tipping Point with Kara McKinney*. (*Tipping Point*, November 16, 2020 (First Video) (Exhibit 3); Screenshots, *Tipping Point*, November 16, 2020 (First Video) (Exhibit 3A).)



At the time of her broadcast, Ms. McKinney had not seen any evidence indicating that the 2020 U.S. election had been stolen, much less stolen by Smartmatic.  Nonetheless, Ms. McKinney joined the disinformation campaign and told her viewers that President Trump's election fight was still viable.

Ms. McKinney: [I]t's absolutely critical that we stop the steal so President Trump can continue dismantling these corrupt powers in the nation's capitol for another four years.  There's something we really need to draw upon right now.  And that's called the American spirit.  The spirit of independence, that mocks those who hold themselves up as our social betters.  Especially when they come in the form of the low lives over at CNN or Democrats telling us that the fight is over and Biden won.  That's a lie.  The electors haven't met yet, and the President has some strong legal challenges still pending.  It's also a convenient lie.  ***Given that Trump attorney Sidney Powell says a member of Biden's transition team is also a member of the board of directors for Smartmatic, which is a subsidiary of Dominion, small world I guess.  Powell claims to have evidence that proves the software was designed to rig elections.***

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response

is required, Defendant admits that on an episode of *Tipping Point with Kara McKinney* (which is

a political talk show featuring news, commentary, opinion, and more) that aired on November 16,

2020, Ms. McKinney made the above quoted statements based, at least in part, on Ms. Powell's

confident assertions, her role as a lawyer for President Trump, her service as a federal prosecutor, and known problems with Smartmatic entities and other entities associated with Smartmatic entities and its/their software, hardware, and personnel over the course of time.  Defendant further responds that Smartmatic entities and Dominion entities have shared various technologies via licensing agreements over the course of time; a Smartmatic entity used to own Sequoia Voting Systems; Sequoia Voting Systems eventually was acquired by a Dominion entity as a result of resolution of a federal investigation against one or more Smartmatic entities; and Staple Street Capital, majority owner of Dominion Voting Systems, now owns 100 percent of Sequoia Voting Systems (thus one or more Smartmatic entities and one or more Dominion entities have essentially shared the technology of Sequoia Voting Systems).  Defendant denies that Ms. McKinney joined any disinformation campaign.  Defendant further denies that Ms. McKinney hadn't seen any evidence that the 2020 U.S. presidential election might have been materially flawed.  Defendant further denies the allegations in Paragraph 92 completely and accurately characterize the segment generally and when taken in context and as a whole.  Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.  Defendant further denies any remaining allegations by Plaintiffs in Paragraph 92.

## ALLEGATION NO. 93:

In the next segment, Ms. McKinney invited Michael Johns, Co-Founder and Leader of the National Tea Party Movement, to spread additional falsehoods about Smartmatic.  (*Tipping Point*, November 16, 2020 (Second Video) (Exhibit 4); Screenshots, *Tipping Point*, November 16, 2020 (Second Video) (Exhibit 4A).)



During this segment, Ms. McKinney introduced another aspect to the disinformation campaign—Smartmatic's alleged ties to foreign governments.

> Ms. McKinney: Foreign governments seem to be tied in with these systems, whether it be Canada, Venezuela, Spain, or even Germany. What can you tell us about that?
>
> Mr. Johns: [T]here's been some reporting in some of these systems in Germany were actually seized. [] Smartmatic has had incredible ties with some of the greater far left concerns that we have, including this Lord Mark Malloch-Brown, who's very tight with Soros, is on the Open Society's Global Board and a bunch of other Soros boards, meaning this is not some casual associate of George Soros. This is kind of an individual is part of that inner circle. And we have case after case[.] Philippines is another great example where these systems have been utilized and there's been nothing but broad concerns. Now, since we last talked, which was not broadly known and still not broadly known, ***just so happens that one of the two campaigns has a very strong relationship with Smartmatic*** and I probably don't have to ask you to guess which one. But we have an individual named Peter Neffenger, who has been handling what's typically called the landing teams for transitions. Where personnel are brought in for the nothing short of the Department of Homeland Security. This guy has been on the board of Smartmatic.

**ANSWER:** The segment speaks for itself, thus no response is required. To the extent a response is required, Defendant admits that on an episode of *Tipping Point with Kara McKinney* (which is a political talk show featuring news, commentary, opinion, and more) that aired on November 16, 2020, Ms. McKinney and Mr. Johns made the above quoted statements. Defendant further denies the allegations in Paragraph 93 completely and accurately characterize the segment generally and when taken in context and as a whole. Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances. Defendant further denies that anyone at OAN

invited anyone to spread falsehoods about Smartmatic.  Defendant further denies that OAN

engaged in a disinformation campaign.  Defendant further denies that Smartmatic entities lack ties

to foreign governments.  Answering further, Defendant states that Smartmatic USA Corp.'s current

board chairman, Vice Admiral Peter Neffenger, was a member of President Biden's Agency

Review team under the Department of Homeland Security.  Defendant further denies any

remaining allegations by Plaintiffs in Paragraph 93.

**ALLEGATION NO. 94:**

> Ms. McKinney and OANN knew that there was no evidence supporting Mr. Johns'
> implication that Smartmatic rigged the 2020 U.S. election for Joe Biden.  But Ms. McKinney did
> nothing to stop Mr. Johns from spreading this false implication about Smartmatic.  Instead, she
> endorsed his statements.

> > Ms. McKinney: You're exactly right. [] [T]his smacks to me of intention here on
> > the Democrats' part, [] laying out over these past few years, red flags popping up
> > here and there over these many, many years. ***And the fact that Democrats knew
> > that and then pushed to bring these systems into as many as 30 states***[.]

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response

is required, Defendant admits that on an episode of *Tipping Point with Kara McKinney* (which is

a political talk show featuring news, commentary, opinion, and more) that aired on November 16,

2020, Ms. McKinney made the above quoted statements.  Defendant denies that OAN knew there

was no evidence supporting Mr. Johns' statements (in fact, there is such evidence).  Defendant

further denies that Mr. Johns said in these statements that any Smartmatic entity rigged the 2020

U.S. presidential election for Joe Biden.  Defendant further denies that Mr. Johns or OAN in these

statements spread false implications about any Smartmatic entity.  Defendant further denies the

allegations in Paragraph 94 completely and accurately characterize the segment generally and

when taken in context and as a whole.  Defendant further denies that the transcription relied on by

Plaintiffs is complete and accurate in all instances.   Defendant further denies any remaining

allegations by Plaintiffs in Paragraph 94.

**ALLEGATION NO. 95:**

OANN's disinformation campaign continued during the 11PM hour of the *News Room*. (*News Room*, 11PM, November 16, 2020 (Exhibit 5); Screenshots, *News Room*, 11PM, November 16, 2020 (Exhibit 5A).)



During this show, OANN republished portions of Mr. Giuliani's podcast, *Common Sense*, published on or around November 13, and reporter Mike Dinow gave additional commentary.

Mr. Giuliani: Not terribly different than what's going on in Venezuela.  And very interestingly, [you're] gonna see that Venezuela is involved in this voter fraud.

Mr. Dinow: ***Report suggests voting machines systems funded by George Soros were used to install a socialist regime in Venezuela back in the early 2000s.*** According to WikiLeaks, UK based companies Smartmatic had a campaign staffer for Hugo Chávez on its board back in 2000.  ***Now the company reportedly meddled with a 2004 Venezuela election to secure a win for the Chávez regime.***  The Gateway Pundit reports, Smartmatic sold its technology to Dominion Voting, that ran elections in Arizona, Michigan, Nevada, and Pennsylvania this year.

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response

is required, Defendant admits that it published portions of Mr. Giuliani's November 13, 2020

podcast of *Common Sense* and Mr. Dinow provided the quoted commentary.  Answering further,

Defendant notes that Mr. Giuliani was making these statements in his role as counsel for President

Trump.  Defendant denies that OAN engaged in a disinformation campaign.  Defendant further

denies the allegations in Paragraph 95 completely and accurately characterize the segment

generally and when taken in context and as a whole.  Defendant further denies that the transcription

relied on by Plaintiffs is complete and accurate in all instances.  Answering further, WikiLeaks

**does** indicate that a Chavez campaign adviser was placed on the board of a Smartmatic joint

venture in the early 2000s.  Defendant further notes that the U.S. government forced Smartmatic

to sell the assets of Sequoia because of Smartmatic's connections to Venezuela.  Defendant further

denies any remaining allegations by Plaintiffs in Paragraph 95.

**ALLEGATION NO. 96:**

       During Mr. Dinow's statements, OANN put up an on-screen graphic stating "Report: Soros-Backed Firm Installed Socialism in Venezuela; Dominion-Linked Smartmatic Had Chavez Aide on Board, Sold Rigged Election Tech to U.S. States." OANN put up this graphic even though it had no evidence to support these assertions.



**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response

is required, Defendant admits that OAN published the quoted on-screen graphic set forth in

Paragraph 96, but Defendant denies the allegation that OAN "had no evidence to support these

allegations."  Defendant further denies the allegations in Paragraph 96 completely and accurately

characterize the segment generally and when taken in context and as a whole.  Defendant further

denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.

Answering further, WikiLeaks indicates that a Chavez campaign adviser was placed on the board

of a Smartmatic joint venture in the early 2000s.  Defendant further notes that the U.S. government

forced Smartmatic to sell the assets of Sequoia because of Smartmatic's connections to Venezuela.

Defendant further denies any remaining allegations by Plaintiffs in Paragraph 96.

## ALLEGATION NO. 97:

OANN then republished another portion of Mr. Giuliani's podcast.

Mr. Giuliani: They certainly stole the election in Detroit.  They certainly stole the election in Pennsylvania.  There were over 100 witnesses to that.  And you're gonna see the same thing is true in five other places.  And then we're going to take a look at Dominion, and we'll show you how technologically they stole the election.

Mr. Dinow: The Gateway Pundit report also says Smartmatic is partially owned by the Maduro regime and George Soros.  In the meantime, Rudy Giuliani also suggests its partner Dominion has been corrupted by the Clinton Foundation.

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that it published portions of Mr. Giuliani's November 13, 2020 podcast of *Common Sense*.  Answering further, Defendant notes that Mr. Giuliani was making these statements in his role as counsel for President Trump.  Defendant denies the allegations in Paragraph 97 completely and accurately characterize the segment generally and when taken in context and as a whole.  Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.  Defendant further denies any remaining allegations by Plaintiffs in Paragraph 97.

## ALLEGATION NO. 98:

Again, during Mr. Dinow's statements, OANN displayed the same on-screen graphic falsely accusing Smartmatic of having connections to corrupt dictators, of having previously rigged an election in Venezuela, and of being widely used in the 2020 U.S. election.  OANN had seen no evidence to support these claims because they are all factually inaccurate.

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response is required, Defendant incorporates its response to Paragraph 96 as if fully set forth herein.

**ALLEGATION NO. 99:**

On November 17, 2020, Ms. McKinney returned to the disinformation campaign on *Tipping Point with Kara McKinney*. (*Tipping Point*, November 17, 2020 (Exhibit 6); Screenshots, *Tipping Point*, November 17, 2020 (Exhibit 6A).)  Ms. McKinney opened her show by repeating the primary themes of the disinformation campaign: Smartmatic was widely used in the 2020 U.S. election, including in Dominion machines; Smartmatic rigged the 2020 U.S. election in favor of Joe Biden; and Smartmatic's software was compromised during the 2020 U.S. election while votes were sent to foreign countries.



Ms. McKinney: The even bigger issue at play here [is] systemic.  For example, the voting system used in around 30 states, Dominion, and its subsidiary Smartmatic. It just so happens that a member of Biden's transition team, Peter Neffenger, is a member of the Board of Directors for Smartmatic.  The chairman of that company is also a board member for George Soros' Open Society Foundation.  That very same software was used a few years back to rig elections in Venezuela.

\*\*\*

Ms. McKinney: So this begs the question, why are we using foreign companies to count our votes in the first place, and allowing that information to reportedly flow through servers overseas?  And secondly, if even Democrats knew about these vulnerabilities with Dominion and Smartmatic years before this election, then why did they allow them to be used in so many states?  Why didn't more states follow in the lead of Texas in saying no?  Perhaps that means they were chosen by election officials precisely because they are so flawed.

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that on an episode of *Tipping Point with Kara McKinney* (which is

a political talk show featuring news, commentary, opinion, and more) that aired on November 17, 2020, Ms. McKinney made the quoted statements. Defendant denies that Ms. McKinney engaged in a disinformation campaign. Defendant further denies the allegations in Paragraph 99 completely and accurately characterize the segment generally and when taken in context and as a whole. Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances. Answering further, Defendant states that Smartmatic USA Corp.'s current board chairman, Vice Admiral Peter Neffenger, was a member of President Biden's Agency Review team under the Department of Homeland Security. Defendant further denies any remaining allegations by Plaintiffs in Paragraph 99.

**ALLEGATION NO. 100:**

Ms. McKinney then transitioned to an interview with Tom Fitton, the President of Judicial Watch. During the interview, Mr. Fitton stated that "the Smartmatic system[,] . . . the company was set up by buddies of Hugo Chavez." Mr. Fitton had no support for that assertion and Ms. McKinney, and OANN, knew that Mr. Fitton had no support for his statement. Ms. McKinney nevertheless did not challenge Mr. Fitton's statement.

**ANSWER:** The segment speaks for itself, thus no response is required. To the extent a response is required, Defendant admits that on an episode of *Tipping Point with Kara McKinney* (which is a political talk show featuring news, commentary, opinion, and more) that aired on November 17, 2020, Mr. Fitton made the quoted statement. Defendant denies that Mr. Fitton had no support for his statement or that anyone at OAN knew that Mr. Fitton had no support for his statement. Defendant further denies the allegations in Paragraph 100 completely and accurately characterize the segment generally and when taken in context and as a whole. Defendant further denies that

-63-

the transcription relied on by Plaintiffs is complete and accurate in all instances.  Defendant further

denies any remaining allegations by Plaintiffs in Paragraph 100.

**ALLEGATION NO. 101:**

On November 19, 2020, the disinformation campaign continued during OANN's primetime programming.  First up was Patrick Hussion on *Breaking News Live with Patrick Hussion* at 7PM.  (*Breaking News Live*, November 19, 2020 (Exhibit 9); Screenshots, *Breaking News Live*, November 19, 2020 (Exhibit 9A).)



During this program, OANN republished clips of a press conference held by Mr. Giuliani and Ms. Powell in Washington, D.C. earlier that day.  Mr. Hussion added his own commentary to the clips.

Mr. Giuliani: The company counting our vote, with control over our vote, is owned by two Venezuelans who are allies of Chávez.

Mr. Hussion: Rudy Giuliani says the Democrat Party conspired with socialist regimes overseas to steal this year's election from the President.  In a news conference, the President's legal team said that they have evidence that Dominion Voting Systems and the Smartmatic software were used to switch votes from President Trump to Joe Biden. They add the technology is controlled by allies of Venezuela's Maduro regime.

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response

is required, Defendant admits that OAN published portions of Mr. Giuliani's press conference

during the November 19, 2020 episode of *Breaking News Live with Patrick Hussion* and Mr.

Hussion made the quoted statement.  Defendant denies that OAN engaged in a disinformation

campaign.  Defendant further denies the allegations in Paragraph 101 completely and accurately

characterize the segment generally and when taken in context and as a whole.  Defendant further

denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.

Defendant further denies any remaining allegations by Plaintiffs in Paragraph 101.

**ALLEGATION NO. 102:**

During this news package, OANN displayed an on-screen graphic that stated, "Giuliani: Dems & Venezuela Used Dominion Software to Steal Election; Say Dominion's Smartmatic Technology Co-Owned by Maduro Regime Allies, Soros Involved as Well."



**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response

is required, Defendant admits that OAN published the graphic.  Defendant denies the allegations

in Paragraph 102 completely and accurately characterize the segment generally and when taken in

context and as a whole.  Defendant further denies any remaining allegations by Plaintiffs in

Paragraph 102.

**ALLEGATION NO. 103:**

At the time of Mr. Hussion's show, OANN knew both that it had not seen any evidence supporting what Mr. Giuliani said and that Mr. Giuliani had not presented any evidence supporting what he said.  Nonetheless, OANN rebroadcast Mr. Giuliani's demonstrably false statements and added to Mr. Giuliani's false statements.

**ANSWER:** Defendant denies the allegations in Paragraph 103.

**ALLEGATION NO. 104:**

Next up, at 8PM, was OANN anchor Dan Ball.  (*Real America*, November 19, 2020 (Exhibit 10);  Screenshots, *Real America*, November 19, 2020 (Exhibit 10A).)  Mr. Ball

interviewed Evi Kokalari-Angelakis and introduced her as someone "familiar with communism and socialism and how it works and doesn't work versus capitalism." Mr. Ball also stated that Ms. Kokalari-Angelakis had special knowledge of the "election fraud" issue, stating "You're familiar with a little company called Dominion software, which is at the forefront of this election fraud."



Mr. Ball asked Ms. Kokalari-Angelakis to explain "how [she] know[s] that Dominion has been involved in some other corrupt elections overseas in the past." Ms. Kokalari-Angelakis went on to share her "knowledge" about Dominion and Smartmatic.

> Ms. Kokalari-Angelakis: [T]hey have been around since 2004, at least in Serbia. Dominion and the Clinton Foundation, they have a project together called the Delian Project, which apparently raises money to help voter fairness in countries like, I don't know, maybe Albania or countries that are not–don't have a strong economy or they're not too strong. Meanwhile, they are doing the opposite, so, you know, when you see weak states like those, this is the perfect playground for George Soros because, believe it or not, George Soros' son is constantly in Albania. Albanians are friends of Hillary Clinton and the Clinton Foundation, but, remember this: in 2016, right before the election in 2016, Hillary Clinton was so sure she was going to win. *The only reason she was sure she was gonna win, is because they knew Dominion and the software, Smartech–Smartmatic was in existence, and that's how they were going to get the election.* They just didn't expect–they didn't realize how many Americans were going to vote for Donald Trump, and that's how they probably lost that election.

> Mr. Ball: Yeah, what we've seen from the information coming out, and we heard a little bit from Rudy Giuliani today, is that obviously these security folks at Dominion that set up the systems in the individual states, they can just do a little tweak here, a little tweak there to the program. It can make it so minor to flip votes, but enough to make your guy win that hopefully it's not noticeable. And to your point in '16, I've seen this in several articles, they didn't tweak it quite enough. They didn't expect that many millions of people to vote for [] President Donald J. Trump.

> Ms. Kokalari-Angelakis: Exactly.

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that an episode of *Real America* (which is a political talk show featuring news, commentary, opinion, and more) that aired on November 19, 2020 featured an interview of Ms. Kokalari-Angelakis by Mr. Ball in which they made the quoted statements. Defendant denies the allegations in Paragraph 104 completely and accurately characterize the segment generally and when taken in context and as whole.  Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.  Defendant further denies any remaining allegations by Plaintiffs in Paragraph 104.

**ALLEGATION NO. 105:**

      Mr. Ball ended his discussion with Ms. Kokalari-Angelakis by thanking her for appearing on his show.  Mr. Ball also promised viewers that "One America [News] will continue to look into the Soros connection but, again, we do know there are ties directly to the Clinton Foundation and other Democrats with this Dominion Software Company and their hierarchy that run it."  OANN falsely equated Smartmatic to the "Dominion Software Company" by telling people, falsely, that Dominion machines use Smartmatic software.  OANN knew it had seen no evidence that Dominion used Smartmatic because that claim is factually inaccurate.

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that an episode of *Real America* (which is a political talk show featuring news, commentary, opinion, and more) that aired on November 19, 2020 featured an interview of Ms. Kokalari-Angelakis by Mr. Ball in which Mr. Ball made the quoted statement. Defendant denies that OAN falsely equated any Smartmatic entity to any Dominion entity because they do in fact share technology (among other things) with each other and they both own or owned Sequoia Voting Systems.  Defendant further denies that OAN knew it had no evidence of the sharing of technology and other connections between one or more Smartmatic entities and one or more Dominion entities because OAN does have that evidence.  Defendant further denies the allegations in Paragraph 105 completely and accurately characterize the segment generally and when taken in context and as a whole.  Defendant further denies that the transcription relied on by

Plaintiffs is complete and accurate in all instances.  Defendant denies any remaining allegations by Plaintiffs in Paragraph 105.

**ALLEGATION NO. 106:**

On November 20, 2020, OANN continued its disinformation campaign all day.  During the 12AM hour of OANN's *News Room*, OANN broadcasted a news package that included rebroadcasted clips of Mr. Giuliani and Ms. Powell's November 19, 2020 press conference that took place in the District of Columbia, and commentary by an unseen OANN reporter.  (*News Room*, 12AM, November 20, 2020 (Exhibit 14); Screenshots, *News Room*, 12AM, November 20, 2020 (Exhibit 14A).)

OANN Reporter: The President's lawyers are weighing in once again on election fraud during the 2020 White House race. In DC Thursday, ***they claimed votes were hacked and ballots were switched from President Trump to Joe Biden through technology developed in Venezuela.  President Trump's personal lawyer Rudy Giuliani says the company funding the technology has close ties to known communist leaders***.

Mr. Giuliani: The company counting our vote, with control over our vote, is owned by two Venezuelans who are allies of Chávez, are present allies of Maduro, with a company whose chairman is a close associate and business partner of George Soros.

OANN Reporter: Giuliani has recently also said several whistleblowers have come forward to testify about so-called glitches in election software.  And Thursday, he said hundreds more have signed up affidavits detailing incidents with voting systems.

***

OANN Reporter: ***Most claims center around the Canadian-made Dominion Voting Systems and the Venezuelan-made Smartmatic Systems.***  Sidney Powell says the same technology was used to secure a victory for Hugo Chávez in Venezuela and could have been used across the country.

Ms. Powell: [O]ne of its most characteristic features its, is its ability to flip votes. It can set and run an algorithm that probably ran all over the country to take a certain percentage of votes from President Trump.

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that it published portions of Mr. Giuliani and Ms. Powell's November 19, 2020 press conference on a November 20, 2020 episode of *News Room*, and the quoted statements were made.  Defendant denies that OAN engaged in a disinformation campaign.

Defendant further denies the allegations in Paragraph 106 completely and accurately characterize the segment generally and when taken in context and as a whole.  Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.  Defendant further denies any remaining allegations by Plaintiffs in Paragraph 106.

**ALLEGATION NO. 107:**

During this news package, OANN included an on-screen graphic that stated, "President's Lawyers Claim Communist-Funded Election Software Responsible for Alleged Voting Irregularities."  OANN had already explained (falsely) to its audience that Smartmatic was the "communist-funded election software company."



**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that OAN published the quoted on-screen graphic set forth in Paragraph 107. Defendant denies that the graphic is "of and concerning" each Plaintiff.  Defendant further denies the allegations in Paragraph 107 completely and accurately characterize the segment generally and when taken in context and as a whole.  Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.  Defendant denies any remaining allegations by Plaintiffs in Paragraph 107.

**ALLEGATION NO. 108:**

Prior to broadcasting this news package, OANN knew it had not seen any evidence that: Smartmatic was widely used in the 2020 U.S. election; Smartmatic rigged the 2020 U.S. election for Joe Biden; Smartmatic has ties to corrupt Venezuelan dictators; or Smartmatic previously

rigged elections in Venezuela. OANN also knew that Mr. Giuliani and Ms. Powell had not provided any evidence corroborating their claims.

**ANSWER:** Defendant denies the allegations in Paragraph 108.

**ALLEGATION NO. 109:**

During the 6AM hour of OANN's *News Room*, OANN broadcast an interview with Keith Trippie. (*News Room*, 6AM, November 20, 2020 (Exhibit 15); Screenshots, *News Room*, 6AM, November 20, 2020 (Exhibit 15A).)



Mr. Trippie is a consultant and an author. Mr. Trippie added to the disinformation campaign by implying that Smartmatic's technology and software is capable of rigging elections.

> Mr. Trippie: One of the things I'd love to see Sidney [Powell] and Rudy [Giuliani] do is, they need to talk to both over at Dominion and over at Smartmatic. Who were the product managers, who were the lead engineers, who were the lead developers and who were the lead testers? Those are all people directly involved in what software features are made available and testing those features before they're out. One of the things I would want to know is, can you change a vote? Whether it's inside the company on the software or out at a state location where these machines are.

**ANSWER:** The segment speaks for itself, thus no response is required. To the extent a response is required, Defendant admits that an episode of *News Room* that aired on November 20, 2020 featured an interview of Mr. Trippie in which Mr. Trippie made the above quoted statements and that Mr. Trippie is a consultant and author. Defendant denies that Mr. Trippie contributed to any disinformation campaign and denies that any disinformation campaign by OAN existed. Defendant further denies the allegations in Paragraph 109 completely and accurately characterize

the segment generally and when taken in context and as a whole.  Defendant further denies that

the transcription relied on by Plaintiffs is complete and accurate in all instances.  Defendant further

denies any remaining allegations by Plaintiffs in Paragraph 109.

**ALLEGATION NO. 110:**

The disinformation campaign continued during the 3PM hour of the *News Room*. (*News Room*, 3PM, November 20, 2020 (Exhibit 16); Screenshots, *News Room*, 3PM, November 20, 2020 (Exhibit 16A).)  OANN broadcast reporter John Hines interviewing Allan Santos, a Brazilian journalist.  Mr. Hines is an OANN reporter based in Washington, D.C. He broadcasts out of OANN's Washington, D.C. news bureau.  The interview was filmed in OANN's Washington, D.C. news bureau.  On information and belief, the interview was researched and produced in OANN's Washington, D.C. news bureau.



**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response

is required, Defendant admits that an episode of *News Room* that aired on November 20, 2020

featured an interview of Mr. Santos by Mr. Hines.  Defendant admits that Mr. Hines filmed the

interview in OAN's Washington, D.C. bureau but denies that the interview was researched,

broadcast, or produced from Washington, D.C.  Defendant denies that OAN engaged in a

disinformation campaign.  Defendant further denies any remaining allegations by Plaintiffs in

Paragraph 110.

**ALLEGATION NO. 111:**

A OANN reporter introduced Mr. Santos as "a reporter who has first-hand knowledge of the problems with Dominion Voting Machines."  Mr. Hines then stated that Mr. Santos has "come

across some evidence that has bearing on the counting in our U.S. elections." Mr. Santos went on to explain his "evidence."

> Mr. Santos: So, in my experience in South America, we are following lots of election fraud as the recent one in Bolivia. ***And due to that we follow the Smartmatic company, who is a company that count votes.*** It's like a voter machine used to have in Venezuela, Brazil, Bolivia, Argentina, and so forth. And we have lots of news in Brazil, even the outlet media, slamming the Smartmatic company and the Smartmatic company owner is the Lord Mark Malloch Brown, who's also a board member of the Open Society Foundation. And one thing is it's weird, it's when you open the Smartmatic official website says they started in Florida, back 2000. But the problem is we have story in Brazil, Brazilian BBC version, Portuguese saying the Smartmatic is started in Venezuela, not in Florida. And not only this, the Smartmatic company also used to work with Dominion, the company system that you are using here. But it's weird how they operate, because it's the same pattern. ***In Brazil back 2014, and also back 2018, one candidate was leading, and then it stopped counting. And after an hour or after 40 minutes, something like that, everything changed.*** And I saw that here. And I can assure you communists love fraud election. They love to do fraud[.]



**ANSWER:** The segment speaks for itself, thus no response is required. To the extent a response is required, Defendant admits that an episode of *News Room* that aired on November 20, 2020 featured an interview of Mr. Santos by Mr. Hines in which Mr. Santos made the quoted statements. Defendant further denies the allegations in Paragraph 111 completely and accurately characterize the segment generally and when taken in context and as a whole. Defendant further denies that

the transcription relied on by Plaintiffs is complete and accurate in all instances.  Defendant further

denies any remaining allegations by Plaintiffs in Paragraph 111.

**ALLEGATION NO. 112:**

> Mr. Hines and Mr. Santos then focused on Smartmatic's alleged connection to Dominion.

> Mr. Hines: So what is the connection between the Smartmatic machines and the Dominion machines do you suppose?

> Mr. Santos: So they have a contract for using softwares.  And you can follow these on law.ucea.com.  And you can see how they operate together here in America.  So it's there in the website.

> Mr. Hines: *So the connection has to do with the software that both of these companies use, these vote counting services. Is that it?*

> Mr. Santos: *Yes.*

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response

is required, Defendant admits that an episode of *News Room* that aired on November 20, 2020

featured an interview of Mr. Santos by Mr. Hines in which Mr. Hines and Mr. Santos made the

quoted statements.  Defendant further denies the allegations in Paragraph 112 completely and

accurately characterize the segment generally and when taken in context and as a whole.

Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in

all instances.  Defendant denies any remaining allegations by Plaintiffs in Paragraph 112.

**ALLEGATION NO. 113:**

> At 6PM, anchor Stephanie Hamill joined the disinformation campaign on *In Focus with Stephanie Hamill*. (*In Focus*, November 20, 2020 (Exhibit 17); Screenshots, *In Focus*, November 20, 2020 (Exhibit 17A).)  Ms. Hamill began her show by broadcasting clips from the November 19 press conference given by Mr. Giuliani and Ms. Powell, which took place in the District of Columbia.  She summarized Mr. Giuliani and Ms. Powell's allegations.

> Ms. Hamill: President Trump's personal attorney alleges a national conspiracy by Democrats to steal the 2020 election . . .  Giuliani is not alone in his assertions of widespread voter fraud.  *Attorney Sidney Powell says the software used in the voting machines across the country can be manipulated to alter vote totals.*  Now Powell also points out that the software developed by Smartmatic is tied to major democrat donor George Soros and the Clinton Foundation.

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that in an episode of *In Focus* (which is a political talk show featuring news, commentary, opinion, and more) that aired on November 20, 2020, Ms. Hamill made the quoted statements and OAN aired clips from the November 19, 2020 press conference given by Mr. Giuliani and Ms. Powell.  Defendant denies that OAN engaged in a disinformation campaign or that Ms. Hamill joined it.  Defendant further denies the allegations in Paragraph 113 completely and accurately characterize the segment generally and when taken in context and as a whole.  Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.  Defendant further denies any remaining allegations by Plaintiffs in Paragraph 113.

**ALLEGATION NO. 114:**

Ms. Hamill then introduced her guest, Joseph diGenova.  Mr. diGenova was introduced as a "lawyer, political commentator, and former U.S. Attorney for the District of Columbia."  Ms. Hamill also stated that Mr. diGenova is "part of President Trump's legal team."  Ms. Hamill asked Mr. diGenova to discuss the November 19 press conference, which took place in the District of Columbia, and Mr. Giuliani and Ms. Powell's allegations.



Ms. Hamill: [W]hat really stood out to me in the press conference yesterday was Sidney Powell talking about the voting machines suggesting that our votes are being counted overseas, that Dominion Voting Machines and Smartmatic use software that are controlled by foreign interests.  If you could expand on that.

Mr. diGenova: I noticed that Dominion Software and its other entities issued a statement today saying they're not controlled by foreign entities, etc, etc.  They never denied that the votes are actually counted in computers in Frankfurt, Germany, and Barcelona, Spain.  Ask yourself this question: Why would any state hire a company, which is going to have its vote tallies done in Frankfurt, Germany, and Barcelona, Spain, where the tallying cannot be monitored by any American citizen during the process, and where tabulations could be altered without the knowledge of anybody?  ***Because these computer systems have a backdoor so that they can be hacked.***  My answer to Dominion is, allow all of your computers to be subject to a forensic audit immediately.  Let's see if they agree to that.

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that in an episode of *In Focus* (which is a political talk show featuring news, commentary, opinion, and more) that aired on November 20, 2020, Ms. Hamill interviewed Mr. diGenova and they made the quoted statements.  Defendant denies the allegations in Paragraph 114 completely and accurately characterize the segment generally and when taken in context and as a whole.  Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.  Defendant further denies any remaining allegations by Plaintiffs in Paragraph 114.

**ALLEGATION NO. 115:**

While Ms. Hamill and Mr. diGenova discussed Smartmatic, OANN displayed a graphic stating "Trump Attorney Sidney Powell: Voting Software 'Designed to Rig Elections.'"  OANN falsely made Smartmatic synonymous with the "Voting Software" at issue.



**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that OAN published the quoted on-screen graphic set forth in Paragraph 115.  Defendant denies the allegations in Paragraph 115 completely and accurately characterize the segment generally and when taken in context and as a whole.  Defendant further denies that the graphic is "of and concerning" each Plaintiff.  Defendant further denies any remaining allegations by Plaintiffs in Paragraph 115.

**ALLEGATION NO. 116:**

Ms. Hamill ended her interview with Mr. diGenova by thanking him and imploring him to "keep fighting the good fight."

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that in an episode of *In Focus* (which is a political talk show featuring news, commentary, opinion, and more) that aired on November 20, 2020, Ms. Hamill interviewed Mr. diGenova and Ms. Hamill made the quoted statements.

**ALLEGATION NO. 117:**

At the time of these shows, OANN had not seen any evidence showing that: Smartmatic was widely used in the 2020 U.S. election, including in Dominion machines; Smartmatic rigged the 2020 U.S. election in favor of Joe Biden; or Smartmatic's software was compromised during the 2020 U.S. election while votes were sent to foreign countries.  And OANN knew that none of its guests, Ms. Powell, or Mr. Giuliani had produced any evidence corroborating their claims about Smartmatic.  That did not stop OANN because it was working to spread disinformation and was picking clips and guests that allowed it to do so.

**ANSWER:** Defendant denies the allegations in Paragraph 117.

**ALLEGATION NO. 118:**

On November 22, 2020, Ms. McKinney once again joined the disinformation campaign on *Tipping Point with Kara McKinney*. (*Tipping Point*, November 22, 2020 (Exhibit 18); Screenshots, *Tipping Point*, November 22, 2020 (Exhibit 18A).)  Ms. McKinney was joined by a new guest, Kyle Becker.  Mr. Becker is a former associate producer at Fox News.  By now, the themes of the disinformation campaign were familiar; Ms. McKinney and Mr. Becker added to the rampant disinformation.



Ms. McKinney: It [] blows my mind that [] years and years of Russia this, Russia that, foreign interference and foreign hacking and meddling in our elections, and then here all these bids go out to foreign-based companies.  You know, Dominion [] it's a Canadian company.  We hear about some servers possibly overseas, that at some of this data is being routed through, [] you know what's going on there?  It's so confusing.

Mr. Becker: It is confusing because [] there are foreign companies that have stations in the United States . . .  SGO Smartmatic has been involved in this and they're from London, they have ties to Venezuela, they've been participating in Venezuela.  There are ties to [] Germany, [] election reporting servers going through [] there.  All of this is being denied, but there's absolutely zero transparency.  These source codes that are used in these [] voting machines are secret and proprietary [.]

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that on an episode of *Tipping Point with Kara McKinney* (which is a political talk show featuring news, commentary, opinion, and more) that aired on November 22, 2020, Ms. McKinney and Mr. Becker made the quoted statements.  Defendant denies that OAN had a disinformation campaign.  Defendant further denies the allegations in Paragraph 118 completely and accurately characterize the segment generally and when taken in context and as a whole.  Defendant further denies that the transcription relied on by Plaintiffs is complete and

accurate in all instances.  Defendant further denies any remaining allegations by Plaintiffs in

Paragraph 118.

**ALLEGATION NO. 119:**

OANN's disinformation campaign continued on the 6PM hour of the *News Room* on November 22.  (*News Room*, 6PM, November 22, 2020 (Exhibit 19); Screenshots, *News Room*, 6PM, November 22, 2020 (Exhibit 19A).)  Reporter Samantha Lomibao discussed Smartmatic's alleged role in rigging the 2020 U.S. election.  The segment included clips from Mr. Giuliani's visual podcast, *Common Sense*, published on or around November 18, 2020.



Ms. Lomibao: In a recent statement the [Organization of American States (OAS)] said the international community must not recognize Venezuelan elections, adding the Maduro regime will manipulate the outcome of the vote.  The organization says Maduro officials seek to cement their impunity and cooptation of state powers.  This after reports found Maduro allies were meddling in the latest US election through a company called Smartmatic.

Mr. Giuliani: ***Smartmatic, which is the ultimate software, had switched 6,000 votes.  It switched 6,000 votes from Trump to Biden.***  So the poor people in Michigan that went in to vote for Trump ended up voting for Biden because the machine and the software that originates you know, with Venezuela, a dictatorship, changed their vote without their ever knowing it.

Ms. Lomibao: The OAS says any election that involves Maduro officials is a sham and must be not recognized by any civilized country.

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response

is required, Defendant admits that on an episode of *News Room* that aired on November 22, 2020,

Ms. Lomibao made the quoted statements and published a portion of Mr. Giuliani's November 13,

2020 podcast of *Common Sense*.  Answering further, Defendant notes that Mr. Giuliani was

making these statements in his role as counsel for President Trump.  Defendant denies OAN

engaged in a disinformation campaign.  Defendant further denies the allegations in Paragraph 119

completely and accurately characterize the segment generally and when taken in context and as a

whole.  Defendant further denies that the transcription relied on by Plaintiffs is complete and

accurate in all instances.  Defendant further denies any remaining allegations by Plaintiffs in

Paragraph 119.

**ALLEGATION NO. 120:**

Throughout the segment, OANN put up an on-screen graphic that stated "OAS: Upcoming Venezuela Elex A Sham, Must Not Be Recognized; Says Maduro Regime Seeks to Co- Opt State Power Amid Concerns of Smartmatic Meddling in U.S. Elex."  OANN used this graphic even though it knew the OAS was not referring to Smartmatic because Smartmatic stopped working on elections in Venezuela in 2017.

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response

is required, Defendant admits that OAN published the quoted on-screen graphic set forth in

Paragraph 120.  Defendant denies any remaining allegations by Plaintiffs in Paragraph 120.

**ALLEGATION NO. 121:**

At the time of the report, OANN had not seen any evidence that Smartmatic software switched any votes.  OANN also knew that Mr. Giuliani had not produced any evidence supporting his claim that Smartmatic switched votes.  This did not stop OANN.  OANN wanted to spread disinformation about Smartmatic and played clips that supported its disinformation campaign.

**ANSWER:** Defendant denies the allegations in Paragraph 121.

**ALLEGATION NO. 122:**

On November 23, 2020, OANN's disinformation campaign continued on *Tipping Point with Kara McKinney*. (*Tipping Point*, November 23, 2020 (Exhibit 20); Screenshots, *Tipping Point*, November 23, 2020 (Exhibit 20A).)  Ms. McKinney brought on another guest, J. Michael Waller, to discuss Smartmatic's alleged ties to corrupt Venezuelan dictators.  Mr. Waller was introduced as a "Senior Analyst for Strategy at the Center for Security Policy."



Ms. McKinney: [S]o when it comes to this affidavit from the former Venezuelan bodyguard, what stood out to you the most?

Mr. Waller: What stood out is we have an eyewitness account of an individual who was a trusted confidant of the then Cuban and Russian backed dictator of Venezuela, who personally designed the parameters of a software [] whose whole purpose was to manipulate votes to ensure he would win an election.  This is crucial because its not just a foreign Banana Republic dictator, ***this is someone who's backed by [] Cuban intelligence Secret Service around him and Russian secret police around him, who's designing this material that American voting tabulation companies use.***

Ms. McKinney: And would it be accurate to describe ***Smartmatic as a shell company?***  That there's a lot of payers—a lot of the waters here are muddy so you can't necessarily get back to who owns what?  Would that be correct?

Mr. Waller: Right, yes, we do know it's owned by two Venezuelan nationals who were allied with the Venezuelan dictatorship.  We know that much, but the company is hiding who else owns them, and there's no transparency at all.  Yet our own voting officials think it's just fine.

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that on an episode of *Tipping Point with Kara McKinney* (which is a political talk show featuring news, commentary, opinion, and more) that aired on November 23, 2020, Ms. McKinney and Mr. Waller made the quoted statements.  Defendant denies that it engaged in a disinformation campaign.  Defendant further denies the allegations in Paragraph 122 completely and accurately characterize the segment generally and when taken in context and as a whole.  Defendant further denies that the transcription relied on by Plaintiffs is complete and

accurate in all instances.  Defendant further denies any remaining allegations by Plaintiffs in

Paragraph 122.

**ALLEGATION NO. 123:**

> Ms. McKinney then asked about to [sic] Smartmatic's relationship with Dominion.

> Ms. McKinney: And then it just comes down to this idea of Smartmatic and Dominion—I know they're trying to distance from each other.  For example, Dominion says 'we're competitors in the marketplace, we have no ties whatsoever.' You go back to old interviews, for example, of the former chairman for Smartmatic [] in the Philippines, he was being interviewed and he says 'that they work together with software and share some details there.'  So what is the exact relationship between the two?

> Mr. Waller: Well, it's still really unclear, but we do know that from the evidence presented so far from this [] one affidavit that we've already seen that ***the current software for any Smartmatic compatible machine, the DNA is based on this [] Smartmatic material designed in Venezuela***.  So that's the [] backbone of the software for any Dominion or other machine in the United States.

> Ms. McKinney: We've spent the last four years crying about Russia and, you know, foreign interference in our elections.  Here you have Dominion, it's a Canadian firm, and then you have Smartmatic which, you know, goes back to Venezuela. And we, here, we're basically importing and bringing them into about, what was it?  ***Thirty or so states, were using this type of software***, what does that tell you?

> Mr. Waller: It tells us a lot of people are asleep at the switch[.]

**ANSWER:** The segment speaks for itself, thus a response is not required.  To the extent a response

is required, Defendant admits that on an episode of *Tipping Point with Kara McKinney* (which is

a political talk show featuring news, commentary, opinion, and more) that aired on November 23,

2020, Ms. McKinney and Mr. Waller made the quoted statements.  Defendant further denies that

the transcription relied on by Plaintiffs is complete and accurate in all instances.  Defendant further

denies the allegations in Paragraph 123 completely and accurately characterize the segment

generally and when taken in context and as a whole.  Defendant denies any remaining allegations by Plaintiffs in Paragraph 123.

**ALLEGATION NO. 124:**

At the time of the report, OANN had not seen any evidence that Smartmatic was widely used in the 2020 election or that Smartmatic was used by Dominion in the 2020 election.  OANN also knew that Mr. Waller had not presented any such evidence.  That did not stop OANN because it had made the intentional choice to spread disinformation.

**ANSWER:** Defendant denies the allegations in Paragraph 124.

**ALLEGATION NO. 125:**

On November 28, 2020, Ms. McKinney and Mr. Johns again contributed to OANN's disinformation campaign on *Tipping Point with Kara McKinney*.  (*Tipping Point*, November 28, 2020 (Exhibit 25); Screenshots, *Tipping Point*, November 28, 2020 (Exhibit 25A).)  Mr. Johns returned to his tried and true themes: Smartmatic rigged the 2020 U.S. election for Joe Biden, and Smartmatic is associated with corrupt Venezuelan dictators.



Mr. Johns: The vast amount of investigation and when you're talking about probably easily, you know, maybe close to ten different means through which this election was fraudulently manipulated.  ***The most complicated, of course, of which is the Dominion and Smartmatic systems, which I would defy anyone anywhere who believes that there was not fraud related to these systems***, which clearly we haven't demonstrated that yet.  I'm going to be fair about that, but can you point to any election anywhere in the world where these systems were utilized—or even in the United States, in Chicago, where they were, where there were fraudulent issues, where it has not been a factor in systematic electoral fraud?  These are enormous, this is an enormous, enormous troubling system . . . .  [W]here any election official made the decision to acquire this particular system, I cannot understand why they would even be in their jobs today.  This was [] the singular biggest obligation they had and they had that obligation at the time . . . there was bipartisan concern about electoral fraud, and to go out and acquire this system, knowing its history, knowing

its attachment association with the dictatorship in Venezuela, and the use that it played in the Argentina manipulations in the Philippines and elsewhere, including in Chicago, is an inexcusable decision.

**ANSWER:** The segment speaks for itself, thus a response is not required.  To the extent a response is required, Defendant admits that on an episode of *Tipping Point with Kara McKinney* (which is a political talk show featuring news, commentary, opinion, and more) that aired on November 28, 2020, Ms. McKinney and Mr. Johns made the quoted statements.  Defendant denies that it engaged in a disinformation campaign or that Ms. McKinney or Mr. Johns contributed to it.  Defendant further denies the allegations in Paragraph 125 completely and accurately characterize the segment generally and when taken in context and as a whole.  Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.  Defendant further denies any remaining allegations by Plaintiffs in Paragraph 125.

**ALLEGATION NO. 126:**

At the time of the report, OANN had not seen any evidence that Smartmatic rigged the 2020 U.S. election for Joe Biden or that Smartmatic was founded by corrupt dictators.  And OANN knew that none of its guests, including Mr. Johns, had produced any evidence supporting those claims. That did not stop OANN because OANN wanted to spread disinformation and invited guests on its shows that allowed it to do so.

**ANSWER:** Defendant denies the allegations in Paragraph 126.

**ALLEGATION NO. 127:**

On December 1, 2020, OANN aired an exclusive interview between Mr. Hines and Mr. Fitton on *Breaking News Live with Patrick Hussion*.  (*Breaking News Live*, December 1, 2020 (Exhibit 26); Screenshots, *Breaking News Live*, December 1, 2020 (Exhibit 26A).)  Mr. Hines filmed the interview in OANN's Washington, D.C. news bureau.  On information and belief, the interview was researched and produced in OANN's Washington, D.C. news bureau.



Mr. Fitton: ***I think there's strong evidence that something went on in Venezuela with the Smartmatic computer system that was used to conduct the election there that Chavez obviously stole.*** And it's a fair question to ask whether the–something similar is able to be done in the United States using similar systems, whether it be Smartmatic, or the Dominion version of electronic computer software. ***We're hearing witness after witness highlight the security weaknesses of these systems.*** And so there's nothing wrong with asking questions about it. Now, of course, we have to figure out whether anything was done improperly. But the numbers popping up in unusual ways, in Pennsylvania and Michigan, where you get these huge spikes in numbers occurring in the middle of the night. You know that, to me, at least ought to [] warrant a serious investigation before electoral college votes are certified later this month.

**ANSWER:** The segment speaks for itself, thus a response is not required. To the extent a response is required, Defendant admits that an episode of *Breaking News Live with Patrick Hussion* that aired on December 1, 2020 featured an interview of Mr. Fitton by Mr. Hines in which Mr. Fitton made the quoted statements. Defendant admits Mr. Hines appeared from the Washington, D.C. bureau. Defendant denies the interview was produced and researched in the Washington, D.C. bureau and denies that it was broadcast from the Washington, D.C. bureau. Defendant further denies the allegations in Paragraph 127 completely and accurately characterize the segment generally and when taken in context and as a whole. Defendant further denies that the transcription

relied on by Plaintiffs is complete and accurate in all instances. Defendant further denies any remaining allegations by Plaintiffs in Paragraph 127.

**ALLEGATION NO. 128:**

At the time of the report, OANN knew it had not seen any evidence of security weaknesses in Smartmatic's software, generally, or in the Smartmatic software used in Los Angeles County in the 2020 election, specifically. OANN also knew that no witnesses had come forward to support these claims about Smartmatic's software. At the time of the report, OANN had seen zero evidence to support Mr. Fitton's claims and knew that nobody had provided any evidence to support the claims. But that did not matter to OANN.

**ANSWER:** Defendant denies the allegations in Paragraph 128.

**ALLEGATION NO. 129:**

Later that day, Ms. McKinney once again contributed to the disinformation campaign on *Tipping Point with Kara McKinney*. (*Tipping Point*, December 1, 2020 (Exhibit 27); Screenshots, *Tipping Point*, December 1, 2020 (Exhibit 27A).) Ms. McKinney started her show with the "election fraud" story: "[I]s there anyone left to defend this constitutional republic? That's the question I think we're all asking ourselves after the Attorney General caves to Democrats on election fraud."



Ms. McKinney: [E]ven if you want to chalk up all of the glitches, the ballot errors and other irregularities to simple mistakes, then why do they only go one way? Can anyone name a single time in which these mistakes help President Trump? It's a simple question that has been raised time and again in the month since Election Day without any good answers from Democrats. However, looking at records from the Federal Election Commission may explain at least part of the reason for this code of silence. What we find is that 95% of all political contributions made by employees at Dominion Voting Systems between 2014 and 2020 went for Democrats. It's the same story at Smartmatic, 86% of their employee contributions went to [D]emocrat candidates, specifically to Joe Biden, Senator Elizabeth Warren, Pete Buttigieg, and even to Adam Schiff. Now, this comes despite

Smartmatic's own website declaring, quote, "Smartmatic's founders and employees adhere to a strict ethics code that, among other things, prohibits them from making political donations." So here you have Dominion, which is a foreign-owned company and uses computer chips made in China, and ***Smartmatic, which has ties to Soros and the Castro regime in Venezuela, involved in US elections***.

**ANSWER:** The segment speaks for itself, thus no response is required. To the extent a response is required, Defendant admits that on an episode of *Tipping Point with Kara McKinney* (which is a political talk show featuring news, commentary, opinion, and more) that aired on December 1, 2020, Ms. McKinney made the quoted statements. Defendant denies that OAN engaged in a disinformation campaign or that Ms. McKinney contributed to it. Defendant further denies the allegations in Paragraph 129 completely and accurately characterize the segment generally and when taken in context and as a whole. Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances. Defendant denies any remaining allegations by Plaintiffs in Paragraph 129.

**ALLEGATION NO. 130:**

On December 3, 2020, Ms. Hamill hosted Mr. Fitton on *In Focus with Stephanie Hamill*. (*In Focus*, December 3, 2020 (Exhibit 28); Screenshots, *In Focus*, December 3, 2020 (Exhibit 28A).) Ms. Hamill asked Mr. Fitton to comment on a speech by President Trump in which he "highlighted his concerns for the Dominion Voting [System]."



Mr. Fitton: [I]'m not at all confident that our election security is secure enough, in terms of someone on the inside, being able to manipulate the systems. [] ***[W]hat was very interesting about being reporting, before the election, that Chavez had manipulated the election results using electronic computer systems, named–***

*namely Smartmatic, in Venezuela.*  And it's a fair question to ask whether those results, whether results using similar systems could be similarly manipulated.

**ANSWER:** The segment speaks for itself, thus a response is not required.  To the extent a response is required, Defendant admits that on an episode of *In Focus with Stephanie Hamill* (which is a political talk show featuring news, commentary, opinion, and more) that aired on December 3, 2020, Ms. Hamill and Mr. Fitton made the quoted statements attributed to them.  Defendant denies the allegations in Paragraph 130 completely and accurately characterize the segment generally and when taken in context and as a whole.  Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.  Defendant further denies any remaining allegations by Plaintiffs in Paragraph 130.

**ALLEGATION NO. 131:**

On December 5, 2020, OANN broadcast a pre-produced news segment about Smartmatic on the 9AM hour of the *News Room*. (*News Room*, 9AM, December 5, 2020 (Exhibit 29); Screenshots, *News Room*, 9AM, December 5, 2020 (Exhibit 29A).)  Reporter Emily Finn stated that "Smartmatic denied having any connection with Dominion Voting Systems in the U.S.," but OANN nonetheless broadcast a segment stating the opposite.



OANN Reporter: A Sunday report verified that Soros-linked Smartmatic may be connected to the sale of election technology to Dominion, which is being used to count votes in at least 24 US states.  In a tweet last week, Smartmatic claimed to have never sold technology [to Dominion].  Smartmatic also denied having any connection to the controversial company.

\*\*\*

OANN Reporter: Chairman Mark Malloch Brown sits on the board of George Soros' Open Society Foundation, which has a revenue of more than $300 million and has reportedly given away billions of dollars to left wing organizations around the world.  Malloch-Brown has also served as Vice Chairman of Soros' investment funds.  Meantime, Smartmatic has faced controversy in the past with allegations of rigging the 2013 election in Venezuela, on behalf of embattled socialist President Nicolás Maduro.

***

OANN Reporter: ***This, as the latest in a series of connections between voting systems employed in the US and abroad and the Soros-linked company, to surface amid emerging evidence of voter fraud in the US presidential election.***

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that on an episode of *News Room* that aired on December 5, 2020, an OAN reporter made the quoted statements.  Defendant denies the allegations in Paragraph 131 completely and accurately characterize the segment generally and when taken in context and as a whole.  Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.  Defendant further denies any remaining allegations of Plaintiffs in Paragraph 131.

**ALLEGATION NO. 132:**

At the time of each of those reports, December 5 and earlier, OANN had seen no evidence that: Dominion machines used Smartmatic software in the 2020 election, Smartmatic software switched any votes in the 2020 election, or Smartmatic had ties to any dictators (Venezuelan or Cuban).  But that did not stop OANN from publishing and republishing those claims. OANN had made the intentional choice to spread disinformation.  Facts did not matter to OANN.

**ANSWER:** Defendant denies the allegations in Paragraph 132.

**ALLEGATION NO. 133:**

On December 7, 2020, Ms. McKinney again hosted Mr. Johns on her show, *Tipping Point with Kara McKinney*. (*Tipping Point*, December 7, 2020 (Exhibit 33); Screenshots, *Tipping Point*, December 7, 2020 (Exhibit 33A).) Mr. Johns started his interview by stating "we have to look at the Dominion and Smartmatic issues as almost a national crisis."



Mr. Johns: *We have evidence that is both suggestive and some that is indisputable. Affidavits that have been signed as it relates to the technology and its vulnerability.  All sorts of enormously troubling international ties.*  And the deeper, you know, we begin to look into this, the more that's being revealed that's hugely suggestive of the development, but the technical vulnerabilities and also the issue of its ownership status, which I think is a predominant consideration right now with $400 million put into the holding company of Dominion by Chinese Communist Party and other officials.  I mean, so this is like literally the definition of what you would not want to see in American voting system.  And yet, apparently, which is troubling to me, we had 28 states and 2000 jurisdictions in this country, who looked at all of the available options, and mysteriously concluded that this system was the best option available to them, when there was abundant information available, including multiple reports issued by the state of Texas, regarding its susceptibility to manipulation, and remote and in person vote manipulation.  Why?  So you see, the question right now, I think, and the challenge right now, is where, you know, what were the considerations that went into the acquisition of this equipment?   And I'm saying that simultaneously, obviously, all the legal challenges, because it does appear to be that [] those are credible, but [] how do we get 2000 individual jurisdictional decisions to utilize this, this notoriously flawed and troublingly affiliated company, for the purposes of the most important thing in our freedom, which is our vote.

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that on an episode of *Tipping Point with Kara McKinney* (which is a political talk show featuring news, commentary, opinion, and more) that aired on December 7, 2020, Mr. Johns made the quoted statements.  Defendant denies that the statements are of and concerning each Plaintiff.  Defendant further denies the allegations in Paragraph 133 completely and accurately characterize the segment generally and when taken in context and as a whole.

Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances. Defendant further denies any remaining allegations by Plaintiffs in Paragraph 133.

**ALLEGATION NO. 134:**

By this time, OANN had already educated its audience (falsely) that Dominion used Smartmatic's software. Moreover, at the time of this report, OANN knew it had not seen any evidence, "suggestive" or "indisputable," indicating that voting machines rigged or stole the 2020 U.S. election.

**ANSWER:** Defendant denies the allegations in Paragraph 134.

**ALLEGATION NO. 135:**

On December 21, 2020, Mr. Hines returned to the disinformation campaign from OANN's Washington, D.C. news bureau. (*News Room*, 3PM, December 21, 2020 (Exhibit 34); Screenshots, *News Room*, 3PM, December 21, 2020 (Exhibit 34A).) During the *News Room* broadcast, OANN broadcast an interview of Mr. Hines and Clay Clark, a businessman and podcast host. The reporter introducing Mr. Clark said that he "[has] been in contact with Lin Wood," an attorney working with Ms. Powell on her election lawsuits. Mr. Hines filmed the interview in OANN's Washington, D.C. news bureau. On information and belief, the interview was researched and produced in OANN's Washington, D.C. news bureau.



**ANSWER:** The segment speaks for itself, thus a response is not required. To the extent a response is required, Defendant admits that an episode of *News Room* that aired on December 21, 2020 featured an interview of Mr. Clark by Mr. Hines. Defendant admits that Mr. Hines appeared for the interview in OAN's Washington, D.C. bureau. Defendant denies that the interview was produced in or broadcast from Washington, D.C. Defendant further denies that OAN engaged in a disinformation campaign or that Mr. Hines participated in it. Defendant further denies the

allegations in Paragraph 135 completely and accurately characterize the segment generally and when taken in context and as a whole.  Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.  Defendant further denies any remaining allegations by Plaintiffs in Paragraph 135.

**ALLEGATION NO. 136:**

Mr. Hines asked Mr. Clark to explain the state of President Trump's re-election efforts.

Mr. Clark: We all went in and voted [] using hardware, [] called Dominion, the Canadian owned hardware company, that tabulates your votes, has Chinese parts on it.  Step two, *the software, known as Smartmatic or Sequoia, that software was originally coded out by Communist Venezuelans*.  Step three, for added integrity, *your votes were shipped to Frankfurt, Germany*, where your votes were stored on Amazon servers.  And then step four, *in Barcelona, Spain, the votes were somehow tabulated there, and there was a little feature on the software that allows people to switch votes*.

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that an episode of *News Room* that aired on December 21, 2020 featured an interview of Mr. Clark by Mr. Hines in which Mr. Clark made the quoted statements. Defendant denies the allegations in Paragraph 136 completely and accurately characterize the segment generally and when taken in context and as a whole.  Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.  Defendant further denies any remaining allegations by Plaintiffs in Paragraph 136.

**ALLEGATION NO. 137:**

At the time of the report, OANN had not seen any evidence supporting steps two, three, or four.  OANN also knew that no one had presented evidence of step two, three, or four.  But OANN asked Mr. Clark to appear on its show to make the claim because it fit OANN's story.

**ANSWER:** Defendant denies the allegations in Paragraph 137.

**D.      Concerns about election integrity and Smartmatic-related entities continued, and OAN continued to diligently cover these issues.**

**ALLEGATION NO. 138:**

OANN's disinformation campaign against Smartmatic in November and December 2020 achieved its purpose. Post-election, OANN's audience grew "at a rapid clip," and OANN continued to directly compete with Fox News for viewers. (12/10/20 The New Republic, *Fox News Is in Trouble* (Exhibit 144).) Former senior news producer Martin Golingan summarized OANN's strategy: "When former President Trump said that the election was stolen, the viewer feedback was incredible. As a result, [OANN] continued to air pieces after the election to support this narrative." (5/20/21 M. Golingan Decl. ¶ 9, *Coomer v. Donald J. Trump for President, Inc., et al.*, No. 2020cv034319 (Colo. Dist. Ct.) ("Golingan Decl.") (Exhibit 151).)

**ANSWER:** Defendant admits OAN competes with Fox News. Defendant denies that OAN engaged in a disinformation campaign. Defendant further denies that its audience has grown post-election. Defendant further denies that Mr. Golingan is a reliable source; OAN has objected to numerous evidentiary and other flaws and errors in Mr. Golingan's declaration in the *Coomer* lawsuit, and OAN is now litigating those meritorious objections on anti-SLAPP appeal. Defendant further denies any remaining allegations by Plaintiffs in Paragraph 138.

**ALLEGATION NO. 139:**

In November 2020, a record 767,000 people installed the OANN app through AT&T, *nine times* as many as in October. (10/6/21 Reuters, *Special Report: How AT&T helped build far-right One America News* (Exhibit 157).) OANN's website peaked at 15 million visits per month from November 2020 to January 2021, up from 8 million visits. (*Id.*) An analysis performed by Similarweb found that during this time period, OANN website visitors had the same loyalty rate as Fox News and Newsmax visitors. (*Id.*)

**ANSWER:** Defendant admits the existence of the Reuters article and that Paragraph 139 accurately reflects the data as set forth in the Reuters article. Defendant lacks sufficient information or knowledge to form a belief as to the accuracy of the Reuters or Similarweb numbers and information and thus denies the allegations.

1. **OAN continued observing its journalistic responsibilities after receiving an ill-founded retraction letter.**

**ALLEGATION NO. 140:**

OANN had found its niche and did not want the gravy train to end. OANN soon found another way to distinguish itself from the competition—ignore a retraction demand.

**ANSWER:** Defendant denies the allegations in Paragraph 140.

**ALLEGATION NO. 141:**

On December 18, 2020, after receiving a retraction demand letter from Smartmatic, Fox News broadcasted a prerecorded interview with Eddie Perez, the Global Director at the Open Source Election Technology Institute on *Lou Dobbs Tonight*, one of the programs at the center of Fox News's disinformation campaign. On December 20, 2020, Fox News broadcast the same prerecorded interview with Mr. Perez on *Sunday Morning Futures with Maria Bartiromo* and *Justice with Judge Jeanine*. During the interview, Mr. Perez explained that there was no evidence in support of the claims that Fox News—and OANN—had been making about Smartmatic in November and December 2020.

**ANSWER:** Defendant denies there was no evidence to support OAN's reporting. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 141 concerning Fox News and Mr. Perez and therefore denies the same.

**ALLEGATION NO. 142:**

On December 19, 2020, after receiving a retraction demand letter from Smartmatic, Newsmax published an article on its website titled "*Facts About Dominion, Smartmatic You Should Know.*" The article confirmed that there was no evidence to support the claims that Newsmax—and OANN—had been making about Smartmatic in November and December 2020.

**ANSWER:** Defendant denies there was no evidence to support OAN's reporting. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 142 concerning Newsmax and therefore denies the same.

**ALLEGATION NO. 143:**

Newsmax also had its anchors read a pre-prepared statement on multiple programs acknowledging that there was no evidence to support the claims that Newsmax—and OANN— had been making about Smartmatic. Newsmax anchors read this pre-prepared statement on December 19, 2020 (*The Count*) and on December 21, 2020 (*American Agenda*, *John Bachman Now*, *The Chris Salcedo Show*, *Greg Kelly Reports*, and *National Report*).

**ANSWER:** Defendant denies there was no evidence to support OAN's reporting.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 143 concerning Newsmax and therefore denies the same.

**ALLEGATION NO. 144:**

On December 11, 2020, OANN also received a retraction demand letter from Smartmatic. (12/11/20 Retraction Demand Letter to OANN (Exhibit 46).)  The 14-page retraction demand letter identified many of the false and misleading statements published by OANN, explained the reasons the statements were false and misleading, and requested a full and complete retraction.

**ANSWER:** Defendant admits that it received a retraction demand letter dated December 11, 2020. That letter speaks for itself, but Defendant denies that it had or has any merit.

**ALLEGATION NO. 145:**

After receiving the retraction demand letter, OANN did not acknowledge that there was no evidence to support the claims that it had been making about Smartmatic, even though OANN knew there was no such evidence.  OANN decided that its viewership and online engagement were more important than the truth.  So OANN doubled down.

**ANSWER:** Defendant denies that there was no evidence to support OAN's reporting, denies that OAN knew there was no such evidence (because there was), denies that OAN decided its viewership and online engagement were more important than the truth, and denies that OAN doubled down on anything other than newsworthy reporting on matters of public concern. Defendant further denies any remaining allegations by Plaintiffs in Paragraph 145.

**ALLEGATION NO. 146:**

On December 26, 2020, on *Weekly Briefing with Christina Bobb*, OANN played a clip from the December 21, 2020 *John Bachman Now* broadcast on Newsmax, in which Mr. Tabacco acknowledged the absence of evidence. (*Weekly Briefing*, December 26, 2020 (Exhibit 45); Screenshots, *Weekly Briefing*, December 26, 2020 (Exhibit 45A).)  In the clip, anchor John Tabacco read the statement Newsmax prepared in response to Smartmatic's retraction demand letter.

Mr. Tabacco: Newsmax would like to clarify its news coverage and note, that it has not reported as true certain claims made about these companies.  There are several facts our viewers and readers should be aware of.  Newsmax has found no evidence that either Dominion or Smartmatic owns the other, or has any business association

with each other.  We have no evidence that Dominion uses Smartmatic software or vice versa.  No evidence has been offered that Dominion or Smartmatic used software or reprogramed software that manipulated votes in the 2020 election.

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that an episode of *Weekly Briefing with Christina Bobb* (which is a political talk show featuring news, commentary, opinion, and more) that aired on December 26, 2020 included the clip from the December 21, 2020 *John Bachman Now* broadcast on Newsmax as quoted in Paragraph 146.  Defendant denies that Mr. Tabacco denied the existence of evidence supporting OAN's reporting.  Defendant further denies the allegations in Paragraph 146 completely and accurately characterize the segment generally and when taken in context and as a whole.  Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.  Defendant further denies any remaining allegations by Plaintiffs in Paragraph 146.

**ALLEGATION NO. 147:**

Instead of using this clip as an opportunity to educate its viewers, OANN anchor Christina Bobb and invited guests, Cory Mills and Chris Farrell, ridiculed Newsmax's statement and Smartmatic's retraction demand letter and doubled down on OANN's own disinformation campaign.



Ms. Bobb: This is astonishing. [Smartmatic and Dominion] share an address in the Bahamas, but yet they have nothing to do with each other.  What do you think about Newsmax succumbing to this statement?

***

Mr. Mills: [Y]ou can go back and actually find interviews from the owner of Smartmatic who talks about utilizing licensing from Dominion in the past for certain international areas.  There is a clear link together.  I don't think Newsmax had to retract or correct their statement.  I think the onus should be on the owner to demonstrate and to prove that there is no further links between Smartmatic and Dominion, and I don't think he can be able to do that today.

***

Mr. Farrell: It looks like a threatening letter from some attorney.

Mr. Mills: They look like a hostage.

Ms. Bobb: That's exactly what happened.

Mr. Farrell: This is the reaction from a litigation threat letter.

Ms. Bobb: They're bullying them through litigation.

Mr. Farrell: And what the answer and response to that is, great, we look forward to taking discovery, we'll depose you, [] we'll depose you and your board of directors, and we'll look at your financials.  [A]nd that's the counterpoint to this.  [] But they got spooked, they got spooked.

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that an episode of *Weekly Briefing with Christina Bobb* (which is a political talk show featuring news, commentary, opinion, and more) that aired on December 26, 2020 included the quoted statements.  Answering further, Defendant states that there is a business association between Smartmatic entities and Dominion entities, thus the Newsmax statement was false.  Defendant denies that OAN engaged in a disinformation campaign or doubled down on it.  Defendant further denies the allegations in Paragraph 147 completely and accurately characterize the segment generally and when taken in context and as a whole.  Defendant further denies that

the transcription relied on by Plaintiffs is complete and accurate in all instances.  Defendant further

denies any remaining allegations by Plaintiffs in Paragraph 147.

**ALLEGATION NO. 148:**

President Trump appreciated OANN's refusal to acknowledge that there was no evidence
to support what it had been publishing about voting machines.  On January 1, 2021, he tweeted his
thanks: "@FoxNews Weekend Daytime is not watchable.  Switching over to @OANN!" (Tweet,
@realDonaldTrump, Jan. 1, 2021 (Exhibit 145).)

**ANSWER:** Defendant denies that there was no evidence to support OAN's reporting about voting

machines; in fact, the facts are to the contrary.  Defendant is aware of the January 1, 2021 Tweet

but lacks sufficient knowledge or information to form a belief as to whether President Trump

authored the Tweet.  Defendant denies any further allegations by Plaintiffs against Defendant in

Paragraph 148.

**ALLEGATION NO. 149:**

OANN had found a winning recipe: spread disinformation about the election and
Smartmatic to get views and viewer loyalty.  In January 2021, 517,000 additional people installed
the OANN app through AT&T.  (10/6/21 Reuters, *Special Report: How AT&T helped build far-
right One America News* (Exhibit 157).)  Given this success, OANN did not want to change its
message even though a new administration took office (Joe Biden and Kamala Harris were sworn
in as President and Vice President of the United States on January 20, 2021).

**ANSWER:** Defendant admits the existence of the Reuters article and that Paragraph 149

accurately reflects the data as set forth in the Reuters article.  Defendant further admits that Joe

Biden and Kamala Harris were sworn in as President and Vice President of the United States on

January 20, 2021.  Defendant lacks sufficient information or knowledge to form a belief as to the

accuracy of the numbers in the article and thus denies them.  Defendant further denies that it spread

disinformation.   Defendant further denies any remaining allegations by Plaintiffs against

Defendant in Paragraph 149.

2.   **Mike Lindell purchased airtime on OAN to share his own opinions on matters of public concern.**

**ALLEGATION NO. 150:**

To keep its momentum going, OANN decided to team up with Michael J. Lindell. Mr. Lindell (a/k/a "the MyPillow guy") is an American businessman, entrepreneur, and author. He is the founder and CEO of MyPillow, Inc. ("MyPillow"), a company that markets more than 100 products, but is most famous for its pillows. MyPillow's success relies heavily on TV ads. In the first three quarters of 2020, MyPillow spent more than $62 million on TV ads, with nearly 99% of that going to cable channels like OANN. (1/12/21 The New York Times, *As Corporate America Flees Trump, MyPillow's C.E.O. Stands by Him* (Exhibit 147).)

**ANSWER:** Defendant admits that Mr. Lindell is an American businessman, entrepreneur, and author as well as the founder and CEO of MyPillow, Inc. Defendant is without knowledge or information sufficient to form a basis as to the truth of the remaining allegations in Paragraph 150 concerning Mr. Lindell and MyPillow, Inc. and therefore denies the same. Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 150.

**ALLEGATION NO. 151:**

Following the 2020 U.S. election, Mr. Lindell began regularly appearing on television, radio shows, and podcasts. Mr. Lindell undertook his own disinformation campaign and spread a false narrative that there was widespread voter fraud in the 2020 U.S. election. Smartmatic played a central role in Mr. Lindell's disinformation campaign.

**ANSWER:** Defendant admits Mr. Lindell appeared in various media to discuss the 2020 U.S. election. Defendant is unaware of Mr. Lindell's intentionally undertaking a disinformation campaign or spreading a false narrative, and Defendant therefore denies those allegations based on insufficient knowledge or information to form a belief. Defendant also is unaware of whether any Smartmatic entity played a central role (as opposed to secondary, tertiary, or some other level) for Mr. Lindell, and Defendant therefore denies that allegation based on insufficient knowledge or information to form a belief. Defendant also denies the allegations in Paragraph 151 given the

ambiguity of the reference to "Smartmatic" and how it relates to each of the plaintiffs.  Defendant

denies any remaining allegations by Plaintiffs against Defendant in Paragraph 151.

**ALLEGATION NO. 152:**

After the 2020 U.S. election, Mr. Lindell produced a series of "documentaries" about the 2020 U.S. election.  These "documentaries" were filled with lies about Smartmatic.  Despite OANN knowing that the "documentaries" contained false statements about Smartmatic and knowing the election had not been rigged or compromised, OANN invited Mr. Lindell to broadcast his "documentaries" on OANN.  OANN chose to partner with Mr. Lindell because his claims fit its preconceived narrative.

**ANSWER:** Defendant admits that Mr. Lindell produced long-form segments about the 2020 U.S.

election and OAN aired some of them.  Defendant denies that the long-form segments were filled

with lies about any Smartmatic entity.  Defendant further denies OAN knew the long-form

segments contained false statements about any Smartmatic entity or that the election had not been

interfered with or compromised.  Defendant denies any remaining allegations by Plaintiffs against

Defendant in Paragraph 152.

**ALLEGATION NO. 153:**

Before airing Mr. Lindell's first "documentary," *Absolute Proof*, OANN promoted it using OANN's official twitter account.  On February 4, 2021, OANN posted a thirty-second trailer for *Absolute Proof* with the caption "Join MyPillow CEO Mike Lindell for a never-before- seen report breaking down election fraud evidence & showing how the unprecedented level of voter fraud was committed in the 2020 Presidential Election."  (Tweet, @OANN, Feb. 4, 2021 (First Tweet) (Exhibit 149).)  OANN ended its tweet with the reminder "Only on #OANN." (*Id.*)  That same day, OANN posted the trailer with another caption: "Growing evidence of election fraud reveals that the presidency of the United States has been stolen from the American people.  Join My Pillow CEO Mike Lindell for an exclusive report."  (Tweet, @OANN, Feb. 4, 2021 (Second Tweet) (Exhibit 150).)  At that time, OANN knew there was no evidence of election fraud and knew the election had not been stolen.

**ANSWER:** The Tweets speak for themselves, thus no response is required.  To the extent a

response is required, Defendant admits that it Tweeted the quoted statements set forth in Paragraph

153.  Defendant denies that OAN at that time knew there was no evidence of election fraud or that

the election had not been stolen.  Defendant further denies that the Tweets were "of and

concerning" any Smartmatic entity.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 153.

**ALLEGATION NO. 154:**

From February 5 to February 8, 2021, OANN broadcasted *Absolute Proof* thirteen times. OANN did this despite knowing that Mr. Lindell's "documentary" was factually and demonstrably inaccurate.  OANN essentially admitted this by issuing a "disclaimer" before it aired *Absolute Proof*.  The "disclaimer" read:

DISCLAIMER

Michael James Lindell has purchased the airtime for the broadcast of this program on One America News ("OAN") network.  Mr. Lindell is the sole author and executive producer of this program and is solely and exclusively responsible for its content.  The topic of this broadcast is the 2020 election.  OAN has undertaken its own reporting on this topic.  This program is not the product of OAN's reporting. The views, opinions and claims expressed in this program by Mr. Lindell and other guests, presenters, producers, or advertisers are theirs, and theirs alone and are not adopted or endorsed by OAN or its owners.  In particular, OAN does not adopt or endorse any statements or opinions in this program regarding the following entities or people: US Dominion Inc. (and any related entities); Smartmatic USA Corp.; Brian Kemp; Brad Raffensperger; or Gabriel Sterling.  Further, the statements and claims expressed in this program are presented at this time as opinions only and are not intended to be taken or interpreted by the viewer as established facts.  The results in the 2020 Presidential election remain disputed and questioned by millions of Americans who are entitled to hear from all sides in order to help determine what may have happened.

**ANSWER:** Defendant admits that it broadcast *Absolute Proof* 13 times from February 5 to February 8, 2021, and that it aired the Disclaimer set forth above.  The Disclaimer speaks for itself, and OAN denies that the Disclaimer is any sort of admission.  Defendant denies it knew that *Absolute Proof* was, according to Plaintiffs' allegations, factually or demonstrably inaccurate. Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 154.

**ALLEGATION NO. 155:**

This "disclaimer" was merely OANN's last ditch attempt to avoid defamation liability for publishing the defamatory statements made in *Absolute Proof*.  But this "disclaimer," which flashed briefly in fine print at the beginning of the "documentary," was undercut by OANN's tweets promoting the "documentary" to its viewers.  OANN promised its viewers that *Absolute Proof* would be "a never-before-seen report breaking down election fraud evidence & showing

how the unprecedented level of voter fraud was committed in the 2020 Presidential Election."
(Tweet, @OANN, Feb. 4, 2021 (First Tweet) (Exhibit 149).)



**ANSWER:** Defendant admits the existence of the Tweet set forth in Paragraph 155, the content

of which speaks for itself.  Defendant denies OAN engaged in a "last-ditch attempt to avoid

defamation liability" (or that it is subject to defamation liability in this matter).  Defendant denies

any remaining allegations by Plaintiffs against Defendant in Paragraph 155.

**ALLEGATION NO. 156:**

In *Absolute Proof*, Mr. Lindell and his guest speakers claimed that China infiltrated the
2020 U.S. election through voting machine technology, including Smartmatic.  (*Absolute Proof*,
February 5, 2021 (Exhibit 35); Screenshots, *Absolute Proof*, February 5, 2021 (Exhibit 35A).)  In
the two-hour "documentary," Mr. Lindell claimed that he had unequivocal proof that the 2020 U.S.
election was rigged through election voting technology, including Smartmatic.

> Mr. Lindell: I think it was like January 9th, all of a sudden, these people, they
> brought me some, a piece of evidence, that's 100% proved.  It's like a print of inside
> the machine of the timestamp that showed another country, other countries
> attacking us, hacking into our election through these machines, and it shows a
> vote's flipped.  And I'm going wow, I got to get this out there.  And from that point
> on, I started putting it out there[.]

**ANSWER:**    *Absolute Proof* speaks for itself, thus no response is required.  To the extent a

response is required, Defendant responds that Plaintiffs, in violation of the *in haec verba* doctrine,

fail to plead in Paragraph 156 specific allegedly defamatory language published by Defendant of

and concerning any Plaintiff.   Responding   further,   Defendant   denies   that   these   allegations

completely and accurately characterize *Absolute Proof*. Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 156.

**ALLEGATION NO. 157:**

Colonel Phil Waldron, one of Mr. Lindell's guests in *Absolute Proof*, tied Smartmatic software to "inherent vulnerabilities that were built into" other voting systems used in the 2020 U.S. election.

> Col. Waldron: So a critical capability for any of this to happen are the inherent vulnerabilities that were built into ES&S and Dominion software, which is, you know, again, we've proven through [] our work that this is all related directly back to the soft, Smartmatic, [] SGO Smartmatic software core . . . the board of SGO Smartmatic because they own a, an air purification company. So just think about it, if you get to pick an administration that is favorable to your company, say if they [passed] the Green New Deal, and you're going to make billions and billions of dollars off of government- mandated air purification systems and public buildings . . . you would spend quite a bit of money on the frontside to make sure the election was done.

**ANSWER:** *Absolute Proof* speaks for itself, thus no response is required. To the extent a response is required, Defendant denies that these allegations completely and accurately characterize *Absolute Proof*. Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 157.

**ALLEGATION NO. 158:**

On February 8, 2021, Mr. Ball promoted *Absolute Proof* on OANN's *Real America with Dan Ball*. (*Real America*, Feb. 8, 2021 (Exhibit 36); Screenshots, *Real America*, Feb. 8, 2021 (Exhibit 36A).) Before interviewing Mr. Lindell, Mr. Ball touted *Absolute Proof* as "a special documentary" that provided "evidence" of "election fraud."

> Mr. Ball: [I]f you've been watching OAN, and right before this program, you saw a special documentary that was produced by the CEO of MyPillow, Mike Lindell. He put a lot of money thought and time into this. He went around the nation collecting evidence that he believes proves there was voter fraud and election fraud, whether you believe it or not.



**ANSWER:** The segment speaks for itself, thus no response is required. To the extent a response is required, Defendant admits that an episode of *Real America with Dan Ball* that aired on February 8, 2021, included the quoted statements from Mr. Ball. Defendant denies the allegations in Paragraph 158 completely and accurately characterize the segment when taken in context and as a whole. Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances. Defendant further denies that the allegations are "of and concerning" any Smartmatic entity. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 158.

**ALLEGATION NO. 159:**

After he introduced Mr. Lindell, Mr. Ball asked Mr. Lindell to "tell folks [] [w]hat they're going to see in this two-hour documentary that you produced."

Mr. Lindell: What they're going to see is something they've never heard before, never seen and that's cyber forensics footprints. They're gonna, they're gonna see in there, but which country it came from; the ID of the computer, the IP address. Where it came over here, they have IP address of their computer broke into here, the actual ID number of the computer, and then how many votes were flipped, whether they got in or not, it's a cyber footprint it's what the government uses. When they if you did an investigation, this is what you'd be looking for. For that night. We have them from November 1 all the way through the election, and shows them a massive attack on our country by China and other country. China did 60% of this. It was all done through Dominion machines and Smartmatic machines. That was the tool they used.

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that an episode of *Real America with Dan Ball* that aired on February 8, 2021, included the quoted statements from Mr. Ball and Mr. Lindell.  Defendant denies the allegations in Paragraph 159 completely and accurately characterize the segment when taken in context and as a whole.  Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 159.

**ALLEGATION NO. 160:**

On February 11, 2021, OANN broadcast *Absolute Proof* again, this time interspersed with an interview of Mr. Lindell by Steve Bannon.  (*A Screening and Conversation of Absolute Proof*, Feb. 11, 2021 (Exhibit 37); Screenshots, *A Screening and Conversation of Absolute Proof*, Feb. 11, 2021 (Exhibit 37A).)



Mr. Bannon opened the broadcast by explaining "we're going to kind of deconstruct it tonight, like [] NFL or college [] game film, go through, it's the most controversial film in the world." During the broadcast, Mr. Lindell commented on *Absolute Proof* and made additional false claims about Smartmatic, its business, its history, and its role in the 2020 U.S. election.

**ANSWER:** The broadcast speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that it broadcast *Absolute Proof* on February 11, 2021 accompanied by an interview of Mr. Lindell by Mr. Bannon.  Defendant denies that these allegations completely and accurately characterize the broadcast when taken in context and as a whole.  Defendant further

denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.

Defendant further denies any remaining allegations in Paragraph 160 against Defendant.

## ALLEGATION NO. 161:

*Absolute Proof* was a success for Mr. Lindell and OANN.  On February 19, 2021, Mr. Lindell appeared on Mr. Giuliani's podcast to brag about *Absolute Proof*'s ratings. Mr. Lindell claimed that the "documentary" had been seen by 100 million people worldwide, with an average view time of 1 hour and 53 minutes.  The ratings were bolstered by OANN's repeated broadcasts of the film.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 161 concerning Mr. Lindell and Mr. Giuliani and therefore

denies the same.  Defendant denies the remaining allegations by Plaintiffs against Defendant in

Paragraph 161.

## ALLEGATION NO. 162:

*Absolute Proof* was so successful for OANN that it decided to continue its partnership with Mr. Lindell.   The  next  "documentary"  OANN  aired  was  a  three-part  "docu-movie"  called *Scientific Proof*.  OANN aired *Scientific Proof* three times on April 3 and an additional time on April 4.  (*Scientific Proof*, April 3, 2021 (Exhibit 38); Screenshots, *Scientific Proof*, April 3, 2021 (Exhibit 38A).)



**ANSWER:** Defendant admits that it aired *Scientific Proof*.  Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 162.

## ALLEGATION NO. 163:

In *Scientific Proof*, Mr. Lindell and guest Douglas Frank again stated that the 2020 U.S. election was hacked through voting technology machines, including Smartmatic. Mr. Lindell unequivocally stated in *Scientific Proof* that the "name of the machine" does not matter because *all* voting technology machines were responsible for "flipping" votes in the 2020 U.S. election:

> Mr. Lindell: I just want everyone to know that, why we're showing other states and not just the swing state[s].  It was every state, it happened in your state [].  Texas, when they said, oh, we didn't use the Dominion machines.  Doesn't matter, the name of the, the name of the machine doesn't matter . . . Smartmatic, ES&S, don't matter.

**ANSWER:** *Scientific Proof* speaks for itself, thus no response is required.  To the extent a response is required, Defendant denies that these allegations completely and accurately characterize *Scientific Proof* when taken in context and as a whole.  Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.  Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 163.

## ALLEGATION NO. 164:

On April 22, 2021, OANN aired yet another "docu-movie" produced by Mr. Lindell, *Absolute Interference*. (*Absolute Interference*, April 22, 2021 (Exhibit 39); Screenshots, *Absolute Interference*, April 22, 2021 (Exhibit 39A).)  This was billed as the "Sequel to *Absolute Proof* with New Evidence Foreign & Domestic Enemies Used Computers to Hack the 2020 Election."  By this time, OANN had already educated its audience (falsely) that the "computers" referenced in the title were the voting technology machines, including Smartmatic.



**ANSWER:** *Absolute Interference* speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that on April 22, 2021, it aired *Absolute Interference* produced by Mr. Lindell.  Defendant denies that it falsely educated its audience.  Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 164.

**ALLEGATION NO. 165:**

The themes in *Absolute Interference* mirror Mr. Lindell's earlier "documentaries": foreign governments hacked the 2020 U.S. election through voting machine systems, including Smartmatic.

Mr. Lindell: I have proof, 100% proof that our country was attacked by China, by communism coming in, this foreign interference to our elections, through the machines, Dominion, Smartmatic, ES&S, all of them.

**ANSWER:** *Absolute Interference* speaks for itself, thus no response is required.  To the extent a response is required, Defendant denies that these allegations completely and accurately characterize *Absolute Interference* when taken in context and as a whole.  Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.  Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 165.

**ALLEGATION NO. 166:**

On May 3, 2021, OANN broadcast an interview of Mr. Lindell by reporter Pearson Sharp, in a segment titled "Mike Lindell Tackles Election Fraud."  (*Mike Lindell Tackles Election Fraud*, May 3, 2021 (Exhibit 40).)  OANN and Mr. Lindell yet again claimed that Smartmatic was widely used in the 2020 U.S. election, including by Dominion and other voting machine systems.

Mr. Lindell: [T]hese machines where it got hacked, Dominion, Smartmatic, [] all of them are the same, ES&S.  You just say Dominion, but it's all machines.  China hacked into our election and flipped millions upon millions of votes.  We have a hundred percent evidence[.]

Mr. Sharp: Is it irrefutable truth?

Mr. Lindell: It's absolute.  I mean, that's even higher than irrefutable.

**ANSWER:** The segment speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that a segment titled *Mike Lindell Tackles Election Fraud* aired on May 3, 2021, and featured an interview of Mr. Lindell by Mr. Sharp, as quoted above.  Defendant denies the allegations in Paragraph 166 completely and accurately characterize the segment generally and when taken in context and as a whole.  Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 166.

## ALLEGATION NO. 167:

On June 5, 2021, and June 6, 2021, OANN broadcast Mr. Lindell's fourth "documentary," *Absolutely 9-0*.  (*Absolutely 9-0*, June 5, 2021 (Exhibit 41); Screenshots, *Absolutely 9-0*, June 5, 2021 (Exhibit 41A).)  OANN heavily promoted *Absolutely 9-0*, both on Twitter and on its network. For example, on June 4, 2021, OANN invited Mr. Lindell to promote the "documentary" on *The Real Story with Natalie Harp*.

**ANSWER:** *Absolutely 9-0* speaks for itself, thus no response is required.  To the extent a response is required, Defendant denies that these allegations completely and accurately characterize *Absolutely 9-0* when taken in context and as a whole.  Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 167.

## ALLEGATION NO. 168:

In *Absolutely 9-0*, OANN again published material claiming that the 2020 election was hacked through voting machine technology, including Smartmatic. The "hook" of this "documentary" was that once the Supreme Court heard the "evidence" against the voting machine companies (including Smartmatic), it would vote 9-0 in favor of overturning the election.



Mr. Lindell: [O]n January 9th I received evidence of a cyber attack orchestrated by China on our 2020 election. I took that one piece of evidence, and I just went all in. This was something different, nobody had seen. This was something that came through the machines, the Dominion machines, the Smartmatic and other machines. This was a cyber attack. I didn't know anything about cyber attacks. And boy, I learned, I had to learn real fast . . . this was 100% an attack by China on our country through these machines.

**ANSWER:** *Absolutely 9-0* speaks for itself, thus no response is required. To the extent a response is required, Defendant denies that these allegations completely and accurately characterize *Absolutely 9-0* when taken in context and as a whole. Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances. Defendant further denies that the quoted statements from Mr. Lindell are "of and concerning" Smartmatic. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 168.

**ALLEGATION NO. 169:**

OANN has never presented any evidence supporting the claims made in its defamation campaign with Mr. Lindell. OANN never saw such evidence because it does not exist. Mr. Lindell's story was made-up from the beginning, and OANN knew it. OANN has never retracted the statements or explained that there was no evidence in support of the claims OANN broadcast in its defamation campaign with Mr. Lindell. OANN partnered with Mr. Lindell even though it knew he would make inaccurate statements because OANN had chosen to spread disinformation. Mr. Lindell helped OANN do so.

**ANSWER:** Defendant admits that it never retracted its reporting on these matters because there was no basis to do so.  Defendant denies the remaining allegations by Plaintiffs against Defendant in Paragraph 169.

#### E.  OAN reported on matters of public concern related to election integrity across multiple platforms.

**ALLEGATION NO. 170:**

OANN's disinformation campaign against Smartmatic focused on five themes designed to reinforce each other and persuade people that Smartmatic (along with Dominion) was responsible for stealing the 2020 U.S. election from President Trump.  During the OANN programs, OANN stated and implied that:

- Smartmatic's election technology and software were widely used, including in Dominion's voting machine system, in the 2020 U.S. election, including in six states with close outcomes;

- Smartmatic's election technology and software were used to steal the 2020 U.S. election by rigging and fixing the vote;

- Smartmatic's election technology and software were compromised and hacked during the 2020 U.S. election, and votes were sent abroad to be compromised;

- Smartmatic is a Venezuelan company that was founded and funded by corrupt dictators from socialist and communist countries; and

- Smartmatic's election technology and software were designed to rig and fix elections and have been used to fix, rig, and steal elections before.

**ANSWER:** Defendant denies that OAN engaged in a disinformation campaign.  Defendant further denies there were five themes to OAN's 2020 U.S. presidential election reporting.  Defendant further denies that its reporting is ever intended to persuade people to believe in known falsities.  Defendant further states that because Plaintiffs, in violation of the *in haec verba* doctrine, have failed in Paragraph 170 to plead with specificity allegedly defamatory language and the paraphrasing fails to accurately characterize any given specific statement "of and concerning" any Smartmatic entity (particularly when any given specific statement is taken in context and as a whole), Defendant further denies the five-part, incomplete, and inaccurate paraphrasing in

Paragraph 170.  Defendant further denies any allegations related to alleged "implications" subject to various reasonable interpretations and/or the innocent construction rule.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 170.

## ALLEGATION NO. 171:

OANN used its broadcasting power from Washington, D.C. and California to disseminate the disinformation campaign to up to 35 million homes.  But, OANN did not limit itself to its morning and evening news programs.  OANN used all of its various platforms to disseminate the disinformation campaign.

a.   November 12, 2020: Mr. Salvi appears on *After Hours with Alex Salvi* discussing Smartmatic's role in election fraud. ( *After Hours*, November 12, 2020 (Exhibit 1).)

b.   November 16, 2020: Ms. Aksalic appears on the 5AM hour of the *News Room* playing clips of Ms. Powell and Mr. Giuliani discussing "overwhelming evidence of voter fraud" and Smartmatic's role in the voter fraud.  (*News Room*, 5AM, November 16, 2020 (Exhibit 2).)

c.   November 16, 2020: Ms. McKinney and Mr. Johns appear on *Tipping Point with Kara McKinney* discussing Smartmatic's role in rigging the 2020 U.S. election. (*Tipping Point*, November 16, 2020 (First Video) (Exhibit 3); *Tipping Point*, November 16, 2020 (Second Video) (Exhibit 4).)

d.   November 16, 2020: Mr. Dinow appears on the 11PM hour of the *News Room* playing clips of Mr. Giuliani's podcast and discussing Smartmatic's ties to Venezuelan dictators.  (*News Room*, 11PM, November 16, 2020 (Exhibit 5).)

e.   November 17, 2020: Ms. McKinney and Mr. Fitton appear on *Tipping Point with Kara McKinney* discussing Smartmatic's role in widespread election fraud. (*Tipping Point*, November 17, 2020 (Exhibit 6).)

f.   November 18, 2020: OANN posts a video of *Tipping Point* from November 16 using Twitter with the caption, "Dominion Scandal Goes Worldwide with Michael Johns."  (Tweet, @OANN, November 18, 2020 (Exhibit 7).)

g.   November 18, 2020: OANN posts a video of *Tipping Point* from November 16 using Facebook with the caption, "Dominion Scandal Goes Worldwide with Michael Johns."  (Facebook, One America News Network, November 18, 2020 (Exhibit 8).)

h.   November 19, 2020: Mr. Hussion appears on *Breaking News Live with Patrick Hussion* playing clips of a press conference held by Mr. Giuliani and Ms. Powell. (*Breaking News Live*, November 19, 2020 (Exhibit 9).)

i.      November 19, 2020: Mr. Ball and Ms. Kokalari-Angelakis appear on *Real America with Dan Ball* discussing Smartmatic's ties to Dominion and its role in election fraud worldwide.  (*Real America*, November 19, 2020 (Exhibit 10).)

j.      November 20, 2020: OANN posts an article on its website titled "President's Lawyers Say Communist Funded Election Software Responsible For Alleged Voting Irregularities."  (OANN Website, *President's Lawyers Say Communist Funded Election Software Responsible For Alleged Voting Irregularities*, November 20, 2020 (Exhibit 11).)

k.      November 20, 2020: OANN posts a link to an article titled "President's Lawyers Say Communist Funded Election Software Responsible For Alleged Voting Irregularities" using Twitter.  (Tweet, @OANN, November 20, 2020 (Exhibit 12).)

l.      November 20, 2020: OANN posts a link to an article titled "President's Lawyers Say Communist Funded Election Software Responsible For Alleged Voting Irregularities" using Facebook with the caption, "The President's lawyers are weighing in, once again, on election fraud during the 2020 White House race." (Facebook, One America News Network, November 20, 2020 (Exhibit 13).)

m.      November 20, 2020: OANN broadcasts a news package with an unidentified reporter playing clips of Mr. Giuliani and Ms. Powell's press conference on the 12AM hour of the *News Room*.  (*News Room*, 12AM, November 20, 2020 (Exhibit 14).)

n.      November 20, 2020: Mr. Trippie appears on the 6AM hour of the *News Room* discussing Smartmatic's software flipping votes.  (*News Room*, 6AM, November 20, 2020 (Exhibit 15).)

o.      November 20, 2020: Mr. Hines and Mr. Santos appear on the 3PM hour of the *News Room* discussing Smartmatic's ties to corrupt dictators and its role in rigging elections in South America.  (*News Room*, 3PM, November 20, 2020 (Exhibit 16).)

p.      November 20, 2020:  Ms. Hamill and Mr. diGenova appear on *In Focus with Stephanie Hamill* discussing the "hackability" of Smartmatic's software.  (*In Focus*, November 20, 2020 (Exhibit 17).)

q.      November 22, 2020: Ms. McKinney and Mr. Becker appear on *Tipping Point with Kara McKinney* discussing the lack of transparency and security in Smartmatic's software.  (*Tipping Point*, November 22, 2020 (Exhibit 18).)

r.      November 22, 2020: Ms. Lomibao appears on the 6PM hour of the *News Room* discussing Smartmatic "meddling in the latest U.S. election." (*News Room*, 6PM, November 22, 2020 (Exhibit 19).)

s.      November 23, 2020: Ms. McKinney and Mr. Waller appear on *Tipping Point with Kara McKinney* discussing Smartmatic's ties to corrupt Venezuelan dictators. (*Tipping Point*, November 23, 2020 (Exhibit 20).)

t.      November 25, 2020: OANN posts a video of Ms. Hamill and Mr. diGenova on *In Focus with Stephanie Hamill* from November 20 to its website with the caption, "Former U.S. Attorney, Joe DiGenova, On The Growing Evidence Of Voter Fraud." (OANN Website, *Former U.S. Attorney, Joe DiGenova, On The Growing Evidence Of Voter Fraud*, November 25, 2020 (Exhibit 21).)

u.      November 27, 2020: OANN posts an article on its website titled "Sidney Powell Launches Election Lawsuits in Mich. And Ga." (OANN Website, *Sidney Powell Launches Election Lawsuits in Mich. And Ga.*, November 27, 2020 (Exhibit 22).)

v.      November 27, 2020: OANN posts a link to an article titled "Sidney Powell Launches Election Lawsuits in Mich. And Ga." using Twitter. (Tweet, @OANN, November 27, 2020 (Exhibit 23).)

w.      November 27, 2020: OANN posts a link to an article titled "Sidney Powell Launches Election Lawsuits in Mich. And Ga." using Facebook, with the caption, "Sidney Powell released the Kraken. On Thursday, the former Trump administration lawyer filed two explosive lawsuits in Georgia and Michigan." (Facebook, One America News Network, November 27, 2020 (Exhibit 24).)

x.      November 28, 2020: Ms. McKinney and Mr. Johns appear on *Tipping Point with Kara McKinney* discussing Smartmatic "fraudulently manipulat[ing]" the 2020 U.S. election. (*Tipping Point*, November 28, 2020 (Exhibit 25).)

y.      December 1, 2020: Mr. Hines and Mr. Fitton appear on *Breaking News Live with Patrick Hussion* discussing the "security weaknesses" of Smartmatic's software. (*Breaking News Live*, December 1, 2020 (Exhibit 26).)

z.      December 1, 2020: Ms. McKinney appears on *Tipping Point with Kara McKinney* discussing Smartmatic rigging the 2020 U.S. election for Democrats. (*Tipping Point*, December 1, 2020 (Exhibit 27).)

aa.     December 3, 2020: Ms. Hamill and Mr. Fitton appear on *In Focus with Stephanie Hamill* discussing Smartmatic's role in rigging previous elections for Chávez. (*In Focus*, December 3, 2020 (Exhibit 28).)

bb.     December 5, 2020: OANN broadcasts a news package on the 9AM hour of the *News Room* with an unidentified reporter discussing Smartmatic's role in rigging elections in Venezuela. (*News Room*, 9AM, December 5, 2020 (Exhibit 29).)

cc.     December 7, 2020: OANN posts an article on its website titled "Chairman Of Smartmatic's Parent Company To Become President Of George Soros's 'Open Society Foundations.'" (OANN Website, *Chairman Of Smartmatic's Parent Company To Become President of George Soros's 'Open Society Foundations'*, December 7, 2020 (Exhibit 30).)

dd.     December 7, 2020: OANN posts a link to an article titled "Chairman Of Smartmatic's Parent Company To Become President Of George Soros's 'Open

Society Foundations'" using Twitter.   (Tweet, @OANN, December 7, 2020 (Exhibit 31).)

ee.    December 7, 2020: OANN posts a link to an article titled "Chairman Of Smartmatic's Parent Company To Become President Of George Soros's 'Open Society Foundations'" using Facebook.  (Facebook, One America News Network, December 7, 2020 (Exhibit 32).)

ff.    December 7, 2020: Ms. McKinney and Mr. Johns appear on *Tipping Point with Kara McKinney* discussing the "indisputable" evidence that Smartmatic had participated in a widespread conspiracy to steal the 2020 U.S. election.  (*Tipping Point*, December 7, 2020 (Exhibit 33).)

gg.    December 21, 2020: Mr. Hines and Mr. Clark appear on the 3PM hour of the *News Room* discussing Smartmatic flipping votes in the 2020 election.  (*News Room*, 3PM, December 21, 2020 (Exhibit 34).)

hh.    February 5-February 8, 2021: OANN broadcasts the two-hour "documentary" *Absolute Proof* thirteen times.  (*Absolute Proof*, February 5, 2021 (Exhibit 35).)

ii.    February 8, 2021: Mr. Ball and Mr. Lindell appear on *Real America with Dan Ball* promoting *Absolute Proof* and discussing Smartmatic's role in rigging the 2020 U.S. election.  (*Real America*, February 8, 2021 (Exhibit 36).)

jj.    February 11, 2021: OANN broadcasts *Absolute Proof* interspersed with an interview of Mr. Lindell by Mr. Bannon.  (*A Screening and Conversation of Absolute Proof*, February 11, 2021 (Exhibit 37).)

kk.    April 3-April 4, 2021: OANN broadcasts the "docu-movie" *Scientific Proof* four times.  (*Scientific Proof*, April 3, 2021 (Exhibit 38).)

ll.    April 22, 2021: OANN broadcasts the "docu-movie" *Absolute Interference*.  (*Absolute Interference*, April 22, 2021 (Exhibit 39).)

mm.    May 3, 2021: OANN broadcasts an interview of Mr. Lindell by Mr. Sharp discussing Smartmatic's role in the 2020 U.S. election.  (*Mike Lindell Tackles Election Fraud*, May 3, 2021 (Exhibit 40).)

nn.    June 5-June 6, 2021: OANN broadcasts the "documentary" *Absolutely 9-0* twice.  (*Absolutely 9-0*, June 5, 2021 (Exhibit 41).)

**ANSWER:** The broadcasts and posts speak for themselves, thus no response is required.  To the extent a response is required, Defendant incorporates by reference as if fully set forth herein all of its responses elsewhere in this Answer related to the above segments.  Defendant admits that the broadcasts and posts identified in Paragraph 171 occurred.  Defendant further admits that OAN

broadcasts from California (San Diego).  Defendant denies that OAN has ever broadcast from

Washington, D.C.  Defendant further denies that OAN ever engaged in a disinformation campaign.

Defendant further denies that OAN used each and every one of its platforms to report on the 2020

U.S. presidential election.  Because Paragraph 171 does not specify a time period for the allegation

of viewership of 35 million, Defendant lacks sufficient information or knowledge to form a belief

as to the truth of the allegation and therefore denies it.  Defendant further states that because

Plaintiffs, in violation of the *in haec verba* doctrine, have failed in Paragraph 171 to plead with

specificity allegedly defamatory language and the paraphrasing fails to accurately characterize any

given specific statement "of and concerning" any Smartmatic entity (particularly when any given

specific statement is taken in context and as part of a whole), Defendant further denies the

allegations in Paragraph 171.  Defendant denies any remaining allegations by Plaintiffs against

Defendant in Paragraph 171.

## ALLEGATION NO. 172:

OANN used these platforms not only to directly disseminate its publications to the largest audience possible but also to ensure republication.  OANN posted videos of the broadcasts and links to its articles on its Twitter page to over 1 million followers and on its Facebook page to over 1.5 million followers.  Most importantly, OANN had the attention of President Trump.  During the disinformation campaign, President Trump tweeted @OANN to his tens of millions of followers approximately 38 times.  OANN knew or expected President Trump would promote its brand if it published content stating or implying that Smartmatic had participated in a conspiracy to rig the election.

**ANSWER:** Defendant admits that, as with any news media entity, broad viewership is a goal for

OAN.  Defendant further admits that President Trump was and is an OAN viewer.  Because

Plaintiffs fail to specify a time frame in Paragraph 172, Defendant lacks sufficient information or

knowledge to form a belief as to the Twitter and Facebook follower numbers and therefore denies

those allegations.  Similarly, because Plaintiffs have not specified a time frame, Defendant lacks

sufficient information or knowledge to form a belief as to how many followers President Trump

had or how many times President Trump Tweeted @OANN, and Defendant thus denies those allegations.  Defendant further denies that it engaged in a disinformation campaign.  Defendant further denies it knew or had any control over what President Trump was going to do.  Defendant further states that because Plaintiffs, in violation of the *in haec verba* doctrine, have failed in Paragraph 172 to plead with specificity allegedly defamatory language and the paraphrasing fails to accurately characterize any given specific statement "of and concerning" any Smartmatic entity (particularly when any given specific statement is taken in context and as part of a whole), Defendant further denies the allegations in Paragraph 172.  Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 172.

**ALLEGATION NO. 173:**

OANN also ensured the broad dissemination of the disinformation campaign by posting videos of the broadcasts on its YouTube and Rumble pages.  OANN's YouTube page has over 1.4 million subscribers and has received over 215 million views.  (*See* https://www.youtube.com/c/oann/about.)  As of November 1, 2021, OANN's Rumble page has almost 900,000 subscribers.

**ANSWER:** Defendant admits that OAN has YouTube and Rumble pages to which OAN posts videos.  Defendant further admits that the Rumble page subscriber number approximation as of November 1, 2021, was an accurate estimate.  Defendant denies that it engaged in a disinformation campaign.  Defendant further denies that the YouTube subscriber and viewer numbers are accurate.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 173.

**F.    OAN continued its newsworthy Smartmatic-related coverage.**

**ALLEGATION NO. 174:**

OANN did not present its statements regarding Smartmatic as opinion, rhetorical hyperbole, or speculation.  It did not present its statements regarding Smartmatic as being educated guesses, possibilities, or mere allegations.  OANN presented its statements regarding Smartmatic as being fact—fact supported by voluminous evidence.  Likewise, OANN told its viewers and readers that OANN's coverage of Smartmatic was one of the only ways for them to receive reliable

and accurate information.  OANN told its viewers and readers to discredit and ignore whatever they heard from other sources.

**ANSWER:** Defendant admits that OAN truthfully broadcast statements regarding one/perhaps more Smartmatic entities as facts supported by evidence.  Defendant further admits that OAN has told viewers and readers that OAN is a trusted source for true news and that such true news might not be available from all other sources.  But Plaintiffs in violation of the *in haec verba* doctrine fail to specify what statements are being addressed by Paragraph 174, thus Defendant denies the allegations given their vagueness.  Defendant further reserves the right to characterize any given statement, when specifically identified by Plaintiffs, as opinion, rhetorical hyperbole, mere allegations, or the like, depending on the nature and context of the statement.  Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 174.

**ALLEGATION NO. 175:**

First, OANN promotes itself as a new organization that viewers and readers should trust for providing facts.  For example:

a.   In a video on OANN's "About" page, OANN informs viewers that "There is only one network you can trust to bring you real news.  Straight-shooting, hard-hitting stories the mainstream media doesn't want you to hear[.]  Credible, honest, unbiased reporting from a source you can trust.  One America News Network, your source for credible news."

b.   In September 2020, OANN published a press release on its website stating that it had entered into a long-term distribution agreement and described itself as "more live, credible national and international news throughout the day with less talking heads expressing opinions."

c.   At the time of its launch, OANN's tagline was "Your Nation, Your News."  In 2016, OANN changed its tagline to "Your Source for Credible News."

d.   In its Twitter bio, OANN states that it is "Your Nation. Your News."

e.   In a Tweet promoting *Real America with Dan Ball*, OANN told viewers, "Are you sick and tired of the biased, fake news media that's tearing our country apart?  Tune in weeknights on One America News for Real America with Dan Ball. Real news, for real Americans!"

**ANSWER:** Defendant admits the allegations in Paragraph 175.

**ALLEGATION NO. 176:**

Second, OANN stated (falsely) that the information it published about Smartmatic was based on evidence, investigations, and facts.  OANN intentionally created the impression that the information it published about Smartmatic was predicated on reliable, verifiable facts as opposed to speculation or opinion.  For example:

a.   Elma Aksalic: "During an interview on Sunday, attorney Sidney Powell said election results in multiple states are quote, 'getting ready to overturn.'  Powell cites an ***overwhelming amount of evidence the President's legal team has received concerning voter fraud and irregularities***.  Powell goes on to claim **she has enough evidence**, some even dating back to 2016, ***to launch a widespread criminal investigation***." (*News Room*, 5AM, November 16, 2020 (Exhibit 2).)

b.   Sidney Powell: "***[W]e are soaking in information through fire hoses*** of complicated mathematical alterations to the votes.  ***We have identified the system capability that does it.***  It does in fact exist regardless of what the name of it is.  It works through the Dominion company's voting machines that were in 30 states and does indeed alter and flip voting results." (*News Room*, 5AM, November 16, 2020 (Exhibit 2).)

c.   Kara McKinney: "***For those who say that President Trump's attorneys haven't given any evidence of their claims, let's go through, through some of that together*** . . .  So first off, let's start off with claims that Dominion Voting Systems switched votes.  Well, we know for sure that it did happen in counties in Michigan where thousands of Trump votes were wrongly awarded to Biden and called glitches.  Also these accusations of Dominion switching votes were made by Democrats Senators Elizabeth Warren, Amy Klobuchar and Ron Wyden just last year, back when they were saying Russia might try to steal this election. Isn't it likely that whatever evidence these Democrat senators were looking at last year, Powell now has?  In fact, Dominion's own user guide admits that its software suffers from a medium to high risk of having its voting data changed.  And how about that letter from Democratic Congresswoman Carolyn Maloney from 2006 where she highlights concerns about Smartmatic in its history of being used by the Chávez-led Venezuelan government in their corrupt elections.  Does she make that claim without evidence too or only Powell?"  (Tipping Point, November 20, 2020 (Exhibit 43).)

d.   Michael Johns: "[F]or all of these, you know, Democrats and mainstream media who have said there's no evidence, there's no evidence, there's no evidence–***there's never any evidence in a criminal allegation until evidence is presented and accepted by the Court and considered. But a one hundred and four page complaint issued yesterday by Sidney Powell***, a very credible attorney with a long record of history; to me, having read it now, ***is filled with affidavits, acclamations of fact***, and, in the case of the Georgia complaint, you see just about

every conceivable act of election–of illegal election manipulation was utilized in support of Biden at the President's expense." (*Tipping Point*, November 28, 2020 (Exhibit 25).)

e.   Stephanie Hamill: "***President Trump*** is pressing forward with his fight contesting the results of the 2020 presidential election. In a 45 minute address to the nation, the President ***laid out allegations of widespread voter fraud and voting irregularities reported from coast to coast***.  He's also ***promising to present the evidence of mass fraud*** in court." (*In Focus*, December 3, 2020 (Exhibit 28).)

f.   Stephanie Hamill: "***There are now hundreds of affidavits*** sworn under penalty of perjury, ***detailing widespread voter fraud***." (*In Focus*, December 3, 2020 (Exhibit 28).)

g.   Clay Clark: "[O]n our podcast, we've interviewed the founder of Overstock.com, we've had the head of [] eBay's fraud protection on our show.  ***We've had countless experts, and everybody has shown there's irrefutable proof of voter fraud***." (*News Room*, 3PM, December 21, 2020 (Exhibit 34).)

h.   Michael Lindell: "[Y]ou're going to see on this show.  We have [] ***cyber forensic experts, we're going to have 100%, you're going to see all this evidence that by the time you're done seeing it, you're going to go wow, 100%, it proves exactly what happened, that these machines were used to steal our election by other countries***, including China."  (Absolute Proof, Feb. 5, 2021 (Exhibit 35).)

i.   Michael Lindell: "And we've, we've just shown everybody in the world ***100% evidence that this was an attack on our country and is still under attack by China and other countries through the use of these machines used in our election.***" (Absolute Proof, Feb. 5, 2021 (Exhibit 35).)

j.   Michael Lindell: "***100% we have the election fraud. Watch my[] video, watch my documentary***.  And you too will go, what?"  (Real America, Feb. 8, 2021 (Exhibit 36).)

**ANSWER:** Defendant incorporates as if fully set forth herein all responses elsewhere in this Answer related to the above statements.  Defendant admits that OAN stated truthfully that the information it published about any Smartmatic entity was based on evidence, investigations, and facts.  Defendant further admits that the information OAN published about any Smartmatic entity was based on reliable, verifiable facts.  Defendant further admits that the quoted statements were made as set forth in Paragraph 176.  Defendant denies that OAN knowingly or with reckless disregard for the truth published falsities.  Defendant further denies that OAN knowingly or with

reckless disregard for the truth published anything designed to leave a false impression.  Defendant

further denies that any of the statements quoted in Paragraph 176 were "of and concerning" any

Smartmatic entity.   Defendant further denies any remaining allegations by Plaintiffs against

Defendant in Paragraph 176.

**ALLEGATION NO. 177:**

      Third, OANN informed their viewers that Mr. Giuliani, Ms. Powell, and other guests were
lawyers to create the impression that they were reliable sources of facts.  As lawyers, Mr. Giuliani,
Ms. Powell, and Mr. diGenova are barred by their ethical codes of conduct from lying when they
are representing a client.  For example:

    a.     Applicable to Mr. Giuliani (New York-barred): "In the course of representing a
          client, a lawyer shall not knowingly make a false statement of fact or law to a third
          person." (New York Rule of Professional Conduct 4.1).

    b.     Applicable to Ms. Powell (Texas-barred):  "In the course of representing a client, a
          lawyer shall not knowingly (a) make a false statement of material fact or law to a
          third person; or (b) fail to disclose a material fact to a third person when disclosure
          is necessary to avoid making the lawyer a party to a criminal act or knowingly
          assisting a fraudulent act perpetrated by a client." (Texas Disciplinary Rule of
          Professional Conduct 4.01).

    c.     Applicable to Mr. diGenova (D.C.-barred): "In the course of representing a client,
          a lawyer shall not knowingly (a) make a false statement of material fact or law to a
          third person; or (b) fail to disclose a material fact to a third person when disclosure
          is necessary to avoid assisting a criminal or fraudulent act by a client." (District of
          Columbia Rules of Professional Conduct 4.1).

**ANSWER:** Paragraph 177 asserts legal conclusions, thus no response is required.  Furthermore,

the rules of ethics speak for themselves, thus no response is required.  To the extent a response is

required, Defendant admits that OAN truthfully informed viewers that lawyers were lawyers.

Defendant further admits that media entities regularly and ethically report about what presidential

lawyers say.  Defendant further admits that rules of ethics apply to lawyers.  Defendant further

states that the duties held by lawyers, as well their specialized training and experience, support

reliance on them when they say things publicly related to representation of their clients,

particularly when the lawyers represent the president of the United States.  Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 177.

## ALLEGATION NO. 178:

Fourth, OANN discussed Mr. Giuliani and Ms. Powell's backgrounds and experience as lawyers in order to bolster their credibility. OANN did this to create the impression that Mr. Giuliani and Ms. Powell are reliable sources of fact and experts on the "election fraud" issue. For example:

a.  Julie Kelly: "You know what *I'm really struck by [] Sidney Powell[.]  The emotion in her voice, and I mean, this is a tough lawyer, she has seen it all.*  She took Andrew Weissman on head on and [] the Enron case.  She's seen all the tricks of the trade as she's litigated the Michael Flynn case, *but to hear her voice shaking, the emotion that she expressed, understanding what's going on here* and trying to make the media and the American public aware of really what is looking more and more like a stolen election.  I think that's what struck me the most is really, the facts are there, the details are there.  *It's explosive bombshell allegations, but for her to be so emotional, I think really put some weight behind what she said*." (*Tipping Point*, November 19, 2020 (Exhibit 42).)

b.  Kara McKinney: "*[Sidney Powell's] someone who's seen a lot.  We've seen what she's done with the General Michael Flynn case* and how she's, you know, been able to turn that around in a positive way get so much exculpatory evidence that the DOJ was hiding and sitting on for many, many years.  So *we do know that she knows her stuff.  This is you know, her field of expertise.  When it comes down to it, especially when she was talking about the Dominion Voting Systems*.  How Dominion is a Canadian-based company, they have servers around the world. There are some ties, perhaps to Smartmatic a comp, or a software company that may have some ties also to Venezuela." (*Tipping Point*, November 19, 2020 (Exhibit 42).)

c.  Kara McKinney: "*I want [] remind[] the naysayers at Fox, among others, that Powell took on General Michael Flynn's case when it seemed hopeless to do so as well*.  He had already pleaded guilty, and the DOJ was adamant that it had turned over all of the exculpatory evidence that it had to Flynn's defense.  *For years, Powell pushed through claims that she was a conspiracy theorist on the hunt for documents that didn't exist*.  Just imagine if during those years, conservative pundits had also jumped down her throat, saying she had no evidence to substantiate her claims that Flynn was innocent and the victim of a weaponized FBI.  An innocent man would be in prison right now.  But now there's more than just one life at stake.  Our entire constitutional republic is hanging in the balance if we cannot restore faith in our electoral process." (Tipping Point, November 20, 2020 (Exhibit 43).)

d.       Michael Johns: "***I don't think this is properly being presented in much of media with the fact that the two leading attorneys on this case, who have you know, are barred, have ethical obligations, are officers of the court, and are two unbelievably extraordinary Americans of impeccable integrity.  Sidney Powell***, maybe not known to most Americans, but was a, you know, ***a leading U.S. attorney early in her career at two different jurisdictions, she led hundreds of appellate cases***, I think she was admitted to law school at the age of 19.  ***An incredibly bright, successful attorney who has no basis reason, and every reason not to be misleading the American public.  Rudy Giuliani will go down in history as one of the greatest icons of our lifetimes***, all the way back to breaking up the five, five crime families of New York City, to becoming the mayor, greatest mayor of America's greatest city, and through, you know, an incredible navigation of a political, public policy, legal career. And ***so when these two individuals stand before the world, and say that this election was fraudulently manipulated, the burden of proof shifts to proving that it wasn't***." (Tipping Point, November 20, 2020 (Exhibit 43).)

e.       J. Michael Waller: "***Sidney Powell's, the whole so-called split with the, with the President's legal team***–that she was never part of it in the first place, as you said, but there are a few clues out there.  **No one is really criticizing her from the President's own legal team**.  And in fact, ***Jenna Ellis***, who was a key member of the team, ***tweeted out Sidney Powell's comments in the Wall Street Journal today, as if to give the thumbs-up that everything's fine***."  (Tipping Point, November 23, 2020 (Exhibit 20).)

**ANSWER:** Defendant admits that OAN properly and truthfully reported on the backgrounds of

Mr. Giuliani and Ms. Powell because those backgrounds were relevant to what they asserted about

the 2020 U.S. presidential election.  Defendant further admits that the backgrounds of Mr. Giuliani

and Ms. Powell are impressive and, at the time of the reporting at issue, supported reporting on

what they were saying.  Defendant further admits that when lawyers for a U.S. president speak

about topics such as those addressed by Mr. Giuliani and Ms. Powell, reporting on those statements

is appropriate.  Defendant further admits the statements quoted in Paragraph 178 were made and

further admits that those statements demonstrate the absence of knowing falsity or reckless

disregard for the truth in OAN's reporting on what Mr. Giuliani and Ms. Powell said.  Defendant

denies that OAN engaged in any effort to artificially or falsely bolster Mr. Giuliani's or Ms.

Powell's credibility.   Defendant further denies that OAN intended to engender any false

impressions of Mr. Giuliani and Ms. Powell as credible sources; in fact, at the time of the reporting

at issue, OAN viewed Mr. Giuliani and Ms. Powell as credible sources (and even if OAN hadn't,

OAN still would have been duty bound to report on what they were saying, just as other media

widely did).  Defendant further denies that all of the statements quoted in Paragraph 178 are "of

and concerning" any Smartmatic entity.  Defendant further denies any remaining allegations by

Plaintiffs against Defendant in Paragraph 178.

## ALLEGATION NO. 179:

Fifth, OANN intentionally created the impression that the information it published regarding Smartmatic was the only information that was accurate and truthful.  OANN created this impression by telling readers and viewers to discount or ignore the information being provided by any source—government or media—other than OANN.  It also told its viewers to discount Smartmatic's retraction demand letters and the factual information contained therein.  For example:

a.   Pearson Sharp: "The 2020 election is yet to be decided, and the biggest problem hinges over voting fraud.  Does it exist, or doesn't it?  Well, *if you listen to the mainstream media today, you'd swear voting fraud is nothing more than a right-wing conspiracy theory*.  No credible journalist would ever be caught suggesting it could possibly happen, or would they?  *Well, this is CNN we're talking about, so obviously, there's no credibility to start*.  But let's ignore that for a moment and let CNN demonstrate for themselves exactly what hypocrisy in the media looks like.  Take a look at these clips, some from today, after the 2020 election, and others from back in 2006 when Democrats and the left-wing media actually claimed that voting fraud was a national security issue."  (*News Room*, 11PM, November 24, 2020 (Exhibit 44).)

b.   Pearson Sharp: "Today [] *the left-wing media has no problem painting all these concerns as nothing more than Republican tinfoil hat theories.  However, One American News believes the American people have a right to know what's actually happening* because the fate of an election and an entire country hangs in the balance."  (News Room, 11PM, November 24, 2020 (Exhibit 44).)

c.   Patrick Hussion: "We're going to continue to bring you live coverage of these hearings as they happen from each of the states.  And again, *One America News is the only one going wall to wall on this coverage, and the President is noticing on Twitter*, if you want to go check that out."  (*Breaking News Live*, December 1, 2020 (Exhibit 26).)

d.   Christina Bobb: "[T]hey share an address in the Bahamas, but yet they have nothing to do with each other.  *What do you think about Newsmax succumbing to this*

*statement [retraction demand letter]?*" Cory Mills: "You can go back and actually find interviews from the owner of Smartmatic who talks about utilizing licensing from Dominion in the past for certain international areas. There is a clear link together. *I don't think Newsmax had to retract or correct their statement*. I think that the onus should be on the owner to demonstrate and to prove that there is no further links between Smartmatic and Dominion, and I don't think that he can be able to do that today." (*Weekly Briefing*, December 26, 2020 (Exhibit 45).)

e.    Chris Farrell: "*It looks like a threatening letter from some attorney* . . . This is the reaction from a litigation threat letter . . . And *with the answer in response to that is, great, we look forward to taking discovery. We'll depose you, [] we'll depose you and your board of directors, and we'll look at your financials*[.] And that's the counterpoint to this . . . *But [Newsmax] got spooked*[.]" (Weekly Briefing, December 26, 2020 (Exhibit 45).)

**ANSWER:** Defendant admits that the information OAN published about any Smartmatic entity was accurate and truthful and that OAN was uniquely accurate and truthful in various aspects of its reporting on the 2020 U.S. presidential election. Defendant further admits that the statements quoted in Paragraph 179 were made. Defendant denies that Plaintiffs' characterization of the quoted statements is accurate. Defendant further denies that all of the quoted statements are "of and concerning" any Smartmatic entity. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 179.

## III.    OAN's diligent reporting.

**ALLEGATION NO. 180:**

OANN's statements about Smartmatic were not facts. OANN's statements about Smartmatic were lies. The demonstrably, verifiable facts are:

- Smartmatic's election technology and software were only used in Los Angeles County, and *not* used by any other voting machine company, for the 2020 U.S. election.

- Smartmatic's election technology and software were *not* used in other voting machines in the 2020 U.S. election, including in Dominion machines.

- Smartmatic's election technology and software were *not* used to steal the 2020 U.S. election. Nor could they have been, given that Smartmatic's role was limited to Los Angeles County.

- Smartmatic's election technology and software were ***not*** compromised and hacked during the 2020 U.S. election and ***no*** votes were sent overseas. No one has identified a shred of evidence that there were cyber-security issues in Los Angeles County. The votes were tabulated in Los Angeles County.

- Smartmatic is ***not*** a Venezuelan company and was ***not*** founded and funded by corrupt dictators from socialist and communist countries. Smartmatic USA Corp. is based in Florida, and its parent company is based in the United Kingdom. No dictators—corrupt or otherwise, from communist/socialist countries or otherwise—were involved in founding or funding the company.

- Smartmatic's election technology and software were ***not*** designed to rig and fix elections and have ***not*** been used to rig and fix elections before. Smartmatic's election technology and software were designed for security, reliability, and auditability. No after-the-fact audit has ever found that Smartmatic's technology or software was used to rig, fix, or steal an election.

**ANSWER:** Defendant denies the allegations in Paragraph 180.

## ALLEGATION NO. 181:

OANN did not let these demonstrable, verifiable facts stand in its way of publishing false claims about Smartmatic that would bolster its ratings and make it money.

**ANSWER:** Defendant denies the allegations in Paragraph 181.

### A.   OAN truthfully reported allegations that election equipment and software with ties to Smartmatic-related entities were widely used in the 2020 U.S. election.

## ALLEGATION NO. 182:

The first lynchpin of OANN's disinformation campaign was to convince viewers and readers that Smartmatic's election technology and software were widely used during the 2020 U.S. election. OANN could not persuade people that Smartmatic had stolen the election if Smartmatic's election technology and software were not widely used during the 2020 U.S. election, including in battleground states.

**ANSWER:** Defendant denies the allegations in Paragraph 182.

## ALLEGATION NO. 183:

OANN knew that Smartmatic was not used in any state or county outside of Los Angeles County. That fact is easily ascertainable from public records. Perhaps recognizing this flaw with its story, OANN tried to hedge its bets by linking Smartmatic to Dominion and other voting machine systems. OANN accomplished this by stating and implying that a corporate relationship between Smartmatic and Dominion existed and by stating and implying that Smartmatic's

technology and software was "in the DNA" of every other voting machine, including Dominion machines.

**ANSWER:** Defendant denies the allegations in Paragraph 183.

**ALLEGATION NO. 184:**

Below are some of the statements that were made by OANN to create the impression that Smartmatic's election technology and software were widely used, including in Dominion's voting machine system, during the 2020 U.S. election:

a.    Alex Salvi: "The Washington Examiner reporting this week quote, '***the Dominion voting systems***, ***which has been used in multiple state where fraud has been alleged in the 2020 U.S. election***, was rejected three times by data communications experts from the Texas Secretary of State and Attorney General's Office for failing to meet basic security standards.' But it's not only Dominion. ***It's also Dominion's subsidiaries, such as Smartmatic*** which was used for the Philippines elections back in 2010 and 2013." (*After Hours*, November 12, 2020 (Exhibit 1).)

b.    Sidney Powell: "They're facing an election that was absolutely rigged . . . We have identified the system capability that does it. It does in fact exist regardless of what the name of it is. ***It works through the Dominion company's voting machines that were in 30 states and does indeed alter and flip voting results***." (*News Room*, 5AM, November 16, 2020 (Exhibit 2).)

c.    Rudolph Giuliani: "Did you know a foreign company, ***DOMINION, was counting our vote in Michigan, Arizona and Georgia and other states. But it was a front for SMARTMATIC, who was really doing the computing***." (News Room, 5AM, November 16, 2020 (Exhibit 2).)

d.    Kara McKinney: "It's also a convenient lie. Given that Trump attorney, Sidney Powell says a member of Biden's transition team is also a member of the board of directors for ***Smartmatic, which is a subsidiary of Dominion***[.]" (*Tipping Point*, November 16, 2020 (First Video) (Exhibit 3).)

e.    Kara McKinney: "[T]his smacks to me of intention here on the Democrats' part, [] laying out over these past few years, red flags popping up here and there over these many, many years. And the fact that Democrats knew that and then pushed to ***bring these systems into as many as 30 states***[.]" (*Tipping Point*, November 16, 2020 (Second Video) (Exhibit 4).)

f.    Mike Dinow: "The Gateway Pundit reports, ***Smartmatic sold its technology to Dominion Voting, that ran elections in Arizona, Michigan, Nevada, and Pennsylvania this year***." (News Room, 11PM, November 16, 2020 (Exhibit 5).)

g.    On-Screen Graphic: "Report: Soros-Backed Firm Installed Socialism in Venezuela; Dominion-Linked Smartmatic Had Chavez Aide on Board, ***Sold Rigged Election Tech to U.S. States***." (*News Room*, 11PM, November 16, 2020 (Exhibit 5).)

h.    Rudolph Giuliani: "They certainly stole the election in **Detroit**.  They certainly stole the election in **Pennsylvania**." (*News Room*, 11PM, November 16, 2020 (Exhibit 5).)

i.    Kara McKinney: "The even bigger issue at play here [is] systemic.  For example, *the voting system used in around 30 states, Dominion, and its subsidiary Smartmatic*.  It just so happens that a member of Biden's transition team, Peter Neffenger, is a member of the Board of Directors for Smartmatic.  The chairman of that company is also a board member for George Soros' Open Society Foundation. That very same software was used a few years back to rig elections in Venezuela." (*Tipping Point*, November 17, 2020 (Exhibit 6).)

j.    Kara McKinney: "So this begs the question, why are we using foreign companies to count our votes in the first place, and allowing that information to reportedly flow through servers overseas?  And secondly, *if even Democrats knew about these vulnerabilities with Dominion and Smartmatic years before this election, then why did they allow them to be used in so many states*?  Why didn't more states follow in the lead of Texas in saying no?  Perhaps that means they were chosen by election officials precisely because they are so flawed." (*Tipping Point*, November 17, 2020 (Exhibit 6).)

k.    Patrick Hussion: "Rudy Giuliani says the Democrat Party conspired with socialist regimes overseas to steal this year's election from the President.  In a news conference, *the President's legal team said that they have evidence that Dominion Voting Systems and the Smartmatic software were used to switch votes from President Trump to Joe Biden*.  They add the technology is controlled by allies of Venezuela's Maduro regime." (*Breaking News Live*, November 19, 2020 (Exhibit 9).)

l.    Dan Ball: "[O]bviously *these security folks at Dominion that set up the systems in the individual states, they can just do a little tweak here, a little tweak there to the program.  It can make it so minor, to flip votes*, but enough to make your guy win [.]"  (Real America, November 19, 2020 (Exhibit 10).)

m.    OAN Newsroom: "The President's lawyers are weighing in, once again, on *election fraud during the 2020 White House race.  While speaking in D.C. Thursday, they claimed votes were hacked and ballots were switched from President Trump to Joe Biden* through technology that was developed in Venezuela."  (OANN Website, *President's Lawyers Say Communist-Funded Election Software Responsible For Alleged Voting Irregularities*, November 20, 2020 (Exhibit 11).)

n.    OANN Reporter: "Most claims center around the Canadian-made Dominion Voting Systems and the Venezuelan-made **Smartmatic Systems**.  Sidney Powell says the same technology was used to secure a victory for Hugo Chávez in Venezuela and *could have been used across the country*." (*News Room*, 12AM, November 20, 2020 (Exhibit 14).)

o.      Sidney Powell: "[O]ne of its most characteristic features [] is its ability to flip votes. *It can set and run an algorithm that probably ran all over the country to take a certain percentage of votes from President Trump*."  (News Room, 12AM, November 20, 2020 (Exhibit 14).)

p.      John Hines: "So what is the **connection between the Smartmatic machines and the Dominion machines** do you suppose?"  Allan Santos: "So **they have a contract for using software** [.]" (News Room, 3PM, November 20, 2020 (Exhibit 16).)

q.      Stephanie Hamill: "Attorney Sidney Powell says *the software used in the voting machines across the country can be manipulated to alter vote totals*.  Now Powell also points out that the software developed by Smartmatic is tied to major Democrat donor George Soros and the Clinton Foundation." (*In Focus with Stephanie Hamill*, November 20, 2020 (Exhibit 17).)

r.      Samantha Lomibao: "This after reports found **Maduro allies were meddling in the latest U.S. election through a company called Smartmatic.**"  (News Room, 6PM, November 22, 2020 (Exhibit 19).)

s.      Rudy Giuliani: "Smartmatic, which is the ultimate software, had switched 6,000 votes.  It switched 6,000 votes from Trump to Biden.  *So the poor people in Michigan that went in to vote for Trump ended up voting for Biden because the machine and the software*, that originates [] with Venezuela, a dictatorship, *changed their vote without their ever knowing it*." (*News Room*, 6PM, November 22, 2020 (Exhibit 19).)

t.      Kara McKinney: "And then it just comes down to this idea of Smartmatic and Dominion—I know they're trying to distance from each other.  For example, Dominion says 'we're competitors in the marketplace, we have no ties whatsoever.'  You go back to old interviews, for example, of the former chairman for Smartmatic telling—in the Philippines, he was being interviewed and he says, 'that *they work together with software and share some details there*.'  So what is the exact relationship between the two?"  J. Michael Waller: "Well it's still really unclear, but we do know that from the evidence presented so far—from this [] one affidavit that *we've already seen, that the current software for any Smartmatic compatible machine, the DNA is based on this [] Smartmatic material design[ed] in Venezuela. So that's the [] backbone of the software for any Dominion or other machine in the United States*." (*Tipping Point*, November 23, 2020 (Exhibit 20).)

u.      OAN Newsroom: "In both suits, *Powell said the fraud [in Georgia and Michigan] mainly took place* in the form of 'old-fashioned ballot stuffing' which was rendered 'virtually invisible' *by Dominion and Smartmatic's computer software*." (OANN Website, *Sidney Powell Launches Election Lawsuits in Mich. And Ga.*, November 27, 2020 (Exhibit 22).)

v.    Tom Fitton: "And it's a fair question to ask whether the–something similar is able to be done in the United States using similar systems, whether it be ***Smartmatic, or the Dominion version of electronic computer software*** . . . the numbers popping up in unusual ways, ***in Pennsylvania and Michigan***, where you get these huge spikes in numbers occurring in the middle of the night." (*Breaking News Live*, December 1, 2020 (Exhibit 26).)

w.    OANN Reporter: "A Sunday report verified that Soros-linked ***Smartmatic may be connected to the sale of election technology to Dominion, which is being used to count votes in at least 24 US states***."  (News Room, 9AM, December 5, 2020 (Exhibit 29).)

x.    OAN Newsroom: "The move comes after ***Smartmatic sold voting technology to foreign-owned Dominion, which is the controversial software used to count votes in 24 U.S. states for the 2020 election***.  Meanwhile, Smartmatic-tied Dominion voting service is facing backlash over what President Trump has described as instances of fraud in the 2020 elections." (OANN Website, Chairman Of Smartmatic's Parent Company To Become President Of George Soros's 'Open Society Foundations', December 7, 2020 (Exhibit 30).)

y.    Michael Johns: "Look, I think we have to look at the Dominion and ***Smartmatic*** issues as almost a national crisis . . . [W]e had ***28 states and 2000 jurisdictions in this country, who looked at all of the available options, and mysteriously concluded that this system was the best option available to them***[.]" (Tipping Point, December 7, 2020 (Exhibit 33).)

z.    Clay Clark: "***We all went in and voted [] using hardware, [] called Dominion***, the Canadian owned hardware company, that tabulates your votes, has Chinese parts on it.  Step two, ***the software, known as Smartmatic*** or Sequoia, that software was originally coded out by Communist Venezuelans.  Step three, for added integrity, your votes were shipped to Frankfurt, Germany, where your votes were stored on Amazon servers.  And then step four, in Barcelona, Spain, the votes were somehow tabulated there, and there was a little feature on the software that allows people to switch votes." (*News Room*, 3PM, December 21, 2020 (Exhibit 34).)

aa.    Phil Waldron: "So a critical capability for any of this to happen are the inherent vulnerabilities that were ***built into ES&S and Dominion software, which is, you know, again, we've proven through, through our work that this is all related directly back to the soft, Smartmatic, SGO Smartmatic software core***[.]" (Absolute Proof, Feb. 5, 2021 (Exhibit 35).)

bb.    Michael Lindell: "This was an attack on our country, ***these Dominion machines and Smartmatic, these machines that were [] the tools of this attack***, and we will never have another fair election [] if we don't stop that, so I will never back down." (*A Screening and Conversation of Absolute Proof*, Feb. 11, 2021 (Exhibit 37).)

cc.     Michael Lindell: "[B]ut the point of that, of bringing up the Texas thing is ***ESS, Smartmatic and Dominion, you can interchange the names, they all are the same.*** The cyber phonetics we show it goes through all these machines, ***they're all the same.   This is [my] whole point***[.]" (*A Screening and Conversation of Absolute Proof*, Feb. 11, 2021 (Exhibit 37).)

dd.     Michael Lindell: "And [] as part of my due diligence, that's been all this week. I wanted to go back to where this all started.   And Venezuela, ***it all started in Venezuela with Smartmatic, not Dominion or the other one, it was with Smartmatic***."   (*A Screening and Conversation of Absolute Proof*, Feb. 11, 2021 (Exhibit 37).)

ee.     Michael Lindell: "**Smartmatic, ES&S, don't matter**.  **Just in Dallas alone**, **there was 57 vote, 57,000 votes flipped on**, and I don't even know if that was before noon."  (Scientific Proof, April 3, 2021 (Exhibit 38).)

ff.     Michael Lindell: "100% it can only be done by machines. I can't stress that enough." Douglas Frank: "Absolutely." Michael Lindell: "***And they all rhyme with Dominion, or Smartmatic, ES&S all of them.***" (*Scientific Proof*, April 3, 2021 (Exhibit 38).)

gg.     Michael Lindell: "***[T]hese machines where it got hacked, Dominion, Smartmatic, [] all of them are the same***, ES&S.  You just say Dominion, but it's all machines. China hacked into our election and flipped millions upon millions of votes. We have a hundred percent evidence[.]" (*Mike Lindell Tackles Election Fraud*, May 3, 2021 (Exhibit 40).)

hh.     Michael Lindell: "***This was something that came through the machines, the Dominion machines, the Smartmatic and other machines***.  This was a cyber attack." (Absolutely 9-0, June 5, 2021 (Exhibit 41).)

**ANSWER:** Defendant incorporates by reference as if fully set forth herein all responses elsewhere in this Answer related to the statements above.  Defendant admits that the statements quoted in Paragraph 184 were made.  Defendant denies that OAN made all the quoted statements.  Defendant further denies that Plaintiffs have accurately characterized the quoted statements.  Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances. Defendant further denies that OAN attempted to create a false impression about anything. Defendant further denies that technology and software associated with or connected to one or more Smartmatic entities or one or more Smartmatic-affiliated entities were not widely used in the 2020

U.S. presidential election, in part because one or more Smartmatic entities used to own Sequoia Voting Systems (and its associated technology and software) and one or more Dominion entities now owns Sequoia Voting Systems (and that same associated technology and software). Defendant further denies that all of the statements quoted in Paragraph 184 were "of and concerning" any Smartmatic entity. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 184.

**ALLEGATION NO. 185:**

The statements that were made during the OANN programs were originally published during the programs and then republished when posted to an OANN social media platform. The statements made on social media were originally published on the social media website (*e.g.*, Twitter or Facebook) and then republished by individuals who saw the social media posts (*e.g.*, retweeting on Twitter). OANN anticipated the republication of its statements. OANN intended for the republication to further disseminate its statements to a larger audience.

**ANSWER:** Plaintiffs fail to specify any statement in Paragraph 185, thus making it impossible for Defendant to know how to respond; Defendant thus denies the allegations. To the extent further response is required, Defendant admits that it sometimes cross-published across platforms and hopes to expand its audience. Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 185.

**ALLEGATION NO. 186:**

Individuals who heard and read OANN's statements were led to believe that Smartmatic's election technology and software were (1) widely used during the 2020 U.S. election, including in states with close outcomes and (2) used by Dominion and other voting machine systems during the 2020 U.S. election. OANN intended for individuals who heard or read their statements to draw that conclusion. That conclusion was an important component of the disinformation campaign.

**ANSWER:** Defendant admits that election technology and software associated with or connected to one or more Smartmatic entities or one or more Smartmatic-affiliated entities were widely used in the 2020 U.S. election, including in states with close outcomes, and were used by one or more Dominion entities. Defendant is without knowledge or information sufficient to form a basis as to

the truth of the allegations relating to beliefs of individuals other than Defendant; Defendant therefore denies the allegations in the first sentence of Paragraph 186. Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 186.

**ALLEGATION NO. 187:**

OANN's statements and implication that Smartmatic's election technology and software were widely used during the 2020 U.S. election are demonstrably false and factually inaccurate.

**ANSWER:** Defendant denies the allegations in Paragraph 187.

**ALLEGATION NO. 188:**

First, Smartmatic's election technology and software were only used in Los Angeles County during the 2020 U.S. election. They were not used in any other county or state during the 2020 U.S. election.

**ANSWER:** Defendant admits that one or more Smartmatic entities provided election technology and services to Los Angeles County during the 2020 U.S. election. Defendant denies the remaining allegations in Paragraph 188.

**ALLEGATION NO. 189:**

Second, Smartmatic's election technology and software were not used in any county or state with close outcomes during the 2020 U.S. election. Smartmatic's election technology and software were not used in Nevada, Arizona, Georgia, Pennsylvania, Michigan, Wisconsin, or Texas. Smartmatic's election technology and software were not used in any counties in these states.

**ANSWER:** Defendant denies the allegations in Paragraph 189.

**ALLEGATION NO. 190:**

Third, Smartmatic's election technology and software were not used by any other voting technology company during the 2020 U.S. election. Smartmatic's election technology and software were not used by another company in Nevada, Arizona, Georgia, Pennsylvania, Michigan, Wisconsin, or Texas (or any counties within these States).

**ANSWER:** Defendant denies the allegations in Paragraph 190.

**ALLEGATION NO. 191:**

Fourth, Smartmatic did not work with or assist any other voting technology company during the 2020 U.S. election. Smartmatic did not count the votes for any other voting technology

company, including Dominion.  Smartmatic's election technology and software were not involved in collecting, tabulating or counting any votes outside of Los Angeles County.

**ANSWER:** Defendant denies that technology and software developed by and/or once owned by any Smartmatic entity or any Smartmatic-affiliated entity were not used widely in the 2020 U.S. election (i.e. beyond Los Angeles County).  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 191 and therefore denies the same.

**ALLEGATION NO. 192:**

Fifth, Dominion did not use Smartmatic's election technology and software during the 2020 U.S. election. Smartmatic did not license its technology or software to Dominion for use in the 2020 U.S. election.  Dominion did not purchase Smartmatic's election technology and software for use in the 2020 U.S. election.

**ANSWER:** Defendant denies the allegations in the first and third sentences of Paragraph 192. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 192 and therefore denies them.

**ALLEGATION NO. 193:**

Sixth, Dominion and Smartmatic are competitors.  They compete against each other. Smartmatic does not assist Dominion with its projects.  Dominion does not assist Smartmatic with its projects.  Neither is a sub-contractor of the other.  They do not work together.

**ANSWER:** Defendant admits that one or more Dominion entities compete on occasion with one or more Smartmatic entities.  Defendant denies that no Smartmatic entity has ever assisted a Dominion entity with any project or vice versa.  Defendant denies that no Smartmatic entity has ever worked with a Dominion entity, including but not necessarily limited to contracts related to the sale or licensing of technology or software and/or agreements related to serving or not serving certain jurisdictions around the globe.  Defendant is without knowledge or information sufficient

to form a belief as to the truth of the remaining allegations in Paragraph 193 and therefore denies the same.

**ALLEGATION NO. 194:**

Seventh, Smartmatic and Dominion have no corporate relationship.  Smartmatic does not own Dominion.  Dominion does not own Smartmatic.  Smartmatic is not a subsidiary of Dominion. Dominion is not a subsidiary of Smartmatic.

**ANSWER:** Defendant states that the references to "Smartmatic" and "Dominion" are ambiguous, making a response very difficult; the various Smartmatic entities have a byzantine corporate structure apparently intended to mask origins in Venezuela, and corporate relationships of any person or entity involved in any Smartmatic-related entity are challenging, without discovery, to unpack.  That being said, Defendant denies that no Smartmatic entity has had any form of corporate relationship with any Dominion entity (including, but not limited to, contracts and licensing agreements).  As to these entities' relationships with each other at the present time, Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 194 and therefore denies the same.

> **B.    OAN truthfully reported allegations that election equipment and software with ties to Smartmatic-related entities were capable of being and perhaps were manipulated during the 2020 U.S. election.**

**ALLEGATION NO. 195:**

Persuading people that Smartmatic's election technology and software was widely used was only part of OANN's strategy.  To secure viewers, OANN decided to spread the false narrative of election fraud.  Given that objective, OANN focused its efforts during the disinformation campaign on persuading people that Smartmatic had fixed, rigged, and stolen the election for Joe Biden and Kamala Harris and Democratic Party candidates generally.

**ANSWER:** Defendant denies the allegations in Paragraph 195.

**ALLEGATION NO. 196:**

Below are some of the statements that were made by OANN to create the impression that Smartmatic had fixed, rigged, and stolen the 2020 U.S. election for Joe Biden and Kamala Harris and the Democratic Party:

a.  Elma Aksalic: "During an interview on Sunday, attorney Sidney Powell said election results in multiple states are quote 'getting ready to overturn.' Powell cites an overwhelming amount of evidence the President's legal team has received concerning voter fraud and irregularities. She specifically noted *a member of Joe Biden's team is also on the board of directors for a software company behind the flawed Dominion Voting Systems*." (*News Room*, 5AM, November 16, 2020 (Exhibit 2).)

b.  Sidney Powell: "They're facing *an election that was absolutely rigged*. [W]e are soaking in information through fire hoses of *complicated mathematical alterations to the votes*. We have identified the system capability that does it. It does in fact exist regardless of what the name of it is. It works through the Dominion company's voting machines that were in 30 states and does indeed alter and flip voting results." (*News Room*, 5AM, November 16, 2020 (Exhibit 2).)

c.  Kara McKinney: "It's also a convenient lie. Given that Trump attorney Sidney Powell says *a member of Biden's transition team is also a member of the board of directors for Smartmatic*, which is a subsidiary of Dominion." (*Tipping Point*, November 16, 2020 (First Video) (Exhibit 3).)

d.  Michael Johns: "[J]ust so happens that *one of the two campaigns has a very strong relationship with Smartmatic* and I probably don't have to ask you to guess which one. But *we have an individual named Peter Neffenger, who has been handling what's typically called the landing teams for transitions*." (Tipping Point, November 16, 2020 (Second Video) (Exhibit 4).)

e.  Rudolph Giuliani: "They certainly *stole the election in Detroit*. They certainly *stole the election in Pennsylvania*." (*News Room*, 11PM, November 16, 2020 (Exhibit 5).)

f.  Kara McKinney: "The even bigger issue at play here [is] systemic. For example, the voting system used in around 30 states, Dominion, and its subsidiary Smartmatic. It just so happens that *a member of Biden's transition team, Peter Neffenger, is a member of the Board of Directors for Smartmatic*. The chairman of that company is also a board member for George Soros' Open Society Foundation. That very same software was used a few years back to rig elections in Venezuela." (*Tipping Point*, November 17, 2020 (Exhibit 6).)

g.  Patrick Hussion: "Rudy Giuliani *says the Democrat Party conspired with socialist regimes overseas to steal this year's election from the President*. In a news conference, the President's legal team said that they have evidence that *Dominion Voting Systems and the Smartmatic software were used to switch votes from President Trump to Joe Biden*. They add the technology is controlled by allies of Venezuela's Maduro regime." (Breaking News Live, November 19, 2020 (Exhibit 9).)

h.     OAN Newsroom: "The President's lawyers are weighing in, once again, on *election fraud during the 2020 White House race.  While speaking in D.C. Thursday, they claimed votes were hacked and ballots were switched from President Trump to Joe Biden* through technology that was developed in Venezuela."  (OANN Website, President's Lawyers Say Communist- Funded Election Software Responsible For Alleged Voting Irregularities, November 20, 2020 (Exhibit 11).)

i.     Sidney Powell: "*[O]ne of its most characteristic features [] is its ability to flip votes.*  It can set and run an algorithm that probably ran all over the country to take a certain percentage of votes from President Trump." (*News Room*, 12AM, November 20, 2020 (Exhibit 14).)

j.     Stephanie Hamill: "Attorney Sidney Powell says the software used in the voting machines across the country can be manipulated to alter vote totals.  Now Powell also points out that the *software developed by Smartmatic is tied to major Democrat donor George Soros and the Clinton Foundation*." (*In Focus with Stephanie Hamill*, November 20, 2020 (Exhibit 17).)

k.     Samantha Lomibao: "This after reports found **Maduro allies were meddling in the latest U.S. election through a company called Smartmatic.**"  (News Room, 6PM, November 22, 2020 (Exhibit 19).)

l.     Rudy Giuliani: "*Smartmatic, which is the ultimate software, had switched 6,000 votes.  It switched 6,000 votes from Trump to Biden.*  So the poor people in Michigan that went in to vote for Trump ended up voting for Biden because the machine and the software that originates [] with Venezuela, a dictatorship, changed their vote without their ever knowing it." (*News Room*, 6PM, November 22, 2020 (Exhibit 19).)

m.    OAN Newsroom: "In both suits, Powell said **the fraud mainly took place in the form of 'old-fashioned ballot stuffing'** which was rendered 'virtually invisible' **by Dominion and Smartmatic's computer software**." (OANN Website, Sidney Powell Launches Election Lawsuits in Mich. And Ga., November 27, 2020 (Exhibit 22).)

n.     Michael Johns: "The vast amount of investigation, when you're talking about probably, easily, you know, maybe close to *ten different means through which this election was fraudulently manipulated.  The most complicated, of course, which is the Dominion and Smartmatic systems* [.]"     (Tipping Point, November 28, 2020 (Exhibit 25).)

o.     Kara McKinney: "*[E]ven if you want to chalk up all of the glitches, the ballot errors and other irregularities to simple mistakes, then why do they only go one way?  Can anyone name a single time in which these mistakes help President Trump?*  It's a simple question that has been raised time and again in the month since Election Day without any good answers from Democrats.  However, looking at records from the Federal Election *Commission may explain at least part of the*

*reason for this code of silence*.  What we find is that 95% of all political contributions made by employees at Dominion Voting Systems between 2014 and 2020 went for Democrats.  It's the same story at *Smartmatic, 86% of their employee contributions went to [D]emocrat candidates, specifically to Joe Biden, Senator Elizabeth Warren, Pete Buttigieg, and even to Adam Schiff.*"  (Tipping Point, December 1, 2020 (Exhibit 27).)

p.  OANN Reporter: "A Sunday report verified that Soros-linked *Smartmatic may be connected to the sale of election technology to Dominion*, which is being used to count votes in at least 24 US states." (*News Room*, 9AM, December 5, 2020 (Exhibit 29).)

q.  OANN Reporter: "This, as the latest in a series of connections between voting systems employed in the US and abroad and *the Soros-linked company, to surface amid emerging evidence of voter fraud in the US presidential election*." (*News Room*, 9AM, December 5, 2020 (Exhibit 29).)

r.  OAN Newsroom: "*Meanwhile, Smartmatic-tied Dominion voting service is facing backlash over what President Trump has described as instances of fraud in the 2020 elections*.  'In one Michigan County as an example, that used Dominion Systems, they found that nearly 6,000 votes had been wrongly switched from Trump to Biden,' stated the President.  'And this is just the tip of the iceberg, this is what we caught.'" (OANN Website, Chairman Of Smartmatic's Parent Company To Become President Of George Soros's 'Open Society Foundations', December 7, 2020 (Exhibit 30).)

s.  Michael Lindell: "[T]he you know, *the purpose of this whole show, obviously, is to show everyone in the world that these machines that this was the biggest fraud and the biggest crime I believe against humanity.  It was a crime against humanity.*" (Absolute Proof, Feb. 5, 2021 (Exhibit 35).)

t.  Michael Lindell: "Could you guys all hear this?  This is what we're up against, this Dominion, *these machines is the biggest fraud in election.  They stole this.*  But now the truth is all going to be revealed." (*Absolute Proof*, Feb. 5, 2021 (Exhibit 35).)

u.  Michael Lindell: "This is just a small county, Northern Michigan, and [] we had 15,718 votes. []  *And 7,060 were flipped from Trump to Biden, is that correct? [] By machines right?  It had to be done by the machines.  Matt Deperno: Absolutely by machines.*" (Absolute Proof, Feb. 5, 2021 (Exhibit 35).)

v.  Michael Lindell: "The machines, the machines.  And what we're showing here right now, what you're going to see, all this what we've been talking about, *this massive machine election fraud that went on, where countries hacked into our election*.  And nationwide, this is one little county in Northern Michigan, and *these machines would do it right down to the precinct*…  And so what I want to tell you all is this

is the perfect example, just so you know, right down to the precinct level, what went on with these machine[s]." (*Absolute Proof*, Feb. 5, 2021 (Exhibit 35).)

w.  Michael Lindell: "Right, so ***both of them involved the machines, everybody***. One we've talked about in this show is here.  But then the cyber one is what you just heard from Russell, which he said earlier, ***this is all the attack by the other countries that hacked in which we're going to show you that proof now that Russell doesn't even know that we have that's going to show who did it, the time they did it, the computer they did it off it, everything***." (*Absolute Proof*, Feb. 5, 2021 (Exhibit 35).)

x.  Michael Lindell: ***This was a historical election fraud.  This was coming from a lecture [sic] from machines, from these machines, of biblical proportions, of historical proportions.  And now this is, it's all going to get exposed***.  (Absolute Proof, Feb. 5, 2021 (Exhibit 35).)

y.  Michael Lindell: "This was an attack on our country, ***these Dominion machines and Smartmatic, these machines that were [] the tools of this attack***, and we will never have another fair election if we don't [] stop that, so I will never back down." (*A Screening and Conversation of Absolute Proof*, Feb. 11, 2021 (Exhibit 37).)

z.  Michael Lindell: So what are you [] saying there, Dr. Frank, they're saying that ***they've set this in the machine . . . That they set to see who was gonna win and they set this algorithm?***  Douglas Frank: Yes.  Michael Lindell: Okay. These are the algorithms we've been telling you about. (*Scientific Proof*, April 3, 2021 (Exhibit 38).)

aa.  Michael Lindell: "***The same thing, the same machines, the same attack, the same people, the same corruption that went on, the same crime against humanity was all, crossed all the states***."  (Scientific Proof, April 3, 2021 (Exhibit 38).)

bb.  Michael Lindell: "Talking about 'Absolute Proof' that documentary we did, where ***we have the spyware and these American heroes that were [[whistleblowers and stuff that were there and that worked for the government and stuff that, former and present, that were there and they were taking these footprints, these cyber footprints the night of the election, actually, from November 1st to the 5th.***  And we have all the IP addresses [] the ID's of the computers, we have all this of the attacks[.]"  Douglas Frank: "Yes. I was on the edge of my seat watching that . . . ***But the thing about it is, you're showing the incursions into the machines but what do they do when they're there?  They have to know what to do.  That's what the algorithm is telling them what to do.***" (Scientific Proof, April 3, 2021 (Exhibit 38).)

cc.  Michael Lindell: And it's gonna come out.  ***And this is all, and that's just another way that, to cheat with these machines***.  Michael Flynn: Right.  Michael Lindell: ***There's actually four ways, maybe even more we don't know about, but these are all the online ways***.  (Absolute Interference, April 22, 2021 (Exhibit 39).)

dd.   Michael Lindell: "*[T]hese machines where it got hacked, Dominion, Smartmatic*, [] all of them are the same, ES&S.  You just say Dominion, but it's all machines. *China hacked into our election and flipped millions upon millions of votes*.  We have a hundred percent evidence[.]" (Mike Lindell Tackles Election Fraud, May 3, 2021 (Exhibit 40).)

ee.   J. Alex Halderman: "*I know America's voting machines are vulnerable, because my colleagues and I hacked them repeatedly.  We've created attacks that can spread from machine to machine like a computer virus and silently change election outcomes*.  And in every single case, we've found ways for attackers to sabotage machines and to steal votes…"  Unknown Speaker: "When you say hacked, what were they able to do once they gained access to the machines?  Douglas Lute: All sorts of things, *they could manipulate the outcome of the vote, they could manipulate the tally.  They could delete the tally.  And they could compromise the vote in any number of ways*." (*Absolutely 9-0*, June 5, 2021 (Exhibit 41).)

**ANSWER:** Defendant incorporates by reference as if fully set forth herein responses elsewhere in this Answer related to these statements.  Defendant admits that the statements quoted in Paragraph 196 were made.  Defendant denies that Plaintiffs have accurately characterized the statements in Paragraph 196.  Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances.  Defendant further denies that OAN intended to engender any false impressions.  Defendant further denies that OAN made all the statements in Paragraph 196.  Defendant further denies that all of the statements quoted in Paragraph 196 are "of and concerning" any Smartmatic entity.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 196.

**ALLEGATION NO. 197:**

The statements that were made during the OANN programs were originally published during the programs and then republished when posted to an OANN social media platform.  The statements made on social media were originally published on the social media website (*e.g.*, Twitter or Facebook) and then republished by individuals who saw the social media posts (*e.g.*, retweeting on Twitter).  OANN anticipated the republication of its statements.  OANN intended for the republication to further disseminate its statements to a larger audience.

**ANSWER:** Plaintiffs fail to specify any statement in Paragraph 197, thus making it impossible for Defendant to know how to respond; Defendant thus denies the allegations.  To the extent further

response is required, Defendant admits that OAN sometimes cross-published across platforms and hopes to expand its audience.  Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 197.

## ALLEGATION NO. 198:

Individuals who heard and read OANN's statements were led to believe that Smartmatic's election technology and software were used to fix, rig, and steal the 2020 U.S. election in favor of Joe Biden and Kamala Harris and the Democratic Party.  OANN intended for individuals who heard or read its statements to draw that conclusion.  That conclusion was an important component of the disinformation campaign.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations relating to beliefs of individuals other than Defendant; Defendant therefore denies the allegations in the first sentence of Paragraph 198.  Defendant further denies that it engaged in a disinformation campaign.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 198.

## ALLEGATION NO. 199:

OANN's statements and implication that Smartmatic's election technology and software were used to fix, rig and steal the 2020 U.S. election are demonstrably false and factually inaccurate.  First, Smartmatic's election technology and software were not used to fix, rig, or steal the 2020 U.S. election for Joe Biden and Kamala Harris and the Democratic Party.  They were not used to fix the election.  They were not used to rig the election.  They were not used to steal the election.

**ANSWER:** Defendant denies that Paragraph 199 accurately characterizes statements made by OAN about any Smartmatic entity.  Defendant further denies that OAN knowingly or with reckless disregard for the truth made any false statements of and concerning any Smartmatic entity.  Defendant further denies that no one attempted to use any election technology or software associated with or in any way connected to any Smartmatic entity to interfere with the 2020 U.S.

election.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in

Paragraph 199.

## ALLEGATION NO. 200:

Second, Smartmatic's election technology and software were used only in Los Angeles County during the 2020 U.S. election.  They were not used in any other county or State during the 2020 U.S. election.  Smartmatic's election technology and software could not have been used to fix, rig, or steal the election because they were not used anywhere during the election outside Los Angeles County.  No one has claimed that it was a surprise that Joe Biden and Kamala Harris had more votes in Los Angeles County than the Republican candidates.

**ANSWER:** Defendant admits that one or more Smartmatic entities provided election technology

and services to Los Angeles County during the 2020 U.S. election.  Defendant denies the remaining

allegations in Paragraph 200.

## ALLEGATION NO. 201:

Third, Smartmatic's election technology and software were not used in any county or state with close outcomes during the 2020 U.S. election.  Smartmatic's election technology and software were not used in Nevada, Arizona, Georgia, Pennsylvania, Michigan, Wisconsin, or Texas. Smartmatic's election technology and software were not used in any counties in these states. Smartmatic's election technology and software could not have been used to fix, rig, or steal the election in these states (or counties) because they were not used in those states and counties.

**ANSWER:** Defendant denies the allegations in Paragraph 201.

## ALLEGATION NO. 202:

Fourth, Smartmatic's election technology and software were not used by any other voting technology company during the 2020 U.S. election.  Smartmatic's election technology and software were not used by another company in Nevada, Arizona, Georgia, Pennsylvania, Michigan, Wisconsin, or Texas (or any counties within these states).  Smartmatic's election technology and software could not have been used by another company to fix, rig, or steal the 2020 U.S. election because no other company used Smartmatic's election technology and software.

**ANSWER:** Defendant denies the allegations in Paragraph 202.

## ALLEGATION NO. 203:

Fifth, Smartmatic did not work with or assist any other voting technology company during the 2020 U.S. election.  Smartmatic did not count the votes for any other voting technology company, including Dominion.  Smartmatic's election technology and software were not involved in collecting, tabulating or counting any votes outside of Los Angeles County.  Smartmatic's

election technology and software could not have been used to manipulate the vote in favor of one candidate over another because its election technology and software were not used outside Los Angeles County.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first and second sentences of Paragraph 203 and therefore denies the same.  Defendant further denies the remaining allegations of Paragraph 203.

### C. OAN truthfully reported allegations that election equipment and software with ties to Smartmatic-related entities facilitated foreign access.

**ALLEGATION NO. 204:**

OANN was not satisfied with casting Smartmatic as a voluntary and willful participant in a widespread fraud to steal the 2020 U.S. election.  OANN also told its viewers and readers that Smartmatic's election technology and software were compromised or hacked during the 2020 U.S. election.  Specifically, OANN told people that Smartmatic's election technology and software has a "back door" and other tools that allow for easy manipulation of votes.  OANN also scared its viewers and readers into thinking that Smartmatic sent votes to foreign countries for manipulation during the 2020 U.S. election.  The impression that OANN attempted to leave was that U.S. votes were leaving U.S. soil and that this meant that U.S. votes were being manipulated by foreign, anti-U.S. forces.

**ANSWER:** Defendant denies that Paragraph 204 accurately characterizes any statements made by OAN about any Smartmatic entity.  Defendant further denies the allegations in Paragraph 204 because they fail to comply with the *in haec verba* doctrine.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 204.

**ALLEGATION NO. 205:**

Below are some of the statements that OANN made to create the misimpression that Smartmatic's election technology and software were compromised or hacked during the 2020 U.S. election and sent votes overseas to be compromised or hacked:

a. Kara McKinney: "So this begs the question, *why are we using foreign companies to count our votes in the first place, and allowing that information to reportedly flow through servers overseas*?  And secondly, if even Democrats knew about these vulnerabilities with Dominion and Smartmatic years before this election, then why did they allow them to be used in so many states?  Why didn't more states follow in the lead of Texas in saying no?  Perhaps that means they were chosen by election officials precisely because they are so flawed." (Tipping Point, November 17, 2020 (Exhibit 6).)

b.   Dan Ball: "[O]bviously ***these security folks at Dominion that set up the systems in the individual states, they can just do a little tweak here, a little tweak there to the program.  It can make it so minor, to flip votes***, but enough to make your guy win [.]"  (Real America, November 19, 2020 (Exhibit 10).)

c.   Stephanie Hamill: "[W]hat really stood out to me in the press conference yesterday was Sidney Powell talking about the voting machines, ***suggesting that our votes are being counted overseas***, that Dominion Voting Machines and Smartmatic use software that are controlled by foreign interests[.]"   (*In Focus with Stephanie Hamill*, November 20, 2020 (Exhibit 17).)

d.   Joe diGenova: "I noticed that Dominion software and its other entities issued a statement today saying they're not controlled by foreign entities, etc., etc.  ***They never denied that the votes are actually counted by computers in Frankfurt, Germany and Barcelona, Spain. A sk yourself this question: Why would any state hire a company which is going to have its vote tallies done in Frankfurt, Germany and Barcelona, Spain***, where the tallying cannot be monitored by any American citizen during the process, and where tabulations can be altered without the knowledge of anybody?"  (*In Focus with Stephanie Hamill*, November 20, 2020 (Exhibit 17).)

e.   Joe diGenova: "**[T]hese computer systems have a back door so they can be hacked**."  (In Focus with Stephanie Hamill, November 20, 2020 (Exhibit 17).)

f.   Kara McKinney: "It [] blows my mind [] that [] years and years of Russia this, Russia that, foreign interference and foreign hacking and meddling in our elections, and then here all these bids go out to foreign-based companies . . . ***We hear about some servers possibly overseas, that at some of this data is being routed through***, [] you know what's going on there?  It's so confusing."  (*Tipping Point*, November 22, 2020 (Exhibit 18).)

g.   Kyle Becker: "It is confusing because [] there are foreign companies that have stations in the United States. [] SGO Smartmatic has been involved in this and they're from London, they have ties to Venezuela, they've been participating in Venezuela.  ***There are ties to [] Germany, [] election reporting servers going through [] there***. All of this is being denied, but ***there's absolutely zero transparency. These source codes that are used in these [] voting machines are secret and proprietary***[.]"  (*Tipping Point*, November 22, 2020 (Exhibit 18).)

h.   OAN Newsroom: "In both suits, Powell said ***the fraud mainly took place in the form of 'old-fashioned ballot stuffing' which was rendered 'virtually invisible' by Dominion and Smartmatic's computer software*** . . . This was possible due to a core design in Smartmatic's software that allows it to hide any manipulations to votes during an audit. The brain of the system, called the 'central accumulator,' does not provide an audit log that shows the date and time stamps of all inputted data. This allows unauthorized users to add or modify any data stored in tabulation

-143-

machines with no risk of getting caught."   (OANN Website, *Sidney Powell Launches Election Lawsuits in Mich. And Ga.*, November 27, 2020 (Exhibit 21).)

i.      Tom Fitton: "I think there's strong evidence that something went on in Venezuela with the Smartmatic computer system that was used to conduct the election there that Chávez obviously stole.  And it's a fair question to ask whether the—something similar is able to be done in the United States using similar systems, whether it be Smartmatic, or the Dominion version of electronic computer software.  *We're hearing witness after witness highlight the security weaknesses of these systems*." (*Breaking News Live*, December 1, 2020 (Exhibit 26).)

j.      Tom Fitton: "And it's a fair question to ask whether the–something similar is able to be done in the United States using similar systems, whether it be Smartmatic, or the Dominion version of electronic computer software . . . *the numbers popping up in unusual ways, in Pennsylvania and Michigan, where you get these huge spikes in numbers occurring in the middle of the night*."  (*Breaking News Live*, December 1, 2020 (Exhibit 26).)

k.      Michael Johns: "Look, I think we have to look at *the Dominion and Smartmatic issues as almost a national crisis*.  We have evidence that is both suggestive and some that is indisputable.  *Affidavits that have been signed as it relates to the technology and its vulnerability.  And the deeper [] we begin to look into this, the more that's being revealed that's hugely suggestive of the technical vulnerabilities* and also the issue of its ownership status[.]"  (Tipping Point, December 7, 2020 (Exhibit 33).)

l.      Clay Clark: "We all went in and voted [] using hardware, [] called Dominion, the Canadian owned hardware company, that tabulates your votes, has Chinese parts on it.  Step two, the software, known as Smartmatic or Sequoia, that software was originally coded out by Communist Venezuelans.  Step three, *for added integrity, your votes were shipped to Frankfurt, Germany, where your votes were stored on Amazon servers*.  And then step four, *in Barcelona, Spain, the votes were somehow tabulated there, and there was a little feature on the software that allows people to switch votes*." (*News Room*, 3PM, December 21, 2020 (Exhibit 34).)

m.     Mary Fanning: "Now, red has been the most severe attacks, *those lines are all coming out of China.  Those are the most severe attacks on our election system . . . They knew, in fact that our election machines were open for hacking*, it's important to understand that there are prismatic scoring algorithms that they knew about that entered the election, and they steal the *vote at the transfer points*.  So at the point where the election, the vote is leaving the Secretary of State's office and these machines, that is the point at which the vote is stolen at the transfer points." (Absolute Proof, Feb. 5, 2021 (Exhibit 35).)

n.      Michael Lindell: "We have them from November 1 all the way through the election, and *shows them a massive attack on our country by China* and other country.

> ***China did 60% of this. It was all done through Dominion machines*** and []
> Smartmatic machines." (Real America, Feb. 8, 2021 (Exhibit 36).)

o.  Michael Lindell: "***100% it can only be done by machines.***  I can't stress that
    enough." Douglas Frank: "Absolutely." Michael Lindell: "***And they all rhyme with
    Dominion, or Smartmatic ES&S, all of them*** . . . [W]e have enough evidence that
    we're gonna dump for the next six weeks on the whole world and the country that
    by the time it gets to Supreme Court, everyone's gonna, they're all nine going to
    go 9-0 yes, so our country's been attacked.  ***We have been attacked by foreign
    actors, starting with China***, and with help of domestic actors here that you know,
    they had to be let in…" (*Scientific Proof*, Apr. 3, 2021 (Exhibit 38).)

p.  Michael Lindell: "***[T]his was 100% an attack by China on our country through
    these machines***." (Absolutely 9-0, June 5, 2021 (Exhibit 41).)

q.  Michael Lindell: "But I wanted to get on here and explain to everyone, ***this was an
    attack by China, on our country through these Dominion and these other
    machines***, where, and they just hacked in, ***a cyber attack hacked into our election***
    and flipped it to everyone, anyone that they wanted to win."  (Absolutely 9-0,
    June 5, 2021 (Exhibit 41).)

r.  Michael Lindell: "This is why, when we say that Donald Trump really won this
    election by like almost 80 million to 68 million for Biden, how can you switch tens
    of millions of votes?  ***It had to be done with computers, it had to be done with the
    machines, through these Dominion and through all these machines, and China,
    China did it***.  It's a cyber attack of historical proportions." (*Absolutely 9-0*, June 5,
    2021 (Exhibit 41).)

**ANSWER:** Defendant incorporates as if fully set forth herein responses elsewhere in this Answer

related to these statements.  Defendant admits that the statements quoted in Paragraph 205 were

made.  Defendant denies that OAN intended to engender misimpressions.  Defendant further

denies that Plaintiffs have accurately characterized the quoted statements when taken in context

and viewed wholistically.  Defendant further denies that the transcription relied on by Plaintiffs is

complete and accurate in all instances.  Defendant further denies that all of the quoted statements

are "of and concerning" any Smartmatic entity.  Defendant further denies that OAN engaged in

knowing falsity or reckless disregard for the truth with respect to any of the quoted statements.

Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 205.

**ALLEGATION NO. 206:**

The statements that were made during the OANN programs were originally published during the programs and then republished when posted to an OANN social media platform. The statements made on social media were originally published on the social media website (*e.g.*, Twitter or Facebook) and then republished by individuals who saw the social media posts (*e.g.,* retweeting on Twitter). OANN anticipated the republication of its statements. OANN intended for the republication to further disseminate its statements to a larger audience.

**ANSWER:** Plaintiffs fail to specify any statement in Paragraph 206, thus making it impossible for Defendant to know how to respond; Defendant thus denies the allegations. To the extent further response is required, Defendant admits that OAN sometimes cross-published across platforms and hopes to expand its audience. Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 206.

**ALLEGATION NO. 207:**

Individuals who heard and read OANN's statements were led to believe that Smartmatic's election technology and software were compromised or hacked during the 2020 U.S. election and sent votes overseas to be compromised or hacked. OANN intended for individuals who heard or read their statements to draw that conclusion. That conclusion was an important component of the disinformation campaign.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations relating to beliefs of individuals other than Defendant; Defendant therefore denies the allegations in the first sentence of Paragraph 207. Defendant further denies that it engaged in a disinformation campaign. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 207.

**ALLEGATION NO. 208:**

OANN's statements and implication that Smartmatic's election technology and software were compromised or hacked during the 2020 U.S. election and sent votes overseas to be compromised or hacked are demonstrably false and factually inaccurate. First, Smartmatic's election technology and software were not compromised or hacked during the 2020 U.S. election.

There is no evidence of cyber-security problems in connection with the election in Los Angeles County, which is the only county where Smartmatic's election technology and software were used during the 2020 U.S. election.

**ANSWER:** Defendant denies that Paragraph 208 accurately characterizes statements made by OAN about any Smartmatic entity. Defendant further denies that OAN knowingly or with reckless disregard for the truth made any false statements of and concerning any Smartmatic entity. Defendant further denies that no one attempted to use any election technology or software associated with or in any way connected to any Smartmatic entity to interfere with the 2020 U.S. election. Defendant further denies that no technology or software associated with or in any way connected to any Smartmatic entity was not compromised or hacked during the 2020 U.S. election. Defendant further denies that there was no evidence of cyber-security problems in connection with the election in Los Angeles County. Defendant further denies that Los Angeles County was the only one during the 2020 U.S. election that used technology or software in any way associated with or connected to any Smartmatic entity. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 208.

**ALLEGATION NO. 209:**

Second, Smartmatic's election technology and software does not have a "back door" that allows votes to be changed, manipulated, or altered in real-time or at all. This is true of the election technology and software that Smartmatic used during the 2020 U.S. election in Los Angeles County. It is also true of the election technology and software that Smartmatic has developed over the years.

**ANSWER:** Defendant denies the allegations in Paragraph 209.

**ALLEGATION NO. 210:**

Third, Smartmatic's election technology and software does not have a built-in functionality that allows for the overriding of security features. This is true of the election technology and software that Smartmatic used during the 2020 U.S. election in Los Angeles County. It is also true of the election technology and software that Smartmatic has developed over the years.

**ANSWER:** Defendant denies the allegations in Paragraph 210.

**ALLEGATION NO. 211:**

Fourth, Smartmatic's election technology and software ensures auditability of election results.  Auditability is one of the primary features of Smartmatic's election technology and software.  This is true of the election technology and software that Smartmatic used during the 2020 U.S. election in Los Angeles County.  It is also true of the election technology and software that Smartmatic has developed over the years.

**ANSWER:** Defendant denies the allegations in Paragraph 211.

**ALLEGATION NO. 212:**

Fifth, Smartmatic's election technology and software did not send votes to foreign countries for counting, tabulation or manipulation during the 2020 U.S. election.  Smartmatic's election technology and software were used in Los Angeles County.  Votes that were cast in Los Angeles County were counted by election authorities of Los Angeles County in the county.

**ANSWER:** Defendant admits the allegation in the penultimate sentence of Paragraph 212 but

denies that technology and software associated with or connected to any Smartmatic entity or

Smartmatic-affiliated entity were not used elsewhere in the 2020 U.S. election.  Defendant is

without knowledge or information sufficient to form a belief as to the truth of the allegation in the

last sentence in Paragraph 212 and therefore denies the same.  Defendant denies the remaining

allegations in Paragraph 212.

**ALLEGATION NO. 213:**

Sixth, Smartmatic's election technology and software were not used by any other voting technology company during the 2020 U.S. election. Smartmatic's election technology and software were not used by another company in Nevada, Arizona, Georgia, Pennsylvania, Michigan, or Wisconsin (or any counties within these states).  Smartmatic's election technology and software could not have been used by another company to count votes because no other company used Smartmatic's election technology and software.

**ANSWER:** Defendant denies the allegations in Paragraph 213.

**ALLEGATION NO. 214:**

Seventh, Smartmatic did not work with or assist any other voting-technology company during the 2020 U.S. election.  Smartmatic did not count the votes for any other voting- technology company, including Dominion.  Smartmatic's election technology and software were not involved

in collecting, tabulating, or counting any votes outside of Los Angeles County. Smartmatic could not have counted votes in a foreign country for another company because Smartmatic did not count votes for another company in the 2020 U.S. election.

**ANSWER:** Defendant is without sufficient knowledge or information to form a belief as to the truth of the statements in the first two sentences of Paragraph 214 and thus denies them. Defendant further denies the remaining allegations in Paragraph 214.

**ALLEGATION NO. 215:**

Eighth, Smartmatic did not use servers located outside the United States for the 2020 U.S. election. Smartmatic could not have used servers located outside the United States to manipulate votes because Smartmatic did not tabulate votes, nor did Smartmatic have any servers outside the United States that were involved in the 2020 U.S. election. Smartmatic could not have stored votes in a foreign-based server for another company during the 2020 U.S. election because no such server exists.

**ANSWER:** Defendant denies the allegations in Paragraph 215.

**ALLEGATION NO. 216:**

Ninth, Smartmatic's election technology and software used in Los Angeles County in the 2020 U.S. election were not connected to the internet. Votes cast using Smartmatic's election technology and software were hand-delivered after paper ballots were printed from Smartmatic's machines. Smartmatic could not have sent votes to a foreign country for manipulation because Smartmatic does not count or tabulate votes; this is done by the election authorities of Los Angeles County. Further, Smartmatic's voting machines in Los Angeles were not connected to the internet.

**ANSWER:** Defendant denies the allegations in Paragraph 216.

> **D.      OAN truthfully reported allegations that Smartmatic-related entities were founded and funded by foreign entities.**

**ALLEGATION NO. 217:**

OANN introduced xenophobia into its disinformation campaign. OANN's story included describing Smartmatic as a Venezuelan company—a socialist and one-time communist-controlled country. It included stating that Smartmatic was founded by and for Hugo Chávez—the deceased socialist head of Venezuela. And it included stating that Smartmatic received funding from socialist and communist countries like China and Cuba. OANN intended to portray Smartmatic as being linked to socialism and communism to make its role in the 2020 U.S. election appear more nefarious.

**ANSWER:** Defendant denies that Paragraph 217 accurately characterizes OAN reporting. Defendant further denies that it engaged in xenophobia. Defendant further denies that it engaged

in a disinformation campaign.  Defendant denies any remaining allegations by Plaintiffs against

Defendant in Paragraph 217.

## ALLEGATION NO. 218:

Below are some of the statements that OANN made to create the impression that Smartmatic was a Venezuelan company that was founded and funded by corrupt dictators from socialist and communist countries:

a.  Mike Dinow: "Report suggests voting machines systems funded by George Soros *were used to install a socialist regime in Venezuela back in the early 2000s*. According to WikiLeaks, *UK based companies Smartmatic had a campaign staffer for Hugo Chávez on its board* back in 2000.  Now *the company reportedly meddled with a 2004 Venezuela election to secure a win for the Chávez regime.*" (News Room, 11PM, November 16, 2020 (Exhibit 5).)

b.  On-Screen Graphic: "Report: Soros-Backed Firm Installed Socialism in Venezuela; *Dominion-Linked Smartmatic Had Chavez Aide on Board*, Sold Rigged Election Tech to U.S. States." (*News Room*, 11PM, November 16, 2020 (Exhibit 5).)

c.  Mike Dinow: "The Gateway Pundit report also says *Smartmatic is partially owned by the Maduro regime* and George Soros."  (*News Room*, 11PM, November 16, 2020 (Exhibit 5).)

d.  Tom Fitton: "**[T]he Smartmatic system** [,] the company **was set up by buddies of Hugo Chavez.**"  (Tipping Point, November 17, 2020 (Exhibit 6).)

e.  Rudy Giuliani: "**The company counting our vote**, with control over our vote, **is owned by two Venezuelans who are allies of Chávez.**"  (Breaking News Live, November 19, 2020 (Exhibit 9).)

f.  Patrick Hussion: "Rudy Giuliani says the Democrat Party *conspired with socialist regimes overseas to steal this year's election from the President.*  In a news conference, the President's legal team said that they have evidence that Dominion Voting Systems and the Smartmatic software were used to switch votes from President Trump to Joe Biden.  They add *the technology is controlled by allies of Venezuela's Maduro regime.*" (*Breaking News Live*, November 19, 2020 (Exhibit 9).)

g.  On-Screen Graphic: "Giuliani: Dems & Venezuela Used Dominion Software to Steal Election; Say Dominion's *Smartmatic Technology Co- Owned by Maduro Regime Allies*, Soros Involved as Well." (*Breaking News Live*, November 19, 2020 (Exhibit 9).)

h.  OAN Newsroom: "The President's lawyers are weighing in, once again, on election fraud during the 2020 White House race.  While speaking in D.C. Thursday, they claimed votes were hacked and ballots were switched from President Trump to Joe

Biden through *technology that was developed in Venezuela*.  Rudy Giuliani, President Trump's personal lawyer, said *the company funding the technology has close ties to known communist leaders*.  '*The company counting our vote, with control over our vote, is owned by two Venezuelans who were allies of Chavez or present allies of Maduro*,' he stated."  (OANN Website, *President's Lawyers Say Communist-Funded Election Software Responsible For Alleged Voting Irregularities*, November 20, 2020 (Exhibit 11).)

i.    On-Screen Graphic: "President's Lawyers Claim *Communist-Funded Election Software* Responsible for Alleged Voting Irregularities." (*News Room*, 12AM, November 20, 2020 (Exhibit 14).)

j.    Rudy Giuliani: "*The company counting our vote, with control over our vote, is owned by two Venezuelans who are allies of Chavez, are present allies of Maduro*[.]"  (News Room, 12AM, November 20, 2020 (Exhibit 14).)

k.    OANN Reporter: "Most claims center around the Canadian-made Dominion Voting Systems and the *Venezuelan-made Smartmatic Systems. Sidney Powell says the same technology was used to secure a victory for Hugo Chávez in Venezuela* and could have been used across the country."  (News Room, 12AM, November 20, 2020 (Exhibit 14).)

l.    Kyle Becker: "It is confusing because [] *there are foreign companies that have stations in the United States . . . [T]here's you know SGO Smartmatic has been involved in this and they're from London, they have ties to Venezuela, they've been participating in Venezuela*."    (Tipping Point, November 22, 2020 (Exhibit 18).)

m.    Samantha Lomibao: "This after *reports found Maduro allies were meddling in the latest U.S. election through a company called Smartmatic*."  (News Room, 6PM, November 22, 2020 (Exhibit 19).)

n.    Rudy Giuliani: "*Smartmatic*, which is the ultimate software, had switched 6,000 votes.  It switched 6,000 votes from Trump to Biden.  So the poor people in Michigan that went in to vote for Trump ended up voting for Biden because *the machine and the software that originates [] with Venezuela, a dictatorship*, changed their vote without their ever knowing it." (*News Room*, 6PM, November 22, 2020 (Exhibit 19).)

o.    Samantha Lomibao: "The [Organization of American States] says *any election that involves Maduro officials is a sham* and must be not recognized by any civilized country."  (*News Room*, 6PM, November 22, 2020 (Exhibit 19).)

p.    J. Michael Waller: "*[W]e have an eyewitness account of an individual who was a trusted confidant of the then Cuban and Russian backed dictator of Venezuela who personally designed the parameters of a software [] whose whole purpose was to manipulate votes to ensure that he would win an election*.  This is crucial because it's not just a foreign Banana Republic dictator, this is someone who's

backed by [] Cuban intelligence Secret Service around him and Russian secret police around him, who's designing this material that American voting tabulation companies used."  (Tipping Point, November 23, 2020 (Exhibit 20).)

q.     Kara McKinney: "[W]ould it be accurate to describe Smartmatic as a shell company?  That there's a lot of players—a lot of the waters here are muddy so you can't necessarily get back to who owns what?  Would that be correct?" J. Michael Waller: "Right, yes, *we do know that it's owned by two Venezuelan nationals who were aligned with the Venezuelan dictatorship*.  We know that much, but the company is hiding who else owns them, and there's no transparency at all.  Yet our own voting officials think it's just fine." (*Tipping Point*, November 23, 2020 (Exhibit 20).)

r.     OAN Newsroom: "In both suits, Powell said the fraud mainly took place in the form of 'old-fashioned ballot stuffing' which was rendered 'virtually invisible' by Dominion and Smartmatic's computer software.  According to the attorney*, both programs were created and funded at the behest of foreign oligarchs, specifically to rig elections*."  (OANN Website, *Sidney Powell Launches Election Lawsuits in Mich. And Ga.*, November 27, 2020 (Exhibit 22).)

s.     OAN Newsroom: "*The strategy was first developed and used by Venezuelan Dictator Hugo Chavez to ensure he never lost an election*.  This was possible due to a core design in Smartmatic's software that allows it to hide any manipulations to votes during an audit . . .  Smartmatic CEO Antonio Mugica even admitted the software was prone to tampering after *a similar incident in Venezuela back in 2017*."  (OANN Website, *Sidney Powell Launches Election Lawsuits in Mich. And Ga.*, November 27, 2020 (Exhibit 22).)

t.     Michael Johns: "[C]lose to ten different means through which this election was fraudulently manipulated.  The *most complicated, of course, which is the Dominion and Smartmatic systems* . . .  [A]nd to go out and acquire this system, knowing its history, *knowing its attachment [and] association with the dictatorship in Venezuela* and the use that it played in the Argentina manipulations[,] in the Philippines and elsewhere, including in Chicago, is an inexcusable decision." ( *Tipping Point*, November 28, 2020 (Exhibit 25).)

u.     Tom Fitton: "I think there's strong evidence that *something went on in Venezuela with the Smartmatic computer system that was used to conduct the election there that Chávez obviously stole*.  And it's a fair question to ask whether the–something similar is able to be done in the United States using similar systems, whether it be Smartmatic, or the Dominion version of electronic computer software.  We're hearing witness after witness highlight the security weaknesses of these systems." (Breaking News Live, December 1, 2020 (Exhibit 26).)

v.     Kara McKinney: "So here you have Dominion, which is a foreign-owned company and uses computer chips made in China, *and Smartmatic, which has ties to Soros*

*and the Castro regime in Venezuela*, involved in US elections." (*Tipping Point*, December 1, 2020 (Exhibit 27).)

w.    Tom Fitton: "I'm not at all confident that our election security is secure enough, in terms of someone on the inside, being able to manipulate the systems. [] [W]hat was very interesting about being reporting, before the election, that *Chavez had manipulated the election results using electronic computer systems, named*– namely *Smartmatic, in Venezuela*.  And it's a fair question to ask whether those results, whether results using similar systems could be similarly manipulated." (*In Focus with Stephanie Hamill*, December 3, 2020 (Exhibit 28).)

x.    OANN Reporter: "Meantime, *Smartmatic has faced controversy in the past with allegations of rigging the 2013 election in Venezuela, on behalf of embattled socialist President Nicolás Maduro*."  (News Room, 9AM, December 5, 2020 (Exhibit 29).)

y.    OAN Newsroom: "Smartmatic has faced controversy in the past with allegations of *rigging the 2013 election in Venezuela to favor socialist President Nicolas Maduro*."  (OANN Website, Chairman Of Smartmatic's Parent Company To Become President Of George Soros's 'Open Society Foundations', December 7, 2020 (Exhibit 30).)

z.    Clay Clark: "We all went in and voted [] using hardware, [] called Dominion, the Canadian owned hardware company, that tabulates your votes, has Chinese parts on it.  Step two, *the software, known as Smartmatic or Sequoia, that software was originally coded out by Communist Venezuelans*.  Step three, for added integrity, your votes were shipped to Frankfurt, Germany, where your votes were stored on Amazon servers.  And then step four, in Barcelona, Spain, the votes were somehow tabulated there, and there was a little feature on the software that allows people to switch votes." (*News Room*, 3PM, December 21, 2020 (Exhibit 34).)

**ANSWER:** Defendant incorporates by reference as if fully set forth herein its responses elsewhere in this Answer related to these quoted statements.  Defendant admits that the quoted statements were made.  Defendant denies that OAN intended to create false impressions.  Defendant denies that Plaintiffs characterize the quoted statements accurately, particularly when taken in context and wholistically.  Defendant further denies that the transcription relied on by Plaintiffs is complete

and accurate in all instances.  Defendant denies any remaining allegations by Plaintiffs against

Defendant in Paragraph 218.

**ALLEGATION NO. 219:**

The statements that were made during the OANN programs were originally published during the programs and then republished when posted to an OANN social media platform.  The statements made on social media were originally published on the social media website (*e.g.*, Twitter or Facebook) and then republished by individuals who saw the social media posts (*e.g.,* retweeting on Twitter).  OANN anticipated the republication of its statements. OANN intended for the republication to further disseminate its statements to a larger audience.

**ANSWER:** Plaintiffs fail to specify any statement in Paragraph 219, thus making it impossible for

Defendant to know how to respond; Defendant thus denies the allegations.  To the extent further

response is required, Defendant admits that OAN sometimes cross-published across platforms and

hopes to expand its audience.  Defendant denies any remaining allegations by Plaintiffs against

Defendant in Paragraph 219.

**ALLEGATION NO. 220:**

Individuals who heard and read OANN's statements were led to believe that Smartmatic was founded and funded by corrupt dictators from socialist and communist countries. OANN intended for individuals who heard or read its statements to draw that conclusion.  That conclusion was an important component of the disinformation campaign.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations relating to beliefs of individuals other than Defendant; Defendant therefore

denies the allegations in the first sentence of Paragraph 220.  Defendant further denies that it

engaged in a disinformation campaign.  Defendant further denies any remaining allegations by

Plaintiffs against Defendant in Paragraph 220.

**ALLEGATION NO. 221:**

OANN's statements and implication that Smartmatic was founded and funded by corrupt dictators from socialist and communist countries are demonstrably false and factually inaccurate. First, Smartmatic USA Corp. is an American company.  Smartmatic USA Corp. was founded in Florida and incorporated in Delaware in 2000.

**ANSWER:** Defendant admits that "Smartmatic USA Corp." was incorporated in Delaware in 2000. Defendant denies that Paragraph 221 accurately characterizes statements made by OAN about any Smartmatic entity. Defendant further denies that OAN knowingly or with reckless disregard for the truth made any false statements of and concerning any Smartmatic entity. Defendant further denies that no Smartmatic entity or Smartmatic-affiliated entity has ties to Venezuela or to any election of Hugo Chavez. Defendant further denies that no Smartmatic entity or Smartmatic-affiliated entity was founded before 2000 and denies that the first Smartmatic entity or Smartmatic-affiliated entity was founded in Florida. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 221.

**ALLEGATION NO. 222:**

Second, Smartmatic USA Corp. is not owned, operated, or controlled by a Venezuelan company. Smartmatic USA Corp. is a wholly-owned subsidiary of a Netherlands-based and incorporated company, which is a wholly-owned subsidiary of a United Kingdom-based and incorporated company. The Netherlands is not a socialist or communist country. The United Kingdom is not a socialist or communist country.

**ANSWER:** Defendant denies that no Venezuelans control one or more Smartmatic or Smartmatic-affiliated entities. Defendant lacks sufficient information or knowledge to form a belief as to how "Smartmatic USA Corp." relates to other Smartmatic entities or Smartmatic-affiliated entities and therefore denies those allegations. Defendant further states that political characterizations of countries are vague and call for legal conclusions, thus no response to those allegations is required, but to the extent a response is required, Defendant states that reasonable minds could differ on the degree to which the Netherlands or the United Kingdom is influenced by socialism or communism. Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 222.

**ALLEGATION NO. 223:**

Third, Smartmatic was founded by Antonio Mugica and Roger Piñate in Florida in 2000. Smartmatic was not founded or funded by Hugo Chávez. Smartmatic was not founded or funded

by the Venezuelan government.  No member of Hugo Chávez's administration sat on Smartmatic's Board or in any other position for Smartmatic.

**ANSWER:** Plaintiffs fail to specify what Smartmatic entity they intend to refer to in Paragraph 223, thus rendering it difficult for Defendant to respond to the allegations of Paragraph 223.  To the extent a response is nevertheless required, Defendant admits that Venezuelan nationals Antonio Mugica and Roger Piñate founded one or more Smartmatic entities, but Defendant denies that the first Smartmatic entity or Smartmatic-affiliated entity was founded in Florida in 2000.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 223 related to founding or funding by Hugo Chávez and therefore denies the same. Defendant further denies that no Smartmatic entity or Smartmatic-affiliated entity was ever funded by the Venezuelan government.  Defendant further denies that no member of Hugo Chávez's administration ever sat on the board of or held any other position with any Smartmatic entity or Smartmatic-affiliated entity.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 223.

**ALLEGATION NO. 224:**

Fourth, Smartmatic has not received funding from China or Cuba.  Smartmatic did not receive funding from China or Cuba prior to the 2020 U.S. election (nor thereafter).  Smartmatic has not provided election technology or software in connection with any election in China or Cuba.

**ANSWER:** Plaintiffs fail to specify what Smartmatic entity they intend to refer to in Paragraph 224, thus rendering it difficult for Defendant to respond to the allegations of Paragraph 224.  To the extent a response is nevertheless required, Defendant lacks sufficient information to form a belief as to the truth of these statements as to every Smartmatic entity and therefore denies these allegations.

**ALLEGATION NO. 225:**

Fifth, Smartmatic ceased participating in elections in Venezuela in 2017.  Smartmatic ceased to provide election technology and software in Venezuela after the government announced

total vote counts that differed from the actual vote count.  Smartmatic publicly revealed that the Venezuelan government had announced an inflated total vote count in 2017.

**ANSWER:** Plaintiffs fail to specify what Smartmatic entity they intend to refer to in Paragraph 225, thus rendering it difficult for Defendant to respond to the allegations of Paragraph 225.  To the extent a response is nevertheless required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 225 as to all Smartmatic entities and Smartmatic-affiliated entities and therefore denies the same.  Answering further, Defendant notes that one or more Smartmatic entities is engaged in international arbitration with Venezuela and Defendant intends to take discovery related to that in this matter.  Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 225.

> **E.** **OAN truthfully reported allegations that election equipment and software with ties to Smartmatic-related entities were designed to be manipulated in the past.**

**ALLEGATION NO. 226:**

OANN was not content portraying Smartmatic as having stolen the 2020 U.S. election. OANN decided to indict everything the company had done for the last twenty years.  OANN portrayed Smartmatic and its products as serving only one function: fixing, rigging, and stealing elections.  OANN went as far as to accuse Smartmatic of having rigged elections in other countries prior to the 2020 U.S. election.  OANN added credibility to its story about Smartmatic stealing the 2020 U.S. election for Joe Biden and Kamala Harris by telling people that the sole purpose of Smartmatic and its products is to steal elections and that Smartmatic has successfully done this before.

**ANSWER:** Defendant denies that the allegations in Paragraph 226 accurately characterize OAN's reporting.  Defendant further denies the allegations because they fail to comply with the *in haec verba* doctrine.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 226.

**ALLEGATION NO. 227:**

Below are some of the statements that OANN made to create the impression that Smartmatic's election technology and software were designed to fix, rig, and steal elections and have been used to fix, rig, and steal elections before:

a.  Alex Salvi: "The Washington Examiner reporting this week quote '**the Dominion voting systems**, which has been used in multiple state where fraud has been alleged in the 2020 U.S. election, **was rejected three times by data communications experts from the Texas Secretary of State and Attorney General's Office for failing to meet basic security standards.'  But it's not only Dominion. It's also Dominion's subsidiaries, such as Smartmatic** which was used for the Philippines elections back in 2010 and 2013." (*After Hours*, November 12, 2020 (Exhibit 1).)

b.  Elma Aksalic: "**Powell says the software dubbed Smartmatic was designed for the sole purpose of shifting voting results**."  Sidney Powell: "**It's a feature of the system that was designed with a backdoor so that people could watch in real time and calculate with an algorithm how many votes they needed to change to make the result they wanted to create.**"  (News Room, 5AM, November 16, 2020 (Exhibit 2).)

c.  Kara McKinney: "It's also a convenient lie. Given that Trump attorney, Sidney Powell, says a member of Biden's transition team is also a member of the board of directors for Smartmatic, which is a subsidiary of Dominion.  Small world I guess. **Powell claims to have evidence that proves the software was designed to rig elections**." (*Tipping Point*, November 16, 2020 (First Video) (Exhibit 3).)

d.  Mike Dinow: "Report suggests voting machines systems funded by George Soros were **used to install a socialist regime in Venezuela back in the early 2000s**. According to WikiLeaks, UK based companies Smartmatic had a campaign staffer for Hugo Chávez on its board back in 2000.  Now **the company reportedly meddled with a 2004 Venezuela election to secure a win for the Chávez regime**." (*News Room*, 11PM, November 16, 2020 (Exhibit 5).)

e.  On-Screen Graphic: "Report: Soros-Backed Firm Installed Socialism in Venezuela; Dominion-Linked Smartmatic Had Chavez Aide on Board, Sold Rigged Election Tech to U.S. States." (*News Room*, 11PM, November 16, 2020 (Exhibit 5).)

f.  Kara McKinney: "The even bigger issue at play here [is] systemic.  For example, **the voting system used in around 30 states, Dominion, and its subsidiary Smartmatic**.  It just so happens that a member of Biden's transition team, Peter Neffenger, is a member of the Board of Directors for Smartmatic.  The chairman of that company is also a board member for George Soros' Open Society Foundation. **That very same software was used a few years back to rig elections in Venezuela**." (*Tipping Point*, November 17, 2020 (Exhibit 6).)

g.  Evi Kokalari-Angelakis: "[I]n 2016 Hillary Clinton was so sure she was going to win.  **The only reason she was so sure she was going to win is because they knew Dominion and the software [] Smartmatic was in existence, and that's how they were going to get the election.**  They just didn't expect—they didn't realize how many Americans were going to vote for Donald Trump, and that's how they probably lost that election." (Real America, November 19, 2020 (Exhibit 10).)

-158-

h.      Dan Ball: "[O]bviously these security folks at Dominion that ***set up the systems in the individual states, they can just do a little tweak here, a little tweak there to the program.  It can make it so minor, to flip votes, but enough to make your guy win*** that hopefully it's not noticeable[.]"   (*Real America*, November 19, 2020 (Exhibit 10).)

i.      OANN Reporter: "Most claims center around the Canadian-made Dominion Voting Systems and the Venezuelan-made Smartmatic Systems. Sidney Powell says the same ***technology was used to secure a victory for Hugo Chávez in Venezuela*** and could have been used across the country." (*News Room*, 12AM, November 20, 2020 (Exhibit 14).)

j.      Sidney Powell: "***[O]ne of its most characteristic features [] is its ability to flip votes.*** It can set and run an algorithm that probably ran all over the country to take a certain percentage of votes from President Trump." (*News Room*, 12AM, November 20, 2020 (Exhibit 14).)

k.      Keith Trippie: "One of the things I'd love to see Sidney [Powell] and Rudy [Giuliani] do is, they need to talk to both over at Dominion and over at Smartmatic. Who were the product managers, who were the lead engineers, who were the lead developers and who were the lead testers?  Those are all people directly involved in what software features are made available and testing those features before they're out. ***One of the things I would want to know is, can you change a vote? Whether it's inside the company on the software or out at a state location where these machines are.***" (*News Room*, 6AM, November 20, 2020 (Exhibit 15).)

l.      Allan Santos: "And not only this, the Smartmatic company also used to work with Dominion, the company system that you are using here.  But it's weird how they operate . . .  ***[B]ack [in] 2018 [in Brazil], one candidate was leading, and then it stopped counting.  And after an hour or after 40 minutes, something like that, everything changed.*** And ***I saw that here.*** And I can assure you, communists love fraud election. ***They love to do fraud***[.]" (*News Room*, 3PM, November 20, 2020 (Exhibit 16).)

m.      On-Screen Graphic: "Trump Attorney Sidney Powell: ***Voting Software 'Designed to Rig Elections'***" (*In Focus with Stephanie Hamill*, November 20, 2020 (Exhibit 17).)

n.      Kara McKinney: "[S]o when it comes to this affidavit from the former Venezuelan bodyguard, what stood out to you the most?"  J. Michael Waller: "What stood out was we have an eyewitness account of an individual who was a trusted confidant of the then Cuban and Russian backed ***dictator of Venezuela, who personally designed the parameters of a software [] whose whole purpose was to manipulate votes to ensure that he would win an election***.  This is crucial because it's not just a foreign Banana Republic dictator, this is someone who's backed by [] Cuban intelligence Secret Service around him and Russian secret police around him who's

designing this material that American voting tabulation companies used." (*Tipping Point*, November 23, 2020 (Exhibit 20).)

o.  OAN Newsroom: "In both suits, Powell said the fraud mainly took place in the form of 'old-fashioned ballot stuffing' which was rendered 'virtually invisible' by Dominion and Smartmatic's computer software. ***According to the attorney, both programs were created and funded at the behest of foreign oligarchs, specifically to rig elections***." (OANN Website, *Sidney Powell Launches Election Lawsuits in Mich. And Ga.*, November 27, 2020 (Exhibit 22).)

p.  OAN Newsroom: "The strategy was first developed and used by Venezuelan Dictator Hugo Chavez to ensure he never lost an election. This was possible due to a core design in Smartmatic's software that allows it to hide any manipulations to votes during an audit . . . ***Smartmatic CEO Antonio Mugica even admitted the software was prone to tampering after a similar incident in Venezuela back in 2017***." (OANN Website, *Sidney Powell Launches Election Lawsuits in Mich. And Ga.*, November 27, 2020 (Exhibit 22).)

q.  OAN Newsroom: "This was possible due to ***a core design in Smartmatic's software that allows it to hide any manipulations to votes during an audit***. The brain of the system, called the 'central accumulator,' does not provide an audit log that shows the date and time stamps of all inputted data. This allows unauthorized users to add or modify any data stored in tabulation machines with no risk of getting caught." (OANN Website, *Sidney Powell Launches Election Lawsuits in Mich. And Ga.*, November 27, 2020 (Exhibit 22).)

r.  Michael Johns: "[C]lose to ten different means through which this election was fraudulently manipulated. The most complicated, of course, of which is the Dominion and Smartmatic systems . . . ***[C]an you point to any election anywhere in the world where these systems were utilized—or even in the United States, in Chicago [] where it has not been a factor in systematic electoral fraud?*** [] [T]his is an enormous, enormous troubling system. . . . [A]nd to go out and acquire this system knowing its history, ***knowing its attachment [and] association with the dictatorship in Venezuela and the use it played in the Argentina manipulations[,] in the Philippines and elsewhere, including in Chicago, is an inexcusable decision***." (*Tipping Point*, November 28, 2020 (Exhibit 25).)

s.  Tom Fitton: "[I]'m not at all confident that our election security is secure enough, in terms of someone on the inside, being able to manipulate the systems. [] [W]hat was very interesting about being reporting, before the election, that ***Chavez had manipulated the election results using electronic computer systems, named***– namely ***Smartmatic, in Venezuela***. And it's a fair question to ask whether those results, whether results using similar systems could be similarly manipulated." (*In Focus with Stephanie Hamill*, December 3, 2020 (Exhibit 28).)

t.  OANN Reporter: "Meantime, ***Smartmatic has faced controversy in the past with allegations of rigging the 2013 election in Venezuela***, on behalf of embattled

socialist President Nicolás Maduro." (*News Room*, 9AM, December 5, 2020 (Exhibit 29).)

u.  OAN Newsroom: "Smartmatic has faced controversy in the past with allegations of **rigging the 2013 election in Venezuela to favor socialist President Nicolas Maduro**." (OANN Website, Chairman Of Smartmatic's Parent Company To Become President Of George Soros's 'Open Society Foundations', December 7, 2020 (Exhibit 30).)

v.  Michael Johns: "Look, I think we have to look at the Dominion and *Smartmatic* issues as almost a national crisis . . . [W]e had 28 states and 2000 jurisdictions in this country, who looked at all of the available options, and mysteriously concluded that this system was the best option available to them, when there was abundant information available, including *multiple reports issued by the state of Texas, regarding its susceptibility to manipulation, and remote and in person vote manipulation*." (*Tipping Point*, December 7, 2020 (Exhibit 33).)

**ANSWER:** Defendant incorporates as if fully set forth herein all responses elsewhere in this Answer related to these quoted statements. Defendant admits that the statements quoted in Paragraph 227 were made. Defendant denies that Plaintiffs accurately characterize the quoted statements, particularly when taken in context and wholistically. Defendant further denies that the transcription relied on by Plaintiffs is complete and accurate in all instances. Defendant further denies that OAN intended to create any false impressions. Defendant further denies that all of the quoted statements are "of and concerning" any Smartmatic entity. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 227.

**ALLEGATION NO. 228:**

The statements that were made during the OANN programs were originally published during the programs and then republished when posted to an OANN social media platform. The statements made on social media were originally published on the social media website (*e.g.*, Twitter or Facebook) and then republished by individuals who saw the social media posts (*e.g.,* retweeting on Twitter). OANN anticipated the republication of its statements. OANN intended for the republication to further disseminate its statements to a larger audience.

**ANSWER:** Plaintiffs fail to specify any statement in Paragraph 228, thus making it impossible for Defendant to know how to respond; Defendant thus denies the allegations. To the extent further response is required, Defendant admits that OAN sometimes cross-published across platforms and

hopes to expand its audience.  Defendant denies any remaining allegations by Plaintiffs against

Defendant in Paragraph 228.

## ALLEGATION NO. 229:

Individuals who heard and read OANN's statements were led to believe that Smartmatic's election technology and software were designed to fix, rig, and steal elections and that Smartmatic had, in fact, fixed, rigged, or stolen elections before.  OANN intended for individuals who heard or read their statements to draw that conclusion.  That conclusion was an important component of the disinformation campaign.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations relating to beliefs of individuals other than Defendant; Defendant therefore

denies the allegations in the first sentence of Paragraph 229.  Defendant further denies that it

engaged in a disinformation campaign.  Defendant further denies any remaining allegations by

Plaintiffs against Defendant in Paragraph 229.

## ALLEGATION NO. 230:

OANN's statements and implication that Smartmatic's election technology and software were designed to fix, rig, and steal elections and have been used for that purpose before are demonstrably false and factually inaccurate.  First, Smartmatic's election technology and software were not designed to fix, rig, or steal elections.  Smartmatic's election technology and software were designed to ensure secure, reliable, and auditable elections.

**ANSWER:** Defendant denies that Paragraph 230 accurately characterizes statements made by

OAN about any Smartmatic entity.  Defendant further denies that OAN knowingly or with reckless

disregard for the truth made any false statements of and concerning any Smartmatic entity.

Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph

230.

## ALLEGATION NO. 231:

Second, Smartmatic's election technology and software have not been used to fix, rig, or steal elections.  Smartmatic's election technology and software have been used in thousands of elections over the last twenty years.  Smartmatic's election technology and software have not been used to fix, rig, or steal any of those elections.

**ANSWER:** Defendant lacks sufficient information or knowledge to form a belief as to each and every Smartmatic entity's technology and software use in each of the thousands of purported elections over the past twenty years, thus Defendant denies these allegations.  Defendant further denies that Paragraph 231 accurately characterizes statements made by OAN about any Smartmatic entity.  Defendant further denies that OAN knowingly or with reckless disregard for the truth made any false statements of and concerning any Smartmatic entity.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 231.

**ALLEGATION NO. 232:**

Third, Smartmatic's election technology and software have not been used to change votes from one candidate to another in any election.  Smartmatic's election technology and software ensures auditable elections.  No audit of an election in which Smartmatic participated has identified any instances of Smartmatic's election technology and software changing votes from one candidate to another.

**ANSWER:** Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 232 regarding every election that any Smartmatic entity or its technology or software has been involved in or the associated audits, thus Defendant denies these allegations.  Defendant further denies that all Smartmatic entities' election technology and software have universally ensured auditable elections in those elections in which the technology and software have been used.  Defendant further denies that Paragraph 232 accurately characterizes statements made by OAN about any Smartmatic entity.  Defendant further denies that OAN knowingly or with reckless disregard for the truth made any false statements of and concerning any Smartmatic entity.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 232.

**ALLEGATION NO. 233:**

Fourth, Smartmatic's election technology and software have not been used to delete or eliminate votes for a particular candidate.  Nor do any manuals used with Smartmatic's election technology and software include instructions on how votes for a particular candidate can be deleted

or eliminated by clicking and dragging, by creating folders, or otherwise. Smartmatic's election technology and software creates audit trails. Audit trails are inconsistent with the notion of deleting and eliminating votes.

**ANSWER:** Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations in Paragraph 233 regarding vote deletion, manuals, or audit trails related to all Smartmatic entities throughout their existence, thus Defendant denies these allegations. Defendant further denies that audit trails always ensure that votes are not deleted. Defendant further denies that Paragraph 233 accurately characterizes statements made by OAN about any Smartmatic entity. Defendant further denies that OAN knowingly or with reckless disregard for the truth made any false statements of and concerning any Smartmatic entity. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 233.

**ALLEGATION NO. 234:**

Fifth, Smartmatic ceased participating in elections in Venezuela in 2017. Smartmatic ceased to provide election technology and software in Venezuela after the government announced total vote counts that differed from the actual vote count. Smartmatic publicly revealed that the Venezuelan government had announced an inflated total vote count in 2017.

**ANSWER:** Plaintiffs fail to specify what Smartmatic entity they intend to refer to in Paragraph 234, thus rendering it difficult for Defendant to respond to the allegations of Paragraph 234. To the extent a response is nevertheless required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 234 as to all Smartmatic entities and therefore denies the same. Answering further, Defendant notes that one or more Smartmatic entities is engaged in international arbitration with Venezuela and Defendant intends to take discovery related to that in this matter. Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 234.

**ALLEGATION NO. 235:**

Sixth, Hugo Chávez had no role in the development or design of Smartmatic's election technology and software. Nor were Smartmatic's election technology and software developed in

coordination with Mr. Chávez. Smartmatic's election technology and software were developed to ensure secure, reliable, and auditable elections.

**ANSWER:** Plaintiffs fail to specify what Smartmatic entity they intend to refer to in Paragraph 235, thus rendering it difficult for Defendant to respond to the allegations of Paragraph 235. To the extent a response is nevertheless required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 235 as to all Smartmatic entities and Smartmatic-affiliated entities and therefore denies the same. Answering further, Defendant notes that one or more Smartmatic entities is engaged in international arbitration with Venezuela and Defendant intends to take discovery related to that in this matter. Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 235.

**ALLEGATION NO. 236:**

Seventh, Smartmatic's election technology and software did not fix, rig, or steal any election in the Philippines. Every audit of an election in the Philippines using Smartmatic's election technology and software has confirmed the election was not fixed, rigged, or stolen.

**ANSWER:** Plaintiffs fail to specify what Smartmatic entity they intend to refer to in Paragraph 236, thus rendering it difficult for Defendant to respond to the allegations of Paragraph 236. To the extent a response is nevertheless required, Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 236 as to all Smartmatic entities and Smartmatic-affiliated entities and therefore denies the same. Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 236.

**ALLEGATION NO. 237:**

Eighth, Smartmatic has never been banned or disqualified in Texas. Other voting companies may have been banned or disqualified in Texas, but not Smartmatic.

**ANSWER:** Plaintiffs fail to specify what Smartmatic entity they intend to refer to in Paragraph 237, thus rendering it difficult for Defendant to respond to the allegations of Paragraph 237. To the extent a response is nevertheless required, Defendant denies that no software or technology

connected to or associated with a Smartmatic or a Smartmatic-affiliated entity has been banned or

disqualified in Texas.  Defendant further denies any remaining allegations by Plaintiffs against

Defendant in Paragraph 237.

## FOOTNOTE NO. 8:

Smartmatic's discussion of OANN's actual malice is not an admission that Smartmatic must allege and prove OANN acted with actual malice to establish liability or recover damages.

**ANSWER:**  Defendant responds that Plaintiffs must allege and prove actual malice.

## IV.    OAN acted ethically and appropriately in its reporting.

## ALLEGATION NO. 238:

OANN knew that the statements and implications that it made about Smartmatic were false and/or it acted with reckless disregard regarding whether its statements and implications were true. OANN did not care about making truthful statements about Smartmatic.  OANN was motivated to tell a false story about how Smartmatic fixed, rigged, and stole the 2020 U.S. election for Joe Biden and Kamala Harris.

**ANSWER:** The allegations in Paragraph 238 contain legal conclusions to which no response is

required.  To the extent a response is required, Defendant denies the allegations in Paragraph 238.

## ALLEGATION NO. 239:

OANN's actual malice with respect to its statements and implications about Smartmatic is illustrated by the following facts:

- OANN had no basis for its statements about Smartmatic's role in the 2020 U.S. election.

- OANN had obvious reasons to doubt what it was saying about Smartmatic outside of the 2020 U.S. election because it had seen no evidence to support what it was saying.

- OANN had obvious reasons to doubt Ms. Powell's and Mr. Giuliani's veracity and the veracity of its many other guests, including Mr. Lindell, because no guest ever provided the "evidence" they claimed to have about Smartmatic, which confirmed none existed.

- OANN possessed or had access to a significant volume of information that contradicted the story it published about Smartmatic.  OANN either reviewed this information (and therefore knew its statements and

implications were false) or purposefully avoided reviewing this information because it did not want to know the truth.

**ANSWER:** The allegations in Paragraph 239 contain legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 239.

**ALLEGATION NO. 240:**

OANN also acted with ill will towards Smartmatic. OANN did not mind destroying Smartmatic's reputation because doing so served its financial interests. For OANN, this was not about providing fair and neutral reporting of a debate. OANN did not even try to do that. Instead, this was about destroying a company that OANN decided to portray as foreign and corrupt so it could secure more viewers and more "clicks" to its website and social media posts. OANN sought to profit from Smartmatic's ruin.

**ANSWER:** The allegations in Paragraph 240 contain legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 240.

**FOOTNOTE NO. 9:**

As noted above, references to "OANN" include its anchors, hosts, and producers. The allegations that follow, which discuss how "OANN" acted with actual malice, should be read and understood to include the anchors, hosts, and producers of the shows at issue. Those anchors, hosts, and producers knew they lacked evidence to support what they were publishing, and these individuals reviewed and/or had access to information showing that what they published was not accurate.

**ANSWER:** Defendant admits that Plaintiffs have defined "OANN" to include "anchors, hosts, and producers" but denies that such a definition is appropriate. Defendant denies the remaining allegations in Footnote No. 9.

A.   **OAN had support for its reporting regarding election equipment and software with ties to the Smartmatic-related entities.**

**ALLEGATION NO. 241:**

OANN spread a story about Smartmatic and its election technology and software that OANN knew was fabricated.

**ANSWER:** Defendant denies the allegations in Paragraph 241.

      **1.**      **OAN had sources who established a connection between election equipment and software with ties to Smartmatic-related entities and the 2020 U.S. election.**

**ALLEGATION NO. 242:**

There is one irrefutable fact that undermines nearly everything that OANN said about Smartmatic during its disinformation campaign: Smartmatic's only role in the 2020 U.S. election was as a provider of election technology and software to Los Angeles County.  This fact was known to OANN or readily ascertainable, and it puts the lie to nearly everything it said.

**ANSWER:** Defendant denies the allegations in Paragraph 242.

**ALLEGATION NO. 243:**

OANN stated and implied that Smartmatic's election technology and software were widely used in the 2020 U.S. election, including in states with close outcomes.  OANN did not have any source for this statement and implication because Smartmatic's election technology and software were only used in Los Angeles County.

**ANSWER:** Defendant admits technology and software connected to or associated with one or more Smartmatic entities or Smartmatic-affiliated entities were widely used in the 2020 U.S. election, including in states with close outcomes.  Defendant denies the remaining allegations in Paragraph 243.

**ALLEGATION NO. 244:**

OANN stated and implied that Dominion used Smartmatic's election technology and software during the 2020 U.S. election.  OANN did not have any source for this statement and implication because Dominion did not use Smartmatic's election technology and software during the 2020 U.S. election.

**ANSWER:** Defendant admits that Dominion used technology and software connected to or associated with one or more Smartmatic entities or Smartmatic-affiliated entities during the 2020 U.S. election.  Defendant denies the remaining allegations in Paragraph 244.

**ALLEGATION NO. 245:**

OANN stated and implied that Smartmatic fixed, rigged, and stole the 2020 U.S. election for Joe Biden and Kamala Harris and the Democratic Party.  OANN did not have any source or evidence for this statement and implication because Smartmatic's election technology and

software were not used in any state other than California and were not used in any of the states with close outcomes.

**ANSWER:** Defendant denies that Plaintiffs have accurately characterized statements by OAN about the 2020 U.S. election, particularly when those statements are taken in context and wholistically.  Defendant further denies the first sentence of the allegations in Paragraph 245 because it fails to comply with the *in haec verba* doctrine.  Defendant denies the remaining allegations by Plaintiffs against Defendant in Paragraph 245.

**ALLEGATION NO. 246:**

OANN stated and implied that Smartmatic's election technology and software were compromised or hacked during the 2020 U.S. election and sent votes overseas to be compromised or hacked.  OANN did not have any source for this statement and implication because (1) there were no cyber-security concerns with the election in Los Angeles County and (2) the votes in Los Angeles County were counted and tabulated by election authorities of Los Angeles County in the county.

**ANSWER:** Defendant denies that Plaintiffs have accurately characterized statements by OAN about the 2020 U.S. election, particularly when those statements are taken in context and wholistically.  Defendant further denies the first sentence of the allegations in Paragraph 246 because it fails to comply with the *in haec verba* doctrine.  Defendant further denies there were no cyber-security concerns with the election in Los Angeles County.  Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegation about vote counting and tabulation in Los Angeles County and thus denies those allegations.  Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 246.

**ALLEGATION NO. 247:**

OANN's disinformation campaign was not limited to distorting Smartmatic's role in the 2020 U.S. election.  OANN also defamed and made injurious falsehoods about Smartmatic by lying about the company's past. OANN had no basis for these statements and implications either.

**ANSWER:** Defendant denies the allegations in Paragraph 247.

**ALLEGATION NO. 248:**

OANN stated and implied that Smartmatic is a Venezuelan company founded and funded by corrupt dictators from socialist and communist countries. OANN did not have any source identifying Smartmatic as a Venezuelan company because it is not. OANN did not have any source with firsthand knowledge supporting claims about the company being founded and funded by corrupt dictators because that did not happen.

**ANSWER:** Defendant denies that Plaintiffs have accurately characterized statements by OAN, particularly when those statements are taken in context and wholistically. Defendant further denies that no Smartmatic entity or Smartmatic-affiliated entity is associated with Venezuela. Defendant further denies that no Smartmatic entity or Smartmatic-affiliated entity has been funded by despots or socialist or communist countries. Defendant further denies that it had no sources for its reporting about any Smartmatic entity's or Smartmatic-affiliated entity's having ties to or funding from Venezuela. Defendant further denies the allegations in the first sentence of Paragraph 248 because they violate the *in haec verba* doctrine. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 248.

**ALLEGATION NO. 249:**

OANN stated and implied that Smartmatic's election technology and software were designed to fix, rig, and steal elections, and that Smartmatic had done exactly that in prior elections. OANN did not have any source with firsthand knowledge to support this statement and implication because it never happened.

**ANSWER:** Defendant denies that Plaintiffs have accurately characterized statements by OAN, particularly when those statements are taken in context and wholistically. Defendant further denies that no Smartmatic entity's or Smartmatic-affiliated entity's election technology and software are inherently flawed or insecure. Defendant further denies that no Smartmatic entity's or Smartmatic-affiliated entity's election technology and software have ever been exploited. Defendant further denies it lacked sources for its reporting about any Smartmatic entity. Defendant further denies

the allegations in the first sentence of Paragraph 249 because they violate the *in haec verba* doctrine. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 249.

### 2. OAN thoroughly vetted its Smartmatic-related reporting.

**ALLEGATION NO. 250:**

To the extent OANN did not know the truth, OANN purposefully avoided learning the truth about Smartmatic and its election technology and software, establishing actual malice.

**ANSWER:** The allegations in Paragraph 250 contain legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 250.

**ALLEGATION NO. 251:**

First, OANN intentionally avoided obtaining information from Smartmatic. No one from OANN ever contacted Smartmatic to verify any statements it made or published. Smartmatic's website includes a "Contact" page that provides addresses, phone numbers, and email addresses through which OANN could have used to contact Smartmatic. The "Contact" page also provides a specific link for "Media Inquiries." OANN did not care to get Smartmatic's response to its statements about Smartmatic. OANN was pushing a preconceived story and it did not want factual information from Smartmatic to contradict its story.

**ANSWER:** Defendant admits that a Smartmatic entity's website currently includes a "Contact" page that provides addresses, phone numbers, and email addresses and a link for "Media Inquiries." Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations related to that information's having always been available on any website associated with any Smartmatic entity. Defendant denies the remaining allegations by Plaintiffs against Defendant in Paragraph 251.

**ALLEGATION NO. 252:**

Second, OANN allowed a myriad of guests to appear on its various news programs and make false statements and implications about Smartmatic without showing any proof or evidence for those statements. OANN did not require its guests to provide proof or evidence for their statements. OANN also knew that its "investigation" did not verify the veracity of the statements and implications it published. OANN purposefully avoided requiring its guests to prove what they were saying because OANN selected the guests who would make unsubstantiated lies.

**ANSWER:** Defendant denies the allegations in Paragraph 252.

**ALLEGATION NO. 253:**

Third, OANN did not interview anyone with personal knowledge of Smartmatic's involvement in the 2020 U.S. election or the allegations being made about Smartmatic. OANN's guests did not have any role in the 2020 U.S. election. They did not work with Smartmatic, Dominion, or any other voting machine technology. They did not work at the polls on election day. They were not involved with Smartmatic's voting technology and software used in Los Angeles County. OANN let whoever it wanted, regardless of a clear lack of personal knowledge, appear on OANN shows and make false statements and implications about Smartmatic. OANN purposefully avoided inviting guests with personal knowledge of Smartmatic's 2020 U.S. election to appear on OANN because those guests would have contradicted the preconceived story being told by OANN. Nor did OANN invite any guests to claim exactly the opposite.

**ANSWER:** Defendant denies the allegations in Paragraph 253.

**ALLEGATION NO. 254:**

Fourth, OANN purposefully avoided election technology experts. For instance, Fox News repeatedly broadcast statements from Eddie Perez, the Global Director at the Open Source Election Technology Institute. On information and belief, OANN followed Fox News's coverage of Smartmatic after the election. So OANN was aware of Mr. Perez and avoided him and other experts because the facts they would have offered were inconsistent with the story OANN wanted to convey about Smartmatic. Despite being aware of Mr. Perez's appearances on Fox News, OANN continued publishing false statements and implications about Smartmatic after Mr. Perez's appearances. Mr. Perez first appeared on Fox News on December 18, 2020. OANN published false statements and implications about Smartmatic on December 21, 2020 and throughout 2021.

**ANSWER:** Defendant is without knowledge or information to form a belief as to the truth of the

allegations in Paragraph 254 pertaining to Fox News and Mr. Perez and therefore denies the same.

Defendant otherwise denies the allegations by Plaintiffs against Defendant in Paragraph 254.

    **B.**    **OAN reporting about election equipment and software with ties to Smartmatic-related entities was accurate.**

**ALLEGATION NO. 255:**

OANN knew its statements and implications regarding Smartmatic and its technology and software were false, or it acted with reckless disregard for the truth when making its statements. OANN possessed and/or had access to information that showed its statements were false. OANN also made statements for which it had no factual basis.

**ANSWER:** The allegations in Paragraph 255 contain legal conclusions to which no response is

required.  To the extent a response is required, Defendant denies the allegations in Paragraph 255.

> 1. **OAN knew election equipment and software with ties to Smartmatic-related entities were widely used in the 2020 U.S. election, including in contested states.**

**ALLEGATION NO. 256:**

A myriad of information was available to OANN that showed its statements and implications about Smartmatic and the use of its technology and software in the 2020 U.S. election (and in contested states) were false.  OANN either ignored this information, and thereby acted with reckless disregard or published its false statements knowing they were false based on this information.

**ANSWER:** The allegations in Paragraph 256 contain legal conclusions to which no response is

required.  To the extent a response is required, Defendant denies the allegations in Paragraph 256.

**ALLEGATION NO. 257:**

First, before the disinformation campaign, there was publicly available and easily accessible information showing what company's election technology and software were selected for and used in each state in the country (and by county), including in contested states such as Georgia, Michigan, Pennsylvania, Arizona, Wisconsin, Nevada, and Texas.

**ANSWER:** Defendant admits that information about use of election technology and software is

sometimes publicly available but denies that it is always publicly available or easily accessible.

Defendant further denies that it engaged in a disinformation campaign.   Defendant further denies

any remaining allegations by Plaintiffs against Defendant in Paragraph 257.

**ALLEGATION NO. 258:**

Each state publicly disclosed the election technology used in the 2020 U.S. election.  This information showed that Smartmatic did not provide or manufacture any technology or software in any contested states discussed by OANN.

**ANSWER:** Defendant denies that each U.S. state disclosed all material information about election

technology used in the 2020 U.S. election.  Defendant further denies that any such information

showed that no election software or technology connected to or associated with any Smartmatic

entity or Smartmatic-affiliated entity was used in any contested states reported on by OAN. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 258.

**ALLEGATION NO. 259:**

Georgia: In 2019, Georgia's RFP process demonstrated that Smartmatic was not chosen for the 2020 U.S. election. In response to the RFP, three separate companies submitted a bid. Those companies were: (1) ES&S, (2) Smartmatic, and (3) Dominion. Georgia chose two companies to advance in the process and to undergo further consideration: ES&S and Dominion. Smartmatic was not chosen. After further process with ES&S and Dominion, Dominion got the contract with Georgia. (11/30/20 Georgia Press Conference on 2020 Election Recount Update Transcript (Exhibit 55).) The State of Georgia also publicly disclosed that it was using Dominion's election technology for the 2020 U.S. election—not Smartmatic. (Georgia Secretary of State Press Release, *Security-Focused Tech Company, Dominion Voting to Implement New Verified Paper Ballot System* (Exhibit 56); 8/9/19 Office of Georgia Secretary of State Certification for Dominion Voting System (Exhibit 52).)

**ANSWER:** The referenced documents speak for themselves, thus no response is required. To the extent a response is required, Defendant denies that alleged non-selection of any Smartmatic entity means that no election software or technology associated with any Smartmatic entity was used in Georgia during the 2020 U.S. election (because, for instance, one or more Dominion entities bought Sequoia Voting Systems from a shell company created by one or more Smartmatic entities). Defendant otherwise is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 259 or the exhibits relied upon therein and therefore denies the same.

**ALLEGATION NO. 260:**

Michigan: On January 24, 2017, Michigan's State Administrative Board approved only three vendors of voting systems: Dominion, ES&S, and Hart InterCivic. (Michigan Secretary of State Jocelyn Benson, *Voting System Purchase* (Exhibit 59).) In early November, the State of Michigan publicly identified the use of the Dominion election management system and voting machines. There was no mention of Smartmatic. (11/6/20 Michigan Department of State Press Release, *False claims from Ronna McDaniel have no merit* (Exhibit 60).) The Secretary of State for Michigan also had a voting systems map on its website that identified the vendor/manufacture for different locations. The map identified three companies: (1) Dominion, (2) Hart InterCivic,

and (3) ES&S.  Smartmatic was not identified.  (Michigan Voter Information Center, *Voting Systems Map* (Exhibit 58).)

**ANSWER:**  The referenced documents speak for themselves, thus no response is required.  To the extent a response is required, Defendant denies that alleged non-selection of any Smartmatic entity means that no election software or technology associated with any Smartmatic entity was used in Michigan during the 2020 U.S. election (because, for instance, one or more Dominion entities bought Sequoia Voting Systems from a shell company created by one or more Smartmatic entities).  Defendant otherwise is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 260 or the exhibits relied upon therein and therefore denies the same.

**ALLEGATION NO. 261:**

Pennsylvania: The state of Pennsylvania publicly identified the election technology and software certified for use on its website.  ES&S and Dominion were identified for use by Pennsylvania.  Smartmatic was not identified.  (Pennsylvania Department of State, *Electronic Voting Systems Certified After January 1, 2018* (Exhibit 62).)  Pennsylvania was explicit in the voting systems available for use in the 2020 general election.  On April 4, 2018, Acting Secretary of State Robert Torres required each of Pennsylvania's 67 counties to select new voting systems by no later than December 31, 2019, and to implement them no later than the June 2, 2020 primary election.  (Pennsylvania Pressroom, *Department of State Tells Counties To Have New Voting Systems In Place By End Of 2019* (Exhibit 63).)  The Pennsylvania Department of State subsequently certified the following providers of electronic voting systems: (1) Unisyn, (2) ES&S, (3) Dominion, (4) ClearBallot, and (5) Hart Verity Voting.  (Pennsylvania Department of State, *Electronic Voting Systems Certified After January 1, 2018* (Exhibit 62).)  Counties then had the option to choose only from seven electronic voting systems offered by those five providers.  Smartmatic was not one of them.  (Votes PA, *New Voting Systems* (Exhibit 64).

**ANSWER:**  The referenced documents speak for themselves, thus no response is required.  To the extent a response is required, Defendant denies that alleged non-selection of any Smartmatic entity means that no election software or technology associated with any Smartmatic entity was used in Pennsylvania during the 2020 U.S. election (because, for instance, one or more Dominion entities bought Sequoia Voting Systems from a shell company created by one or more Smartmatic entities).  Defendant otherwise is without knowledge or information sufficient to form a belief as to the truth

of the remaining allegations in Paragraph 261 or the exhibits relied upon therein and therefore denies the same.

## ALLEGATION NO. 262:

Arizona: The state of Arizona publicly identified the election technology and software used for the 2020 U.S. election by manufacturer on its website.  Smartmatic was not one of them. (Arizona Secretary of State, *2020 Election Cycle/Voting Equipment* (Exhibit 67).)

**ANSWER:** The referenced documents speak for themselves, thus no response is required.  To the extent a response is required, Defendant denies that alleged non-selection of any Smartmatic entity means that no election software or technology associated with any Smartmatic entity was used in Arizona during the 2020 U.S. election (because, for instance, one or more Dominion entities bought Sequoia Voting Systems from a shell company created by one or more Smartmatic entities). Defendant otherwise is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 262 or the exhibits relied upon therein and therefore denies the same.

## ALLEGATION NO. 263:

Wisconsin: In February 2020, the state of Wisconsin published a list of the voting equipment used by each municipality within the State.  Smartmatic appears nowhere on that list. (Wisconsin Election Commission, *Voting Equipment List by Municipality February 2020* (Exhibit 69).)  In addition, the Wisconsin election commission publicly identified the approved voting equipment manufacturers on its website.  Smartmatic was not identified. (Wisconsin Election Commission, *Voting Equipment* (Exhibit 70).)

**ANSWER:** The referenced documents speak for themselves, thus no response is required.  To the extent a response is required, Defendant denies that alleged non-selection of any Smartmatic entity means that no election software or technology associated with any Smartmatic entity was used in Wisconsin during the 2020 U.S. election (because, for instance, one or more Dominion entities bought Sequoia Voting Systems from a shell company created by one or more Smartmatic entities). Defendant otherwise is without knowledge or information sufficient to form a belief as to the truth

of the remaining allegations in Paragraph 263 or the exhibits relied upon therein and therefore

denies the same.

## **ALLEGATION NO. 264:**

Nevada: As of November 2020, all jurisdictions in Nevada used voting systems from either Dominion or ES&S.   Smartmatic was not used.   (Nevada Secretary of State, *Voting System* (Exhibit 72).)

**ANSWER:** The referenced document speaks for itself, thus no response is required.   To the extent

a response is required, Defendant denies that alleged non-selection of any Smartmatic entity means

that no election software or technology associated with any Smartmatic entity was used in Nevada

during the 2020 U.S. election (because, for instance, one or more Dominion entities bought

Sequoia Voting Systems from a shell company created by one or more Smartmatic entities).

Defendant otherwise is without knowledge or information sufficient to form a belief as to truth of

the remaining allegations in Paragraph 264 or the exhibits relied upon therein and therefore denies

the same.

## **ALLEGATION NO. 265:**

Texas: The state of Texas publicly identified the election technology and software certified for use on the website of the Secretary of State, VoteTexas.gov.   The website identifies Dominion, ES&S, and Hart InterCivic as certified for use in Texas election.   (VoteTexas.gov, *How to Vote* (Exhibit 135).)   Smartmatic was not identified.   Furthermore, the Texas Secretary of State's website makes clear that it was Dominion—not Smartmatic—that had previously had issues with the State of Texas.   But regardless, any issues had been resolved by the State of Texas since it selected and certified Dominion as one of its voting systems.   (Texas Secretary of State, *Voting System Examination(s) and Status for Dominion* (Exhibit 136).)

**ANSWER:** The referenced documents speak for themselves, thus no response is required.   To the

extent a response is required, Defendant denies that alleged non-selection of any Smartmatic entity

means that no election software or technology associated with any Smartmatic entity was used in

Texas during the 2020 U.S. election (because, for instance, one or more Dominion entities bought

Sequoia Voting Systems from a shell company created by one or more Smartmatic entities).

Defendant further denies that any issues had been resolved between any Dominion entity and the State of Texas.  Defendant otherwise is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 265 or the exhibits relied upon therein and therefore denies the same.

## ALLEGATION NO. 266:

Second, before the disinformation campaign, it was widely known that another company, ES&S, was the nation's largest manufacturer of voting technology.  It was also widely known that three main election technology companies dominated the U.S. market for elections:  (1) ES&S, (2) Dominion, and (3) Hart InterCivic.  This list did not include Smartmatic.  For example:

a.  On October 29, 2018, it was reported that a trio of companies—ES&S, Dominion, and Hart InterCivic—sell and service more than 90 percent of the machinery on which votes in the country are cast and results tabulated.  (10/29/18 Chicago Tribune, *U.S. election integrity depends on security- challenged firms* (Exhibit 99); 10/29/18 Fox Business, *Security-challenged firms are gatekeepers of US elections* (Exhibit 100).)

b.  On March 27, 2019, Senator Amy Klobuchar and others sent a letter to the country's three largest election system vendors with questions on their security in anticipation of the 2020 U.S. election.  Those vendors were (1) ES&S, (2) Dominion, and (3) Hart InterCivic—not Smartmatic. (3/27/19 Klobuchar Press Release, *Ranking Members Klobuchar, Warner, Reed, and Peters Press Election Equipment Manufacturers on Security* (Exhibit 101).)

c.  On December 6, 2019, Senators Elizabeth Warren, Amy Klobuchar, and others sent letters to the private equity firms that owned or had investments in the vendors responsible for the "vast majority of voting machines and software in the United States" with questions in anticipation of the 2020 U.S. election, noting that these vendors collectively distribute voting machines and software for "over 90% of all eligible voters in the United States."  Those vendors were (1) ES&S, (2) Dominion, and (3) Hart InterCivic—not Smartmatic.  (12/10/19 Warren Press Release, *Warren, Klobuchar, Wyden, and Pocan Investigate Vulnerabilities and Shortcomings of Election Technology Industry with Ties to Private Equity* (Exhibit 105).)  Defendant Powell, in fact, attached these letters to a complaint she filed in Georgia on November 26, 2020, an amended complaint she filed in Michigan on November 29, 2020, a complaint she filed in Wisconsin on December 1, 2020, a complaint she filed in Arizona on December 2, 2020, and an amended complaint she filed in Wisconsin on December 3, 2020.  *See Pearson v. Kemp*, No. 20-cv-4809 (N.D. Ga.) ECF Nos. 1-26; *King v. Whitmer*, No. 20-cv-13134 (E.D. Mich.) ECF Nos. 6-16; *Feehan v. Wisconsin Elections Commission*, No. 20-cv-1771 (E.D. Wis.) ECF Nos. 9-16; and *Bowyer v. Ducey*, No. 02-cv-02321 (D. Ariz.) ECF Nos. 1-7.

d.   On October 28, 2019, it was reported that half of the country votes on machines made by ES&S. (10/28/19 ProPublica, *The Market for Voting Machines is Broken. This Company Has Thrived in It* (Exhibit 103).)

e.   On May 2, 2019, it was reported that three companies dominate the market for voting machines in the country, with ES&S being the largest, followed by Dominion and Hart InterCivic. (5/2/19 NPR, *Trips to Vegas and Chocolate-Covered Pretzels: Election Vendors Come Under Scrutiny* (Exhibit 102).)

f.   On March 3, 2020, it was reported that ES&S, Dominion, and Hart InterCivic "together control about 90 percent of the U.S. market for voting systems." (11/3/20 Politico, *Playbook PM: Halftime* (Exhibit 112).)

g.   On October 28, 2020, it was reported that ES&S and Dominion together produce the technology used by over three-quarters of U.S. voters, and the third-largest player was Hart InterCivic. (10/28/20 The Wall Street Journal, *Early Voting Shines Spotlight on Consolidated Voting-Equipment Market* (Exhibit 110).)

**ANSWER:** The referenced documents speak for themselves, thus no response is required. To the extent a response is required, Defendant denies that OAN engaged in a disinformation campaign. Defendant lacks information or knowledge to form a belief as the truth of alleged facts being "widely known" thus denies those allegations. Defendant further denies that references to other voting software and technology companies don't necessarily include any Smartmatic entity or Smartmatic-affiliated entity because of transactions and contracts entered into by those companies, licensing agreements between or among those companies, and technologies or software shared by or sold by those companies with each other. Defendant further denies that Sidney Powell is a defendant in this matter. Defendant otherwise is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 266 or the exhibits relied upon therein and therefore denies the same.

**ALLEGATION NO. 267:**

This type of publicly available information showed that Smartmatic's election technology was not widely used in the 2020 U.S. election and was not used in contested states.

**ANSWER:** Defendant denies the allegations in Paragraph 267.

**ALLEGATION NO. 268:**

Third, each major company or manufacturer of election technology and software identified on its own website the use of its technology or software in the 2020 U.S. election before and during the disinformation campaign.  This information also showed the very limited use of Smartmatic's technology and software in the 2020 U.S. election (*i.e.*, only in one county in California).  For example:

**ANSWER:** Defendant denies it was engaged in a disinformation campaign.   Defendant further denies that technology and software associated with or connected to any Smartmatic entity or Smartmatic-affiliated entity was used only on a very limited basis in the 2020 U.S. election (i.e., in only one California county).  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 268 and therefore denies the same.

**ALLEGATION NO. 269:**

ES&S: Before and during the disinformation campaign, ES&S's website provided information that contradicted statements by OANN about the use of Smartmatic's election technology in the 2020 U.S. election.  For example, ES&S's website identified the widespread use of its voting machines in the country, including its success in the 2020 election in Wisconsin and Pennsylvania jurisdictions (both within contested states), and touted the success of its high-speed ballot counting technology.   (11/1/20 ES&S, *Getting the facts straight about elections* (Exhibit 87); 11/11/20 ES&S, *ES&S Equipment Efficiently, Accurately, Securely Records Election History* (Exhibit 88); 11/26/20 ES&S, *Getting the facts straight about elections updated* (Exhibit 89).)

**ANSWER:** The referenced documents speak for themselves, thus no response is required.  To the extent a response is required, Defendant denies that it engaged in a disinformation campaign.  Defendant further denies that any ES&S website contradicted any reporting by OAN about any Smartmatic entity.  Defendant further denies that the cited article even mentions Smartmatic, much less touts its success.  In fact, ES&S repeatedly notes the possibility of cybersecurity breaches in electronic voting machines.  Defendant further denies that Plaintiffs' reliance on any ES&S website is proper in the Complaint given that Plaintiffs likely lack personal knowledge about the truth of any assertions on any ES&S website and any reliance by Plaintiffs on any ES&S website,

if Plaintiffs aren't somehow connected or affiliated with ES&S, amounts to speculative hearsay.

Defendant otherwise is without knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 269 and therefore denies them.

## ALLEGATION NO. 270:

Hart InterCivic: Before and during the disinformation campaign, Hart InterCivic's website provided information that contradicted statements by OANN about the use of Smartmatic's election technology in the 2020 U.S. election.  For example, Hart InterCivic's website identified the widespread use of its technology systems in the country. ( 9/25/20 Hart InterCivic, *Voting System Security Technology* (Exhibit 90); 9/28/20 Hart InterCivic, *More Texas Counties Choose Hart InterCivic's Verity Voting* (Exhibit 91).)

**ANSWER:** The referenced documents speak for themselves, thus no response is required.  To the

extent a response is required, Defendant denies that it engaged in a disinformation campaign.

Defendant further denies that any Hart InterCivic website contradicted any reporting by OAN

about any Smartmatic entity.  Defendant further denies that Plaintiffs' reliance on any Hart

InterCivic website is proper in the Complaint given that Plaintiffs likely lack personal knowledge

about the truth of any assertions on any Hart InterCivic website and any reliance by Plaintiffs on

any Hart InterCivic website, if Plaintiffs aren't somehow connected or affiliated with Hart

InterCivic, amounts to speculative hearsay.  Defendant further denies that the cited articles on the

Hart InterCivic website refer to Smartmatic at all.  Defendant otherwise is without knowledge or

information sufficient to form a belief as to the truth of the allegations in Paragraph 270 and

therefore denies them.

## ALLEGATION NO. 271:

Dominion: Before and during the disinformation campaign, Dominion's website provided information that contradicted statements by OANN about the use of Smartmatic's election technology in the 2020 U.S. election.  For example, Dominion's website identified that it was serving customers in 28 states and Puerto Rico.  Its website indicates the states in which its machines were used for the 2020 election.  (11/1/20 Dominion, *About Dominion* (Exhibit 79).)

**ANSWER:** The referenced document speaks for itself, thus no response is required.  To the extent

a response is required, Defendant denies that it engaged in a disinformation campaign.  Defendant

further denies that any Dominion website contradicted any reporting by OAN about any

Smartmatic entity.  Defendant further denies that Plaintiffs' reliance on any Dominion website is

proper in the Complaint given that Plaintiffs likely lack personal knowledge about the truth of any

assertions on any Dominion website and any reliance by Plaintiffs on any Dominion website, if

Plaintiffs aren't somehow connected or affiliated with Dominion, amounts to speculative hearsay.

Defendant otherwise is without knowledge or information sufficient to form a belief as to the truth

of the allegations in Paragraph 271 and therefore denies them.

**ALLEGATION NO. 272:**

Fourth, Smartmatic's website provided information about the company, its technology and software, and its limited role in the 2020 U.S. election.  Smartmatic's website stated as of November 14 that Smartmatic's ballot marking devices were "used exclusively in Los Angeles County" and "were not used in any other state or any other jurisdiction in California or anywhere else in the U.S."  (11/14/20 Smartmatic, *Smartmatic Fact-checked* (Exhibit 75).)  Smartmatic's website stated as of November 16 that Smartmatic voting machines were specifically not used in Pennsylvania, Georgia, Arizona, Nevada, Michigan, or North Carolina. (11/16/20 Smartmatic, *Smartmatic Fact-checked* (Exhibit 76).)

**ANSWER:** Defendant refers to the website set forth in Paragraph 272 on the dates referenced (to

the extent those website versions still exist) for their contents; they speak for themselves, thus no

response is required.  To the extent a response is required, Defendant denies that any Smartmatic

entity is truthful on any Smartmatic website.  Defendant further denies that software or technology

associated with or connected to any Smartmatic entity or Smartmatic-affiliated entity was not used

in the 2020 U.S. election outside of Los Angeles County.  Defendant further denies that software

or technology associated with or connected to any Smartmatic entity or Smartmatic-affiliated

entity was not used in any of the listed states outside California.  Defendant further denies that

OAN should rely exclusively on information from a Smartmatic entity for the truth about any

Smartmatic entity.  Defendant further states it lacks sufficient information to form a belief as to what was published on any Smartmatic website on November 14, 2020, November 16, 2020, or at any point in time and therefore denies these allegations.  Defendant further denies any other remaining allegations by Plaintiffs against Defendant in Paragraph 272.

**ALLEGATION NO. 273:**

On information and belief, OANN was aware of the factual information on the Smartmatic website, particularly as it relates to the states where Smartmatic's election technology and software were and were not used in the 2020 U.S. election.  Before and during the disinformation campaign, there was information available that identified Smartmatic's limited role in the 2020 U.S. election.

**ANSWER:** Defendant denies the allegations in Paragraph 273.

**ALLEGATION NO. 274:**

On information and belief, OANN was also aware that Smartmatic's VSAP technology used in Los Angeles County was owned by the county, had been created by employees in Smartmatic's U.S.-based office, and that all code used in the system was developed in the United States and had never been offshore.  (*See, e.g.*, 3/3/20 Politico, *Los Angeles County's risky voting experiment* (Exhibit 106).)

**ANSWER:** The referenced article speaks for itself, thus no response is required.  To the extent a response is required, Defendant lacks knowledge or information to form a belief as to the truth of the factual assertions in the article and thus denies them.  Defendant further denies that the VSAP technology used in Los Angeles County is necessarily relevant to any Smartmatic-associated technology used elsewhere.  Defendant further states that the cited article is critical of one or more Smartmatic entities, including its/their relationship with Venezuela.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 274.

**ALLEGATION NO. 275:**

Fifth, OANN did not attempt to email Smartmatic to obtain basic information, such as its role in the 2020 U.S. election or its relationship to Dominion or other voting systems.  OANN could have easily emailed Smartmatic.  It is telling that OANN avoided getting this type of information from the company.

**ANSWER:** Defendant admits that it currently is unaware of OAN's having emailed any Smartmatic entities. Defendant further states that OAN was aware of unsuccessful efforts by the media to interact with Smartmatic entities, and Defendant thus researched Smartmatic by reviewing court documents, prior interviews, and government analyses (among other newsgathering efforts). Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 275.

**ALLEGATION NO. 276:**

Sixth, on December 18, 2020, Dominion sent a retraction demand letter to OANN and its executive officers, including Robert Herring (CEO), Charles Herring (President), and Bruce Littman (Executive Vice President). (Dominion Retraction Demand Letters to OANN (Exhibit 48).) The December 18, 2020 letter included information demonstrating that the claims OANN had been broadcasting and publishing about Smartmatic were false. For example, the letter included the following information:

    a.    "Dominion is not Smartmatic," "is not owned by Smartmatic," and "Dominion and Smartmatic are entirely separate companies who compete against each other";

    b.    "Dominion does not use Smartmatic's software or machines, nor was there Smartmatic technology in any of Dominion's voting machines in the 2020 election";

    c.    A link to a statement by the Chairman of Maricopa County Board of Supervisors that "the system used in Maricopa County is accurate and provided voters with a reliable election";

    d.    A link to a statement by Georgia Secretary of State Brad Raffensperger that "the state's new secure paper ballot voting system accurately counted and reported results" in Georgia.

**ANSWER:** Defendant refers to the referenced letter and statements for their contents, which speak for themselves thus no response is required. To the extent a response is required, Defendant denies that a retraction letter from any Dominion entity is relevant to claims by a Smartmatic entity (unless one or more Dominion entities are in fact affiliated with one or more Smartmatic entities, such as through contracts, licensing agreements, and shared software and technology). Defendant further denies the letter demonstrated any falsities, much less knowing falsities or falsities uttered with

reckless disregard for the truth, by OAN of and concerning any Smartmatic entity (or, for that matter, any Dominion entity).  Defendant further denies that no Dominion entity is associated with or connected to any Smartmatic entity.  Defendant further denies that no Dominion entity uses software or technology associated with or connected to any Smartmatic or Smartmatic-affiliated entity.  Defendant further denies that the election count in Maricopa County was completely reliable.  Defendant further denies that the election count in Georgia was completely accurate. Defendant further denies any other remaining allegations by Plaintiffs against Defendant in Paragraph 276.

**ALLEGATION NO. 277:**

In all, beginning on December 18, 2020—and repeatedly thereafter, including but not limited to, December 22, 2020, December 29, 2020, February 4, 2021, February 12, 2021, April 16, 2021, May 12, 2021, June 18, 2021, July 13, 2021, and August 4, 2021—Dominion sent OANN correspondence detailing OANN's defamatory falsehoods about Dominion, explaining how and why those defamatory falsehoods were factually inaccurate, and providing citations to independent sources confirming the falsity of those calculated falsehoods and the calculated falsehoods made about Smartmatic.

**ANSWER:** The referenced letters speak for themselves, thus no response is required.  To the extent a response is required, Defendant denies the allegations in the letters.  Defendant further denies that OAN published defamatory falsehoods or that any cited allegedly independent sources confirmed defamatory falsehoods by OAN about any Dominion entity or any Smartmatic entities. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 277.

**ALLEGATION NO. 278:**

Seventh, organizations involved in certifying voting technology like the Election Assistance Commission (EAC) published information about the use of election technology in the 2020 U.S. election.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 278 and therefore denies them.

**ALLEGATION NO. 279:**

For example, all of the states where OANN claimed fraud had occurred use some aspect of the federal testing and certification program for election technology and software.  (NCSL Voting System Standards, *Testing and Certification* (Exhibit 131).)  The U.S. Election Assistance Commission (EAC) publicly identifies the voting systems that have been certified by the EAC by county and state.  It provides a table on its website where a user can determine the manufacturer, product, and version of any technology and software used.  It shows that Smartmatic was not used in any of the contested states. (U.S. EAC, *Voting Systems by Jurisdiction* (Exhibit 132).)

**ANSWER:** The referenced documents speak for themselves, thus no response is required.  To the extent a response is required, Defendant denies that the documents definitively demonstrated that technology and software associated with or connected to any Smartmatic entity or Smartmatic-affiliated entity was not used in any contested states.   Defendant otherwise is without knowledge or information sufficient to form a belief as to the allegations in Paragraph 279 and therefore denies them.

**ALLEGATION NO. 280:**

Eighth, before and during the disinformation campaign, organizations who identify and track election and voting equipment made information publicly available that showed the limited role of Smartmatic and its election technology and software in the 2020 U.S. election.  For example, Verified Voting (http://www.verifiedvoting.org) keeps a running map of all voting equipment in the United States, broken down by county.  Anyone can get on the website and look up any county in the United States and determine whether a company's voting technology or software was used, and obtain detailed descriptions of it.  (Verified Voting, *The Verifier—Search—November 2020* (Exhibit 133).)

**ANSWER:** The referenced website speaks for itself, thus no response is required.  To the extent a response is required, Defendant denies that it engaged in a disinformation campaign.  Defendant further denies that any Smartmatic entity has any personal knowledge about the veracity of anything listed on the referenced website at any given time.  Defendant lacks knowledge or

information sufficient to form a belief as to what was on the referenced website at any point in time and thus denies those allegations.

**ALLEGATION NO. 281:**

Ninth, before and during the disinformation campaign, there was publicly available and easily accessible information that shows Smartmatic and Dominion are two separate companies. For example, the state filings for both companies, Smartmatic and Dominion, shows that they are two separate companies.  (3/30/20 Smartmatic USA Corp. Annual Report filed with Florida Secretary of State (Exhibit 108); 6/25/10 Dominion Voting Systems, Inc. Statement of Foreign Entity Authority filed with Colorado Secretary of State (Exhibit 93).)

**ANSWER:** The referenced state reports speak for themselves, thus no response is required.  To the extent a response is required, Defendant responds that Plaintiffs have defined all three of themselves as "Smartmatic"; as such, Defendant denies that they're a single company separate from any Dominion company.  Defendant further denies that there are state filings for all three Plaintiffs.  Defendant further denies that all Smartmatic entities are U.S. entities.  Defendant further denies that all Dominion entities are U.S. entities.  Defendant further denies it was engaged in a disinformation campaign.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 281.

**ALLEGATION NO. 282:**

There was also litigation between the companies, and the public filings clearly establish that the companies are separate, they are competitors, and their technology is separate.  (9/18/12 Smartmatic Press Release, *Smartmatic International Sues Dominion Voting Systems for Licensing Breach and Improper Business Practices* (Exhibit 95); 5/1/13 Mem. Opinion, *Smartmatic Int'l Corp. v. Dominion Voting Systems Int'l Corp.*, No. 7844-VCP (Del. Chan. 2013) (Exhibit 97).)

**ANSWER:** The public filings in the litigation and referenced press release speak for themselves, thus no response is required.  To the extent a response is required,  Defendant denies that Plaintiffs have accurately characterized the pleadings or the facts.  Defendant further denies that all Smartmatic entities are truly separate from all Dominion entities given contracts between/among them, licensing agreements between/among them, and election technology and software sold or

used between/among them.   Defendant further denies any remaining allegations by Plaintiffs

against Defendant in Paragraph 282.

**ALLEGATION NO. 283:**

Tenth, Smartmatic's own website also had information that made clear that Smartmatic
had no ties to Dominion Voting Systems—no ownership ties, no software leasing, and no business
at all between the two companies.  It further noted that in 2009, Smartmatic licensed scanning
machines from Dominion for use in the Philippines for a Smartmatic election project, which was
Smartmatic's first and only contract with Dominion, that it was short-lived, and ended in a lawsuit.
It further noted that that was the first and last time that Smartmatic and Dominion tried to do
business together.  (11/27/20 Smartmatic, *Smartmatic Fact-checked* (Exhibit 77).)

**ANSWER:**  The referenced website has spoken for itself over the course of time, thus no response

is required.   To the extent a response is required, Defendant lacks sufficient knowledge or

information to form a belief as to the truth of the allegations about what any Smartmatic website

said at any given point in time and thus denies those allegations.  Defendant further denies that no

Smartmatic entity has ever had ties to any Dominion entity (in fact, Plaintiffs directly admit

otherwise in Paragraph 283).   Defendant further denies that any such ties were "short-lived"

because Smartmatic entity leadership has been quoted as saying contractual relationships

continued until at least 2015.   Defendant further denies that "Smartmatic" and "Dominion" as

referred to in Paragraph 283 are two companies because Plaintiffs in the Complaint have defined

"Smartmatic" as three entities, there in fact is more than one Smartmatic entity, and there is more

than one Dominion entity.  Defendant further denies that any Smartmatic website is the best place

to look for truthful information about any Smartmatic entity.  Defendant further denies that any

statements on any Smartmatic website that post-dated the allegedly defamatory publications at

issue are relevant to whether those statements are actionable.  Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 283.

**ALLEGATION NO. 284:**

Eleventh, Dominion's website similarly provided information that made clear it was a distinctly separate company from, and fierce competitor to Smartmatic, and was not using Smartmatic's election technology and software.  (11/13/20 Dominion, *Election 2020: Setting the Record Straight: Facts & Rumors* (Exhibit 81); 11/17/20 Dominion, *Election 2020: Setting the Record Straight, Facts & Rumors* (Exhibit 82); 11/25/20 Dominion, *Election 2020: Setting the Record Straight, Facts & Rumors* (Exhibit 84); 11/26/20 Dominion, *Election 2020: Setting the Record Straight, Facts & Rumors* (Exhibit 85); 12/3/20 Dominion, *Election 2020: Setting the Record Straight, Facts & Rumors* (Exhibit 86).

**ANSWER:** Any Dominion website has spoken for itself over the course of time, thus no response is required.  To the extent a response is required, Defendant denies that any Dominion website is the best source for truthful information about any Dominion or Smartmatic entity.  Defendant further denies that any statements on any Dominion website that post-dated the allegedly defamatory publications at issue are relevant to whether those statements are actionable.  Defendant further states that any assertion that Dominion entities and Smartmatic entities are "fierce competitors" is incomplete and deceptive.  Defendant is without knowledge or information sufficient to form a belief as to what was posted on any Dominion website at any given time and therefore denies those allegations.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 284.

**ALLEGATION NO. 285:**

Twelfth, Smartmatic sent OANN a retraction demand letter on December 11, 2020.  (12/11/20 Retraction Demand Letter to OANN (Exhibit 46).)  The 14-page letter identified some of OANN's false statements that Smartmatic's election technology and software were widely used, including in Dominion's voting machine systems, in the 2020 U.S. election and explained why those statements were false.

**ANSWER:** The referenced letter speaks for itself, thus no response is required.  To the extent a response is required, Defendant denies OAN made false statements, much less knowingly false

statements or statements made with reckless disregard for the truth.  Defendant further denies that technology and software associated with or connected to one or more Smartmatic entities or Smartmatic-affiliated entities was not widely used in the 2020 U.S. election.  Defendant further denies the allegations in the retraction letter.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 285.

**ALLEGATION NO. 286:**

Thirteenth, Smartmatic filed suit against Fox Corporation, Fox News Network LLC, Lou Dobbs, Maria Bartiromo, Jeanine Pirro, Rudolph Giuliani, and Sidney Powell on February 4, 2021. (*Smartmatic USA Corp., et al. v. Fox Corporation et al.*, Index No. 151136/2021 (N.Y. Sup. Ct. 2021) ("Fox Complaint") (Exhibit 148).)  Smartmatic's Fox Complaint laid out all of the above facts establishing that Smartmatic's election technology and software were only used in Los Angeles County, were not used in any battleground states, and were not used by Dominion or any other voting machine system in the 2020 U.S. election.

**ANSWER:** The referenced document speaks for itself, thus no response is required.  To the extent a response is required, Defendant denies that the filing of the lawsuit is relevant to allegedly defamatory statements that preceded it or means that OAN reporting on any Smartmatic entities should have stopped after lawsuit filing (the lawsuit represents allegations, not proven facts). Defendant further denies that election technology and software associated with or connected to any Smartmatic entity or Smartmatic-affiliated entity were used only in Los Angeles County in the 2020 U.S. Election, that such technology and software were not used in any battleground states, and that such technology and software were not used by any Dominion entity or other voting machine company in the 2020 U.S. election.   Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 286.

2. **OAN knew of allegations that election equipment and software with ties to the Smartmatic-related entities were manipulated during the 2020 U.S. election.**

**ALLEGATION NO. 287:**

A myriad of information was available to OANN that showed its statements about Smartmatic and the use of its technology and software to fix, rig, and steal the 2020 U.S. election were false. OANN either ignored this information, and thereby acted with reckless disregard or published its false statements knowing they were false based on this information.

**ANSWER:** The allegations in Paragraph 287 contain legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 287.

**ALLEGATION NO. 288:**

First, before and during the disinformation campaign, there was publicly available and easily accessible information showing that Smartmatic's technology and software were not used widely in the 2020 U.S. election (and only in Los Angeles County) and thus could not have been used to fix, rig, or steal a national election. This information is discussed above. This information also made clear that the system Smartmatic provided to Los Angeles County does not count, tabulate, or store votes and that County officials tabulate the votes by counting the paper ballots produced by the system and cast by voters. (11/27/20 Smartmatic, *Smartmatic Fact- checked* (Exhibit 77); Smartmatic, *Los Angeles County—Voting Solutions for All People* (Exhibit 117).)

**ANSWER:** The referenced documents speak for themselves, thus no response is required. To the extent a response is required, Defendant denies that OAN was engaged in any disinformation campaign. Defendant further denies that election technology and software associated with or connected to any Smartmatic entity or Smartmatic-affiliated entity were not used in the 2020 U.S. election outside of Los Angeles County. Defendant is without sufficient information or knowledge to form a belief as to the truth of the allegations regarding whether the system provided in Los Angeles County counted, tabulated, or stored votes or whether County officials tabulated the votes

by counting paper ballots, thus Defendant denies those allegations.   Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 288.

**ALLEGATION NO. 289:**

Second, before the disinformation campaign, there was publicly available and easily accessible information showing the efforts around securing the 2020 U.S. election, which make claims of a fixed, rigged, and stolen election not credible.

**ANSWER:** Defendant denies the allegations in Paragraph 289.

**ALLEGATION NO. 290:**

For example, a joint statement was issued by national security agencies confirming the security of the election infrastructure and process in place for the 2020 U.S. election and that any threats to the election would be vigilantly monitored.  On November 5, 2019, the Department of Justice (Attorney General William Barr), the Department of Defense (Secretary Mark Esper), the Department of Homeland Security (Acting Secretary Kevin McAleenan), the Office of the Director of National Intelligence (Acting Director Joseph Maguire), the FBI (Director Christopher Wray), the National Security Agency (U.S. Cyber Command Commander and Director Gen. Paul Nakasone), and the Cybersecurity Infrastructure Security Agency (Director Christopher Krebs) issued a joint statement.

**ANSWER:** The November 5, 2019 statement speaks for itself, thus no response is required.  To the extent a response is required, Defendant denies that the statement (issued one year before the 2020 U.S. election) has any relevance to reporting on what actually occurred during the 2020 U.S. election.  Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 290.

**ALLEGATION NO. 291:**

In the statement, they stated that "[e]lection security is a top priority for the U.S. government" and that "[i]n an unprecedented level of coordination, the U.S. government is working with all 50 states and territories, local officials, and private sector partners to identify threats, broadly share information, and protect the democratic process."  "While at this time we have no evidence of a compromise or disruption to election infrastructure that would enable adversaries to prevent voting, change vote counts, or disrupt the ability to tally votes, we continue to vigilantly monitor any threats to U.S. elections."  (11/5/19 FBI National Press Office, *Joint Statement from DOJ, DOD, DHS, DNI, FBI, NSA, and CISA on Ensuring Security of 2020 Elections* (Exhibit 104).)  No such threats were identified or reported by any of these agencies. Unsurprisingly, OANN had seen no evidence contradicting the joint statement by the national

security agencies.  OANN does not have more resources than the federal government and did not have access to information that the federal government had not reviewed.

**ANSWER:**    The November 5, 2019 statement speaks for itself, thus no response is required.  To the extent a response is required, Defendant denies that the statement (issued one year before the 2020 U.S. election) has any relevance to reporting on what actually occurred during the 2020 U.S. election.  Defendant further denies that any such threats were not later identified or reported by any of these agencies related to the 2020 U.S. election.  Defendant further denies that OAN saw no evidence after the statement was issued contradicting the assurances in the statement.  OAN further denies that a comparison of its resources against those of the federal government is relevant to identification of and reporting on security vulnerabilities in the 2020 U.S. election (media entities often disagree with the government; in fact, that's why the press is called the Fourth Estate).  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 291.

**ALLEGATION NO. 292:**

Third, before and during the disinformation campaign, election experts and officials published statements rejecting any claims of vote rigging for the 2020 U.S. election.  No state or federal government official identified Smartmatic and its election technology and software as being used or even potentially implicated in a computer fraud to fix, rig, or steal the 2020 U.S. election.

**ANSWER:** Defendant admits that some election experts and officials published statements rejecting claims that vote rigging led to an erroneous presidential and vice presidential result.  Defendant denies that all election experts and officials agreed with this, and Defendant further notes that that disagreement is newsworthy and proper subject matter for media (including but not limited to OAN) reporting.  Defendant further denies that OAN engaged in a disinformation campaign.  Defendant further denies that no state or federal government official identified any Smartmatic entity or any election technology or software associated with or connected to any

Smartmatic entity as being used or even potentially implicated in computer fraud, fixing, rigging, or stealing the 2020 U.S. election.  Defendant denies any remaining allegations by Plaintiff against Defendant in Paragraph 292.

**ALLEGATION NO. 293:**

Indeed, election officials and election security experts have long been clear that voter fraud is extraordinarily rare, and our system has strong checks in place to protect the integrity of the voting process in the country.  For example:

**ANSWER:**  Defendant denies the allegations in Paragraph 293.

**ALLEGATION NO. 294:**

On September 24, 2020, Christopher Wray, Director of the FBI, stated during a hearing before the U.S. Senate Committee on Homeland Security and Government Affairs that "we have not seen, historically, any kind of coordinated national voter fraud effort in a major election, whether it's by mail or otherwise."  (9/24/20 CNN, *Republican Party Prepares Lawyers for Election Day Legal Battles; President Trump Accuses FDA of Playing Politics; Interview with Sen. Tammy Duckworth* (Exhibit 109).)

**ANSWER:** The referenced hearing speaks for itself, thus no response is required.  To the extent a response is required, Defendant denies that the statement, quoted out of context, accurately describes U.S. public official or law enforcement views of voter fraud in major elections. Defendant further denies that the quoted statement has any relevance to what actually occurred in the 2020 U.S. election.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 294.

**ALLEGATION NO. 295:**

On November 4, 2020, the National Association of Secretaries of State (NASS) and the National Association of State Election Directors (NASED) issued a statement: "[o]ver the course of the election, more than 100 million ballots were safely and securely cast, both in-person and by mail."  (11/4/20 Post-Election Joint Statement from NASS and NASED (Exhibit 113).)

**ANSWER:** The referenced document speaks for itself, thus no response is required.  To the extent a response is required, Defendant denies that the NASS and the NASED could have efficaciously reached this conclusion about the 2020 U.S. election on the day after the 2020 U.S. election.  In

fact, that the NASS and NASED would issue such a sweeping statement only one day after the

election makes the statement inherently suspect and self-serving (and frankly alarming).

Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 295.

**ALLEGATION NO. 296:**

The NASS and NASED also issued a joint statement on October 30, 2020 to "express their confidence in [the] nation's elections systems, processes, safety and security."  It further stated that "[s]tate election officials have been working diligently to bolster cybersecurity, strengthen existing infrastructure, address election misinformation and disinformation, as well as provide administrative and technical support for local election officials."  And it made clear that "[v]oters and members of the media should be diligent in the face of election misinformation.  Think critically about the source of information before repeating or retweeting it … contact your election official with any questions or concerns and follow verified election official social media accounts." (10/30/20 NASS and NASED 2020 Election Preparations and Reminders (Exhibit 111).)

**ANSWER:** The referenced document speaks for itself, thus no response is required.  To the extent

a response is required, Defendant denies the statement is worthy of reliance.  Defendant further

denies that the statement has any relevance to what actually occurred during the 2020 U.S. election.

Defendant further denies that each and every state election official worked diligently as claimed

in the statement.  Defendant denies any remaining allegations by Plaintiffs against Defendant in

Paragraph 296.

**ALLEGATION NO. 297:**

On November 12, 2020, the U.S. Elections Infrastructure Government Coordinating Council and the Election Infrastructure Sector Coordinating Executive Committees issued a definitive statement that "[t]he November 3rd election was the most secure in American history." It further stated, "[t]here is no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised." And "[o]ther security measures like pre-election testing, state certification of voting equipment, and the U.S. Election Assistance Commission's (EAC) certification of voting equipment help to build additional confidence in the voting systems used in 2020."  (11/12/20 Cybersecurity & Infrastructure Security Agency, *Joint Statement from Elections Infrastructure Government Coordinating Council & the Election Infrastructure Sector Coordinating Executive Committees* (Exhibit 119).)

**ANSWER:** The referenced statement speaks for itself, thus no response is required.  To the extent

a response is required, Defendant denies that the statement was accurate because there was no way

for the statement to be accurate given how complex the issue opined on was and how recently the

election had occurred, nor was there any scientific basis to compare the 2020 U.S. election to prior

ones in U.S. history and to conclude such a short time after the election that the 2020 U.S. election

was the most secure of all elections in U.S. history (in fact, the claim at that point in time was

absurd).   The statement was intrinsically suspect and raised more alarms than it attempted to

resolve.  Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph

297.

**ALLEGATION NO. 298:**

On November 16, 2020, a group of election security specialists issued a statement saying that there was no credible evidence of computer fraud in the 2020 election outcome.  These specialists indicated they had studied the security of voting machines, voting systems, and technology used for government elections for decades.  They stated "[a]nyone asserting that a US election was 'rigged' is making an *extraordinary* claim, one that must be supported by persuasive and verifiable evidence.  Merely citing the existence of technical flaws does not establish that an attack occurred, much less that it altered an election outcome.  It is simply speculation."  Further, "[w]e are aware of alarming assertions being made that the 2020 election was 'rigged' by exploiting technical vulnerabilities.  However, in every case of which we are aware, these claims either have been unsubstantiated or are technically incoherent.  To our collective knowledge, no credible evidence has been put forth that supports a conclusion that the 2020 election outcome in any state has been altered through technical compromise."  (11/16/20 Letter from Election Security Specialists (Exhibit 122).)

**ANSWER:**  The referenced document speaks for itself, thus no response is required.  To the extent

a response is required, Defendant denies that this group of alleged election security specialists

could have efficaciously reached this conclusion this shortly after such a complex election of such

vast scope.  Such a sweeping, conclusory statement was inherently suspect and self-serving, raising

more alarms than it attempted to resolve.  Defendant denies any remaining allegations by Plaintiffs

against Defendant in Paragraph 298.

**ALLEGATION NO. 299:**

On November 19, 2020, it was reported that a spokeswoman for the National Association of Secretaries of State (NASS) said, "[e]lections in the United States of America are administered, run, counted and certified by state and local election officials.  We have never heard of votes being

tabulated in a foreign country." (11/19/20 VERIFY, *No evidence that presidential election votes were tallied overseas* (Exhibit 124).)

**ANSWER:** The referenced document speaks for itself, thus no response is required. To the extent a response is required, Defendant denies that the statement represents reality. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 299.

**ALLEGATION NO. 300:**

On November 29, 2020, a piece was published in which Chris Krebs, Former Director of the CISA, stated that election day "was quiet. And there was no indication or evidence that there was any evidence of hacking or compromise of election systems on, before, or after November 3 . . . We did a good job. We did it right. I'd do it a thousand times over." (11/30/20 CBS News, *Fired Director of U.S. Cyber Agency Chris Krebs Explains Why President Trump's Claims of Election Interference Are False* (Exhibit 128).)

**ANSWER:** The referenced document speaks for itself, thus no response is required. To the extent a response is required, Defendant denies that Chris Krebs' statement is worthy of reliance. Defendant further denies that election day "was quiet." Defendant further denies that there was no indication or evidence that there was any evidence of hacking or compromise of election systems on, before, or after November 3, 2020. Defendant further denies that "we" (whoever "we" is) did a good job, or that "we" (whoever "we" is) did it right. As to whether Mr. Krebs would do "it" a thousand times over, Defendant lacks sufficient information or knowledge to understand what "it" is or to respond to the truth of that allegation and thus denies it. Answering further, Defendant notes that shortly after the claims that there was no evidence of hacking or compromise, it was revealed that a massive computer breach allowed hackers to spend months exploring numerous U.S. government networks and private companies' systems around the world — this was the SolarWinds hack. *See* https://www.npr.org/2020/12/15/946776718/u-s-scrambles-to-understand-major-computer-hack-but-says-little. Moreover, the case of Reality Winner and the 2016 Russian hacking of election poll books demonstrates that the U.S. government is not always upfront with reporting election-related hacks. *See* https://www.theguardian.com/us-

-197-

news/2022/jul/25/reality-winner-leaked-file-on-russia-election-hacking-because-public-was-

being-lied-to.  Defendant denies any remaining allegations by Plaintiffs against Defendant in

Paragraph 300.

**ALLEGATION NO. 301:**

On December 1, 2020, Attorney General William Barr stated that "To date, [DOJ investigators] have not seen fraud on a scale that could have effected a different outcome in the election."  (12/1/20 AP News, *Disputing Trump, Barr says no widespread election fraud* (Exhibit 129).)

**ANSWER:** The referenced alleged statement speaks for itself, thus no response is required.  To

the extent a response is required, Defendant denies that the alleged (and hearsay) statement

definitively demonstrates the absence of fraud on that scale (it simply indicates that such fraud

allegedly had not yet been recognized by Mr. Barr).  Defendant denies any remaining allegations

by Plaintiffs against Defendant in Paragraph 301.

**ALLEGATION NO. 302:**

Fourth, individual states that were contested in the 2020 U.S. election performed audits and/or issued statements verifying their election process and rejecting claims of fraud or rigging. For example:

**ANSWER:** Defendant admits that various state officials verified the results of their elections.

Defendant, however, denies that all state officials believed their elections were unimpeachable (as

widely reported on by the press).  Defendant denies any remaining allegations by Plaintiffs against

Defendant in Paragraph 302.

**ALLEGATION NO. 303:**

Georgia: A November 19, 2020 Audit Report for the Georgia Presidential Contest stated "[f]rom November 11 to November 19, 2020, county election officials in Georgia, conducted a statewide risk-limiting audit of the Presidential Contest from the November 2020 General Election, as ordered by the Georgia Secretary of State."  In reporting the outcome, it noted "the audit confirmed the original result of the election, namely that Joe Biden won the Presidential Contest in the State of Georgia."  (emphasis in original) (11/19/20 Georgia Risk-Limiting Audit Report (Exhibit 53); *see also* 11/19/20 Georgia Secretary of State, *Historic First Statewide Audit of Paper Ballots Upholds Result of Presidential Race* (Exhibit 54) ("Due to the tight margin of the

race and the principles of risk-limiting audits, this audit was a full manual tally of all votes cast. The audit confirmed that the original machine account accurately portrayed the winner of the election.").)

**ANSWER:** The referenced documents speak for themselves, thus no response is required. To the extent a response is required, Defendant admits that the documents contain the quoted statements and that President Biden was declared the winner in Georgia. Defendant, however, lacks sufficient information or knowledge to form a belief as to the truth of the allegations about what county election officials did or what any audits revealed and thus denies those allegations. Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 303.

**ALLEGATION NO. 304:**

On November 30, 2020, Georgia's Secretary of State, Brad Raffensperger, held a press conference and made clear that none of the allegations of potential election violations cast doubt on the integrity of the state's election results. At the conference, he stated: "There are those who are exploiting the emotions of many Trump supporters with fantastic claims, half-truths, misinformation, and, frankly, they are misleading the President as well apparently." (11/30/20 Georgia Press Conference on 2020 Election Recount Update Transcript (Exhibit 55).)

**ANSWER:** The referenced document speaks for itself, thus no response is required. To the extent a response is required, Defendant admits this quote is in the referenced document. Defendant denies that Plaintiffs have accurately characterized the press conference, particularly when viewed in context and wholistically. Defendant lacks sufficient information or knowledge to form a belief as to the truth of what Mr. Raffensperger said at the press conference and therefore denies those allegations. Defendant further denies that anything said by Mr. Raffensperger on November 30, 2020, has any relevance to OAN reporting that preceded that date. Defendant further denies that anything said by Mr. Raffensperger on November 30, 2020, has any relevance to voting

irregularities in other states.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 304.

**ALLEGATION NO. 305:**

On January 6, 2021, Georgia's Secretary of State, Brad Raffensperger, sent a letter to Congress with a "Point by Point Refutation of False Claims about Georgia Elections." It described the multiple steps taken to confirm that the Presidential election result was accurate and the software on the voting machines was accurate.  It includes a section that addresses the allegations regarding Dominion Voting Machines and clearly states the claims were false.  (1/6/21 Georgia Secretary of State Letter to Congress (Exhibit 57).)

**ANSWER:** The referenced document speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that the referenced document appears to be a January 6, 2021 letter from Mr. Raffensperger to Congress, titled as indicated.  Defendant denies that Plaintiffs accurately characterize the letter, particularly when taken in context and wholistically.  Defendant lacks sufficient information or knowledge to form a belief as to the truth of any assertions in the letter and thus denies those allegations.  Defendant further denies that the letter addresses any Smartmatic entity.  Defendant further denies that the letter has any relevance to OAN reporting that predated the letter.  Defendant further denies that the letter has any relevance to voting irregularities outside the state of Georgia.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 305.

**ALLEGATION NO. 306:**

<u>Michigan</u>: Michigan's Bureau of Election made information about its election security available on its website, www.Michigan.gov/ElectionSecurity, including that "[t]here is no evidence voting machines in Michigan have ever been compromised or that votes have been changed."  (1/5/21 Michigan Secretary of State, *Michigan's election was secure and fair, and the results are accurate* (Exhibit 61).)

**ANSWER:** The referenced document speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that the referenced document exists.  Defendant denies that the quote "[t]here is no evidence voting machines in Michigan have ever been compromised

or that votes have been changed" appears in the cited article. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the assertions in the referenced document and thus denies them. Defendant also lacks sufficient information or knowledge to form a belief as to the truth of the allegations of what was available on the referenced website at any given time and thus denies those allegations. Defendant further denies that there was never any evidence of voting errors and irregularities in Michigan or that initial results were 100 percent accurate. Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 306.

## ALLEGATION NO. 307:

Pennsylvania: On November 12, 2020, Governor Tom Wolf tweeted, from his official government account, "Allegations of fraud and illegal activity have been repeatedly debunked. Pennsylvania had a free, fair, and secure election." (Tweet, @GovernorTomWolf, November 12, 2020 (Exhibit 65).)

**ANSWER:** The referenced document speaks for itself, thus no response is required. To the extent a response is required, Defendant admits the existence of this Tweet. Defendant further admits that some allegations of fraud and illegal activity had been debunked but denies that everyone agreed with the debunking, denies that all allegations of fraud and illegal activity had been debunked, and denies that universal unimpeachable debunking was ever possible or that such debunking could have occurred this shortly after the 2020 U.S. election. Defendant lacks sufficient information or knowledge to form a belief as to the assertion in the Tweet that Pennsylvania had a free, fair, and secure election and thus denies that allegation. Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 307.

## ALLEGATION NO. 308:

On November 13, 2020, Governor Wolf issued the following statement: "All Pennsylvanians can have confidence in our election system and the accuracy of the vote." "The U.S. Department of Homeland Security's conclusion that our nation had the most secure election in history reaffirms the commitment to protecting our votes by local, state and national officials.

Allegations of fraud and unfounded rumors of illegal activity have been repeatedly debunked. Those deliberate and false attacks are un-American and harm our democracy, and we should reject them.  I thank the election and cyber-security experts for verifying that our nation's election was protected and secure."   (11/13/20 Governor Tom Wolf, *U.S. Election was 'most secure in American history' Federal Agency says* (Exhibit 66).)

**ANSWER:** The referenced document speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits the existence of the statement.  Defendant further admits that some allegations of fraud and illegal activity had been debunked but denies that everyone agreed with the debunking, denies that all allegations of fraud and illegal activity had been debunked, denies that universal unimpeachable debunking was ever possible or that such debunking could have occurred this shortly after the 2020 U.S. election, and denies that validly questioning election integrity and security is un-American or should be rejected.  Defendant further denies the efficacy of the assertions in the statement given how little time had passed after the 2020 U.S. election.  Defendant further denies that the U.S. Department of Homeland Security, this shortly after the election, could have honestly declared it "the most secure election in history." Defendant further denies that the statement was an honest characterization of reality and further states that it was a self-serving political message to have the electorate accept the vote to instill national stability.   Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 308.

**ALLEGATION NO. 309:**

Arizona: On December 1, 2020, in response to allegations from former President Trump that Arizona's election had been tainted by "corruption," Governor Doug Ducey issued a nine-tweet thread explaining that Arizona's election had been fair and free from fraud.  Specifically, he stated: "In Arizona, we have some of the strongest election laws in the country, laws that prioritize accountability and clearly lay out procedures for conducting, canvassing, and even contesting the results of an election." (Tweet, @DougDucey, December 1, 2020 (Exhibit 68).)

**ANSWER:** The referenced document speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits the existence of the quoted Tweet.  Defendant further

admits that President Donald Trump had alleged that Arizona's election had been tainted by corruption and that that assertion from a sitting U.S. president was newsworthy and appropriate for the news media to report on.  Defendant lacks sufficient information or knowledge to form a belief as to whether Governor Ducey issued a nine-Tweet thread or as to Plaintiffs' characterization of that alleged thread and thus denies those allegations.  Defendant further lacks sufficient information or knowledge to form a belief as to whether Arizona has laws as characterized in the quoted Tweet and thus denies those allegations.  Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 309.

**ALLEGATION NO. 310:**

Wisconsin: On or about December 16, 2020, Wisconsin's Elections Commission, on its website, answered the question of whether Dominion voting equipment flipped votes from Trump to Biden: "[a]bsolutely not.  Twenty-eight reporting units using Dominion systems were randomly selected after the election and audited for the Presidential contest, and all the audits confirmed that the hand-counted paper ballots exactly matched the electronic results from the machines."  It also answered the question of whether there was widespread fraud in the 2020 election–saying there was no evidence of such fraud.  And it stated that the claims made about Dominion have not been substantiated.  (11/16/20 Wisconsin Elections Commission, *Did Dominion Voting Equipment Flip Votes from Trump to Biden* (Exhibit 71).)

**ANSWER:** The referenced document speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits the existence of the quoted statement.  Defendant denies that the statement answered the question of whether there was widespread fraud in the 2020 election or that it stated the claims made against Dominion had not been substantiated.  Defendant denies that Plaintiffs have accurately characterized the statement, particularly when taken in context and wholistically.  Defendant further denies the statement has any relevance to OAN reporting that predated the statement.  Defendant further denies the statement has any relevance to voting irregularities outside the state of Wisconsin.  Defendant further denies that the statement refers to any Smartmatic entity.  Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations about what audits were conducted, the associated results,

the assessments of fraud, or the substantiation of claims against any Dominion entity in Wisconsin

and thus denies those allegations.  Defendant denies any remaining allegations by Plaintiffs against

Defendant in Paragraph 310.

**ALLEGATION NO. 311:**

Nevada: On November 5, 2020, Nevada Governor Steve Sisolak held a press conference, in which he stated: "Nevada is widely recognized as being a leader in election administration, and I continue to have the utmost confidence in the abilities of Nevada's local election officials and Secretary of State Barbara Cegavske to accurately count every eligible vote cast in the Silver State. Our election administration officials are required to keep counting under state law and that is exactly what they'll do until every vote is counted.  Despite national pressure, our election officials and public servants continue to prioritize accuracy and fairness in this process.  That should make all Nevadans proud.  I ask all Nevadans to support our election workers, trust this process and respect the results when they are certified as final."  (11/5/20 Nevada Governor Steve Sisolak, *Governor Sisolak issues statement on President Trump's comments on the election* (Exhibit 73).)

**ANSWER:** The referenced statement speaks for itself, thus no response is required.  To the extent

a response is required, Defendant admits the existence of the statement.  Defendant lacks

information or knowledge to form a belief as to the factual assertions in the statement and thus

denies those allegations.  Defendant denies any remaining allegations by Plaintiffs against

Defendant in Paragraph 311.

**ALLEGATION NO. 312:**

And Nevada state officials have expressly stated after certification of the election results that there was no evidence of voter fraud.  In Secretary of State Barbara Cegavske's "*Facts v. Myths: Nevada 2020 Post-General Election*" document, posted on the Nevada Secretary of State website, the Secretary stated, "we have yet to see any evidence of widespread fraud."  (Facts v. Myths: Nevada 2020 Post-General Election (Exhibit 74).)

**ANSWER:** The referenced document speaks for itself, thus no response is required.  To the extent

a response is required, Defendant admits that the document exists.  Defendant denies that the

quoted statement says there was no evidence of voter fraud (rather, the quoted statement says that

no evidence of widespread fraud had been found yet).  Defendant lacks sufficient information or

knowledge to form a belief as to the factual assertions in the statement and thus denies those allegations.  Defendant denies any remaining allegations in Paragraph 312 against Defendant.

**ALLEGATION NO. 313:**

In addition, on November 10, 2020, the New York Times reported contacting officials in every state on November 9 and 10, and that officials in all states but Texas reported no major voting issues.  (11/10/20 The New York Times, *The Times Called Officials in Every State: No Evidence of Voter Fraud* (Exhibit 115).)

**ANSWER:**  The referenced document speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits the referenced article exists.  Defendant lacks sufficient information or knowledge to form a belief as to whether the newspaper contacted officials in every state or what the officials said in response thus Defendant denies those allegations.  Defendant further denies that there were no major voting issues (or that that conclusion could even be reached this shortly after the election).  Defendant further denies that the headline to the article is accurate. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 313.

**ALLEGATION NO. 314:**

Fifth, election technology companies issued public statements rejecting claims of fraud or rigging the 2020 U.S. election.  For example, on November 7, 2020, Dominion issued a statement that "[t]here are no credible reports or evidence of any system software errors in Georgia or Michigan."  (11/7/20 Dominion, *Statement on Viral Claims/Rumors About Dominion Voting Systems* (Exhibit 80).)

**ANSWER:**  The referenced document speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits the document exists.  Defendant denies that election technology companies should be trusted in relation to their self-serving statements about their own technology.  Defendant further denies that any Dominion entity could have honestly concluded this soon after the election that there were absolutely no credible reports or evidence of any system software errors in the referenced states.  Defendant further denies that any Smartmatic entity is

referred to in this allegation.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 314.

## ALLEGATION NO. 315:

On November 13, 2020, Dominion's website included a page to set the record straight, including that the U.S. Department of Homeland Security's Cybersecurity and Infrastructure Security Agency (CISA) has debunked claims of voter fraud.  It further stated "[n]o credible reports or evidence of any software issues exist.  While no election is without isolated issues, Dominion Voting Systems are reliably and accurately counting ballots.  State and local officials have publicly confirmed the integrity of the process."  (11/13/20 Dominion, *Election 2020: Setting the Record Straight: Facts & Rumors* (Exhibit 81); 11/17/20 Dominion, *Setting the Record Straight, Facts & Rumors* (Exhibit 82); 12/3/20 Dominion, *Election 2020: Setting the Record Straight: Facts & Rumors* (Exhibit 86).)

**ANSWER:** The referenced documents speak themselves, thus no response is required.  To the extent a response is required, Defendant admits that the documents exist.  Defendant denies that this shortly after the election, CISA could have debunked all claims of voter fraud.  Defendant further denies that no credible reports or evidence of any software issues existed.  Defendant further denies that any Dominion entity's systems always reliably and accurately count ballots.  Defendant further denies that this allegation refers to any Smartmatic entity.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 315.

## ALLEGATION NO. 316:

Sixth, on December 18, 2020, Dominion sent a retraction demand letter to OANN and its executive officers, including Robert Herring (CEO), Charles Herring (President), and Bruce Littman (Executive Vice President).  (Dominion Retraction Demand Letters to OANN (Exhibit 48).)  The December 18, 2020 letter included information demonstrating that the claims OANN had been broadcasting and publishing about Smartmatic were false.  For example, the letter included the following information:

a.   That the "vote counts from Dominion's machines have been verified by independent audits and recounts of paper ballots";

b.   CISA's November 12 statement that there was "no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised";

c.    A link to a statement by fifty-nine "specialists in election security" that "no credible evidence has been put forth that supports a conclusion that the 2020 election outcome in any state has been altered through technical compromise";

d.    A link to a statement by the Chairman of Maricopa County Board of Supervisors that "the system used in Maricopa County is accurate and provided voters with a reliable election;"

e.    A link to a statement by Georgia Secretary of State Brad Raffensperger that "the state's new secure paper ballot voting system accurately counted and reported results" in Georgia.

**ANSWER:** The referenced letter speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits the existence of the letter.  Defendant denies that the letter demonstrated that OAN reporting about any Smartmatic entity was false.   Defendant further denies that the quoted statements are about any Smartmatic entity.  Defendant further denies that vote counts by all Dominion machines were verified by independent audits and paper ballot counting.  Defendant further denies there was no evidence of erroneous votes.  Defendant further denies there was no credible evidence of compromise.  Defendant further denies that the Maricopa County system is reliable.  Defendant further denies there were no errors in Georgia.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 316.

**ALLEGATION NO. 317:**

In all, beginning on December 18, 2020—and repeatedly thereafter, including but not limited to, December 22, 2020, December 29, 2020, February 4, 2021, February 12, 2021, April 16, 2021, May 12, 2021, June 18, 2021, July 13, 2021, and August 4, 2021—Dominion sent OANN correspondence detailing OANN's defamatory falsehoods about Dominion, explaining how and why those defamatory falsehoods were factually inaccurate, and providing citations to independent sources confirming the falsity of those calculated falsehoods and the calculated falsehoods made about Smartmatic.

**ANSWER:** The referenced letters speak for themselves, thus no response is required.  To the extent a response is required, Defendant admits the existence of the letters.  Defendant denies that the letters prove falsehoods, inaccuracies, or corroboration of falsity or calculated falsity.

Defendant further denies the letters addressed any Smartmatic entity. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 317.

**ALLEGATION NO. 318:**

Seventh, Smartmatic sent OANN a retraction demand letter on December 11, 2020. (12/11/20 Retraction Demand Letter to OANN (Exhibit 46).) The 14-page letter identified some of OANN's false statements that Smartmatic fixed, rigged, and stole the 2020 U.S. election for Joe Biden and Kamala Harris and the Democratic Party and explained why those statements were false.

**ANSWER:** The referenced letter speaks for itself, thus no response is required. To the extent a response is required, Defendant admits the existence of the letter. Defendant denies the letter proves false statements. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 318.

**ALLEGATION NO. 319:**

Eighth, Smartmatic filed suit against Fox Corporation, Fox News Network LLC, Lou Dobbs, Maria Bartiromo, Jeanine Pirro, Rudolph Giuliani, and Sidney Powell on February 4, 2021. (Fox Complaint (Exhibit 148).) Smartmatic's Fox Complaint laid out all of the above facts establishing that Smartmatic's election technology and software were not used to fix, rig, or steal the 2020 U.S. election.

**ANSWER:** The referenced document speaks for itself, thus no response is required. To the extent a response is required, Defendant admits the referenced complaint exists. Defendant denies the allegations in the complaint to the extent any Smartmatic entity suggests they apply to Defendant. Defendant further denies that all technology and software connected to or associated with any Smartmatic entity has been evaluated for evidence of tampering. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 319.

      3.      **OAN knew of allegations that election equipment and software with ties to Smartmatic-related entities were compromised during the 2020 U.S. election and facilitated foreign access.**

**ALLEGATION NO. 320:**

Information was available to OANN that showed its statements about Smartmatic's election technology and software being compromised or hacked during the 2020 U.S. election or sending votes overseas to be compromised or hacked were false. OANN either ignored this information, and thereby acted with reckless disregard or published its false statements knowing they were false based on this information.

**ANSWER:** The allegations contained in Paragraph 320 are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 320.

**ALLEGATION NO. 321:**

First, as discussed above, before the disinformation campaign, there was publicly available and easily accessible information that Smartmatic's technology and software were used in only one county in the 2020 U.S. election, Los Angeles County. OANN statements about compromises and/or hacking for the 2020 U.S. election primarily related to contested states and did not include the one state where Smartmatic's election technology and software were used (California was not contested). This information also made clear that the system Smartmatic provided to Los Angeles County does not count, tabulate, or store votes. The technology and software used by Smartmatic in the 2020 U.S. election did not count votes, much less send them to a foreign country for counting.

**ANSWER:** Defendant denies the allegations in Paragraph 321.

**ALLEGATION NO. 322:**

Second, before and during the disinformation campaign, there was publicly available information that showed there were no issues in the one county where Smartmatic's election technology and software were used during the 2020 U.S. election, Los Angeles County. Smartmatic and its system came through the 2020 election in that county "with flying colors," as noted by an initial case study made available on Smartmatic's website. There are no reports that Smartmatic's election technology and software had been compromised or hacked. (11/11/20 Smartmatic, *Los Angeles County—Voting Solutions for All People* (Exhibit 117); 11/10/20 Los Angeles Times, *L.A.'s $300-million voting systems gets high marks as votes trickle in across California* (Exhibit 116).)

**ANSWER:** Defendant denies the allegations in Paragraph 322.

**ALLEGATION NO. 323:**

There was also information publicly available before the disinformation campaign about the work of Los Angeles County to certify Smartmatic's voting system for use, including descriptions of the state testing and certification process, which exceeds the guidelines recommended by the U.S. Elections Assistance Commission (EAC) (and California's standards are also considered the most rigorous in the country). That information showed that every voting system goes through functional testing, source code review, accessibility and volume testing, and red team security testing that involved experts trying to "break into" the voting system. Smartmatic's system for Los Angeles County passed. (10/1/20 California Secretary of State Press Release, *Los Angeles County Launches VSAP 2.1 Voting System Certified* (Exhibit 49); 12/15/20 California Secretary of State, *Voting Technologies Approved for Use in California* (Exhibit 51).)

**ANSWER:** The referenced documents speak for themselves, thus no response is required. To the extent a response is required, Defendant admits the documents exist. Defendant denies that Plaintiffs accurately characterize the documents. Defendant further denies that it engaged in a disinformation campaign. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the assertions in the referenced documents and thus denies them. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 323.

**ALLEGATION NO. 324:**

The Smartmatic system that was actually used in the general election for Los Angeles County was VSAP 2.1, which was certified by California in October 2020. California Secretary of State Padilla said in a press release that VSAP was an "historic milestone in election administration" and that the "public design and testing process for VSAP was one of the lengthiest and most inclusive ever conducted for voting technology." Secretary Padilla said that the system underwent functional testing and source code review, among other things, and that California's Voting System Standards exceeded the Voluntary Voting System Guidelines recommended by the U.S. Elections Assistance Commission and "are considered the most rigorous in the country." In his October 1, 2020 certification, Secretary Padilla stated that VSAP 2.1 "satisfies the accuracy, accessibility, usability, and security standards set forth in the California Voting Systems Standards and California law." (10/1/20 California Secretary of State, *Conditional Approval of Los Angeles County's Voting Solutions for All People (VSAP) 2.1 Voting Systems* (Exhibit 50).)

**ANSWER:** The referenced document speaks for itself, thus no response is required. To the extent a response is required, Defendant admits the referenced document exists. Defendant lacks sufficient information or knowledge to form a belief as to the truth about what precise system was

used or certified in California and thus denies those allegations.  Defendant further lacks sufficient

information or knowledge to form a belief as to the truth of the factual assertions in the referenced

statement and thus denies those allegations.  Defendant further denies any remaining allegations

by Plaintiffs against Defendant in Paragraph 324.

**ALLEGATION NO. 325:**

Third, as discussed above, before and during the disinformation campaign, there was publicly available information that the 2020 U.S. election was secure, and federal and state officials confirmed there was no basis to any claims of hacking.  For example:

a.     On November 4, 2020, the Director of the Cybersecurity and Infrastructure Security Agency issued a statement that "after millions of Americans voted, we have no evidence any foreign adversary was capable of preventing Americans from voting or changing vote tallies."  (11/4/20 Statement from CISA Director Krebs Following Final Day of Voting (Exhibit 114).)

b.     On November 12, 2020, the U.S. Elections Infrastructure Government Coordinating Council and the Election Infrastructure Sector Coordinating Executive Committees issued a joint statement that "[t]he November 3rd election was the most secure in American history.  Right now, across the country, election officials are reviewing and double checking the entire election process prior to finalizing the result."  It further stated, "[t]here is no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised."  And "[o]ther security measures like pre- election testing, state certification of voting equipment, and the U.S. Election Assistance Commission's (EAC) certification of voting equipment help to build additional confidence in the voting systems used in 2020."  "While we know there are many unfounded claims and opportunities for misinformation about the process of our elections, we can assure you we have the utmost confidence in the security and integrity of our elections, and you should too."  (11/12/20 Cybersecurity & Infrastructure Security Agency, *Joint Statement from Elections Infrastructure Government Coordinating Counsel & the Election Infrastructure Sector Coordinating Executive Committees* (Exhibit 119).)

c.     On November 12, 2020, a competitor company's Vice Chair, Sam Derheimer, signed the Joint Statement from the Elections Infrastructure Government Coordinating Council & the Election Infrastructure Sector Coordinating Executive Committees providing that "There is no evidence that any voting system deleted or lost votes, changed votes, or was in any compromised."  (11/12/20 Cybersecurity & Infrastructure Security Agency, *Joint Statement from Elections Infrastructure Government Coordinating Council & the Election Infrastructure Sector Coordinating Executive Committees* (Exhibit 119).)

d.    On December 1, 2020, Attorney General Barr specifically addressed OANN's claims about Smartmatic and Dominion in an interview with the Associated Press: "There's been one assertion that would be systemic fraud and that would be the claim that machines were programmed essentially to skew the election results. And the DHS and DOJ have looked into that, and so far, we haven't seen anything to substantiate that." (12/1/20 AP News, *Disputing Trump, Barr says no widespread election fraud* (Exhibit 129).)

**ANSWER:** The referenced statements and articles speak for themselves, thus no response is required. To the extent a response is required, Defendant admits the existence of the statements and articles. Defendant denies the efficacy or accuracy of the factual assertions in the statements and articles. Defendant denies that it engaged in a disinformation campaign. Defendant further denies the 2020 U.S. election was completely secure. Defendant further denies that there was no basis for claims of hacking. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 325.

**ALLEGATION NO. 326:**

Fourth, there was publicly available information by government officials that have authority over the election process about procedures and processes to test and certify any election technology used, including for the 2020 U.S. election. The information clearly shows various and rigorous testing and certification processes to prevent hacking or any compromise to the voting systems during the election. (CISA, #Protect2020 Rumor vs. Reality (Exhibit 134).)

**ANSWER:** The referenced document speaks for itself, thus no response is required. To the extent a response is required, Defendant admits the existence of the document. Defendant denies the document prevents hacking or any compromise of voting systems during an election. Defendant lacks sufficient information or knowledge to form a belief as to what degree the document or information therein has been implemented and thus denies those allegations. Defendant denies any remaining allegations by Plaintiff against Defendant in Paragraph 326.

**ALLEGATION NO. 327:**

Fifth, before and during the disinformation campaign, Smartmatic's website indicated that its technology had been validated by institutions such as the Carter Center, the United Nations, the Organization of American States, and the European Union. Smartmatic also provided information

that its election software had processed more than 5 billion votes over 20 years without a breach. (11/27/20 Smartmatic, *Smartmatic Fact-checked* (Exhibit 77).)

**ANSWER:** The referenced document speaks for itself, thus no response is required. To the extent a response is required, Defendant admits the document exists. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegation about validation and thus denies it. Defendant also lacks sufficient information or knowledge to form a belief as to the truth of the allegation of the processing of more than 5 billion votes over 20 years and thus denies it. Defendant denies that it engaged in a disinformation campaign. Defendant further denies that no Smartmatic entity has ever suffered a breach. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 327.

**ALLEGATION NO. 328:**

Sixth, there were articles available on Smartmatic's website before and during the disinformation campaign about the use of Smartmatic's technology and software in Los Angeles County (and owned by the county). These articles show that the technology is not connected to the Internet, is not used to count votes, and does not store any data. It is noted that county officials tabulate votes by counting the paper ballots produced by the devices and cast by voters. (11/11/20 Smartmatic, *Los Angeles County—Voting Solutions for All People* (Exhibit 117).)

**ANSWER:** The referenced document speaks for itself, thus no response is required. To the extent a response is required, Defendant admits the referenced document exists. Defendant denies it engaged in a disinformation campaign. Defendant lacks sufficient information or knowledge to form a belief as to what articles have been posted over time to any Smartmatic website and thus denies those allegations. Defendant also lacks sufficient information or knowledge to form a belief as to the truth of any factual assertions in those articles and thus denies those allegations. Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 328.

**ALLEGATION NO. 329:**

Seventh, as discussed above, on November 19, 2020, it was reported that a spokeswoman for the National Association of Secretaries of State (NASS) said: "Elections in the United States of America are administered, run, counted and certified by state and local election officials. We

have never heard of votes being tabulated in a foreign country." (11/19/20 VERIFY, *No evidence that presidential election votes were tallied overseas* (Exhibit 124).)

**ANSWER:** The referenced document speaks for itself, thus no response is required. To the extent a response is required, Defendant admits the existence of the referenced document. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegation that an NASS spokeswoman said what was quoted or whether what was quoted was factually accurate, thus Defendant denies those allegations. Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 329.

**ALLEGATION NO. 330:**

Eighth, before and during the disinformation campaign, various companies providing election technology issued statements contradicting claims related to votes being sent to foreign countries. (11/13/20 Scytl, *Scytl strongly denies the false information related to the U.S. elections* (Exhibit 120); 11/13/20 Dominion, *Election 2020: Setting the Record Straight: Facts & Rumors* (Exhibit 81); 11/21/20 Dominion, *Election 2020: Setting the Record Straight: Facts & Rumors* (Exhibit 83); 11/26/20 Dominion, *Statement from Dominion on Sidney Powell's Charges* (Exhibit 85); 12/3/20 Dominion, *Election 2020: Setting the Record Straight: Facts & Rumors* (Exhibit 86).)

**ANSWER:** The referenced documents speak for themselves, thus no response is required. To the extent a response is required, Defendant admits the referenced documents exist. Defendant denies OAN engaged in a disinformation campaign. Defendant further denies Plaintiffs have accurately characterized the referenced documents. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 330.

**ALLEGATION NO. 331:**

Ninth, it was widely reported and known in November 2020 that claims related to votes being sent to foreign countries were false. (11/16/20 Reuters, *Fact check: the U.S. military has not seized election servers in Germany* (Exhibit 123); 11/19/20 AP News, *AP FACT CHECK: Trump legal team's batch of false vote claims* (Exhibit 125); 11/15/20 AP News, *False reports claim election servers were seized in Germany* (Exhibit 121).)

**ANSWER:** The referenced articles speak for themselves, thus no response is required. To the extent a response is required, Defendant admits the existence of the referenced articles. Defendant

denies that Plaintiffs have accurately characterized the articles.  Defendant further denies that it was widely known in November 2020 that claims related to votes being sent to foreign countries were false, and Defendant denies that foreign companies are not involved in U.S. elections. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 331.

**ALLEGATION NO. 332:**

Tenth, on December 18, 2020, Dominion sent a retraction demand letter to OANN and its executive officers, including Robert Herring (CEO), Charles Herring (President), and Bruce Littman (Executive Vice President). (Dominion Retraction Demand Letters to OANN (Exhibit 48).) The December 18, 2020 letter included information demonstrating that the claims OANN had been broadcasting and publishing about Smartmatic were false.  For example, the letter included the following information:

a.  CISA's November 12 statement that there was "no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised";

b.  A link to a statement by fifty-nine "specialists in election security" that "no credible evidence has been put forth that supports a conclusion that the 2020 election outcome in any state has been altered through technical compromise";

c.  A link to a statement by U.S. Attorney General Bill Barr that "we haven't seen anything to substantiate" allegations that "machines were programmed essentially to skew the election results."

**ANSWER:** The referenced letter speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits the existence of the letter.  Defendant denies that OAN engaged in a disinformation campaign.  Defendant further denies that the letter demonstrated that OAN statements about any Smartmatic entity were false.  Defendant further denies the letter was about any Smartmatic entity.  Defendant further denies the efficacy or accuracy of the underlying statements by CISA, the 59 alleged specialists, or Mr. Barr.  Defendant further denies there was

no evidence of lost or changed votes or compromise.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 332.

## ALLEGATION NO. 333:

In all, beginning on December 18, 2020—and repeatedly thereafter, including but not limited to, December 22, 2020, December 29, 2020, February 4, 2021, February 12, 2021, April 16, 2021, May 12, 2021, June 18, 2021, July 13, 2021, and August 4, 2021—Dominion sent OANN correspondence detailing OANN's defamatory falsehoods about Dominion, explaining how and why those defamatory falsehoods were factually inaccurate, and providing citations to independent sources confirming the falsity of those calculated falsehoods and the calculated falsehoods made about Smartmatic.

**ANSWER:**  The referenced letters speak for themselves, thus no response is required.  To the extent a response is required, Defendant admits the existence of the letters.  Defendant denies that the letters prove falsehoods, inaccuracies, or corroboration of falsity or calculated falsity. Defendant further denies the letters addressed any Smartmatic entity.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 333.

## ALLEGATION NO. 334:

Eleventh, Smartmatic sent OANN a retraction demand letter on December 11, 2020. (12/11/20 Retraction Demand Letter to OANN (Exhibit 46).)  The 14-page letter identified some of OANN's false statements that Smartmatic's election technology and software were compromised or hacked during the 2020 U.S. election and while votes were sent to foreign countries for tabulation and explained why those statements were false.

**ANSWER:**  The referenced letter speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits the existence of the letter.  Defendant denies the letter proves false statements.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 334.

## ALLEGATION NO. 335:

Twelfth, Smartmatic filed suit against Fox Corporation, Fox News Network LLC, Lou Dobbs, Maria Bartiromo, Jeanine Pirro, Rudolph Giuliani, and Sidney Powell on February 4, 2021. (Fox Complaint (Exhibit 148).)  Smartmatic's Fox Complaint laid out all of the above facts establishing that Smartmatic's election technology and software were not compromised or hacked

during the 2020 U.S. election and that Smartmatic did not send votes to foreign countries for tabulation during the 2020 U.S. election.

**ANSWER:** The referenced complaint speaks for itself, thus no response is required. To the extent a response is required, Defendant admits the referenced complaint exists. Defendant denies the allegations in the complaint to the extent any Smartmatic entity suggests they apply to Defendant. Defendant further denies that all technology and software connected to or associated with any Smartmatic entity has been evaluated for evidence of tampering. Defendant further denies that no foreign Smartmatic entity possesses or has access to U.S. data. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 335.

### 4.    OAN knew Smartmatic-related entities had ties to foreign leaders.

**ALLEGATION NO. 336:**

Information was available to OANN that showed its statements about Smartmatic being controlled by corrupt dictators were false. OANN either ignored this information, and thereby acted with reckless disregard or published its false statements knowing they were false based on this information.

**ANSWER:** The allegations in Paragraph 336 contain legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 336.

**ALLEGATION NO. 337:**

First, before and during the disinformation campaign, information about the corporate status of Smartmatic U.S.A. was publicly available and easy to confirm from state and other public filings. It was founded and maintains its base office in Boca Raton, Florida. Indeed, its filing with the Florida Secretary of State identifies that it is incorporated in Delaware and has a business address in Boca Raton, Florida. (7/13/12 Florida Division of Corporations Smartmatic USA Corp. Filing Record (Exhibit 94).)

**ANSWER:** The referenced document speaks for itself, thus no response is required. To the extent a response is required, Defendant admits the existence of the referenced document. Defendant denies that no Smartmatic entity or Smartmatic-affiliated entity is foreign or connected to Venezuela. Defendant further denies that Plaintiffs' allegations in Paragraph 337 completely or

accurately describe all Smartmatic entities and Smartmatic-affiliated entities.  Defendant further

denies the allegations in Paragraph 337 as intentionally misleading and part and parcel of the

Smartmatic entities' and Smartmatic-affiliated entities' disinformation campaign to cloak their

foreign ties (including but not limited to those to Venezuela).  Defendant further denies any

remaining allegations by Plaintiffs against Defendant in Paragraph 337.

## ALLEGATION NO. 338:

Second, before and during the disinformation campaign, information about the corporate status of SGO Corporation was publicly available and easy to confirm from public filings.  Since its inception, SGO Corporation has reported and updated information about its shareholders to the government of the United Kingdom and that information is publicly available on a government website.

**ANSWER:** Defendant denies that it engaged in a disinformation campaign.  Defendant lacks

sufficient information or knowledge to form a belief as to the truth of the allegation about a

government website because, for instance, Plaintiffs fail to specify the website address, thus

Defendant denies this allegation.  Defendant also lacks sufficient information or knowledge to

form a belief about whether information about the status of SGO Corporation was widely available

and easy to confirm from public filings, thus Defendant denies this allegation.  Defendant also

lacks sufficient information or knowledge to form a belief about SGO Corporation's alleged

reporting to shareholders, thus Defendant denies this allegation.   Defendant further denies that

Plaintiffs' allegations in Paragraph 338 completely or accurately describe all Smartmatic entities

and Smartmatic-affiliated entities.  Defendant further denies the allegations in Paragraph 338 as

intentionally misleading and part and parcel of the Smartmatic entities' and Smartmatic-affiliated

entities' disinformation campaign to cloak their foreign ties (including but not limited to those to

Venezuela).  Defendant further denies any remaining allegations by Plaintiffs against Defendant

in Paragraph 338.

**ALLEGATION NO. 339:**

Third, before and during the disinformation campaign, information about the corporate status of Smartmatic was publicly available from its website.  Its website notes it is a U.S. company, regardless of where its founders or shareholders happen to have been born.  It states that it has no ties to governments or political parties—no alliances, relationships or "deals" with any politician, political organization, or government.  It also states that its founders adhere to a strict ethics code that prohibits them from making political donations.  (11/14/20 Smartmatic, *Smartmatic Fact-checked* (Exhibit 75); 11/27/20 Smartmatic, *Smartmatic Fact-checked* (Exhibit 77).)

**ANSWER:** The referenced website speaks for itself, thus no response is required.  To the extent

a response is required, Defendant admits the existence of at least one Smartmatic-entity-related

website.  Defendant lacks sufficient information or knowledge to form a belief as to what was

available on any Smartmatic-entity-related website over the course of time and thus denies any

related allegations.  Defendant further denies OAN engaged in a disinformation campaign.

Defendant further denies that information about all Smartmatic entities and all Smartmatic-

affiliated entities was or ever has been publicly available anywhere.  Defendant further denies that

Smartmatic, as defined by Plaintiffs to include all three of them, is a U.S. company.  Defendant

further denies that birthplace is the only connection the founders of any Smartmatic entity or

Smartmatic-affiliated entity have to Venezuela.  Defendant further denies that no Smartmatic

entity or Smartmatic-affiliated entity has ever had ties to governments or political parties.

Defendant further denies that the founders of any Smartmatic entity or Smartmatic-affiliated entity

have never made political donations.  Defendant further denies that Plaintiffs' allegations in

Paragraph 339 completely or accurately describe all Smartmatic entities and Smartmatic-affiliated

entities. Defendant further denies the allegations in Paragraph 339 as intentionally misleading and

part and parcel of the Smartmatic entities' and Smartmatic-affiliated entities' disinformation

campaign to cloak their foreign ties (including but not limited to those to Venezuela).  Defendant

further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 339.

**ALLEGATION NO. 340:**

Fourth, before and during the disinformation campaign, information about Smartmatic's history with Venezuela was publicly available from its website and other sources.  The company was founded by three engineers from Venezuela.  And the company has made public statements that they do not have any ties to Venezuela or Hugo Chávez. (10/30/06 Fox News, *Voting Machines Cos: No Ties to Chávez* (Exhibit 92).)

**ANSWER:** The referenced website speaks for itself, thus no response is required.  To the extent

a response is required, Defendant admits the existence of at least one Smartmatic-entity-related

website.  Defendant lacks sufficient information or knowledge to form a belief as to what was

available on any Smartmatic-entity-related website over the course of time and thus denies any

related allegations.  Defendant further denies OAN engaged in a disinformation campaign.

Defendant further denies that information about all Smartmatic entities and all Smartmatic-

affiliated entities was or ever has been publicly available anywhere.  Defendant admits that it has

been widely reported that at least one Smartmatic entity was founded by three Venezuelan

engineers.  Defendant denies that birthplace is the only connection the founders of any Smartmatic

entity or Smartmatic-affiliated entity have to Venezuela.  Defendant further denies that Plaintiffs'

allegations in Paragraph 340 completely or accurately describe all Smartmatic entities and

Smartmatic-affiliated entities.  Defendant further denies the allegations in Paragraph 340 as

intentionally misleading and part and parcel of the Smartmatic entities' and Smartmatic-affiliated

entities' disinformation campaign to cloak their foreign ties (including but not limited to those to

Venezuela).  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 340.

## ALLEGATION NO. 341:

For example, a March 2020 Politico article referenced in one of Fox News's broadcasts indicated that Smartmatic never had ties to the Venezuelan government (but simply supplied voting machines used in elections there) and that there is no ownership by the Venezuelan government in the company.  (3/3/20 Politico, *Los Angeles Voting Experiment* (Exhibit 106).)  On information and belief, OANN followed Fox News's coverage of Smartmatic after the election.

**ANSWER:** The referenced article speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits the existence of the article.  Defendant denies that no Smartmatic entity or Smartmatic-affiliated entity ever had ties to the Venezuelan government. Defendant further denies that the Venezuelan government never had any ownership interest in any Smartmatic entity or Smartmatic-affiliated entity.  Defendant further denies that Plaintiffs have accurately characterized the article.  Defendant lacks knowledge or information sufficient to form a belief as to whether or when OAN became aware of the referenced article before reading the Complaint, thus Defendant denies the allegation that OAN saw this article when Fox News allegedly reported about it.  Defendant further denies that Plaintiffs' allegations in Paragraph 341 completely or accurately describe all Smartmatic entities and Smartmatic-affiliated entities. Defendant further denies the allegations in Paragraph 341 as intentionally misleading and part and parcel of the Smartmatic entities' and Smartmatic-affiliated entities' disinformation campaign to cloak their foreign ties (including but not limited to those to Venezuela).  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 341.

## ALLEGATION NO. 342:

Fifth, before and during the disinformation campaign, information about Smartmatic's participation in election projects in Venezuela was publicly and widely known.  Smartmatic did elections there from 2004 to 2017 but stopped its work there after blowing the whistle on false results reported by the government for the 2017 election.  Indeed, its technology helped prove the government was reporting false turnout numbers.  (3/6/18 Business Wire, *Smartmatic Announces*

*Cease of Operations in Venezuela* (Exhibit 98); 11/27/20 Smartmatic, *Smartmatic Fact-checked* (Exhibit 77).)

**ANSWER:** The referenced article and document speak for themselves, thus no response is required. To the extent a response is required, Defendant admits the article and document exist. Defendant denies that OAN engaged in a disinformation campaign. Defendant further denies that no Smartmatic entity or Smartmatic-affiliated entity has ties to Venezuela because Plaintiffs admit in Paragraph 342 that "Smartmatic" (which Plaintiffs have defined to include **all three of them, including the alleged U.S. entity**) "did elections there from 2004 to 2017" (a period of 13 years). Defendant denies any Smartmatic entity engaged in innocent and honest whistle-blowing related to Venezuela. Defendant is without sufficient information or knowledge to form a belief as to the truth of the allegation that any Smartmatic entity's technology helped prove false turnout numbers in Venezuela, thus Defendant denies that allegation. Defendant further denies that the full scope of all Smartmatic entities' and Smartmatic-affiliated entities' participation in election projects in Venezuela is publicly known, and Defendant further states its intent to seek discovery related to that, including from the currently pending international arbitration between one or more Smartmatic entities and Venezuela. Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 342.

## ALLEGATION NO. 343:

Sixth, before and during the disinformation campaign, information about Smartmatic's history was publicly available from an interview with Lord Mark Malloch-Brown broadcasted on ABS-CBN News on or around June 21, 2015. (6/21/15 ABS-CBN News, *Smartmatic denies being favored by COMELEC*.) In the interview, Lord Malloch-Brown stated "[Smartmatic] was never a Venezuelan company. It started in Florida." During the disinformation campaign, OANN was aware of this interview. OANN broadcast video or sound clips from this interview numerous times, including but not limited to, *Tipping Point*, November 20, and *News Room*, 9AM, December 5, 2020.

**ANSWER:** The referenced interview and OAN programming speak for themselves, thus no response is required. To the extent a response is required, Defendant admits the existence of the

interview and OAN programming.  Defendant further admits OAN was aware of the interview when OAN broadcast the referenced programming.  Defendant denies that OAN engaged in a disinformation campaign.  Defendant further denies that Plaintiffs accurately characterize the full interview.  Defendant further denies that the full history of all Smartmatic entities and Smartmatic-affiliated entities is publicly available.  Defendant further denies that no Smartmatic entity or Smartmatic-affiliated entity was a Venezuelan company.  Defendant further denies that all Smartmatic entities and Smartmatic-affiliated entities were started in Florida.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 343.

## ALLEGATION NO. 344:

Seventh, Smartmatic sent OANN a retraction demand letter on December 11, 2020. (12/11/20 Retraction Demand Letter to OANN (Exhibit 46).) The 14-page letter identified some of OANN's false statements that Smartmatic is a Venezuelan company founded and funded by corrupt dictators and explained why those statements were false.

**ANSWER:** The referenced letter speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits the existence of the letter.  Defendant denies the letter proves false statements.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 344.

## ALLEGATION NO. 345:

Eighth, Smartmatic filed suit against Fox Corporation, Fox News Network LLC, Lou Dobbs, Maria Bartiromo, Jeanine Pirro, Rudolph Giuliani, and Sidney Powell on February 4, 2021. (Fox Complaint (Exhibit 148).)  Smartmatic's Fox Complaint laid out all of the above facts establishing that the statements OANN made about Smartmatic's history were false.

**ANSWER:** The referenced complaint speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits the referenced complaint exists.  Defendant denies the allegations in the complaint to the extent any Smartmatic entity suggests they apply to Defendant.

Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph

345.

### 5. OAN knew of allegations that election equipment and software with ties to Smartmatic-related entities were designed to be manipulated in the past.

**ALLEGATION NO. 346:**

Information was available to OANN that showed its statements about Smartmatic's election technology and software being designed and used to fix, rig, or steal elections and successfully doing so in prior elections were false. OANN either ignored this information, and thereby acted with reckless disregard or published its false statements knowing they were false based on this information.

**ANSWER:** The allegations in Paragraph 346 contain legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 346.

**ALLEGATION NO. 347:**

First, before and during the disinformation campaign, information about audited elections that Smartmatic participated in, all over the world, was publicly available, and such information does not support statements that its election technology has been used to fix, rig, or steal elections.

**ANSWER:** Defendant denies allegations in Paragraph 347.

**ALLEGATION NO. 348:**

Second, before and during the disinformation campaign, information about the success and security of Smartmatic's election technology and software was publicly available from its website. For example, its website stated that its election technology had handled billions of votes in election projects on five continents, without a single discrepancy, and has never been compromised. Its election technology and software were designed to ensure secure, transparent, and auditable elections (and not to change votes or rig elections). (Smartmatic, *Facts About Smartmatic* (Exhibit 78).)

**ANSWER:** The referenced website speaks for itself, thus no response is required. To the extent

a response is required, Defendant admits the existence of at least one Smartmatic-entity-related

website. Defendant lacks sufficient information or knowledge to form a belief as to what was

available on any Smartmatic-entity-related website over the course of time and thus denies any

related allegations. Defendant further denies OAN engaged in a disinformation campaign.

Defendant further denies Plaintiffs' claims of success and security. Defendant further denies that information about all Smartmatic entities and all Smartmatic-affiliated entities was or ever has been publicly available anywhere. Defendant further denies that no software or technology used by any Smartmatic entity or Smartmatic-affiliated entity ever suffered a single discrepancy, error, or compromise. Defendant lacks sufficient information or knowledge to form a belief as to any Smartmatic entity's or Smartmatic-affiliated entity's intent throughout the course of history, thus Defendant denies any allegations related to intent. Defendant further denies that all software and technology associated with any Smartmatic entity or Smartmatic-affiliated entity has always ensured secure, transparent, and auditable elections. Defendant further denies that Plaintiffs' allegations in Paragraph 348 completely or accurately describe all Smartmatic entities and Smartmatic-affiliated entities. Defendant further denies the allegations in Paragraph 348 as intentionally misleading. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 348.

## ALLEGATION NO. 349:

There was publicly available information at the time of the disinformation campaign to show that third-party validators had authenticated Smartmatic's technology, including the State of California, PriceWaterhouseCoopers, and the U.S. Election Assistance Commission. The United Nations, Organization of American States, and the European Union have also validated Smartmatic's technology. Former U.S. President Jimmy Carter of the Carter Center has called Smartmatic's electronic voting solution in Venezuela "the best in the world." (9/26/12 Smartmatic Press Release, *Carter States that Election Process in Venezuela is "Best in the World"* (Exhibit 96); 11/27/20 Smartmatic, *Smartmatic Fact-checked* (Exhibit 77).)

**ANSWER:** The referenced documents speak for themselves, thus no response is required. To the extent a response is required, Defendant admits that the referenced Carter-related and Smartmatic documents exist. Defendant denies that any documents created by any Smartmatic entity for PR purposes are reliable. Defendant lacks knowledge of information sufficient to form a belief as the truth of the allegations about alleged validation by California, PWC, the USEAC, the UN, the

OAS, and the EU and thus denies those allegations.  Defendant further denies that Venezuela's election process in 2012 was "the best in the world" (reality and subsequent events demonstrate that was utterly false).  Defendant further denies OAN engaged in a disinformation campaign. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 349.

**ALLEGATION NO. 350:**

Third, as discussed above, before and during the disinformation campaign, information about the certification of Smartmatic's election technology for Los Angeles County and Smartmatic's registration with the U.S. Election Assistance Commission was publicly available.

**ANSWER:** Defendant admits that information about one or more Smartmatic entities and Los Angeles County was and is publicly available.  Defendant lacks sufficient information or knowledge to form a belief about the truth of Plaintiffs' (all three of them) alleged registration with the USEAC and thus denies that allegation.  Defendant further denies that OAN was engaged in a disinformation campaign. Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 350.

**ALLEGATION NO. 351:**

Fourth, before and during the disinformation campaign, information was publicly available that showed Smartmatic had been approved as a Department of Defense vendor and a founding member of the Department of Homeland Security Election Infrastructure Sector Coordinating Council.

**ANSWER:** Defendant denies that OAN engaged in a disinformation campaign.  Defendant lacks information or knowledge sufficient to form a belief as to the truth of Plaintiffs' claim that they all were approved as DOD vendors and founding members of the Department of Homeland Security Election Infrastructure Sector Coordinating Council, thus Defendant denies those allegations.

Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 351.

**ALLEGATION NO. 352:**

Fifth, before the disinformation campaign, there was publicly available information that contradicted statements that Smartmatic was denied use in the State of Texas.  Texas publicly identified on the website of its Secretary of State that it employed election systems from three companies: (1) Dominion, (2) ES&S, and (3) Hart InterCivic.  There was also information publicly available that showed that it was Dominion—not Smartmatic—that had previously had issues with the State of Texas, but regardless, any issues had been resolved by the State of Texas since it selected and certified Dominion as one of its voting systems.  (VoteTexas.gov, *How to Vote* (Exhibit 135); Texas Secretary of State, *Voting System Examination(s) and Status for Dominion* (Exhibit 136).)

**ANSWER:** The referenced documents speak for themselves, thus no response is required.  To the extent a response is required, Defendant admits that the referenced documents exist.  Defendant denies that Plaintiffs have accurately characterized the referenced documents.  Defendant further denies that OAN engaged in a disinformation campaign.  Defendant further denies that any issues had been resolved.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 352.

**ALLEGATION NO. 353:**

Sixth, Smartmatic sent OANN a retraction demand letter on December 11, 2020. (12/11/20 Retraction Demand Letter to OANN (Exhibit 46).)  The 14-page letter identified some of OANN's false statements that Smartmatic's election technology and software were designed to fix, rig, and steal elections and have, in fact, been used to do so before and explained why those statements were false.

**ANSWER:** The referenced letter speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits the existence of the letter.  Defendant denies the letter

proves false statements. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 353.

## ALLEGATION NO. 354:

Seventh, Smartmatic filed suit against Fox Corporation, Fox News Network LLC, Lou Dobbs, Maria Bartiromo, Jeanine Pirro, Rudolph Giuliani, and Sidney Powell on February 4, 2021. (Fox Complaint (Exhibit 148).) Smartmatic's Fox Complaint laid out all of the above facts establishing that Smartmatic's election technology and software were not designed to fix, rig, or steal elections and have not, in fact, been used for that purpose.

**ANSWER:** The referenced complaint speaks for itself, thus no response is required. To the extent a response is required, Defendant admits the referenced complaint exists. Defendant denies the allegations in the complaint to the extent any Smartmatic entity suggests they apply to Defendant. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 354.

### C.    OAN had no reason to doubt the veracity of its guests.

## ALLEGATION NO. 355:

OANN published statements made by Mr. Giuliani, Ms. Powell, Mr. Lindell, and other guests regarding Smartmatic's role in the 2020 U.S. election; Smartmatic's ownership, founding and funding; and its election technology and software. OANN had obvious reasons to doubt the veracity of these guests and, on information and belief, OANN doubted their veracity. However, OANN had these guests on its shows, and quoted these guests, because they were willing to make factually inaccurate statements about Smartmatic. OANN chose these sources because it furthered the disinformation campaign.

**ANSWER:** The allegations in Paragraph 355 contain legal conclusions to which no response is required. To the extent a response is required, Defendant admits that it broadcast statements by Mr. Giuliani, Ms. Powell, Mr. Lindell and other guests about "Smartmatic" (but not necessarily about all three Plaintiffs). Defendant denies the remaining allegations by Plaintiffs against Defendant in Paragraph 355.

1.     **OAN's guests provided evidence supporting their statements about the election equipment and software with ties to Smartmatic-related entities.**

**ALLEGATION NO. 356:**

None of the guests provided OANN credible support for their statements and implications regarding Smartmatic.  No one introduced OANN to any person with firsthand knowledge of the claims they made about Smartmatic.  Nor did anyone identify for OANN a person with firsthand knowledge of the claims they made about Smartmatic.  On information and belief, OANN would have published an interview of someone with firsthand knowledge if that person existed.

**ANSWER:** Defendant admits that it published interviews of people with firsthand knowledge.

Defendant denies the remaining allegations in Paragraph 356.

**ALLEGATION NO. 357:**

Mr. Giuliani, Ms. Powell, Mr. Lindell, and other guests also did not provide OANN with any documentation showing (a) Smartmatic's election technology and software were widely used, including by Dominion, during the 2020 U.S. election, (b) Smartmatic's election technology and software changed or altered votes during the 2020 U.S. election, (c) Smartmatic's election technology and software were compromised or hacked during the 2020 U.S. election and sent votes to foreign countries during the 2020 U.S. election, (d) Smartmatic is a Venezuelan company founded and funded by corrupt dictators, or (e) Smartmatic's election technology and software were designed to fix, rig, and steal elections and had done so before.

**ANSWER:** Defendant denies the allegations in Paragraph 357.

2.     **OAN corroborated the statements made about the election equipment and software with ties to Smartmatic-related entities by OAN's guests.**

**ALLEGATION NO. 358:**

OANN was not able to independently corroborate the statements being made about Smartmatic by Mr. Giuliani, Ms. Powell, Mr. Lindell, and others.  OANN had months to identify a source corroborating the statements and implications made by its guests.  Instead of identifying a source corroborating their statements, OANN published their statements knowing there was no evidence to support what Mr. Giuliani, Ms. Powell, Mr. Lindell, and others had stated.

**ANSWER:** Defendant denies the allegations in Paragraph 358.

### 3.      OAN included counterpoint in its reporting.

**ALLEGATION NO. 359:**

First, OANN knew that credible sources, with firsthand knowledge, had contradicted the statements being made by Mr. Giuliani, Ms. Powell, Mr. Lindell, and others. During the disinformation campaign, OANN was aware that Smartmatic had published statements contradicting what was being said by its guests, including contradicting the claim that Smartmatic was widely used during the 2020 U.S. election or used by Dominion during the 2020 U.S. election.

**ANSWER:** Defendant admits that OAN was aware of and reported on alternative viewpoints on these issues. Defendant further admits that OAN was aware of one or more self-serving denials by one or more Smartmatic entities. Defendant denies that technology or software associated with or connected to one or more Smartmatic entities or Smartmatic-affiliated entities was not widely used in the 2020 U.S. election. Defendant further denies that no Dominion entity used technology or software associated with or connected to one or more Smartmatic entities or Smartmatic-affiliated entities in the 2020 U.S. election. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 359.

**ALLEGATION NO. 360:**

During the disinformation campaign, OANN was aware that Dominion had published statements contradicting what was being said by Mr. Giuliani, Ms. Powell, Mr. Lindell, and others, including contradicting the claim that Smartmatic's election technology or software was used by Dominion during the 2020 U.S. election.

**ANSWER:** Defendant denies the allegations in Paragraph 360.

**ALLEGATION NO. 361:**

During the disinformation campaign, OANN was aware that government officials and agencies published statements contradicting what was being said by Mr. Giuliani, Ms. Powell, Mr. Lindell, and others. Many of those statements are discussed above. Among other things, OANN was aware or should have been aware of the following statements that contradicted claims that Smartmatic had fixed, rigged, or stolen the 2020 U.S. election:

  a.     November 4: Cybersecurity and Infrastructure Security Agency Christopher Krebs issued a statement: "[W]e have no evidence any foreign adversary was capable of preventing Americans from voting or changing vote tallies."     (11/4/20

Cybersecurity & Infrastructure Security Agency, *Statement from CISA Director Krebs Following Final Days of Voting* (Exhibit 114).)

b.       November 10: New York Times reported contacting officials in every state on November 9 and 10, and that officials in all states but Texas reported no illegal voting or major voting issues.  (11/10/20 The New York Times, *The Times Called Officials in Every State: No Evidence of Voter Fraud* (Exhibit 115).)

c.       November 12: The Elections Infrastructure Government Coordinating Council Executive Committee and the Election Infrastructure Sector Coordinating Council issued a joint statement: "The November 3rd election was the most secure in American history …  There is no evidence that any voting system deleted or lost votes, changed votes, or was in any way compromised."   (11/12/20 Cybersecurity & Infrastructure Security Agency, *Joint Statement from Elections Infrastructure Government Coordinating Council & the Election Infrastructure Sector Coordinating Executive Committees* (Exhibit 119).)

d.       December 1: Attorney General William Barr said in an interview: "There's been one assertion that would be systematic fraud and that would be the claim that machines were programmed essentially to skew the election results.  And the DHS and DOJ have looked into that, and so far, we haven't seen anything to substantiate that."  (12/1/20 AP News, *Disputing Trump, Barr says no widespread election fraud* (Exhibit 129).)

**ANSWER:** The referenced statements and articles speak for themselves, thus no response is required.  To the extent a response is required, Defendant admits the existence of the statements and articles.  Defendant further admits that OAN was aware there was disagreement over these issues, and OAN reported on that disagreement.  Defendant denies the efficacy or accuracy of the factual assertions in the referenced statements and articles.  Defendant further denies that it engaged in a disinformation campaign.  Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 361.

**ALLEGATION NO. 362:**

Second, OANN was aware that the election officials in Nevada, Arizona, Georgia, Pennsylvania, Michigan, and Wisconsin did not support and contradicted the statements being made by Mr. Giuliani, Ms. Powell, and others regarding the security of the elections in their states and votes being changed by election technology or software.  Each of the states provided updates during the disinformation campaign.   None corroborated the statements being made by Mr. Giuliani, Ms. Powell, Mr. Lindell, and others.  If OANN was not aware of these statements, then it purposefully avoided them because they were widely known and distributed.

**ANSWER:** Defendant admits that OAN was aware of and reported on disagreement over these issues. Defendant denies OAN engaged in a disinformation campaign. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 362.

**ALLEGATION NO. 363:**

Third, OANN was aware, or should have been aware, that Mr. Giuliani's, Ms. Powell's, Mr. Lindell's, and others' statements about Smartmatic's election technology and services being used by Dominion were contradicted by the testing conducted by the U.S. Election Assistance Commission. The U.S. Election Assistance Commission has a testing program that EAC-certified machines must pass before being used for elections.

> Before voting machines and election management systems are used in elections, the systems undergo rigorous hardware and software testing by laboratories accredited by the EAC and the National Institutes of Standards and Technology (NIST). The testing encompasses security, accuracy, functionality, accessibility, usability, and privacy based on requirements in the EAC's Voluntary Voting System Guidelines (VVSG).

(U.S. Election Assistance Commission, *How the U.S. Election Assistance Commission Facilitates Fair and Secure Elections* (Exhibit 130).)

**ANSWER:** The USEAC document speaks for itself, thus no response is required. To the extent a response is required, Defendant admits the document exists and includes the quoted statement. Defendant denies that Plaintiffs accurately characterize the document. Defendant further denies that OAN knew, or should have known, that statements by those identified in Paragraph 363 about election technology and services of any Smartmatic entity were contradicted by the USEAC testing, and Defendant denies that the contradiction even existed. Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 363.

**ALLEGATION NO. 364:**

OANN knew, or should have known, that any election technology or software that was certified by the EAC and used in the 2020 U.S. election had been tested for "security, accuracy, functionality, accessibility, usability, and privacy." Mr. Giuliani's, Ms. Powell's, Mr. Lindell's, and others' statements regarding Smartmatic's software cannot be reconciled with this certification.

**ANSWER:** Defendant denies the allegations in Paragraph 364.

**ALLEGATION NO. 365:**

Fourth, OANN knew, or should have known, that election technology specialists contradicted what Mr. Giuliani, Ms. Powell, Mr. Lindell, and others said about Smartmatic's software being used by Dominion to switch or alter votes.  For example, Eddie Perez was interviewed by the New York Times on November 11, 2020.  (11/11/20 The New York Times, *No, Dominion voting machines did not delete Trump votes* (Exhibit 118).)  On November 11, the New York Times quoted Mr. Perez as saying:

> Many of the claims being asserted about Dominion and questionable voting technology is misinformation at best and, in many cases, they're outright disinformation.

> \*\*\*

> I'm not aware of any evidence of specific things or defects in Dominion software that would lead one to believe that votes had been recorded or counted incorrectly.

**ANSWER:** The referenced article speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits that the article exists and contains the allegedly quoted statement.  Defendant denies OAN knew or should have known that election technology specialists contradicted those people identified in Paragraph 365 as alleged in Paragraph 365, and Defendant further denies OAN is currently aware of any such contradiction.  Defendant further denies that Plaintiffs accurately characterized Mr. Perez's alleged statement.  Defendant lacks sufficient information or knowledge to form a belief as to the truth of any of the factual assertions in, attribution in, or accuracy of the article and thus denies those allegations.  Defendant further denies that the alleged statements by Mr. Perez are about any Smartmatic entity.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 365.

**ALLEGATION NO. 366:**

Mr. Perez was not the only one.  On November 16, election security specialists issued a statement addressing claims that election technology and software had been manipulated to rig the 2020 U.S. election.  (11/16/20 Letter from Election Security Specialists (Exhibit 122).)  The statement read:

We are aware of alarming assertions being made that the 2020 election was "rigged" by exploiting technical vulnerabilities. However, in every case of which we are aware, these claims either have been unsubstantiated or are technically incoherent. To our collective knowledge, no credible evidence has been put forth that supports a conclusion that the 2020 election outcome in any state has been altered through technical compromise.

**ANSWER:** The referenced letter speaks for itself, thus no response is required. To the extent a response is required, Defendant admits the letter exists and contains the quoted statement. Defendant denies that definitive substantiation could have been achieved across the board this soon after the 2020 U.S. election. Defendant further denies that Plaintiffs' characterization of the letter is accurate, particularly when taken in context and wholistically. Defendant further denies that lack of awareness by the authors of the letter equates to definitive proof that no such evidence exists. Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 366.

**ALLEGATION NO. 367:**

OANN knew, or should have known, that election security specialists debunked the statements being made by Mr. Giuliani, Ms. Powell, Mr. Lindell, and others regarding Smartmatic's election technology and software fixing, rigging, or stealing the election. Based on information readily available to OANN, it knew or should have known that statements about Smartmatic's election technology and software changing or stealing votes were unsubstantiated and technically incoherent.

**ANSWER:** Defendant denies the allegations in Paragraph 367.

**ALLEGATION NO. 368:**

Fifth, OANN knew that Mr. Giuliani's, Ms. Powell's, Mr. Lindell's, and others' statements regarding an election fraud involving Smartmatic were inconsistent with statements made by attorneys in court. For example:

a.    November 17: Mr. Giuliani appeared for the plaintiff in *Donald J. Trump for President, Inc. vs. Boockvar*, filed in Pennsylvania. This was the only election related case in which Mr. Giuliani appeared before a court. During the hearing, Mr. Giuliani stated: "This is not a fraud case." (11/20/20 The New York Times, *Trump Campaign Lawyers Step Up but Are Swiftly Knocked Down* (Exhibit 126).)

b.  November 11: Johnathan Goldstein appeared for the plaintiff in *Donald J. Trump for President, Inc. v. Montgomery County Board of Elections*, filed in Pennsylvania. During the hearing, Mr. Goldstein stated: "I am not calling the Board of the DNC or anybody else involved in this a liar.  Everybody is coming to this with good faith." (*Id.*)

c.  November 12: Kory Langhofer appeared for the plaintiff in *Donald J. Trump for President, Inc. v. Hobbs*, filed in Arizona.  During the hearing, Mr. Langhofer stated: "This is not a fraud case." (*Id.*)

**ANSWER:** Any attorney statements made in court speak for themselves, thus no response is required.  To the extent a response is required, Defendant denies OAN knew statements by the identified people about election fraud were inconsistent with statements made by attorneys at hearings because OAN did not appear at those hearings and has no personal knowledge of what was actually said at those hearings.  Defendant lacks information or knowledge sufficient to form a belief about whether these statements were made at the identified hearings, thus Defendant denies these allegations.  Defendant further denies that even if the statements were made at the identified hearings, the statements were inconsistent with everything the other people identified said about election fraud.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 368.

**ALLEGATION NO. 369:**

The statements made by attorneys in court were not consistent with Mr. Giuliani's, Ms. Powell's, Mr. Lindell's, and others' claim that Smartmatic had perpetrated a "fraud" by fixing, rigging, and stealing the 2020 U.S. election.  OANN knew that its guests lacked credibility based on the fact that lawyers representing President Trump contradicted their statements in court.  If OANN did not know that President Trump's lawyers were making contradictory statements in court, then OANN purposefully avoided learning that fact because OANN was aware of the litigation and easily could have learned what was being said.

**ANSWER:** Defendant denies the allegations in Paragraph 369.

**ALLEGATION NO. 370:**

Sixth, OANN knew that Ms. Powell's election lawsuits challenging the 2020 presidential election beginning on November 25, 2020 were a sham.  All of Ms. Powell's cases had been summarily dismissed by federal judges by December 9, 2020.

**ANSWER:** Defendant denies the allegations in Paragraph 370.

**ALLEGATION NO. 371:**

Ms. Powell filed four lawsuits containing accusations about Smartmatic: *Pearson v. Kemp*, No. 20-cv-4809 (N.D. Ga., filed on November 25, 2020); *King v. Whitmer*, No. 20-cv-13134 (E.D. Mich., filed on November 25, 2020); *Feehan v. Wisconsin Elections Commission*, No. 20-cv-1771 (E.D. Wis., filed on December 1, 2020); and *Bowyer v. Ducey*, No. 02-cv-02321 (D. Ariz., filed on December 2, 2020).

**ANSWER:** Defendant admits that Ms. Powell was counsel in the four lawsuits identified in Paragraph 371. But Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegation that these were the only lawsuits involving Ms. Powell and any Smartmatic entity, thus Defendant denies that allegation. Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 371.

**ALLEGATION NO. 372:**

Ms. Powell filed each of these four lawsuits in bad faith, knowing that the plaintiffs she represented lacked standing, were barred from bringing claims against state officials under the Eleventh Amendment, were precluded by the equitable doctrine of laches from filing the complaints, brought claims that already had been rendered moot, and failed to state a claim.

**ANSWER:** Defendant doesn't believe Ms. Powell filed these lawsuits in bad faith or with the knowledge alleged in Paragraph 372, but Defendant also is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 372 and therefore denies them.

**ALLEGATION NO. 373:**

The lawsuits that Ms. Powell eventually filed were shams as they relate to Smartmatic. Ms. Powell's lawsuits were telling for what they did not include:

a.   The lawsuits had no affidavit or statement by any Smartmatic or Dominion employee admitting using election technology or software to alter votes in the 2020 elections.

b.   The lawsuits had no affidavit or statement by anyone who claimed personal knowledge that Smartmatic had done anything to fix, rig, or steal the 2020 U.S. election.

-236-

    c.       The lawsuits had no affidavit or statement by anyone familiar with the election technology and software that Smartmatic used in the 2020 U.S. election.

    d.       The lawsuits had no affidavit or statement by any current or former Smartmatic employee that the company's election technology and software were designed to fix, rig, or steal elections.

    e.       The lawsuits had no allegations or support for the notion that Smartmatic was using the same election technology and software in 2020 in the United States as had been used in Venezuelan elections years earlier.

    f.       The lawsuits had no allegations or support for the notion that any state or county election officials had committed fraud in the 2020 U.S. election.

**ANSWER:** The pleadings in the lawsuits speak for themselves, thus no response is required. To the extent a response is required, Defendant doesn't believe Ms. Powell intended to engage in any "shams." Defendant also notes that it is without knowledge or information sufficient to form a belief as to the truth of the allegations related to what was allegedly missing from the lawsuits and therefore denies those allegations. Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 373.

**ALLEGATION NO. 374:**

Of the four lawsuits brought by Ms. Powell, all were immediately dismissed for the very reasons Ms. Powell knew these suits were shams: lack of standing, Eleventh Amendment immunity, laches, mootness, and failure to state a claim, among other reasons. *Pearson*, 20-cv-4809 (Dkt. No. 74, Dec. 7, 2020); *King*, 505 F. Supp. 3d 720 (E.D. Mich. Dec. 7, 2020); *Feehan*, 506 F. Supp. 3d 596 (E.D. Wis. Dec. 9, 2020); *Bowyer*, 506 F. Supp. 3d 699 (D. Ariz. Dec. 9, 2020).

**ANSWER:** The cited decisions speak for themselves, thus no response is required. Paragraph 374 also states legal conclusions, to which no response is required. To the extent a response is required, Defendant admits that these decisions were issued. Defendant denies that dismissal was "immediate" in any of the cases. Defendant states that it doesn't believe, and therefore denies that,

Ms. Powell intended to engage in any "shams."   Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 374.

**ALLEGATION NO. 375:**

Ms. Powell publicly stated that Smartmatic's election technology and software had been widely used in the 2020 U.S. election and had been used to fix, rig, and steal the election for Joe Biden and Kamala Harris.   But when Ms. Powell filed her lawsuits, she could not make or substantiate those claims.  OANN knew based on the lawsuits that Ms. Powell filed that she could not substantiate her claims about Smartmatic.

**ANSWER:**  Defendant denies the allegations in Paragraph 375.

**ALLEGATION NO. 376:**

The Trump Campaign even publicly distanced itself from Ms. Powell on November 22.  It issued the following statement: "Sidney Powell is practicing law on her own.  She is not a member of the Trump Legal Team.  She is also not a lawyer for the President in his personal capacity." (Tweet, @JennaEllisEsq., November 22, 2020 (Exhibit 127).)  OANN even acknowledged that the Trump Campaign distanced itself from Ms. Powell on *Tipping Point*, November 23, but continued to tell viewers that Ms. Powell's statements about Smartmatic had merit.  (*Tipping Point*, November 23, 2020 (Exhibit 20).)

**ANSWER:**  The referenced Tweet and segment speak for themselves, thus no response is required.

To the extent a response is required, Defendant admits the Tweet and segment occurred.

Defendant denies that Plaintiffs accurately characterize the Tweet, the segment, or any alleged

statements by OAN, particularly when taken in context and wholistically.   Defendant further

denies any remaining allegations by Plaintiffs against Defendant in Paragraph 376.

**ALLEGATION NO. 377:**

OANN knew that Ms. Powell had not filed any lawsuits on behalf of the Trump Campaign (or otherwise) at the time that the Trump Campaign publicly distanced itself and President Trump from Ms. Powell.  Ms. Powell's failure to file any lawsuits that were consistent with the statements that she had made about Smartmatic did give or should have given OANN additional reasons to doubt her credibility.

**ANSWER:** Defendant denies the allegations in Paragraph 377.

4.    **OAN believed its guests were credible.**

**ALLEGATION NO. 378:**

During its disinformation campaign, OANN brought on a series of guests that made defamatory statements about Smartmatic.  OANN had reason to doubt the veracity of every single guest.  As discussed above, during this timeframe there was publicly available information that contradicted the statements made about Smartmatic during OANN broadcasts.  From this alone, OANN had reason to doubt the truthfulness and credibility of each of its guests.  In addition to this, OANN knew or should have known its guests were biased but failed to disclose that fact to its audience.  For example:

**ANSWER:** Defendant denies the allegations in Paragraph 378.

**ALLEGATION NO. 379:**

Kyle Becker: Mr. Becker is the CEO and Chief Editor of Becker News, which was founded around late 2020 or early 2021.  Previously, he was a writer and associate producer at Fox News, and before that, a writer at the Independent Journal Review (IJR).  Mr. Becker was suspended indefinitely from IJR in 2017 after he wrote a "conspiracy-laden" story "that suggested, without evidence, that former president Barack Obama had pressured a federal judge in Hawaii to rule against President Trump's latest travel ban."  Amongst the controversy, IJR admitted the story was false and retracted it, and Mr. Becker was indefinitely suspended.

**ANSWER:** Defendant admits that Mr. Becker is the Founder, Owner, and CEO of Becker News, was a writer and associate producer at Fox News, and was a writer for IJR.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 379 and therefore denies them.

**ALLEGATION NO. 380:**

OANN was aware, or should have been aware, that Mr. Becker is an unreliable source for information and is known for promoting unsubstantiated conspiracy theories, as the IJR scandal was highly publicized in 2017.   When Mr. Becker appeared on OANN broadcasts, OANN knew that it did not have any evidence to support his claims about Smartmatic.   Nonetheless, OANN did not tell its audience about Mr. Becker's credibility and bias problems.

**ANSWER:** Defendant denies the allegations in Paragraph 380.

**ALLEGATION NO. 381:**

Clay Clark: Mr. Clark is the founder of ThriveTime Show and Thrive15, a business coaching platform and online education platform, and the host of *The ThriveTime Show* podcast. Mr. Clark's background is in entrepreneurship, but in 2020 he started espousing anti-government conspiracy theories.  In 2020, he published *Fear Unmasked*, a book that claims to provide "the

essential information you need to know about the coronavirus, the government shutdown, and the media that is perpetuating the hysteria," which "will uncover the truth about the virus and reveal the deeper, unconstitutional issues at play in this pandemic." Mr. Clark has no experience in government, science, or media. Mr. Clark similarly has no background or experience with cybersecurity or election integrity.

**ANSWER:** Defendant admits that Mr. Clark is the founder of the *ThriveTime Show* and *Thrive15*,

is the host of *The ThriveTime Show* podcast, is an entrepreneur, and published *Fear Unmasked*.

Defendant is without knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in Paragraph 381 and therefore denies them.

**ALLEGATION NO. 382:**

OANN was aware, or should have been aware, that Mr. Clark is an unreliable source for information on the issues of cybersecurity and election integrity and is known for promoting unsubstantiated conspiracy theories about the government and the media. When Mr. Clark appeared on OANN broadcasts, OANN knew that it did not have any evidence to support his claims about Smartmatic. Nonetheless, OANN did not tell its audience about Mr. Clay's lack of knowledge regarding election integrity or his credibility and bias problems.

**ANSWER:** Defendant denies the allegations in Paragraph 382.

**ALLEGATION NO. 383:**

383.    Joseph diGenova: Mr. diGenova is a partner at a law firm he owns with his wife, Victoria Toensing. He began his career in the 1980s when Mr. diGenova served as a U.S. Attorney in the District of Columbia. Ms. Toensing served as a Deputy Assistant General in the Justice Department during the Reagan administration. Over the years, Mr. diGenova and his wife have "been involved in numerous scandals and legal battles related to Donald Trump's presidency." For example, during the 2017 Robert Mueller investigation into President Trump's ties with Russia, Mr. diGenova falsely asserted that the allegations were "cooked up by the FBI and Justice Department to frame Trump and ensure he wouldn't become president." And in 2019, Mr. diGenova started a conspiracy about George Soros, claiming Mr. Soros was in control of the FBI and the State Department and was trying to take over Ukraine.

**ANSWER:** Defendant admits that Mr. diGenova is a lawyer, a former U.S. Attorney in the District

of Columbia, and a former Deputy Assistant Attorney General in the Justice Department under the

Reagan administration.  Defendant is without knowledge or information sufficient to form a belief

as to the truth of the remaining allegations in Paragraph 383 and therefore denies the same.

**ALLEGATION NO. 384:**

OANN was aware, or should have been aware, that Mr. diGenova is an unreliable source for information and is known for promoting unsubstantiated conspiracy theories. When Mr. diGenova appeared on OANN broadcasts, OANN knew that he did not have any evidence to support his claims about Smartmatic. Nonetheless, OANN did not tell its audience about Mr. diGenova's credibility and bias problems.

**ANSWER:** Defendant denies the allegations in Paragraph 384.

**ALLEGATION NO. 385:**

385.   Tom Fitton: Mr. Fitton is president of Judicial Watch, a "conservative watchdog group," and has held that position since 1998.  Mr. Fitton is known for spreading misinformation on various topics, even before the 2020 presidential election.  For example, since at least 2015, when Judicial Watch sued the National Oceanic and Atmospheric Administration over production of a climate study, Mr. Fitton has repeatedly denied climate change, calling it "fraud science."  In addition, he attempted to discredit special counsel Robert Mueller's investigation into the 2016 presidential election, calling it a "coup," and advocated shutting down the FBI in 2017 because "it was turned into a KGB-type operation by the Obama administration."  There is no evidence supporting any of these claims by Mr. Fitton.

**ANSWER:** Defendant admits that Mr. Fitton is the president of Judicial Watch.  Defendant denies

that there is no evidence supporting any of the alleged claims by Mr. Fitton in Paragraph 385.

Defendant is without knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in Paragraph 385 and therefore denies them.

**ALLEGATION NO. 386:**

Judicial Watch, under Fitton's leadership, has also spread numerous conspiracy theories. In 2008 and 2010, the organization falsely reported Nancy Pelosi's air travel expenses.  In 2013, it mischaracterized that the Department of Justice sent employees to Florida "to help organize and manage rallies and protests against George Zimmerman" in the wake of Trayvon Martin's death. In 2014 and 2015, it falsely alleged that ISIS was operating a camp in Mexico.  In 2017, it spread a conspiracy theory tying the Democratic Party to a DNC staffer's death.  In 2018, it accused the Clinton Foundation of using funds to pay for Chelsea Clinton's wedding.  All of these allegations were proved to be untrue.

**ANSWER:** Defendant denies that all of the purported allegations in Paragraph 386 have been proven untrue. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 386 and therefore denies them.

## ALLEGATION NO. 387:

Prior to the 2020 presidential election, both Mr. Fitton and Judicial Watch had a history of spreading lies regarding voter fraud. During the 2016 presidential election, Judicial Watch alleged that eleven California counties had more registered voters than citizens eligible to vote, and during the 2020 Democratic primary, it alleged that eight Iowa counties had more registered voters than citizens old enough to register. Moreover, Mr. Fitton tweeted that nearly one million undocumented immigrants illegally voted in the 2018 midterm election. All these claims are unsubstantiated and were ultimately disproven.

**ANSWER:** Defendant denies that Mr. Fitton and Judicial Watch had a history of spreading lies about voter fraud. Defendant further denies that all the claims set forth in Paragraph 387 have been unsubstantiated or ultimately proven untrue. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 387 and therefore denies them.

## ALLEGATION NO. 388:

OANN was aware, or should have been aware, that Mr. Fitton is an unreliable source for information and is known for promoting unsubstantiated conspiracy theories, especially conspiracy theories focused on voter fraud, both personally and through Judicial Watch. When Mr. Fitton appeared on OANN broadcasts, OANN knew that it did not have any evidence to support his claims about Smartmatic. Nonetheless, OANN did not tell its audience about Mr. Fitton's credibility and bias problems, particularly with regards to claims of voter fraud.

**ANSWER:** Defendant denies the allegations in Paragraph 388.

## ALLEGATION NO. 389:

Allan dos Santos: Mr. Santos founded Terça Livre, a conservative news outlet in Brazil, in 2014. Terça Livre is known for its ties to Brazilian President Jair Bolsonaro. Mr. Santos, through his Terça Livre platform, is notorious in Brazil for spreading disinformation and has been under ongoing investigation by the Brazilian government. In 2019, the Fake News Joint Congressional Inquiry Committee in Brazil investigated Terça Livre for spreading false "news." Then, in 2020, the Federal Police began investigating Mr. Santos for false "news" reports. They executed search warrants against Santos and twenty-eight other Brazilian political and media influencers. As a result of the investigation, in July 2020, Mr. Santos's Twitter, Instagram, and Facebook accounts

were suspended.  Specific examples of baseless and controversial statements made by Mr. Santos in 2020 include his accusation that Brazilian ministers were complicit in wiretapping and "espionage," and comparing the lack of chloroquine to treat COVID-19 patients to the murder of Jews in the Holocaust.

**ANSWER:** Defendant admits that Mr. Santos founded Terça Livre.  Defendant is without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in

Paragraph 389 and therefore denies the same.

## ALLEGATION NO. 390:

OANN was aware, or should have been aware, that Mr. Santos is an unreliable source for information and is known for promoting unsubstantiated conspiracy theories.  When Mr. Santos appeared on OANN broadcasts, OANN knew that it did not have any evidence to support his claims about Smartmatic.  Nonetheless, OANN did not tell its audience about Mr. Santos's credibility and bias problems.

**ANSWER:** Defendant denies the allegations in Paragraph 390.

## ALLEGATION NO. 391:

Keith Trippie: According to his LinkedIn page, Mr. Trippie is the CEO of his consulting firm, the Trippie Group, LLC, a senior cyber advisor to a private company named ASEAN, and author of *The Forgotten American: Prosecuting a RICO Case Against the US Congress*. *The Forgotten American* was published on or around December 21, 2020 and espouses Mr. Trippie's conspiracy theory that Congress committed RICO violations during the 2020 election cycle. Although Mr. Trippie wrote it as a fictional courtroom drama, his "one wish for the book is that it serves as a blueprint for a couple patriotic attorneys to find inspiration [to] [t]ake this case to court."  Mr. Trippie is not an attorney.

**ANSWER:** Defendant admits that Mr. Trippie is the CEO of the Trippie Group, LLC, a senior

cyber advisor to ASEAN, and author of *The Forgotten American: Prosecuting a RICO Case*

*Against the US Congress*. Defendant is without knowledge or information sufficient to form a

belief as to the truth of the remaining allegations in Paragraph 391 and therefore denies them.

## ALLEGATION NO. 392:

OANN was aware, or should have been aware, that Mr. Trippie is an unreliable source for information and is known for promoting unsubstantiated conspiracy theories, particularly where his book blurs the line between fact and fiction.  When Mr. Trippie appeared on OANN broadcasts, OANN knew that it did not have any evidence to support his claims about Smartmatic. Nonetheless, OANN did not tell its audience about Mr. Trippie's credibility and bias problems.

**ANSWER:** Defendant denies the allegations in Paragraph 392.

**ALLEGATION NO. 393:**

J. Michael Waller: Mr. Waller is a Senior Analyst for Strategy at the Center for Security Policy, where he specializes in "propaganda, political warfare, psychological warfare, and subversion." The Center for Security Policy has been described as an "extremist think tank" and heavily criticized for promoting dangerous anti-Muslim conspiracies. For example, in 2012, the group falsely accused an aide to Hilary Clinton of being a "secret member of the Muslim Brotherhood." In 2015, the group published survey results claiming 25% of Muslims in the US believed violence against America was justified "as part of the global jihad." The Washington Post called the survey "shoddy," as it was based on a sample of 600 self-selecting participants in an online poll.

**ANSWER:** Defendant admits that Mr. Waller is a Senior Analyst for Strategy at the Center for Security Policy. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 393 and therefore denies them.

**ALLEGATION NO. 394:**

OANN was aware, or should have been aware, that Mr. Waller, as an analyst for the Center of Security Policy, is an unreliable source for information and is known for promoting unsubstantiated conspiracy theories. When Mr. Waller appeared on OANN broadcasts, OANN knew that it did not have any evidence to support his claims about Smartmatic. Nonetheless, OANN did not tell its audience about Mr. Waller's credibility and bias problems.

**ANSWER:** Defendant denies the allegations in Paragraph 394.

**ALLEGATION NO. 395:**

Michael J. Lindell: Mr. Lindell is the CEO of MyPillow, a pillow company that he founded in 2004. Mr. Lindell became known for starring in MyPillow's infomercials, which claimed that MyPillow would help people suffering from fibromyalgia, insomnia, migraines and headaches, sleep apnea, snoring, TMJ, and restless leg syndrome. In these infomercials, Mr. Lindell falsely held himself out as a sleep expert. In 2016, California prosecutors sued the company for false advertising, alleging that these claims were "untrue or misleading." Mr. Lindell paid $995,000 in civil penalties, rather than litigating the case. That same year, MyPillow also paid $1.1 million to settle a case for failing to collect New York sales tax. In 2017, MyPillow settled a class action lawsuit challenging its use of "buy one get one" promotions and other deceptive advertising. As a result of numerous consumer complaints, The Better Business Bureau revoked the accreditation of MyPillow and lowered its rating to "F." Mr. Lindell has no background or experience with cybersecurity or election integrity.

**ANSWER:** Defendant admits that Mr. Lindell is the CEO of MyPillow.  Defendant is without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in

Paragraph 395 and therefore denies them.

**ALLEGATION NO. 396:**

OANN was aware, or should have been aware, that Mr. Lindell is an unreliable source for
information, particularly on the topic of election integrity, an area in which he has no experience.
When Mr. Lindell appeared on OANN broadcasts and when OANN broadcasted Mr. Lindell's
self-produced "documentaries," OANN knew that it did not have any evidence to support his
claims about Smartmatic.  Nonetheless, OANN did not tell its audience about Mr. Lindell's lack
of experience in election integrity or Mr. Lindell's credibility and bias problems.

**ANSWER:** Defendant denies the allegations in Paragraph 396.

**ALLEGATION NO. 397:**

Mr. Lindell included numerous guests in his four "documentaries."  None of these guests,
billed as credible and legitimate "experts," were credible, yet OANN still published their
statements.  OANN had reason to doubt the veracity of every single guest in Mr. Lindell's
"documentaries."  As discussed above, during this timeframe there was publicly available
information that contradicted the statements made about Smartmatic during Mr. Lindell's
"documentaries."  From this alone, OANN had reason to doubt the truthfulness and credibility of
each of the Lindell "documentary" guests.  In addition, OANN should have doubted the veracity
of each speaker based on information specific to each individual.  For example:

**ANSWER:** Defendant admits that Mr. Lindell included numerous guests in his four long-form

segments.  Defendant further admits that it broadcast the segments as addressed elsewhere in this

Answer (and Defendant incorporates as if fully set forth herein its responses elsewhere in this

Answer related to those segments).  Defendant denies the remaining allegations by Plaintiffs

against Defendant in Paragraph 397.

**ALLEGATION NO. 398:**

<u>Mary Fanning</u>: Ms. Fanning appeared in Mr. Lindell's "documentary" *Absolute Proof*.
Ms. Fanning is a co-author of articles at *The American Report*—an Internet conspiracy theory
blog—and self-proclaimed "national security" investigative reporter.  Ms. Fanning has no publicly
available credentials in the fields of national security or journalism.  *The American Report* website
was originally registered to a "Mary Fanning Kirchhoefer" in 2015, who has been a donor of the
Trump Campaign and Republican National Committee, among other political causes.
Ms. Fanning's LinkedIn profile does not have any work history, credentials, or education related

to cybersecurity, journalism, or election integrity. (Mary Fanning Kirchhoefer, LinkedIn (Exhibit 158).)  In the past, Ms. Fanning perpetuated conspiracy theories, including the "Hammer and Scorecard" theory, which was debunked by Chris Krebs and other sources (Tweet, @CISAKrebs, Nov. 7, 2020 (Exhibit 141).)

**ANSWER:** Defendant admits that Ms. Fanning appeared on *Absolute Proof* and that Ms. Fanning has written on national security issues.  Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 398 and therefore denies them.

**ALLEGATION NO. 399:**

OANN was aware, or should have been aware, that Ms. Fanning is an unreliable source for information and has no expertise on election integrity.  When OANN broadcast the statements Ms. Fanning made in the Lindell "documentaries," OANN knew that she did not have any evidence or firsthand knowledge to support her claims about Smartmatic.  Nonetheless, OANN did not tell its audience about Ms. Fanning's obvious credibility and bias problems.

**ANSWER:** Defendant denies the allegations in Paragraph 399.

**ALLEGATION NO. 400:**

Michael Flynn: Mr. Flynn is a retired U.S. Army lieutenant general who twice pled guilty in 2018 to lying to the FBI about contacts with Russia.  He was subsequently removed from his position as White House national security advisor and promptly embroiled in a legal battle. Mr. Flynn was banned from Twitter in January 2021 in accordance with a policy on "Coordinated Harmful Activity" for sharing QAnon conspiracy theory material (1/8/21 NBC News, *Twitter bans Michael Flynn, Sidney Powell in QAnon account purge* (Exhibit 146).)

**ANSWER:** Defendant admits that Gen. Flynn is a retired U.S. Army lieutenant general. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 400 and therefore denies them.

**ALLEGATION NO. 401:**

OANN was aware, or should have been aware, that Mr. Flynn is an unreliable source for information and is known for promoting unsubstantiated conspiracy theories. When OANN broadcast the statements Mr. Flynn made in the Lindell "documentaries," OANN knew that he did not have any evidence or firsthand knowledge to support his claims about Smartmatic. Nonetheless, OANN did not tell its audience about Mr. Flynn's credibility and bias problems.

**ANSWER:** Defendant denies the allegations in Paragraph 401.

### D.    OAN complied with journalism ethics.

**ALLEGATION NO. 402:**

Upon information and belief, OANN and its anchors, reporters and producers adhere to a code of conduct or ethics when investigating and publishing news reports.  One of the reasons for journalists to adhere to a code of conduct is to make sure that they do not act with reckless disregard for the truth in investigating or verifying reports and do not publish misleading reports, particularly news reports being portrayed as presenting facts or evidence.

**ANSWER:** Defendant admits the allegations in Paragraph 402.

**ALLEGATION NO. 403:**

However, OANN violated those generally accepted journalism standards.  It did so because adhering to them would not have allowed it to: (a) purposefully avoid learning the truth about Smartmatic and its technology and software and use in the 2020 U.S. election; (b) publish the factually inaccurate and misleading reports about Smartmatic and its technology and software; and (c) interject Smartmatic into a wide-ranging criminal fraud to fix the 2020 election.

**ANSWER:** Defendant denies the allegations in Paragraph 403.

**ALLEGATION NO. 404:**

OANN violated at least eleven generally accepted journalism standards.  First, generally accepted journalism standards encourage reporters and producers to be accurate and fair when gathering and reporting information.  OANN violated this standard because, among other things, it reported information that it knew was not accurate, it reported information it knew was misleading, and it purposefully avoided learning the truth that was inconsistent with its preconceived narrative that Smartmatic had stolen the 2020 U.S. election.

**ANSWER:** Defendant responds that OAN complies with journalism ethical standards, but Plaintiffs have failed to specify what entity's standards they're allegedly invoking.  In the journalism profession, there is nothing generally referred to as "generally accepted journalism standards" (in contrast, for instance, to Generally Accepted Accounting Principles in the accounting profession).  Defendant doesn't understand whether Plaintiffs are referring to Society for Professional Journalists standards, Associated Press standards, or some other organization's standards.  Defendant agrees that the media in hard news reporting should be accurate and fair in

gathering and reporting information, but Defendant denies that not doing that equates to actual malice.  Defendant denies the remaining allegations in Paragraph 404.

## ALLEGATION NO. 405:

Former senior news producer Martin Golingan confirmed that OANN violated this standard.  OANN producers were told "to check *Gateway Pundit* and similar questionable sources to find content to be aired on [OANN]" regarding "election fraud." ( *See* Golingan Decl. ¶ 14 (Exhibit 151).)  Mr. Golingan also declared that, based on his experience at OANN, he knows "for a fact" that OANN aired false stories. (*Id.* ¶ 17.)

**ANSWER:** Defendant denies the allegations in Paragraph 405.  Answering further, Defendant

states that Mr. Golingan's declaration is false, flawed, and violates numerous evidentiary rules;

the Colorado state court trial judge in the relevant case committed reversible error in considering

Mr. Golingan's declaration in connection with Defendant's anti-SLAPP motion in that case; and

those reversible errors are now up on appeal before the Colorado Court of Appeals.

## ALLEGATION NO. 406:

Second, generally accepted journalism standards encourage anchors, reporters and producers to verify information before releasing it.  OANN violated this standard because, among other things, it did not verify or corroborate the information provided by its sources (whom it had obvious reasons to doubt) and did not verify or corroborate the many serious and broad-ranging statements and implications it published about Smartmatic.  OANN made no effort to reach out to Smartmatic during its disinformation campaign for comment and/or to verify the accuracy of any statements and implications being made about Smartmatic, its history, its business, its technology or software, and/or its role in the 2020 U.S. election.

**ANSWER:** Defendant responds that OAN complies with journalism ethical standards, but

Plaintiffs have failed to specify what entity's standards they're allegedly invoking.   In the

journalism profession, there is nothing generally referred to as "generally accepted journalism

standards" (in contrast, for instance, to Generally Accepted Accounting Principles in the

accounting profession).  Defendant doesn't understand whether Plaintiffs are referring to Society

for Professional Journalists standards, Associated Press standards, or some other organization's

standards.  Defendants admits that verification in hard news reporting is important but denies that

not doing so equates to actual malice. Defendant denies the remaining allegations by Plaintiffs against Defendant in Paragraph 406.

## ALLEGATION NO. 407:

Former senior news producer Martin Golingan confirmed that OANN violated this standard. During the disinformation campaign, OANN producers "were forced to run [reports] without any fact checking or vetting of sources" and "were not told who or what [the reporters'] sources were or whether [the reports] got their information." (*See* Golingan Decl. ¶ 15 (Exhibit 151).) Executive producer Lindsay Oakley told producers not to cut stories by reporter Kristian Rouz even though producers had cut his stories before because, in Mr. Golingan's words, "the news producers knew his content was disinformation and because producers did not trust him." (*Id.* ¶ 14.)

**ANSWER:** Defendant denies allegations in Paragraph 407. Answering further, Defendant states that Mr. Golingan's declaration is false, flawed, and violates numerous evidentiary rules; the Colorado state court trial judge in the relevant case committed reversible error in considering Mr. Golingan's declaration in connection with Defendant's anti-SLAPP motion in that case; and those reversible errors are now up on appeal before the Colorado Court of Appeals.

## ALLEGATION NO. 408:

Third, generally accepted journalism standards encourage reporters and producers to gather and update information before and after the publication of each report. OANN violated this standard because it purposefully avoided gathering information that was inconsistent with its preconceived narrative and did not fully and properly update its reporting after being told and learning its reporting was factually inaccurate and misleading.

**ANSWER:** Defendant responds that OAN complies with journalism ethical standards, but Plaintiffs have failed to specify what entity's standards they're allegedly invoking. In the journalism profession, there is nothing generally referred to as "generally accepted journalism standards" (in contrast, for instance, to Generally Accepted Accounting Principles in the accounting profession). Defendant doesn't understand whether Plaintiffs are referring to Society for Professional Journalists standards, Associated Press standards, or some other organization's standards. Defendant admits that updating material facts in hard news reporting is important but

denies that not doing so equates to actual malice.  Defendant denies the remaining allegations by

Plaintiffs against Defendant in Paragraph 408.

## ALLEGATION NO. 409:

Former senior news producer Martin Golingan confirmed that OANN violated this standard.  Even after Dominion sent OANN a retraction demand letter detailing why OANN's statements about Dominion and Smartmatic were false, "The Dominion demand letter changed nothing at [OANN]. It had the opposite effect."  (*See* Golingan Decl. ¶ 17 (Exhibit 151).)  Instead of updating its previous publications, OANN continued to publish false statements about Smartmatic and voting machines being used to switch votes and steal the 2020 U.S. election.

**ANSWER:** Defendant denies the allegations in Paragraph 409.  Answering further, Defendant

states that Mr. Golingan's declaration is false, flawed, and violates numerous evidentiary rules;

the Colorado state court trial judge in the relevant case committed reversible error in considering

Mr. Golingan's declaration in connection with Defendant's anti-SLAPP motion in that case; and

those reversible errors are now up on appeal before the Colorado Court of Appeals.

## ALLEGATION NO. 410:

Fourth, generally accepted journalism standards encourage reporters and producers to disclose information about their sources so that readers and viewers can make informed decisions regarding credibility.  OANN violated this standard because it failed to disclose its sources' lack of credibility and lack of firsthand knowledge.  As discussed above, OANN had obvious reasons to doubt the veracity of Mr. Giuliani, Ms. Powell, Mr. Lindell, and other guests.  But, instead of disclosing those doubts, OANN endorsed what its guests were saying.

**ANSWER:** Defendant responds that OAN complies with journalism ethical standards, but

Plaintiffs have failed to specify what entity's standards they're allegedly invoking.   In the

journalism profession, there is nothing generally referred to as "generally accepted journalism

standards" (in contrast, for instance, to Generally Accepted Accounting Principles in the

accounting profession).  Defendant doesn't understand whether Plaintiffs are referring to Society

for Professional Journalists standards, Associated Press standards, or some other organization's

standards.  Defendant admits that disclosing material information about hard news sources is

important but denies that not doing so equates to actual malice.  Defendant denies the remaining allegations by Plaintiffs against Defendant in Paragraph 410.

## ALLEGATION NO. 411:

Fifth, generally accepted journalism standards encourage reporters and producers to seek out opposing views for a report.  OANN violated this standard because it intentionally avoided publishing statements by others who would have directly contradicted the false information that it presented. The OANN publications at issue violated OANN's own edict that it provides "credible, honest, unbiased reporting."  There was nothing credible, honest, or unbiased about OANN's coverage of Smartmatic during the disinformation campaign.

**ANSWER:** Defendant responds that OAN complies with journalism ethical standards, but Plaintiffs have failed to specify what entity's standards they're allegedly invoking.  In the journalism profession, there is nothing generally referred to as "generally accepted journalism standards" (in contrast, for instance, to Generally Accepted Accounting Principles in the accounting profession).  Defendant doesn't understand whether Plaintiffs are referring to Society for Professional Journalists standards, Associated Press standards, or some other organization's standards.  Defendant admits that seeking opposing viewpoints in hard news reporting can be important but denies that not doing so equates to actual malice.  Defendant denies the remaining allegations by Plaintiffs against Defendant in Paragraph 411.

## ALLEGATION NO. 412:

Sixth, generally accepted journalism standards encourage reporters and producers to avoid distorting facts.  OANN violated this standard because it did not provide the proper context for the statements made in the disinformation campaign.  For example, OANN rarely called out Mr. Giuliani, Ms. Powell, Mr. Lindell, and others for stating that they had or have evidence to support their statements about Smartmatic without actually showing or disclosing the evidence.

**ANSWER:** Defendant responds that OAN complies with journalism ethical standards, but Plaintiffs have failed to specify what entity's standards they're allegedly invoking.  In the journalism profession, there is nothing generally referred to as "generally accepted journalism standards" (in contrast, for instance, to Generally Accepted Accounting Principles in the

accounting profession).  Defendant doesn't understand whether Plaintiffs are referring to Society

for Professional Journalists standards, Associated Press standards, or some other organization's

standards.  Defendant admits that avoiding distortion of facts in hard news reporting is important

but denies that not doing so equates to actual malice.  Defendant denies the remaining allegations

by Plaintiffs against Defendant in Paragraph 412.

**ALLEGATION NO. 413:**

Former senior news producer Martin Golingan confirmed that OANN violated this
standard.  During the disinformation campaign, if the Herring family "simply [saw] a headline
they liked and if it fit their narrative, they would run with it."  (*See* Golingan Decl. ¶ 12
(Exhibit 151).)

**ANSWER:** Defendant denies the allegations in Paragraph 413.  Answering further, Defendant

states that Mr. Golingan's declaration is false, flawed, and violates numerous evidentiary rules;

the Colorado state court trial judge in the relevant case committed reversible error in considering

Mr. Golingan's declaration in connection with Defendant's anti-SLAPP motion in that case; and

those reversible errors are now up on appeal before the Colorado Court of Appeals.

**ALLEGATION NO. 414:**

Seventh, generally accepted journalism standards encourage reporters and producers to
treat sources and subjects with respect.  OANN violated this standard.  OANN attacked an under-
the-radar election company that participated in one county during the 2020 U.S. election.  OANN
also attacked Smartmatic as a company with ties to communists.  OANN made Smartmatic out to
be a criminal in the minds of its readers and viewers.  OANN did not care about the damage it did
to Smartmatic.

**ANSWER:** Defendant responds that OAN complies with journalism ethical standards, but

Plaintiffs have failed to specify what entity's standards they're allegedly invoking.   In the

journalism profession, there is nothing generally referred to as "generally accepted journalism

standards" (in contrast, for instance, to Generally Accepted Accounting Principles in the

accounting profession).  Defendant doesn't understand whether Plaintiffs are referring to Society

for Professional Journalists standards, Associated Press standards, or some other organization's

standards. Defendant admits that treating sources and subjects of hard news reporting with respect can be important but denies that not doing so equates to actual malice. Defendant denies the remaining allegations by Plaintiffs against Defendant in Paragraph 414.

**ALLEGATION NO. 415:**

Former senior news producer Martin Golingan confirmed that OANN violated this standard. When Dominion sent OANN a retraction demand letter, the Herring family was "thrilled." (*See* Golingan Decl. ¶ 17 (Exhibit 151).) To the Herring family, "all publicity, even so-called bad publicity, was good for [OANN]. The Dominion demand letter changed nothing at [OANN]. It had the opposite effect." (*Id.*) On information and belief, the Herring family and OANN reacted similarly to Smartmatic's retraction demand letter.

**ANSWER:** Defendant denies the allegations in Paragraph 415. Answering further, Defendant states that Mr. Golingan's declaration is false, flawed, and violates numerous evidentiary rules; the Colorado state court trial judge in the relevant case committed reversible error in considering Mr. Golingan's declaration in connection with Defendant's anti-SLAPP motion in that case; and those reversible errors are now up on appeal before the Colorado Court of Appeals.

**ALLEGATION NO. 416:**

Eighth, generally accepted journalism standards encourage reporters and producers to consider the long-term impact of their publications. OANN violated this standard by publishing reports with the intent of harming Smartmatic and undermining the public's confidence in the integrity of the 2020 U.S. election. OANN did not consider the long-term impact of its disinformation campaign on Smartmatic or the country.

**ANSWER:** Defendant responds that OAN complies with journalism ethical standards, but Plaintiffs have failed to specify what entity's standards they're allegedly invoking. In the journalism profession, there is nothing generally referred to as "generally accepted journalism standards" (in contrast, for instance, to Generally Accepted Accounting Principles in the accounting profession). Defendant doesn't understand whether Plaintiffs are referring to Society for Professional Journalists standards, Associated Press standards, or some other organization's standards. Defendant admits that in hard news reporting consideration of long-term impacts of

publications can be important but denies that not doing so equates to actual malice. Defendant denies the remaining allegations by Plaintiffs against Defendant in Paragraph 416.

**ALLEGATION NO. 417:**

Ninth, generally accepted journalism standards encourage reporters and producers to avoid conflicts of interest. OANN violated this standard by allowing Mr. Giuliani, Ms. Powell, Mr. Lindell, and others to elevate their own self-interest above fairness and accuracy. OANN's own actions before and during the disinformation campaign evidence its interest in advancing a preconceived story that sells as opposed to reporting the truth.

**ANSWER:** Defendant responds that OAN complies with journalism ethical standards, but Plaintiffs have failed to specify what entity's standards they're allegedly invoking. In the journalism profession, there is nothing generally referred to as "generally accepted journalism standards" (in contrast, for instance, to Generally Accepted Accounting Principles in the accounting profession). Defendant doesn't understand whether Plaintiffs are referring to Society for Professional Journalists standards, Associated Press standards, or some other organization's standards. Defendant admits that in hard news reporting avoiding conflicts of interest is important but denies that not doing so equates to actual malice. Defendant denies the remaining allegations by Plaintiffs against Defendant in Paragraph 417.

**ALLEGATION NO. 418:**

Tenth, generally accepted journalism standards encourage reporters and producers to be transparent with readers and viewers. OANN violated this standard by failing to disclose to readers and viewers that it was not publishing an objective, fact-based report about Smartmatic. OANN misled readers and viewers into believing that it was reporting news as a result of a fact-driven "investigation," when it was not.

**ANSWER:** Defendant responds that OAN complies with journalism ethical standards, but Plaintiffs have failed to specify what entity's standards they're allegedly invoking. In the journalism profession, there is nothing generally referred to as "generally accepted journalism standards" (in contrast, for instance, to Generally Accepted Accounting Principles in the accounting profession). Defendant doesn't understand whether Plaintiffs are referring to Society

for Professional Journalists standards, Associated Press standards, or some other organization's standards.  Defendant admits that in hard news reporting transparency can be important but denies that not being transparent equates to actual malice.  Defendant denies the remaining allegations by Plaintiffs against Defendant in Paragraph 418.

## ALLEGATION NO. 419:

Eleventh, generally accepted journalism standards encourage reporters and producers to admit and correct mistakes.  OANN violated this standard by failing to admit and correct the factual inaccuracies from the disinformation campaign after being informed of them.  On December 11, 2020, Smartmatic sent OANN a retraction demand.  OANN never publicly acknowledged the demand or the factual information included with the demand.  OANN did not issue the requested retraction and did not fully admit and correct all of its mistakes.

**ANSWER:** Defendant admits that Smartmatic sent Defendant a retraction demand, and Defendant did not issue a retraction as a result (because none was justified).  Defendant further responds that OAN complies with journalism ethical standards, but Plaintiffs have failed to specify what entity's standards they're allegedly invoking.  In the journalism profession, there is nothing generally referred to as "generally accepted journalism standards" (in contrast, for instance, to Generally Accepted Accounting Principles in the accounting profession).  Defendant doesn't understand whether Plaintiffs are referring to Society for Professional Journalists standards, Associated Press standards, or some other organization's standards.  Defendant admits that in hard news reporting admission and correction of mistakes is important but denies that the retraction demand asserted any mistakes and denies that not issuing a retraction equates to actual malice.  Defendant denies the remaining allegations by Plaintiffs against Defendant in Paragraph 419.

## ALLEGATION NO. 420:

OANN's violations of generally accepted journalism standards demonstrate the intentionality of its actions.  OANN's reckless disregard for the truth and purposeful avoidance of the truth were not the result of mistake or ignorance.  OANN knew what it should do to investigate and report on the events following the 2020 U.S. election.  OANN knew what it should do based on generally accepted journalism standards. OANN intentionally and knowingly ignored those

standards. It did so for self-promotion and preservation, and it maliciously attacked Smartmatic for these reasons.

**ANSWER:** The allegations in Paragraph 420 contain legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 420.

> **E.     OAN reported ethically without ill will or improper motive.**

**ALLEGATION NO. 421:**

OANN not only knowingly participated in publishing false information about Smartmatic during the disinformation campaign, but it also did so with ill-will and improper motives for self-promotion and financial and other gain.

**ANSWER:** The allegations contained in Paragraph 421 are legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 421.

**ALLEGATION NO. 422:**

Before the election, OANN reported that Democrats were trying to steal the election from President Trump by tampering with absentee ballots and mail-in votes and by using a "computer system to alter votes electronically."  Even before OANN made false claims about Smartmatic, OANN pushed a preconceived narrative about "election fraud" in order to stay on President Trump's good side and appeal to pro-Trump viewers.

**ANSWER:** Defendant denies the allegations in Paragraph 422.

**ALLEGATION NO. 423:**

After the election, OANN spread disinformation about Smartmatic and the election to keep and grow its audience base and strengthen endorsements for President Trump.  OANN's initial stories about election fraud and Smartmatic were a hit with viewers.  OANN wanted to keep its viewers happy and tuned-in, so it continued to broadcast stories about Smartmatic.

**ANSWER:** Defendant denies the allegations in Paragraph 423.

**ALLEGATION NO. 424:**

OANN's coverage was also a hit with President Trump.  After November 12, when OANN started covering the "election fraud" story, President Trump tweeted @OANN to his tens of millions of followers over 40 times.  For example, on December 1, 2020, President Trump tweeted "Hope everybody is watching @OANN right now.  Other media afraid to show." (Tweet, @realDonaldTrump, Dec. 1, 2020 (Exhibit 143).)

**ANSWER:** The Tweet speaks for itself, thus no response is required.  To the extent a response is required, Defendant admits the existence of the Tweet set forth in Paragraph 424.  Defendant lacks sufficient information or knowledge to form a belief as the truth of any allegation that particular aspects of OAN's reporting were a "hit" with President Trump, thus Defendant denies that allegation.  Defendant further lacks sufficient information or knowledge to form a belief about the truth of the allegation regarding how many times President Trump himself Tweeted @OANN.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 424.

**ALLEGATION NO. 425:**

It was in this competitive environment that OANN started its own disinformation campaign against Smartmatic.  The disinformation campaign provided OANN an opportunity to solidify its position with President Trump and his supporters, and subsequently increase its viewers, its online presence, and, most importantly, its paid subscribers.

**ANSWER:** Defendant denies the allegations in Paragraph 425.

**V.  OAN's diligent reporting did not unjustifiably harm or financially damage any Smartmatic-related entity.**

**ALLEGATION NO. 426:**

OANN published its defamatory statements about Smartmatic on multiple programs over an elongated period of time.  OANN's defamatory statements were then republished by individuals who read or watched them originally on a OANN distribution channel. OANN knew and understood this republication would happen.  As a result, through OANN's publication and republication, OANN's defamatory statements about Smartmatic were widely and generally disseminated, particularly in the United States where OANN has its largest audience base.

**ANSWER:** The allegations in Paragraph 426 contain legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 426.

**ALLEGATION NO. 427:**

OANN's defamatory statements were a proximate and substantial cause of Smartmatic's name and brand becoming synonymous with election fraud with members of the general public and government officials, particularly those in the United States. OANN's defamatory statements cast Smartmatic as one of the voting machine companies, along with Dominion, that rigged the

2020 U.S. election; and, even worse, OANN's defamatory statements created the impression that Smartmatic's software was not to be trusted because it was Smartmatic's software that switched votes in voting machines regardless of who supplied the machines.

**ANSWER:** The allegations in Paragraph 427 contain legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 427.

**ALLEGATION NO. 428:**

Prior to the 2020 U.S. election, Smartmatic was a known and trusted name among individuals responsible for selecting election technology and systems in voting jurisdictions in the United States and across the world. Smartmatic was not, however, a household name. Smartmatic's long history of helping to conduct secure, accurate, and auditable elections was not known among the general public.

**ANSWER:** Defendant denies the allegations in Paragraph 428. Answering further, Defendant states that any Smartmatic entity's alleged long history of helping to conduct secure, accurate, and auditable elections couldn't have been known to the general public because no long history of that nature even existed.

**ALLEGATION NO. 429:**

OANN's defamatory statements irreparably tarnished Smartmatic's name and brand with members of the general public, particularly in the United States, who read or watched its publications. Below are just a few examples of the reactions people had to OANN's publications:

a. People who read or watched OANN's publications came to believe that Smartmatic's election technology and software was used to rig and steal elections.



b.  People who read or watched OANN's publications came to believe that Smartmatic's technology and software were used to change votes.



c.  People who read or watched OANN's publications came to believe that Smartmatic's election technology and software were used to rig and steal the 2020 U.S. election.



d.  People who read or watched OANN's publications came to believe that Smartmatic's election technology and software should never be used in an election.





e.   People who read or watched OANN's publications equated Smartmatic with Dominion, the other voting machine company that OANN indicated had rigged the 2020 U.S. election by using Smartmatic software to switch votes.



f.   People who read or watched OANN's publications came to believe that Smartmatic was part of the "deep state" used to rig elections in the United States and abroad.





g.  People who read or watched OANN's publications came to believe that Smartmatic was evil.



h.   People who read or watched OANN's publications came to believe that Smartmatic was corrupt and engaged in criminal activities.







    i.    People who read and watched OANN's publications came to believe that OANN
          was the only news organization telling them the truth about election fraud in the
          2020 U.S. election.



**ANSWER:** The alleged Tweets speak for themselves, thus no response is required.  To the extent

a response is required, Defendant lacks sufficient knowledge or information to form a belief as to

whether the Tweets were made or whether they're authentic and thus denies the related allegations.

Defendant further denies the first sentence of Paragraph 429.  Defendant is without knowledge or

information sufficient to form a basis as to the truth of the allegations relating to beliefs of

individuals other than OAN, and therefore denies such allegations. Defendant further denies that Plaintiffs have accurately characterized the alleged Tweets. Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 429.

**ALLEGATION NO. 430:**

Smartmatic's name and brand similarly suffered with government officials, particularly those in the United States, who did not have firsthand experience with Smartmatic and electronic voting technology. Government officials with firsthand knowledge of Smartmatic's role in the 2020 U.S. election, e.g., officials in Los Angeles County, were happy with how the election was conducted and confident in its outcome. Government officials who watched or read OANN's publications about Smartmatic received a very different message.

**ANSWER:** Defendant denies the allegations in Paragraph 430.

**ALLEGATION NO. 431:**

OANN's defamatory statements about Smartmatic and Dominion were a substantial cause of certain government officials becoming critical of the companies, specifically, and electronic voting, generally. Government officials who had not previously opposed the use of electronic voting began to do so following OANN's publications. This includes government officials directly or indirectly involved in the selection of the voting system used in their jurisdiction and the companies who supply machines and services for the selected voting system.

**ANSWER:** Defendant denies the allegations in Paragraph 431.

**ALLEGATION NO. 432:**

The widespread and general distribution of OANN's publications about Smartmatic, thus, contributed to a crisis situation for Smartmatic, particularly in the United States where OANN has its largest audience base. Smartmatic's reputation has been irreparably tarnished. Smartmatic's officers and employees have been threatened. Smartmatic's operations have come under attack— physically and electronically. Smartmatic has incurred the following out-of-pocket expenses as a result.

    a.    Smartmatic has been required to spend in excess of $400,000 on public relations and crisis management following OANN's publication of its defamatory statements and will spend millions more in the coming years.

    b.    Smartmatic has been required to spend in excess of $100,000 on cybersecurity following OANN's publication of its defamatory statements and will spend millions more in the coming years.

    c.    Smartmatic has been required to spend in excess of $700,000 on retention and recruitment for personnel following OANN's publication of its defamatory statements and will spend millions more in the coming years.

**ANSWER:** Defendant lacks sufficient information or knowledge to form a belief as to whether any Smartmatic entity's officers and employees have been threatened or whether any Smartmatic entity's operations have come under attack physically or electronically, thus Defendant denies these allegations.   Defendant further denies the remaining allegations by Plaintiffs against Defendant in Paragraph 432.

**ALLEGATION NO. 433:**

OANN's publication of its defamatory statements about Smartmatic, and the republication of those statements, was a substantial cause of these out-of-pocket expenses.  OANN's defamatory statements were read or watched by a significant audience base through publication and republication, particularly in the United States.  The reaction by that audience base, as well as the reputational harm directly linked to the publications, was a substantial cause of these out-of-pocket expenses.

**ANSWER:** The allegations in Paragraph 433 contain legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 433.

**ALLEGATION NO. 434:**

Moreover, OANN's publication of its defamatory statements was a substantial cause of Smartmatic's diminished business value and prospects, particularly in the United States where OANN has its largest audience base.  Prior to the 2020 U.S. election, Smartmatic's business value and prospects were linked to its reputation in the industry for providing technology and software that guaranteed secure, accurate and auditable elections.  Individuals responsible for selecting voting systems in the United States and across the world understood they would not be second-guessed if they selected Smartmatic.   They understood that selecting electronic voting and Smartmatic was a safe choice based on Smartmatic's track record for providing secure, accurate and auditable election results.

**ANSWER:** The allegations in Paragraph 434 contain legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 434.

**ALLEGATION NO. 435:**

OANN's defamation campaign was a direct assault on the reputation that Smartmatic relied upon for its business value and prospects.  OANN branded Smartmatic as a corrupt company whose election technology and software were used to fix, rig, and steal elections.  Far from providing secure, accurate and auditable election results, OANN branded Smartmatic as a company whose technology and software meant elections were not secure, accurate or auditable.

**ANSWER:** The allegations in Paragraph 435 contain legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 435.

**ALLEGATION NO. 436:**

On the other hand, OANN's branding of Smartmatic as corrupt company substantially contributed to a "no win" situation for Smartmatic with individuals responsible for selecting voting systems, particularly in the United States.  On the one hand, individuals who were not previously familiar with Smartmatic now have a negative impression of electronic voting systems, including those offered by Smartmatic.  Those individuals are less likely to select electronic voting systems for their jurisdictions, and, even if they do, they are less likely to select Smartmatic.  OANN's publications contributed to that negative impression.

**ANSWER:** Defendant denies the allegations in the first three sentences of Paragraph 436.  As to the last sentence of Paragraph 436, Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegation that OAN reporting contributed to the already negative views about any given Smartmatic entity, thus Defendant denies that allegation.  Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph 436.

**ALLEGATION NO. 437:**

On the other hand, individuals who were familiar with Smartmatic prior to the publication of OANN's defamatory statements have a constituency problem.  Individuals familiar with Smartmatic understand its election technology and software ensure secure, accurate, and auditable election results.  However, for some of them, their constituents have been exposed to, and believe, OANN's defamatory statements about Smartmatic, Dominion and election technology.  As a result, their selection of electronic voting, generally, and Smartmatic, specifically, would be second-guessed by their constituents.  These individuals are less likely to select electronic voting systems for their jurisdictions, and, even if they do, they are less likely to select Smartmatic.  OANN's publications contributed to this constituency problem.

**ANSWER:** Defendant is without knowledge or information sufficient to form a basis as to the truth of the allegations relating to beliefs of individuals other than OAN, and therefore denies the

same.  Defendant denies any remaining allegations by Plaintiffs against Defendant in Paragraph

437.

## ALLEGATION NO. 438:

This "no win" situation has significantly diminished Smartmatic's business value and prospects.  Prior to the 2020 U.S. election, based on its historical business and pipeline, Smartmatic's business was valued in excess of $3.0 billion based on a modest multiplier.  Now, following OANN's publication of its defamatory statements, Smartmatic's business is valued at less than $1 billion.  The general and widespread publication and distribution of OANN's defamatory statements about Smartmatic were a substantial cause of a portion of this business valuation decline.

**ANSWER:** The allegations in Paragraph 438 contain legal conclusions to which no response is

required.  To the extent a response is required, Defendant denies the allegations in Paragraph 438.

## FOOTNOTE NO. 21:

Smartmatic's business pipeline includes sales and opportunities through subsidiaries wholly- owned by Smartmatic International Holding B.V. in the United States, Barbados, Australia, United Kingdom, Panama, Haiti, Belgium, Singapore, Netherlands, Mexico, Ecuador, Brazil, Estonia, Taiwan, and the Philippines as well as branches in Colombia, Argentina, Honduras, Pakistan, Italy, Jamaica, and El Salvador.

**ANSWER:** Defendant is without knowledge or information sufficient to form a basis as to the

truth of the allegations in Footnote No. 21, and therefore denies them.

## ALLEGATION NO. 439:

Smartmatic sent retraction demand letters to OANN before filing this lawsuit.  (12/11/20 Retraction Demand Letter to OANN (Exhibit 46); 10/27/21 Second Retraction Demand Letter to OANN (Exhibit 47).)  OANN did not fully and completely retract its statements and implications.

**ANSWER:** The referenced letters speak for themselves, thus no response is required.  To the

extent a response is required, Defendant admits the letters exist.   Defendant denies that the letters

assert any actionable and tortious conduct by OAN.  Defendant further denies that the letters assert

-268-

any recoverable damages against OAN.  Defendant further denies any remaining allegations by Plaintiffs against Defendant in Paragraph 439.

## CAUSES OF ACTION AS ALLEGED BY PLAINTIFFS

### FIRST CAUSE OF ACTION

**(Defamation for False Statements and Implications about Smartmatic)**

**DENIED**

### ALLEGATION NO. 440:

Smartmatic repeats, realleges, and incorporates by reference the allegations in paragraphs 1-439 of this Complaint as if fully stated herein.

**ANSWER:** Defendant, repeats, realleges, and incorporates its responses to Paragraphs 1-439 of this Answer as if fully stated herein.

### ALLEGATION NO. 441:

OANN published and/or republished false statements and implications during news broadcasts, in online reports, and on social media that Smartmatic participated in a criminal conspiracy to fix, rig, and steal the 2020 U.S. election.  These false statements are pleaded in paragraphs 184, 196, 205, 218, 227, which set forth the particular words and statements used in the publications.  The false implications were intentionally made through the false statements, by other statements that were misleading due to material omissions, by presenting misleading juxtapositions of statements, and when taking into account the context of each publication.  The false implications were also made through the disinformation campaign as a whole.  (*See* ¶171.)

**ANSWER:** Defendant denies the allegations in Paragraph 441.  Defendant repeats and incorporates by reference its responses to Paragraphs 184, 196, 205, 218, 227 as if fully restated herein.

### ALLEGATION NO. 442:

These false statements and implications were and would be reasonably understood to be statements of fact about Smartmatic.

**ANSWER:** The allegations in Paragraph 442 are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 442.

**ALLEGATION NO. 443:**

These statements and implications were false for the reasons stated in paragraphs 180, 188–194, 199–203, 208–216, 221–225, 230–237.

**ANSWER:** The allegations in Paragraph 443 are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 443. Defendant also repeats and incorporates by reference as if fully set forth herein its responses to Paragraphs 180, 188-194, 199-203, 208-216, 221-225, 230-237.

**ALLEGATION NO. 444:**

These statements and implications were published without privilege or legal authorization, and if there was any such privilege or authorization (and there was not) it was intentionally abused.

**ANSWER:** The allegations in Paragraph 444 are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 444.

**ALLEGATION NO. 445:**

These statements and implications were broadcast, published and republished to third parties. The broadcasts, publications and republications with these false statements and implications were widely disseminated by OANN.

**ANSWER:** The allegations in Paragraph 445 are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 445.

**ALLEGATION NO. 446:**

These statements and implications were defamatory because they exposed Smartmatic to public hate, contempt, ridicule, and disgrace, and created the appearance that Smartmatic is odious and infamous. The statements also induced an evil and unsavory opinion of Smartmatic and its business into the minds of a substantial number of the community.

**ANSWER:** The allegations in Paragraph 446 are legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 446.

**ALLEGATION NO. 447:**

   These statements and implications were defamatory *per se* since they charged Smartmatic with a serious crime and were of a nature tending to injure Smartmatic in its trade, business, and profession.

**ANSWER:** The allegations in Paragraph 447 are legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 447.

**ALLEGATION NO. 448:**

   OANN acted with fault, at least negligence, and with actual malice.   OANN knew these defamatory statements and implications were false, or recklessly disregarded the truth or falsity of the statements and implications, when it broadcast, published, and republished them. The allegations related to OANN's actual malice include but are not limited to those pleaded in paragraphs 238–425.

**ANSWER:** The allegations in Paragraph 448 are legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 448.

**ALLEGATION NO. 449:**

   OANN also acted to deliberately and malicious injure Smartmatic out of hatred, ill- will or spite, and/or for improper motives.

**ANSWER:** The allegations in Paragraph 449 are legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 449.

**ALLEGATION NO. 450:**

   OANN also failed to exercise due care to prevent the publication or utterance of these defamatory statements and implications during its broadcasts and publications.

**ANSWER:** The allegations in Paragraph 450 are legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 450.

**ALLEGATION NO. 451:**

Before filing this complaint, OANN provided notice to and demanded that OANN retract its false and defamatory statements and implications in a comparable time, place, and manner in which it broadcast, published and republished them. OANN failed to do so.

**ANSWER:** The allegations in Paragraph 451 are legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 451.

**ALLEGATION NO. 452:**

These false statements and implications by OANN were a substantial factor in causing Smartmatic to suffer irreparable harm to its reputation and suffer economic loss, and Smartmatic is thus entitled to compensatory damages.

**ANSWER:** The allegations in Paragraph 452 are legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 452.

**ALLEGATION NO. 453:**

As a direct and proximate result of these false statements and implications by OANN, Smartmatic has also suffered and will continue to suffer actual, consequential and special damages in an amount that will be determined at trial.

**ANSWER:** The allegations in Paragraph 453 are legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 453.

**ALLEGATION NO. 454:**

Smartmatic is also entitled to punitive damages because OANN acted with actual malice and ill-will and spite towards Smartmatic and for improper motives.

**ANSWER:** The allegations in Paragraph 454 are legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 454.

## SECOND CAUSE OF ACTION

**(Injurious Falsehood for False Statements and Implications about Smartmatic's Election Technology and Software)**

### DENIED

**ALLEGATION NO. 455:**

Smartmatic repeats, realleges, and incorporates by reference the allegations in paragraphs 1-439 of this Complaint as if fully stated herein.

**ANSWER:** Defendant repeats, realleges, and incorporates by references its responses to the references in Paragraph 1-439 as if fully set forth herein.

**ALLEGATION NO. 456:**

OANN published and/or republished false statements and implications during news broadcasts, in online reports, and on social media that Smartmatic's election technology and software: were widely used, including in Dominion's voting machine system, in the 2020 U.S. election, including in contested states where claims of election fraud were made; were used to fix, rig, and steal the 2020 U.S. election; were hacked or compromised during the 2020 U.S. election or while votes were sent abroad to be counted; and were designed to fix, rig, and steal elections and have been used to do so before. These false statements are pleaded in paragraphs 184, 196, 205, 218, 227, which set forth the particular words and statements used in the publications. The false implications were intentionally made through the false statements, by other statements that were misleading due to material omissions, by presenting misleading juxtapositions of statements, and when taking into account the context of each publication. The false implications were also made through the disinformation campaign as a whole. (*See* ¶171.)

**ANSWER:** The allegations in Paragraph 456 are legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in Paragraph 456.

Defendant also repeats and incorporates by reference its responses to Paragraphs 184, 196, 205, 218, 227 as if fully restated herein.

**ALLEGATION NO. 457:**

These false statements and implications were and would be reasonably understood to be statements of fact about Smartmatic's goods and services, and in particular about its election technology and software.

**ANSWER:** The allegations in Paragraph 457 are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 457.

**ALLEGATION NO. 458:**

These statements and implications were false for the reasons stated in paragraphs 180, 188–194, 199–203, 208–216, 221–225, 230–237.

**ANSWER:** Defendant denies the allegations in Paragraph 458. Defendant also repeats and incorporates by reference its responses to Paragraphs 180, 188–194, 199–203, 208–216, 221–225, 230–237 as if fully restated herein.

**ALLEGATION NO. 459:**

These statements and implications were published without privilege or legal authorization, and if there was any such privilege or authorization (and there was not) it was intentionally abused.

**ANSWER:** The allegations in Paragraph 459 are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 459.

**ALLEGATION NO. 460:**

These statements and implications were broadcast, published and republished to third parties. The broadcasts, publications and republications with these false statements and implications were widely disseminated by OANN.

**ANSWER:** The allegations in Paragraph 460 are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 460.

**ALLEGATION NO. 461:**

These statements and implications were injurious falsehoods because they cast doubt upon the quality, integrity and trustworthiness of Smartmatic's goods and services, and in particular its election technology and software.

**ANSWER:** The allegations in Paragraph 461 are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 461.

**ALLEGATION NO. 462:**

OANN acted with fault, at least negligence, and with actual malice. OANN knew these injurious falsehoods and implications were false, or recklessly disregarded the truth or falsity of

the statements and implications, when it broadcast, published, and republished them. The allegations related to OANN's actual malice include but are not limited to those pleaded in paragraphs 238–425.

**ANSWER:** The allegations in Paragraph 462 are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 462. Defendant also repeats and incorporates by reference its responses to Paragraphs 238-425 as if fully restated herein.

**ALLEGATION NO. 463:**

OANN also acted to deliberately and malicious injure Smartmatic and its goods and services out of hatred, ill-will or spite, and/or for improper motives.

**ANSWER:** The allegations in Paragraph 463 are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 463.

**ALLEGATION NO. 464:**

OANN also failed to exercise due care to prevent the publication or utterance of these injurious falsehoods and implications during its broadcasts and publications.

**ANSWER:** The allegations in Paragraph 464 are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 464.

**ALLEGATION NO. 465:**

Before filing this complaint, Smartmatic provided notice to and demanded that OANN retract its injurious falsehoods and implications in a comparable time, place, and manner in which it broadcast, published and republished them. OANN failed to do so.

**ANSWER:** The allegations in Paragraph 465 are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 465.

**ALLEGATION NO. 466:**

These false statements and implications by OANN were a substantial factor in causing Smartmatic to suffer economic loss, and Smartmatic is thus entitled to compensatory damages.

**ANSWER:** The allegations in Paragraph 466 are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 466.

**ALLEGATION NO. 467:**

As a direct and proximate result of these false statements and implications by OANN, Smartmatic has also suffered and will continue to suffer actual, consequential and special damages in an amount that will be determined at trial.

**ANSWER:** The allegations in Paragraph 467 are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 467.

**ALLEGATION NO. 468:**

Smartmatic is also entitled to punitive damages because OANN acted with actual malice and ill-will and spite towards Smartmatic and for improper motives.

**ANSWER:** The allegations in Paragraph 468 are legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations in Paragraph 468.

**ALLEGATION NO. 469:**

Wherefore, Smartmatic prays for judgment against OANN for each of the causes of action raised herein. Smartmatic respectfully requests a judgment in its favor and against OANN for:

a.  Compensatory damages in an amount to be determined at trial;

b.  Actual, consequential and special damages in an amount to be determined at trial;

c.  Punitive damages;

d.  Reasonable and necessary attorneys' fees;

e.  Reasonable and necessary costs of the suit;

f.  Prejudgment and post-judgment interest at the highest lawful rates; and

g.  Such other and further relief as this Court deems just and appropriate.

**ANSWER:**

Defendant responds that Plaintiffs are not entitled to a judgment or any of the requested forms of relief. Defendant further responds that it seeks recovery of its costs in this action and

also reserves the right to assert counterclaims and seek associated damages and attorneys' fees against Plaintiffs as a result of the unjustified and unfairly prejudicial impact this litigation has had on OAN.

## ALLEGATIONS IN SUPPORT OF AFFIRMATIVE AND OTHER DEFENSES

Defendant Herring Networks, Inc. ("Herring"), for its Affirmative and Other Defenses ("Defenses") to the Complaint of plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V. and SGO Corporation Limited, without waiver of Plaintiffs' obligation to prove each and every element of their claims, states as follows:

1.      In addition to the foregoing responses, Herring generally denies liability for all claims alleged in the Complaint, denies each allegation that has not been expressly admitted, and asserts the following affirmative and other defenses to the claims alleged.  The assertion of each and every affirmative and other defense stated herein shall not be construed as an admission by Herring of any liability or wrongdoing, nor is Herring in any way agreeing or conceding that it has the burden of proof or the burden of persuasion for any affirmative defense or other defense set forth herein.  Herring reserves the right to assert additional defenses to the Complaint that may be appropriate after further investigation or discovery in this action and/or amendment by Plaintiffs stating new or different claims.

### Allegations Common to All Affirmative and Other Defenses

2.      This lawsuit is a dangerous attempt to destroy not just an independent, family-run media company, but the principles of free speech and a free press upon which this country was founded.  Herring's only offense was to report on a matter of perhaps the greatest public concern facing the world — the election of the President of the United States — and present some viewpoints that some of those in power disapproved.  As a result, Herring has been sued for defamation in a blatant effort to suppress a free press and to crush the marketplace of ideas.

3.     Herring urges this Court not to reward Plaintiffs' cynical efforts.  As Justice Louis Brandeis stated, "If there be time to expose through discussion, the falsehoods and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence."  *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring).

4.     When it founded One America News Network ("OAN") over a decade ago, the Herring family desired to create a truly independent news network that would provide news without being beholden to outside interests.  Until this most recent wave of cancel culture (and associated dropping of OAN by DirectTV and Verizon Fios), OAN's viewership was growing exponentially, proving that the American public wanted and needed to hear, see and read news that presented an independent viewpoint on matters of great public concern.

5.     Consistent with the principles on which this country was founded, OAN offered the American public the opportunity to, as Justice Brandeis stated, "think as you will and to speak as you think," and believed that the First Amendment would protect OAN's freedom to "debate on public issues" in a way that would be "uninhibited, robust, and wide-open."  *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964).

6.     Yet Plaintiffs' lawsuit tries to make an example of OAN and use litigation as Plaintiffs' vehicle to attempt to destroy the freedoms the citizens of this country have taken for granted.  Plaintiffs' lawsuit violates not only the First Amendment, but also California's anti-SLAPP law, Cal. Civ. Code §§ 425.16 *et seq.*, Florida's anti-SLAPP law, Fla. Stat. §§ 768.295 *et seq.* and the District's anti-SLAPP law, D.C. Code § 16-5502.

7.     Over a decade before the 2020 U.S. Presidential election, Smartmatic entities had been suffering reputational problems globally and in the United States relating to participation in Venezuelan presidential elections and a 2005 purchase of technology owned by Sequoia Voting

Systems, Inc. ("Sequoia").   Reporting on problems that Smartmatic-entity-purchased Sequoia technology caused in Chicago's 2006 primary elections, the *Chicago Tribune* observed that "the problems have also tarnished Sequoia's reputation, providing the latest hit for an industry that is the frequent target of electoral conspiracy theories."[7]  Smartmatic entities, like other companies in the voting machine industry, had been dogged with reputational problems going back to the 2000 presidential election.

8.      For example, before the 2004 U.S. presidential election, Ohio-based Diebold Inc. ("Diebold") was the country's largest maker of electronic voting machines.   Approximately a year before the election, Republican fundraiser and Diebold CEO Walden W. O'Dell wrote a letter inviting wealthy friends to a Republican fundraiser, stating "I am committed to helping Ohio deliver its electoral votes to the president next year."[8]  The letter immediately caused controversy given O'Dell's position as CEO of one of the largest suppliers of electronic voting machines, and O'Dell was eventually replaced as CEO in 2005.

9.      Diebold's problems quickly multiplied when the state of California later decertified Diebold voting machines because of security concerns[9] and, along with other state attorneys general, filed a lawsuit accusing Diebold for lying when it said its equipment was federally

---

[7] John McCormick, *Voting-machine maker on defense; Election trouble puts exec on the hot seat*, CHICAGO TRIBUNE, April 27, 2006 at 10.

[8]  Melanie Warner, *Machine politics in the digital age*, THE NEW YORK TIMES, November 9, 2003.

[9]   Greg Lucas, *State bans electronic voting in 4 counties; Touch-screen firm accused of "reprehensible" illegal conduct*, SFGate, May 1, 2004, *available at* https://www.sfgate.com/politics/article/State-bans-electronic-balloting-in-4-counties-2784975.php.

certified.  Diebold eventually settled for $2.6 million.[10]  Diebold became the subject of an academic

report and a 2005 HBO documentary, *Hacking Democracy*, which exposed serious security flaws

in its voting machines.  Diebold's reputation continued to suffer until it decided to remove the

name "Diebold" from voting machines[11] and then eventually exited the voting machine business

entirely, selling its voting machine assets to another voting machine company called Election

Systems & Software, Inc.[12]

10.     Not surprisingly, perhaps due in part to these reputational problems, in the four

years leading up to the 2020 U.S. election, one or more Smartmatic entities had been hemorrhaging

money, losing nearly $100 million since 2016.  Instead of looking within and fixing their own

problems that caused the public to lose faith in their voting systems, Plaintiffs proceeded to file a

slew of defamation lawsuits blaming the media and others for Plaintiffs' self-inflicted woes.[13]

11.     In this lawsuit, Plaintiffs allege that one or more of them were valued at $3 billion

going into the 2020 U.S. presidential election, but now the valuation is less than $1 billion and that

Herring is to blame.  In another lawsuit, Plaintiffs have alleged damages of ***$2.7 billion*** against

---

[10]   Barney Gimbel, *Rage against the machine: Diebold struggles to bounce back from the controversy surrounding its voting machines*, CNN Money, November 3, 2006.

[11]   Barney Gimbel, *Rage against the machine*, CNN Money, November 3, 2006, *available at* https://money.cnn.com/magazines/fortune/fortune_archive/2006/11/13/8393084/index.htm.

[12]  Veronica Dagher, *Diebold drops out of the U.S. Voting-Machine Business*, THE WALL STREET JOURNAL, September 4, 2009.

[13]  *See, e.g.*, *Smartmatic USA Corp., et al. v. Fox News Network, LLC, et al.*, Index No. 151136-2021 (New York County, New York); *Smartmatic USA Corp. and SGO Corporation Unlimited v. Newsmax Media, Inc.*, Case No. N21C-11-028 EMD (Del. Super. Ct.); *Smartmatic USA Corp., et al. v. Sidney Powell*, Case No. 21-cv-02995 (D.D.C.); *Smartmatic USA Corp., et al. v. Lindell, et al.*, Case No. 22-cv-00098 (D. Minn.)

Fox Corporation, Fox News Network, LLC and certain Fox contributors arising from similar allegations.

12.     Herring is confident that Plaintiffs' claims have no merit, and Plaintiffs will be incapable of proving them or that they suffered ***any*** damages arising from any alleged conduct of Herring.  However, Plaintiffs' free speech-jeopardizing lawsuit already has illegitimately damaged OAN's own reputation with the likes of DirectTV and Verizon Fios and its ability to broadcast the news to the American public.

13.     Plaintiffs' lawsuit was designed to grab headlines, and Plaintiffs and their representatives have boasted that they intend to punish and take down OAN for its reporting.[14]

14.     Since Plaintiffs filed this lawsuit alleging that OAN enjoyed an audience of 35 million viewers (Compl. ¶ 16), the media has reported that OAN has lost its presence in 20 million homes as of July 2022.[15]  Based on that reporting, Plaintiffs' lawsuit has made progress toward achieving its intended goal — destroying an independent, free press and suppressing free speech.

15.     But this sort of retaliation is precisely what the First Amendment and California's, Florida's and/or the District of Columbia's anti-SLAPP statutes were designed to redress, and Herring intends to defend itself vigorously.

---

[14] *Smartmatic Files Defamation Claims Against Newsmax and OAN*, Smartmatic.com, *available at* https://www.smartmatic.com/us/media/article/smartmatic-files-defamation-claims-against-newsmax-and-oann/; Annabelle Timsit, *Voting technology firm Smartmatic sues Newsmax and One America News, alleging defamation*, THE WASHINGTON POST, November 5, 2021; Jonah E. Bromwich and Michael M. Grynbaum, *Smartmatic sues Newsmax and One America News Network, claiming defamation*, THE NEW YORK TIMES, November 3, 2021; Alexa Corse, *Smartmatic sues Newsmax and OANN for defamation*, THE WALL STREET JOURNAL, November 3, 2021; Ken Stone, *In latest suit, Smartmatic says OAN lies about election fraud cost it $2 billion*, TIMES OF SAN DIEGO, November 3, 2021.

[15] Jeremy W. Peters and Benjamin Mullin, *OAN, a dependable Trump promoter, faces a 'Death Blow,'* THE NEW YORK TIMES, July 26, 2022.

## I.      Parties

16.      Plaintiffs are Smartmatic USA Corp., SGO Corporation Limited, and Smartmatic International Holding, B.V.

17.      Plaintiffs assert that Smartmatic USA Corp. is a Boca Raton, Florida-based company incorporated in Delaware.

18.      Plaintiffs assert that Smartmatic International Holding B.V. is an Amsterdam, Netherlands-based company that owns a 100% interest in Smartmatic USA Corp.

19.      Plaintiffs assert that SGO Corporation Limited ("SGO") is a London, United Kingdom-based corporation that owns a 100% interest in Smartmatic International Holding B.V. SGO was founded in 2014 when Lord Mark Malloch-Brown, who is a close personal friend of billionaire George Soros and currently runs Soros's Open Society Foundations, became SGO's Chairman.[16]  Lord Malloch-Brown stepped down from SGO to take over as president of Open Society Foundations.[17]

20.      Herring is a closely held California corporation with its principal place of business in San Diego, California.

## II.     Herring Networks, Inc.'s founding

21.      Herring is an independent, family-owned and operated media company that manages OAN and another network called A Wealth of Entertainment ("AWE").  Launched about a decade ago on July 4, 2013, OAN is a news channel that delivers timely national and international news 24 hours a day throughout the United States.  It features political analysis programming,

---

[16] Smartmatic press release, "Lord Malloch-Brown and Antonio Mugica launch SGO," *available at* https://www.smartmatic.com/us/media/article/2020/

[17] Open Society Foundations press release, "Patrick Gaspard to Step Down as Head of Open Society Foundations," *available at* https://www.opensocietyfoundations.org/newsroom/patrick-gaspard-to-step-down-as-head-of-open-society-foundations.

political talk shows, and special documentary-style reports.  Through 2021, OAN was a top performing network that offered extensive live programming and a linear experience for viewers that streaming services did not provide.

### III.   Plaintiffs' troubled history of election-related controversy

22.   The first Smartmatic entity was founded over 20 years ago in Venezuela by Venezuelan-born entrepreneurs.[18]  That entity began operations in 1997 in Caracas, Venezuela as "Tecnología Smartmatic de Venezuela, C.A."[19]

23.   From the very first election it handled, this Smartmatic entity was plagued with controversy.  Despite having never been used in any previous election, this Smartmatic entity was chosen by the Venezuelan government in 2004 to design and oversee the recall election of then-President Hugo Chávez.[20]

24.   Before awarding this Smartmatic entity the bid to handle the 2004 Chávez recall vote, the Venezuelan government invested $200,000 in Bizta Corp., a ballot software firm that partnered with this Smartmatic entity to design the election technology to be used in that election.[21] The investment gave the Venezuelan government a 28% ownership stake in the company.[22]

---

[18] Bob Davis, *Politics & Economics: maker of voting machines for U.S. denies ties to Chávez, Venezuela*, THE WALL STREET JOURNAL, October 31, 2006, at A5.

[19] Dato Capital Report p. 2

[20] Richard Brand and Alfonso Chardy, *Venezuela owns stake in ballots*, THE MIAMI HERALD, May 28, 2004, at 1A; Kim Zetter, *Los Angeles County's risky voting experiment*, POLITICO, March 3, 2020.

[21] Richard Brand and Alfonso Chardy, *Venezuela owns stake in ballots*, THE MIAMI HERALD, May 28, 2004, at 1A; Kim Zetter, *Los Angeles County's risky voting experiment*, POLITICO, March 3, 2020.

[22]   Richard Brand and Alfonso Chardy, *Venezuela owns stake in ballots*, THE MIAMI HERALD, May 28, 2004, at 1A

25.     Prior to the Venezuelan government's investment in Bizta, the company was dormant, had no sales, and was losing money.[23]

26.     The selection process that awarded the Smartmatic-Bizta venture the Venezuela election contract was itself fraught with controversy.  Opponents of then-President Chávez complained that "[t]he selection process was secret and it didn't allow us to get any information about the bidders and their products."[24]  At the time, Johns Hopkins University computer science professor and election security expert Aviel Rubin noted, "I've never heard of Smartmatic.  I'd be very concerned about an unknown player with that big of a contract, especially in a place like Venezuela, where fraud is such a big concern."[25]  And Stanford University Professor David Dill commented, "People just don't understand how easily these machines could fail to record votes accurately — even by being 'fixed.'"[26]

27.     Indeed, as reported by the press at the time, the Venezuelan government's investment in Bizta allowed the government to select a board member, who was Omar Montilla, an ally of Mr. Chávez's who played a significant role in Mr. Chávez's 1998 Presidential campaign.[27]  Two months after Mr. Montilla's appointment, the Venezuela National Electoral Council awarded the $91 million contract to handle the 2004 Venezuela election to the venture

---

[23] *Id.*

[24] *Id.*

[25] Richard Brand, *Untried Florida vote device to debut in Venezuela*, THE MIAMI HERALD, April 20, 2003, at 1A.

[26] Richard Brand and Alfonso Chardy, *Venezuela owns stake in ballots*, THE MIAMI HERALD, May 28, 2004, at 1A.

[27]  Richard Brand, *Voting-system firm drops Venezuela as an investor*, THE MIAMI HERALD, June 12, 2004, at 12A.

formed by the aforementioned Smartmatic entity, Bizta and CANTV (Venezuela's publicly held phone company).

28.    The Smartmatic/Bizta/CANTV venture was reportedly the work of two Venezuelan engineers: Antonio Mugica Rivero and Alfredo Anzola Jaumotte.[28]  Mr. Mugica remains the Executive Chairman of London-based SGO.

29.    Mr. Chávez ultimately won the 2004 recall vote in a landslide victory[29] that his opponents fiercely contested and others questioned.[30]  Following the 2004 election, a reported 82% of voters did not participate in a Smartmatic-operated congressional race, suggesting a lack of confidence in the system.[31]  Two years later, after one or more Smartmatic entities gained a foothold in U.S. elections, the United States Department of Justice began an investigation of one or more Smartmatic entities for possible violation of the Foreign Corrupt Practices Act and tax evasion relating to the 2004 election contract in Venezuela.[32]

## IV.    Smartmatic entity troubles worsen in the United States and one or more Smartmatic entities are investigated by the U.S. government.

30.    After the Venezuela election controversy, the Smartmatic troubles worsened when it began expanding its election business to the United States.  In March 2005, a Smartmatic entity

---

[28] *Id.*

[29]  Steven Dudley and Phil Gunson, *Chávez foes boycott audit, urge tests of vote machines*, THE MIAMI HERALD, August 19, 2004 at 12A.

[30]  Kim Zetter, *E-Vote rigging in Venezuela?*, WIRED, August 23, 2004.

[31]  *Hugo Wants Your Vote*, INVESTOR'S BUSINESS DAILY, April 6, 2006; Juan Forero, *Chávez's grip tightens as rivals boycott vote*, THE NEW YORK TIMES, December 5, 2005.

[32] Bob Davis and Glenn Simpson, *U.S. authorities probe how Smartmatic won Venezuela election pact*, THE WALL STREET JOURNAL, December 1, 2006.

purchased U.S.-based Sequoia, which immediately raised suspicions as reported by the media.[33]

In April 2006, a Smartmatic entity, which took over an election contract that Sequoia had with the

City of Chicago, faced hostile questions about Sequoia's flaws following problems in Chicago's

March 2006 primary elections.[34]

31.     After the *Chicago Tribune* reported on the fiasco in Chicago, another municipality

that was finalizing an $11.8 million contract with Sequoia decided to kill the deal.[35]   Yet, no

Smartmatic entity sued the *Chicago Tribune* for alleged defamation arising from its reporting of

the election problems.

32.     Shortly thereafter, members of Congress began raising questions about

Smartmatic's presence in the United States.   Representative Carolyn Maloney (D-NY) began

sending letters to the Secretary of the Treasury raising questions about "possible investments by

the Venezuelan government in Smartmatic" and urging the Committee on Foreign Investment in

the United States (CFIUS) to investigate the Smartmatic acquisition of Sequoia.[36]

---

[33]  *Hugo Wants Your Vote*, INVESTOR'S BUSINESS DAILY, April 6, 2006.

[34]  John McCormick, *Voting-machine maker on defense; Election trouble puts exec on the hot seat*, CHICAGO TRIBUNE, April 27, 2006 at 10.

[35]  John McCormick, *Voting-machine maker on defense; Election trouble puts exec on the hot seat*, CHICAGO TRIBUNE, April 27, 2006 at 10.

[36]  May 5, 2006 letter from Rep. Carolyn Maloney (D-NY) to Secretary John W. Snow, U.S. Department of the Treasury (May 5, 2006), *available at* https://maloney.house.gov/media-center/press-releases/us-voting-machine-company%E2%80%99s-possible-ties-foreign-government-draws-congressional; October 6, 2006 letter from Rep. Carolyn Maloney (D-NY) to Secretary Henry M. Paulsen, U.S. Department of the Treasury (Oct. 6, 2006), *available at* https://maloney.house.gov/sites/maloney.house.gov/files/documents/financial/acquisitions/20061006ElectionsCFIUS_paulson.pdf.

33.    Among other things, Representative Maloney raised concerns that "Smartmatic's possible **connection to the Venezuelan government** poses a **potential national security concern in the context of its acquisition of Sequoia because electronic voting machines are susceptible to tampering and insiders are in the best position to engage in such tampering**."[37] (Emphasis added.)  Representative Maloney also raised concerns that "Sequoia brought Venezuelan nationals to the United States to work on the Chicago 2006 primary election," which "raises questions about whether these individuals are subject to direction from a foreign interest that might pose a threat to the integrity of the election" and that "Smartmatic may soon be introducing into the United States the type of electronic voting machines that were used (with Bizta software) in the controversial 2004 Venezuelan recall election. . . ."[38]  Representative Maloney also criticized Smartmatic for obscuring its ownership, which was scattered throughout holding companies and trusts in the Netherlands and the Caribbean island of Curaçao.[39]  Representative Maloney requested that the CFIUS conduct an investigation of the concerns raised in her letters.

34.    Around the same time, *The Wall Street Journal* reported that the U.S. Department of Justice began an investigation surrounding the Smartmatic 2004 election contract in Venezuela that led to Mr. Chávez's victory.[40]  The *Journal* reported that "[e]ssentially, the Justice Department

---

[37]  October 6, 2006 letter from Rep. Carolyn Maloney (D-NY) to Secretary Henry M. Paulsen, U.S. Department of the Treasury (Oct. 6, 2006), *available at* https://maloney.house.gov/sites/maloney.house.gov/files/documents/financial/acquisitions/20061006ElectionsCFIUS_paulson.pdf.

[38]  *Id.*

[39]  *Id.*, *see also* Kim Zetter, *Los Angeles County's risky voting experiment*, POLITICO, March 3, 2020.

[40]  Bob Davis and Glenn Simpson, *U.S. authorities probe how Smartmatic won Venezuela election pact*, THE WALL STREET JOURNAL, December 1, 2006.

is looking into whether Smartmatic got its start in Venezuela by bribing officials and then improperly avoiding its tax liability in the U.S."[41]

## V. After investigation by the U.S. government, Smartmatic Corporation USA divests itself of Sequoia, which is eventually sold to Dominion Voting Systems, Inc.

35.     Shortly after Representative Maloney expressed her concerns about Smartmatic, the CFIUS commenced an investigation of Smartmatic[42] that resulted in Smartmatic's divestiture of Sequoia and the eventual sale of Sequoia to none other than Dominion Voting Systems, Inc. ("Dominion") which also has sued Herring for alleged defamation in this District.

36.     On December 15, 2006, Smartmatic and Sequoia withdrew from the CFIUS investigation with the permission of CFIUS, and entered into a Sale and Security Agreement with several U.S. government departments, through which Smartmatic agreed to sell its entire ownership interest in Sequoia by December 15, 2007.[43]   Smartmatic founder and current SGO Executive Chairman Antonio Mugica spearheaded the transaction.[44]

37.     In a November 8, 2007 press release, Representative Maloney announced that "Smartmatic, the voting machine firm **with ties to the Venezuelan government**, today announced

---

[41] *Id.*

[42]  *Id.*; *see also* Tim Golden, *U.S. investigates voting machines' Venezuela ties*, THE NEW YORK TIMES, Oct. 29, 2006; Bob Davis, *Politics & Economics: maker of voting machines for U.S. denies ties to Chávez,Venezuela*, THE WALL STREET JOURNAL, Oct. 31, 2006, at A4.

[43] Counterclaim and Third-Party Claim of Smartmatic Corporation and Hart Intercivic, Inc. ¶ 15, *Smartmatic Corporation v. SVS Holdings, Inc. and Sequoia Voting Systems, Inc.*, Case No. 3585-CVL (Del. Ct. Ch.) ("Smartmatic Delaware Litigation").

[44]  Declaration of Jack Blaine ("Blaine Decl.") ¶ 11, D.E. 202-1, *In re: SVS Holdings, Inc.* and *Sequoia Voting Systems, Inc.*, Case No. 10-24238 (D. Colo. Bankr.Ct.)

it is divesting ownership of the voting machine company Sequoia Voting Systems."[45]  (Emphasis added.)  She continued, "I am relieved by the news of this sale — it was a long time coming. . . . There were just too many questions and lingering doubts, which Smartmatic was clearly unable to overcome."[46]

      38.    A Smartmatic entity sold its interest in Sequoia to Smartmatic's management, which had formed a holding company called SVS Holdings, Inc.[47]  The purchase price for the transaction was a $2 million unsecured promissory note.  The seller received no cash compensation for the sale.[48]

      39.    Immediately after the sale, Sequoia started facing financial difficulties and began selling off its assets.[49]  In 2009 and 2010, Sequoia sold substantially all of its assets to Dominion.[50]  Also in 2009, Dominion granted Smartmatic a worldwide (excluding the U.S. and Canada) license to certain voting machine technology owned by Dominion.[51]  According to Dominion, a non-competition provision in the licensing agreement prohibited Smartmatic from selling or developing the Dominion technology in the United States, but Smartmatic could focus instead on emerging

---

[45]   November 8, 2007 press release, Representative Carolyn Maloney (D-NY), *available at* https://maloney.house.gov/media-center/press-releases/smartmatic-announces-sale-sequoia-voting-systems.

[46]   *Id.*

[47]   Smartmatic Delaware Litigation, Smartmatic Mot. for S.J. at 6.

[48]   *Id.*

[49]   Blaine Decl. ¶ 18.

[50]   Blaine Decl. ¶¶ 18-19.

[51]   May 1, 2013 Memo. Op. at 2., *Smartmatic Int'l Corp., et al. v. Dominion Voting Systems Int'l Corp., et al.*, Case No. 7844-VCP (Del. Ct. Ch.)

international markets.   Smartmatic subsequently sued Dominion relating to the licensing agreement and ultimately, the parties dismissed the case, likely as a result of a negotiated settlement.[52]

40.     For its part, Dominion's security measures and integrity also have been questioned repeatedly, including as recently as 2019.  On December 6, 2019, Senators Elizabeth Warren (D-MA), Amy Klobuchar (D-MN), Ron Wyden (D-OR), and Representative Mark Pocan (D-WI) wrote a letter to Dominion's majority owner, Staple Street Capital, raising concerns about election integrity and the security of Dominion technology.[53]

## VI.   Smartmatic entities' global reputation continues to suffer.

41.     The Smartmatic problems persisted after the investigation by the CFIUS.  In the Philippines, where a Smartmatic entity runs elections, the Philippine Department of Justice in 2017 charged three Smartmatic employees — Marlon Garcia, Neil Baniqued, and Mauricio Herrera — with changing the script in the transparency server without authorization.[54]  One of Smartmatic's employees admitted to doing so, which violated Philippine Commission on Elections rules.

42.     One or more Smartmatic entities continued to operate in Venezuela for another decade after the controversial Chávez elections in 2004 and 2005.  And in 2017, one or more Smartmatic entities found themselves embroiled in yet another controversy, and the *Miami Herald*

---

[52] Nov. 26, 2014 Stipulation and Order of Dismissal, *Smartmatic Int'l Corp., et al. v. Dominion Voting Systems Int'l Corp., et al.*, Case No. 7844-VCP (Del. Ct. Ch.).

[53] December 10, 2019 letter from Senator Elizabeth Warren, Senator Amy Klobuchar, Senator Ron Wyden and Representative Pocan to Staple Street Capital Group, LLC, *available at* https://www.warren.senate.gov/oversight/letters/warren-klobuchar-wyden-and-pocan-investigate-vulnerabilities-and-shortcomings-of-election-technology-industry-with-ties-to-private-equity.

[54] Marlon Ramos, *Comelec, Smartmatic execs indicted over computer 'tweak,'* THE FILIPINO EXPRESS, June 9, 2017.

reported that Smartmatic founder Mr. Mugica admitted that the 2017 election had been "tampered with."[55]  Smartmatic has since ceased operations in Venezuela, reporting in its 2017 financial statements that the Venezuelan government had "abrupt[ly] call[ed] off of the Venezuela project."[56]

43.     Smartmatic also faces criticism related to its role in Kenya's general election in August 2022.  In November 2021, Kenya's Independent Electoral and Boundaries Commission awarded a $19.7 million contract to one of the plaintiffs in this case, Smartmatic International Holding B.V. ("Smartmatic International"), to supply Kenya Integrated Elections Management Systems ("KIEMS") kits for use in Kenya's 2022 general election.[57]  KIEMS kits consist of biometric voter registration, electronic voter identification and results transmission.[58]  In connection with that contract, Smartmatic International has been criticized for, among other things, the controversies facing Smartmatic International in connection with elections it handled as described above in the Philippines, Venezuela and the U.S., along with Uganda and Nigeria.[59]

44.     Kenyan journalists have called out Smartmatic International's lack of transparency, noting that in response to requests for information about the Smartmatic ownership structure,

---

[55]  Cody Weddle and Patricia Mazzei, *Venezuela election results were manipulated, voting company says,* THE MIAMI HERALD, Aug. 2, 2017.

[56]  SGO Annual Report and Consolidated Financial Statements, December 31, 2017, at 3.

[57]  Rawlings Otieno, *IEBC taken to court over KIEMS kits tender*, PEOPLE DAILY, November 9, 2021.

[58]  Karim Anjarwalla and Abdulmalik Sugow, *Smartmatic: The election company and their role in the upcoming elections*, The Elephant, August 3, 2022.

[59]  Karim Anjarwalla and Abdulmalik Sugow, *Road to 9/8: Risks posed by digitisation of electoral processes*, THE ELEPHANT, June 17, 2022.

Smartmatic refused to provide any details other than confirming that Smartmatic Corporation is incorporated in Delaware and that two its founders — Antonio Mugica and Roger Piñate — run the company and are also currently its only directors.[60]  Smartmatic Corporation is 83% owned by plaintiff SGO.[61]  For its part, SGO is owned by the Mugica and Piñate families.[62]

45.     The Kenyan media further criticized Smartmatic for failing to provide responses to inquiries relating to reports about a 60% failure rate during a dry run of results, how Smartmatic planned to handle voter data, and the role of three Venezuelan national, Smartmatic employees who were arrested in July 2022 while in possession of election materials.[63]

46.     The Kenyan media condemned Smartmatic for its lack of transparency, noting "[w]e consider that it does not behove [sic] Smartmatic, whose business model is designed to be at the nerve centre of democratic transitions, to be less than fully transparent about such matters. Being less than fully transparent creates a cloud of mistrust and uncertainty especially when one considers the history of Kenya's elections particularly since 2002 and the palpable tensions that surround elections.  This is all the more the case because Smartmatic, on their website proclaim that '*transparency is at the core of what we do.*'"[64] (Emphasis in original.)

---

[60]  *Id.*

[61]  *Id.*

[62]  *Id.*

[63]  *Id.*

[64]  *Id.*

47.     Six days after the Kenyan election, the winner was finally declared in a close race in which four top elections officials disassociated themselves from the vote count, calling it "opaque."[65]

## VII.   Smartmatic entities suffered continued financial problems long before the 2020 election.

48.     Not surprisingly, Smartmatic's ability to generate revenue has been harmed by its problems.  According to its public filings and a publicly-filed expert report, SGO's revenues have declined by more than 75% over the course of the last decade.[66]  SGO's revenues have not been greater than $200 million for more than eight years.[67]  And in the last four years, SGO has lost money, including a loss of $19.2 million in 2020.[68]

49.     Despite the Smartmatic financial woes and the widespread negative reporting about Smartmatic entities dating back more than a decade, Plaintiffs claim that the reporting by OAN about the 2020 U.S. election allegedly caused Plaintiffs' valuation to drop, resulting in an alleged $2 billion in damages.  That is nonsense.

## VIII.   Smartmatic-related flaws are further exposed in the 2020 U.S. election.

50.     As Plaintiffs allege, a Smartmatic entity was only able to obtain a single contract to oversee the 2020 U.S. election — in Los Angeles County.

---

[65]  Michael M. Phillips and Nicholas Bariyo, *William Ruto declared winner of Kenyan Presidential election*, THE WALL STREET JOURNAL, August 15, 2022.

[66]  *See* March 17, 2022 Expert Report of Daniel R. Fischel ("Fischel Report") ¶ 25, attached to Answer and Counterclaim of Fox Corporation in *Smartmatic USA Corp. et al. v. Fox Corporation, et al.*, Case No. 151136/2021 (New York County, New York).

[67]  *Id.*

[68]  *Id.* ¶¶ 27-28.

51.     But contrary to Smartmatic's assertions, that election was far from "flawless." After spending 10 years and $300 million to design the new voting systems,[69] numerous security flaws were found in the Smartmatic technology that was to be deployed in the March 2020 primaries.[70] These included "multiple digital and physical vulnerabilities" that had been identified in December 2019 by an expert retained by the California Secretary of State.[71] The "security gaps, if left unfixed, could provide a gateway for a rogue election staffer or someone else with physical access to alter software on the voting machines or their back-end computer systems, **possibly changing votes** or otherwise disrupting the presidential race."[72]  (Emphasis added.)

52.     Smartmatic's systems faced additional criticism for using QR codes, which are "generally viewed as problematic by experts who say it inserts a machine – and its own code that's indecipherable to humans – between a voter and their vote."[73]

53.     POLITICO reported that "critics have expressed concerns" about Smartmatic, which "was founded by three engineers from Venezuela and was at one time the subject of a Treasury Department inquiry into its potential ties to the Venezuelan government," along with being criticized for Smartmatic's role in the 2016 Philippines election.[74]

---

[69] Matt Vasilogambros, *How LA's election innovation fell short*, The Center for Public Integrity, September 8, 2020, *available at* https://publicintegrity.org/politics/elections/ballotboxbarriers/how-la-election-innovation-fell-short.

[70] Kim Zetter, *Los Angeles County's risky voting experiment*, Politico, March 3, 2020.

[71] *Id.*

[72] *Id.*

[73] Tami Abdollah, *LA County is tabulating votes with QR codes.  Security experts think it's a bad idea*, dot.la, October 22, 2020, *available at* https://dot.la/la-county-vote-2648436288/particle-2.

[74] *Id.*

54.     A representative of an election integrity advocacy group characterized the flaws in the Smartmatic-designed Voting Solutions for All People ("VSAP") technology as "staggering," adding that the flaws "should be disqualifying."[75]  Because of the security flaws identified in the Smartmatic-designed VSAP, election security experts called for "barring the system from elections until they're fully resolved."[76]  However, Los Angeles County proceeded with the Smartmatic technology, with disastrous results.  As reported by the media, the primary election was "mired with technical problems that led to lengthy wait times and multiple after-incident reviews."[77]

55.     The technical problems caused wait times that were so severe that Los Angeles County's top elections official apologized and one Los Angeles County supervisor "called for an immediate investigation into" the widespread voting problems.[78]

56.     California Secretary of State Alex Padilla issued sharp criticism, noting "In Los Angeles County, too many voters faced unacceptably long wait times," prompting him to demand that Los Angeles County "mail a ballot to every registered voter, and address staffing, logistical, training and equipment issues that bogged down voting in the country's largest jurisdiction on Super Tuesday."[79]

---

[75]  *Id.*

[76]  *Id.*

[77]  Tami Abdollah, *LA County is tabulating votes with QR Codes.  Security experts think it's a bad idea*, DOT.LA, October 22, 2020, *available at* https://dot.la/la-county-vote-2648436288/particle-2.

[78]  John Myers, Sonali Kohli, Benjamin Oreskes, Liam Dillon and Dakota Smith, *Investigation into widespread voting problems in L.A. County needed now, supervisor says*, THE LOS ANGELES TIMES, March 4, 2020.

[79]  Libby Denkman, *The scramble to fix Los Angeles voting before November (and what went wrong)*, LAIST, March 5, 2020, *available at* https://laist.com/news/los-angeles-voting-lines-wait-times-election-officials-primary-fix-problems.

57.     State Senator Ben Allen (D-Santa Monica) also weighed in, noting that he plans to introduce legislation requiring Los Angeles County to send ballots by mail or provide more vote centers in the November 2020 election.[80]

58.     The efforts to encourage mail in voting to avoid a catastrophe in the November 2020 general election apparently worked, because according to Los Angeles County voter data, approximately 79% of Los Angeles County residents voted by mail in that election.[81]  Therefore, Plaintiffs' assertion that Smartmatic performance was "flawless" in the 2020 presidential election falls flat, considering that only 913,765 of nearly 6 million registered Los Angeles County voters showed up to the polls to vote in person.

59.     And California has since passed legislation requiring that every voter be mailed a ballot, which casts doubt on the role that electronic voting machine technology designed by Smartmatic and others will play in future elections.

60.     As for the 2020 U.S. presidential election, one or more Smartmatic entities again became embroiled in controversy.  The sitting U.S. President, his lawyers, surrogates, and spokespeople immediately began questioning the results of the 2020 election.  Several lawsuits were filed on behalf of the President questioning the results of the election.  Some of the allegations made on behalf of the President involved one or more Smartmatic entities and their technology and software.

61.     Consistent with its role as a member of the press, OAN began reporting on the President's allegations and covering these highly newsworthy events, which involved quite

---

[80]  *Id.*

[81]  *See* LA County Election Results, *available at* https://results.lavote.gov/#year=2020&election=4193.

possibly the most important matter of public concern — the election of the President of the United States.  Indeed, nearly every major media outlet in the nation and many others worldwide reported on the controversy surrounding the U.S. presidential election.

62.     OAN's hosts interviewed the President's lawyers, spokespeople and surrogates, and OAN reported on newsworthy events relating to the President's allegations of election tampering that other media outlets were similarly reporting on.

63.     Yet despite Plaintiffs' history mired with controversy and criticism, Plaintiffs have now filed this defamation lawsuit against Herring, asserting that OAN's reporting of the U.S. President's own allegations caused Plaintiffs to suffer $2 billion in damages.

64.     Plaintiffs' lawsuit is an attack on the First Amendment and the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open" that the First Amendment was designed to protect.  *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964).

65.     Plaintiffs' lawsuit was designed to chill free speech and a free press.  Indeed, since Plaintiffs filed suit in November 2021, OAN has suffered, according to the media, a "death blow," represented by its loss of carriage on major cable television providers.[82]   According to market intelligence analysts quoted by the media, OAN has lost nearly all of its linear subscribers.

66.     However, Herring intends to defend this baseless lawsuit that attempts to chill free speech vigorously and will seek its attorneys' fees and costs pursuant to Cal. Civ. Code § 425.16, Fla. Stat. §§ 768.295 *et seq.*, D.C. Code § 16-5502 and as otherwise permitted under the law.

---

[82]  Jeremy W. Peters and Benjamin Mullin, *OAN, a dependable Trump promoter, faces a 'Death Blow,'* THE NEW YORK TIMES, July 26, 2022.

## First Defense

67.     Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

68.     Plaintiffs' claims are barred because the Complaint fails to state a claim upon which relief can be granted.

## Second Defense

69.     Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

70.     Plaintiffs' claims are barred, in whole or in part, by California's anti-SLAPP law, Cal. Civ. Code §§ 425.16 *et seq*., Florida's anti-SLAPP law, Fla. Stat. §§ 768.295 *et seq.*, and the District's anti-SLAPP law, D.C. Code §§ 16-5502 *et seq.*

## Third Defense

71.     Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

72.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have failed to plead allegedly defamatory statements *in haec verba*.

## Fourth Defense

73.     Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

74.     Smartmatic's claims are barred, in whole or in part, because Plaintiffs are public figures and cannot prove actual malice.

## Fifth Defense

75.     Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

76.     Plaintiffs' claims are barred, in whole or in part, by the First Amendment to the United States Constitution.

## Sixth Defense

77.     Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

78.     Plaintiffs' claims are barred, in whole or in part, by Article 1, Section 2 of the California Constitution and/or Article I, Section 4 of the Florida Constitution.

## Seventh Defense

79.     Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

80.     Plaintiffs' claims are barred, in whole or in part, because the allegedly defamatory statements are true or substantially true.

## Eighth Defense

81.     Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

82.     Plaintiffs' claims are barred, in whole or in part, because some of the allegedly defamatory statements were not of and concerning any Plaintiff.

## Ninth Defense

83.     Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

84. Plaintiffs' claims are barred, in whole or in part, because some of the allegedly defamatory statements are incapable of defamatory meaning, hyperbolic, and/or opinion.

**Tenth Defense**

85. Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

86. Plaintiffs' claims are barred, in whole or in part, because the allegedly defamatory statements did not cause or contribute to the alleged damages suffered by any Plaintiff.

**Eleventh Defense**

87. Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

88. Plaintiffs' claims are barred, in whole or in part, because Plaintiffs' alleged damages, if any, are speculative and hypothetical, and are not cognizable as a matter of law.

**Twelfth Defense**

89. Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

90. Plaintiffs' claims are barred, in whole or in part, by the doctrines of unclean hands, estoppel, waiver, acquiescence, and/or assumption of risk because Plaintiffs' reputational problems and any alleged damages were caused by Plaintiffs' own actions.

**Thirteenth Defense**

91. Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

92. Plaintiffs' claims are barred, in whole or in part, by the fair report privilege.

**Fourteenth Defense**

93.     Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

94.     Plaintiffs' claims are barred, in whole or in part, by the neutral reportage privilege.

**Fifteenth Defense**

95.     Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

96.     Plaintiffs' claims are barred, in whole or in part, by the incremental harm doctrine.

**Sixteenth Defense**

97.     Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

98.     Plaintiffs' claims are barred, in whole or in part, by the libel proof plaintiff doctrine.

**Seventeenth Defense**

99.     Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

100.     Any of Plaintiffs' claims for presumed damages are unconstitutional under the U.S. and various state constitutions.

**Eighteenth Defense**

101.     Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

102.     Any of Plaintiffs' claims for punitive damages are barred because Plaintiffs cannot establish actual malice and/or common law malice.

## Nineteenth Defense

103.    Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

104.    Any of Plaintiffs' claims for presumed damages are barred as a matter of Washington, D.C. law because Plaintiffs are corporations.

## Twentieth Defense

105.    Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

106.    Any of Plaintiffs' claims for presumed damages are barred as a matter of Florida law because Defendant is a media corporation.

## Twenty-First Defense

107.    Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

108.    Based upon all of the foregoing, Plaintiffs can and should be deemed to have failed to mitigate, alter, reduce, or otherwise diminish any alleged damages.

## Twenty-Second Defense

109.    Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

110.    Plaintiffs' claims are barred to the extent Plaintiffs' own acts, rather than any alleged acts of OAN, caused or contributed to Plaintiffs' alleged injury.

## Twenty-Third Defense

111.    Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

112.     Exemplary or punitive damages are not recoverable because Defendant did not act with malice.

### Twenty-Fourth Defense

113.     Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

114.     Plaintiffs' claim for punitive damages is barred by the Due Process Clauses of the United States Constitution (Amendment V and Amendment XIV), the Due Process Clauses of the California Constitution (Article I, Section 7) and the Florida Constitution (Article I, Section 9).

### Twenty-Fifth Defense

115.     Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

116.     Plaintiffs' claims are barred by the common law publisher's interest, recipient's interest, and/or public interest privileges because Plaintiffs cannot prove actual malice and/or common law malice by OAN.

### Twenty-Sixth Defense

117.     Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

118.     Plaintiffs' claims are barred because Plaintiffs cannot establish the claim elements or overcome any affirmative defenses with the requisite clear and convincing evidence.

### Twenty-Seventh Defense

119.     Herring incorporates in this Paragraph the foregoing Answer responses and Allegations in Support of Affirmative and Other Defenses as if fully stated herein.

120.     Plaintiffs' claims are barred in whole or in part because some or all of the alleged damages Plaintiffs claim to have suffered were not caused by OAN but, to the extent damages

exist at all (which Defendant denies), they were caused by other non-parties and/or intervening or supervening causes independent of any conduct by OAN.

WHEREFORE, Herring Networks, Inc. respectfully requests that the Complaint be dismissed in its entirety with prejudice and judgment be entered in favor of Herring; that Herring be awarded attorneys' fees, costs and disbursements; and that Herring be awarded such other and further relief as the Court deems just and equitable.

## JURY TRIAL DEMANDED

Defendant demands a trial by jury on all claims and issues so triable and requests that the jury consist of 12 members.

Respectfully submitted,


By: /s/ Blaine C. Kimrey
   Counsel for Defendant

Blaine C. Kimrey
bkimrey@vedderprice.com
Jeanah Park
jpark@vedderprice.com
Bryan Clark
bclark@vedderprice.com
Brian Ledebuhr
bledebuhr@vedderprice.com
Julia Koechley
jkoechley@vedderprice.com
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, IL 60601
T:  +1 312 609 7500
F:  +1 312 609 5005

Brian K. McCalmon, Bar No. 461196
bmccalmon@vedderprice.com
VEDDER PRICE P.C.
1401 New York Ave NW, Suite 500
Washington, DC 20005
T:  +1 202 312 3320
F:  +1 202 312 3322

Dated: August 26, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of August, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel for the parties.

/s/ Blaine C. Kimrey
Blaine C. Kimrey