# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SMARTMATIC USA CORP., ) | |
| SMARTMATIC HOLDING B.V., AND ) | |
| SGO CORPORATION LIMITED, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 1:21-cv-02900-CJN |
| v. ) | |
| ) | |
| HERRING NETWORKS, INC., D/B/A ) | |
| ONE AMERICA NEWS NETWORK, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S OPPOSED MOTION FOR RECUSAL

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION ......................................................................................................1

II.   PROCEEDINGS TO DATE .......................................................................................3

III.  BACKGROUND .......................................................................................................4

      A.    Plaintiffs' Claims .............................................................................................4

            (1)    Smartmatic's Complaint ........................................................................4

            (2)    Smartmatic's Positional Statement .......................................................5

      B.    Smartmatic and OAN's Discovery Requests ..................................................6

      C.    Smartmatic's Connection to the Maduro Regime...........................................7

      D.    Judge Upadhyaya's Representation of Maduro Implicates Issues in this
            Litigation........................................................................................................11

      E.    Judge Upadhyaya's Law Firm's Representation of Companies Connected
            to Maduro's Regime Also Implicates Issues in this Litigation.....................13

IV.   ARGUMENT ...........................................................................................................14

      A.    Recusal Is Required Because Judge Upadhyaya's Impartiality Might
            Reasonably be Questioned..............................................................................15

      B.    Recusal is Required Because Judge Upadhyaya Served as a Lawyer
            Regarding Issues in Controversy While in Private Practice ..........................18

      C.    Recusal is Required if the Magistrate Judge has Personal Knowledge of
            Disputed  Evidentiary Facts Concerning the Proceeding. .............................19

V.    CONCLUSION........................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brokaw v. Mercer Cnty.*,
235 F.3d 1000 (7th Cir. 2000) ........................................................................14

*Caperton v. A.T. Massey Coal Co.*,
556 U.S. 868 (2009) ........................................................................................14

*Casa Express Corp. v. Bolivarian Republic of Venezuela*,
No. 1-21-mc-23103 (S.D. Fla. Nov. 4, 2021) .........................................13, 14

*Hampton v. Hanrahan*,
499 F. Supp. 640 (N.D. Ill. 1980) ............................................................17, 18

*Liljeberg v. Health Servs. Acquisition Corp.*,
486 U.S. 847 (1988) ........................................................................................14

*Liteky v. United States*,
510 U.S. 540 (1994) ..................................................................................14, 16

*Preston v. United States*,
923 F.2d 731 (9th Cir. 1991) ....................................................................15, 17

*In re Rodgers*,
537 F.2d 1196 (4th Cir. 1976) ........................................................................18

*Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*,
300 F. Supp. 3d 137 (D.D.C. 2018) ................................................................11

*Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*,
No. 18-7044 (D.C. Cir. Feb. 22, 2019) .....................................2, 11, 12, 13, 16, 19

*S.E.C. v. Loving Spirit Found. Inc.*,
392 F.3d 486 (D.C. Cir. 2004) ........................................................................15

*Schloetter v. Railoc of Ind., Inc.*,
546 F.2d 706 (7th Cir. 1976) ..........................................................................17

*U.S. v. Microsoft Corp.*,
253 F.3d 34 (D.C. Cir. 2001) (en banc) (per curiam) .....................................15

**Statutes**

28 U.S.C. § 455 ......................................................................................................1, 3

ii

28 U.S.C. § 455(a) ............................................................................................ 14, 15, 18

28 U.S.C. § 455(b) ...............................................................................................14, 18, 19

**Other Authorities**

CODE OF JUDICIAL CONDUCT r. 1.2 (AM. BAR ASS'N 2020) ..........................................15

CODE OF CONDUCT FOR U.S. JUDGES, Canon 2A (2019) .............................................15

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF</u> <u>DEFENDANT'S OPPOSED MOTION FOR RECUSAL</u>

## I.    INTRODUCTION

Herring Networks, Inc. ("Defendant" or "OAN") moves under 28 U.S.C. § 455 to recuse Magistrate Judge Upadhyaya because of her 2019 representation of the Bolivarian Republic of Venezuela on authority of Venezuelan President Nicolás Maduro's ("Maduro") regime while in private practice with Venable, LLP.[1] This representation intersects with Plaintiffs' ("Smartmatic or "Plaintiffs") many allegations and discovery requests about Maduro, who they characterize as the "corrupt dictator."[2] They further allege that OAN had information available to it "that showed its statements about Smartmatic being controlled by corrupt dictators (Maduro and Chavez) was (sic) false."[3]

Maduro or "dictator" is mentioned 154 times in the Complaint and attached exhibits. Plaintiffs' requested discovery search terms contain the word "Maduro" 40 times, and there is a standalone search term for just "Maduro."[4] One of OAN's allegedly defamatory broadcasts reported on a resolution of the Organization of American States ("OAS") "that the international community must not recognize Venezuelan elections, adding the Maduro regime will manipulate the outcome of the vote."[5] It then quoted Rudy Giuliani: "Smartmatic, which is the ultimate

---

[1] Venable also represented Venezuela in other matters while Judge Upadhyaya was a partner although there is no indication that she was personally involved. In filing this motion, we in no way intend to impugn the integrity of Judge Upadhyaya or Venable or their commitment to fairness.

