# EXHIBIT 3

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

RUSORO MINING LIMITED,

                *Petitioner-Appellee*,

  - against -

BOLIVARIAN REPUBLIC OF
VENEZUELA,

              *Respondent-Appellant*.

No. 18-7044

(D.D.C. No. 1:16-cv-2020)

## RESPONSE TO MOTION FOR STAY

On February 22, 2019, the undersigned Venable LLP attorneys entered appearances on behalf of The Bolivarian Republic of Venezuela (the "Republic") on instruction from the current and acting Attorney General of the Republic, Reinaldo Muñoz Pedroza.  The Republic submits this response to the Motion for Stay filed by Arnold & Porter purportedly on behalf of The Bolivarian Republic of Venezuela on February 12, 2019 (the "Motion").  The Motion was granted on February 14, 2019.

The purpose of this response is not to oppose the request for a stay, which in any event has already been granted, but rather to provide further context for the request and to formally object to some of the positions that Arnold & Porter has taken on behalf of the Republic.

1

By way of background, Arnold & Porter historically represented the

Republic in this and other matters, on instructions from Attorney General Muñoz.

(Mot. at 2, n.1.)  Arnold & Porter first appeared on behalf of the Republic on this

Appeal on May 21, 2018, again on instruction from Attorney General Muñoz and

President Nicolas Maduro.  Arnold & Porter states that it is now instructed by Juan

Guaidó, who "declared himself Interim President of Venezuela" on January 23,

2019.  (Mot. at 1.)  President Maduro vigorously disputes that Mr. Guaidó is the

President of the Republic, and asserts that he remains the rightful leader of the

Republic.

Arnold & Porter observes in its Motion that President Trump has "issued a

statement officially recognizing President Guaidó as the Interim President of

Venezuela and rejecting the legitimacy of the Maduro government."  (Mot. at 2.)

Arnold & Porter concludes that "[b]ecause the President has recognized President

Guaidó as the rightful representative of the Republic, only President Guaidó or his

representatives may assert the interests of the Republic in U.S. courts."  (*Id.*)

Arnold & Porter did not seek the Republic's permission to represent Mr. Guaidó,

nor did it seek or obtain any conflict waiver from the Republic.

The Republic respectfully disagrees with Arnold & Porter's position in its

Motion.  Not one of the cases Arnold & Porter cites is directly on point.  None

concern the situation where two "competing factions within a foreign government"

(Mot. at 3) both ask to be heard in order to defend claims that have been filed against their country (as opposed to bringing claims on their country's behalf). And this is an important distinction.  While there is well-established law about whether an unrecognized state is entitled to certain privileges and immunities, it has never been suggested that an unrecognized state may not defend itself when haled into court.  *See Kadic v. Karadzic*, 70 F.3d 232, 244-245 (2d Cir. 1995) (while unrecognized states do not enjoy privileges and immunities accorded to recognized states, international law authorizing suits against states still applies and they are entitled to defend themselves in those suits); *Ali Shafi v. Palestinian Authority*, 686 F.Supp.2d 23, 28-30 (D.D.C. 2010) (citing *Kadic* for principle that international law applies "without distinction between recognized and unrecognized states"); *Knox v. Palestinian Liberation Organization*, 306 F. Supp. 2d 424, 439-443  (S.D.N.Y. 2004) (citing *Kadic* for authority that "an unrecognized state is not a juridical nullity" and is "accorded *de facto* existence with respect to adjudications of strictly commercial transactions," and "adjustments of private rights").  Regardless of any executive order, the Republic has the right to defend itself against the arbitral award obtained by the Petitioner-Appellee by pursuing this appeal.

The only case cited in the Motion regarding "competing factions," *Bank of China v. Wells Fargo Bank & Union Trust Co.*, 104 F. Supp. 59 (N.D. Cal. 1952),

*aff'd* 209 F.2d 467 (9th Cir. 1953), does not in fact stand for the proposition claimed, that "courts must recognize only that faction which has been recognized by the Executive Branch as rightfully representing the foreign state."  (Mot. at 3.)

The *Bank of China* case concerned the competing claims of the Nationalist Government of China and the People's Republic of China to control over the plaintiff, Bank of China, and the money it had on deposit at Wells Fargo.

Importantly, the district court held that the U.S.'s recognition of one of the competing factions (the Nationalist Government) as the representative of the State was *not* "per se . . . determinative" of the issue of which faction was entitled to the deposits.  *Id.* at 63.  The court observed:

> If whenever this court is called upon to determine whether there is a government justly entitled to act on behalf of a foreign state in respect to a particular matter, the court is bound to say, without regard to the facts before it, that the government recognized by our executive is that government, then nothing more need be said here.  To permit this expression of executive policy to usurp entirely the judicial judgment would relieve the court of a burdensome duty, but it is doubtful that the ends of justice would thus be met.

*Id.*

The district court concluded that there was "no rule of law obliging the courts to give conclusive effect to the acts of a recognized government to the exclusion of all consideration of the acts of an opposing unrecognized government." *Id.* at 63.  Instead, "[i]n any particular situation, executive policy . . .

4

is a fact which properly should be considered and weighed along with the other facts before the court."  *Id.* at 64.

Moreover, executive policy is not immutable, nor is Mr. Guaidó's place as the legitimate leader of Venezuela by any means assured.  In fact, as a matter of Venezuelan law, there are serious issues with Mr. Guaidó's "claim [which] derives from a creative interpretation of a constitutional provision, rather than from popular will or the due process of the law."  Max Fisher, *Who Is Venezuela's Legitimate President?  A Messy Dispute, Explained*, N.Y. TIMES, Feb. 4, 2019.

In sum, while the Republic does not oppose the stay that has been granted, it strenuously objects to Arnold & Porter's position that the Republic has no right to participate in these proceedings by virtue of President Trump's official statement.

Respectfully submitted,

Dated:  February 22, 2019

 /s/   Moxila A. Upadhyaya
Moxila A. Upadhyaya
Michael B. MacWilliams
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, DC  20001
Telephone: 202-344-4000
Fax: 202-344-8300

*Attorneys for the Bolivarian Republic of Venezuela*

5

**CERTIFICATE OF COMPLIANCE**

The foregoing Response complies with the word limit of Fed. R. App. P. 27(d)(2)(A) and Fed. R. App. P. 32(g)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), the Response contains 1013 words.

February 22, 2019                                    /s/  Moxila A. Upadhyaya
                                                              Moxila A. Upadhyaya


**CERTIFICATE OF SERVICE**

I hereby certify that on February 22, 2019, I electronically filed the foregoing document with the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

February 22, 2019                                    /s/  Moxila A. Upadhyaya
                                                              Moxila A. Upadhyaya