# EXHIBIT 21

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 1:21-mc-23103-BB

CASA EXPRESS CORP,
as Trustee of CASA EXPRESS
TRUST,

             Judgment Creditor,

v.

BOLIVARIAN REPUBLIC OF
VENEZUELA,                /

             Judgment Debtor.

_____

## NOTICED ENTITIES' MEMORANDUM IN OPPOSITION TO [DE#3] JUDGMENT CREDITOR'S *EX PARTE* EXPEDITED MOTION TO COMMENCE PROCEEDINGS SUPPLEMENTARY, ETC.

RIM Group Investments Corp., RIM Group Investments I Corp., RIM Group

Investments II Corp., RIM Group Investments III Corp., Posh 8 Dynamic Inc., and

Planet 2 Reaching Inc. ("Respondents" or the "Noticed Entities") oppose [DE#3] the

Motion to Commence Proceedings Supplementary, to Implead Defendants, and for

Issuance of Statutory Notices to Appear (the "Motion") filed by Judgment Creditor

Casa Express Corp. ("Movant" or "Casa Express").[1] In support of this opposition,

---

[1] The Motion is styled as such, not as a complaint. If the Court construes the Motion as a complaint, then Respondents would seek leave to file a response under Rule 12, Fed. R. Civ. P.

Respondents submit the affidavit of Edward D. Wilson (attached as <u>Exhibit 1</u>) and the following points and authorities which he adopts.

## **INTRODUCTION**

Movant / Casa Express is a holder of unpaid Venezuelan bonds and has obtained a judgment against Venezuela in the Southern District of New York upon the bonds. That case has nothing to do with Respondents or the real property in Florida. The Motion does not allege any cause of action by Casa Express itself against any of the Respondents or the properties. Casa Express claims instead that Venezuela's foreign exchanges were manipulated, that Respondents benefitted from the manipulation, and through that claim Casa Express seeks to assert a constructive trust on behalf of Venezuela and against Respondents' Florida realty. As noted earlier, Casa Express's judgment in the Southern District of New York arose from unrelated Venezuelan bonds dating back to the 1990s that have nothing to do with Respondents, or with the foreign currency exchange transactions that Casa Express desires to litigate. Lacking any personal injury or cause of action, Casa Express instead seeks to execute upon Respondents' real properties based upon a hypothetical Venezuelan constructive trust claim against the Respondents' realty.

In its Motion, Movant / Casa Express purports to stand in the shoes of its litigation adversary and judgment debtor—the Republic of Venezuela—and Casa Express thereby further endeavors to assert a constructive trust on behalf of

Venezuela over numerous Florida properties owned by Respondents (the Noticed Entities). Venezuela has never authorized Casa Express to assert any claims on its behalf. In fact, Casa Express's every intention in asserting such (unauthorized) claims on Venezuela's behalf is to spirit away the properties forever, for Casa Express's own individual, exclusive pecuniary benefit. Casa Express endeavors to assert unauthorized claims on Venezuela's behalf, so that Casa Express can then permanently deprive Venezuela of any interest it might have in such claims.

Casa Express appears to be advancing the novel theory that as, a judgment creditor, it can assert (and prosecute) a claim on behalf of its judgment debtor (Venezuela), no matter how unrelated or inchoate the claim. Casa Express is incorrect: Casa Express lacks standing to sue third-party Respondents for alleged misconduct that has no connection with Casa Express. Its status as a judgment creditor provides Casa Express no standing to sue for Venezuela.

Moreover, the Foreign Sovereign Immunities Act (the "FSIA") bars the Motion because, *inter alia*, the FSIA establishes a judicial presumption of foreign sovereign immunity from both suit and attachment and execution, which Casa Express cannot overcome. *See* 28 U.S.C. §§ 1604, 1609 (immunity from attachment and execution); *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989). Both presumptions are jurisdictional, that is, absent an exception, a court

3

lacks subject matter jurisdiction over a foreign sovereign and the attachment of its property.

Furthermore, the act of state doctrine precludes Casa Express' theory of recovery. The act of state doctrine is a judicial limitation on the right to sue. Because Casa Express's thesis is that Venezuela was complicit in the money exchange scheme that took place outside of the United States, the act of state doctrine bars a U.S. court from questioning the sovereign's act. *See W.S. Kirkpatrick & Co. v. Env't Tectonics Corp. Int'l*, 493 U.S. 400, 405 (1990); *Mezerhane v. Republica Bolivariana de Venezuela*, 785 F.3d 545, 552 (11th Cir. 2015); *Glen v. Club Mediterranee S.A.*, 365 F. Supp. 2d 1263, 1271 (S.D. Fla. 2005), *aff'd*, 450 F.3d 1251 (11th Cir. 2006). The doctrine does not simply relieve the foreign government of liability for its acts, but operates as an issue preclusive device, foreclosing judicial inquiry into the validity or propriety of such acts in litigation between any set of parties.

Lastly, the Motion "seeks to attach Venezuelan assets blocked by the U.S. Treasury Department's Office of Foreign Asset Control ('OFAC')," consisting of eight real properties located in Florida that Casa Express claims were purchased with "misappropriated Venezuelan funds that [Raul Gorrin] obtained through an illicit and corrupt foreign currency exchange scheme." Motion at 2. Undersigned are authorized to defend the Respondents' ownership interests in the Florida properties

at issue by the _only_ OFAC-approved licensee; on the other hand, Casa Express admits that it has not obtained the requisite OFAC license or any OFAC license at all. Motion at 2 n.1. The assets that Casa Express seeks to execute upon are, by its own admission, "assets blocked by the U.S. Treasury Department's Office of Foreign Assets Control ('OFAC')." Motion at 2, 9. By law, "any attachment, judgment, decree, lien, execution, garnishment, _or other judicial process_ is null and void" unless licensed. 31 C.F.R. § 591.202(e) (emphasis added). Under the applicable federal regulation, any proceeding against the blocked assets is prohibited by federal law, depriving this Court of jurisdiction.

## Legal Standards

Under the FSIA, sovereign governments and their property in the United States are immune from both suit and attachment. _See_ 28 U.S.C. §§ 1604, 1609 (immunity from attachment for noncommercial property); _Argentine Republic v. Amerada Hess Shipping Corp._, 488 U.S. 428, 433–34 (1989). The FSIA provides that foreign states "shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C. § 1604. _See Saudi Arabia v. Nelson_, 507 U.S. 349, 355 (1993).

