# EXHIBIT 22

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:21-mc-23103-BB

CASA EXPRESS CORP,
as Trustee of CASA EXPRESS TRUST,

      Judgment Creditor,

                                    JURY TRIAL DEMANDED

v.

BOLIVARIAN REPUBLIC OF
VENEZUELA,

                                   /

      Judgment Debtor.

_____

### RESPONDENTS' AFFIDAVIT IN RESPONSE TO [DE 63-71, 76] NOTICES TO APPEAR AND MEMORANDUM IN OPPOSITION TO [DE 60] JUDGMENT CREDITOR'S EXPEDITED MOTION TO COMMENCE PROCEEDINGS SUPPLEMENTARY, ETC.

Respectfully submitted,

BLACK SREBNICK
201 South Biscayne Blvd., Suite 1300
Miami, Florida 33131 / Tel: (305) 371-6421

By:    */s/ Howard Srebnick*
      Howard Srebnick
      Florida Bar No. 919063
      HSrebnick@RoyBlack.com

Respondents, Raul Gorrin, RIM Group Investments Corp., RIM Group Investments I Corp., RIM Group Investments II Corp., RIM Group Investments III Corp., Posh 8 Dynamic Inc., and Planet 2 Reaching Inc. ("Respondents"), oppose the Amended *Ex Parte* Motion to Commence Proceedings Supplementary (D.E. 60) ("Motion")[1] and respond to the Notices to Appear (D.E. 63-71, 76) filed by Judgment Creditor Casa Express Corp. ("Casa"). As detailed below, these proceedings should be dismissed. In support of this opposition, Respondents submit the affidavit of the Respondents, and of Edward D. Wilson (attached as Exhibit 1), which adopt the following memorandum of points and authorities. In addition, Respondent Raul Gorrin is filing a separate motion to quash for lack of service and personal jurisdiction.

## INTRODUCTION

Casa has obtained a judgment against Venezuela in the Southern District of New York as a result of unpaid Venezuelan bonds. That case is completely unrelated to the Respondents or their real property in Florida. Casa does not allege any cause of action directly against any of the Respondents or their eight targeted real properties. Instead, Casa claims that the Venezuelan government was harmed years ago from alleged manipulation of its foreign currency exchange contracts, and that Respondents benefitted from the manipulation in Venezuela. Thus, Casa purports to stand in the shoes of its litigation adversary and judgment debtor—the Republic of Venezuela—and endeavors to prosecute a constructive trust on behalf of Venezuela against Respondents' Florida realty.

Casa's claims against Respondents are barred, and should be dismissed, for the following reasons: (1) Casa's claims are barred by the Foreign Sovereign Immunities Act (the "FSIA"), which establishes a judicial presumption of foreign sovereign immunity from both suit and attachment. *See* 28 U.S.C. §§ 1604, 1609 (immunity from attachment and execution); *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989); *Vera v. Banco Bilbao Vizcaya Argenteria, S.A.*, 946 F.3d 120, 133 (2d Cir. 2019); (2) Under the applicable federal regulations, this judicial process is null and void because the subject property is blocked by OFAC, under OFAC license, and Casa has no OFAC license; (3) Because Casa's theory is that Venezuela

---

[1] The original Motion was filed as D.E. 3. This Court has since characterized D.E. 3 as the equivalent of a complaint for service purposes. *Casa Express Corp. v. Bolivarian Republic of Venezuela*, 2021 WL 539721 (S. D. Fla. Nov. 17, 2021). After Magistrate Judge Otazo-Reyes granted leave (D.E. 59), Casa filed an amended Motion, docketed at D.E. 60. *Casa Express Corp. v. Bolivarian Republic of Venezuela*, 2022 WL 17342205 (S. D. Fla. Nov. 30, 2022).

was complicit in the money exchange scheme that took place in Venezuela, the act of state doctrine bars a United States court from questioning the sovereign's act and precludes Casa's claims against Respondents. *See Mezerhane v. Republica Bolivariana de Venezuela*, 785 F.3d 545, 552 (11th Cir. 2015); *Glen v. Club Mediterranee S.A.*, 365 F. Supp. 2d 1263, 1271 (S.D. Fla. 2005), *aff'd*, 450 F.3d 1251 (11th Cir. 2006). The doctrine operates as an issue preclusive device, foreclosing judicial inquiry into the validity or propriety of such sovereign acts in litigation between any set of parties; (4) Casa lacks constitutional, prudential, direct, or *jus tertii* standing to bring suit on Venezuela's behalf, which deprives this Court of jurisdiction. Venezuela has never authorized Casa to assert any claims on its behalf. In effect, Casa asserts unauthorized claims on Venezuela's behalf, so that it can then permanently deprive Venezuela of any interest it might have in such claims; (5) Casa has failed to allege a viable constructive trust remedy because Venezuela has adequate remedies at law, and Casa otherwise has failed to allege the elements necessary for a constructive trust; (6) Casa has failed to join Venezuela, an indispensable party, in this action; (7) this Court lacks personal jurisdiction over Respondents due to Casa's failure of adequate service and the lack of connexity between Gorrin and this forum; (8) Casa has not satisfied the applicable requirements under Fla. Stat. § 56.29(1) of first obtaining a writ of execution and filing an affidavit attesting that the writ is unsatisfied; (9) this Court lacks ancillary jurisdiction over this action; (10) the Judgment against Venezuela is void for lack of proper service; and (11) Casa cannot prevail under its constructive trust theory and Respondents are entitled to a jury trial under Florida's supplementary laws.

## ARGUMENT

### 1. The Property is Immune from Attachment and Execution Under the FSIA.

Casa invokes the FSIA (D.E. 60, at 1), but fails to establish jurisdiction under it, either to sue for or against Venezuela or to seek execution on Venezuela's behalf under a constructive trust theory. Not only is Casa's constructive trust theory legally erroneous, but it does not survive the sovereign immunity applicable to Venezuela's assets in the United States under 28 U.S.C. § 1601, *et seq*.

