# EXHIBIT 24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-23103-BB

CASA EXPRESS CORP, as Trustee of
CASA EXPRESS TRUST,

        Judgment Creditor,

  vs.

BOLIVARIAN REPUBLIC OF
VENEZUELA,

        Judgment Debtor.

_____/

**<u>RESPONDENTS' REPLY IN SUPPORT OF [D.E. 128] MOTION TO
DISMISS FOR LACK OF SERVICE OR PERSONAL JURISDICTION
OR ALTERNATIVELY MOTION TO QUASH SERVICE</u>**

                              Respectfully submitted,

                              BLACK SREBNICK
                              201 South Biscayne Blvd., Suite 1300
                              Miami, Florida 33131 / Tel: (305) 371-6421

           By:    */s/ Howard Srebnick*
                  Howard Srebnick
                  Florida Bar No. 919063
                  HSrebnick@RoyBlack.com

Respondent Gorrin's Motion to Dismiss (D.E. 128) should be granted due to Casa's failure to attempt or effectuate service upon him under the indisputably applicable Hague Service Convention or even the inapplicable Florida substitute service law. Casa attempts to avoid the merits of these arguments by claiming they are waived. But there has been no waiver: Casa's lack of service upon Gorrin contravenes a Court Order (D.E. 109) directing Casa to effectuate service, and Casa's failure to establish personal jurisdiction upon the Respondents was previously raised.[1]

In addressing the merits of the service issue, Casa attempts to justify its lack of diligence in abiding by the Hague Convention, resulting in an ongoing 18-month delay, by pointing to a political situation in Venezuela that only recently arose. This does not explain Casa's previous lack of any effort to serve Gorrin and, importantly, does not amount to a current inability to comply. Casa's alternate claim that it achieved service under Florida's substitute service statute is also unavailing because Florida law complies with the Hague Convention, as it must with any treaty. Fl. Stat. § 48.194(1); *Vega Glen v. Club Mediterranee*, 359 F.Supp.2d 1352 (S.D. Fla. 2005) (Convention compliance mandatory for substitute service). Casa has also failed to comply with the requirements of § 48.181, Fla. Stat. and its untimely last-minute declaration (D.E. 124) is no cure. Casa's repeated inexcusable failure to properly serve Gorrin justifies dismissal.

Having failed to attempt or to obtain service under the Convention, Casa asks this Court to exercise its discretion under Fed. R. Civ. P. 4(f)(3) to authorize email service, even though such issuance of "judicial process" would violate the Venezuelan blocking order and implementing regulation (31 C.F.R. § 591.202(e)), and compounds this violation by filing *lis pendens* on the properties for which Casa does not have an OFAC license and which are subject to the exclusive OFAC special license of the Venable firm. D.E. 128.

As to the merits of the personal jurisdiction issue, Casa does not dispute the lack of general personal jurisdiction over Gorrin and, instead, attempts to establish specific personal jurisdiction by claiming that the properties at issue were purchased with allegedly misappropriated Venezuelan funds. Casa's attempt to conjure a connection between the allegations in Gorrin's indictment and

---

[1] This Reply addresses the grounds for dismissal raised by Respondent Gorrin as to lack of service upon him and Casa's failure to allege or prove personal jurisdiction over him in this matter. The remaining Respondents joined Gorrin as to the personal jurisdiction issue. However, as it pertains to the remaining Respondents, the issue of personal jurisdiction has been briefed in Respondents' Response in Opposition to Plaintiff's Motion to Strike Impleaded Defendants' Affirmative Defenses. D.E. 165 at 8-10. Respondents hereby incorporate their response.

this action is fruitless because not only are the properties owned by unindicted corporate entities and not Gorrin directly, but also Gorrin's declaration denies each of the allegations lodged against him. Not even the Department of Justice claims that the properties are related to the alleged crime and, in fact, the Department of Justice used the label of "substitute assets" and intentionally failed to renew *lis pendens*. Casa's response fails to address this entirely. *See Honeycutt v. United States*, 581 U.S. 443, 452 (2017) (construing substitute asset forfeiture as limited to property untainted by offense). For these reasons, the Motion to Dismiss (D.E. 128) should be granted due to lack of proper service and lack of personal jurisdiction.

