IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SMARTMATIC USA CORP., *et al.*, | |
| Plaintiffs, | No. 1:21-cv-02900-CJN |
| v. | |
| HERRING NETWORKS, INC., | Magistrate Judge Moxila A. Upadhyaya |
| Defendant. | **ORAL ARGUMENT REQUESTED** |

**<u>PLAINTIFFS' MOTION FOR PROTECTIVE ORDER</u>**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................ ii

I.    BACKGROUND ................................................................................................. 2

II.   SMARTMATIC'S EFFORTS TO RESOLVE THIS DISPUTE WITH OANN
      DIRECTLY ........................................................................................................ 5

III.  LEGAL STANDARD.......................................................................................... 6

IV.   ARGUMENT ...................................................................................................... 7

      A.    The Second Set of RFPs Are Unreasonably Duplicative........................ 8

            1.    Dominion-Related RFPs .............................................................. 10
            2.    RFPs Related to Smartmatic's Complaint Allegations............................. 13
            3.    RFPs Related to Each Defamatory Statement ........................................ 14
            4.    Internally Duplicative RFPs........................................................ 16
            5.    RFPs Requesting Documents That OANN Already Requested
                  in the Parties' Negotiations ....................................................... 18
            6.    RFPs Duplicating Requests Already In Front of The Court .................... 18
            7.    The Undue Burden of Responding to the Second Set of RFPs
                  Outweighs Any Benefit to OANN ................................................ 20

      B.    The Number of RFPs in OANN's Second Set is Unreasonably
            Excessive.................................................................................. 21

V.    SANCTIONS ..................................................................................................... 24

VI.   CONCLUSION.................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bilek v. Nat'l Congress of Emps., Inc.*,
   2021 WL 320610 (N.D. Ill. Feb. 1, 2021) .................................................................8, 9, 22

*Bird v. PSC Holdings I, LLC*,
   2013 WL 1120659 (S.D. Cal. 2013 Mar. 18, 2013) .............................................................9

*Burke v. Air Serv. Int'l, Inc.*,
   2009 WL 10696212 (D.D.C. Aug. 11, 2009) .......................................................7, 8, 21, 22

*Convertino v. U.S. Dept. of Justice*,
   565 F. Supp. 2d 10 (D.D.C. 2008) .......................................................................................6

*Cruz v. United States*,
   2016 WL 727066 (S.D. Cal. Feb. 24, 2016) .......................................................................21

*Gopher Media, LLC v. Spain*,
   2020 WL 6741675 (S.D. Cal. Nov. 17, 2020) ...............................................................13, 19

*Green v. Las Vegas Metro. Police Dep't*,
   2021 WL 4149017 (D. Nev. Aug. 12, 2021) .......................................................................23

*Huthnance v. District of Columbia*,
   255 F.R.D. 285 (D.D.C. 2008).............................................................................................6

*Long v. Motion Picture Ass'n of Am.*,
   2021 WL 5446278 (D.D.C. Nov. 22, 2021) .......................................................................17

*Mohammed v. Daniels*,
   2015 WL 4758968 (E.D.N.C. Aug. 12, 2015).....................................................................20

*Ramirez v. U.S. Immigration and Customs Enforcement*,
   331 F.R.D. 194 (D.D.C. 2019).............................................................................................7

*Rapaport v. Soffer*,
   2012 WL 6800377 (D. Nev. Dec. 31, 2012)........................................................................23

*Roberts v. Lyons*,
   131 F.R.D. 75 (E.D. Penn. 1990).........................................................................................23

*Russo v. Lopez*,
   2012 WL 1463591 (D. Nev. Apr. 27, 2012).........................................................................22

*Sank v. City Univ. of N.Y.*,
   112 Fed. Appx. 761 (2d Cir. 2004).......................................................................................8

*Seattle Times Co. v. Rhinehart*,
    467 U.S. 20 (1984) ................................................................................................6

*In re Shur*,
    225 B.R. 295 (E.D.N.Y. 1998) ..........................................................................9, 21

*Stokes v. Interline Brands Inc.*,
    2013 WL 6056886 (N.D. Cal. Nov. 14, 2013) ........................................................21

*Treppel v. Biovail Corp.*,
    233 F.R.D. 363 (S.D.N.Y. 2006) .......................................................................9, 21

*U.S. Dep't of Treasury v. Pension Benefit Guar. Corp.*,
    301 F.R.D. 20 (D.D.C. 2014) ..............................................................................8

*U.S. v. Microsoft Corp.*,
    165 F.3d 952 (1999) .............................................................................................7

*United States v. Howard*,
    360 F.2d 373 (3d Cir. 1966) ...............................................................................23

*Victor Stanley, Inc. v. Creative Pipe, Inc.*,
    269 F.R.D. 497 (D. Md. 2010) ............................................................................8

**Other Authorities**

Fed. R. Civ. P. 26 ................................................................................................7, 24

Fed. R. Civ. P. 26(b) ...........................................................................................7, 21

Fed. R. Civ. P. 26(b)(1) .......................................................................................6, 22

Fed. R. Civ. P. 26(b)(2)(C) ...................................................................................6, 8

Fed. R. Civ. P. 26(c) ........................................................................................1, 6, 7

Fed. R. Civ. P. 26(c)(1) ...........................................................................................6

Fed. R. Civ. P. 26(g)(1)(B)(ii) ................................................................................17

Fed R. Civ. P. 36 ..................................................................................................23

Fed. R. Civ. P. 37(a)(5)(A) .....................................................................................24

Plaintiffs Smartmatic USA Corp., Smartmatic International Holdings B.V., and SGO Corporation Limited (collectively, "Smartmatic"), by counsel, submit this motion for a protective order quashing Herring Network Inc.'s (d/b/a OANN) Second Set of Requests for Production (Requests for Production hereinafter, "RFPs"). Smartmatic submits this motion pursuant to Federal Rule of Civil Procedure 26(c).

OANN's conduct throughout the discovery process in this matter has gone too far. It has done everything it can to drive up the time, expense, and resources of Smartmatic to avoid complying with the most basic discovery obligations. It is sheer gamesmanship to delay this case from moving forward and being resolved on its merits. OANN has tried to thwart Smartmatic's requests for discovery while at the same time demanding overbroad, excessive, and unnecessary discovery from Smartmatic. OANN's latest move of serving Smartmatic with more than 1,500 document requests after more than eight months of repeated and intense negotiations between the parties regarding document productions and search terms is ridiculous on its face.

