# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SMARTMATIC USA CORP., *et al.*,

        Plaintiffs,

        v.

HERRING NETWORKS, INC.,

        Defendant.

No. 1:21-cv-02900-CJN

Judge Carl J. Nichols

## JOINT NOTICE OF UNRESOLVED DISCOVERY DISPUTES

Pursuant to the Court's May 5, 2023 Order, plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited (together, "Plaintiffs" or "Smartmatic"), and defendant Herring Networks, Inc. ("Herring" or "OANN"), through undersigned counsel, hereby submit a Joint Notice to the Court summarizing their discovery disputes and outlining each party's position.

### Issues Related to Plaintiffs' Discovery Requests that Remain Unresolved

*Smartmatic-Drafted Introduction to Smartmatic's Discovery Issues with OANN*

Since written discovery began in October 2022, Smartmatic has worked in good faith with OANN to resolve discovery disputes and move the discovery process forward. Through the process of meeting-and-conferring and exchanging correspondence, the parties resolved a number of discovery disputes, but many remain unresolved. The unresolved issues raised by Smartmatic in this submission include: (1) OANN's failure to produce documents; (2) OANN's failure to disclose relevant witnesses; (3) OANN's failure to produce financial records; and (4) OANN's failure to agree to a date certain for completion of document production. Smartmatic notes that these are not the only unresolved issues concerning OANN's discovery responses, and Smartmatic reserves the right to seek relief regarding other issues not raised herein.

**Issue One:** OANN's Failure to Produce Documents

***Smartmatic's Position***

Smartmatic served its first set of Requests for production to OANN in October 2022. To date, OANN has produced 97 documents in response. Most of the documents are articles about Smartmatic that OANN's counsel appear to have located in December 2022, well after the defamatory reports were published. OANN has missed two critical production deadlines, including (1) an April 7 deadline for a rolling production and (2) April 28 for production of all documents containing the term "Smartmatic."

OANN may offer two excuses for its failure to produce any meaningful document over the last six months. One, OANN may claim that it did not agree to the April 28 deadline for production of all documents containing the term "Smartmatic." Smartmatic has correspondence with OANN confirming the deadline. Two, OANN may claim that it did not make any productions because the parties have not agreed on ***all*** search terms. But, Smartmatic has correspondence confirming that the parties agreed on more than 100 searches, including the term "Smartmatic." There is no reason that OANN has not produced any documents hitting on the agreed-upon search terms.

Smartmatic requests that the Court enter an order requiring OANN to produce all relevant documents hitting on the agreed-upon search terms, including the term "Smartmatic," within 14 days of this submission. Smartmatic and OANN agreed upon the search terms more than a month ago.

***Herring's Response***

Herring has not missed any deadlines, and Herring has explained this issue to Plaintiffs (which a complete set of the relevant correspondence would reveal if shared with the Court). The parties haven't even agreed on a complete set of search terms yet. Moreover, the relief requested

by Plaintiffs (production within 14 days, i.e. **May 19**) deviates from Herring's plan to produce by **May 24** by only five days.

The parties exchanged initial written discovery responses on December 16, 2022. Since then, Herring devoted its e-discovery resources to collecting and staging data while the parties negotiated the scope of their discovery requests and search terms to run against their data sets. The parties exchanged 35 letters and participated in seven meet and confer calls.

To date, Herring has produced (1) all documents referenced in its Answer; (2) Herring's policies and procedures; and (3) transcripts and videos of the broadcasts at issue. Herring has not yet produced electronic documents because the ESI Protocol [Dkt No. 50] provides that "the parties agree to meet and confer over the use of search tools and methodologies, ***including the use of search terms*** and TAR, ***before any particular tool or methodology is applied***." (Emphasis added.)

Despite the lack of agreement on a complete set of search terms, Herring, in response to Plaintiffs' recent suggestion, has run the incomplete set of 209 agreed searches on its data set and is actively reviewing responsive documents (including ones that refer to "Smartmatic") for production by May 24. There is no cause for the Court to accelerate that timeline by five days.

**Issue Two:** **OANN's Failure to Disclose Relevant Witnesses**

***Smartmatic's Position***

For months, Smartmatic has asked OANN to identify relevant witnesses and custodians. Specifically, through interrogatories and parties' correspondence, Smartmatic has asked OANN to identify producers, editors, bookers, fact-checkers, directors, and managers involved with the defamatory broadcasts at issue as well as OANN's general operations that impact the defamatory broadcasts. OANN has not identified any of these individuals, who are relevant witnesses and custodians.

OANN's pattern of concealing the identity of relevant witnesses and custodians started from outset of discovery.  In its Rule 26(a)(1) disclosures, OANN identified only *five* individuals affiliated with OANN as being relevant witnesses, an impossible figure given that more than five different programs are at issue in this case and each program necessarily has multiple people involved in its production.

