IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SMARTMATIC USA CORP., *et al.*,

               Plaintiffs,

    v.

HERRING NETWORKS, INC.,

               Defendant.

No. 1:21-cv-02900-CJN

Magistrate Judge Moxila A. Upadhyaya

**<u>SMARTMATIC'S REPLY IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ..................................................................................................... 2

      A.    Smartmatic's Meet-and-Confer Efforts Satisfy the Requirement
            Under Local Rule 7(m) and It Followed the Correct Process for
            Filing Its Motion ................................................................................... 2

      B.    OANN's Second Set of RFPs are Overly Burdensome ......................... 5

            1.    OANN's RFPs are Burdensome and Require the Grant of a
                  Protective Order ........................................................................ 5

            2.    Deficiency of OANN's June 27 Proposal in Reducing the
                  Undue Burden on Smartmatic ................................................... 6

      C.    OANN's Second Set of RFPs are Duplicative ...................................... 7

            1.    Dominion Related RFPs ............................................................. 8

            2.    RFPs Related to Smartmatic's Complaint Allegations .............. 9

            3.    RFPs Related to Each Defamatory Statement .......................... 12

            4.    Internally Duplicative RFPs ..................................................... 13

            5.    RFPs Requesting Documents that OANN Already
                  Requested in the Parties' Negotiations .................................... 14

            6.    RFPs Duplicating Requests Already In Front of the Court ...... 15

            7.    Smartmatic's Identification of Duplicative RFPs in
                  Appendix B ............................................................................. 16

      D.    The Number of RFPs in OANN's Second Set is Unreasonably
            Excessive ............................................................................................ 16

      E.    The Undue Burden of Responding to the Second Set of RFPs
            Outweighs any Benefit to OANN ....................................................... 18

            1.    OANN's Incorrect Proportionality Test ................................... 18

            2.    OANN Does Not Benefit from its Second Set of RFPs ............ 19

III.  SANCTIONS .................................................................................................. 25

IV.   CONCLUSION ............................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bay Area Cellular Tel. Co. v. City and County of San Francisco*,
 2005 WL 889722 ..................................................................................................11, 15

*Bilek v. Nat'l Cong. of Emps., Inc.*,
 2021 WL 320610 (N.D. Ill. Feb. 1, 2021) ........................................................16, 17

*Burke v. Air Serv Int'l, Inc.*,
 2009 WL 10696212 (D.D.C. Aug. 11, 2009) ...................................................17, 19

*Caudle v. District of Columbia*,
 263 F.R.D. 29 (D.D.C. 2009).....................................................................................3

*Coca Cola Co. v. Dixi-Cola Lab'ys*,
 30 F. Supp. 275 (D. Md. 1939) ................................................................................24

*Doe v. District of Columbia*,
 231 F.R.D. 27 (D.D.C. 2005).....................................................................................3

*Dowd v. Calabrese*,
 101 F.R.D. 427 (D.D.C. 1984)..................................................................................24

*Eisai Inc. v. Sanofi-Aventis U.S., LLC*,
 2012 WL 1299379 (D.N.J. Apr. 16, 2012) ........................................................19, 23

*Ellipso, Inc. v. Mann*,
 460 F. Supp. 2d 99 (D.D.C. 2006) ..............................................................................2

*English v. Wash. Metro. Area Transit Auth.*,
 2018 WL 4680274 (D.D.C. Sept. 27, 2018) ...............................................................3

*English v. Wash. Metro. Area Transit Auth.*,
 323 F.R.D. 1 (D.D.C. 2017)........................................................................................2

*Equal Rts. Ctr. v. Post Props., Inc.*,
 246 F.R.D. 29 (D.D.C. 2007)......................................................................................3

*GFL Advantage Fund, Ltd. v. Colkitt*,
 216 F.R.D. 189 (D.D.C. 2003)....................................................................................4

*Gopher Media, LLC v. Spain*,
 2020 WL 6741675 (S.D. Cal. Nov. 17, 2020) ...........................................................9

*Green v. Las Vegas Metro. Police Dep't*,
  2021 WL 4149017 (D. Nev. Aug. 12, 2021) ...................................................................18

*Hundt v. McDonough*,
  2021 WL 6503724 (D.D.C. Dec. 13, 2021) ...................................................................19

*Imapizza, LLC v. At Pizza Ltd.*,
  2018 WL 6619852 (D.D.C. July 26, 2018) .....................................................................2

*Jennings v. Family Mgmt.*,
  201 F.R.D. 272 (D.D.C. 2001) .......................................................................................5

*Johnson v. District of Columbia*,
  2023 WL 4685433 (D.D.C. July 21, 2023) ...............................................................7, 16

*Linder v. Adolfo Caldero-Portcarrero*,
  180 F.R.D. 168 (D.D.C. 1998) .......................................................................................5

*Mannina v. D.C.*,
  2019 WL 8759126 (D.D.C. Sept. 30, 2019) ...................................................................5

*Menoken v. Springer*,
  2008 WL 11388466 (D.D.C. June 16, 2008) ...................................................................3

*Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*,
  322 F.R.D. 1 (D.D.C. 2017) .........................................................................................19

*ProDox, LLC v. Pro Document Servs., Inc.*,
  341 F.R.D. 679 (D. Nev. 2022) ....................................................................................15

*Rapaport v. Soffer*,
  2012 WL 6800377 (D. Nev. Dec. 31, 2012) ................................................................18

*Ray v. CLH New York Ave, LLC*,
  2020 WL 5594064 (D.D.C. Sept. 18, 2020) ................................................................24

*Russo v. Lopez*,
  2012 WL 1463591 (D. Nev. Apr. 27, 2012) ................................................................17

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
  249 F. Supp. 3d 516 (D.D.C. 2017) ...............................................................................5

*Stokes v. Interline Brands Inc.*,
  2013 WL 6056886 (N.D. Cal. Nov. 14, 2013) .............................................................18

*Treppel v. Biovail Corp.*,
  233 F.R.D. 363 (S.D.N.Y. 2006) ..................................................................................24

*United States v. Microsoft Corp.*,
    165 F.3d 952 (D.C. Cir. 1999) ................................................................................5

*Underwood v. O'Reilly Auto Enters., LLC*,
    2022 WL 4359096 (D. Nev. Sept. 20, 2022) ..........................................................9

*United States v. All Assets Held at Bank Julius Baer & Co.*,
    202 F. Supp. 3d 1 (D.D.C. 2016) ...........................................................................2

*United States v. Sci. Applications Int'l Corp.*,
    555 F. Supp. 2d 40 (D.D.C. 2008) ..........................................................................3

*United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*,
    235 F.R.D. 521 (D.D.C. 2008) ...............................................................................2

**Other Authorities**

8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §
    2036 (3d ed. 2005) ...............................................................................................25

Fed. R. Civ. P. 23(b)(2)(C) .........................................................................................19

Fed. R. Civ. P. 26 ........................................................................................................19

Fed. R. Civ. P. 26(b) ...................................................................................................16

Fed. R. Civ. P. 26(b)(1) .....................................................................................1, 17, 18

Fed. R. Civ. P. 26(b)(2)(i) ............................................................................................19

Fed. R. Civ. P. 26(b)(2)(ii) ...........................................................................................19

Fed. R. Civ. P. 26(b)(2)(iii) ..........................................................................................19

Fed. R. Civ. P. 26(b)(2)(C) ..........................................................................................19

Fed. R. Civ. P. 26(b)(2)(C)(i) ...........................................................................2, 5, 18, 19

Fed. R. Civ. P. 26(c) ..........................................................................................*passim*

Fed. R. Civ. P. 26(c)(1) ................................................................................................5

Fed R. Civ. P. 36 .........................................................................................................16

Local Civil Rule 7(m) ..........................................................................................2, 3, 4

Plaintiffs Smartmatic USA Corp., Smartmatic International Holdings B.V., and SGO Corporation Limited (collectively, "Smartmatic") submits this Reply in Support of its Motion for Protective Order ("Motion") (Dkt. 81), and in response to Herring Network Inc.'s (d/b/a OANN) Response in Opposition to the Motion for Protective Order ("Opposition") (Dkt. 89). Smartmatic submits this motion pursuant to Federal Rule of Civil Procedure 26(c).

