IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC HOLDING B.V., AND SGO CORPORATION LIMITED,<br><br>Plaintiffs,<br>v.<br><br>HERRING NETWORKS, INC., D/B/A ONE AMERICA NEWS NETWORK,<br><br>Defendant. | Civil Action No. 1:21-cv-02900-CJN |

**DEFENDANT'S RULE 72 OBJECTIONS TO MAGISTRATE JUDGE RULING**

Defendant Herring Networks, Inc., d/b/a One America News Network ("Defendant") files its Rule 72 Objections to Magistrate Judge Ruling, pursuant to Local Civil Rule 72, as follows:

**I.    INTRODUCTION AND BACKGROUND**

Defendant objects to the Magistrate Judge's ("Magistrate") Minute Order of November 11 staying all of Defendant's depositions, including prior notices of both Plaintiff-controlled and third-party witnesses, even though at the time the Magistrate was (and continues to be) the subject of Defendant's Motion to Recuse, which has been pending since July of this year (Dkts. 78, 79, 87). That Motion was not filed lightly, but recusal is warranted based upon the Magistrate's representation as lead counsel, while in private practice, of Venezuela's President Nicolás Maduro's regime before the United States Court of Appeals for the D.C. Circuit in a case where questions were raised whether the Magistrate's client, Maduro, had been legitimately elected as President while it was widely reported that Maduro had rigged elections using Plaintiffs' voting systems to ensure his victory.

The connection between the Plaintiffs and Maduro's regime is a core part of this $2,000,000,000-plus defamation case against a small, family-owned broadcast company, as

1

Plaintiffs' Complaint reveals: "Smartmatic's technology was used in the first automated election in Venezuela" (Dkt. 1 at 12),[1] "Venezuela organized its presidential elections … thanks to Smartmatic technology" (*id.* at 13), and Defendant's "disinformation campaign … republished portions of [Rudy] Giuliani's podcast [that reported the 2020 US election was] not terribly different than what's going on in Venezuela. And very interestingly, you're gonna see that Venezuela is involved in this voter fraud" (*id.* at 39) (alteration omitted). The Complaint alleges that Defendant falsely reported that "Smartmatic is partially owned by the Maduro regime" (*id.* at 40), which is the same "regime" previously represented by the Magistrate as lead counsel in the D.C. Circuit, where an issue was whether Maduro was the legitimate President of Venezuela.

The Complaint further alleges defamation by Defendant's publication of Giuliani's statement that "[t]he company [Smartmatic] counting our vote, with control over our vote, is owned by two Venezuelans who are allies of Chavez, are present allies of Maduro …" (*id.* at 45), and that the Defendant's chyron (a headline typically at the bottom of the screen) falsely stated, according to Plaintiffs, "OAS: Upcoming Venezuela Elex A Sham, Must Not Be Recognized; Says Maduro Regime Seeks to Co-Opt State Power Amid Concerns of Smartmatic Meddling in U.S. Elex." (*Id.* at 53).

In fact, the Complaint contends that one of the core categories of allegedly defamatory statements made by Defendant was that "Smartmatic is a Venezuelan company that was founded and funded by corrupt dictators from socialist and communist countries" (*Id.* at 75). That makes Smartmatic's connections to Venezuela and the Maduro regime a central issue in this case. And

---

[1] All cites are to the ECF-stamped page number.

there are many additional Venezuelan/Maduro references in the Complaint which, for the sake of brevity, Defendant does not include.[2]

Pursuant to this Court's Scheduling Order (agreed to by the parties over a year ago) (Dkt. 42), fact discovery closes in just a few weeks on December 8, 2023. Defendant has worked diligently to meet that deadline but so far, only *one* deposition has actually occurred, and that was testimony of a non-party taken by Defendant. All of the other Defendant-noticed depositions have been stayed by the Magistrate.

Plaintiffs do not claim that the witnesses under their control are unavailable. Nor do they assert that Defendant has failed to accommodate convenient dates, times, and locations for the depositions. Rather, without following the Court's Standing Order requiring leave for discovery motions, Plaintiffs filed two thinly supported "emergency" motions (Dkts. 105 and 113), which the Magistrate granted in unexplained, separate minute orders (Oct. 21 and Nov. 11), temporarily staying all of Defendant's depositions, *without first having ruled on the pending motion for recusal filed over four months ago*.

