**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SMARTMATIC USA CORP., *et al.*, | |
| Plaintiffs, | No. 1:21-cv-02900-CJN |
| v. | |
| HERRING NETWORKS, INC., | Magistrate Judge Moxila A. Upadhyaya |
| Defendant. | |

**PLAINTIFFS' MOTION TO COMEPL PRODUCTION OF FINANCIAL DOCUMENTS**

Pursuant to Rule 37 of the Federal Rules of Civil Procedure and the Court's inherent authority, Plaintiffs Smartmatic USA Corp., Smartmatic International Holdings B.V., and SGO Corporation Limited (collectively, "Smartmatic"), by counsel, submit this Motion to Compel Production of Documents, and it respectfully requests that the Court enter an order compelling Defendant Herring Network Inc.'s (d/b/a OANN) ("OANN") to produce documents responsive to Smartmatic Request for Production Nos. 49, 50, and 51.[1]

In its broadcasting, OANN accused Smartmatic of treason against the United States. Not only that, but OANN used the guise of journalistic integrity to amplify and lend credibility to the baseless accusations. OANN did this knowing that Smartmatic did not rig the 2020 election. But the truth did not stop OANN, as it used its coverage of Smartmatic to curry favor with then-President Donald Trump and to capture market share from competitors Fox News Network and Newsmax.

OANN's gambit worked. In the midst of his attempts to convince the world the election was stolen, President Trump broadcast to the world that he found an ally in OANN. OANN's star was rising, and the network did everything it could to lean into it. And despite knowing that it was broadcasting lies about Smartmatic, OANN knew those lies were increasing its bottom line, so it continued.

Against that backdrop, Smartmatic issued Request for Production Nos. 49, 50, and 51, which all relate to OANN's financial condition. The discovery is relevant to Smartmatic's allegations that OANN acted with actual malice when it defamed Smartmatic based on its improper motive to enrich itself by telling lies about Smartmatic. The discovery is also relevant to

---

[1] Smartmatic also requested documents related to OANN's financial condition in Request for Production Nos. 67, 84, and 90, which are the subject of Smartmatic's motion to compel documents in response to Smartmatic's Second Set of Requests for Production.

Smartmatic's claim for punitive damages because the jury will consider OANN's financial condition when it determines an appropriate award based on the deliberate nature of OANN's misconduct.  Yet OANN refuses to produce any documents, instead relying on its meritless arguments that Smartmatic's requests are irrelevant, overbroad, unduly burdensome, harassing, and confidential.  The Court should order OANN to produce the requested information.

## I.    BACKGROUND

Following the 2020 election, OANN had an opportunity to siphon viewers from its biggest competitor—Fox News—and it took it.  (Compl. at ¶ 83.)  Fox News caused a rift with its viewers in its initial coverage of the election results, and OANN sought to capitalize.  (*Id.*)  OANN knew that Joe Biden and Kamala Harris won the 2020 election and that the 2020 election was not rigged, fixed, or stolen.  (*Id.* at ¶ 2.)  Despite that, OANN told its audience that the 2020 election had been stolen and voting machines switched votes cast for President Trump to Joe Biden.  (*Id.* at ¶ 3.)

OANN's disinformation campaign against Smartmatic began on November 12, 2020.  (*Id.* at ¶ 84.)  After the New York Times reported that claims of software glitches in Smartmatic-competitor Dominion Voting Systems' voting machines were baseless, OANN reported that the NYT article "may help some of you sleep at night, but it also ignores years worth of alarms being raised about these systems."  (Compl. Ex. 1.)  In that same November 12, 2020 broadcast, OANN made sure to tell its viewers that "it's not only Dominion.  It's also Dominion's subsidiaries, such as Smartmatic, which was used for the Philippine elections back in 2010 and 2013."  (*Id.*)

In the days and weeks that followed the 2020 election, OANN continued to amplify the claim that Smartmatic rigged the election.  (*Id.* at ¶ 86.)  OANN reported that Smartmatic rigged the election on its morning and evening news programs, on its website, and on social media.  (*Id.*)  OANN further invited various guests to appear on its network to spread and corroborate the falsities it was publishing about Smartmatic.  (*Id.*)  The disinformation campaign was successful

for OANN, as the network's audience grew at a "rapid clip" during that time.  (Compl. Ex. 144.)

In November 2020, OANN saw 767,000 people install their app through AT&T—an amount nine

times greater than the previous month.  (Compl. at ¶ 139.)  And from November 2020 to January

2021, OANN saw 15 million visits per month to its website—more than double the number of

visitors from prior months.  (*Id.*)

Smartmatic sent OANN a retraction demand letter on December 11, 2020.  (Compl. Ex.

