IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SMARTMATIC USA CORP., *et al.*,

                Plaintiffs,

   v.

HERRING NETWORKS, INC.,

           Defendant.

No. 1:21-cv-02900-CJN-MAU

Magistrate Judge Moxila A. Upadhyaya

**<u>PLAINTIFFS' MOTION TO COMPEL
DEFENDANT'S PRODUCTION OF DOCUMENTS</u>**

## <u>TABLE OF CONTENTS</u>

Page

I.  INTRODUCTION ........................................................................................ 1

II.  BACKGROUND ........................................................................................ 2

III.  CERTIFICATION OF SMARTMATIC'S GOOD-FAITH
ATTEMPT TO MEET AND CONFER ...................................................... 5

IV.  LEGAL STANDARD ................................................................................ 6

V.  ARGUMENT ............................................................................................. 7

    A.  OANN's Timeliness Objection to Smartmatic's Requests for
Production is Baseless ...................................................................... 7

    B.  Smartmatic's Second Set of Requests for Production Seek
Documents Relevant to Smartmatic's Defamation Claims and
Damages ............................................................................................ 9

        1.  *Smartmatic's Requests for Production Are Relevant to
Proving OANN Acted with Actual Malice* .............................. 10

        2.  *Smartmatic's RFPs Are Also Relevant to Smartmatic's
Damages* ................................................................................ 14

        3.  *Smartmatic's RFPs Are Relevant to Its Request for
Punitive Damages* ................................................................. 15

        4.  *Smartmatic's RFPs Seek Information Related to the
Defamatory Broadcasts and OANN's Affirmative
Defenses to the Complaint* .................................................... 16

    C.  Smartmatic's Requests Are Proportionate to Smartmatic's
Needs in the Case ............................................................................ 17

VI.  CONCLUSION ........................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. FBI*,
    194 F.R.D. 316 (D.D.C. 2000) ..............................................................................6

*BuzzFeed, Inc. v. U.S. Dep't of Justice*,
    318 F. Supp. 3d 347 (D.D.C. 2018) ......................................................................18

*Clark v. Rusk, Inc.*,
    2006 WL 8445814 (D. Minn. June 20, 2006) .......................................................16

*Duffy v. Leading Edge Prods., Inc.*,
    44 F.3d 308 (5th Cir. 1995) .................................................................................14

*Edeh v. Equifax Info. Servs., LLC*,
    2013 WL 1799006 (D. Minn. Apr. 29, 2013) .......................................................16

*English v. Wash. Metro. Area Transit Authority*,
    293 F. Supp. 3d 13 (D.D.C. 2017) ........................................................................6

*Freeman v. Giuliani*, --- F. Supp. 3d ---, 2023 WL 5600316, at *7 & n.4 (D.D.C.
    Aug. 30, 2023) .....................................................................................................15

*Frey v. Minter*,
    2019 WL 2450920 (M.D. Ga. June 19, 2019) .....................................................8, 9

*Gilmore v. Jones*,
    2021 WL 68684 (W.D. Va. Jan. 8, 2021) ............................................................14

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
    491 U.S. 657 (1989) .........................................................................................12, 14

*Hussain v. Nicholson*,
    453 F.3d 359 (D.C. Cir. 2006) ..............................................................................7

*Kargbo v. Nat'l R.R. Passenger Corp.*,
    2016 WL 10998394 (D.D.C. Jan. 14, 2016) ........................................................18

*M.J. v. District of Columbia*,
    2020 WL 13668599 (D.D.C. July 1, 2020) ..........................................................18

*McFadden v. Wash. Metro. Area Transit Auth.*,
    186 F. Supp. 3d 100 (D.D.C. 2016) .....................................................................15

*New York Times v. Sullivan*,
376 U.S. 254 (1964) ........................................................................................................11

*Oparaugo v. Watts*,
884 A.2d 63 (D.C. 2005) ................................................................................................10

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) ..........................................................................................................6

*Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*,
322 F.R.D. 1 (D.D.C. 2017) ............................................................................................17

*United States ex rel. Pogue v. Diabetes Treatment Centers of Am.*,
576 F. Supp. 2d 128 (D.D.C. 2008) ..................................................................................7

*United States ex rel. Shamesh v. CA, Inc.*,
314 F.R.D. 1 (D.D.C. 2016) ..............................................................................................7

*St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspections, Inc.*,
2007 WL 1589495 (D.D.C. June 1, 2007) ........................................................................8

*Tavoulareas v. Piro*,
817 F.2d 762 (D.C. Cir. 1987) ........................................................................................14

*Wall v. Reliance Standard Life Ins. Co.*,
341 F.R.D. 1 (D.D.C. 2022) ..............................................................................................6

**Other Authorities**

Fed. R. Civ. P. 26(b) .........................................................................................6, 7, 16, 17, 18

Federal Rule of Civil Procedure 34(a)(1) ...............................................................................6

Federal Rule of Civil Procedure 37 ........................................................................................1

Federal Rule of Civil Procedure 37(a) ...............................................................................2, 6

Plaintiffs Smartmatic USA Corp., Smartmatic International Holdings B.V., and SGO Corporation Limited (collectively, "Smartmatic"), by counsel, respectfully submit this motion to compel Herring Network Inc. (d/b/a OANN) to produce documents responsive to Smartmatic's Second Set of Requests for Production ("RFPs"). Smartmatic submits this motion pursuant to Federal Rule of Civil Procedure 37.

