# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SMARTMATIC USA CORP., *et al.*, <br><br> Plaintiffs, <br> v. <br><br> HERRING NETWORKS, INC., d/b/a ONE AMERICA NEWS NETWORK <br><br> Defendant. | No. 1:21-cv-02900-CJN <br><br> Judge Carl J. Nichols |

**PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION DIRECTED AT DEFENDANT HERRING NETWORKS, INC. d/b/a ONE AMERICA NEWS NETWORK**

Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V. and SGO Corporation Limited (collectively, "Smartmatic"), by and through their attorneys, Benesch, Friedlander, Coplan & Aronoff LLP, propounds the following Requests pursuant to Fed. R. Civ. P. 34 and 26 to be answered fully within 30 days of service.

**DEFINITIONS**

Notwithstanding any definitions set forth below, each word or term used in these Document Requests is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure. Unless the context indicates otherwise, the following words and phrases shall be defined and used in the following Document Requests as follows:

1. "2020 PRESIDENTIAL ELECTION" shall mean the U.S. Presidential Election that occurred on November 3, 2020, and all voting by any means (including in-person or mail-in voting) for that election.

2. "ACTION" shall mean the above-captioned lawsuit presently pending in the United States District Court for the District of Columbia, No. 1:21-cv-02900-CJN.

1

3. "And" and "or" shall mean "and/or" and shall be construed both conjunctively and disjunctively, and each shall include the other wherever such dual construction will serve to bring within the scope of this request any answer which would otherwise not be brought within its scope.

4. "Any" and "all" shall mean "any and all."

5. "Communication(s)" shall mean the recording, conveyance, exchange, or transmittal of information (in the form of facts, ideas, inquiries or otherwise) of any kind by or with any person or entity for any purpose by any written, verbal, or electronic means or method, including, without limitation, notes, complaints, diaries, journals, datebooks, reports, calendars, telephone messages, letters, email messages, cell phone text messages (SMS messages and MMS messages), voicemail messages, internal messaging system communications including but not limited to Slack, social media communications or posting on sites including but not limited to Facebook, Twitter, Instagram, Rumble, Reddit, Gab, Truth Social, YouTube, or Parler (including any direct messages), website postings, internet chat-room postings, lists, correspondence, drawings, designs, telegrams, manuals, summaries or records of personal conversations, logs, minutes or records of meetings, minutes of any other type, transcripts of oral testimony or statements, affidavits, or summaries of investigations. For avoidance of doubt, the term "Communications" includes internal communications and communications with third parties.

6. "COMPLAINT" shall mean the complaint filed by Smartmatic in this ACTION, and any amended complaint filed subsequently in this ACTION.

7. "Concerning" shall mean without limitation, containing, reflecting, referring to, discussing, relating to, describing, evidencing, supporting, or constituting.

8. "DEFAMATORY BROADCASTS" shall mean any broadcast and the complete program in which any of the DEFAMATORY STATEMENTS appeared, including without limitation, the broadcasts and rebroadcasts identified in the COMPLAINT.

9. "DEFAMATORY STATEMENT(S)" shall mean all statements the COMPLAINT alleges are defamatory, including without limitation the statements identified in Paragraphs 84-139, 146-149, 154-168, 171, 184, 196, 205, 218, and 227 of the COMPLAINT.

10. "DEFENDANT" shall mean Herring Networks, Inc. d/b/a One America News Network.

11. "Describe" shall mean to describe specifically and in detail.

12. "Documents" shall mean documents in its broadest sense and shall mean and include all written, printed, typed, recorded, or graphic data or matter of every kind and description, both originals and copies, and all attachments and appendices thereto. The terms "Document" and "Documents" shall include, without limitation, all agreements, contracts, correspondence, letters, telegrams, telexes, messages, e-mail, memoranda, records, reports, books, summaries or other records of telephone conversations or interviews, summaries or other records of personal conversations, minutes or summaries or other records of meetings and conferences, summaries or other records of negotiations, diaries, diary entries, calendars, appointment books, visitor records, time records, instructions, work assignments, forecasts, statistical data, statistical statements, worksheets, work papers, drafts, graphs, maps, charts, tables, analytical records, consultants' reports, appraisals, notes, marginal notations, notebooks, statements, lists, recommendations, files, printouts, compilations, tabulations, confirmations, analyses, studies, surveys, transcripts of hearings, transcripts of testimony, microfilm, microfiche, articles, speeches, tape or disk recordings, sound recordings, video recordings, film, tape, photographs, data compilations from

which information can be obtained (including but not limited to matter used in data processing), and any other printed, written, handwritten, typewritten, recorded, stenographic, computer-generated, computer-stored, or electronically stored matter, however and by whomever produced, prepared, reproduced, disseminated or made.

