# EXHIBIT I

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SMARTMATIC USA CORP., *et al.*,

        Plaintiffs,

        v.

HERRING NETWORKS, INC., d/b/a ONE
AMERICA NEWS NETWORK,

        Defendant.

No. 1:21-cv-02900-CJN

Judge Carl J. Nichols

## DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION TO SMARTMATIC USA CORP.

Defendant Herring Networks, Inc., d/b/a One America News Network, through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 34, hereby requests that plaintiff Smartmatic USA Corp. produce the following Documents within thirty (30) days of service hereof.

## DEFINITIONS AND INSTRUCTIONS

1.      "Alleged Defamatory Statements" means the statements in Paragraphs 184, 196, 205, 218, and 227 of the Complaint, as well as any other allegedly defamatory statements otherwise referenced in the Complaint.

2.      The word "and" includes the disjunctive "or," and the word "or" includes the conjunctive "and." Words in the singular shall be interpreted to include the plural, and words in the plural shall be interpreted to include the singular. A masculine, feminine or neuter form of a word shall be interpreted to include the other genders. The use of any tense of any verb shall be interpreted to include all other tenses.

3.      "Articles at Issue" means any articles alleged in the Complaint to contain any of the Alleged Defamatory Statements.

1

4.     "Comelec" means the Philippines' Commission on Elections, as well all commissioners, employees, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of the Comelec.

5.     "Communication" means any written, electronic, or verbal transmission of words or thoughts between or among two or more Persons, including, without limitation, any letter, email, instant or text message, social media post, blog post, web posting, interview, conference, meeting, spoken words, conversation, understanding, agreement, discussion, talks, and reports, whether transmitted orally, in writing, or by any electronic device.

6.     "Complaint" means the original Complaint filed in the above-captioned action by Plaintiffs, as well as any subsequent amendments thereto.

7.     "Defendant" and/or "Herring" means defendant Herring Networks, Inc., d/b/a One America News Network.

8.     "Document" means any writing, graphic matter, or other tangible or digital thing, whether printed, recorded, produced by any process, or written or produced by hand, including, without limitation, agreements, contracts, correspondence, memoranda, letters, reports, Communications (as defined above) and Electronically Stored Information (as defined below), correspondence, telegrams, internal and external memoranda, summaries, records of oral conversations, original or preliminary notes, diaries, calendars, analyses, projections, ledgers, work papers, photographs, tape recordings, applications, video tapes, computer hard drives or disks, statistical statements, logs, graphs, charts, schedules, notebooks, minutes or records of meetings, minutes or records of conferences, lists of Persons attending meetings or conferences, reports and/or summaries of investigations, opinions or reports of investigators, accountants or consultants, studies, appraisals, evaluations, or copies of any of the foregoing if the copy is in any

2

way different from the original now in any Plaintiffs' possession, custody or control, or the possession, custody or control of any Plaintiffs' counsel, investors, agents, employees and/or Persons acting on any Plaintiff's behalf.

9.      "Dominion Entity(ies)" means US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation, as well all parents, subsidiaries, related or affiliated entities, successors and predecessors (including but not limited to Sequoia Voting Systems), officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of the Dominion Entities.

10.      "Dominion Voting Systems Corporation" shall mean Dominion Voting Systems Corporation, as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Dominion Voting Systems Corporation.

11.      "Dominion Voting Systems, Inc.," shall mean Dominion Voting Systems, Inc., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Dominion Voting Systems, Inc.

12.      "Electronically Stored Information" or "ESI" shall mean originals and all copies of email; activity listings of email receipts and/or transmittals; voicemail; audio or video recordings of any kind; facsimiles; computer programs (whether private, commercial, or a work-in-progress); programming notes or instructions; social media posts; text messages; instant messages; metadata; output resulting from the use of any software program, including word processing Documents,

3

spreadsheets, database files, charts, graphs, and outlines; operating systems; source code of all types; and electronic files and/or file fragments of any sort, regardless of the media on which they are stored and regardless of whether the data resides in an active file, deleted file, or file fragment. ESI also includes the file, folder tabs, containers or labels appended to any storage device containing electronic data.  All ESI produced in response hereto should be produced in native format.

13.    "Herring Guests" shall mean and include the guests who appeared on the Programs at Issue or otherwise appeared on OAN, including but not limited to Rudolph Giuliani, Sidney Powell, Michael Lindell, Kyle Becker, Clay Clark, Joseph diGenova, Tom Fitton, Allan dos Santos, Keith Trippie, J. Michael Waller, Mary Fanning, and Michael Flynn.

14.    "Herring Talent" shall mean and include all Herring employees who appeared on the Programs at Issue or otherwise appeared on OAN, including but not limited to Alex Salvi, Elma Aksalic, Kara McKinney, Mike Dinow, Patrick Hussion, Dan Ball, John Hines, Stephanie Hamill, Samantha Lomibao, Emily Finn, and Christina Bobb.

