IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SMARTMATIC USA CORP., <br> SMARTMATIC HOLDING B.V., AND <br> SGO CORPORATION LIMITED, <br> <br> Plaintiffs, <br> v. <br> <br> HERRING NETWORKS, INC., D/B/A <br> ONE AMERICA NEWS NETWORK, <br> <br> Defendant. | Civil Action No. 1:21-cv-02900-CJN |

**DEFENDANT'S EMERGENCY MOTION TO STRIKE PLAINTIFFS' MOTIONS
FILED IN VIOLATION OF THE COURT'S STANDING ORDER**

Defendant Herring Networks, Inc., d/b/a One America News Network ("Defendant") files this emergency motion to strike three recent motions to compel filed by Plaintiffs, seeking documents from Defendant, without first obtaining leave of Court as required by the Court's Standing Order. The Court should immediately strike those motions so Defendant does not have to expend considerable resources responding to motions filed in violation of a Court Order, and further bar Plaintiffs from filing discovery motions against Defendant without first obtaining leave of Court. Given the standard two-week response period for Defendant to respond to those motions to compel, Defendant must request this relief in an "emergency" posture.

**LEGAL STANDARD**

"District courts have the inherent authority ... to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016). "This broad power includes the authority to strike material from its docket for noncompliance with court orders or rules." *Doe #1 v. Am. Fed'n of Gov't Emps.*, No. 1:20-cv-1558 (JDB), 2023 WL 22059, at *3 (D.D.C. Jan. 3, 2023); *see Shepherd v. Am. Broad. Cos.*, 62 F.3d

1

1469, 1472 (D.C. Cir. 1995) ("[T]he inherent power enables courts to protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and *such other orders and sanctions as they find necessary*.") (emphasis added); *Ali v. Tolbert*, 636 F.3d 622, 627 (D.C. Cir. 2011).

## ARGUMENT

Plaintiffs seek several billion dollars in damages from Defendant for allegedly defamatory statements made during broadcasts. Discovery in this case closes on December 8, 2023. This Court's Standing Order—issued at the beginning of this case in 2021—provides a mechanism for resolving discovery disputes between the parties to this case and then states unequivocally: "The Parties may not file a discovery motion without leave of Court." ECF No. 5, ¶ 11.

On December 1 and 6, 2023, Plaintiffs filed three motions to compel productions of documents from Defendant. *See* ECF Nos. 124, 129, 130. Those motions, including exhibits, total 748 pages. In none of these motions do Plaintiffs state they have obtained leave of Court before filing. Prior to filing this motion to strike, counsel for Defendant asked Plaintiffs' counsel whether they had obtained leave, and they reiterated their position (explained and debunked below) that they do not require leave.

Over the last two months, Defendant has repeatedly asked the Court for leave to file its own discovery motions against Plaintiffs. *See* Ex. A (an email chain cataloguing Defendant's proposed discovery motions against Plaintiffs, going back to October). Defendant even attached PDF copies of the proposed motions, in the hopes of expediting approval.[1] To date, however, the Court has not granted leave to file those motions, and so Defendant has not filed them.

---

[1] For space purposes, Exhibit A excludes those proposed motions, but Defendant is happy to provide them again to the Court if needed.

Plaintiffs, by contrast, have made a habit of breezing past the Court's requirements for filing discovery motions against Defendant. In addition to the three motions to compel filed just recently, Plaintiffs previously filed two so-called "emergency" motions asking to stay all depositions noticed by Defendant, *see* ECF Nos. 105, 113, and likewise did not obtain or even seek leave of Court to file those motions.

In a recent filing addressing those emergency motions, Plaintiffs explained why they believe leave of Court is not required for *any* discovery motions in this case: "This Court referred all discovery matters to Judge Upadhyaya. (Minute Entry, 5/31/23). Both emergency motions at issue are discovery motions. Judge Upadhyaya does not require any sort of approval before filing discovery motions. 'OANN continues to waste both the Court's time and Smartmatic's time by needlessly arguing that Judge Nichols's standing order applies to discovery disputes in this matter.'" ECF No. 125 at 13 n.14 (internal citation omitted).

Plaintiffs' theory is wrong three times over. *First*, regardless of whether Judge Nichols has referred all discovery matters to the Magistrate Judge (as explained below, he has not), the fact remains that Judge Nichols is still the presiding Judge on this case, and his Standing Order continues to apply. That Order provides a process for discovery disputes between the parties and then states unequivocally: "The Parties may not file a discovery motion without leave of Court." ECF No. 5, ¶ 11.