[2] Complaint, Dkt. 1 at pp. 3, 153. All page references are to the ECF page number.

[3] *Id*. at 153.

[4] Ex. 1, C. Butzer Decl. at 2.

[5] Complaint, Dkt. 1-33, at 3.

software . . . originates, your know, with Venezuela, a dictatorship . . . ."[6] On January 10, 2019, OAS issued a resolution that similarly encouraged the international community "to not recognize the legitimacy of Nicolas Maduro's new term as of the 10th of January 2019" following the 2018 election and called for "new Presidential elections" because of "an illegitimate electoral process."[7]

A few weeks later, on February 22, 2019, Judge Upadhyaya took the opposite position for her client, telling the U.S. Court of Appeals for the District of Columbia Circuit that: "President Maduro vigorously disputes that Mr. Guaido is the President of the Republic and asserts that he remains the rightful leader of the Republic."[8] The brief went on to note that "nor is Mr. Guaido's place as the legitimate leader of Venezuela assured. In fact, as a matter of Venezuelan law, there are serious issues with Mr. Guaido's 'claim [which] derives from a certain creative interpretation of a constitutional provision rather than from popular will or the due process of law.'" (quoting the *New York Times*).[9] Maduro ultimately retained power despite the widely held belief that his election was the result of fraud. As we shall see, there is substantial evidence that Smartmatic was involved in that fraudulent election.

Indeed, Venezuelan election fraud and Smartmatic's role in those elections are issues in this case, and there is already specific discovery disputes over this matter which, absent recusal, Judge Upadhyaya will be called upon to decide. While Smartmatic contends that "the 2018

---

[6] *Id*. at 53, ¶ 119.

[7] Ex. 2, Press Release, OAS, *OAS Permanent Council Agrees "to Not Recognize the Legitimacy of Nicolas Maduro's New Term,"* https://www.oas.org/en/media_center/press_release.asp?sCodigo=E-001/19 (Jan. 10, 2019).

[8] Ex. 3, Response to Motion for Stay, *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 18-7044 at 2 (D.C. Cir. Feb. 22, 2019).

[9] *Id*. at 5 (quoting Ex. 4, Max Fisher, *Who Is Venezuela's Legitimate President? A Messy Dispute, Explained*, N.Y. Times (Feb. 4, 2019)).

Venezuelan presidential election, which *in no way* overlaps, either factually or temporally, with Smartmatic's prior activity in Venezuela,"[10] we believe discovery will show—and has already shown—this statement to be mistaken. ███████████████████████████████████████████

███████████████████████████,[11] Smartmatic machines were used in the 2018 election,[12] and ███████████████████████████████████████████████████████████████

█████████████████████████████████.[13] This occurred even after the Plaintiffs themselves claimed a 2017 election was tainted with fraud, and by 1,000,000 votes no less.

In short, contrary to Plaintiffs' position,[14] the 2018 election in Venezuela (and others), where the "corrupt dictator," on whose behalf the Magistrate Judge advocated, is directly relevant to the issues of truth or falsity, causation, and damages in this public figure defamation suit. While we have no doubt that Judge Upadhyaya *could be and likely would be fair*, that is not the standard under Section 455, which requires recusal under these facts.

## II.    PROCEEDINGS TO DATE

In the Joint Notice pending before this Court after referral from Judge Nichols on May 31, 2023, OAN identifies several issues that directly relate to requested discovery involving foreign

---

[10] Dkt. 77, at 2 (emphasis added).

[11] *See* Ex. 5, SMMT-OAN00055012 at 47; Ex. 6, SMMT-OAN00057054 at 46.

[12] *Fire Destroys Most Voting Machines in Venezuela's Main Elections Warehouse*, Reuters, https://www.reuters.com/article/us-venezuela-politics/fire-destroys-most-voting-machines-in-venezuelas-main-elections-warehouse-idUSKBN20V15O (March 8, 2020); Ex. 12, *Maduro Burned Electoral Machines to Perpetuate Himself: ABC*, PANAM Post, https://es.panampost.com/delia-perez/2020/03/12/maduro-maquinas-electorales/ (March 12, 2020).

[13] Ex. 7, SMMT-OAN00054431.

[14] Dkt. 77, at 2.

elections in which Smartmatic software or equipment was used—including numerous Venezuelan elections spanning almost two decades and the Maduro re-election in 2018—and as a result, Smartmatic's reputation and alleged damages.[15] Upon learning of the recusal issues addressed by this motion, Defendant's counsel promptly contacted Smartmatic's counsel and discussed the matter and then sent a private letter to her Honor on June 5, 2023 after first showing the correspondence to Plaintiffs' counsel for his input.[16] Judge Upadhyaya gave Plaintiffs an opportunity to respond and ordered the parties to appear for a hearing on July 18, 2023.[17] Smartmatic timely responded to OAN's letter on June 30, 2023 with their positional statement.[18]

While the request for recusal was previously made by private letter, to ensure a complete record, OAN submits this formal motion which discusses the significant historical events, allegations in the Complaint, and ongoing discovery disputes, none of which lend themselves to developing a full record on limited correspondence. The Court should have a full opportunity to consider all the materials supporting recusal.