The FSIA also contains separate provisions providing immunity from attachment, arrest, and execution of the property of foreign states. Section 1609 states:

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act *the property in the United States of a foreign state shall be immune from attachment arrest and execution* except as provided in sections 1610 and 1611 of this chapter.

28 U.S.C. § 1609 (emphasis added).

Accordingly, the FSIA establishes a judicial presumption of foreign sovereign immunity from both suit and attachment and execution, which Movant must overcome. Both presumptions are jurisdictional, that is, absent an exception, a court lacks subject matter jurisdiction over a foreign sovereign and the attachment or execution of its property within the United States. *See Walters v. Industrial and Commercial Bank of China, Ltd.*, 651 F.3d 280, 288–89 (2d Cir. 2011).

The FSIA protections against attachment and execution are broader than those against suit because "'at the time the FSIA was passed, the international community viewed execution against a foreign state's property as a greater affront to its sovereignty than merely permitting jurisdiction over the merits of an action.'" *Id.* (quoting *Connecticut Bank of Commerce v. Republic of Congo,* 309 F.3d 240, 255–56 (5th Cir. 2002)); *see also Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1178 (11th Cir. 2011) ("Section 1609 . . . provides the property of a foreign state with immunity from arrest, attachment, and execution and states that exceptions are provided in §§ 1610 and 1611."). These protections against execution upon sovereign property are applicable when the property of third parties

6

is sought to satisfy a judgment against a foreign state. *Walters*, 651 F.3d at 290 (citing cases).

A foreign sovereign need not be in possession of the sovereign property for immunity to exist. *See Odyssey Marine*, 657 F.3d at 1178–79. "An examination of the FSIA reveals no possession requirement exists in any part of the statute." *Id.* at 1179. "When Congress determined 'the exact degree [] and character' of subject matter jurisdiction over the property of foreign sovereigns under the FSIA, it did not provide an exception to immunity for property not in a foreign sovereign's possession." *Id.*

Separate from FSIA, based upon statutory authority and executive orders, the Treasury Department has created a regulatory regime imposing sanctions upon property located in the United States for a variety of purposes, including the Venezuela Sanctions Regulations ("VSRs"), 31 C.F.R. § 591.202 et seq. Specifically, OFAC's VSRs provide that:

> (e) Unless licensed pursuant to this part, any attachment, judgment, by decree, lien, execution, garnishment, *or other judicial process is null and void* with respect to any property and interests in property blocked pursuant to § 591.201.

31 C.F.R. § 591.202(e) (emphasis added).

Casa Express seeks to obtain "a constructive trust in favor of Venezuela." Motion at 2. A constructive trust is an equitable remedy potentially available when an alleged victim can trace its property ("res") into the hands of the wrongdoer. *FTC*

*v. Bronson Partners, LLV*, 654 F.3d 359, 373 (2d Cir. 2011). "The beneficiary of the trust is entitled to have his original interest restored in his property which was wrongfully taken." *Bender v. CenTrust Mortg. Corp.*, 51 F.3d 1027, 1029 (11th Cir. 1995).

Casa Express assumes without explanation in its Motion that Florida law, (including the Florida remedy of a constructive trust), applies to conduct and transactions occurring within the territory of Venezuela, and to Venezuelan property located in the territory of Venezuela. The alleged fraud supposedly arises out of the misappropriation of funds by Raul Gorrin in Venezuela, from the Venezuelan government's currency exchange. The alleged fraud is purported to have occurred in Venezuela, and the alleged misappropriated funds were Venezuelan government funds.

Casa Express fails to explain how a constructive trust would attach to Venezuelan funds, misappropriated in Venezuela—why Florida's constructive trust remedy (rather than the law of Venezuela) would apply to the alleged fraudulent misappropriations that took place in the territory of Venezuela. *See Mootilal Ramhit & Sons Contracting, Ltd. v. Mohammed*, 13-23432-CIV, 2014 WL 3439742, at *7–8 (S.D. Fla. July 15, 2014). Typically, "Florida's strong presumption against extraterritorial application of its law prohibits its application[.]" *Boehner v. McDermott*, 332 F. Supp. 2d 149, 155 (D.D.C. 2004).

To the extent that Florida law would apply, Florida law characterizes a constructive trust as "a remedy, not an independent cause of action, and thus 'it must be imposed based upon an established cause of action.'" *Abdo v. Abdo*, 284 So. 3d 1101, 1103 (Fla. 2d DCA 2019) (quoting *Collinson v. Miller*, 903 So. 2d 221, 228 (Fla. 2d DCA 2005); *see Temurian v. Piccolo*, 18-CV-62737, 2019 WL 1763022, at *12 (S.D. Fla. Apr. 22, 2019) (Bloom, J.) ("As such, the assertion of an independent claim for 'constructive trust' is improper"). Moreover, a constructive trust cannot be imposed upon a party or their assets over which the court lacks jurisdiction. *Abdo*, 284 So. 3d at 1103 (citing *Humphrey v. Deutsche Bank Nat'l Tr. Co.*, 113 So. 3d 1019, 1020 (Fla. 2d DCA 2013)).

Under Florida law, "[t]he four elements that must be established for a court to impose a constructive trust include: (1) a promise, express or implied, (2) a transfer of property and reliance thereon, (3) a confidential relationship; and (4) unjust enrichment." *Castetter v. Henderson*, 113 So. 2d 153, 155 (Fla. 5th DCA 2013). Further, a court creates a constructive trust to benefit the "equitable owner," that is, the alleged victim of the wrongdoing whose personal property has been traced into the property. *See Crawley-Kitman v. Hernandez*, 2021 WL 2559091, *4 (Fla. 3d DCA June 23, 2021) (dismissing unjust enrichment for plaintiff's failure to confer benefit upon defendants); *Steinhardt v. Steinhardt*, 445 So. 2d 352 (Fla. 3d DCA 1984) (where plaintiffs' constructive trust claim against their brother originated

entirely from a 1935 agreement between their brother and father, plaintiffs were not entitled to a constructive trust because the alleged unjust enrichment of brother was not at their expense but at the expense of their father). *See also United States v. Murphy*, 850 F. Supp. 981, 983 (M.D. Fla. 1994) ("In Florida, neither a constructive trust nor a resulting trust arises in favor of a person who has paid no part of the purchase price."); *accord In re Advent Mgmt. Corp.*, 104 F.3d 291, 295 (9th Cir. 1997) (applying California law); *In re Sexton*, 166 B.R. 421, 425 (Bankr. N.D. Cal. 1994) (applying California law) ("[O]nly the equitable owner of the trust res may obtain a constructive trust, not a creditor of the equitable owner."). Under the allegations of the Motion, the only equitable owner alleged is Venezuela because it allegedly lost money in its currency exchange transactions.