Under the FSIA, sovereign governments and their property in the United States are immune from both suit and attachment. *See* 28 U.S.C. §§ 1604 (suit), 1609 (attachment); *Argentine*

*Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 433–34 (1989) (immunity from suit).[2] Absent an exception, a court lacks subject matter jurisdiction over a foreign sovereign and the attachment or execution upon its noncommercial property within the United States. *See* 28 U.S.C. §§ 1610(a); *Walters v. Industrial and Commercial Bank of China, Ltd*., 651 F.3d 280, 288–89 (2d Cir. 2011).

The FSIA protections against attachment and execution are broader than those against suit because "at the time the FSIA was passed, the international community viewed execution against a foreign state's property as a greater affront to its sovereignty than merely permitting jurisdiction over the merits of an action." *Walters*, 651 F.2d at 288 (quoting *Connecticut Bank of Commerce v. Republic of Congo,* 309 F.3d 240, 255–56 (5th Cir. 2002)); *see also Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1178 (11th Cir. 2011). These protections against execution upon sovereign property are applicable when the property of third parties is sought to satisfy a judgment against a foreign state. *Walters*, 651 F.3d at 290 (citing cases). Furthermore, there is no standing requirement for raising the FSIA immunity of sovereigns—a court must raise this issue on its own. *Vera*, 946 F.3d at 135 ("even if no party raises the issue, courts have an obligation to consider subject matter jurisdiction *sua sponte*").[3]

Here, Casa seeks to execute upon Respondent's noncommercial real properties within the United States that it claims belong to Venezuela under an alleged constructive trust. D.E. 60 at 2, 16. Casa admits that "in a case against a foreign sovereign, the court must 'determine whether the property in question falls within one of the statutory exceptions to foreign immunity' prior to issuance of a writ of execution." D.E. 60 at 29 (quoting *Connecticut Bank*, 309 F.3d at 247). Casa cannot satisfy any immunity exception. Casa attempts to rely upon the exception applicable to "property in the United States of a foreign state, as defined in section 1603(a) of this chapter, *used*

---

[2] The FSIA provides that foreign states "shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C. § 1604. *See Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993).

[3] A foreign sovereign need not be in possession of the sovereign property for immunity to exist: "An examination of the FSIA reveals no possession requirement exists in any part of the statute." *See Odyssey Marine*, 657 F.3d at 1178–79. "When Congress determined 'the exact degree [] and character' of subject matter jurisdiction over the property of foreign sovereigns under the FSIA, it did not provide an exception to immunity for property not in a foreign sovereign's possession." *Id.*

*for a commercial activity* in the United States." 28 U.S.C. § 1610 (emphasis added); D.E. 60, at 13. The properties at issue do not belong to Venezuela, but even if they did, they have not been used for commercial activity by Venezuela. *Export-Import Bank of the Republic of China v. Grenada*, 768 F.3d 75, 90 (2d Cir. 2014) (government must actively use property commercially).

Casa's own constructive trust theory confirms Casa's belief that the properties do not belong to Venezuela. Moreover, Casa acknowledges that the properties are blocked by the Treasury Department because they are privately owned by Venezuelans designated under the Venezuela Sanctions Regulations. D.E. 42-1, at 20-25(¶ 1b).[4] Thus, the federal government does not consider them to be Venezuela's property, but instead is blocking them to increase the federal government's influence over their owners. This OFAC regulation and role is confirmed by the specific OFAC license issued to Ed Wilson to manage the properties. *See* Exhibit 1 (attaching license). Further evidence that the properties do not belong to Venezuela is provided by their classification as "substitute" assets in the Gorrin superseding indictment regarding the Venezuelan currency program, which if true, would make them "other property of the defendant," not of Venezuela. *Id.* at 10; 21 U.S.C. § 853(p)(2). *See* D.E. 42-13 (superseding indictment).[5]

Even if the Court assumed that the properties belong to Venezuela, they would still be immune from execution because they have not been used for commercial activity by Venezuela. Casa makes no claim that *Venezuela* uses the properties for commercial purposes and instead alleges that the "real properties at issue were **purchased by private citizens** (through shell companies) **for the benefit of private citizens**." D.E. 60 at 26 (emphasis in the original). While Casa alleges that Gorrin rented the properties for cashflow and listed them for sale (D.E. 60 at 11), this confirms that the properties were not being commercially used by Venezuela. "What matters under the statute is what the property is 'used for,' not how it was generated or produced."

---

[4]  The designation of individuals, including government officials, does not block Venezuelan government assets.  OFAC FAQ 505 ("The designation of an official of the Government of Venezuela does not mean that the government itself is also blocked.  The prohibitions apply to transactions or dealings only with the individuals and entities whose property and interest in property are blocked.").

[5] Casa mistakenly asserts that this "substitute" asset forfeiture classification (pursuant to 21 U.S.C. § 853(p)) means that properties are derived from the offense.  It legally means the opposite-- that the properties are the legitimate "other property of the defendant." *See Honeycutt v. United States*, 581 U.S. 443, 452 (2017) (construing substitute asset forfeiture as limited to property untainted by offense).

*Connecticut Bank*, 309 F.3d at 251. "[E]ven if a foreign state's property has been generated by commercial activity in the United States, that property is not thereby subject to execution or attachment if it is not 'used for' a commercial activity within our borders." *Id.* Finally, any alleged commercial activity in Venezuela does not satisfy the FSIA because it is activity in Venezuela and has no direct effect on the United States. *Aldossari v. Ripp*, 49 F.4th 236, 254 (3d Cir. 2022) (contract transactions abroad not commercial activity).