## I. Respondents' Motion to Dismiss Is Timely and There Has Been No Waiver.

Casa's argument that the Motion to Dismiss is untimely because it was filed concurrently with (or at most minutes after) their response affidavit (D.E. 127) to Casa's Motion to Commence Proceedings Supplementary lacks factual or legal support. The cases cited by Casa are inapplicable since they involve post-answer untimely motions to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6). This case, however, arises out of an *ex parte* motion to commence post-judgment proceedings supplementary, not a complaint. Casa cites no authority prohibiting an impleaded defendant from moving to dismiss a notice to appear issued pursuant to a motion to commence a proceeding supplementary contemporaneously with a responsive affidavit and defenses. Casa's argument is especially inapplicable here where Casa's failure to effectuate service of process contravenes this Court's (D.E. 109) Order requiring Casa to serve Gorrin, thus making Gorrin's motion to dismiss for Casa's continued failure to do so even more appropriate. As to the grounds for dismissal based on lack of personal jurisdiction, there has been no waiver given that this argument was raised in (D.E. 127) Respondents' affidavit and defenses.

"In Florida, execution and garnishment proceedings are ancillary proceedings." *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 733 (11th Cir. 2014). "Thus, an execution or garnishment proceeding 'commence[s] when the writ is issued or the pleading setting forth the claim of the party initiating the action is filed.'" Id. (quoting Fla. R. Civ. P. 1.050). Here, the Amended Motion to Commence Proceedings Supplementary was only filed on June 7, 2022 "and, at that point, it [admittedly] became the operative pleading in this proceeding." D.E. 77 at 1. And Respondents' very first responsive pleadings challenged personal jurisdiction (D.E. 127, 128). Given that personal jurisdiction was immediately raised, it was not waived.

### II. The Order Allowing Casa to Commence Proceedings Supplementary Does Not Relieve Casa of its Obligation to Properly Serve Respondents.

Contrary to Casa's suggestion, this Court's Order granting Casa's (D.E. 60) *Ex Parte* Expedited Motion to Commence Proceedings Supplementary does not preclude Respondents from moving to dismiss this action. That Order, in and of itself, is insufficient to confer jurisdiction over the Respondents because "an order allowing impleader of third parties under section 56.29 does no more than allow third parties to be sued, and does not determine any substantive rights." *NTS Fort Lauderdale Off. Joint Venture v. Serchay*, 710 So. 2d 1027, 1028 (Fla. 4th DCA 1998). "Section 56.29 does not alleviate the requirement that a trial court have jurisdiction over an impleaded party . . . An impleaded third party must still be properly served in order to exercise jurisdiction." *Deluca v. King*, 197 So. 3d 74, 76 (Fla. 2d DCA 2016). Casa must properly serve and establish personal jurisdiction over all Respondents. Casa's failure to do so justifies dismissal.

### III. Service Under the Hague Service Convention Is Required and Has Not Been Attempted or Accomplished, and Casa's Political Excuse is Unavailing.

It is undisputed that the Hague Service Convention[2] applies to service upon residents of Venezuela, including Respondent Gorrin.[3] *Saint-Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela*, 23 F.4th 1036, 1040 (D.C. Cir. 2022). Thus, absent valid service of process, this Court lacks jurisdiction over Gorrin. *See Valdez v. Feltman*, 328 F.3d 1291, 1299 (11th Cir. 2003). Casa bears the burden of showing valid service, *Schrier v. Qatar Islamic Bank*, 2022 WL 4598630, *7 (S.D. Fla. Sep. 30, 2022) (citing cases), and failure to prove compliance with the Hague Service Convention justifies dismissal. *See Burdock & Associates, Inc. v. Magnuson*, 2008 WL 3058584, *4 (M.D. Fla. Aug. 1, 2008).