As detailed below, the more than 1,500 RFPs in OANN's Second Set of RFPs served on May 31, 2023, are duplicative, excessively voluminous, and harassing. Responding to them individually would be an enormous burden on Smartmatic and would serve no purpose, as Smartmatic has already responded to, negotiated, and produced 900,341 documents in response to OANN's nearly identical First Set of RFPs (served on October 24, 2022). Smartmatic has diligently made its productions on an ongoing, rolling basis since February 3, 2023. It has agreed to a wide variety of search terms, agreed to numerous categories of specific documents, agreed to broad timeframes, agreed to 51 custodians, and agreed to produce all documents produced in litigation against other defendants. As noted above, this production process began after Smartmatic spent a significant amount of time and resources negotiating with OANN's prior counsel. The

reality is that OANN's current counsel is looking for a redo of all prior negotiations and has done nothing to narrowly tailor its additional requests. The undue burden these requests impose on Smartmatic warrants the grant of Smartmatic's motion for a protective order to quash OANN's Second Set of RFPs in their entirety.

## I.   BACKGROUND

Smartmatic filed its Complaint on November 3, 2021, seeking to hold OANN accountable for its eight-month disinformation campaign against Smartmatic. Following the 2020 U.S. presidential election, OANN asserted that Smartmatic, a voting machine company, rigged the 2020 election in favor of Joe Biden. After the damage that Smartmatic suffered due to OANN's accusations, Smartmatic had no choice but to sue OANN for defamation.

After OANN's motion to dismiss was denied on June 21, 2022, the parties moved into discovery. OANN served interrogatories, requests for admission, and 306 RFPs on October 24, 2022.[1] OANN then asked to extend the deadline for responses and objections to the parties' first set of requests to December 16, 2022. Smartmatic obliged.

Smartmatic sent OANN a letter on January 3, 2023, addressing OANN's responses and objections to Smartmatic's First Set of RFPs. OANN provided its first reply to Smartmatic's responses and objections on January 23. The parties then met and conferred on January 25 and again on January 27.

Between January 25 and April 11, Smartmatic and OANN met and conferred **seven times**. The parties also **exchanged more than 50 letters and countless emails** discussing and negotiating the terms of discovery, including Smartmatic's responses to OANN's First Set of RFPs. The process of negotiating OANN's RFPs has been extraordinarily slow and reeks of gamesmanship.

---

[1] OANN's First Set of RFPs and Smartmatic's Responses & Objections thereto are attached as Ex. A. All cites to the First Set of RFPs can be found within Ex. A. The First Set of RFPs contains requests Nos. 1-102.

This is due in part to OANN's insistence that the parties continuously rehash the same issues. Despite its frustrations, Smartmatic has made a concerted effort to work with OANN and has agreed to produce a broad scope of documents across several decades, which is beyond proportional to the needs of this case.

As part of the back and forth, the parties have been negotiating the search terms that Smartmatic would use to identify relevant documents since February 22. Smartmatic has meticulously reviewed, objected to, and negotiated approximately 450 search terms over the last four months. The current agreed-upon search term list comprises more than 350 terms (attached hereto as Appendix A), many of which are incredibly broad. The current list of search terms will result in Smartmatic producing at least three million documents. Indeed, Smartmatic has already made 10 productions consisting of more than 900,000 documents. OANN's production has been less robust, to say the least.

Early in the discovery process, Smartmatic proposed a schedule for the parties to make rolling document productions. OANN agreed to Smartmatic's proposed dates of February 3, March 3, and April 7. On February 3, OANN produced 56 documents. On March 3, OANN produced 41 documents. It then became obvious to Smartmatic that OANN was not participating in discovery with good faith and was unlikely to make additional productions. Smartmatic informed OANN that it would seek leave from the court to compel discovery. In response, OANN insisted that it would agree to a new discovery schedule and that a motion to compel would be unnecessary. On March 31, the parties reached a final agreement on a discovery schedule for productions to occur on April 7 and 28, and on May 5 and 19.

**_OANN then missed ALL of the agreed-upon deadlines – every single one._**

Smartmatic sought the Court's leave to file a motion to compel in the Joint Submission of Discovery Disputes filed on May 5. The discovery disputes in the Joint Submission remain unresolved. In the meantime, on May 24, 2023, OANN made a third production of 186,000 documents, five months after Smartmatic served its RFPs. The vast majority of documents in OANN's third production are irrelevant news alerts.

On May 30, Smartmatic was informed that OANN had retained new lead counsel. OANN's new counsel's first move in this case was to serve Smartmatic with 1,500 requests in its Second Set of RFPs.[2] Upon review of OANN's Second Set of RFPs, it was immediately clear that OANN's new counsel had disregarded the parties' preexisting agreements and extensive negotiations in response to OANN's First Set of RFPs. The 1,500 RFPs ask for documents that Smartmatic already agreed to produce, categories of documents that the parties already discussed at length, categories of documents that were already at issue in the parties' May 5 Joint Submission, and thousands, if not millions, of documents that will be produced as a result of broad search term agreements. (*See* Appendix A, listing the search terms Smartmatic has already agreed to run.) Since the start of discovery, Smartmatic has agreed to designate 51 Smartmatic employees as custodians and collected more than 7.5 million documents from those custodians. Smartmatic agreed to produce (and has already produced) numerous broad categories of documents including documents related to: the 2020 election; Smartmatic's election technology in Los Angeles County; Dominion Voting Systems; Sequoia Voting Systems; OANN's actual malice; damages; Smartmatic's customers and contracts; Smartmatic's bids for the provision of election technology; and Smartmatic's previous election projects. Smartmatic even agreed to produce documents spanning back to 1997 for certain

---

[2] OANN's Second Set of RFPs are attached to the Declaration of Caitlin A. Kovacs in Support of Plaintiffs' Motion for a Protective Order as Ex. B.1. The Second Set of RFPs contains requests Nos. 103-607. All cites to the Second Set of RFPs can be found within Kovacs Declaration, attached as Ex. B.

categories. Accordingly, there is no justification for issuing more than 1,500 RFPs following eight months of extensive discovery. OANN's excessive and harassing RFPs are undoubtedly part of OANN's continued scheme to drag out discovery.

OANN seems to believe that its retention of new counsel entitles it to ignore the work of the prior eight months and begin discovery anew. As Smartmatic details below, OANN's Second Set of RFPs are obscenely duplicative and excessively voluminous. The effort required to respond and object individually to each of OANN's 1,500 RFPs, and then to engage in extensive negotiations over those responses, would be extraordinarily burdensome and ultimately pointless where the vast majority of the Second Set of RFPs duplicate the 306 RFPs to which Smartmatic already responded over six months ago.