Based on this insufficient answer, on October 21, 2022, Smartmatic issued interrogatories to OANN seeking the identity of the individuals involved in the at-issue shows, including the categories identified above.  In response, OANN identified *no* individuals who were not already referenced in Smartmatic's complaint, e.g., on-air hosts who were apparent to anyone watching the shows.  Eventually, on April 25, OANN provided a supplemental response that identified *one* additional individual.  To date, the only individuals OANN has identified in response to Smartmatic's interrogatories and requests for additional custodians, are on-air hosts, C-suite executives, one accountant, and one videographer.

Smartmatic requests that the Court enter an order requiring OANN, within 14 days of this submission, to supplement their responses to Interrogatories 1, 2, 3 and 5 with a complete listing of the individuals requested by those interrogatories.

### Herring's Response

Ironically, Plaintiffs themselves are slow-playing disclosure of their own custodians, having identified in this case 47 (21 of whom were just disclosed on March 28), compared to nearly 100 custodians disclosed by Plaintiffs in their related litigation against Newsmax.  Herring doesn't understand why all custodians identified by Plaintiffs in the Newsmax case have not been identified by Plaintiffs here, and that's an issue Herring may need to seek Court relief on soon if Plaintiffs continue to sandbag Herring on custodians.

In response to interrogatories, Herring has identified 20 custodians. Moreover, Herring produced documents on March 3, 2023 that identified other individuals potentially affiliated with the broadcasts at issue. This production complies with FRCP 33(d) and plainly rebuts Plaintiffs' argument that Herring has failed to disclose potentially relevant witnesses. Moreover, Plaintiffs have failed to suggest a single custodian that Herring has rejected. In contrast, Herring has identified three custodians that Plaintiffs have refused to agree to (which Herring may need to seek relief from the Court on in the near future if Plaintiffs don't relent).

Plaintiffs' comments about Rule 26 disclosures similarly miss the mark. Rule 26 disclosures are not a witness list; they list people upon whom the party may rely in the proceeding. Moreover, Herring will diligently supplement its Rule 26 disclosures as discovery proceeds. Finally, Herring is willing to consider any additional custodians the parties identify. No doubt both sides will identify more custodians as search terms are finalized and related ESI is produced and reviewed.

**Issue Three:** **OANN's Failure to Produce Financial Records (RFP Nos. 49 and 50)**

*Smartmatic's Position*

More than six months ago, in October 2022, Smartmatic asked OANN to produce documents relating to OANN's financial condition, including documents that would show how OANN financially benefited from the disinformation campaign at issue in the case. To date, OANN has offered to produce only "communications concerning any relationship between [OANN's] financials and any Smartmatic entity or the alleged defamatory statements," as well as "any documents reflecting any revenue generated by the specific broadcasts containing the alleged defamatory statements. . ."

OANN's proposal is too narrow. Smartmatic has alleged that OANN embraced the disinformation campaign to expand its audience base, increase its advertising revenue, and make

itself a more profitable enterprise.  OANN's financial records—before, during, and after the disinformation campaign—is directly relevant to that motive.  The before, during, and after picture will show how OANN used the disinformation to increase and drive revenue, becoming unjustly enriched at Smartmatic's expense.  Smartmatic needs a more wholesome picture of OANN's financials to develop this evidence and contextualize the spike in revenue that OANN obtained because of the disinformation campaign.  Evidence of motive, including financial motive, is relevant to establishing actual malice.

Smartmatic requests that the Court enter an order requiring OANN to produce documents responsive RFPs 49 and 50, which request documents relating to OANN's financial condition, including but not limited to audited financials.  There is no legitimate burden to producing these readily available documents.

### Herring's Response

Plaintiffs mischaracterize the discovery record.  As Herring has made clear to Plaintiffs, Herring is willing to produce: (i) documents concerning any relationship between Herring's financials and either Plaintiffs or the alleged defamatory statements; and (ii) documents reflecting any revenue generated by the specific broadcasts containing the alleged defamatory statements. But Plaintiffs rejected that proposal without good reason.

As set forth above, the parties mutually exchanged discovery responses on December 16, 2022, pursuant to agreement.  The parties did not engage in meet-and-confer efforts until January 25, 2023.  Herring made its proposal regarding these document requests during the parties' first meet-and-confer conference on January 25 and memorialized the proposal in a letter on February 17.  Plaintiffs have repeatedly rejected Herring's proposal.  Plaintiffs cannot persuasively contend that Herring is to blame for Plaintiffs' not raising this issue earlier with the Court.