## I.    INTRODUCTION

Nothing in OANN's Opposition indicates that this Court should deny Smartmatic's Motion for Protective Order. OANN had two tasks in its Opposition—demonstrate that its Requests for Production ("RFPs") were not duplicative and excessive, and show that the benefit of OANN's RFPs would outweigh the burden they impose on Smartmatic. It failed at both.

OANN provides no meaningful rebuttal to the argument that its RFPs are duplicative. OANN instead points out that some RFPs use the term "support" and others use "concerning." These are semantics, not justifications. There is no treasure trove of relevant documents that would result from such changes, especially where Smartmatic already agreed to interpret the prior RFPs to request documents "concerning" a particular topic.

OANN goes on to say that Smartmatic did not adequately identify every instance of duplication within its 1800 RFPs. That assertion misses the entire point of Smartmatic's Motion, which is that such an RFP-by-RFP analysis would be impractical and burdensome. OANN also asserts that because it offered to withdraw some of its RFPs and Smartmatic "refused" the offer, it is Smartmatic's fault that duplicative RFPs remain. However, OANN's heavily conditioned offer was wholly inadequate to alleviate the burden imposed on Smartmatic.

OANN spent nine pages of its Opposition discussing why the discovery it seeks is relevant and proportional to the needs of the case under FRCP 26(b)(1). This is not helpful to its position because Smartmatic is not challenging the relevancy or scope of the documents that would be

1

produced in response to OANN's Second Set of RFPs (though it would be broad). The determination of whether a protective order should be granted because the RFPs themselves are problematic is made under FRCP 26(c) and FRCP 26(b)(2)(C)(i), which require OANN to demonstrate that the benefit of its Second Set of RFPs outweighs the burden they impose on Smartmatic. OANN has not articulated any material benefit.

## II.   ARGUMENT

### A.   Smartmatic's Meet-and-Confer Efforts Satisfy the Requirement Under Local Rule 7(m) and It Followed the Correct Process for Filing Its Motion

OANN has no basis for its assertion that Smartmatic did not make a good-faith effort to resolve the dispute prior to filing its motion because it only "went through the motions." (Dkt. 89 at 7). The cases OANN cited for the assertion that a motion must be dismissed for failing to comply with Local Rule 7(m)[1] actually cut against OANN's argument.

Looking at OANN's cited cases, in *All Assets*, the court found that the movant's efforts were insufficient where the only conferring was the exchange of two letters, and noted that the party continuously failed to follow the court's order to meet and confer. *United States v. All Assets Held at Bank Julius Baer & Co.*, 202 F. Supp. 3d 1, 4-7 (D.D.C. 2016), In *Pogue*, the only meet and confer in which the parties participated to resolve their dispute had occurred three years prior. *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 235 F.R.D. 521, 529 (D.D.C. 2008). In *Ellipso*, the court found that there was "no indication that opposing counsel notified each other that they were filing these discovery motions," and there was no "hint that they have discussed the motions in person or by phone, as required." *Ellipso, Inc. v. Mann*, 460 F. Supp. 2d

---

[1] OANN overstates this rule. "The Court may, in the interest of judicial economy, reach the merits of a motion despite the parties' failure to satisfy Local Civil Rule 7(m)." *English v. Wash. Metro. Area Transit Auth.*, 323 F.R.D. 1, 26 (D.D.C. 2017); *Imapizza, LLC v. At Pizza Ltd.*, 2018 WL 6619852, at *2 (D.D.C. July 26, 2018) (same).

99, 102 (D.D.C. 2006). Finally, in *Science Applications*, the movant's efforts were insufficient where it did not consult with the government *at all* prior to filing its motion. *United States v. Sci. Applications Int'l Corp.*, 555 F. Supp. 2d 40, 47 (D.D.C. 2008).

Smartmatic's efforts to resolve the dispute prior to filing its motion far exceed any of the efforts found in the above cases. Smartmatic warned OANN of its forthcoming motion three weeks before filing. (Dkt. 81, Ex. B, at ¶ 3); *cf. Doe v. District of Columbia*, 231 F.R.D. 27, 30 (D.D.C. 2005) (finding defendants complied with Local Rule 7(m) because they notified plaintiffs twice before filing its motion, even though defendant's third notice did not provide adequate time to respond). Smartmatic provided OANN with the basis for its concerns and a letter providing specific examples of duplication. *English v. Wash. Metro. Area Transit Auth.*, 2018 WL 4680274, at *2 (D.D.C. Sept. 27, 2018) (finding defendants satisfied the requirement of Local Rule 7(m) where it identified its respective position regarding the issue); *Menoken v. Springer*, 2008 WL 11388466, at *2 (D.D.C. June 16, 2008) ("Defendant complied with the spirit of [Local Rule 7(m)] when it made Plaintiff aware of its allegations of deficiencies through written correspondence."). Smartmatic also discussed its concerns with OANN during a meet and confer held over WebEx. *Caudle v. District of Columbia*, 263 F.R.D. 29, 32 (D.D.C. 2009) (finding that plaintiff satisfied Local Rule 7(m) where it sent correspondence and engaged in a telephone conference for the purpose of narrowing discovery disputes); *cf. Equal Rts. Ctr. v. Post Props., Inc.*, 246 F.R.D. 29, 32 (D.D.C. 2007) (refusing to dismiss the case based on Local Rule 7(m) even though the parties only conferred in written correspondence but never over the phone).

OANN's assertion that Smartmatic did not meaningfully engage in narrowing the issues is incorrect. Smartmatic repeatedly invited OANN to either withdraw its Second Set of Requests or make a proposal that narrowed them to a reasonable number of requests. Unfortunately, OANN's

proposal evidenced that it did not engage in a true attempt to eliminate the unnecessary burden of its RFPs. Had it done so, some of the more egregious duplications would have been removed. (*See*, *e.g.*, RFP No. 42 compared to Nos. 105, 428, 429, 430, 431; RFP No. 101 compared to No. 263 and 571; RFP No. 70 compared to No. 207; compare RFP No. 3 with No. 328; RFP No. 51 compared to No. 551).