## II.   QUESTIONS PRESENTED

1. Was it clearly erroneous or contrary to law for the Magistrate to stay all of Defendant's depositions just weeks before this Court's agreed upon discovery deadline without first ruling on Defendant's serious motion to recuse her, which had been pending for over four months?

---

[2] Maduro or "dictator" is mentioned 154 times in the Complaint and its attached exhibits. Plaintiffs' requested discovery search terms contain the word "Maduro" 40 times, and there is a standalone search term for just "Maduro" (Dkt. 79 at 5).

2. Was it clearly erroneous or contrary to law for the Magistrate to stay all of Defendant's depositions when Plaintiffs failed to show the good cause required by the applicable Federal Rule of Civil Procedure?

## III. STANDARD OF REVIEW

A party dissatisfied with an order issued by a magistrate judge may file written objections to the order with the district court. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); LCvR 72.2(b). A magistrate judge's decision "will not be disturbed unless found to be clearly erroneous or contrary to law." *Collett v. Socialist Peoples' Libyan Arab Jamahiriya*, 448 F. Supp. 2d 92, 95 (D.D.C. August 24, 2006) (quoting *Boca Investerings Partnership v. United States*, 31 F. Supp. 2d 9, 11 (D.D.C. 1998) (internal quotations omitted)). But the objection should be sustained "when the court is left with the definite and firm conviction that a mistake has been committed." *United States v. Inst. for Coll. Access & Success*, 27 F. Supp. 3d 106, 110 (D.D.C. 2014) (citations and internal quotation marks omitted).

## IV. ARGUMENT

### A. The Magistrate Should Not Have Granted Substantive Relief While the Recusal Motion Remains Pending.

"[G]iven that disqualification disputes concern the basic integrity of a tribunal, they must be resolved at the outset of the litigation. . . . [And] 'virtually every circuit' allows parties to promptly challenge a judge's decision not to recuse." *Cochran v. U.S. SEC*, 20 F.4th 194, 212 (5th Cir. 2021), *aff'd and remanded sub nom. Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023). To be sure, courts have recognized that, even after the grounds for recusal emerge, a disqualified judge still may enter "housekeeping" or "ministerial" orders, but they should not issue orders involving the exercise of judicial discretion or the granting of substantive relief. *See In re BellSouth Corp.*,

4

334 F.3d 941, 950 n. 4 (11th Cir. 2003); *United States v. O'Keefe,* 128 F.3d 885, 892 (5th Cir. 1997).

In response to Plaintiffs' two emergency motions seeking to quash and stay deposition notices (Dkts. 105 and 113), the Magistrate issued the following Minute Orders:

| | |
|---|---|
| 10/21/2023 | MINUTE ORDER: The Depositions at issue in Plaintiffs' October 12, 2023 Emergency Motion to Quash Deposition Notices 105 , fourteen deposition notices Defendant issued on October 6, 2023 and October 11, 2023, are hereby temporarily stayed pending further order of the Court. SO ORDERED. Signed by Magistrate Judge Moxila A. Upadhyaya on 10/21/2023. (lchk) (Entered: 10/21/2023) |
| 11/11/2023 | MINUTE ORDER: The depositions at issue in Plaintiffs' November 3, 2023 Emergency Motion to Quash Deposition Notices 113 are hereby temporarily stayed pending further order of the Court. SO ORDERED. Signed by Magistrate Judge Moxila A. Upadhyaya on 11/11/2023. (lchk) (Entered: 11/11/2023) |

The Minute Orders here are characterized as "temporary," but they have no expiration date. The first one has now lasted nearly a month and counting. And they have effectively granted Plaintiffs the full relief they requested—grinding all of Defendant's depositions to a halt, in a multi-billion-dollar case where discovery closes in a few weeks. In short, there is no practical difference between these indefinite "temporary" stays and a full grant of Plaintiffs' motions on the merits – the effect is the same.