46.)  That letter identified many of the false and misleading statements OANN published,

explained the reasons those statements were false and misleading, and it requested that OANN

issue a retraction of those false claims.  (*Id.*)  Smartmatic sent similar letters to other organizations

regarding disinformation related to the election, and retractions followed.  (Compl. at ¶¶ 141–43.)

But rather than set the record straight for its viewers, OANN instead opted to affirmatively cast

doubt on the sincerity of other organizations' retractions.  (*Id.* at ¶¶ 145–47.)

Instead of issuing any sort of retraction, OANN opted to instead partner with Michael

Lindell, a businessman who had been regularly making public statements spreading disinformation

about the 2020 election.  (*Id.* at ¶¶ 150–51.)  From February 2021 to June 2021, Mr. Lindell

produced four "documentaries" filled with propaganda about the 2020 election, and OANN aired

all of them multiple times.  (*Id.* at ¶¶ 152–68.)  Because OANN knew Mr. Lindell's programs

contained false information, it prefaced the airing with a disclaimer through which OANN

attempted to have it both ways by airing statements defaming Smartmatic but blaming Mr. Lindell

for those same statements.  (*Id.* at ¶¶ 154–55.)

After Smartmatic filed its action against OANN, it served its First Set of Requests for

Production on October 21, 2022.  (Declaration of James R. Bedell ("Bedell Decl.") Ex. A (First

Set of Requests for Production).)  Relevant to this Motion, Smartmatic requested the following

documents related to OANN's finances (the "Requests"):

- RFP No. 49: Documents sufficient to show OANN's financial condition, including

  profits, margins, revenue and advertising revenue;

- RFP No. 50: All balance sheets, profit and loss statements or other financial

  statements prepared by or for OANN reflecting the financial position of OANN

  during the years 2020, 2021, and 2022 including, without limitation, periodic

  financial statements whether weekly, monthly, quarterly, semi-annual or annual

  statements and occasional statements;

- RFP No. 51: Documents and Communications concerning OANN's generation or

  loss of revenue or profits for OANN's effect on OANN's valuation (whether

  internally valued or externally valued) or stock price between January 1, 2020 and

  the present.

OANN responded to the Requests on December 16, 2022.  (Bedell Decl. Ex. B (Responses

and Objections to First Set of Requests for Production).)  OANN objected to the Requests on

relevance, burden, scope, confidentiality, and the notion that the requests are "untethered to any

Smartmatic entity."  (*Id.* at 50–52.)

Smartmatic sent a letter to OANN on January 3, 2023, explaining that the Requests were

relevant to the issue of actual malice.  (Bedell Decl. ¶ 5.)  The parties met and conferred on January

25 and January 27, 2023, and OANN took the position that producing documents responsive to

the Requests was premature because there had not been a judgment issued against OANN giving

rise to a damages analysis.  (Bedell Decl. ¶ 6.)  OANN disputed that documents related to its

financial condition were relevant to the issues of actual malice or that discovery related to punitive

damages was ripe.   (Bedell. Decl. ¶ 7.)   OANN offered nothing more than to produce communications concerning any relationship between its financials and Smartmatic or the alleged defamatory statements and documents reflecting any revenue generated by the specific broadcasts at issue—without acknowledging whether any such documents exist.  (*Id.*)

After exchanging several letters, including their positions on the Requests and case law each side believed supported their positions, Smartmatic indicated that it believed the parties had reached an impasse.  (Bedell Decl. ¶ 8.)  Nearly a month later, however, OANN sought to delay resolution further by disagreeing that an impasse had been reached because it wanted to debate case law with Smartmatic.  (Bedell Decl. ¶ 9.)  Smartmatic responded, indicating that the parties had already met and conferred and exchanged multiple letters over the course of several months without any progress being made, and OANN had simply dismissed Smartmatic's case law provided in support as distinguishable without explanation.  (Bedell Decl. ¶ 10.)  After OANN repeated the same arguments it had made and accused Smartmatic of acting in bad faith, Smartmatic again identified the case law supporting its position—including the distinguishing factors maligning the support OANN had cited—and stated that OANN's decision to remain firm on its refusal to produce documents responsive to the Requests meant the parties were at an impasse.  (Bedell Decl. ¶¶ 11–12.)  OANN finally agreed the parties were at an impasse on April 3, 2023.  (Bedell Decl. ¶ 13.)

## II.   LEGAL STANDARD

The Federal Rules of Civil Procedure permit liberal discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1); *see also United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) ("[R]elevance is still construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense.").

"The party that brings the motion to compel bears the initial burden of 'proving that the opposing party's answers were incomplete,' and 'explaining how the requested information is relevant.'" *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 5–6 (D.D.C. 2017).  Once that burden is satisfied, "the burden then shifts to the non-movant 'to explain why discovery should not be permitted.'"  *Id.* at 6.