## I.   INTRODUCTION

For far too long, OANN has abused the discovery process to deprive Smartmatic of the relevant documents necessary to litigate Smartmatic's claims. OANN is now attempting to punish Smartmatic for OANN's own delay by refusing to produce *any* documents responsive to Smartmatic's Second Set of RFPs based on the disingenuous objection that Smartmatic's requests are untimely. But the Second Set of RFPs was timely. With less than two weeks before the deadline to serve a second set of document requests under the Court's scheduling order, OANN had produced just 97 documents in response to Smartmatic's First Set of RFPs. With several pending discovery disputes involving OANN's production pending before the Court, Smartmatic moved, for the first time and with good cause, for an additional two months to serve document requests, to which OANN's prior counsel had represented that it did not object. But OANN subsequently retained new counsel who abruptly reversed course. In direct contradiction with the parties' prior agreement, OANN's new counsel opposed Smartmatic's motion to extend the deadline and then refused to produce any responsive documents on the sole meritless objection that Smartmatic's supplemental requests are untimely.

As compared to OANN, which served more than 1,500 supplementary document requests, the majority of which are duplicative or irrelevant, Smartmatic propounded 36 supplemental document requests in its Second Set of RFPs that bear on issues relevant to Smartmatic's defamation claims, including OANN's actual malice and the damages that Smartmatic incurred

after OANN broadcast false statements that Smartmatic's election technology rigged the 2020 U.S. presidential election. When weighed against the requested information's importance to litigating Smartmatic's claims on the merits, responding to Smartmatic's Second Set of RFPs imposes no significant burden on OANN. The prejudice to Smartmatic, in contrast, would be great if Smartmatic were denied responsive documents in discovery, considering that Smartmatic bears the burden of proof in this case. Accordingly, Smartmatic respectfully moves the court to compel OANN's production of documents over OANN's objection pursuant to Federal Rule of Civil Procedure 37(a).

## II.     BACKGROUND

OANN engaged in a multiyear defamation campaign during which they falsely broadcast that Smartmatic, a voting machine company, rigged the 2020 U.S. Presidential election by flipping votes for Donald J. Trump to Joseph Biden and Kamala Harris. (Complaint, Dkt. 1, ¶ 86). To recompense the harm that OANN's specious accusations caused to Smartmatic's reputation as a safe, reliable voting technology provider, Smartmatic filed its Complaint, seeking compensatory and punitive damages and other relief for defamation and injurious falsehood. (*See generally* Dkt. 1). Smartmatic's claims proceeded to discovery, and consistent with the Court's scheduling order, Smartmatic served its First Set of RFPs on October 21, 2022. (*See* Scheduling Order, Dkt. 42; Mot. Extension Time Serve Doc. Reqs., Dkt. 54, ¶ 3). OANN served its responses and objections to Smartmatic's requests after requesting an extension of time, to which Smartmatic was amenable, marking the start of a long, painstaking process of negotiating OANN's production of ***any*** relevant documents.

From January through mid-April 2023, Smartmatic and OANN met and conferred seven times about the parties' discovery disputes. (Sullivan Decl., Ex. A, ¶ 3.) The parties also exchanged more than 50 letters and countless emails discussing and negotiating discovery terms, including

OANN's production of relevant documents. (*Id.*) Early in the discovery process, Smartmatic proposed a schedule for the parties to make rolling document productions on three dates, to which OANN agreed. (*Id.*) On February 3, OANN produced 56 documents. (*Id.* ¶ 4) On March 3, OANN produced 41 documents. (*Id.*) On April 7, OANN did not produce any documents at all. (*Id.*)

After March 3, when OANN had produced a total of 97 documents and was refusing to negotiate search terms or identify custodians, it became obvious that OANN was not participating in discovery in good faith. (*Id.*) Smartmatic informed OANN that it would seek leave to compel OANN's production. (*Id.* ¶ 5.) OANN, in response, promised that it would comply if the parties agreed to a new schedule and insisted that a motion to compel was unnecessary. (*Id.*) Smartmatic obliged. (*Id.*)  By the end of March, the parties reached a final agreement on a discovery schedule for additional productions to occur on April 28 and on May 5 and 19. (*Id.*) In mid-April, just two weeks after agreeing to the revised document-production schedule, OANN informed Smartmatic that it would not meet any of the agreed deadlines and *again* asked to push back the document production schedule. (*Id.* ¶ 6.)  Considering that it had been *six months* since Smartmatic had served its First Set of RFPs, Smartmatic could not continue to idly wait for OANN to make its first substantive production of documents. Smartmatic would not accommodate yet another request from OANN to delay Smartmatic's discovery of the evidence that would be used to prove its claims at trial. Smartmatic informed OANN's counsel that it would hold them to their promises. (*Id.*) OANN then missed ***all*** the agreed deadlines—every single one. (*Id.*)

OANN's missed deadlines and woefully deficient production prompted Smartmatic to request leave to file a motion to compel in the parties' May 5 Joint Notice of Unresolved Discovery Disputes ("Joint Notice"). (*Id.* ¶ 7.) Smartmatic sought to compel OANN to adhere to the agreed production deadlines, to agree to a completion date for document production, to identify relevant

witnesses, and to produce financial documents. (*Id.*) The Court has not yet addressed the disputes outlined in the parties' Joint Notice.