13. "DOMINION" shall mean US Dominion, Inc., its subsidiaries Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation, as well as any officers, directors, employees, or agents acting on behalf of these entities, and all others who have purported to act on their behalf or obtained information on their behalf.

14. "DOMINION CORRECTIVE CORRESPONDENCE" means the DOMINION RETRACTION DEMANDS, and any other Communications DOMINION sent to any person at OANN about its 2020 PRESIDENTIAL ELECTION coverage.

15. "DOMINION RETRACTION DEMANDS" means and refers to (1) the December 18, 2020 letter from Dominion to Robert Herring (OANN CEO), Charles Herring (OANN President), and Bruce Littman (OANN Executive Vice President); (2) the December 22, 2020 letter from Dominion to Robert Herring and Charles Herring; (3) the February 4, 2021 letter from Dominion to Eric Early (attorney for OANN); (4) the April 16, 2021 letter from Dominion to Eric Early; (5) the May 12, 2021 letter from Dominion to Eric Early; (6) the June 18, 2021 letter from Dominion to Bernard Rhodes (attorney for OANN); (7) the July 13, 2021 letter from Dominion to Bernard Rhodes; and (8) the August 4, 2021 letter from Dominion to Bernard Rhodes, attached as Exhibit 48 to the COMPLAINT.

16. "DONALD TRUMP" means and refers to the 45th President of the United States.

17. "Electronically-Stored Information" or "ESI" shall mean all electronically stored information in its broadest sense and shall mean and include, but is not limited to: (i) information

or data that is generated, received, processed, and recorded by computers and other electronic devices, including metadata; (ii) internal or external web sites; (iii) output resulting from the use of any software program, including, without limitation, word processing Documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, instant messages, bulletin board programs, operating systems, source code, PRF files, PRC files, batch files, ASCII files, and all miscellaneous media on which they reside and regardless of whether said electronic data exists in an active file, a deleted file, or file fragment; (iv) activity listings of electronic mail receipts and/or transmittals; and (v) any and all items stored on computer memories, hard disks, floppy disks, CD-ROM or other discs, flash or jump drives, online cloud storage, magnetic tape, microfiche, or on any other media for digital data storage or transmittal, such as, but not limited to, a personal digital assistant, hand-held wireless device, and file folder tabs, or containers and labels appended to, or relating to, any physical storage device associated with each original or copy of all Documents requested herein.

18. "OANN" means and refers to Defendant Herring Networks, Inc. d/b/a One America News Network, and its past or present subsidiaries, affiliates, attorneys, agents, representatives, officers, directors, employees, or other persons acting on its behalf, including any regional affiliates or contributors, whether paid or unpaid, and including the OANN Channel, the OANN App, OANN Live, which includes the OANN websites, OANN.com, OANN's social media accounts, and OANN's digital subscription services and YouTube channels.

19. "OANN EMPLOYEES" shall mean any person who is currently or was previously employed by, contracted by, a director of, an officer of, or an agent of OANN or who works in any capacity for OANN, regardless of whether that person is paid by or has a contract with OANN or any of its affiliated or related entities.

20. "OANN DIGITAL" shall mean any website or digital media platform OANN operates, owns, or controls, including without limitation, OANN.com, OANN Live, the OANN Mobile App, Tubi, YouTube, Rumble account, KlowdTV, Facebook account, Twitter account, or any other online platform on which OANN published, broadcast, distributed, or promoted the DEFAMATORY BROADCASTS.

21. "OANN ACCUSED PROGRAMS" shall mean *After Hours with Alex Salvi*, *News Room*, *America This Week*, *Tipping Point with Kara McKinney*, *Breaking News Live with Patrick Hussion*, *Real America*, *In Focus with Stephanie Hamill*, *Weekly Briefing with Christina Bobb*, *Absolute Proof*, *Real America with Dan Ball*, *Scientific Proof*, *Absolute Interference*, *Absolutely 9-0*, and *The Real Story with Natalie Harp*.