15.    "OAN" shall mean One America News Network.

16.    "Other Media Organizations" shall mean other news, media, and other similar organizations, including but not limited to CNN, CBS, ABC, PBS, *The Wall Street Journal*, *The New York Times*, MSNBC, *The Washington Post*, Fox News, Newsmax, *Politico*, *Vanity Fair*, Media Matters, *Bloomberg News, The Chicago Tribune, The Los Angeles Times, The Miami Herald*, the *Times of San Diego* and *National Public Radio*.

17.    "Person" shall mean a natural person or any business, company, corporation, association, partnership organization, or other legal entity.

4

18.     "Plaintiff(s)" and/or "Smartmatic Entity(ies)" shall mean plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited, as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of the Smartmatic Entities.

19.     "Programs at Issue" shall mean any broadcast or program on OAN alleged to contain any of the Alleged Defamatory Statements, including but not limited to *After Hours with Alex Salvi*, *OAN Newsroom*, *Tipping Point with Kara McKinney*, *Breaking News Live with Patrick Hussion*, *Real America with Dan Ball*, *In Focus with Stephanie Hamill*, *Weekly Briefing with Christina Bobb*, and the Michael Lindell-produced programs titled *Absolute Proof*, *Scientific Proof*, *Absolute Interference*, and *Absolutely 9-0*.

20.     The terms "relating to," "regarding," "demonstrating," and "supporting" shall mean having any connection, association or concern with, or any relevance, relation, pertinence, or applicability to or any implication bearing on, the subject matter, whether directly or indirectly.

21.     "Retraction Demands" shall mean the retraction demand letters dated December 11, 2020 and October 27, 2021 from Plaintiffs to Herring.

22.     "SGO Corporation Limited" shall mean plaintiff SGO Corporation Limited, as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of SGO Corporation Limited.

23.     "Smartmatic International Holding B.V.," shall mean plaintiff Smartmatic International Holding B.V., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees,

shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Smartmatic International Holding B.V.

24.     "Smartmatic USA Corp.," "You" and/or "Your" shall mean plaintiff Smartmatic USA Corp., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Smartmatic USA Corp.

25.     "Tweets at Issue" shall mean any tweets alleged in the Complaint to contain any of the Alleged Defamatory Statements.

26.     "US Dominion, Inc.," shall mean US Dominion, Inc., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of US Dominion, Inc.

27.     Where a claim of privilege is asserted in responding or objecting to any discovery requested herein and information is not provided on the basis of such assertion, Plaintiffs shall, in their response or objection, identify the nature of the privilege (including work product) which is being claimed.  When any privilege is claimed, Plaintiffs shall, as to the Documents and/or information requested, whether:

(a)     any Documents exist or any Communications took place; and

(b)     provide the following information for each such Document or Communication in a "privilege log" or similar format:

(i)      the type of Document or Communication;

(ii)     the general subject matter of the Document or Communication;

(iii)    the date of the Document or Communication;

VP/#57426882

      (iv)     the author(s) of the Document or participants in the Communication;

      (v)     the addressee(s) and any other recipient(s) of the Document; and

      (vi)     the custodian of the Document, where applicable.

28.     Unless otherwise indicated, the relevant time period for these Requests for Production is from January 1, 2020 to the present.

29.     These Requests for Production are continuing in nature and require supplemental response if Plaintiffs obtain further information between the time of compliance and any hearing or trial in the above-captioned case.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

Documents identified in Your Answers to the First Set of Interrogatories propounded upon You contemporaneously with this First Set of Requests for Production, as well as any and all Documents reviewed or relied upon in answering those Interrogatories.

**RESPONSE:**

**REQUEST NO. 2:**

Documents relating to, referenced in, and/or providing a basis for Your responses to the First Set of Requests for Admission propounded upon You contemporaneously with this First Set of Requests for Production.

**RESPONSE:**

**REQUEST NO. 3:**

All discovery requests and responses of any type (i.e. interrogatories and responses, document requests and responses, requests to admit and responses, deposition transcripts and video, deposition errata sheets, subpoenas and responses, open records act requests and responses, and

any other form of discovery request or response) produced by anyone in any litigation between any Smartmatic Entity and any Dominion Entity.

**RESPONSE:**

**REQUEST NO. 4:**

Documents regarding Herring, OAN, and/or the Herring Talent.

**RESPONSE:**

**REQUEST NO. 5:**

Documents regarding the Herring Guests from January 1, 2018 to present.

**RESPONSE:**

**REQUEST NO. 6:**

Communications to, from, and/or between Smartmatic USA Corp. and any Person, including but not limited to Other Media Organizations and governmental entities and officials, regarding the Herring Talent from January 1, 2018 to present.