That rule applies to any and all discovery disputes between the parties to this case; there is no carve-out for discovery matters being handled by the Magistrate Judge. Nor has that requirement been countermanded by another Court order. Plaintiffs do not claim that Magistrate Judge Upadhyaya has affirmatively granted leave to file any of these motions to compel, nor that she has affirmatively stated that leave is no longer required. Further, Defendant itself has

repeatedly sought leave to file such motions, *see* Ex. A, and at no point has either Judge Nichols or Magistrate Judge Upadhyaya (or their chambers) stated that leave is no longer required. Accordingly, there is only one Judge-signed Order on the matter, and that Order unequivocally bars Plaintiffs' motions to compel.

It is well established that the presiding District Judge's requirement of seeking leave before filing discovery motions continues to apply even when discovery matters are referred to a Magistrate Judge. For example, in *Hudert v. Alion Sci. & Tech. Corp.*, No. 1:05-cv-545, 2011 WL 13262554, at *1 (D.D.C. Mar. 15, 2011), Magistrate Judge Facciola noted that "the above actions were referred by Judge Walton to the undersigned for discovery," and "[a]s with all civil cases assigned to Judge Walton, the General Order and Guidelines for Civil Cases … is in full force and effect." *Id.* Judge Walton's General Order, like this Court's Standing Order, stated that "'[l]eave of court is required before the filing of a discovery-related motion.'" *Id.* Yet both parties in that case filed discovery motions without obtaining leave of Court, and Magistrate Judge Facciola *sua sponte* found both motions to be in noncompliance with Judge Walton's General Order and denied them. *Id.* at *2.

In that case, all discovery disputes had undoubtedly been referred to the Magistrate Judge, yet the District Judge's requirement of obtaining leave of Court still applied—just as it does here. Plaintiffs are therefore wrong to claim that the mere referral of discovery disputes to the Magistrate Judge magically absolves Plaintiffs from complying with Judge Nichols's Standing Order.

*Second*, Plaintiffs are also wrong that "[t]his Court referred all discovery matters to Judge Upadhyaya." ECF No. 125 at 13 n.14. Plaintiffs previously invoked a "Minute Entry" from May 31, 2023, but Judge Nichols's order from that date carefully noted that he was referring only the specific set of disputes identified in the parties' May 5, 2023, joint notice: "MINUTE ORDER. It

is ORDERED that this matter be referred to Magistrate Judge Upadhyaya for resolution of all discovery disputes *identified in the Parties' May 5, 2023 Joint Notice*. Signed by Judge Carl J. Nichols on May 31, 2023." Minute Entry, May 31, 2023 (emphasis added). On July 10, 2023, Judge Nichols referred another specific dispute to the Magistrate Judge: "MINUTE ORDER. It is ORDERED that *the discovery dispute identified in the Parties' June 30, 2023 email correspondence*, in which Plaintiffs seek to file a motion for a protective order, is referred to Magistrate Judge Upadhyaya for resolution. Signed by Judge Carl J. Nichols on July 10, 2023." Minute Entry, July 10, 2023 (emphasis added).

Plaintiffs are therefore simply wrong to claim that Judge Nichols has referred "all" discovery disputes to Magistrate Judge Upadhyaya. Judge Nichols has never issued any such order; rather, he has referred two specific disputes.[2] In any event, as explained above, even if Judge Nichols had referred all discovery disputes to the Magistrate Judge, the requirement of seeking leave of court still applies.

*Third*, until just recently, Plaintiffs themselves believed that they could not file these discovery motions against Defendant without first obtaining leave of Court. On October 2, 2023, Plaintiffs' counsel Olivia Sullivan wrote to Judge Nichols's Courtroom Deputy to trigger the

---

[2] Plaintiffs may point to a second docket entry from May 31, 2023, that says, "CASE DIRECTLY REFERRED to Magistrate Judge Moxila A. Upadhyaya for resolution of all discovery disputes." But that entry is not signed by Judge Nichols, and it is not labeled as an Order. It was entered by the Clerk's office. Judge Nichols's order of the same date speaks for itself and makes clear that only the May 5 issues were referred to Magistrate Judge Upadhyaya. Judge Nichols's July 10, 2023, Minute Order confirms that reading by again referring only a specified dispute to the Magistrate Judge.