## III.    BACKGROUND

### A.    <u>Plaintiffs' Claims</u>

### (1)    **Smartmatic's Complaint**

Smartmatic has put its role in the Venezuelan elections, including Maduro's, at issue in this litigation. Plaintiffs claim they were defamed by OAN.[19] Their lengthy complaint accuses

---

[15] Ex. 8, Joint Notice at 10–15.

[16] Ex. 9, Letter to Judge Upadhyaya; *see also* June 26, 2023 Order, Dkt. No. 75, Attachment A.

[17] June 26, 2023 Order, Dkt. 75.

[18] Positional Statement, Dkt. 77.

[19] "Smartmatic" refers to Plaintiffs Smartmatic USA Corp., Smartmatic Holding B.V., and SGO Corporation Limited.

OAN of spreading "disinformation" themes, including that: (i) "Smartmatic is a Venezuelan company that was founded and funded by corrupt dictators from socialist and communist countries" and (ii) "Smartmatic's election technology and software were designed to rig and fix elections and have been used to fix, rig and steal elections before."[20] As to Venezuela, Smartmatic specifically alleges that OAN falsely claimed that: (i) "Smartmatic is partially owned by the Maduro regime"; (ii) "the technology is controlled by allies of Venezuela's Maduro regime"; (iii) "reports found Maduro allies were meddling in the latest U.S. election through a company called Smartmatic"; (iv) "The [Organization of American States] says any election that involves Maduro is a sham and must not be recognized by any civilized country"; and (v) "Smartmatic has faced controversy in the past with allegations of rigging the 2013 election in Venezuela to favor socialist President Nicolas Maduro."[21] Smartmatic also claims that OAN aired broadcasts that referenced its connections to Venezuela, prior election irregularities, and the Maduro regime.[22] The Complaint along with attached exhibits contain 154 references to Maduro by name or "dictators" (Chavez and Maduro).[23]

### (2)     Smartmatic's Positional Statement

Smartmatic concedes the relevancy of these issues by asserting in its Positional Statement that it intends to prove several alleged "facts" concerning its relationship to Maduro:

---

[20] Complaint, Dkt. 1, at ¶ 107.

[21] *Id*. at ¶ 218.

[22] *See, e.g., id.* at ¶¶ 95-98, 101-03, 106-08, 119-21, 131-32, 171, 184, 196, 218, 227.

[23] *Id.* at ¶¶ 97, 101, 102, 105, 119, 120, 131, 184(k), 184(r), 196(g), 196(k), 218(c), 218(f), 218(g), 218(h), 218(j), 218(m), 218(o), 218(x), 218(y), 227,(t), 227(u) ("Maduro"); *id*. at ¶¶ 98, 108, 122, 125, 126, 132, 170, 171(d), 171(o), 171(s), 180, 218, 218(p), 218(s), 220, 221, 227(n), 227(p), 248, 336, 344, 357 ("Dictators"); *id*. at Exs. 3, 5, 9, 11, 14, 19, 20, 22, 25, 29, 30, 39, 44, 46, 47, 48, 57, 86, and 138 ("Maduro" or "Dictators").

> To be sure, Smartmatic will prove that OAN's statements about Smartmatic having a relationship with Maduro were factually inaccurate. Smartmatic is not owned by the Maduro regime. Its technology is not controlled by allies of the Maduro regime. Maduro allies did not meddle in the 2020 U.S. election through Smartmatic. Smartmatic did not rig the 2013 election in Venezuela for Maduro.[24]

Smartmatic has also inaccurately claimed that it "was not involved in the 2018 election in any capacity."[25] Documents already produced by Plaintiffs show this to be a misstatement, and OAN continues to pursue discovery to challenge these and other of Smartmatic's assertions.

### B.    Smartmatic and OAN's Discovery Requests

It is no surprise, then, that these themes and challenged statements are the subject of discovery requests from both sides which, absent recusal, would likely be brought before Judge Upadhyaya. Smartmatic itself has sought evidence of deleted, lost, changed, or compromised votes not just for the 2020 Presidential election, but also for "any other election" (RFP No. 38), and documents that support, establish, and demonstrate that the complained of statements are substantially true, accurate, and not misleading (RFP No. 52).[26] Smartmatic has demanded that OAN conduct 40 search term queries of its documents with terms related to "Maduro" and "Venezuela," one of which is just "Maduro."[27]

Likewise, OAN has sought discovery into Smartmatic's connections to Venezuela, the Maduro regime, and prior elections. OAN has specifically asked for communications concerning

---

[24] Positional Statement, Dkt. 77, at 3.

[25] *Id*. at 2.