Moreover, "[a] constructive trust cannot be imposed upon general assets." *Bender*, 51 F.3d at 1030 (citing Florida cases). "A constructive trust may only be imposed where the *res* is specific identifiable property or can be clearly traced in assets of the defendant which are claimed by the party seeking relief." *Trend Setter Villas of Deer Creek v. Villas on the Green, Inc.*, 569 So. 2d 766, 768 (Fla. 4th DCA 1990). "Notwithstanding, a court may impose a constructive trust where funds have been converted into another type of asset and the claimant can trace and identify the transaction in which the conversion occurred." *United States v. Rothstein*, 09-60331-CR, 2010 WL 2813454, at *4 (S.D. Fla. July 14, 2010).

## Argument

### 1.       The Alleged Property of Venezuela is Immune From Execution

The Motion purports to invoke the FSIA, but it fails to establish jurisdiction under it, either to sue for or against Venezuela or to seek execution against the property of the Republic as the "judgment debtor."

### A.       Attachment and Execution Immunity Applies to the Property

The Motion claims that the Respondents' property is actually the property of the Venezuela and, as such, seeks the imposition of a prospective constructive trust upon them. Not only is Casa Express's constructive trust theory erroneous as a matter of law, it does not survive the sovereign immunity applicable to Venezuela's assets under 28 U.S.C. § 1601, *et seq*, which is a jurisdictional bar. Casa Express admits that in a case against a foreign sovereign, a court "must 'determine whether the property in question falls within one of the statutory exceptions to foreign immunity' prior to issuance of a writ of execution."   Motion at 26 (quoting *Connecticut Bank*, 309 F.3d at 247). In particular, section 1609 of the FSIA states that "the property in the United States of a foreign state shall be immune from attachment arrest and execution." 28 U.S.C. § 1609.

This statutory *attachment* and *execution* immunity is more expansive than the FSIA's exceptions permitting suit against a sovereign.  *See Connecticut Bank*, 309 F.3d at 252; *see also Odyssey Marine*, 657 F.3d at 1178. Attachment and execution

immunity for foreign governments may be overcome by the exception enumerated in section 1610(a) applicable to "the property in the United States of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States." 28 U.S.C. § 1610. Furthermore, even if this commercial property exception applies to permit attachment (but it does not), subsection 1610(c) requires a court to determine that sufficient time has passed since the judgment and giving of notice to permit court approval of the attachment. *Id.*

The Motion suggests that Venezuela's sovereign immunity is overcome by application of the commercial activity exception of section 1610(a) because sufficient time has passed under subsection 1610(c), but the Motion fails to explain how the property itself falls within the exception for "commercial activity." Motion at 2, 11, 22. In addition, Casa Express claims that Venezuela has waived its sovereign immunity by virtue of certain language in documents relating to the underlying debt securities. Motion at 23 (citing Fiscal Agency Agreements).

The passage of time is irrelevant to the question of whether the property is used for a commercial activity in the United States, as is Casa Express's claims about waiver. On its face, the immunity exception, subsection of 1610(a), only permits execution upon sovereign property if it is "the property in the United States of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States." *Id.* Execution is limited to: (i) sovereign property in

the United States; (ii) used by the sovereign for commercial purposes. *Connecticut Bank*, 309 F.3d at 251. No such allegation is made by Movant.

"What matters under the statute is what the property is 'used for,' not how it was generated or produced." *Id.* (cited in the Motion at 26). "[E]ven if a foreign state's property has been generated by commercial activity in the United States, that property is not thereby subject to execution or attachment if it is not 'used for' a commercial activity within our borders." *Id.*

Here, there is no allegation that the real property upon which Casa Express seeks to execute was or is being used as commercial property by Venezuela. To the contrary, the motion makes no claim that Venezuela uses the properties for commercial purposes and instead alleges that the "real properties at issue were **purchased by private citizens** (through shell companies) **for the benefit of private citizens**." Motion at 23 (emphasis in the original). Moreover, these properties are admittedly residential properties.

As to Venezuela's purported contractual waiver of sovereign immunity, including for attachment and execution, such waiver does not expand the property subject to attachment beyond: (i) property in the United States; (ii) used for commercial purposes. *See Connecticut Bank*, 309 F.3d at 254 ("The statute means what it says: property of a foreign sovereign, unlike property belonging to a mere agency or instrumentality, may be executed against only if it is 'used for' a

commercial activity."). "Even when a foreign state completely waives its immunity from execution, courts in the U.S. may execute only against property that meets these two statutory criteria." *Id.* at 247; *accord Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120, 130 (2d Cir. 2009); *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 481 n.19 (2d Cir. 2007); *LNC Inv., Inc. v. Republic of Nicaragua*, 96 CIV. 6360 JFK, 2000 WL 745550, at *1–4 (S.D.N.Y. June 8, 2000).

"[U]nder the FSIA a plaintiff seeking to attach the property of a foreign state in the United States must identify the specific property that is subject to attachment and plausibly allege that an exception to § 1609 attachment immunity applies." *Rubin v. Islamic Republic of Iran*, 637 F.3d 783, 799 (7th Cir. 2011). Because (residential) property at issue is not commercial property, this court lacks subject matter jurisdiction to execute upon it.

### B.   Judicial Process Related to Blocked Assets is Null and Void

The assets that Casa Express seeks to execute upon are, by its own admission, "assets blocked by the U.S. Treasury Department's Office of Foreign Assets Control ('OFAC')." Motion at 2, 9. Under the applicable federal regulation, however, any proceeding against the blocked assets is prohibited by federal law and this Court lacks jurisdiction to adjudicate it.

Casa Express admits that it has not obtained a license from OFAC regarding these assets. Motion at 2 n.1. "[A]ny attachment, judgment, decree, lien, execution,

garnishment, *or other judicial process* is null and void" unless licensed. 31 C.F.R. §
591.202(e) (emphasis added). The motion is a self-identified judicial process seeking
to execute on the blocked assets.