Casa next claims that Venezuela has waived its sovereign immunity by virtue of certain language in documents relating to the underlying debt securities. D.E. 60 at 12-13, 26 (citing Fiscal Agency Agreements). But the purported contractual waiver of sovereign immunity does not expand the property subject to attachment beyond: (i) property in the United States; (ii) used for commercial purposes. *See Connecticut Bank*, 309 F.3d at 254 ("The statute means what it says: property of a foreign sovereign, unlike property belonging to a mere agency or instrumentality, may be executed against only if it is 'used for' a commercial activity."). "Even when a foreign state completely waives its immunity from execution, courts in the U.S. may execute only against property that meets these two statutory criteria." *Id.* at 247; *accord Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120, 130 (2d Cir. 2009); *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 481 n.19 (2d Cir. 2007); *LNC Inv., Inc. v. Republic of Nicaragua*, 96 CIV. 6360 JFK, 2000 WL 745550, at *1–4 (S.D.N.Y. June 8, 2000).

**2. Judicial Process Related to Blocked and Licensed Assets is Null and Void.**

Separate from FSIA immunity, the subject properties are, by Casa's own admission, blocked and licensed by the Treasury Department's Office of Foreign Asset Control ("OFAC"). D.E. 3; D.E. 60 at 2, 9; D.E. 42-1 at 1. This blocking was undertaken under statutory authority[6] and the implementing Venezuela Sanctions Regulations, 31 C.F.R. Part 591.

Under the applicable federal regulations, "[a]ny attachment, judgment, decree, lien, execution, garnishment, *or other judicial process* is null and void with respect to any property and interests in property blocked pursuant to § 591.201" absent an OFAC license. 31 C.F.R. § 591.202(e) (emphasis added). The term "judicial process" includes the "FSIA's specific provisions

---

[6] The regulations affecting Venezuela identify the statutory source of their authority as the International Emergency Economic Powers Act, 50 U.S.C. 1701 *et seq*. ("IEEPA"), and the National Emergencies Act (50 U.S.C. 1601 *et seq*.) ("NEA"). 80 Fed. Reg. 39676, 2015 WL 41244537 (July 10, 2015).

for service of foreign states, answer, default, summons, counterclaims, and property attachment—the mechanics of litigating a case against a foreign state to which the IOIA'a immunity from judicial process refers." *Rodriguez v. Pan American Health Organization*, 2020 WL 1666757, *5 n.6 (S.D. Fla. April 3, 2020). Moreover, "any transfer … in violation of any regulation, order, directive, ruling, instruction or license issued pursuant to this part, and that involves any property or interest in property blocked pursuant to § 591.201, *is null and void and shall not be the basis for the assertion or recognition of any interest in or right, remedy, power, or privilege with respect to such property or property interest.*" 31 C.F.R. § 591.202(a) (emphasis added).[7] Lastly, "the entry into a settlement agreement or the enforcement of any … judgment … through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to § 591.201, as referenced in § 591.506(c), is prohibited unless authorized pursuant to a specific license issued by OFAC pursuant to this part." 31 C.F.R. § 591.407.

In derogation of the applicable regulations, Casa's motion is a self-identified request for judicial process under Fla. Stat. § 56.29 seeking to execute on these blocked assets by asking this Court to transfer the blocked property from Respondents to Venezuela, and from Venezuela to Casa. Because the assets are blocked and licensed by OFAC, neither leg of this journey is legal.

There is no dispute that the eight properties at issue are both blocked by the Treasury Department pursuant to Executive Order 13850 and are subject to a specific OFAC license issued to Edward Wilson, the *only* OFAC-approved licensee of the properties. *See* Exhibit 1. Undersigned counsel are authorized to represent and defend Respondents' ownership interests in the properties pursuant to this license. *See id.*

Moreover, Casa admits that it has not obtained any OFAC license D.E. 60, at 2 n.1, and that its license application has been denied by OFAC. D.E. 54-2; *See, e.g., Versilia Supply Service SRL v. M/Y Waku,* 371 F. Supp. 3d 143 (S.D. Fla. 2019) ("Plaintiffs do not dispute that the Vessel

---

[7] Transfer is expansively defined under 31 C.F.R. § 591.310 as including "any actual or purported act or transaction, whether or not evidenced by writing, and whether or not done or performed within the United States, the purpose, intent, or effect of which is to create, surrender, release, convey, transfer, or alter, directly or indirectly, any right, remedy, power, privilege, or interest with respect to any property." It specifically includes "the issuance, docketing, or filing of, or levy of or under, any judgment, decree, attachment, injunction, execution, or other judicial or administrative process or order, or the service of any garnishment." *Id*.

7

is blocked property under the Kingpin Act and that they have failed to obtain a license from the OFAC to execute against the Vessel. That ends the inquiry."); *Martinez v. Cuba*, 2011 2011 WL 13115471, at *1 (S.D. Fla. Aug. 26, 2011) (vacating execution upon judgment; "Since Plaintiff does not have the required license from the United States Department of Treasury's Office of Foreign Asset Control, the writs of garnishment are null and void.").

Casa's argument that it does not need a license to litigate its claims now is unresponsive to the existing specific license barring any transfer. Casa generally argues that OFAC might later issue it a retroactive license. D.E. 50, at 9 (citing 31 C.F.R. § 591.202(c)). But Casa's hope does not relieve the Court from finding that today Casa is prohibited by the existing regulations and specific license. Second, Plaintiff errs in suggesting that OFAC can change its position during this litigation. Under OFAC's own regulation, 31 C.F.R. § 536.402, any modifications to orders, regulations, or licenses are inapplicable to pending civil proceedings. Modifications have only prospective effect on future proceedings, and that is how the Eleventh Circuit has construed this OFAC regulation. *Stansell v. FARC*, 771 F.3d 714, 733 (11th Cir. 2014). At all times in this case, the sole OFAC license is that issued to Mr. Wilson. Therefore, this "judicial process" is "null and void" under the Venezuelan Sanction Regulations.