Here, Casa makes no claim that it has even attempted compliance with the Hague Service Convention. *See, e.g.*, D.E. 159-1 (declaration of plaintiff's counsel Gamardo making no claim of attempting service under the Convention). Diligence in effecting service upon a foreign defendant is required under Eleventh Circuit law, *Harris v. Orange S.A.*, 636 Fed. Appx. 476, 486 (11th Cir. 2015) ("[A] plaintiff's complaint may be dismissed upon a showing that she failed to exercise

---

[2] The Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 658 U.N.T.S. 163.

[3] *Saint-Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela*, 23 F.4th 1036 (D.C. Cir. 2022); *Issac Industries, Inc. v. Petroquimica de Venezuela, S.A.*, 2022 WL 820376, *5 (S.D. Fla. March 1, 2022), *adopted*, 2022 WL 1203004 (S.D. Fla. April 22, 2022). *See* Fed. R. Civ. P. 4(f)(1) & 1993 Advisory Committee Notes (compliance mandatory); Fla. Stat. § 48.194(1).

diligence in attempting to effectuate service on a foreign defendant."), under the Hague Service Convention, *Shanghai Zehnglang Technology Co. v. Mengju Technology, Ltd.*, 2020 WL 13280555, *2 (E.D.N.Y. Nov. 18, 2020), and under this Court's order (D.E. 109). Casa's lack of any attempt to effect service under the Hague Service Convention alone is grounds for dismissal.

Moreover, Casa's lack of diligence has led to an ongoing delay of 18 months, which is six times the 90-day period required under the current Rule 4(m) for effecting domestic service, and also is grounds for dismissal. Service delays of much shorter periods have led to dismissals.[4] *See, e.g., Harris v. Orange S.A.,* 636 Fed. Appx. 476 (11th Cir. 2015) (affirming dismissal for service delay of 268 days, "[m]ore than twice the number of days allowed by Rule 4(m)"). This delay (entirely of Casa's making) directly contradicts Casa's argument that it should not be burdened by the "undue delay" caused by compliance with the Hague Convention. Indeed, there is no urgency that would justify Casa's failure to do so.[5]

In an attempt to justify its complete lack of diligence, Casa argues that the Convention can be disregarded because of political events occurring in Venezuela since January 4, 2023 – *i.e.*, sixteen months after institution of this suit in August 2021. D.E. 159-1 at ¶10. This argument not only proves Casa's complete lack of the necessary diligence to effect service, but also constitutes an admission that treaty compliance has not occurred. Moreover, Casa's diversion into Venezuelan politics is legally unjustified and immaterial under the Hague Convention, which remains a binding treaty obligation between the United States and Venezuela that is recognized as being in force by

---

[4] *See also Thrasher v. City of Amarillo*, 709 F.3d 509, 513 (5th Cir. 2013) (ten-month delay); *See also In re Bitconnect Securities Litigation*, 2020 WL 3496331, *3 (M.D. Fla. Jan. 9, 2020) (citing *Harris*, dismissing defendants because plaintiff had not diligently pursued Hague Service); *Caballero v. Ejercito de Liberacion Nacional*, 2019 WL 11505372, * (S.D. Fla. Dec. 29, 2011) (issuing show cause order in suit against Venezuela entity should not be dismissed for failure to serve under Hague Convention a year after suit filed). A failure to attempt personal service is insufficient to establish due diligence. *Kirchik v. Cantrust Real Estate Enterprise, LLC*, 2021 WL 7451917, *2 (M.D. Fla. Dec. 8, 2021).