## II.  SMARTMATIC'S EFFORTS TO RESOLVE THIS DISPUTE WITH OANN DIRECTLY

Smartmatic notified OANN on June 16 that it believed OANN's Second Set of RFPs were fatally flawed and that unless OANN withdrew them, it would be moving for a protective order. On June 21, Smartmatic provided OANN with a letter giving detailed examples of RFPs within OANN's Second Set that were duplicative of OANN's First Set (and with each other). (Kovacs Decl., Ex. B ¶ 3.) Smartmatic and OANN then met and conferred in a virtual meeting on June 22. (Kovacs Decl., ¶ 4.) During the meet and confer, OANN stated that its RFPs were not duplicative, and suggested that Smartmatic should fully respond to its Second Set of RFPs, issuing individual objections to each request. (*Id*. ¶ 6.)  Smartmatic explained why responding to each request individually would result in an undue burden on Smartmatic (discussed in greater detail below). (*Id*.) OANN agreed to review its Second Set of RFPs and provide a letter to Smartmatic regarding whether there were duplicative RFPs that could be eliminated or narrowed. (*Id*.) OANN sent its proposal to narrow the Second Set of RFPs on June 27. (*Id*. ¶ 7.) The letter conditionally proposed

eliminating approximately 270 requests from its Second Set of RFPs (leaving over 1,200 intact), but only if Smartmatic agreed to lift objections on OANN's First Set of RFPs, reopen search term negotiations, and reopen the discussion of the relevant time frame for some topics. (*Id.*) This proposal did not come close to eliminating the undue burden that the Second Set of RFPs presented to Smartmatic. Smartmatic, therefore, informed OANN that it would be moving for a protective order, and this motion followed. (*Id.* ¶ 8.)

## III.   LEGAL STANDARD

To be sure, the Federal Rules of Civil Procedure contemplate broad discovery. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."); *Convertino v. U.S. Dept. of Justice*, 565 F. Supp. 2d 10, 12 (D.D.C. 2008) ("The scope of discovery in civil actions is broad."). But the appropriate scope of discovery is not unlimited. A party's discovery requests must be "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive," a trial court "*must* limit the frequency or extent of discovery otherwise allowed." Fed. R. Civ. P. 26(b)(2)(C) (emphasis added).

Consistent with the principle of proportionality underlying the parties' respective discovery obligations, Rule 26(c) confers substantial discretion on the trial court to issue a protective order limiting the scope, timing, or means of discovery for "good cause"—that is, "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *Huthnance v. District of*

*Columbia*, 255 F.R.D. 285, 296 (D.D.C. 2008). The "good cause" standard "is highly flexible, having been designed to accommodate all relevant interests as they arise." *U.S. v. Microsoft Corp.*, 165 F.3d 952, 959 (1999); *see also* Fed. R. Civ. P. 26 advisory committee's note to the 1983 amendment ("The grounds mentioned in the amended [Rule 26(b)] for limiting discovery reflect the existing practice of many courts in issuing protective orders under Rule 26(c)."). In ruling on a request for a protective order, the trial court weighs the burden to the moving party against the requestor's need for, and the significance of, the requested information. *Ramirez v. U.S. Immigration and Customs Enforcement*, 331 F.R.D. 194, 196 (D.D.C. 2019); *see also Burke v. Air Serv. Int'l, Inc.*, 2009 WL 10696212, at *3 (D.D.C. Aug. 11, 2009) (undue burden depends on the requested documents' relevance, the requesting party's need for the documents, whether the request is cumulative and duplicative, the time and expense required to comply, and the importance of the issues at stake in the litigation).

## IV.   ARGUMENT

The party moving for a protective order bears the burden of substantiating a specific need to support its request. *Ramirez v. U.S. Immigr. & Customs Enf't*, 331 F.R.D. 194, 196 (D.D.C. 2019). Here, OANN served more than 1,500 additional production requests that overlap almost completely with OANN's First Set of RFPs. OANN's Second Set of RFPs are (1) duplicative both internally and in that they request documents that Smartmatic has already agreed to produce, and (2) unreasonably excessive in number.[3] When weighed against the nearly imperceptible benefit to OANN in getting Smartmatic's responses to the same requests that it has already extensively negotiated, the undue burden imposed on Smartmatic clearly establishes "good cause" to support

---

[3] Smartmatic also asserts that many of the requests in the Second Set of RFPs are overly broad and not relevant to the claims or defenses in this case. However, for the purposes of this motion, Smartmatic focuses only on the duplicative nature of the requests and the excessive volume.

entering a protective order. *See Burke*, 2009 WL 10696212, at *3 (whether a protective order should issue depends upon "whether the burden or expense of the proposed discovery outweighs its likely benefit"); *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 523 (D. Md. 2010) ("Fed. R. Civ. P. 26(b)(2)(C) cautions that all permissible discovery must be measured against the yardstick of proportionality."). Accordingly, the Court should enter a protective order quashing OANN's Second Set of RFPs in their entirety.

### A.    The Second Set of RFPs Are Unreasonably Duplicative

Pursuant to FRCP 26(b)(2)(C) the court *must* limit discovery where the discovery sought is unreasonably cumulative or duplicative. This Court's local rules further emphasize the need for parties to "carefully craft document production requests so they are limited to those documents [they] reasonably believe are appropriate," and to avoid "design[ing] production requests for the purpose of placing an undue burden or expense on a party." (D.D.C. LCvR app. A, general princ. 17.)  Discovery demands are unreasonably duplicative where there are substantial similarities to prior requests such that the additional discovery is unlikely to produce new relevant information and the burden of responding outweighs the possible benefit. *See, e.g.*, *Sank v. City Univ. of N.Y.*, 112 Fed. Appx. 761, 764 (2d Cir. 2004) (affirming the lower court's finding that the additional discovery sought was duplicative where the plaintiff already requested personnel files of 297 employees and the 700 new employee file requests would not "produce evidence supportive of her claims"); *Bilek v. Nat'l Congress of Emps., Inc.*, 2021 WL 320610, at *1 (N.D. Ill. Feb. 1, 2021) (granting motion for protective order where defendants served "260 combined additional interrogatories and requests for production" that were "materially duplicative of each other and in many cases of written discovery previously served in this case"). Although "some overlap does not justify foreclosing discovery," *U.S. Dep't of Treasury v. Pension Benefit Guar. Corp.*, 301 F.R.D. 20, 30 (D.D.C. 2014), propounding "[r]epeated demands for the same information" in