Plaintiffs also cannot reasonably argue that wide-ranging discovery into Herring's financial condition is relevant to the issue of actual malice.  To that end, Plaintiffs cannot rely on this Court's holding in *US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42, 64 (D.D.C. 2021).  The *Powell* ruling was related to a dispositive motion, not a discovery dispute, and the Court simply held that, while relevant, financial motive alone cannot satisfy plaintiffs' pleading burden as to actual malice. Extensive financial discovery is premature at this stage of a defamation suit because this matter is not ripe for damages-related discovery.  *Houlahan v. World Wide Assoc. of Specialty Programs and Sch.*, 2006 WL 8433976, *9 (D.D.C. Oct. 27, 2006) (denying plaintiff's motion to compel documents relating to defendants' financial records because the requests were "overly broad" and "not relevant to Defendant's knowledge regarding the truth or falsity of [the] alleged defamatory statements").

**Issue Four:** **OANN's Failure to Agree to a Date Certain for Completion of Document Production**

***Plaintiffs' Position***

On March 31, Smartmatic and OANN agreed on a schedule that would result in the substantial completion of document production by May 19. Smartmatic can comply with that deadline.

OANN has indicated that it will not comply with the May 19 deadline.  OANN's failure to comply with the deadline, notwithstanding having Smartmatic's RFPs for over six months, and an agreement among the parties on over 100 search terms for over a month, prejudices Smartmatic's ability to conduct depositions, complete fact discovery, and move this case forward.

Smartmatic requests that the Court enter an order requiring OANN to substantially complete its document production by May 31. Smartmatic further requests that the Court set

interim deadlines by which the parties will complete negotiations over search terms and/or obtain an order from the Court on those search terms.

***Herring's Response***

Plaintiffs again mischaracterize the discovery record.  The parties agreed to exchange initial discovery responses by December 16, 2022, and Herring did exactly that.  Beginning in late January, the parties engaged in substantial meet-and-confer efforts regarding the scope of discovery and did not substantially finalize the dramatically narrowed substantive scope of Plaintiffs' requests until April.

Moreover, the previously agreed-upon deadline for document production was **not** a deadline to complete document production (after all, fact discovery under the original schedule doesn't even close until December); it was a deadline for **a** document production.  And that agreed deadline was contingent on the parties' commitment to finalize mutual search terms by April 21, 2023 (which didn't happen).

This is Herring's first broad collection and review of documents related to litigation concerning media coverage of the 2020 U.S. presidential election.  Plaintiffs have a clear advantage in potentially completing document production by May 31, having produced more than 5 million pages of documents in their related litigation against Newsmax.  Notably, Plaintiffs have not produced anywhere near that number of documents in this case, despite having agreed to do so by April 7 (in fact, Plaintiffs have produced less than 300,000 pages of documents so far).

Given that Plaintiffs say they can complete their document production by May 31, the Court should order that they do so.  In contrast, given that (1) fact discovery does not close until December, (2) the parties have not agreed to a complete set of search terms, (3) the ESI Protocol says a complete set is required before application, and (4) Herring is actively running, per Plaintiffs' recent suggestion, an incomplete set of agreed-to search terms (including "Smartmatic")

and reviewing those documents for production by May 24, an order requiring Herring's document production to be completed by May 31 would be draconian.

### Issues Related to Herring's Discovery Requests that Remain Unresolved

*Herring-Drafted Introduction to Herring's Discovery Issues with Plaintiffs*

In addition to the issues expressly raised in this Joint Notice, Herring notes that additional discovery disputes are ongoing and may be raised before the Court at a later date. Herring continues to work with Plaintiffs in good faith to resolve these issues without the need to involve the Court. However, Herring expressly reserves its right to move to compel on any issues not raised herein, and it is not Herring's intent to waive these additional discovery issues by electing not to include them in this Joint Notice.

The parties have met and conferred multiple times over the course of four months to attempt to resolve existing discovery disputes and have resolved several disputes (subject to reservation of rights). There are, however, disputes remaining with respect to Herring's First Requests for Production ("RFPs") and Interrogatories (together, "Requests"). The remaining disputes involve Requests related to or concerning the following seven issues: (1) governmental investigations into Smartmatic entity business practices; (2) criticisms and reputational issues of Smartmatic entities; (3) Plaintiffs' lack of damages; (4) documents produced in, created for, or arising out of the "Related Litigation" (*e.g.*, *Smartmatic USA Corp., et al. v. Fox News Network, LLC, et al.*, Index No. 151136-2021 (New York County, New York); *Smartmatic USA Corp., et al. v. Newsmax Media, Inc.*, Case No. N21C-11-028 EMD (Del. Super. Ct.); *Smartmatic USA Corp., et al. v. Sidney Powell*, Case No. 21-cv-02995 (D.D.C.); and *Smartmatic USA Corp., et al. v. Lindell, et al.*, Case No. 22-cv-00098 (D. Minn.); (5) documents related to Smartmatic entity Board of Directors meetings; (6) vendors and other manufacturers that may possess relevant information; and (7) documents received in response to subpoenas in this case.