OANN points out that it continued to ask Smartmatic, even after the filing of its Motion, to meet and confer. (Dkt. 89, at 7). Yet OANN only made these asks to manufacture a record. At no point did OANN come back to Smartmatic with a significantly revised proposal, despite Smartmatic's invitation to do so. OANN was asking Smartmatic to meet and confer again without any meaningful change in OANN's position. *GFL Advantage Fund, Ltd. v. Colkitt*, 216 F.R.D. 189, 194 (D.D.C. 2003) ("I see no purpose in reading [Local Rule 7(m)] to require everyone to engage in such a silly waste of everybody's time.").

Additionally, OANN asserts that Smartmatic bypassed Judge Nichols's Standing Order in filing its motion without leave of the court. When preparing to file its motion, Smartmatic wanted to clarify with Magistrate Judge Upadhyaya if she would be handling this discovery dispute, or if Judge Nichols was handling the dispute (thus requiring Smartmatic to proceed pursuant to his Standing Order). In keeping with this Court's requirements, Smartmatic asked counsel for OANN to join a call to Magistrate Judge Upadhyaya's chambers to clarify the issue. OANN refused. Smartmatic therefore sent an email to Magistrate Judge Upadhyaya's chambers seeking clarification. Judge Nichols then assigned the resolution of the Motion to Magistrate Judge Upadhyaya (Minute Order, July 10, 2023), and this Court does not have a standing order. This issue is therefore moot.

### B.   OANN's Second Set of RFPs are Overly Burdensome

#### 1.   OANN's RFPs are Burdensome and Require the Grant of a Protective Order

From the outset, it is important to point out that OANN, in its Opposition, did not engage in the correct test for determining if its RFPs are unduly burdensome and warrant the grant of a protective order. OANN makes conclusory statements that its RFPs are not excessive and duplicative, without any mention of the test used to evaluate motions for protective orders or citations to any case law regarding duplicative or excessive RFPs. The determination should be made pursuant to FRCP 26(b)(2)(C)(i) and FRCP 26(c), which allow the grant of a protective order where the burden on the movant outweighs the benefit to its adversary. *See Jennings v. Family Mgmt.*, 201 F.R.D. 272, 274-75 (D.D.C. 2001); *Mannina v. D.C.*, 2019 WL 8759126, at *1 (D.D.C. Sept. 30, 2019).

FRCP 26(c)(1) states that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The "good cause" standard "is highly flexible, having been designed to accommodate all relevant interests as they arise." *United States v. Microsoft Corp.*, 165 F.3d 952, 959 (D.C. Cir. 1999); *Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 249 F. Supp. 3d 516, 520 (D.D.C. 2017). An undue burden may be found where the discovery requests are cumulative and duplicative. *Linder v. Adolfo Caldero-Portcarrero*, 180 F.R.D. 168, 174 (D.D.C. 1998). Under FRCP 26(b)(2)(C)(i), the court is *required* to limit the scope of discovery if the discovery sought is unreasonably cumulative or duplicative.

The burden here goes beyond the time that Smartmatic would need to spend drafting its initial responses. After its responses were made, OANN could want to meet and confer regarding hundreds of RFPs, because it inevitably will not be satisfied by Smartmatic's objections and

responses. It took Smartmatic and OANN six months to reach the end of their negotiations regarding OANN's First Set of 102 RFPs. It is not hard to imagine that it could take at least another year to reach an agreement on the Second Set given the sheer volume and OANN's discovery tactics. This must be a consideration when determining if Smartmatic will be burdened by OANN's duplicative and excessive RFPs.

**2.    Deficiency of OANN's June 27 Proposal in Reducing the Undue Burden on Smartmatic**

Throughout its Opposition, OANN refers to its letter to Smartmatic on June 27, in which it makes a proposal to "narrow" the Second Set of RFPs. OANN references this letter to make the point that some of the duplicative RFPs could have been eliminated had Smartmatic "simply" accepted OANN's proposal. OANN goes as far as to say "Smartmatic's own actions [*i.e.*, denying OANN's proposal] led the parties to this unnecessary dispute." (Dkt. 89, at 2). To be clear, it was OANN's duplicative and excessive RFPs that led us here.

OANN's proposal was an offer to withdraw an insignificant number of requests (less than 20 percent), with the conditions that Smartmatic withdraws objections to OANN's First Set of RFPs and that the parties renegotiate search terms and relevant time frames. (*See*, Dkt. 89, Ex. 1.B, at 4-5). There was nothing simple about the proposal. The caveats placed on OANN's withdrawal of only 90 RFPs out of 500,[2] would not decrease its burden and would render the prior eight months of discovery meaningless.

OANN functionally gave Smartmatic two choices: (1) answer 400 new RFPs, engage in months of redundant negotiations about the objections, search terms, and time frames for OANN's First Set of RFPs, and then engage in duplicative negotiations regarding the 400 new RFPs; *or* (2)

---

[2] OANN Second Set of RFPs served 504 requests on each Plaintiff entity, for a total of 1512 RFPs. Despite OANN's retorts, that is the true number of RFPs OANN served.

respond to the 500 RFPs in the Second Set and then engage in months of negotiations regarding each and every request. Both options place an inordinate burden on Smartmatic. This false choice should be considered when evaluating OANN's claims that Smartmatic had the choice to eliminate some of OANN's RFPs, but "refused."[3]

### C.   OANN's Second Set of RFPs are Duplicative

In its Motion, Smartmatic spent 10 pages providing examples of OANN's duplicative RFPs. Smartmatic placed the RFPs issued by OANN side-by-side, and the duplicative nature was undeniable. So much so that OANN was unable to provide substantive responses (discussed further below). Smartmatic has met its burden here. *Johnson v. District of Columbia*, 2023 WL 4685433, at *1 (D.D.C. July 21, 2023) ("To satisfy such burden, the movant must make a specific demonstration of facts in support of the request . . . .") (quoting *Alexander v. FBI*, 186 F.R.D. 71, 75 (D.D.C. 1998)).

Throughout its Opposition, OANN asserts that one of its reasons for serving duplicative RFPs is that Smartmatic objected to so many of OANN's RFPs in its First Set. (*See* Dkt. 89, at 8-9, 11, 13, 21-22). OANN explained that because of Smartmatic's over-breadth objections, "OAN drafted more specific RFPs in the second set, which necessarily led to a higher number of requests." (*Id*. at 8). There are four issues with this assertion.

*First*, since OANN implicitly acknowledges the duplication, the correct response to any concern regarding Smartmatic's objections to the original request would be to meet and confer

---

[3] OANN also asserted that Smartmatic's "refusal" to accept its proposal is evidence that Smartmatic is "stonewalling OAN's ability to obtain relevant discovery." This assertion is confusing considering that, to date, Smartmatic has produced more than 1 million documents, and has agreed to produce 3.2 million in total. In contrast, OANN produced 56 documents in February, 41 documents in March, and then 186,000 documents in May that consist of primarily spam emails. Since May, OANN has yet to make another production. It is evident which party is "stonewalling" discovery.

about Smartmatic's response and ultimately file a motion of compel if the parties reached an impasse. Serving the same request *again* only serves to waste the parties' time and efforts.