It was error for the Magistrate to "exercise [] substantive authority" while the motion to recuse remains pending. *United States v. Moody*, 977 F.2d 1420, 1423 (11th Cir. 1992). As noted above, "given that disqualification disputes concern the basic integrity of a tribunal, they must be resolved at the outset of the litigation," *Cochran*, 20 F.4th at 212, and thus judges facing a serious recusal motion should limit themselves only to ministerial orders until the recusal matter is resolved, *see BellSouth*, 334 F.3d at 950; *see also* 13D Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3550 (3d ed. 2023 Update); *Daker v. Toole*, 736 F. App'x

234, 236 (11th Cir. 2018) (unpublished) (denying the motion to recuse as moot after dismissing the action is error).

Even if this is not a *per se* rule, it is certainly required under these circumstances where the Magistrate's representation was of a central figure in this case and where Maduro's relationship to Plaintiffs will be a focus of Plaintiffs' claims. *See, e.g.*, *Miller v. Merit Sys. Prot. Bd.*, No. 1:23-cv-00015 (CJN), 2023 WL 5321727, at *1 (D.D.C. July 3, 2023) (noting the Court had ruled upon a recusal motion before it "ruled upon or even considered the government's motion to dismiss"); *In re Aetna Cas. & Surety Co.*, 919 F.2d 1136, 1145–46 (6th Cir. 1990) (en banc) (disqualified judge's orders on substantive motions affecting outcome of case must be vacated). The Magistrate was lead counsel just a few years ago in a D.C. Circuit case, arguing that Maduro was the legitimate President of Venezuela and that his elections represented the will of the Venezuelan people, even though it was widely reported that Plaintiffs' voting systems had been manipulated to ensure his position as President. Plaintiffs claim they were defamed by Defendant's alleged statements about Smartmatic's Venezuelan ties and their systems' susceptibility to manipulation. Those issues are therefore core to the claims in this case and were also directly implicated by the Magistrate's prior representation, as counsel of record, that Maduro was actually the legitimate President of Venezuela and thus was not corrupt and that Plaintiffs' systems had not been manipulated to help maintain his position.

Moreover, although at first blush a temporary stay of discovery may be seen as non-substantive, the true effect is surely substantive when they impact the ability for Defendant to conduct any depositions before a Court-ordered deadline. And of course those rulings are highly prejudicial to Defendant as explained further below.

6

Because the Magistrate issued substantive relief in the face of a serious pending recusal motion, this Court should vacate the stay of all Defendant's depositions and allow them to proceed.

**B.      Defendant's Depositions Should Not Be Stayed.**

Even setting aside the recusal matter, the Magistrate's indefinite "temporary" stay of all Defendant's depositions should still be vacated because Plaintiffs' emergency motions are clearly erroneous and contrary to law because they do not come close to satisfying the "good cause" requirement of the Federal Rules of Civil Procedure applicable to motions for protection.

It is, at best, far-fetched to suggest, as Plaintiffs do, that there is "good cause" to stay every single deposition sought by Defendant—nearly two dozen in total now. Defendant meticulously debunked Plaintiffs' arguments (Dkts. 106, 114) and respectfully directs the Court to those filings for a more detailed exposition.

In summary, Plaintiffs' emergency motions do not provide any valid basis for blocking every single deposition notice issued by Defendant. They raise no complaints about witness availability, relevance, or deposition location. Rather, they proffer three reasons they believe justify halting every single deposition sought by Defendant in this multi-billion-dollar case: (1) Defendant has not yet produced all documents responsive to Smartmatic's discovery requests; (2) pending discovery disputes remain to be determined by the Court; and (3) attempts by Defendant to take any depositions *before* the case's fact-discovery deadline are improper. None of these arguments has merit. *See Alexander v. F.B.I,* 186 F.R.D. 71, 75 (D.D.C. 1998).

*First*, even if true (which it is not), deficient document production does not warrant the extraordinary attempt to halt all of Defendant's depositions in a multi-billion-dollar case just a month before discovery closes. Indeed, by the time Smartmatic started making this argument (i.e., that all discovery has to await Defendant's document production) in June, the only pending dispute

7

regarding Defendant's production was about a demand to produce detailed financial information. That dispute is the *only issue* regarding Defendant's document production that remains from the May 5 referral of discovery disputes to the Magistrate.