## III.   ARGUMENT

Smartmatic alleged that OANN knowingly published false statements about Smartmatic in order to align with President Trump and siphon viewers away from its main competitor, Fox News. Smartmatic alleged entitlement to punitive damages for OANN's conduct and alleged that OANN acted with actual malice from its improper motive to gain notoriety at Smartmatic's expense. Discovery related to OANN's finances is relevant to both the issues of actual malice and punitive damages.  Accordingly, the Court should grant Smartmatic's motion to compel.

### A.      Smartmatic's Requests Are Relevant to Actual Malice

The Court can separately grant Smartmatic's motion on the grounds that the Requests are relevant to the issue of actual malice.  Smartmatic has alleged that OANN engaged in a defamation campaign against Smartmatic in order to financially enrich itself.  (Compl. ¶¶ 421–25.)  The Requests seek documents that will substantiate Smartmatic's allegations.

The "actual malice" standard requires that a plaintiff prove a defamatory statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times v. Sullivan*, 376 U.S. 254, 279–80 (1964).  To defame with reckless disregard, "the defendant must have made the false publication with a high degree of awareness of . . . probable falsity, or must have entertained serious doubts as to the truth of [the defendant's] publication." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) (internal quotation marks and citations omitted).

6

While evidence of an improper motive is not sufficient *by itself* to support a finding of actual malice, "when the evidence of ill will or bad motive is also probative of a 'willingness to publish *unsupported allegations*' it is suggestive of actual malice." *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 590–91 (D.C. Cir. 2016). OANN's false statements about Smartmatic were not made in isolation. Nor is Smartmatic complaining about a singular statement. OANN continued pushing the story that Smartmatic rigged the election for long after numerous independent sources confirmed that their reporting was unsupported. For example:

- The U.S. Attorney General stated on December 1, 2020, that the Department of Justice found no evidence of widespread election fraud. (Compl. ¶ 301; Compl. Ex. 129.)

- Smartmatic sent OANN a retraction demand on December 11, 2020, outlining the truth about Smartmatic and the lack of widespread election fraud in the 2020 election. (Compl. ¶ 334; Compl. Ex. 46.)

- Dominion sent OANN a retraction demand on December 18, 2020, outlining the truth about Dominion and the lack of widespread election fraud in the 2020 election. (Compl. ¶ 332; Compl. Ex. 48.)

- Other news networks that published false statements about Smartmatic issued retractions for those false statements. (Compl. ¶ 142–43.)

Despite this, OANN continued publishing false statements about Smartmatic. (Compl. ¶¶ 145–45.) Not just that, but upon receiving retraction demands, the Herring family—the owners and sole decision-makers of OANN—were "thrilled" because they believed "all publicity, even so-called bad publicity, was good for [OANN]." (Compl. Ex. 151 (Declaration of Martin Golingan) at ¶ 17.) So even though a wealth of information setting the record straight on the 2020

election and Smartmatic's involvement in it was publicly available—and some sent directly to OANN—OANN instead opted to continue defaming Smartmatic.  OANN did this because it saw a direct connection between its defamatory publications and an increase in viewership, and it opted to take advantage of that.  (Compl. ¶¶ 83, 138–39, 423, 425.)  Thus, even well into 2021, OANN was still publishing demonstrably false statements about Smartmatic.  (Compl. ¶¶ 152–68.)

This is not an instance in which a plaintiff is attempting to take discovery into financial information based on a single statement that may or may not have been motivated by profit.  OANN made false statements about Smartmatic, saw that those statements were profitable, and then continued to make those statements.  OANN's improper motive—to gain viewership and, in turn, profits—is probative of OANN's willingness to publish unsupported allegations, and thus, OANN's improper motive is relevant to actual malice, and the Requests seek relevant discovery.

### B.      Smartmatic's Requests Are Relevant to Its Punitive Damages Claim

Smartmatic alleged that OANN defamed it for improper purposes, *i.e.*, to coax viewers away from its competitors.  (Compl. ¶ 83.)  In the process, OANN actively promoted a falsehood that effectively accused Smartmatic of treason against the United States.  Courts have awarded punitive damages for this type of misconduct in the past, and Smartmatic intends to recover punitive damages here as well.  The Requests seek information related to OANN's financial condition, which is relevant to the trier of fact's punitive damages analysis.