While Smartmatic continued to insist that OANN produce documents, OANN reaped the benefit of Smartmatic's production. By the parties' agreed May 19 deadline, Smartmatic had made six productions consisting of 473,818 documents. (*Id.* ¶ 8.) Smartmatic, in stark contrast, had received just **97** documents. (*Id.*) With one week remaining before the Court's May 31 deadline to serve document requests, OANN belatedly produced 186,000 documents, the vast majority of which, however, comprised irrelevant, publicly available news alerts. (*Id.*)

The absence of any meaningful documents produced by OANN rendered it impossible for Smartmatic to evaluate what additional document requests were necessary to complete its written discovery. (*See* Mot. Extension Time Serve Doc. Reqs., Dkt. 54, ¶ 7.) In requesting a telephone conference with the Court to discuss the discovery disputes in the parties' May 5 Joint Notice, Smartmatic asked whether the Court preferred that the parties submit a motion to extend the discovery schedule given that OANN was unopposed. (Dkt. 54, ¶ 6.) After confirming that OANN had no objections, and prior to the May 31 deadline, Smartmatic timely filed its motion to extend the deadline for serving document requests to July 31, 2023. (*See* Dkt. 54.) OANN's counsel was unopposed. (*See* Reply Supp. Pls.' Mot. Extension Time Serve Doc. Reqs., Dkt. 64, at 1–2.) Given OANN's representations, Smartmatic was surprised when OANN filed an opposition in response. (*Id.*) As it turned out, on the same day Smartmatic filed its motion for an extension, OANN retained new counsel, who then decided it would contest Smartmatic's motion. (*Id.* at 2.) As discussed in Smartmatic's reply to OANN's opposition, OANN's retention of new counsel did not allow it to renege on prior agreements. (*Id.*)

Smartmatic served its Second Set of RFPs on July 31, 2023, the last date that Smartmatic requested in its motion for an extension. (*See* Dkt. 54.) Smartmatic's Second Set of RFPs included 36 requests for the production of documents that are highly relevant to litigating Smartmatic's defamation claims on the merits.[1] Smartmatic's Second Set of RFPs are attached hereto as Exhibit A.1. Despite Smartmatic's diligence throughout discovery and its sound basis for seeking an extension of time for serving the additional document requests, to which OANN had originally not objected, OANN refused to produce ***any*** responsive documents. Rather, OANN stated that because the Court had not yet granted Smartmatic's motion for an extension, Smartmatic's Second Set of RFPs was "untimely" and OANN was thus "under no obligation to produce documents in response." (*See* OANN's Responses and Objections, attached hereto as Exhibit A.2.) Smartmatic was forced to file this motion to compel.

## III.   CERTIFICATION OF SMARTMATIC'S GOOD-FAITH ATTEMPT TO MEET AND CONFER

On September 6, 2023, the parties held a meet-and-confer over a videoconference to discuss OANN's objection. Smartmatic explained the prejudice that OANN's discovery tactics had caused Smartmatic. OANN, in response, reaffirmed its position that Smartmatic's Second Set of RFPs was untimely because Smartmatic's motion to extend the deadline to July 31 had not been granted. OANN also asserted that in its view, requests in Smartmatic's Second Set could have been propounded sooner. Smartmatic reiterated that it filed its motion for an extension in a timely manner and met the July 31 deadline it requested in its motion. Smartmatic also emphasized that without a meaningful production by OANN in response to the First Set of RFPs, Smartmatic was unable to properly determine if there were additional categories of documents needed in a

---

[1] In comparison, OANN, which unlike Smartmatic does not bear the burden of proof, served more than 500 requests on each Plaintiff.

supplemental production request. While Smartmatic reserves the right to further challenge and respond to OANN's other objections, the parties could not meaningfully begin addressing them so long as OANN withholds any and all production based on this unfounded argument. The parties reached an impasse, and Smartmatic advised OANN of its intent to move to compel OANN's responses to Smartmatic's Second Set of RFPs.[2]

## IV.    LEGAL STANDARD

The Federal Rules of Civil Procedure permit discovery of any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); *Wall v. Reliance Standard Life Ins. Co.*, 341 F.R.D. 1, 6 (D.D.C. 2022). To promote the parties' full disclosure of all information essential to litigating the case on the merits, federal courts construe relevancy "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Where a party objects to producing relevant information in response to a request made under Federal Rule of Civil Procedure 34(a)(1), the party seeking discovery may move to compel disclosure of the responsive documents after making good-faith efforts to resolve the dispute without judicial intervention. Fed. R. Civ. P. 37(a); *English v. Wash. Metro. Area Transit Authority*, 293 F. Supp. 3d 13, 15 (D.D.C. 2017). The party moving to compel bears the initial burden of showing that the information sought is relevant. *Wall v. Reliance Standard Life Ins. Co.*, 341 F.R.D. 1, 6 (D.D.C. 2022). The burden then shifts to the objecting party, who must make a "specific, detailed showing" of why the court should deny discovery. *Alexander v. FBI*, 194 F.R.D. 316, 326 (D.D.C. 2000).