22. "OANN PROGRAMS" means and refers to any programming on OANN, including but not limited to the OANN ACCUSED PROGRAMS and all OANN programs or broadcasts referenced in the COMPLAINT.

23. "OANN SOCIAL MEDIA" shall mean any social media accounts operated by or on behalf of OANN, Alex Salvi, Elma Aksalic, Eric Bolling, Kara McKinney, Mike Dinow, Patrick Hussion, Dan Ball, John Hines, Stephanie Hamill, Samantha Lomibao, Christina Bobb, Pearson Sharp, Keith Trippie, Chanel Rion, Robert Herring, Charles Herring and/or the OANN ACCUSED PROGRAMS, including without limitation any social media account on Facebook, Twitter, Instagram, Rumble, Reddit, Gab, Truth Social, YouTube, or Parler.

24. "OANN ON-AIR PERSONALITIES" shall mean and refer to Alex Salvi, Elma Aksalic, Eric Bolling, Kara McKinney, Mike Dinow, Patrick Hussion, Dan Ball, John Hines, Stephanie Hamill, Samantha Lomibao, Christina Bobb, Pearson Sharp, Natalie Harp, Keith

Trippie, Emily Finn, Stephanie Myers, Chanel Rion, Shane Althaus, and any other individual that OANN publicly identified as an on-air personality on its website as of November 1, 2020.

25. "Including" shall mean "including, but not limited to."

26. "LINDELL PROGRAMS" shall mean the documentaries produced by Michael J. Lindell entitled *Absolute Proof*, *Scientific Proof*, *Absolute Interference*, and *Absolutely 9-0*.

27. "Meeting" shall mean any type of meeting, including those held in person or via telephone, online, via another medium.

28. "MY PILLOW, INC." means and refers to the pillow manufacturing company founded in 2009 by Michael Lindell and any owner, director, officer, employee, agent, trust, custodian, parent, subsidiary, affiliate, predecessor, successor, attorney, accountant, representative, or other person/s purporting to act on MY PILLOW, INC.'s behalf.

29. "OTHER NEWS ORGANIZATIONS" means and refers to other news organizations, whether print or television, including but not limited to the Wall Street Journal, ABC News, Fox News, and Newsmax, and any and all publications referenced in the COMPLAINT.

30. "Person(s)" refers to all natural persons and all forms of business organizations, including corporations, partnerships, limited partnerships, unincorporated associations, trusts, governmental bodies, and/or all other identifiable entities.

31. "Regarding" shall mean referring to, discussing, describing, evidencing, concerning, comprising, constituting, referencing, reflecting, supporting, or relating to in any manner.

32. "Relate to" or "relating to" shall mean consisting of, referring to, reflecting, or being in any way legally, logically, or factually connected with the matter discussed.

33. "SMARTMATIC" shall mean Smartmatic USA Corp., Smartmatic International Holding B.V., and/or SGO Corporation Limited, and their predecessors in interest, parents, subsidiaries, divisions, and affiliates, as well as any officers, directors, employees, or agents acting on behalf of these entities, and all others who have purported to act on their behalf or obtained information on their behalf.

34. "SMARTMATIC RETRACTION DEMAND" means and refers to the December 11, 2020 Letter from J. Erik Connolly to Charles Herring, President of One America News Network attached as Exhibit 46 to the COMPLAINT.

35. "State" shall mean to state specifically and in detail.

36. "TRUMP ADMINISTRATION" means and refers to DONALD TRUMP, and/or any of his agents, staff members, appointees, employees, members of the Cabinet, or officials within any Executive Department or agency, including but not limited to advisors, attorneys, and family members.

37. "TRUMP CAMPAIGN" means and refers to the entity Donald Trump for President 2020 and any individual who OANN understood to be speaking on behalf of campaign to re-elect DONALD TRUMP to a second term as President of the United States in 2020, and/or any of its agents, staff members, appointees, employees, advisors, or attorneys at or during the time period referenced in any individual requests, including but not limited to Jared Kushner, Ivanka Trump, Bill Stepien, Jason Miller, Stephen Miller, Justin Clark, Matt Morgan, Donald Trump, Jr., Eric Trump, Lara Trump, Kimberly Guilfoyle, Katrina Pierson, Boris Ephsteyn, Michael Roman, Kayleigh McEnany, Gary Michael Brown, and Katherine Friess.