**RESPONSE:**

**REQUEST NO. 7:**

Communications to, from, and/or between any Smartmatic Entity and any past or present Herring employees, including but not limited to Martin Golingan.

**RESPONSE:**

**REQUEST NO. 8:**

Documents and Communications regarding the formation of any Smartmatic Entity.

**RESPONSE:**

VP/#57426882

**REQUEST NO. 9:**

Documents and Communications demonstrating any Smartmatic Entity's corporate governance and ownership structure, inclusive of all parent and subsidiary companies, from the formation of any Smartmatic Entity to the present.

**RESPONSE:**

**REQUEST NO. 10:**

All versions of any website of any and all Smartmatic Entities from creation to the present.

**RESPONSE:**

**REQUEST NO. 11:**

The human resources records of Antonio Mugica, Roger Piñate, Alfredo Anzola, Marlon Garcia, Neil Baniqued, and Mauricio Herrera related to their involvement in procuring services for Comelec and/or related to any Philippines election from May 2016 to the present.

**RESPONSE:**

**REQUEST NO. 12:**

Documents and Communications relating to the "strict ethics code" with which any Smartmatic Entity's founders and employees allegedly must comply, as referenced in Paragraph 339 of the Complaint.

**RESPONSE:**

**REQUEST NO. 13:**

Documents and Communications relating to any agreement or contract between Smartmatic USA Corp. and any state, county, or local governmental entity of the United States, to provide voting machines, elections technology and/or services from 2005 to the present.

**RESPONSE:**

**REQUEST NO. 14:**

Documents and Communications relating to any agreements or contracts between any Smartmatic

Entity and any foreign governmental entities and/or officials from 2004 to the present to provide

voting machines, elections technology and/or services, including but not limited to the "more than

25 countries on five continents" in which Smartmatic Entities have conducted business, as alleged

in Paragraph 24 of the Complaint.

**RESPONSE:**

**REQUEST NO. 15:**

Documents and Communications demonstrating or related to the location of all voting machines,

hardware, servers, and/or software that are or have been affiliated with, developed, facilitated or

funded by the Smartmatic Entities from 2005 to the present.

**RESPONSE:**

**REQUEST NO. 16:**

Manuals and policies for voting machines, equipment, hardware, software, and/or servers used

during 2020  elections in the United States, whether owned, rented, or licensed by the Smartmatic

Entities.

**RESPONSE:**

**REQUEST NO. 17:**

Documents and Communications that support Your contention that all Smartmatic Entity "case

studies demonstrate, time and time again, that Smartmatic's election technology and software can

ensure quick and accurate voting results," as alleged in Paragraph 45 of the Complaint.

**RESPONSE:**

10

**REQUEST NO. 18:**

Documents and Communications relating to any agreements between any Smartmatic Entity and any third party regarding inspections, maintenance, updates to software and/or hardware, imaging of drives, servers and/or data uploads or downloads related to any Smartmatic Entity's voting machines or software and related storage servers or devices used in elections in the United States or elsewhere, including but not limited to the 2020 election in the United States, as well as elections in Venezuela, the Philippines, and Kenya from 2005 to the present.

**RESPONSE:**

**REQUEST NO. 19:**

Documents and Communications relating to any Smartmatic Entity's involvement in the U.S. 2020 local, state, and federal elections, including but not limited to the audit trails referenced in Paragraph 233 of the Complaint.

**RESPONSE:**

**REQUEST NO. 20:**

Documents and Communications relating to the VSAP 2.1 system, including but not limited to the certification of the same by California and the U.S. Election Assistance Commission, as referenced in Paragraphs 324 and 364 of the Complaint.

**RESPONSE:**

**REQUEST NO. 21:**

Documents from governmental entities and officials, whether in the United States or elsewhere, and including but not limited to the U.S. Election Assistance Commission, the Cybersecurity and Infrastructure Security Agency, the Department of Defense, the Department of Justice, the United States Department of Treasury's Committee on Foreign Investment in the United States, and the

VP/#57426882

Department of Homeland Security from 2006 to the present, regarding any Smartmatic Entity and/or its voting machines, equipment, hardware, software, and/or servers.

**RESPONSE:**

**REQUEST NO. 22:**

Communications to, from, or with governmental entities and officials, whether in the United States or elsewhere, and including but not limited to the U.S. Election Assistance Commission, the Cybersecurity and Infrastructure Security Agency, the Department of Defense, the Department of Justice, the United States Department of Treasury's Committee on Foreign Investment in the United States, and the Department of Homeland Security from 2006 to the present, regarding any Smartmatic Entity and/or its voting machines, equipment, hardware, software, and/or servers.

**RESPONSE:**

**REQUEST NO. 23:**

Documents and Communications from 2006 to the present related to U.S. Representative Carolyn Maloney's 2006 letters to the Secretary of the Treasury and any investigations conducted by the United States Department of Treasury's Committee on Foreign Investment in the United States ("CFIUS") of any Smartmatic Entity including, but not limited to, any sale or security agreements entered into by any Smartmatic Entity with any governmental agencies and any documents relating to any Smartmatic Entity's withdrawal from the CFIUS's investigation.