The Clerk's office apparently realized the error of its May 31 entry because (as shown by the Court's ECF alerts), at some point between July 28 and August 6, 2023, the Clerk's office removed Magistrate Judge Upadhyaya's initials ("MAU") from the docket number in this case, signifying that she was not in fact the referred Magistrate Judge for all discovery disputes in this case but instead had been referred only specified, discrete matters.

5

discovery-dispute process laid out in the Court's Standing Order. *See* Ex. B. Amazingly, that request from Plaintiffs involved the *exact same three discovery disputes* on which Plaintiffs just filed their three motions to compel. *Compare* Ex. B, *with* ECF Nos. 124, 129, 130. Plaintiffs invoked the Standing Order for those specific disputes in October 2023, but when they failed to obtain leave of Court, they changed their tune and asserted that *actually* they had been given approval to file any and all discovery motions back on *May 31, 2023*. If that were true, Plaintiffs' counsel would not have sent the October 2 email. This last-minute *volte face*, after failing to obtain leave of Court, reveals the lack of merit in Plaintiffs' theory that they can file any discovery motions they want, whenever they want.

Because Plaintiffs' motions to compel are in "noncompliance with court orders" issued over two years ago, *Doe*, 2023 WL 22059, at *3, the Court should strike those motions, *see, e.g., U.S. ex rel. Purcell v. MWI Corp.*, 209 F.R.D. 21, 24 n.4 (D.D.C. 2002) ("'Leave of court is required before the filing of a discovery dispute-related motion.' … [T]he court may decide to strike such a motion, if a party files it without the court's permission."); *Ashraf-Hassan v. Embassy of France*, 185 F. Supp. 3d 94, 107 (D.D.C. 2016) ("Because the discovery motion was filed without leave of court, in violation of the Court's Scheduling Order, the Court denied that motion."); *Hudert*, 2011 WL 13262554, at *2.

Striking Plaintiffs' motions to compel is further warranted because these improper motions impose real consequences on Defendant and on the Court itself. Defendant is forced to respond to those lengthy motions on the merits, consuming an extraordinary amount of time and resources. Including their exhibits, Plaintiffs' three motions to compel are nearly 750 pages.

And then the Court is forced to review those lengthy filings, which is precisely what the Standing Order seeks to avoid by requiring leave of Court before such motions can be filed in the

first instance. That process typically entails a teleconference with the Court where the disputes can often be narrowed or eliminated altogether without the need for the lengthy types of motions that Plaintiffs insist on filing at-will. There is no point requiring leave of Court before filing such motions if one party can just ignore it without consequences.

Further, Defendant has complied with the Court's Standing Order by not filing numerous motions to compel discovery from Plaintiffs, despite having sought leave of Court repeatedly over the last two months. *See* Ex. A. Defendant should not be prejudiced for following the rules while Plaintiffs unilaterally file discovery motions against Defendant whenever they want.

## CONCLUSION

Because Plaintiffs have repeatedly violated this Court's Standing Order, and because addressing those motions imposes considerable burdens on both Defendant and the Court, as well as prejudices Defendant's months-long compliance with the Standing Order, the Court should immediately strike Plaintiffs' improper motions so that Defendants are not required to begin preparing responses to them,[3] and the Court should further bar Plaintiffs from filing discovery motions against Defendant without first obtaining leave of Court in compliance with the Standing Order. Given the standard two-week response period to respond to those motions to compel, Defendant must request this relief in an "emergency" posture.

---

[3] The Court could alternatively just deny Plaintiffs' motions or state that Defendant need not respond to them.

7

Dated: December 7, 2023.　　　　By: */s/ Charles L. Babcock*

**JACKSON WALKER LLP**
Charles L. Babcock
(admitted *pro hac vice*)
cbabcock@jw.com
1401 McKinney Suite 1900
Houston, TX 77010
(713) 752-4210 (Direct Dial)
(713) 308-4110 (Fax)


**BOYDEN GRAY PLLC**

/s/ R. Trent McCotter

R. Trent McCotter
D.C. BAR NO. 1011329
801 17th St NW, #350
Washington, DC 20006
(202) 706-5488
tmccotter@boydengray.com


*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of December 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel for the parties.

　　　　　　　　　　　　　　　*/s/ R. Trent McCotter*
　　　　　　　　　　　　　　　R. Trent McCotter