[26] Ex. 1, C. Butzer Decl. at 1.

[27] *Id*. at 2.

"Nicolás Maduro or anyone working for him." [28] OAN has also propounded several other requests concerning Smartmatic's involvement in Venezuelan elections.[29] Already, the parties have reached an impasse over OAN's discovery request into these issues.

In the Joint Notice pending before this Court after referral from Judge Nichols on May 31, 2023, OAN identifies several issues that directly relate to requested discovery involving foreign elections in which Smartmatic software or equipment was used.

### C.     Smartmatic's Connection to the Maduro Regime

Documents already produced show that despite its protestations, Smartmatic was involved, directly or indirectly, in the disputed 2018 Presidential election that saw Maduro retain power. The Complaint (and attached exhibits) contain multiple references to Venezuela and Maduro, placing in question the legitimacy of Venezuelan elections using equipment from Smartmatic. While Plaintiffs claim that they had nothing to do with the 2018 election of Maduro or any subsequent elections after admitted fraud in tabulation of votes during the 2017 elections, Plaintiffs' documents and public reporting belies this claim.

The July 2017 election in Venezuela—where Maduro sought to install an all-powerful legislative body called the "Constituent Assembly" to re-write the Venezuelan constitution and assume powers superior to all other branches of government[30]—was acknowledged by Smartmatic

---

[28] *Id*. (citing OAN's Requests for Production to Plaintiffs, No. 380).

[29] *Id*. (citing OAN's Requests for Production to Plaintiffs, Nos. 18, 26–28, 37, 40, 80).

[30] *New Venezuela Assembly Declares Itself Superior Government Branch*, Chi. Trib., https://www.chicagotribune.com/nation-world/ct-venezuela-political-assembly-20170808-story.html (Aug. 8, 2017).

itself (whose machines were used in the election) to have been fraudulent.[31] The CEO of Smartmatic, Antonio Mugica, admitted that the results "for the constituent assembly in Venezuela were tampered with" and vote totals were inflated by at least 1 million out of nearly 8.1 million votes.[32]

In response, Venezuela's election chief Tibisay Lucena pointed the finger at Smartmatic: "Smartmatic is part of the safeguard of the tabulation process" and any alleged error in the election results was because of Smartmatic's machines and the failure to safeguard the results.[33] The result of this fraudulent election—using Smartmatic machines—was that Maduro's Constituent Assembly was established. Less than a year later, Maduro's Constituent Assembly called a "snap presidential election in May 2018 ahead of the regularly scheduled vote in December" of 2018.[34]

Although Smartmatic asserts that it "ceased doing business in Venezuela following the 2017 National Constituent Assembly" election,[35] Smartmatic notably does not assert that its *machines or software* were no longer used in subsequent elections in Venezuela, including in the 2018 re-election of Maduro. This is because Smartmatic's voting equipment continued to be used

---

[31] Press Release, *Smartmatic Statement on the Recent Constituent Assembly Election in Venezuela*, Smartmatic, https://www.smartmatic.com/us/media/article/smartmatic-statement-on-the-recent-constituent-assembly-election-in-venezuela/ (Aug. 2, 2017).

[32] *Venezuela Election Results Were Manipulated, Voting Company Says*, Mia. Herald, https://www.miamiherald.com/news/nation-world/world/americas/venezuela/article164968042.html (Aug. 2, 2017) (and included video); *see also* Ex. 10, Frente Patriótico denuncia "topes" en votación de diciembre, El Nacional (27 January 2007), A-2 (describing vote distribution irregularities caused by numerical "caps" where Smartmatic machines were used in other Venezuelan elections).

[33] *Id*.

[34] *Venezuela Is Proof that Elections Have Consequences*, Int'l Republican Inst., https://www.iri.org/news/venezuela-is-proof-that-elections-have-consequences/ (Jan. 28, 2019).

[35] Position Statement, Dkt. 77 at 2.

in the 2018 Venezuelan Presidential election involving Maduro.[36] And Smartmatic was heavily involved as its produced discovery to date indicates.



.[37]

.[38] Documents produced by Smartmatic show

.[39] Ex-Clé purchased additional voting

---

[36] *Opinion: Venezuela's Insecure Elections Have Caused Political Uproar*, Detroit News, https://www.detroitnews.com/story/opinion/2019/06/25/opinion-venezuelas-insecure-elections-have-caused-political-uproar/1547924001/ (June 24, 2019); *Fire Destroys Most Voting Machines in Venezuela's Main Elections Warehouse*, Reuters, https://www.reuters.com/article/us-venezuela-politics/fire-destroys-most-voting-machines-in-venezuelas-main-elections-warehouse-idUSKBN20V15O (Mar. 8, 2020) (detailing that a fire destroyed Smartmatic voting machines, which were needed for upcoming elections).

[37] Ex. 11, SMMT-OAN1937144.