The term "judicial process" has been described as including the "FSIA's
specific provisions for service of foreign states, answer, default, summons,
counterclaims, and property attachment—the mechanics of litigating a case against
a foreign state to which the FSIA's immunity from judicial process refers."
*Rodriguez v. Pan American Health Organization*, 2020 WL 1666757, *5 n.6 (S.D.
Fla. April 3, 2020). In other words, by federal regulation issued based upon statute,[2]
the methods of instituting and prosecuting claims, and attaching property, are "null
and void" as to blocked assets.

Furthermore, the relief that Casa Express asks of this Court—execution upon
blocked assets—is also prohibited by the same regulation, 31 C.F.R. § 591.202(a):

> a) Any transfer after the effective date that is in violation of any
> provision of this part or of any regulation, order, directive, ruling,
> instruction, or license issued pursuant to this part, and that involves any
> property or interest in property blocked pursuant to § 591.201, is null and
> void and shall not be the basis for the assertion or recognition of any
> interest in or right, remedy, power, or privilege with respect to such
> property or property interest.

---

[2] The regulations affecting Venezuela identify the statutory source of their authority
as the International Emergency Economic Powers Act, 50 U.S.C. 1701 *et seq.*
("IEEPA"), and the National Emergencies Act (50 U.S.C. 1601 *et seq.*) ("NEA").
80 Fed. Reg. 39676, 2015 WL 41244537 (July 10, 2015).

Here, there is no dispute that the assets are blocked, and Casa Express lacks a license to initiate "judicial process" against them. Judicial process includes all of the procedures necessary to being suit under the FSIA. *See Pan American Health*, 2020 WL 1666757, *5 n.6. As a result, the Motion and the "judicial process" it seeks to invoke are "null and void."

Without addressing this regulatory prohibition on judicial process, Casa Express claims that this Court can exercise jurisdiction before Casa Express obtains an OFAC license permitting the relief it may later acquire. Motion at 2 n.1 (citing *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 151 (3rd Cir. 2019)). *Crystallex* is inapposite. *Crystallex* addressed whether the assets of a corporate alter ego (shares held by the U.S. subsidiary of a Venezuelan oil company) could be subject to execution for debts of Venezuela. The Third Circuit examined the claims at issue—efforts to recover against corporate stock owned by the alter ego—and concluded that the sanctions did not preclude suit because "the sanctions regime prohibits only some commercial uses of the shares; other commercial uses continue to be exercised by Venezuela." *Crystallex*, 932 F.3d at 151. Here, there is no allegation that the residential properties at issue are being used commercially – these properties are residential properties. And unlike in *Crystallex*, the sanctions block any and all use of the properties. Moreover, there is no allegation (nor could there be) that the blocked assets are owned by an alter ego of Venezuela. Lastly, the

Third Circuit did not consider or address the application of 31 C.F.R. § 591.202(e) on the court's ability to institute execution proceedings on blocked assets, and § 591.202(e) is dispositive here and precludes the Movant's attempted exercise of judicial process.

The substantive result on the merits dictated by the VSRs applies—this Court must rule that the Motion, and all related "judicial process" "is null and void." *See, e.g., Versilia Supply Service SRL v. M/Y Waku,* 371 F. Supp. 3d 143 (S.D. Fla. 2019) ("Plaintiffs do not dispute that the Vessel is blocked property under the Kingpin Act and that they have failed to obtain a license from the OFAC to execute against the Vessel. That ends the inquiry."); *Martinez v. Cuba*, 20112011 WL 13115471, at *1 (S.D. Fla. Aug. 26, 2011) (vacating execution upon judgment; "Since Plaintiff does not have the required license from the United States Department of Treasury's Office of Foreign Asset Control, the writs of garnishment are null and void.").

### 2. **Movant Lacks Standing to Sue on Behalf of Venezuela**

The gist of the Motion is that Respondents improperly obtained monies from Venezuela in foreign currency exchange transactions occurring in Venezuela. But the Motion does not claim that Casa Express has, or has secured, any right to represent or make claims on behalf of Venezuela. Only *bona fide* representatives of Venezuela can sue on its behalf. This is especially the case as to a constructive trust, which Florida classifies as a remedy (not a claim), *see Temurian*, 2019 WL 1763022,

at \*12 (Bloom, J.), making Venezuela the only party with standing to seek its own remedy.

The Motion does not allege that Respondents are in any way responsible for the underlying judgment in the Southern District of New York upon which Casa Express is seeking execution. Rather, Casa Express contends that it can assert a constructive trust against Respondents' properties on behalf of Venezuela, their litigation adversary. But, Casa Express lacks standing to sue on behalf of Venezuela, which also deprives this Court of jurisdiction. *Reprod. Health Servs. v. Strange*, 3 F.4th 1240, 1250 (11th Cir. 2021) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)). "Article III of the Constitution limits the jurisdiction of federal courts to 'cases' and 'controversies,' and '[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy.'" *Reprod. Health Servs.*, 3 F.4th at 1251 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016)). Movant cannot satisfy any of the three necessary elements of constitutional standing: (i) injury in fact; (ii) causation; and (iii) redressability. *Id. Accord Guiffre v. Edwards,* 226 So. 3d 1034, 1039 (Fla. 4th DCA 2017) (same under Florida law).

### A.    Movant Cannot Establish Article III or Prudential Standing

Casa Express seeks to create an equitable trust in favor of Venezuela and then execute upon it as Venezuela's judgment creditor. Casa Express lacks both constitutional and prudential standing to do so, requiring dismissal for lack of

jurisdiction.  Standing to seek a constructive trust for Venezuela is also unavailable under prudential or common law standards.

### i.    Movant Cannot Establish Constitutional Standing

To establish Article III standing, a "plaintiff must show (1) it has suffered an injury in fact (2) that is fairly traceable to the challenged conduct of the defendant and (3) likely to be redressed by a decision in the plaintiff's favor." *Reprod. Health Servs.*, 3 F.4th at 1251 (quoting *Spokeo, Inc.*, 578 U.S. at 338). *See Lexmark Int'l v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) ("From Article III's limitation of the judicial power to resolving 'cases' and 'controversies,' and the separation-of-powers principles underlying that limitation, we have deduced a set of requirements that together make up the 'irreducible constitutional minimum of standing.'") (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

### a.  Movant has no Injury in Fact

Casa Express lacks direct standing because it did not personally suffer any injury in fact by any of the alleged foreign exchange conduct. *Spokeo*, 578 U.S. at 339. It therefore cannot meet the constitutional injury standard for standing. *Lujan*, 504 U.S. at 560; *Smith v. Judges*, 2017 WL 1100424, *2 (D. Conn. March 23, 2017).