### 3. Casa's Claims Against Respondents are Barred by the Act of State Doctrine.

Casa demands that this Court address the validity of the sovereign acts of Venezuela in seeking a loan, setting the terms for its repayment, and accepting repayment. The act of state doctrine bars suit when "the relief sought or the defense interposed would have required a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp. Int'l*, 493 U.S. 400, 405 (1990). The official acts underlying the terms and performance of Venezuela's foreign exchange transactions taking place within Venezuela are the acts of a sovereign government. Indeed, Casa's entire thesis—that Venezuela has a claim arising out of its currency transactions with Gorrin—confirms that these are acts of a sovereign government.

The Act of State doctrine is a judicial limitation on the right to sue. *United States v. Noriega*, 746 F. Supp. 1506, 1521 (S.D. Fla. 1990) (Hoeveler, J.), *aff'd on other grounds*, 117 F.3d 1206 (11th Cir. 1997). "It is a doctrine of judicial restraint that prohibits a United States court from passing judgment on the validity of an act of a foreign sovereign taken within its own territory." *Club Mediterranee*, 365 F. Supp. 2d at 1267 (citing *inter alia Banco Nacional de Cuba v.*

*Sabbatino*, 376 U.S. 398, 401 (1964) ("The act of state doctrine in its traditional formulation precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory"). "<u>The doctrine</u> does not simply relieve the foreign government of liability for its acts, but <u>operates as an issue preclusive device,</u> <u>foreclosing judicial inquiry into the validity or *propriety* of such acts in litigation between any set</u> <u>of parties</u>." *Id.* at 1271 (quoting *Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1380 (5th Cir. 1980)) (emphasis added). "Every sovereign state is bound to respect the independence of every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory." *Mezerhane*, 785 F.3d at 552.

In the underlying currency exchange, the transactions flowed through and were effectuated by the Venezuelan government. *See generally* D.E. 60 at ¶¶ 5-12. "[B]ecause in this case a foreign plaintiff is protesting a taking by a foreign sovereign that took place outside of the United States, the act of state doctrine bars a U.S. court from questioning the sovereign's act." *Mezerhane*, 785 F.3d at 552. "Consequently, [Movant's unjust enrichment and constructive trust] claims would be foreclosed under this doctrine, since they would require this court to make a determination of their rights in the wake of the sovereign acts of the [Venezuelan] government." *Club Mediterranee*, 365 F. Supp. 2d at 1271. The Act of State doctrine bars this Court from providing civil redress for the acts of Venezuela and its officials, conducted in Venezuelan territory.

**4. Casa Lacks Standing to Sue on Venezuela's Behalf.**

Casa lacks constitutional, prudential, direct, or *jus tertii* standing to bring suit on Venezuela's behalf, which deprives this Court of jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).

**a. Casa Lacks Constitutional Standing.**

Casa cannot establish Article III standing, requiring dismissal for lack of jurisdiction. Article III of the Constitution limits the jurisdiction of federal courts to 'cases' and 'controversies,' and "[s]tanding to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016)). To establish Article III standing, a "plaintiff must show (1) it has suffered an injury in fact (2) that is fairly traceable to the challenged conduct of the defendant and (3) likely to be redressed by a decision in the plaintiff's favor." *Id.. Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (*en banc*). *See Lexmark Int'l v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014); ("From Article

III's limitation of the judicial power to resolving 'cases' and 'controversies,' and the separation-of-powers principles underlying that limitation, we have deduced a set of requirements that together make up the 'irreducible constitutional minimum of standing.'") (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

Casa cannot satisfy any of the three necessary elements of constitutional standing: (i) injury in fact; (ii) causation; and (iii) redressability. *Id.*; *Accord Guiffre v. Edwards,* 226 So. 3d 1034, 1039 (Fla. 4th DCA 2017) (same under Florida law). The injury element requires proof of a "concrete, particularized, and actual or imminent" injury. *Muransky*, 979 F.3d at 924. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 578 U.S. at 339. (quoting *Lujan*, 504 U.S. at 560 n.1). Here, Casa does not allege that Respondents are in any way responsible for its underlying judgment or the bond transactions upon which it is seeking execution. Rather, Casa attempts to assert a constructive trust against Respondents' properties on behalf of Venezuela due to alleged foreign exchange transactions. But Casa does not even claim to have been a participant in, or victim of, those transactions. Therefore, Casa fails to establish that it personally suffered any particularized or concrete injury in fact as a result of any alleged conduct of the Respondents.

To satisfy the causation element, "the named plaintiffs must allege that their injuries are 'connect[ed] with the conduct of which [they] complain.'" *Reprod. Health Servs.*, 3 F.4th at 1252 (quoting *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1125 (11th Cir. 2019)). Here, there is no causal connection between the bond dispute giving rise to the underlying judgment and the foreign exchange transactions Casa seeks to have adjudicated herein.

Finally, Casa lacks standing because its claim is not redressable by this Court. Specifically, the obstacles to the requested remedy of a constructive trust upon the realty include: (i) the realty is immune from attachment under the FSIA, 28 U.S.C. § 1609; (ii) the assets are blocked and licensed under IEEPA and the VSRs; (iii) the act of state doctrine precludes relief invalidating the acts of a sovereign, here, Venezuela; and (iv) a constructive trust is unavailable absent proof that Venezuela lacks a remedy at law.