[5] Casa improperly accuses the Respondents of "concealing" an action pending before Judge Moore. There was no concealment. Moreover, Casa's speculation that Respondents "deliberately" concealed that action in order to have the "properties transferred to a third party for pennies on the dollar to circumvent applicable OFAC regulations" (D.E. 159 at n. 5) is belied by the fact that a cursory review of the docket obviously reveals that Respondents emphatically opposed the sale of their properties by filing numerous motions, attending a hearing on the issue, and obtaining an order in their favor.

the U.S. State Department, which provides instructions on how to effect service, including the address and contact information for the Venezuelan Central Authority.[6]

Casa claims that the dissolution of the interim Guaido government by the National Assembly in January 2023 and its alleged "derecognition" by our Government have made compliance with the Convention impossible. D.E. 159, at 7-9. Casa challenges the legitimacy of Venezuela's designated Central Authority, the Ministry of Foreign Affairs, by claiming that two of its identified "contact" persons are allegedly Maduro appointees, and neither the Guaido government nor the National Assembly have made any made appointments to the Ministry. D.E. 159-1, ¶¶ 13-14. Casa's argument is belied by the U.S. State Department's official website. Casa fails to notify the Court that the U.S. State Department explicitly states that, "Requests should be completed in duplicate and submitted with two sets of the documents to be served, and translations, directly to Venezuela's Central Authority for the Hague Service Convention"[7] and links to the Hague Conference on Private International Law website which explicitly recognizes that the Venezuelan Central Authority is the "Ministerio del Poder Popular para Relaciones Exteriores."[8] The Court must recognize the "Ministerio del Poder Popular para Relaciones Exteriores" as the duly authorized Venezuelan Central Authority because the Executive Branch recognizes it as such. *See Peoples Mojahedin Organization of Iran v. Department of State*, 437 F.3d 1238, 1244 (D.C. Cir. 2003) ("it is beyond the judicial function for a court to review foreign policy decisions of the Executive Branch."). Casa has no authority to say otherwise.

According to Casa, recognizing Venezuela's Central Authority would necessarily violate the political question doctrine, which bars federal courts from determining whether to recognize foreign governments, reserving this constitutional function to the Executive Branch. D.E. 159 at 5. However, under the Hague Convention, a country's Central Authority is simply the entity designated by a country to receive summons for processing—it is not the Government itself. *Saint-Gobain Performance Plastics Europe,* 23 F.4th at 1041 (rejecting claim that "when the foreign defendant is a state, requesting service from the Central Authority suffices because the Central Authority *is* the state"); *Isaac Industries, Inc*., 2022 WL 820376, at *7 (following *Saint-Gobain*).

---

[6] https://www.hcch.net/en/states/authorities/details3/?aid=280
[7] https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/VenezuelaBolivarianRepublicof.html
[8] https://www.hcch.net/en/states/authorities/details3/?aid=280

In other words, the Central Authority is just a designated entity to perform treaty-based services under the Hague, not the government of Venezuela. Compliance with the Hague Convention is bilateral compliance with a treaty, not a U.S. endorsement of Ministry of Foreign Affairs staffing. Casa's claim that it is impossible to achieve service under the Hague Service Convention has no merit; the failure to attempt service under the Hague Service Convention is grounds for dismissal.

### IV. "Alternative Service" Via Email Under Fed. R. Civ. P. 4(f)(3) Is Inappropriate.

Casa asks this Court to permit alternative service by email under Fed. R. Civ. P. 4(f)(3) without requiring it to attempt compliance with the Hague Convention. D.E. 159 at 9-10.[9] Courts are "reluctant to use their discretion to authorize alternate service when Hague Convention service is available." *Int'l Designs Corp., LLC v. Qingdao SeaForest Hair Prods. Co., Ltd.*, No. 17-CIV-60431, 2018 WL 2364297, at *2 (S.D. Fla. Jan. 4, 2018). Although some courts have permitted resort to Rule 4(f)(3), courts require a plaintiff to attempt compliance with the Hague Service Convention before turning to substitute means of service. *Shanghai*, 2020 WL 1389555, at *2 ("authorizing alternative service under Rule 4(f)(3) without any showing that Plaintiff has reasonably attempted to effectuate service on Defendants is not consistent with how courts in this Circuit exercise their discretion"); *Night Owl SP, LLC v. Dongguan Auhua Electonics Co.*, 2020 WL 8768259 (M.D. Fla. Sept. 9, 2020) (denying leave to effect service under Rule 4(f)(3) because plaintiff failed to make any attempt at compliance with the Convention).