piecemeal fashion does support the trial court's entry of a protective order. *Bird v. PSC Holdings I, LLC*, 2013 WL 1120659, at *1 (S.D. Cal. 2013 Mar. 18, 2013); *see also Treppel v. Biovail Corp.*, 233 F.R.D. 363, 376 (S.D.N.Y. 2006) (defendants not required to respond to RFP because "any relevant documents would be produced in response to more specific discovery requests"); *In re Shur*, 225 B.R. 295, 299 (E.D.N.Y. 1998) (finding that a party did not need to produce documents in response to a subpoena because the documents sought were redundant in light of the "other broad document requests" previously issued). In *Bilek*, for instance, the plaintiff was "just asking that she not be unnecessarily buried in duplicative and burdensome discovery" after the defendants served 260 combined interrogatories and RFPs in addition to the 169 discovery requests to which she had already responded. 2021 WL 320610, at *1. Noting that the defendants' RFPs contained "a good deal of duplication" and that several "appear[ed] to be word-for-word identical to previously served requests," the trial court concluded that that the additional requests were "unduly burdensome and not proportional to the needs of the case." *Id.* at *1-2 ("It is ridiculous and unnecessary to force Plaintiff to respond to 429 total written discovery requests in this case.").

Like the discovery requests in *Bilek*, OANN's Second Set of RFPs are made up of almost entirely of duplicative requests. Although Smartmatic cannot possibly describe in this forum why each one of OANN's 1,500 RFPs is duplicative of another request—hence the need for a protective order[4]—Smartmatic nonetheless undertook a good-faith effort to provide several examples of duplication. The examples reflect that OANN's Second Set of RFPs are (1) largely coextensive with OANN's First Set of RFPs; (2) unduly cumulative in that they contain several redundant requests; and (3) needlessly duplicative of the parties' past negotiations over search terms and the scope of discovery. Many of the requests are duplicative in all three ways.

---

[4] Smartmatic identifies examples of duplicative RFPs in greater detail in Appendix B attached to its motion.

The examples below are not the exception but rather are representative of the duplication pervasive throughout OANN's Second Set of RFPs.

### 1.    Dominion-Related RFPs

In response to OANN's First Set of RFPs, Smartmatic previously agreed to produce *any* document concerning Dominion, with the exception of joint-defense agreements and privileged documents.

The First Set of RFPs contained requests such as "Documents and Communications relating to the business relationship between any Smartmatic Entity and any Dominion Entity"; "Documents and Communications between any Smartmatic Entity and any Dominion Entity relating to, arising out of, or in any way relevant to the Alleged Defamatory Statements"; and "Documents and Communications concerning the relationship between any Smartmatic Entity and any Dominion Entity." (RFP Nos. 31, 32, 81.) In response to the First Set of RFPs relating to Dominion, Smartmatic agreed to produce every document that OANN reasonably needs to test Smartmatic's relationship with Dominion, including documents and communications regarding:

- sales or licensing agreements between Smartmatic and Dominion;

- any use by Dominion of voting-technology software owned by Smartmatic;

- any use by Smartmatic of voting technology software owned by Dominion;

- Smartmatic and Dominion discussion of OANN's defamatory statements;

- Smartmatic's contracts related to its divestiture of Sequoia;

- Smartmatic and Primer Election Systems negotiation of any agreement between the two concerning the 2020 Presidential Election.

(Ex. C, Smartmatic May 1, 2023 letter at 12, 16.)

To further show its commitment to producing a broad range of Dominion documents, Smartmatic agreed to produce **any** non-privileged document from its data set that results from the following search terms:

- *dominionvoting.com

- "Dominion Voting" or *dominionvoting.com

- Dominion AND (sequoia OR SVS)

- (Dominion OR DVS) AND (bid OR market OR "US" OR "United States" OR "U.S." OR machin* OR lease OR assign* OR IP OR "intellectual property" OR compet* OR Venezuela OR Philippine* OR leas* OR contract OR litig* OR lawsuit OR case OR lawyer* OR Edge* OR renew* OR better OR cost OR proposal)

- (market OR "market share") W/10 (compet* OR landscape OR industry OR opportun* OR "ES&S" OR Dominion OR "U.S." OR "United States")

- (Sequoia OR SVS) AND (Smartmatic OR Blaine OR Chicago OR "United States" OR "US" OR "U.S." OR divest* OR acqui* OR "intellectual property" OR "IP" OR Venezuela* OR "Cook County" OR market OR Edge* OR software OR litigation OR lawsuit OR case OR bid OR machin* OR dominion OR "Sale and Security" OR sale OR divest* OR sold)

(*Id.* at 16.) Based on the agreed-upon search terms, Smartmatic will produce to OANN any communication with any Dominion email address and any document that says, "Dominion Voting." Smartmatic's production with regard to Dominion could not be broader.

Despite the fact that the parties discussed the relevance of Dominion and the scope of discovery relating to Dominion for months, OANN's Second Set of RFPs contains **20** broad requests relating to Dominion. For example, a comparison of a few Dominion-related requests shows the duplicative nature of the Second Set of RFPs.

- **First Set of RFPs, No. 31**: Documents and Communications related to the business relationship between any Smartmatic Entity and any Dominion Entity.

  - *Compare to* **Second Set of RFPs, No. 326**: Produce Documents and Communications concerning any sale, resale, license, agreement, or other business relationship between You and DOMINION, including between

You and US Dominion, Inc., Dominion Voting Systems, Inc., Dominion Voting Systems Corporation, DOMINION subsidiaries, and SEQUOIA. This request has no time limit.