**Issue One**: **Governmental Investigations into Smartmatic Entity Business Practices (Herring's RFPs 27, 28, 40, 41; Interrogatory 6)**

*Herring's Position*

The Requests relate to investigations into Smartmatic entity business practices, domestic and abroad, including investigations by the U.S. DOJ and the U.S. Treasury's Committee on Foreign Investment in the United States.  Some investigations arise out of Smartmatic entity involvement in the 2004 Venezuela and 2016 Philippines elections, while others relate to Smartmatic entity corrupt business practices and international investments.  Plaintiffs refuse to produce responsive documents, claiming irrelevance and a non-binding discovery order from another court in separate litigation because the investigations do not directly involve the 2020 U.S. election.

However, Plaintiffs' allegations of defamation are not limited to the 2020 U.S. election. Rather, the allegedly defamatory statements involve Smartmatic entity participation in foreign elections and ties with foreign governments before and after the election.  Plaintiffs' Complaint specifically refers to Herring's reporting on "Smartmatic's alleged ties to foreign governments," including Venezuela, as "another aspect to the disinformation campaign."  (Compl.  ¶ 93.) Herring's defenses rely, in part, on the truth or substantial truth of the allegedly defamatory statements and that Herring did not act with actual malice, which are appropriate subjects of discovery.  *See Tavouloureas v. Piro*, 93 F.R.D. 11, 22 (D.D.C. 1981) (granting defendant's motion to compel where information sought would bear on the truth or falsity of the allegedly defamatory statements).  The information requested also bears on Plaintiffs' reputation, which is relevant in a defamation case. *See Camphausen v. Schweitzer*, 2010 WL 4539452 at *3 (N.D. Ill. Nov. 3, 2010) (granting defendant's motion to compel discovery in defamation case concerning plaintiff's prior misconduct and reputation).  Moreover, Plaintiffs' counsel Erik Connolly claimed

10

in an interview with CNN's Don Lemon on April 21, 2023 that Plaintiffs' alleged "damages are on a global scale, not just limited to the United States."  Herring should be allowed to discover information about Smartmatic entity "global" reputations.

***Smartmatic's Response***

Smartmatic's Complaint is predicated on OANN's false reporting that Smartmatic rigged the 2020 Presidential election.  Yet, OANN wants to probe "investigations" from years ago that have nothing to do with that election and in which no allegation was made that Smartmatic "rigged" an election.  Evidence concerning these "investigations" that are unrelated to the misconduct alleged by OANN are neither admissible as proof of Smartmatic's reputation nor to mitigate Smartmatic's damages, and it is not even discoverable.  *See, e.g., Crane v. N.Y. World Telegram Corp.*, 308 N.Y. 470, 478 (1955) ("[T]he rule is clear that, while defendants may offer proof of plaintiff's bad general reputation prior to the publication, to reduce the value of the injured interest, he may not plead or prove for that purpose 'specific acts, or instances of plaintiff's misconduct' having no connection with the charge of libel."); *see also* 2 Law of Defamation § 9:60 (2d ed.) ("The common-law rule, is that […] a defamation suit places the plaintiff's reputation at issue, but does not place the plaintiff's entire prior life's record at issue, allowing the gratuitous introduction of prior specific acts.").  Indeed, as Smartmatic previously informed OANN, the Court in *Smartmatic v. Fox Corp. et al*. denied defendants' motion to compel documents related to the 2016 Philippines elections, which OANN seeks here.

Smartmatic has agreed to produce documents related to "investigations" that could possibly have any bearing on claims or defenses in this case, including: (1) documents related to its acquisition of Sequoia and CFIUS's corresponding probe into Smartmatic's alleged connections to Venezuela; (2) communications with customers or potential customers in response to their

inquiries about government investigation involving Smartmatic; and (3) documents in response to broad, already agreed-upon search terms related to Smartmatic's operations in Venezuela.  OANN is not entitled to any additional discovery.

**Issue Two**: Criticisms and Reputational Issues of Plaintiffs (Herring's RFPs 15, 26, 100; Interrogatory 9)

***Herring's Position***

Herring's Requests relate to concerns raised about the reliability of Smartmatic entity technology.  A history of technological failures necessarily impacts Plaintiffs' claims that the allegedly defamatory statements caused reputational harm.  Herring's position is that Plaintiffs' reputation before, and after, the 2020 U.S. election was independently damaged as a result of public criticism of Smartmatic technology due to security vulnerabilities, glitches, tabulation errors, or other shortfalls, and therefore, harm cannot be attributed to Herring's statements.