*Second,* OANN is comparing its Second Set of RFPs to the objections made by Smartmatic in its initial response to the First Set of RFPs, instead of comparing them with what Smartmatic's position is to date. Objecting to overbreadth is a common response to RFPs, but as parties meet and confer, their original objections narrow and the scope of discovery expands. When looking at what Smartmatic has ultimately agreed to produce in response to OANN's First Set of RFPs, it is evident that the Second Set is duplicative and excessive.

*Third*, the parties agreed from the start of discovery that if they were withholding documents on the basis of objections, they would inform the other party. (Ex. D, Smartmatic February 3, 2023 Letter, at 2). Because Smartmatic has not withheld documents on the basis of its objections thus far, there has been no need to provide updates to OANN. When OANN's new counsel took over, it could have asked Smartmatic for clarity on this issue *before* serving 500 RFPs.

And *fourth*, OANN's claim that it needed to serve a high number of narrow RFPs to avoid further over-breadth objections is undercut by the fact that a vast majority of requests in OANN's Second Set are equally as broad or broader than requests in the First Set. (*See*, *e.g.*, RFP Nos. 104, 105,312, 343, 431, 551, 558).

### 1.    Dominion Related RFPs

With regard to the Dominion RFP examples Smartmatic laid out, OANN provided no justification for its countless duplicative RFPs. Instead, it made conclusory statements about which documents it believes it is not getting from Smartmatic.

OANN stated that Smartmatic did not agree to produce all documents concerning Dominion because Smartmatic is not running the search term "Dominion." This assertion only proves Smartmatic's point that these RFPs are duplicative based on the parties' prior negotiations.

On April 6, 2023, OANN proposed running the search term "Dominion." (Ex. D, Sullivan Declaration, at ¶ 3). On April 19, Smartmatic countered with the proposed terms "@dominionvoting.com" and "Dominion Voting" (along with five other Dominion-related terms (Dkt. 81.7) (Ex. D at ¶ 4)). OANN's counsel agreed to those terms as long as Smartmatic did not limit the timeframe of the searches, Smartmatic agreed not to limit the timeframe for six of the seven Dominion related terms. (*Id.* at ¶¶ 5, 6). What OANN's new counsel is essentially claiming is that because the previous counsel did not negotiate a broader scope, it should get to serve new RFPs relating to Dominion and try again. That's not how discovery works. *Underwood v. O'Reilly Auto Enters., LLC*, 2022 WL 4359096, at *2 (D. Nev. Sept. 20, 2022) (where the party's "prior counsel already came to an agreement on the issue," new counsel could not "raise objections afresh"). Smartmatic should not need to have this discussion again.

And, even if OANN is correct that there is still discovery to be had regarding Dominion, there is no justification for issuing an excessive number of RFPs about Dominion that could be reduced to one or two. *See Gopher Media, LLC v. Spain*, 2020 WL 6741675, at *4 (S.D. Cal. Nov. 17, 2020) (denying party's motion to compel where requests relating to the same topic were duplicative and "should have been a single document request is instead a dozen or more requests calling for the same or substantially the same information").

### 2. RFPs Related to Smartmatic's Complaint Allegations

*First*, OANN does not offer a response to Smartmatic's example of RFP No. 129 (seeking documents related to OANN's lack of evidence to support the defamatory statements as stated in paragraph 105 of the Complaint) being duplicative of RFP No. 138 (seeking documents related to OANN's lack of evidence to support the defamatory statements as stated in paragraph 117 of the Complaint) and of several other RFPs in the Second Set. OANN did in fact issue RFPs for the same assertion every time it was made in the Complaint. All of the RFPs below concern whether

Smartmatic was used widely throughout the United States during the 2020 election, in which states Smartmatic was used, and whether Smartmatic was widely used in the 2020 election because Dominion and Smartmatic are one and the same. OANN merely differentiated them with citations to different Complaint paragraphs. These RFPs can be answered with the *same* documents and are thereby duplicative.

    **Second Set of RFPs, No. 129**: Produce Documents and Communications concerning Your contention that, "[OAN] knew it had seen no evidence that Dominion used Smartmatic because that claim is factually false," as alleged in Paragraph 105 of the COMPLAINT.

- *Compare to* **Second Set of RFPs, No. 138**: Documents and Communications concerning Your contention that "[OAN] had not seen any evidence showing that … **Smartmatic was widely used in the 2020 U.S. election, including in Dominion machines**," as alleged in Paragraph 117 of the COMPLAINT.

- *Compare to* **Second Set of RFPs, No. 131**: Produce Documents and Communications concerning Your contention that, "[OAN] knew it had not seen any evidence that . . . **Smartmatic was widely used in the 2020 U.S. election**," as alleged in Paragraph 108 of the COMPLAINT.

- *Compare to* **Second Set of RFPs, No. 146**: Produce Documents and Communications concerning Your contentions that "[OAN] had not seen any evidence that **Smartmatic was widely used in the 2020 election or that Smartmatic was used by Dominion in the 2020 election**," and that, "[OAN] also knew that Mr. Waller had not presented any such evidence," as alleged in Paragraph 124 of the COMPLAINT.

- *Compare to* **Second Set of RFPs, No. 154**: Produce Documents and Communications concerning Your contention that "[OAN] had seen no evidence that . . . **Dominion machines used Smartmatic software in the 2020 election**," as alleged in Paragraph 132 of the COMPLAINT.

- *Compare to* **Second Set of RFPs, No. 182**: Produce Documents and Communications concerning Your assertion that no "**Smartmatic election technology and software were even used in any of the states that had close outcomes in the 2020 U.S. election**," as alleged in Paragraph 81 of the COMPLAINT.

- *Compare to* **Second Set of RFPs, No. 185**: Produce Documents and Communications concerning Your assertion that Your "election technology and software **were not used in other voting machines in the 2020 U.S. election, including in Dominion machines**," or in "battleground states," as alleged in Paragraphs 180 and 182 of the COMPLAINT.

    *Second*, OANN conveniently forgot to respond to Smartmatic's assertion that OANN's RFP Nos. 43, 525, 526, 527, and 528 (among others) all seek documents related to OANN's actual

malice. (Dkt. 81, at 17-18). OANN also did not provide a response with regard to why RFP Nos. 13, 15, 16, 18, 73, 180, 182, and 184 (among others) were not duplicative where they all ask the same or similar question about the location or function of Smartmatic technology.

*Third*, in response to Smartmatic's demonstration that RFP Nos. 67 and 68 were duplicative of RFPs in the Second Set regarding support for Smartmatic's complaint, OANN asserts that they are not duplicative because Smartmatic objected to No. 67 and 68. Specifically, Smartmatic's objection stated, "Smartmatic objects to the Requests to the extent that they seek 'any' or 'all' information on the grounds that such Requests are overbroad and unduly burdensome." RFP No. 67 seeks all documents that form the basis of the complaint, and in response, Smartmatic objected and stated that it would produce all documents cited in the Complaint. OANN did not push back on this. OANN's new counsel cannot issue duplicative RFPs for the purpose of making a second attempt to negotiate the scope of what Smartmatic will provide with regard to the Complaint. *Bay Area Cellular Tel. Co. v. City and County of San Francisco*, 2005 WL 889722, at *1 ("The Court was particularly troubled by Plaintiff's reliance on the retention of new counsel as an excuse for reneging on prior agreements to provide discovery.").