*Second*, Plaintiffs are still not permitted by the rules to resist discovery of its witnesses simply because it believes that Defendant has not produced all of its documents. Plaintiffs' witnesses should know what they know. Why would they need to see the other side's documents first? As any experienced trial lawyer knows, the risk of moving forward with a deposition without a full set of documents lands squarely on the party taking the deposition (i.e., Defendant)—not the party defending it (i.e., Plaintiffs). *See Progressive Cas. Ins. Co. v. FDIC for Sun West Bank*, No. MC 13-1044 (RBW), 2014 WL 12787793, at *3 (D.D.C. Jan. 9, 2014). Thus, Plaintiffs' argument is not just wrong but is entirely backwards.

If anything, their argument is even weaker for third-party depositions, which Defendant has a right to take under Rule 45. Plaintiffs cannot claim they need more documents to prep a witness they don't even represent. If there are concerns about multiple depositions of the same witness, that is a matter for each third-party witness himself to raise—not one that Plaintiffs can raise vicariously. *See, e.g., Green v. Sauder Mouldings, Inc.*, 223 F.R.D. 304, 306 (E.D. Va. 2004) ("Here, Plaintiff is not the party to whom the subpoena was issued. Consequently, absent a showing of privilege or private right, he has no standing upon which to quash it."). That alone demonstrates reversible error by the Magistrate in staying third-party depositions.

*Third*, the Federal Rules of Civil Procedure allow the components of discovery to occur in any order. It certainly makes no sense to claim, as Plaintiffs do, that depositions must wait until after the close of discovery, and is also contrary to this Court's discovery deadline.

*Fourth*, Plaintiffs' emergency motions fail to comply with the Court's Standing Order requirement that no discovery motions may be filed absent leave of Court (Dkt. 5 at 5). That is not just a procedural failure but also indicative of Plaintiffs' cavalier attitude towards discovery in a case *they initiated*.

There is also significant prejudice to Defendant from this massive blockade on its discovery. Either Defendant will be denied key discovery, or the fact discovery deadline will have to be extended, which will impose significant additional expenses on Defendant, a small, family-run company (Dkt. 98 at 19), as does responding to each motion Plaintiffs file without even bothering to seek leave of Court. Moreover, "[a]llowing a case to languish for years on this Court's docket would not serve the interest of this Court or the parties involved. A stay issued prior to the completion of discovery is particularly problematic, as with time evidence may be lost and memories fade." *Kindig v. Whole Foods Mkt. Grp., Inc.*, 811 F. Supp. 2d 410, 417 (D.D.C. 2011).

Further, this case raises significant First Amendment issues centering on free speech rights, and the complexity of issues and amount of damages sought involves extraordinary demands by Plaintiffs, and it has already been pending two years. It needs to move forward, and the deadlines need to be maintained and observed. But Plaintiffs believed they could effectively obtain their desired delay simply by filing procedurally improper and meritless motions, essentially playing a game of chicken with the Court's discovery deadline. The Magistrate clearly erred by indulging Plaintiffs' gamesmanship.

## V.   CONCLUSION

This is no run of the mill objection to a Magistrate's discovery order. Defendant raises a serious basis for recusal, and that matter must be resolved before the Magistrate issues any non-ministerial orders. The Magistrate erred by granting substantive relief on Plaintiffs' extraordinarily

9

weak discovery motions in an important First Amendment case where the very existence of a small media company hangs in the balance—all without first resolving the recusal matter.

The Court should sustain these Objections, allow Defendant's deposition discovery to proceed, and grant such other relief at law or in equity to which Defendant may be entitled.

Dated: November 19, 2023.          By: */s/ Charles L. Babcock*

**JACKSON WALKER LLP**
Charles L. Babcock
(admitted *pro hac vice*)
cbabcock@jw.com
1401 McKinney Suite 1900
Houston, TX 77010
(713) 752-4210 (Direct Dial)
(713) 308-4110 (Fax)

**BOYDEN GRAY PLLC**

/s/ R. Trent McCotter

R. Trent McCotter
D.C. BAR NO. 1011329
801 17th St NW, #350
Washington, DC 20006
(202) 706-5488
tmccotter@boydengray.com

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of November 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel for the parties.

/s/ *R. Trent McCotter*
R. Trent McCotter