In the District of Columbia, a jury may award punitive damages "in cases of outrageous or egregious wrongdoing where the defendant has acted with evil motive, actual malice, or in willful disregard for the rights of the plaintiff." *Hickey v. Scott*, 162 F. Supp. 3d 1, 2 (D.D.C. 2011).  And "[u]nder D.C. law, defamation may be actionable as a matter of law irrespective of actual harm ('defamation *per se*') or, if not, when the plaintiff pleads special harm." *US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42, 73 (D.D.C. 2021) (Nichols, J.).  Furthermore, "not only are the

8

financial backgrounds of the defendants relevant to the jury's determination of punitive damages, a plaintiff is *required* to put forward evidence of the defendants' financial conditions." *Westfahl v. District of Columbia*, No. 11-cv-02210 (CRC), 2015 WL 13697453, at *2 (D.D.C. July 24, 2015) (citing *Chatman v. Lawlor*, 831 A.2d 395, 402 (D.C. 2003)) (emphasis added).

Documents relating to a defendant's financial condition are relevant to a plaintiff's claim for punitive damages. *See id.* Accordingly, courts routinely determine that such documents are discoverable. *See, e.g.*, *Freeman v. Giuliani*, No. 21-3354 (BAH), --- F. Supp. 3d ----, 2023 WL 5600316, at *7 n.4 (D.D.C. Aug. 30, 2023); *see also Roberts-Douglas v. Meares*, 624 A.2d 405, 416–17 (D.C. 1992) (remanding the case "to reconsider the plaintiffs' motion to compel discovery, see note 12 *supra*, in conformity with our holding that information as to each individual defendant's financial condition is relevant not only to the issue of punitive damages, but also to the question of liability . . . ."). *Freeman* is especially instructive. That case involved a defamation action against Rudolph Giuliani brought by two Georgia-based election workers regarding false statements Giuliani made about them in connection with the 2020 election. *Id.* at *17. The *Freeman* court had ordered "full and complete responses" to plaintiffs' requests for the production of Giuliani's tax returns, statements from all accounts—checking, savings, money market funds, mutual funds, hedge funds, certificates of deposit—life-insurance policies, applications for credit or loans, financial statements, all filings from Giuliani's divorce proceedings, and all filings related to the enforcement of the settlement agreement in Giuliani's divorce proceedings. *Id.* at *7 n.4. The court described this discovery as "routine financial documents relevant to plaintiffs' claims for punitive damages." *Id.* at *2. The court ultimately issued significant sanctions against Giuliani for failing to produce his financial information. *Id.* at *26.

Here, the Requests seek the same type of documents that courts have permitted other plaintiffs to support their punitive damages allegations.  Smartmatic seeks, for example, financial statements and other such "routine financial documents" as compelled in *Freeman*.  (Bedell Decl. Ex. A.) These documents will be relevant when the jury considers an appropriate punitive damages award based on OANN's financial condition.  Indeed, Smartmatic is required to put forward this evidence "to ensure that punitive damages 'inflict punishment, while not leading to bankruptcy.'" *Westfahl*, 2015 WL 13697453, at *2 (quoting *Daka, Inc. v. Breiner*, 711 A.2d 86, 101 (D.C. 1998)). Yet OANN has thus far refused to provide a reasonable production of documents responsive to the Requests.

## IV.    CONCLUSION

Smartmatic's Requests are relevant to both the issue of actual malice and its claim for punitive damages.  Smartmatic has alleged in detail that OANN was motivated by profit to continue its defamation campaign, and now Smartmatic seeks discovery into it.  Smartmatic respectfully requests that the Court issue an order compelling OANN to search for and produce documents responsive to the Requests.


Date: December 1, 2023

<div style="margin-left: 40%">

*/s/ James R. Bedell*

J. Erik Connolly (D.C. Bar No. IL0099)
Nicole E. Wrigley (D.C. Bar No. IL0101)
Caitlin A. Kovacs (admitted pro hac vice)
Olivia E. Sullivan (admitted pro hac vice)
BENESCH, FRIEDLANDER, COPLAN
 & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312.212.4949
econnolly@beneschlaw.com
nwrigley@beneschlaw.com

</div>

10

ckovacs@beneschlaw.com
osullivan@beneschlaw.com

James R. Bedell (admitted pro hac vice)
BENESCH, FRIEDLANDER, COPLAN
  & ARONOFF LLP
127 Public Square, Suite 4900
Cleveland, OH 44114
Telephone: 216.363.4500
jbedell@beneschlaw.com


*Attorneys for the Plaintiffs Smartmatic USA
Corp., Smartmatic International Holding B.V.,
and SGO Corporation Limited*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 1st day of December, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which I understand to have served counsel for the parties.

/s/ James R. Bedell
James R. Bedell (admitted pro hac vice)

*One of the Attorneys for the Plaintiffs
Smartmatic USA Corp., Smartmatic International
Holding B.V., and SGO Corporation Limited*

12