---

[2] OANN later served its Supplemental Objection to Smartmatic's Second Set of RFPs ("Supplemental Objection," attached hereto as Exhibit A.3), in which OANN again refused to produce any responsive documents pursuant to the same objection.

V.    ARGUMENT

Smartmatic's Second Set of RFPs is timely, yet OANN has produced *none* of the responsive documents based on a singular meritless objection. The Court should not countenance OANN's attempt to deprive Smartmatic of information relevant to its defamation claims at trial. Smartmatic propounded 36 reasonable requests for documents relevant to OANN's knowledge and subjective state of mind, to OANN's underlying financial motive for broadcasting false and defamatory statements about Smartmatic, to the statistical viewership of OANN's defamatory broadcasts, to Smartmatic's calculation of damages, and to OANN's alleged defenses to the Complaint. Moreover, the burden of producing the responsive documents is minimal relative to the gravity of Smartmatic's allegations, the amount at stake in the litigation, and the information asymmetry resulting from OANN's exclusive possession of the requested information. Accordingly, the Court should overrule OANN's objection based on the timeliness of Smartmatic's Second Set of RFPs and compel OANN to produce the responsive documents.

> **A.    OANN's Timeliness Objection to Smartmatic's Requests for Production is Baseless**

District courts possess "broad discretion in structuring discovery." *Hussain v. Nicholson*, 453 F.3d 359, 363 (D.C. Cir. 2006) (quoting *Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 425 (D.C. Cir. 1991)); *see also United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 9 (D.D.C. 2016). District courts may modify scheduling orders for discovery on a showing of "good cause"—that is, where the discovery deadlines cannot reasonably be met despite the moving party's diligence. Fed. R. Civ. P. 16(b)(4); LCvR. 16.4(a) ("The Court may modify the scheduling order at any time upon a showing of good cause."); *United States ex rel. Pogue v. Diabetes Treatment Centers of Am.*, 576 F. Supp. 2d 128, 133 (D.D.C. 2008) (quoting *St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspections, Inc.*, 2007 WL 1589495, at *6 (D.D.C. June 1, 2007)). Courts

will find good cause to modify a scheduling order where "the moving party has been generally diligent, the need for more time was neither foreseeable nor its fault, and refusing to grant the continuance would create a substantial risk of unfairness to that party." *St. Paul Mercury Ins. Co.*, 2007 WL 1589495, at *6 (quoting 3 Moore's Federal Practice § 16.14[1][b] (2003)).

Here, Smartmatic's Second Set of RFPs is timely. Smartmatic could not have anticipated that OANN would fail to make *any* meaningful productions before the May 31 deadline in the Court's scheduling order. When Smartmatic's continuous efforts to productively meet and confer about OANN's paltry production proved futile, Smartmatic threatened to seek the Court's intervention to compel OANN's production of responsive information. Without a substantive production against which Smartmatic could determine the categories of relevant documents that its First Set of RFPs had not encompassed, Smartmatic sought to extend the discovery deadline by mutual agreement. (Dkt. 54, ¶ 6.) Smartmatic had good cause to support modifying the discovery deadlines especially because OANN acquiesced when Smartmatic filed its motion to extend the deadline to serve document requests. (Dkt. 54, ¶¶ 6, 8.) The Court should not permit OANN to further obstruct the litigation of Smartmatic's claims on the merits by allowing OANN's new counsel to renege on the parties' agreement and then refuse to respond to Smartmatic's supplemental document requests on the unfounded objection that they are untimely. *See Bay Area Cellular Tel. Co. v. City and County of San Francisco*, 205 WL 889722, at *1 ("The Court was particularly troubled by Plaintiff's reliance on the retention of new counsel as an excuse for reneging on prior agreements to provide discovery.").

The district court's decision in *Frey v. Minter*, 2019 WL 2450920, at *3 (M.D. Ga. June 19, 2019) is highly instructive. *Frey* was a case where plaintiff's "opposition to the motion to compel [was] based solely on his contention that the requests were untimely and were not properly

served." The *Frey* court had entered an amended scheduling order to permit the parties to file motions to compel, but the defendant had not timely served his requests for production. *Id.* at *1. Although the defendant had neglected to request an extension of the discovery deadline, the court nevertheless concluded that he had not waived his right to seek discoverable evidence to which he would have been entitled had he requested the extension. *Id.* at *2.  As compared to the defendant in *Frey*, Smartmatic was far ***more*** diligent in discovery and ***did*** timely request an extension of the deadline to serve document requests. Smartmatic made concerted efforts to meet all deadlines prior to the deadline's expiration on May 31, and Smartmatic would have preferred not to file such a motion had OANN reciprocated Smartmatic's efforts. But OANN's efforts to frustrate Smartmatic in discovery necessitated both the motion for an extension of time and also this motion to compel OANN's responses to Smartmatic's Second Set of RFPs.