38. "RNC" means and refers to the Republican National Committee, and/or any of its agents, staff, members, appointees, employees, advisors, or attorneys at or during the time period

referenced in any individual requests, including but not limited to Ronna McDaniel, Thomas Hicks, Jr., Liz Harrington, and Paris Dennard.

39. "You" or "Your" shall refer to OANN.

## INSTRUCTIONS

1. Unless otherwise specified, the relevant time period for each Request is January 1, 2020, through the present.

2. These Document Requests are continuing in nature, and any document identified subsequent to the service of these Requests that would have been included in the responses had it been known of shall promptly be supplied by supplemental responses whenever you find, locate, acquire, or become aware of such documents, up until the time of trial. Supplemental responses are to be served as soon as reasonably possible after identification of such documents.

3. Documents and ESI shall be produced as they are kept in the usual course of business, or shall be organized and labeled to correspond to the paragraphs of the Request to which they are responsive.

4. If any document responsive to these Requests is withheld under a claim of privilege, you shall identify with respect to each document: (a) the author or originator; (b) the addressee(s) or recipient(s); (c) the type of document (letter, report, etc.); (d) the general subject matter of the document; (e) the date of the document; (f) the specific privilege claimed; and (g) the factual basis for your assertion of privilege or the reason for withholding.

5. If a portion of any document responsive to these Requests is withheld under a claim of privilege or any other objection, any non-privileged portion of such document must be produced with the portion claimed to be privileged redacted.

6.      All responsive Documents, wherever located, that are in your possession, custody, or control, or that of any of your agents, attorneys, or representatives, shall be produced in response to these Requests. If you are unable to respond in full to a Request after exercising due diligence to obtain all documents requested, so state; furnish the documents that are available; and indicate in writing your inability to provide the rest of the documents that are responsive to the Request, setting forth whatever information, knowledge, or belief you have concerning the unavailable documents.

7.      All ESI shall be produced either on portable storage media (CD/DVD, USB flash drive, or USB portable hard drive), or by electronic file transfer (FTP or equivalent). Documents stored in electronic form or format of any kind are to be rendered in 300 dpi single-page image format and produced as either black and white TIFF or color JPG images, accompanied by their corresponding document-level extracted text, a Concordance-formatted (.dat) load file containing related document-level metadata, and an Opticon-formatted (.opt) image load file. Each TIFF image must convey all the information the document contains, disclosing all track changes, hidden content, notes, and any hidden slides, rows, or columns, subject to any redactions. Images should be uniquely and sequentially Bates numbered in both the filename and as an endorsement on each image. Documents should be properly unitized and shall not be combined. Documents such as spreadsheets, proprietary databases, access databases, and enterprise management systems shall be produced in their native format.

8.      Excel files, audio files, and video files shall be produced in the native format that is referenced in their Native Link field, along with a TIFF placeholder image that is named by the beginning Bates number of the file, associated document-level text files, image load files (.DII, LFP, and OPT) indicating appropriate document and family breaks, as well as metadata load files

in delimited text format containing the fields required by Instruction No. 7. You shall maintain family groups together in one production and shall not break family groups apart in separate production volumes.

9. Non-responsive family members must be produced together with responsive family members. In instances where You do not assert a privilege with respect to the entire family of documents, the producing party should replace any subset of privileged documents within the family for which it is claiming a privilege with slipsheets stating "Document Withheld as Privileged." The slipsheet shall contain the "Document Withheld as Privileged" language in the center of the page, with confidential branding bottom left, and Bates branding bottom right of the page.

10. A Request shall be deemed to include a Request for each document in its entirety with all transmittal sheets, cover letters, exhibits, enclosures, and attachments to the documents in addition to the document itself, without redaction, abbreviation, or expurgation.

**DOCUMENT REQUESTS**

62. All Documents and Communications produced by You in *Coomer v. Donald J. Trump for President et al.*, Case No. 2020-cv-04319, pending in the District Court for Denver County, Colorado.

63. Transcripts of all depositions taken in *Coomer v. Donald J. Trump for President et al.*, Case No. 2020-cv-04319, pending in the District Court for Denver County, Colorado.

64. All Documents and Communications produced by You in *Herring Networks, Inc. v. AT&T Inc. et al.*, Case No. 37-2022-00008623-CU-BC-CTL, pending in the Superior Court of California, County of San Diego.