**RESPONSE:**

**REQUEST NO. 24:**

Documents and Communications relating to the certification, authentication, or validation, or lack thereof, of any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers by national, state, county, or local governmental agencies in the United States or elsewhere,

including but not limited to the State of California, the U.S. Election Assistance Commission, the United Nations, and the European Union.

**RESPONSE:**

**REQUEST NO. 25:**

Documents and Communications relating to the certification, authentication, or validation, or lack thereof, of any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers by national, state, county, or local governmental agencies by private Persons, including but not limited to PriceWaterhouseCoopers LLP, SLI Global Solutions, SLI Compliance, and the Carter Center.

**RESPONSE:**

**REQUEST NO. 26:**

Documents and Communications regarding issues or concerns raised about any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers, including but not limited to issues or concerns about a potential election security breach, vulnerabilities, or vote tabulation errors, from the formation of all Smartmatic Entities to the present, including but not limited to those Documents and Communications concerning elections in Venezuela, the Philippines, and Kenya.

**RESPONSE:**

**REQUEST NO. 27:**

Documents and Communications regarding issues or concerns raised about any Smartmatic Entity's alleged corrupt business practices, including but not limited to issues or concerns raised by the United States Department of Justice related to the 2004 Venezuelan election and any alleged violation of the Foreign Corrupt Practices Act in connection with the 2016 Philippines election.

VP/#57426882

**RESPONSE:**

**REQUEST NO. 28:**

Documents and Communications compiled and/or submitted to the United States Department of Justice in connection with its investigation of alleged violation of the Foreign Corrupt Practices Act by any Smartmatic Entity in connection with the 2004 Venezuelan election and the 2016 Philippines election

**RESPONSE:**

**REQUEST NO. 29:**

Documents and Communications regarding the Comelec's consideration of whether it will purchase or lease new equipment or software from any Smartmatic Entity for the upcoming 2025 midterm elections because of concerns that the equipment or software will malfunction and/or are insecure.

**RESPONSE:**

**REQUEST NO. 30:**

Documents and Communications regarding any Smartmatic Entity involved in the investigation related to the August 9, 2022 elections in Kenya, including but not limited to requests from the Kenyan Supreme Court for access to the Independent Electoral and Boundaries Commission's servers, and any Smartmatic Entity's response to the request.

**RESPONSE:**

**REQUEST NO. 31:**

Documents and Communications relating to the business relationship between any Smartmatic Entity and any Dominion Entity, including but not limited to oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation

14

agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement entered into by, between, or among any Smartmatic Entity and any Dominion Entity.

**RESPONSE:**

**REQUEST NO. 32:**

Documents and Communications between any Smartmatic Entity and any Dominion Entity relating to, arising out of, or in any way relevant to the Alleged Defamatory Statements.

**RESPONSE:**

**REQUEST NO. 33:**

Documents and Communications relating to the business relationship between any Smartmatic Entity and Sequoia Voting Systems, Inc., (or any other Sequoia entity), including but not limited to oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement.

**RESPONSE:**

**REQUEST NO. 34:**

Documents and Communications relating to the business relationship between any Smartmatic Entity and Premier Election Solutions, formerly known as Diebold Election Systems, Inc., including but not limited to oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement.

**RESPONSE:**

VP/#57426882

**REQUEST NO. 35:**

Documents and Communications relating to any Smartmatic Entity's participation in the Chicago, Illinois March 2006 primary election, including but not limited to a Smartmatic Entity's letter in response to Chicago Alderman Ed Burke's hearing regarding the election.

**RESPONSE:**

**REQUEST NO. 36:**

Documents and Communications relating to any Smartmatic Entity's potential contract with Allegheny County, Pennsylvania from 2004 to the present including, but not limited to, any reasons why Allegheny County, Pennsylvania did not award any contract for election services to the Smartmatic Entity.

**RESPONSE:**

**REQUEST NO. 37:**

Documents and Communications regarding any Smartmatic Entity's operations, from that Smartmatic entity's inception to the present, in Venezuela, including but not limited to participation in Venezuelan elections, as well as oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement with Bizta Corp. and CANTV.

**RESPONSE:**

**REQUEST NO. 38:**

Documents and Communications regarding the currently pending international arbitration between SGO Corporation Limited and the Bolivarian Republic of Venezuela (ICSID Case No. ARB(AF)/22/2), with John Henry Rooney (U.S.) appointed as the arbitrator.

16

VP/#57426882

**RESPONSE:**

**REQUEST NO. 39:**

Documents and Communications relating to Lord Mark Malloch-Brown and any Smartmatic Entity, including but not limited to Documents and Communications relating to his June 21, 2015 interview regarding Smartmatic, as referenced in Paragraph 343 of the Complaint.