[38] *Id.*;



[39] Ex. 11, SMMT-OAN1937144-45.

machines from foreign vendors and took over the machines supplied and infrastructure created by

Smartmatic.[40] Smartmatic's machines used in the 2018 election were later destroyed in a

suspicious fire at a Venezuelan warehouse in March 2020, [41] which ███████████████████████

█████.[42]

     Nor does Smartmatic point out that █████████████████████████████

████████████████████████████████████.[43] Indeed, ████████████

████████████████████████████████████████████████████



---

[40] The U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") sanctioned Ex-Clé for materially supporting the illegitimate Maduro regime and providing goods and services to that regime to carry out a fraudulent election in December 6, 2020. Press Release, *Treasury Continues Pressure on Maduro Regime for Role in Fraudulent Elections*, U.S. Dep't of Treasury, https://home.treasury.gov/news/press-releases/sm1215 (Dec. 18, 2020); Ex. 12, *Maduro Burned Electoral Machines to Perpetuate Himself: ABC*, PANAM Post, https://es.panampost.com/delia-perez/2020/03/12/maduro-maquinas-electorales/ (March 12, 2020).

[41] *Fire Destroys Most Voting Machines in Venezuela's Main Elections Warehouse*, Reuters, https://www.reuters.com/article/us-venezuela-politics/fire-destroys-most-voting-machines-in-venezuelas-main-elections-warehouse-idUSKBN20V15O (March 8, 2020); Ex. 12, *Maduro Burned Electoral Machines to Perpetuate Himself: ABC*, PANAM Post, https://es.panampost.com/delia-perez/2020/03/12/maduro-maquinas-electorales/ (March 12, 2020).

[42] Ex. 13, SMMT-OAN01229288–91.

[43] *See* Ex. 5, SMMT-OAN00055012 at 47



████████████.[44] Moreover, ████████████████████████████████████████████████████

████████████████████████████████████.[45]

In short, there have been long-standing reports of fraud and vote irregularities involving Smartmatic machines used in Venezuela, benefitting both Maduro and his predecessor Hugo Chávez.

### D.      Judge Upadhyaya's Representation of Maduro Implicates Issues in this Litigation

These issues implicate Judge Upadhyaya's former client and her representation of Maduro's regime in 2019. While in private practice, Judge Upadhyaya litigated similar issues in *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 18-7044 (D.C. Cir. 2021) ("*Rusoro*"). The legitimacy of the 2018 Venezuelan presidential election, where—in Plaintiffs' words—the "corrupt dictator" and incumbent Maduro was declared the winner, became an issue in that case after Judge Upadhyaya and her former law firm appeared on behalf of the Maduro regime.

While the underlying case[46] was on appeal to the D.C. Circuit, the firm of Arnold & Porter—as counsel for the Bolivarian Republic of Venezuela on instructions from the U.S.-recognized representative of the Republic, Interim President Juan Guaidó—filed a Motion for

---

[44] Ex. 6, SMMT-OAN00057054 at 46 ████████████████████████████████████
████████████████████████.

[45] Ex. 15, SMMT-OAN00054798–99 ████████████████████████████
████████████████████████████████████████████████
██████████████████████████.

[46] The underlying controversy was the confirmation of an arbitration award to Rusoro Mining Ltd. for the expropriation of its assets. *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, 300 F. Supp. 3d 137, 141 (D.D.C. 2018); *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 18-7044 (D.C. Cir. 2021).

Stay,[47] which was granted two days later.[48] Eight days after the stay was granted, Judge Upadhyaya filed an appearance as lead counsel, *also* purportedly for the Bolivarian Republic of Venezuela, for the Maduro regime.[49]

That same day, Judge Upadhyaya filed a response to Arnold & Porter's Motion for Stay, asserting that the purpose of the filing was "not to oppose the [already-granted] request for a stay . . . [but] to formally object to some of the positions that Arnold & Porter has taken on behalf of the Republic."[50] The positions Judge Upadhyaya objected to include who was the rightful leader of Venezuela.

Arnold & Porter then filed a Motion to Strike both the notice of appearance and the "response." Noting Judge Upadhyaya's acknowledgement she had "not been engaged by President Guaidó," Arnold & Porter cautioned that the D.C. Circuit "should not recognize [Judge Upadhyaya's] firm as counsel for the Republic."[51] Moreover, Arnold & Porter highlighted that these "arguments about Venezuelan constitutional law and counter-arguments concerning election fraud" were simply not relevant to the dispute and "demonstrate[d] the Maduro regime's intent to use this Court as a forum in which to express its views on the Executive Branch's foreign policy

---

[47] Ex. 16, Motion for Stay, *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 18-7044 (D.C. Cir. Feb. 12, 2019).

[48] Ex. 17, Order, *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 18-7044 (D.C. Cir. Feb. 14, 2019).

[49] Ex. 18, Entry of Appearance, *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 18-7044 (D.C. Cir. Feb. 22, 2019).

[50] Ex. 3, Response to Motion for Stay, *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 18-7044 at 1 (D.C. Cir. Feb. 22, 2019).