Injury in fact requires proof of a "particularized" injury that is "concrete." *Spokeo*, 578 U.S. at 339. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1).

Casa Express was not injured by the foreign exchange transactions it seeks to litigate. It does not claim to have been a participant in, or victim of, the Venezuela foreign exchange transactions that it seeks to adjudicate in this Court. Nor are its alleged injuries "concrete," in that they rely vaguely on the existence of a foreign exchange claim by Venezuela that may, or may never, be made.

### b. Movant has not Alleged That Respondent Caused its Alleged Injuries

"To satisfy Article III's causation requirement, the named plaintiffs must allege that their injuries are 'connect[ed] with the conduct of which [they] complain.'" *Reprod. Health Servs.*, 3 F.4th at 1252 (quoting *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125 (11th Cir. 2019)). There is no connection between the bond dispute giving rise to the judgment obtained by Casa Express in the Southern District of New York and the foreign exchange transactions it seeks to have adjudicated herein. Indeed, Casa Express does not claim that Respondents injured Movant in any way.

### c. Movant's Claim is not Redressable

Finally, Casa Express lacks standing because its claim is not redressable by this Court. Specifically, the obstacles to the requested remedy of a constructive trust upon the realty include: (i) the realty is immune from attachment under the FSIA, 28 U.S.C. § 1609; (ii) the assets are blocked under IEEPA and the VSRs; (iii) the assets

are blocked and Casa Express lacks an OFAC license; and (iv) the act of state doctrine precludes relief invalidating the acts of a sovereign, here, Venezuela.

The first three obstacles have already been addressed. The fourth is the result of Casa Express's demand that this Court address the validity of the sovereign acts of Venezuela in seeking a loan, setting the terms for its repayment, and accepting repayment. The act of state doctrine bars suit when "the relief sought or the defense interposed would [require] a court in the United States to declare invalid the official act of a foreign sovereign performed within its territory." *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp. Int'l*, 493 U.S. 400, 405 (1990). The official acts underlying the terms and performance of Venezuela's foreign exchange transactions taking place within Venezuela are the acts of a sovereign government. Indeed, Casa Express's entire thesis—that Venezuela has a claim arising out of its currency transactions with Gorrin—confirms that these are acts of a sovereign government. *See* Motion at ¶ 5 ("For years, many *officials and insiders* of the Hugo Chavez and Nicolas Maduro regimes have enriched themselves . . . .") (emphasis added)), ¶ 6 (identifying involvement of "Oficina Nacional del Tesoro ('ONT') [which] is the Venezuelan National Treasury, which is responsible for managing the country's public funds and finances"), ¶ 12 ("Gorrin controlled one of the few casas de bolsa, which were ONT-approved."), ¶¶ 13–21 (alleging that "Venezuelan National Treasurer" acted improperly and failed to discharge his duties).

21

The Act of State doctrine is a judicial limitation on the right to sue. *United States v. Noriega*, 746 F. Supp. 1506, 1521 (S.D. Fla. 1990) (Hoeveler, J.), *aff'd on other grounds*, 117 F.3d 1206 (11th Cir. 1997). "It is a doctrine of judicial restraint that prohibits a United States court from passing judgment on the validity of an act of a foreign sovereign taken within its own territory." *Club Mediterranee*, 365 F. Supp. 2d at 1267 (citing *inter alia Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964) ("The act of state doctrine . . . precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory"). "The doctrine does not simply relieve the foreign government of liability for its acts, but operates as an issue preclusive device, foreclosing judicial inquiry into the validity or ***propriety*** of such acts in litigation between any set of parties." *Id.* at 1271 (quoting *Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1380 (5th Cir. 1980)) (emphasis added). "Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory." *Mezerhane*, 785 F.3d at 552.

In the underlying currency exchange, the transactions flowed through and were effectuated by the Venezuelan government. *See generally* Motion at ¶¶ 5-12. "[B]ecause in this case a foreign plaintiff is protesting a taking by a foreign sovereign that took place outside of the United States, the act of state doctrine bars a U.S. court

from questioning the sovereign's act." *Mezerhane*, 785 F.3d at 552. "Consequently, [Movant's unjust enrichment and constructive trust] claims would be foreclosed under this doctrine, since they would require this court to make a determination of their rights in the wake of the sovereign acts of the [Venezuelan] government." *Club Mediterranee*, 365 F. Supp. 2d at 1271.

The Act of State doctrine bars this Court from providing civil redress for the acts of Venezuela and its officials, conducted in Venezuelan territory.

### ii. Movant Lacks Prudential Standing

Casa Express purports to represent Venezuela for the purpose of bringing claims against Venezuelan citizens based upon alleged misconduct injuring Venezuela in the management of its foreign currency exchange program. Casa Express does not contend that Venezuela has retained it or otherwise authorized it to advance any of these claims. Casa Express's status is simply that of a judgment creditor of Venezuela. That is insufficient as a matter of law for direct standing or *jus tertii* standing.

### iii. Movant Lacks Direct Standing

In Florida, a "litigant must demonstrate that he or she has standing to invoke the power of the court to determine the merits of an issue." *Guiffre v. Edwards*, 226 So. 3d 1034, 1038 (Fla. 3d DCA 2017). "The interest cannot be conjectural or merely hypothetical[,]" *id.*, nor can it be "indirect, inconsequential, or contingent.'"

*Id.* (quoting *Sweetwater Country Club Homeowners' Ass'n v. Huskey Co.*, 613 So.2d 936, 939 (Fla. 5th DCA 1993). Casa Express lacks standing based upon its hypothetical contingent interest in the outcome of a constructive trust proceeding that can only be brought by Venezuela and that may never occur, much less yield any result. Indeed, any such contingent constructive trust claim would face an unclean hands defense based upon the contention, alleged by the United States government that Venezuela is complicit in the underlying misconduct. *See, e.g*, *United States v. Andrade*, No. 17-cr-80242-RLR, Doc. #27, at 6 (S.D. Fla. July 27, 2018) (Government's Memorandum).