### b. Casa Lacks Direct Standing.

In Florida, a "litigant must demonstrate that he or she has standing to invoke the power of the court to determine the merits of an issue." *Guiffre v. Edwards*, 226 So. 3d 1034, 1038 (Fla. 3d DCA 2017). "The interest cannot be conjectural or merely hypothetical[,]" *id.*, nor can it be

"indirect, inconsequential, or contingent.'" *Id*. (quoting *Sweetwater Country Club Homeowners' Ass'n v. Huskey Co.*, 613 So.2d 936, 939 (Fla. 5th DCA 1993). Florida also adheres to the common law principle that a plaintiff must have a cognizable interest in the claim throughout the suit. *Timko v. Triarsi*, 898 So. 2d 89, 92 (Fla. 5th DCA 2005) (sale of shares during suit deprives shareholder of standing to sue for corporation). Casa lacks standing based upon its hypothetical contingent interest in the outcome of a constructive trust proceeding that can only be brought by Venezuela and that may never occur, much less yield any result.[8]

Even assuming that Casa sufficiently alleges that Venezuela was a victim of its own currency exchange transactions (authorized by its National Treasurer), Venezuela is the only injured party, and therefore the only equitable owner of any alleged proceeds.[9] As a mere judgment creditor of Venezuela with no interest in any equitable ownership that may belong to Venezuela in the proceeds of the currency exchange transactions, Casa lacks standing to pursue a constructive trust on Venezuela's behalf. Standing to seek a constructive trust is limited to the alleged equitable owner of the identified res (the disputed property), which Casa claims is Venezuela here. *See Crawley-Kitzman*, 2021 WL 2559091, *4 (dismissing constructive trust claim predicated upon third party misrepresentations to plaintiff); *Steinhardt*, 445 So. 2d 352. *Accord In re Advent Management Corp.*, 104 F.3d at 295 (applying California law).

Moreover, Casa lacks standing for lack of tracing between it and the property. Casa has not claimed, nor could it, that its alleged bond claims or federal judgment, can be traced to an alleged irregularity in government currency exchanges in Venezuela. The closest Casa comes to tracing is to quote two cases approving proof of tracing "directly or indirectly" "in favor of Venezuela." D.E. 60, at 24. No claim of tracing is made as to Respondents' properties and the underlying bonds upon which Movant obtained a judgment. Without such tracing, Casa's claim fails.

---

[8] Indeed, any such contingent constructive trust claim would face an unclean hands defense based upon the contention, alleged by the United States government, that Venezuela is complicit in the underlying misconduct. *See, e.g*, *United States v. Andrade*, No. 17-cr-80242-RLR, Doc. #27, at 6 (S.D. Fla. July 27, 2018) (Government's Memorandum).

[9] Unjust enrichment is an element of a constructive trust remedy. *See Castetter*, 113 So. 2d at 155. Yet unjust enrichment requires that Plaintiff have conferred a benefit on the unjustly enriched party. *See Extraordinary Title Services, LLC v. Florida Power & Light Co.*, 1 So. 3d 400, 404 (Fla. 3d DCA 2009). There is no allegation that Casa Express conferred any benefit on Respondents.

### c. Casa Lacks *Jus Tertii* Standing

Suing to vindicate the rights of third parties is prohibited, subject to rare exceptions inapplicable here. *See Singleton v. Wulff*, 428 U.S. 106, 113-14 (1976). Courts consider two factors in determining whether to permit *jus tertii* standing: (i) whether the identity of interests between the injured party and its alleged representative makes one "as effective a proponent of the right as the latter;" and (ii) "the ability of the third party to assert his own right." *Id.* at 115. Here, both factors militate against third-party standing. Casa is in litigation conflict with Venezuela, precluding an identity of interests between them in this case. Second, Venezuela is capable of asserting its own interests as to its foreign exchange transactions within its borders. In particular, whether and how Venezuela asserts its own litigation interests is consigned to it as a sovereign.

### 5. Casa has Failed to Allege a Viable Constructive Trust Remedy.

Even assuming that Casa can seek a constructive trust remedy for Venezuela, it would fail both for lack of equitable jurisdiction and failure to state a remedy. Initially, "constructive trusts are inherently equitable in nature and that equitable relief is available only in the absence of an adequate remedy at law." *Mitsubishi Int'l v. Cardinal Textile Sales, Inc*., 14 F.3d 1507,1518 (11th Cir. 1994) ("Cases in which the remedy sought is the recovery of money (whether as collection on a debt or as damages) do not fall within the jurisdiction of equity, and the imposition of a constructive trust generally will not be the appropriate remedy.") (citation omitted). Venezuela has numerous legal remedies available against Respondents, including those of a sovereign in Venezuela, and those of a litigant in the United States. The Amended Motion does not even allege that Venezuela lacks an adequate remedy at law, taking this case out of jurisdiction of equity.

The Amended Motion alleges that "Diaz and Andrade directly and proximately caused damages to Venezuela." D.E. 60, at ¶22. By Casa's own admission, therefore, Venezuela already has an adequate remedy at law—a suit for damages. *United States Fire Insurance Co. v. Finemark National Bank & Trust,* 2023 WL 145103, \*2 (M.D. Fl. Jan. 10, 2023) (dismissing constructive trust claim because adequate remedy at law); *Lezer Corp. v. Noble Partners, LLC*, 2020 WL 6264724, \*3 (S.D. Fla. Oct. 5, 2020) (citing *Mitsubishi*, rejecting preliminary injunction to support constructive trust for return of money), *adopted*, 2020 WL 6263055 (S.D. Fla. Oct. 23, 2020). And while the Amended Motion does not plead specific legal claims of Venezuela, it does offer conclusory allegations that are wholly consistent with potential legal claims for damages, including

"unjust enrichment,"[10] (D.E. 60, at 15, ¶ 15), and breach of fiduciary duties or trust. *Id*. at ¶ 15, 16.

Second, while the Amended Motion acknowledges the four elements necessary for a constructive trust (D.E. 60, at 14), (citing requirements of a promise, transfer of property in reliance, a confidential relationship, and unjust enrichment), it completely fails to allege any of these elements as to the Respondents. The only "promise" identified is a vague promise of two Venezuelan officials to manage the Venezuelan Treasury (D.E. 60, at 14). The Amended Motion fails to allege either that the Respondents promised anything to Venezuela, or that anything was transferred in reliance upon such a promise.