Moreover, Courts within this Circuit generally permit alternate service "only where the defendant's foreign address is unknown; the defendant has successfully evaded service; failure to permit alternate service will result in unduly long delays in litigation; or where attempted Hague Convention service has failed." *Shanghai*, 2020 WL 1389555 at *3. No such showing has been made here. Casa's failure to attempt Hague Convention compliance for 18 months is unjustified, and its February 2023 request for leave to resort to alternative service should be denied. Finally, this Court should not permit alternative service to a party who failed to attempt treaty compliance especially when doing so would conflict with the OFAC regulation's prohibition on judicial process to alter or affect blocked property *"unless authorized pursuant to a specific license issued by OFAC pursuant to this part."* 31 C.F.R. § 591.407 (emphasis added).

---

[9] Casa improperly attaches an email sent by Respondents' counsel to Gorrin containing attorney-client privileged communications as proof of Gorrin's email address. Casa's counsel was advised of the privileged nature of the email and knew he had been inadvertently copied prior to filing the email with the Court. Yet he did not delete the email and instead filed it with the Court.

V.     **Florida's Substitute Service Law Does Not Apply But Casa Still Failed to Comply.**

Casa's argument that it complied with § 48.181, Fla. Stat. is unavailing because "compliance with the [Hague] Convention is mandatory in all cases to which it applies" and the substitute service provisions upon which Casa relies are subject to the Hague Service Convention. *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 705 (1988)); *See Lobo v. Celebrity Cruises, Inc.*, 667 F. Supp. 2d 1324, 1337–38 (S.D. Fla. 2009), *aff'd on other grounds*, 704 F.3d 882 (11th Cir. 2013) ("Because Fla. Stat. § 48.161 requires 'the transmittal of documents abroad,' under [*Volkswagenwerk*] the Hague Convention applies"). As stated above, Casa has not even attempted to abide by the Hague Convention. Regardless, Casa has also failed to comply with the straightforward requirements of Florida's substitute service law and its last-minute declaration (D.E. 124) filed the day before Respondent's extended deadline to respond to Casa's motion to commence proceedings supplementary is no cure.

VI.    **OFAC Regulations Render Service of Process on Gorrin Null and Void, Warranting Dismissal of this Action.**

Respondents are entitled to dismissal because the properties against which Casa asserts a constructive trust claim are blocked under OFAC regulations[10] given Gorrin's designation under IEEPA,[11] thus rendering any execution "judicial process" "null and void," and also because the properties are subject to the exclusive OFAC special license of the Venable firm. 31 C.F.R. § 591.202(e); D.E. 33 at 14-17; D.E. 127 at 6; D.E. 128. As a result, "any judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to § 591.201, as referenced in § 591.506(c), is prohibited unless authorized pursuant to a specific license issued by OFAC pursuant to this part." 31 C.F.R. § 591.407.

Casa has sought to invoke the "judicial process" of this Court by (1) seeking leave to issue "process" under Fed. R. Civ. P. 4(f)(3) to serve Gorrin, (2) filing *lis pendens* against seven properties under Fla. Stat. § 48.23 (D.E. 132-39), and (3) pursing this lawsuit for executing on properties that are already the subject of an OFAC license.[12] These judicial acts unquestionably