- **First Set of RFPs, No. 32**: Documents and Communications between any Smartmatic Entity and any Dominion Entity relating to, arising out of, or in any way relevant to the Alleged Defamatory Statements.

  o *Compare to* **Second Set of RFPs, No. 162**: Produce Documents and Communications exchanged between You and DOMINION concerning the factual or legal claims made in Your COMPLAINT or the case styled US Dominion, Inc. et al. v. Herring Networks, Inc., et al., No. 1:21-cv-02130.

  o *Compare to* **Second Set of RFPs, No. 138**: Produce Documents and Communications concerning Your contention that "[OAN] had not seen any evidence showing that … Smartmatic was widely used in the 2020 U.S. election, including in Dominion machines," as alleged in Paragraph 117 of the COMPLAINT.

  o *Compare to* **Second Set of RFPs, No. 154**: Produce Documents and Communications concerning Your contention that "[OAN] had seen no evidence that … Dominion machines used Smartmatic software in the 2020 election," as alleged in Paragraph 132 of the COMPLAINT.

  o *Compare to* **Second Set of RFPs, No. 196**: Produce Documents and Communications concerning Your assertion that "Dominion did not use Smartmatic's election technology and software during the 2020 U.S. election. Smartmatic did not license its technology or software to Dominion for use in the 2020 U.S. election. Dominion did not purchase Smartmatic's election technology and software for use in the 2020 U.S. election," as alleged in Paragraph 192 of the COMPLAINT.

- **First Set of RFPs, No. 81**: Documents and Communications concerning the relationship between any Smartmatic Entity and any Dominion Entity.

  o *Compare to* **Second Set of RFPs, No. 331**: Documents and Communications concerning the past and current relationship between You and […] Dominion […]

  o *Compare to* **Second Set of RFPs, No. 414**: Documents and Communications concerning and between You and (a) Dominion […]

In addition to the duplicative nature of these requests in relation to the First Set of RFPs, they are also unnecessary given the search terms that Smartmatic has already agreed to run related

12

to Dominion. They also serve as an example of how OANN's Second Set of RFPs are duplicative amongst each other. These requests, as well as many others, could have been entirely eliminated or condensed into one request. *See Gopher Media, LLC v. Spain*, 2020 WL 6741675, at *4 (S.D. Cal. Nov. 17, 2020) (denying party's motion to compel where requests relating to the same topic were duplicative and "should have been a single document request is instead a dozen or more requests calling for the same or substantially the same information.").

### 2.       RFPs Related to Smartmatic's Complaint Allegations

As another example, OANN served more than 50 additional RFPs on each Plaintiff (more than 150 in total) for documents supporting allegations in Smartmatic's Complaint. These are duplicative for four reasons. *First*, some of Smartmatic's allegations are reiterated numerous times throughout its Complaint, and OANN made a separate request for each time the allegation was repeated. Take, for example, RFP No. 129 which seeks: "Produce Documents and Communications concerning Your contention that, "[OAN] knew it had seen no evidence that Dominion used Smartmatic because that claim is factually false," as alleged in Paragraph 105 of the COMPLAINT"; and RFP No. 138 which seeks: "Documents and Communications concerning Your contention that "[OAN] had not seen any evidence showing that … Smartmatic was widely used in the 2020 U.S. election, including in Dominion machines," as alleged in Paragraph 117 of the COMPLAINT." These are just two of the 50 RFPs where this particular duplication occurs. (*See* RFP Nos. 113, 114, 127, 146, 154, 185, 195, 196, 197, 235, 312, 314, 325, 326, 327, 331, 356, 414.)

*Second*, the RFPs asking Smartmatic for support for its allegations relate to the same categories of documents that OANN has already requested and that Smartmatic has agreed to produce. For example, OANN's First Set of RFPs requested "Documents and Communications that support Your contention that Herring acted with actual malice." (*See* RFP No. 43.) Yet, *several*

requests in OANN's Second Set of RFPs ask Smartmatic to provide the exact same thing. (*See, e.g.*, RFP Nos. 525, 526, 527, 528). Similarly, OANN's First Set of RFPs included numerous requests related to the use of Smartmatic technology in the 2020 election (*see, e.g.*, RFP Nos. 13, 15, 16, 18, 73), yet a number of OANN's Second Set of RFPs cover the same topic, but in reference to specific Complaint paragraphs. (*see, e.g.*, RFP Nos. 180, 182, 184.)

*Third*, OANN already issued broad requests in its First Set of RFPs for *all* documents that support *all* the allegations in Smartmatic's Complaint. For example, RFP No. 67 requested "Documents and Communications related to the Complaint or which form, in whole or in part, a basis for the Complaint," and RFP No. 68 asked for "All Documents and Communications, […] between or among any Smartmatic Entity and any Person or entity not a party to the above-captioned case, relating to […] the Complaint." Again, this did not stop OANN from making over 50 new requests in its Second Set of RFPs regarding Smartmatic's basis for its Complaint.

And *fourth*, OANN issued sweeping requests in its Second Set of RFPs which encompass the entire crux of the Complaint. For example, RFP No. 312 seeks "Documents and Communications concerning the 2020 PRESIDENTIAL ELECTION." Requests such as this one make it clear that OANN is seeking the broadest scope of discovery possible. This approach makes duplication pervasive throughout OANN's RFPs.

### 3.      RFPs Related to Each Defamatory Statement

Yet another egregious example of duplication within OANN's RFPs is with regard to each of OANN's defamatory statements and broadcasts. In its First Set of RFPs, OANN asked for all documents relating to Herring, OANN, Herring Talent, and Herring Guests, and for all communications with or concerning Herring or its employees. (*See, e.g.*, RFP Nos. 4, 5, 6, 7, 68.) In response to these requests, Smartmatic agreed to produce *all* non-privileged documents relating to OANN. To ensure everything regarding OANN is produced, Smartmatic agreed to search terms

for any iteration of Defendant's name (e.g., Herring, One America News Network, OAN) along with the names of OANN's talent, the names of its broadcasts, and the names of OANN's guests. (*See* Appendix A at Nos. 1, 7-48, 59.) These search terms will result in Smartmatic producing every document (including communications) that mentions OANN and every document about any of the defamatory broadcasts or statements.

Despite this, OANN issued more than 50 requests in its Second Set of RFPs relating to OANN and to its broadcasts, statements, hosts, and guests. In fact, OANN made individual requests for every single defamatory broadcast cited in the Complaint. Listed below are just a *few* examples of these duplicative and unnecessary RFPs.

- **Second Set of RFPs, No. 4**: Documents regarding Herring, OAN, and/or the Herring Talent.

- **Second Set of RFPs, No. 5**: Documents regarding the Herring Guests from January 1, 2018 to present.

- **Second Set of RFPs, No. 104**: Produce Documents and Communications concerning any of the COMPLAINED OF BROADCASTS.

- **Second Set of RFPs, No. 105**: Produce Documents and Communications concerning any of the COMPLAINED OF STATEMENTS.