Herring has proposed narrowing these Requests to only documents that reflect legitimate technological concerns that actually resulted in failures, repairs, errors, or investigations related to same.  Despite Herring's proposal to narrow these Requests to reach a compromise in good faith, Plaintiffs continue to object to these Requests.

As an example of the unreasonable position Plaintiffs have taken, Plaintiffs have refused to respond in any fashion to RFP 100, which seeks documents related to analyses of security issues and/or vulnerabilities of Smartmatic entity technology performed by election security companies such as MITRE (a not-for-profit organization focused on advising on topics of national security), the National Election Security Laboratory, Professor Alex Halderman, and any state or federal agency (such as the U.S. Cybersecurity and Infrastructure Security Agency (CISA)).  This information related to third-party assessments of the security risks of Smartmatic entity technology is directly relevant to Plaintiffs' claims, especially considering their own contentions in the

Complaint that Plaintiffs purportedly have a spotless reputation as far as technology security is concerned. ("Since 2003, Smartmatic's election technology has processed more than 5 billion secure votes worldwide without a single security breach.") (Compl. ¶ 41)).

***Smartmatic's Response***

OANN mischaracterizes the nature of Smartmatic's Complaint. OANN did not merely report that Smartmatic's technology had "vulnerabilities." Rather, OANN reported that Smartmatic rigged the 2020 Presidential election. At issue is whether Smartmatic, in fact, rigged the 2020 election, as OANN reported. If OANN also wants to offer proof that Smartmatic had a poor reputation, it is limited to proof of prior instances in which Smartmatic rigged other elections. *See, e.g., Crane*, 308 N.Y. at 478. OANN's attempt to turn this case into a trial on whether a hacker could have theoretically breached Smartmatic's technology is a red herring.

OANN's position is also misplaced because Smartmatic has already agreed to produce documents related to criticism and reputational issues. ***First***, Smartmatic agreed to 10 broad search terms that will result in the production of thousands of documents regarding Smartmatic's reputation, brand, and position in the market. ***Second***, Smartmatic has agreed to produce documents it produced to customers who inquired as to government investigations. ***Third***, Smartmatic has agreed to produce documents relating to any security breach of Smartmatic election technology, incidents in which an entity, government, or person made allegations of election fraud or tampering by Smartmatic, criticisms of Smartmatic raised by media outlets, negative feedback about Smartmatic's election technology expressed by government officials, media outlets, or cyber security experts, and certification, authentication, or validation of Smartmatic's election technology by the Carter Center, SLI Compliances, and

PriceWaterhouseCoopers.   OANN's additional requests relating to reputation and criticism are overly broad and unduly burdensome, and its "proposed narrowing" is not sufficient.

**Issue Three: Plaintiffs' Lack of Damages (RFPs 11, 29, 30, 38, 76, 86)**

*Herring's Position*

Herring's Requests relate to whether Plaintiffs suffered damages as a result of Herring's alleged defamatory statements, or, rather, whether Plaintiffs' purported drop in revenue or enterprise value was a result of ongoing reputational issues unrelated to Herring's actions. Plaintiffs object on the grounds of overbreadth, irrelevance, or undue burden, arguing that these documents involve international concerns only.   However, Plaintiffs' damages theory in this case is exceedingly broad.   In fact, lead counsel for Plaintiffs, Erik Connolly, has made several statements in the press recently about the breadth of Plaintiffs' damages theory.   In his CNN interview two weeks ago, he said Plaintiffs "are looking for recovery of the enterprise value loss." He further described the alleged damages as follows:

> Whenever you are measuring these types of damages, you have to look at it as the total opportunities that we lost.  And the opportunities that we lost, and this is what we are experiencing day after day, **is global**.  We are suffering these consequences in **Asia**, we are suffering these consequences in **Africa**, we are suffering these consequences in **South America**, and in **Europe**.  So, when you take into consideration damages, you look at the overall damage done to us **globally**, and you look at how it impacted our enterprise value. . . .   Smartmatic, before this disinformation, had a **global reputation** as being the election technology company that you go to. . . .   Now, their reputation **globally**, is a company that has rigged elections. . . .

(Emphasis added.)   It is hard to imagine a broader theory of damages than what Plaintiffs' lead counsel has outlined, and Herring is entitled to explore that in discovery.   Herring must be allowed to discover why Plaintiffs purportedly lost contracts in Venezuela and the Philippines and explore any issues relating to other countries.

*Smartmatic's Response*

This issue is premature.  Smartmatic has already agreed to produce documents in response to more than 85 broad search terms related to damages, which will result in the production of tens of thousands of documents.  ***First***, Smartmatic has agreed to more than 35 broad search terms that will identify documents relating to Smartmatic's lost revenue, profits, and earnings, lost and terminated contracts, canceled projects, financial forecasts, and more.  And ***second***, Smartmatic has agreed to more than 50 broad search terms designed to identify every relevant document relating to Smartmatic's existing or potential customers.