*Fourth*, one of OANN's most absurd assertions is that it is unclear why RFP No. 312 is duplicative of other RFPs. (Dkt. 89, at 13 n.9). RFP No. 312 seeks "Documents and Communications concerning the 2020 PRESIDENTIAL ELECTION." Smartmatic won't waste the rest of its allotted 25 pages with a list of all the RFPs that are duplicative,[4] but it will provide a few examples:

---

[4] There are 74 RFPs in the Second Set that directly reference the 2020 election (found by identifying every RFP that hits on "2020 U.S. election," "2020 election," and "2020 presidential election"). OANN even had to define the term "2020 Presidential Election" in its Second Set of RFPs because it was used so frequently. There are countless more RFPs that relate to the 2020

- **<u>Second Set of Requests, RFP No. 240</u>**: Produce Documents and Communications concerning any OTHER MEDIA ORGANIZATIONS or other media, social media, or broadcast source relating to SMARTMATIC SYSTEMS used in the **2020 PRESIDENTIAL ELECTION**.

- **<u>Second Set of Requests, RFP No. 285</u>**: Produce Documents and Communications concerning complaints, investigations, and results of efforts undertaken to identify whether You deleted, lost, changed, or compromised votes in connection with the **2020 PRESIDENTIAL ELECTION** or any other election.

- **<u>Second Set of Requests, RFP No. 313</u>**: Produce Documents and Communications **concerning both of the following: (i) the 2020 PRESIDENTIAL ELECTION** and (ii) one or more OTHER MEDIA ORGANIZATIONS or former President Donald J. Trump.

### 3.    RFPs Related to Each Defamatory Statement

In response to Smartmatic's detailed showing of duplicative RFPs relating to OANN and the defamatory broadcasts, OANN states conclusively that the RFPs are not duplicative and that Smartmatic should have represented it was producing all documents related to OANN, its employees, defamatory broadcasts and statements. (Dkt. 89, at 13-14). It is not hard to see why OANN's RFPs are duplicative on this topic. For example, RFP No. 104 seeks "Documents and Communications concerning any of the COMPLAINED OF BROADCASTS." Then OANN goes on to request documents about every complained of broadcast individually. There is no room to deny that RFP 104 subsumes every other RFP regarding specific broadcasts. This is just one example.

Additionally, Smartmatic negotiated with previous counsel which search terms related to OANN that it would be willing to run, and those terms include variations of OANN's name and the names of its guests, hosts, and broadcasts. (Dkt. 81.7, Appendix A). As stated in its Opposition, OANN claims to have issued additional RFPs to ensure specificity. (Dkt. 89, at 2, 14). OANN's Second Set of RFP Nos. 104 and 105 seeking documents related to *all* defamatory statements and

---

election without directly using the term. Given that the entire crux of this case is the 2020 election, hundreds of RFPs were bound to be duplicative with RFP No. 312.

*all* broadcasts, seems contrary to OANN's assertion. Smartmatic's agreement already encompasses documents regarding OANN, its talent, its guests, Smartmatic's assertion that it was defamed by OANN, etc., which necessarily includes documents specific to the defamatory statements and OANN's defamatory broadcasts. If Smartmatic did not produce all documents related to OANN, the parties could have met and conferred on the issue or OANN could have moved to compel— the solution was not filing a slew of additional, broad RFPs regarding OANN.

### 4.     Internally Duplicative RFPs

With regard to Smartmatic's demonstration that many of the RFPs in OANN's Second Set are duplicative amongst themselves, OANN provided a barebones response. OANN's only response to both RFP Nos. 205 and 265 seeking documents concerning the exact same Politico argument, is that it offered to withdraw No. 265. (Dkt. 89, at 14 n.13). That is not a legitimate response where Smartmatic should never have had to bring these RFPs to OANN's attention in the first place, and where OANN has an obligation to serve non-duplicative requests in the first place. (Dkt. 81 at 8).

OANN also makes the argument that RFP Nos. 433 and 479 are not duplicative because while they both seek documents "concerning pre-2020 Presidential election or post-2020 Presidential election studies, reporting, or analysis," No. 433 seeks documents about Smartmatic's voting system and No. 479 seeks documents about any electronic voting system. This is a distinction without a difference because Smartmatic's system would fall under the category of "any" electronic voting system.

OANN asserts that RFP Nos. 375 and 376 are not duplicative because they seek communications between Smartmatic and officials from different countries. OANN misses the point. Even though there is some variation in the countries encompassed in the respective RFPs, there are also countries that overlap. This is clear evidence that OANN did not draft its RFPs with

13

an eye towards avoiding duplication. Responding to RFPs such as these would require Smartmatic to parse through them to find all overlap, and also respond (and meet and confer) with regard to certain countries more than once.

With regard to many of its RFPs, OANN relied on subtleties and semantics, to argue that several of its RFPs "are not truly duplicative." (Dkt. 89 at 9). For example, RFP Nos. 331 and 414 seek documents concerning Smartmatic's relationships with other voting machine companies. OANN claims these aren't duplicative because No. 414 ensures "that *all* documents exchanged between the subject parties will be produced, and not just documents concerning the parties' relationships as requested in RFP 331." (*Id*. at 14, FN 13). OANN thereby admits that No. 331 is duplicative and unnecessary. With regard to RFP Nos. 498 and 500, OANN doesn't even deny they are duplicative. Instead, it claimed that it included No. 500 in case Smartmatic objected to No. 498. (Dkt. 89 at 14, FN 13). It is unclear what the legal justification for this is.

### 5.    RFPs Requesting Documents that OANN Already Requested in the Parties' Negotiations

OANN skipped over Smartmatic's showing that RFP Nos. 70 and 207 are duplicative because Smartmatic already agreed to produce documents in response to No. 70 which No. 207 also seeks. OANN apparently thought it had a more defensible position with respect to RFP Nos. 17 and 176, because it did address them in a footnote.

OANN asserted that RFP Nos. 17 and 176 are not duplicative because No. 17 seeks *documents to support* Smartmatic's contention that its **case studies, referenced in paragraph 45** of the Complaint, show that Smartmatic has reliable voting results, and No. 176 seeks *documents concerning* Smartmatic's **case studies referenced in paragraph 45** of the Complaint. OANN asserts that No. 176 is broader because it seeks documents "concerning" the case studies. (Dkt. 89 at 14, FN 14).

The issue with OANN's argument is that when the parties negotiated RFP No. 17, OANN's previous counsel asserted that No. 17 encompasses all documents and communications related to the case studies. (Ex. D, ¶ 7). This is the same as RFP No. 176. Smartmatic then replied to OANN regarding its expanded view of RFP No. 17, and stated that it would only produce the case studies themselves because the request for any document concerning the case studies was overly broad and burdensome. (*Id*. at ¶ 8). As such, Smartmatic should not be burdened with renegotiating the scope of this request. *Bay Area Cellular Tel. Co.*, 2005 WL 889722, at *1; *ProDox, LLC v. Pro. Document Servs., Inc.*, 341 F.R.D. 679, 685-86 (D. Nev. 2022) ("The Court will not countenance an attorney's attempt to renege on his prior agreement as a means to gain a litigation advantage.").