Moreover, ordering OANN to respond to Smartmatic's Second Set of RFPs over its timeliness objection in no way prejudices OANN—who does not bear the burden of proof in this litigation. OANN had originally agreed to the extended deadline and only later opposed it once OANN's current counsel deemed it advantageous to do so. The risk of unfairness would be to Smartmatic if OANN were not compelled to substantively respond to Smartmatic's Second Set of RFPs.

### B.      Smartmatic's Second Set of Requests for Production Seek Documents Relevant to Smartmatic's Defamation Claims and Damages

To prevail on its defamation claims, Smartmatic will prove "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm."

*Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005). Here, Smartmatic's Second Set of RFPs is unquestionably relevant to the issues of OANN's negligence and Smartmatic's pecuniary damages.

### 1.  *Smartmatic's Requests for Production Are Relevant to Proving OANN Acted with Actual Malice*

Of the 36 requests in Smartmatic's Second Set of RFPs, at least a third of them seek information that would help substantiate Smartmatic's allegations that OANN *knew* that the defamatory statements were false:

- RFP 66: "Any and all Documents and Communications You received in response to any request issued to any federal, state, or municipal entity, including but not limited to requests issued under the Freedom of Information Act, 5 U.S.C. § 552, and any state and municipal equivalents and/or corollaries, relating to the 2020 PRESIDENTIAL ELECTION."

- RFP 68: "All Documents and Communications regarding any relationship that existed at any time between OANN and The Washington Times, as referenced in Your amended answer to Paragraph 78 of the COMPLAINT."

- RFP 79: "All documents and communications, including drafts, relating to each visual, illustration, graphic, picture, or photograph shown, displayed, or published during any of the DEFAMATORY BROADCASTS relating to SMARTMATIC, DOMINION, and/or their alleged personnel, executives, or owners."

- RFP 80: "All documents and communications concerning the credibility or reliability of any ON-AIR PERSONALITY as sources of factual information, including but not limited to communications questioning their sanity, propensity to fabricate stories for publications, and/or willingness to publish inherently improbable information without adequate fact-checking."

- RFP 81: "All documents and communications relating to the statement made by former Attorney General Barr on or about December 1, 2020, that the U.S. Department of Justice had 'not seen fraud on a scale that could have effected a different outcome in the Election.'"

- RFP 82: "All documents and communications relating to the U.S. Cybersecurity & Infrastructure Security Agency ("CISA"), former U.S. Director of CISA Chris Krebs, and the Secretaries of State of Georgia, Pennsylvania, Wisconsin, Arizona, and/or Michigan that relate to the 2020 PRESIDENTIAL ELECTION."

- RFP 85: "All Webex recordings or similar recordings of conversations involving any custodian in this case related to OANN's coverage of the 2020 PRESIDENTIAL ELECTION on or after November 3, 2020. The time frame for this request is November 3, 2020 to June 30, 2021."

- RFP 86: "Documents and communications concerning all articles, tweets, content, posts, videos, and/or references thereto that have been removed from OANN DIGITAL, and/or OANN SOCIAL MEDIA referencing SMARTMATIC, DOMINION, voting technology, and/or election integrity from November 1, 2020 to the present."

- RFP 87: "Documents and communications relating to any lawsuit that was filed concerning the outcome of the 2020 PRESIDENTIAL ELECTION."

- RFP 95: "All Documents and Communications relating to Christina Bobb's involvement or relationship with DONALD TRUMP, the TRUMP ADMINISTRATION, and the TRUMP CAMPAIGN. The time frame for this request is January 1, 2020 through December 31, 2022."

- RFP 96: "Documents and Communications concerning appearances by Kyle Becker, Clay Clark, Joseph diGenova, Chris Farrell, Tom Fitton, Michael Johns, Evi Kokalari-Angelakis, Cory Mills, Allan Santos, Keith Tripper, Joe Oltmann, Ron Watkins, and/or Michael J. Waller on OANN PROGRAMS between November 1, 2020 and the present, including any drafts, scripts or other programming-related documents, any documents and communications concerning the credibility of these individuals, and any documents or communications concerning ratings associated with the broadcasts of these appearances."

- RFP 98: "Documents and communications with or concerning media watchdog organizations including Media Matters for America, Citizens for Responsibility and Ethics, and Common Cause."

(Ex. A.1.)