65. Transcripts of all depositions taken in *Herring Networks, Inc. v. AT&T Inc. et al.*, Case No. 37-2022-00008623-CU-BC-CTL, pending in the Superior Court of California, County of San Diego.

66. Any and all Documents and Communications You received in response to any request issued to any federal, state, or municipal entity, including but not limited to requests issued under the Freedom of Information Act, 5 U.S.C. § 552, and any state and municipal equivalents and/or corollaries, relating to the 2020 PRESIDENTIAL ELECTION.

67. All documents prepared in connection with any and all meetings of YOUR board of directors, including but not limited to meeting minutes, slide decks, board packets, board reports, strategic plans, audited financial statements, draft financial statements, budgets, financial projections, marketing plans, and valuations.

68. All Documents and Communications regarding any relationship that existed at any time between OANN and *The Washington Times*, as referenced in Your amended answer to Paragraph 78 of the COMPLAINT.

69. All Documents and Communications that You allege constitute evidence of voter fraud or other flaws affecting the 2020 PRESIDENTIAL ELECTION and that are not otherwise called for in response to RFP Nos. 36, 37, 38, 39, 40, and 52.

70. All Documents and Communications regarding Your position that OANN was "duty bound to report on" statements made by GIULIANI and POWELL, as referenced in Your amended answer to Paragraph 178 of the COMPLAINT.

71. Documents sufficient to show the total number of OANN application installations, across all platforms and application stores, and users, on a monthly basis from January 1, 2020, to December 31, 2021, including analytics data compiled by Sensor Tower.

72. Documents sufficient to show all of OANN's carriers, as well as all platforms where live streams of OANN, were available from January 1, 2019 to present, including but not limited to OAN Live, Roku, Facebook, KlowdTV, AT&T, DirecTV, Verizon Fios, Century Link, General Communications Inc., GCI Communication Corp, Vidgo, Frontier Communications, Major Market Broadcasters, Net Range, Pluto, Vizio, TCL, VIDAA, FreeCast, Distro TV, and Videohouse Inc.

73. Documents sufficient to show the total number of viewers, subscribers, and/or followers for each carrier and platform identified in Request 72 on a monthly basis, including the total number of viewers, subscribers (not paid), and/or followers specific to OANN on those platforms.

74. Documents and communications with or concerning Comscore and Nielsen regarding OANN's ratings and viewership numbers.

75. All documents and communications with or concerning Sensor Tower regarding OANN DIGITAL and OANN SOCIAL MEDIA traffic and engagement.

76. Documents sufficient to show ratings and viewership of OANN PROGRAMS.

77. Documents and communications concerning the markets in which OANN was available and its plan for expansion into additional markets between January 1, 2019 and December 31, 2022.

78. Documents and communications concerning AT&T and DirecTV's decision in 2022 to not renew carriage agreements with OANN and no longer carry OANN on their platforms.

79. All documents and communications, including drafts, relating to each visual, illustration, graphic, picture, or photograph shown, displayed, or published during any of the

DEFAMATORY BROADCASTS relating to SMARTMATIC, DOMINION, and/or their alleged personnel, executives, or owners.

80. All documents and communications concerning the credibility or reliability of any ON-AIR PERSONALITY as sources of factual information, including but not limited to communications questioning their sanity, propensity to fabricate stories for publications, and/or willingness to publish inherently improbable information without adequate fact-checking.

81. All documents and communications relating to the statement made by former Attorney General Barr on or about December 1, 2020, that the U.S. Department of Justice had "not seen fraud on a scale that could have effected a different outcome in the Election."

82. All documents and communications relating to the U.S. Cybersecurity & Infrastructure Security Agency ("CISA"), former U.S. Director of CISA Chris Krebs, and the Secretaries of State of Georgia, Pennsylvania, Wisconsin, Arizona, and/or Michigan that relate to the 2020 PRESIDENTIAL ELECTION.

83. All documents and communications relating to George Soros or Peter Neffenger that relate to SMARTMATIC, DOMINION, and/or the 2020 PRESIDENTIAL ELECTION.

84. Documents and communications concerning offers to invest in or to purchase OANN from January 1, 2020 to the present.

85. All Webex recordings or similar recordings of conversations involving any custodian in this case related to OANN's coverage of the 2020 PRESIDENTIAL ELECTION on or after November 3, 2020. The time frame for this request is November 3, 2020 to June 30, 2021.