**RESPONSE:**

**REQUEST NO. 40:**

Documents and Communications relating to any investigation of any Smartmatic Entity by the United States Department of Justice, including but not limited to a Smartmatic Entity 2004 election contract in Venezuela that led to Mr. Chávez's victory.

**RESPONSE:**

**REQUEST NO. 41:**

Documents and Communications relating to any investigation of any Smartmatic Entity by the Committee on Foreign Investment in the United States from 2005 to the present, including but not limited to any investigation related to investments by the Venezuelan government in one or more Smartmatic Entity and the acquisition of Sequoia Voting Systems, Inc. by any Smartmatic Entity.

**RESPONSE:**

**REQUEST NO. 42:**

Documents and Communications that support Your contention that the Alleged Defamatory Statements are not substantially true, are not accurate, are misleading, and/or are defamatory.

**RESPONSE:**

**REQUEST NO. 43:**

Documents and Communications that support Your contention that Herring acted with actual malice.

**RESPONSE:**

**REQUEST NO. 44:**

Documents and Communications related to any breach of any Smartmatic Entity's voting software or hardware from the formation of any such Smartmatic Entity to the present.

**RESPONSE:**

**REQUEST NO. 45:**

Documents and Communications that support Your contention that OAN's alleged "defamatory statements were a proximate and substantial cause of Smartmatic's name and brand becoming synonymous with election fraud with members of the general public and government officials, particularly those in the United States," as alleged in Paragraph 427 of the Complaint.

**RESPONSE:**

**REQUEST NO. 46:**

Documents and Communications that support Your contention that "[p]rior to the 2020 U.S. election, Smartmatic was a known and trusted name among individuals responsible for selecting election technology and systems in voting jurisdictions in the United States and across the world," as alleged in Paragraph 428 of the Complaint.

**RESPONSE:**

**REQUEST NO. 47:**

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial cause" of Plaintiffs' alleged $400,000 out-of-pocket

expenses spent on public relations and crisis management, as well as proof of said expenses, as alleged in Paragraphs 432-433 of the Complaint.

**RESPONSE:**

**REQUEST NO. 48:**

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial cause" of Plaintiffs' alleged $100,000 out-of-pocket expenses spent on cybersecurity, as well as proof of said expenses, as alleged in Paragraphs 432-433 of the Complaint.

**RESPONSE:**

**REQUEST NO. 49:**

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial cause" of Plaintiffs' alleged $700,000 out-of-pocket expenses spent on retention and recruitment for personnel, as well as proof of said expenses, as alleged in Paragraphs 432-433 of the Complaint.

**RESPONSE:**

**REQUEST NO. 50:**

Documents and Communications that support Your contention that, as a result of Herring and the Alleged Defamatory Statements, Plaintiffs "will spend millions more in the coming years" in out-of-pocket expenses, as alleged in Paragraphs 432-433 of the Complaint.

**RESPONSE:**

**REQUEST NO. 51:**

Documents and Communication that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial cause" of Plaintiffs' diminished business value and

prospects, as well as proof of said loss in business value and prospects, as alleged in Paragraphs 435 and 438 of the Complaint

**RESPONSE:**

**REQUEST NO. 52:**

Documents and Communications that support Your contention that the Smartmatic Entities were valued at $3 billion going into the 2020 Presidential Election, as alleged in Paragraph 438 of the Complaint.

**RESPONSE:**

**REQUEST NO. 53:**

Documents and Communications that support Your contention that, as a result of Herring and the Alleged Defamatory Statements, the Smartmatic Entities now valued at less than $1 billion, as alleged in Paragraph 438 of the Complaint.

**RESPONSE:**

**REQUEST NO. 54:**

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial factor in causing Smartmatic to suffer irreparable harm to its reputation," as well as proof of such harm and loss, as alleged in Paragraph 452 of the Complaint.

**RESPONSE:**

**REQUEST NO. 55:**

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements "exposed Smartmatic to public hate, contempt, ridicule, and disgrace, and

created the appearance that Smartmatic is odious and infamous," as alleged in Paragraph 446 of the Complaint.

**RESPONSE:**

**REQUEST NO. 56:**

All Documents and Communications relating to Your contention that You were injured by the Alleged Defamatory Statements.

**RESPONSE:**

**REQUEST NO. 57:**

Documents and Communications that support Your request for no less than $2.7 billion in actual, consequential, and special damages in the above-captioned case, as well as Documents and Communications that demonstrate the actions any Smartmatic Entity has undertaken to mitigate its alleged damages.

**RESPONSE:**

**REQUEST NO. 58:**

Documents sufficient to show the date and amount of monetary damages You have sought for any claim of reputational harm that You have made over the past five years (including claims associated with any other defamation lawsuits You have filed).