[51] Ex. 19, Motion to Strike, *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 18-7044 at 2 (D.C. Cir. Feb. 28, 2019).

determinations."[52] The motion, however, was never ruled on because eleven days later, Judge Upadhyaya withdrew her appearance as purported counsel for Venezuela, along with those of her law firm.[53]

Judge Upadhyaya's prior representation intersects with the relevant time period for discovery and, most importantly, takes a position that itself is in contention in this very litigation. Smartmatic's attempts to distance itself from Maduro's claimed victory in the 2018 election, where its machines were in use, are central to these issues, and directly implicate Judge Upadhyaya's representation of Maduro.

**E.** **Judge Upadhyaya's Law Firm's Representation of Companies Connected to Maduro's Regime Also Implicates Issues in this Litigation**

While Judge Upadhyaya was a partner at Venable LLP, then-colleague and partner Ed Wilson participated in litigation in support of companies owned by a high-level contributor to "endemic corruption" in the Maduro regime (and the Hugo Chavez regime before it)—Raul Gorrin Belisario.[54] Wilson petitioned for and received a license from the Office of Foreign Assets Control to engage with the sanctioned Venezuelan mogul and Maduro affiliate and his properties for

---

[52] *Id.* at 10–11.

[53] Ex. 20, Withdrawal of Appearance, *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 18-7044 (D.C. Cir. Mar. 11, 2019).

[54] *See* Ex. 21, Noticed Entities Memorandum in Opposition to [DE#3] Judgment Creditor's *Ex Parte* Expedited Motion to Commence Proceedings Supplementary, Etc. & Decl. of Edward Wilson, *Casa Express Corp. v. Bolivarian Republic of Venezuela*, No. 1-21-mc-23103, at 1–2, 35–40 (S.D. Fla. Nov. 4, 2021); Ex. 22, Respondents' Affidavit in Response to [DE 63–71, 76] Notices to Appear and Memorandum in Opposition to [DE 60] Judgment Creditor's Expedited Motion to Commence Proceedings Supplementary, Etc. & Decl. of D.E. Wilson, Jr. in Response to [DE 63–71] Notices to Appear, *Casa Express Corp. v. Bolivarian Republic of Venezuela*, No. 1-21-mc-23103, at 19–21 (S.D. Fla. Jan. 20, 2023).

representation in litigation.[55] The litigation sought to transfer some of these alleged ill-gotten properties after years of alleged "illicit and corrupt schemes" by "officials and insiders of the Hugo Chavez and Nicolas Maduro regimes," including Gorrin.[56] But the companies who owned the properties—supported by declarations from Wilson—took the position that the court was without authority to transfer any of Gorrin's alleged ill-gotten properties, because "the only party with legal authority to transfer any of the properties *is Ed Wilson of the Venable firm*."[57]

## IV.    ARGUMENT

Recusal is required for three independent reasons. Federal law mandates judicial recusal: (1) in "any proceeding in which [the judge's] impartiality might reasonably be questioned"; (2) "where in private practice [s]he served as [a] lawyer in the matter in controversy"; and (3) where the magistrate has "personal knowledge of disputed evidentiary facts." 28 U.S.C. § 455(a), (b)(1)–(2).

The purpose of this statute is to "avoid[] even the appearance of impropriety," *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988), and in doing so "preserve the public's faith in the judicial process." *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1025 (7th Cir. 2000); *see also Liteky v. United States*, 510 U.S. 540, 548 (1994) ("what matters is not the reality of bias or prejudice but its appearance."); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 889 (2009)

---

[55] Ex. 21 at 37.

[56] Ex. 23, Judgment Creditor's *Ex Parte* Expedited Motion to Commence Proceedings Supplementary, to Implead Defendants, and for Issuance of Statutory Notices to Appear, *Casa Express Corp. v. Bolivarian Republic of Venezuela*, No. 1-21-mc-23103, at 1–2, 4 (S.D. Fla. Sept. 10, 2021).

[57] Ex. 24, Respondents' Reply in Support of [D.E. 128] Motion to Dismiss for Lack of Service or Personal Jurisdiction or Alternatively Motion to Quash Service, *Casa Express Corp. v. Bolivarian Republic of Venezuela*, No. 1-21-mc-23103, at 8–10 (S.D. Fla. Mar. 1, 2023).

(explaining that judicial codes of conduct and recusal requirements are critical in "maintain[ing] the integrity of the judiciary and the rule of law"); CODE OF CONDUCT FOR U.S. JUDGES, Canon 2A (2019) ("A judge . . . should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."); MODEL CODE OF JUDICIAL CONDUCT r. 1.2 (AM. BAR ASS'N 2020) ("A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety.").

In evaluating whether a judge's impartiality might reasonably be questioned, the inquiry is from the perspective of a "reasonable and informed observer." *S.E.C. v. Loving Spirit Found. Inc.*, 392 F.3d 486, 493 (D.C. Cir. 2004) (quoting *U.S. v. Microsoft Corp.,* 253 F.3d 34, 114 (D.C. Cir. 2001) (en banc) (per curiam)). Recusal is not limited to cases where a "judge's conflict [is] with the parties named in the suit." *Preston v. United States*, 923 F.2d 731, 735 (9th Cir. 1991).