Florida also adheres to the common law principle that a plaintiff must have a cognizable interest in the claim throughout the suit. *Timko v. Triarsi*, 898 So. 2d 89, 92 (Fla. 5th DCA 2005) (sale of shares during suit deprives shareholder of standing to sue for corporation). Casa Express has no such interest in any equitable ownership that may belong to Venezuela in the proceeds of the currency exchange transactions.

Standing to seek a constructive trust is limited to the alleged equitable owner of the identified res (the disputed property), which would be the realty here. *See Crawley-Kitzman,* 2021 WL 2559091, *4 (dismissing constructive trust claim predicated upon third party misrepresentations to plaintiff); *Steinhardt*, 445 So. 2d 352. *Accord In re Advent Management Corp*., 104 F.3d at 295 (applying California law).

24

Assuming without conceding, that the Motion sufficiently alleges that Venezuela was a victim of its own currency exchange transactions, (all of which were admittedly authorized by its National Treasurer), Venezuela is the only injured party, and therefore the only equitable owner of any alleged proceeds.[3] As a mere judgment creditor of Venezuela, Casa Express lacks standing to pursue a constructive trust on its behalf.

Moreover, Casa Express lacks standing due to the lack of any tracing here. Casa Express has not claimed, nor could it, that its alleged bond claims or federal judgment, can be traced to an alleged irregularity in government currency exchanges in Venezuela. The closest Casa Express comes to tracing is to quote two cases approving proof of tracing "directly or indirectly" "in favor of Venezuela." Motion at 22. No claim of tracing is made as to Respondents' properties and the underlying bonds upon which Movant obtained a judgment in the Southern District of New York. Without such tracing, Movant's claim fails.

---

[3] Unjust enrichment is an element of a constructive trust remedy. *See Castetter*, 113 So. 2d at 155. Yet unjust enrichment requires that Plaintiff have conferred a benefit on the unjustly enriched party. *See Extraordinary Title Services, LLC v. Florida Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 3d DCA 2009). There is no allegation that Casa Express conferred any benefit on Respondents.

### iv. Movant Lacks *Jus Tertii* Standing

Moreover, Casa Express has no cognizable right to bring claims on behalf of Venezuela under a *jus tertii* theory. Bringing suit to vindicate the rights of third parties is prohibited, subject to rare exceptions. As the Supreme Court has explained:

> Federal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation. The reasons are two. First, the courts should not adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not. Second, third parties themselves usually will be the best proponents of their own rights. The courts depend on effective advocacy, and therefore should prefer to construe legal rights only when the most effective advocates of those rights are before them. The holders of the rights may have a like preference, to the extent they will be bound by the courts' decisions under the doctrine of *stare decisis*. *These two considerations underlie the Court's general rule: "Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party*."

*Singleton v. Wulff*, 428 U.S. 106, 113-14 (1976) (emphasis added) (internal citations omitted).

Courts consider two factors in determining whether to permit *jus tertii* standing: (i) whether the identity of interests between the injured party and its alleged representative makes one "as effective a proponent of the right as the latter"; and (ii) "the ability of the third party to assert his own right." *Id.* at 115. Here, both factors support the ban on third party standing. Movant is in litigation conflict with Venezuela, precluding an identity of interests between it and Venezuela. Second,

Venezuela is quite capable of asserting its own interests in its own foreign exchange transactions within its borders.

### 3. Movant has Failed to Allege a Viable Constructive Trust Remedy

For largely the same reasons, Casa Express cannot claim a constructive trust upon Venezuela's alleged interests in the subject real estate. Initially, because a constructive trust in Florida is only a remedy for a corresponding cause of action,[4] Movant has failed to identify, or allege, that it has any cause of action personal to it arising from the foreign currency exchange "scheme" it alleges in the Motion. The Motion makes a general allegation of "unjust enrichment," (Motion at 12), it makes no claim that Movant conferred any benefit upon Respondent, an essential element of an unjust enrichment claim. *Crawley-Kitman*, 2021 WL 2559091, *4 (dismissing unjust enrichment for plaintiff's failure to confer benefit upon defendants). Without a valid cause of action to remedy, the Motion must be dismissed. *Id.*

Second, while the Motion acknowledges the four elements necessary for a constructive trust (Motion at 12), it fails to identify any of the elements regarding Casa Express. *Id.* (citing trust requirements of a promise, transfer of property in reliance, a confidential relationship, and unjust enrichment). For example, it cites no promise running between Casa Express and the Respondents, no property being

---

[4] *Abdo*, 284 So. 3d at 1103 (a constructive trust is "a remedy, not an independent cause of action, and thus 'it must be imposed based upon an established cause of action'").

transferred in reliance, no relationship between Casa Express and Respondents, and no unjust enrichment obtained by Respondents from Movant. *See Crawley-Kitman*, 2021 WL 2559091, *4 (dismissing constructive trust claim in absence of promise, resulting transfer, between plaintiff and defendants).

Moreover, one of the necessary elements of a constructive trust remedy is the tracing of the claimant's property into the res upon which an equitable trust is imposed. The Motion makes no effort to claim, much less prove, that the transactions giving rise to Movant's judgment (bond payments) have any connection to the foreign exchange "scheme" it alleges victimized Venezuela. To the contrary, Casa Express relies almost exclusively upon alleged OFAC "findings" about the alleged currency scheme, none of which have anything to do with Casa Express or its alleged grievances with Venezuela.

"The constructive trust is a creature of equity and the 'formula through which the conscience of equity finds expression.'" 5 Austin W. Scott, *The Law of Trusts* § 462, at 3413 (3d ed. 1967) (citation omitted). A widely accepted definition holds that "[a] constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Id.*; *Pharma Funding, LLC v. FLTX Holdings, LLC*, 2021 WL 1166051, *8 (S.D. Fla. Mar. 8, 2021).

Here, Casa Express alleges that the real properties are equitably owned by Venezuela as the alleged victim of fraudulent foreign exchange transactions in Venezuela. This is fatal to Casa Express's standing to pursue a constructive trust claim. Any such remedy would require: (i) proving that these monies were traceable to Casa Express's property; and (ii) proving that this Court has the jurisdiction to execute upon it in the United States. Neither requirement is satisfied here.

"The very essence of the remedy of constructive trust is the identification of specific property or funds as the *res* upon which the trust may be attached." *Collinson*, 903 So. 2d at 229. It "may be imposed only where the trust res is 'specific and identifiable property,' or can be 'clearly traced in assets of the defendant.'" *Abdo*, 284 So.3d at 1103–04. No tracing has been alleged here, nor could it. Casa Express does not contend that its property is traceable to the realty in dispute.