Further, Casa cites no "confidential relationship" between it and Respondents, or for that matter between Respondents and Venezuela. The absence of a confidential relationship requires dismissal. *See Does 1-254 v. Chiquita Brands Inc.*, 2020 WL 6786734, *2 (S. D. Fla. Sept. 8, 2020) (dismissing constructive trust claim for lack of confidential relationship among judgment creditors; "The elements of constructive trust under Florida law consist of a confidential relationship by which one acquires an advantage he should not, in equity and good conscience, retain."), *aff'd*, 2021 WL 4204808 (11th Cir. Sept. 21, 2021). There is no relationship alleged between Casa Express and the Respondents, no property being transferred in reliance upon a confidential relationship, and no unjust enrichment obtained by Respondents from Movant. *See Crawley-Kitman*, 2021 WL 2559091, *4 (dismissing constructive trust claim in absence of promise, resulting transfer, between plaintiff and defendants). Nor is there any confidential relationship alleged between Respondents and Venezuela.

The final element—the quasi-contractual claim of unjust enrichment—is not present if a contract exists regarding the subject matter. *Alhassid v. Bank of America, N.A.*, 60 F.Supp.3d 1302, 1322 (S.D. Fla. 2014). Here, the Amended Motion claims that the unjust enrichment flows from government currency exchange contracts between Venezuela and brokerage firms, some of which were associated with Gorrin.

Furthermore, Florida conditions jurisdiction to enforce a constructive trust upon having jurisdiction over the property owner—here Venezuela. *Abdo*, 284 So.3d at 1103 (citing *Humphrey*

---

[10] Unjust enrichment is a legal claim for damages. *Hughes v. Preiderock Capital Partners, LLC*, 2019 WL 771801, *2 (S.D. Fla. Feb. 21, 2019) (citing *M.I. Industries USA Inc. v. Attorneys' Title Insurance Fund, Inc*., 6 So.3d 627, 629 (Fla 4th DCA 2009).

*v. Deutsche Bank Nat'l Tr. Co.*, 113 So. 3d 1019, 1020 (Fla. 2d DCA 2013)). For the reasons previously explained, Casa Express has not secured this Court's jurisdiction over Venezuela, and it is immune from attachment as to the realty under the FSIA. *See* 28 U.S.C. § 1609(a) (exempting from execution immunity only "the property in the United States of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States.").

**6. The Motion Should Be Dismissed for Failure to Join an Indispensable Party.**

The Motion seeks to "implead" "parties holding title to the aforementioned properties," none of which are Venezuela. D.E. 60, at 1-2. Casa plans to join Venezuela into this case, but it has not. Even if does, Venezuela's FSIA immunity from attachment will bar the relief requested.

Despite this, Casa seeks to litigate the rights and interests of Venezuela as to its domestic transactions in order to execute upon property in the United States that is immune from execution under the FSIA. 28 U.S.C. § 1609. Under these circumstances, Venezuela is an indispensable party and Casa's failure to join it requires dismissal under Fed. R. Civ. P. 19. *See Dawavendewa v. Salt River Project Agr. Imp. and Power Dist.*, 276 F.3d 1150, 1162 (9th Cir. 2002) (tribe with legal interest in lease at issue was indispensable party, and its' sovereign immunity required dismissal); *GMI, LLC v. Asociacion del Futbol Argentino*, 193 So. 3d 60, 62–63 (Fla. 3d DCA 2016) (affirming dismissal of suit because Argentina was an indispensable party in dispute arising from contract with Argentine government subject to FSIA). Rule 19(b) lists four factors:

> (1) the extent to which a judgment rendered in [Venezuela's] absence might prejudice [Venezuela] or the other parties; (2) "the extent to which any prejudice could be lessened or avoided by" "protective provisions in the judgment," "shaping the relief," or "other measures"; (3) whether a judgment rendered in [Venezuela's] absence would be adequate; and (4) whether [the Movant] would have an adequate remedy if we dismissed the entire case.

*Florida Wildlife Fed'n, Inc. v. United States Army Corps of Engineers*, 859 F.3d 1306, 1317 (11th Cir. 2017) (quoting Rule 19(b), bracketed parties changed). In *Florida Wildlife Federation*, the Eleventh Circuit placed heavy weight on the fact that the absent party (a State of Florida's Water District), had its own sovereign interests, reflected by its sovereign immunity. 859 F.3d at 1318. In particular, the Eleventh Circuit relied upon the Supreme Court's opinion in *Republic of Phillipines v. Pimental*, 553 U.S. 851 (2008), addressing victim claims against the assets of former president Ferdinand Marco, and holding that the Philippine state parties were indispensable. As

14

the Eleventh Circuit explained: "Indeed, the *Pimentel* Court's sovereign-immunity analysis leaves little room for any other conclusion here:"

> A case may not proceed when a required-entity sovereign is not amenable to suit . . . [W]here sovereign immunity is asserted, and the claims of the sovereign are not frivolous, dismissal of the action must be ordered where there is a potential for injury to the interests of the absent sovereign.

*Florida Wildlife Fed'n*, 859 F.3d at 1320 (quoting *Pimentel*, 553 U.S. at 867).

### 7. The Court Lacks Personal Jurisdiction Over Respondents for Failure of Service on Gorrin and Lack of Connexity.

Under Florida law, properly serving the Respondents to implead them into supplemental proceeding is necessary to acquire personal jurisdiction over them. *Jackson-Platts v. General Electric Capital Corp.*, 727 F. 3d 1127, 1138 (11th Cir. 2013); *General Electric Capital v. Shattuck*, 132 So. 3d 908, 914 (Fla. 2d DCA 2014); *see also Biel Reo, LLC v. Barefoot Cottages Dev. Co., LLC*, 156 So. 3d 506, 509 (Fla. 1st DCA 2014). As to Gorrin, Casa claims to have effected substitute service upon the Secretary of State on September 8, 2022 for Raul Gorrin. D.E. 84-1. Service upon an individual residing abroad must comply with Fed. R. Civ. P. 4(f). Under Rule 4(f), however, service upon a resident of Venezuela must comply with the Hague Service Convention, which is also the law of Florida. Fla. Stat. § 48.194(1); *Isaac Industries, Inc. v. Petroquimica de Venezuela*, 2022 WL 820376, *5 (S.D. Fla. March 1, 2022), *adopted*, 2022 WL 1203004 (S.D. Fla. April 22, 2022); *Osio v. Maduro Moros*, 2021 WL 1564359, *3 (S.D. Fl. April 21, 2021).