---

[10]  84 Fed. Reg. 2496 (Feb. 8, 2019); D.E. 60-5 (Treasury Press Release of January 8, 2019).
[11] Gorrin's designation is based solely on national emergency determinations relating to alleged corruption in the Venezuelan government's operation of its foreign currency exchange program and is totally unrelated to Casa or unpaid Venezuelan bonds.
[12] The summons Casa seeks under Rule 4(f)(3) is judicial process. *Id.* Florida's *lis pendens* statute, Fla. Stat. Ann. 48.23, is codified under Chapter 48, which is entitled: "Process and Service of

constitute "judicial process" under any relevant definition,[13] and are therefore proscribed under the applicable OFAC regulations. 31 C.F.R. §§ 591.202(a) & (e); 6591.301, 591.407. This argument is also advanced by newly impleaded Respondents, Collins Apt. LLC and Fisher Isl. LLC in their motion to dismiss. *See* D.E. 158. The properties remain subject to the exclusive OFAC specific license directed to them—the Venable license. D.E. 127, Exhibit 1. Accordingly, the only party with legal authority to transfer any of the properties is Ed Wilson of the Venable firm, the holder of an exclusive, continuing OFAC license over the properties since May 2020.

Casa argues it may litigate Venezuela's constructive trust claim without a license because it may obtain a retroactive license in the future (having already been denied an OFAC license) or until such time as it "executes" upon the property. D.E. 167, at 5-6. But OFAC regulations prohibit retroactive licenses during the pendency of an action. *Stansell v. FARC*, 711 F.3d 713, 732-33 (11th Cir. 2014) (citing 531 C.F.R. § 536.402) (followed *Sutherlin v. Wells Fargo Bank NA.*, 767 Fed. Appx. 812, 822 (11th Cir. 2019)). Further, the argument that application of the regulations is premature is answered by the remedy being sought (a transfer of property title), because the OFAC regulations prohibit altering or affecting blocked property "*unless authorized pursuant to a specific license issued by OFAC pursuant to this part,*" 31 C.F.R. § 591.407, and there is but one such license as to these properties, and it does not belong to Casa.

Casa invokes distinguishable cases that do not involve post-judgment execution proceedings directed to specific properties blocked by OFAC. For example, *Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355 (11th Cir. 1984) was an *in personam* action that did "not focus on any particular property within the jurisdiction." *Id.* at 362. By contrast, in these proceedings supplementary, Casa seeks an order that the blocked "properties . . . are subject to execution by Casa Express." D.E. 60 at 2. Although Casa cites to *Dean Witter*, the Eleventh Circuit in that case actually endorsed a New York court's dismissal of a "complaint seeking to transfer blocked property in the absence of a Treasury license authorizing such a transfer" and held that the complaint was "properly dismissed" because the plaintiff had no license. 741 F.2d at 360

---

Process." Both in name and effect, these judicial acts constitute "judicial process" within the meaning of the federal regulation barring application of such process to blocked properties. 31 C.F.R. § 591.202(e). *Versilia Supply Serv. SRL v. M/Y WAKU*, 371 F. Supp. 3d 1143, 1147 (S.D. Fla. 2019) (quoting 31 C.F.R. § 598.205(e)).

[13] *United States v. Kennedy*, 233 F.3d 157, 161 n.3 (2d Cir. 2000) (Sotomayor, J.) (quoting Black's Dictionary); *Rodriguez v. Pan Am Health Org.*, 2020 WL 1666757, *5 (S.D. Fla. April 3, 2020).

n.16. *Dean Witter* further recognizes that there is "a distinction between *in personam* suits on the one hand, and *in rem* and *quasi in rem* actions on the other" and strongly suggests that a license is required for *in rem* or *quasi in rem* proceedings that seek to affect blocked property. *Id.* at 362 n.32. Because Casa seeks possession of specific blocked properties and claims that the blocked properties "are subject to execution by Casa Express pursuant to 28 U.S.C. § 1610(c) and Florida Statute § 56.29," (D.E. 60 at 2), this is a quasi-in rem action over specific property and a license is required. Finally, it should be noted that in none of the cases Casa relies upon had a specific license been issued, whereas here the only party with legal authority to transfer any of the properties is Ed Wilson of the Venable firm, the holder of an exclusive, continuing OFAC license over the properties since May 2020.