- **Second Set of RFPs, No. 106**: Produce Documents and Communications concerning the November 12, 2020 broadcast of After Hours with Alex Salvi, as described in Paragraphs 84 and 85 of the COMPLAINT.

- **Second Set of RFPs, No. 109**: Produce Documents and Communications concerning the November 16, 2020 broadcast of News Room, as described in Paragraph 87 of the COMPLAINT.

- **Second Set of RFPs, No. 111**: Produce Documents and Communications concerning the November 15, 2020 re-broadcast, and the original broadcast, of America This Week, as described in Paragraph 88 of the COMPLAINT.

- **Second Set of RFPs, No. 117**: Produce Documents and Communications concerning the November 16, 2020 broadcasts of Tipping Point with Kara McKinney, as described in Paragraphs 92 and 93 of the COMPLAINT.

### 4.    Internally Duplicative RFPs

The glaring internal duplication within OANN's Second Set of RFPs clearly demonstrates that the requests were issued in haste, designed to be excessive, and without good faith. Below are just a few examples of RFPs that are blatantly seeking the same documents, using slightly varied wording or time frames.

- **Second Set of RFPs, No. 205**: Produce Documents and Communications concerning the Politico Article identified in Exhibit 106 of the COMPLAINT. *(Exhibit 106 is a March 3, 2020, Politico article regarding Los Angeles County)*[5]

    - *Compare to* **Second Set of RFPs, No. 265**: Produce Documents and Communications concerning the Politico Article titled "Los Angeles County's risky voting experiment," published March 3, 2020 at https://www.politico.com/news/2020/03/03/los-angeles-county-voting-experiment-119157.

- **Second Set of RFPs, No. 433**: Produce Documents and Communications concerning pre-2020 PRESIDENTIAL ELECTION or post-2020 PRESIDENTIAL ELECTION studies, reporting, or analysis of SYSTEMS provided, maintained, or supported by You.

    - *Compare to* **Second Set of RFPs, No. 479**: Produce Documents and Communications concerning pre-2020 PRESIDENTIAL ELECTION or post-2020 PRESIDENTIAL ELECTION analysis, studies, or reports concerning electronic voting machines, equipment, or software between January 1, 2003 and the present.

- **Second Set of RFPs, No. 331**: Produce Documents and Communications concerning the past and current relationship between You and the election companies (a) Election Systems & Software; (b) Hart InterCivic; (c) DOMINION; (d) Unisyn Voting Solutions; (e) Clear Ballot; (f) Hart Verity Voting; (g) Bitza Corporation; (h) SEQUOIA; (i) Konnech Corporation; (j) Premier Election Solutions, Inc. (F/K/A Diebold Election Systems, Inc.); and (k) any other voting technology company. This includes, but is not limited to, agreements or contracts. This request has no time limit.

    - *Compare to* **Second Set of RFPs, No. 414**: Produce Documents and Communications concerning and between You and (a) DOMINION; (b)

---

[5] Smartmatic already discussed this *Politico* article with opposing counsel, and on May 1, 2023, Smartmatic agreed to run the search term, "Politico* W/30 (Los Angeles OR LA OR L.A. OR Venezuela)," to capture any documents relating to the article. (*See* Ex. C, at 15.)

Election Systems & Software, Inc.; (c) Hart Intercivic, Inc.; (d) Unisyn Voting Solutions; (e) Clear Ballot; (f) Hart Verity Voting; (g) Bitza Corporation; (h) SEQUOIA; (i) Konnech Corporation; (j) Premier Election Solutions, Inc. (F/K/A Diebold Election Systems, Inc.); or (k) any other voting technology company. *(names of voting machine companies were put in a different order)*

- **<u>Second Set of RFPs, No. 375</u>**: Produce Documents and Communications concerning and between You and officials from China, Russia, Serbia, Cuba, Venezuela, **Brazil**, the **Philippines**, Spain, **Argentina**, Bolivia, Germany, Uganda, or any other country with a history of communism or socialism or history of election irregularity, concerning SMARTMATIC SYSTEMS.

  - *Compare to* **<u>Second Set of RFPs, No. 376</u>**: Produce Documents and Communication concerning and between You and officials from any country referenced in the COMPLAINT, including but not limited to Barbados, Australia, United Kingdom, Panama, Haiti, Belgium, Singapore, Netherlands, Mexico, Ecuador, **Brazil**, Estonia, Taiwan, the **Philippines**, Colombia, **Argentina**, Honduras, Pakistan, Italy, Jamaica, and El Salvador, as referenced in Paragraph 11 of the COMPLAINT.

- **<u>Second Set of RFPs, No. 498</u>**: Produce Documents and Communications sufficient to show any actual or potential error, bug, flaw, mistake, defect, or fault in any SMARTMATIC SYSTEMS.

  - *Compare to* **<u>Second Set of RFPs, No. 500</u>**: Produce Documents and Communications concerning any actual or potential security error, bug, flaw, mistake, defect, or fault detected in any SMARTMATIC SYSTEMS.

These examples either demonstrate that OANN was careless in drafting its requests, or that it wanted to harass Smartmatic by varying the phrasing of requests slightly to justify adding more. *See Long v. Motion Picture Ass'n of Am.*, 2021 WL 5446278, at * 9 (D.D.C. Nov. 22, 2021) ("Likewise, 'discovery should be denied when a party's aim is to . . . embarrass or harass the person from whom he seeks discovery,' rather than 'seek . . . information' that may have 'bearing . . . on issues in the case.'" (omissions in original) (quoting *Oppenheimer Fund, Inc. v Sanders*, 437 U.S. 340, 352 & n.17 (1978))); *see also* Fed. R. Civil P. 26(g)(1)(B)(ii) (by signing a discovery request, an attorney certifies that it is "not interposed for any improper purpose, such as to harass,

cause unnecessary delay, or needlessly increase the cost of litigation"). Either way, it foisted an enormous burden on Smartmatic, tasking it with the job of identifying and rectifying the duplication OANN should have avoided in the first place.

> **5.    RFPs Requesting Documents That OANN Already Requested in the Parties' Negotiations**

There are also numerous examples of RFPs that are duplicative because of positions the parties have already taken in prior negotiations. Smartmatic has already negotiated the scope of documents it is willing to produce in response to the First Set of RFPs. For example, consider the below RFP comparisons:

- **First Set of RFPs, No. 17**: Documents and Communications that support Your contention that all Smartmatic Entity "case studies demonstrate, time and time again, that Smartmatic's election technology and software can ensure quick and accurate voting results," as alleged in Paragraph 45 of the Complaint. [6]

    o *Compare to* **Second Set of RFPs, No. 176**: Produce Documents and Communications concerning Your "case studies," as referenced in Paragraph 45 of the COMPLAINT including, without limitation, the case studies themselves.