According to OANN, the fact that Smartmatic objects to RFP Nos. 11, 29, 30, 38, 76, and 86 means that Smartmatic is refusing to produce documents regarding damages.  This is false for the following reasons:

- RPF Nos. 11 and 76 seek Smartmatic employees' files.  These requests are not related to damages.

- RFP No. 29 seeks documents about Smartmatic's contract with the Philippines.  To the extent Smartmatic's broad search terms about customer contracts hit on Smartmatic's contracts with the Philippines, Smartmatic will produce them.

- RFP No. 30 seeks documents related to the election in Kenya, which occurred in 2022, many months after OANN's defamatory broadcasts.  OANN has not articulated why documents relating to the Kenyan election are relevant to this case.

- RFP No. 38 seeks documents regarding Smartmatic's arbitration with Venezuela.  Smartmatic initiated this arbitration and it has nothing to do with whether Smartmatic lost business in 2021 after OANN's disinformation campaign.  Smartmatic also agreed to more than 15 broad search terms regarding Smartmatic's business with Venezuela.

- RFP No. 86 requests minutes from meetings of Smartmatic's board of directors.  As discussed below, Smartmatic has agreed to produce such documents from Smartmatic USA.

## Issue Four: Related Litigation Documents (RFP 71)

### *Herring's Position*

Herring requested that Plaintiffs produce discovery and hearing information, i.e. written discovery requests and responses; subpoenas and responses; open records act requests and

responses; deposition notices, transcripts, and videos; hearing transcripts; and similar material from any Related Litigation with Smartmatic as a party.  Herring seeks this information to avoid duplication of efforts and to discover positions Plaintiffs have taken in Related Litigation that may be contrary to positions Plaintiffs are taking here.

Importantly, the scope of this Request is consistent with the type of information being produced in *Smartmatic USA Corp., et al. v. Fox News Network, LLC, et al*., Index No. 151136-2021 (New York County, New York).  In fact, Plaintiffs are familiar with the New York court's April 17, 2023, Order to Show Cause why the Fox defendants should not be required to produce deposition transcripts, exhibits, and errata sheets for all Fox Corporation witnesses in its litigation with Dominion.  The issue resolved when the parties stipulated that Fox would produce the deposition transcripts, deposition exhibits, errata sheets and all responsive documents from several Fox Corporation witnesses.  *Smartmatic USA Corp., et al. v. Fox News Network, LLC, et al.*, at NYSCEF Doc. No. 1545 (April 26, 2023).

Nevertheless, Plaintiffs object to a similar production here.  After protracted negotiation, Plaintiffs agreed to produce all documents they have produced in the Related Litigation.  However, Plaintiffs have not followed through, without reasonable explanation.  Plaintiffs have produced millions of pages of documents in their litigation with Newsmax, but have only produced 222,478 pages to date to Herring and have failed to provide a valid reason for their delay.  Additionally, Plaintiffs refuse to produce any Related Litigation deposition or hearing transcripts or subpoena responses despite seeking an ***order to show cause*** forcing Fox to do precisely what Herring is asking Plaintiffs to do here.

***Smartmatic's Response***

OANN has manufactured a dispute that does not actually exist. From the outset of discovery, Smartmatic agreed to produce the documents it produced to Newsmax and Fox, and at no point in time have Smartmatic's actions or representations indicated it would not follow through on the agreement. Smartmatic produced documents from the "Related Litigation" on February 3, March 3, and April 7.

As detailed above, the parties agreed upon a schedule for the production of documents, which required Smartmatic to make its next production on May 5. Smartmatic was both ready and willing to produce additional documents from the "Related Litigation" on that date. OANN has unilaterally pushed out the deadlines for its document production and demanded that Smartmatic produce documents immediately. To render this issue moot, Smartmatic will produce all documents it produced in the "Related Litigation" by May 19.

With regard to the production of deposition transcripts from the "Related Litigation," OANN mischaracterizes Smartmatic's position. On February 22, in a letter to OANN, Smartmatic told OANN it would "consider producing transcripts after the depositions have taken place." Smartmatic explained that depositions had not occurred in the "Related Litigation" (which is still the case). In contrast to the relationship between Smartmatic's and Dominion's lawsuits against Fox, there may be depositions in Smartmatic's other lawsuits that are not relevant to Smartmatic's claims against OANN, and Smartmatic will assess relevancy once a deposition has occurred. Smartmatic's position on the production of deposition transcripts, exhibits, and errata sheets is consistent across its cases—if they are relevant, they should be produced. The same holds true for any hearing transcripts. There is nothing for the Court to rule on here.