### 6.    RFPs Duplicating Requests Already In Front of the Court

OANN does not give proper weight to the issue of its RFPs being duplicative with issues already in front of the court. OANN states that it had to file RFPs before the Court ruled on the Joint Notice of Unresolved Discovery Disputes.[5] This ignores the key point Smartmatic asserted in its Motion. Because many of the Second Set of RFPs are directly duplicative on issues like Kenya and the Philippines, if Smartmatic responds to any of them, its efforts over the last 8 months to negotiate what it would produce with regard to these topics would be wasted. Smartmatic already engaged in negotiations to the extent that the parties reached an impasse and sought court involvement. Additionally, the RFPs were not necessary at this stage, because when the Court decides the issues in the Joint Notice, the parties will inevitably have to revisit some of the RFPs and make new productions where necessary.

---

[5] OANN mentions several times that it met the Court's May 31 deadline to serve its Second Set of RFPs in contrast to Smartmatic asking for an extension of the deadline. As Smartmatic expressed in its Motion for Extension (Dkt. 54), OANN was able to serve its Second Set of RFPs because Smartmatic produced hundreds of thousands of documents before May 31, which allowed OANN to assess which RFPs were needed in the Second Set. In contrast, Smartmatic had no ability to assess the need for addition RFPs given OANN's deficient productions.

### 7.      Smartmatic's Identification of Duplicative RFPs in Appendix B

OANN faults Smartmatic for not specifically identifying each and every RFP that is duplicative and for Appendix B being incomplete. These assertions miss the entire point of this motion. Smartmatic should not be burdened with and is not obligated to assess all 500 of OANN's individual RFPs. Nor is the Court so obligated in order to make its determination. *Bilek v. Nat'l Cong. of Emps., Inc.*, 2021 WL 320610, at *2 (N.D. Ill. Feb. 1, 2021) ("[T]he Court has not taken a deep dive itself into all of the 429 discovery requests at issue but its strong sense is that Plaintiff has a legitimate point here."). The sheer volume of the RFPs makes it impossible for Smartmatic to identify all instances of duplication and where there might be legitimate requests. Fed R. Civ. P. 36 advisory committee's note to 1970 amendment (recognizing that a protective order is a proper remedy where the requests are "so voluminous and so framed that the answering party finds the task of identifying what is in dispute and what is not unduly burdensome."). And Smartmatic itself noted that Appendix B was not a complete representation of all examples of duplication, because that exercise would have taken Smartmatic weeks. (Dkt. 81, at 19).

OANN bore the initial burden of serving proper discovery requests that comport with the principles of Rule 26(b). (Dkt. 81 at 8). Smartmatic's only burden is to show specific examples of duplicative RFPs. *Johnson v. District of Columbia*, 2023 WL 4685433, at *1 (D.D.C. July 21, 2023). As discussed below in detail, Smartmatic has provided more than enough examples to demonstrate good cause for a protective order.

### D.      The Number of RFPs in OANN's Second Set is Unreasonably Excessive

In response to Smartmatic's assertion that OANN's Second Set of RFPs are excessive, OANN made one remark: "OAN's Second RFPs are not excessive—indeed, they are necessary to OAN's defense." (Dkt. 89, at 2). OANN misses the point at issue. Smartmatic does not contest that many of the RFPs in the Second Set, taken alone, would lead to the discovery of documents that

support OANN's defense. Smartmatic is contesting that OANN sought the same documents for its defense numerous times (duplication) and that the sheer number of requests was unnecessary to get the documents it allegedly needs (excessiveness). OANN's opposition does not contest the excessiveness of its RFPs head-on.

Courts from various jurisdictions have agreed that an excessive number of discovery requests independently justifies the grant of a protective order. *See Burke v. Air Serv Int'l, Inc.*, 2009 WL 10696212, at *8 (D.D.C. Aug. 11, 2009) (finding that 210 RFPs were unduly burdensome). This is particularly true where the excessive discovery requests are duplicative. *See Russo v. Lopez*, 2012 WL 1463591, at *4 (D. Nev. Apr. 27, 2012) (issuance of 792 document requests that were duplicative of the previously issued 217 requests warranted the grant of a protective order). Even under the FRCP 26(b)(1) factors that OANN uses, like "complexity of the case," courts have found even just 200 hundred discovery requests to be excessive. *Bilek*, 2021 WL 320610, at *1 (finding that even though the case was a complex class action, 260 interrogatories and requests for production were not proportional to the needs of the case).[6]

Where OANN's Second Set of RFPs are excessive (more than 1800 total to date), but also duplicative, the excessiveness is magnified. This creates an undue burden on Smartmatic which requires the Court to limit the discovery sought. *Rapaport v. Soffer*, 2012 WL 6800377, at *4 (D. Nev. Dec. 31, 2012) (granting motion for protective order where the 843 requests were found to be excessive in number and thus burdensome). And the sheer number of OANN's RFPs warrants a protective order that rejects OANN's Second Set of RFPs in its entirety. *Stokes v. Interline Brands*

---

[6] OANN asserts that Smartmatic's cases are inapposite, yet it provides no law case law in the context of evaluating a motion for protective order where the Court allowed a large volume of duplicative or voluminous RFPs. OANN has no counterpoint to the case law cited by Smartmatic (which is in fact on point).

*Inc.*, 2013 WL 6056886, at *2 (N.D. Cal. Nov. 14, 2013) ("In the interest of judicial economy, this court declines to determine the propriety of each of Defendant's 1059 [discovery requests] in the 162-page submission. Rather, the court finds that the sheer volume of the requests for admission is unduly burdensome and oppressive."); *Green v. Las Vegas Metro. Police Dep't*, 2021 WL 4149017, at *3 (D. Nev. Aug. 12, 2021) (granting the motion for protective order *against an entire set of requests* because they were excessive and duplicative).

 **E.** **The Undue Burden of Responding to the Second Set of RFPs Outweighs any Benefit to OANN**

  **1.** **OANN's Incorrect Proportionality Test**

OANN's proportionality analysis entirely misses the boat because it focuses on the factors laid out in FRCP 26(b)(1)—the incorrect rule. In all of the cases cited by OANN in its proportionality section, the Court is analyzing the FRCP 26(b)(1) factors in response to a challenge of the relevancy of the discovery sought on a motion to compel.

As Smartmatic noted in its Motion and as OANN acknowledged in its Opposition, Smartmatic is not moving for a protective order on the basis of relevance. (*See* Dkt. 89, at 14 n.15). Smartmatic is moving for a protective order under FRCP 26(c) and FRCP 26(b)(2)(C)(i). FRCP 26(b)(2)(C)(i) requires the court to limit the discovery sought when it is unreasonably cumulative or duplicative. A method of limiting the discovery when it is cumulative or duplicative is through a protective order pursuant to FRCP 26(c).