Considering that OANN's knowledge or negligence of the defamatory statements' falsity is an element of Smartmatic's defamation claims (*see* Compl., Dkt. 1, ¶¶ 238–45, 448), the relevance of the above requests to Smartmatic's complaint cannot be challenged. That a defamatory statement was made with "actual malice" may be proven "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times v. Sullivan*, 376 U.S. 254, 279–80 (1964). To defame with reckless disregard, "the defendant must have made the

false publication with a high degree of awareness of . . . probable falsity or must have entertained serious doubts as to the truth of [the defendant's] publication." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) (internal quotation marks and citations omitted). In serving the requests above, Smartmatic requests specific records in OANN's possession that substantively contradict the defamatory statements, undermine the reliability of OANN's guests, hosts, and sources, and reflect OANN's contemporaneous impressions of the statements' veracity, or lack thereof, when OANN aired them.

While the documents responsive to the requests above will establish OANN's knowledge that the defamatory statements were false, fifteen additional document requests in Smartmatic's Second Set of RFPs will demonstrate the reasons *why* OANN nonetheless chose to air them. These requests are as follows:

- RFP 67: "All documents prepared in connection with any and all meetings of YOUR board of directors, including but not limited to meeting minutes, slide decks, board packets, board reports, strategic plans, audited financial statements, draft financial statements, budgets, financial projections, marketing plans, and valuations."

- RFP 71: "Documents sufficient to show the total number of OANN application installations, across all platforms and application stores, and users, on a monthly basis from January 1, 2020, to December 31, 2021, including analytics data compiled by Sensor Tower."

- RFP 72: "Documents sufficient to show all of OANN's carriers, as well as all platforms where live streams of OANN, were available from January 1, 2019 to present, including but not limited to OAN Live, Roku, Facebook, KlowdTV, AT&T, DirecTV, Verizon Fios, Century Link, General Communications, Inc., GCI Communication Corp., Vidgo, Frontier Communications, Major Market Broadcasters, Net Range, Pluto, Vizio, TCL, VIDAA, FreeCast, DistroTV, and Videohouse Inc."

- RFP 73: "Documents sufficient to show the total number of viewers, subscribers, and/or followers for each carrier and platform identified in Request 72 on a monthly basis, including the total number of viewers, subscribers (not paid), and/or followers specific to OANN on those platforms."

- RFP 74: "Documents and communications with or concerning Comscore and Nielsen regarding OANN's ratings and viewership numbers."

- RFP 75: "All documents and communications with or concerning Sensor Tower regarding OANN DIGITAL and OANN SOCIAL MEDIA traffic and engagement."

- RFP 76: "Documents sufficient to show ratings and viewership of OANN PROGRAMS."

- RFP 77: "Documents and communications concerning the markets in which OANN was available and its plan for expansion into additional markets between January 1, 2019 and December 31, 2022."

- RFP 78: "Documents and communications concerning AT&T and DirecTV's decision in 2022 to not renew carriage agreements with OANN and no longer carry OANN on their platforms."

- RFP 84: "Documents and communications concerning offers to invest in or to purchase OANN from January 1, 2020 to the present."

- RFP 88: "Documents and communications relating to any agreements, arrangements, understandings, and/or contracts in effect between YOU, OTHER NEWS ORGANIZATIONS, DONALD TRUMP, the TRUMP ADMINISTRATION, or the TRUMP CAMPAIGN from January 1, 2016 to the present."

- RFP 90: "OANN's strategic and business planning documents from the past five (5) years, including financial projections, analyses, budgets, and forecasts."

- RFP 91: "Documents and Communications concerning OANN's involvement in, support or sponsorship of, and/or donations to Political Action Committees, political organizations, and political candidates, including but not limited to the Conservative Political Action Conference and Voices and Votes. The time frame for this request is January 1, 2015 to December 31, 2021."

- RFP 93: "Documents and Communications concerning OANN's pitches to advertisers, carriers, and/or investors including any presentations used for those pitches."

- RFP 94: "All Documents and Communications concerning viewer feedback submitted to OANN via email or OANN's Website relating to OANN's coverage of the 2020 PRESIDENTIAL ELECTION."

(Ex. A.1.)

A plaintiff may prove a defamation defendant's subjective state of mind in publishing false statements "through the cumulation of circumstantial evidence, as well as through direct evidence." *Tavoulareas v. Piro*, 817 F.2d 762, 789 (D.C. Cir. 1987). Thus, evidence of a defendant's motive and ulterior motive is patently discoverable. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989) (motive is a factor when determining actual malice); *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 315 n.10 (5th Cir. 1995) ("[E]vidence of ulterior motive can often bolster an inference of actual malice."); *see also Gilmore v. Jones*, 2021 WL 68684, at *8 (W.D. Va. Jan. 8, 2021) ("[D]iscovery into Defendants' specific profit motive is relevant to, even if not sufficient to prove, actual malice."). Smartmatic alleged actual malice based, in part, on OANN's motive to increase viewership, ratings, and revenue by undertaking its defamation campaign against Smartmatic. (Complaint, ¶¶ 83, 138–39, 421–25.) Here, the documents responsive to RFP Nos. 71–78 would reveal that OANN implemented its strategy to defame Smartmatic upon learning that it attracted viewers from other networks—namely, Fox News. Indeed, Smartmatic is entitled to the records in OANN's possession showing the defamatory programs' viewership and profitability, which will further substantiate OANN's underlying motive for defaming Smartmatic.