86. Documents and communications concerning all articles, tweets, content, posts, videos, and/or references thereto that have been removed from OANN DIGITAL, and/or OANN

SOCIAL MEDIA referencing SMARTMATIC, DOMINION, voting technology, and/or election integrity from November 1, 2020 to the present.

87. Documents and communications relating to any lawsuit that was filed concerning the outcome of the 2020 PRESIDENTIAL ELECTION.

88. Documents and communications relating to any agreements, arrangements, understandings, and/or contracts in effect between YOU, OTHER NEWS ORGANIZATIONS, DONALD TRUMP, the TRUMP ADMINISTRATION, or the TRUMP CAMPAIGN from January 1, 2016 to the present.

89. Documents sufficient to show the corporate structure of OANN.

90. OANN's strategic and business planning documents from the past five (5) years, including financial projections, analyses, budgets, and forecasts.

91. Documents and Communications concerning OANN's involvement in, support or sponsorship of, and/or donations to Political Action Committees, political organizations, and political candidates, including but not limited to the Conservative Political Action Conference and Voices and Votes. The time frame for this request is January 1, 2015 to December 31, 2021.

92. Documents sufficient to show the "OAN Story List" and "Master Story List" for each day between November 3, 2020 and December 31, 2020.

93. Documents and Communications concerning OANN's pitches to advertisers, carriers, and/or investors including any presentations used for those pitches.

94. All Documents and Communications concerning viewer feedback submitted to OANN via email or OANN's Website relating to OANN's coverage of the 2020 PRESIDENTIAL ELECTION.

95. All Documents and Communications relating to Christina Bobb's involvement or relationship with DONALD TRUMP, the TRUMP ADMINISTRATION, and the TRUMP CAMPAIGN. The time frame for this request is January 1, 2020 through December 31, 2022.

96. Documents and Communications concerning appearances by Kyle Becker, Clay Clark, Joseph diGenova, Chris Farrell, Tom Fitton, Michael Johns, Evi Kokalari-Angelakis, Cory Mills, Allan Santos, Keith Tripper, Joe Oltmann, Ron Watkins, and/or Michael J. Waller on OANN PROGRAMS between November 1, 2020 and the present, including any drafts, scripts or other programming-related documents, any documents and communications concerning the credibility of these individuals, and any documents or communications concerning ratings associated with the broadcasts of these appearances.

97. Documents sufficient to identify all sources of funding OANN is using to pay costs, expenses, and/or fees for this case, including each entity or individual providing funds, contingency services, pro bono services, and/or litigation financing and the related oral or written agreements.

98. Documents and communications with or concerning media watchdog organizations including Media Matters for America, Citizens for Responsibility and Ethics, and Common Cause.

Date: July 31, 2023

Respectfully submitted,

*/s/Erik Connolly*
J. Erik Connolly (D.C. Bar No. IL0099)
Nicole E. Wrigley (D.C. Bar No. IL0101)
Caitlin A. Kovacs (admitted *pro hac vice*)
Olivia E. Sullivan (admitted *pro hac vice*)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312.212.4949
econnolly@beneschlaw.com

nwrigley@beneschlaw.com
ckovacs@beneschlaw.com
osullivan@beneschlaw.com

*Attorneys for Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 31, 2023, copies of the foregoing **Plaintiffs' Second Set of Requests for Production Directed at Defendant Herring Networks, Inc. d/b/a One America News Network** were sent via email to all attorneys of record:

                                           */s/ J. Erik Connolly*
                                           J. Erik Connolly

**JACKSON WALKER LLP**
Charles L. Babcock
Nancy W. Hamilton
John. K. Edwards
Joel R. Glover
Bethany Pickett Shah
1401 McKinney Suite 1900 Houston, TX 77010
Tel: (713) 752-4200
Fax: (713) 308-4110
cbabcock@jw.com
nhamilton@jw.com
jedwards@jw.com
jglover@jw.com
bpickett@jw.com

Jonathan D. Neerman
Carl C. Butzer
Minoo Sobhani Blaesche
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Tel: (214) 953-5664
Fax: (214) 661-6899
jneerman@jw.com
cbutzer@jw.com
mblaesche@jw.com

**BOYDEN GRAY & ASSOCIATES**
Trent McCotter
801 17th St NW, #350 Washington, DC 20006
(202) 706-5488
mccotter@boydengrayassociates.com