**RESPONSE:**

**REQUEST NO. 59:**

Documents and Communications that support Your request for punitive damages.

**RESPONSE:**

VP/#57426882

**REQUEST NO. 60:**

Documents relating to the amount of attorneys' fees and costs Plaintiffs have accrued to date, regardless of whether they have actually been billed or paid.

**RESPONSE:**

**REQUEST NO. 61:**

Communications that any Smartmatic Entity has had with Other Media Organizations regarding any statement or publication alleged to be defamatory of any Smartmatic Entity from the formation of any Smartmatic Entity to the present, as well as (1) the identity of the Persons involved in the Communication(s); (2) the date of Communication(s); and (3) the substance of the Communication(s).

**RESPONSE:**

**REQUEST NO. 62:**

Documents and Communications that demonstrate negative or critical thoughts, feedback, and/or concern any Smartmatic Entity or any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers, from the formation of any Smartmatic Entity to the present.

**RESPONSE:**

**REQUEST NO. 63:**

Documents sufficient to identify all sources of funding You are using to pay costs, expenses, or fees for this case, including each entity or individual providing funds, contingency services, pro bono services, or litigation financing and the related oral or written agreements.

**RESPONSE:**

VP/#57426882

**REQUEST NO. 64:**

All Smartmatic Entity financial statements, including balance sheets, income statements, cash flow statements, statements of shareholders' equity, Special Purpose Acquisition Company statements, other private equity valuations, and any form of other valuation from that Smartmatic Entity's inception to the present.

**RESPONSE:**

**REQUEST NO. 65:**

All U.S. and other tax returns for any Smartmatic Entity, including but not limited to U.S. federal tax returns and state tax returns, from any Smartmatic Entity's inception to the present.

**RESPONSE:**

**REQUEST NO. 66:**

Documents and Communication demonstrating any Smartmatic Entity's projected finances, gross revenue, and net revenue from the beginning of 2020 through 2025.

**RESPONSE:**

**REQUEST NO. 67:**

Documents and Communications related to the Complaint or which form, in whole or in part, a basis for the Complaint.

**RESPONSE:**

**REQUEST NO. 68:**

All Documents and Communications, including all intra-office Communications (whether by email, text message, instant message, Slack, or other similar instant messaging software, memoranda, etc.), between or among any Smartmatic Entity and any Person or entity not a party to the above-captioned case, relating to Herring, OAN, the Herring Talent, the Herring Guests, the

Retraction Demands, the Complaint, the above-captioned case, and/or the subject matter of the above-captioned case, including but not limited to, William Kennard (Chairman, Board of Directors of AT&T Inc., and Board member of Staple Street Capital), John Stankey (Chief Executive Officer, AT&T Inc.), Bill Morrow (Chief Executive Officer, DirecTV, LLC), Rob Thun (Senior Vice President, Content, DirecTV), AT&T Inc. (including any member of its Board of Directors from 2020 to the present), AT&T Services, Inc., DirecTV, LLC (including any member of its Board of Directors from 2020 to the present), Verizon Fios, Staple Street Capital, Hootan Yaghoobzadeh (Managing Director/Co-Founder, Staple Street Capital), Kay Stimson (Chair, U.S. Department of Homeland Security's Election Infrastructure Sector Coordinating Council), Hamilton Place Strategies, Tony Fratto (Founder, Hamilton Place Strategies) and/or the NAACP.

**RESPONSE:**

**REQUEST NO. 69:**

Documents and Communications that Smartmatic USA Corp. intends to offer in evidence at trial or any hearing in the above-captioned case or to use to question witnesses at any deposition, trial, or hearing in the above-captioned case.

**RESPONSE:**

**REQUEST NO. 70:**

All Documents received by You or Your attorney from any third party, whether in response to a subpoena duces tecum, open records act request or otherwise, that relate to the Alleged Defamatory Statements or to the allegations in the Complaint.

**RESPONSE:**

**REQUEST NO. 71:**

All discovery and hearing information (i.e. written discovery requests, written discovery responses, subpoenas, subpoena responses, open records act requests, open records act responses, deposition notices, deposition transcripts, deposition videos, hearing transcripts, and similar material) related to, arising out of, or produced in the lawsuits filed any Smartmatic Entity relating to the U.S. 2020 local, state, and federal elections, including but not limited to *Smartmatic USA Corp., et al. v. Fox News Network, LLC, et al.*, Index No. 151136-2021 (New York County, New York); *Smartmatic USA Corp. and SGO Corporation Unlimited v. Newsmax Media, Inc.*, Case No. N21C-11-028 EMD (Del. Super. Ct.); *Smartmatic USA Corp., et al. v. Sidney Powell*, Case No. 21-cv-02995 (D.D.C.); *Smartmatic USA Corp., et al. v. Lindell, et al.*, Case No. 22-cv-00098 (D. Minn.).