### A. Recusal Is Required Because Judge Upadhyaya's Impartiality Might Reasonably be Questioned

Recusal is mandatory when a judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). The repeated mention of Maduro in the statements Smartmatic challenges in its Complaint should be dispositive of this question in light of Judge Upadhyaya's prior representation.[58] In order to demonstrate the literal or substantial truth of its reporting, OAN has served multiple discovery requests concerning Venezuelan election irregularities and Maduro,

---

[58] *See, e.g.*, Complaint, Dkt. 1 ¶ 218.

which Plaintiffs are resisting. OAN has specifically asked for communications concerning "Nicolás Maduro or anyone working for him."[59]

Although OAN has no reason to believe that Judge Upadhyaya's is actually biased against it (or Plaintiffs), the appearance of impartiality—from the perspective of a reasonable and informed observer—is threatened by Judge Upadhyaya's former representation of Maduro's regime. "[W]hat matters is not the reality of bias or prejudice but its *appearance*." *Liteky v. U.S.*, 510 U.S. 540, 548 (1994) (emphasis added). The claims and defenses in this matter involve issues of causation of damages and the material falsity, truth or substantial truth of OAN's statements concerning election irregularities in Venezuela and the Plaintiffs' connections thereto.[60] Judge Upadhyaya's prior representation involved Maduro's attempts to use the U.S. court system to continue to claim the title of—and seek international recognition as—Venezuela's president, in spite of claims of election irregularity.[61] A reasonable and informed observer, aware of this history, may perceive the Court's rulings in this case as favoring Judge Upadhyaya's former client, Maduro, or as being partial against OAN, which criticized Maduro's power grabs and questioned the voting technology that allowed votes to be manipulated in Venezuela, or Plaintiffs who claim that all but the 2017 election were fair and honest, but then sought to publically distance themselves from Maduro and Venezuela.[62]

---

[59] Ex. 1, C. Butzer Decl. at 2 (citing OAN's Requests for Production to Plaintiffs, No. 380); *see also id*. (citing OAN's Requests for Production to Plaintiffs, Nos. 18, 26–28, 37, 40, 80 which request Plaintiffs to produce information related to their involvement in Venezuelan elections).

[60] *See* Complaint, Dkt. 1 ¶ 218.

[61] Ex. 19, Motion to Strike, *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 18-7044 at 10–11 (D.C. Cir. Feb. 28, 2019).

[62] *See* Complaint, Dkt. 1 ¶ 218.

Moreover, the Parties may seek additional discovery from Maduro or his officials regarding the claims in this litigation. In that event, Maduro could again turn to Venable LLP, which it has used in the past. *See Preston v. U.S.*, 923 F.2d 731, 734–35 (9th Cir. 1991) (recusal required when judge's former law firm represented a third party during the discovery period, including in objecting to a subpoena). And based on positions taken by Plaintiffs in resisting discovery, this Court will be required to rule on pending discovery disputes in the Joint Notice on these issues and likely will face similar discovery disputes about Maduro or his regime in the future.

Additionally, Venable LLP's representation of high-level Maduro affiliates who engaged in "endemic corruption"—concurrent with the Judge's partnership at the firm—further create the appearance of impropriety. To avoid the appearance of impropriety, courts have imputed the confidential knowledge obtained by one lawyer in the firm to other lawyers in the same firm for the purpose of disqualification. *E.g.*, *Schloetter v. Railoc of Ind., Inc.*, 546 F.2d 706, 710 (7th Cir. 1976).

The need to preserve public confidence in the judiciary requires that "no lesser standard can be applied in ruling on judicial disqualification." *Hampton v. Hanrahan*, 499 F. Supp. 640, 645 (N.D. Ill. 1980). The Judge's former firm represented companies of Raul Gorrin Belisario—who was allegedly involved in "endemic corruption" at the highest levels of the Venezuelan government—in his attempts to avoid losing property acquired through allegedly illegal schemes with the Venezuelan government. Judge Upadhyaya's then-colleague and partner, Ed Wilson, assuredly learned confidential client information from Gorrin during these representations, likely including information about the corruption and legitimacy of the Maduro regime. OAN's defenses involve these same issues: the legitimacy and corruption of the Maduro regime and the elections in which he obtained and held power. Even if Judge Upadhyaya does not possess confidential

information about these matters, Venable's concurrent representation of Gorrin companies—and the confidential information likely gained by Venable attorneys during that representation about matters relevant here—creates the appearance of impropriety. *See id.* (noting that even though the judge did not have personal knowledge of the matters in dispute, his firm's representation on contested matters created the appearance of impropriety).

*　　*　　*

These facts from both Judge Upadhyaya's representation of Maduro and Venable LLP's representation of Gorrin companies will create the appearance of partiality if she fails to recuse. This is exactly the kind of appearance of bias that recusal is designed to prevent. Recusal is required to preserve the appearance of the Court's impartiality in this dispute. 28 U.S.C. § 455(a).