Second, Florida conditions jurisdiction to enforce a constructive trust upon having jurisdiction over the property owner—here Venezuela. *Abdo*, 284 So.3d at 1103 (citing *Humphrey v. Deutsche Bank Nat'l Tr. Co.*, 113 So. 3d 1019, 1020 (Fla. 2d DCA 2013)). For the reasons previously explained, Casa Express has not secured this Court's jurisdiction over Venezuela, and it is immune from attachment as to the realty under the FSIA. *See* 28 U.S.C. § 1609(a) (exempting from execution immunity only "the property in the United States of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States."). The

hypothetical prosecution of Venezeula's alleged claims against Respondents would lead, if successful, to the recovery by Venezuela of property that is immune from execution because it is not being used as commercial property by Venezuela. *See Connecticut Bank*, 309 F.3d at 251 (citing 28 U.S.C. § 1610(a)).

### 4. The Motion Should Be Dismissed for Failure to Join an Indispensable Party

The Motion seeks to "implead" eight parties, which it identifies as the "parties holding title to the aforementioned properties," but none of which are Venezuela. Motion at 1–2. Movant claims that it will seek to join Venezuela into this case, but it has not. Even if does, the FSIA immunity from attachment will bar the relief requested.

Despite this, Casa Express seeks to litigate the rights and interests of Venezuela as to its domestic transactions in Venezuela and does so to execute upon property in the United States that is immune from execution under the Foreign Sovereign Immunities Act. 28 U.S.C. § 1609. Under these circumstances, Venezuela is an indispensable party and Casa Express's failure to join it requires dismissal under Fed. R. Civ. P. 19. *See Dawavendewa v. Salt River Project Agr. Imp. and Power Dist.*, 276 F.3d 1150, 1162 (9th Cir. 2002) (tribe with legal interest in lease at issue was indispensable party, and its' sovereign immunity required dismissal); *GMI, LLC v. Asociacion del Futbol Argentino*, 193 So. 3d 60, 62–63 (Fla. 3d DCA

2016) (affirming dismissal of suit because Argentina was an indispensable party in dispute arising from contract with Argentine government subject to FSIA).

> Rule 19(b) lists four factors:

> (1) the extent to which a judgment rendered in [Venezuela's] absence might prejudice [Venezuela] or the other parties; (2) "the extent to which any prejudice could be lessened or avoided by" "protective provisions in the judgment," "shaping the relief," or "other measures"; (3) whether a judgment rendered in [Venezuela's] absence would be adequate; and (4) whether [the Movant] would have an adequate remedy if we dismissed the entire case.

*Florida Wildlife Fed'n, Inc. v. United States Army Corps of Engineers*, 859 F.3d 1306, 1317 (11th Cir. 2017) (quoting Rule 19(b), bracketed parties changed).

In *Florida Wildlife Federation*, the Eleventh Circuit placed heavy weight on the fact that the absent party (a State of Florida's Water District), had its own sovereign interests, reflected by its sovereign immunity. 859 F.3d at 1318. In particular, the Eleventh Circuit relied upon the Supreme Court's opinion in *Republic of Phillipines v. Pimental*, 553 U.S. 851 (2008), addressing victim claims against the assets of former president Ferdinand Marco, and holding that the Philippine state parties were indispensable.

As the Eleventh Circuit explained: "Indeed, the *Pimentel* Court's sovereign-immunity analysis leaves little room for any other conclusion here:"

> A case may not proceed when a required-entity sovereign is not amenable to suit . . . . [W]here sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must

be ordered where there is a potential for injury to the interests of the absent sovereign.

*Florida Wildlife Fed'n*, 859 F.3d at 1320 (quoting *Pimentel*, 553 U.S. at 867).

### 5.    Movant Has Not Satisfied the Florida Statutory Requirements for Filing its Motion

Movant invokes Fla. Stat. § 56.29(1) as the basis for filing its motion seeking to commence this action. Respondents contend that the Motion should be dismissed for failure to comply with the statutory requirement of first obtaining a writ of execution and filing an affidavit that it is unsatisfied.

Movant claims it does not have the statutory obligation first to obtain a writ of execution, and then to file an affidavit attesting that the writ is unsatisfied. Movant claims that the statutory requirement of obtaining an unsatisfied writ of execution was repealed in 2005 by an amendment to section 56.29(1).  Motion at 25. As far as Respondents can tell, the most recent version of Fla. Stat. 56.29 was enacted on July 1, <u>2016</u>. *See* 2016 Fla. Sess. Law Serv. Ch. 2016-33 (C.S.S.B. 1042)*.* As far as Respondents can tell, the current version of Fla. Stat. 56.29(1) requires an "affidavit" stating *inter alia* "the unsatisfied amount of the judgment or judgment lien, including accrued costs and interest, and stating that the <u>execution</u> is valid and outstanding." Movant acknowledges that this requirement was recently enforced by this Court. *Id*. at 26 (citing *Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters.*, *LLC*, 2020 WL 3146502 (S.D. Fla. Jun. 11, 2020)).  In turn, the

*Versant* opinion cited, and followed, this Court's holding in *Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.*, 2019 WL 2297524, *1 (S.D. Fla. May 30, 2019) (Bloom, J.) ("A party bringing a proceeding supplementary to execution must 1) show that he or she possesses an unsatisfied writ of execution, and 2) file an affidavit averring that the writ is valid and unsatisfied.").

## <u>CONCLUSION</u>

For the foregoing reasons, the Motion should be denied.

Respectfully submitted,

BLACK SREBNICK, P.A.
201 South Biscayne Blvd., Suite 1300
Miami, Florida 33131 / Tel: (305) 371-6421

By:   */s/ Howard Srebnick*
Howard Srebnick
  Florida Bar No. 919063
  HSrebnick@RoyBlack.com
Robert T. Dunlap
  Florida Bar No. 119509
  RDunlap@RoyBlack.com

Case 1:20-cv-23201-BB Document 33 Entered on FLSD Docket 06/28/17 Page 1 of 7

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

CASA EXPRESS CORP, as Trustee of                                 )
CASA EXPRESS TRUST,

       Judgment Creditor

                                     Case No. 1:21-mc-23103-BB

       v.