Casa apparently believes that serving the Secretary of State constitutes adequate service under Fla. Stat. § 48.161(1). Under that provision, substitute service upon the Secretary is authorized if an individual "has appointed or is deemed to have appointed the Secretary of State as such party's agent for service of process." *Id*. No such agency appointment has been made or deemed for Gorrin. Moreover, substitute service upon the Secretary is only permitted "when authorized by law," *id*., and the Hague Service Convention does not authorize this method of service upon Venezuelan residents. Indeed, Florida requires that "service of process . . . in a foreign country" be effected "[b]y any internationally agreed-upon means of service . . . such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters." Fla. Stat. § 48.197.

Furthermore, even if service had been accomplished, this Court would still lack personal jurisdiction. Florida law recognizes general and specific personal jurisdiction. *See, e.g., Thompson v. Carnival Corp.*, 174 F. Supp. 3d 1327, 1333 (S.D. Fla. 2016) (Moore, J.); *Ferenchak v. Zormati*, 572 F. Supp. 3d 1284, 1290 (S.D. Fla. 2021). Plaintiff bears the burden of proving personal jurisdiction. *See Thompson*, 174 F. Supp. 3d at 1333; *Brown v. Carnival Corp.*, 202 F.Supp.3d 1332, 1342 (S.D. Fla. 2016).

General jurisdiction typically requires that *an individual be a resident, Ferenchak*, at 1291 (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)), or a corporation be "at home" in the forum state, which is typically limited to its place of incorporation or principal place of business. *Thompson*, at 1334; *Brown*, 202 F. Supp. 3d at 1344; *Leibovitch v. Iran*, 188 F.Supp.3d 734, 746 (N.D. Ill. 2016). Here, general jurisdiction is absent as to Gorrin because he is a resident of Venezuela; the entities are not incorporated in Florida.

Specific jurisdiction over a defendant is available "only 'if the claim asserted against the defendant arises from the defendant's contacts with Florida, and those contacts fall within one of the enumerated categories set forth in [Fla. Stat.] section 48.193(1)(a).'" *Wertheim Jewish Education Trust, LLC v. Deutsche Bank AG*, 2017 WL 6313939, *7 (S.D. Fla. Dec. 6, 2017) (quoting *Thompson, at* 1333). Exercising specific jurisdiction under Florida law requires proof of "a connection or 'connexity' between the enumerated activity in Florida and the cause of action." *Knepfle v. J-Tech Corp.*, 48 F.4th 1282, (11th Cir. 2022). Casa has not identified any statutorily enumerated acts within Florida by Gorrin or the entities (Fla. Stat. § 48.193(a)(1)-(9)) and has not identified any connection between any such Florida contacts and its claims regarding Venezuela. *See D-I Davit Int'l-Hische GMBH v. Carpio*, 346 So. 3d 197, 201 (Fla. 3d DCA 2022) (the "purported connexity to Florida must relate to the actual tort alleged').

**8. Casa Has Not Satisfied the Florida Statutory Requirements for Filing its Motion.**

Casa invokes Fla. Stat. § 56.29(1) as the basis for filing its motion seeking to commence this action. However, Casa has failed to comply with the statutory requirement of first obtaining a writ of execution and filing an affidavit attesting that the writ is unsatisfied. Casa argues it does not have to comply with this the statutory obligation it was repealed in 2005 by an amendment to section 56.29(1). D.E. 60, at 28 As far as Respondents can tell, the most recent version of Fla. Stat. 56.29 was enacted on July 1, 2016. *See* 2016 Fla. Sess. Law Serv. Ch. 2016-33 (C.S.S.B. 1042). The current version of Fla. Stat. 56.29(1) requires an "affidavit" stating *inter alia* "the unsatisfied

16

amount of the judgment or judgment lien, including accrued costs and interest, and stating that the <u>execution</u> is valid and outstanding." Casa acknowledged that this requirement was recently enforced by this Court. D.E. 60, at 28 (citing *Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC*, 2020 WL 3146502 (S.D. Fla. Jun. 11, 2020)). In turn, the *Versant* opinion cited, and followed, this Court's holding in *Floridians for Solar Choice, Inc. v. PCI Consultants, Inc.*, 2019 WL 2297524, *1 (S.D. Fla. May 30, 2019) (Bloom, J.) ("A party bringing a proceeding supplementary to execution must 1) show that he or she possesses an unsatisfied writ of execution, and 2) file an affidavit averring that the writ is valid and unsatisfied."). Therefore, Casa's Motion should be dismissed for failure to comply with the statute's requirements.

**9.   This Court Lacks Ancillary Jurisdiction Over This Action.**

Under the rule set forth by the Supreme Court in *Peacock v. Thomas*, 516 U.S. 349 (1996), a subsequent lawsuit filed by a judgment creditor seeking to impose the judgment on a different party under different theories, must be supported by an independent basis for federal subject matter jurisdiction. That is because federal courts do not possess ancillary jurisdiction over new actions in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment. *Id*.

Here, Casa initiated this separate action in an attempt to hold Respondents liable for a judgment it obtained against Venezuela in the Southern District of New York for unpaid Venezuelan bonds under a theory pertaining to totally unrelated conduct. Because such an action is barred under *Peacock*, this action should be dismissed.