### VII. Casa Fails to Allege Personal Jurisdiction Over Gorrin.

Casa bears the burden of alleging and proving general or specific personal jurisdiction over Gorrin under Florida law and the federal Due Process Clause. *Worth Group, Inc. v. Morales*, 2023 WL 526318, *2 (S.D. Fla. Jan. 27, 2023). Casa does not refute the lack of general personal jurisdiction over Gorrin, and instead makes conclusory allegations that his Florida contacts are sufficient to confer specific personal jurisdiction despite Gorrin's contrary affidavit. Conclusory allegations do not sustain plaintiff's burden. *Stainrod v. Scarlet Pearl Casino Resort*, 2020 WL 8225159, *4 (N.D. Fla. Dec. 7, 2020), *adopted*, 2021 WL 201478 (N.D. Fla. Jan. 20, 2021).

First, Casa argues that it has met its burden under § 48.193(1)(a), Fla. Stat. by merely alleging the act of "operating, conducting, engaging in, or carrying on a business venture in this state or having an office or agency in this state" in a conclusory fashion. D.E. 159 at 13 ("The Amended Motion alleges that Gorrin operated, conducted, engaged in, or carried on a business or venture in Florida" in compliance with Florida's long arm statute."). Conclusory parroting the statute is not enough. Exercising specific jurisdiction under Florida law requires proof of "a connection or 'connexity' between the enumerated activity in Florida and the cause of action." *Knepfle v. J-Tech Corp.*, 48 F.4th 1282, (11th Cir. 2022); *See D-I Davit Int'l-Hische GMBH v. Carpio*, 346 So. 3d 197, 201 (Fla. 3d DCA 2022).

Due Process requires Casa to establish minimum contacts with Florida arising out of his personal alleged claim—an unsatisfied judgment against Venezuela. There is no allegation that Gorrin's conduct in Venezuela has any connection to Casa's judgment or its satisfaction. This Court lacks personal jurisdiction to adjudicate alleged misconduct in Venezuela involving only the

Venezuelan government. *See, e.g, Herederos de Roberto Gomez Cabrera, LLC v. Teck Resources Ltd.*, 43 F.4th 1303 (11th Cir. 2022), *cert. denied*, 2023 WL 192008 (Jan. 17, 2023) (under due process minimum contacts test, no specific jurisdiction to adjudicate torts occurring in Cuba based upon their domestic effects).

In an attempt to meet Florida's connexity requirement and Due Process Clause minimum contact requirement, Casa claims that Gorrin participated in a "breach of trust" by "bribing National Treasurers to misappropriate Venezuelan funds" and then "using the misappropriated funds to purchase the real properties" in Florida. D.E. 159 at 13. Casa's attempt falls short because, importantly, Casa does not grapple with (or even address) the fact that the Department of Justice has not alleged that the real properties are traceable to the purportedly Venezuelan currency exchange charged conduct, declined to renew *lis pendens*, and used the classification of "substitute assets," which means "other property of the defendant" unrelated to the alleged crime. 21 U.S.C. § 853(p)(2).[14] *See Honeycutt v. United States*, 581 U.S. 443, 452 (2017) (construing substitute asset forfeiture as limited to property untainted by offense).

As a result, Casa has failed to allege or prove any connection between the assets it seeks to execute upon and Gorrin's alleged crime forming the only potential basis for establishing personal jurisdiction, and Casa's efforts have been sufficiently refuted by Gorrin's declaration and the Department of Justice.

## CONCLUSION

Respondents' Motion to Dismiss (D.E. 128) should be granted due to Casa's failure to attempt or effectuate service upon Gorrin and for lack of personal jurisdiction over Respondents.

---

[14] To be clear, Casa's only objection to Gorrin's declaration is that it supposedly "contain[s] only conclusory assertions that the defendant is not subject to jurisdiction." D.E. 159 at 14. A review of Gorrin's declaration, and the lengthy paragraph from the declaration cited by Casa (D.E. 159 at 14), shows this is clearly not the case as Gorrin painstakingly denied each factual allegation contained within press releases, expert reports, and the Superseding Indictment.