- **First Set of RFPs, No. 70**: All Documents received by You or Your attorney from any third party, whether in response to a subpoena duces tecum, open records act request or otherwise, that relate to the Alleged Defamatory Statements or to the allegations in the Complaint.[7]

    o *Compare to* **Second Set of RFPs, No. 207**: Produce all Documents obtained (now or in the future) by You pursuant to any open records request, public information act request, subpoena or other form of third-party discovery relating to this ACTION. This request has no time limit.

> **6.    RFPs Duplicating Requests Already In Front of The Court**

The Second Set of RFPs reissued requests for categories of documents that the parties have already discussed at length, reached an impasse on, and asked the Court for its assistance to resolve

---

[6] Smartmatic agreed only to produce the case studies themselves because of the broad nature of the RFP 17.
[7] Smartmatic agreed to produce documents in response to RFP No. 70 in December 2022.

on May 5, 2023. For example, in its First Set of RFPs, OANN made numerous requests for documents related to Smartmatic's provision of services in the Philippines and the related government investigation. (*See, e.g.*, RFP Nos. 18, 26, 27, 28, 29.) In response, Smartmatic explained at length its position on this issue. Both parties provided case law on the issue in correspondences and argued about the issue extensively during meet and confers. After Smartmatic made certain compromises related to the Philippines, the parties agreed they had reached an impasse and included this dispute in OANN's section of the Joint Notice of Unresolved Discovery Disputes. The Joint Notice is currently outstanding.

Rather than wait for a ruling on Smartmatic's objections, however, OANN issued approximately 40 requests in its Second Set of RFPs regarding the Philippines. It would be pointless and burdensome for Smartmatic to respond to these RFPs (again) given the pending dispute. A comparison of the first and Second Set of RFPs easily shows the duplicative nature of the additional RFPs not only with the First Set of RFPs but also with prior discussions between the parties. (*Compare* First Set of RFPs, Nos. 26, 27, 28, 394 with Second Set of RFPs, Nos. 352, 346, 353, 354, 355, 390, 393, 397, 398, 457).

The categories of duplication described here are representative of the glaring duplication pervasive throughout OANN's Second Set of RFPs. While it would be unreasonable and time-consuming for Smartmatic to describe the problems each duplicative RFP presents, Smartmatic has attached, as Appendix B to this motion, a table cross-referencing OANN's Second Set of RFPs with its First Set and with other requests within the Second Set. While it could not possibly capture every duplicative RFP, Appendix B demonstrates the striking degree of overlap between the requests. This overlap warrants the grant of Smartmatic's motion for a protective order. *Gopher Media, LLC v. Spain*, 2020 WL 6741675, at *4 (S.D. Cal. Nov. 17, 2020) (finding that plaintiff's

document requests, containing six similar requests relating to "communications regarding plaintiff," were duplicative and abusive).

### 7.    The Undue Burden of Responding to the Second Set of RFPs Outweighs Any Benefit to OANN

Based on the pervasive duplication of OANN's requests, it is clear that they attempt to foist an undue burden on Smartmatic. And that burden is by no measure outweighed by the benefit OANN would receive if Smartmatic were forced to address its 1,500 RFPs individually. OANN will already receive over three million documents from Smartmatic, which doubtless includes everything OANN will need to aid its defense in this litigation. (*See* Appendix A.) As noted above, OANN will receive documents related to the 2020 election; Smartmatic's election technology in Los Angeles County; the security of Smartmatic's election technology; Dominion Voting Systems; Sequoia Voting Systems; OANN's actual malice; the falsity of OANN's statements; OANN and its broadcasts, hosts, employees, and guests; damages; Smartmatic's customers and contracts; Smartmatic's bids for the provision of election technology; and Smartmatic's previous election projects. *Mohammed v. Daniels*, No. 5:13-CT-3077-FL, 2015 WL 4758968, at *2 (E.D.N.C. Aug. 12, 2015) (denying party's motion to compel "in light of the large volume of materials defendants already provided plaintiff, plaintiff's current discovery requests appear to be a fishing expedition.")

Even if there were some small groups of documents requested by OANN's Second Set of RFPs that were not covered in the First Set of RFPs, the volume and relevance of such documents would be trivial. And any small production that may result would come at the expense of disregarding Smartmatic's active engagement in the discovery process for the last eight months, the time, resources, and expense to Smartmatic required to address 1,500 new requests, and then the time, resources, and expense Smartmatic would need to spend discussing the same discovery

disputes for another eight months. Indeed, Smartmatic has (i) analyzed over 450 search terms, (ii) currently agreed to run over 350 search terms that will result in the production of 3.2 million documents, (iii) spent over four months negotiating search terms with OANN, (iv) exchanged dozens of communications with OANN over search terms, and (v) sought court intervention on certain discovery disputes to gain guidance on additional search terms depending on the outcome. This has all occurred over the past four to six months. To now interject more than 1,500 new RFPs into the process is simply unreasonable and unnecessary.

OANN has failed to comply with its obligation to serve only non-duplicative requests proportional to the needs of the case. Fed. R. Civ. P. 26, advisory committee note to 1983 amendments. Rule 26(b) "seeks to reduce repetitiveness and to oblige lawyers to think through their discovery activities in advance so that full utilization is made of each…document request…." OANN's Second Set of RFPs serves little to no benefit beyond the previous requests, which warrants the grant of Smartmatic's motion. *See, e.g.*, *Cruz v. United States*, 2016 WL 727066, at *2 (S.D. Cal. Feb. 24, 2016) (denying motion to compel where discovery "requested a specific subset of the documents" encompassed by previous requests); *In re Shur*, 225 B.R. 295, 299 (E.D.N.Y. 1998) ("Here, movant fails to argue any compelling (or special) need to justify what, in light of its other broad documents requests, may result in redundant discovery."); *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 376–77 (S.D.N.Y. 2006) (denying motion to compel discovery where documents would be produced in response to other discovery requests).