**Issue Five: Documents Related to Smartmatic Entity Board of Directors Meetings**

***Herring's Position***

RFP No. 86 requests all meeting minutes and other documents concerning meetings of any Smartmatic entity Board of Directors.  To address Plaintiffs' overbreadth and relevance objections, Herring offered to narrow its Request to meeting minutes, documents, or communications relating to any Smartmatic entity Board meeting to the extent any security breaches or concerns, alleged corruption or criminal activity, government investigations relating to concerns about security breaches or alleged corruption or criminal activity, or Herring was discussed.

Plaintiffs have agreed only to produce minutes of the Board of Directors of Smartmatic USA Corp. But Plaintiffs have not agreed to produce Board minutes of any other Smartmatic entity, and have objected to the remainder of the Request.

Plaintiffs have no reasonable argument that the Request, as narrowed, is overly broad or seeks irrelevant information.  Herring is particularly interested in documents related to minutes of Smartmatic entity Board of Directors meetings in which there were discussions about security issues, technological failures, corruption, and government investigations, among other things. These issues are highly relevant to Herring's elemental challenges and defenses in this litigation, including but not limited to truth, substantial truth, relative reputation of Plaintiffs before and after the allegedly defamatory statements were published, and the absence of reputational damage arising out of the allegedly defamatory statements.  Plaintiffs should be ordered to produce the requested documents consistently with Herring's proposed narrowed Request.

***Smartmatic's Response***

Even with its proposed "offer[] to narrow," OANN's request is overly broad and far beyond the scope of any claims or defenses in this matter.  Smartmatic has repeatedly attempted to work with OANN on this request and has already agreed to produce board meeting minutes from

Smartmatic USA, the only Smartmatic entity directly involved in the 2020 Presidential election. OANN will not back down from its unreasonable position.

*First*, OANN has demanded board meeting minutes from *all* Smartmatic entities.  Not only would such a production be incredibly time-consuming for Smartmatic, it also would result in the production of documents having nothing to do with elections at all, let alone the election at issue in this lawsuit.

*Second*, OANN refuses to narrow its request to board meeting minutes regarding Smartmatic's election technology.  As Smartmatic has told OANN, many Smartmatic entities produce technology unrelated to elections, and discussions of technological failures in those board meetings would have nothing to do with elections at all, let alone the 2020 U.S. Presidential election.

*Third*, as discussed above, documents related to general "security issues" are irrelevant. Moreover, topics such as "security issues," "technological failures," and "corruption" are far too vague.  Smartmatic is a technology company with hundreds of products.  These terms could address anything from issues with screen brightness to problems with a product that is still in development.  *Finally*, meeting minutes about government investigations are not relevant to this case for the same reasons Smartmatic articulated above.  Smartmatic welcomes the Court's intervention on this issue.

**Issue Six: Vendors and Other Manufacturers (RFP 79)**

***Herring's Position***

Herring seeks documents and communications related to any of Plaintiffs' vendors, contractors, or affiliates based outside of the United States that manufacture, produce, or license Smartmatic entity voting equipment or software, or any components used in same.  The purpose of this request is to identify non-parties that may have discoverable information that could support

Herring's defense that Plaintiffs suffered from security vulnerabilities, technical flaws, or other failures that resulted in their alleged damages.   To address Plaintiffs' objections of burden and disproportionality, Herring offered to narrow its Request to vendors, contractors, or affiliates involved in any election with any Smartmatic entity since 2004 in which a governmental entity questioned the security or accuracy of any Smartmatic entity technology or has raised concerns about vulnerability to hacking.   Plaintiffs refused.   Plaintiffs' own Complaint suggest that they have never experienced single security breach.  (Compl.  ¶ 41.)  Such assertions, if unchallenged, may materially affect Plaintiffs' potential recovery.

Plaintiffs continue to obstruct Herring's ability to obtain documents related to Plaintiffs' business practices abroad.   As stated above, given Plaintiffs' reliance on an international, enterprise valuation damages theory, Herring should be given the information it needs to defend itself.   Whether Smartmatic entity voting technology has been criticized, questioned, or accused of security vulnerabilities or hacking is central to the claims and defenses at issue in this litigation.

***Smartmatic's Response***

This is yet another example of OANN improperly attempting to expand discovery to include documents related to irrelevant concepts such as "security vulnerabilities" and "technical flaws" in Smartmatic's products.   In this case, OANN's requests are particularly irrelevant and harassing because it seeks documents related to, for example, any vendor or contractor who provides components used in Smartmatic's technology.   This would even include documents related to the manufacturer of the screws that Smartmatic uses in its products.   Smartmatic has repeatedly asked OANN to narrow these requests further, but OANN has refused.   To the extent vendor, contractor, or affiliate documents are responsive to other agreed upon requests for production, they will be produced.