FRCP 26(b)(2)(C)(i) and FRCP 26(c) are limits on discovery, even where the court finds in favor of additional discovery under 26(b)(1). *Eisai Inc. v. Sanofi-Aventis U.S., LLC*, 2012 WL 1299379, at *7 (D.N.J. Apr. 16, 2012) ("[E]ven if such additional discovery is relevant . . . [under 26(b)(1)], the Court finds that 'the discovery sought is unreasonably cumulative or duplicative' and that 'the burden or expense of the proposed discovery outweighs its likely benefit' pursuant to

Fed. R. Civ. P. 23(b)(2)(C).").  The Advisory Committee on the Federal Rules of Civil Procedure

stated, "All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii) [now

Rule 26(b)(2)(C)]." The Committee Note recognized that "[t]hese limitations apply to discovery

that is otherwise within the scope of subdivision (b)(1)." Fed. R. Civ. P. 26 advisory committee's

notes to the 2015 amendments.

The correct test for evaluating a motion for protective order is whether the "burden or

expense of the proposed discovery outweighs its likely benefit." *Burke v. Air Serv Int'l, Inc.*, 2009

WL 10696212, at *1 (D.D.C. Aug. 11, 2009). Smartmatic engaged in a full analysis of whether the

burden to Smartmatic in responding to 1,500 RFPs outweighed the benefit that OANN would

receive from Smartmatic's response. (Dkt. 81 at 20-21).[7] OANN did not.

Smartmatic only needs to demonstrate that OANN's Second Set of RFPs is unduly

burdensome, which it did by showing the RFPs are duplicative and excessive in number. *Hundt v.*

*McDonough*, 2021 WL 6503724, at *2 (D.D.C. Dec. 13, 2021) (Nichols, J.) (the party's "serious

injury is the annoyance, embarrassment, oppression, or undue burden or expense discussed in the

modern version of Rule 26(c).").

## 2. OANN Does Not Benefit from its Second Set of RFPs

Where OANN does briefly acknowledge the balancing test, it makes a conclusive statement

that OANN's discovery requests are likely to produce new, relevant information. It gives *one*

example of where it might get more documents from its RFPs. Its example is Smartmatic's

---

[7] OANN noted Smartmatic used cases that rely on the pre-2015 Amendment version of Rule 26. Rule 26, pre- and post-amendment, are substantively the same. The case cited by OANN, *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 n.3 (D.D.C. 2017), stated that amended FRCP 26, "although not fundamentally different in scope from the previous version constitutes a reemphasis on the importance of proportionality in discovery but **not a substantive change in the law**" (emphasis added). *Oxbow* itself cites to numerous pre-2015 cases relating to FRCP 26.

response to OANN's RFP No. 41 which seeks "Documents and Communications relating to any investigation of any Smartmatic Entity by the Committee on Foreign Investment in the United States from 2005 to the present, including but not limited to any investigation related to investments by the Venezuelan government in one or more Smartmatic Entity and the acquisition of Sequoia Voting Systems, Inc. by any Smartmatic Entity." (Dkt. 89, at 20). OANN then provides Smartmatic's original response which ultimately concluded with, "Smartmatic will not produce documents in response to this Request." (*Id*.) OANN then asserts its Second Set of RFP Nos. 334, 335, 336, and 587 are necessary to get the information it sought regarding the Committee on Foreign Investment in the United States ("CFIUS"), Sequoia, and Venezuela because Smartmatic objected to RFP No. 41. (*Id*. at 21).

*First*, if OANN wanted more documents in response to the first request, it could have asked for them in the context of that first request. (And their point directly concedes the duplication of the requests.) *Second*, had OANN looked at its own correspondence, it would realize that its previous counsel reached an agreement with Smartmatic (after extensive back and forth) about what it would produce in response to RFP No. 41, as well as with respect to CFIUS, Venezuela, and Sequoia generally. In Smartmatic's February 22 letter to OANN, it stated:

> Smartmatic recognizes that certain documents relating to Smartmatic's operations in Venezuela may be relevant to Smartmatic's claims and OANN's defenses. Accordingly, in response to this request, Smartmatic will produce: (1) contracts between Smartmatic and the Venezuelan government relating to Smartmatic's provision of election technology and services; (2) documents evidencing payments from the Venezuelan government to Smartmatic; (3) contracts between Smartmatic and the SBC Consortium; (4) contracts between Smartmatic or the SBC Consortium and CANTV; (5) contracts between Smartmatic or SBC Consortium and Bizta Corporation; (6) communications between Smartmatic and members of the Chavez or Maduro administrations or the Venezuelan government regarding the negotiation and formation of contracts between the Venezuelan government and Smartmatic; and (7) all documents and communications concerning Smartmatic's decision to cease to provide election technology and software in Venezuela in 2017.

(Ex. D, at ¶ 9).

Smartmatic then stated that it would run a long list of search terms related to Venezuela and would produce "all non-privileged responsive documents that hit on the terms:"

- (("European Union" OR "EU" OR "E.U.") W/20 report) AND (recall OR Venezuela OR Chavez)

- (CANTV OR "Can TV" OR "Compania Anonima Nacional Telefonos de Venezuela") W/50 (recall OR elec* OR SBC OR Yanes OR Armando)

- (case stud* OR (internal w/10 audit) OR penetration OR "pen test" OR (security w/10 test*)) W/20 (Venezuela OR elec* OR software OR tech* OR system* OR machin*)

- CANTV OR "Can TV" OR "Compania Anonima Nacional Telefonos de Venezuela" w/25 (Mugica OR Pinate)

- FONCREI AND (loan OR recall OR Venezuela* OR Chavez OR Montilla OR Omar OR invest* OR payment OR stake OR board)

- reputation* W/10 (bad OR negative OR false OR harm* OR hurt* OR attack* OR Venezuela* OR concern* OR problem* OR PR OR fix OR improv*)

- Riesgo W/50 (loan OR recall OR Venezuela* OR Chavez OR Montilla OR Omar OR invest* OR payment OR stake OR board)

- SCR AND (loan OR recall OR Venezuela* OR Chavez OR Montilla OR Omar OR invest* OR payment OR stake OR board)

- Venezuela W/50 (rig OR rigg*)

- Venezuela W/50 alleg*

- Venezuela W/50 fraud

- Venezuela W/50 recall

- Venezuela W/50 tamper*

- Venezuela* w/10 recall

- Venezuela* w/25 (reputation OR perceiv* OR percep* OR associat* OR connection* OR false OR true OR truth OR ties)

- wikileaks AND (embassy OR Venezuela OR brownfield OR Chavez OR recall)

- Bizta

- Chavez AND (recall OR connect* OR relationship OR friend*)

- Chavez W/50 (admin* OR gov* OR elec* OR contract* OR deal OR meet* OR call* OR "us" OR "smartmatic" OR money OR win OR won OR result OR outcome OR victory OR claim OR allege*)

- (Adan W/5 Chavez) OR (Adan W/5 frias)

- Hugo W/3 Chavez

- Maduro AND (admin* OR gov* OR elec* OR contract* OR deal OR meet* OR call* OR "us" OR "smartmatic" OR money OR win OR won OR result OR outcome OR victory OR turnout OR connect* OR relationship OR friend* OR claim OR allege*)

21

(*Id*. at ¶ 10).