### 2. Smartmatic's RFPs Are Also Relevant to Smartmatic's Damages

Eight of the RFPs discussed above are relevant not only to OANN's actual malice but also to the damages that Smartmatic suffered from OANN's defamation campaign. (See RFPs 71–78.) Although Smartmatic has pleaded defamation per se, to prove Smartmatic's economic losses, Smartmatic further seeks to identify the business opportunities lost because of OANN's defamatory statements. *Browning v. Clinton*, 292 F.3d 235, 245 (D.C. Cir. 2002) (a defamation plaintiff proves facts demonstrating that the pecuniary losses were the natural and direct result of the defendant's conduct).

The requests above for information about OANN's carriers, subscribers, viewership, and streaming services are all highly relevant to demonstrating that OANN's defamatory statements were the cause of Smartmatic's pecuniary losses. To date, however, OANN has produced very little data from which Smartmatic has been able to ascertain the reach of OANN's programming on the relevant dates. (*See* Sullivan Decl., ¶ 14.) In short, the relevance of the information to Smartmatic's proof of damages is yet another reason that the Court should compel OANN's responses.

### 3.     *Smartmatic's RFPs Are Relevant to Its Request for Punitive Damages*

OANN's motive for publishing the defamatory statements is highly relevant because Smartmatic seeks punitive damages for OANN's misconduct. (Compl., Dkt. 1, ¶¶ 454, 468–69.) Accordingly, Smartmatic included the following requests for OANN's financial documents in its Second Set of RFPs:

- RFP 90: "OANN's strategic and business planning documents from the past five (5) years, including financial projections, analyses, budgets, and forecasts."

- RFP 97: "Documents sufficient to identify all sources of funding OANN is using to pay costs, expenses, and/or fees for this case, including each entity or individual providing funds, contingency services, pro bono services, and/or litigation financing and the related oral or written agreements."

(Ex. A.1.)

Under District of Columbia law, "punitive damages are available as damages based on liability for torts such as . . . defamation." *McFadden v. Wash. Metro. Area Transit Auth.*, 186 F. Supp. 3d 100, 110 (D.D.C. 2016). Evidence of a defendant's financial condition is a relevant consideration in awarding punitive damages, and thus courts routinely determine that such evidence is discoverable. *See, e.g.*, *Freeman v. Giuliani*, --- F. Supp. 3d ---, 2023 WL 5600316, at *7 & n.4 (D.D.C. Aug. 30, 2023) (ordering "full and complete responses" to the plaintiffs' requests for the production of tax returns, bank statements, life insurance policies, credit applications, and

many other types of financial statements dating from 2018); *Edeh v. Equifax Info. Servs., LLC*, 2013 WL 1799006, at *3 (D. Minn. Apr. 29, 2013). Here, Smartmatic's RFPs Nos. 90 and 97 seek the same types of documents that courts have permitted other plaintiffs to discover in support of their claims for punitive damages. *See, e.g.*, *Clark v. Rusk, Inc.*, 2006 WL 8445814, at *2 (D. Minn. June 20, 2006) (compelling production of audited financial statements and budget, revenue, or profit projections). These financial documents are critical to Smartmatic's position regarding punitive damages.

> **4.      Smartmatic's RFPs Seek Information Related to the Defamatory Broadcasts and OANN's Affirmative Defenses to the Complaint**

OANN attempts to affirmatively defend against Smartmatic's claim, in part, by alleging the truth of the defamatory statements and by asserting that various privileges protect the defamatory statements (Allegations Supp. Affirmative & Other Defenses, Dkt. 36, ¶¶ 89–90, 97–100.) Accordingly, Smartmatic seeks any evidence in OANN's possession that could possibly substantiate the defamatory broadcasts or establish the applicability of any privilege:

- RFP 69: "All Documents and Communications that You allege constitute evidence of voter fraud or other flaws affecting the 2020 PRESIDENTIAL ELECTION and that are not otherwise called for in response to RFP Nos. 36, 27, 38, 39, 40, and 52."

- RFP 70: "All Documents and Communications regarding Your position that OANN was 'duty bound to report on' statements made by GIULIANI and POWELL, as referenced in YOUR amended answer to Paragraph 178 of the COMPLAINT."

- RFP 83: "All Documents and Communications relating to George Soros or Peter Neffenger that relate to SMARTMATIC, DOMINION, and/or the 2020 PRESIDENTIAL ELECTION."