**RESPONSE:**

**REQUEST NO. 72:**

All Documents and Communications concerning complaints or concerns about statements made regarding any Smartmatic Entities related to the U.S. 2020 local, state, and federal elections, including but not limited to retraction requests, responses to retraction requests, and any related correspondence sent by any Smartmatic Entity to any third party.

**RESPONSE:**

**REQUEST NO. 73:**

Documents sufficient to show the method and reliability of auditing for any Smartmatic Entity's voting machines and technology deployed to count ballots in the U.S. 2020 local, state, and federal elections.

**RESPONSE:**

VP/#57426882

**REQUEST NO. 74:**

All Documents and Communications, including marketing materials, pitch packets and promotional materials reflecting any Smartmatic Entity's efforts (or those made on any Smartmatic Entity's behalf) to solicit contracts globally from that Smartmatic Entity's inception to the present.

**RESPONSE:**

**REQUEST NO. 75:**

All Documents and Communications concerning any contracts that you allege any Smartmatic Entity lost or did not obtain as a result of the Alleged Defamatory Statements.

**RESPONSE:**

**REQUEST NO. 76:**

Portions of personnel files of all employees and personnel of Smartmatic Entities who have worked on any Smartmatic Entity's voting equipment or software utilized or employed in the U.S. 2020 local, state, and federal elections that refer to or address any disciplinary actions, errors, problems or concerns relating to: (1) software coding; (2) design or maintenance of any Smartmatic Entity's machines; (3) political affiliations or actions; or (4) public commentary on the 2020 Presidential Election.

**RESPONSE:**

**REQUEST NO. 77:**

All Documents and Communications with Fox News Network, LLC and/or Fox Corp. concerning or in any way relating to the U.S. 2020 local, state, and federal elections or coverage of the election.

**RESPONSE:**

VP/#57426882

**REQUEST NO. 78:**

All Documents and Communications with Newsmax Media, Inc. concerning or in any way relating to the U.S. 2020 local, state, and federal elections or Newsmax Media, Inc.'s coverage of the elections.

**RESPONSE:**

**REQUEST NO. 79:**

All Documents and Communications concerning any vendors or other contractors or affiliates based outside the United States that manufacture, produce, license, or are otherwise involved with any hardware, software, or other components used in any Smartmatic Entity's voting equipment, systems, machines and/or software from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 80:**

Communications with and Documents related to social media platforms, including but not limited to Facebook, Twitter, Instagram, and YouTube concerning the removal of any posts, videos, or other content referencing any Smartmatic Entity in connection with U.S. elections from 2004 to the present, as well as elections in the Philippines, Venezuela, and Kenya from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 81:**

Documents and Communications concerning the relationship between any Smartmatic Entity and any Dominion Entity, including but not limited to oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement. There is no time limit on this Request.

27

**RESPONSE:**

**REQUEST NO. 82:**

Documents and Communications concerning any Smartmatic Entity's efforts to secure a contract with the County of Los Angeles, State of California to provide voting equipment and/or software for the U.S. 2020 local, state, and federal elections.

**RESPONSE:**

**REQUEST NO. 83:**

Documents and Communications relating to the method, manner, procedure, or formulation by which You calculate Your economic damages.

**RESPONSE:**

**REQUEST NO. 84:**

Documents and Communications with any insurance carrier regarding the alleged harm and/or damages for which You seek recovery in this litigation.

**RESPONSE:**

**REQUEST NO. 85:**

All financial audits and documents and correspondence from accounting professionals concerning any Smartmatic Entity from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 86:**

All meeting minutes and other documents concerning meetings of any Smartmatic Entity Board of Directors.

**RESPONSE:**

VP/#57426882

**REQUEST NO. 87:**

All insurance policies or other related documents that in any way relate to the damages You seek or counterclaims you may face in this Action, including but not limited to claims and documents relating to such claims.

**RESPONSE:**

**REQUEST NO. 88:**

All of any Smartmatic Entity's general ledgers for the past five (5) years.

**RESPONSE:**

**REQUEST NO. 89:**

Documents and Communications concerning any Smartmatic Entity's current business plan, as well as any from the past five (5) years.

**RESPONSE:**

**REQUEST NO. 90:**

All documents concerning projections of any Smartmatic Entity's future business plans, including but not limited to prospective contracts and clients.

**RESPONSE:**

**REQUEST NO. 91:**

Documents and Communications concerning Konnech Corporation from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 92:**

Documents and Communications reflecting any Smartmatic Entity's relationship with Konnech Corporation, including but not limited to agreements or contracts between any Smartmatic Entity and Konnech Corporation in relation to the U.S. 2020 local, state, and federal elections.

VP/#57426882

**RESPONSE:**

**REQUEST NO. 93:**

Documents and Communications concerning complaints, concerns, or investigations about the use of Konnech Corporation's software and/or PollChief election management system.