### B.　Recusal is Required Because Judge Upadhyaya Served as a Lawyer Regarding Issues in Controversy While in Private Practice

For similar reasons as above, Judge Upadhyaya's former representation of the Maduro regime regarding similar issues in controversy disqualifies her from continuing to preside over this matter. Recusal is mandatory when a judge has "served as [a] lawyer in the issues in controversy" while in private practice. 28 U.S.C. § 455(b)(2). This rule applies even when the judge's former firm—not the judge herself—served as a lawyer in the issues in controversy. *See, e.g.*, *In re Rodgers*, 537 F.2d 1196, 1198 (4th Cir. 1976) (recusal required when judge's former law partner represented a likely defense witness in the case and the law partner might also be called as a witness related to that representation).

As lead counsel representing Maduro's regime, Judge Upadhyaya represented Maduro in a "response" to a motion that had already been granted for no other purpose than asserting Maduro's position that he was "the rightful leader of the Republic" in the aftermath of the 2018

18

elections.[63] Her former representation of Maduro is thus inextricably connected to OAN's challenged broadcasts that concern the illegitimacy of the Maduro regime and reports of election irregularity in Venezuela.[64]

It is likely that Judge Upadhyaya, while in private practice, had privileged conversations with Maduro or members of his regime concerning these issues; otherwise, she would not, consistent with the federal rules, have in good faith made the allegations. She, therefore, should not impartially preside over a dispute raising these same issues. Judge Upadhyaya's former representation of Maduro on issues related to his legitimacy as president after the disputed 2018 election using Smartmatic machines is the kind of conflict that federal law requires judges to avoid. Recusal is required for this independent basis.

### C.     Recusal is Required if the Magistrate Judge has Personal Knowledge of Disputed Evidentiary Facts Concerning the Proceeding

Finally, recusal is mandatory when a judge has "personal knowledge of disputed evidentiary facts concerning the proceeding" at issue. 28 U.S.C. § 455(b)(1).

Judge Upadhyaya likely has personal knowledge of disputed facts at issue in this litigation based upon her representations made when she was Maduro regime's attorney. One can't help but wonder what pleadings Plaintiffs are therefore reading in *Rusoro* when they assert that "accusations of 'election fraud' . . . does not appear relevant" to Judge Upadhyaya's "involvement in *Rusoro*."[65] Not only does Judge Upadhyaya's Response in *Rusoro* make assertions about the electoral legitimacy of Guaidó and Maduro, but the *New York Times* article she cites explicitly

---

[63] Ex. 3, Response to Motion for Stay, *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela*, No. 18-7044 at 1–2 (D.C. Cir. Feb. 22, 2019).

[64] *E.g.*, Complaint, Dkt. 1 ¶ 218.

[65] Positional Statement, Dkt. 77 at 3.

discusses election fraud, stating that the "weakest point in Mr. Maduro's popular legitimacy may be his 2018 re-election victory, which was widely disputed amid fraud allegations."[66] The article goes on to say, "whether or not allegations of a rigged election render Mr. Maduro illegitimate is not ultimately up to election monitors."[67] It is undeniable that allegations of election fraud were central to Judge Upadhyaya's representation of Maduro.

Smartmatic, therefore, cannot argue with any credibility that this case only involves OAN's claims regarding Smartmatic's work in the 2020 Election in the United States or that the 2018 Venezuelan election "is not relevant to Smartmatic's claims."[68] This is inconsistent with Smartmatic's own Complaint, which challenges OAN's broadcasts that expressly discuss Smartmatic's work in Venezuela in the 2018 election. Judge Upadhyaya's personal knowledge regarding the disputed evidentiary facts—including Venezuela's elections, their legitimacy, or the technology used—is another independent basis requiring recusal.

## V.    CONCLUSION

OAN does not question Judge Upadhyaya's integrity or commitment to impartially ruling on matters brought before her. But with three other capable magistrate judges available to serve in the role envisioned by Judge Nichols, we believe the public interest would be best served with her recusal in this case. We therefore respectfully request recusal and such other relief as to which the Defendant is justly entitled.

---

[66] Ex. 4, Max Fisher, *Who Is Venezuela's Legitimate President? A Messy Dispute, Explained*, N.Y. Times, Feb. 4, 2019.

[67] *Id*.

[68] Positional Statement, Dkt. 77, at 2.

Dated: July 6, 2023.                          By: */s/ Charles L. Babcock* _____

**JACKSON WALKER LLP**
Charles L. Babcock
(admitted *pro hac vice*)
cbabcock@jw.com
1401 McKinney Suite 1900
Houston, TX 77010
(713) 752-4210 (Direct Dial)
(713) 308-4110 (Fax)

**BOYDEN GRAY & ASSOCIATES**
Trent McCotter
D.C. BAR NO. 1011329
801 17th St NW, #350
Washington, DC 20006
(202) 706-5488
mccotter@boydengrayassociates.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of July 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel for the parties.

*/s/ Charles L. Babcock* _____
Charles L. Babcock

21