BOLIVARIAN REPUBLIC OF
       VENEZUELA,

       Judgment Debtor.
_____/

## <u>DECLARATION OF EDWARD WILSON</u>

I, Edward Wilson, state the following based upon my personal knowledge:

1.      I am the licensed representative of Raul Belisario Gorrin and Gustavo Perdomo, and all of the properties owned by them, directly or indirectly, pursuant to LICENSE No. VENEZUELA-EO13850-2019-359725-3 issued by the Office of Foreign Assets Control ("OFAC"), U.S. Treasury Department, December 9, 2020 and expiring, unless earlier renewed, on May 31, 2022.

2.      I am an honors graduate of the University of Virginia and the Georgetown University Law Center. Upon graduation from law school in 1976, I clerked for the Hon. Robert L. Kunzig, U.S. Court of Appeals for the Federal Circuit. After serving as an Associate at Morgan, Lewis & Bockius for approximately three years, I held the following positions in the Executive Branch: Associate Counsel to

1

the President of the United States; Special Assistant to the President for Management; General Counsel, Office of Administration, Executive Office of the President; Deputy Director, Office of Administration, Executive Office of the President; Principal Deputy Assistant Secretary for Management, U.S. Treasury Department; Deputy and Acting General Counsel, U.S. Treasury; Acting Director, Office of Foreign Assets Control; Member, Administrative Conference of the United States; Senior Procurement Officer, Executive Office of the President & U.S. Treasury Department; Designated Agency Ethics Officer, Executive Office of the President & U.S. Treasury Department; Secretarial representative, Pennsylvania Avenue Redevelopment Corporation; and Liquidating Chief Executive Officer, Synthetic Fuels Corporation, among other positions. Throughout my government and private service, I have dealt consistently with matters involving U.S. economic sanctions. For the past approximately 16 years, I have been a partner in the Washington, D.C. office of Venable LLP, a national law firm. My practice focuses primarily on five statutes, and related laws: The Bank Secrecy Act, the International Economic Emergency Powers Act, the Foreign Agents Registration Act, the Foreign Investment Risk Modernization Act of 2018; and the Arms Export Control Act. I have held, and continue to hold, a Top Secret/Sensitive Compartmented Information clearance.

3.    In 2019, I petitioned for, and received, a license from OFAC to engage in the following with regard to Messrs. Gorrin and Perdomo and their properties:

    a.  "all activities ordinarily incident and necessary to continue to manage and maintain all of the blocked properties and chattels (such as vessels, vehicles and aircraft) (collectively, the "Properties"), including representing the Properties in litigation and other forms of dispute resolution, . . ., including but not limited to, acting as legal representative for the Properties and their property managers, collecting, receiving, and depositing income generated from the Properties, and debiting condominium assessment payments;

    b.  "Should the Licensee not receive payment from the residents of the Properties, or in the ordinary course of business decide to sell the Properties, the Licensee may engage in transactions ordinarily incident and necessary to sell the Properties . . .."

4.   The Properties include those owned or controlled by, *inter alia,* the following companies, all of which have been given notices to appear in the above-reference civil action:

    a.  RIM Group Investments, Corp.
    b.  RIM Group Investments I Corp.
    c.  RIM Group Investments II Corp.
    d.  RIM Group Investments III Corp.
    e.  Planet 2 Reaching, Inc.
    f.  Posh 8 Dynamic, Inc.

Collectively the "Noticed Entities."

5.  Pursuant to Executive Order 13850, by which these individuals and entities were placed on the List of Specially Designated Nationals ("SDN List") by OFAC,

3

and, the governing regulations, 31 C.F.R. Part 591, all properties in which these individuals and entities have an interest are blocked. As *The Treasury 2021 Sanctions Review* states at footnote 2:

> "The primary impact of adding individuals and entities to Treasury's Office of Foreign Assets Control (OFAC)'s List of Specially Designated Nationals and Blocked Persons ("the SDN List") is that their property and interests in property are blocked. When property is blocked (or "frozen"), title to the blocked property remains with the owner of the property and any funds constituting or arising from blocked property must be placed into a blocked, interest-bearing account at a U.S. financial institution. Blocking immediately imposes an across-the-board prohibition against transfers or dealings of any kind with regard to the property. The exercise of powers and privileges normally associated with ownership of blocked property is prohibited without authorization from OFAC."

6. 31 C.F.R. § 591.202 states:

"(a) Any transfer after the effective date that is in violation of any provision of this part or of any regulation, order, directive, ruling, instruction, or license issued pursuant to this part, and that involves any property or interest in property blocked pursuant to § 591.201, is null and void and shall not be the basis for the assertion or recognition of any interest in or right, remedy, power, or privilege with respect to such property or property interest.

> . . .

"(e) Unless licensed pursuant to this part, any attachment, judgment, decree, lien, execution, garnishment, or other judicial process is null

4

and void with respect to any property and interests in property blocked pursuant to § 591.201."

7.   31 C.F.R. § 591.201 states: "All transactions prohibited pursuant to Executive Order 13692 of March 8, 2015, or any further Executive orders issued pursuant to the national emergency declared in Executive Order 13692, are prohibited pursuant to this part."

8.   Executive Order 13850, by which these individuals and entities were placed on the SDN List, is one of a number of "further Executive orders issued pursuant to the national emergency declared in Executive Order 13692."

9.   The property noted at page 2 of "Judgment Creditor's *Ex Parte* Expedited Motion to Commence Proceedings Supplementary, to Implead Defendants, and for Issuance of Statutory Notices to Appear," as being sold in March 2021, was, to my knowledge and belief, sold pursuant to an OFAC license specifically allowing the transaction.

10.   As of this date, as OFAC's licensee I have neither taken nor approved to be taken, any transaction with regard to the other property held by the individuals and entities named by the plaintiff in the litigation in which this declaration is being filed.

11.   With approval of the Noticed Entities, I have engaged the law firm of Black Srebnick to represent the Noticed Entities in this matter and to assert the

factual and legal defenses set forth in the Response to the Judgment Creditor's *Ex Parte* Expedited Motion to Commence Proceedings Supplementary (the "Response"), served contemporaneously herewith, and which I hereby adopt.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 4, 2021

_____

D. E. Wilson, Jr. (D.C. Bar No. 932178)
Venable LLP
600 Massachusetts Ave., NW
Washington, DC  20001
(Phone) 202-344-4819
(Email) dewilson@venable.com

6