**10.  The Judgment Against Venezuela is Void for Lack of Proper Service.**

If Casa's underlying judgment is void under the FSIA, then it cannot execute upon it. *Vera v.* 946 F.3d at 319. The Supreme Court has strictly enforced the FSIA service requirements of 28 U.S.C. § 1608(a). *Republic of Sudan v. Harrison*, 139 S. Ct. 1048 (2019). Here, the only mode of service by Casa upon Venezuela in the underlying action appears to be service upon an embassy official, which is not valid. *Id.; Howe v. Embassy of Italy*, 68 F.Supp.3d 26 (D.D.C. 2014). Judgments entered against foreign states without compliance with § 1608(a) are void. *Kumar v. Sudan*, 880 F.3d 144, 160 (4th Cir. 2018).

**11.  Casa Cannot Prove a Constructive Trust.**

In addition to the insurmountable legal obstacles barring Casa from seeking or obtaining a constructive trust, it cannot prevail as a matter of evidence. In this regard, Respondents invoke

their jury trial rights and right to discovery as provided under Florida's supplementary laws. *Jackson-Platts v. General Electric Capital Corp.*, 727 F. 3d 1127, 1138 (11th Cir. 2013). More specifically, Raul Gorrin denies the allegations set forth in the superseding indictment, and denies the allegations made in the January 2019 Treasury Department Press Release. *See* Declaration of Raul Gorrin, *Caballero v. FARC*, 1:18-cv-25337-KMM (S. D. Fla. Nov. 14, 2022) at ECF No. 183-3 (attached hereto as Exhibit 2). Casa's expert disavows any opinion on the liability of any Respondent, D.E. 60-14, ¶ 5, leaving Respondents' denials uncontested. For avoidance of doubt, Respondents completely and totally deny any and all of the factual allegations against them in the Judgment Creditor's *Ex Parte* Expedited Motoin to Commence Proceedings Supplementary, to Implead Defendants, and for Issuance of Statutory Notices to Appear (D.E. 60) which Casa alleges make Respondents liable for Venezuela's debt. Those allegations are entirely denied.

## CONCLUSION

For the foregoing reasons, the Motion (D.E. 60) should be denied.

18

## <u>DECLARATION OF D.E. WILSON, JR. IN RESPONSE</u>
## <u>TO [DE 63-71] NOTICES TO APPEAR</u>

I, D. E. Wilson, Jr, Esquire, a partner in the Washington, D.C., law firm of Venable LLP, state the following based upon my personal knowledge:

1.  In 2019, the Office of Foreign Assets Control (OFAC) issued a specific License, VEN-EO13850-2019-359725-4, to Venable LLP, attn: D.E. Wilson, Jr. ("The Venable License," Ex.1).

2.  I currently hold the Venable License as "Licensee." See, Treasury Dep't, OFAC Regulations for the Financial Community, at 4 (Jan. 24, 2012).

3.  The Venable license covers the real estate that is the subject of Casa Express' Motion for a constructive trust. The Venable license is the only OFAC license covering this real estate. Under that license, I am authorized by OFAC to manage the properties, and to represent them in litigation. I have authorized counsel to defend the properties against the litigation claims of Casa Express.

4.  The licensed properties (the ones subject to Casa Express' Motion for a Constructive Trust) are owned by OFAC-designated persons, including Raul Gorrin, but are regulated by OFAC. None of the licensed properties is owned by the government of Venezuela. As OFAC explains in a Frequently Asked Question:

> **OFAC FAQ 505**. If an official of the Government of Venezuela is designated as a Specially Designated National (SDN), does that mean that the Government of Venezuela is blocked? What are the prohibitions on U.S. persons dealing with a designated government official?
>
> > No. The designation of an official of the Government of Venezuela does not mean that the government itself is also blocked. The prohibitions apply to transactions or dealings only

with the individuals and entities whose property and interests in
property are blocked.

5. The Treasury designations and blocking actions that are the source of
authority for the Venable license are issued and taken pursuant to declarations
of national emergencies by the President, under the International Emergency
Economic Powers Act (IEEPA), 50 U.S.C. §§ 1701-1706 and the
implementing Venezuela Sanctions Regulations, 31 C.F.R. Part 591.

6. Consistent with the Venezuela Sanctions Regulations, Executive Order 13850
(and others), and IEEPA, transfers of licensed property are prohibited unless
authorized directly by OFAC (by regulation or general license) or through the
Venable license.

7. The Justice Department has taken the position, in a Statement of Interest filed
in *In re Terrorist Attacks,* No. 03 MD 1570 (GBD (S.D.N.Y.), Docket Entry
563, that assets subject to a specific OFAC license are regulated by OFAC
and are not subject to being attached.

8. The purpose of the designation, blocking, and licensing measures are to
identify, maintain, and marshal the blocked assets of designated persons and
entities for national security objectives. As the January 28, 2019, Treasury
Press Release sanctioning Venezuela's state-owned oil company Petroleos de
Venezuela, S.A., makes clear: "U.S. sanctions need not be permanent;
sanctions are intended to change behavior."

9. Typically, the Treasury's sanction objective is to secure the attention of
persons involved in national emergencies to influence their behavior, and it
offers an important bargaining chip for the alteration of behavior. Marshalling
property, including converting and transferring it into protected accounts, is
an important means of achieving this national security objective. The

licensing regime, including the Venable specific license, promotes this objective by authorizing the OFAC regulation and sale of property

10. I have reviewed the Judgment Creditor's *Ex Parte* Expedited Motion to Commence Proceedings Supplementary, to Implead Defendants, and for Issuance of Statutory Notices to Appear. D.E. 60.

11. I have reviewed the Judgment Creditor's Notices to Appear directed to Respondents. D.E. 63-71.

12. The Respondents' property should not be applied to satisfy the judgment of Casa Express Corp. for the reasons stated in Respondents' Memorandum in Opposition to [D.E. 60] Judgment Creditor's Expedited Motion to Commence Proceedings Supplementary.

13. Respondents request a trial by jury on all issues so triable.

I declare under penalty of perjury that the foregoing is true and correct.

January 20, 2023

*D.E. Wilson Jr.*

D. E. Wilson, Jr.

3