### B.    The Number of RFPs in OANN's Second Set is Unreasonably Excessive

Courts from various jurisdictions have agreed that an excessive number of discovery requests independently justifies the grant of a protective order. *See Burke v. Air Serv Int'l, Inc.*, 2009 WL 10696212 (D.D.C. Aug. 11, 2009) (finding that 210 RFPs were burdensome); *Stokes v. Interline Brands Inc.*, 2013 WL 6056886, at *2 (N.D. Cal. Nov. 14, 2013) ("In the interest of

21

judicial economy, this court declines to determine the propriety of each of Defendant's 1059 [discovery requests] in the 162-page submission. Rather, the court finds that the sheer volume of the requests for admission is unduly burdensome and oppressive."). This is particularly true where the excessive discovery requests are duplicative. *See Russo v. Lopez*, 2012 WL 1463591 (D. Nev. Apr. 27, 2012) (issuance of 792 document requests that were duplicative with the previously issued 217 requests warranted grant of a protective order). What constitutes an excessive number of RFPs depends upon whether they are proportional to the requesting party's needs in the case. *See* Fed. R. Civ. P. 26(b)(1); *see, e.g., Burke*, 2009 WL 10696212 at *8 ("the Court determines that the burden of answering 210 total document requests outweighs the likely benefit."); *Bilek v. Nat'l Congress of Emps., Inc.*, 2021 WL 320610, at *1 (N.D. Ill. Feb. 1, 2021) (finding that even though the case was a complex class action, 260 interrogatories and requests for production were not proportional to the needs of the case).

Here, OANN's number of RFPs are unreasonably excessive. In October 2022, OANN served its First Set of RFPs on each of the three Plaintiff entities, for a total of 306 requests. Smartmatic has spent six months meeting and conferring with OANN on these over 300 requests to come to an agreement on search terms to be applied to produce documents. OANN's Second Set of RFPs contained 505 requests for each Plaintiff entity, for a total of 1,515 requests. To date, OANN has now served Smartmatic with 1,821 requests. Given the scope of discovery that has already occurred, a high volume of RFPs is not proportional to the needs of the case.

The excessive number of RFPs places an enormous burden on Smartmatic. To respond to the Second Set of RFPs, Smartmatic must analyze 1,500 requests individually, in comparison with each other, in comparison with the First Set of RFPs, and as it relates to the parties' extensive prior negotiations. The sheer volume makes it impossible to even determine the validity of each request.

The Advisory Committee on Rules has previously recognized that a protective order is a proper remedy where the requests to admit are "so voluminous and so framed that the answering party finds the task of identifying what is in dispute and what is not unduly burdensome." Fed R. Civ. P. 36 advisory committee's note to 1970 amendment. Specifically objecting to the hundreds of duplicative RFPs, in sufficient detail, and reiterating a description of which documents Smartmatic has already agreed to produce in response, would require hundreds of hours of work. Smartmatic would then be required to spend dozens if not hundreds of additional hours engaging in further meet-and-confer negotiations regarding the Second Set of RFPs. Such an unreasonable burden would strain Smartmatic's ability to complete discovery within the constraints of the Court's current schedule, and should not be imposed on Smartmatic where OANN has "used discovery to wage a war of attrition as a device to coerce the [responding party]." *Roberts v. Lyons*, 131 F.R.D. 75, 77 (E.D. Penn. 1990) (granting protective order where "plaintiff's counsel has ignored the first element of the standard . . . which is designed to minimize redundancy in discovery and encourage attorneys to be sensitive to the comparative costs of different methods of securing information.").

The excessive number of RFPs coupled with their duplicative nature warrants a protective order that quashes the entirety of OANN's Second Set of RFPs. *Green v. Las Vegas Metro. Police Dep't,* 2021 WL 4149017 (D. Nev. Aug. 12, 2021) (granting the motion for protective order against an entire set of requests because they were excessive (1,179 requests) and duplicative); *Rapaport v. Soffer*, 2012 WL 6800377 (D. Nev. Dec. 31, 2012) (granting motion for protective order where the 843 requests were found to be excessive in number and thus burdensome); *United States v. Howard*, 360 F.2d 373, 381 (3d Cir. 1966) (denying discovery requests where the requests were "more a matter of form and tactics than of substance.") OANN's Second Set of RFPs should not stand.

## V.   SANCTIONS

Although Rule 26 permits broad discovery, "[t]he information explosion of recent decades has greatly increased both the potential cost of wide-ranging discovery and the potential for discovery to be used as an instrument for delay or oppression." *See* Fed. R. Civ. P. 26 advisory committee's notes to 1993 amendment. "Thus the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues by overuse of discovery . . . ." Fed. R. Civ. P. 26 advisory committee's note to 1983 amendment. Rule 37 instructs that if a motion for a protective order is granted "the court must, […] require the party […] whose conduct necessitated the motion, [….] to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

The Court should not permit OANN to further delay the litigation through gamesmanship and dilatory tactics. As explained above and demonstrated further in Appendix B, OANN's Second Set of RFPs are overtly duplicative and excessive in number. OANN's abusive issuance of the Second Set of RFPs and refusal to materially narrow them in response to Smartmatic's overarching objection necessitated the filing of this motion, forcing Smartmatic to expend its resources on an unnecessary dispute. Smartmatic should have never had to undertake the meticulous task of identifying hundreds of duplicative RFPs in the first place.

It is clear that OANN's new counsel used the Second Set of RFPs to buy itself time and hinder Smartmatic's ability to move discovery forward. In light of such tactics, and considering OANN's overall refusal to meaningfully engage in the discovery process, Smartmatic seeks guidance from the Court as to whether a request for sanctions would be appropriate here.

## VI.    CONCLUSION

Pursuant to the arguments set forth above, Smartmatic respectfully moves the Court to issue a protective order related to OANN's Second Set of RFPs and whatever additional relief the Court finds to be appropriate.


Date: July 7, 2023

*/s/ J. Erik Connolly*

J. Erik Connolly (D.C. Bar No. IL0099)
Nicole E. Wrigley (D.C. Bar No. IL0101)
Caitlin A. Kovacs (admitted pro hac vice)
Olivia Sullivan (admitted pro hac vice)
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312.212.4949
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
ckovacs@beneschlaw.com
osullivan@beneschlaw.com

*Attorneys for the Plaintiffs Smartmatic USA*
*Corp., Smartmatic International Holding B.V.,*
*and SGO Corporation Limited*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 7th day of July, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which I understand to have served counsel for the parties.

  /s/ J. Erik Connolly
J. Erik Connolly (D.C. Bar No. IL0099)
*One of the Attorneys for the Plaintiffs Smartmatic USA*
*Corp., Smartmatic International Holding B.V.,*
*and SGO Corporation Limited*

26