OANN also refuses to limit its request to documents regarding the three plaintiff Smartmatic entities. Instead, it demands information related to every Smartmatic-affiliated entity ever to exist. As OANN is well aware, Smartmatic has engaged hundreds of vendors for hundreds of elections over the course of nearly two decades, all of which have varying degrees of involvement in those elections. OANN's demand currently encompasses communications with vendors of items such as plastic and screws used to build hardware. In other words, most of Smartmatic's vendors, contractors, or affiliates would not have participated in an election project with Smartmatic to an extent that is meaningful to this dispute. Documents and communications from all vendors, contractors, or affiliates would be incredibly broad, and it would be burdensome for Smartmatic to produce such a large number of documents.

To be clear, Smartmatic has never refused to produce relevant documents regarding its vendors and contractors. It has simply asked OANN to narrow its request such that Smartmatic can conduct a reasonable search and produce documents actually relevant to this lawsuit. Smartmatic welcomes the Court's intervention here.

**<u>Issue Seven</u>: Documents Received in Response to Subpoenas**

***Herring's Position***

RFP No. 70 seeks all documents received by Plaintiffs "from any third party, whether in response to a subpoena duces tecum, open records act request or otherwise, that relate to the Alleged Defamatory Statements or to the allegations in the Complaint." Although Plaintiffs agreed from the outset to produce documents they have received in response to subpoenas or open records requests in this litigation, Plaintiffs have continued to drag their feet in doing so. It was not until Herring raised the issue, in formal correspondence, to Plaintiffs of their failure to produce documents received in response to the subpoena issued to Tom Fitton that Plaintiffs actually produced the documents. And while Plaintiffs produced Fitton's production one day after the

Court requested this joint submission, Fitton's transmittal letter suggests that Plaintiffs may have had the documents since ***February 27***, which was over two months ago.  Plaintiffs also have not involved Herring in any discussions with any third parties, and have produced no correspondence with these third parties.  Plaintiffs should be ordered to produce to Herring all third-party subpoena-related documents and correspondence upon receipt, as Herring has already agreed to do, and involve Herring contemporaneously in the negotiations regarding third-party document production and deposition dates.

***Smartmatic's Response***

OANN has manufactured a dispute where one does not exist.  Smartmatic received documents in response to one subpoena and has already produced those documents to OANN.  It also told OANN that it will do the same for all future productions received in response subpoenas, and that it will include OANN in the scheduling of third-party depositions.  There is no conflict for the Court to resolve here.

OANN's claims regarding the Tom Fitton production are frivolous.  Smartmatic received the referenced documents from Mr. Fitton on April 12.  On April 14, OANN asked Smartmatic if any documents had been produced in response to subpoenas.  Smartmatic informed OANN that it received documents from Tom Fitton and would include them in Smartmatic's next production on May 5.  Smartmatic produced the documents on May 1, well in advance of the date it promised to produce them.  OANN's contention that Smartmatic received documents from Mr. Fitton on February 27 and was "dragging its feet" in producing them is therefore baseless.

OANN also demanded that the parties produce documents received in response to subpoenas immediately upon receipt.  Smartmatic already agreed to do so.  There is no dispute for the Court to consider regarding the timing of future productions of third-party documents.

Finally, OANN contends for the first time that Smartmatic has not involved OANN in any discussions with any third parties. Smartmatic has no obligation to include OANN in any such discussions. In fact, OANN's RFP No. 70 seeks only documents received in response to a subpoena or open records act request, and OANN has not requested that it be involved in the negotiation of document production with non-parties. Finally, Smartmatic has already stated that it would involve OANN in the selection of deposition dates for third-party witnesses. There is nothing for the Court to address here.

Dated: May 5, 2023

Respectfully submitted,

**Counsel for Smartmatic USA Corp., Smartmatic Int'l Holding B.V., and SGO Corporation, Ltd.**

  /s/ Erik Connolly_____
J. Erik Connolly (D.C. Bar No. IL0099)
Nicole E. Wrigley (D.C. Bar No. IL0101)
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949
econnolly@beneschlaw.com
nwrigley@beneschlaw.com

**Counsel for Herring Networks, Inc.**

  /s/ Blaine Kimrey_____
Blaine Kimrey (D.C. Bar No. IL0091)
Jeanah Park (D.C. Bar No. IL0094)
Bryan Clark (D.C. Bar No. IL0090)
Brian Ledebuhr (D.C. Bar No. IL0093)
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, IL 60601
Telephone: (312) 609-7500

Facsimile: (312) 609-5005
bkimrey@vedderprice.com
jpark@vedderprice.com
bclark@vedderprice.com
bledebuhr@vedderprice.com

Brian McCalmon (D.C. Bar No. 461196)
VEDDER PRICE P.C.
1401 New York Avenue, Suite 500
Washington, DC 20005
Telephone: (202) 312-3320
Facsimile: (202) 312-3322
bmccalmon@vedderprice.com