In the same letter, Smartmatic reiterated that it agreed to produce the following documents related to Sequoia and the Committee on Foreign Investment ("CFIUS"): (1) All Documents and Communications relating to Smartmatic's decision to acquire and then to divest Sequoia, to the extent they exist and can be located by a reasonable search; and (2) Communications between Smartmatic and Dominion related to Smartmatic's divestiture and sale of Sequoia, to the extent they exist and can be located by a reasonable search. Smartmatic then stated that it would produce *all* non-privileged responsive documents that hit on the search terms:

- (**Sequoia** OR SVS) AND (Smartmatic OR Blaine OR Chicago OR "United States" OR "US" OR "U.S." OR divest* OR acqui* OR "intellectual property" OR "IP" **OR Venezuela*** OR "Cook County" OR market OR Edge* OR software OR litigation OR lawsuit OR case OR bid OR machin* OR dominion OR "Sale and Security" OR sale OR divest* OR sold)
- CFIUS
- *@sequoiavote.com
- Dominion AND (sequoia OR SVS)

(*Id*. at ¶¶ 11, 12).

In Smartmatic's April 19 letter to OANN, it stated, "Smartmatic will agree to produce the following non-custodial documents:"

- Contracts between Smartmatic and the Venezuelan government relating to Smartmatic's provision of election technology and services;
- Contracts and bids utilized to calculate Smartmatic's damages as a result of OANN's disinformation campaign;
- Documents evidencing payments from the Venezuelan government to Smartmatic;
- Contracts between Smartmatic and the SBC Consortium;
- Contracts between Smartmatic or the SBC Consortium and CANTV;
- Contracts between Smartmatic or SBC Consortium and Bizta Corporation;
- Contracts evidencing Smartmatic's acquisition and divestment of Sequoia Voting Systems;
- Bids for the provision of election technology submitted by Sequoia while Smartmatic owned Sequoia; and

- Contracts for the provision of election technology executed by Sequoia while Smartmatic owned Sequoia.

(*Id.* at ¶ 13).

Finally, pursuant to OANN's RFP No. 71, Smartmatic agreed to produce any document it produced in its litigation with Fox News, Newsmax, and Michael Lindell to OANN. Smartmatic's productions in the other cases contain an extensive set of documents related to RFP No. 41.

Given Smartmatic's agreements in response to RFP No. 41, OANN's RFP No. 334 (seeking documents concerning the divestment of Sequoia); RFP No. 335 (seeking documents related to Smartmatic's decision to exit the U.S. market by divesting in Sequoia); RFP No. 336 (seeking documents concerning challenges related to Smartmatic's acquisition and divestment of Sequoia); RFP No. 587 (seeking documents concerning the sale agreement between Smartmatic and Sequoia, and Smartmatic's divestiture in Sequoia)[8] provide no articulable benefit. And, these are the only RFPs OANN pointed to in order to demonstrate the alleged benefit from its Second Set of RFPs. *Sanofi-Aventis U.S., LLC*, 2012 WL 1299379, at *7-8 (granting motion for protective order where the court found "that the examples presented fail to adequately demonstrate the necessity for the additional discovery sought.").

Moreover, OANN does not address Smartmatic's point that there is no benefit to OANN's Second Set of RFPs because Smartmatic has already agreed to produce 3.2 million documents. *See, e.g.*, *Ray v. CLH New York Ave, LLC*, 2020 WL 5594064, at *7 (D.D.C. Sept. 18, 2020) (denying motion to compel pursuant to FRCP 26(b)(2)(c)(i) where the party already produced documents in response to prior RFPs); *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 376-77 (S.D.N.Y. 2006) (same). Smartmatic acknowledges the importance of this case and its complexity, which is

---

[8] It is important to note that RFP Nos. 41, 335, 336, and 587 are all duplicative of each other because they are all related to Smartmatic's divestiture of Sequoia (which is tied to the alleged issues with CFIUS).

why it has agreed to produce such a broad range of discovery spanning decades. OANN's discussion of proportionality does not take into account the discovery that has already occurred. OANN would need to prove that its Second Set of RFPs would lead to beneficial documents beyond the 3.2 million it is already receiving.

Smartmatic's motion for protective order must be granted where OANN cannot identify any useful information that would result from its Second Set of RFPs. *Dowd v. Calabrese*, 101 F.R.D. 427, 437 (D.D.C. 1984) ("But a balance must be struck, as in many other discovery disputes, between the possibility of the production of useful evidence and the burden on the party in the possession of the materials."). And even if OANN were able to identify some additional documents that might result from its Second Set of RFPs, Smartmatic's motion should still be granted. *Id.* (granting a motion for protective order even though "counsel might be able to discover some additional documents which may be relevant" because the burden still outweighed the benefit); *Coca Cola Co. v. Dixi-Cola Lab'ys*, 30 F. Supp. 275, 279 (D. Md. 1939) (where proposed discovery requests elicited new facts and were inexpensive to respond to, a protective order was still needed because the requests were "very numerous" and would "tend to become unduly burdensome, oppressive and vexatious to the adverse party and difficult for the court to administer").

In light of OANN's nonexistent need for the documents that would allegedly result from its Second Set of RFPs, the burden on Smartmatic has even more weight. *Federal Practice and Procedure* (Wright & Miller) emphasizes this point: "[D]iscovery has limits and * * * these limits grow more formidable as the showing of need decreases. Thus even very slight inconvenience may be unreasonable if there is no occasion for the inquiry and it cannot benefit the party making it." 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2036 (3d ed. 2005).

Accordingly, the case law cited throughout its Motion and this reply as well as the Federal Rules undoubtedly support Smartmatic's position that because OANN's Second Set of RFPs are excessive and duplicative, good cause has been shown to grant a protective order to protect Smartmatic from undue burden and annoyance.

## III.   SANCTIONS

Smartmatic did not ask the Court for sanctions in its Motion. Smartmatic merely sought "guidance from the Court as to whether a request for sanctions would be appropriate here." (Dkt. 81 at 24). Smartmatic sought this guidance because of the egregious nature of OANN's Second Set of RFPs, especially in light of its previous behavior during discovery. Should Smartmatic move forward with a motion for sanctions, it will address the arguments made in OANN's Opposition in detail.

## IV.   CONCLUSION

Pursuant to the arguments set forth above, Smartmatic respectfully moves the Court to issue a protective order related to OANN's Second Set of RFPs, reject OANN's proposed order (Dkt. 89.3), and whatever additional relief the Court finds to be appropriate.

Date: July 28, 2023

/s/ J. Erik Connolly
J. Erik Connolly (D.C. Bar No. IL0099)
Nicole E. Wrigley (D.C. Bar No. IL0101)
Caitlin A. Kovacs (admitted pro hac vice)
Olivia Sullivan (admitted pro hac vice)
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312.212.4949
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
ckovacs@beneschlaw.com
osullivan@beneschlaw.com

*Attorneys for the Plaintiffs Smartmatic USA
Corp., Smartmatic International Holding B.V.,
and SGO Corporation Limited*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of July, 2023, I electronically filed the foregoing

document with the Clerk of Court using the CM/ECF system, which I understand to have served

counsel for the parties.

  */s/ J. Erik Connolly*
J. Erik Connolly (D.C. Bar No. IL0099)
*One of the Attorneys for the Plaintiffs Smartmatic*
*USA Corp., Smartmatic International Holding B.V.,*
*and SGO Corporation Limited*