Like Smartmatic's other document requests, the relevancy of the above RFPs is beyond question. Under Rule 26, Smartmatic is entitled to discovery "regarding any nonprivileged matter that is relevant to any party's claim or *defense*." Fed. R. Civ. P. 26(b)(1) (emphasis added). To

support the lie that Smartmatic rigged the 2020 U.S. presidential election. OANN repeatedly portrayed Smartmatic as part of some nefarious global cabal of foreign actors determined to undermine the integrity of American elections. (*See, e.g.*, Complaint, Dkt. 1, Exs. 5–6, 9, 14, 17, 27, 29–32.) Notwithstanding that Smartmatic's foreign business practices have little to nothing to do with Smartmatic's limited role in the 2020 U.S. presidential election, OANN has defended against Smartmatic's complaint based on the affirmative defense that Smartmatic was, in fact, involved in ill-defined corrupt global schemes, which according to OANN somehow licensed OANN to broadcast spurious falsehoods about the 2020 U.S. presidential election that severely damaged Smartmatic's reputation for providing safe, secure election technology. Smartmatic is entitled to know what, if any, information in OANN's possession could possibly support such outlandish, false, and damaging statements. If OANN has no responsive documents, then Smartmatic is entitled to know that, too.

### C. Smartmatic's Requests Are Proportionate to Smartmatic's Needs in the Case

To the extent that proportionality is even at issue in this motion since OANN has raised no objections to that effect, Smartmatic's Second Set of RFPs certainly satisfies the requirements of Rule 26(b)(1). No single factor is determinative, and the burden remains on the party resisting discovery to raise specific objections demonstrating that the discovery requests are unduly burdensome or otherwise improper. *Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017).

Here, all proportionality factors weigh in Smartmatic's favor. For one, the gravity of Smartmatic's complaint cannot be overstated. *See Oxbow Carbon*, 322 F.R.D. at 7 (district courts measure the significance of the issues presented in a case "in philosophic, social, or institutional terms" (quoting *Arrow Enter. Computing Solutions, Inc. v. BlueAlly, LLC*, 2017 WL 876266, at *4 (E.D.N.C. Mar. 3, 2017))); *see also* Fed R. Civ. P. 26 (2015 advisory committee notes) (district

courts weigh whether the issues implicate "vitally important personal or public values" as well as the monetary stakes). As alleged in the Complaint, OANN knowingly broadcast lies to a national audience that Smartmatic subverted the legitimacy of the 2020 U.S. presidential election by switching votes cast for former President Trump to votes cast for President Biden. As OANN has itself acknowledged, this is a "complex, multi-billion-dollar case," and "the issues at stake are of utmost importance." (Def.'s Resp. Opp'n, Dkt. 89, at 14, 16.) While Smartmatic's exact calculation of damages is forthcoming and will depend on expert testimony, OANN's liability will be substantial given the persistent, worldwide negative attention that Smartmatic unjustly received following OANN's defamatory statements. *See BuzzFeed, Inc. v. U.S. Dep't of Justice*, 318 F. Supp. 3d 347, 361 (D.D.C. 2018) ("Although [plaintiffs'] complaint does not specify a dollar amount sought in compensatory damages, it is not hard to imagine that the plaintiffs will seek substantial sums in compensatory damages for the reputational harm they allegedly incurred, given the worldwide and persistent attention . . . .").

Moreover, Rule 26 instructs against denying discovery where there is "information asymmetry"—that is, where one party, typically the defendant, possesses far more relevant, discoverable information than the other party. *M.J. v. District of Columbia*, 2020 WL 13668599, at \*6 (D.D.C. July 1, 2020); *Kargbo v. Nat'l R.R. Passenger Corp.*, 2016 WL 10998394, at \* 2 (D.D.C. Jan. 14, 2016). In this case, there remains a vast disparity in the amount of information produced in discovery—whereas Smartmatic has produced 2,283,759 documents, OANN has produced just 244,368. (Sullivan Decl., ¶ 14.) And, as explained above, the requested information, which Smartmatic did not receive in response to the First Set of RFPs, is highly relevant to proving Smartmatic's claims at trial. Smartmatic's Second Set of RFPs thus imposes no disproportionate burden on OANN that would justify withholding the responsive documents.

## VI.    CONCLUSION

OANN's singular timeliness objection to Smartmatic's Second Set of RFPs is baseless. The discovery sought is highly relevant to liability, damages, and defense claims. Accordingly, Smartmatic respectfully seeks an order compelling OANN to respond to Smartmatic's Second Set of RFPs.

Dated: December 6, 2023

/s/ J. Erik Connolly
J. Erik Connolly (D.C. Bar No. IL0099)
Nicole E. Wrigley (D.C. Bar No. IL0101)
Ronald S. Betman (admitted *pro hac vice*)
Caitlin A. Kovacs (admitted *pro hac vice*)
Olivia Sullivan (admitted *pro hac vice*)
BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312.212.4949
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
rbetman@beneschlaw.com
ckovacs@beneschlaw.com
osullivan@beneschlaw.com

*Attorneys for the Plaintiffs Smartmatic USA*
*Corp., Smartmatic International Holding B.V.,*
*and SGO Corporation Limited*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of December, 2023, I electronically filed the foregoing

document with the Clerk of Court using the CM/ECF system, which I understand to have served

counsel for the parties.


　　 */s/ J. Erik Connolly*
J. Erik Connolly (D.C. Bar No. IL0099)
*One of the Attorneys for the Plaintiffs Smartmatic USA*
*Corp., Smartmatic International Holding B.V.,*
*and SGO Corporation Limited*