**RESPONSE:**

**REQUEST NO. 94:**

Documents and Communications concerning any goods provided or services performed by any Smartmatic Entity in connection with the United States Department of Defense from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 95:**

Documents and Communications concerning any goods provided or services performed by any Smartmatic Entity in connection with the Federal Voting Assistance Program from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 96:**

Communications between any Smartmatic Entity and Dr. J. Alex Halderman concerning or in any way related to any Smartmatic Entities' or Dominion Entities' voting machines, equipment, hardware, software, and/or servers from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 97:**

Documents and communications related to the October 19, 2022 Elon University Webinar titled

<u>Engendering Trust in Election Outcomes</u>, including, but not limited to, all communications with Dr. J Alex Halderman and/or anyone affiliated with coordinating or organizing the webinar itself.

**RESPONSE:**

**REQUEST NO. 98:**

Documents sufficient to show Your financial condition, including but not limited to profits, margins and revenue from January 2016 to the present.

**RESPONSE:**

**REQUEST NO. 99:**

Documents and Communications, including any written common interest agreements, between or among: (i) any Smartmatic Entity, including its attorneys, including but not limited to Benesch, Friedlander, Coplan & Aronoff LLP and Robins Kaplan LLP; and (ii) any Dominion Entity, Eric Coomer, Ruby Freeman and/or Shaye Moss, or any of their respective attorneys or others, including but not limited to Susman Godfrey LLP, Clare Locke LLP, Brownstein Hyatt Farber Schreck LLP, Rodney Smolla (President, Vermont Law School), Snell & Wilmer L.L.P., Farnan LLP, Cain & Skarnulis PLLC, Recht Kornfeld PC, Dowd Bennett LLP, United To Protect Democracy, Inc., DuBose Miller, Ballard Spahr LLP, Kurt G. Kastorf Law Firm, Michael Linhorst, Willkie Farr & Gallagher, LLP, Ballard Spahr, David A. Schulz (Floyd Abrams Lecturer in Law and Senior Research Scholar in Law, Yale Law School), the Yale Law School Media and Information Access Clinic, Floyd Abrams (Senior Counsel, Cahill Gordon & Reindel LLP), the Yale Law School Abrams Institute for Freedom of Expression at the Information Society Project, Lee Levine, the Media Law Resource Center, and/or George Freeman (Executive Director, Media Law Resource Center).

**RESPONSE:**

VP/#57426882

**REQUEST NO. 100:**

Documents and Communications concerning any analysis performed in connection with security and/or vulnerability assessments for voting machines and software, including but not limited to any such analysis performed by MITRE, the National Election Security Laboratory, Professor J. Alex Halderman, Harri Hursti or any state or federal agency, including but not limited to the Cybersecurity and Infrastructure Security Agency.

**RESPONSE:**

**REQUEST NO. 101:**

Documents and Communications related to work by any public relations professional on behalf of any Smartmatic Entity from that Smartmatic Entity's inception to the present.

**RESPONSE:**

**REQUEST NO. 102:**

Documents and Communications related to any Smartmatic Entity's efforts to distinguish its voting hardware and software technology from any Smartmatic Entity competitor's voting hardware and software technology, including but not limited to any Dominion Entity's voting hardware and software technology, from that Smartmatic Entity's inception to the present.

**RESPONSE:**

VP/#57426882

Dated:  October 24, 2022              By: <u>/s/ Blaine C. Kimrey</u>

Blaine C. Kimrey, Bar No. IL0091
bkimrey@vedderprice.com
Jeanah Park, Bar No. IL0094
jpark@vedderprice.com
Bryan Clark, Bar No. IL0090
bclark@vedderprice.com
Brian Ledebuhr, Bar No. IL0093
bledebuhr@vedderprice.com
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, IL 60601
T:  +1 312 609 7500
F:  +1 312 609 5005

Brian K. McCalmon, Bar No. 461196
bmccalmon@vedderprice.com
VEDDER PRICE P.C.
1401 New York Avenue, Suite 500
Washington, DC 20005
T:  +1 202 312 3320
F:  +1 202 312 3322

*Counsel for Herring Networks, Inc.*

VP/#57426882

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of October 2022, I served the foregoing document on

the following counsel of record by electronic mail, hand-delivery and overnight delivery:

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949
J. Erik Connolly
Nicole E. Wrigley
Michael E. Bloom
Lee B. Muench
Emily Newhouse Dillingham
Lauren C. Tortorella
Kathleen Watson Moss
James R. Bedell
Julie M. Loftus
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
mbloom@beneschlaw.com
lmuench@beneschlaw.com
edillingham@beneschlaw.com
ltortorella@beneschlaw.com
kwatsonmoss@beneschlaw.com
jbedell@beneschlaw.com
jloftus@beneschlaw.com


/s/ Blaine Kimrey
Blaine Kimrey

VP/#57426882