# Ex. F

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SMARTMATIC USA CORP., | ) | |
| SMARTMATIC HOLDING B.V., AND | ) | |
| SGO CORPORATION LIMITED, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 1:21-cv-02900-CJN |
| v. | ) | |
| | ) | |
| HERRING NETWORKS, INC., D/B/A | ) | |
| ONE AMERICA NEWS NETWORK, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSED MOTION TO COMPEL**
**DISCOVERY RESPONSES (SIXTH MOTION TO COMPEL)**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................1

II.    BACKGROUND .................................................................................2

III.   ARGUMENT ......................................................................................4

    **A.**   Smartmatic's boilerplate "general objections" are invalid, and Smartmatic cannot rely on them to withhold documents. ................................................6

    **B.**   Likewise, Smartmatic's purportedly "specific" objections lack specificity and are invalid. ................................................7

    **C.**   OAN's requests are relevant to Smartmatic's claims and OAN's defenses. .........10

       1.   Formation and Origin of Smartmatic and Its Connections to Venezuela (RFP Nos. 8, 10, 39) ................................10

       2.   The Complained-of Statements (ROG Nos. 21–22) ...............11

       3.   Other Alleged Defamatory Statements (RFP Nos. 61, 72) .........12

       4.   Smartmatic's Public Relations Expenses (RFP No. 101) .........13

       5.   Smartmatic's Business in the United States (ROG No. 8) .........14

       6.   Smartmatic's Customers Outside of the U.S. (RFP No. 14) .........14

       7.   Smartmatic's Tax Returns and General Ledgers (RFP Nos. 65 and 88) ................................14

       8.   Smartmatic's Relationship with Dominion (RFP Nos. 33–34) .........15

       9.   Smartmatic's Efforts to Distinguish Itself from Competitors (RFP No. 102) ................................16

      10.  Smartmatic's Relationship with Konnech (RFP Nos. 91–93) .........16

      11.  Investigations into Alleged Bribery and Smartmatic's Involvement with Elected Officials (ROG No. 23, RFP No. 12) .........18

      12.  Investigations and Criticisms of Smartmatic's Technology (ROG No. 12, RFP No. 80) ................................19

      13.  Audits of Smartmatic's Machines (ROG Nos. 13–14, RFP No. 19) .........20

      14.  Inspections and Maintenance of Smartmatic's Machines or Software (RFP No. 18) ................................21

      15.  Smartmatic's Lost Customer Related to Potential Vote Manipulation (RFP No. 36) ................................22

      16.  Smartmatic's Communications with J. Alex Halderman (RFP Nos. 96–97) ................................23

      17.  Smartmatic Cannot Meet Its Burden. ................................24

    **D.**   OAN is entitled to its reasonable attorneys' fees and expenses related to this Motion. ................................24

IV.    CONCLUSION.............................................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Athridge v. Aetna Cas. & Sur. Co.*,
    184 F.R.D. 181 (D.D.C. 1998)................................................................5

*Convertino v. U.S. Dep't of Justice*,
    565 F. Supp. 2d 10 (D.D.C. 2008) ......................................................5, 7

*\*DL v. District of Columbia*, 251 F.R.D. 38 (D.D.C. 2008)..........................5, 6, 7, 9, 10

*FTC v. Sysco Corp.*,
    83 F. Supp. 3d 271 (D.D.C. 2015) ..........................................................4

*\*Lamaute v. Power*,
    339 F.R.D. 29 (D.D.C. 2021)..............................................................5, 6, 24

*Meijer, Inc. v. Warner Chilcott Holdings Co., III*,
    245 F.R.D. 26 (D.D.C. 2007)................................................................5, 6

*Moldea v. New York Times Co.*,
    22 F.3d 310 (D.C. Cir. 1994)................................................................10

*Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*,
    322 F.R.D. 1 (D.D.C. 2017)................................................................5, 6

*Smartmatic USA Corp. v. Lindell*,
    No. 0:22-CV-00098 (D. Minn.) ............................................................12

*Smartmatic USA Corp. v. Powell*,
    No. 1:21-cv-029995 (D.D.C.) ..............................................................12

*Smith v. Schlesinger*,
    513 F.2d 462 (D.C. Cir. 1975) ..............................................................4

*Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*,
    242 F.R.D. 1 (D.D.C. 2007)................................................................4

**Other Authorities**

Fed. R. Civ. P. 26................................................................................4, 5, 7

Fed. R. Civ. P. 33..................................................................................5

Fed. R. Civ. P. 34................................................................................5, 6

Fed. R. Civ. P. 37................................................................................5, 6, 24

Defendant Herring Networks, Inc., d/b/a One America News Network ("OAN") files this Motion to Compel Discovery Responses pursuant to Rule 37 of the Federal Rules of Civil Procedure and respectfully shows the Court the following:

## I.     INTRODUCTION

OAN must bring this Motion because Smartmatic[1] continues to improperly delay the progress of this case, even as the Court's December 8, 2023 deadline for completion of fact discovery looms.  Indeed, Smartmatic's consistent foot-dragging should be seen for what it is: an attempt to force the Court to extend the fact-discovery deadline so that Smartmatic can avoid promptly and efficiently litigating its case.  This is the *sixth* motion to compel that OAN has sought leave to file in the past few months due to Smartmatic's dilatory conduct during discovery.[2]

Smartmatic filed this suit *over two years* ago and demands *over two billion* dollars in damages against a small, family-owned company. But ten months after Smartmatic's answers and responses were due, Smartmatic continues to refuse to fully respond to dozens of relevant interrogatories and requests for production addressing its claims and OAN's defenses, in spite of OAN's attempts to reach agreement.[3]  But with less than two months left in the fact-discovery

---

[1] Plaintiffs Smartmatic USA Corp., Smartmatic International Holdings B.V., and SGO Corporation Limited are referred to collectively as "Smartmatic."

[2] *Motion to Compel Depositions* (sent to Court on October 3, 2023); *Motion to Compel Compliance With Rule 45 Subpoena* (filed in the U.S. District Court for the Western District of Virginia on October 6, 2023); *Motion to Modify Deposition Limits* (sent to Court on October 6, 2023); *Motion to Compel Amended Initial Disclosures* (sent to Court on October 17, 2023); *Motion to Compel Source Code and Machine Inspection* (sent to Court on October 27, 2023).

[3] Smartmatic has refused to fully answer 11 interrogatories. Exhibit 1-H, Carl C. Butzer, Counsel for OAN, comments to letter by Caitlin Alejandrina Kovacs, Counsel for Smartmatic (Oct. 16. 2023) (identifying Interrogatory Nos. 3, 8, 10, 12–14, 16, 19, and 21–23 as those where the parties have reached impasse).  For the Court's convenience, OAN's interrogatories and Smartmatic's specific objections are listed in Appendix A.  Smartmatic refused to fully respond to 29 requests for production.  Exhibit 1-G, Carl C. Butzer, Counsel for OAN, comments to letter by Olivia

period, and consistent with OAN's continued efforts to abide by the Court's reasonable scheduling order, OAN files this motion requesting that the Court compel Smartmatic to respond fully to seven of the disputed interrogatories and to 22 of the disputed requests for production.  If, however, the Court were to grant Smartmatic's pending motion seeking to add four months to the fact-discovery period, then the Court should compel Smartmatic to promptly respond to all of the disputed requests.

## II.      BACKGROUND

OAN served its first set of interrogatories and first requests for production to each of the three Plaintiffs a year ago.  Exhibit 1, Declaration of John K. Edwards ¶ 2; Exhibit 1-A, OAN's First Sets of Interrogatories (each served on October 24, 2022); Exhibit 1-B, OAN's First Sets of Requests for Production (each served on October 24, 2022).  On December 16, 2022, Smartmatic served omnibus objections and responses on behalf of all three Plaintiffs to OAN's first set of interrogatories and requests for production, asserting several pages of "general objections" followed by specific objections to each request.  Ex. 1, Edwards Decl. ¶ 3; Exhibit 1-C, Plaintiffs' Omnibus Answers and Objections to Defendant's First Set of Interrogatories; Exhibit 1-D, Plaintiffs' Omnibus Responses and Objections to Defendant's First Set of Requests for Production.[4]

---

Sullivan, Counsel for Smartmatic (Oct. 12, 2023) (identifying Request Nos. 5–6, 8–10, 12, 14, 17–20, 33–34, 36, 39, 60–61, 65, 72, 80, 82, 88, 91–93, 96–97, and 101–02 as those where the parties have reached impasse).

[4] Only Request No. 73 escaped specific objections, though Smartmatic still purported to incorporate its general objections into its response to that request.  Ex. 1-D at 46.

Four months ago, OAN timely served its second set of interrogatories to each of the three Plaintiffs.[5]  Ex. 1, Edwards Decl. ¶ 4; Exhibit 1-E OAN's Second Sets of Interrogatories (each served on July 17, 2023).  Smartmatic responded, again serving omnibus objections and answers on behalf of all three Plaintiffs.  Ex. 1, Edwards Decl. ¶ 5; Exhibit 1-F, Plaintiffs' Omnibus Answers and Objections to Defendant's Second Set of Interrogatories.  Again, Smartmatic asserted several pages of "general objections" followed by specific objections to each request.  *See* Ex. 1-F at 1–5.

Smartmatic flatly refused to produce documents in response to 33 requests—and for many others, Smartmatic altered the scope of OAN's request.  *E.g.*, Ex. 1-D.  Smartmatic also refused to answer 11 interrogatories and limited the scope of its answers to many others. *See, e.g.*, Ex. 1-C; Ex. 1-F.

Over the last ten months, OAN has diligently worked to narrow the areas of disagreement with Smartmatic on each request.  For example, the parties were able to reach agreement on Interrogatory Nos. 7 and 11, and Smartmatic produced supplemental answers.  Ex. 1, Edwards Decl. ¶ 6.  But in spite of OAN's persistence, Smartmatic refuses to provide responses to 11 interrogatories[6] and to produce documents in response to 29 requests for production.[7]  *See* Ex. 1,

---

[5] OAN also served a Second Set of Requests for Production to each of the three Plaintiffs.  (*See* Dkt. 89.)  Smartmatic has refused to respond to any of these requests and instead filed a motion for protective order.  (Dkt. 81.)  OAN's Second Set of Requests for Production are not the subject of this Motion.

[6] Edwards Decl. ¶¶ 9, 11; Exhibit 1-H, Carl C. Butzer, Counsel for OAN, comments to letter by Caitlin Alejandrina Kovacs, Counsel for Smartmatic (Oct. 16. 2023) (identifying Interrogatory Nos. 3, 8, 10, 12–14, 16, 19, and 21–23 as those where the parties have reached impasse).  For the Court's convenience, OAN's interrogatories and Smartmatic's specific objections are listed in Appendix A.

[7] Edwards Decl. ¶¶ 9–10; Exhibit 1-G, Carl C. Butzer, Counsel for OAN, comments to letter by Olivia Sullivan, Counsel for Smartmatic (Oct. 12, 2023) (identifying Request Nos. 5–6, 8–10, 12, 14, 17–20, 33–34, 36, 39, 60–61, 65, 72, 80, 82, 88, 91–93, 96–97, and 101–02 as those where the

Edwards Decl. ¶ 9.  Smartmatic's repeated refusals to comply with its discovery obligations have frustrated OAN's ability to defend itself against Smartmatic's claims of over $2 billion in damages. Nevertheless, OAN continues to work towards meeting the Court's fact-discovery deadline and, accordingly, files this motion to compel Smartmatic to respond to interrogatories 8, 12–14, and 21–23, and to produce all documents responsive to requests for production 8, 10, 12, 14, 18–19, 33–34, 36, 39, 61, 65, 72, 80, 88, 91–93, 96–97, and 101–02.

## III.    ARGUMENT

"The Federal Rules of Civil Procedure provide for liberal discovery." *FTC v. Sysco Corp.*, 83 F. Supp. 3d 271, 274 (D.D.C. 2015).  Under Rule 26, parties may discover *any* material that is relevant to any party's claims or defenses and proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).

As this Court has repeatedly recognized, "[t]he term *relevance* at the discovery stage is a broadly construed term and is given very liberal treatment."  *Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 242 F.R.D. 1, 6 (D.D.C. 2007) (emphasis added); *see also Smith v. Schlesinger*, 513 F.2d 462, 472–473 (D.C. Cir. 1975) (a party may discover information which is not admissible at trial if such information will have some probable effect on the organization and presentation of the moving party's case).  Information considered "relevant" for purposes of discovery need not be admissible at trial, as long as it is "reasonably calculated to lead to the discovery of admissible evidence."  *Tequila Centinela*, 242 F.R.D. at 6 (quoting Fed. R. Civ. P. 26(b)(1)).

And proportionality considers:

---

parties have reached impasse). For the Court's convenience, OAN's requests and Smartmatic's specific objections are listed in Appendix B.

> (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.

*See* Fed. R. Civ. P. 26(b)(1).  This Court characterizes the proportionality inquiry as a balancing test of these six factors, with no single factor outweighing any of the others.  *Lamaute v. Power*, 339 F.R.D. 29, 35 (D.D.C. 2021); *see also Oxbow Carbon & Mins. LLC v. Union Pac. R.R. Co.*, 322 F.R.D. 1, 6 (D.D.C. 2017).

A party objecting to discovery requests bears the burden to "justify its objections by explaining them in detail as opposed to relying on general assertions."  *Meijer, Inc. v. Warner Chilcott Holdings Co., III*, 245 F.R.D. 26, 30 (D.D.C. 2007).[8]  In this Court, boilerplate "general objections" that are not specifically applied to individual discovery requests do not meet this burden.  *E.g.*, *Convertino v. U.S. Dep't of Justice*, 565 F. Supp. 2d 10, 13 (D.D.C. 2008) (rejecting general objections "'incorporated by reference' to each specific discovery response"); *DL v. District of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008) (overruling in their entirety general objections that were not specifically applied to the discovery requests at issue).[9]  The reason specific objections are required is to "enable[] the requesting party to evaluate and determine whether to challenge the objection raised."  *DL*, 251 F.R.D. at 43.

---

[8] S*ee also* Fed. R. Civ. P. 34(b)(2)(B) ("For each item or category, the response must either state that inspection and related activities will be permitted as requested or state *with specificity* the grounds for objecting to the request, *including the reasons*." (emphasis added)); Fed. R. Civ. P. 33(b)(4) ("The grounds for objecting to an interrogatory must be stated *with specificity*. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." (emphasis added)).

[9] *See also Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998) ("[G]eneral objections do not comply with Fed. R. Civ. P. 34(b) and courts disfavor them.").

Once a specific objection has been raised, if the parties cannot reach agreement, the requesting party may move to compel under Rule 37. *Lamaute*, 339 F.R.D. at 35; *see also* Fed. R. Civ. P. 37(a)(1). Rule 37 permits a party to file a motion to compel discovery if the opposing party "fails to answer to an interrogatory submitted under Rule 33" or "fails to produce documents . . . requested under Rule 34." Fed. R. Civ. P. 37(a)(1), (a)(3)(B)(iii)–(iv). An incomplete answer or response is equivalent to a failure to respond. Fed. R. Civ. P. 37(a)(4).

The party moving to compel "bears the initial burden of 'explaining how the requested information is relevant.'" *Lamaute*, 339 F.R.D. at 35 (quoting *Oxbow Carbon*, 322 F.R.D. at 5–6). Once the moving party establishes relevance, "the burden shifts to the party opposing discovery to show why the discovery should not be permitted." *Lamaute*, 339 F.R.D. at 35. This requires "a specific, detailed showing" by the party refusing to respond to a discovery request. *Id.*

## A.    Smartmatic's boilerplate "general objections" are invalid, and Smartmatic cannot rely on them to withhold documents.

OAN need not demonstrate the relevance of its requests unless Smartmatic first raises a *specific* objection. *See DL*, 251 F.R.D. at 43. Smartmatic's laundry list of boilerplate "general objections" fails to meet this burden, is invalid, and should be overruled in its entirety.

Before responding to each of OAN's discovery requests, Smartmatic purported to assert 21 boilerplate "general objections," which it claimed were "not waived, or in any way limited, by the Specific Objections." *See* Exhibit 1-C at 1–5; Exhibit 1-D at 1–5; Exhibit 1-F at 1–5. Then, in response to each discovery request, Smartmatic stated that it "incorporates by reference its General Objections as if fully stated herein" before addressing "further" specific objections to each request. *E.g.*, Exhibit 1-C at 6; Exhibit 1-D at 6; Exhibit 1-F at 6.

This is plainly improper. Nowhere does Smartmatic explain which of its 21 "general objections" apply to any particular discovery request and why. Smartmatic's burden is to justify

its objections with a sufficiently detailed explanation to permit OAN to determine whether to challenge those objections. *See Meijer, Inc.*, 245 F.R.D. at 30; *DL*, 251 F.R.D. at 43. Smartmatic has not even attempted to meet this burden with its general objections. As a result, OAN has no way to know whether Smartmatic actually relies on any of its "general objections" with respect to each contested discovery response, why any "general objection" might apply to a specific discovery request, or whether documents have been withheld on the basis of one (or more) "general objections."

This is plainly improper. *See Convertino*, 565 F. Supp. 2d at 13; *DL*, 251 F.R.D. at 43. As this Court has done in the past, it should overrule Smartmatic's "general objections" in their entirety, and Smartmatic should not be permitted to rely on them as a basis for objecting to these or any other discovery requests. *See, e.g.*, *DL*, 251 F.R.D. at 43.

**B.  Likewise, Smartmatic's purportedly "specific" objections lack specificity and are invalid.**

Smartmatic's purportedly "specific" objections to each of OAN's requests are anything but specific. Although the burden is on Smartmatic to raise a specific objection to OAN's requests so OAN can determine whether to challenge those objections, *see DL*, 251 F.R.D. at 43, Smartmatic instead relied on "copy and paste" objections, most of which only tentatively offer an objection "to the extent [the request] seeks" objectionable information. These objections leave OAN to guess (again) about (1) the basis for Smartmatic's objection, (2) whether it actually applies to the specific request, and (3) whether Smartmatic withheld any documents on the basis of each objection. The chart below illustrates Smartmatic's repeated use of non-specific, copy-and-paste objections across the interrogatories and requests that are the subject of the Motion.

| "Specific" Objection (emphasis added) | Requests Where Asserted |
|---|---|
| Smartmatic further objects to this [Interrogatory/Request] *to the extent it seeks* information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity.[10] | Interrogatory Nos. 8, 12–14, 21–23 (App'x A at 1–6)<br><br>Request Nos. 8, 12, 14, 18–19, 33–34, 36, 39, 61, 65, 72, 80, 88, 101 (App'x B at 1–7, 9–10) |
| Smartmatic further objects to this [Interrogatory/Request] *to the extent it seeks* information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence.<br><br>Smartmatic objects to this [Interrogatory/ Request] *to the extent it seeks* documents that are not relevant to the claims and defenses in this action. | Interrogatory Nos. 8, 12–14, 23 (App'x A at 1–4, 6)<br><br>Request Nos. 8, 10, 12, 14, 18–19, 33–34, 36, 39, 61, 65, 72, 80, 88, 91–93, 102 (App'x B at 1–10) |
| Smartmatic further objects to this Interrogatory as irrelevant, overbroad, and overly burdensome *to the extent that it seeks* information outside of the reasonable time frame relevant to this action.<br><br>Smartmatic further objects to the unlimited time frame and geographic scope for the information sought by this Interrogatory as overly burdensome, overbroad, and not proportional to the needs of the case.<br><br>Smartmatic further objects to the timeframe for the documents sought with respect to this Request as overbroad and unduly burdensome.<br><br>Smartmatic further objects to the timeframe of this Request as overbroad and unduly burdensome. | Interrogatory Nos. 8, 12–14, 23 (App'x A at 1–4, 6)<br><br>Request Nos. 10, 14, 18, 36, 80, 91–93, 101–02 (App'x B at 1–3, 5, 7–10) |
| Smartmatic further objects to this Interrogatory *to the extent it seeks* information or documentation protected from disclosure under confidentiality under other agreements | Interrogatory No. 23 (App'x A at 6)<br><br>Request Nos. 18–19, 33–34 (App'x B at 2–5) |

---

[10] Smartmatic also avoids its burden to "expressly make the claim" of privilege when withholding information otherwise discoverable in response to a discovery request.  Fed. R. Civ. P. 26(b)(5)(A).

| "Specific" Objection (emphasis added) | Requests Where Asserted |
|---|---|
| with third parties into which Smartmatic has entered or to which Smartmatic is subject. <br><br> Smartmatic further objects to this Request *to the extent it seeks* information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. | |
| Smartmatic further objects to this [Interrogatory/Request] *to the extent that it seeks* 'all' such [information/documents] on the grounds that such [Interrogatories/Requests] are overbroad and unduly burdensome | Interrogatory Nos. 12–13 (App'x A at 1–3) <br><br> Request No. 10 (App'x B at 1) |
| Smartmatic further objects *to the extent that it seeks* information outside of Smartmatic's possession, custody, or control. | Interrogatory Nos. 12–13, 21–22 (App'x A at 1–5) |
| Smartmatic further objects to this Interrogatory on the grounds that it is overly broad and not reasonably limited in scope *to the extent it seeks* information unrelated to Smartmatic's role in the 2020 Presidential Election or to the defamatory statements detailed in the Complaint. | Interrogatory Nos. 12–14, 23 (App'x A at 1–3, 6) |
| Smartmatic further objects to this Request as vague, ambiguous, overbroad, and unduly burdensome. <br><br> Smartmatic further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. Smartmatic <br><br> Smartmatic further objects that this Request is overbroad and unduly burdensome. <br><br> Smartmatic further objects to this Interrogatory as irrelevant and overbroad. | Request Nos. 10, 19, 65, 80, 88, 91–93, 97 (App'x B at 1, 3, 6–9) |
| Smartmatic further objects to this Interrogatory *to the extent that it calls for* legal conclusions. | Interrogatory Nos. 21–22 (App'x A at 4–5) |

OAN believes that each of these requests is relevant and proportional to the case, but Smartmatic refuses to explain otherwise.  In other words, Smartmatic's objections turn on its head the burden to raise a specific objection so OAN can determine whether to challenge it.  *See DL*, 251 F.R.D. at 43.  Thus, OAN (once again) is forced to seek the Court's intervention because Smartmatic refuses to comply with its discovery obligations.

Like its general objections, these "specific" objections are invalid and should be overruled in their entirety.  Smartmatic should not be permitted to rely on them as a basis for objecting to these or any other discovery requests.  *See, e.g.*, *DL*, 251 F.R.D. at 43.

### C.   OAN's requests are relevant to Smartmatic's claims and OAN's defenses.

Even if Smartmatic's general or specific objections were valid (they are not), the information OAN seeks in each of its requests is relevant to Smartmatic's claims or OAN's defenses.  An essential element of each of Smartmatic's claims is that the statements made were false.  (Dkt. 1 ¶¶ 443, 458.)  *See, e.g.*, *Moldea v. New York Times Co.*, 22 F.3d 310, 313, 317 (D.C. Cir. 1994).  Substantial truth of the complained-of statements is a defense to defamation.  *Id.* at 318.  And Smartmatic's damages are premised on its claim that it previously had a "reputation as one of the 'best voting systems in the world,'" which has now purportedly "been irreparably tarnished" by the alleged defamation.  (Dkt. 1 ¶¶ 47, 432.)

### 1.   *Formation and Origin of Smartmatic and Its Connections to Venezuela (RFP Nos. 8, 10, 39)*

Request Nos. 8, 10 and 39 seek information related to Smartmatic's origins and connections to Venezuela, including information from Smartmatic's website about its history, ownership, and formation, and information about Lord Mark Malloch-Brown, Smartmatic's

former Chairman of the board,[11] whom Smartmatic quotes in its Complaint regarding its formation (Dkt. 1 ¶ 343).  *See* App'x B at 1, 5–6.  Many of the statements Smartmatic complains of relate to Smartmatic's origins and connections to Venezuela.  (*E.g.*, Dkt. 1 ¶¶ 184(g), (i), (k), (m)–(n), (s)–(t), (z), (dd), 196(f)–(h), (k)–(l), 205(g), (i), (l), 218(a)–(z), 227(d)–(f), (i), (n), (p)–(u).)  Thus, information relating to Smartmatic's origins and connections to Venezuela is relevant to both Plaintiffs' burden of proof and also OAN's defense of truth, or substantial truth, of the allegedly defamatory statements.  And this information is relevant to Smartmatic's reputation prior to the allegedly defamatory statements, including its history with manipulated voting reports out of Venezuela.[12]  Smartmatic should be compelled to respond.

## 2.     The Complained-of Statements (ROG Nos. 21–22)

Interrogatory Nos. 21 and 22 seek information related to the complained-of statements, including where and when each statement was made and by whom, as well as whether each statement allegedly made a false suggestion, impression, or implication and if so, how that suggestion, impression, or implication was false.  App'x A at 4–5.  On top of its invalid, boilerplate general and specific objections, Smartmatic objects to each interrogatory as

> overbroad and overly burdensome to the extent that it seeks information regarding "all statements" that Smartmatic alleges are defamatory, although the requested information about each defamatory statement is readily available in Smartmatic's Complaint and is thus already in OANN's possession, custody, or control, or is equally available to OANN.

---

[11] Danica Kirka & Leonore Schick, *Venezuelans Lead UK Firm that Disputes Venezuela Election*, SEATTLE TIMES, https://www.seattletimes.com/business/venezuelans-lead-firm-that-cried-foul-on-venezuela-election/ (Aug. 2, 2017, 2:52 pm).

[12] Venezuelan Election Turnout Figures Manipulated by One Million Votes: Election Company, Reuters, Aug. 2, 2017, https://www.reuters.com/article/us-venezuela-politics-vote-smartmatic/venezuelan-election-turnout-figures-manipulated-by-one-million-votes-election-company-idUSKBN1AI1KZ.

Perhaps Smartmatic has not fully read its 400-plus paragraph Complaint, which makes clear that the statements listed therein are only "*some* of the statements" of which Smartmatic complains. (Dkt. 1 ¶¶ 184, 196, 205, 218, 227 (emphasis added).)  Because Smartmatic has only provided *some* of the complained-of statements, the complete scope of those statements is clearly relevant to both Smartmatic's claims and OAN's defenses in this lawsuit, as is information about whether those statements made false suggestions, impressions, or implications, and if so, how those implications were false.  OAN cannot defend itself against unknown charges, and Smartmatic should be compelled to answer.

### 3.    *Other Alleged Defamatory Statements (RFP Nos. 61, 72)*

Request Nos. 61 and 72 seek information about Smartmatic's communication with other media organizations about any statements or publications Smartmatic claims were defamatory, including the persons involved, the date, and the substance of the communication, as well as other complaints or concerns sent to any third party about statements made related to the 2020 U.S. Elections.  App'x B at 6–7.  Smartmatic had a poor reputation prior to the 2020 U.S. Election.[13] And now, Smartmatic has filed multiple lawsuits complaining of alleged defamation connected with the 2020 U.S. Election.[14]  But Smartmatic refuses to produce all responsive documents, instead mostly producing its complaints about or retraction requests in connection with statements related to the 2020 U.S. Election.

---

[13] *E.g.*, Venezuelan Election Turnout Figures Manipulated by One Million Votes: Election Company, Reuters, Aug. 2, 2017, https://www.reuters.com/article/us-venezuela-politics-vote-smartmatic/venezuelan-election-turnout-figures-manipulated-by-one-million-votes-election-company-idUSKBN1AI1KZ; John McLean, *Philippines Election: Doubts Arise over Electronic Voting Machines*, Christian Sci. Monitor, Mar. 9, 2010, https://www.csmonitor.com/World/Asia-Pacific/2010/0309/Philippines-election-Doubts-arise-over-electronic-voting-machines.

[14] *E.g.*, *Smartmatic USA Corp. v. Lindell*, No. 0:22-CV-00098 (D. Minn.); *Smartmatic USA Corp. v. Powell*, No. 1:21-cv-029995 (D.D.C.);

In addition to its defense that the complained-of statements in *this* lawsuit were true, or substantially true, OAN asserts that Smartmatic's reputation was harmed (if at all) not by statements made by OAN but by statements made by others, including statements made prior to the 2020 U.S. Elections about the reliability of Smartmatic's systems.   Thus, Smartmatic's communications with other media organizations (at any time) about claimed defamation, and Smartmatic's communications with third parties related to communications about the 2020 U.S. Elections, are relevant to Smartmatic's claims about the cause of its alleged reputational harms, the amount of Smartmatic's alleged damages, and OAN's defenses.   Further, communications about alleged defamation prior to the 2020 U.S. Elections are relevant to Smartmatic's reputation before the allegedly defamatory statements at issue in this lawsuit.   Smartmatic should be compelled to respond.

### 4.    *Smartmatic's Public Relations Expenses (RFP No. 101)*

Request No. 101 seeks information related to any work done by public relations professionals for Smartmatic.  App'x B. at 12–13.  Smartmatic refuses to produce any information other than its public relations expenses after the 2020 U.S. Elections.  *Id.*  Smartmatic seeks its public relations expenses incurred after the 2020 U.S. Elections as part of its Complaint.  (*E.g.*, Dkt. 1 ¶ 432(a).).  Clearly, whether those expenses materially differ from Smartmatic's public relations work *prior to* the 2020 U.S. Elections is relevant to whether Smartmatic's post-election expenses were actually caused by the allegedly defamatory statements, or just a regular expense of Smartmatic's business.  But Smartmatic's public relations work prior to the 2020 U.S. Elections also is directly relevant to the issue of Smartmatic's status as a limited public figure on the issues of elections and election security.  Smartmatic intentionally sought to insert itself into the public conversation regarding elections and election security, including through hiring public relations firms to do so.  Smartmatic should be compelled to respond.

### 5.      Smartmatic's Business in the United States (ROG No. 8)

Interrogatory No. 8 seeks information related to Smartmatic's historical and current revenue in the United States.  App'x A at 1.  Smartmatic claims that "its historical business and pipeline" supported a valuation of over $3.0 billion for its business prior to the 2020 U.S. Elections. (Dkt. 1 ¶ 438.)  And Smartmatic complains that its business value has now declined, in part because of the complained-of statements.  (*Id.*)  Thus, information relating to Smartmatic's historical and current business in the United States is relevant to Smartmatic's claims about the nature and extent of its business prior to and after the 2020 U.S. Elections, as well as to determining the cause of any decline in Smartmatic's valuation or business prospects.  Smartmatic should be compelled to answer.

### 6.      Smartmatic's Customers Outside of the U.S. (RFP No. 14)

Similarly, Request No. 14 seeks information related to Smartmatic's historical and current agreements or contracts for election technology or services outside of the United States.  App'x B at 2.  Again, Smartmatic claims that "its historical business and pipeline" supported a valuation of over $3.0 billion for its business prior to the 2020 U.S. Elections.  (Dkt. 1 ¶ 438.)  And Smartmatic complains that its business value has now declined, in part because of the complained-of statements.  (*Id.*)  Thus, information relating to Smartmatic's historical business and pipeline is relevant to Smartmatic's claims about the nature and extent of its business and the basis for its purported valuation, as well as to determining the cause of any decline in Smartmatic's valuation or business prospects.  Smartmatic should be compelled to respond.

### 7.      Smartmatic's Tax Returns and General Ledgers (RFP Nos. 65 and 88)

Request Nos. 65 and 88 seek Smartmatic's U.S. and other tax returns, as well as five years of Smartmatic's general ledgers.  App'x B at 6–8.  Again, Smartmatic claims that "its historical business and pipeline" supported a valuation of over $3.0 billion for its business prior to the 2020

U.S. Elections.   (Dkt. 1 ¶ 438.)   And Smartmatic complains that its business value has now reportedly declined, in part because of the complained-of statements.   (*Id.*)   Smartmatic's tax statements and general ledgers are directly relevant to show Smartmatic's historical business income and expenses, which are part of determining Smartmatic's valuation.   And Smartmatic's tax statements and general ledgers are relevant to show trends for Smartmatic's income and expenses over time, including whether it has shifted recognition of income to or from other entities, in order to make the Smartmatic Plaintiffs appear more or less valuable.   Smartmatic should be compelled to respond.

### 8.    *Smartmatic's Relationship with Dominion (RFP Nos. 33–34)*

Request Nos. 33 and 34 seek information about the business relationship between Smartmatic and Dominion.   Request No. 33 relates to former Smartmatic subsidiary Sequoia Voting Systems,[15] now owned by Dominion.[16]   App'x B at 3–5.   And Request No. 34 relates to Premier Election Solutions, formerly known as Diebold Election Systems, Inc., which was formerly owned by ES&S and later acquired by Dominion.[17]   *Id.*   Many of the statements

---

[15] Tim Golden, *U.S. Investigates Voting Machines' Venezuela Ties*, N.Y. Times (Oct. 29, 2006) (discussing Smartmatic's purchase of Sequoia), https://www.nytimes.com/2006/10/29/washington/29ballot.html.

[16] *Sequoia Voting Systems*, U.S. ELECTION ASSISTANCE COMM'N (Sept. 23, 2019) (showing that Sequoia was purchased by Dominion), https://www.eac.gov/voting-equipment/registered-manufacturers/sequoia-voting-systems-company-was-purchased-dominion.

[17] Dominion acquired Premier's voting systems in 2010 after the U.S. Department of Justice forced Premier's then-owner (ES&S) to divest itself of Premier's intellectual property and physical assets. KEN DETZNER, ANALYSIS AND REPORT OF OVERVOTES AND UNDERVOTES FOR THE 2014 GENERAL ELECTION  3  n.7  (Fla.  Dep't  of  State,  Div.  of  Elections  2015), https://files.floridados.gov/media/693814/overundervote-report-2014.pdf; *see also* Press Release, U.S. Dep't of Just., Justice Department Requires Key Divestiture in Election Systems & Software/Premier  Election  Solutions  Merger  (Mar.  8,  2010), https://www.justice.gov/opa/pr/justice-department-requires-key-divestiture-election-systems-softwarepremier-election.

Smartmatic complains of relate to the relationship between Smartmatic and Dominion, including through Sequoia and ES&S. (*E.g.*, Dkt. 1 ¶¶ 184(a)–(d), (f)–(g), (i), (p), (t)–(x), (z)–(cc), 196(c), (g), (m), (p), (r), (y), (dd), 205(h), (l), 218(b), (f)–(g), (r), (t), (z), 227(a), (c), (e)–(g), (l).) OAN has attempted to narrow the scope of Request No. 33 to include sales and licensing agreements and communications related to Smartmatic's acquisition and divestiture of Sequoia. And for Request No. 34, OAN has inquired whether an responsive documents exist. But Smartmatic has not responded, refusing even these attempts at compromise. Information relating to Smartmatic's relationship with Dominion both before and after the 2020 U.S. Elections—including through Sequoia or Premier Election Solutions (as requested here)—is relevant to OAN's defense of the truth, or substantial truth, of the allegedly defamatory statements. Smartmatic should be compelled to respond.

### 9. Smartmatic's Efforts to Distinguish Itself from Competitors (RFP No. 102)

Request No. 102 seeks information related to Smartmatic's efforts to distinguish itself from its competitors, including Dominion and its subsidiaries. App'x B. at 13. Smartmatic, a smaller player in the U.S. elections market, attempted to benefit from consumer confusion prior to the 2020 U.S. Elections regarding its connection to or relationship with Dominion and Sequoia. Given the extensive connections between Smartmatic and Dominion discussed above, and given the number of complained-of statements referring to Smartmatic and Dominion as related or working together, this information is relevant to OAN's defense of the truth, or substantial truth, of the allegedly defamatory statements. Smartmatic should be compelled to respond.

### 10. Smartmatic's Relationship with Konnech (RFP Nos. 91–93)

Request Nos. 91–93 seek various information relating to Smartmatic's relationship with Konnech Corporation ("Konnech"), including in relation to the 2020 U.S. Elections, and any complaints, concerns, or investigations into Konnech's software or PollChief election management

system.  App'x B at 8–9.  Smartmatic has been in contact with Konnech regarding a potential

partnership for ten or more years, and Konnech's software was used in the same 2020 U.S.

Elections in Los Angeles County where Smartmatic machines and software was used to tabulate

votes.  Konnech has had reliability issues in the past[18] and has been questioned for its security and

connections to China.[19]  Most recently, Konnech's CEO was arrested during an investigation into

possible theft of information from Konnech's PollChief election management system related to

the 2020 U.S. Elections.[20]   Many of the statements Smartmatic complains of relate to

vulnerabilities in or security issues with Smartmatic's systems and electronic voting generally,

leading to the potential for vote tabulation errors, as well as allegations of Chinese infiltration of

U.S. elections technology.  (*E.g.*, Dkt. 1 ¶¶ 184(a), (e), (j)–(k), (m)–(o), (q)–(s), (u)–(v), (aa), (gg)–

(hh), 196(f)–(g), (i)–(j), (w)–(y), (bb)–(ee), 205(a)–(r), 218(f), (p), (s)–(u), (y), 227(a)–(v).)  The

extent of Smartmatic's relationship with Konnech, including any contracts or agreements between

them (whether to share technology or intellectual property or otherwise) and whether Smartmatic

was aware of any complaints, concerns, or investigations into Konnech's systems are relevant to

---

[18] Brian Fitzpatrick, *Officials Seek Answers for Delayed Voting Results*, Leader-Post (Regina, Sask.) (Oct. 28, 2016), https://plus.lexis.com/api/permalink/368a5c7b-e681-4ac7-b120-ba40997cb33d/.

[19] Anthony Marx, *City Beat*, Courier Mail (Austl.) (Oct. 27, 2018), https://plus.lexis.com/api/permalink/ec7e3936-1297-41ea-9f3a-7875b4e75908/.

[20] Press Release, Head of Election Worker Management Company Arrested in Connection with Theft of Personal Data, L.A. Cnty. District Att'y's Off. (Oct. 4, 2022), https://da.lacounty.gov/media/news/head-election-worker-management-company-arrested-connection-theft-personal-data.

These charges were later dropped.  Juma Sei, *LA County Drops Charges Against Election Software Executive, Citing 'Potential Bias,'* NPR (Nov. 10, 2022, 6:31 PM), https://www.npr.org/2022/11/10/1135839608/los-angeles-county-dropped-charges-konnech-true-the-vote.

the truth, or substantial truth, of the allegedly defamatory statements.  Smartmatic should be compelled to respond.

11. ***Investigations into Alleged Bribery and Smartmatic's Involvement with Elected Officials (ROG No. 23, RFP No. 12)***

Interrogatory No. 23 seeks information related to a Wall Street Journal article detailing allegations of Smartmatic bribes to win a Venezuelan election contract and subsequent tax evasion, as well as Smartmatic's response that the allegations were the result of "false allegations" by two former employees.  App'x A at 6.  Several of the statements Smartmatic complains of relate to Smartmatic's alleged connections with the corrupt regime of Hugo Chávez, the president of Venezuela at the time of the alleged bribery, who died in 2013.  (*E.g.*, Dkt. 1 ¶¶ 184(g), (n), 205(i), 218(a)–(b), (d)–(e), (h), (j)–(k), (s), (u) (w), 227(d)–(e), (i), (p), (s).)  Thus, information relating to former Smartmatic employees who provided federal investigators with evidence about alleged bribes paid by Smartmatic to the Chávez regime is relevant to OAN's defense of truth, or substantial truth, of the allegedly defamatory statements.  Further, this information is relevant to Smartmatic's reputation prior to the allegedly defamatory statements.

Similarly, Request No. 12 seeks information related to Smartmatic's purported "strict ethics code" that prohibits political donations and ties to governments or political parties.  App'x B at 2; *see also* Dkt. 1 ¶ 339.  Smartmatic refuses to produce information regarding allegations of bribery or corruption, or internal investigations of violations of the ethics code.  App'x B at 2.  Again, several of the statements Smartmatic complains of relate to allegations of corruption and bribery at Smartmatic, including related to the Chávez regime.  Thus, information *related to* Smartmatic's "strict ethics code"—clearly including any internal reports or investigations of violations of the ethics code—is relevant to OAN's defense of the truth, or substantial truth, of the allegedly defamatory statements.  Smartmatic should be compelled to respond.

### 12. *Investigations and Criticisms of Smartmatic's Technology (ROG No. 12, RFP No. 80)*

Interrogatory No. 12 seeks information related to concerns with Smartmatic's products, equipment, software, or services, including "potential or alleged security issues, vulnerabilities, vote tabulation errors or bribes, including but not limited to those issues raised in the United States, the Philippines and Kenya."[21]  App'x A at 1–2.  Similarly, Request No. 80 seeks information related to social media platforms concerning the removal of content referencing Smartmatic in connection with elections in the U.S., Venezuela, the Philippines, and Kenya.  App'x B at 7.

Many of the statements Smartmatic complains of relate to vulnerabilities in or security issues with Smartmatic's systems, leading to the potential for vote tabulation errors.  (*E.g.*, Dkt. 1 ¶¶ 184(a), (e), (j)–(k), (m)–(o), (q)–(s), (u)–(v), (aa), (gg)–(hh), 196(f)–(g), (i)–(j), (w)–(y), (bb)–(ee), 205(a)–(r), 218(f), (p), (s)–(u), (y), 227(a)–(v).)  Problems with elections using Smartmatic's technology in Kenya, the Philippines, and Venezuela have been widely reported, as discussed elsewhere in this Motion.  Thus, information relating to vulnerabilities in or security issues with Smartmatic's systems, vote tabulation errors, or bribes to rig elections—and efforts by Smartmatic to have that information removed from social media platforms—is relevant to OAN's defense of the truth, or substantial truth, of the allegedly defamatory statements.  Further, this information is relevant to Smartmatic's reputation prior to the allegedly defamatory statements, including the criminal indictment of Smartmatic employees for alleged server interference related to the 2016

---

[21] OAN offered to narrow the scope of this request to negative feedback or criticism expressed by any governmental entity or agency, any journalist or media entity, or any cybersecurity expert from 2004 to the present. App'x A at 1.

elections in the Philippines.[22]  And it is relevant to the analysis of whether Smartmatic is a limited

public figure in the sphere of voting technology.  Smartmatic should be compelled to respond.

### 13.     *Audits of Smartmatic's Machines (ROG Nos. 13–14, RFP No. 19)*

Similarly, Interrogatory Nos. 13 and 14 request sufficient information to identify reports,

investigations, or audits of Smartmatic's machines or software, and Request No. 19 asks for

information about Smartmatic's involvement in the 2020 U.S. Elections and the "audit trails"

Smartmatic claims were created by its technology during these elections.  App'x A at 2–4; App'x

B at 3.  Smartmatic has refused to identify any reports, investigations, or audits of its machines or

software *except* those completed *after* the 2020 U.S. Elections for machines and software used in

that election.  Ex. 1-H, Carl C. Butzer, Counsel for OAN, comments to letter by Caitlin Alejandrina

Kovacs, Counsel for Smartmatic (Oct. 16. 2023), at 3.

Again, many of the statements Smartmatic complains of relate to vulnerabilities in or

security issues with Smartmatic's systems, leading to the potential for vote tabulation errors.  (*E.g.*,

Dkt. 1 ¶¶ 184(a), (e), (j)–(k), (m)–(o), (q)–(s), (u)–(v), (aa), (gg)–(hh), 196(f)–(g), (i)–(j), (w)–(y),

(bb)–(ee), 205(a)–(r), 218(f), (p), (s)–(u), (y), 227(a)–(v).)   Further, Smartmatic claims that

customers "that choose to use Smartmatic's election technology and software understand that they

are using a technology . . . with an auditable paper trail demonstrating that the elections were not

rigged, hacked, or stolen," and Smartmatic even references pre-2020 audits and post-2020 "audit

trails" to that effect.  (*Id.* ¶¶ 37, 43–44, 233.)  Smartmatic's reports, audits, or investigations of its

machines or software are directly relevant to Smartmatic's claims about its reputation among

---

[22] Ina Reformina, *Smartmatic, Comelec Personnel Ordered Indicted for Halalan 2016 Script Alteration*, ABS-CBN News (June 7, 2017, 6:36 PM), https://news.abs-cbn.com/news/06/07/17/smartmatic-comelec-personnel-ordered-indicted-for-halalan-2016-script-alteration.

prospective customers and the security and reliability of its voting machines.   Audits or investigations are likely to uncover vulnerabilities or security issues in Smartmatic machines or software, and audit trails are likely to demonstrate whether Smartmatic's machines correctly recorded voting information.   Thus, the information requested is relevant to Smartmatic's claims and OAN's defense of the truth, or substantial truth, of the allegedly defamatory statements. Smartmatic should be compelled to respond.

### 14.    *Inspections and Maintenance of Smartmatic's Machines or Software (RFP No. 18)*

Likewise, Request No. 18 seeks information about agreements between Smartmatic and third parties to inspect, maintain, update, or image Smartmatic's machines or software and related devices, specifically identifying exemplar elections in Venezuela, the Philippines, Kenya, and the United States.  App'x B at 2–3.  Smartmatic only agreed to produce contracts, bids, and RFI and RFP responses submitted by Smartmatic from January 1, 2018 to the present.  *Id.* at 5.  Again, many of the statements Smartmatic complains of relate to vulnerabilities in or security issues with Smartmatic's systems, leading to the potential for vote tabulation errors.  (*E.g.*, Dkt. 1 ¶¶ 184(a), (e), (j)–(k), (m)–(o), (q)–(s), (u)–(v), (aa), (gg)–(hh), 196(f)–(g), (i)–(j), (w)–(y), (bb)–(ee), 205(a)–(r), 218(f), (p), (s)–(u), (y), 227(a)–(v).)  And Smartmatic has a history of issues with its

technology in Venezuela,[23] the Philippines,[24] and Kenya,[25] many of which predate the artificial time limit imposed by Smartmatic.  Information sought in this request is likely to lead to admissible evidence concerning the truth, or substantial truth, of the allegedly defamatory statements, as well as regarding Smartmatic's reputation prior to the 2020 U.S. Elections.  Smartmatic should be compelled to respond.

### 15. *Smartmatic's Lost Customer Related to Potential Vote Manipulation (RFP No. 36)*

Request No. 36 seeks information about Smartmatic's potential contract with Allegheny County, Pennsylvania, including reasons why Allegheny County did not award a contract for election services to Smartmatic.  App'x B at 5.  Allegheny County originally planned to purchase voting machines from then-Smartmatic subsidiary Sequoia Voting Systems, but it was widely reported that Allegheny County scrapped those plans after a Carnegie Mellon University computer science professor concluded that vote totals on the machines could be manipulated.[26]  Again, many of the statements Smartmatic complains of relate to vulnerabilities in or security issues with Smartmatic's systems, leading to the potential for vote tabulation errors.  (*E.g.*, Dkt. 1 ¶¶ 184(a),

---

[23] *E.g.*, Venezuelan Election Turnout Figures Manipulated by One Million Votes: Election Company, Reuters, Aug. 2, 2017, https://www.reuters.com/article/us-venezuela-politics-vote-smartmatic/venezuelan-election-turnout-figures-manipulated-by-one-million-votes-election-company-idUSKBN1AI1KZ.

[24] *E.g.*, Ina Reformina, *Smartmatic, Comelec Personnel Ordered Indicted for Halalan 2016 Script Alteration*, ABS-CBN NEWS (June 7, 2017, 6:36 PM), https://news.abs-cbn.com/news/06/07/17/smartmatic-comelec-personnel-ordered-indicted-for-halalan-2016-script-alteration.

[25] Kenya Police Arrest Three Election Commission Contractors, Reuters, July 22, 2022, https://www.reuters.com/article/kenya-election-idAFL4N2Z31EA.

[26] Gary Washburn, *Alderman Sees a Plot in Voting Machines*, CHI. TRIB. (Apr. 8, 2006, 12:00 am) https://www.chicagotribune.com/news/ct-xpm-2006-04-08-0604080149-story.html.

(e), (j)–(k), (m)–(o), (q)–(s), (u)–(v), (aa), (gg)–(hh), 196(f)–(g), (i)–(j), (w)–(y), (bb)–(ee), 205(a)–(r), 218(f), (p), (s)–(u), (y), 227(a)–(v).)

If, as has been reported, Smartmatic lost the Allegheny County contract based on vulnerabilities within its systems that could lead to vote manipulation, then OAN's request for information about the contract and why Smartmatic lost the contract is relevant to determining the truth, or substantial truth, of the allegedly defamatory statements.  Further, this information is relevant to Smartmatic's reputation prior to the allegedly defamatory statements.  Smartmatic specifically claims that its "success was built on its reputation for secure, reliable, and auditable election technology and software."  (Dkt. 1 at 11.)  OAN asserts, and documents requested here are likely to demonstrate, that Smartmatic's reputation for vulnerabilities in their election systems were a detriment to their attempts to expand their business, even before the allegedly defamatory statements.  Smartmatic should be compelled to respond.

### 16.  Smartmatic's Communications with J. Alex Halderman (RFP Nos. 96–97)

Request Nos. 96 and 97 seek information regarding Smartmatic's communications with Dr. J. Alex Halderman, including information connected to a 2022 webinar at Elon University titled "Engendering Trust in Election Outcomes."  App'x B at 9.  Smartmatic has refused to produce any responsive information except communications directly with Dr. Halderman concerning Dominion or Smartmatic's technology from January 1, 2018 to the present.  *Id.*

Smartmatic has directly complained of a statement made by Dr. Halderman about his ability to hack voting machines.  (Dkt. 1 ¶¶ 196(ee).)  Dr. Halderman made these statements as early as 2018 based on what he termed "a decade of research."[27]  Smartmatic's communications

---

[27]  Steve Friess, *Hacking the Vote: It's Easier than You Think* (Fall 2018), https://alumni.umich.edu/michigan-alum/hacking-the-vote/.

with Dr. Halderman, especially prior to 2018 when he publicly announced the vulnerabilities in election technology, are relevant to Smartmatic's claims about Dr. Halderman's statement, as well as to OAN's defense of the truth, or substantial truth, of the statement.  Further, the information requested is likely to lead to the discovery of admissible evidence regarding the truth, or substantial truth, of other complained-of statements regarding vulnerabilities in Smartmatic's technology. Smartmatic should be compelled to respond.

### 17.   *Smartmatic Cannot Meet Its Burden.*

Even if Smartmatic had specifically objected to OAN's requests as required (it hasn't), OAN has established the relevance of each request, and now "the burden shifts to the party opposing discovery to show why the discovery should not be permitted."  *Lamaute*, 339 F.R.D. at 35.  Although Smartmatic will no doubt respond to this Motion with some argument why OAN should not be permitted to investigate the truth of the complained-of statements or other matters relevant to Smartmatic's claims and OAN's defenses, ultimately Smartmatic cannot meet its burden of "a specific, detailed showing" why relevant, proportional discovery to its *two-billion-dollar* claims should be denied.  *Id.*  OAN's Motion should be granted, and Smartmatic should be compelled to respond to each request in full.

### D.   **OAN is entitled to its reasonable attorneys' fees and expenses related to this Motion.**

As a result of Smartmatic's refusal to respond to relevant discovery requests, OAN was forced to bring this Motion to compel. OAN is entitled to compensation for its reasonable attorneys' fees and expenses incurred in drafting this Motion, and OAN requests permission to submit an application for these fees with supporting documentation. *See* Fed. R. Civ. P. 37(a)(5)(A).

### IV.    CONCLUSION

Plaintiffs want a multi-billion-dollar payday from a small news network with a limited subscriber base.  But incredibly, those same Plaintiffs distract, delay, and drag their feet on the most basic discovery tasks, even as fact discovery closes on December 8, 2023.  OAN is prepared to continue moving this case efficiently toward resolution, but each delay drains this small, family-run company of much-needed resources.  Plaintiffs' responses to OAN's relevant discovery requests should not be delayed further and the Motion should be granted.

By: */s/ John K. Edwards*

**JACKSON WALKER L.L.P.**
Charles L. Babcock
(admitted *pro hac vice*)
Nancy W. Hamilton
(admitted *pro hac vice*)
John K. Edwards
(admitted *pro hac vice*)
Joel R. Glover
(admitted *pro hac vice*)
Bethany Pickett Shah
(admitted *pro hac vice*)
1401 McKinney Suite 1900
Houston, TX 77010
Tel: (713) 752-4200
Fax: (713) 308-4110
cbabcock@jw.com
nhamilton@jw.com
jedwards@jw.com
jglover@jw.com
bpickett@jw.com

Jonathan D. Neerman
D.C. Bar No. 90003393
Carl C. Butzer
(admitted *pro hac vice*)
Minoo Sobhani Blaesche
(admitted *pro hac vice*)
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Tel: (214) 953-5664

Fax: (214) 661-6899
jneerman@jw.com
cbutzer@jw.com
mblaesche@jw.com

**BOYDEN GRAY PLLC**
Trent McCotter
D.C. BAR NO. 1011329
801 17th St NW, #350
Washington, DC 20006
(202) 706-5488
tmccotter@boydengray.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this __ day of _____, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel for the parties.

_____
John K. Edwards

# APPENDIX A

**Appendix A**

| Original Request (Ex. 1-A) | Narrowed Scope | Smartmatic's Objections |
|---|---|---|
| ROG No. 8: From the time any Smartmatic Entity began performing any business in the United States, provide the amount of annual revenue derived by each Smartmatic Entity in each state. | Narrow definition of "performing any business" to obtained a contract with any federal, state or local agency to conduct or consult about elections[1] | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Interrogatory as irrelevant, overbroad, and overly burdensome to the extent that it seeks information outside of the reasonable time frame relevant to this action. Smartmatic further objects to the phrases "performing any businesses" and "derived by," and "in each state" as used in this Interrogatory as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic responds that it will provide a response only upon such time as this Interrogatory is clarified and narrowed in scope. |
| ROG No. 12: Identify all Persons who, since the founding of any Smartmatic Entity, have raised issues concerning any Smartmatic Entity's products, equipment, software or services, including but not limited to concerns about potential or alleged security issues, vulnerabilities, | Negative feedback or criticism expressed by any governmental entity or agency, any journalist or media entity, or any cybersecurity expert from 2004 to the present.[2] | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense asserted |

---

[1] Exhibit 1-I, Letter from Brian W. Ledebuhr, Counsel for OAN, to Michael E. Bloom, Counsel for Smartmatic (Jan. 23, 2023) at Addendum A, p. 4.

[2] Exhibit 1-J, Letter from Jeanah Park, Counsel for OAN, to Olivia E. Sullivan, Counsel for Smartmatic (Feb. 9, 2023), at 7–8.

| Original Request (Ex. 1-A) | Narrowed Scope | Smartmatic's Objections |
|---|---|---|
| vote tabulation errors or bribes, including but not limited to those issues raised in the United States, the Philippines and Kenya, including but not limited to those issues raised by the United States Department of Justice, the Philippines' Commission on Elections and any Person asserting a lawsuit against any Smartmatic Entity, and for each such Person, identify (1) the date of Communication or such issue(s); (2) the nature of the issue(s); and (3) the actions taken by any Smartmatic Entity to address the issue(s). | | in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Interrogatory to the extent that it seeks "all" such information on the grounds that such Interrogatories are overbroad and unduly burdensome. Smartmatic further objects to the terms "founding," "issues," "concerns," "security issues," "vulnerabilities," "vote tabulation errors," "bribes" as used in the Interrogatory as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to this Interrogatory as irrelevant, overbroad, and unduly burdensome to the extent that it seeks information outside of a reasonable time frame relevant to this action. Smartmatic further objects to the extent that it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to this Interrogatory on the grounds that it is overly broad and not reasonably limited in scope to the extent it seeks information unrelated to Smartmatic's role in the 2020 Presidential Election or to the defamatory statements detailed in the Complaint. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic will produce documents sufficient to identify persons who have raised issues concerning any security issues, vulnerabilities, vote tabulation errors, or bribes with regard to the voting machines and technology developed by Smartmatic and utilized in the 2020 Presidential Election, to the extent that they exist and can be located by a reasonable search. |
| ROG No. 13: From the first Smartmatic Entity formation to the present, identify all audits performed on any of any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers by a third party, including (1) the | N/A | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it seeks |

| Original Request (Ex. 1-A) | Narrowed Scope | Smartmatic's Objections |
|---|---|---|
| identity of the entity or Person that performed each audit; (2) the result of each audit; (3) and the actions taken by any Smartmatic Entity to address any issue(s) found in each audit. | | information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Interrogatory to the extent that it seeks "all" such information on the grounds that such Interrogatories are overbroad and unduly burdensome. Smartmatic further objects to this Interrogatory to the extent that it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to the terms "formation," "third party," and "issue(s)" as used in this Interrogatory, as vague, ambiguous, and overbroad. Smartmatic further objects to this Interrogatory as irrelevant, overbroad, and unduly burdensome to the extent that it seeks information outside of a reasonable time frame relevant to this action. Smartmatic further objects to this Interrogatory on the grounds that it is overly broad and not reasonably limited in scope to the extent it seeks information unrelated to Smartmatic's role in the 2020 Presidential Election or to the defamatory statements detailed in the Complaint. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic will produce documents sufficient to identify post-election audits of the machines or software developed by Smartmatic and utilized in the 2020 Presidential election, to the extent that they exist and can be located by reasonable search. |
| ROG No. 14: From the first Smartmatic Entity formation to the present, identify any reports, investigations or audits any Smartmatic Entity performed in connection with any Smartmatic Entity's voting equipment or software, including but not limited to any Smartmatic Entity's voting equipment or software utilized in | N/A | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the |

| Original Request (Ex. 1-A) | Narrowed Scope | Smartmatic's Objections |
|---|---|---|
| the U.S. 2020 local, state and federal elections. | | discovery of admissible evidence. Smartmatic further objects to the terms "formation," "reports," and "investigations" as used in this Interrogatory, as vague, ambiguous, and overbroad. Smartmatic further objects to this Interrogatory as irrelevant, overbroad, and unduly burdensome to the extent that it seeks information outside of a reasonable time frame relevant to this action. Smartmatic further objects to this Interrogatory on the grounds that it is overly broad and not reasonably limited in scope to the extent it seeks information unrelated to Smartmatic's role in the 2020 Presidential Election or to the defamatory statements detailed in the Complaint. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic will produce documents sufficient to identify post-election audits of the machines or software developed by Smartmatic and utilized in the 2020 Presidential election, to the extent that they exist and can be located by reasonable search. |
| ROG No. 21: Identify all statements by OAN that You contend were defamatory. In identifying each statement, identify: (1) the broadcast where the statement was made; (2) the date of the statement; and (3) the speaker. | N/A | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory as overbroad and overly burdensome to the extent that it seeks information regarding "all statements" that Smartmatic alleges are defamatory, although the requested information about each defamatory statement is readily available in Smartmatic's Complaint and is thus already in OANN's possession, custody, or control, or is equally available to OANN. Smartmatic further objects to this Interrogatory to the extent that it calls for legal conclusions. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, |

| Original Request (Ex. 1-A) | Narrowed Scope | Smartmatic's Objections |
|---|---|---|
| | | Smartmatic directs OANN to Smartmatic's Complaint, including but not limited to paragraphs 171, 176, 179, 184, 196, 205, 218, and 227 of the Complaint for information about OANN's defamatory statements. Smartmatic reserves the right to incorporate in its Complaint any additional defamatory statements and/or republications or repackaging that are identified in the course of discovery. |
| ROG No. 22: To the extent You contend that any COMPLAINED OF STATEMENTS and/or COMPLAINED OF BROADCASTS made any false suggestions, impressions, or implications, identify: (1) each allegedly false suggestion, impression, or implication for each of the COMPLAINED OF STATEMENTS and/or COMPLAINED OF BROADCASTS; and (2) for each allegedly false suggestion, impression, or implication, the factual basis for Your contention that the statement created a false suggestion, impression, or implication. | N/A | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory as overbroad and overly burdensome to the extent that it seeks information readily available in Smartmatic's Complaint and is thus already in OANN's possession, custody, or control, or is equally available to OANN. Smartmatic further objects to this Interrogatory to the extent that it calls for legal conclusions. Smartmatic objects to the terms "false suggestions, impressions, or implications" and "the factual basis," as used in this Interrogatory, as vague and ambiguous. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic directs OANN to Smartmatic's Complaint—including but not limited to paragraphs 22-64, 180, 187-94, 199-203, 208-16, 221-25, 230-37, 242-49, and 257-354 of Smartmatic's Complaint—for the factual basis of Smartmatic's allegations that OANN's defamatory statements were false. For any additional defamatory statements and/or republications or repackaging that are identified in the course of discovery, Smartmatic reserves the right to incorporate in its Complaint the factual bases for Smartmatic's allegations that such defamatory statements were false. |

| Original Request (Ex. 1-A) | Narrowed Scope | Smartmatic's Objections |
|---|---|---|
| ROG No. 23: Identify the employees who allegedly made "false allegations" against You as described in Your statement in *U.S. Authorities Probe How Smartmatic Won Venezuela Election Pact*, Wall Street Journal, Dec. 1, 2006, https://www.wsj.com/articles/SB116493756785237566, and identify any cease and desist letters You sent to these employees. | N/A | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it seeks information or documentation protected from disclosure under confidentiality under other agreements with third parties into which Smartmatic has entered or to which Smartmatic is subject. Smartmatic objects to this Interrogatory to the extent it seeks documents that are not relevant to the claims and defenses in this action. Smartmatic further objects to this Interrogatory as irrelevant, overbroad, and overly burdensome to the extent that it seeks information outside of the reasonable time frame relevant to this action. Smartmatic further objects to this Interrogatory on the grounds that it is overly broad and not reasonably limited in scope to the extent it seeks information unrelated to Smartmatic's role in the 2020 U.S. Presidential Election, the election machines and software developed by Smartmatic and utilized in the 2020 U.S. Presidential Election, or the defamatory statements detailed in the Complaint. |

# APPENDIX B

**Appendix B**

| Original Request (Ex. 1-B) | Narrowed Scope | Smartmatic's Objections (Ex. 1-D) |
|---|---|---|
| RFP No. 8: Documents and Communications regarding the formation of any Smartmatic Entity. | Any corporate filing made with any governmental entity on behalf of any Smartmatic entity.[1] | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Subject to and without waiving the foregoing objections, Smartmatic will produce organizational charts sufficient to show the corporate structure of Smartmatic, to the extent that such documents exist and can be located by a reasonable search. |
| RFP No. 10: All versions of any website of any and all Smartmatic Entities from creation to the present. | Information relating to Smartmatic Entities' founding, history, ownership, and formation, as well as any information contained in a typical "About Us" tab on a corporate website.[2] | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent that it seeks "all" such documents on the grounds that such Requests are overbroad and unduly burdensome. Smartmatic further objects to the timeframe (encompassing over twenty years) for the documents sought with respect to this Request as overbroad and unduly burdensome. Smartmatic further objects to this Request on the grounds that the information is equally accessible to OAN through the use of the Wayback Machine. Smartmatic will not produce documents in response to this Request. |

---

[1] Exhibit 1-J, Letter from Jeanah Park, Counsel for OAN, to Olivia E. Sullivan, Counsel for Smartmatic (Feb. 9, 2023), at 7–8.

[2] Exhibit 1-J, Letter from Jeanah Park, Counsel for OAN, to Olivia E. Sullivan, Counsel for Smartmatic (Feb. 9, 2023), at 6–7.

| Original Request (Ex. 1-B) | Narrowed Scope | Smartmatic's Objections (Ex. 1-D) |
|---|---|---|
| RFP No. 12: Documents and Communications relating to the "strict ethics code" with which any Smartmatic Entity's founders and employees allegedly must comply, as referenced in Paragraph 339 of the Complaint. | N/A | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Subject to and without waiving the foregoing objections, Smartmatic will produce documents sufficient to identify Smartmatic's employee ethical code or guidelines as referenced in Paragraph 339 of the Complaint. |
| RFP No. 14: Documents and Communications relating to any agreements or contracts between any Smartmatic Entity and any foreign governmental entities and/or officials from 2004 to the present to provide voting machines, elections technology and/or services, including but not limited to the "more than 25 countries on five continents" in which Smartmatic Entities have conducted business, as alleged in Paragraph 24 of the Complaint. | N/A | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to the timeframe for the documents sought with respect to this Request as overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic responds that it will produce its contracts for the provision of voting technology, and any bids, RFI responses and RFP responses submitted by Smartmatic for the provision of voting technology, from January 1, 2018 to present. |
| RFP No. 18: Documents and Communications relating to any agreements between any Smartmatic Entity and any third party regarding inspections, maintenance, updates to software and/or hardware, imaging of | N/A | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or |

| Original Request (Ex. 1-B) | Narrowed Scope | Smartmatic's Objections (Ex. 1-D) |
|---|---|---|
| drives, servers and/or data uploads or downloads related to any Smartmatic Entity's voting machines or software and related storage servers or devices used in elections in the United States or elsewhere, including but not limited to the 2020 election in the United States, as well as elections in Venezuela, the Philippines, and Kenya from 2005 to the present. | | immunity. Smartmatic further objects to the timeframe for the documents sought with respect to this Request as overbroad and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Smartmatic further objects to the terms "inspections," "maintenance," "updates," "imaging" and "data uploads or downloads" as vague, ambiguous and overbroad. Subject to and without waiving the foregoing objections, Smartmatic responds that it will produce its contracts relating to its provision of voting technology, including inspections or maintenance thereof, and any bids, RFI responses and RFP responses submitted by Smartmatic for the provision of voting technology, from January 1, 2018 to present. |
| RFP No. 19: Documents and Communications relating to any Smartmatic Entity's involvement in the U.S. 2020 local, state, and federal elections, including but not limited to the audit trails referenced in Paragraph 233 of the Complaint. | N/A | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Subject to and without waiving the foregoing objections, Smartmatic responds that it will produce documents regarding post-election audits of the voting machines and software developed by Smartmatic for use in the 2020 Presidential Election, to the extent they exist and can be located by a reasonable search. |
| RFP No. 33: Documents and Communications relating to the | Documents reflecting | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it |

| Original Request (Ex. 1-B) | Narrowed Scope | Smartmatic's Objections (Ex. 1-D) |
|---|---|---|
| business relationship between any Smartmatic Entity and Sequoia Voting Systems, Inc., (or any other Sequoia entity), including but not limited to oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement. | Smartmatic Entities' acquisition and divestiture of Sequoia, including at minimum, sales and licensing agreements, and Communications relating to the acquisition and divestiture of Sequoia.[3] | seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Subject to and without waiving the foregoing objections, Smartmatic responds that it will produce contracts evidencing Smartmatic's acquisition and divestment of Sequoia. |
| RFP No. 34: Documents and Communications relating to the business relationship between any Smartmatic Entity and Premier Election Solutions, formerly known as Diebold Election Systems, Inc., including but not limited to oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation agreements, common-interest agreements, joint defense agreements, settlement | OAN has asked whether any responsive documents exist, to determine whether to narrow the scope of this request.[4] | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Smartmatic will not produce documents in response to this Request. |

[3] Exhibit 1-J, Letter from Jeanah Park, Counsel for OAN, to Olivia E. Sullivan, Counsel for Smartmatic (Feb. 9, 2023), at 6–7.

[4] Exhibit 1-J, Letter from Jeanah Park, Counsel for OAN, to Olivia E. Sullivan, Counsel for Smartmatic (Feb. 9, 2023), at 8.

| Original Request (Ex. 1-B) | Narrowed Scope | Smartmatic's Objections (Ex. 1-D) |
|---|---|---|
| agreements, and any other form of agreement. | | |
| RFP No. 36: Documents and Communications relating to any Smartmatic Entity's potential contract with Allegheny County, Pennsylvania from 2004 to the present including, but not limited to, any reasons why Allegheny County, Pennsylvania did not award any contract for election services to the Smartmatic Entity. | N/A | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks documents containing confidential information, the disclosure of which is prohibited by law, regulation, or administrative order. Smartmatic further objects to the timeframe for the documents sought with respect to this Request as overbroad and unduly burdensome. Smartmatic will not produce documents in response to this Request. |
| RFP No. 39: Documents and Communications relating to Lord Mark Malloch-Brown and any Smartmatic Entity, including but not limited to Documents and Communications relating to his June 21, 2015 interview regarding Smartmatic, as referenced in Paragraph 343 of the Complaint. | Documents and Communications relating to Malloch-Brown's role at any Smartmatic Entity, his job description and responsibilities, any policies or initiatives he was involved in or oversaw at any Smartmatic Entity, the interview cited in Paragraph 343 of the Complaint, or the reasons for his | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic will not produce documents in response to this Request. |

| Original Request (Ex. 1-B) | Narrowed Scope | Smartmatic's Objections (Ex. 1-D) |
|---|---|---|
| | departure from the Smartmatic Entities.[5] | |
| RFP No. 61: Communications that any Smartmatic Entity has had with Other Media Organizations regarding any statement or publication alleged to be defamatory of any Smartmatic Entity from the formation of any Smartmatic Entity to the present, as well as (1) the identity of the Persons involved in the Communication(s); (2) the date of Communication(s); and (3) the substance of the Communication(s). | N/A | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Subject to and without waiving the foregoing objections, Smartmatic will produce documents sufficient to identify communications between Smartmatic and media entities regarding defamatory publications relating to Smartmatic's role in the 2020 Presidential Election, to the extent that they exist and can be located by a reasonable search. |
| RFP No. 65: All U.S. and other tax returns for any Smartmatic Entity, including but not limited to U.S. federal tax returns and state tax returns, from any Smartmatic Entity's inception to the present. | N/A | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request as overbroad and unduly burdensome. Smartmatic further objects to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic will not produce documents in response to this Request. |
| RFP No. 72: All Documents and Communications concerning | N/A | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it |

---

[5] Exhibit 1-J, Letter from Jeanah Park, Counsel for OAN, to Olivia E. Sullivan, Counsel for Smartmatic, at 7 (Feb. 9, 2023).

| Original Request (Ex. 1-B) | Narrowed Scope | Smartmatic's Objections (Ex. 1-D) |
|---|---|---|
| complaints or concerns regarding any statements made regarding any Smartmatic Entities related to the U.S. 2020 local, state, and federal elections, including but not limited to retraction requests, responses to retraction requests, and any related correspondence sent by any Smartmatic Entity to any third party. | | seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to the phrase "concerning complaints or concerns about statements made . . ." as vague, ambiguous, and overbroad. Subject to and without waiving the foregoing objections, Smartmatic will produce documents and communications regarding retraction requests or responses to retraction requests made by Smartmatic in connection with statements made about Smartmatic relating to the 2020 Presidential Election, to the extent that they exist and can be located by a reasonable search. |
| RFP No. 80: Communications with and Documents related to social media platforms, including but not limited to Facebook, Twitter, Instagram, and YouTube concerning the removal of any posts, videos, or other content referencing any Smartmatic Entity in connection with U.S. elections from 2004 to the present, as well as elections in the Philippines, Venezuela, and Kenya from 2004 to the present. | N/A | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to the timeframe of this Request as overbroad and unduly burdensome. Smartmatic further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. Subject to and without waiving the foregoing objections, Smartmatic will produce documents and communications relating to social media platforms' removal of content referencing Smartmatic in connection with the 2020 Presidential Election, to the extent they exist and can be located by a reasonable search. |
| RFP No. 88: All of any Smartmatic Entity's general ledgers for the past five (5) years. | N/A | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in |

| Original Request (Ex. 1-B) | Narrowed Scope | Smartmatic's Objections (Ex. 1-D) |
|---|---|---|
|  |  | this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request as overbroad, overly burdensome, and not proportional to the needs of the case. Smartmatic will not produce documents in response to this Request. |
| RFP No. 91: Documents and Communications concerning Konnech Corporation from 2004 to the present. | N/A | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. Smartmatic further objects to the timeframe for the documents sought with respect to this Request as overbroad and unduly burdensome. Smartmatic further objects to the timeframe of this Request as overbroad and unduly burdensome. Smartmatic will not produce documents in response to this Request. |
| RFP No. 92: Documents and Communications reflecting any Smartmatic Entity's relationship with Konnech Corporation, including but not limited to agreements or contracts between any Smartmatic Entity and Konnech Corporation in relation to the U.S. 2020 local, state, and federal elections. | N/A | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. Smartmatic further objects to the timeframe for the documents sought with respect to this Request as overbroad and unduly burdensome. Smartmatic further objects to the timeframe of this Request as overbroad and unduly burdensome. Smartmatic will not produce documents in response to this Request. |
| RFP No. 93: Documents and Communications concerning | N/A | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it |

| Original Request (Ex. 1-B) | Narrowed Scope | Smartmatic's Objections (Ex. 1-D) |
|---|---|---|
| complaints, concerns, or investigations about the use of Konnech Corporation's software and/or PollChief election management system. | | seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. Smartmatic further objects to the timeframe for the documents sought with respect to this Request as overbroad and unduly burdensome. Smartmatic further objects to the timeframe of this Request as overbroad and unduly burdensome. Smartmatic will not produce documents in response to this Request. |
| RFP No. 96: Communications between any Smartmatic Entity and Dr. J. Alex Halderman concerning or in any way related to any Smartmatic Entities' or Dominion Entities' voting machines, equipment, hardware, software, and/or servers from 2004 to the present. | N/A | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to the timeframe of this Request as overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents from January 1, 2018 to present, to the extent they exist and can be located by a reasonable search. |
| RFP No. 97: Documents and communications related to the October 19, 2022 Elon University Webinar titled Engendering Trust in Election Outcomes, including, but not limited to, all communications with Dr. J Alex Halderman and/or anyone affiliated with coordinating or organizing the webinar itself. | N/A | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. Smartmatic will not produce documents in response to this Request. |
| RFP No. 101: Documents and Communications related to work by any public relations professional on behalf of any | N/A | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic objects to the term "work," as used in this Request as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks |

| Original Request (Ex. 1-B) | Narrowed Scope | Smartmatic's Objections (Ex. 1-D) |
|---|---|---|
| Smartmatic Entity from that Smartmatic Entity's inception to the present. | | information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to the timeframe of this Request as overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic will produce documents and communications related to work by any public relations professional on behalf of Smartmatic subsequent to the 2020 Presidential Election, to the extent they exist and can be located by a reasonable search. |
| RFP No. 102: Documents and Communications related to any Smartmatic Entity's efforts to distinguish its voting hardware and software technology from any Smartmatic Entity competitor's voting hardware and software technology, including but not limited to any Dominion Entity's voting hardware and software technology, from that Smartmatic Entity's inception to the present. | Limit to 2006 to the present[6] | Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to the phrase "efforts to distinguish" Smartmatic further objects to the timeframe for the documents sought with respect to this Request as overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic responds that it will produce responsive documents only upon such time as this Request is narrowed in scope. |

---

[6] Exhibit 1-I, Letter from Brian W. Ledebuhr, Counsel for OAN, to Michael E. Bloom, Counsel for Smartmatic (Jan. 23, 2023), at Addendum p. 3.

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC HOLDING B.V., AND SGO CORPORATION LIMITED, ) ) ) ) Plaintiffs, ) v. ) ) HERRING NETWORKS, INC., D/B/A ONE AMERICA NEWS NETWORK, ) ) ) Defendant. ) | Civil Action No. 1:21-cv-02900-CJN |

<u>**DECLARATION OF JOHN K. EDWARDS IN SUPPORT OF OAN'S MOTION TO COMPEL DISCOVERY RESPONSES**</u>

I, John K. Edwards, declare as follows:

1.      I am over the age of 21 and competent to make this declaration. I am an attorney at the law firm of Jackson Walker LLP, and am counsel for Defendant Herring Networks, Inc., d/b/a One American News Network ("OAN"). I have personal knowledge of the facts stated in this declaration and those facts are true and correct. I submit this Declaration in support of OAN's Motion to Compel Discovery Responses.

2.      On October 24, 2022, OAN served its first set of interrogatories and first requests for production to each of the three Plaintiffs.  A true and correct copy of OAN's First Set of Interrogatories to each of the three Plaintiffs is attached as <u>Exhibit 1-A</u>.  A true and correct copy of OAN's First Set of Requests for Production to each of the three Plaintiffs is attached as <u>Exhibit 1-B</u>.

3.      On December 16, 2022, Smartmatic[1] served omnibus objections and responses on behalf of all three Plaintiffs to OAN's first set of interrogatories and requests for production, asserting several pages of "general objections" followed by specific objections to each request.  A true and correct copy of Plaintiffs' Omnibus Answers and Objections to Defendant's First Set of Interrogatories is attached as Exhibit 1-C.   A true and correct copy of Plaintiffs' Omnibus Responses and Objections to Defendant's First Set of Requests for Production is attached as Exhibit 1-D.

4.      On July 17, 2023, OAN timely served its second set of interrogatories to each of the three Plaintiffs.  A true and correct copy of OAN's Second Set of Interrogatories to each of the three Plaintiffs is attached as Exhibit 1-E.

5.      On August 16, 2023, Smartmatic responded, again serving omnibus objections and answers on behalf of all three Plaintiffs.  Again, Smartmatic asserted several pages of "general objections" followed by specific objections to each request.  A true and correct copy of Plaintiffs' Omnibus Answers and Objections to Defendant's Second Set of Interrogatories is attached as Exhibit 1-F.

6.      Over the last ten months, OAN has diligently worked to narrow the areas of disagreement with Smartmatic on each request, including engaging in numerous meet-and-confers and exchanging dozens of letters with Smartmatic's counsel.  Some of these efforts have resulted in agreement.  For example, the parties were able to reach agreement on Interrogatory Nos. 7 and 11, and Smartmatic produced supplemental answers.

---

[1] "Smartmatic" means Plaintiffs Smartmatic USA Corp., Smartmatic International Holdings B.V., and SGO Corporation Limited, collectively.

7.     OAN has attempted to reach agreement on other requests by offering to narrow the scope of the original requests.  For example, in a letter dated January 23, 2023, from Brian W. Ledebuhr, counsel for OAN, to Michael Bloom, counsel for Smartmatic, OAN offered to narrow the scope of Request No. 102 to a period of 2006 to the present.  A true and correct copy of this letter, which I received from Mr. Ledebuhr when Jackson Walker LLP substituted in as counsel for OAN, is attached as Exhibit 1-I.

8.     And again, in a letter dated February 9, 2023, from Jeanah Park, counsel for OAN, to Olivia Sullivan, counsel for Smartmatic, OAN offered to narrow the scope of several outstanding discovery requests.  A true and correct copy of this letter, which I received from Ms. Park when Jackson Walker LLP substituted in as counsel for OAN, is attached as Exhibit 1-J.

9.     But in spite of OAN's persistence, Smartmatic refuses to provide responses to 11 interrogatories and to produce documents in response to 29 requests for production from OAN's first set of requests for production.

10.     On October 12, 2023, my colleague, Carl C. Butzer, sent comments to a letter by Olivia Sullivan, counsel for Smartmatic, identifying 29 requests for production where the parties had reached an impasse.  I received a copy of Mr. Butzer's comments, which are in red font incorporated into the original text of Ms. Sullivan's letter.  A true and correct copy of Mr. Butzer's comments to the original text of Ms. Sullivan's letter are attached as Exhibit 1-G.

11.     On October 16, 2023, my colleague, Carl C. Butzer, sent comments to a letter by Olivia Sullivan, counsel for Smartmatic, identifying 11 interrogatories where the parties had reached an impasse.  I received a copy of Mr. Butzer's comments, which are in red font incorporated into the original text of Ms. Sullivan's letter.  A true and correct copy of Mr. Butzer's comments to the original text of Ms. Sullivan's letter are attached as Exhibit 1-H.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on October 27, 2023.

_____

John K. Edwards

# EXHIBIT 1-A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SMARTMATIC USA CORP., *et al.*, | |
| Plaintiffs, | No. 1:21-cv-02900-CJN |
| v. | |
| HERRING NETWORKS, INC., d/b/a ONE AMERICA NEWS NETWORK, | Judge Carl J. Nichols |
| Defendant. | |

## DEFENDANT'S FIRST SET OF INTERROGATORIES
## TO SGO CORPORATION LIMITED

Defendant Herring Networks, Inc., d/b/a One America News Network, through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 33, hereby requests that plaintiff SGO Corporation Limited respond to the following Interrogatories within thirty (30) days of service hereof.

## DEFINITIONS AND INSTRUCTIONS

1.      "Alleged Defamatory Statements" shall mean the statements contained in Paragraphs 184, 196, 205, 218 and 227 of the Complaint, as well as any other allegedly defamatory statements otherwise referenced in the Complaint.

2.      The word "and" includes the disjunctive "or," and the word "or" includes the conjunctive "and."  Words in the singular shall be interpreted to include the plural, and words in the plural shall be interpreted to include the singular.  A masculine, feminine or neuter form of a word shall be interpreted to include the other genders.  The use of any tense of any verb shall be interpreted to include all other tenses.

3.      "Articles at Issue" shall mean any articles alleged in the Complaint to contain any of the Alleged Defamatory Statements.

1

4.      "Communication" shall mean any written, electronic or verbal transmission of words or thoughts between or among two or more Persons, including, without limitation, any letter, email, instant or text message, social media post, blog, web posting, interview, conference, meeting, spoken words, conversation, understanding, agreement, discussion, talks and reports, whether transmitted orally, in writing, or by any electronic device.

5.      "Complaint" shall mean the original Complaint filed in the above-captioned action by Plaintiffs, as well as any subsequent amendments thereto.

6.      "Defendant" and/or "Herring" shall mean defendant Herring Networks, Inc., d/b/a One America News Network.

7.      "Document" shall mean any writing, graphic matter or other tangible thing, whether printed, recorded, produced by any process, or written or produced by hand, including, without limitation, agreements, contracts, correspondence, memoranda, letters, reports, Communications (as defined below) and Electronically Stored Information (as defined below), correspondence, telegrams, internal and external memoranda, summaries, records of oral conversations, original or preliminary notes, diaries, calendars, analyses, projections, ledgers, work papers, photographs, tape recordings, applications, video tapes, computer hard drives or disks, statistical statements, logs, graphs, charts, schedules, notebooks, minutes or records of meetings, minutes or records of conferences, lists of Persons attending meetings or conferences, reports and/or summaries of investigations, opinions or reports of investigators, accountants or consultants, studies, appraisals, evaluations, or copies of any of the foregoing if the copy is in any way different from the original now in any Plaintiff's possession, custody or control, or the possession, custody or control of any Plaintiff's counsel, investors, agents, employees and/or Persons acting on any Plaintiff's behalf.

8.      "Dominion Entity(ies)" shall mean US Dominion, Inc., Dominion Voting Systems, Inc. and Dominion Voting Systems Corporation, as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of the Dominion Entities.

9.      "Dominion Voting Systems Corporation" shall mean Dominion Voting Systems Corporation, as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Dominion Voting Systems Corporation.

10.     "Dominion Voting Systems, Inc." shall mean Dominion Voting Systems, Inc., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Dominion Voting Systems, Inc.

11.     "Electronically Stored Information" or "ESI" shall mean originals and all copies of email; activity listings of email receipts and/or transmittals; voice-mail; audio or video recordings of any kind; facsimiles; computer programs (whether private, commercial, or a work-in-progress); programming notes or instructions; social media posts; text messages; instant messages; metadata; output resulting from the use of any software program, including word processing Documents, spreadsheets, database files, charts, graphs, and outlines; operating systems; source code of all types; and electronic files and/or file fragments of any sort, regardless of the media on which they are stored and regardless of whether the data resides in an active file, deleted file, or file fragment. ESI also includes the file, folder tabs, containers or labels appended to any storage device

3

containing electronic data.  All ESI produced in response hereto should be produced in native format.

12.     "Herring Guests" shall mean and include the guests who appeared on the Programs at Issue or otherwise appeared on OAN, including but not limited to Rudolph Giuliani, Sidney Powell, Michael Lindell, Kyle Becker, Clay Clark, Joseph diGenova, Tom Fitton, Allan dos Santos, Keith Trippie, J. Michael Waller, Mary Fanning and Michael Flynn.

13.     "Herring Talent" shall mean and include all Herring employees that appeared on the Programs at Issue or otherwise appeared on OAN, including but not limited to Alex Salvi, Elma Aksalic, Kara McKinney, Mike Dinow, Patrick Hussion, Dan Ball, John Hines, Stephanie Hamill, Samantha Lomibao, Emily Finn and Christina Bobb.

14.     The word "identify" means:

    (a)     in the case of a natural person, to state:

        (i)     the full name;

        (ii)     the last known residence;

        (iii)     the last known telephone number;

        (iv)     the last known employer or business affiliation;

        (v)     the last known occupation and business position or title held; and

        (vi)     the subject matter about which the natural person has knowledge.

    (b)     in the case of any other person, to state:

        (i)     the name;

        (ii)     the date of its founding;

        (iii)     the name(s) of its founder(s);

        (iv)     the place of incorporation or organization;

        (v)     the place of principal business;

4

(vi)    the physical address for each and every leased or owned office and facility since its founding; and

(vii)    the date that it established a presence in each office.

(c)    in the case of a Document, whether or not privilege is claimed, to state:

    (i)    the type of Document (e.g., letter, memorandum, telegram, etc.);

    (ii)    the general subject matter of the Document;

    (iii)    the number of pages comprising the Document;

    (iv)    the present location and the identity of the custodian of the Document;

    (v)    the date it bears, if any;

    (vi)    the date the Document was prepared;

    (vii)    whether the Document was sent and, if so, the date it was sent; and

    (viii)    the identity of the author, originator, sender, each person who received the Document (whether or not named as an addressee), and each person known to have read the Document.

(d)    in the case of a Document, to state:

    (i)    the form of the Document;

    (ii)    whether the Document was in written form, and, if so, to identify the Document in the same manner that a Document is to be identified; and

    (iii)    if the Document was not in written form, to state:

        (1)    the manner in which the Document was made (telephone, conversation, etc.);

        (2)    the identity of each person who participated in or witnessed the Document;

        (3)    the subject matter and content of the Document; and

        (4)    the date of the Document.

    (iv)    in the case of a meeting or event, to state:

VP/#58396531

        (1)    the manner in which the meeting or event was held (in person, telephone, video or web conference, or other format);

        (2)    the identity of each Person who participated in or witnessed the meeting or event;

        (3)    the subject matter and other matters discussed during the meeting or event; and

        (4)    the date and location of the meeting or event.

    (v)    in the case of a financial contribution, contribution of services, or contribution of other things of value from third parties, to state:

        (1)    the date of the contribution;

        (2)    The amount of the financial contribution or, if a service, the approximate value;

        (3)    the identity of the contributing individual or entity; and

        (4)    if a loan or contingent contribution, the terms for repayment.

15.    "OAN" shall mean One America News Network.

16.    "Other Media Organizations" shall mean other news, media, and other similar organizations, including but not limited to CNN, CBS, ABC, PBS, The *Wall Street Journal*, *The New York Times*, MSNBC, *The Washington Post*, Fox News, Newsmax, *Politico*, *Vanity Fair*, Media Matters, *Bloomberg News, The Chicago Tribune, The Los Angeles Times, The Miami Herald*, the *Times of San Diego* and *National Public Radio*.

17.    "Person" shall mean a natural person or any business, company, corporation, association, partnership organization or other legal entity.

18.    "Plaintiff(s)" and/or "Smartmatic Entity(ies)" shall mean plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V. and SGO Corporation Limited, as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors,

VP/#58396531

partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of the Plaintiffs.

19.     "Programs at Issue" shall mean any broadcast or program on OAN alleged to contain any of the Alleged Defamatory Statements, including but not limited to *After Hours with Alex Salvi*, OAN *Newsroom*, *Tipping Point with Kara McKinney*, *Breaking News Live with Patrick Hussion*, *Real America with Dan Ball*, *In Focus with Stephanie Hamill*, *Weekly Briefing with Christina Bobb*, and the Michael Lindell-produced programs titled *Absolute Proof*, *Scientific Proof*, *Absolute Interference* and *Absolutely 9-0.*

20.     The terms "relating to," "demonstrating," and "supporting" shall mean having any connection, association or concern with, or any relevance, relation, pertinence or applicability to or any implication bearing on, the subject matter, whether directly or indirectly.

21.     "SGO Corporation Limited" "You" and/or "Your" shall mean plaintiff SGO Corporation Limited, as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of SGO Corporation Limited.

22.     "Smartmatic International Holding B.V." shall mean plaintiff Smartmatic International Holding B.V., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Smartmatic International Holding B.V.

23.     "Smartmatic USA Corp.," shall mean plaintiff Smartmatic USA Corp., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors,

VP/#58396531

partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Smartmatic USA Corp.

24.     "Tweets at Issue" shall mean any tweets alleged in the Complaint to contain any of the Alleged Defamatory Statements.

25.     "US Dominion, Inc." shall mean plaintiff US Dominion, Inc., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of US Dominion, Inc.

26.     Where a claim of privilege is asserted in responding or objecting to any discovery requested herein and information is not provided on the basis of such assertion, Plaintiffs shall, in their response or objection, identify the nature of the privilege (including work product) which is being claimed.   When any privilege is claimed, Plaintiffs shall, as to the Documents and/or information requested, state whether:

      (a)     any Documents exist or any Communications took place; and

      (b)     provide the following information for each such Document or Document in a "privilege log" or similar format:

            (i)     the type of Document or Document;

            (ii)     the general subject matter of the Document or Document;

            (iii)     the date of the Document or Document;

            (iv)     the author(s) of the Document or participants in the Document;

            (v)     the addressee(s) and any other recipient(s) of the Document; and

            (vi)     the custodian of the Document, where applicable.

27.     Unless otherwise indicated, the relevant time period for these Interrogatories is from January 1, 2020 to the present.

28.     These Interrogatories are continuing in nature and require supplemental response if the Plaintiffs obtain further information between the time of compliance and any hearing or trial in all actions between any of the Plaintiffs and any other party concerning the U.S. 2020 local, state and federal elections, including but not limited to the above-captioned action, as well as *Smartmatic USA Corp., et al. v. Fox News Network, LLC, et al.*, Index No. 151136-2021 (New York Cnty., New York); *Smartmatic USA Corp. and SGO Corporation Unlimited v. Newsmax Media, Inc.*, Case No. N21C-11-028 EMD (Del. Super. Ct.); *Smartmatic USA Corp., et al. v. Sidney Powell*, Case No. 21-cv-02995 (D.D.C.); *Smartmatic USA Corp., et al. v. Lindell, et al.*, Case No. 22-cv-00098 (D. Minn.), including without limitation all matters set forth in the Complaint, any answers, affirmative defenses or counterclaims, and all additional pleadings, motions, discovery, affidavits, or other matter related thereto in each such case.

## **INTERROGATORIES**

## **INTERROGATORY NO. 1:**

Identify the Person(s) who prepared and/or assisted in the preparation of the Answers to these Interrogatories, including any Person(s) who supplied information and/or Documents used in the preparation of the Answers.  To the extent more than one Person prepared and/or assisted, identify which specific Answers each such Person prepared and/or assisted in preparing.

## **ANSWER:**

## **INTERROGATORY NO. 2:**

Identify and describe the factual basis for Your denial of (or failure to unequivocally admit) any of the First Set of Requests for Admission propounded upon You contemporaneously with this First Set of Interrogatories.

**ANSWER:**

**INTERROGATORY NO. 3:**

Identify each and every Smartmatic Entity, including those in the United States and in all foreign countries, since the founding of any Smartmatic Entity, including but not limited to every Smartmatic Entity in the countries identified in Footnotes 2 and 21 of the Complaint.

**ANSWER:**

**INTERROGATORY NO. 4:**

Identify all Persons, including but not limited to private entities and governmental entities, including but not limited to all foreign and U.S. national, state, county and local governmental entities from whom any Smartmatic Entity has sought a contract, including but not limited to contracts to conduct election caucuses, as well as contracts with subcontractors to assist Plaintiffs in conducting elections and election caucuses, and for each contract sought, identify whether any Smartmatic Entity was awarded the contract, and if so, describe (1) the work performed under each contract; (2) the term limit of each contract; and (3) the reason for the termination or non-renewal of each contract.

**ANSWER:**

**INTERROGATORY NO. 5:**

Identify all financial contributions, contributions of services, or contributions of other things of value from third parties that are funding this litigation brought by You.

**ANSWER:**

**INTERROGATORY NO. 6:**

Identify all current or former employees of, or personnel affiliated with, any Smartmatic Entity, including but not limited to those who have been or are currently employed by the U.S. government or in any federal, state or city-wide official, office or campaign, who have been or are referenced

10

in any criminal charge, civil complaint or administrative proceeding in which any Smartmatic

Entity was identified as a defendant, respondent or subject of a government investigation.

**ANSWER:**

**INTERROGATORY NO. 7:**

Identify all instances in which any Smartmatic Entity's voting machines, equipment, hardware,

software and/or servers were not certified by any national, state, county or local governmental

agency in either the United States or abroad, as well as the reason for the lack of certification.

**ANSWER:**

**INTERROGATORY NO. 8:**

From the time any Smartmatic Entity began performing any business in the United States, provide

the amount of annual revenue derived by each Smartmatic Entity in each state.

**ANSWER:**

**INTERROGATORY NO. 9:**

From first Smartmatic Entity formation to the present, identify all hardware and/or software,

including but not limited to servers, licensed or purchased by any Smartmatic Entity for purposes

of its election machines, including the identity of the company from which the Smartmatic Entity

licensed or purchased the hardware or software, and the year in which each Smartmatic Entity

purchased or began licensing the hardware and/or software.

**ANSWER:**

**INTERROGATORY NO. 10:**

From the first Smartmatic Entity formation to the present, identify all Persons involved in any

Smartmatic Entity's voting machines, equipment, hardware, software and/or servers, including but

not limited to those Persons involved in the development, testing, implementation, inspection,

maintenance, updating, imaging, uploading or downloading of any Smartmatic Entity's voting

machines, equipment, hardware, software and/or servers in the United States and abroad, and also including but not limited to those Persons involved in connection with the voting machines or related storage servers or devices used during the U.S. 2020 local, state and federal elections.

**ANSWER:**

**INTERROGATORY NO. 11:**

Identify all instances when the voting machines, equipment, software and/or servers of any Smartmatic Entity received software updates or any other maintenance (whether hardware or software related) from January 1, 2020 to November 3, 2020, and for each instance, identify the number of machines impacted, the nature of the update or maintenance, the relevant date, the location of the machines on the date of the update or maintenance and on November 3, 2020, whether the machines were employed in the U.S. 2020 local, state and federal elections, and any problems, concerns or issues that arose as a result of the updates or maintenance.

**ANSWER:**

**INTERROGATORY NO. 12:**

Identify all Persons who, since the founding of any Smartmatic Entity, have raised issues concerning any Smartmatic Entity's products, equipment, software or services, including but not limited to concerns about potential or alleged security issues, vulnerabilities, vote tabulation errors or bribes, including but not limited to those issues raised in the United States, the Philippines and Kenya, including but not limited to those issues raised by the United States Department of Justice, the Philippines' Commission on Elections and any Person asserting a lawsuit against any Smartmatic Entity, and for each such Person, identify (1) the date of Communication or such issue(s); (2) the nature of the issue(s); and (3) the actions taken by any Smartmatic Entity to address the issue(s).

12

**ANSWER:**

**INTERROGATORY NO. 13:**

From the first Smartmatic Entity formation to the present, identify all audits performed on any of any Smartmatic Entity's voting machines, equipment, hardware, software and/or servers by a third party, including (1) the identity of the entity or Person that performed each audit; (2) the result of each audit; (3) and the actions taken by any Smartmatic Entity to address any issue(s) found in each audit.

**ANSWER:**

**INTERROGATORY NO. 14:**

From the first Smartmatic Entity formation to the present, identify any reports, investigations or audits any Smartmatic Entity performed in connection with any Smartmatic Entity's voting equipment or software, including but not limited to any Smartmatic Entity's voting equipment or software utilized in the U.S. 2020 local, state and federal elections.

**ANSWER:**

**INTERROGATORY NO. 15:**

Identify all versions of any website of any Smartmatic Entity from creation to the present.

**ANSWER:**

**INTERROGATORY NO. 16:**

Describe how any Smartmatic Entity stores, maintains or otherwise retains its election data, including but not limited to any Smartmatic Entity's retention policy for election data from the U.S. 2020 local, state and federal elections.

**ANSWER:**

VP/#58396531

**INTERROGATORY NO. 17:**

Describe in detail all Smartmatic Entity past and/or present business relationships with other election machine and/or software companies, including but not limited to any Dominion Entity and Sequoia Voting Systems Inc.

**ANSWER:**

**INTERROGATORY NO. 18:**

Identify all public relations firms retained by any Smartmatic Entity from January 1, 2020 to the present.

**ANSWER:**

Dated:  October 24, 2022                    By: /s/ Blaine C. Kimrey

Blaine C. Kimrey, Bar No. IL0091
bkimrey@vedderprice.com
Jeanah Park, Bar No. IL0094
jpark@vedderprice.com
Bryan Clark, Bar No. IL0090
bclark@vedderprice.com
Brian Ledebuhr, Bar No. IL0093
bledebuhr@vedderprice.com
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, IL 60601
T:  +1 312 609 7500
F:  +1 312 609 5005

Brian K. McCalmon, Bar No. 461196
bmccalmon@vedderprice.com
VEDDER PRICE P.C.
1401 New York Avenue, Suite 500
Washington, DC 20005
T:  +1 202 312 3320
F:  +1 202 312 3322

*Counsel for Herring Networks, Inc.*

VP/#58396531

## **<u>VERIFICATION</u>**

The undersigned hereby declares under penalty of perjury that the foregoing answers to Defendant's First Set of Interrogatories are true and correct.


DATE: _____        _____

VP/#58396531

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of October 2022, I served the foregoing document on

the following counsel of record by electronic mail, hand-delivery and overnight delivery:

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949
J. Erik Connolly
Nicole E. Wrigley
Michael E. Bloom
Lee B. Muench
Emily Newhouse Dillingham
Lauren C. Tortorella
Kathleen Watson Moss
James R. Bedell
Julie M. Loftus
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
mbloom@beneschlaw.com
lmuench@beneschlaw.com
edillingham@beneschlaw.com
ltortorella@beneschlaw.com
kwatsonmoss@beneschlaw.com
jbedell@beneschlaw.com
jloftus@beneschlaw.com


<u>/s/ Blaine Kimrey</u>
Blaine Kimrey

VP/#58396531

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SMARTMATIC USA CORP., *et al.*, | |
| Plaintiffs, | No. 1:21-cv-02900-CJN |
| v. | |
| HERRING NETWORKS, INC., d/b/a ONE AMERICA NEWS NETWORK, | Judge Carl J. Nichols |
| Defendant. | |

## DEFENDANT'S FIRST SET OF INTERROGATORIES TO SMARTMATIC USA CORP.

Defendant Herring Networks, Inc., d/b/a One America News Network, through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 33, hereby requests that plaintiff Smartmatic USA Corp. respond to the following Interrogatories within thirty (30) days of service hereof.

## DEFINITIONS AND INSTRUCTIONS

1.      "Alleged Defamatory Statements" shall mean the statements contained in Paragraphs 184, 196, 205, 218 and 227 of the Complaint, as well as any other allegedly defamatory statements otherwise referenced in the Complaint.

2.      The word "and" includes the disjunctive "or," and the word "or" includes the conjunctive "and."  Words in the singular shall be interpreted to include the plural, and words in the plural shall be interpreted to include the singular.  A masculine, feminine or neuter form of a word shall be interpreted to include the other genders.  The use of any tense of any verb shall be interpreted to include all other tenses.

3.      "Articles at Issue" shall mean any articles alleged in the Complaint to contain any of the Alleged Defamatory Statements.

VP/#58396551

4.      "Communication" shall mean any written, electronic or verbal transmission of words or thoughts between or among two or more Persons, including, without limitation, any letter, email, instant or text message, social media post, blog, web posting, interview, conference, meeting, spoken words, conversation, understanding, agreement, discussion, talks and reports, whether transmitted orally, in writing, or by any electronic device.

5.      "Complaint" shall mean the original Complaint filed in the above-captioned action by Plaintiffs, as well as any subsequent amendments thereto.

6.      "Defendant" and/or "Herring" shall mean defendant Herring Networks, Inc., d/b/a One America News Network.

7.      "Document" shall mean any writing, graphic matter or other tangible thing, whether printed, recorded, produced by any process, or written or produced by hand, including, without limitation, agreements, contracts, correspondence, memoranda, letters, reports, Communications (as defined below) and Electronically Stored Information (as defined below), correspondence, telegrams, internal and external memoranda, summaries, records of oral conversations, original or preliminary notes, diaries, calendars, analyses, projections, ledgers, work papers, photographs, tape recordings, applications, video tapes, computer hard drives or disks, statistical statements, logs, graphs, charts, schedules, notebooks, minutes or records of meetings, minutes or records of conferences, lists of Persons attending meetings or conferences, reports and/or summaries of investigations, opinions or reports of investigators, accountants or consultants, studies, appraisals, evaluations, or copies of any of the foregoing if the copy is in any way different from the original now in any Plaintiff's possession, custody or control, or the possession, custody or control of any Plaintiff's counsel, investors, agents, employees and/or Persons acting on any Plaintiff's behalf.

8.      "Dominion Entity(ies)" shall mean US Dominion, Inc., Dominion Voting Systems, Inc. and Dominion Voting Systems Corporation, as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of the Dominion Entities.

9.      "Dominion Voting Systems Corporation" shall mean Dominion Voting Systems Corporation, as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Dominion Voting Systems Corporation.

10.     "Dominion Voting Systems, Inc." shall mean Dominion Voting Systems, Inc., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Dominion Voting Systems, Inc.

11.     "Electronically Stored Information" or "ESI" shall mean originals and all copies of email; activity listings of email receipts and/or transmittals; voice-mail; audio or video recordings of any kind; facsimiles; computer programs (whether private, commercial, or a work-in-progress); programming notes or instructions; social media posts; text messages; instant messages; metadata; output resulting from the use of any software program, including word processing Documents, spreadsheets, database files, charts, graphs, and outlines; operating systems; source code of all types; and electronic files and/or file fragments of any sort, regardless of the media on which they are stored and regardless of whether the data resides in an active file, deleted file, or file fragment. ESI also includes the file, folder tabs, containers or labels appended to any storage device

3

containing electronic data.  All ESI produced in response hereto should be produced in native format.

12.    "Herring Guests" shall mean and include the guests who appeared on the Programs at Issue or otherwise appeared on OAN, including but not limited to Rudolph Giuliani, Sidney Powell, Michael Lindell, Kyle Becker, Clay Clark, Joseph diGenova, Tom Fitton, Allan dos Santos, Keith Trippie, J. Michael Waller, Mary Fanning, and Michael Flynn.

13.    "Herring Talent" shall mean and include all Herring employees that appeared on the Programs at Issue or otherwise appeared on OAN, including but not limited to Alex Salvi, Elma Aksalic, Kara McKinney, Mike Dinow, Patrick Hussion, Dan Ball, John Hines, Stephanie Hamill, Samantha Lomibao, Emily Finn and Christina Bobb.

14.    The word "identify" means:

    (a)    in the case of a natural person, to state:

        (i)    the full name;

        (ii)    the last known residence;

        (iii)    the last known telephone number;

        (iv)    the last known employer or business affiliation;

        (v)    the last known occupation and business position or title held; and

        (vi)    the subject matter about which the natural person has knowledge.

    (b)    in the case of any other person, to state:

        (i)    the name;

        (ii)    the date of its founding;

        (iii)    the name(s) of its founder(s);

        (iv)    the place of incorporation or organization;

        (v)    the place of principal business;

(vi)   the physical address for each and every leased or owned office and facility since its founding; and

(vii)   the date that it established a presence in each office.

(c)   in the case of a Document, whether or not privilege is claimed, to state:

(i)   the type of Document (e.g., letter, memorandum, telegram, etc.);

(ii)   the general subject matter of the Document;

(iii)   the number of pages comprising the Document;

(iv)   the present location and the identity of the custodian of the Document;

(v)   the date it bears, if any;

(vi)   the date the Document was prepared;

(vii)   whether the Document was sent and, if so, the date it was sent; and

(viii)   the identity of the author, originator, sender, each person who received the Document (whether or not named as an addressee), and each person known to have read the Document.

(d)   in the case of a Document, to state:

(i)   the form of the Document;

(ii)   whether the Document was in written form, and, if so, to identify the Document in the same manner that a Document is to be identified; and

(iii)   if the Document was not in written form, to state:

(1)   the manner in which the Document was made (telephone, conversation, etc.);

(2)   the identity of each person who participated in or witnessed the Document;

(3)   the subject matter and content of the Document; and

(4)   the date of the Document.

5

      (iv)    in the case of a meeting or event, to state:

            (1)    the manner in which the meeting or event was held (in person, telephone, video or web conference, or other format);

            (2)    the identity of each Person who participated in or witnessed the meeting or event;

            (3)    the subject matter and other matters discussed during the meeting or event; and

            (4)    the date and location of the meeting or event.

      (v)    in the case of a financial contribution, contribution of services, or contribution of other things of value from third parties, to state:

            (1)    the date of the contribution;

            (2)    The amount of the financial contribution or, if a service, the approximate value;

            (3)    the identity of the contributing individual or entity; and

            (4)    if a loan or contingent contribution, the terms for repayment.

15.    "OAN" shall mean One America News Network.

16.    "Other Media Organizations" shall mean other news, media, and other similar organizations, including but not limited to CNN, CBS, ABC, PBS, The *Wall Street Journal*, *The New York Times*, MSNBC, *The Washington Post*, Fox News, Newsmax, *Politico*, *Vanity Fair*, Media Matters, *Bloomberg News, The Chicago Tribune, The Los Angeles Times, The Miami Herald*, the *Times of San Diego* and *National Public Radio*.

17.    "Person" shall mean a natural person or any business, company, corporation, association, partnership organization or other legal entity.

18.    "Plaintiff(s)" and/or "Smartmatic Entity(ies)" shall mean plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V. and SGO Corporation Limited, as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors,

VP/#58396551

partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of the Plaintiffs.

19.     "Programs at Issue" shall mean any broadcast or program on OAN alleged to contain any of the Alleged Defamatory Statements, including but not limited to *After Hours with Alex Salvi*, OAN *Newsroom*, *Tipping Point with Kara McKinney*, *Breaking News Live with Patrick Hussion*, *Real America with Dan Ball*, *In Focus with Stephanie Hamill*, *Weekly Briefing with Christina Bobb*, and the Michael Lindell-produced programs titled *Absolute Proof*, *Scientific Proof*, *Absolute Interference* and *Absolutely 9-0*.

20.     The terms "relating to," "demonstrating," and "supporting" shall mean having any connection, association or concern with, or any relevance, relation, pertinence or applicability to or any implication bearing on, the subject matter, whether directly or indirectly.

21.     "SGO Corporation Limited" shall mean plaintiff SGO Corporation Limited, as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of SGO Corporation Limited.

22.     "Smartmatic International Holding B.V." shall mean plaintiff Smartmatic International Holding B.V., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Smartmatic International Holding B.V.

23.     "Smartmatic USA Corp.," "You" and/or "Your" shall mean plaintiff Smartmatic USA Corp., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents,

representatives, and/or any other Persons acting, or purporting to act, on behalf of Smartmatic USA Corp.

24.     "Tweets at Issue" shall mean any tweets alleged in the Complaint to contain any of the Alleged Defamatory Statements.

25.     "US Dominion, Inc." shall mean plaintiff US Dominion, Inc., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of US Dominion, Inc.

26.     Where a claim of privilege is asserted in responding or objecting to any discovery requested herein and information is not provided on the basis of such assertion, Plaintiffs shall, in their response or objection, identify the nature of the privilege (including work product) which is being claimed.  When any privilege is claimed, Plaintiffs shall, as to the Documents and/or information requested, state whether:

    (a)    any Documents exist or any Communications took place; and

    (b)    provide the following information for each such Document or Document in a "privilege log" or similar format:

        (i)    the type of Document or Document;

        (ii)    the general subject matter of the Document or Document;

        (iii)    the date of the Document or Document;

        (iv)    the author(s) of the Document or participants in the Document;

        (v)    the addressee(s) and any other recipient(s) of the Document; and

        (vi)    the custodian of the Document, where applicable.

27.     Unless otherwise indicated, the relevant time period for these Interrogatories is from January 1, 2020 to the present.

VP/#58396551

28.     These Interrogatories are continuing in nature and require supplemental response if the Plaintiffs obtain further information between the time of compliance and any hearing or trial in all actions between any of the Plaintiffs and any other party concerning the U.S. 2020 local, state and federal elections, including but not limited to the above-captioned action, as well as *Smartmatic USA Corp., et al. v. Fox News Network, LLC, et al.*, Index No. 151136-2021 (New York Cnty., New York); *Smartmatic USA Corp. and SGO Corporation Unlimited v. Newsmax Media, Inc.*, Case No. N21C-11-028 EMD (Del. Super. Ct.); *Smartmatic USA Corp., et al. v. Sidney Powell*, Case No. 21-cv-02995 (D.D.C.); *Smartmatic USA Corp., et al. v. Lindell, et al.*, Case No. 22-cv-00098 (D. Minn.), including without limitation all matters set forth in the Complaint, any answers, affirmative defenses or counterclaims, and all additional pleadings, motions, discovery, affidavits, or other matter related thereto in each such case.

## **INTERROGATORIES**

### **INTERROGATORY NO. 1:**

Identify the Person(s) who prepared and/or assisted in the preparation of the Answers to these Interrogatories, including any Person(s) who supplied information and/or Documents used in the preparation of the Answers.  To the extent more than one Person prepared and/or assisted, identify which specific Answers each such Person prepared and/or assisted in preparing.

### **ANSWER:**

### **INTERROGATORY NO. 2:**

Identify and describe the factual basis for Your denial of (or failure to unequivocally admit) any of the First Set of Requests for Admission propounded upon You contemporaneously with this First Set of Interrogatories.

**ANSWER:**

**INTERROGATORY NO. 3:**

Identify each and every Smartmatic Entity, including those in the United States and in all foreign countries, since the founding of any Smartmatic Entity, including but not limited to every Smartmatic Entity in the countries identified in Footnotes 2 and 21 of the Complaint.

**ANSWER:**

**INTERROGATORY NO. 4:**

Identify all Persons, including but not limited to private entities and governmental entities, including but not limited to all foreign and U.S. national, state, county and local governmental entities from whom any Smartmatic Entity has sought a contract, including but not limited to contracts to conduct election caucuses, as well as contracts with subcontractors to assist Plaintiffs in conducting elections and election caucuses, and for each contract sought, identify whether any Smartmatic Entity was awarded the contract, and if so, describe (1) the work performed under each contract; (2) the term limit of each contract; and (3) the reason for the termination or non-renewal of each contract.

**ANSWER:**

**INTERROGATORY NO. 5:**

Identify all financial contributions, contributions of services, or contributions of other things of value from third parties that are funding this litigation brought by You.

**ANSWER:**

**INTERROGATORY NO. 6:**

Identify all current or former employees of, or personnel affiliated with, any Smartmatic Entity, including but not limited to those who have been or are currently employed by the U.S. government or in any federal, state or city-wide official, office or campaign, who have been or are referenced

VP/#58396551

in any criminal charge, civil complaint or administrative proceeding in which any Smartmatic

Entity was identified as a defendant, respondent or subject of a government investigation.

**ANSWER:**

**INTERROGATORY NO. 7:**

Identify all instances in which any Smartmatic Entity's voting machines, equipment, hardware,

software and/or servers were not certified by any national, state, county or local governmental

agency in either the United States or abroad, as well as the reason for the lack of certification.

**ANSWER:**

**INTERROGATORY NO. 8:**

From the time any Smartmatic Entity began performing any business in the United States, provide

the amount of annual revenue derived by each Smartmatic Entity in each state.

**ANSWER:**

**INTERROGATORY NO. 9:**

From first Smartmatic Entity formation to the present, identify all hardware and/or software,

including but not limited to servers, licensed or purchased by any Smartmatic Entity for purposes

of its election machines, including the identity of the company from which the Smartmatic Entity

licensed or purchased the hardware or software, and the year in which each Smartmatic Entity

purchased or began licensing the hardware and/or software.

**ANSWER:**

**INTERROGATORY NO. 10:**

From the first Smartmatic Entity formation to the present, identify all Persons involved in any

Smartmatic Entity's voting machines, equipment, hardware, software and/or servers, including but

not limited to those Persons involved in the development, testing, implementation, inspection,

maintenance, updating, imaging, uploading or downloading of any Smartmatic Entity's voting

VP/#58396551

machines, equipment, hardware, software and/or servers in the United States and abroad, and also including but not limited to those Persons involved in connection with the voting machines or related storage servers or devices used during the U.S. 2020 local, state and federal elections.

**ANSWER:**

**INTERROGATORY NO. 11:**

Identify all instances when the voting machines, equipment, software and/or servers of any Smartmatic Entity received software updates or any other maintenance (whether hardware or software related) from January 1, 2020 to November 3, 2020, and for each instance, identify the number of machines impacted, the nature of the update or maintenance, the relevant date, the location of the machines on the date of the update or maintenance and on November 3, 2020, whether the machines were employed in the U.S. 2020 local, state and federal elections, and any problems, concerns or issues that arose as a result of the updates or maintenance.

**ANSWER:**

**INTERROGATORY NO. 12:**

Identify all Persons who, since the founding of any Smartmatic Entity, have raised issues concerning any Smartmatic Entity's products, equipment, software or services, including but not limited to concerns about potential or alleged security issues, vulnerabilities, vote tabulation errors or bribes, including but not limited to those issues raised in the United States, the Philippines and Kenya, including but not limited to those issues raised by the United States Department of Justice, the Philippines' Commission on Elections and any Person asserting a lawsuit against any Smartmatic Entity, and for each such Person, identify (1) the date of Communication or such issue(s); (2) the nature of the issue(s); and (3) the actions taken by any Smartmatic Entity to address the issue(s).

12

**ANSWER:**

**INTERROGATORY NO. 13:**

From the first Smartmatic Entity formation to the present, identify all audits performed on any of any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers by a third party, including (1) the identity of the entity or Person that performed each audit; (2) the result of each audit; (3) and the actions taken by any Smartmatic Entity to address any issue(s) found in each audit.

**ANSWER:**

**INTERROGATORY NO. 14:**

From the first Smartmatic Entity formation to the present, identify any reports, investigations or audits any Smartmatic Entity performed in connection with any Smartmatic Entity's voting equipment or software, including but not limited to any Smartmatic Entity's voting equipment or software utilized in the U.S. 2020 local, state and federal elections.

**ANSWER:**

**INTERROGATORY NO. 15:**

Identify all versions of any website of any Smartmatic Entity from creation to the present.

**ANSWER:**

**INTERROGATORY NO. 16:**

Describe how any Smartmatic Entity stores, maintains or otherwise retains its election data, including but not limited to any Smartmatic Entity's retention policy for election data from the U.S. 2020 local, state and federal elections.

**ANSWER:**

VP/#58396551

**INTERROGATORY NO. 17:**

Describe in detail all Smartmatic Entity past and/or present business relationships with other election machine and/or software companies, including but not limited to any Dominion Entity and Sequoia Voting Systems Inc.

**ANSWER:**

**INTERROGATORY NO. 18:**

Identify all public relations firms retained by any Smartmatic Entity from January 1, 2020 to the present.

**ANSWER:**

Dated:  October 24, 2022                     By: /s/ Blaine C. Kimrey

Blaine C. Kimrey, Bar No. IL0091
bkimrey@vedderprice.com
Jeanah Park, Bar No. IL0094
jpark@vedderprice.com
Bryan Clark, Bar No. IL0090
bclark@vedderprice.com
Brian Ledebuhr, Bar No. IL0093
bledebuhr@vedderprice.com
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, IL 60601
T:  +1 312 609 7500
F:  +1 312 609 5005

Brian K. McCalmon, Bar No. 461196
bmccalmon@vedderprice.com
VEDDER PRICE P.C.
1401 New York Avenue, Suite 500
Washington, DC 20005
T:  +1 202 312 3320
F:  +1 202 312 3322

*Counsel for Herring Networks, Inc.*

VP/#58396551

## **<u>VERIFICATION</u>**

The undersigned hereby declares under penalty of perjury that the foregoing answers to Defendant's First Set of Interrogatories are true and correct.


DATE: _____          _____

VP/#58396551

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of October 2022, I served the foregoing document on the following counsel of record by electronic mail, hand-delivery and overnight delivery:

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949
J. Erik Connolly
Nicole E. Wrigley
Michael E. Bloom
Lee B. Muench
Emily Newhouse Dillingham
Lauren C. Tortorella
Kathleen Watson Moss
James R. Bedell
Julie M. Loftus
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
mbloom@beneschlaw.com
lmuench@beneschlaw.com
edillingham@beneschlaw.com
ltortorella@beneschlaw.com
kwatsonmoss@beneschlaw.com
jbedell@beneschlaw.com
jloftus@beneschlaw.com


/s/ Blaine Kimrey
Blaine Kimrey

16

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SMARTMATIC USA CORP., *et al.*, | |
| Plaintiffs, | No. 1:21-cv-02900-CJN |
| v. | |
| HERRING NETWORKS, INC., d/b/a ONE AMERICA NEWS NETWORK, | Judge Carl J. Nichols |
| Defendant. | |

## DEFENDANT'S FIRST SET OF INTERROGATORIES TO SMARTMATIC INTERNATIONAL HOLDING B.V.

Defendant Herring Networks, Inc., d/b/a One America News Network, through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 33, hereby requests that plaintiff Smartmatic International Holding B.V. respond to the following Interrogatories within thirty (30) days of service hereof.

## DEFINITIONS AND INSTRUCTIONS

1.      "Alleged Defamatory Statements" shall mean the statements contained in Paragraphs 184, 196, 205, 218 and 227 of the Complaint, as well as any other allegedly defamatory statements otherwise referenced in the Complaint.

2.      The word "and" includes the disjunctive "or," and the word "or" includes the conjunctive "and."  Words in the singular shall be interpreted to include the plural, and words in the plural shall be interpreted to include the singular.  A masculine, feminine or neuter form of a word shall be interpreted to include the other genders.  The use of any tense of any verb shall be interpreted to include all other tenses.

3.      "Articles at Issue" shall mean any articles alleged in the Complaint to contain any of the Alleged Defamatory Statements.

1

4.      "Communication" shall mean any written, electronic or verbal transmission of words or thoughts between or among two or more Persons, including, without limitation, any letter, email, instant or text message, social media post, blog, web posting, interview, conference, meeting, spoken words, conversation, understanding, agreement, discussion, talks and reports, whether transmitted orally, in writing, or by any electronic device.

5.      "Complaint" shall mean the original Complaint filed in the above-captioned action by Plaintiffs, as well as any subsequent amendments thereto.

6.      "Defendant" and/or "Herring" shall mean defendant Herring Networks, Inc., d/b/a One America News Network.

7.      "Document" shall mean any writing, graphic matter or other tangible thing, whether printed, recorded, produced by any process, or written or produced by hand, including, without limitation, agreements, contracts, correspondence, memoranda, letters, reports, Communications (as defined below) and Electronically Stored Information (as defined below), correspondence, telegrams, internal and external memoranda, summaries, records of oral conversations, original or preliminary notes, diaries, calendars, analyses, projections, ledgers, work papers, photographs, tape recordings, applications, video tapes, computer hard drives or disks, statistical statements, logs, graphs, charts, schedules, notebooks, minutes or records of meetings, minutes or records of conferences, lists of Persons attending meetings or conferences, reports and/or summaries of investigations, opinions or reports of investigators, accountants or consultants, studies, appraisals, evaluations, or copies of any of the foregoing if the copy is in any way different from the original now in any Plaintiff's possession, custody or control, or the possession, custody or control of any Plaintiff's counsel, investors, agents, employees and/or Persons acting on any Plaintiff's behalf.

8.     "Dominion Entity(ies)" shall mean US Dominion, Inc., Dominion Voting Systems, Inc. and Dominion Voting Systems Corporation, as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of the Dominion Entities.

9.     "Dominion Voting Systems Corporation" shall mean Dominion Voting Systems Corporation, as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Dominion Voting Systems Corporation.

10.    "Dominion Voting Systems, Inc." shall mean Dominion Voting Systems, Inc., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Dominion Voting Systems, Inc.

11.    "Electronically Stored Information" or "ESI" shall mean originals and all copies of email; activity listings of email receipts and/or transmittals; voice-mail; audio or video recordings of any kind; facsimiles; computer programs (whether private, commercial, or a work-in-progress); programming notes or instructions; social media posts; text messages; instant messages; metadata; output resulting from the use of any software program, including word processing Documents, spreadsheets, database files, charts, graphs, and outlines; operating systems; source code of all types; and electronic files and/or file fragments of any sort, regardless of the media on which they are stored and regardless of whether the data resides in an active file, deleted file, or file fragment. ESI also includes the file, folder tabs, containers or labels appended to any storage device

3

containing electronic data.  All ESI produced in response hereto should be produced in native format.

12.     "Herring Guests" shall mean and include the guests who appeared on the Programs at Issue or otherwise appeared on OAN, including but not limited to Rudolph Giuliani, Sidney Powell, Michael Lindell, Kyle Becker, Clay Clark, Joseph diGenova, Tom Fitton, Allan dos Santos, Keith Trippie, J. Michael Waller, Mary Fanning and Michael Flynn.

13.     "Herring Talent" shall mean and include all Herring employees that appeared on the Programs at Issue or otherwise appeared on OAN, including but not limited to Alex Salvi, Elma Aksalic, Kara McKinney, Mike Dinow, Patrick Hussion, Dan Ball, John Hines, Stephanie Hamill, Samantha Lomibao, Emily Finn and Christina Bobb.

14.     The word "identify" means:

> (a)     in the case of a natural person, to state:
>
>> (i)     the full name;
>>
>> (ii)     the last known residence;
>>
>> (iii)     the last known telephone number;
>>
>> (iv)     the last known employer or business affiliation;
>>
>> (v)     the last known occupation and business position or title held; and
>>
>> (vi)     the subject matter about which the natural person has knowledge.
>
> (b)     in the case of any other person, to state:
>
>> (i)     the name;
>>
>> (ii)     the date of its founding;
>>
>> (iii)     the name(s) of its founder(s);
>>
>> (iv)     the place of incorporation or organization;
>>
>> (v)     the place of principal business;

4

(vi)    the physical address for each and every leased or owned office and facility since its founding; and

(vii)    the date that it established a presence in each office.

(c)    in the case of a Document, whether or not privilege is claimed, to state:

    (i)    the type of Document (e.g., letter, memorandum, telegram, etc.);

    (ii)    the general subject matter of the Document;

    (iii)    the number of pages comprising the Document;

    (iv)    the present location and the identity of the custodian of the Document;

    (v)    the date it bears, if any;

    (vi)    the date the Document was prepared;

    (vii)    whether the Document was sent and, if so, the date it was sent; and

    (viii)    the identity of the author, originator, sender, each person who received the Document (whether or not named as an addressee), and each person known to have read the Document.

(d)    in the case of a Document, to state:

    (i)    the form of the Document;

    (ii)    whether the Document was in written form, and, if so, to identify the Document in the same manner that a Document is to be identified; and

    (iii)    if the Document was not in written form, to state:

        (1)    the manner in which the Document was made (telephone, conversation, etc.);

        (2)    the identity of each person who participated in or witnessed the Document;

        (3)    the subject matter and content of the Document; and

        (4)    the date of the Document.

    (iv)    in the case of a meeting or event, to state:

5

(1)     the manner in which the meeting or event was held (in person, telephone, video or web conference, or other format);

(2)     the identity of each Person who participated in or witnessed the meeting or event;

(3)     the subject matter and other matters discussed during the meeting or event; and

(4)     the date and location of the meeting or event.

(v)     in the case of a financial contribution, contribution of services, or contribution of other things of value from third parties, to state:

(1)      the date of the contribution;

(2)     The amount of the financial contribution or, if a service, the approximate value;

(3)     the identity of the contributing individual or entity; and

(4)     if a loan or contingent contribution, the terms for repayment.

15.     "OAN" shall mean One America News Network.

16.     "Other Media Organizations" shall mean other news, media, and other similar organizations, including but not limited to CNN, CBS, ABC, PBS, The *Wall Street Journal*, *The New York Times*, MSNBC, *The Washington Post*, Fox News, Newsmax, *Politico*, *Vanity Fair*, Media Matters, *Bloomberg News, The Chicago Tribune, The Los Angeles Times, The Miami Herald*, the *Times of San Diego* and *National Public Radio*.

17.     "Person" shall mean a natural person or any business, company, corporation, association, partnership organization or other legal entity.

18.     "Plaintiff(s)" and/or "Smartmatic Entity(ies)" shall mean plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V. and SGO Corporation Limited, as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors,

6

partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of the Plaintiffs.

19.     "Programs at Issue" shall mean any broadcast or program on OAN alleged to contain any of the Alleged Defamatory Statements, including but not limited to *After Hours with Alex Salvi*, OAN *Newsroom*, *Tipping Point with Kara McKinney*, *Breaking News Live with Patrick Hussion*, *Real America with Dan Ball*, *In Focus with Stephanie Hamill*, *Weekly Briefing with Christina Bobb*, and the Michael Lindell-produced programs titled *Absolute Proof*, *Scientific Proof*, *Absolute Interference* and *Absolutely 9-0.*

20.     The terms "relating to," "demonstrating," and "supporting" shall mean having any connection, association or concern with, or any relevance, relation, pertinence or applicability to or any implication bearing on, the subject matter, whether directly or indirectly.

21.     "SGO Corporation Limited" shall mean plaintiff SGO Corporation Limited, as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of SGO Corporation Limited.

22.     "Smartmatic International Holding B.V." "You" and/or "Your" shall mean plaintiff Smartmatic International Holding B.V., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Smartmatic International Holding B.V.

23.     "Smartmatic USA Corp.," shall mean plaintiff Smartmatic USA Corp., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors,

partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Smartmatic USA Corp.

24.     "Tweets at Issue" shall mean any tweets alleged in the Complaint to contain any of the Alleged Defamatory Statements.

25.     "US Dominion, Inc." shall mean plaintiff US Dominion, Inc., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of US Dominion, Inc.

26.     Where a claim of privilege is asserted in responding or objecting to any discovery requested herein and information is not provided on the basis of such assertion, Plaintiffs shall, in their response or objection, identify the nature of the privilege (including work product) which is being claimed.  When any privilege is claimed, Plaintiffs shall, as to the Documents and/or information requested, state whether:

>     (a)     any Documents exist or any Communications took place; and

>     (b)     provide the following information for each such Document or Document in a "privilege log" or similar format:

>>          (i)     the type of Document or Document;

>>          (ii)    the general subject matter of the Document or Document;

>>          (iii)   the date of the Document or Document;

>>          (iv)    the author(s) of the Document or participants in the Document;

>>          (v)     the addressee(s) and any other recipient(s) of the Document; and

>>          (vi)    the custodian of the Document, where applicable.

27.     Unless otherwise indicated, the relevant time period for these Interrogatories is from January 1, 2020 to the present.

VP/#58396773

28.    These Interrogatories are continuing in nature and require supplemental response if the Plaintiffs obtain further information between the time of compliance and any hearing or trial in all actions between any of the Plaintiffs and any other party concerning the U.S. 2020 local, state and federal elections, including but not limited to the above-captioned action, as well as *Smartmatic USA Corp., et al. v. Fox News Network, LLC, et al.*, Index No. 151136-2021 (New York Cnty., New York); *Smartmatic USA Corp. and SGO Corporation Unlimited v. Newsmax Media, Inc.*, Case No. N21C-11-028 EMD (Del. Super. Ct.); *Smartmatic USA Corp., et al. v. Sidney Powell*, Case No. 21-cv-02995 (D.D.C.); *Smartmatic USA Corp., et al. v. Lindell, et al.*, Case No. 22-cv-00098 (D. Minn.), including without limitation all matters set forth in the Complaint, any answers, affirmative defenses or counterclaims, and all additional pleadings, motions, discovery, affidavits, or other matter related thereto in each such case.

## **INTERROGATORIES**

### **INTERROGATORY NO. 1:**

Identify the Person(s) who prepared and/or assisted in the preparation of the Answers to these Interrogatories, including any Person(s) who supplied information and/or Documents used in the preparation of the Answers.  To the extent more than one Person prepared and/or assisted, identify which specific Answers each such Person prepared and/or assisted in preparing.

### **ANSWER:**

### **INTERROGATORY NO. 2:**

Identify and describe the factual basis for Your denial of (or failure to unequivocally admit) any of the First Set of Requests for Admission propounded upon You contemporaneously with this First Set of Interrogatories.

**ANSWER:**

**INTERROGATORY NO. 3:**

Identify each and every Smartmatic Entity, including those in the United States and in all foreign countries, since the founding of any Smartmatic Entity, including but not limited to every Smartmatic Entity in the countries identified in Footnotes 2 and 21 of the Complaint.

**ANSWER:**

**INTERROGATORY NO. 4:**

Identify all Persons, including but not limited to private entities and governmental entities, including but not limited to all foreign and U.S. national, state, county and local governmental entities from whom any Smartmatic Entity has sought a contract, including but not limited to contracts to conduct election caucuses, as well as contracts with subcontractors to assist Plaintiffs in conducting elections and election caucuses, and for each contract sought, identify whether any Smartmatic Entity was awarded the contract, and if so, describe (1) the work performed under each contract; (2) the term limit of each contract; and (3) the reason for the termination or non-renewal of each contract.

**ANSWER:**

**INTERROGATORY NO. 5:**

Identify all financial contributions, contributions of services, or contributions of other things of value from third parties that are funding this litigation brought by You.

**ANSWER:**

**INTERROGATORY NO. 6:**

Identify all current or former employees of, or personnel affiliated with, any Smartmatic Entity, including but not limited to those who have been or are currently employed by the U.S. government or in any federal, state or city-wide official, office or campaign, who have been or are referenced

in any criminal charge, civil complaint or administrative proceeding in which any Smartmatic

Entity was identified as a defendant, respondent or subject of a government investigation.

**ANSWER:**

**INTERROGATORY NO. 7:**

Identify all instances in which any Smartmatic Entity's voting machines, equipment, hardware,

software and/or servers were not certified by any national, state, county or local governmental

agency in either the United States or abroad, as well as the reason for the lack of certification.

**ANSWER:**

**INTERROGATORY NO. 8:**

From the time any Smartmatic Entity began performing any business in the United States, provide

the amount of annual revenue derived by each Smartmatic Entity in each state.

**ANSWER:**

**INTERROGATORY NO. 9:**

From the first Smartmatic Entity formation to the present, identify all hardware and/or software,

including but not limited to servers, licensed or purchased by any Smartmatic Entity for purposes

of its election machines, including the identity of the company from which the Smartmatic Entity

licensed or purchased the hardware or software, and the year in which each Smartmatic Entity

purchased or began licensing the hardware and/or software.

**ANSWER:**

**INTERROGATORY NO. 10:**

From first Smartmatic Entity formation to the present, identify all Persons involved in any

Smartmatic Entity's voting machines, equipment, hardware, software and/or servers, including but

not limited to those Persons involved in the development, testing, implementation, inspection,

maintenance, updating, imaging, uploading or downloading of any Smartmatic Entity's voting

VP/#58396773

machines, equipment, hardware, software and/or servers in the United States and abroad, and also including but not limited to those Persons involved in connection with the voting machines or related storage servers or devices used during the U.S. 2020 local, state and federal elections.

**ANSWER:**

**INTERROGATORY NO. 11:**

Identify all instances when the voting machines, equipment, software and/or servers of any Smartmatic Entity received software updates or any other maintenance (whether hardware or software related) from January 1, 2020 to November 3, 2020, and for each instance, identify the number of machines impacted, the nature of the update or maintenance, the relevant date, the location of the machines on the date of the update or maintenance and on November 3, 2020, whether the machines were employed in the U.S. 2020 local, state and federal elections, and any problems, concerns or issues that arose as a result of the updates or maintenance.

**ANSWER:**

**INTERROGATORY NO. 12:**

Identify all Persons who, since the founding of any Smartmatic Entity, have raised issues concerning any Smartmatic Entity's products, equipment, software or services, including but not limited to concerns about potential or alleged security issues, vulnerabilities, vote tabulation errors or bribes, including but not limited to those issues raised in the United States, the Philippines and Kenya, including but not limited to those issues raised by the United States Department of Justice, the Philippines' Commission on Elections and any Person asserting a lawsuit against any Smartmatic Entity, and for each such Person, identify (1) the date of Communication or such issue(s); (2) the nature of the issue(s); and (3) the actions taken by any Smartmatic Entity to address the issue(s).

VP/#58396773

**ANSWER:**

**INTERROGATORY NO. 13:**

From the first Smartmatic Entity formation to the present, identify all audits performed on any of any Smartmatic Entity's voting machines, equipment, hardware, software and/or servers by a third party, including (1) the identity of the entity or Person that performed each audit; (2) the result of each audit; (3) and the actions taken by any Smartmatic Entity to address any issue(s) found in each audit.

**ANSWER:**

**INTERROGATORY NO. 14:**

From the first Smartmatic Entity formation to the present, identify any reports, investigations or audits any Smartmatic Entity performed in connection with any Smartmatic Entity's voting equipment or software, including but not limited to any Smartmatic Entity's voting equipment or software utilized in the U.S. 2020 local, state and federal elections.

**ANSWER:**

**INTERROGATORY NO. 15:**

Identify all versions of any website of any Smartmatic Entity from creation to the present.

**ANSWER:**

**INTERROGATORY NO. 16:**

Describe how any Smartmatic Entity stores, maintains or otherwise retains its election data, including but not limited to any Smartmatic Entity's retention policy for election data from the U.S. 2020 local, state and federal elections.

**ANSWER:**

VP/#58396773

**INTERROGATORY NO. 17:**

Describe in detail all Smartmatic Entity past and/or present business relationships with other election machine and/or software companies, including but not limited to any Dominion Entity and Sequoia Voting Systems Inc.

**ANSWER:**

**INTERROGATORY NO. 18:**

Identify all public relations firms retained by any Smartmatic Entity from January 1, 2020 to the present.

**ANSWER:**

Dated:  October 24, 2022                              By: /s/ Blaine C. Kimrey

Blaine C. Kimrey, Bar No. IL0091
bkimrey@vedderprice.com
Jeanah Park, Bar No. IL0094
jpark@vedderprice.com
Bryan Clark, Bar No. IL0090
bclark@vedderprice.com
Brian Ledebuhr, Bar No. IL0093
bledebuhr@vedderprice.com
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, IL 60601
T:  +1 312 609 7500
F:  +1 312 609 5005

Brian K. McCalmon, Bar No. 461196
bmccalmon@vedderprice.com
VEDDER PRICE P.C.
1401 New York Avenue, Suite 500
Washington, DC 20005
T:  +1 202 312 3320
F:  +1 202 312 3322

*Counsel for Herring Networks, Inc.*

14

## <u>VERIFICATION</u>

The undersigned hereby declares under penalty of perjury that the foregoing answers to Defendant's First Set of Interrogatories are true and correct.


DATE: _____          _____


15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of October 2022, I served the foregoing document on

the following counsel of record by electronic mail, hand-delivery and overnight delivery:

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949
J. Erik Connolly
Nicole E. Wrigley
Michael E. Bloom
Lee B. Muench
Emily Newhouse Dillingham
Lauren C. Tortorella
Kathleen Watson Moss
James R. Bedell
Julie M. Loftus
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
mbloom@beneschlaw.com
lmuench@beneschlaw.com
edillingham@beneschlaw.com
ltortorella@beneschlaw.com
kwatsonmoss@beneschlaw.com
jbedell@beneschlaw.com
jloftus@beneschlaw.com


/s/ Blaine Kimrey
Blaine Kimrey

VP/#58396773

# EXHIBIT 1-B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SMARTMATIC USA CORP., *et al.*, | |
| Plaintiffs, | No. 1:21-cv-02900-CJN |
| v. | |
| HERRING NETWORKS, INC., d/b/a ONE AMERICA NEWS NETWORK, | Judge Carl J. Nichols |
| Defendant. | |

### DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION TO SGO CORPORATION LIMITED

Defendant Herring Networks, Inc., d/b/a One America News Network, through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 34, hereby requests that plaintiff SGO CORPORATION LIMITED produce the following Documents within thirty (30) days of service hereof.

### DEFINITIONS AND INSTRUCTIONS

1.      "Alleged Defamatory Statements" means the statements in Paragraphs 184, 196, 205, 218, and 227 of the Complaint, as well as any other allegedly defamatory statements otherwise referenced in the Complaint.

2.      The word "and" includes the disjunctive "or," and the word "or" includes the conjunctive "and."  Words in the singular shall be interpreted to include the plural, and words in the plural shall be interpreted to include the singular.  A masculine, feminine or neuter form of a word shall be interpreted to include the other genders.  The use of any tense of any verb shall be interpreted to include all other tenses.

3.      "Articles at Issue" means any articles alleged in the Complaint to contain any of the Alleged Defamatory Statements.

1

4.      "Comelec" means the Philippines' Commission on Elections, as well all commissioners, employees, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of the Comelec.

5.      "Communication" means any written, electronic, or verbal transmission of words or thoughts between or among two or more Persons, including, without limitation, any letter, email, instant or text message, social media post, blog post, web posting, interview, conference, meeting, spoken words, conversation, understanding, agreement, discussion, talks, and reports, whether transmitted orally, in writing, or by any electronic device.

6.      "Complaint" means the original Complaint filed in the above-captioned action by Plaintiffs, as well as any subsequent amendments thereto.

7.      "Defendant" and/or "Herring" means defendant Herring Networks, Inc., d/b/a One America News Network.

8.      "Document" means any writing, graphic matter, or other tangible or digital thing, whether printed, recorded, produced by any process, or written or produced by hand, including, without limitation, agreements, contracts, correspondence, memoranda, letters, reports, Communications (as defined above) and Electronically Stored Information (as defined below), correspondence, telegrams, internal and external memoranda, summaries, records of oral conversations, original or preliminary notes, diaries, calendars, analyses, projections, ledgers, work papers, photographs, tape recordings, applications, video tapes, computer hard drives or disks, statistical statements, logs, graphs, charts, schedules, notebooks, minutes or records of meetings, minutes or records of conferences, lists of Persons attending meetings or conferences, reports and/or summaries of investigations, opinions or reports of investigators, accountants or consultants, studies, appraisals, evaluations, or copies of any of the foregoing if the copy is in any

2

way different from the original now in any Plaintiffs' possession, custody or control, or the possession, custody or control of any Plaintiffs' counsel, investors, agents, employees and/or Persons acting on any Plaintiff's behalf.

9.      "Dominion Entity(ies)" means US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation, as well all parents, subsidiaries, related or affiliated entities, successors and predecessors (including but not limited to Sequoia Voting Systems), officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of the Dominion Entities.

10.      "Dominion Voting Systems Corporation" shall mean Dominion Voting Systems Corporation, as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Dominion Voting Systems Corporation.

11.      "Dominion Voting Systems, Inc.," shall mean Dominion Voting Systems, Inc., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Dominion Voting Systems, Inc.

12.      "Electronically Stored Information" or "ESI" shall mean originals and all copies of email; activity listings of email receipts and/or transmittals; voicemail; audio or video recordings of any kind; facsimiles; computer programs (whether private, commercial, or a work-in-progress); programming notes or instructions; social media posts; text messages; instant messages; metadata; output resulting from the use of any software program, including word processing Documents,

3

spreadsheets, database files, charts, graphs, and outlines; operating systems; source code of all types; and electronic files and/or file fragments of any sort, regardless of the media on which they are stored and regardless of whether the data resides in an active file, deleted file, or file fragment. ESI also includes the file, folder tabs, containers or labels appended to any storage device containing electronic data.  All ESI produced in response hereto should be produced in native format.

13.    "Herring Guests" shall mean and include the guests who appeared on the Programs at Issue or otherwise appeared on OAN, including but not limited to Rudolph Giuliani, Sidney Powell, Michael Lindell, Kyle Becker, Clay Clark, Joseph diGenova, Tom Fitton, Allan dos Santos, Keith Trippie, J. Michael Waller, Mary Fanning, and Michael Flynn.

14.    "Herring Talent" shall mean and include all Herring employees who appeared on the Programs at Issue or otherwise appeared on OAN, including but not limited to Alex Salvi, Elma Aksalic, Kara McKinney, Mike Dinow, Patrick Hussion, Dan Ball, John Hines, Stephanie Hamill, Samantha Lomibao, Emily Finn, and Christina Bobb.

15.    "OAN" shall mean One America News Network.

16.    "Other Media Organizations" shall mean other news, media, and other similar organizations, including but not limited to CNN, CBS, ABC, PBS, *The Wall Street Journal*,  *The New York Times*, MSNBC, *The Washington Post*, Fox News, Newsmax, *Politico*, *Vanity Fair*, Media Matters, *Bloomberg News, The Chicago Tribune, The Los Angeles Times, The Miami Herald*, the *Times of San Diego* and *National Public Radio*.

17.    "Person" shall mean a natural person or any business, company, corporation, association, partnership organization, or other legal entity.

4

18.     "Plaintiff(s)" and/or "Smartmatic Entity(ies)" shall mean plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited, as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of the Smartmatic Entities.

19.     "Programs at Issue" shall mean any broadcast or program on OAN alleged to contain any of the Alleged Defamatory Statements, including but not limited to *After Hours with Alex Salvi*, *OAN Newsroom*, *Tipping Point with Kara McKinney*, *Breaking News Live with Patrick Hussion*, *Real America with Dan Ball*, *In Focus with Stephanie Hamill*, *Weekly Briefing with Christina Bobb*, and the Michael Lindell-produced programs titled *Absolute Proof*, *Scientific Proof*, *Absolute Interference*, and *Absolutely 9-0*.

20.     The terms "relating to," "regarding," "demonstrating," and "supporting" shall mean having any connection, association or concern with, or any relevance, relation, pertinence, or applicability to or any implication bearing on, the subject matter, whether directly or indirectly.

21.     "Retraction Demands" shall mean the retraction demand letters dated December 11, 2020 and October 27, 2021 from Plaintiffs to Herring.

22.     "SGO Corporation Limited" "You" and/or "Your" shall mean plaintiff SGO Corporation Limited, as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of SGO Corporation Limited.

23.     "Smartmatic International Holding B.V.," shall mean plaintiff Smartmatic International Holding B.V., as well all parents, subsidiaries, related and affiliated entities,

5

successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Smartmatic International Holding B.V.

24.     "Smartmatic USA Corp.," shall mean plaintiff Smartmatic USA Corp., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Smartmatic USA Corp.

25.     "Tweets at Issue" shall mean any tweets alleged in the Complaint to contain any of the Alleged Defamatory Statements.

26.     "US Dominion, Inc.," shall mean US Dominion, Inc., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of US Dominion, Inc.

27.     Where a claim of privilege is asserted in responding or objecting to any discovery requested herein and information is not provided on the basis of such assertion, Plaintiffs shall, in their response or objection, identify the nature of the privilege (including work product) which is being claimed.  When any privilege is claimed, Plaintiffs shall, as to the Documents and/or information requested, whether:

(a)     any Documents exist or any Communications took place; and

(b)     provide the following information for each such Document or Communication in a "privilege log" or similar format:

(i)     the type of Document or Communication;

(ii)     the general subject matter of the Document or Communication;

(iii)     the date of the Document or Communication;

6

(iv)    the author(s) of the Document or participants in the Communication;

(v)     the addressee(s) and any other recipient(s) of the Document; and

(vi)    the custodian of the Document, where applicable.

28.    Unless otherwise indicated, the relevant time period for these Requests for Production is from January 1, 2020 to the present.

29.    These Requests for Production are continuing in nature and require supplemental response if Plaintiffs obtain further information between the time of compliance and any hearing or trial in the above-captioned case.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

Documents identified in Your Answers to the First Set of Interrogatories propounded upon You contemporaneously with this First Set of Requests for Production, as well as any and all Documents reviewed or relied upon in answering those Interrogatories.

**RESPONSE:**

**REQUEST NO. 2:**

Documents relating to, referenced in, and/or providing a basis for Your responses to the First Set of Requests for Admission propounded upon You contemporaneously with this First Set of Requests for Production.

**RESPONSE:**

**REQUEST NO. 3:**

All discovery requests and responses of any type (i.e. interrogatories and responses, document requests and responses, requests to admit and responses, deposition transcripts and video, deposition errata sheets, subpoenas and responses, open records act requests and responses, and

7

any other form of discovery request or response) produced by anyone in any litigation between any Smartmatic Entity and any Dominion Entity.

**RESPONSE:**

**REQUEST NO. 4:**

Documents regarding Herring, OAN, and/or the Herring Talent.

**RESPONSE:**

**REQUEST NO. 5:**

Documents regarding the Herring Guests from January 1, 2018 to present.

**RESPONSE:**

**REQUEST NO. 6:**

Communications to, from, and/or between SGO Corporation Limited and any Person, including but not limited to Other Media Organizations and governmental entities and officials, regarding the Herring Talent from January 1, 2018 to present.

**RESPONSE:**

**REQUEST NO. 7:**

Communications to, from, and/or between any Smartmatic Entity and any past or present Herring employees, including but not limited to Martin Golingan.

**RESPONSE:**

**REQUEST NO. 8:**

Documents and Communications regarding the formation of any Smartmatic Entity.

**RESPONSE:**

VP/#58192097

**REQUEST NO. 9:**

Documents and Communications demonstrating any Smartmatic Entity's corporate governance and ownership structure, inclusive of all parent and subsidiary companies, from the formation of any Smartmatic Entity to the present.

**RESPONSE:**

**REQUEST NO. 10:**

All versions of any website of any and all Smartmatic Entities from creation to the present.

**RESPONSE:**

**REQUEST NO. 11:**

The human resources records of Antonio Mugica, Roger Piñate, Alfredo Anzola, Marlon Garcia, Neil Baniqued, and Mauricio Herrera related to their involvement in procuring services for Comelec and/or related to any Philippines election from May 2016 to the present.

**RESPONSE:**

**REQUEST NO. 12:**

Documents and Communications relating to the "strict ethics code" with which any Smartmatic Entity's founders and employees allegedly must comply, as referenced in Paragraph 339 of the Complaint.

**RESPONSE:**

**REQUEST NO. 13:**

Documents and Communications relating to any agreement or contract between SGO Corporation Limited and any state, county, or local governmental entity of the United States, to provide voting machines, elections technology and/or services from 2005 to the present.

**RESPONSE:**

VP/#58192097

**REQUEST NO. 14:**

Documents and Communications relating to any agreements or contracts between any Smartmatic Entity and any foreign governmental entities and/or officials from 2004 to the present to provide voting machines, elections technology and/or services, including but not limited to the "more than 25 countries on five continents" in which Smartmatic Entities have conducted business, as alleged in Paragraph 24 of the Complaint.

**RESPONSE:**

**REQUEST NO. 15:**

Documents and Communications demonstrating or related to the location of all voting machines, hardware, servers, and/or software that are or have been affiliated with, developed, facilitated or funded by the Smartmatic Entities from 2005 to the present.

**RESPONSE:**

**REQUEST NO. 16:**

Manuals and policies for voting machines, equipment, hardware, software, and/or servers used during 2020 elections in the United States, whether owned, rented, or licensed by the Smartmatic Entities.

**RESPONSE:**

**REQUEST NO. 17:**

Documents and Communications that support Your contention that all Smartmatic Entity "case studies demonstrate, time and time again, that Smartmatic's election technology and software can ensure quick and accurate voting results," as alleged in Paragraph 45 of the Complaint.

**RESPONSE:**

VP/#58192097

**REQUEST NO. 18:**

Documents and Communications relating to any agreements between any Smartmatic Entity and any third party regarding inspections, maintenance, updates to software and/or hardware, imaging of drives, servers and/or data uploads or downloads related to any Smartmatic Entity's voting machines or software and related storage servers or devices used in elections in the United States or elsewhere, including but not limited to the 2020 election in the United States, as well as elections in Venezuela, the Philippines, and Kenya from 2005 to the present.

**RESPONSE:**

**REQUEST NO. 19:**

Documents and Communications relating to any Smartmatic Entity's involvement in the U.S. 2020 local, state, and federal elections, including but not limited to the audit trails referenced in Paragraph 233 of the Complaint.

**RESPONSE:**

**REQUEST NO. 20:**

Documents and Communications relating to the VSAP 2.1 system, including but not limited to the certification of the same by California and the U.S. Election Assistance Commission, as referenced in Paragraphs 324 and 364 of the Complaint.

**RESPONSE:**

**REQUEST NO. 21:**

Documents from governmental entities and officials, whether in the United States or elsewhere, and including but not limited to the U.S. Election Assistance Commission, the Cybersecurity and Infrastructure Security Agency, the Department of Defense, the Department of Justice, the United States Department of Treasury's Committee on Foreign Investment in the United States, and the

VP/#58192097

Department of Homeland Security from 2006 to the present, regarding any Smartmatic Entity and/or its voting machines, equipment, hardware, software, and/or servers.

**RESPONSE:**

**REQUEST NO. 22:**

Communications to, from, or with governmental entities and officials, whether in the United States or elsewhere, and including but not limited to the U.S. Election Assistance Commission, the Cybersecurity and Infrastructure Security Agency, the Department of Defense, the Department of Justice, the United States Department of Treasury's Committee on Foreign Investment in the United States, and the Department of Homeland Security from 2006 to the present, regarding any Smartmatic Entity and/or its voting machines, equipment, hardware, software, and/or servers.

**RESPONSE:**

**REQUEST NO. 23:**

Documents and Communications from 2006 to the present related to U.S. Representative Carolyn Maloney's 2006 letters to the Secretary of the Treasury and any investigations conducted by the United States Department of Treasury's Committee on Foreign Investment in the United States ("CFIUS") of any Smartmatic Entity including, but not limited to, any sale or security agreements entered into by any Smartmatic Entity with any governmental agencies and any documents relating to any Smartmatic Entity's withdrawal from the CFIUS's investigation.

**RESPONSE:**

**REQUEST NO. 24:**

Documents and Communications relating to the certification, authentication, or validation, or lack thereof, of any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers by national, state, county, or local governmental agencies in the United States or elsewhere,

including but not limited to the State of California, the U.S. Election Assistance Commission, the United Nations, and the European Union.

**RESPONSE:**

**REQUEST NO. 25:**

Documents and Communications relating to the certification, authentication, or validation, or lack thereof, of any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers by national, state, county, or local governmental agencies by private Persons, including but not limited to PriceWaterhouseCoopers LLP, SLI Global Solutions, SLI Compliance, and the Carter Center.

**RESPONSE:**

**REQUEST NO. 26:**

Documents and Communications regarding issues or concerns raised about any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers, including but not limited to issues or concerns about a potential election security breach, vulnerabilities, or vote tabulation errors, from the formation of all Smartmatic Entities to the present, including but not limited to those Documents and Communications concerning elections in Venezuela, the Philippines, and Kenya.

**RESPONSE:**

**REQUEST NO. 27:**

Documents and Communications regarding issues or concerns raised about any Smartmatic Entity's alleged corrupt business practices, including but not limited to issues or concerns raised by the United States Department of Justice related to the 2004 Venezuelan election and any alleged violation of the Foreign Corrupt Practices Act in connection with the 2016 Philippines election.

13

**RESPONSE:**

**REQUEST NO. 28:**

Documents and Communications compiled and/or submitted to the United States Department of Justice in connection with its investigation of alleged violation of the Foreign Corrupt Practices Act by any Smartmatic Entity in connection with the 2004 Venezuelan election and the 2016 Philippines election.

**RESPONSE:**

**REQUEST NO. 29:**

Documents and Communications regarding the Comelec's consideration of whether it will purchase or lease new equipment or software from any Smartmatic Entity for the upcoming 2025 midterm elections because of concerns that the equipment or software will malfunction and/or are insecure.

**RESPONSE:**

**REQUEST NO. 30:**

Documents and Communications regarding any Smartmatic Entity involved in the investigation related to the August 9, 2022 elections in Kenya, including but not limited to requests from the Kenyan Supreme Court for access to the Independent Electoral and Boundaries Commission's servers, and any Smartmatic Entity's response to the request.

**RESPONSE:**

**REQUEST NO. 31:**

Documents and Communications relating to the business relationship between any Smartmatic Entity and any Dominion Entity, including but not limited to oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation

agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement entered into by, between, or among any Smartmatic Entity and any Dominion Entity.

**RESPONSE:**

**REQUEST NO. 32:**

Documents and Communications between any Smartmatic Entity and any Dominion Entity relating to, arising out of, or in any way relevant to the Alleged Defamatory Statements.

**RESPONSE:**

**REQUEST NO. 33:**

Documents and Communications relating to the business relationship between any Smartmatic Entity and Sequoia Voting Systems, Inc., (or any other Sequoia entity), including but not limited to oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement.

**RESPONSE:**

**REQUEST NO. 34:**

Documents and Communications relating to the business relationship between any Smartmatic Entity and Premier Election Solutions, formerly known as Diebold Election Systems, Inc., including but not limited to oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement.

**RESPONSE:**

15

**REQUEST NO. 35:**

Documents and Communications relating to any Smartmatic Entity's participation in the Chicago, Illinois March 2006 primary election, including but not limited to a Smartmatic Entity's letter in response to Chicago Alderman Ed Burke's hearing regarding the election.

**RESPONSE:**

**REQUEST NO. 36:**

Documents and Communications relating to any Smartmatic Entity's potential contract with Allegheny County, Pennsylvania from 2004 to the present including, but not limited to, any reasons why Allegheny County, Pennsylvania did not award any contract for election services to the Smartmatic Entity.

**RESPONSE:**

**REQUEST NO. 37:**

Documents and Communications regarding any Smartmatic Entity's operations, from that Smartmatic Entity's inception to the present, in Venezuela, including but not limited to participation in Venezuelan elections, as well as oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement with Bizta Corp. and CANTV.

**RESPONSE:**

**REQUEST NO. 38:**

Documents and Communications regarding the currently pending international arbitration between SGO Corporation Limited and the Bolivarian Republic of Venezuela (ICSID Case No. ARB(AF)/22/2), with John Henry Rooney (U.S.) appointed as the arbitrator.

VP/#58192097

**RESPONSE:**

**REQUEST NO. 39:**

Documents and Communications relating to Lord Mark Malloch-Brown and any Smartmatic Entity, including but not limited to Documents and Communications relating to his June 21, 2015 interview regarding Smartmatic, as referenced in Paragraph 343 of the Complaint.

**RESPONSE:**

**REQUEST NO. 40:**

Documents and Communications relating to any investigation of any Smartmatic Entity by the United States Department of Justice, including but not limited to a Smartmatic Entity 2004 election contract in Venezuela that led to Mr. Chávez's victory.

**RESPONSE:**

**REQUEST NO. 41:**

Documents and Communications relating to any investigation of any Smartmatic Entity by the Committee on Foreign Investment in the United States from 2005 to the present, including but not limited to any investigation related to investments by the Venezuelan government in one or more Smartmatic Entity and the acquisition of Sequoia Voting Systems, Inc. by any Smartmatic Entity.

**RESPONSE:**

**REQUEST NO. 42:**

Documents and Communications that support Your contention that the Alleged Defamatory Statements are not substantially true, are not accurate, are misleading, and/or are defamatory.

**RESPONSE:**

VP/#58192097

**REQUEST NO. 43:**

Documents and Communications that support Your contention that Herring acted with actual malice.

**RESPONSE:**

**REQUEST NO. 44:**

Documents and Communications related to any breach of any Smartmatic Entity's voting software or hardware from the formation of any such Smartmatic Entity to the present.

**RESPONSE:**

**REQUEST NO. 45:**

Documents and Communications that support Your contention that OAN's alleged "defamatory statements were a proximate and substantial cause of Smartmatic's name and brand becoming synonymous with election fraud with members of the general public and government officials, particularly those in the United States," as alleged in Paragraph 427 of the Complaint.

**RESPONSE:**

**REQUEST NO. 46:**

Documents and Communications that support Your contention that "[p]rior to the 2020 U.S. election, Smartmatic was a known and trusted name among individuals responsible for selecting election technology and systems in voting jurisdictions in the United States and across the world," as alleged in Paragraph 428 of the Complaint.

**RESPONSE:**

**REQUEST NO. 47:**

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial cause" of Plaintiffs' alleged $400,000 out-of-pocket

18

expenses spent on public relations and crisis management, as well as proof of said expenses, as alleged in Paragraphs 432-433 of the Complaint.

**RESPONSE:**

**REQUEST NO. 48:**

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial cause" of Plaintiffs' alleged $100,000 out-of-pocket expenses spent on cybersecurity, as well as proof of said expenses, as alleged in Paragraphs 432-433 of the Complaint.

**RESPONSE:**

**REQUEST NO. 49:**

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial cause" of Plaintiffs' alleged $700,000 out-of-pocket expenses spent on retention and recruitment for personnel, as well as proof of said expenses, as alleged in Paragraphs 432-433 of the Complaint.

**RESPONSE:**

**REQUEST NO. 50:**

Documents and Communications that support Your contention that, as a result of Herring and the Alleged Defamatory Statements, Plaintiffs "will spend millions more in the coming years" in out-of-pocket expenses, as alleged in Paragraphs 432-433 of the Complaint.

**RESPONSE:**

**REQUEST NO. 51:**

Documents and Communication that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial cause" of Plaintiffs' diminished business value and

prospects, as well as proof of said loss in business value and prospects, as alleged in Paragraphs 435 and 438 of the Complaint

**RESPONSE:**

**REQUEST NO. 52:**

Documents and Communications that support Your contention that the Smartmatic Entities were valued at $3 billion going into the 2020 Presidential Election, as alleged in Paragraph 438 of the Complaint.

**RESPONSE:**

**REQUEST NO. 53:**

Documents and Communications that support Your contention that, as a result of Herring and the Alleged Defamatory Statements, the Smartmatic Entities now valued at less than $1 billion, as alleged in Paragraph 438 of the Complaint.

**RESPONSE:**

**REQUEST NO. 54:**

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial factor in causing Smartmatic to suffer irreparable harm to its reputation," as well as proof of such harm and loss, as alleged in Paragraph 452 of the Complaint.

**RESPONSE:**

**REQUEST NO. 55:**

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements "exposed Smartmatic to public hate, contempt, ridicule, and disgrace, and

VP/#58192097

created the appearance that Smartmatic is odious and infamous," as alleged in Paragraph 446 of the Complaint.

**RESPONSE:**

**REQUEST NO. 56:**

All Documents and Communications relating to Your contention that You were injured by the Alleged Defamatory Statements.

**RESPONSE:**

**REQUEST NO. 57:**

Documents and Communications that support Your request for no less than $2.7 billion in actual, consequential, and special damages in the above-captioned case, as well as Documents and Communications that demonstrate the actions any Smartmatic Entity  has undertaken to mitigate its alleged damages.

**RESPONSE:**

**REQUEST NO. 58:**

Documents sufficient to show the date and amount of monetary damages You have sought for any claim of reputational harm that You have made over the past five years (including claims associated with any other defamation lawsuits You have filed).

**RESPONSE:**

**REQUEST NO. 59:**

Documents and Communications that support Your request for punitive damages.

**RESPONSE:**

VP/#58192097

**REQUEST NO. 60:**

Documents relating to the amount of attorneys' fees and costs Plaintiffs have accrued to date, regardless of whether they have actually been billed or paid.

**RESPONSE:**

**REQUEST NO. 61:**

Communications that any Smartmatic Entity has had with Other Media Organizations regarding any statement or publication alleged to be defamatory of any Smartmatic Entity from the formation of any Smartmatic Entity to the present, as well as (1) the identity of the Persons involved in the Communication(s); (2) the date of Communication(s); and (3) the substance of the Communication(s).

**RESPONSE:**

**REQUEST NO. 62:**

Documents and Communications that demonstrate negative or critical thoughts, feedback, and/or concern any Smartmatic Entity or any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers, from the formation of any Smartmatic Entity to the present.

**RESPONSE:**

**REQUEST NO. 63:**

Documents sufficient to identify all sources of funding You are using to pay costs, expenses, or fees for this case, including each entity or individual providing funds, contingency services, pro bono services, or litigation financing and the related oral or written agreements.

**RESPONSE:**

VP/#58192097

**REQUEST NO. 64:**

All Smartmatic Entity financial statements, including balance sheets, income statements, cash flow statements, statements of shareholders' equity, Special Purpose Acquisition Company statements, other private equity valuations, and any form of other valuation from that Smartmatic Entity's inception to the present.

**RESPONSE:**

**REQUEST NO. 65:**

All U.S. and other tax returns for any Smartmatic Entity, including but not limited to U.S. federal tax returns and state tax returns, from any Smartmatic Entity's inception to the present.

**RESPONSE:**

**REQUEST NO. 66:**

Documents and Communication demonstrating any Smartmatic Entity's projected finances, gross revenue, and net revenue from the beginning of 2020 through 2025.

**RESPONSE:**

**REQUEST NO. 67:**

Documents and Communications related to the Complaint or which form, in whole or in part, a basis for the Complaint.

**RESPONSE:**

**REQUEST NO. 68:**

All Documents and Communications, including all intra-office Communications (whether by email, text message, instant message, Slack, or other similar instant messaging software, memoranda, etc.), between or among any Smartmatic Entity and any Person or entity not a party to the above-captioned case, relating to Herring, OAN, the Herring Talent, the Herring Guests, the

VP/#58192097

Retraction Demands, the Complaint, the above-captioned case, and/or the subject matter of the above-captioned case, including but not limited to, William Kennard (Chairman, Board of Directors of AT&T Inc., and Board member of Staple Street Capital), John Stankey (Chief Executive Officer, AT&T Inc.), Bill Morrow (Chief Executive Officer, DirecTV, LLC), Rob Thun (Senior Vice President, Content, DirecTV), AT&T Inc. (including any member of its Board of Directors from 2020 to the present), AT&T Services, Inc., DirecTV, LLC (including any member of its Board of Directors from 2020 to the present), Verizon Fios, Staple Street Capital, Hootan Yaghoobzadeh (Managing Director/Co-Founder, Staple Street Capital), Kay Stimson (Chair, U.S. Department of Homeland Security's Election Infrastructure Sector Coordinating Council), Hamilton Place Strategies, Tony Fratto (Founder, Hamilton Place Strategies) and/or the NAACP.

**RESPONSE:**

**REQUEST NO. 69:**

Documents and Communications that SGO Corporation Limited intends to offer in evidence at trial or any hearing in the above-captioned case or to use to question witnesses at any deposition, trial, or hearing in the above-captioned case.

**RESPONSE:**

**REQUEST NO. 70:**

All Documents received by You or Your attorney from any third party, whether in response to a subpoena duces tecum, open records act request or otherwise, that relate to the Alleged Defamatory Statements or to the allegations in the Complaint.

**RESPONSE:**

**REQUEST NO. 71:**

All discovery and hearing information (i.e. written discovery requests, written discovery responses, subpoenas, subpoena responses, open records act requests, open records act responses, deposition notices, deposition transcripts, deposition videos, hearing transcripts, and similar material) related to, arising out of, or produced in the lawsuits filed any Smartmatic Entity relating to the U.S. 2020 local, state, and federal elections, including but not limited to *Smartmatic USA Corp., et al. v. Fox News Network, LLC, et al.*, Index No. 151136-2021 (New York County, New York); *Smartmatic USA Corp. and SGO Corporation Unlimited v. Newsmax Media, Inc.*, Case No. N21C-11-028 EMD (Del. Super. Ct.); *Smartmatic USA Corp., et al. v. Sidney Powell*, Case No. 21-cv-02995 (D.D.C.); *Smartmatic USA Corp., et al. v. Lindell, et al.*, Case No. 22-cv-00098 (D. Minn.).

**RESPONSE:**

**REQUEST NO. 72:**

All Documents and Communications concerning complaints or concerns about statements made regarding any Smartmatic Entities related to the U.S. 2020 local, state, and federal elections, including but not limited to retraction requests, responses to retraction requests, and any related correspondence sent by any Smartmatic Entity to any third party.

**RESPONSE:**

**REQUEST NO. 73:**

Documents sufficient to show the method and reliability of auditing for any Smartmatic Entity's voting machines and technology deployed to count ballots in the U.S. 2020 local, state, and federal elections.

**RESPONSE:**

VP/#58192097

**REQUEST NO. 74:**

All Documents and Communications, including marketing materials, pitch packets and promotional materials reflecting any Smartmatic Entity's efforts (or those made on any Smartmatic Entity's behalf) to solicit contracts globally from that Smartmatic Entity's inception to the present.

**RESPONSE:**

**REQUEST NO. 75:**

All Documents and Communications concerning any contracts that you allege any Smartmatic Entity lost or did not obtain as a result of the Alleged Defamatory Statements.

**RESPONSE:**

**REQUEST NO. 76:**

Portions of personnel files of all employees and personnel of Smartmatic Entities who have worked on any Smartmatic Entity's voting equipment or software utilized or employed in the U.S. 2020 local, state, and federal elections that refer to or address any disciplinary actions, errors, problems or concerns relating to: (1) software coding; (2) design or maintenance of any Smartmatic Entity's machines; (3) political affiliations or actions; or (4) public commentary on the 2020 Presidential Election.

**RESPONSE:**

**REQUEST NO. 77:**

All Documents and Communications with Fox News Network, LLC and/or Fox Corp. concerning or in any way relating to the U.S. 2020 local, state, and federal elections or coverage of the election.

**RESPONSE:**

26

**REQUEST NO. 78:**

All Documents and Communications with Newsmax Media, Inc. concerning or in any way relating to the U.S. 2020 local, state, and federal elections or Newsmax Media, Inc.'s coverage of the elections.

**RESPONSE:**

**REQUEST NO. 79:**

All Documents and Communications concerning any vendors or other contractors or affiliates based outside the United States that manufacture, produce, license, or are otherwise involved with any hardware, software, or other components used in any Smartmatic Entity's voting equipment, systems, machines and/or software from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 80:**

Communications with and Documents related to social media platforms, including but not limited to Facebook, Twitter, Instagram, and YouTube concerning the removal of any posts, videos, or other content referencing any Smartmatic Entity in connection with U.S. elections from 2004 to the present, as well as elections in the Philippines, Venezuela, and Kenya from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 81:**

Documents and Communications concerning the relationship between any Smartmatic Entity and any Dominion Entity, including but not limited to oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement. There is no time limit on this Request.

27

**RESPONSE:**

**REQUEST NO. 82:**

Documents and Communications concerning any Smartmatic Entity's efforts to secure a contract with the County of Los Angeles, State of California to provide voting equipment and/or software for the U.S. 2020 local, state, and federal elections.

**RESPONSE:**

**REQUEST NO. 83:**

Documents and Communications relating to the method, manner, procedure, or formulation by which You calculate Your economic damages.

**RESPONSE:**

**REQUEST NO. 84:**

Documents and Communications with any insurance carrier regarding the alleged harm and/or damages for which You seek recovery in this litigation.

**RESPONSE:**

**REQUEST NO. 85:**

All financial audits and documents and correspondence from accounting professionals concerning any Smartmatic Entity from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 86:**

All meeting minutes and other documents concerning meetings of any Smartmatic Entity Board of Directors.

**RESPONSE:**

28

**REQUEST NO. 87:**

All insurance policies or other related documents that in any way relate to the damages You seek or counterclaims you may face in this Action, including but not limited to claims and documents relating to such claims.

**RESPONSE:**

**REQUEST NO. 88:**

All of any Smartmatic Entity's general ledgers for the past five (5) years.

**RESPONSE:**

**REQUEST NO. 89:**

Documents and Communications concerning any Smartmatic Entity's current business plan, as well as any from the past five (5) years.

**RESPONSE:**

**REQUEST NO. 90:**

All documents concerning projections of any Smartmatic Entity's future business plans, including but not limited to prospective contracts and clients.

**RESPONSE:**

**REQUEST NO. 91:**

Documents and Communications concerning Konnech Corporation from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 92:**

Documents and Communications reflecting any Smartmatic Entity's relationship with Konnech Corporation, including but not limited to agreements or contracts between any Smartmatic Entity and Konnech Corporation in relation to the U.S. 2020 local, state, and federal elections.

VP/#58192097

**RESPONSE:**

**REQUEST NO. 93:**

Documents and Communications concerning complaints, concerns, or investigations about the use of Konnech Corporation's software and/or PollChief election management system.

**RESPONSE:**

**REQUEST NO. 94:**

Documents and Communications concerning any goods provided or services performed by any Smartmatic Entity in connection with the United States Department of Defense from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 95:**

Documents and Communications concerning any goods provided or services performed by any Smartmatic Entity in connection with the Federal Voting Assistance Program from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 96:**

Communications between any Smartmatic Entity and Dr. J. Alex Halderman concerning or in any way related to any Smartmatic Entities' or Dominion Entities' voting machines, equipment, hardware, software, and/or servers from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 97:**

Documents and communications related to the October 19, 2022 Elon University Webinar titled

30

<u>Engendering Trust in Election Outcomes</u>, including, but not limited to, all communications with Dr. J Alex Halderman and/or anyone affiliated with coordinating or organizing the webinar itself.

**RESPONSE:**

**REQUEST NO. 98:**

Documents sufficient to show Your financial condition, including but not limited to profits, margins and revenue from January 2016 to the present.

**RESPONSE:**

**REQUEST NO. 99:**

Documents and Communications, including any written common interest agreements, between or among: (i) any Smartmatic Entity, including its attorneys, including but not limited to Benesch, Friedlander, Coplan & Aronoff LLP and Robins Kaplan LLP; and (ii) any Dominion Entity, Eric Coomer, Ruby Freeman and/or Shaye Moss, or any of their respective attorneys or others, including but not limited to Susman Godfrey LLP, Clare Locke LLP, Brownstein Hyatt Farber Schreck LLP, Rodney Smolla (President, Vermont Law School), Snell & Wilmer L.L.P., Farnan LLP, Cain & Skarnulis PLLC, Recht Kornfeld PC, Dowd Bennett LLP, United To Protect Democracy, Inc., DuBose Miller, Ballard Spahr LLP, Kurt G. Kastorf Law Firm, Michael Linhorst, Willkie Farr & Gallagher, LLP, Ballard Spahr, David A. Schulz (Floyd Abrams Lecturer in Law and Senior Research Scholar in Law, Yale Law School), the Yale Law School Media and Information Access Clinic, Floyd Abrams (Senior Counsel, Cahill Gordon & Reindel LLP), the Yale Law School Abrams Institute for Freedom of Expression at the Information Society Project, Lee Levine, the Media Law Resource Center, and/or George Freeman (Executive Director, Media Law Resource Center).

**RESPONSE:**

**REQUEST NO. 100:**

Documents and Communications concerning any analysis performed in connection with security and/or vulnerability assessments for voting machines and software, including but not limited to any such analysis performed by MITRE, the National Election Security Laboratory, Professor J. Alex Halderman, Harri Hursti or any state or federal agency, including but not limited to the Cybersecurity and Infrastructure Security Agency.

**RESPONSE:**

**REQUEST NO. 101:**

Documents and Communications related to work by any public relations professional on behalf of any Smartmatic Entity from that Smartmatic Entity's inception to the present.

**RESPONSE:**

**REQUEST NO. 102:**

Documents and Communications related to any Smartmatic Entity's efforts to distinguish its voting hardware and software technology from any Smartmatic Entity competitor's voting hardware and software technology, including but not limited to any Dominion Entity's voting hardware and software techology, from that Smartmatic Entity's inception to the present.

**RESPONSE:**

Dated:  October 24, 2022                     By: /s/ Blaine C. Kimrey

Blaine C. Kimrey, Bar No. IL0091
bkimrey@vedderprice.com
Jeanah Park, Bar No. IL0094
jpark@vedderprice.com
Bryan Clark, Bar No. IL0090
bclark@vedderprice.com
Brian Ledebuhr, Bar No. IL0093
bledebuhr@vedderprice.com
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, IL 60601
T:  +1 312 609 7500
F:  +1 312 609 5005

Brian K. McCalmon, Bar No. 461196
bmccalmon@vedderprice.com
VEDDER PRICE P.C.
1401 New York Avenue, Suite 500
Washington, DC 20005
T:  +1 202 312 3320
F:  +1 202 312 3322

*Counsel for Herring Networks, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of October 2022, I served the foregoing document on

the following counsel of record by electronic mail, hand-delivery and overnight delivery:

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949
J. Erik Connolly
Nicole E. Wrigley
Michael E. Bloom
Lee B. Muench
Emily Newhouse Dillingham
Lauren C. Tortorella
Kathleen Watson Moss
James R. Bedell
Julie M. Loftus
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
mbloom@beneschlaw.com
lmuench@beneschlaw.com
edillingham@beneschlaw.com
ltortorella@beneschlaw.com
kwatsonmoss@beneschlaw.com
jbedell@beneschlaw.com
jloftus@beneschlaw.com


/s/ Blaine Kimrey
Blaine Kimrey

VP/#58192097

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SMARTMATIC USA CORP., *et al.*, | |
| Plaintiffs, | No. 1:21-cv-02900-CJN |
| v. | |
| HERRING NETWORKS, INC., d/b/a ONE AMERICA NEWS NETWORK, | Judge Carl J. Nichols |
| Defendant. | |

## DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION TO SMARTMATIC INTERNATIONAL HOLDING B.V.

Defendant Herring Networks, Inc., d/b/a One America News Network, through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 34, hereby requests that plaintiff Smartmatic International Holding B.V. produce the following Documents within thirty (30) days of service hereof.

## DEFINITIONS AND INSTRUCTIONS

1.     "Alleged Defamatory Statements" means the statements in Paragraphs 184, 196, 205, 218, and 227 of the Complaint, as well as any other allegedly defamatory statements otherwise referenced in the Complaint.

2.     The word "and" includes the disjunctive "or," and the word "or" includes the conjunctive "and."  Words in the singular shall be interpreted to include the plural, and words in the plural shall be interpreted to include the singular.  A masculine, feminine or neuter form of a word shall be interpreted to include the other genders.  The use of any tense of any verb shall be interpreted to include all other tenses.

3.     "Articles at Issue" means any articles alleged in the Complaint to contain any of the Alleged Defamatory Statements.

1

4.      "Comelec" means the Philippines' Commission on Elections, as well all commissioners, employees, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of the Comelec.

5.      "Communication" means any written, electronic, or verbal transmission of words or thoughts between or among two or more Persons, including, without limitation, any letter, email, instant or text message, social media post, blog post, web posting, interview, conference, meeting, spoken words, conversation, understanding, agreement, discussion, talks, and reports, whether transmitted orally, in writing, or by any electronic device.

6.      "Complaint" means the original Complaint filed in the above-captioned action by Plaintiffs, as well as any subsequent amendments thereto.

7.      "Defendant" and/or "Herring" means defendant Herring Networks, Inc., d/b/a One America News Network.

8.      "Document" means any writing, graphic matter, or other tangible or digital thing, whether printed, recorded, produced by any process, or written or produced by hand, including, without limitation, agreements, contracts, correspondence, memoranda, letters, reports, Communications (as defined above) and Electronically Stored Information (as defined below), correspondence, telegrams, internal and external memoranda, summaries, records of oral conversations, original or preliminary notes, diaries, calendars, analyses, projections, ledgers, work papers, photographs, tape recordings, applications, video tapes, computer hard drives or disks, statistical statements, logs, graphs, charts, schedules, notebooks, minutes or records of meetings, minutes or records of conferences, lists of Persons attending meetings or conferences, reports and/or summaries of investigations, opinions or reports of investigators, accountants or consultants, studies, appraisals, evaluations, or copies of any of the foregoing if the copy is in any

2

way different from the original now in any Plaintiffs' possession, custody or control, or the possession, custody or control of any Plaintiffs' counsel, investors, agents, employees and/or Persons acting on any Plaintiff's behalf.

9.      "Dominion Entity(ies)" means US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation, as well all parents, subsidiaries, related or affiliated entities, successors and predecessors (including but not limited to Sequoia Voting Systems), officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of the Dominion Entities.

10.      "Dominion Voting Systems Corporation" shall mean Dominion Voting Systems Corporation, as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Dominion Voting Systems Corporation.

11.      "Dominion Voting Systems, Inc.," shall mean Dominion Voting Systems, Inc., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Dominion Voting Systems, Inc.

12.      "Electronically Stored Information" or "ESI" shall mean originals and all copies of email; activity listings of email receipts and/or transmittals; voicemail; audio or video recordings of any kind; facsimiles; computer programs (whether private, commercial, or a work-in-progress); programming notes or instructions; social media posts; text messages; instant messages; metadata; output resulting from the use of any software program, including word processing Documents,

3

spreadsheets, database files, charts, graphs, and outlines; operating systems; source code of all types; and electronic files and/or file fragments of any sort, regardless of the media on which they are stored and regardless of whether the data resides in an active file, deleted file, or file fragment. ESI also includes the file, folder tabs, containers or labels appended to any storage device containing electronic data.  All ESI produced in response hereto should be produced in native format.

13.     "Herring Guests" shall mean and include the guests who appeared on the Programs at Issue or otherwise appeared on OAN, including but not limited to Rudolph Giuliani, Sidney Powell, Michael Lindell, Kyle Becker, Clay Clark, Joseph diGenova, Tom Fitton, Allan dos Santos, Keith Trippie, J. Michael Waller, Mary Fanning, and Michael Flynn.

14.     "Herring Talent" shall mean and include all Herring employees who appeared on the Programs at Issue or otherwise appeared on OAN, including but not limited to Alex Salvi, Elma Aksalic, Kara McKinney, Mike Dinow, Patrick Hussion, Dan Ball, John Hines, Stephanie Hamill, Samantha Lomibao, Emily Finn, and Christina Bobb.

15.     "OAN" shall mean One America News Network.

16.     "Other Media Organizations" shall mean other news, media, and other similar organizations, including but not limited to CNN, CBS, ABC, PBS, *The Wall Street Journal*,  *The New York Times*, MSNBC, *The Washington Post*, Fox News, Newsmax, *Politico*, *Vanity Fair*, Media Matters, *Bloomberg News, The Chicago Tribune, The Los Angeles Times, The Miami Herald*, the *Times of San Diego* and *National Public Radio*.

17.     "Person" shall mean a natural person or any business, company, corporation, association, partnership organization, or other legal entity.

18.     "Plaintiff(s)" and/or "Smartmatic Entity(ies)" shall mean plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited, as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of the Smartmatic Entities.

19.     "Programs at Issue" shall mean any broadcast or program on OAN alleged to contain any of the Alleged Defamatory Statements, including but not limited to *After Hours with Alex Salvi*, *OAN Newsroom*, *Tipping Point with Kara McKinney*, *Breaking News Live with Patrick Hussion*, *Real America with Dan Ball*, *In Focus with Stephanie Hamill*, *Weekly Briefing with Christina Bobb*, and the Michael Lindell-produced programs titled *Absolute Proof*, *Scientific Proof*, *Absolute Interference*, and *Absolutely 9-0*.

20.     The terms "relating to," "regarding," "demonstrating," and "supporting" shall mean having any connection, association or concern with, or any relevance, relation, pertinence, or applicability to or any implication bearing on, the subject matter, whether directly or indirectly.

21.     "Retraction Demands" shall mean the retraction demand letters dated December 11, 2020 and October 27, 2021 from Plaintiffs to Herring.

22.     "SGO Corporation Limited" shall mean plaintiff SGO Corporation Limited, as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of SGO Corporation Limited.

23.     "Smartmatic International Holding B.V.," "You" and/or "Your" shall mean plaintiff Smartmatic International Holding B.V., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals,

5

employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Smartmatic International Holding B.V.

24.    "Smartmatic USA Corp.," shall mean plaintiff Smartmatic USA Corp., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Smartmatic USA Corp.

25.    "Tweets at Issue" shall mean any tweets alleged in the Complaint to contain any of the Alleged Defamatory Statements.

26.    "US Dominion, Inc.," shall mean US Dominion, Inc., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of US Dominion, Inc.

27.    Where a claim of privilege is asserted in responding or objecting to any discovery requested herein and information is not provided on the basis of such assertion, Plaintiffs shall, in their response or objection, identify the nature of the privilege (including work product) which is being claimed.   When any privilege is claimed, Plaintiffs shall, as to the Documents and/or information requested, whether:

     (a)    any Documents exist or any Communications took place; and

     (b)    provide the following information for each such Document or
            Communication in a "privilege log" or similar format:

            (i)     the type of Document or Communication;

            (ii)    the general subject matter of the Document or Communication;

            (iii)   the date of the Document or Communication;

            (iv)    the author(s) of the Document or participants in the Communication;

(v)   the addressee(s) and any other recipient(s) of the Document; and

(vi)   the custodian of the Document, where applicable.

28.   Unless otherwise indicated, the relevant time period for these Requests for Production is from January 1, 2020 to the present.

29.   These Requests for Production are continuing in nature and require supplemental response if Plaintiffs obtain further information between the time of compliance and any hearing or trial in the above-captioned case.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:**

Documents identified in Your Answers to the First Set of Interrogatories propounded upon You contemporaneously with this First Set of Requests for Production, as well as any and all Documents reviewed or relied upon in answering those Interrogatories.

**RESPONSE:**

**REQUEST NO. 2:**

Documents relating to, referenced in, and/or providing a basis for Your responses to the First Set of Requests for Admission propounded upon You contemporaneously with this First Set of Requests for Production.

**RESPONSE:**

**REQUEST NO. 3:**

All discovery requests and responses of any type (i.e. interrogatories and responses, document requests and responses, requests to admit and responses, deposition transcripts and video, deposition errata sheets, subpoenas and responses, open records act requests and responses, and

any other form of discovery request or response) produced by anyone in any litigation between any Smartmatic Entity and any Dominion Entity.

**RESPONSE:**

**REQUEST NO. 4:**

Documents regarding Herring, OAN, and/or the Herring Talent.

**RESPONSE:**

**REQUEST NO. 5:**

Documents regarding the Herring Guests from January 1, 2018 to present.

**RESPONSE:**

**REQUEST NO. 6:**

Communications to, from, and/or between Smartmatic International Holding B.V. and any Person, including but not limited to Other Media Organizations and governmental entities and officials, regarding the Herring Talent from January 1, 2018 to present.

**RESPONSE:**

**REQUEST NO. 7:**

Communications to, from, and/or between any Smartmatic Entity and any past or present Herring employees, including but not limited to Martin Golingan.

**RESPONSE:**

**REQUEST NO. 8:**

Documents and Communications regarding the formation of any Smartmatic Entity.

**RESPONSE:**

VP/#58189693

**REQUEST NO. 9:**

Documents and Communications demonstrating any Smartmatic Entity's corporate governance and ownership structure, inclusive of all parent and subsidiary companies, from the formation of any Smartmatic Entity to the present.

**RESPONSE:**

**REQUEST NO. 10:**

All versions of any website of any and all Smartmatic Entities from creation to the present.

**RESPONSE:**

**REQUEST NO. 11:**

The human resources records of Antonio Mugica, Roger Piñate, Alfredo Anzola, Marlon Garcia, Neil Baniqued, and Mauricio Herrera related to their involvement in procuring services for Comelec and/or related to any Philippines election from May 2016 to the present.

**RESPONSE:**

**REQUEST NO. 12:**

Documents and Communications relating to the "strict ethics code" with which any Smartmatic Entity's founders and employees allegedly must comply, as referenced in Paragraph 339 of the Complaint.

**RESPONSE:**

**REQUEST NO. 13:**

Documents and Communications relating to any agreement or contract between Smartmatic International Holding B.V. and any state, county, or local governmental entity of the United States, to provide voting machines, elections technology and/or services from 2005 to the present.

**RESPONSE:**

9

**REQUEST NO. 14:**

Documents and Communications relating to any agreements or contracts between any Smartmatic Entity and any foreign governmental entities and/or officials from 2004 to the present to provide voting machines, elections technology and/or services, including but not limited to the "more than 25 countries on five continents" in which Smartmatic Entities have conducted business, as alleged in Paragraph 24 of the Complaint.

**RESPONSE:**

**REQUEST NO. 15:**

Documents and Communications demonstrating or related to the location of all voting machines, hardware, servers, and/or software that are or have been affiliated with, developed, facilitated or funded by the Smartmatic Entities from 2005 to the present.

**RESPONSE:**

**REQUEST NO. 16:**

Manuals and policies for voting machines, equipment, hardware, software, and/or servers used during 2020 elections in the United States, whether owned, rented, or licensed by the Smartmatic Entities.

**RESPONSE:**

**REQUEST NO. 17:**

Documents and Communications that support Your contention that all Smartmatic Entity "case studies demonstrate, time and time again, that Smartmatic's election technology and software can ensure quick and accurate voting results," as alleged in Paragraph 45 of the Complaint.

**RESPONSE:**

VP/#58189693

**REQUEST NO. 18:**

Documents and Communications relating to any agreements between any Smartmatic Entity and any third party regarding inspections, maintenance, updates to software and/or hardware, imaging of drives, servers and/or data uploads or downloads related to any Smartmatic Entity's voting machines or software and related storage servers or devices used in elections in the United States or elsewhere, including but not limited to the 2020 election in the United States, as well as elections in Venezuela, the Philippines, and Kenya from 2005 to the present.

**RESPONSE:**

**REQUEST NO. 19:**

Documents and Communications relating to any Smartmatic Entity's involvement in the U.S. 2020 local, state, and federal elections, including but not limited to the audit trails referenced in Paragraph 233 of the Complaint.

**RESPONSE:**

**REQUEST NO. 20:**

Documents and Communications relating to the VSAP 2.1 system, including but not limited to the certification of the same by California and the U.S. Election Assistance Commission, as referenced in Paragraphs 324 and 364 of the Complaint.

**RESPONSE:**

**REQUEST NO. 21:**

Documents from governmental entities and officials, whether in the United States or elsewhere, and including but not limited to the U.S. Election Assistance Commission, the Cybersecurity and Infrastructure Security Agency, the Department of Defense, the Department of Justice, the United States Department of Treasury's Committee on Foreign Investment in the United States, and the

11

Department of Homeland Security from 2006 to the present, regarding any Smartmatic Entity and/or its voting machines, equipment, hardware, software, and/or servers.

**RESPONSE:**

**REQUEST NO. 22:**

Communications to, from, or with governmental entities and officials, whether in the United States or elsewhere, and including but not limited to the U.S. Election Assistance Commission, the Cybersecurity and Infrastructure Security Agency, the Department of Defense, the Department of Justice, the United States Department of Treasury's Committee on Foreign Investment in the United States, and the Department of Homeland Security from 2006 to the present, regarding any Smartmatic Entity and/or its voting machines, equipment, hardware, software, and/or servers.

**RESPONSE:**

**REQUEST NO. 23:**

Documents and Communications from 2006 to the present related to U.S. Representative Carolyn Maloney's 2006 letters to the Secretary of the Treasury and any investigations conducted by the United States Department of Treasury's Committee on Foreign Investment in the United States ("CFIUS") of any Smartmatic Entity including, but not limited to, any sale or security agreements entered into by any Smartmatic Entity with any governmental agencies and any documents relating to any Smartmatic Entity's withdrawal from the CFIUS's investigation.

**RESPONSE:**

**REQUEST NO. 24:**

Documents and Communications relating to the certification, authentication, or validation, or lack thereof, of any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers by national, state, county, or local governmental agencies in the United States or elsewhere,

12

including but not limited to the State of California, the U.S. Election Assistance Commission, the United Nations, and the European Union.

**RESPONSE:**

**REQUEST NO. 25:**

Documents and Communications relating to the certification, authentication, or validation, or lack thereof, of any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers by national, state, county, or local governmental agencies by private Persons, including but not limited to PriceWaterhouseCoopers LLP, SLI Global Solutions, SLI Compliance, and the Carter Center.

**RESPONSE:**

**REQUEST NO. 26:**

Documents and Communications regarding issues or concerns raised about any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers, including but not limited to issues or concerns about a potential election security breach, vulnerabilities, or vote tabulation errors, from the formation of all Smartmatic Entities to the present, including but not limited to those Documents and Communications concerning elections in Venezuela, the Philippines, and Kenya.

**RESPONSE:**

**REQUEST NO. 27:**

Documents and Communications regarding issues or concerns raised about any Smartmatic Entity's alleged corrupt business practices, including but not limited to issues or concerns raised by the United States Department of Justice related to the 2004 Venezuelan election and any alleged violation of the Foreign Corrupt Practices Act in connection with the 2016 Philippines election.

13

**RESPONSE:**

**REQUEST NO. 28:**

Documents and Communications compiled and/or submitted to the United States Department of Justice in connection with its investigation of alleged violation of the Foreign Corrupt Practices Act by any Smartmatic Entity in connection with the 2004 Venezuelan election and the 2016 Philippines election

**RESPONSE:**

**REQUEST NO. 29:**

Documents and Communications regarding the Comelec's consideration of whether it will purchase or lease new equipment or software from any Smartmatic Entity for the upcoming 2025 midterm elections because of concerns that the equipment or software will malfunction and/or are insecure.

**RESPONSE:**

**REQUEST NO. 30:**

Documents and Communications regarding any Smartmatic Entity involved in the investigation related to the August 9, 2022 elections in Kenya, including but not limited to requests from the Kenyan Supreme Court for access to the Independent Electoral and Boundaries Commission's servers, and any Smartmatic Entity's response to the request.

**RESPONSE:**

**REQUEST NO. 31:**

Documents and Communications relating to the business relationship between any Smartmatic Entity and any Dominion Entity, including but not limited to oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation

14

agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement entered into by, between, or among any Smartmatic Entity and any Dominion Entity.

**RESPONSE:**

**REQUEST NO. 32:**

Documents and Communications between any Smartmatic Entity and any Dominion Entity relating to, arising out of, or in any way relevant to the Alleged Defamatory Statements.

**RESPONSE:**

**REQUEST NO. 33:**

Documents and Communications relating to the business relationship between any Smartmatic Entity and Sequoia Voting Systems, Inc., (or any other Sequoia entity), including but not limited to oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement.

**RESPONSE:**

**REQUEST NO. 34:**

Documents and Communications relating to the business relationship between any Smartmatic Entity and Premier Election Solutions, formerly known as Diebold Election Systems, Inc., including but not limited to oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement.

**RESPONSE:**

VP/#58189693

**REQUEST NO. 35:**

Documents and Communications relating to any Smartmatic Entity's participation in the Chicago, Illinois March 2006 primary election, including but not limited to a Smartmatic Entity's letter in response to Chicago Alderman Ed Burke's hearing regarding the election.

**RESPONSE:**

**REQUEST NO. 36:**

Documents and Communications relating to any Smartmatic Entity's potential contract with Allegheny County, Pennsylvania from 2004 to the present including, but not limited to, any reasons why Allegheny County, Pennsylvania did not award any contract  for election services to the Smartmatic Entity.

**RESPONSE:**

**REQUEST NO. 37:**

Documents and Communications regarding any Smartmatic Entity's operations, from that Smartmatic entity's inception to the present, in Venezuela, including but not limited to participation in Venezuelan elections, as well as oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement with Bizta Corp. and CANTV.

**RESPONSE:**

**REQUEST NO. 38:**

Documents and Communications regarding the currently pending international arbitration between SGO Corporation Limited and the Bolivarian Republic of Venezuela (ICSID Case No. ARB(AF)/22/2), with John Henry Rooney (U.S.) appointed as the arbitrator.

16

**RESPONSE:**

**REQUEST NO. 39:**

Documents and Communications relating to Lord Mark Malloch-Brown and any Smartmatic Entity, including but not limited to Documents and Communications relating to his June 21, 2015 interview regarding Smartmatic, as referenced in Paragraph 343 of the Complaint.

**RESPONSE:**

**REQUEST NO. 40:**

Documents and Communications relating to any investigation of any Smartmatic Entity by the United States Department of Justice, including but not limited to a Smartmatic Entity 2004 election contract in Venezuela that led to Mr. Chávez's victory.

**RESPONSE:**

**REQUEST NO. 41:**

Documents and Communications relating to any investigation of any Smartmatic Entity by the Committee on Foreign Investment in the United States from 2005 to the present, including but not limited to any investigation related to investments by the Venezuelan government in one or more Smartmatic Entity and the acquisition of Sequoia Voting Systems, Inc. by any Smartmatic Entity.

**RESPONSE:**

**REQUEST NO. 42:**

Documents and Communications that support Your contention that the Alleged Defamatory Statements are not substantially true, are not accurate, are misleading, and/or are defamatory.

**RESPONSE:**

VP/#58189693

**REQUEST NO. 43:**

Documents and Communications that support Your contention that Herring acted with actual malice.

**RESPONSE:**

**REQUEST NO. 44:**

Documents and Communications related to any breach of any Smartmatic Entity's voting software or hardware from the formation of any such Smartmatic Entity to the present.

**RESPONSE:**

**REQUEST NO. 45:**

Documents and Communications that support Your contention that OAN's alleged "defamatory statements were a proximate and substantial cause of Smartmatic's name and brand becoming synonymous with election fraud with members of the general public and government officials, particularly those in the United States," as alleged in Paragraph 427 of the Complaint.

**RESPONSE:**

**REQUEST NO. 46:**

Documents and Communications that support Your contention that "[p]rior to the 2020 U.S. election, Smartmatic was a known and trusted name among individuals responsible for selecting election technology and systems in voting jurisdictions in the United States and across the world," as alleged in Paragraph 428 of the Complaint.

**RESPONSE:**

**REQUEST NO. 47:**

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial cause" of Plaintiffs' alleged $400,000 out-of-pocket

expenses spent on public relations and crisis management, as well as proof of said expenses, as alleged in Paragraphs 432-433 of the Complaint.

**RESPONSE:**

**REQUEST NO. 48:**

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial cause" of Plaintiffs' alleged $100,000 out-of-pocket expenses spent on cybersecurity, as well as proof of said expenses, as alleged in Paragraphs 432-433 of the Complaint.

**RESPONSE:**

**REQUEST NO. 49:**

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial cause" of Plaintiffs' alleged $700,000 out-of-pocket expenses spent on retention and recruitment for personnel, as well as proof of said expenses, as alleged in Paragraphs 432-433 of the Complaint.

**RESPONSE:**

**REQUEST NO. 50:**

Documents and Communications that support Your contention that, as a result of Herring and the Alleged Defamatory Statements, Plaintiffs "will spend millions more in the coming years" in out-of-pocket expenses, as alleged in Paragraphs 432-433 of the Complaint.

**RESPONSE:**

**REQUEST NO. 51:**

Documents and Communication that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial cause" of Plaintiffs' diminished business value and

prospects, as well as proof of said loss in business value and prospects, as alleged in Paragraphs 435 and 438 of the Complaint

**RESPONSE:**

**REQUEST NO. 52:**

Documents and Communications that support Your contention that the Smartmatic Entities were valued at $3 billion going into the 2020 Presidential Election, as alleged in Paragraph 438 of the Complaint.

**RESPONSE:**

**REQUEST NO. 53:**

Documents and Communications that support Your contention that, as a result of Herring and the Alleged Defamatory Statements, the Smartmatic Entities now valued at less than $1 billion, as alleged in Paragraph 438 of the Complaint.

**RESPONSE:**

**REQUEST NO. 54:**

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial factor in causing Smartmatic to suffer irreparable harm to its reputation," as well as proof of such harm and loss, as alleged in Paragraph 452 of the Complaint.

**RESPONSE:**

**REQUEST NO. 55:**

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements "exposed Smartmatic to public hate, contempt, ridicule, and disgrace, and

VP/#58189693

created the appearance that Smartmatic is odious and infamous," as alleged in Paragraph 446 of the Complaint.

**RESPONSE:**

**REQUEST NO. 56:**

All Documents and Communications relating to Your contention that You were injured by the Alleged Defamatory Statements.

**RESPONSE:**

**REQUEST NO. 57:**

Documents and Communications that support Your request for no less than $2.7 billion in actual, consequential, and special damages in the above-captioned case, as well as Documents and Communications that demonstrate the actions any Smartmatic Entity  has undertaken to mitigate its alleged damages.

**RESPONSE:**

**REQUEST NO. 58:**

Documents sufficient to show the date and amount of monetary damages You have sought for any claim of reputational harm that You have made over the past five years (including claims associated with any other defamation lawsuits You have filed).

**RESPONSE:**

**REQUEST NO. 59:**

Documents and Communications that support Your request for punitive damages.

**RESPONSE:**

VP/#58189693

**REQUEST NO. 60:**

Documents relating to the amount of attorneys' fees and costs Plaintiffs have accrued to date, regardless of whether they have actually been billed or paid.

**RESPONSE:**

**REQUEST NO. 61:**

Communications that any Smartmatic Entity has had with Other Media Organizations regarding any statement or publication alleged to be defamatory of any Smartmatic Entity from the formation of any Smartmatic Entity to the present, as well as (1) the identity of the Persons involved in the Communication(s); (2) the date of Communication(s); and (3) the substance of the Communication(s).

**RESPONSE:**

**REQUEST NO. 62:**

Documents and Communications that demonstrate negative or critical thoughts, feedback, and/or concern any Smartmatic Entity or any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers, from the formation of any Smartmatic Entity to the present.

**RESPONSE:**

**REQUEST NO. 63:**

Documents sufficient to identify all sources of funding You are using to pay costs, expenses, or fees for this case, including each entity or individual providing funds, contingency services, pro bono services, or litigation financing and the related oral or written agreements.

**RESPONSE:**

22

**REQUEST NO. 64:**

All Smartmatic Entity financial statements, including balance sheets, income statements, cash flow statements, statements of shareholders' equity, Special Purpose Acquisition Company statements, other private equity valuations, and any form of other valuation from that Smartmatic Entity's inception to the present.

**RESPONSE:**

**REQUEST NO. 65:**

All U.S. and other tax returns for any Smartmatic Entity, including but not limited to U.S. federal tax returns and state tax returns, from any Smartmatic Entity's inception to the present.

**RESPONSE:**

**REQUEST NO. 66:**

Documents and Communication demonstrating any Smartmatic Entity's projected finances, gross revenue, and net revenue from the beginning of 2020 through 2025.

**RESPONSE:**

**REQUEST NO. 67:**

Documents and Communications related to the Complaint or which form, in whole or in part, a basis for the Complaint.

**RESPONSE:**

**REQUEST NO. 68:**

All Documents and Communications, including all intra-office Communications (whether by email, text message, instant message, Slack, or other similar instant messaging software, memoranda, etc.), between or among any Smartmatic Entity and any Person or entity not a party to the above-captioned case, relating to Herring, OAN, the Herring Talent, the Herring Guests, the

Retraction Demands, the Complaint, the above-captioned case, and/or the subject matter of the above-captioned case, including but not limited to, William Kennard (Chairman, Board of Directors of AT&T Inc., and Board member of Staple Street Capital), John Stankey (Chief Executive Officer, AT&T Inc.), Bill Morrow (Chief Executive Officer, DirecTV, LLC), Rob Thun (Senior Vice President, Content, DirecTV), AT&T Inc. (including any member of its Board of Directors from 2020 to the present), AT&T Services, Inc., DirecTV, LLC (including any member of its Board of Directors from 2020 to the present), Verizon Fios, Staple Street Capital, Hootan Yaghoobzadeh (Managing Director/Co-Founder, Staple Street Capital), Kay Stimson (Chair, U.S. Department of Homeland Security's Election Infrastructure Sector Coordinating Council), Hamilton Place Strategies, Tony Fratto (Founder, Hamilton Place Strategies) and/or the NAACP.

**RESPONSE:**

**REQUEST NO. 69:**

Documents and Communications that Smartmatic International Holding B.V. intends to offer in evidence at trial or any hearing in the above-captioned case or to use to question witnesses at any deposition, trial, or hearing in the above-captioned case.

**RESPONSE:**

**REQUEST NO. 70:**

All Documents received by You or Your attorney from any third party, whether in response to a subpoena duces tecum, open records act request or otherwise, that relate to the Alleged Defamatory Statements or to the allegations in the Complaint.

**RESPONSE:**

24

**REQUEST NO. 71:**

All discovery and hearing information (i.e. written discovery requests, written discovery responses, subpoenas, subpoena responses, open records act requests, open records act responses, deposition notices, deposition transcripts, deposition videos, hearing transcripts, and similar material) related to, arising out of, or produced in the lawsuits filed any Smartmatic Entity relating to the U.S. 2020 local, state, and federal elections, including but not limited to *Smartmatic USA Corp., et al. v. Fox News Network, LLC, et al.*, Index No. 151136-2021 (New York County, New York); *Smartmatic USA Corp. and SGO Corporation Unlimited v. Newsmax Media, Inc.*, Case No. N21C-11-028 EMD (Del. Super. Ct.); *Smartmatic USA Corp., et al. v. Sidney Powell*, Case No. 21-cv-02995 (D.D.C.); *Smartmatic USA Corp., et al. v. Lindell, et al.*, Case No. 22-cv-00098 (D. Minn.).

**RESPONSE:**

**REQUEST NO. 72:**

All Documents and Communications concerning complaints or concerns about statements made regarding any Smartmatic Entities related to the U.S. 2020 local, state, and federal elections, including but not limited to retraction requests, responses to retraction requests, and any related correspondence sent by any Smartmatic Entity to any third party.

**RESPONSE:**

**REQUEST NO. 73:**

Documents sufficient to show the method and reliability of auditing for any Smartmatic Entity's voting machines and technology deployed to count ballots in the U.S. 2020 local, state, and federal elections.

**RESPONSE:**

VP/#58189693

**REQUEST NO. 74:**

All Documents and Communications, including marketing materials, pitch packets and promotional materials reflecting any Smartmatic Entity's efforts (or those made on any Smartmatic Entity's behalf) to solicit contracts globally from that Smartmatic Entity's inception to the present.

**RESPONSE:**

**REQUEST NO. 75:**

All Documents and Communications concerning any contracts that you allege any Smartmatic Entity lost or did not obtain as a result of the Alleged Defamatory Statements.

**RESPONSE:**

**REQUEST NO. 76:**

Portions of personnel files of all employees and personnel of Smartmatic Entities who have worked on any Smartmatic Entity's voting equipment or software utilized or employed in the U.S. 2020 local, state, and federal elections that refer to or address any disciplinary actions, errors, problems or concerns relating to: (1) software coding; (2) design or maintenance of any Smartmatic Entity's machines; (3) political affiliations or actions; or (4) public commentary on the 2020 Presidential Election.

**RESPONSE:**

**REQUEST NO. 77:**

All Documents and Communications with Fox News Network, LLC and/or Fox Corp. concerning or in any way relating to the U.S. 2020 local, state, and federal elections or coverage of the election.

**RESPONSE:**

VP/#58189693

**REQUEST NO. 78:**

All Documents and Communications with Newsmax Media, Inc. concerning or in any way relating to the U.S. 2020 local, state, and federal elections or Newsmax Media, Inc.'s coverage of the elections.

**RESPONSE:**

**REQUEST NO. 79:**

All Documents and Communications concerning any vendors or other contractors or affiliates based outside the United States that manufacture, produce, license, or are otherwise involved with any hardware, software, or other components used in any Smartmatic Entity's voting equipment, systems, machines and/or software from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 80:**

Communications with and Documents related to social media platforms, including but not limited to Facebook, Twitter, Instagram, and YouTube concerning the removal of any posts, videos, or other content referencing any Smartmatic Entity in connection with U.S. elections from 2004 to the present, as well as elections in the Philippines, Venezuela, and Kenya from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 81:**

Documents and Communications concerning the relationship between any Smartmatic Entity and any Dominion Entity, including but not limited to oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement. There is no time limit on this Request.

27

**RESPONSE:**

**REQUEST NO. 82:**

Documents and Communications concerning any Smartmatic Entity's efforts to secure a contract with the County of Los Angeles, State of California to provide voting equipment and/or software for the U.S. 2020 local, state, and federal elections.

**RESPONSE:**

**REQUEST NO. 83:**

Documents and Communications relating to the method, manner, procedure, or formulation by which You calculate Your economic damages.

**RESPONSE:**

**REQUEST NO. 84:**

Documents and Communications with any insurance carrier regarding the alleged harm and/or damages for which You seek recovery in this litigation.

**RESPONSE:**

**REQUEST NO. 85:**

All financial audits and documents and correspondence from accounting professionals concerning any Smartmatic Entity from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 86:**

All meeting minutes and other documents concerning meetings of any Smartmatic Entity Board of Directors.

**RESPONSE:**

28

**REQUEST NO. 87:**

All insurance policies or other related documents that in any way relate to the damages You seek or counterclaims you may face in this Action, including but not limited to claims and documents relating to such claims.

**RESPONSE:**

**REQUEST NO. 88:**

All of any Smartmatic Entity's general ledgers for the past five (5) years.

**RESPONSE:**

**REQUEST NO. 89:**

Documents and Communications concerning any Smartmatic Entity's current business plan, as well as any from the past five (5) years.

**RESPONSE:**

**REQUEST NO. 90:**

All documents concerning projections of any Smartmatic Entity's future business plans, including but not limited to prospective contracts and clients.

**RESPONSE:**

**REQUEST NO. 91:**

Documents and Communications concerning Konnech Corporation from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 92:**

Documents and Communications reflecting any Smartmatic Entity's relationship with Konnech Corporation, including but not limited to agreements or contracts between any Smartmatic Entity and Konnech Corporation in relation to the U.S. 2020 local, state, and federal elections.

VP/#58189693

**RESPONSE:**

**REQUEST NO. 93:**

Documents and Communications concerning complaints, concerns, or investigations about the use of Konnech Corporation's software and/or PollChief election management system.

**RESPONSE:**

**REQUEST NO. 94:**

Documents and Communications concerning any goods provided or services performed by any Smartmatic Entity in connection with the United States Department of Defense from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 95:**

Documents and Communications concerning any goods provided or services performed by any Smartmatic Entity in connection with the Federal Voting Assistance Program from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 96:**

Communications between any Smartmatic Entity and Dr. J. Alex Halderman concerning or in any way related to any Smartmatic Entities' or Dominion Entities' voting machines, equipment, hardware, software, and/or servers from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 97:**

Documents and communications related to the October 19, 2022 Elon University Webinar titled

VP/#58189693

<u>Engendering Trust in Election Outcomes</u>, including, but not limited to, all communications with Dr. J Alex Halderman and/or anyone affiliated with coordinating or organizing the webinar itself.

**RESPONSE:**

**REQUEST NO. 98:**

Documents sufficient to show Your financial condition, including but not limited to profits, margins and revenue from January 2016 to the present.

**RESPONSE:**

**REQUEST NO. 99:**

Documents and Communications, including any written common interest agreements, between or among: (i) any Smartmatic Entity, including its attorneys, including but not limited to Benesch, Friedlander, Coplan & Aronoff LLP and Robins Kaplan LLP; and (ii) any Dominion Entity, Eric Coomer, Ruby Freeman and/or Shaye Moss, or any of their respective attorneys or others, including but not limited to Susman Godfrey LLP, Clare Locke LLP, Brownstein Hyatt Farber Schreck LLP, Rodney Smolla (President, Vermont Law School), Snell & Wilmer L.L.P., Farnan LLP, Cain & Skarnulis PLLC, Recht Kornfeld PC, Dowd Bennett LLP, United To Protect Democracy, Inc., DuBose Miller, Ballard Spahr LLP, Kurt G. Kastorf Law Firm, Michael Linhorst, Willkie Farr & Gallagher, LLP, Ballard Spahr, David A. Schulz (Floyd Abrams Lecturer in Law and Senior Research Scholar in Law, Yale Law School), the Yale Law School Media and Information Access Clinic, Floyd Abrams (Senior Counsel, Cahill Gordon & Reindel LLP), the Yale Law School Abrams Institute for Freedom of Expression at the Information Society Project, Lee Levine, the Media Law Resource Center, and/or George Freeman (Executive Director, Media Law Resource Center).

**RESPONSE:**

VP/#58189693

**REQUEST NO. 100:**

Documents and Communications concerning any analysis performed in connection with security and/or vulnerability assessments for voting machines and software, including but not limited to any such analysis performed by MITRE, the National Election Security Laboratory, Professor J. Alex Halderman, Harri Hursti or any state or federal agency, including but not limited to the Cybersecurity and Infrastructure Security Agency.

**RESPONSE:**

**REQUEST NO. 101:**

Documents and Communications related to work by any public relations professional on behalf of any Smartmatic Entity from that Smartmatic Entity's inception to the present.

**RESPONSE:**

**REQUEST NO. 102:**

Documents and Communications related to any Smartmatic Entity's efforts to distinguish its voting hardware and software technology from any Smartmatic Entity competitor's voting hardware and software technology, including but not limited to any Dominion Entity's voting hardware and software technology, from that Smartmatic Entity's inception to the present.

**RESPONSE:**

VP/#58189693

Dated:  October 24, 2022                      By: /s/ Blaine C. Kimrey

Blaine C. Kimrey, Bar No. IL0091
bkimrey@vedderprice.com
Jeanah Park, Bar No. IL0094
jpark@vedderprice.com
Bryan Clark, Bar No. IL0090
bclark@vedderprice.com
Brian Ledebuhr, Bar No. IL0093
bledebuhr@vedderprice.com
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, IL 60601
T:  +1 312 609 7500
F:  +1 312 609 5005

Brian K. McCalmon, Bar No. 461196
bmccalmon@vedderprice.com
VEDDER PRICE P.C.
1401 New York Avenue, Suite 500
Washington, DC 20005
T:  +1 202 312 3320
F:  +1 202 312 3322

*Counsel for Herring Networks, Inc.*

VP/#58189693

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of October 2022, I served the foregoing document on

the following counsel of record by electronic mail, hand-delivery and overnight delivery:

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949
J. Erik Connolly
Nicole E. Wrigley
Michael E. Bloom
Lee B. Muench
Emily Newhouse Dillingham
Lauren C. Totorella
Kathleen Watson Moss
James R. Bedell
Julie M. Loftus
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
mbloom@beneschlaw.com
lmuench@beneschlaw.com
edillingham@beneschlaw.com
ltortorella@beneschlaw.com
kwatsonmoss@beneschlaw.com
jbedell@beneschlaw.com
jloftus@beneschlaw.com

/s/ Blaine Kimrey
Blaine Kimrey

VP/#58189693

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SMARTMATIC USA CORP., *et al.*, | |
| Plaintiffs, | No. 1:21-cv-02900-CJN |
| v. | |
| HERRING NETWORKS, INC., d/b/a ONE AMERICA NEWS NETWORK, | Judge Carl J. Nichols |
| Defendant. | |

### DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION TO SMARTMATIC USA CORP.

Defendant Herring Networks, Inc., d/b/a One America News Network, through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 34, hereby requests that plaintiff Smartmatic USA Corp. produce the following Documents within thirty (30) days of service hereof.

### DEFINITIONS AND INSTRUCTIONS

1.      "Alleged Defamatory Statements" means the statements in Paragraphs 184, 196, 205, 218, and 227 of the Complaint, as well as any other allegedly defamatory statements otherwise referenced in the Complaint.

2.      The word "and" includes the disjunctive "or," and the word "or" includes the conjunctive "and."  Words in the singular shall be interpreted to include the plural, and words in the plural shall be interpreted to include the singular.  A masculine, feminine or neuter form of a word shall be interpreted to include the other genders.  The use of any tense of any verb shall be interpreted to include all other tenses.

3.      "Articles at Issue" means any articles alleged in the Complaint to contain any of the Alleged Defamatory Statements.

1

VP/#57426882

4.  "Comelec" means the Philippines' Commission on Elections, as well all commissioners, employees, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of the Comelec.

5.  "Communication" means any written, electronic, or verbal transmission of words or thoughts between or among two or more Persons, including, without limitation, any letter, email, instant or text message, social media post, blog post, web posting, interview, conference, meeting, spoken words, conversation, understanding, agreement, discussion, talks, and reports, whether transmitted orally, in writing, or by any electronic device.

6.  "Complaint" means the original Complaint filed in the above-captioned action by Plaintiffs, as well as any subsequent amendments thereto.

7.  "Defendant" and/or "Herring" means defendant Herring Networks, Inc., d/b/a One America News Network.

8.  "Document" means any writing, graphic matter, or other tangible or digital thing, whether printed, recorded, produced by any process, or written or produced by hand, including, without limitation, agreements, contracts, correspondence, memoranda, letters, reports, Communications (as defined above) and Electronically Stored Information (as defined below), correspondence, telegrams, internal and external memoranda, summaries, records of oral conversations, original or preliminary notes, diaries, calendars, analyses, projections, ledgers, work papers, photographs, tape recordings, applications, video tapes, computer hard drives or disks, statistical statements, logs, graphs, charts, schedules, notebooks, minutes or records of meetings, minutes or records of conferences, lists of Persons attending meetings or conferences, reports and/or summaries of investigations, opinions or reports of investigators, accountants or consultants, studies, appraisals, evaluations, or copies of any of the foregoing if the copy is in any

way different from the original now in any Plaintiffs' possession, custody or control, or the possession, custody or control of any Plaintiffs' counsel, investors, agents, employees and/or Persons acting on any Plaintiff's behalf.

9.     "Dominion Entity(ies)" means US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation, as well all parents, subsidiaries, related or affiliated entities, successors and predecessors (including but not limited to Sequoia Voting Systems), officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of the Dominion Entities.

10.     "Dominion Voting Systems Corporation" shall mean Dominion Voting Systems Corporation, as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Dominion Voting Systems Corporation.

11.     "Dominion Voting Systems, Inc.," shall mean Dominion Voting Systems, Inc., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Dominion Voting Systems, Inc.

12.     "Electronically Stored Information" or "ESI" shall mean originals and all copies of email; activity listings of email receipts and/or transmittals; voicemail; audio or video recordings of any kind; facsimiles; computer programs (whether private, commercial, or a work-in-progress); programming notes or instructions; social media posts; text messages; instant messages; metadata; output resulting from the use of any software program, including word processing Documents,

3

spreadsheets, database files, charts, graphs, and outlines; operating systems; source code of all types; and electronic files and/or file fragments of any sort, regardless of the media on which they are stored and regardless of whether the data resides in an active file, deleted file, or file fragment. ESI also includes the file, folder tabs, containers or labels appended to any storage device containing electronic data.  All ESI produced in response hereto should be produced in native format.

13.     "Herring Guests" shall mean and include the guests who appeared on the Programs at Issue or otherwise appeared on OAN, including but not limited to Rudolph Giuliani, Sidney Powell, Michael Lindell, Kyle Becker, Clay Clark, Joseph diGenova, Tom Fitton, Allan dos Santos, Keith Trippie, J. Michael Waller, Mary Fanning, and Michael Flynn.

14.     "Herring Talent" shall mean and include all Herring employees who appeared on the Programs at Issue or otherwise appeared on OAN, including but not limited to Alex Salvi, Elma Aksalic, Kara McKinney, Mike Dinow, Patrick Hussion, Dan Ball, John Hines, Stephanie Hamill, Samantha Lomibao, Emily Finn, and Christina Bobb.

15.     "OAN" shall mean One America News Network.

16.     "Other Media Organizations" shall mean other news, media, and other similar organizations, including but not limited to CNN, CBS, ABC, PBS, *The Wall Street Journal*, *The New York Times*, MSNBC, *The Washington Post*, Fox News, Newsmax, *Politico*, *Vanity Fair*, Media Matters, *Bloomberg News, The Chicago Tribune, The Los Angeles Times, The Miami Herald*, the *Times of San Diego* and *National Public Radio*.

17.     "Person" shall mean a natural person or any business, company, corporation, association, partnership organization, or other legal entity.

4

18.     "Plaintiff(s)" and/or "Smartmatic Entity(ies)" shall mean plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited, as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of the Smartmatic Entities.

19.     "Programs at Issue" shall mean any broadcast or program on OAN alleged to contain any of the Alleged Defamatory Statements, including but not limited to *After Hours with Alex Salvi*, *OAN Newsroom*, *Tipping Point with Kara McKinney*, *Breaking News Live with Patrick Hussion*, *Real America with Dan Ball*, *In Focus with Stephanie Hamill*, *Weekly Briefing with Christina Bobb*, and the Michael Lindell-produced programs titled *Absolute Proof*, *Scientific Proof*, *Absolute Interference*, and *Absolutely 9-0*.

20.     The terms "relating to," "regarding," "demonstrating," and "supporting" shall mean having any connection, association or concern with, or any relevance, relation, pertinence, or applicability to or any implication bearing on, the subject matter, whether directly or indirectly.

21.     "Retraction Demands" shall mean the retraction demand letters dated December 11, 2020 and October 27, 2021 from Plaintiffs to Herring.

22.     "SGO Corporation Limited" shall mean plaintiff SGO Corporation Limited, as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of SGO Corporation Limited.

23.     "Smartmatic International Holding B.V.," shall mean plaintiff Smartmatic International Holding B.V., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees,

shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Smartmatic International Holding B.V.

24.     "Smartmatic USA Corp.," "You" and/or "Your" shall mean plaintiff Smartmatic USA Corp., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Smartmatic USA Corp.

25.     "Tweets at Issue" shall mean any tweets alleged in the Complaint to contain any of the Alleged Defamatory Statements.

26.     "US Dominion, Inc.," shall mean US Dominion, Inc., as well all parents, subsidiaries, related and affiliated entities, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of US Dominion, Inc.

27.     Where a claim of privilege is asserted in responding or objecting to any discovery requested herein and information is not provided on the basis of such assertion, Plaintiffs shall, in their response or objection, identify the nature of the privilege (including work product) which is being claimed.  When any privilege is claimed, Plaintiffs shall, as to the Documents and/or information requested, whether:

(a)     any Documents exist or any Communications took place; and

(b)     provide the following information for each such Document or Communication in a "privilege log" or similar format:

(i)     the type of Document or Communication;

(ii)     the general subject matter of the Document or Communication;

(iii)     the date of the Document or Communication;

6

(iv)    the author(s) of the Document or participants in the Communication;

(v)     the addressee(s) and any other recipient(s) of the Document; and

(vi)    the custodian of the Document, where applicable.

28.     Unless otherwise indicated, the relevant time period for these Requests for Production is from January 1, 2020 to the present.

29.     These Requests for Production are continuing in nature and require supplemental response if Plaintiffs obtain further information between the time of compliance and any hearing or trial in the above-captioned case.

## **REQUESTS FOR PRODUCTION**

**REQUEST NO. 1:**

Documents identified in Your Answers to the First Set of Interrogatories propounded upon You contemporaneously with this First Set of Requests for Production, as well as any and all Documents reviewed or relied upon in answering those Interrogatories.

**RESPONSE:**

**REQUEST NO. 2:**

Documents relating to, referenced in, and/or providing a basis for Your responses to the First Set of Requests for Admission propounded upon You contemporaneously with this First Set of Requests for Production.

**RESPONSE:**

**REQUEST NO. 3:**

All discovery requests and responses of any type (i.e. interrogatories and responses, document requests and responses, requests to admit and responses, deposition transcripts and video, deposition errata sheets, subpoenas and responses, open records act requests and responses, and

7

any other form of discovery request or response) produced by anyone in any litigation between any Smartmatic Entity and any Dominion Entity.

**RESPONSE:**

**REQUEST NO. 4:**

Documents regarding Herring, OAN, and/or the Herring Talent.

**RESPONSE:**

**REQUEST NO. 5:**

Documents regarding the Herring Guests from January 1, 2018 to present.

**RESPONSE:**

**REQUEST NO. 6:**

Communications to, from, and/or between Smartmatic USA Corp. and any Person, including but not limited to Other Media Organizations and governmental entities and officials, regarding the Herring Talent from January 1, 2018 to present.

**RESPONSE:**

**REQUEST NO. 7:**

Communications to, from, and/or between any Smartmatic Entity and any past or present Herring employees, including but not limited to Martin Golingan.

**RESPONSE:**

**REQUEST NO. 8:**

Documents and Communications regarding the formation of any Smartmatic Entity.

**RESPONSE:**

VP/#57426882

**REQUEST NO. 9:**

Documents and Communications demonstrating any Smartmatic Entity's corporate governance and ownership structure, inclusive of all parent and subsidiary companies, from the formation of any Smartmatic Entity to the present.

**RESPONSE:**

**REQUEST NO. 10:**

All versions of any website of any and all Smartmatic Entities from creation to the present.

**RESPONSE:**

**REQUEST NO. 11:**

The human resources records of Antonio Mugica, Roger Piñate, Alfredo Anzola, Marlon Garcia, Neil Baniqued, and Mauricio Herrera related to their involvement in procuring services for Comelec and/or related to any Philippines election from May 2016 to the present.

**RESPONSE:**

**REQUEST NO. 12:**

Documents and Communications relating to the "strict ethics code" with which any Smartmatic Entity's founders and employees allegedly must comply, as referenced in Paragraph 339 of the Complaint.

**RESPONSE:**

**REQUEST NO. 13:**

Documents and Communications relating to any agreement or contract between Smartmatic USA Corp. and any state, county, or local governmental entity of the United States, to provide voting machines, elections technology and/or services from 2005 to the present.

**RESPONSE:**

VP/#57426882

**REQUEST NO. 14:**

Documents and Communications relating to any agreements or contracts between any Smartmatic Entity and any foreign governmental entities and/or officials from 2004 to the present to provide voting machines, elections technology and/or services, including but not limited to the "more than 25 countries on five continents" in which Smartmatic Entities have conducted business, as alleged in Paragraph 24 of the Complaint.

**RESPONSE:**

**REQUEST NO. 15:**

Documents and Communications demonstrating or related to the location of all voting machines, hardware, servers, and/or software that are or have been affiliated with, developed, facilitated or funded by the Smartmatic Entities from 2005 to the present.

**RESPONSE:**

**REQUEST NO. 16:**

Manuals and policies for voting machines, equipment, hardware, software, and/or servers used during 2020  elections in the United States, whether owned, rented, or licensed by the Smartmatic Entities.

**RESPONSE:**

**REQUEST NO. 17:**

Documents and Communications that support Your contention that all Smartmatic Entity "case studies demonstrate, time and time again, that Smartmatic's election technology and software can ensure quick and accurate voting results," as alleged in Paragraph 45 of the Complaint.

**RESPONSE:**

**REQUEST NO. 18:**

Documents and Communications relating to any agreements between any Smartmatic Entity and any third party regarding inspections, maintenance, updates to software and/or hardware, imaging of drives, servers and/or data uploads or downloads related to any Smartmatic Entity's voting machines or software and related storage servers or devices used in elections in the United States or elsewhere, including but not limited to the 2020 election in the United States, as well as elections in Venezuela, the Philippines, and Kenya from 2005 to the present.

**RESPONSE:**

**REQUEST NO. 19:**

Documents and Communications relating to any Smartmatic Entity's involvement in the U.S. 2020 local, state, and federal elections, including but not limited to the audit trails referenced in Paragraph 233 of the Complaint.

**RESPONSE:**

**REQUEST NO. 20:**

Documents and Communications relating to the VSAP 2.1 system, including but not limited to the certification of the same by California and the U.S. Election Assistance Commission, as referenced in Paragraphs 324 and 364 of the Complaint.

**RESPONSE:**

**REQUEST NO. 21:**

Documents from governmental entities and officials, whether in the United States or elsewhere, and including but not limited to the U.S. Election Assistance Commission, the Cybersecurity and Infrastructure Security Agency, the Department of Defense, the Department of Justice, the United States Department of Treasury's Committee on Foreign Investment in the United States, and the

VP/#57426882

Department of Homeland Security from 2006 to the present, regarding any Smartmatic Entity and/or its voting machines, equipment, hardware, software, and/or servers.

**RESPONSE:**

**REQUEST NO. 22:**

Communications to, from, or with governmental entities and officials, whether in the United States or elsewhere, and including but not limited to the U.S. Election Assistance Commission, the Cybersecurity and Infrastructure Security Agency, the Department of Defense, the Department of Justice, the United States Department of Treasury's Committee on Foreign Investment in the United States, and the Department of Homeland Security from 2006 to the present, regarding any Smartmatic Entity and/or its voting machines, equipment, hardware, software, and/or servers.

**RESPONSE:**

**REQUEST NO. 23:**

Documents and Communications from 2006 to the present related to U.S. Representative Carolyn Maloney's 2006 letters to the Secretary of the Treasury and any investigations conducted by the United States Department of Treasury's Committee on Foreign Investment in the United States ("CFIUS") of any Smartmatic Entity including, but not limited to, any sale or security agreements entered into by any Smartmatic Entity with any governmental agencies and any documents relating to any Smartmatic Entity's withdrawal from the CFIUS's investigation.

**RESPONSE:**

**REQUEST NO. 24:**

Documents and Communications relating to the certification, authentication, or validation, or lack thereof, of any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers by national, state, county, or local governmental agencies in the United States or elsewhere,

VP/#57426882

including but not limited to the State of California, the U.S. Election Assistance Commission, the United Nations, and the European Union.

**RESPONSE:**

**REQUEST NO. 25:**

Documents and Communications relating to the certification, authentication, or validation, or lack thereof, of any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers by national, state, county, or local governmental agencies by private Persons, including but not limited to PriceWaterhouseCoopers LLP, SLI Global Solutions, SLI Compliance, and the Carter Center.

**RESPONSE:**

**REQUEST NO. 26:**

Documents and Communications regarding issues or concerns raised about any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers, including but not limited to issues or concerns about a potential election security breach, vulnerabilities, or vote tabulation errors, from the formation of all Smartmatic Entities to the present, including but not limited to those Documents and Communications concerning elections in Venezuela, the Philippines, and Kenya.

**RESPONSE:**

**REQUEST NO. 27:**

Documents and Communications regarding issues or concerns raised about any Smartmatic Entity's alleged corrupt business practices, including but not limited to issues or concerns raised by the United States Department of Justice related to the 2004 Venezuelan election and any alleged violation of the Foreign Corrupt Practices Act in connection with the 2016 Philippines election.

VP/#57426882

**RESPONSE:**

**REQUEST NO. 28:**

Documents and Communications compiled and/or submitted to the United States Department of Justice in connection with its investigation of alleged violation of the Foreign Corrupt Practices Act by any Smartmatic Entity in connection with the 2004 Venezuelan election and the 2016 Philippines election

**RESPONSE:**

**REQUEST NO. 29:**

Documents and Communications regarding the Comelec's consideration of whether it will purchase or lease new equipment or software from any Smartmatic Entity for the upcoming 2025 midterm elections because of concerns that the equipment or software will malfunction and/or are insecure.

**RESPONSE:**

**REQUEST NO. 30:**

Documents and Communications regarding any Smartmatic Entity involved in the investigation related to the August 9, 2022 elections in Kenya, including but not limited to requests from the Kenyan Supreme Court for access to the Independent Electoral and Boundaries Commission's servers, and any Smartmatic Entity's response to the request.

**RESPONSE:**

**REQUEST NO. 31:**

Documents and Communications relating to the business relationship between any Smartmatic Entity and any Dominion Entity, including but not limited to oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation

agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement entered into by, between, or among any Smartmatic Entity and any Dominion Entity.

**RESPONSE:**

**REQUEST NO. 32:**

Documents and Communications between any Smartmatic Entity and any Dominion Entity relating to, arising out of, or in any way relevant to the Alleged Defamatory Statements.

**RESPONSE:**

**REQUEST NO. 33:**

Documents and Communications relating to the business relationship between any Smartmatic Entity and Sequoia Voting Systems, Inc., (or any other Sequoia entity), including but not limited to oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement.

**RESPONSE:**

**REQUEST NO. 34:**

Documents and Communications relating to the business relationship between any Smartmatic Entity and Premier Election Solutions, formerly known as Diebold Election Systems, Inc., including but not limited to oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement.

**RESPONSE:**

VP/#57426882

**REQUEST NO. 35:**

Documents and Communications relating to any Smartmatic Entity's participation in the Chicago, Illinois March 2006 primary election, including but not limited to a Smartmatic Entity's letter in response to Chicago Alderman Ed Burke's hearing regarding the election.

**RESPONSE:**

**REQUEST NO. 36:**

Documents and Communications relating to any Smartmatic Entity's potential contract with Allegheny County, Pennsylvania from 2004 to the present including, but not limited to, any reasons why Allegheny County, Pennsylvania did not award any contract for election services to the Smartmatic Entity.

**RESPONSE:**

**REQUEST NO. 37:**

Documents and Communications regarding any Smartmatic Entity's operations, from that Smartmatic entity's inception to the present, in Venezuela, including but not limited to participation in Venezuelan elections, as well as oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement with Bizta Corp. and CANTV.

**RESPONSE:**

**REQUEST NO. 38:**

Documents and Communications regarding the currently pending international arbitration between SGO Corporation Limited and the Bolivarian Republic of Venezuela (ICSID Case No. ARB(AF)/22/2), with John Henry Rooney (U.S.) appointed as the arbitrator.

16

**RESPONSE:**

**REQUEST NO. 39:**

Documents and Communications relating to Lord Mark Malloch-Brown and any Smartmatic Entity, including but not limited to Documents and Communications relating to his June 21, 2015 interview regarding Smartmatic, as referenced in Paragraph 343 of the Complaint.

**RESPONSE:**

**REQUEST NO. 40:**

Documents and Communications relating to any investigation of any Smartmatic Entity by the United States Department of Justice, including but not limited to a Smartmatic Entity 2004 election contract in Venezuela that led to Mr. Chávez's victory.

**RESPONSE:**

**REQUEST NO. 41:**

Documents and Communications relating to any investigation of any Smartmatic Entity by the Committee on Foreign Investment in the United States from 2005 to the present, including but not limited to any investigation related to investments by the Venezuelan government in one or more Smartmatic Entity and the acquisition of Sequoia Voting Systems, Inc. by any Smartmatic Entity.

**RESPONSE:**

**REQUEST NO. 42:**

Documents and Communications that support Your contention that the Alleged Defamatory Statements are not substantially true, are not accurate, are misleading, and/or are defamatory.

**RESPONSE:**

**REQUEST NO. 43:**

Documents and Communications that support Your contention that Herring acted with actual malice.

**RESPONSE:**

**REQUEST NO. 44:**

Documents and Communications related to any breach of any Smartmatic Entity's voting software or hardware from the formation of any such Smartmatic Entity to the present.

**RESPONSE:**

**REQUEST NO. 45:**

Documents and Communications that support Your contention that OAN's alleged "defamatory statements were a proximate and substantial cause of Smartmatic's name and brand becoming synonymous with election fraud with members of the general public and government officials, particularly those in the United States," as alleged in Paragraph 427 of the Complaint.

**RESPONSE:**

**REQUEST NO. 46:**

Documents and Communications that support Your contention that "[p]rior to the 2020 U.S. election, Smartmatic was a known and trusted name among individuals responsible for selecting election technology and systems in voting jurisdictions in the United States and across the world," as alleged in Paragraph 428 of the Complaint.

**RESPONSE:**

**REQUEST NO. 47:**

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial cause" of Plaintiffs' alleged $400,000 out-of-pocket

expenses spent on public relations and crisis management, as well as proof of said expenses, as alleged in Paragraphs 432-433 of the Complaint.

**RESPONSE:**

**REQUEST NO. 48:**

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial cause" of Plaintiffs' alleged $100,000 out-of-pocket expenses spent on cybersecurity, as well as proof of said expenses, as alleged in Paragraphs 432-433 of the Complaint.

**RESPONSE:**

**REQUEST NO. 49:**

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial cause" of Plaintiffs' alleged $700,000 out-of-pocket expenses spent on retention and recruitment for personnel, as well as proof of said expenses, as alleged in Paragraphs 432-433 of the Complaint.

**RESPONSE:**

**REQUEST NO. 50:**

Documents and Communications that support Your contention that, as a result of Herring and the Alleged Defamatory Statements, Plaintiffs "will spend millions more in the coming years" in out-of-pocket expenses, as alleged in Paragraphs 432-433 of the Complaint.

**RESPONSE:**

**REQUEST NO. 51:**

Documents and Communication that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial cause" of Plaintiffs' diminished business value and

prospects, as well as proof of said loss in business value and prospects, as alleged in Paragraphs 435 and 438 of the Complaint

**RESPONSE:**

**REQUEST NO. 52:**

Documents and Communications that support Your contention that the Smartmatic Entities were valued at $3 billion going into the 2020 Presidential Election, as alleged in Paragraph 438 of the Complaint.

**RESPONSE:**

**REQUEST NO. 53:**

Documents and Communications that support Your contention that, as a result of Herring and the Alleged Defamatory Statements, the Smartmatic Entities now valued at less than $1 billion, as alleged in Paragraph 438 of the Complaint.

**RESPONSE:**

**REQUEST NO. 54:**

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial factor in causing Smartmatic to suffer irreparable harm to its reputation," as well as proof of such harm and loss, as alleged in Paragraph 452 of the Complaint.

**RESPONSE:**

**REQUEST NO. 55:**

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements "exposed Smartmatic to public hate, contempt, ridicule, and disgrace, and

VP/#57426882

created the appearance that Smartmatic is odious and infamous," as alleged in Paragraph 446 of the Complaint.

**RESPONSE:**

**REQUEST NO. 56:**

All Documents and Communications relating to Your contention that You were injured by the Alleged Defamatory Statements.

**RESPONSE:**

**REQUEST NO. 57:**

Documents and Communications that support Your request for no less than $2.7 billion in actual, consequential, and special damages in the above-captioned case, as well as Documents and Communications that demonstrate the actions any Smartmatic Entity  has undertaken to mitigate its alleged damages.

**RESPONSE:**

**REQUEST NO. 58:**

Documents sufficient to show the date and amount of monetary damages You have sought for any claim of reputational harm that You have made over the past five years (including claims associated with any other defamation lawsuits You have filed).

**RESPONSE:**

**REQUEST NO. 59:**

Documents and Communications that support Your request for punitive damages.

**RESPONSE:**

**REQUEST NO. 60:**

Documents relating to the amount of attorneys' fees and costs Plaintiffs have accrued to date, regardless of whether they have actually been billed or paid.

**RESPONSE:**

**REQUEST NO. 61:**

Communications that any Smartmatic Entity has had with Other Media Organizations regarding any statement or publication alleged to be defamatory of any Smartmatic Entity from the formation of any Smartmatic Entity to the present, as well as (1) the identity of the Persons involved in the Communication(s); (2) the date of Communication(s); and (3) the substance of the Communication(s).

**RESPONSE:**

**REQUEST NO. 62:**

Documents and Communications that demonstrate negative or critical thoughts, feedback, and/or concern any Smartmatic Entity or any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers, from the formation of any Smartmatic Entity to the present.

**RESPONSE:**

**REQUEST NO. 63:**

Documents sufficient to identify all sources of funding You are using to pay costs, expenses, or fees for this case, including each entity or individual providing funds, contingency services, pro bono services, or litigation financing and the related oral or written agreements.

**RESPONSE:**

22

**REQUEST NO. 64:**

All Smartmatic Entity financial statements, including balance sheets, income statements, cash flow

statements, statements of shareholders' equity, Special Purpose Acquisition Company statements,

other private equity valuations, and any form of other valuation from that Smartmatic Entity's

inception to the present.

**RESPONSE:**

**REQUEST NO. 65:**

All U.S. and other tax returns for any Smartmatic Entity, including but not limited to U.S. federal

tax returns and state tax returns, from any Smartmatic Entity's inception to the present.

**RESPONSE:**

**REQUEST NO. 66:**

Documents and Communication demonstrating any Smartmatic Entity's projected finances, gross

revenue, and net revenue from the beginning of 2020 through 2025.

**RESPONSE:**

**REQUEST NO. 67:**

Documents and Communications related to the Complaint or which form, in whole or in part, a

basis for the Complaint.

**RESPONSE:**

**REQUEST NO. 68:**

All Documents and Communications, including all intra-office Communications (whether by

email, text message, instant message, Slack, or other similar instant messaging software,

memoranda, etc.), between or among any Smartmatic Entity and any Person or entity not a party

to the above-captioned case, relating to Herring, OAN, the Herring Talent, the Herring Guests, the

Retraction Demands, the Complaint, the above-captioned case, and/or the subject matter of the above-captioned case, including but not limited to, William Kennard (Chairman, Board of Directors of AT&T Inc., and Board member of Staple Street Capital), John Stankey (Chief Executive Officer, AT&T Inc.), Bill Morrow (Chief Executive Officer, DirecTV, LLC), Rob Thun (Senior Vice President, Content, DirecTV), AT&T Inc. (including any member of its Board of Directors from 2020 to the present), AT&T Services, Inc., DirecTV, LLC (including any member of its Board of Directors from 2020 to the present), Verizon Fios, Staple Street Capital, Hootan Yaghoobzadeh (Managing Director/Co-Founder, Staple Street Capital), Kay Stimson (Chair, U.S. Department of Homeland Security's Election Infrastructure Sector Coordinating Council), Hamilton Place Strategies, Tony Fratto (Founder, Hamilton Place Strategies) and/or the NAACP.

**RESPONSE:**

**REQUEST NO. 69:**

Documents and Communications that Smartmatic USA Corp. intends to offer in evidence at trial or any hearing in the above-captioned case or to use to question witnesses at any deposition, trial, or hearing in the above-captioned case.

**RESPONSE:**

**REQUEST NO. 70:**

All Documents received by You or Your attorney from any third party, whether in response to a subpoena duces tecum, open records act request or otherwise, that relate to the Alleged Defamatory Statements or to the allegations in the Complaint.

**RESPONSE:**

24

**REQUEST NO. 71:**

All discovery and hearing information (i.e. written discovery requests, written discovery responses, subpoenas, subpoena responses, open records act requests, open records act responses, deposition notices, deposition transcripts, deposition videos, hearing transcripts, and similar material) related to, arising out of, or produced in the lawsuits filed any Smartmatic Entity relating to the U.S. 2020 local, state, and federal elections, including but not limited to *Smartmatic USA Corp., et al. v. Fox News Network, LLC, et al.*, Index No. 151136-2021 (New York County, New York); *Smartmatic USA Corp. and SGO Corporation Unlimited v. Newsmax Media, Inc.*, Case No. N21C-11-028 EMD (Del. Super. Ct.); *Smartmatic USA Corp., et al. v. Sidney Powell*, Case No. 21-cv-02995 (D.D.C.); *Smartmatic USA Corp., et al. v. Lindell, et al.*, Case No. 22-cv-00098 (D. Minn.).

**RESPONSE:**

**REQUEST NO. 72:**

All Documents and Communications concerning complaints or concerns about statements made regarding any Smartmatic Entities related to the U.S. 2020 local, state, and federal elections, including but not limited to retraction requests, responses to retraction requests, and any related correspondence sent by any Smartmatic Entity to any third party.

**RESPONSE:**

**REQUEST NO. 73:**

Documents sufficient to show the method and reliability of auditing for any Smartmatic Entity's voting machines and technology deployed to count ballots in the U.S. 2020 local, state, and federal elections.

**RESPONSE:**

VP/#57426882

**REQUEST NO. 74:**

All Documents and Communications, including marketing materials, pitch packets and promotional materials reflecting any Smartmatic Entity's efforts (or those made on any Smartmatic Entity's behalf) to solicit contracts globally from that Smartmatic Entity's inception to the present.

**RESPONSE:**

**REQUEST NO. 75:**

All Documents and Communications concerning any contracts that you allege any Smartmatic Entity lost or did not obtain as a result of the Alleged Defamatory Statements.

**RESPONSE:**

**REQUEST NO. 76:**

Portions of personnel files of all employees and personnel of Smartmatic Entities who have worked on any Smartmatic Entity's voting equipment or software utilized or employed in the U.S. 2020 local, state, and federal elections that refer to or address any disciplinary actions, errors, problems or concerns relating to: (1) software coding; (2) design or maintenance of any Smartmatic Entity's machines; (3) political affiliations or actions; or (4) public commentary on the 2020 Presidential Election.

**RESPONSE:**

**REQUEST NO. 77:**

All Documents and Communications with Fox News Network, LLC and/or Fox Corp. concerning or in any way relating to the U.S. 2020 local, state, and federal elections or coverage of the election.

**RESPONSE:**

26

**REQUEST NO. 78:**

All Documents and Communications with Newsmax Media, Inc. concerning or in any way relating to the U.S. 2020 local, state, and federal elections or Newsmax Media, Inc.'s coverage of the elections.

**RESPONSE:**

**REQUEST NO. 79:**

All Documents and Communications concerning any vendors or other contractors or affiliates based outside the United States that manufacture, produce, license, or are otherwise involved with any hardware, software, or other components used in any Smartmatic Entity's voting equipment, systems, machines and/or software from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 80:**

Communications with and Documents related to social media platforms, including but not limited to Facebook, Twitter, Instagram, and YouTube concerning the removal of any posts, videos, or other content referencing any Smartmatic Entity in connection with U.S. elections from 2004 to the present, as well as elections in the Philippines, Venezuela, and Kenya from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 81:**

Documents and Communications concerning the relationship between any Smartmatic Entity and any Dominion Entity, including but not limited to oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement. There is no time limit on this Request.

27

**RESPONSE:**

**REQUEST NO. 82:**

Documents and Communications concerning any Smartmatic Entity's efforts to secure a contract with the County of Los Angeles, State of California to provide voting equipment and/or software for the U.S. 2020 local, state, and federal elections.

**RESPONSE:**

**REQUEST NO. 83:**

Documents and Communications relating to the method, manner, procedure, or formulation by which You calculate Your economic damages.

**RESPONSE:**

**REQUEST NO. 84:**

Documents and Communications with any insurance carrier regarding the alleged harm and/or damages for which You seek recovery in this litigation.

**RESPONSE:**

**REQUEST NO. 85:**

All financial audits and documents and correspondence from accounting professionals concerning any Smartmatic Entity from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 86:**

All meeting minutes and other documents concerning meetings of any Smartmatic Entity Board of Directors.

**RESPONSE:**

VP/#57426882

**REQUEST NO. 87:**

All insurance policies or other related documents that in any way relate to the damages You seek or counterclaims you may face in this Action, including but not limited to claims and documents relating to such claims.

**RESPONSE:**

**REQUEST NO. 88:**

All of any Smartmatic Entity's general ledgers for the past five (5) years.

**RESPONSE:**

**REQUEST NO. 89:**

Documents and Communications concerning any Smartmatic Entity's current business plan, as well as any from the past five (5) years.

**RESPONSE:**

**REQUEST NO. 90:**

All documents concerning projections of any Smartmatic Entity's future business plans, including but not limited to prospective contracts and clients.

**RESPONSE:**

**REQUEST NO. 91:**

Documents and Communications concerning Konnech Corporation from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 92:**

Documents and Communications reflecting any Smartmatic Entity's relationship with Konnech Corporation, including but not limited to agreements or contracts between any Smartmatic Entity and Konnech Corporation in relation to the U.S. 2020 local, state, and federal elections.

**RESPONSE:**

**REQUEST NO. 93:**

Documents and Communications concerning complaints, concerns, or investigations about the use of Konnech Corporation's software and/or PollChief election management system.

**RESPONSE:**

**REQUEST NO. 94:**

Documents and Communications concerning any goods provided or services performed by any Smartmatic Entity in connection with the United States Department of Defense from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 95:**

Documents and Communications concerning any goods provided or services performed by any Smartmatic Entity in connection with the Federal Voting Assistance Program from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 96:**

Communications between any Smartmatic Entity and Dr. J. Alex Halderman concerning or in any way related to any Smartmatic Entities' or Dominion Entities' voting machines, equipment, hardware, software, and/or servers from 2004 to the present.

**RESPONSE:**

**REQUEST NO. 97:**

Documents and communications related to the October 19, 2022 Elon University Webinar titled

30

Engendering Trust in Election Outcomes, including, but not limited to, all communications with Dr. J Alex Halderman and/or anyone affiliated with coordinating or organizing the webinar itself.

**RESPONSE:**

**REQUEST NO. 98:**

Documents sufficient to show Your financial condition, including but not limited to profits, margins and revenue from January 2016 to the present.

**RESPONSE:**

**REQUEST NO. 99:**

Documents and Communications, including any written common interest agreements, between or among: (i) any Smartmatic Entity, including its attorneys, including but not limited to Benesch, Friedlander, Coplan & Aronoff LLP and Robins Kaplan LLP; and (ii) any Dominion Entity, Eric Coomer, Ruby Freeman and/or Shaye Moss, or any of their respective attorneys or others, including but not limited to Susman Godfrey LLP, Clare Locke LLP, Brownstein Hyatt Farber Schreck LLP, Rodney Smolla (President, Vermont Law School), Snell & Wilmer L.L.P., Farnan LLP, Cain & Skarnulis PLLC, Recht Kornfeld PC, Dowd Bennett LLP, United To Protect Democracy, Inc., DuBose Miller, Ballard Spahr LLP, Kurt G. Kastorf Law Firm, Michael Linhorst, Willkie Farr & Gallagher, LLP, Ballard Spahr, David A. Schulz (Floyd Abrams Lecturer in Law and Senior Research Scholar in Law, Yale Law School), the Yale Law School Media and Information Access Clinic, Floyd Abrams (Senior Counsel, Cahill Gordon & Reindel LLP), the Yale Law School Abrams Institute for Freedom of Expression at the Information Society Project, Lee Levine, the Media Law Resource Center, and/or George Freeman (Executive Director, Media Law Resource Center).

**RESPONSE:**

31

**REQUEST NO. 100:**

Documents and Communications concerning any analysis performed in connection with security and/or vulnerability assessments for voting machines and software, including but not limited to any such analysis performed by MITRE, the National Election Security Laboratory, Professor J. Alex Halderman, Harri Hursti or any state or federal agency, including but not limited to the Cybersecurity and Infrastructure Security Agency.

**RESPONSE:**

**REQUEST NO. 101:**

Documents and Communications related to work by any public relations professional on behalf of any Smartmatic Entity from that Smartmatic Entity's inception to the present.

**RESPONSE:**

**REQUEST NO. 102:**

Documents and Communications related to any Smartmatic Entity's efforts to distinguish its voting hardware and software technology from any Smartmatic Entity competitor's voting hardware and software technology, including but not limited to any Dominion Entity's voting hardware and software technology, from that Smartmatic Entity's inception to the present.

**RESPONSE:**

VP/#57426882

Dated:  October 24, 2022                    By: /s/ Blaine C. Kimrey

Blaine C. Kimrey, Bar No. IL0091
bkimrey@vedderprice.com
Jeanah Park, Bar No. IL0094
jpark@vedderprice.com
Bryan Clark, Bar No. IL0090
bclark@vedderprice.com
Brian Ledebuhr, Bar No. IL0093
bledebuhr@vedderprice.com
VEDDER PRICE P.C.
222 North LaSalle Street
Chicago, IL 60601
T:  +1 312 609 7500
F:  +1 312 609 5005

Brian K. McCalmon, Bar No. 461196
bmccalmon@vedderprice.com
VEDDER PRICE P.C.
1401 New York Avenue, Suite 500
Washington, DC 20005
T:  +1 202 312 3320
F:  +1 202 312 3322

*Counsel for Herring Networks, Inc.*

VP/#57426882

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of October 2022, I served the foregoing document on

the following counsel of record by electronic mail, hand-delivery and overnight delivery:

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949
J. Erik Connolly
Nicole E. Wrigley
Michael E. Bloom
Lee B. Muench
Emily Newhouse Dillingham
Lauren C. Tortorella
Kathleen Watson Moss
James R. Bedell
Julie M. Loftus
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
mbloom@beneschlaw.com
lmuench@beneschlaw.com
edillingham@beneschlaw.com
ltortorella@beneschlaw.com
kwatsonmoss@beneschlaw.com
jbedell@beneschlaw.com
jloftus@beneschlaw.com


/s/ Blaine Kimrey
Blaine Kimrey

VP/#57426882

# EXHIBIT 1-C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SMARTMATIC USA CORP., et al.,

              Plaintiffs,

        v.

HERRING NETWORKS, INC., d/b/a
ONE AMERICA NEWS NETWORK

              Defendant.

)
)
)
)
)
)
)
)
)
)
)

No. 1:21-cv-02900-CJN

Judge Carl J. Nichols

## PLAINTIFFS' OMNIBUS ANSWERS AND OBJECTIONS
## TO DEFENDANT'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 33, Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited (collectively, "Smartmatic") by and through undersigned counsel, hereby provide the following omnibus answers and objections to Defendants Herring Networks, Inc.'s, d/b/a One America News Network ("OAN") First Set of Interrogatories to Plaintiffs[1] (the "Interrogatories" and, individually, each an "Interrogatory"). Smartmatic's answers are hereby provided without waiver of any questions or objections to relevancy or admissibility as evidence. These answers are specifically made subject to objection during any part of these proceedings.

## GENERAL OBJECTIONS

The following General Objections are incorporated into Smartmatic's responses as though fully set forth herein. The Specific Objections identified for the Interrogatories further identify additional objections specific to that Interrogatory. The General Objections are not waived, or in any way limited, by the Specific Objections. Smartmatic's agreement to provide any responsive

---

[1] Defendant served identical First Set of Interrogatories on each Plaintiff; Plaintiffs respond collectively to Defendant's First Set of Interrogatories in these Omnibus Answers and Objections.

and non-privileged information or documents in response to the Interrogatories shall not be construed as a waiver of any right or objections to the Interrogatories or other discovery procedures. The production of any information or documents by Smartmatic shall be without prejudice to any objections Smartmatic may have as to the relevance or admissibility of any information or document at any hearing or trial.

1.      Smartmatic objects to the Interrogatories to the extent that they might be interpreted as requiring Smartmatic to concede the relevance, materiality, or admissibility of the information sought by the Interrogatories. All of the following objections, answers, and responses are given without prejudice to and with the express reservation of Smartmatic's right to supplement or modify its objections, answers, and responses to the extent required and permitted by applicable law, to incorporate later discovered information, and to rely upon any and all such information and documents at trial or otherwise.  Likewise, Smartmatic shall not be prejudiced if any of its present objections, answers, and responses are based on incomplete knowledge or comprehension of the facts, events, or occurrences involved in this matter.

2.      Smartmatic objects to the Requests, including the Definitions and Instructions, to the extent that they purport to impose obligations beyond those required by the Federal Rules of Civil Procedure, applicable case law, and the Court's orders in this case.

3.      Smartmatic objects to the Interrogatories to the extent that they seek information protected from disclosure by the attorney-client privilege, attorney work product doctrine, joint defense privilege, or by any other applicable privilege or immunity from production. Nothing contained in Smartmatic's responses to these Interrogatories is intended to be, or in any way should be deemed to be, a waiver of any such privilege or immunity. Any inadvertent production of information protected by the attorney-client privilege, prepared in anticipation of litigation or trial,

or otherwise protected or immune from discovery shall not constitute a waiver of any privilege or other basis for objecting to the production of such material or its subject matter. Smartmatic expressly reserves the right to object to the use or introduction of such information.

4.      Smartmatic objects to the Interrogatories to the extent that they seek information that is confidential or proprietary to Smartmatic or its customers. If Smartmatic provides confidential or proprietary information in response to the Interrogatories, such production will be subject to the protective order entered by the Court.

5.      Smartmatic objects to the Interrogatories to the extent that they seek information protected from disclosure under any confidentiality or protective order, or under any other order or stipulation that Smartmatic has entered into or is subject to with respect to any past or present litigation or other matter.

6.      Smartmatic objects to the Interrogatories to the extent that they seek information of third parties protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. An agreement to produce documents or information does not constitute an agreement to produce documents or information protected from disclosure under confidentiality, non-disclosure, or other agreements with third parties.

7.      Smartmatic objects to the Interrogatories to the extent that they seek information, the disclosure of which is prohibited by law, regulation, or order of a court or other authority of a foreign jurisdiction in which such information is located.

8.      Smartmatic objects to the Interrogatories to the extent that they are overbroad, unduly burdensome, vague, and ambiguous, and/or fail to describe the information sought with reasonable particularity. Smartmatic further objects to the Interrogatories as overbroad and unduly burdensome to the extent that they fail to specify reasonable time limitations. When Smartmatic

responds to an Interrogatory that it will produce documents sufficient to show the requested information subject to its objections and a reasonable search, that reasonable search will be governed by the objections and conditions set forth in Smartmatic's Omnibus Responses and Objections to Defendants Herring Networks, Inc., d/b/a One America News Network's First Set of Requests for Production.

9.      Smartmatic objects to the Interrogatories to the extent that they seek "any" or "all" information on the grounds that such Interrogatories are overbroad and unduly burdensome.

10.     Smartmatic objects to the Interrogatories to the extent that they seek disclosure of information that is either irrelevant to the subject matter of this lawsuit or not reasonably calculated to lead to the discovery of relevant or admissible evidence.

11.     Smartmatic objects to the Interrogatories as overbroad and unduly burdensome to the extent they essentially require Smartmatic to provide information on the entire history of Smartmatic's business operations as it relates to its voting systems and technologies.

12.     Smartmatic objects to the Interrogatories to the extent that they call for a legal conclusion.

13.     Smartmatic objects to the Interrogatories to the extent that they seek disclosure of information that is not in Smartmatic's possession, custody, or control.

14.     Smartmatic objects to the Interrogatories to the extent that they seek disclosure of information that is already in OAN's possession, custody, or control, or is equally available to OAN.

15.     Smartmatic objects to the Interrogatories to the extent that the burden or expense of the proposed discovery outweighs its likely benefit.

16.     Smartmatic objects to the definition of "Dominion Entity(ies)" as vague, ambiguous, overbroad, and overly burdensome. Smartmatic will construe "Dominion Entity(ies)" to mean the corporate entities US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation.

17.     Smartmatic objects to the definition of "Plaintiff(s)," "Smartmatic Entity(ies)," "SGO Corporation Limited," "Smartmatic International Holding B.V.," "Smartmatic USA Corp.," "You," and "Your" as vague, ambiguous, overbroad, and unduly burdensome to the extent that they include persons and entities that are not parties to this action and who do not possess responsive information.

18.     Smartmatic objects to the Interrogatories to the extent that they use phrases or terms that have specific or technical definitions under state or federal regulations, and such phrases or terms are not specifically defined.

19.     Smartmatic's use of a given term in its Responses does not mean that the term is not vague and ambiguous, as used in the Interrogatories, or that Smartmatic endorses the use of the term.

20.     An agreement in Smartmatic's response to produce certain documents is not meant to state or imply that such documents exist.

21.     As identified in Defendant's Definitions and Instructions, unless otherwise indicated, the relevant time period for Smartmatic's answers is January 1, 2020 to the present.

## **INTERROGATORIES**

## **INTERROGATORY NO. 1:**

Identify the Person(s) who prepared and/or assisted in the preparation of the Answers to these Interrogatories, including any Person(s) who supplied information and/or Documents used in the preparation of the Answers. To the extent more than one Person prepared and/or assisted, identify which specific Answers each such Person prepared and/or assisted in preparing.

**ANSWER:**   Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Subject to and without waiving the foregoing objections, Smartmatic responds that the following individuals have provided information in response to these Interrogatories: Antonio Mugica, Roger Piñate, Eduardo Correia, James Long, and Samira Saba.

## INTERROGATORY NO. 2:

Identify and describe the factual basis for Your denial of (or failure to unequivocally admit) any of the First Set of Requests for Admission propounded upon You contemporaneously with this First Set of Interrogatories.

**ANSWER:**   Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further incorporates its objections to Defendant's First Set of Requests for Admission. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Interrogatory as overbroad, overly burdensome, and as violating Federal Rule of Civil Procedure 33(a)(1).  *See Safeco Ins. Co. of Am. v. Rawstron*, 181 F.R.D. 441, 448 (C.D. Cal. 1998) ("Allowing service of an interrogatory which requests disclosure of all of the information on which the denials of each of 50 requests for admissions were based, however, essentially transforms each request for admission into an interrogatory. This is not the purpose requests for admissions were intended to serve, and because Rule 36 imposes no numerical limit on the number of requests for admissions that may be served, condoning such a practice would circumvent the numerical limit contained in Rule 33(a).").

**INTERROGATORY NO. 3:**

Identify each and every Smartmatic Entity, including those in the United States and in all foreign countries, since the founding of any Smartmatic Entity, including but not limited to every Smartmatic Entity in the countries identified in Footnotes 2 and 21 of the Complaint.

**ANSWER:**   Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Interrogatory as overbroad and overly burdensome to the extent that it seeks information regarding "each and every Smartmatic Entity," regardless of that entity's relevance to the claims and defenses in this action. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic will produce organizational charts sufficient to show the corporate structure of Smartmatic during the relevant time period.

**INTERROGATORY NO. 4:**

Identify all Persons, including but not limited to private entities and governmental entities, including but not limited to all foreign and U.S. national, state, county and local governmental entities from whom any Smartmatic Entity has sought a contract, including but not limited to contracts to conduct election caucuses, as well as contracts with subcontractors to assist Plaintiffs in conducting elections and election caucuses, and for each contract sought, identify whether any Smartmatic Entity was awarded the contract, and if so, describe (1) the work performed under each contract; (2) the term limit of each contract; and (3) the reason for the termination or non-renewal of each contract.

**ANSWER:**   Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it

7

seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Interrogatory to the extent it seeks information or documentation protected from disclosure under confidentiality under other agreements with third parties that Smartmatic has entered into or is subject to. Smartmatic further objects to this Interrogatory to the extent that it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to this Interrogatory to the extent that it seeks "all" such information on the grounds that such Interrogatories are overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic responds that it will produce its contracts for the provision of voting technology, and any bids, RFI responses and RFP responses submitted by Smartmatic for the provision of voting technology, within the relevant time period of January 1, 2020 to the present as identified by Defendant.

## INTERROGATORY NO. 5:

Identify all financial contributions, contributions of services, or contributions of other things of value from third parties that are funding this litigation brought by You.

**ANSWER:**   Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to the terms "contributions," "other things of value," and "third parties" as used in this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further

objects to this Interrogatory to the extent that it seeks "all" such information on the grounds that

such Interrogatories are overbroad and unduly burdensome.

## INTERROGATORY NO. 6:

Identify all current or former employees of, or personnel affiliated with, any Smartmatic Entity, including but not limited to those who have been or are currently employed by the U.S. government or in any federal, state or city-wide official, office or campaign, who have been or are referenced in any criminal charge, civil complaint or administrative proceeding in which any Smartmatic Entity was identified as a defendant, respondent or subject of a government investigation.

**ANSWER:** Smartmatic incorporates by reference its General Objections as if fully

stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information

protected by the attorney-client privilege, the attorney work product immunity, and/or any other

applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it

seeks information that is not relevant to any claim or defense asserted in this Action and is not

reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects

to this Interrogatory to the extent that it seeks "all" such information on the grounds that such

Interrogatories are overbroad and unduly burdensome. Smartmatic objects to the terms "personnel

affiliated with" and "referenced in any criminal charge," as used in this Interrogatory, as vague,

ambiguous, overbroad, and unduly burdensome.  Subject to and without waiving the foregoing

objections, Smartmatic responds that it will provide a response only upon such time as this

Interrogatory is narrowed in scope.

## INTERROGATORY NO. 7:

Identify all instances in which any Smartmatic Entity's voting machines, equipment, hardware, software and/or servers were not certified by any national, state, county or local governmental agency in either the United States or abroad, as well as the reason for the lack of certification.

**ANSWER:** Smartmatic incorporates by reference its General Objections as if fully

stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information

protected by the attorney-client privilege, the attorney work product immunity, and/or any other

applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic objects to the phrases "not certified" and "lack of certification" as used in this Interrogatory, as vague and ambiguous. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to this Interrogatory to the extent that it seeks "all" such information on the grounds that such Interrogatories are overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic responds that it will provide a response only upon such time as this Interrogatory is clarified and narrowed in scope.

## INTERROGATORY NO. 8:

From the time any Smartmatic Entity began performing any business in the United States, provide the amount of annual revenue derived by each Smartmatic Entity in each state.

**ANSWER:**   Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Interrogatory as irrelevant, overbroad, and overly burdensome to the extent that it seeks information outside of the reasonable time frame relevant to this action. Smartmatic further objects to the phrases "performing any businesses" and "derived by," and "in each state" as used in this Interrogatory as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without

waiving the foregoing objections, Smartmatic responds that it will provide a response only upon such time as this Interrogatory is clarified and narrowed in scope.

**INTERROGATORY NO. 9:**

From first Smartmatic Entity formation to the present, identify all hardware and/or software, including but not limited to servers, licensed or purchased by any Smartmatic Entity for purposes of its election machines, including the identity of the company from which the Smartmatic Entity licensed or purchased the hardware or software, and the year in which each Smartmatic Entity purchased or began licensing the hardware and/or software.

      **ANSWER:**   Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Interrogatory as irrelevant and overbroad. Smartmatic further objects to the unlimited time frame and geographic scope for the information sought by this Interrogatory as overly burdensome, overbroad, and not proportional to the needs of the case. Smartmatic further objects to this Interrogatory to the extent that it seeks "all" such information on the grounds that such Interrogatories are overbroad and unduly burdensome.

**INTERROGATORY NO. 10:**

From the first Smartmatic Entity formation to the present, identify all Persons involved in any Smartmatic Entity's voting machines, equipment, hardware, software and/or servers, including but not limited to those Persons involved in the development, testing, implementation, inspection, maintenance, updating, imaging, uploading or downloading of any Smartmatic Entity's voting machines, equipment, hardware, software and/or servers in the United States and abroad, and also including but not limited to those Persons involved in connection with the voting machines or related storage servers or devices used during the U.S. 2020 local, state and federal elections.

      **ANSWER:**   Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information

protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic objects to the terms "involved in," "development," "testing," "implementation," "inspection," "maintenance," "updating," "imaging," "uploading," and "downloading," as used in this Interrogatory as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to this Interrogatory as irrelevant and overbroad. Smartmatic further objects to the unlimited time frame and geographic scope for the information sought by this Interrogatory as overly burdensome, overbroad, and not proportional to the needs of the case. Smartmatic further objects to this Interrogatory to the extent that it seeks "all" such information on the grounds that such Interrogatories are overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic will produce documents sufficient to identify Smartmatic employees with primary responsibility for the development, testing, implementation, inspection, maintenance, updating, imaging, uploading or downloading of any Smartmatic's voting machines and software utilized in the 2020 Presidential Election.

**INTERROGATORY NO. 11:**

Identify all instances when the voting machines, equipment, software and/or servers of any Smartmatic Entity received software updates or any other maintenance (whether hardware or software related) from January 1, 2020 to November 3, 2020, and for each instance, identify the number of machines impacted, the nature of the update or maintenance, the relevant date, the location of the machines on the date of the update or maintenance and on November 3, 2020, whether the machines were employed in the U.S. 2020 local, state and federal elections, and any problems, concerns or issues that arose as a result of the updates or maintenance.

12

**ANSWER:**   Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to the phrase "other maintenance," as used in this Interrogatory, as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to this Interrogatory to the extent that it seeks "all" such information on the grounds that such Interrogatories are overbroad and unduly burdensome. Smartmatic further objects to this Interrogatory to the extent that it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to this Interrogatory on the grounds that it is overly broad and not reasonably limited in scope to the extent it seeks information unrelated to Smartmatic's role in the 2020 Presidential Election or to the defamatory statements detailed in the Complaint. Accordingly, Smartmatic's response to this Interrogatory is limited to the election machines and software developed by Smartmatic and utilized in the 2020 U.S. Presidential Election. Subject to and without waiving the foregoing objections, Smartmatic states that the following versions of the technology it developed for use by Los Angeles County in the 2020 Presidential Election have been certified by the Secretary of State of the State of California: VSAP 1.0; VSAP 2.0; VSAP 2.1; VSAP 2.2; and VSAP 3.0. Responding further, Smartmatic states that it was not responsible for applying software updates to the voting machines or equipment utilized in the 2020 Presidential Election.

**INTERROGATORY NO. 12:**

Identify all Persons who, since the founding of any Smartmatic Entity, have raised issues concerning any Smartmatic Entity's products, equipment, software or services, including but not

limited to concerns about potential or alleged security issues, vulnerabilities, vote tabulation errors or bribes, including but not limited to those issues raised in the United States, the Philippines and Kenya, including but not limited to those issues raised by the United States Department of Justice, the Philippines' Commission on Elections and any Person asserting a lawsuit against any Smartmatic Entity, and for each such Person, identify (1) the date of Communication or such issue(s); (2) the nature of the issue(s); and (3) the actions taken by any Smartmatic Entity to address the issue(s).

      **ANSWER:**    Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Interrogatory to the extent that it seeks "all" such information on the grounds that such Interrogatories are overbroad and unduly burdensome. Smartmatic further objects to the terms "founding," "issues," "concerns," "security issues," "vulnerabilities," "vote tabulation errors," "bribes" as used in the Interrogatory as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to this Interrogatory as irrelevant, overbroad, and unduly burdensome to the extent that it seeks information outside of a reasonable time frame relevant to this action. Smartmatic further objects to the extent that it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to this Interrogatory on the grounds that it is overly broad and not reasonably limited in scope to the extent it seeks information unrelated to Smartmatic's role in the 2020 Presidential Election or to the defamatory statements detailed in the Complaint. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic will produce documents sufficient to identify persons who have raised issues concerning any security issues, vulnerabilities, vote

tabulation errors, or bribes with regard to the voting machines and technology developed by Smartmatic and utilized in the 2020 Presidential Election, to the extent that they exist and can be located by a reasonable search.

**INTERROGATORY NO. 13:**

From the first Smartmatic Entity formation to the present, identify all audits performed on any of any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers by a third party, including (1) the identity of the entity or Person that performed each audit; (2) the result of each audit; (3) and the actions taken by any Smartmatic Entity to address any issue(s) found in each audit.

**ANSWER:**   Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Interrogatory to the extent that it seeks "all" such information on the grounds that such Interrogatories are overbroad and unduly burdensome. Smartmatic further objects to this Interrogatory to the extent that it seeks information outside of Smartmatic's possession, custody, or control. Smartmatic further objects to the terms "formation," "third party," and "issue(s)" as used in this Interrogatory, as vague, ambiguous, and overbroad. Smartmatic further objects to this Interrogatory as irrelevant, overbroad, and unduly burdensome to the extent that it seeks information outside of a reasonable time frame relevant to this action. Smartmatic further objects to this Interrogatory on the grounds that it is overly broad and not reasonably limited in scope to the extent it seeks information unrelated to Smartmatic's role in the 2020 Presidential Election or to the defamatory statements detailed in the Complaint. Subject to and without waiving the

foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic will produce documents sufficient to identify post-election audits of the machines or software developed by Smartmatic and utilized in the 2020 Presidential election, to the extent that they exist and can be located by reasonable search.

## INTERROGATORY NO. 14:

From the first Smartmatic Entity formation to the present, identify any reports, investigations or audits any Smartmatic Entity performed in connection with any Smartmatic Entity's voting equipment or software, including but not limited to any Smartmatic Entity's voting equipment or software utilized in the U.S. 2020 local, state and federal elections.

**ANSWER:**   Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to the terms "formation," "reports," and "investigations" as used in this Interrogatory, as vague, ambiguous, and overbroad. Smartmatic further objects to this Interrogatory as irrelevant, overbroad, and unduly burdensome to the extent that it seeks information outside of a reasonable time frame relevant to this action. Smartmatic further objects to this Interrogatory on the grounds that it is overly broad and not reasonably limited in scope to the extent it seeks information unrelated to Smartmatic's role in the 2020 Presidential Election or to the defamatory statements detailed in the Complaint. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic will produce documents sufficient to identify post-election audits of the machines or software developed by Smartmatic and utilized

in the 2020 Presidential election, to the extent that they exist and can be located by reasonable search.

**INTERROGATORY NO. 15:**

Identify all versions of any website of any Smartmatic Entity from creation to the present.

     **ANSWER:**   Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Interrogatory to the extent that it seeks "all" such information on the grounds that such Interrogatories are overbroad and unduly burdensome. Smartmatic further objects to the terms "versions" and "any website," as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to this Interrogatory as irrelevant, overbroad, and unduly burdensome to the extent that it seeks information outside of a reasonable time frame relevant to this action. Smartmatic further objects to this Interrogatory on the grounds that it is overly broad and not reasonably limited in scope to the extent it seeks information unrelated to Smartmatic's role in the 2020 Presidential Election or to the defamatory statements detailed in the Complaint.

**INTERROGATORY NO. 16:**

Describe how any Smartmatic Entity stores, maintains or otherwise retains its election data, including but not limited to any Smartmatic Entity's retention policy for election data from the U.S. 2020 local, state and federal elections.

     **ANSWER:**   Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other

applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it

seeks information that is not relevant to any claim or defense asserted in this Action and is not

reasonably calculated to lead to the discovery of admissible evidence. Smartmatic objects to the

terms "election data" as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic

further objects to this Interrogatory to the extent it seeks information outside of Smartmatic's

possession, custody, or control. Smartmatic further objects to this Interrogatory on the grounds

that it is overly broad and not reasonably limited in scope to the extent it seeks information

unrelated to Smartmatic's role in the 2020 Presidential Election or to the defamatory statements

detailed in the Complaint. Smartmatic further objects to this Interrogatory to the extent it seeks

information or documentation protected from disclosure under confidentiality or other agreements

with third parties that Smartmatic has entered into or is subject to. Subject to and without waiving

the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic

responds that with regard to the 2020 Presidential Election, Smartmatic was responsible for the

development, manufacturing, and implementation of Ballot Marking Devices ("BMDs"), a

component of Los Angeles County's Voting Solutions for All People ("VSAP") voting system.

The BMD is the primary voter interface system and consists of a touchscreen, an audio and tactile

controller, and dual-switch input that voters use to generate, verify, and cast a paper ballot.

Completed ballots are transferred to the Integrated Ballot Box, attached to the BMD. The BMD

does not tabulate or retain voting data.

## INTERROGATORY NO. 17:

Describe in detail all Smartmatic Entity past and/or present business relationships with other
election machine and/or software companies, including but not limited to any Dominion Entity
and Sequoia Voting Systems Inc.

      **ANSWER:**   Smartmatic incorporates by reference its General Objections as if fully

stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information

protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Interrogatory to the extent that it seeks "all" such information on the grounds that such Interrogatories are overbroad and unduly burdensome. Smartmatic objects to the terms, "business relationships" as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to the reference to "other election machine and/or software companies" as vague, ambiguous, overbroad, and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic states: Smartmatic has no present business relationship with Dominion or Sequoia Voting Systems. Responding further, Smartmatic states that it has never leased, sold, assigned, or licensed intellectual property owned by Smartmatic to Dominion. With regard to Sequoia Voting Systems, Smartmatic states that Smartmatic International Corporation Delaware acquired Sequoia in 2005. In 2007, Smartmatic sold Sequoia to a group of private U.S. investors comprised of Sequoia's executive management team at the time of the sale.

**INTERROGATORY NO. 18:**

Identify all public relations firms retained by any Smartmatic Entity from January 1, 2020 to the present.

**ANSWER:**   Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without

waiving the foregoing objections, Smartmatic retained the following public relations firms from January 1, 2020 to present: Stratbase Research Institute Inc., The Issues and Crisis Group LLC, SEC Newgate US LLC, Scott Circle Communications, Inc., Courtney Torres Consulting, Inc., Latinon Inc., Tecnología Estadística Consultores en Opinión Pública (TEST S DE R L), Jesús Enrique Delgado Valery, Every Solutions, Plus 351, Mario Agustin Valdez, Mariana Izturiz Boada, iMaat S.A.S, Social Media Comunicaciones (Sergio Morataya), and Televideo Advertising Inc.

Date:  December 16, 2022

Respectfully submitted,

/s/ J. Erik Connolly
J. Erik Connolly (D.C. Bar No. IL0099)
Nicole E. Wrigley (D.C. Bar No. IL0101)
Lee B. Muench (admitted *pro hac vice*)
Julie M. Loftus (admitted *pro hac vice*)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312.212.4949
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
lmuench@beneschlaw.com
jloftus@beneschlaw.com

*Attorneys for the Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 16, 2022, copies of the foregoing

**Plaintiffs' Omnibus Responses and Objections to Defendant's First Set of Interrogatories**

were served via email on all attorneys of record:

**VEDDER PRICE P.C.**

Blaine Kimrey
Jeanah Park
Bryan Clark
Brian Ledebuhr
222 North LaSalle Street
Chicago, IL 60601
T: +1 312 609 7500
F: +1 312 609 5005
bkimrey@vedderprice.com
jpark@vedderprice.com
bclark@vedderprice.com
bledebuhr@vedderprice.com

Brian K. McCalmon
1401 New York Avenue, Suite 500
Washington, DC 20005
T: +1 202 312 3320
F: +1 202 312 3322
bmccalmon@vedderprice.com

                                        */s/ J. Erik Connolly*
                                        J. Erik Connolly

## VERIFICATION OF ROBERT COOK

COUNTY OF PALM BEACH )

                           ) SS.

STATE OF FLORIDA )

      Robert Cook hereby affirms under penalties of perjury the following:

      I am authorized to execute this verification on behalf of Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited. I have read the foregoing responses to interrogatories and know the contents thereof, and believe the same to be true and correct to the best of my knowledge, information and belief.

Dated: December 18th 2022

Robert Cook

SWORN TO AND SUBSCRIBED BEFORE ME on this 5 day of December, 2022.

_____
NOTARY PUBLIC

9

SOLIMAR ALMAO
Notary Public - State of Florida
Commission # HH 267296
My Comm. Expires Aug '6, 2026
Bonded through National Notary Assn.

# EXHIBIT 1-D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SMARTMATIC USA CORP., et al.,

|  |  |  |
|---|---|---|
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) | No. 1:21-cv-02900-CJN |
|  | ) |  |
| HERRING NETWORKS, INC., d/b/a | ) | Judge Carl J. Nichols |
| ONE AMERICA NEWS NETWORK | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## PLAINTIFFS' OMNIBUS RESPONSES AND OBJECTIONS TO DEFENDANT'S FIRST SET OF REQUESTS FOR PRODUCTION

Pursuant to Federal Rule of Civil Procedure 34, Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited (collectively, "Smartmatic") by and through undersigned counsel, hereby provide the following omnibus responses and objections to Defendants Herring Networks, Inc.'s, d/b/a One America News Network ("OAN") First Set of Requests for Production to Plaintiffs[1] (the "Requests" and, individually, each a "Request"). Smartmatic's responses are hereby provided without waiver of any questions or objections to relevancy or admissibility as evidence. These responses are specifically made subject to objection during any part of these proceedings.

## GENERAL OBJECTIONS

The following General Objections are incorporated into Smartmatic's responses as though fully set forth herein. The Specific Objections identified for the Requests further identify additional objections specific to that Request. The General Objections are not waived, or in any way limited, by the Specific Objections. Smartmatic's agreement to provide any responsive and non-privileged

---

[1] Defendant served a substantially identical First Set of Requests for Production on each Plaintiff; Plaintiffs respond collectively to Defendant's First Set of Requests for Production in these Omnibus Responses and Objections.

information or documents in response to the Requests shall not be construed as a waiver of any right or objections to the Requests or other discovery procedures. The production of any information or documents by Smartmatic shall be without prejudice to any objections Smartmatic may have as the to the relevance or admissibility of any information or document at any hearing or trial.

1.      Smartmatic objects to the Requests to the extent that they might be interpreted as requiring Smartmatic to concede the relevance, materiality, or admissibility of the information sought by the Requests. All of the following objections, answer, and responses are given without prejudice to and with the express reservation of Smartmatic's right to supplement or modify its objections, answers, and responses to the extent required and permitted by applicable law, to incorporate later discovered information, and to rely upon any and all such information and documents at trial or otherwise. Likewise, Smartmatic shall not be prejudiced if any of its present objections, answers, and responses are based on incomplete knowledge or comprehension of the facts, events, or occurrences involved in this matter.

2.      Smartmatic objects to the Requests, including the Definitions and Instructions, to the extent that they purport to impose obligations beyond those required by the Federal Rules of Civil Procedure, applicable case law, and the Court's orders in this case.

3.      Smartmatic objects to the Requests to the extent that they seek information protected from disclosure by the attorney-client privilege, attorney work product doctrine, joint defense privilege, or by any other applicable privilege or immunity from production. Nothing contained in Smartmatic's responses to these Requests is intended to be, or in any way should be deemed to be, a waiver of any such privilege or immunity. Any inadvertent production of information protected by the attorney-client privilege, prepared in anticipation of litigation or trial,

or otherwise protected or immune from discovery shall not constitute a waiver of any privilege or other basis for objecting to the production of such material or its subject matter. Smartmatic expressly reserves the right to object to the use or introduction of such information.

4.      Smartmatic objects to the Requests to the extent that they seek information that is confidential or proprietary to Smartmatic or its customers. If Smartmatic provides confidential or proprietary information in response to the Requests, such production will be subject to the final terms of a protective order entered by the Court.

5.      Smartmatic objects to the Requests to the extent that they seek information protected from disclosure under any confidentiality or protective order, or under any other order or stipulation that Smartmatic has entered into or is subject to with respect to any past or present litigation or other matter.

6.      Smartmatic objects to the Requests to the extent that they seek information of third parties protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. An agreement to produce documents does not constitute an agreement to produce documents protected from disclosure under confidentiality, non-disclosure, or other agreements with third parties.

7.      Smartmatic objects to the Requests to the extent that they seek information, the disclosure of which is prohibited by law, regulation, or order of a court or other authority of a foreign jurisdiction in which such information is located.

8.      Smartmatic objects to the Requests to the extent that they are overbroad, unduly burdensome, vague, and ambiguous, and/or fail to describe the information sought with reasonable particularity.

9.      Smartmatic objects to the Requests to the extent that they seek "any" or "all" information on the grounds that such Requests are overbroad and unduly burdensome.

10.     Smartmatic objections to the Requests to the extent that they seek disclosure of information that is either irrelevant to the subject matter of this lawsuit or not reasonably calculated to lead to the discovery of relevant or admissible evidence.

11.     Smartmatic objects to the Requests as overbroad and unduly burdensome to the extent that they seek disclosure of information that essentially requires Smartmatic to provide information on the entire history of Smartmatic's business operations as it relates to its voting systems and technologies.

12.     Smartmatic objects to the Requests to the extent that they call for a legal conclusion.

13.     Smartmatic objects to the Requests to the extent that they seek disclosure of information that is not in Smartmatic's possession, custody, or control.

14.     Smartmatic objects to the Requests to the extent that they seek disclosure of information that is already in OAN's possession, custody, or control, or is equally available to OAN.

15.     Smartmatic objects to the Requests to the extent that the burden or expense of the proposed discovery outweighs its likely benefit.

16.     Smartmatic objects to the definition of "Dominion Entity(ies)" as vague, ambiguous, overbroad, and overly burdensome. Smartmatic will construe "Dominion Entity(ies)" to mean the corporate entities US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation.

17.     Smartmatic objects to the definition of "Plaintiff(s)," "Smartmatic Entity(ies)," "SGO Corporation Limited," "Smartmatic International Holding B.V.," "Smartmatic USA Corp.,"

4

"You," and "Your" as vague, ambiguous, overbroad, and unduly burdensome to the extent that they include persons and entities that are not parties to this action and who do not possess responsive information.

18.     Smartmatic objects to the Requests to the extent that they use phrases or terms that have specific or technical definitions under state or federal regulations, and such phrases or terms are not specifically defined.

19.     Smartmatic's use of a given term in its Responses does not mean that the term is not vague and ambiguous, as used in the Requests, or that Smartmatic endorses the use of the term.

20.     An agreement in Smartmatic's response to produce certain documents is not meant to state or imply that such documents exist.

21.     An agreement to produce documents identified by a reasonable search means that Smartmatic will conduct a reasonable search based on the identification of reasonable custodians, the use of reasonable search terms, and the use of a reasonable timeframe. As identified in Defendant's Definitions and Instructions, unless otherwise indicated, the relevant time period for Smartmatic's agreement to produce documents is January 1, 2020 to the present.

## SPECIFIC OBJECTIONS AND RESPONSES

### REQUEST NO. 1:

Documents identified in Your Answers to the First Set of Interrogatories propounded upon You contemporaneously with this First Set of Requests for Production, as well as any and all Documents reviewed or relied upon in answering those Interrogatories.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work

product doctrine, and/or any other applicable privilege or immunity. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 2:**

Documents relating to, referenced in, and/or providing a basis for Your responses to the First Set of Requests for Admission propounded upon You contemporaneously with this First Set of Requests for Production.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic objects to this Request's reference to documents "relating to" or "providing a basis for" its answers to the First Set of Requests for Admission as vague, ambiguous, overbroad, and overly burdensome. Subject to and without waiving the foregoing objections, Smartmatic will produce documents referenced in Smartmatic's Omnibus Answers and Objections to Defendant's First Set of Requests for Admission, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 3:**

All discovery requests and responses of any type (i.e. interrogatories and responses, document requests and responses, requests to admit and responses, deposition transcripts and video, deposition errata sheets, subpoenas and responses, open records act requests and responses, and any other form of discovery request or response) produced by anyone in any litigation between any Smartmatic Entity and any Dominion Entity.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is

not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent that it seeks "all" such documents on the grounds that such Requests are overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic states that there has been no litigation between any Smartmatic Entity and any Dominion Entity during the relevant time period, and thus no documents responsive to this Request exist.

**REQUEST NO. 4:**

Documents regarding Herring, OAN, and/or the Herring Talent.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 5:**

Documents regarding the Herring Guests from January 1, 2018 to present.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work

product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to

the timeframe for the documents sought with respect to this Request as overbroad and unduly

burdensome. Subject to and without waiving the foregoing objections, Smartmatic will produce

responsive documents from January 1, 2020 to the present, to the extent they exist and can be

located by a reasonable search.

**REQUEST NO. 6:**

Communications to, from, and/or between [Smartmatic USA Corp./SGO Corporation Limited/Smartmatic International Holding B.V.] and any Person, including but not limited to Other Media Organizations and governmental entities and officials, regarding the Herring Talent from January 1, 2018 to present.

 **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully

stated herein. Smartmatic further objects to this Request to the extent it seeks information that is

not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead

to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it

seeks information or documentation protected by the attorney-client privilege, the attorney work

product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to

the timeframe for the documents sought with respect to this Request as overbroad and unduly

burdensome. Subject to and without waiving the foregoing objections, Smartmatic will produce

responsive documents from January 1, 2020 to the present, to the extent they exist and can be

located by a reasonable search.

**REQUEST NO. 7:**

Communications to, from, and/or between any Smartmatic Entity and any past or present Herring employees, including but not limited to Martin Golingan.

 **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully

stated herein. Smartmatic further objects to this Request to the extent it seeks information that is

not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 8:**

Documents and Communications regarding the formation of any Smartmatic Entity.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Subject to and without waiving the foregoing objections, Smartmatic will produce organizational charts sufficient to show the corporate structure of Smartmatic, to the extent that such documents exist and can be located by a reasonable search.

**REQUEST NO. 9:**

Documents and Communications demonstrating any Smartmatic Entity's corporate governance and ownership structure, inclusive of all parent and subsidiary companies, from the formation of any Smartmatic Entity to the present.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead

to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Subject to and without waiving the foregoing objections, Smartmatic will produce organizational charts sufficient to show the corporate structure of Smartmatic, to the extent that such documents exist and can be located by a reasonable search.

**REQUEST NO. 10:**

All versions of any website of any and all Smartmatic Entities from creation to the present.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent that it seeks "all" such documents on the grounds that such Requests are overbroad and unduly burdensome. Smartmatic further objects to the timeframe (encompassing over twenty years) for the documents sought with respect to this Request as overbroad and unduly burdensome. Smartmatic further objects to this Request on the grounds that the information is equally accessible to OAN through the use of the Wayback Machine. Smartmatic will not produce documents in response to this Request.

**REQUEST NO. 11:**

The human resources records of Antonio Mugica, Roger Piñate, Alfredo Anzola, Marlon Garcia, Neil Baniqued, and Mauricio Herrera related to their involvement in procuring services for Comelec and/or related to any Philippines election from May 2016 to the present.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic objects to the term "human resources records" as vague, ambiguous, and overbroad. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to the timeframe for the documents sought with respect to this Request as overbroad and unduly burdensome. Smartmatic will not produce documents in response to this Request.

## REQUEST NO. 12:

Documents and Communications relating to the "strict ethics code" with which any Smartmatic Entity's founders and employees allegedly must comply, as referenced in Paragraph 339 of the Complaint.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Subject to and without waiving the foregoing objections, Smartmatic will produce documents sufficient to identify Smartmatic's employee ethical code or guidelines as referenced in Paragraph 339 of the Complaint.

## REQUEST NO. 13:

Documents and Communications relating to any agreement or contract between [Smartmatic USA Corp./SGO Corporation Limited/Smartmatic International Holding B.V.] and any state, county, or local governmental entity of the United States, to provide voting machines, elections technology and/or services from 2005 to the present.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request as unduly burdensome as to the time period. Subject to and without waiving the foregoing objections, Smartmatic responds that it will produce its contracts for the provision of voting technology, and any bids, RFI responses and RFP responses submitted by Smartmatic for the provision of voting technology, from January 1, 2018 to present.

**REQUEST NO. 14:**

Documents and Communications relating to any agreements or contracts between any Smartmatic Entity and any foreign governmental entities and/or officials from 2004 to the present to provide voting machines, elections technology and/or services, including but not limited to the "more than 25 countries on five continents" in which Smartmatic Entities have conducted business, as alleged in Paragraph 24 of the Complaint.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it

seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to the timeframe for the documents sought with respect to this Request as overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic responds that it will produce its contracts for the provision of voting technology, and any bids, RFI responses and RFP responses submitted by Smartmatic for the provision of voting technology, from January 1, 2018 to present.

**REQUEST NO. 15:**

Documents and Communications demonstrating or related to the location of all voting machines, hardware, servers, and/or software that are or have been affiliated with, developed, facilitated or funded by the Smartmatic Entities from 2005 to the present.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request as overbroad and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to the terms "affiliated with," "facilitated," and "funded by" as vague, ambiguous, overbroad, and overly burdensome. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to the timeframe for the documents sought with respect to this Request as overbroad and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Smartmatic will not produce documents in response to this Request.

13

**REQUEST NO. 16:**

Manuals and policies for voting machines, equipment, hardware, software, and/or servers used during 2020 elections in the United States, whether owned, rented, or licensed by the Smartmatic Entities.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent that it seeks "all" manuals and policies on the grounds that such Requests are overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic responds that it will produce responsive documents regarding ballot-marking devices used in Los Angeles County in the 2020 Presidential Election.

**REQUEST NO. 17:**

Documents and Communications that support Your contention that all Smartmatic Entity "case studies demonstrate, time and time again, that Smartmatic's election technology and software can ensure quick and accurate voting results," as alleged in Paragraph 45 of the Complaint.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to the timeframe for the documents sought with respect to this Request as overbroad and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Subject to and without waiving the foregoing

objections, Smartmatic responds that it will produce the case studies referenced in Paragraph 45 of the Complaint.

**REQUEST NO. 18:**

Documents and Communications relating to any agreements between any Smartmatic Entity and any third party regarding inspections, maintenance, updates to software and/or hardware, imaging of drives, servers and/or data uploads or downloads related to any Smartmatic Entity's voting machines or software and related storage servers or devices used in elections in the United States or elsewhere, including but not limited to the 2020 election in the United States, as well as elections in Venezuela, the Philippines, and Kenya from 2005 to the present.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to the timeframe for the documents sought with respect to this Request as overbroad and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Smartmatic further objects to the terms "inspections," "maintenance," "updates," "imaging" and "data uploads or downloads" as vague, ambiguous and overbroad. Subject to and without waiving the foregoing objections, Smartmatic responds that it will produce its contracts relating to its provision of voting technology, including inspections or maintenance thereof, and any bids, RFI responses and RFP responses submitted by Smartmatic for the provision of voting technology, from January 1, 2018 to present.

**REQUEST NO. 19:**

Documents and Communications relating to any Smartmatic Entity's involvement in the U.S. 2020 local, state, and federal elections, including but not limited to the audit trails referenced in Paragraph 233 of the Complaint.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Subject to and without waiving the foregoing objections, Smartmatic responds that it will produce documents regarding post-election audits of the voting machines and software developed by Smartmatic for use in the 2020 Presidential Election, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 20:**

Documents and Communications relating to the VSAP 2.1 system, including but not limited to the certification of the same by California and the U.S. Election Assistance Commission, as referenced in Paragraphs 324 and 364 of the Complaint.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the

extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Subject to and without waiving the foregoing objections, Smartmatic will produce: (1) documents and communications regarding any security-related post-election audits of the VSAP 2.1 system; (2) surveys or polls regarding Smartmatic's involvement or performance in Los Angeles County's VSAP initiative; (3) consultant reports issued by SLI Compliance in connection with VSAP 2.1; (4) the Secretary of State's final certification of VSAP 2.1; and (5) transcripts of public hearings relating to the certification of VSAP 2.1, to the extent that they exist and can be located by a reasonable search.

### REQUEST NO. 21:

Documents from governmental entities and officials, whether in the United States or elsewhere, and including but not limited to the U.S. Election Assistance Commission, the Cybersecurity and Infrastructure Security Agency, the Department of Defense, the Department of Justice, the United States Department of Treasury's Committee on Foreign Investment in the United States, and the Department of Homeland Security from 2006 to the present, regarding any Smartmatic Entity and/or its voting machines, equipment, hardware, software, and/or servers.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Smartmatic further objects to the timeframe of this Request as overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic will

produce responsive documents and communications relating to incidents in which an entity, government, or person made allegations of election fraud or tampering by Smartmatic, to the extent that they exist and can be located by a reasonable search.

**REQUEST NO. 22:**

Communications to, from, or with governmental entities and officials, whether in the United States or elsewhere, and including but not limited to the U.S. Election Assistance Commission, the Cybersecurity and Infrastructure Security Agency, the Department of Defense, the Department of Justice, the United States Department of Treasury's Committee on Foreign Investment in the United States, and the Department of Homeland Security from 2006 to the present, regarding any Smartmatic Entity and/or its voting machines, equipment, hardware, software, and/or servers.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Smartmatic further objects to the timeframe of this Request as overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents and communications relating to incidents in which an entity, government, or person made allegations of election fraud or tampering by Smartmatic, to the extent that they exist and can be located by a reasonable search.

**REQUEST NO. 23:**

Documents and Communications from 2006 to the present related to U.S. Representative Carolyn Maloney's 2006 letters to the Secretary of the Treasury and any investigations conducted by the United States Department of Treasury's Committee on Foreign Investment in the United States ("CFIUS") of any Smartmatic Entity including, but not limited to, any sale or security agreements entered into by any Smartmatic Entity with any governmental agencies and any documents relating to any Smartmatic Entity's withdrawal from the CFIUS's investigation.

> **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request as overbroad and unduly burdensome as to the subject matter and timeframe. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Smartmatic will not produce documents in response to this Request.

**REQUEST NO. 24:**

Documents and Communications relating to the certification, authentication, or validation, or lack thereof, of any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers by national, state, county, or local governmental agencies in the United States or elsewhere, including but not limited to the State of California, the U.S. Election Assistance Commission, the United Nations, and the European Union.

> **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated

to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to the terms "authentication" and "validation" as vague, ambiguous, and overbroad. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Subject to and without waiving the foregoing objections, Smartmatic will produce: (1) certification consultant reports issued by SLI Compliance in connection with VSAP; (2) the California Secretary of State's final certification of VSAP; and (3) transcripts of public hearings relating to the certification of VSAP, to the extent that they exist and can be located by a reasonable search.

**REQUEST NO. 25:**

Documents and Communications relating to the certification, authentication, or validation, or lack thereof, of any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers by national, state, county, or local governmental agencies by private Persons, including but not limited to PriceWaterhouseCoopers LLP, SLI Global Solutions, SLI Compliance, and the Carter Center.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from

20

disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Subject to and without waiving the foregoing objections, Smartmatic will produce: (1) certification consultant reports issued by SLI Compliance in connection with VSAP; (2) the California Secretary of State's final certification of VSAP; and (3) transcripts of public hearings relating to the certification of VSAP, to the extent that they exist and can be located by a reasonable search.

**REQUEST NO. 26:**

Documents and Communications regarding issues or concerns raised about any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers, including but not limited to issues or concerns about a potential election security breach, vulnerabilities, or vote tabulation errors, from the formation of all Smartmatic Entities to the present, including but not limited to those Documents and Communications concerning elections in Venezuela, the Philippines, and Kenya.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to the terms "issues" and "concerns," as used in this Request, as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to the timeframe of this Request as overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic will produce documents sufficient to identify complaints or concerns expressed to Smartmatic regarding the security of the voting machines and technology developed by Smartmatic for use in the 2020 Presidential Election, to the extent that they exist and can be located by a reasonable search.

**REQUEST NO. 27:**

Documents and Communications regarding issues or concerns raised about any Smartmatic Entity's alleged corrupt business practices, including but not limited to issues or concerns raised by the United States Department of Justice related to the 2004 Venezuelan election and any alleged violation of the Foreign Corrupt Practices Act in connection with the 2016 Philippines election.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to the terms "issues," "concerns," and "corrupt business practices," as used in this Request, as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks documents containing confidential information, the disclosure of which is prohibited by law, regulation, or administrative order. Smartmatic will not produce documents in response to this Request.

**REQUEST NO. 28:**

Documents and Communications compiled and/or submitted to the United States Department of Justice in connection with its investigation of alleged violation of the Foreign Corrupt Practices Act by any Smartmatic Entity in connection with the 2004 Venezuelan election and the 2016 Philippines election.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work

product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks documents containing confidential information, the disclosure of which is prohibited by law, regulation, or administrative order. Smartmatic will not produce documents in response to this Request.

## REQUEST NO. 29:

Documents and Communications regarding the Comelec's consideration of whether it will purchase or lease new equipment or software from any Smartmatic Entity for the upcoming 2025 midterm elections because of concerns that the equipment or software will malfunction and/or are insecure.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks documents containing confidential information, the disclosure of which is prohibited by law, regulation, or administrative order. Smartmatic will not produce documents in response to this Request.

## REQUEST NO. 30:

Documents and Communications regarding any Smartmatic Entity involved in the investigation related to the August 9, 2022 elections in Kenya, including but not limited to requests from the Kenyan Supreme Court for access to the Independent Electoral and Boundaries Commission's servers, and any Smartmatic Entity's response to the request.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead

to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks documents containing confidential information, the disclosure of which is prohibited by law, regulation, or administrative order. Smartmatic will not produce documents in response to this Request.

**REQUEST NO. 31:**

Documents and Communications relating to the business relationship between any Smartmatic Entity and any Dominion Entity, including but not limited to oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement entered into by, between, or among any Smartmatic Entity and any Dominion Entity.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents and communications regarding: (1) sales or licensing agreements between Smartmatic and Dominion; (2) any use by Dominion of voting-technology software owned by Smartmatic; and (3) any use by Smartmatic of voting technology software owned by Dominion, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 32:**

Documents and Communications between any Smartmatic Entity and any Dominion Entity relating to, arising out of, or in any way relevant to the Alleged Defamatory Statements.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 33:**

Documents and Communications relating to the business relationship between any Smartmatic Entity and Sequoia Voting Systems, Inc., (or any other Sequoia entity), including but not limited to oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under

confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Subject to and without waiving the foregoing objections, Smartmatic responds that it will produce contracts evidencing Smartmatic's acquisition and divestment of Sequoia.

**REQUEST NO. 34:**

Documents and Communications relating to the business relationship between any Smartmatic Entity and Premier Election Solutions, formerly known as Diebold Election Systems, Inc., including but not limited to oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement.

   **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Smartmatic will not produce documents in response to this Request.

**REQUEST NO. 35:**

Documents and Communications relating to any Smartmatic Entity's participation in the Chicago, Illinois March 2006 primary election, including but not limited to a Smartmatic Entity's letter in response to Chicago Alderman Ed Burke's hearing regarding the election.

   **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it

seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks documents containing confidential information, the disclosure of which is prohibited by law, regulation, or administrative order. Smartmatic further objects to the timeframe for the documents sought with respect to this Request as overbroad and unduly burdensome. Smartmatic will not produce documents in response to this Request.

**REQUEST NO. 36:**

Documents and Communications relating to any Smartmatic Entity's potential contract with Allegheny County, Pennsylvania from 2004 to the present including, but not limited to, any reasons why Allegheny County, Pennsylvania did not award any contract for election services to the Smartmatic Entity.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks documents containing confidential information, the disclosure of which is prohibited by law, regulation, or administrative order. Smartmatic further objects to the timeframe for the documents sought with respect to this Request as overbroad and unduly burdensome. Smartmatic will not produce documents in response to this Request.

**REQUEST NO. 37:**

Documents and Communications regarding any Smartmatic Entity's operations, from that Smartmatic entity's inception to the present, in Venezuela, including but not limited to participation in Venezuelan elections, as well as oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation agreements,

common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement with Bizta Corp. and CANTV.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Smartmatic further objects to the timeframe of this Request as overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic responds that it will produce responsive documents only upon such time as this Request is narrowed in scope.

## REQUEST NO. 38:

Documents and Communications regarding the currently pending international arbitration between SGO Corporation Limited and the Bolivarian Republic of Venezuela (ICSID Case No. ARB(AF)/22/2), with John Henry Rooney (U.S.) appointed as the arbitrator.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject

to. Smartmatic further objects to this Request to the extent it seeks documents containing confidential information, the disclosure of which is prohibited by law, regulation, or administrative order. Smartmatic further objects to the timeframe for the documents sought with respect to this Request as overbroad and unduly burdensome. Smartmatic will not produce documents in response to this Request.

**REQUEST NO. 39:**

Documents and Communications relating to Lord Mark Malloch-Brown and any Smartmatic Entity, including but not limited to Documents and Communications relating to his June 21, 2015 interview regarding Smartmatic, as referenced in Paragraph 343 of the Complaint.

    **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic will not produce documents in response to this Request.

**REQUEST NO. 40:**

Documents and Communications relating to any investigation of any Smartmatic Entity by the United States Department of Justice, including but not limited to a Smartmatic Entity 2004 election contract in Venezuela that led to Mr. Chávez's victory.

    **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work

product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks documents containing confidential information, the disclosure of which is prohibited by law, regulation, or administrative order. Subject to and without waiving the foregoing objections, Smartmatic responds that it will produce documents and communications regarding any investigation or inquiry of Smartmatic by the United States Department of Justice regarding allegations of election fraud or tampering by Smartmatic, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 41:**

Documents and Communications relating to any investigation of any Smartmatic Entity by the Committee on Foreign Investment in the United States from 2005 to the present, including but not limited to any investigation related to investments by the Venezuelan government in one or more Smartmatic Entity and the acquisition of Sequoia Voting Systems, Inc. by any Smartmatic Entity.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Smartmatic further objects to the timeframe of this Request as overbroad and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks documents containing confidential information, the disclosure of which is prohibited by law, regulation, or administrative order. Smartmatic will not produce documents in response to this Request.

**REQUEST NO. 42:**

Documents and Communications that support Your contention that the Alleged Defamatory Statements are not substantially true, are not accurate, are misleading, and/or are defamatory.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects that, to the extent it seeks documents that "support" Smartmatic's claims, this Request calls for a legal conclusion. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

## REQUEST NO. 43:

Documents and Communications that support Your contention that Herring acted with actual malice.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects that, to the extent it seeks documents that "support" the allegation, this Request calls for a legal conclusion. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

## REQUEST NO. 44:

Documents and Communications related to any breach of any Smartmatic Entity's voting software or hardware from the formation of any such Smartmatic Entity to the present.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to the term "any breach," as used in this Request, as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic

further objects to the timeframe of this Request as overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic will produce documents regarding any security breach of Smartmatic's voting machines or software as utilized in any election, to the extent they exist and can be located by a reasonable search.

## REQUEST NO. 45:

Documents and Communications that support Your contention that OAN's alleged "defamatory statements were a proximate and substantial cause of Smartmatic's name and brand becoming synonymous with election fraud with members of the general public and government officials, particularly those in the United States," as alleged in Paragraph 427 of the Complaint.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects that, to the extent it seeks documents that "support" Smartmatic's claims, this Request calls for a legal conclusion. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

## REQUEST NO. 46:

Documents and Communications that support Your contention that "[p]rior to the 2020 U.S. election, Smartmatic was a known and trusted name among individuals responsible for selecting election technology and systems in voting jurisdictions in the United States and across the world," as alleged in Paragraph 428 of the Complaint.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects that, to the extent it seeks documents that "support" Smartmatic's claims, this Request calls for a legal conclusion. Subject

to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 47:**

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial cause" of Plaintiffs' alleged $400,000 out-of-pocket expenses spent on public relations and crisis management, as well as proof of said expenses, as alleged in Paragraphs 432-433 of the Complaint.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects that, to the extent it seeks documents that "support" Smartmatic's claims, this Request calls for a legal conclusion. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 48:**

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial cause" of Plaintiffs' alleged $100,000 out-of-pocket expenses spent on cybersecurity, as well as proof of said expenses, as alleged in Paragraphs 432-433 of the Complaint.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects that, to the extent it seeks documents that "support" Smartmatic's claims, this Request calls for a legal conclusion. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 49:**

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial cause" of Plaintiffs' alleged $700,000 out-of-pocket expenses spent on retention and recruitment for personnel, as well as proof of said expenses, as alleged in Paragraphs 432-433 of the Complaint.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects that, to the extent it seeks documents that "support" Smartmatic's claims, this Request calls for a legal conclusion. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 50:**

Documents and Communications that support Your contention that, as a result of Herring and the Alleged Defamatory Statements, Plaintiffs "will spend millions more in the coming years" in out-of-pocket expenses, as alleged in Paragraphs 432-433 of the Complaint.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects that, to the extent it seeks documents that "support" Smartmatic's claims, this Request calls for a legal conclusion. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 51:**

Documents and Communication that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial cause" of Plaintiffs' diminished business value and

prospects, as well as proof of said loss in business value and prospects, as alleged in Paragraphs 435 and 438 of the Complaint

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects that, to the extent it seeks documents that "support" Smartmatic's claims, this Request calls for a legal conclusion. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

## REQUEST NO. 52:

Documents and Communications that support Your contention that the Smartmatic Entities were valued at $3 billion going into the 2020 Presidential Election, as alleged in Paragraph 438 of the Complaint.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects that, to the extent it seeks documents that "support" Smartmatic's claims, this Request calls for a legal conclusion. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

## REQUEST NO. 53:

Documents and Communications that support Your contention that, as a result of Herring and the Alleged Defamatory Statements, the Smartmatic Entities now valued at less than $1 billion, as alleged in Paragraph 438 of the Complaint.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information or

35

documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects that, to the extent it seeks documents that "support" Smartmatic's claims, this Request calls for a legal conclusion. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

## REQUEST NO. 54:

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements are a "substantial factor in causing Smartmatic to suffer irreparable harm to its reputation," as well as proof of such harm and loss, as alleged in Paragraph 452 of the Complaint.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects that, to the extent it seeks documents that "support" Smartmatic's claims, this Request calls for a legal conclusion. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

## REQUEST NO. 55:

Documents and Communications that support Your contention that Herring and the Alleged Defamatory Statements "exposed Smartmatic to public hate, contempt, ridicule, and disgrace, and created the appearance that Smartmatic is odious and infamous," as alleged in Paragraph 446 of the Complaint.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects that, to the extent it seeks

documents that "support" Smartmatic's claims, this Request calls for a legal conclusion. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 56:**

All Documents and Communications relating to Your contention that You were injured by the Alleged Defamatory Statements.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects that, to the extent it seeks documents that "support" Smartmatic's claims, this Request calls for a legal conclusion. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 57:**

Documents and Communications that support Your request for no less than $2.7 billion in actual, consequential, and special damages in the above-captioned case, as well as Documents and Communications that demonstrate the actions any Smartmatic Entity has undertaken to mitigate its alleged damages.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects that, to the extent it seeks documents that "support" Smartmatic's claims, this Request calls for a legal conclusion. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 58:**

Documents sufficient to show the date and amount of monetary damages You have sought for any claim of reputational harm that You have made over the past five years (including claims associated with any other defamation lawsuits You have filed).

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents sufficient to show monetary damages Smartmatic has sought for a claim of reputational harm in connection with Smartmatic's role in the 2020 Presidential Election, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 59:**

Documents and Communications that support Your request for punitive damages.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects that, to the extent it seeks documents that "support" Smartmatic's claims, this Request calls for a legal conclusion. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search

**REQUEST NO. 60:**

Documents relating to the amount of attorneys' fees and costs Plaintiffs have accrued to date, regardless of whether they have actually been billed or paid.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is

not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic will not produce documents in response to this Request.

## REQUEST NO. 61:

Communications that any Smartmatic Entity has had with Other Media Organizations regarding any statement or publication alleged to be defamatory of any Smartmatic Entity from the formation of any Smartmatic Entity to the present, as well as (1) the identity of the Persons involved in the Communication(s); (2) the date of Communication(s); and (3) the substance of the Communication(s).

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Subject to and without waiving the foregoing objections, Smartmatic will produce documents sufficient to identify communications between Smartmatic and media entities regarding defamatory publications relating to Smartmatic's role in the 2020 Presidential Election, to the extent that they exist and can be located by a reasonable search.

## REQUEST NO. 62:

Documents and Communications that demonstrate negative or critical thoughts, feedback, and/or concern any Smartmatic Entity or any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers, from the formation of any Smartmatic Entity to the present.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to the terms "thoughts," "feedback," and "concern," as used in this Request, as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to the timeframe of this Request as overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic will produce documents sufficient to identify negative feedback or concerns expressed to Smartmatic regarding the accuracy, security, auditability, or reliability of the voting technology developed by Smartmatic for use in the 2020 Presidential Election, to the extent that they exist and can be located by a reasonable search.

## REQUEST NO. 63:

Documents sufficient to identify all sources of funding You are using to pay costs, expenses, or fees for this case, including each entity or individual providing funds, contingency services, pro bono services, or litigation financing and the related oral or written agreements.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic will not produce documents in response to this Request.

## REQUEST NO. 64:

All Smartmatic Entity financial statements, including balance sheets, income statements, cash flow statements, statements of shareholders' equity, Special Purpose Acquisition Company statements,

other private equity valuations, and any form of other valuation from that Smartmatic Entity's inception to the present.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to the unlimited timeframe of this Request as overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic will produce its balance sheets, audited financial statements, cash flow statements, income statements, and enterprise valuations, from January 1, 2011 to the present.

## REQUEST NO. 65:

All U.S. and other tax returns for any Smartmatic Entity, including but not limited to U.S. federal tax returns and state tax returns, from any Smartmatic Entity's inception to the present.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects that this Request is overbroad and unduly burdensome. Smartmatic further objects to this Request to the extent that it seeks documents that are not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic will not produce documents in response to this Request.

**REQUEST NO. 66:**

Documents and Communication demonstrating any Smartmatic Entity's projected finances, gross revenue, and net revenue from the beginning of 2020 through 2025.

>    **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to the unlimited timeframe of this Request as overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic will produce documents sufficient to identify its projected finances, gross revenue and net revenue from 2020 to 2025, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 67:**

Documents and Communications related to the Complaint or which form, in whole or in part, a basis for the Complaint.

>    **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to the reference to all documents "related to" the Complaint as vague, ambiguous, overbroad and overly burdensome. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Smartmatic further objects to the unlimited timeframe for the documents sought with respect to this Request as overbroad and unduly burdensome.

Subject to and without waiving the foregoing objections, Smartmatic will produce documents cited in the Complaint.

## REQUEST NO. 68:

All Documents and Communications, including all intra-office Communications (whether by email, text message, instant message, Slack, or other similar instant messaging software, memoranda, etc.), between or among any Smartmatic Entity and any Person or entity not a party to the above-captioned case, relating to Herring, OAN, the Herring Talent, the Herring Guests, the Retraction Demands, the Complaint, the above-captioned case, and/or the subject matter of the above-captioned case, including but not limited to, William Kennard (Chairman, Board of Directors of AT&T Inc., and Board member of Staple Street Capital), John Stankey (Chief Executive Officer, AT&T Inc.), Bill Morrow (Chief Executive Officer, DirecTV, LLC), Rob Thun (Senior Vice President, Content, DirecTV), AT&T Inc. (including any member of its Board of Directors from 2020 to the present), AT&T Services, Inc., DirecTV, LLC (including any member of its Board of Directors from 2020 to the present), Verizon Fios, Staple Street Capital, Hootan Yaghoobzadeh (Managing Director/Co-Founder, Staple Street Capital), Kay Stimson (Chair, U.S. Department of Homeland Security's Election Infrastructure Sector Coordinating Council), Hamilton Place Strategies, Tony Fratto (Founder, Hamilton Place Strategies) and/or the NAACP.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to the term "subject matter of the above-captioned case," as used in this Request, as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to this Request to the extent that it seeks "all" such documents on the grounds that such Requests are overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic will produce documents and communications between Smartmatic and any Person or entity not a party to the above-captioned case relating to Herring, OAN, the Herring Talent, the Herring Guests, the Retraction Demands, the Complaint, and the above-captioned case, to the extent they exist and can be located by a reasonable search.

## REQUEST NO. 69:

Documents and Communications that [Smartmatic USA Corp./SGO Corporation Limited/Smartmatic International Holding B.V.] intends to offer in evidence at trial or any hearing in the above-captioned case or to use to question witnesses at any deposition, trial, or hearing in the above-captioned case.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request on the grounds that it seeks premature expert discovery. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 70:**

All Documents received by You or Your attorney from any third party, whether in response to a subpoena duces tecum, open records act request or otherwise, that relate to the Alleged Defamatory Statements or to the allegations in the Complaint.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Subject to and without waiving the foregoing objections, Subject to and without waiving the foregoing objections, Smartmatic will produce documents produced to or received by Smartmatic in connection with this litigation, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 71:**

All discovery and hearing information (i.e. written discovery requests, written discovery responses, subpoenas, subpoena responses, open records act requests, open records act responses, deposition notices, deposition transcripts, deposition videos, hearing transcripts, and similar material) related to, arising out of, or produced in the lawsuits filed any Smartmatic Entity relating to the U.S. 2020 local, state, and federal elections, including but not limited to *Smartmatic USA Corp., et al. v. Fox News Network, LLC, et al.*, Index No. 151136-2021 (New York County, New York); *Smartmatic USA Corp. and SGO Corporation Unlimited v. Newsmax Media, Inc.*, Case No. N21C-11-028 EMD (Del. Super. Ct.); *Smartmatic USA Corp., et al. v. Sidney Powell*, Case

No. 21-cv-02995 (D.D.C.); *Smartmatic USA Corp., et al. v. Lindell, et al.*, Case No. 22-cv-00098 (D. Minn.).

 **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks documents or information protected from disclosure under any confidentiality or protective order, or under any other order or stipulation that Smartmatic has entered into or is subject to with respect to any past or present litigation or other matter. Subject to and without waiving the foregoing objections, Smartmatic responds that it will produce responsive documents only upon such time as this Request is narrowed in scope.

**REQUEST NO. 72:**

All Documents and Communications concerning complaints or concerns about statements made regarding any Smartmatic Entities related to the U.S. 2020 local, state, and federal elections, including but not limited to retraction requests, responses to retraction requests, and any related correspondence sent by any Smartmatic Entity to any third party.

 **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to the phrase "concerning complaints or concerns about statements made . . ." as vague, ambiguous, and overbroad. Subject to and without waiving the foregoing objections, Smartmatic will produce documents and communications regarding retraction requests or responses to retraction requests

made by Smartmatic in connection with statements made about Smartmatic relating to the 2020

Presidential Election, to the extent that they exist and can be located by a reasonable search.

## REQUEST NO. 73:

Documents sufficient to show the method and reliability of auditing for any Smartmatic Entity's voting machines and technology deployed to count ballots in the U.S. 2020 local, state, and federal elections.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully

stated herein. Subject to and without waiving the foregoing objections, Smartmatic will produce

responsive documents, to the extent they exist and can be located by a reasonable search.

## REQUEST NO. 74:

All Documents and Communications, including marketing materials, pitch packets and promotional materials reflecting any Smartmatic Entity's efforts (or those made on any Smartmatic Entity's behalf) to solicit contracts globally from that Smartmatic Entity's inception to the present.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully

stated herein. Smartmatic further objects to this Request to the extent it seeks information that is

not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead

to the discovery of admissible evidence. Smartmatic objects to the term "efforts," as used in this

Request, as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to

this Request to the extent it seeks information or documentation protected by attorney-client

privilege, the attorney work product immunity, and/or any other applicable privilege or immunity.

Smartmatic further objects to this Request to the extent that it seeks "all" documents on the grounds

that such Requests are overbroad and unduly burdensome. Smartmatic further objects to the

unlimited timeframe for the documents sought with respect to this Request as overbroad and

unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic

responds that it will produce marketing and promotional materials reflecting Smartmatic's efforts

to solicit contracts for its automated election technology from January 1, 2018 to the present.

## REQUEST NO. 75:

All Documents and Communications concerning any contracts that you allege any Smartmatic Entity lost or did not obtain as a result of the Alleged Defamatory Statements.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully

stated herein. Smartmatic further objects to this Request to the extent it seeks information that is

not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead

to the discovery of admissible evidence. Subject to and without waiving the foregoing objections,

Smartmatic will produce responsive documents, to the extent they exist and can be located by a

reasonable search.

## REQUEST NO. 76:

Portions of personnel files of all employees and personnel of Smartmatic Entities who have worked on any Smartmatic Entity's voting equipment or software utilized or employed in the U.S. 2020 local, state, and federal elections that refer to or address any disciplinary actions, errors, problems or concerns relating to: (1) software coding; (2) design or maintenance of any Smartmatic Entity's machines; (3) political affiliations or actions; or (4) public commentary on the 2020 Presidential Election.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully

stated herein. Smartmatic further objects to this Request to the extent it seeks information that is

not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead

to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it

seeks information or documentation protected by the attorney-client privilege, the attorney work

product doctrine, and/or any other applicable privilege or immunity. Smartmatic objects to the

terms "errors," "problems," and "concerns," as used in this Request, as vague, ambiguous,

overbroad, and unduly burdensome. Smartmatic further objects to this Request as overbroad,

unduly burdensome, and not proportional to the needs of the case. Subject to and without waiving the foregoing objections, Smartmatic responds that it will produce responsive documents only upon such time as this Request is narrowed in scope.

**REQUEST NO. 77:**

All Documents and Communications with Fox News Network, LLC and/or Fox Corp. concerning or in any way relating to the U.S. 2020 local, state, and federal elections or coverage of the election.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent that it seeks "all" documents on the grounds that such Requests are overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 78:**

All Documents and Communications with Newsmax Media, Inc. concerning or in any way relating to the U.S. 2020 local, state, and federal elections or Newsmax Media, Inc.'s coverage of the elections.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent that it seeks "all" documents on the grounds that such Requests are overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 79:**

All Documents and Communications concerning any vendors or other contractors or affiliates based outside the United States that manufacture, produce, license, or are otherwise involved with any hardware, software, or other components used in any Smartmatic Entity's voting equipment, systems, machines and/or software from 2004 to the present.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic objects to the terms "vendors," "contractors," "produce," and "components," as used in this Request, as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Smartmatic further objects to this Request to the extent that it seeks "all" documents on the grounds that such Requests are overbroad and unduly burdensome. Smartmatic further objects to the timeframe for the documents sought with respect to this Request as overbroad and unduly burdensome. Smartmatic will not produce documents in response to this Request

**REQUEST NO. 80:**

Communications with and Documents related to social media platforms, including but not limited to Facebook, Twitter, Instagram, and YouTube concerning the removal of any posts, videos, or other content referencing any Smartmatic Entity in connection with U.S. elections from 2004 to the present, as well as elections in the Philippines, Venezuela, and Kenya from 2004 to the present.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is

not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to the timeframe of this Request as overbroad and unduly burdensome. Smartmatic further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. Subject to and without waiving the foregoing objections, Smartmatic will produce documents and communications relating to social media platforms' removal of content referencing Smartmatic in connection with the 2020 Presidential Election, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 81:**

Documents and Communications concerning the relationship between any Smartmatic Entity and any Dominion Entity, including but not limited to oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement. There is no time limit on this Request.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive

documents and communications regarding: (1) sales or licensing agreements between Smartmatic and Dominion; (2) any use by Dominion of voting-technology software owned by Smartmatic; and (3) any use by Smartmatic of voting technology software owned by Dominion, from January 1, 2018 to present, to the extent they exist and can be located by a reasonable search.

## REQUEST NO. 82:

Documents and Communications concerning any Smartmatic Entity's efforts to secure a contract with the County of Los Angeles, State of California to provide voting equipment and/or software for the U.S. 2020 local, state, and federal elections.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Subject to and without waiving the foregoing objections, Smartmatic will produce contracts, bids, and RFP responses responsive to this Request.

## REQUEST NO. 83:

Documents and Communications relating to the method, manner, procedure, or formulation by which You calculate Your economic damages.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic objects to this Request on the grounds that it seeks information protected by the attorney-client privilege and/or attorney work-product doctrine. Smartmatic further objects to this Request on the grounds that it seeks premature expert discovery. Subject to and without waiving the foregoing objections, Smartmatic states that it will timely disclose expert opinions pursuant to the Federal Rules of Civil Procedure and any Scheduling Order entered by the Court. Responding further, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 84:**

Documents and Communications with any insurance carrier regarding the alleged harm and/or damages for which You seek recovery in this litigation.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 85:**

All financial audits and documents and correspondence from accounting professionals concerning any Smartmatic Entity from 2004 to the present.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent that it seeks "all" such documents on the grounds that such Requests are overbroad and unduly burdensome. Smartmatic further objects to the timeframe for the documents sought with respect to this Request as overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic will produce its audited financial statements from 2011 to present.

**REQUEST NO. 86:**

All meeting minutes and other documents concerning meetings of any Smartmatic Entity Board of Directors.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request as overbroad, overly burdensome, and not proportional to the needs of the case. Subject to and without waiving the foregoing objections, Smartmatic responds that it will produce responsive documents only upon such time as this Request is narrowed in scope.

**REQUEST NO. 87:**

All insurance policies or other related documents that in any way relate to the damages You seek or counterclaims you may face in this Action, including but not limited to claims and documents relating to such claims.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent that it seeks "all" documents on the grounds that such Requests are overbroad and unduly burdensome. Smartmatic objects to the term "claims" as used in this Request, as vague and ambiguous. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 88:**

All of any Smartmatic Entity's general ledgers for the past five (5) years.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request as overbroad, overly burdensome, and not proportional to the needs of the case. Smartmatic will not produce documents in response to this Request.

**REQUEST NO. 89:**

Documents and Communications concerning any Smartmatic Entity's current business plan, as well as any from the past five (5) years.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent that it seeks "all" documents on the grounds that such Requests are overbroad and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to the term "business plans," as used in this Request, as vague and ambiguous. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 90:**

All documents concerning projections of any Smartmatic Entity's future business plans, including but not limited to prospective contracts and clients.

    **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent that it seeks "all" documents on the grounds that such Requests are overbroad and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to the terms "projections" and "business plans," as used in this Request, as vague and ambiguous. Subject to and without waiving the foregoing objections, Smartmatic responds that it will produce responsive documents only upon such time as this Request is narrowed in scope.

**REQUEST NO. 91:**

Documents and Communications concerning Konnech Corporation from 2004 to the present.

    **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. Smartmatic further objects to the timeframe for the documents sought with respect to this Request as overbroad and unduly burdensome. Smartmatic further objects to the timeframe of this Request as overbroad and unduly burdensome. Smartmatic will not produce documents in response to this Request.

**REQUEST NO. 92:**

Documents and Communications reflecting any Smartmatic Entity's relationship with Konnech Corporation, including but not limited to agreements or contracts between any Smartmatic Entity and Konnech Corporation in relation to the U.S. 2020 local, state, and federal elections.

   **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. Smartmatic further objects to the timeframe for the documents sought with respect to this Request as overbroad and unduly burdensome. Smartmatic further objects to the timeframe of this Request as overbroad and unduly burdensome. Smartmatic will not produce documents in response to this Request.

**REQUEST NO. 93:**

Documents and Communications concerning complaints, concerns, or investigations about the use of Konnech Corporation's software and/or PollChief election management system.

   **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. Smartmatic further objects to the timeframe for the documents sought with respect to this Request as overbroad and unduly burdensome. Smartmatic further objects to the timeframe of this Request as overbroad and unduly burdensome. Smartmatic will not produce documents in response to this Request.

**REQUEST NO. 94:**

Documents and Communications concerning any goods provided or services performed by any Smartmatic Entity in connection with the United States Department of Defense from 2004 to the present.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic objects to the term "in connection," as used in this Request as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. Smartmatic further objects to the timeframe of this Request as overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic responds that it will produce responsive documents only upon such time as this Request is narrowed in scope.

**REQUEST NO. 95:**

Documents and Communications concerning any goods provided or services performed by any Smartmatic Entity in connection with the Federal Voting Assistance Program from 2004 to the present.

      **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic objects to the term "in connection," as used in this Request as vague, ambiguous, overbroad, and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. Smartmatic further objects to the timeframe of this Request as overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic responds that it will produce responsive documents only upon such time as this Request is narrowed in scope.

**REQUEST NO. 96:**

Communications between any Smartmatic Entity and Dr. J. Alex Halderman concerning or in any way related to any Smartmatic Entities' or Dominion Entities' voting machines, equipment, hardware, software, and/or servers from 2004 to the present.

   **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to the timeframe of this Request as overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic will produce responsive documents from January 1, 2018 to present, to the extent they exist and can be located by a reasonable search.

**REQUEST NO. 97:**

Documents and communications related to the October 19, 2022 Elon University Webinar titled Engendering Trust in Election Outcomes, including, but not limited to, all communications with Dr. J Alex Halderman and/or anyone affiliated with coordinating or organizing the webinar itself.

   **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. Smartmatic will not produce documents in response to this Request.

**REQUEST NO. 98:**

Documents sufficient to show Your financial condition, including but not limited to profits, margins and revenue from January 2016 to the present.

   **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is

not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to the timeframe of this Request as overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic will produce its balance sheets, audited financial statements, cash flow statements, and income statements for the timeframe identified by this Request.

**REQUEST NO. 99:**

Documents and Communications, including any written common interest agreements, between or among: (i) any Smartmatic Entity, including its attorneys, including but not limited to Benesch, Friedlander, Coplan & Aronoff LLP and Robins Kaplan LLP; and (ii) any Dominion Entity, Eric Coomer, Ruby Freeman and/or Shaye Moss, or any of their respective attorneys or others, including but not limited to Susman Godfrey LLP, Clare Locke LLP, Brownstein Hyatt Farber Schreck LLP, Rodney Smolla (President, Vermont Law School), Snell & Wilmer L.L.P., Farnan LLP, Cain & Skarnulis PLLC, Recht Kornfeld PC, Dowd Bennett LLP, United To Protect Democracy, Inc., DuBose Miller, Ballard Spahr LLP, Kurt G. Kastorf Law Firm, Michael Linhorst, Willkie Farr & Gallagher, LLP, Ballard Spahr, David A. Schulz (Floyd Abrams Lecturer in Law and Senior Research Scholar in Law, Yale Law School), the Yale Law School Media and Information Access Clinic, Floyd Abrams (Senior Counsel, Cahill Gordon & Reindel LLP), the Yale Law School Abrams Institute for Freedom of Expression at the Information Society Project, Lee Levine, the Media Law Resource Center, and/or George Freeman (Executive Director, Media Law Resource Center).

 **RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of the case. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that

Smartmatic has entered into or is subject to. Subject to and without waiving the foregoing objections, Smartmatic responds that it will produce responsive documents only upon such time as this Request is narrowed in scope.

**REQUEST NO. 100:**

Documents and Communications concerning any analysis performed in connection with security and/or vulnerability assessments for voting machines and software, including but not limited to any such analysis performed by MITRE, the National Election Security Laboratory, Professor J. Alex Halderman, Harri Hursti or any state or federal agency, including but not limited to the Cybersecurity and Infrastructure Security Agency.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Request to the extent it seeks information protected by attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to the timeframe for the documents sought with respect to this Request as overbroad and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information or documentation protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. Subject to and without waiving the foregoing objections, Smartmatic responds that it will produce responsive documents only upon such time as this Request is narrowed in scope.

**REQUEST NO. 101:**

Documents and Communications related to work by any public relations professional on behalf of any Smartmatic Entity from that Smartmatic Entity's inception to the present.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic objects to the term "work," as used in this Request as vague, ambiguous,

overbroad, and unduly burdensome. Smartmatic further objects to this Request to the extent it seeks information or documentation protected by the attorney-client privilege, the attorney work product doctrine, and/or any other applicable privilege or immunity. Smartmatic further objects to the timeframe of this Request as overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic will produce documents and communications related to work by any public relations professional on behalf of Smartmatic subsequent to the 2020 Presidential Election, to the extent they exist and can be located by a reasonable search.

## REQUEST NO. 102:

Documents and Communications related to any Smartmatic Entity's efforts to distinguish its voting hardware and software technology from any Smartmatic Entity competitor's voting hardware and software technology, including but not limited to any Dominion Entity's voting hardware and software technology, from that Smartmatic Entity's inception to the present.

**RESPONSE:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Request to the extent it seeks information that is not relevant to any claim or defense asserted in this action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to the phrase "efforts to distinguish" Smartmatic further objects to the timeframe for the documents sought with respect to this Request as overbroad and unduly burdensome. Subject to and without waiving the foregoing objections, Smartmatic responds that it will produce responsive documents only upon such time as this Request is narrowed in scope.

Date: December 16, 2022

Respectfully submitted,

*/s/ J. Erik Connolly*

J. Erik Connolly (D.C. Bar No. IL0099)
Nicole E. Wrigley (D.C. Bar No. IL0101)
Lee B. Muench (admitted *pro hac vice*)
Julie M. Loftus (admitted *pro hac vice*)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312.212.4949
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
lmuench@beneschlaw.com
jloftus@beneschlaw.com

*Attorneys for the Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 16, 2022, copies of the foregoing

**Plaintiffs' Omnibus Responses and Objections to Defendant's First Set of Requests for**

**Production** were served via email on all attorneys of record:

**VEDDER PRICE P.C.**

Blaine Kimrey
Jeanah Park
Bryan Clark
Brian Ledebuhr
222 North LaSalle Street
Chicago, IL 60601
T: +1 312 609 7500
F: +1 312 609 5005
bkimrey@vedderprice.com
jpark@vedderprice.com
bclark@vedderprice.com
bledebuhr@vedderprice.com

Brian K. McCalmon
1401 New York Avenue, Suite 500
Washington, DC 20005
T: +1 202 312 3320
F: +1 202 312 3322
bmccalmon@vedderprice.com

*/s/ J. Erik Connolly*
J. Erik Connolly

# EXHIBIT 1-E

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED,

   Plaintiffs,

v.

HERRING NETWORKS, INC., d/b/a ONE AMERICA NEWS NETWORK,

   Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. 1:21-cv-02900-CJN

Judge Carl J. Nichols

### DEFENDANT'S SECOND SET OF INTERROGATORIES
### TO PLAINTIFF SGO CORPORATION LIMITED

TO: Plaintiff SGO CORPORATION LIMITED, by and through its counsel of record J. Erik Connolly and Emily Newhouse Dillingham, BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP, 71 South Wacker Drive, Suite 1600, Chicago, IL 60606.

  Defendant HERRING NETWORKS, INC. d/b/a ONE AMERICA NEWS NETWORK ("OAN" or "Defendant") requests that you respond to each of the following interrogatories in writing and serve such responses upon Defendant's attorneys within thirty (30) days after service of this Second Set of Interrogatories, as required, and in the form required by Rule 33 of the Federal Rules of Civil Procedure.

  For each interrogatory, as well as your responses thereto, the following definitions and instructions shall apply:

# I.
# <u>DEFINITIONS</u>

The following terms shall have the meanings set forth below whenever used in any Request.

1.    "2020 PRESIDENTIAL ELECTION" means and refers to the U.S. Presidential Election that occurred on November 3, 2020, and all voting (including mail-in voting) and related events occurring up to the certification of votes on January 6, 2021.

2.    "COMPLAINED OF BROADCASTS" means and refers to the broadcasts identified in Paragraphs 88, 146–147, 171, 176, and 178 of the COMPLAINT filed in this ACTION, among others, including without limitation the particular broadcasts of *After Hours with Alex Salvi*, *News Room*, *Tipping Point with Kara McKinney*, *Breaking News Live with Patrick Hussion*, *Real America with Dan Ball, In Focus with Stephanie Hamill, Weekly Briefing with Christina Bobb, America This Week,* and the Michael-Lindell-produced programs titled *Absolute Proof, Scientific Proof, Absolute Interference,* and *Absolutely 9-0.*

3.    "COMPLAINED OF STATEMENTS" means and refers to the statements described in Paragraphs 80–153, and more specifically identified in Paragraphs 171, 176, 184, 196, 205, 218, and 227, of the COMPLAINT filed in this ACTION.

4.    "OAN" means and refers to Defendant HERRING NETWORKS, INC., d/b/a ONE AMERICA NEWS NETWORK.

5.    "SGO" means and refers to, collectively, Plaintiff SGO CORPORATION LIMITED and any owner, director, officer, employee, agent, trust, custodian, parent, subsidiary, affiliate, predecessor, successor, attorney, accountant, representative, or other person/s purporting to act on SGO's behalf.

6.     "SMARTMATIC SYSTEMS" means any elections product developed, supplied, used, or supported by You, or on Your behalf, domestic or international, from PLAINTIFFS' inception to the present. This includes but is not limited to any software, hardware, source code, firmware, technology, solutions, digital tools, functionalities, devices, scan tabulators, optional modules, peripherals, Hybrid Activator, Accumulator & Transmitters, audit logs, electronic voting machines, electronic counting machines, ballot marking devices, voter management, poll worker support, online voting, or election management platforms as described in Paragraphs 26–27 of the COMPLAINT filed in this ACTION.

7.     "THIRD PARTY" means a Person other than PLAINTIFFS or OAN.

8.      "You" and "Your" means SGO.

9.     "Communication" or "Communications" means a communication in any form, including, without limitation, notes, complaints, diaries, journals, datebooks, reports, calendars, telephone messages, letters, email messages, instant messages (such as but not limited to Signal, Cisco Jabber, IBM Sametime, Wickr, ICQ, Kik, BBM, Gchat, iMessage, Telegram, WhatsApp, Slack, and similar types of messages), cell phone text messages (SMS messages and MMS messages), voicemail messages, Slack messages or other internal messaging system communications, social media communications or posting on sites including but not limited to Facebook, Twitter, Instagram, Gab, or Parler (including any direct messages), website postings, internet chat-room postings, lists, correspondence, drawings, designs, telegrams, manuals, summaries or records of personal conversations, logs, minutes or records of meetings, minutes of any other type, transcripts of oral testimony or statements, affidavits, or summaries of investigations. For avoidance of doubt, the term "Communications" includes internal

communications and communications with third parties. The foregoing definition is subject to any objection sustained in relation to PLAINTIFFS' similar definition directed at OAN.

10.     "Concerning" means without limitation, containing, reflecting, referring to, discussing, relating to, describing, evidencing, supporting, or constituting.

11.     "Document(s)" is defined to be synonymous in meaning and equal in scope to the usage of the term under Federal Rule of Civil Procedure 34.

12.     "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

13.     The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "All" means "any and all," "any" means "any and all." "Including" means "including but not limited to." "And" and "or" encompass both "and" and "or." Words in the masculine, feminine or neutral form shall include each of the other gender.

## II.
## INSTRUCTIONS

1.     Each Interrogatory and subpart thereof shall be answered separately and under oath. No Interrogatory shall be left blank. If the answer to any Interrogatory or subpart thereof is no, none, or unknown, such response should be written.

2.     In answering You shall furnish all information available to You at the time of answering and shall supplement Your answers in accordance with the Federal Rules.

3.     If You do not answer an Interrogatory, in whole or in part, because of a claim of privilege or the work product doctrine, state the following: (a) the nature of the privilege or reason for withholding which You contend applied; (b) the factual basis for Your assertion of privilege or the reason for withholding; (c) the type of document (e.g., letter, memorandum, email, etc.); (d) all authors and addressees; (e) all indicated and blind copies; (f) all Persons to whom the document

4

was distributed, shown or explained; (g) the document's date; (h) a summary description of the document's subject matter; (i) the number of pages and attachments or appendices comprising the document; and (j) its present custodian.

4.       In the event that any document requested to be identified by any Interrogatory has been destroyed or discarded, such document shall be identified by stating all of the information requested in subparagraphs (c) through (i) of Instruction 3 and, in addition, (k) its date of destruction or discard, manner of destruction or discard and reason for destruction or discard, (l) the Persons who authorized and carried out such destruction or discard, and (m) whether any copies of the document presently exist and, if so, the name of the custodian of each copy.

5.       These Interrogatories are continuing in nature, up to and during the course of trial. If You obtain additional information that is responsive to these Interrogatories, You shall promptly supplement Your response to each such Interrogatory.

# III.
## INTERROGATORIES

**INTERROGATORY NO. 19:**
Identify and describe all SMARTMATIC SYSTEMS, including without limitation any legacy hardware, software, and source code, used in the 2020 PRESIDENTIAL ELECTION. Your answer should include, but not be limited to: (1) identification of every state, county, and local jurisdiction in the United States that used any component of each identified SMARTMATIC SYSTEMS; and (2) the specific components of the SMARTMATIC SYSTEMS used in each jurisdiction, including the type of system(s) used, including any name(s), make(s), model(s), product number(s), and/or version(s).

    **ANSWER:**

**INTERROGATORY NO. 20:**
Identify all vendors, contractors, and/or other Persons or Third Parties retained, hired, or contracted by You relating to the 2020 PRESIDENTIAL ELECTION. Your answer should include, but not be limited to: (1) identification of the Person(s) retained, hired, or contracted with; (2) the nature of the retention, hiring, or contracting; and (3) identification of all Documents and Communications concerning such retention, hiring, or contracting.

    **ANSWER:**

**INTERROGATORY NO. 21:**
Identify all statements by OAN that You contend were defamatory. In identifying each statement, identify: (1) the broadcast where the statement was made; (2) the date of the statement; and (3) the speaker.

    **ANSWER:**

**INTERROGATORY NO. 22:**
To the extent You contend that any COMPLAINED OF STATEMENTS and/or COMPLAINED OF BROADCASTS made any false suggestions, impressions, or implications, identify: (1) each allegedly false suggestion, impression, or implication for each of the COMPLAINED OF STATEMENTS and/or COMPLAINED OF BROADCASTS; and (2) for each allegedly false suggestion, impression, or implication, the factual basis for Your contention that the statement created a false suggestion, impression, or implication.

    **ANSWER:**

**INTERROGATORY NO. 23:**
Identify the employees who allegedly made "false allegations" against You as described in Your statement in *U.S. Authorities Probe How Smartmatic Won Venezuela Election Pact,* Wall Street Journal, Dec. 1, 2006, https://www.wsj.com/articles/SB116493756785237566, and identify any cease and desist letters You sent to these employees.

Dated: July 17, 2023                     By: */s/ Charles L. Babcock*

**JACKSON WALKER LLP**
Charles L. Babcock
(admitted *pro hac vice*)
Nancy W. Hamilton
(admitted *pro hac vice*)
John. K. Edwards
(admitted *pro hac vice*)
Joel R. Glover
(admitted *pro hac vice*)
Bethany Pickett Shah
(admitted *pro hac vice*
1401 McKinney Suite 1900
Houston, TX 77010
Tel: (713) 752-4200
Fax: (713) 308-4110
cbabcock@jw.com
nhamilton@jw.com
jedwards@jw.com
jglover@jw.com
bpickett@jw.com

Jonathan D. Neerman
(D.D.C. *admission pending*)
D.C. Bar No. 90003393
Carl C. Butzer
(admitted *pro hac vice*)
Minoo Sobhani Blaesche
(admitted *pro hac vice*)
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Tel: (214) 953-5664
Fax: (214) 661-6899
jneerman@jw.com
cbutzer@jw.com
mblaesche@jw.com

**BOYDEN GRAY & ASSOCIATES**
Trent McCotter
D.C. BAR NO. 1011329
801 17th St NW, #350
Washington, DC 20006
(202) 706-5488
mccotter@boydengrayassociates.com
*Counsel for Herring Networks, Inc.*

7

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of July 2023, I served the foregoing document on the following counsel of record by electronic mail:

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949
J. Erik Connolly
Nicole E. Wrigley
Michael E. Bloom
Lee B. Muench
Emily Newhouse Dillingham
Lauren C. Tortorella
Kathleen Watson Moss
James R. Bedell
Julie M. Loftus
Olivia Sullivan
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
mbloom@beneschlaw.com
lmuench@beneschlaw.com
edillingham@beneschlaw.com
ltortorella@beneschlaw.com
kwatsonmoss@beneschlaw.com
jbedell@beneschlaw.com
jloftus@beneschlaw.com
osullivan@beneschlaw.com

*/s/ Bethany Pickett Shah*
Bethany Pickett Shah

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 1:21-cv-02900-CJN |
| | ) | |
| v. | ) | |
| | ) | |
| HERRING NETWORKS, INC., d/b/a ONE AMERICA NEWS NETWORK, | ) ) | Judge Carl J. Nichols |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

<u>**DEFENDANT'S SECOND SET OF INTERROGATORIES
TO PLAINTIFF SMARTMATIC USA CORP.**</u>

TO:   Plaintiff SMARTMATIC USA CORP., by and through its counsel of record J. Erik Connolly and Emily Newhouse Dillingham, BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP, 71 South Wacker Drive, Suite 1600, Chicago, IL 60606.

Defendant HERRING NETWORKS, INC. d/b/a ONE AMERICA NEWS NETWORK ("OAN" or "Defendant") requests that you respond to each of the following interrogatories in writing and serve such responses upon Defendant's attorneys within thirty (30) days after service of this Second Set of Interrogatories, as required, and in the form required by Rule 33 of the Federal Rules of Civil Procedure.

For each interrogatory, as well as your responses thereto, the following definitions and instructions shall apply:

1

# I.
# DEFINITIONS

The following terms shall have the meanings set forth below whenever used in any Request.

1.    "2020 PRESIDENTIAL ELECTION" means and refers to the U.S. Presidential Election that occurred on November 3, 2020, and all voting (including mail-in voting) and related events occurring up to the certification of votes on January 6, 2021.

2.    "COMPLAINED OF BROADCASTS" means and refers to the broadcasts identified in Paragraphs 88, 146–147, 171, 176, and 178 of the COMPLAINT filed in this ACTION, among others, including without limitation the particular broadcasts of *After Hours with Alex Salvi*, *News Room*, *Tipping Point with Kara McKinney*, *Breaking News Live with Patrick Hussion*, *Real America with Dan Ball, In Focus with Stephanie Hamill, Weekly Briefing with Christina Bobb, America This Week,* and the Michael-Lindell-produced programs titled *Absolute Proof, Scientific Proof, Absolute Interference,* and *Absolutely 9-0.*

3.    "COMPLAINED OF STATEMENTS" means and refers to the statements described in Paragraphs 80–153, and more specifically identified in Paragraphs 171, 176, 184, 196, 205, 218, and 227, of the COMPLAINT filed in this ACTION.

4.    "OAN" means and refers to Defendant HERRING NETWORKS, INC., d/b/a ONE AMERICA NEWS NETWORK.

5.    "SMARTMATIC USA" means and refers to, collectively, Plaintiff SMARTMATIC USA CORP. and any owner, director, officer, employee, agent, trust, custodian, parent, subsidiary, affiliate, predecessor, successor, attorney, accountant, representative, or other person/s purporting to act on SMARTMATIC USA's behalf.

6.     "SMARTMATIC SYSTEMS" means any elections product developed, supplied, used, or supported by You, or on Your behalf, domestic or international, from PLAINTIFFS' inception to the present. This includes but is not limited to any software, hardware, source code, firmware, technology, solutions, digital tools, functionalities, devices, scan tabulators, optional modules, peripherals, Hybrid Activator, Accumulator & Transmitters, audit logs, electronic voting machines, electronic counting machines, ballot marking devices, voter management, poll worker support, online voting, or election management platforms as described in Paragraphs 26–27 of the COMPLAINT filed in this ACTION.

7.     "THIRD PARTY" means a Person other than PLAINTIFFS or OAN.

8.      "You" and "Your" means SMARTMATIC USA.

9.     "Communication" or "Communications" means a communication in any form, including, without limitation, notes, complaints, diaries, journals, datebooks, reports, calendars, telephone messages, letters, email messages, instant messages (such as but not limited to Signal, Cisco Jabber, IBM Sametime, Wickr, ICQ, Kik, BBM, Gchat, iMessage, Telegram, WhatsApp, Slack, and similar types of messages), cell phone text messages (SMS messages and MMS messages), voicemail messages, Slack messages or other internal messaging system communications, social media communications or posting on sites including but not limited to Facebook, Twitter, Instagram, Gab, or Parler (including any direct messages), website postings, internet chat-room postings, lists, correspondence, drawings, designs, telegrams, manuals, summaries or records of personal conversations, logs, minutes or records of meetings, minutes of any other type, transcripts of oral testimony or statements, affidavits, or summaries of investigations. For avoidance of doubt, the term "Communications" includes internal

communications and communications with third parties. The foregoing definition is subject to any objection sustained in relation to PLAINTIFFS' similar definition directed at OAN.

10.    "Concerning" means without limitation, containing, reflecting, referring to, discussing, relating to, describing, evidencing, supporting, or constituting.

11.    "Document(s)" is defined to be synonymous in meaning and equal in scope to the usage of the term under Federal Rule of Civil Procedure 34.

12.    "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

13.    The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "All" means "any and all," "any" means "any and all." "Including" means "including but not limited to." "And" and "or" encompass both "and" and "or." Words in the masculine, feminine or neutral form shall include each of the other gender.

## II.
## INSTRUCTIONS

1.    Each Interrogatory and subpart thereof shall be answered separately and under oath. No Interrogatory shall be left blank. If the answer to any Interrogatory or subpart thereof is no, none, or unknown, such response should be written.

2.    In answering You shall furnish all information available to You at the time of answering and shall supplement Your answers in accordance with the Federal Rules.

3.    If You do not answer an Interrogatory, in whole or in part, because of a claim of privilege or the work product doctrine, state the following: (a) the nature of the privilege or reason for withholding which You contend applied; (b) the factual basis for Your assertion of privilege or the reason for withholding; (c) the type of document (e.g., letter, memorandum, email, etc.); (d) all authors and addressees; (e) all indicated and blind copies; (f) all Persons to whom the document

4

was distributed, shown or explained; (g) the document's date; (h) a summary description of the document's subject matter; (i) the number of pages and attachments or appendices comprising the document; and (j) its present custodian.

4.      In the event that any document requested to be identified by any Interrogatory has been destroyed or discarded, such document shall be identified by stating all of the information requested in subparagraphs (c) through (i) of Instruction 3 and, in addition, (k) its date of destruction or discard, manner of destruction or discard and reason for destruction or discard, (l) the Persons who authorized and carried out such destruction or discard, and (m) whether any copies of the document presently exist and, if so, the name of the custodian of each copy.

5.      These Interrogatories are continuing in nature, up to and during the course of trial. If You obtain additional information that is responsive to these Interrogatories, You shall promptly supplement Your response to each such Interrogatory.

# III.
# INTERROGATORIES

**INTERROGATORY NO. 19:**
Identify and describe all SMARTMATIC SYSTEMS, including without limitation any legacy hardware, software, and source code, used in the 2020 PRESIDENTIAL ELECTION. Your answer should include, but not be limited to: (1) identification of every state, county, and local jurisdiction in the United States that used any component of each identified SMARTMATIC SYSTEMS; and (2) the specific components of the SMARTMATIC SYSTEMS used in each jurisdiction, including the type of system(s) used, including any name(s), make(s), model(s), product number(s), and/or version(s).

    **ANSWER:**

**INTERROGATORY NO. 20:**
Identify all vendors, contractors, and/or other Persons or Third Parties retained, hired, or contracted by You relating to the 2020 PRESIDENTIAL ELECTION. Your answer should include, but not be limited to: (1) identification of the Person(s) retained, hired, or contracted with; (2) the nature of the retention, hiring, or contracting; and (3) identification of all Documents and Communications concerning such retention, hiring, or contracting.

    **ANSWER:**

**INTERROGATORY NO. 21:**
Identify all statements by OAN that You contend were defamatory. In identifying each statement, identify: (1) the broadcast where the statement was made; (2) the date of the statement; and (3) the speaker.

    **ANSWER:**

**INTERROGATORY NO. 22:**
To the extent You contend that any COMPLAINED OF STATEMENTS and/or COMPLAINED OF BROADCASTS made any false suggestions, impressions, or implications, identify: (1) each allegedly false suggestion, impression, or implication for each of the COMPLAINED OF STATEMENTS and/or COMPLAINED OF BROADCASTS; and (2) for each allegedly false suggestion, impression, or implication, the factual basis for Your contention that the statement created a false suggestion, impression, or implication.

    **ANSWER:**

**INTERROGATORY NO. 23:**
Identify the employees who allegedly made "false allegations" against You as described in Your statement in *U.S. Authorities Probe How Smartmatic Won Venezuela Election Pact,* Wall Street Journal, Dec. 1, 2006, https://www.wsj.com/articles/SB116493756785237566, and identify any cease and desist letters You sent to these employees.

6

Dated: July 17, 2023

By: */s/ Charles L. Babcock*

**JACKSON WALKER LLP**
Charles L. Babcock
(admitted *pro hac vice*)
Nancy W. Hamilton
(admitted *pro hac vice*)
John. K. Edwards
(admitted *pro hac vice*)
Joel R. Glover
(admitted *pro hac vice*)
Bethany Pickett Shah
(admitted *pro hac vice*
1401 McKinney Suite 1900
Houston, TX 77010
Tel: (713) 752-4200
Fax: (713) 308-4110
cbabcock@jw.com
nhamilton@jw.com
jedwards@jw.com
jglover@jw.com
bpickett@jw.com

Jonathan D. Neerman
(D.D.C. *admission pending*)
D.C. Bar No. 90003393
Carl C. Butzer
(admitted *pro hac vice*)
Minoo Sobhani Blaesche
(admitted *pro hac vice*)
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Tel: (214) 953-5664
Fax: (214) 661-6899
jneerman@jw.com
cbutzer@jw.com
mblaesche@jw.com

**BOYDEN GRAY & ASSOCIATES**
Trent McCotter
D.C. BAR NO. 1011329
801 17th St NW, #350
Washington, DC 20006
(202) 706-5488
mccotter@boydengrayassociates.com
*Counsel for Herring Networks, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of July 2023, I served the foregoing document on the following counsel of record by electronic mail:

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949
J. Erik Connolly
Nicole E. Wrigley
Michael E. Bloom
Lee B. Muench
Emily Newhouse Dillingham
Lauren C. Tortorella
Kathleen Watson Moss
James R. Bedell
Julie M. Loftus
Olivia Sullivan
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
mbloom@beneschlaw.com
lmuench@beneschlaw.com
edillingham@beneschlaw.com
ltortorella@beneschlaw.com
kwatsonmoss@beneschlaw.com
jbedell@beneschlaw.com
jloftus@beneschlaw.com
osullivan@beneschlaw.com

*/s/ Bethany Pickett Shah*
Bethany Pickett Shah

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SMARTMATIC USA CORP., SMARTMATIC INTERNATIONAL HOLDING B.V., and SGO CORPORATION LIMITED, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. 1:21-cv-02900-CJN |
| | ) | |
| v. | ) | |
| | ) | |
| HERRING NETWORKS, INC., d/b/a ONE AMERICA NEWS NETWORK, | ) ) | |
| | ) | Judge Carl J. Nichols |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**DEFENDANT'S SECOND SET OF INTERROGATORIES**
**TO PLAINTIFF SMARTMATIC INTERNATIONAL HOLDING B.V.**

TO:   Plaintiff SMARTMATIC INTERNATIONAL HOLDING B.V., by and through its counsel of record J. Erik Connolly and Emily Newhouse Dillingham, BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP, 71 South Wacker Drive, Suite 1600, Chicago, IL 60606.

Defendant HERRING NETWORKS, INC. d/b/a ONE AMERICA NEWS NETWORK ("OAN" or "Defendant") requests that you respond to each of the following interrogatories in writing and serve such responses upon Defendant's attorneys within thirty (30) days after service of this Second Set of Interrogatories, as required, and in the form required by Rule 33 of the Federal Rules of Civil Procedure.

For each interrogatory, as well as your responses thereto, the following definitions and instructions shall apply:

1

# I.
# DEFINITIONS

The following terms shall have the meanings set forth below whenever used in any Request.

1.    "2020 PRESIDENTIAL ELECTION" means and refers to the U.S. Presidential Election that occurred on November 3, 2020, and all voting (including mail-in voting) and related events occurring up to the certification of votes on January 6, 2021.

2.    "COMPLAINED OF BROADCASTS" means and refers to the broadcasts identified in Paragraphs 88, 146–147, 171, 176, and 178 of the COMPLAINT filed in this ACTION, among others, including without limitation the particular broadcasts of *After Hours with Alex Salvi*, *News Room*, *Tipping Point with Kara McKinney*, *Breaking News Live with Patrick Hussion*, *Real America with Dan Ball, In Focus with Stephanie Hamill, Weekly Briefing with Christina Bobb, America This Week,* and the Michael-Lindell-produced programs titled *Absolute Proof, Scientific Proof, Absolute Interference,* and *Absolutely 9-0.*

3.    "COMPLAINED OF STATEMENTS" means and refers to the statements described in Paragraphs 80–153, and more specifically identified in Paragraphs 171, 176, 184, 196, 205, 218, and 227, of the COMPLAINT filed in this ACTION.

4.    "OAN" means and refers to Defendant HERRING NETWORKS, INC., d/b/a ONE AMERICA NEWS NETWORK.

5.    "SMARTMATIC INTERNATIONAL" means and refers to, collectively, Plaintiff SMARTMATIC INTERNATIONAL HOLDING B.V. and any owner, director, officer, employee, agent, trust, custodian, parent, subsidiary, affiliate, predecessor, successor, attorney, accountant, representative, or other person/s purporting to act on SMARTMATIC INTERNATIONAL's behalf.

2

6.     "SMARTMATIC SYSTEMS" means any elections product developed, supplied, used, or supported by You, or on Your behalf, domestic or international, from PLAINTIFFS' inception to the present. This includes but is not limited to any software, hardware, source code, firmware, technology, solutions, digital tools, functionalities, devices, scan tabulators, optional modules, peripherals, Hybrid Activator, Accumulator & Transmitters, audit logs, electronic voting machines, electronic counting machines, ballot marking devices, voter management, poll worker support, online voting, or election management platforms as described in Paragraphs 26–27 of the COMPLAINT filed in this ACTION.

7.     "THIRD PARTY" means a Person other than PLAINTIFFS or OAN.

8.     "You" and "Your" means SMARTMATIC INTERNATIONAL

9.     "Communication" or "Communications" means a communication in any form, including, without limitation, notes, complaints, diaries, journals, datebooks, reports, calendars, telephone messages, letters, email messages, instant messages (such as but not limited to Signal, Cisco Jabber, IBM Sametime, Wickr, ICQ, Kik, BBM, Gchat, iMessage, Telegram, WhatsApp, Slack, and similar types of messages), cell phone text messages (SMS messages and MMS messages), voicemail messages, Slack messages or other internal messaging system communications, social media communications or posting on sites including but not limited to Facebook, Twitter, Instagram, Gab, or Parler (including any direct messages), website postings, internet chat-room postings, lists, correspondence, drawings, designs, telegrams, manuals, summaries or records of personal conversations, logs, minutes or records of meetings, minutes of any other type, transcripts of oral testimony or statements, affidavits, or summaries of investigations. For avoidance of doubt, the term "Communications" includes internal

communications and communications with third parties. The foregoing definition is subject to any objection sustained in relation to PLAINTIFFS' similar definition directed at OAN.

10.    "Concerning" means without limitation, containing, reflecting, referring to, discussing, relating to, describing, evidencing, supporting, or constituting.

11.    "Document(s)" is defined to be synonymous in meaning and equal in scope to the usage of the term under Federal Rule of Civil Procedure 34.

12.    "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

13.    The present tense includes the past and future tenses. The singular includes the plural, and the plural includes the singular. "All" means "any and all," "any" means "any and all." "Including" means "including but not limited to." "And" and "or" encompass both "and" and "or." Words in the masculine, feminine or neutral form shall include each of the other gender.

## II.
## INSTRUCTIONS

1.    Each Interrogatory and subpart thereof shall be answered separately and under oath. No Interrogatory shall be left blank. If the answer to any Interrogatory or subpart thereof is no, none, or unknown, such response should be written.

2.    In answering You shall furnish all information available to You at the time of answering and shall supplement Your answers in accordance with the Federal Rules.

3.    If You do not answer an Interrogatory, in whole or in part, because of a claim of privilege or the work product doctrine, state the following: (a) the nature of the privilege or reason for withholding which You contend applied; (b) the factual basis for Your assertion of privilege or the reason for withholding; (c) the type of document (e.g., letter, memorandum, email, etc.); (d) all authors and addressees; (e) all indicated and blind copies; (f) all Persons to whom the document

4

was distributed, shown or explained; (g) the document's date; (h) a summary description of the document's subject matter; (i) the number of pages and attachments or appendices comprising the document; and (j) its present custodian.

4.     In the event that any document requested to be identified by any Interrogatory has been destroyed or discarded, such document shall be identified by stating all of the information requested in subparagraphs (c) through (i) of Instruction 3 and, in addition, (k) its date of destruction or discard, manner of destruction or discard and reason for destruction or discard, (l) the Persons who authorized and carried out such destruction or discard, and (m) whether any copies of the document presently exist and, if so, the name of the custodian of each copy.

5.     These Interrogatories are continuing in nature, up to and during the course of trial. If You obtain additional information that is responsive to these Interrogatories, You shall promptly supplement Your response to each such Interrogatory.

# III.
# INTERROGATORIES

## INTERROGATORY NO. 19:

Identify and describe all SMARTMATIC SYSTEMS, including without limitation any legacy hardware, software, and source code, used in the 2020 PRESIDENTIAL ELECTION. Your answer should include, but not be limited to: (1) identification of every state, county, and local jurisdiction in the United States that used any component of each identified SMARTMATIC SYSTEMS; and (2) the specific components of the SMARTMATIC SYSTEMS used in each jurisdiction, including the type of system(s) used, including any name(s), make(s), model(s), product number(s), and/or version(s).

**ANSWER:**

## INTERROGATORY NO. 20:

Identify all vendors, contractors, and/or other Persons or Third Parties retained, hired, or contracted by You relating to the 2020 PRESIDENTIAL ELECTION. Your answer should include, but not be limited to: (1) identification of the Person(s) retained, hired, or contracted with; (2) the nature of the retention, hiring, or contracting; and (3) identification of all Documents and Communications concerning such retention, hiring, or contracting.

**ANSWER:**

## INTERROGATORY NO. 21:

Identify all statements by OAN that You contend were defamatory. In identifying each statement, identify: (1) the broadcast where the statement was made; (2) the date of the statement; and (3) the speaker.

**ANSWER:**

## INTERROGATORY NO. 22:

To the extent You contend that any COMPLAINED OF STATEMENTS and/or COMPLAINED OF BROADCASTS made any false suggestions, impressions, or implications, identify: (1) each allegedly false suggestion, impression, or implication for each of the COMPLAINED OF STATEMENTS and/or COMPLAINED OF BROADCASTS; and (2) for each allegedly false suggestion, impression, or implication, the factual basis for Your contention that the statement created a false suggestion, impression, or implication.

**ANSWER:**

## INTERROGATORY NO. 23:

Identify the employees who allegedly made "false allegations" against You as described in Your statement in *U.S. Authorities Probe How Smartmatic Won Venezuela Election Pact,* Wall Street Journal, Dec. 1, 2006, https://www.wsj.com/articles/SB116493756785237566, and identify any cease and desist letters You sent to these employees.

Dated: July 17, 2023                    By: */s/ Charles L. Babcock*

**JACKSON WALKER LLP**
Charles L. Babcock
(admitted *pro hac vice*)
Nancy W. Hamilton
(admitted *pro hac vice*)
John. K. Edwards
(admitted *pro hac vice*)
Joel R. Glover
(admitted *pro hac vice*)
Bethany Pickett Shah
(admitted *pro hac vice*
1401 McKinney Suite 1900
Houston, TX 77010
Tel: (713) 752-4200
Fax: (713) 308-4110
cbabcock@jw.com
nhamilton@jw.com
jedwards@jw.com
jglover@jw.com
bpickett@jw.com

Jonathan D. Neerman
(D.D.C. *admission pending*)
D.C. Bar No. 90003393
Carl C. Butzer
(admitted *pro hac vice*)
Minoo Sobhani Blaesche
(admitted *pro hac vice*)
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Tel: (214) 953-5664
Fax: (214) 661-6899
jneerman@jw.com
cbutzer@jw.com
mblaesche@jw.com

**BOYDEN GRAY & ASSOCIATES**
Trent McCotter
D.C. BAR NO. 1011329
801 17th St NW, #350
Washington, DC 20006
(202) 706-5488
mccotter@boydengrayassociates.com
*Counsel for Herring Networks, Inc.*

7

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of July 2023, I served the foregoing document on the following counsel of record by electronic mail:

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: (312) 212-4949
J. Erik Connolly
Nicole E. Wrigley
Michael E. Bloom
Lee B. Muench
Emily Newhouse Dillingham
Lauren C. Tortorella
Kathleen Watson Moss
James R. Bedell
Julie M. Loftus
Olivia Sullivan
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
mbloom@beneschlaw.com
lmuench@beneschlaw.com
edillingham@beneschlaw.com
ltortorella@beneschlaw.com
kwatsonmoss@beneschlaw.com
jbedell@beneschlaw.com
jloftus@beneschlaw.com
osullivan@beneschlaw.com

*/s/ Bethany Pickett Shah*
Bethany Pickett Shah

8

# EXHIBIT 1-F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SMARTMATIC USA CORP., et al.,

                Plaintiffs,

        v.

HERRING NETWORKS, INC., d/b/a
ONE AMERICA NEWS NETWORK

                Defendant.

No. 1:21-cv-02900-CJN

Judge Carl J. Nichols

## PLAINTIFFS' OMNIBUS ANSWERS AND OBJECTIONS
## TO DEFENDANT'S SECOND SET OF INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 33, Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited (collectively, "Smartmatic") by and through undersigned counsel, hereby provide the following omnibus answers and objections to Defendants Herring Networks, Inc.'s, d/b/a One America News Network ("OANN") Second Set of Interrogatories to Plaintiffs[1] (the "Interrogatories" and, individually, each an "Interrogatory"). Smartmatic's answers are hereby provided without waiver of any questions or objections to relevancy or admissibility as evidence. These answers are specifically made subject to objection during any part of these proceedings.

## GENERAL OBJECTIONS

The following General Objections are incorporated into Smartmatic's responses as though fully set forth herein. The Specific Objections identified for the Interrogatories further identify additional objections specific to that Interrogatory. The General Objections are not waived, or in any way limited, by the Specific Objections. Smartmatic's agreement to provide any responsive

---

[1] Because Defendant served an identical Second Set of Interrogatories on each Plaintiff, Plaintiffs respond collectively to Defendant's Second Set of Interrogatories in these Omnibus Responses and Objections.

and non-privileged information or documents in response to the Interrogatories shall not be construed as a waiver of any right or objections to the Interrogatories or other discovery procedures. The production of any information or documents by Smartmatic shall be without prejudice to any objections Smartmatic may have as to the relevance or admissibility of any information or document at any hearing or trial.

1.     Smartmatic objects to the Interrogatories to the extent that they might be interpreted as requiring Smartmatic to concede the relevance, materiality, or admissibility of the information sought by the Interrogatories. All of the following objections, answers, and responses are given without prejudice to and with the express reservation of Smartmatic's right to supplement or modify its objections, answers, and responses to the extent required and permitted by applicable law, to incorporate later discovered information, and to rely upon any and all such information and documents at trial or otherwise. Likewise, Smartmatic shall not be prejudiced if any of its present objections, answers, and responses are based on incomplete knowledge or comprehension of the facts, events, or occurrences involved in this matter.

2.     Smartmatic objects to the Requests, including the Definitions and Instructions, to the extent that they purport to impose obligations beyond those required by the Federal Rules of Civil Procedure, applicable case law, and the Court's orders in this case.

3.     Smartmatic objects to the Interrogatories to the extent that they seek information protected from disclosure by attorney-client privilege, attorney work product doctrine, joint defense privilege, or any other applicable privilege or immunity from production. Nothing contained in Smartmatic's responses to these Interrogatories is intended, or should in any way be deemed, to waive any such privilege or immunity. Any inadvertent production of information protected by the attorney-client privilege, prepared in anticipation of litigation or trial, or otherwise

protected or immune from discovery shall not constitute a waiver of any privilege or other basis for objecting to the production of such material or its subject matter. Smartmatic expressly reserves the right to object to the use or introduction of such information.

4.     Smartmatic objects to the Interrogatories to the extent that they seek information that is confidential or proprietary to Smartmatic or its customers. If Smartmatic provides confidential or proprietary information in response to the Interrogatories, such production will be subject to the protective order entered by the Court.

5.     Smartmatic objects to the Interrogatories to the extent that they seek information protected from disclosure under any confidentiality or protective order, or under any other order or stipulation that Smartmatic has entered into or is subject to with respect to any past or present litigation or other matter.

6.     Smartmatic objects to the Interrogatories to the extent that they seek information of third parties protected from disclosure under confidentiality or other agreements with third parties that Smartmatic has entered into or is subject to. An agreement to produce documents or information does not constitute an agreement to produce documents or information protected from disclosure under confidentiality, non-disclosure, or other agreements with third parties.

7.     Smartmatic objects to the Interrogatories to the extent that they seek information, the disclosure of which is prohibited by law, regulation, or order of a court or other authority of a foreign jurisdiction in which such information is located.

8.     Smartmatic objects to the Interrogatories to the extent that they are overbroad, unduly burdensome, vague, and ambiguous, and/or fail to describe the information sought with reasonable particularity. Smartmatic further objects to the Interrogatories as overbroad and unduly burdensome to the extent that they fail to specify reasonable time limitations. When Smartmatic

responds to an Interrogatory that it will produce documents sufficient to show the requested information subject to its objections and a reasonable search, that reasonable search will be governed by the objections and conditions set forth in Smartmatic's Omnibus Responses and Objections to Defendants Herring Networks, Inc., d/b/a One America News Network's Second Set of Requests for Production.

9.     Smartmatic objects to the Interrogatories to the extent that they seek "any" or "all" information on the grounds that such Interrogatories are overbroad and unduly burdensome.

10.     Smartmatic objects to the Interrogatories to the extent that they seek disclosure of information that is either irrelevant to the subject matter of this lawsuit or not reasonably calculated to lead to the discovery of relevant or admissible evidence.

11.     Smartmatic objects to the Interrogatories as overbroad and unduly burdensome to the extent they essentially require Smartmatic to provide information on the entire history of Smartmatic's business operations as it relates to its voting systems and technologies.

12.     Smartmatic objects to the Interrogatories to the extent that they call for a legal conclusion.

13.     Smartmatic objects to the Interrogatories to the extent that they seek disclosure of information that is not in Smartmatic's possession, custody, or control.

14.     Smartmatic objects to the Interrogatories to the extent that they seek disclosure of information that is already in OANN's possession, custody, or control, or is equally available to OANN.

15.     Smartmatic objects to the Interrogatories to the extent that the burden or expense of the proposed discovery outweighs its likely benefit.

16.     Smartmatic objects to the definition of "Dominion Entity(ies)" as vague, ambiguous, overbroad, and overly burdensome. Smartmatic will construe "Dominion Entity(ies)" to mean the corporate entities US Dominion, Inc., Dominion Voting Systems, Inc., and Dominion Voting Systems Corporation.

17.     Smartmatic objects to the definition of "Plaintiff(s)," "Smartmatic Entity(ies)," "SGO Corporation Limited," "Smartmatic International Holding B.V.," "Smartmatic USA Corp.," "You," and "Your" as vague, ambiguous, overbroad, and unduly burdensome to the extent that they include persons and entities that are not parties to this action and who do not possess responsive information.

18.     Smartmatic objects to the Interrogatories to the extent that they use phrases or terms that have specific or technical definitions under state or federal regulations, and such phrases or terms are not specifically defined.

19.     Smartmatic's use of a given term in its Responses does not mean that the term is not vague and ambiguous, as used in the Interrogatories, or that Smartmatic endorses the use of the term.

20.     An agreement in Smartmatic's response to produce certain documents is not meant to state or imply that such documents exist.

21.     As identified in Defendant's Definitions and Instructions, unless otherwise indicated, the relevant time period for Smartmatic's answers is January 1, 2020, to the present.

## **INTERROGATORIES**

## **INTERROGATORY NO. 19:**

Identify and describe all SMARTMATIC SYSTEMS, including without limitation any legacy hardware, software, and source code, used in the 2020 PRESIDENTIAL ELECTION. Your answer should include, but not be limited to: (1) identification of every state, county, and local jurisdiction in the United States that used any component of each identified SMARTMATIC

SYSTEMS; and (2) the specific components of the SMARTMATIC SYSTEMS used in each jurisdiction, including the type of system(s) used, including any name(s), make(s), model(s), product number(s), and/or version(s).

**ANSWER**: Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by attorney-client privilege, attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent that it requests information that is confidential or proprietary to Smartmatic or its customers. Smartmatic further objects to this Interrogatory to the extent it seeks information or documentation protected from disclosure under confidentiality under other agreements with third parties into which Smartmatic has entered or to which Smartmatic is subject. Smartmatic further objects to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to the discovery of admissible evidence. Smartmatic further objects to this Interrogatory as overbroad and overly burdensome to the extent that it seeks information regarding "every state, county, and local jurisdiction in the United States that used any component" of Smartmatic's voting systems. Smartmatic further objects to this Interrogatory to the extent it seeks documents that are not relevant to the claims and defenses in this action. Smartmatic further objects to the terms "legacy hardware," "software," "source code," "components," and "versions" as vague and ambiguous. Smartmatic further objects to this Interrogatory as duplicative of interrogatories requested in Defendant's First Set of Interrogatories including interrogatories No. 5, 9, 10, and 11. Subject to and without waiving the foregoing objections, for the 2020 Presidential Election, Smartmatic provided the following technology and services to Los Angeles County under the VSAP initiative: (1) engineered and manufactured the BMD hardware, (2) programmed the BMD software, (3) participated in the California certification process, (4) created the backend software to manage the devices, (5) provided systems integration

services, (6) built the VSAP operations center, (7) handled logistics and setup/breakdown of the

vote centers, (8) oversaw real-time data management for deployment, and (9) supplied Help Desk

services on Election Day. Responding further, Smartmatic states that it manufactured

approximately 31,100 BMDs for use in Los Angeles County. The BMD is the primary voter

interface system and consists of a touchscreen, an audio and tactile controller, and dual-switch

input that voters use to generate, verify, and cast a paper ballot. Completed ballots are transferred

to the Integrated Ballot Box, attached to the BMD. Responding further, Smartmatic states that it

developed the following versions of the technology for use by Los Angeles County: VSAP 1.0;

VSAP 2.0; VSAP 2.1; VSAP 2.2; and VSAP 3.0.

## INTERROGATORY NO. 20:

Identify all vendors, contractors, and/or other Persons or Third Parties retained, hired, or contracted
by You relating to the 2020 PRESIDENTIAL ELECTION. Your answer should include, but not
be limited to: (1) identification of the Person(s) retained, hired, or contracted with; (2) the nature
of the retention, hiring, or contracting; and (3) identification of all Documents and
Communications concerning such retention, hiring, or contracting.

**ANSWER:**   Smartmatic incorporates by reference its General Objections as if fully

stated herein. Smartmatic further incorporates its objections to Defendant's First Set of Requests

for Admission. Smartmatic further objects to this Interrogatory to the extent it seeks information

protected by the attorney-client privilege, the attorney work product immunity, and/or any other

applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it

seeks information or documentation protected from disclosure under confidentiality under other

agreements with third parties into which Smartmatic has entered or to which Smartmatic is subject.

Smartmatic further objects to this Interrogatory to the extent it seeks information that is not

relevant to any claim or defense asserted in this Action and is not reasonably calculated to lead to

the discovery of admissible evidence. Smartmatic further objects to this Interrogatory to the extent

that it seeks "all" such information on the grounds that such Interrogatories are overbroad and

7

unduly burdensome. Smartmatic objects to the phrases "retained, hired, or contracted" and "the nature of the retention, hiring, or contracting," as used in this Interrogatory, as vague and ambiguous. Smartmatic further objects to this Interrogatory as duplicative of interrogatories requested in Defendant's First Set of Interrogatories including interrogatories No. 4, 9, and 10.

**INTERROGATORY NO. 21:**

Identify all statements by OAN that You contend were defamatory. In identifying each statement, identify: (1) the broadcast where the statement was made; (2) the date of the statement; and (3) the speaker.

   **ANSWER:** Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory as overbroad and overly burdensome to the extent that it seeks information regarding "all statements" that Smartmatic alleges are defamatory, although the requested information about each defamatory statement is readily available in Smartmatic's Complaint and is thus already in OANN's possession, custody, or control, or is equally available to OANN. Smartmatic further objects to this Interrogatory to the extent that it calls for legal conclusions. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic directs OANN to Smartmatic's Complaint, including but not limited to paragraphs 171, 176, 179, 184, 196, 205, 218, and 227 of the Complaint for information about OANN's defamatory statements. Smartmatic reserves the right to incorporate in its Complaint any additional defamatory statements and/or republications or repackaging that are identified in the course of discovery.

**INTERROGATORY NO. 22:**

To the extent You contend that any COMPLAINED OF STATEMENTS and/or COMPLAINED OF BROADCASTS made any false suggestions, impressions, or implications, identify: (1) each allegedly false suggestion, impression, or implication for each of the COMPLAINED OF

STATEMENTS and/or COMPLAINED OF BROADCASTS; and (2) for each allegedly false suggestion, impression, or implication, the factual basis for Your contention that the statement created a false suggestion, impression, or implication.

**ANSWER**: Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory as overbroad and overly burdensome to the extent that it seeks information readily available in Smartmatic's Complaint and is thus already in OANN's possession, custody, or control, or is equally available to OANN. Smartmatic further objects to this Interrogatory to the extent that it calls for legal conclusions. Smartmatic objects to the terms "false suggestions, impressions, or implications" and "the factual basis," as used in this Interrogatory, as vague and ambiguous. Subject to and without waiving the foregoing objections, and to the extent Smartmatic understands this Interrogatory, Smartmatic directs OANN to Smartmatic's Complaint—including but not limited to paragraphs 22-64, 180, 187-94, 199-203, 208-16, 221-25, 230-37, 242-49, and 257-354 of Smartmatic's Complaint—for the factual basis of Smartmatic's allegations that OANN's defamatory statements were false. For any additional defamatory statements and/or republications or repackaging that are identified in the course of discovery, Smartmatic reserves the right to incorporate in its Complaint the factual bases for Smartmatic's allegations that such defamatory statements were false.

## INTERROGATORY NO. 23:

Identify the employees who allegedly made "false allegations" against You as described in Your statement in *U.S. Authorities Probe How Smartmatic Won Venezuela Election Pact*, Wall Street Journal, Dec. 1, 2006, https://www.wsj.com/articles/SB116493756785237566, and identify any cease and desist letters You sent to these employees.

**ANSWER**: Smartmatic incorporates by reference its General Objections as if fully stated herein. Smartmatic further objects to this Interrogatory to the extent it seeks information protected

by the attorney-client privilege, the attorney work product immunity, and/or any other applicable privilege or immunity. Smartmatic further objects to this Interrogatory to the extent it seeks information or documentation protected from disclosure under confidentiality under other agreements with third parties into which Smartmatic has entered or to which Smartmatic is subject. Smartmatic objects to this Interrogatory to the extent it seeks documents that are not relevant to the claims and defenses in this action. Smartmatic further objects to this Interrogatory as irrelevant, overbroad, and overly burdensome to the extent that it seeks information outside of the reasonable time frame relevant to this action. Smartmatic further objects to this Interrogatory on the grounds that it is overly broad and not reasonably limited in scope to the extent it seeks information unrelated to Smartmatic's role in the 2020 U.S. Presidential Election, the election machines and software developed by Smartmatic and utilized in the 2020 U.S. Presidential Election, or the defamatory statements detailed in the Complaint.

Date:  August 16, 2023                              Respectfully submitted,

                                                    */s/ J. Erik Connolly*
                                                    J. Erik Connolly (D.C. Bar No. IL0099)
                                                    Nicole E. Wrigley (D.C. Bar No. IL0101)
                                                    Caitlin A. Kovacs (admitted *pro hac vice*)
                                                    Olivia Sullivan (admitted *pro hac vice*)
                                                    BENESCH, FRIEDLANDER, COPLAN &
                                                    ARONOFF LLP
                                                    71 South Wacker Drive, Suite 1600
                                                    Chicago, IL 60606
                                                    Telephone: 312.212.4949
                                                    econnolly@beneschlaw.com
                                                    nwrigley@beneschlaw.com
                                                    ckovacs@beneschlaw.com
                                                    osullivan@beneschlaw.com

                                                    *Attorneys for the Plaintiffs Smartmatic USA*
                                                    *Corp., Smartmatic International Holding B.V.,*
                                                    *and SGO Corporation Limited*

10

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on August 17, 2023, copies of the foregoing

**Plaintiffs' Omnibus Responses and Objections to Defendant's Second Set of Interrogatories**

were served via email on all attorneys of record:

Charles L. Babcock
Nancy W. Hamilton
John K. Edwards
Joel R. Glover
Minoo Blaesche
Bethany Pickett Shah
Carl C. Butzer
JACKSON WALKER LLP
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4210
cbabcock@jw.com
nhamilton@jw.com
jedwards@jw.com
jglover@jw.com
mblaesche@jw.com
bpickett@jw.com
cbutzer@jw.com

Trent McCotter
BOYDEN GRAY & ASSOCIATES
801 17th St NW, #350
Washington, DC 20006
Telephone: (202) 706-5488
mccotter@boydengrayassociates.com

*Attorneys for the Defendants*

*/s/ J. Erik Connolly*
J. Erik Connolly

11

# EXHIBIT 1-G



Olivia Sullivan
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Direct Dial: 312.212.4968
Fax: 312.767.9192
osullivan@beneschlaw.com

October 10, 2023

Carl C. Butzer
Jackson Walker LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201

Re:   ***Smartmatic USA Corp., et al. v. Herring Networks, Inc., d/b/a One America News Network*, Case No. 1:21-cv-02900-CJN (D.D.C.)**

Counsel,

I write in response to Carl's September 19, 2023 Letter ("September 19 Letter," concerning Smartmatic's incomplete production), and John's September 20, 2023 Letter ("September 20 Letter," concerning Smartmatic's RFP responses), which were sent within 24 hours of one another. Your deliberate, 3-week delay in responding is yet another in a series of delays over the past two months, which is concerning because the Court ordered the parties to complete discovery by December 8. Why has it taken 3 weeks for you to reply? Both letters grossly mischaracterize the status of Smartmatic's production and the parties' negotiations. We disagree, as there are *18 instances in this letter* where Smartmatic has stated it "will shortly produce" or "will supplement" with responsive documents—in connection with 20 RFPs: Nos. 5, 6, 19, 20, 21, 22, 23, 26, 31, 35, 37, 62, 63, 67, 74, 80, 81, 85, 96, and 101. The letters blatantly ignore pending motions before the Court, disregard prior agreements of the parties, and present unnecessarily duplicative requests. Additionally, the significant overlap in the letters is apparent and disquieting. But only 6 RFPs (Nos. 8, 9, 18, 24, 44 and 62) appear in both letters, and for different reasons. There seems to be no appropriate reason for the duplicative correspondence beyond pure gamesmanship on behalf of OANN. This is inaccurate hyperbole. The letters address different issues and, except for the above-identified RFPs, they relate to different RFPs. Nevertheless, in the spirit of good faith and compromise, Smartmatic addresses each individual RFP raised below.

OANN's letters merely list the RFPs as they were stated in OANN's First Set of Requests for Production. Since these RFPs were served, many of them have been significantly narrowed. Smartmatic will not engage in discussions about the RFPs in their original scope. You continue to ignore any previous discussion or agreement the parties had before Jackson Walker joined the case. We have not, although you continue to argue that we do. Smartmatic would like to remind you that discovery does not start over when a party gets new counsel, and you are bound by the actions of previous counsel. We suggest that you take some time to read the previous correspondence in this case and familiarize yourself with the parties' agreements on written discovery. We appreciate the "reminder" and the "suggestion." We also invite you to read the letters cited below and the many letters referred to in our September 20 letter (including OAN's correspondence dated February 9, March 6, April 24 and Smartmatic's correspondence dated February 22, March 14, March 16, April 27).

23358737 v1

C. Butzer
October 10, 2023
Page 2

**1. OANN's request attempts to circumvent Smartmatic's Motion for Protective Order Quashing OANN's Second Set of Requests for Production.**

As an initial matter, your September 19 Letter improperly demands responses to OANN's Second Set of Requests for Production ("RFPs"). As you are fully aware, Smartmatic filed a Motion for Protective Order to Quash OANN's Second Set of Requests for Production on July 7, 2023. (Dkt. 81). This motion remains pending with the court. OANN's Second Set of RFPs are duplicative, excessively voluminous, and harassing. Absent a ruling from the Court to the contrary, Smartmatic will not respond to OANN's Second Set of RFPs. But your argument to the Court is that "the vast majority of the Second Set of RFPs duplicate" the First Set of RFPs (Dkt. 81, ECF p. 9). And in Exhibit B to your Motion for Protective Order (Dkt. 81-8, attached hereto as Exhibit "B") you even purport to "identif[y] examples of duplicative RFPs in greater detail." *See* Dkt. 81, ECF p. 13 n.4. Almost all of the Second RFPs we identified in our September 19 letter are ones that you specifically claim, in Exhibit "B", are duplicative of RFPs in our First RFPs—*which we propounded one year ago*. Below, we provide more detail.

**2. The parties agreed to identify documents by categories, not Bates Numbers.**

Second, both letters improperly demand that Smartmatic identify any produced documents by Bates number. This demand completely ignores the prior agreement of the parties. OANN explicitly stated the following in their February 17, 2023 correspondence: "Herring acknowledges that…the parties agreed that, where they responded that they will produce documents, that they will disclose the categories and types of documents that were produced in response to relevant RFPs (*rather than identify bates-stamped documents for each relevant discovery request*)." (emphasis added). Because the parties agreed to not require the identification of documents by Bates number, Smartmatic will not engage with OANN's request. *By your choice, that is no longer an agreement.* On September 11, you sent us an 8-page letter claiming that OAN's productions "demonstrated a serious failure to produce many categories of documents …," and which went on —RFP-by-RFP—to detail the alleged deficiencies. You demanded that if the documents had been produced (which they were), that we *"identify the documents by Bates number."* (Your 9/11/2023 Letter at p. 7). You also demanded a reply within 2 days (by September 13). Our Team spent the better part of that week putting together our September 15 response (attached as Exhibit "A"), which included, as you demanded, the Bates numbers for all the documents you wrongly claimed were not in OAN's production. We now expect you to do the same. *Please let us know by Monday, October 16 whether we are at an impasse on this issue.*

**3. OANN requested that Smartmatic produce all documents from Related Litigation[1].**

Third, your September 19 Letter ignores the fact that OANN repeatedly demanded Smartmatic produce all documents from Related Litigation. OANN ostensibly complains that Smartmatic's production "is document dumps from other cases" while ignoring the truth that OANN repeatedly requested all documents from Related Litigation. Correction: We requested production of what had already been ***reviewed*** and produced in the Related Litigation. More on this below.

---

[1] "Related Litigation" is previously defined in the parties' earlier letters as *Smartmatic USA Corp., et al. v. Fox News Network, LLC, et al.*, Index No. 151136-2021 (New York County, New York); *Smartmatic USA Corp., et al. v. Newsmax Media, Inc.*, Case No. N21C-11-028 EMD (Del. Super. Ct.); *Smartmatic USA Corp., et al. v. Sidney Powell*, Case No. 21-cv-02995 (D.D.D.); and *Smartmatic USA Corp., et al. v. Lindell, et al.*, Case No. 22-cv-00098 (D. Minn.).

C. Butzer
October 10, 2023
Page 3

On February 22, 2023, OANN requested that Smartmatic produce and utilize all search terms from related litigation. ("We hope that you will provide the lists of search terms used by all parties in Related Litigation…The idea here is that we can save a lot of time and effort if the parties' search terms in the Related Litigation are acceptable, or largely acceptable, in this case."). OANN then complained when Smartmatic requested more time produced to OANN the documents from the Related Litigation. *See* OANN Letter, March 27, 2023; OANN Letter April 28, 2023. Upon OANN's insistence, Smartmatic agreed to produce all documents and run the search terms from the Related Litigation. Additionally, upon OANN's request, Smartmatic agreed to utilize 51 custodians, which is more custodians than any other Related Litigation case. OANN cannot now complain that they received all documents as requested and negotiated. Smartmatic's voluminous production is the simple result of OANN's direct request. There never was an understanding that there would be no responsiveness review. You've not carefully read the prior law firm's April 28, 2023, letter, which makes clear that we wanted "what has already been ***reviewed*** and produced in the Related Litigation." (emphasis added.). Smartmatic also refuses to provide us information about which documents involve document dumps (with no review) from other cases (or which cases they were produced in), and which documents were produced with a responsiveness review using OAN's search terms. *By Monday, October 16 please tell us (1) which documents were produced without responsiveness review, (2) which cases, if any, they were previously produced in, (3) which produced documents resulted from a review using OAN's search terms, and (4) whether you continue to refuse to perform a responsiveness review, in which case we are at an impasse.* Relatedly, August 28 was the substantial completion document production deadline that you insisted on and agreed to. You also spent much of August "warning" us that there'd better not be a "document dump" (your words) on August 28. We complied with that deadline, and we did not produce a "document dump." Yet, since August 28 you've produced over 350,000 documents. *Is it your position that Smartmatic abided by the substantial completion deadline? If so, please explain by Monday, October 16. Also by October 16, please let us know if you will be producing more documents, and what they are.*

## 4. Smartmatic properly provided an Omnibus on behalf of all three Plaintiff entities.

Fourth, your September 20 Letter asserts that Smartmatic provided an Improper Omnibus response on behalf of all three plaintiffs. Smartmatic has considered the different information each entity may have. Smartmatic has produced documents from all three entities. The RFPs enumerated by OANN (RFP Nos. 56-59, 64-66, 83-87, and 98) do not require individual responses. We note then, based on your argument and logic, that OAN's Second Set of RFPs—which propounded the same RFPs to all three Plaintiffs—is *not* really "1,500 RFPs," despite your contrary representations to the Court. (*See, e.g.*, Dkt. 81, ECF pp. 5, 8, 9, 11, 13, 24-26; Dkt. 90, ECF p. 24; Dkt. 96, ECF pp. 6, 9, 18).

## 5. OANN continues to ignore the parties' previous agreements, particularly on the scope of requests and whether the parties are at an impasse.

Fifth, your September 20 Letter ignores the fact that the parties already reached an Impasse over certain RFPs, agreed to narrow the scope of some requests, and have yet to discuss others. Your September 20 Letter requests confirmation that the parties reached an impasse on the following requests: RFP Nos. 10, 17, 23, 34-36, 39, 60, 65, 88, 91-93, 97, and 102. Each RFP is addressed below:

C. Butzer
October 10, 2023
Page 4

- <u>RFP No. 10:</u> On February 22, 2023, Smartmatic confirmed that it stands on its objections to RFP No. 10 and stated that it will not produce documents relating to this request. There has been no further discussion of this RFP. Smartmatic continues to stand on its objection. <span style="color:red">We agree the parties have reached an impasse, and we will move to compel.</span>

- <u>RFP No. 17:</u> On February 22, 2023, Smartmatic reiterated their objection to RFP No. 17. On March 6, 2023, OANN stated that they would likely move to compel on this issue. There has been no further discussion of this RFP. <span style="color:red">We agree the parties have reached an impasse, and we will move to compel.</span>

- <u>RFP No. 23:</u> On February 22, 2023, Smartmatic expressed its willingness to use additional search terms with respect to this request. On March 6, OANN requested the parties meet and confer the next day to discuss search terms. On April 19, Smartmatic agreed to produce and has produced or will shortly produce <span style="color:red">when?</span> any responsive documents identified from the search terms below<span style="color:red">—These should already have been produced</span>:

  - "Committee on Foreign Investment" OR CFIUS

  - ("Foreign Investment" OR Congress OR "Cybersecurity and Infrastructure Security Agency" OR CISA OR "House of Representatives") W/20 (investigat* OR inquir* OR integrity* OR secur* OR transparen* OR reliab* OR flaw* OR irregularit* OR vulnerab*)

  - ("Foreign Investment" OR Congress OR "Cybersecurity and Infrastructure Security Agency" OR CISA OR "House of Representatives") W/20 (question* OR look* OR watch*)

  - Maloney OR Paulson OR "John Snow"

- <u>RFP No. 34:</u> On March 6, 2023, OANN acknowledged that the parties did not come to an agreement regarding the scope of RFP No. 34. OANN stated they would likely move to compel on this issue. There has been no further discussion of this RFP. <span style="color:red">We agree the parties have reached an impasse, and we will move to compel.</span>

- <u>RFP Nos. 35:</u> On February 22, Smartmatic agreed to run several search terms and produce all non-privileged, responsive documents to this request. On March 6, OANN requested the parties meet and confer the next day to discuss search terms. Smartmatic agreed to produce and has produced or will shortly produce <span style="color:red">when?</span> any responsive documents identified from the search terms below<span style="color:red">—These should already have been produced</span>:

  - (Sequoia OR SVS) AND (Smartmatic OR Blaine OR Chicago OR "United States" OR "US" OR "U.S." OR divest* OR acqui* OR "intellectual property" OR "IP" OR Venezuela* OR "Cook County" OR market OR Edge* OR software OR litigation OR lawsuit OR case OR bid OR machin* OR dominion OR "Sale and Security" OR sale OR divest* OR sold)

4

C. Butzer
October 10, 2023
Page 5

- (Edward w/2 Burke) OR (Alderman w/2 Burke) OR (Ald* w/2 Burke)

- <u>RFP No. 36:</u> On February 9, 2023, OANN stated that unless Smartmatic changes its position by February 15, they will consider the parties at an impasse regarding RFPs 36. On February 22, 2023, Smartmatic confirmed that it will not change its position regarding this request. There has been no further discussion of this RFP. We agree the parties have reached an impasse, and we will move to compel.

- <u>RFP No. 39:</u> The parties engaged in several discussions regarding the scope of RFP No. 39. On February 22, 2023, Smartmatic agreed to produce "documents and communications related to Lord Mark Malloch-Brown's June 21, 2015 interview regarding Smartmatic, as referenced in Paragraph 343 of the Complaint." Smartmatic also agreed to designate Lord Mark Malloch-Brown as a custodian. On March 6, OANN stated that they would likely move to compel on this issue. There has been no further discussion of this RFP. We agree the parties have reached an impasse, and we will move to compel.

- <u>RFP No. 60:</u> In Smartmatic's Omnibus Responses and Objections to OANN's First sent of RFPs ("Response"), served on December 16, 2022, Smartmatic objected to RFP No. 60. and stated it would not produce documents in response to this request. Beyond a meet and confer on January 31, the parties have not discussed this RFP. We agree the parties have reached an impasse, and we will move to compel.

- <u>RFP No. 65:</u> In its Response, Smartmatic objected to RFP No. 65 and stated that it will not produce documents in response to this request. Beyond a meet and confer on January 31, the parties have not discussed this RFP. Smartmatic continues to stand on its objection. We agree the parties have reached an impasse, and we will move to compel.

- <u>RFP No. 88:</u> In its Response, Smartmatic objected to RFP No. 88 and stated that it will not produce documents in response to this request. Beyond on a meet and confer on January 31, the parties have not discussed this RFP. Smartmatic continues to stand on its objection. We agree the parties have reached an impasse, and we will move to compel.

- <u>RFP No. 91:</u> In its Response, Smartmatic objected to RFP No. 91 and stated that it will not produce documents in response to this request. Beyond on a meet and confer on January 31, the parties have not discussed this RFP. Smartmatic continues to stand on its objection. We agree the parties have reached an impasse, and we will move to compel.

- <u>RFP No. 92:</u> In its Response, Smartmatic objected to RFP No. 92 and stated that it will not produce documents in response to this request. Beyond on a meet and confer on January 31, the parties have not discussed this RFP. Smartmatic continues to stand on its objection. We agree the parties have reached an impasse, and we will move to compel.

C. Butzer
October 10, 2023
Page 6

- <u>RFP No. 93</u>: In its Response, Smartmatic objected to RFP No. 93 and stated that it will not produce documents in response to this request. Beyond on a meet and confer on January 31, the parties have not discussed this RFP. Smartmatic continues to stand on its objection. <span style="color:red">We agree the parties have reached an impasse, and we will move to compel.</span>

- <u>RFP No. 97</u>: In its Response, Smartmatic objected to RFP No. 97 and stated that it will not produce documents in response to this request. Beyond on a meet and confer on January 31, the parties have not discussed this RFP. Smartmatic continues to stand on its objection. <span style="color:red">We agree the parties have reached an impasse, and we will move to compel.</span>

- <u>RFP No. 102</u>: In its Response, Smartmatic objected to RFP No. 102 and stated that it will not produce documents in response to this request. OANN narrowed the timeframe to 2006 to present. On February 22, 2023, Smartmatic informed OANN that the timeframe was still overly broad and vague. The parties have not discussed this RFP further. <span style="color:red">We agree the parties have reached an impasse, and we will move to compel.</span>

**6. Requests made in the September 20 Letter needlessly overlap with those iterated in the September 19 Letter.**

Sixth, several requests presented in your September 20 Letter directly overlap with those set forth in your September 19 Letter. There is no justification for this overlap beyond unnecessarily burdening Smartmatic in correspondence sent at late hours of the evening or OANN's lack of organization. <span style="color:red">Again, the letters address different topics. We do not understand why you find it important that the letters were sent at night. Is this your justification for waiting 3 weeks to respond to them?</span> Each overlapping request is addressed below:

<u>RFP Nos. 8 & 9</u>: Your September 19 Letter asserts that Smartmatic remains deficient in their response to RFP Nos. 8 & 9. <span style="color:red">Correction: deficient in its document production.</span> Yet your September 20 Letter acknowledges that the parties conferred about the scope of RFP Nos. 8 & 9 on March 9, 2023. Following this meet and confer, Smartmatic agreed to produce the Articles of Organization for BVI and SMMT USA. Smartmatic will supplement its production with these documents. <span style="color:red">We do not understand your arguments; it appears we accurately identified a deficiency with your production. As you admit, these documents should already have been produced. When will you produce them?</span> Smartmatic also stated that it is willing to answer an Interrogatory about membership and capitalization. OANN has not served such an interrogatory. Smartmatic has fully complied with RFPs No. 8 and 9 to the extent agreed to by the parties. <span style="color:red">No interrogatory is required because these requests seek *documents* that should be produced. We agree the parties have reached an impasse, and we will move to compel.</span>

<u>RFP Nos. 14 & 18</u>: Your September 19 Letter asserts that Smartmatic remains deficient in their response to RFP Nos. 14 & 18. <span style="color:red">Correction: deficient in its document production.</span> Your September 20 Letter goes on to assert that "Smartmatic inexplicably constrained the timeframe to 2018 to present." These assertions mischaracterize Smartmatic's production and the parties' negotiations regarding both requests. <span style="color:red">Inaccurate.</span> Notwithstanding its objections, Smartmatic produced documents responsive to RFP Nos. 14 & 18. <span style="color:red">Where—please provide Bates numbers?</span>

C. Butzer
October 10, 2023
Page 7

Until the September 20 Letter, OANN did not express disagreement with the time frame for RFP Nos. 14 & 18. To the extent OANN's September 20 Letter can be construed as objecting to the narrowed timeframe, Smartmatic has not changed its position and stands on its objection to RFP Nos. 14 & 18. We agree the parties have reached an impasse, and we will move to compel.

RFP Nos. 44, 24 & 62: Your September 19 Letter asserts that Smartmatic remains deficient in their response to RFP Nos. 44, 24 & 62. Correction: deficient in its document production. Your September 20 Letter needlessly compounds on this point, stating "With no agreement from Smartmatic to amend its responses and produce responsive documents, OAN considers the Parties to be at an impasse and will move to compel Smartmatic to produce documents and communicate accordingly." As a threshold matter, your September 19 and September 20 Letter were sent within 24 hours of one another. It is facially absurd to expect Smartmatic to provide a thorough, substantive response, and production, within this timeframe. We disagree, and you've had 3 weeks to do so. Suggesting the parties are at an impasse without any negotiation is illogical and insensible. The parties negotiated these RFPs multiple times (see, e.g., OAN's letters dated January 23, February 9, March 6, and March 23; Smartmatic's responses dated February 22, March 14, March 28). Smartmatic's response to each request has been, and continues to be, responsive. Each individual RFP is addressed below.

RFP No 44: RFP 44 broadly requests "Documents and Communications related to any breach of any Smartmatic Entity's voting software or hardware from the formation of any such Smartmatic Entity to the present." In response to this request, Smartmatic agreed to produce documents regarding any security breach of Smartmatic's voting machines or software as utilized in any election, to the extent they exist and can be located by a reasonable search. As Smartmatic has represented to OANN, no breach of Smartmatic's systems has ever occurred, as such, there are no responsive documents. We disagree with your attempt to limit the RFP. It requests documents and communications about *any breach* (security *or otherwise*) of software or hardware, whether it was "utilized in any election" *or not*.

RFP No. 24: RFP 24 requests "Documents and Communications relating to the certification, authentication, or validation, or lack thereof, of any Smartmatic Entity's voting machines, equipment, hardware and/or servers." To be clear we seek these materials in relation to "national, state, county, or local governmental agencies in the United States or elsewhere, including but not limited to the State of California, the U.S. Election Assistance Commission, the United Nations, and the European Union." OANN agreed to narrow this request to instances in which Smartmatic machines, equipment, hardware, and/or servers were not certified. Please identify the date of the communication where this request was narrowed by OAN. On March 16, 2023, Smartmatic notified OANN that notwithstanding Smartmatic's any of Smartmatic's objections, it does not possess "any documents or communications relating to any instances where any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers were not certified because of security concerns." Smartmatic reiterates this position. We reiterate our position—that we seek the materials in connection with *any* refusal to certify, not simply refusals based on "*security concerns*."

RFP No. 62: RFP 62 requests "Documents and Communications that demonstrate negative or critical thoughts, feedback, and/or concern any Smartmatic Entity or any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers, from the formation of any

C. Butzer
October 10, 2023
Page 8

Smartmatic Entity to the present." OANN agreed to narrow the scope of this RFP to only critical thoughts, feedback, and/or concern expressed by a governmental entity or agency, any journalist or media entity, or any cyber security expert, related to Smartmatic's election services provided in the United States. Smartmatic has produced where, by Bates number? or will shortly produce when? all documents responsive to this request.

7. **The September 19 Letter improperly demands responses from OANN's Second Set of RFPs and raises issues that were later repeated in the September 20 Letter.**

Seventh, your September 19 Letter mischaracterizes the extent of production the parties agreed on. Your September 19 Letter improperly incorporates over 50 RFPs from OANN's Second Set of RFPs. Not improper, since you contend that the Second Set of RFPs is duplicative of the First Set. Additionally, the September 20 Letter displaced many of the requests made on September 19. Nevertheless, each category of requests in your September 19 Letter is addressed individually below:

Corporate Documents Pertaining to the Smartmatic Entities: Beyond RFPs No. 8 and 9, which were addressed above in Section 6, OANN's complaints regarding "Corporate Documents Pertaining to the Smartmatic Entities" relate entirely to OANN's Second Set of RFPs. As mentioned above, there is currently a pending Motion for Protective Order to Quash OANN's Second Set of RFPs. Absent a ruling from the Court to the contrary, Smartmatic will not respond to OANN's Second Set of RFPs. The responses and production with respect to RFP Nos. 8 and 9 are deficient as explained above. Also, your argument to the Court is that "the vast majority of the Second Set of RFPs duplicate" the First Set of RFPs (Dkt. 81, ECF p. 9). And in Exhibit B to your Motion for Protective Order (Dkt. 81-8, attached hereto as Exhibit "B") you even purport to "identif[y] examples of duplicative RFPs in greater detail." *See* Dkt. 81, ECF p. 13 n.4. Almost all of the Second RFPs we identified in our September 19 letter are ones that you specifically claim, in Exhibit "B", are duplicative of RFPs in our First RFPs—*which we propounded one year ago*: RFP 217 (which you claim is duplicative of First RFPs 8, 9, 67); RFP 218 ("duplicative" of First RFPs 8, 9, 79); RFP 219 ("duplicative" of First RFPs 8, 9); and RFP 298 ("duplicative" of First RFPs 13, 14, 90). *See* Dkt. 81-8, attached hereto as Exhibit "B." Responsive documents should have been produced by August 28, and we insist that you provide us with the Bates numbers, as requested in our September 19 letter. *Please reply by <u>Monday, October 16</u>*, as you've already delayed your response by more than 3 weeks.

Contracts & Bids Relating to Voting Technology: Beyond RFPs Nos. 14 and 18, which were addressed above in Section 6, OANN's complaints regarding "Contracts & Bids Relating to Voting Technology" relate entirely to OANN's Second Set of RFPs. As mentioned above, there is currently a pending Motion for Protective Order to Quash OANN's Second Set of RFPs. Absent a ruling from the Court to the contrary, Smartmatic will not respond to OANN's Second Set of RFPs. As requested above, where—by Bates number—are responsive documents to RFP Nos. 14 and 18? Also, almost all of the Second RFPs we identified in our September 19 letter are ones that you specifically claim, in Exhibit "B", are duplicative of RFPs in our First RFPs: RFP 225 (which you claim is duplicative of First RFP 74); RFP 292 ("duplicative" of First RFP 18); RFP 297 ("duplicative" of First RFPs 51, 75, 90); and RFPs 361-367 ("duplicative" of First RFPs 13, 14). *See* Dkt. 81-8, attached hereto as Exhibit "B." Responsive documents should have been produced by August 28, and we insist that you provide us with the Bates numbers, as requested in our

C. Butzer
October 10, 2023
Page 9

September 19 letter. *Please reply by Monday, October 16, as you've already delayed your response by more than 3 weeks.*

Vulnerabilities, Breaches, Testing, Servers: Beyond RFPs Nos. 44 and 24, which were addressed above in Section 6, OANN's complaints regarding "Vulnerabilities, Breaches, Testing, Servers" relate entirely to OANN's Second Set of RFPs. As mentioned above, there is currently a pending Motion for Protective Order to Quash OANN's Second Set of RFPs. Absent a ruling from the Court to the contrary, Smartmatic will not respond to OANN's Second Set of RFPs. But almost all of the Second RFPs we identified in our September 19 letter are ones that you specifically claim, in Exhibit "B", are duplicative of RFPs in our First RFPs: RFPs 222-224 (which you claim is duplicative of First RFPs 4, 5, 6, 15, 16, 18, 21, 22, 24, 25, 26, 42, 43, 62, 67, 73, 104, 105); RFP 229 ("duplicative" of First RFP 18); RFP 373 ("duplicative" of First RFP 75); RFP 374 ("duplicative" of First RFP 67); RFP 377 ("duplicative" of First RFPs 24, 25); RFP 477 ("duplicative" of First RFPs 19, 42, 73); RFP 482 ("duplicative" of First RFPs 20, 24, 42); RFP 486 ("duplicative" of First RFPs 26, 44, 73); RFP 487 ("duplicative" of First RFPs 26, 42, 44); RFP 491 ("duplicative" of First RFPs 21, 22, 42); RFP 497 ("duplicative" of First RFP 44); RFP 499 ("duplicative" of First RFPs 18, 19, 26, 42); RFP 503 ("duplicative" of First RFP 42); RFP 506 ("duplicative" of First RFP 42); and RFP 508 ("duplicative" of First RFP 42). *See* Dkt. 81-8, attached hereto as Exhibit "B." Responsive documents should have been produced by August 28, and we insist that you provide us with the Bates numbers, as requested in our September 19 letter. *Please reply by Monday, October 16, as you've already delayed your response by more than 3 weeks.*

Venezuela: OANN's complaints regarding "Venezuela" relate entirely to OANN's Second Set of RFPs. As mentioned above, there is currently a pending Motion for Protective Order to Quash OANN's Second Set of RFPs. Absent a ruling from the Court to the contrary, Smartmatic will not respond to OANN's Second Set of RFPs. But almost all of the Second RFPs we identified in our September 19 letter are ones that you specifically claim, in Exhibit "B", are duplicative of RFPs in our First RFPs: RFP 264 (which you claim is duplicative of First RFPs 31, 37); RFPs 381-84 ("duplicative" of First RFPs 37, 38, 40, 41, 67); and RFP 405 ("duplicative" of First RFP 37). *See* Dkt. 81-8, attached hereto as Exhibit "B." Responsive documents should have been produced by August 28, and we insist that you provide us with the Bates numbers, as requested in our September 19 letter. *Please reply by Monday, October 16, as you've already delayed your response by more than 3 weeks.*

Criticisms/Problems: RFP No. 26 requests "Documents and Communications regarding issues or concerns raised about any Smartmatic voting machines, equipment, hardware, software, and/or server." Smartmatic agreed to produce documents sufficient to identify complaints or concerns expressed to Smartmatic regarding the security of the voting machines and technology developed by Smartmatic for use in the 2020 Election, to the extent that they exist and can be located by a reasonable search. Smartmatic also agreed to produce documents regarding criticisms raised by media outlets. These statements do not accurately reflect what Smartmatic has thus far agreed to produce, which also includes: (1) documents it produced to customers who inquired about government investigations, (2) incidents in which an entity, government, or person alleged election fraud or tampering by Smartmatic, and (3) negative feedback about Smartmatic's election technology expressed by government officials or cyber security experts. Smartmatic produced where, by Bates number? or will shortly produce when? documents responsive to this request.

C. Butzer
October 10, 2023
Page 10

Unsatisfied with this production (you've already admitted you haven't completed production of these documents), OANN demanded documents from government entities and cyber security experts. As you say, though, you have not yet produced all of them yourself. Smartmatic refused, and OANN asked the Court for leave to move to compel on this RFP in the parties' May 5, 2023, Joint Submission. Which was a well-founded request, given that Smartmatic has not even produced the documents it agreed to produce. Absent a ruling from the Court to the contrary, Smartmatic will not produce documents outside of the scope Smartmatic has currently agreed to. *By Monday, October 16, please produce the documents Smartmatic agreed to produce, and please provide the Bates numbers of the documents responsive to this RFP, so that we may find them.*

Beyond RFP No. 26 and RFP No. 62, which was addressed above in Section 6, OANN's complaints regarding "Criticisms/Problems" relate entirely to OANN's Second Set of RFPs. As mentioned above, there is currently a pending Motion for Protective Order to Quash OANN's Second Set of RFPs. Absent a ruling from the Court to the contrary, Smartmatic will not respond to OANN's Second Set of RFPs. But almost all of the Second RFPs we identified in our September 19 letter are ones that you specifically claim, in Exhibit "B", are duplicative of RFPs in our First RFPs: RFPs 243-245 (which you claim is duplicative of First RFPs 62, 80); RFP 356 ("duplicative" of First RFP 17); RFP 504 ("duplicative" of First RFPs 42, 62); RFP 505 ("duplicative" of First RFPs 42, 62); and RFP 528 ("duplicative" of First RFPs 42, 43, 67). *See* Dkt. 81-8, attached hereto as Exhibit "B." Responsive documents should have been produced by August 28, and we insist that you provide us with the Bates numbers, as requested in our September 19 letter. *Please reply by Monday, October 16, as you've already delayed your response by more than 3 weeks.*

Third Parties: OANN's complaints regarding "Third Parties" relate entirely to OANN's Second Set of RFPs. As mentioned above, there is currently a pending Motion for Protective Order to Quash OANN's Second Set of RFPs. Absent a ruling from the Court to the contrary, Smartmatic will not respond to OANN's Second Set of RFPs. But almost all of the Second RFPs we identified in our September 19 letter are ones that you specifically claim, in Exhibit "B", are duplicative of RFPs in our First RFPs: RFP 215 (which you claim is duplicative of First RFPs 6, 21, 22, 23, 24, 25, 86); RFP 249 ("duplicative" of First RFP 48); RFP 250 ("duplicative" of First RFP 44); and RFP 324 ("duplicative" of First RFP 22). *See* Dkt. 81-8, attached hereto as Exhibit "B." Responsive documents should have been produced by August 28, and we insist that you provide us with the Bates numbers, as requested in our September 19 letter. *Please reply by Monday, October 16, as you've already delayed your response by more than 3 weeks.*

Dominion: OANN's complaints regarding "Dominion" relate entirely to OANN's Second Set of RFPs. As mentioned above, there is currently a pending Motion for Protective Order to Quash OANN's Second Set of RFPs. Absent a ruling from the Court to the contrary, Smartmatic will not respond to OANN's Second Set of RFPs. But almost all of the Second RFPs we identified in our September 19 letter are ones that you specifically claim, in Exhibit "B", are duplicative of RFPs in our First RFPs: RFP 162 (which you claim is duplicative of First RFPs 31, 32, 81, 99) and RFP 314 ("duplicative" of First RFPs 31, 32, 33, 81, 96). *See* Dkt. 81-8, attached hereto as Exhibit "B." Responsive documents should have been produced by August 28, and we insist that you provide us with the Bates numbers, as requested in our September 19 letter. *Please reply by Monday, October 16, as you've already delayed your response by more than 3 weeks.*

C. Butzer
October 10, 2023
Page 11

Alleged Damages: Your September 19 Letter cites RFP 57 and RFP 75 as requesting Documents and Communications relating to "Plaintiffs lost business opportunities." Smartmatic has agreed to a broad range of search terms that will identify documents relating to Smartmatic's lost revenue, profits, and earnings, lost and terminated contracts, canceled projects, financial forecasts, and more. Smartmatic agreed to produce documents supporting or not supporting its request for $2.7 billion in damages to the extent they exist and can be located through a reasonable search. (RFP 57). Smartmatic agreed to produce documents showing contracts Smartmatic lost because of defamatory statements to the extent they reasonably exist. (RFP 75). Where, by Bates number? Smartmatic has in fact produced documents responding to RFP Nos. 57 & 75. To the extent OANN continues to complain of Smartmatic's "lack of damages," this issue was also raised in the parties May 5 Joint Submission to the Court. Absent a ruling from the Court to the contrary, Smartmatic will not further respond to OANN's request. You've failed to address our requests to identify, by Bates number, documents responsive to RFP 275 (which you claim is duplicative of First RFP 46); RFP 277 ("duplicative" of First RFP 46); RFP 283 ("duplicative" of First RFPs 77, 78, 86, 89, 90); RFP 544 ("duplicative" of First RFPs 45, 56, 67, 72); RFPs 545-46 ("duplicative" of First RFPs 45, 47-50, 56, 67, 73); RFP 556 ("duplicative" of First RFPs 51, 52, 53, 67); RFP 557 ("duplicative" of First RFPs 51, 52, 53, 64); RFPs 561-62 ("duplicative" of First RFPs 51, 64); RFP 569 ("duplicative" of First RFP 54); RFPs 573-575 ("duplicative" of First RFPs 64, 66, 90, 98); RFP 585 ("duplicative" of First RFP 63); RFP 586 ("duplicative" of First RFPs 75, 98); RFP 588 ("duplicative" of First RFPs 64, 98); RFP 589 ("duplicative" of First RFP 98); and RFP 606 ("duplicative" of First RFP 51). See Dkt. 81-8, attached hereto as Exhibit "B." Responsive documents should have been produced by August 28, and we insist that you provide us with the Bates numbers, as requested in our September 19 letter. Please reply by Monday, October 16, as you've already delayed your response by more than 3 weeks.

## 8. The September 20 Letter is unnecessarily repetitive, cumulative, and burdensome.

Eighth, the remaining requests in OANN's September 20 Letter continue to rehash issues previously discussed by the parties. OANN raises concerns about the timeframe of requests, the scope of requests, Smartmatic's confidentiality claims, and other responses. Each category of concerns is addressed below.

Narrowed Timeframes: OANN asserts that Smartmatic "continues to refuse to agree to reasonable timeframes for" RFP Nos. 5, 6, 14, 18, 74, 85, and 96. Smartmatic objected to OANN's broad requests and proposed narrower time frames. On January 31, 2023, the parties meet and conferred regarding Smartmatic's narrowed time frames. Please identify the date of any communication where OANN agreed to narrow these time frames, if any. Since the meet and confer, Smartmatic has not changed its position on the time frame for these requests, and the parties have not discussed them further. Smartmatic stands by the narrowed timeframes for RFP Nos. 5, 6, 14, 18, 74, 86, and Smartmatic's production with regard to each RFP is addressed below.

- RFP Nos. 5 & 6: Smartmatic has produced or will shortly produce documents responsive to RFP Nos. 5 & 6 from January 1, 2020, onwards. The documents produced responsive to these RFPs includes emails which discuss the defamatory statements made by OANN and its guests. To the extent OANN's September 20 Letter seeks to broaden the timeframe of RFP Nos. 5 & 6, OANN stands on its prior objection. We agree the parties have reached an impasse, and we will move to compel.

C. Butzer
October 10, 2023
Page 12

- RFP Nos. 14 & 18: Because of the overlap with OANN's September 19 Letter and OANN's September 20 Letter, OANN's concerns regarding RFP Nos. 14 & 18 are addressed above in Section 6. *See* response above.

- RFP No. 74: Smartmatic has produced where, by Bates number? or will shortly produce when? documents responsive to RFP No. 74 from January 1, 2018, to present. Smartmatic's production includes emails discussing these topics, responses to requests for proposals, and presentations. To the extent OANN's September 20 Letter seeks to broaden the timeframe of RFP No. 74, OANN stands on its prior objection.

- RFP No. 85: Smartmatic has produced where, by Bates number? or will shortly produce when? documents responsive to RFP No. 85 from 2011 to present. Smartmatic's production includes audited financial statements, emails with accounting professionals, and internal emails regarding financial statements and audits. To the extent OANN's September 20 Letter seeks to broaden the timeframe of RFP No. 85, OANN stands on its prior objection.

- RFP No. 96: Smartmatic has produced where, by Bates number? or will shortly produce when? documents responsive to RFP No. 96 from January 1, 2018, to the present. To date, Smartmatic has not located any communications with Alex Halderman, but Smartmatic's production does include documents discussing Mr. Halderman. Where, by Bates number? To the extent OANN's September 20 Letter seeks to broaden the timeframe of RFP No. 96, OANN stands on its prior objection. We agree the parties have reached an impasse, and we will move to compel.

Clarification of Scope: OANN next seeks clarification on the scope of the party's agreement regarding certain RFPs. A brief review of the party's correspondence reveals the scope of each RFP. Nevertheless, the scope of each RFP is addressed below.

- RFP Nos. 8 & 9: Because of the overlap with OANN's September 19 Letter and OANN's September 20 Letter, OANN's concerns regarding RFP Nos. 8 & 9 are addressed above in Section 6. *See* above response.

- RFPs No. 21 & 22: On March 6, 2023, OANN acknowledged that Smartmatic continues to stand on its objections to the scope of RFPs No. 21 & 22. OANN stated they were likely to move to compel on these requests. Smartmatic has produced where, by Bates number? and will shortly produce when? documents responsive to RFP No. 21 & 22 to the extent agreed upon by the parties. Smartmatic's production includes reports from governmental entities such as the Department of Homeland Security, meeting summaries from the Election Infrastructure Subsector Coordinating Council, internal emails regarding governmental entities, and emails with members of government entities. Where, by Bates number?

- RFP No. 25: Smartmatic has produced documents responsive to No. 25 relating to the Carter Center and SLI Global Solutions and Compliance. Where, by Bates number? Smartmatic has produced reports from these entities, and conduct a search to determine if any other responsive documents exist. When? On March 16, 2023, OANN itself clarified that Smartmatic agreed to produce documents related to the Carter Center,

C. Butzer
October 10, 2023
Page 13

certification consultant reports issued by SLICompliance in connection with VSAP, and PricewaterhouseCoopers LLP. This is only referenced in a letter from you.

Confidentiality Claims: OANN misunderstands the confidentiality issue in this case. Several of the RFPs cited in this section involve Smartmatic's agreement with Los Angeles County that includes a non-disclosure clause preventing production. As Smartmatic explained in its March 28, 2023 correspondence, for Smartmatic to produce documents under the non-disclosure agreement with Los Angeles County, a Court would need to enter an order specifying that Smartmatic must produce documents related to Los Angeles County. The protective order in this matter does not compel the production of documents, nor does it contemplate Smartmatic's external contractual obligation not to disclose information. But a judge in a different lawsuit, between Smartmatic and different defendants, already has ordered Smartmatic to disclose the documents and, thus, Smartmatic must do so here as well. By Monday, October 16, please inform us as to whether you are producing the materials to us.

Smartmatic will not produce documents that are protected from disclosure under the confidentiality provisions of its agreement with Los Angeles County. We agree the parties have reached an impasse, and we will move to compel. In consideration of Smartmatic's position on confidentiality, Smartmatic's production on each RFP raised by OANN in its "Confidentiality Claims" section is addressed below.

- RFP No. 13: Notwithstanding its objections, Smartmatic has produced documents responsive to RFP No. 13 from 2004 to date. Where, by Bates number? As OANN stated on March 6 in regard to RFP No. 13 "Herring will review Plaintiff's production so far and reserves the right to compel production of remaining responsive documents after review of Plaintiff's production to date."

- RFP No. 17: OANN raised concern with RFP No. 17 multiple times in its September 20 letter. For clarity purposes, these concerns are holistically addressed above in Section 5. See responses above.

- RFP No. 18: Because of their overlap with OANN's September 19 Letter, OANN's concerns regarding RFP Nos. 8 & 9 are addressed above in Section 6.

- RFP No. 19: Notwithstanding its objections, Smartmatic has produced where, by Bates number? or will shortly produce when? documents responsive to RFP No. 19. In its Response, Smartmatic agreed to produce documents regarding post-election audits of the voting machines and software developed by Smartmatic for use in the 2020 Presidential Election, to the extent they exist and can be located by a reasonable search. On February 22, Smartmatic stated that has not changed its position on RFP No. 19 and will only produce documents as articulated in Smartmatic's Response. To the extent OANN's September 20 Letter seeks to broaden the scope of RFP No. 19, Smartmatic stands on its objection. We agree the parties have reached an impasse, and we will move to compel.

- RFP Nos. 21, 22, and 25: OANN raised concern with RFP Nos. 21, 22, 25 multiple times in their September 20 letter. For clarity purposes, these concerns are holistically addressed above in the "Clarification of Scope" question. See responses above.

C. Butzer
October 10, 2023
Page 14

- RFP No. 23: OANN raised concern with RFP No. 23 multiple times in its September 20 letter. For clarity purposes, these concerns are holistically addressed above in Section 5. *See* responses above.

- RFP No. 24: Because of the overlap with OANN's September 19 Letter and OANN's September 20 Letter, OANN's concerns regarding RFP No. 24 are addressed above in Section 6. *See* responses above.

- RFP Nos. 31 & 81: Smartmatic has produced where, by Bates number? or will shortly produce when? all documents responsive to RFP Nos. 31 & 81 and will agree to produce the settlement agreement with Dominion when?. As Smartmatic previously represented, no joint defense agreements exist.

- RFP No. 34: OANN raised concern with RFP No. 23 multiple times in its September 20 letter. For clarity purposes, these concerns are holistically addressed above in Section 5. *See* responses above.

- RFP No. 37: The parties discussed the scope of RFP No. 37. On March 6, 2023, in the spirit of compromise, Smartmatic offered to utilize broad search terms in regard to RFP No. 37. Smartmatic used the proposed terms and produced where, by Bates number? or will shortly produce when? documents responsive to RFP No. 37. Smartmatic's production includes communications about Smartmatic's operations in Venezuela, proposals, contracts, and communications with and regarding Bizta Corp. and CANTV.

- RFP No. 62: Because of the overlap with OANN's September 19 Letter and OANN's September 20 Letter, OANN's concerns regarding RFP No. 62 are addressed above in Section 6. *See* responses above.

- RFP No. 67: Notwithstanding its objections, Smartmatic has produced documents responsive to RFP No. 67 where, by Bates number? and will supplement its production with regard to this request when?.

- RFP No. 82: On February 22, Smartmatic informed OANN that they entered into a non-disclosure agreement with LA County. On March 14, Smartmatic sent OANN a letter outlining what categories they can produce in light of the non-disclosure agreement. Notwithstanding its objections, Smartmatic produced public and non-public documents to the extent they were authorized to do so by Los Angeles County. *See* response above. *By Monday, October 16, please inform us as to whether you are producing the materials to us.*

Remaining Responses: OANN's September 20 Letter finishes by enumerating several requests on which they consider a party to be at an impasse. Each RFP is addressed below.

- RFP No. 12: In accordance with its Response, Smartmatic has produced documents which discuss Smartmatic's ethical code Smartmatic will conduct an additional search when? to determine whether there are any additional documents to produce responsive to this request. Smartmatic confirms its objections to RFP No. 12 and will not provide

C. Butzer
October 10, 2023
Page 15

further documents. We agree the parties have reached an impasse, and we will move to compel.

- RFP No. 19: OANN raised concern with RFP No. 19 multiple times in their September 20 Letter. For clarity purposes, these concerns are holistically addressed above in the "Confidentiality Claims" section. *See* responses above.

- RFP No. 20: Smartmatic has produced where, by Bates number? or will shortly produce when? documents responsive to RFP No. 20 as provided in its Response. Smartmatic's production includes communications about VSAP 2.1 and its certification, and also includes approval and certification documents from the state of California. Smartmatic otherwise confirms its objections to RFP No. 20 and will not provide further documents. We agree the parties have reached an impasse, and we will move to compel.

- RFP No. 24: Because of the overlap with OANN's September 19 Letter and OANN's September 20 Letter, OANN's concerns regarding RFP No. 24 are addressed above in Section 6. *See* responses above.

- RFP No. 25: OANN raised concern with RFP No. 25 multiple times in their September 20 letter. For clarity purposes, these concerns are holistically addressed above in the "Clarification of Scope" section. *See* responses above.

- RFP No. 33: Notwithstanding its objection, Smartmatic has produced documents responsive to RFP No. 33. The parties engaged in several discussions regarding the scope of RFP No. 33. Smartmatic agreed to utilize several broad search terms proposed by OANN. On March 6, 2023, OANN expressed their dissatisfaction with the parties' agreement. OANN stated they would likely move to compel on RFP No. 33. We agree the parties have reached an impasse, and we will move to compel.

- RFP No. 44: Because of the overlap with OANN's September 19 Letter and OANN's September 20 Letter, OANN's concerns regarding RFP No. 44 are addressed above in Section 6. *See* responses above.

- RFP No. 61: Notwithstanding its objection, Smartmatic has produced documents responsive to RFP No. 61 as provided in its Response. Smartmatic's production includes retraction demands to other media organizations, and communications with media organizations regarding requests for information about Smartmatic and requests for interviews. Smartmatic otherwise confirms its objections to RFP No. 61 and will not provide further documents. We agree the parties have reached an impasse, and we will move to compel.

- RFP No. 62: Because of the overlap with OANN's September 19 Letter and OANN's September 20 Letter, OANN's concerns regarding RFP No. 62 are addressed above in Section 6. *See* responses above.

- RFP No. 63: Smartmatic will supplement its production with regard to this request. When?

C. Butzer
October 10, 2023
Page 16

- <u>RFP No. 72</u>: Notwithstanding its objection, Smartmatic has produced documents responsive to RFP No. 72 where, by Bates number? as provided in its Response. Smartmatic incorporates its response above regarding RFP No. 61. Smartmatic otherwise confirms its objections to RFP No. 72 and will not provide further documents. We agree the parties have reached an impasse, and we will move to compel.

- <u>RFP No. 80</u>: Notwithstanding its objection, Smartmatic has produced where, by Bates number? or will shortly produce documents when? responsive to RFP No. 80 as provided in its Response. Smartmatic otherwise confirms its objections to RFP No. 80 and will not provide further documents. We agree the parties have reached an impasse, and we will move to compel.

- <u>RFP No. 81:</u> OANN raised concern with RFP No. 81 multiple times in their September 20 Letter. For clarity purposes, these concerns are holistically addressed above in the "Confidentiality Claims" section. *See* responses above.

- <u>RFP No. 101:</u> Notwithstanding its objection, Smartmatic has produced where, by Bates number? or will shortly produce when? documents responsive to RFP No. 101 as provided in its Response. Smartmatic otherwise confirms its objections to RFP No. 101 and will not provide further documents. We agree the parties have reached an impasse, and we will move to compel.

In providing a thorough RFP by RFP response, Smartmatic hopes that this correspondence alleviates all of OANN's concerns regarding Smartmatic's production. If you have any questions, please do not hesitate to contact me.

Regards,

BENESCH, FRIEDLANDER,
   COPLAN & ARONOFF LLP

/s/ Olivia Sullivan

Olivia Sullivan

OES:mkg



Amakie Amattey
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Direct Dial: 312.506.3444
Fax: 312.767.9192
aamattey@beneschlaw.com

September 11, 2023

# EXHIBIT A

**VIA EMAIL**
John K. Edwards
Jackson Walker
1401 McKinney, Suite 1900
Houston, Texas 77010

Re:   *Smartmatic USA Corp., et al. v. Herring Networks, Inc., d/b/a One America News Network*, Case No. 1:21-cv-02900-CJN (D.D.C.)

Dear John:

Over the past month, Smartmatic has consistently expressed concern without any real or demonstrated basis regarding OANN's rolling productions, which demonstrated a serious failure to produce many categories of documents, including documents regarding its ratings, reach, and finances; internal communications reflecting the development of graphics, booking guests, and planning shows; and several other categories. In response, OANN has repeatedly stated that its collection is fulsome, that it does not have any additional responsive documents to produce, and that its production on August 28 would solve any issues that Smartmatic has which we affirm here. Also, it should be kept in mind that our searches for documents were based on the OAN custodians and search queries you agreed to.

After receiving OANN's August 28 production and reviewing its content, Smartmatic disagrees. Given our many previous requests for OANN to supplement its production, we believe we have fully met and conferred on the deficiencies in OANN's production and will need to move to compel in order to resolve the issues which OAN has either resolved or your claims of deficiency are not sustainable. We write below to identify again and with particularity for the first time many of the areas in which OANN's production is deficient. Smartmatic's review is ongoing and we expect to identify additional categories of deficiency, which we will identify for you as we find them. This suggests that you are looking for problems which violates both the letter and the spirit of the Local and Federal Rules.

If OANN has any proposals to resolve the issues below, please let us know by Wednesday, September 13. Otherwise, we will proceed to the Court.

# I.   DEFICIENCIES IN OANN PRODUCTION

Below are particular examples of categorical deficiencies in OANN's productions that we have identified to date. As Smartmatic continues to conduct a review of OANN's production, we will

identify further deficiencies in future correspondence.

**RFP No. 7: Employment Contracts**. In its April 3, letter, OANN confirmed that it would produce documents sufficient to show any and all employment agreements and/or contracts in effect for, and compensation paid to, twelve OANN ON-AIR PERSONALITIES that were in effect from January 1, 2020 to November 3, 2021. To date, OANN has produced three employment contracts: two for Dan Ball and one for Christina Bobb. No, we have produced five, including for John Hines and Patrick Hussion. Smartmatic did not locate contracts for the following: Elma Aksalic (there are none), Mike Dinow (there are none), Emily Finn (there are none), Stephanie Hamill (there are none), John Hines (*see* OAN_SMMT_00971759), Patrick Hussion (*see* OAN_SMMT_00971761), Samantha Lomibao (there are none), Kara Mckinney (there are none), Alex Salvi (there are none), and Pearson Sharp (there are none).

**RFP No. 8: Job Performance Evaluations**. OANN's production did not provide documents containing employee performance evaluations. However, OANN produced employee handbooks that indicate performance reviews are an expectation for OANN employees. Based on this information Smartmatic believes that employee evaluations for **at least** Elma Aksalic (there are none), Mike Dinow (there are none), Emily Finn (there are none), Stephanie Hamill (there are none), John Hines (there are none), Patrick Hussion (there are none), Samantha Lomibao (there are none), Kara McKinney (there are none), Alex Salvi (there are none), and Pearson Sharp (there are none) are in OANN's possession. OAN did not regularly conduct formal performance evaluations. OAN will produce any additional responsive, nonprivileged documents by September 25.

**RFP No. 26: Documents Concerning Hiring Or Firing OANN Employees**. OANN's production did not provide documents concerning the hiring, firing, retention, resignation, or promotion of OANN employees (*see, e.g.*, OAN_SMMT_000971770). Our research indicates that the employment of several OANN employees was terminated around April 2021. OAN will produce any additional responsive, nonprivileged documents (which we do not expect to find after an additional search) by September 25.

**RFP NOS. 5, 27, 29, 33, 47: OANN Accused Programs: Oversight, Structure, And Decision-Making Authority**. RFP number 5 requests videos of each full OANN PROGRAM which made any mention of Smartmatic. We have produced full videos of the complained of broadcasts with the exception of the News Room, for which there are no full videos. To the extent an additional search uncovers additional broadcasts that mentioned Smartmatic in 2020 and 2021, we will provide existing full videos of them by September 25. RFP numbers 27, 29, 33, and 47 request documents from OANN sufficient to demonstrate, with respect to OANN ACCUSED PROGRAMS: (a) decisions to include or exclude guests; (b) oversight and structure; (c) individuals responsible for creating, researching, editing, or approving content; and (d) the programming descriptions. Based on these requests, OANN should have produced documents including but not limited to documents sufficient to ascertain the hosts, guests, producers, editors, bookers, outlines, scripts, and graphics for each of the OANN ACCUSED PROGRAMS. OANN also should have produced documents containing conversations or notes regarding how content and guests were decided and approved. OANN's production was deficient in many of these areas for many of the OANN ACCUSED PROGRAMS, including those identified below: OAN has produced guidelines for writers and producers, including documents related to how ideas and

graphics are developed. *See, e.g.* OAN_SMMT_00971843; OAN_SMMT_00972147; OAN_SMMT_00971939; OAN_SMMT_00972126; OAN_SMMT_00971950; OAN_SMMT_00972102; OAN_SMMT_00972106; OAN_SMMT_00972146; OAN_SMMT_00972171. To be clear, OAN is not withholding any responsive, non-privileged documents relating to any of the below broadcasts.

<u>*News Room, 5AM*, Reporter Elma Aksalic, November 16, 2020</u>

OANN's production did not include producer information (there is no record of producer information for this news show), scripts (*see* OAN_SMMT_00855409), graphics (*see* OAN_SMMT_00855292), pre-broadcast conversations (none, based on search terms and custodians), or meeting notes (none, based on search terms and custodians) regarding this program. The production did not provide information that demonstrated how ideas or graphics for this program were developed (none, based on search terms and custodians).

OANN's production also did not provide a full video of this program in response to RFP No. 5 (none exists).

<u>*Tipping Point with Kara McKinney*, November 16, 2020, Guest Michael Johns</u>

OANN's production did not provide information that demonstrated how ideas or graphics for this program were developed, or how guests were chosen and approved (*see* OAN_SMMT_00973071). The information in the production identifies Jennesh Agagas (there are no responsive documents in Ms. Agagas's mailbox) and Alec Parent (he is not a designated custodian; however, *see* OAN_SMMT_00877153, OAN_SMMT_00877139) as individuals involved with the booking and production of this program, and whose collections should have included this information. Again, Alec Parent is not a custodian.

<u>*News Room*, 11PM, Reporter Mike Dinow, November 16, 2020</u>

OANN's production did not provide producer information (there is no record of producer information for this news show), scripts (*see* OAN_SMMT_00855244), graphics (*see* OAN_SMMT_00855597), pre-broadcast conversations (none, based on search terms and custodians), or meeting notes regarding this program (none, based on search terms and custodians), nor did it include documents to demonstrate how ideas or graphics for this program were developed (*see* OAN_SMMT_00750480).

OANN's production also did not provide a full video of this program in response to RFP No. 5 (none exists).

<u>*Tipping Point with Kara McKinney*, November 17, 2020, Guest Tom Fitton</u>

OANN's production did not provide information that demonstrated how ideas, or graphics for this program were developed (*see* OAN_SMMT_00881117), or how guests were chosen and approved (*see* OAN_SMMT_00881111). The information in the production identifies Jennesh Agagas (*see* OAN_SMMT_00881111) and Alec Parent (he is not a designated custodian; however, *see* OAN_SMMT_00877348) as individuals involved with the booking and production of this program, and whose collections should have included

this information. Again, Alec Parent is not a custodian.

<u>*Breaking News Live*, Reporter Patrick Hussion, November 19, 2020</u>

OANN's production did not provide producer information (no record of producer information for this news show), scripts (OAN_SMMT_00855414; OAN_SMMT_00855504), graphics (OAN_SMMT_00855414; OAN_SMMT_00855504), pre-broadcast conversations (none, based on search terms and custodians), or meeting notes (none, based on search terms and custodians). The production did not provide information that demonstrated how ideas or graphics for this program were developed (OAN_SMMT_00970717).

OANN's production also did not provide a full video of this program in response to RFP No. 5 (none exists).

<u>*Real America with Dan Ball*, November 19, 2020, Guest Evi Kokalari-Angelakis</u>

OANN's production did not contain producer information (Justin Brown and Peyton Drew were both producers of Real America during this time. S*ee, e.g.*, OAN_SMMT_00778521, OAN_SMMT_00907412), scripts (*see* OAN_SMMT_00855186), graphics (*see* OAN_SMMT_00855265), pre-broadcast conversations (none, based on search terms and custodians), or meeting notes (none, based on search terms and custodians). The production did not provide information that demonstrated how ideas or graphics for this program were developed, or how guests were booked or approved to be interviewed (*see* OAN_SMMT_00806353).

<u>*News Room*, 12AM, Reporter Unknown, November 20, 2020</u>

OANN's production did not provide host or producer information (there is no record of host or producer information for this news show), scripts (*see* OAN_SMMT_00855414; OAN_SMMT_00855504), graphics (*see* OAN_SMMT_00855268; OAN_SMMT_00855504; OAN_SMMT_00855414), pre-broadcast conversations (none, based on search terms and custodians), or meeting notes (none, based on search terms and custodians). The production did not provide information that demonstrated how ideas or graphics for this program were developed (*see* OAN_SMMT_00878431; OAN_SMMT_00805856).

OANN's production also did not provide a full video of this program in response to RFP No. 5 (none exists).

<u>*News Room*, 6AM, Reporter Unconfirmed, November 20, 2020, Guest Keith Trippie</u>

OANN's production did not provide host producer information (Stephanie Myers was host, *see, e.g.*, OAN_SMMT_00806148; there is no record of producer information for this news show), scripts (*see* OAN_SMMT_00855480; OAN_SMMT_00855436), graphics (*see* OAN_SMMT_00855480; OAN_SMMT_00855436), or meeting notes (none, based on search terms and custodians). The production did not provide information that demonstrated how ideas or graphics for this program were developed, or how guests were

approved (*see* OAN_SMMT_00806148; OAN_SMMT_00805327; OAN_SMMT_00970723). The production demonstrates that Stephanie Myers was involved with booking, and her collection should have included much of this information.

OANN's production also did not provide a full video of this program in response to RFP No. 5 (none exists).

*News Room, 3PM*, Reporter John Hines, November 20, 2020, Guest Allan Santos

OANN's production did not provide producer information (there is no record of producer information for this news show), scripts (none, based on search terms and custodians), graphics (none exist), pre-broadcast conversations (none, based on search terms and custodians), or meeting notes (none, based on search terms and custodians). The production did not provide information that demonstrated how ideas or graphics for this program were developed (*see* OAN_SMMT_00970723).

OANN's production also did not provide a full video of this program in response to RFP No. 5 (none exists).

*In Focus with Stephanie Hamill*, November 20, 2020, Guest Joe diGenova

OANN's production did not provide information that demonstrated how ideas or graphics for this program were developed, or how guests were chosen or approved (*see* OAN_SMMT_008805490, OAN_SMMT_00879825, OAN_SMMT_00932634, OAN_SMMT_00879603, OAN_SMMT_00879749, OAN_SMMT_00932630, OAN_SMMT_00879941). The information in the production identifies Avery Swigart (OAN_SMMT_00805490), Caroline Midkiff (OAN_SMMT_00805490), and Jon Marrone (he is not a designated custodian, *but see* OAN_SMMT_00805490) as involved with the booking and production, and their collections should have included much of this information.

*Tipping Point with Kara McKinney*, November 20, 2020, Guest Michael Johns

OANN's production did not provide information that demonstrated how ideas or graphics for this program were developed (none, based on search terms and custodians), or how guests were chosen, approved, or booked (*see* OAN_SMMT_00805753). The information in the production identifies Jennesh Agagas as involved with the production, and his (her) collection should have included much of this information (there are no responsive documents in Ms. Agagas's mailbox).

*News Room, 6PM*, Reporter Samantha Lomibao, November 22, 2020

OANN's production did not provide producer information (there is no record of producer information for this news show), scripts (*see* OAN_SMMT_00855192), graphics (*see* OAN_SMMT_00855192), pre-broadcast conversations (none, based on search terms and custodians), or meeting notes (none, based on search terms and custodians). The production did not provide information that demonstrated how ideas or graphics for this program were developed (none, based on search terms and custodians).

OANN's production also did not provide a full video of this program in response to RFP No. 5 (none exists).

*Tipping Point with Kara McKinney*, November 22, 2020 (this date is incorrect; perhaps you mean November 18), Guest Michael Johns (this is incorrect; the guest on November 18 was Kyle Becker)

OANN's production did not provide information that demonstrated how ideas or graphics for this program were developed (*see* OAN_SMMT_00804500). The information in the production identifies Jennesh Agagas as involved with the production and booking, and his (her) collection should have included much of this information (*see* OAN_SMMT_00804615; OAN_SMMT_00804500; OAN_SMMT_00809842, OAN_SMMT_00809753, OAN_SMMT_00809745; OAN_SMMT_00880416, OAN_SMMT_00810411, OAN_SMMT_00810360, OAN_SMMT_00810288).

*Tipping Point with Kara McKinney*, November 23, 2020, Guest Michael Johns (Mr. Johns was not on a show on November 23, Michael Waller was)

OANN's production did not provide host (Kara McKinney is the host of *Tipping Point with Kara McKinney*, *see* OAN_SMMT_00807418) or producer information (*see, e.g.*, OAN_SMMT_00876095, OAN_SMMT_00950638), scripts (*see* OAN_SMMT_00855429), graphics (none, based on search terms and custodians), pre-broadcast conversations (*see* OAN_SMMT_00807418), or meeting notes (none, based on search terms and custodians). OANN's production also did not provide information that demonstrated how ideas, or graphics for this program were developed, or how guests were chosen, approved, or booked (*see* OAN_SMMT_00807418, OAN_SMMT_00808163).

*News Room, 11PM*, Reporter Pearson Sharp, November 24, 2020

OANN's production did not provide producer information, graphics, or meeting notes for this production. Although this is not a complained of broadcast, ENPS documents related to this broadcast are being produced by September 25.

*Tipping Point with Kara McKinney*, November 28, 2020, Guest Michael Johns

OANN's production did not provide scripts (*see* OAN_SMMT_00855378), graphics (none, based on search terms and custodians), pre-broadcast conversations (none, based on search terms and custodians), or meeting notes (none, based on search terms and custodians). The productions also did not provide information that demonstrated how ideas, or graphics for this program were developed, or how guests were chosen, approved, or booked.

*Tipping Point with Kara McKinney, December 1, 2020*

OANN's production did not provide scripts (*see* OAN_SMMT_00855484; OAN_SMMT_00855354; OAN_SMMT_00855356; OAN_SMMT_00855203), graphics (*see* OAN_SMMT_00855484; OAN_SMMT_00855354; OAN_SMMT_00855356; OAN_SMMT_00855203), pre-broadcast conversations (*see* OAN_SMMT_00880416), or

meeting notes (none, based on search terms and custodians). The production did not provide information that demonstrated how ideas or graphics for this program were developed.

*Breaking News Live*, Reporter Patrick Hussion Clark (this is incorrect; John Hines hosted the December 1 *Breaking News Live*), December 1, 2020

OANN's production did not provide producer information (there is no record of producer information for this news show), scripts (*see* OAN_SMMT_00809936), graphics (there are none), pre-broadcast conversations (*see* OAN_SMMT_00809635; OAN_SMMT_00809526), or meeting notes (none, based on search terms and custodians). The production did not provide information that demonstrated how ideas or graphics for this program were developed (none, based on search terms and custodians).

*In Focus with Stephanie Hamill*, Reporter Stephanie Hamill, December 3, 2020

OANN's production did not provide producer information (*see, e.g.*, OAN_SMMT_00934481, OAN_SMMT_00935146), scripts (*see* OAN_SMMT_00855680; OAN_SMMT_00855389), graphics (OAN_SMMT_00855680), pre-broadcast conversations (*see* OAN_SMMT_00934481, OAN_SMMT_00880416), or meeting notes (none, based on search terms and custodians). The production did not provide information that demonstrated how ideas or graphics for this program were developed (*see* OAN_SMMT_00880416).

*News Room, 9PM (this was a 9 AM broadcast)*, Reporter Emily Finn, December 5, 2020

OANN's production did not provide producer information (there is no record of producer information for this news show), scripts (*see* OAN_SMMT_00855214; OAN_SMMT_00855551), graphics (*see* OAN_SMMT_00855214; OAN_SMMT_00855213), pre-broadcast conversations (there are none), or meeting notes (there are none). The production did not provide information that demonstrated how ideas or graphics for this program were developed (*see* OAN_SMMT_00970757).

OANN's production also did not provide a full video of this program in response to RFP No. 5 (none exists).

*Tipping Point with Kara McKinney*, December 7, 2020, Guest Michael Johns

OANN's production did not provide graphics or meeting notes (none, based on search terms and custodians). The production did not provide information that demonstrated how graphics for this program were developed (*see* OAN_SMMT_00940936). The information in the production identifies Kara McKinney (OAN_SMMT_00815508; OAN_SMMT_00973085) and Chris Boyle (OAN_SMMT_00814835) as involved with booking and production of this program, and their collections should have included much of this information.

*News Room, 3PM*, Reporter Clay Clark (this is incorrect; Clay Clark was a guest and is not an OAN reporter), December 21, 2020

OANN's production did not provide producer information (there is no record of producer information for this news show), scripts (*see* OAN_SMMT_00855593), graphics (there are none), pre-broadcast conversations (*see* OAN_SMMT_00819314; OAN_SMMT_00001843), or meeting notes (none, based on search terms and custodians). The production did not provide information that demonstrated how ideas or graphics for this program were developed (none, based on search terms and custodians).

OANN's production also did not provide a full video of this program in response to RFP No. 5 (none exists).

<u>*Weekly Briefing with Christina Bobb*, December 21, 2020</u> (incorrect, the date was December 26, 2020)

OANN's production did not provide producer information (Jasmine Rounaghi was a production assistant, *see* OAN_SMMT_00940936), scripts (none, based on search terms and custodians), graphics (*see* OAN_SMMT_00940936), pre-broadcast conversations (none, based on search terms and custodians), or meeting notes (none, based on search terms and custodians). The production did not provide information that demonstrated how ideas or graphics for this program were developed (none, based on search terms and custodians).

**RFP No. 30: OANN Corporate Governance Structure**. OANN's production did not contain documents that demonstrated OANN's corporate governance structure (*see e.g.,* OAN_SMMT_00972172; OAN_SMMT_00971843). Smartmatic believes documents that demonstrate OANN's corporate governance structure are in OANN's possession.

**RFP No. 33: Documents to Show Individuals Involved with OANN ACCUSED PROGRAMS**. OANN's production contained some documents that demonstrated individuals involved with OANN ACCUSED PROGRAMS, but there are significant gaps. Smartmatic believes OANN is in possession of documents that identify: (1) all producers and bookers for *News Room* with reporters Elma Aksalic, Mike Dinow, Stephanie Myers, John Hines, Samantha Lomibao, Pearson Sharp, Emily Finn, and Clay Clark (this assumption is incorrect; no documentation exists demonstrating which producers worked on the complained-of News Room broadcasts; moreover, Clay Clark is not an OAN employee); (2) all producers for *Weekly Briefing* with Christina Bobb (Jasmine Rounaghi was a production assistant, *see* OAN_SMMT_00940936); and (3) all producers for *Breaking News Live* with Patrick Hussion (Patrick Hussion did not have an assigned producer, and no documentation exists to demonstrate who produced the complained-of broadcasts of *Breaking News Live*). Smartmatic also believes OANN is in possession of information that identifies video and graphics editors for each of the OANN ACCUSED PROGRAMS. As identified above, OAN has produced numerous documents demonstrating video editors who contributed to the Accused Programs. Also, OAN identified additional individuals involved in the Accused Programs in its supplemental answers to Smartmatic's interrogatory nos. 1, 2, 3, and 5 on September 14, 2023.

**RFP NO. 35: Documents to Show Every Meeting Mentioning Smartmatic or Dominion**. OANN's production does not include all notes for meetings in which Smartmatic or Dominion was mentioned. Meeting notes for *News Room* were produced once, (OAN_SMMT_00877861), and general meeting notes were produced once (OAN_SMMT_00952264). Smartmatic believes

that there were more frequent meetings at which Smartmatic and Dominion were mentioned at which notes were taken and distributed. Smartmatic's assumption is incorrect. The OAN News Room did not hold "frequent meetings" discussing Smartmatic or Dominion, and OAN is not withholding any responsive meeting notes. Yet, we have identified only two sets of notes.

**RFP No. 45: Documents to Show Viewership and Ratings Data**. OANN's production contains Comscore TV Essentials data. However, the production does not contain Neilsen data (OAN does not and has never subscribed to Nielsen and therefore does not have that data) or data that provides social media (OAN does not possess data on social media engagement from that time beyond the views, likes, retweets and other engagement mechanisms that are publicly available) or other platform ratings or viewership data. We will go back and look for platform or viewership data, although Comscore in our possession has been produced. Smartmatic believes OANN is in possession of documents that contain viewership and ratings data for on-air, social media, and other platforms.

**RFP No. 46: Documents Showing The Number of Persons Who Downloaded an OAN Application, Bought Subscriptions, or Clicked on OAN Publications**. OANN's production does not include documents that demonstrate the number of people that downloaded OANN apps, bought OANN subscriptions, or clicked on OANN applications. OAN will produce any additional responsive, nonprivileged documents by September 25.

**Text Messages And Personal Emails.** OANN produced text messages from 9 custodians. Smartmatic believes that text messages from additional OANN custodians should be produced to fully capture all documents requested in its first set of RFPs. Search terms were run against 4 additional custodians' text messages, but did not result in any responsive documents. As we explained to you in an August 13 email, several OAN employees have not permitted collection of their personal cell phones on the basis of their privacy rights. Several times, you have promised a response but none has been forthcoming Additionally, Smartmatic has identified personal emails that have been used in OANN's production: pearson.sharp@pm.me (there were no email communications to or from this address in OAN's production), rionchanel@gmail.com (243 responsive, non-privileged emails from this account have been produced), stephaniehamill@gmail.com (Ms. Hamill is a former employee whose personal email is not in OAN's possession, custody, or control), and christinabobb@hotmail.com (Ms. Bobb is a former employee whose personal email is not in OAN's possession, custody, or control). Search terms should be run across these emails to further identify documents responsive to RFPs.

By **Wednesday, September 13**, please confirm whether OANN is willing to remedy these deficiencies. If it is, we ask OANN to remedy those deficiencies by **Monday, September 18.** If OANN believes any documents mentioned have been produced, please identify the documents by Bates number in OANN's September 13 correspondence.

## II.     RFPS NOS. 58 AND 59: DOCUMENTS PRODUCED IN RELATED LITIGATION

In its response to Smartmatic's RFPs 58 and 59, OANN indicated that it was not willing to produce any documents produced in the Dominion lawsuit, stating that the request was not tailored to any claim or defense in this litigation. Correction: OAN's position is that it will not produce documents in this litigation *merely because* they are produced in *Dominion*. On the contrary,

9

several statements that OANN ON-AIR PERSONALITIES on OANN ACCUSED PROGRAMS made indicate that Smartmatic and Dominion were used interchangeably, Smartmatic was referred to as a subsidiary of Dominion, and Smartmatic was alleged to be a software company that Dominion used in its voting machines. Therefore, issues flagged by Dominion and documents produced to Dominion are relevant to Smartmatic's case even if Smartmatic is not explicitly mentioned. As we explained in our September 3, 2023 letter, Smartmatic and Dominion complain of different statements. The fact of a document's production in *Dominion*, alone, does not make it responsive to Smartmatic's requests for production also keeping in mind that Smartmatic has agreed to lists of custodians and search queries. Additionally, documents produced in the *Freeman* case, the *AT&T* case, and any other related litigation are relevant to Smartmatic's case as they center around the same or similar OANN statements and conduct that form the basis for Smartmatic's case (Smartmatic has not credibly explained how *AT&T* or *Freeman* "center around" the claims and statements at issue in this suit. Smartmatic has failed to offer an explanation for why all *Coomer* documents are relevant), and the reproduction of those documents is not burdensome to OANN. OANN has not provided any cognizable explanation as to why the documents produced in related litigation are beyond the scope of relevance in Smartmatic's litigation. OAN stands on its objections.

The parties have met and conferred on this issue at length and are at an impasse. We plan to move the Court to compel responsive documents be produced.

OAN Note: If we identify additional documents during discovery, we will supplement our production as required by the rules. Again, we've employed the search terms you gave us and we searched the custodians you agreed to.

Very truly yours,

BENESCH, FRIEDLANDER,
    COPLAN & ARONOFF LLP

*/s/ Amakie Amattey*

Amakie Amattey

AA:

# Appendix B

**EXHIBIT B**

**Request for Production ("RFP") Comparison Chart**

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| 103 | Produce Documents and Communications concerning Your contention that OAN "[v]iewers were dissatisfied with Fox News's initial coverage of the election results and were looking for alternative cable news sources," as alleged in Paragraph 83 of the COMPLAIN | RFP 4, 43, 67, 311 |
| 104 | Produce Documents and Communications concerning any of the COMPLAINED OF BROADCASTS. | RFP 4, 5, 6, 43, 68, 106, 109, 111, 121, 124, 126, 128, 130, 136, 137, 141, 145, 147, 149, 151, 152, 153, 157, 159, 168, 170, 173, 174, 312, 428, 525, 536, 537, 542, 544, 545, 546 |
| 105 | Produce Documents and Communications concerning any of the COMPLAINED OF STATEMENTS. | RFP 4, 5, 6, 42, 43, 68, 70, 263, 312, 431, 525, 536, 537, 539, 542, 544, 545, 546 |
| 106 | Produce Documents and Communications concerning the November 12, 2020 broadcast of After Hours with Alex Salvi, as described in Paragraphs 84 and 85 of the COMPLAINT. | RFP 4, 5, 6, 43, 68, 104, 105 |
| 107 | Produce Documents and Communications that identify the "morning and evening newsroom briefings, evenings news programs, and material posted to its website and social media," described in Paragraph 86 of the COMPLAINT. | RFP 4, 5, 43, 67 |
| 108 | Produce Documents and Communications that identify the "numerous guests," described in Paragraph 86 of the COMPLAINT. | RFP 4, 5, 43, 67 |
| 109 | Produce Documents and Communications concerning the November 16, 2020 broadcast of News Room, as described in Paragraph 87 of the COMPLAINT. | RFP 4, 5, 6, 43, 68, 104, 105, 312 |
| 110 | Produce Documents and Communications concerning Your contention that, "[OAN] knew that it had not seen any evidence supporting Ms. Powell's claims of 'overwhelming evidence of voter fraud' and that Ms. Powell had not presented any evidence supporting her claims," as alleged in Paragraph 88 of the COMPLAINT. | RFP 4, 5, 43, 67, 312 |
| 111 | Produce Documents and Communications concerning the November 15, 2020 re-broadcast, and the original broadcast, of America This Week, as described in Paragraph 88 of the COMPLAINT. | RFP 4, 5, 6, 43, 68, 104, 105, 312 |
| 112 | Produce Documents and Communications concerning the November 14, 2020 tweet by "the President's personal attorney, Rudy Giuliani," as described in Paragraph 90 of the COMPLAINT. | RFP 4, 5, 42, 43, 67, 104, 105, 312 |
| 113 | Produce Documents and Communications concerning Your contention that, "[OAN] knew that Mr. Giuliani had not presented any evidence that Dominion is 'a front' for Smartmatic or that Smartmatic was counting votes in those states," as alleged in Paragraph 90 of the COMPLAINT. | RFP 4, 5, 31, 32,42, 43, 67, 81, 96, 129, 135, 138, 146, 154, 185, 195, 196, 197, 235, 312, 314, 325, 326, 327, 331, 356, 414 |
| 114 | Produce Documents and Communications concerning Your contention that, "[OAN] also knew that it had not seen any evidence to support those claims," as alleged in Paragraph 90 of the COMPLAINT. | RFP 4, 5, 42, 43, 67, 104, 105, 312 |
| 115 | Produce Documents and Communications concerning Your contention that, "Mr. Aksalic, and others at [OAN], knew that Ms. Powell did not have any evidence of fraud," as alleged in Paragraph 91 of the COMPLAINT. | RFP 4, 5, 42, 43, 67, 104, 105, 110, 312 |
| 116 | Produce Documents and Communications that identify the "others at [OAN]," described in Paragraph 91 of the COMPLAINT. | RFP 4, 5, 42, 43, 67, 105 |
| 117 | Produce Documents and Communications concerning the November 16, 2020 broadcasts of Tipping Point with Kara McKinney, as described in Paragraphs 92 and 93 of the COMPLAINT. | RFP 4, 5, 6, 43, 68, 104, 105, 312 |
| 118 | Produce Documents and Communications concerning Your contention that, "Ms. McKinney had not seen any evidence indicating that the 2020 U.S. election had been stolen, much less stolen by Smartmatic," as alleged in Paragraph 92 of the COMPLAINT. | RFP 4, 5, 42, 43, 67, 105, 312 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| 119 | Produce Documents and Communications concerning the National Tea Party Movement, as described in Paragraph 93 of the COMPLAINT. | RFP 5, 43, 67, 104 |
| 120 | Produce Documents and Communications concerning that, "Ms. McKinney and [OAN] knew that there was no evidence supporting Mr. Johns' implication that Smartmatic rigged the 2020 U.S. election for Joe Biden," as alleged in Paragraph 93 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67, 104, 105, 312 |
| 121 | Produce Documents and Communications concerning the November 16, 2020 broadcast of News Room, as described in Paragraph 95 of the COMPLAINT. | RFP 4, 5, 6, 43, 67,104, 105, 312 |
| 122 | Produce Documents and Communications concerning the podcast Common Sense, including without limitation, episodes published on or around November 13 and November 18, as described in Paragraphs 95 and 119 of the COMPLAINT. | RFP 4, 5, 6, 43, 67, 68, 104, 105, 123, 312 |
| 123 | Produce Documents and Communications concerning any podcast, whether visual or audio, published or created by Rudolph Giuliani, including without limitation that visual podcast called Common Sense, as described in Paragraph 95 of the COMPLAINT. | RFP 4, 5, 6, 43, 67, 68, 104, 105, 122, 312 |
| 124 | Produce Documents and Communications concerning the November 17, 2020 broadcast of Tipping Point with Kara McKinney, as described in Paragraph 99 of the COMPLAINT. | RFP 4, 5, 6, 43,67,104,105, 312 |
| 125 | Produce Documents and Communications concerning Judicial Watch, as described in Paragraph 100 of the COMPLAINT, related to any weaknesses, flaws, mistakes, vulnerabilities, bugs, BACKDOOR in SMARTMATIC SYSTEMS, or any allegations of election irregularity. | RFP 4, 5, 6, 42, 43, 67, 104,105, 312 |
| 126 | Produce Documents and Communications concerning the November 19, 2020 broadcast of Breaking News Live with Patrick Hussion, as described in Paragraph 101 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67,104, 105, 312 |
| 127 | Produce Documents and Communications concerning Your contention that, "[OAN] knew both that it had not seen any evidence supporting what Mr. Giuliani said and that Mr. Giuliani had not presented any evidence supporting what he said," as alleged in Paragraph 102 of the COMPLAINT. | RFP 4, 5, 6, 7, 42, 43, 67,104, 105, 113, 114, 135, 312 |
| 128 | Produce Documents and Communications concerning the November 19, 2020 broadcast of Real America with Dan Ball, as described in Paragraph 104 of the COMPLAINT. | RFP 4, 5, 6, 43, 67, 104, 105, 312 |
| 129 | Produce Documents and Communications concerning Your contention that, "[OAN] knew it had seen no evidence that Dominion used Smartmatic because that claim is factually false," as alleged in Paragraph 105 of the COMPLAINT. | RFP 31, 32, 42, 43, 67, 81, 96, 113, 114, 127,138, 146, 154, 185, 195, 196, 197, 235, 312, 314, 325, 326, 327, 331, 356, 414 |
| 130 | Produce Documents and Communications concerning the November 20, 2020 broadcast of News Room, as described in Paragraph 106 of the COMPLAINT. | RFP 4, 5, 6, 43, 67, 104, 105, 312 |
| 131 | Produce Documents and Communications concerning Your contention that, "[OAN] knew it had not seen any evidence that ... Smartmatic was widely used in the 2020 U.S. election," as alleged in Paragraph 108 of the COMPLAINT. | RFP 4, 5, 6, 7, 42, 43, 67,104, 105, 312 |
| 132 | Produce Documents and Communications concerning Your contention that, "[OAN] knew it had not seen any evidence that ... Smartmatic rigged the 2020 U.S. election for Joe Biden," as alleged in Paragraph 108 of the COMPLAINT and as similarly alleged in Paragraph 117 of the COMPLAINT. | RFP 4, 5, 6, 7, 42, 43, 67,104,105, 312 |
| 133 | Produce Documents and Communications concerning Your contention that "[OAN] knew it had not seen any evidence that . . . Smartmatic has ties to corrupt Venezuelan dictators," as alleged in Paragraph 108 of the COMPLAINT. | RFP 4, 5, 6, 7, 27, 37, 42, 43, 67,104,105 |
| 134 | Produce Documents and Communications concerning Your contention that "[OAN] knew it had not seen any evidence that . . . Smartmatic previously rigged elections in Venezuela," as alleged in Paragraph 108 of the COMPLAINT. | RFP 4, 5, 6, 7, 42, 43, 67,104,105, 381 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| 135 | Produce Documents and Communications concerning Your contention that "[OAN] also knew that Mr. Giuliani and Ms. Powell had not provided any evidence corroborating their claims," as alleged in Paragraph 108 of the COMPLAINT. | RFP 4, 5, 6, 7, 42, 43, 67,104,105,140,144, 312 |
| 136 | Produce Documents and Communications concerning the November 20, 2020 broadcast of News Room, as described in Paragraph 109 of the COMPLAINT. | RFP 4, 5, 6, 43, 68, 104, 105, 312 |
| 137 | Produce Documents and Communications concerning the November 20, 2020 broadcast of In Focus with Stephanie Hamill, as described in Paragraph 113 of the COMPLAINT. | RFP 4, 5, 6, 43, 68, 104, 105, 312 |
| 138 | Produce Documents and Communications concerning Your contention that "[OAN] had not seen any evidence showing that ... Smartmatic was widely used in the 2020 U.S. election, including in Dominion machines," as alleged in Paragraph 117 of the COMPLAINT. | RFP 31, 32, 67, 81, 96, 129, 146, 154, 185, 195, 196, 197, 235, 312, 314, 325, 326, 327, 331, 356, 414 |
| 139 | Produce Documents and Communications concerning Your contention that "[OAN] had not seen any evidence showing that ... Smartmatic's software was compromised during the 2020 U.S. election while votes were sent to foreign countries," as alleged in Paragraph 117 of the COMPLAINT. | RFP 4, 5, 6, 7, 42, 43, 67,104,105, 160, 187, 312 |
| 140 | Produce Documents and Communications concerning Your contention that "[OAN] knew that none of its guests, Ms. Powell, or Mr. Giuliani had produced any evidence corroborating their claims about Smartmatic," as alleged in Paragraph 117 of the COMPLAINT. | RFP 4, 5, 6, 7, 42, 43, 67,104,105, 125, 144, 312 |
| 141 | Produce Documents and Communications concerning the November 22, 2020 broadcast of News Room, as described in Paragraph 119 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 68, 104, 105, 312 |
| 142 | Produce Documents and Communications concerning Your contention that "[OAN] used this graphic even though it knew the OAS was not referring to Smartmatic because Smartmatic stopped working on elections in Venezuela in 2017," as alleged in Paragraph 120 of the COMPLAINT. | RFP 4, 5, 6, 7, 42, 43, 67,104,105, 143, 199, 381, 383 |
| 143 | Produce Documents and Communications concerning Your contention that "Smartmatic stopped working on elections in Venezuela in 2017," as alleged in Paragraph 120 and Paragraph 234 of the COMPLAINT. | RFP 4, 5, 6, 7, 37, 42, 43, 67,104,105, 142, 199, 381, 383 |
| 144 | Produce Documents and Communications concerning Your contention that "[OAN] also knew that Mr. Giuliani had not produced any evidence supporting his claim that Smartmatic switched votes," as alleged in Paragraph 121 of the COMPLAINT. | RFP 4, 5, 6, 7, 42, 43, 67,104,105, 140, 312 |
| 145 | Produce Documents and Communications concerning the November 23, 2020 broadcast of Tipping Point with Kara McKinney, as described in Paragraph 122 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67, 104, 105, 312 |
| 146 | Produce Documents and Communications concerning Your contentions that "[OAN] had not seen any evidence that Smartmatic was widely used in the 2020 election or that Smartmatic was used by Dominion in the 2020 election," and that, "[OAN] also knew that Mr. Waller had not presented any such evidence," as alleged in Paragraph 124 of the COMPLAINT. | RFP 31, 32, 42, 43, 67, 81, 96, 104, 105, 129, 138, 154, 185, 195, 196, 197, 235, 312, 314, 325, 326, 327, 331, 356, 414 |
| 147 | Produce Documents and Communications concerning the November 28, 2020 broadcast of Tipping Point with Kara McKinney, as described in Paragraph 125 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67, 104, 105, 312 |
| 148 | Produce Documents and Communications concerning Your contentions that "[OAN] had not seen any evidence that Smartmatic rigged the 2020 U.S. Election for Joe Biden or that Smartmatic was founded by corrupt dictators," and that, "[OAN] knew that none of its guests, including Mr. Johns, had produced any evidence supporting those claims," as alleged in Paragraph 126 of the COMPLAINT. | RFP 4, 5, 6, 27, 42, 43, 67, 104, 105, 156, 312 |
| 149 | Produce Documents and Communications concerning the December 1, 2020 broadcast of Breaking News Live with Patrick Hussion, as described in Paragraph 127 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67, 104, 105, 312 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| 150 | Produce Documents and Communications concerning Your contentions that "[OAN] knew it had not seen any evidence of security weaknesses in Smartmatic's software, generally, or in the Smartmatic software used in Los Angeles County in the 2020 election, specifically," and that, "[OAN] also knew that no witnesses had come forward to support these claims about Smartmatic's software," as alleged in Paragraph 128 of the COMPLAINT. | RFP 4, 5, 6, 20, 42, 43, 67, 104, 105, 312 |
| 151 | Produce Documents and Communications concerning the December 1, 2020 broadcast of Tipping Point with Kara McKinney, as described in Paragraph 129 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67, 104, 105, 312 |
| 152 | Produce Documents and Communications concerning the December 3, 2020 broadcast of In Focus with Stephanie Hamill, as described in Paragraph 130 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67, 104, 105, 312 |
| 153 | Produce Documents and Communications concerning the December 5, 2020 broadcast of News Room, as described in Paragraph 131 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67, 104, 105, 312 |
| 154 | Produce Documents and Communications concerning Your contention that "[OAN] had seen no evidence that ... Dominion machines used Smartmatic software in the 2020 election," as alleged in Paragraph 132 of the COMPLAINT. | RFP 4,5, 31, 32, 42, 43, 67, 81, 96, 129, 138, 146, 185, 195, 196, 197, 235, 312, 314, 325, 326, 327, 331, 356, 414 |
| 155 | Produce Documents and Communications concerning Your contention that "[OAN] had seen no evidence that ... Smartmatic software switched any votes in the 2020 election," as alleged in Paragraph 132 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67, 104, 105, 312 |
| 156 | Produce Documents and Communications concerning Your assertion that "[OAN] had seen no evidence that ... Smartmatic had ties to any dictators (Venezuelan or Cuban)," as alleged in Paragraph 132 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67, 104, 105, 133 |
| 157 | Produce Documents and Communications concerning the December 7, 2020 broadcast of Tipping Point with Kara McKinney, as described in Paragraph 133 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67, 104, 105, 312 |
| 158 | Produce Documents and Communications concerning Your assertion that "[OAN] knew it had not seen any evidence, "suggestive" or "indisputable," indicating that voting machines rigged or stole the 2020 U.S. election," as alleged in Paragraph 134 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67, 104, 105, 312 |
| 159 | Produce Documents and Communications concerning the December 21, 2020 broadcast of News Room, as described in Paragraph 135 of the COMPLAINT. | RFP 4, 5, 6, 43, 67, 104, 105, 312 |
| 160 | Produce Documents and Communications concerning Your assertions that "[OAN] had not seen any evidence supporting steps two, three, or four," and that, "[OAN] also knew that no one had presented evidence of step two, three, or four," as alleged in Paragraph 136 and Paragraph 137 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67, 104, 105, 187, 312 |
| 161 | Produce Documents and Communications concerning the testimony of Martin Golingan in Coomer v. Donald J. Trump for President, Inc., et al., No. 2020-cv-034319, including without limitation discussion of his testimony in Paragraphs 138 and 405 of the COMPLAINT. | RFP 4, 7, 67, 68, 99, 312 |
| 162 | Produce Documents and Communications exchanged between You and DOMINION concerning the factual or legal claims made in Your COMPLAINT or the case styled US Dominion, Inc, et al. v. Herring Networks, Inc., et al., No. 1:21-cv-02130. | RFP 31, 32, 81, 99, 312 |
| 163 | Produce Documents and Communications sufficient to identify each Person responsible for creating, researching, writing, editing, or approving the content of the SMARTMATIC RETRACTION DEMAND. | RFP 4, 5, 6, 42, 43, 68, 72, 101, 104, 105, 312, 407, 532 |
| 164 | Produce Documents and Communications sufficient to identify each Person responsible for creating, researching, writing, editing, or approving the content of PLAINTIFFS' retraction demand letter to Fox News, as discussed in Paragraph 141 of the COMPLAINT. | RFP 67, 71, 72, 77, 101, 163, 311, 312 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| 165 | Produce a copy of the retraction demand letter(s) from PLAINTIFFS to Fox News, as discussed in Paragraph 141 of the COMPLAINT. | RFP 67, 68, 71, 72, 77, 101, 165, 311, 312 |
| 166 | Produce Documents and Communications sufficient to identify each Person responsible for creating, researching, writing, editing, or approving the content of the retraction demand letter from PLAINTIFFS to Newsmax, as discussed in Paragraph 142 of the COMPLAINT. | RFP 67, 71, 72, 78, 101, 311, 312 |
| 167 | Produce a copy of the retraction demand letter(s) from PLAINTIFFS to Newsmax, as discussed in Paragraph 142 of the COMPLAINT. | RFP 67,71, 72, 78, 101, 167, 311, 312 |
| 168 | Produce Documents and Communications concerning the December 26, 2020 broadcast of Weekly Briefing with Christina Bobb, as described in Paragraph 146 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67, 104, 105, 312 |
| 169 | Produce Documents and Communications concerning the broadcasts of Absolute Proof, as described in Paragraph 154 and Paragraph 160 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67, 68, 71, 104, 105, 312 |
| 170 | Produce Documents and Communications concerning the February 8, 2021 broadcast of Real America with Dan Ball, as described in Paragraph 158 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67, 68, 104, 105, 312 |
| 171 | Produce Documents and Communications concerning the broadcasts of Scientific Proof, as described in Paragraph 162 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67, 68, 71, 104, 105, 312 |
| 172 | Produce Documents and Communications concerning the broadcasts of Absolute Interference, as described in Paragraph 164 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67, 68, 71, 104, 105, 312 |
| 173 | Produce Documents and Communications concerning the May 3, 2021 broadcast of an interview of Michael J. Lindell, as described in Paragraph 166 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67, 68, 71, 104, 105, 312 |
| 174 | Produce Documents and Communications concerning the broadcasts of Absolutely 9-0, as described in Paragraph 167 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67, 68, 71, 104, 105, 312 |
| 175 | Produce Documents and Communications concerning Your assertion "Since 2003, Smartmatic's election technology has processed more than 5 billion secure votes worldwide without a single security breach" as alleged in Paragraph 24 of the COMPLAINT. | RFP 14, 26, 42, 43, 44, 67, 497 |
| 176 | Produce Documents and Communications concerning Your "case studies," as referenced in Paragraph 45 of the COMPLAINT including, without limitation, the case studies themselves. | RFP 17, 42, 67, 227 |
| 177 | Produce Documents and Communications sufficient to identify Your "references," as referred to in Paragraph 46 of the COMPLAINT. | RFP 67, 74, 90, 227 |
| 178 | Produce Documents and Communications concerning Your assertion that "Smartmatic [has] been recognized as one of the best election technology and software companies in the world," as alleged in Paragraph 47 of the COMPLAINT. | RFP 46, 67, 74, 275, 276, 277 |
| 179 | Produce Documents and Communications concerning Your assertion that "The November general election in Los Angeles County from a technology perspective was flawless" as alleged in Paragraph 59 of the COMPLAINT. | RFP 20, 24, 42, 43, 67, 150, 187, 188, 312, 517, 523, 524 |
| 180 | Produce Documents and Communications concerning Your assertion that it "did not play any role in the general election outside of Los Angeles County. Smartmatic's election technology, software, equipment, and services were not used in any other county or state for the 2020 U.S. election" as alleged in Paragraph 62 of the COMPLAINT. | RFP 13, 20, 42, 43, 67, 131, 138, 146, 184, 192, 193, 196, 225, 292, 312, 371 |
| 181 | Produce Documents and Communications concerning Your assertion that "Smartmatic did not license or contract with any third party, including other election technology companies, for the use of Smartmatic's technology, software, machines, or services in any other county or state for the 2020 U.S. election" as alleged in Paragraph 62 of the COMPLAINT. | RFP 13, 31, 34, 42, 43, 67, 79, 81, 91, 180, 184, 185, 192, 193, 196, 225, 292, 293, 312, 371 |
| 182 | Produce Documents and Communications concerning Your assertion that no "Smartmatic election technology and software were even used in | RFP 13, 20, 42, 43, 67, 131, 138, 146, 180, 181, 184, 185, 192, 193, 196, 225, 292, 312, 371 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| | any of the states that had close outcomes in the 2020 U.S. election," as alleged in Paragraph 81 of the COMPLAINT. | |
| 183 | Produce Documents and Communications concerning OAN's so-called "disinformation campaign" as alleged in Paragraph 170 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67, 68, 86, 104, 105, 312, 406 |
| 184 | Produce Documents and Communications concerning Your assertion that Your "election technology and software were only used in Los Angeles County, and not used by any other voting machine company, for the 2020 U.S. election," as alleged in Paragraph 180 of the COMPLAINT. | RFP 13, 20, 42, 43, 67, 131, 138, 146, 180, 181, 185, 192, 193, 225, 292, 312, 371 |
| 185 | Produce Documents and Communications concerning Your assertion that Your "election technology and software were not used in other voting machines in the 2020 U.S. election, including in Dominion machines," or in "battleground states," as alleged in Paragraphs 180 and 182 of the COMPLAINT. | RFP 13, 20, 31, 32, 42, 43, 67, 81, 96, 129, 131, 138, 146, 154, 180, 181, 184, 194, 195, 196, 197, 225, 235, 312, 314, 325, 326, 327, 292, 331, 356, 371, 414 |
| 186 | Produce Documents and Communications concerning Your assertion that Your "election technology and software" were not "used to steal the 2020 U.S. election by rigging and fixing the vote" as alleged in Paragraphs 170 and 180 of the COMPLAINT. | RFP 42, 43, 67, 73, 312 |
| 187 | Produce Documents and Communications concerning Your assertion that Your "election technology and software were not compromised and hacked during the 2020 U.S. election and no votes were sent overseas," as alleged in Paragraphs 170 and 180 of the COMPLAINT. | RFP 20, 24, 42, 43, 44, 67, 73, 139, 150, 188, 160, 312, 497, 517, 523, 524 |
| 188 | Produce Documents and Communications concerning Your assertion that there were no "cyber-security issues in Los Angeles County" during the 2020 PRESIDENTIAL ELECTION and that the votes from that election "were tabulated in Los Angeles County," as alleged in Paragraphs 180 and 208 of the COMPLAINT. | RFP 20, 24, 42, 43, 44, 67, 73, 139, 160, 187, 312 |
| 189 | Produce Documents and Communications concerning Your assertion that You are "not a Venezuelan company and was not founded and funded by corrupt dictators from socialist and communist countries" and that "No dictators—corrupt or otherwise, from communist/socialist countries or otherwise—were involved in founding or funding the company" as alleged in Paragraph 170 and 180 of the COMPLAINT. | RFP 27, 37, 42, 43, 67, 104, 105, 133, 156, 381, 384, 386 |
| 190 | Produce Documents and Communications concerning Your assertion that "Smartmatic's election technology and software" were "not designed to rig and fix elections" and have not been "used to fix, rig, and steal elections before," as alleged in Paragraph 170 and 180 of the COMPLAINT. | RFP 42, 43, 44, 67, 73, 132, 183, 186, 187, 189, 268, 507, 508 |
| 191 | Produce Documents and Communications concerning Your assertion that "Smartmatic's election technology and software were designed for security, reliability, and auditability. No after-the-fact audit has ever found that Smartmatic's technology or software was used to rig, fix, or steal an election," as alleged in Paragraph 180 of the COMPLAINT. | RFP 19, 20, 42, 43, 67, 73, 200, 201, 434, 440, 450, 494, 495, 502, 512 |
| 192 | Produce Copies of all "public records," as referenced in Paragraph 183 of the COMPLAINT, that demonstrate that "Smartmatic was not used in any state or county outside of Los Angeles County." | RFP 13, 20, 42, 43, 67, 131, 138, 146, 180, 181, 185, 192, 193, 194, 312 |
| 193 | Produce Documents and Communications concerning Your assertion that Your "election technology and software were not used in Nevada, Arizona, Georgia, Pennsylvania, Michigan, Wisconsin, or Texas. Smartmatic's election technology and software were not used in any counties in these states" as alleged in Paragraph 189 of the COMPLAINT. | RFP 13, 20, 42, 43, 67, 131, 138, 146, 180, 181, 185, 192, 194, 312 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|-------|--------------------|-----------------------------|
| 194 | Produce Documents and Communications concerning Your assertion that "Smartmatic's election technology and software were not used by any other voting technology company during the 2020 U.S. election. Smartmatic's election technology and software were not used by another company in Nevada, Arizona, Georgia, Pennsylvania, Michigan, Wisconsin, or Texas (or any counties within these States)," as alleged in Paragraph 190 of the COMPLAINT. | RFP 13, 20, 42, 43, 67, 131, 138, 146, 180, 181, 185, 192, 193, 312, 371 |
| 195 | Produce Documents and Communications concerning Your assertion that "Smartmatic did not work with or assist any other voting technology company during the 2020 U.S. election. Smartmatic did not count the votes for any other voting technology company, including Dominion. Smartmatic's election technology and software were not involved in collecting, tabulating or counting any votes outside of Los Angeles County," as alleged in Paragraph 191 of the COMPLAINT. | RFPs 31, 32, 67, 81, 96, 129, 138, 146, 154, 185, 196, 197, 235, 312, 314, 325, 326, 327, 331, 356, 371, 414, |
| 196 | Produce Documents and Communications concerning Your assertion that "Dominion did not use Smartmatic's election technology and software during the 2020 U.S. election. Smartmatic did not license its technology or software to Dominion for use in the 2020 U.S. election. Dominion did not purchase Smartmatic's election technology and software for use in the 2020 U.S. election," as alleged in Paragraph 192 of the COMPLAINT. | RFPs 31, 32, 67, 81, 96, 129, 138, 146, 154, 185, 195, 197, 235, 312, 314, 325, 326, 327, 331, 356, 371 414 |
| 197 | Produce Documents and Communications concerning Your assertion that DOMINION and PLAINTIFFS do not assist each other with projects and are not sub-contractors of each other, as alleged in Paragraph 193 of the COMPLAINT. | RFPs 31, 32, 67, 81, 96, 129, 138, 146, 154, 185, 195, 196, 235, 312, 314, 325, 326, 327, 331, 356, 414 |
| 198 | Produce Documents and Communications concerning Your assertion that Smartmatic does not count or tabulate votes; this is done by the election authorities,alleged in Paragraph 216 of the COMPLAINT. | RFP 42, 43, 67, 104, 105, 224, 312 |
| 199 | Produce Documents and Communications concerning Your assertion that "Smartmatic ceased participating in elections in Venezuela in 2017. Smartmatic ceased to provide election technology and software in Venezuela after the government announced total vote counts that differed from the actual vote count," as alleged in Paragraph 225 of the COMPLAINT. | RFP 42, 43, 37, 67, 142, 143, 199, 381, 383 |
| 200 | Produce Documents and Communications concerning Your assertion relating to "audited elections" as alleged in Paragraph 347 of the COMPLAINT. | RFP 19, 20, 42, 43, 67, 73, 191, 201, 434, 440, 450, 494, 495, 502, 512 |
| 201 | Produce Documents and Communications concerning Your assertion that "[n]o audit of an election in which Smartmatic participated has identified any instances of Smartmatic's election technology and software changing votes from one candidate to another," as alleged in Paragraph 232 of the COMPLAINT. | RFP 19, 20, 42, 43, 67, 73, 191, 200, 434, 440, 450, 494, 495, 502, 512 |
| 202 | Produce Documents and Communications concerning Your assertion that Your "election technology and software did not fix, rig, or steal any election in the Philippines. Every audit of an election in the Philippines using Smartmatic's election technology and software has confirmed the election was not fixed, rigged, or stolen," as alleged in Paragraph 236 of the COMPLAINT. | RFP 67, 190, 191, 201, 233, 434, 443, 448, 457, 463, 468 |
| 203 | Produce Documents and Communications concerning the statement by the Organization of American States ("OAS") as referenced in Paragraphs 119 and 120 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67, 68, 104, 105, 142 |
| 204 | Produce Documents and Communications concerning the California report referenced in Exhibit 106 of the COMPLAINT, including any measures the PLAINTIFFS took to address the concerns raised in that report. | RFP 67, 205, 265, 312 |
| 205 | Produce Documents and Communications concerning the Politico Article identified in Exhibit 106 of the COMPLAINT. | RFP 67, 204, 265, 312 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| 206 | Produce Documents and Communications between You, and/or any of Your attorneys, and any expert witness retained by You in this ACTION that: (i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that any of Your attorneys provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that any of Your attorneys provided and that the expert relied on in forming the opinions to be expressed. | RFP 69, 312 |
| 207 | Produce all Documents obtained (now or in the future) by You pursuant to any open records request, public information act request, subpoena or other form of third-party discovery relating to this ACTION. This request has no time limit. | RFP 70, 71, 312 |
| 208 | Produce all Documents referenced in, identified by, responsive to, or relied upon in preparing Your Responses to Defendant's Requests for Production, Your Responses to Defendant's Interrogatories, Your Responses to Defendant's Requests for Admissions, and/or Your Responses to any other discovery requests, including but not limited to a Rule 30(b)(6) request. This request has no time limit. | RFP 1, 2, 104, 105, 312 |
| 209 | Produce all Documents sufficient to show all lawsuits filed by or against You since January 1, 2010. | RFP 329, 330, 583, 590, 591,593, 594, 595, 596, 599, 600, 601, 602 |
| 210 | Produce all litigation hold notices sent by any PLAINTIFFS related to or arising out of this ACTION, including but not limited to internal litigation hold notices and third-party litigation hold notices, as well as any related Documents and Communications. | RFP 1, 71, 77, 78 |
| 211 | Produce Your document retention, preservation, and destruction policies. | RFP 71, 209 |
| 212 | Produce Documents and Communications produced in response to any subpoena, public information request (including but not limited to Freedom of Information Act requests), lawsuit, arbitration, or other proceeding concerning You. | RFP 70, 71, 207, 300, 312, 328, 329, 330 |
| 213 | Produce Documents and Communications with lobbyists or lobbying firms concerning Your efforts to procure contracts with governmental entities, including but not limited to states, counties, and municipalities, from January 1, 2016 to the present. | RFP 239, 297, 301, 312, 365, 539, 540, 571 |
| 214 | Produce Documents and Communications concerning Your efforts to lobby, thwart, restrict, modify, or otherwise impact H.R. 6435, the "Election Vendor Security Act," or any subsequent iteration of the aforementioned legislation. | RFP 216, 365, 571 |
| 215 | Produce Documents and Communications exchanged between You and any members of Congress or any Congressional staff members. This request has no time limit. | RFP 6, 21, 22, 23, 24, 25, 86, 315, 406 |
| 216 | Produce Documents and Communications reflecting financial contributions, or anything of monetary value, made by You or Your employees or contractors to any state, county, municipality, governmental agency, or public official. | RFP 221, 567 |
| 217 | Produce Documents and Communications sufficient to identify and concerning Your ownership in "election technology and software companies in United States (Smartmatic USA Corp.), Barbados, Australia, United Kingdom, Panama, Haiti, Belgium, Singapore, Netherlands, Mexico, Ecuador, Brazil, Estonia, Taiwan, and the Philippines as well as branches in Colombia, Argentina, Honduras, Pakistan, Italy, Jamaica, and El Salvador," as alleged in Paragraph 11, Footnote 2 of the COMPLAINT. | RFP 8, 9, 67, 367 |
| 218 | Produce Documents and Communications sufficient to identify all Your employees, contractors, representatives, or agents, including employee lists and organizational charts, between January 1, 2003 and the present. | RFP 8, 9, 79, 299, 467 |
| 219 | Produce Documents and Communications sufficient to identity the relationship between You and any of Your affiliates, companies, and subsidiaries, from January 1, 2000 to the present. | RFP 8, 9, 218, 286, 292, 555 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|-------|--------------------|-----------------------------|
| 220 | Produce Documents and Communications concerning Your assertion that "Smartmatic USA Corp. is based in Florida, and its parent company is based in the United Kingdom," as alleged in Paragraph 180 of the COMPLAINT. | RFP 8, 9, 67 |
| 221 | Produce Documents and Communications concerning the political contributions of Your employees since January 1, 2016. | RFP 216 |
| 222 | Produce Documents and Communications that show the location of Your owned or leased servers since January 1, 2003. | RFP 15, 16, 18, 21, 22, 24, 25, 26, 62, 67, 224 |
| 223 | Produce Documents and Communications concerning Amazon servers, as referenced in Paragraph 218 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67, 104, 105, 303 |
| 224 | Produce Documents and Communications concerning Your use of any server that is physically located outside of the United States in connection with any counting, tabulating, processing, or storage of data relating to the 2020 PRESIDENTIAL ELECTION. | RFP 15, 16, 18, 24, 26, 42, 43, 67, 73, 139, 160, 187,195,198, 222, 312 |
| 225 | Produce Documents and Communications concerning the marketing or sale, including without limitation any offers or attempts to sell or license, of SMARTMATIC SYSTEMS between January 1, 2003 and the present. | RFP 74, 290, 291, 292, 293, 312 |
| 226 | Produce Documents and Communications concerning any effort to sell all or any stake of You, including any efforts by You to become a publicly traded company. This request has no time limit. | RFP 557, 561, 562, 578 |
| 227 | Produce Documents and Communications concerning the case studies and references discussed in Paragraphs 45 and 46 of the COMPLAINT, including drafts of the case studies and Documents and Communications concerning the creation of the case studies. | RFP 17, 67, 176 |
| 228 | Produce Documents concerning the installation, use, or maintenance of SMARTMATIC SYSTEMS, including any guides or documents as they existed on November 3, 2020 as well as all previous versions and drafts. | RFP 18, 76, 230, 312, 421, 472 |
| 229 | Produce Documents and Communications that show the location where election-related data is stored or kept by or on behalf of You since January 1, 2003. | RFP 18, 222, 224, 234, 481 |
| 230 | Produce all videos and photos concerning the use, maintenance, or support of SMARTMATIC SYSTEMS in the 2020 PRESIDENTIAL ELECTION, including all videos of technicians or contractors inserting a USB thumb drive into Your equipment. | RFP 228, 293, 312, 475 |
| 231 | Produce all technical documents packages for SMARTMATIC SYSTEMS between January 1, 2003 and the present. | RFP 76, 228, 230, 234, 289, 290, 312, 333, 472, 494, 502, 512, 515, 516, 521 |
| 232 | Produce all source code present in SMARTMATIC SYSTEMS used in the 2020 PRESIDENTIAL ELECTION, including without limitation a copy of the source code provided to the County of Los Angeles, State of California for its use in relation to the 2020 PRESIDENTIAL ELECTION. | RFP 233, 234, 312, 512 |
| 233 | Produce all source code versions and patches implemented in relation to the SMARTMATIC SYSTEMS. | RFP 232, 234, 235, 295, 512 |
| 234 | Produce Documents and Communications concerning the source code version history and storage environment for any source code present in SMARTMATIC SYSTEMS used by any PLAINTIFFS. | RFP 232, 234, 235, 295, 512 |
| 235 | Regardless of time frame, Documents and Communications related to Your controlled, owned, or licensed source code, voting machines, or voting technology that originated, was developed by, or was invented by a THIRD PARTY, including but not limited to DOMINION, SEQUOIA, or any other THIRD PARTY. | RFP 31, 32, 33, 81, 96, 129, 138, 146, 154, 185, 195, 196, 197, 293, 314, 325, 326, 327, 331, 356, 414 |
| 236 | Produce Documents and Communications concerning the sourcing of components, parts, or equipment for SMARTMATIC SYSTEMS. This request has no time limit. | RFP 79, 292, 480 |
| 237 | Produce Documents sufficient to show any unique words used by You to identify SMARTMATIC SYSTEMS, and any components thereof, between January 1, 2003 and present. | RFP 79, 236, 292, 480 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|-------|--------------------|-------------------------------|
| 238 | Produce Documents and Communications sufficient to identify and reflect Your software engineering protocols and policies, and the evolution thereof, concerning SMARTMATIC SYSTEMS. This request has no time limit. | RFP 16, 516, 517 |
| 239 | Produce Documents and Communications between You and OTHER MEDIA ORGANIZATIONS or other media, social media, or broadcast source relating to SMARTMATIC SYSTEMS in any election since January 1, 2003. | RFP 240, 311, 313, 418, 419 |
| 240 | Produce Documents and Communications concerning any OTHER MEDIA ORGANIZATIONS or other media, social media, or broadcast source relating to SMARTMATIC SYSTEMS used in the 2020 PRESIDENTIAL ELECTION. | RFP 239, 311, 312, 313, 418, 419 |
| 241 | Produce Documents and Communications concerning reporting by any OTHER MEDIA ORGANIZATIONS relating to the performance of Your or DOMINION's software, hardware, and other voting machine technology. | RFPs 31, 32, 67, 81, 96, 129, 138, 146, 154, 185, 195, 196, 197, 235, 311, 314, 325, 326, 327, 331, 356, 414<br>Search terms |
| 242 | Produce Documents and Communications concerning any OTHER MEDIA ORGANIZATIONS or other media, social media, or broadcast source relating to Your connection to Venezuela, including without limitation, the statements made by Lou Dobbs on CNN in 2006. | RFP 239, 311, 381 |
| 243 | Produce copies of all social media posts published between November 1, 2020 and November 1, 2021 that are in any way critical of any of the PLAINTIFFS or any of the SMARTMATIC SYSTEMS. | RFP 62, 80, 245, 272, 273 |
| 244 | Produce copies of all news reports published between November 1, 2020 and November 1, 2021 that are in any way critical of any of the PLAINTIFFS or any of the SMARTMATIC SYSTEMS. | RFP 62, 356, 435, 437, 524 |
| 245 | Produce copies of all articles, whether in newspapers, online, or published in other media, published between November 1, 2020 and November 1, 2021 that are in any way critical of any of the PLAINTIFFS or any of the SMARTMATIC SYSTEMS. | RFP 62, 245, 312, 356 |
| 246 | Produce Documents and Communications concerning and exchanged between You and the Republican or Democratic National Committees; Republican or Democratic Parties; any political candidate; any political campaign; any Political Action Committee; or any other public interest funder relating to the 2020 PRESIDENTIAL ELECTION. | RFP 309, 312, 420 |
| 247 | Produce Documents and Communications compiled and/or submitted to the United States Senate Intelligence Committee in connection with the 2016 U.S. presidential election. | RFP 13, 21, 22, 215 |
| 248 | Produce Documents and Communications concerning any investigation of any PLAINTIFFS and/or DOMINION conducted by or otherwise involving Carolyn Maloney, Elizabeth Warren, Amy Klobuchar, and/or Edward Burke, as well as documents pertaining to any attempt by these individuals to prevent or otherwise limit the ability of any PLAINTIFFS or DOMINION from operating in the United States. | RFP 23, 215, 438 |
| 249 | Produce Documents and Communications concerning and between You and any cybersecurity company You have hired or consulted with, as referenced in Paragraph 432 of the COMPLAINT. | RFP 48, 546, 547, 549, 550, 552, 569 |
| 250 | Produce Documents and Communications concerning and exchanged between You and any organizers of, or participants in, a hardware or software hacking conference. | RFP 44, 251, 487 |
| 251 | Produce Documents and Communications concerning and exchanged between You and DEF CON Communications, Inc. | RFP 44, 250, 487 |
| 252 | Produce Documents and Communications concerning and exchanged between You and any elections or cybersecurity nonprofit or advocacy group relating to SMARTMATIC SYSTEMS. | RFP 48, 249 |
| 253 | Produce Documents and Communications concerning and between You and California Secretary of State. | RFP 20, 82, 254, 342, 343, 406, 522 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| 254 | Produce Documents and Communications concerning and between You and Los Angeles County Clerk and/or Recorder. | RFP 20, 82, 342, 343, 406, 522 |
| 255 | Produce Documents and Communications concerning and between You and Cook County Clerk. | RFP 343, 406 |
| 256 | Produce Documents and Communications concerning and between You and Chicago Board of Elections. | RFP 255, 343, 406 |
| 257 | Produce Documents and Communications concerning and between You and Department of Treasury. | RFP 343, 406 |
| 258 | Produce Documents and Communications concerning and between You and Jack Blaine. | RFP 33, 41, 314, 325, 326, 331, 333, 334 |
| 259 | Produce Documents and Communications concerning and between You and Scott Circle Communications. | RFP 101, 263, 571 |
| 260 | Produce Documents and Communications concerning and between You and SEC Newgate. | RFP 101, 263, 571 |
| 261 | Produce Documents and Communications concerning and between You and Courtney Torres Consulting. | RFP 101, 263, 571 |
| 262 | Produce Documents and Communications concerning and between You and Issues and Crisis Group LLC. | RFP 101, 263, 571 |
| 263 | Produce Documents and Communications, including any engagement contracts or other agreements, concerning and exchanged between You and any public relations ("PR"), branding firm ("BF"), or crisis management firm ("CMF"), or company performing similar or related functions as a PR, BF, or CMF, since January 1, 2016, including without limitation any PR, BF, CMF, or other company engaged by You to mitigate purported damage caused by the COMPLAINED OF STATEMENTS. | RFP 47, 101, 571 |
| 264 | Produce Documents and Communications concerning and exchanged between You and Bitza Corporation and any of its subsidiaries or affiliates, including without limitation Documents concerning formation, such as the Registro Mercantil Primero No. 22, 1997, Caracas Venezuela, and the Registro Mercantil Primero No. 19, 1997, Caracas, Venezuela. | RFP 31, 37, 381 |
| 265 | Produce Documents and Communications concerning the Politico Article titled "Los Angeles County's risky voting experiment," published March 3, 2020 at https://www.politico.com/news/2020/03/03/los-angeles-county-voting-experiment-119157. | RFP 20, 82, 204, 205 |
| 266 | Produce Documents and Communications concerning any declarations or affidavits filed in connection with any of the ELECTION LAWSUITS. | RFP 71, 312 |
| 267 | Produce Documents and Communications concerning any persons who submitted declarations or affidavits in connection with any of the ELECTION LAWSUITS. | RFP 71, 312 |
| 268 | Produce Documents and Communications concerning any allegations or questions that any election in which any SMARTMATIC SYSTEM was used was rigged, stolen, or fraudulent. This request has no time or geographic limitation. | RFP 68, 190, 191, 312, 406, 531 |
| 269 | Produce Documents and Communications concerning whether or not any SMARTMATIC SYSTEM can be used to change, manipulate, or alter votes. | RFP 26, 270, 312, 471, 506, 508, 509 |
| 270 | Produce Documents and Communications concerning whether or not any elections anywhere in the world using SMARTMATIC SYSTEMS have been manipulated. | RFP 269, 312, 471, 506, 508, 509 |
| 271 | Produce Documents sufficient to show who controlled the interests in each of the PLAINTIFFS between 2003 and the present. | RFP 8, 9, 284, 286, 287 |
| 272 | Produce all Twitter posts by any of the PLAINTIFFS or any of their agents or representatives since November 1, 2020. | RFP 80, 243, 296 |
| 273 | Produce a copy of all Facebook posts by any of the PLAINTIFFS or any of their agents or representatives since November 1, 2020. | RFP 80, 243, 296 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| 274 | Produce Documents and Communications concerning Your competitors from January 1, 2016 through present. | RFP 31, 32, 33, 81, 96, 129, 138, 146, 154, 185, 195, 196, 197, 235, 325, 326, 327, 331, 356, 414, 587 |
| 275 | Produce Documents and Communications concerning any of the PLAINTIFFS' reputations, goodwill, fame, influence, brand name, or notoriety. | RFP 46, 178, 276, 277, 263 |
| 276 | Produce Documents and Communications concerning any of the PLAINTIFFS' brands. | RFP 46, 178, 275, 277, 263 |
| 277 | Produce Documents and Communications concerning surveys, market research, or other documentation of public perception of You, Your brand, and/or Your goods and services. | RFP 46, 178, 275, 276, 263 |
| 278 | Produce Documents and Communications concerning Your assertion that anyone cast You or PLAINTIFFS as a corrupt company. | RFP 27, 104, 105, 189, 355 |
| 279 | Produce Documents sufficient to identify the various members of the SMARTMATIC USA Board of Directors between January 1, 2014 and the present. | RFP 9, 86, 280, 281 |
| 280 | Produce Documents sufficient to identify the various members of the SMARTMATIC INTERNATIONAL Board of Directors between January 1, 2014 and the present. | RFP 9, 86, 279, 281 |
| 281 | Produce Documents sufficient to identify the various members of the SGO Board of Directors between January 1, 2014 and the present. | RFP 9, 86, 279, 280 |
| 282 | Produce Documents and Communications sent by, received by, or concerning Lord Mark Malloch-Brown relating to any election conducted in a country or jurisdiction outside of the United States, including but not limited to Venezuela, Philippines, China, Serbia, Brazil, Germany, Spain, Belgium, Zambia, Argentina, Oman, Armenia, Italy, Estonia, or Norway. | RFP 39, 308 |
| 283 | Produce Documents and Communications sent by or received by any members of Your Board of Directors concerning any of the following: (a) the impact on You, including any damages allegedly suffered by You, caused by or resulting from any alleged actions, statements, or broadcasts of Fox News, Newsmax, Donald Trump, Sidney Powell, or Rudy Giuliani since November 1, 2020; (b) negotiations between You and any U.S. governmental, state, county, or municipal entity relating to the use of any SMARTMATIC SYSTEMS; and (c) any of Your business forecasts, business plans, financial forecasts, or financial performance. | RFP 77, 78, 86, 89, 90, 104, 105, 279, 280, 281, 311, 312, 370, 564, 656, 566, 567, 568 |
| 284 | Produce Documents and Communications sufficient to show any Person holding, owning, managing, supervising, or otherwise involved with any ownership interest in You at any time from January 1, 2003 through the present. | RFP 8, 9, 64, 271, 284, 286, 287 |
| 285 | Produce Documents and Communications concerning complaints, investigations, and results of efforts undertaken to identify whether You deleted, lost, changed, or compromised votes in connection with the 2020 PRESIDENTIAL ELECTION or any other election. | RFP 28, 30, 40, 73, 300, 312, 423, 438 |
| 286 | Produce Documents and Communications evidencing any ownership interest or other affiliation, including employment, in You, at any time from January 1, 2003 through the present, by any current or former United States federal or state elected government official. | RFP 8, 9, 64, 271, 284, 286, 287 |
| 287 | Produce Documents sufficient to show every Person having any financial interest in SMARTMATIC SYSTEMS, or the outcome of this ACTION, financial, contingent, or otherwise, including all agreements with any Person having any financial interest in You, or SMARTMATIC SYSTEMS, or the outcome of this ACTION. | RFP 9, 64, 284, 286, 293, 582, 583 |
| 288 | Produce Documents and Communications sufficient to show and concerning Your ownership interest in THIRD PARTY election technology and software companies. | RFP 9, 217, 334 |
| 289 | Produce Documents and Communications concerning the design, research, development, testing, or evaluation of the SMARTMATIC SYSTEMS and all versions of the SMARTMATIC SYSTEMS. | RFP 15, 76, 290, 291, 356, 515 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| 290 | Produce Documents sufficient to identify all present employees, past employees, consultants, and contract employees, whether full- or part-time, whose responsibilities or assignments include(d) work concerning the design, research, development, manufacturing, marketing, or testing of SMARTMATIC SYSTEMS. | RFP 76, 79, 197, 218, 230, 292, 405, 475, 476 |
| 291 | Produce Documents sufficient to identify the name and location of any THIRD PARTY involved in the design, research, development, manufacturing, marketing, or testing of the SMARTMATIC SYSTEMS. | RFP 15, 24, 74, 79, 515, 289, 356, 476 |
| 292 | Produce Documents and Communications concerning any vendors or other contractors or affiliates based within the United States that manufacture, produce, license, or are otherwise involved with any SMARTMATIC SYSTEMS, including without limitation hardware, software, or other components used in SMARTMATIC SYSTEMS from January 1, 2003 to present. | RFP 18, 293, 301, 476 |
| 293 | Produce Documents and Communications concerning past and current agreements, contracts, or licenses involving the SMARTMATIC SYSTEMS, including but not limited to copies and drafts of such agreements. This request has no time limit. | RFP 13, 14, 31, 79, 81, 197, 235, 292, 295, 297, 317, 326, 327, 331, 333, 354, 355, 359, 541, 363, 369, 403, 447 |
| 294 | Produce Documents and Communications concerning any request by a government entity, or any of its subdivisions, to view or analyze the source code of any SMARTMATIC SYSTEMS, including without limitation any request made by COMELEC or the Philippines government. | RFP 18, 231, 233, 234, 398 |
| 295 | Produce Documents and Communications concerning the use or incorporation of licensed software or source code in any SMARTMATIC SYSTEMS. | RFP 231, 233, 234, 294 |
| 296 | Produce Documents and Communications sufficient to show Your social media policies or guidelines, including any and all versions thereof. | RFP 80, 243, 272, 273, 296 |
| 297 | Produce Documents and Communications reflecting Your or any related entities' contracts or prospective contracts with any foreign countries. This request has no time limit. | RFP 51, 75, 90, 293, 301, 551, 553, 559, 579, 606 |
| 298 | Produce Documents and Communications sufficient to show Your customer list(s) from January 1, 2003 to the present. | RFP 13, 14, 90, 293, 297 |
| 299 | Produce Documents and Communications sent to, or received from, any current or former OAN employees, including Documents and Communications sent to or from Your counsel, agents, and representatives. | RFP 4, 7, 68, 303, 312 |
| 300 | Produce copies of all Documents produced by You in response to any subpoenas or other requests for documents concerning any investigations or complaints relating to the 2020 PRESIDENTIAL ELECTION. | RFP 70, 71, 312, 438 |
| 301 | Produce Documents and Communications exchanged between You and actual and/or prospective clients, vendors, customers, or business partners concerning future contract opportunities for the use of SMARTMATIC SYSTEMS. | RFP 74, 75, 90, 293 |
| 302 | Produce Documents and Communications concerning or between You and (a) Rudolph Giuliani; (b) Sidney Powell; and (c) Michael Lindell or MY PILLOW, INC. from January 1, 2016 to the present. | RFP 5, 68, 71, 283, 312 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| 303 | Produce Documents and Communications to, from, or concerning any of the following individuals:<br><br>a) Alex Salvi; b) Elma Aksalic; c) Mike Dinow; d) John Hines; e) Samantha Lomibao; f) Emily Finn; g) Eric Bolling; h) Kara McKinney; i) Patrick Hussion; j) Dan Ball; k) Stephanie Hamill; l) Christina Bobb; m) Michael Johns; n) Tom Fitton; o) Keith Trippie; p) Allan Santos ("Allan do Santos"); q) Joseph diGenova; r) J. Michael Waller; s) Clay Clark; t) Martin Golingan; u) Phil Waldron; v) Pearson Sharp; w) Jenna Ellis; x) J. Alex Halderman; y) Kyle Becker; z) Mary Fanning; aa) Evi Kokalari-Angelakis; bb) Eddie Perez; cc) Chanel Rion dd) Chris Farrell; ee) Julie Kelly; (ff) Lindsay Oakley; gg) Kristian Rouz; hh) Corey Mills; ii) Leamsy Salazar; jj) Harry Hursti; kk) Ana Cardozo; ll) Ronald Watkins; mm) Mark Paul Low; nn) Joshua Merritt; oo) Gregory Wodynski; pp) Seth Keshel; qq) Judith Burns; and rr) Joe Oltmann. | RFP 4, 5, 6, 7, 68, 96, 97, 100, 104, 105, 106, 115, 128, 161, 168, 170, 312 |
| 304 | Produce Documents and Communications exchanged between You and any of the following:<br><br>(a) George Soros; (b) the Open Society Foundations; (c) Peter Neffenger; and (d) the Clinton Foundation. | RFP 86, 305, 306, 307, 406 |
| 305 | Produce Documents and Communications sufficient to show any relationship between Lord Mark Malloch-Brown and George Soros. | RFP 306, 307 |
| 306 | Produce Documents and Communications between Lord Mark Malloch-Brown and George Soros. | RFP 305, 307 |
| 307 | Produce Documents and Communications sufficient to show any relationship between Lord Mark Malloch-Brown and any entity associated with George Soros or his name. | RFP 305, 306 |
| 308 | Produce Documents and Communications concerning Lord Malloch-Brown's statement that he "kicked the tyres" before becoming chairman of SGO, as referenced in the Financial Times's Article, "Lord Mark Malloch-Brown to chair election technology group SGO," https://www.ft.com/content/ddf42272-7308-11e4-907b-00144feabdc0. | RFP 39, 282 |
| 309 | Produce Documents and Communications exchanged between You and any of the following: (a) Donald Trump or his campaign or family; (b) Michael Pence or his campaign; (c) Joe Biden or his campaign or family; (d) Kamala Harris or her campaign; (e) the Democratic Party, its PACs, campaigns, and its affiliates; and (f) the Republican Party, its PACs, campaigns, and its affiliates. | RFP 86, 246, 310, 312, 313, 406, 420 |
| 310 | Produce Documents and Communications concerning former President Donald J. Trump. | RFP 73, 309, 312, 313 |
| 311 | Produce Documents and Communications concerning OTHER MEDIA ORGANIZATIONS. | RFP 6, 61, 77, 78, 103, 164-67, 239-42, 283, 313, 339, 340, 418, 419, 424<br>Search terms |
| 312 | Produce Documents and Communications concerning the 2020 PRESIDENTIAL ELECTION. | RFP 16, 18, 19, 46, 52, 66, 68, 71, 72, 73, 76, 77, 78, 82, 92, 312 |
| 313 | Produce Documents and Communications concerning both of the following: (i) the 2020 PRESIDENTIAL ELECTION and (ii) one or more OTHER MEDIA ORGANIZATIONS or former President Donald J. Trump. | RFP 6, 61, 80, 310, 311, 312 |
| 314 | Produce Documents and Communications exchanged between You and (a) any DOMINION executive; (b) any SEQUOIA executive; and/or (c) Eric Coomer. | RFP 31, 32, 33, 81, 96, 129, 138, 146, 154, 185, 195, 196, 197, 235, 325, 326, 327, 331, 356, 414, 587 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| 315 | Produce Documents and Communications concerning the security of SMARTMATIC SYSTEMS exchanged between You and government officials from (a) the Cybersecurity and Infrastructure Security Agency; (b) the Election Assistance Commission; (c) the Michigan Secretary of State; (d) the Georgia Secretary of State; (e) the Maricopa County Board of Supervisors; (f) the Arizona Secretary of State; (g) the Pennsylvania Secretary of State; (h) the Wisconsin Secretary of State; (i) the Nevada Secretary of State; or (j) the Texas Secretary of State. This request has no time limit. | RFP 22, 86, 316, 406, 411, 412, 493, 406 |
| 316 | Produce Documents and Communications concerning the security of SMARTMATIC SYSTEMS exchanged between You and government officials from (a) then-United States Attorney General William Barr and any official within the Department of Justice; (b) FBI Director Christopher Wray and any official within the Federal Bureau of Investigation; (c) the National Security Agency; (d) Director Christopher Krebs and any official within the Cybersecurity and Infrastructure Security Agency; (d) the Department of Defense; (e) The Department of Homeland Security; (f) the Office of the Director of National Intelligence; (g) any Office of Inspector General. This request has no time limit. | RFP 18, 22, 86, 315, 406, 438, 513 |
| 317 | Produce Documents and Communications concerning Your role as a member of the "Sector Coordinating Counsel" of the Cybersecurity and Infrastructure Agency, including without limitation any contracts between You and the Cybersecurity and Infrastructure Agency. | RFP 68, 293 |
| 318 | Produce Documents and Communications sufficient to identify any of Your employees of whose homes or offices were searched by the Department of Justice between 2019 and the present. | RFP 18, 22, 316, 352 |
| 319 | Produce Documents and Communications concerning or with Antonio Mugica concerning any flaws, vulnerabilities, or bugs in SMARTMATIC SYSTEMS or election irregularities where SMARTMATIC SYSTEMS were involved. This request has no time or geographic limit. | RFP 11, 320, 500 |
| 320 | Produce Communications between You and any Person challenging, criticizing, disagreeing with, or otherwise asking about the statements relating to calculation of security risk made in the article authored by Antonio Mugica entitled "The Case for Election Technology" published in SAGE Journals on or about June 1, 2015. | RFP 11, 311, 538 |
| 321 | Produce Documents and Communications concerning or with Roger Piñate related to any flaws, vulnerabilities, or bugs in SMARTMATIC SYSTEMS or election irregularities where SMARTMATIC SYSTEMS were involved. This request has no time or geographic limit. | RFP 11, 319, 500 |
| 322 | Produce Documents and Communications concerning or with Heiden Garcia related to any flaws, vulnerabilities, or bugs in SMARTMATIC SYSTEMS or election irregularities where SMARTMATIC SYSTEMS were involved. This request has no time or geographic limit. | RFP 319, 320, 323, 500 |
| 323 | Produce Documents and Communications concerning or with Ricardo Argana related to any flaws, vulnerabilities, or bugs in SMARTMATIC SYSTEMS or election irregularities where SMARTMATIC SYSTEMS were involved. This request has no time or geographic limit. | RFP 319, 320, 322, 349, 500 |
| 324 | Produce Documents and Communications between You and any election security expert concerning SMARTMATIC SYSTEMS. | RFP 22, 100, 249 |
| 325 | Produce Documents and Communications concerning use of any aspect of SMARTMATIC SYSTEMS by DOMINION, including together or singularly US Dominion, Inc., Dominion Voting Systems, Inc., Dominion Voting Systems Corporation, DOMINION subsidiaries, and SEQUOIA. This request has no time limit. | RFP 31, 32, 33, 41, 81, 96, 129, 138, 146, 154, 185, 195, 196, 197, 235, 314, 326, 327, 331, 356, 414 |
| 326 | Produce Documents and Communications concerning Your use of any aspect of technology, hardware, or software owned or licensed by DOMINION, including together or singularly US Dominion, Inc., Dominion Voting Systems, Inc., Dominion Voting Systems Corporation, DOMINION subsidiaries, and SEQUOIA. This request has no time limit. | RFP 31, 32, 33, 41, 81, 96, 129, 138, 146, 154, 185, 195, 196, 197, 235, 314, 325, 327, 331, 356, 414, 587 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|-------|--------------------|-------------------------------|
| 327 | Produce Documents and Communications concerning any sale, resale, license, agreement, or other business relationship between You and DOMINION, including between You and US Dominion, Inc., Dominion Voting Systems, Inc., Dominion Voting Systems Corporation, DOMINION subsidiaries, and SEQUOIA. This request has no time limit. | RFP 31, 32, 33, 41, 81, 96, 129, 138, 146, 154, 185, 195, 196, 197, 235, 293, 314, 325, 326, 331, 356, 414, 587 |
| 328 | Produce Documents and Communications concerning all discovery requests and responses of any type (i.e., interrogatories and responses, document requests and responses, requests to admit and responses, deposition transcripts and video, deposition errata sheets, subpoenas and responses, open records act requests and responses, and any other form of discovery request or response) produced by any party or non-party in any litigation between any PLAINTIFFS and/or DOMINION. This request has no time limit. | RFP 3, 212 |
| 329 | Produce Documents and Communications concerning all discovery requests and responses of any type (i.e., interrogatories and responses, document requests and responses, requests to admit and responses, deposition transcripts and video, deposition errata sheets, subpoenas and responses, open records act requests and responses, and any other form of discovery request or response) produced by any party or non-party in any litigation between any PLAINTIFFS and Election Systems & Software, including but not limited to Election Systems & Software, LLC v. Smartmatic USA Corp., C.A. No. 18-1259-RGA (D. Del.). This request has no time limit. | RFP 34, 212 |
| 330 | Produce Documents and Communications concerning all discovery requests and responses of any type (i.e. interrogatories and responses, document requests and responses, requests to admit and responses, deposition transcripts and video, deposition errata sheets, subpoenas and responses, open records act requests and responses, and any other form of discovery request or response) produced by any party or non-party in the matter of Smartmatic USA Corp. v. Figueroa, et al., C.A. No. 1:19-cv-00175 (W.D. Mich.). | RFP 209, 212 |
| 331 | Produce Documents and Communications concerning the past and current relationship between You and the election companies (a) Election Systems & Software; (b) Hart InterCivic; (c) DOMINION; (d) Unisyn Voting Solutions; (e) Clear Ballot; (f) Hart Verity Voting; (g) Bitza Corporation; (h) SEQUOIA; (i) Konnech Corporation; (j) Premier Election Solutions, Inc. (F/K/A Diebold Election Systems, Inc.); and (k) any other voting technology company. This includes, but is not limited to, agreements or contracts. This request has no time limit. | RFP 31, 32, 33, 37, 81, 91, 92, 93, 96, 129, 138, 146, 154, 185, 195, 196, 197, 235, 293, 314, 325, 326, 327, 356, 414, 587 |
| 332 | Produce Documents and Communications concerning the Committee on Foreign Investment in the United States, including any Documents and Communications relating to investigations. | RFP 21, 22, 23, 41, 338, 438 |
| 333 | Produce Documents and Communications concerning the relationship between You and SEQUOIA, including but not limited to licenses, agreements, or contracts. This request has no time limit. | RFP 33, 41, 235, 293, 325, 326, 327, 331, 333, 334, 335, 336, 338, 339, 340, 414, 580, 587 |
| 334 | Produce Documents and Communications concerning Your decision to sell or divest ownership of SEQUOIA, including any discussion of strategic considerations or the Committee on Foreign Investment in the United States investigation of any PLAINTIFFS. This request has no time limit. | RFP 33, 41, 332, 335, 338, 414, 438, 587 |
| 335 | Produce Documents and Communications from 2006 to 2008 concerning any PLAINTIFFS' strategy or reasoning behind the decision to cease offering its election technology, including without limitation SMARTMATIC SYSTEMS, to customers in the United States upon any PLAINTIFFS' divestment of its ownership in SEQUOIA on or about September 18, 2007. | RFP 33, 41, 258, 331, 334, 414, 587 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|-------|--------------------|-------------------------------|
| 336 | Produce Documents and Communications concerning any regulatory, technical, and/or political challenges or obstacles caused by any PLAINTIFFS' acquisition of SEQUOIA that affected any PLAINTIFFS' attempts to offer, sell, or license its election technology, including without limitation SMARTMATIC SYSTEMS, to customers in the United States from 2005 to 2008. | RFP 33, 41, 332, 333, 334, 335, 338, 414, 587 |
| 337 | Produce Documents and Communications concerning any PLAINTIFFS' strategy or reasoning behind the decision to begin offering its election technology to customers in the United States in 2016 after it ceased offering its election technology, including without limitation SMARTMATIC SYSTEMS, to customers in the United States on or about September 18, 2007. | RFP 371 |
| 338 | Produce Documents and Communications concerning any inquiry or challenge raised by any governmental or administrative body to Your acquisition of SEQUOIA, including but not limited to investigation by the United States Department of Treasury or the United States Department of Justice. This request has no time limit. | RFP 21, 22, 23, 33, 40, 41, 331, 332, 334, 414, 438, 587 |
| 339 | Produce Documents and Communications concerning news or media coverage of Your acquisition of SEQUOIA, including, but not limited to, coverage and commentary by Lou Dobbs on CNN in 2006. | RFP 33, 41, 311, 414 |
| 340 | Produce Documents and Communications concerning statements made by OTHER MEDIA ORGANIZATIONS related to Your acquisition of SEQUOIA, including, but not limited to, the statements made by Lou Dobbs on CNN in 2006. | RFP 33, 41, 311, 339, 414 |
| 341 | Produce Documents and Communications concerning Kaspersky Lab and/or Huawei and any SMARTMATIC SYSTEMS. | RFP 249, 312 |
| 342 | Produce Documents and Communications between You and poll watchers, government officials, technicians, or any Person involved with tabulating ballots or certifying voting results during the 2020 PRESIDENTIAL ELECTION. | RFP 312, 343, 406, 415 |
| 343 | Produce Documents and Communications between You and election officials concerning SMARTMATIC SYSTEMS from January 1, 2016 to the present. | RFP 253, 254, 255, 256, 342, 372, 375, 522 |
| 344 | Produce Documents and Communications between Heider Garcia and the Philippines Representative Teodoro Locsin Jr. concerning Your role in any election in the Philippines, including without limitation any election irregularity. | RFP 18, 345, 346 |
| 345 | Produce Documents and Communications between Heider Garcia and Philippines Representative Rep. Roilo Golez concerning Your role in any election in the Philippines, including without limitation any election irregularity. | RFP 18, 344, 346 |
| 346 | Documents and Communications concerning Heider Garcia's testimony before the Philippines' legislature or any legislative committee, including without limitation his testimony recorded at https://www.facebook.com/SteveTothTX/videos/422710005780841/. | RFP 18, 344, 345 |
| 347 | Produce Documents and Communications of and concerning Heider Garcia's employment history, including without limitation his employment agreement, transfer to other locations, promotions, and departure. | RFP 18, 344, 345, 346 |
| 348 | Produce Documents and Communications of and concerning Ricardo Argana employment history, including without limitation his employment agreement, transfer to other locations, promotions, and departure. | RFP 18, 323, 349, 350 |
| 349 | Produce Documents and Communications of Ricardo Argana concerning his work on SMARTMATIC SYSTEMS, Your data breach, and his subsequent termination, including without limitation any government inquiry, investigation, or lawsuit surrounding his actions, as referenced in http://metronewscentral.net/in-and-around-the-metro/comelec-keeps-smartmatic-as-tech-provider and https://www.dailymotion.com/video/x8a5ls7. | RFP 18, 44, 323, 348, 350, 438 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| 350 | Produce Documents and Communications concerning any government inquiry or investigation concerning Ricardo Argana, as referenced in http://metronewscentral.net/in-and-around-the-metro/comelec-keeps-smartmatic-as-tech-provider and https://www.dailymotion.com/video/x8a5ls7. | RFP 18, 323, 348, 349, 438 |
| 351 | Produce Documents and Communications concerning and with (a) Marlon Garcia; (b) Neil Baniqued; (c) Mauricio Herrera; or (d) Elie Moreno. | RFP 11, 18, 457 |
| 352 | Produce Documents and Communications concerning the 2016 vice presidential elections in the Philippines and any charges brought by the Department of Justice, including without limitation Documents and Communications concerning any civil or criminal investigations and/or prosecution by the government of the Philippines, or any of its agencies, against any PLAINTIFFS or any PLAINTIFFS' employees, contractors, or agents related to the Philippines' 2016 national election. | RFP 18, 438, 457 |
| 353 | Produce Documents produced to the government of the Philippines and/or its agencies in connection with any civil or criminal investigation and/or prosecution against any PLAINTIFFS or any PLAINTIFFS' employees, contractors, or agents related to the Philippines' 2016 national election. | RFP 18, 438, 457 |
| 354 | Produce Documents and Communications produced to any U.S. governmental entity, including without limitation the Department of Justice and/or the Federal Bureau of Investigation, in connection with any criminal or civil investigation and/or prosecution related to any PLAINTIFFS' business operations in the Philippines, how any PLAINTIFFS won a contract to administer the Philippines' election in 2016, and/or whether any conduct by any PLAINTIFFS in the Philippines or elsewhere has violated the Foreign Corrupt Practices Act. | RFP 18, 438, 457 |
| 355 | Produce Documents and Communications concerning any incidents in which a government or other entity has alleged that You engaged in corrupt business practices, including bribery or making monetary payments to government officials in connection with a bid or contract to provide election services, including but not limited to Documents and Communications relating to:<br><br>a) The payment alleged to have been received by Andres Bautista (also known as Andrew Bautista) prior to the 2016 Philippines election, as reported by Ben Smith and Shelby Talcott of Semafor Media on September 25, 2022 (https://medium.com/semafor-media/the-us-is-investigating-smartmatic-over-allegations-of-bribery-in-thephilippines-47980be62b7f); and<br><br>b) Any inquiry or investigation by a government entity into the payment alleged to have been received by Andres Bautista, including but not limited to the U.S. Department of Justice, the U.S. Federal Bureau of Investig tion, the Philippines Department of Justice, and the Philippines House of Representatives. | RFP 18, 357, 398, 404, 438 |
| 356 | Produce Documents and Communications concerning any criticisms of, or concerns about, incorrect election definitions and/or ballot designs used in SMARTMATIC SYSTEMS or DOMINION's software, hardware, and other voting machine technology. | RFP 17, 176, 227, 293 |
| 357 | Produce Documents and Communications concerning the roles and conduct of, and the arrests, detention, and any charges brought against, Jose Gregorio Camargo Castellanos, Joel Gustavo Rodriguez Garcia and/or Salvador Javier Sosa Suarez concerning any election in which any SMARTMATIC SYSTEMS were used, including without limitation the 2022 Kenyan election, any U.S. election, any Venezuelan election, and any election in the Philippines. | RFP 18, 381 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| 358 | Produce Documents and Communications sufficient to show, for Joel Gustavo Rodriguez Garcia, Jose Gregorio Camargo Catellanos, and Salvador Javier Sosa Suarez, each of their: (i) employment history with any PLAINTIFFS; (ii) job titles held and the dates each title was held; (iii) job responsibilities for each job title; (iv) current employment status; (v) nature of any services provided as an independent contractor or in another non-employment role; and (vi) current address. | RFP 11, 18 |
| 359 | Produce all contracts between You and foreign, state, county, and local governments concerning Your use or provision of hardware or software, including without limitation SMARTMATIC SYSTEMS. This includes any contracts executed by You and any foreign, state, county, and local government prior to the 2020 PRESIDENTIAL ELECTION. | RFP 13, 14, 225, 293, 312 |
| 360 | Produce Documents and Communications concerning the purchase, acquisition or integration of electronic voting machine, equipment, or software provided, maintained or supported by You. This request has no time limit. | RFP 13,14, 225, 293, 361 |
| 361 | Produce Documents and Communications concerning the purchase, acquisition, licensing, or use of SMARTMATIC SYSTEMS by any federal, state, county, or foreign government between January 1, 2003 and the present. | RFP 13,14, 225, 293, 360, 312 |
| 362 | Produce Documents and Communications concerning any federal, state, county, or foreign government procurement for the purchase, acquisition, licensing, or use of SMARTMATIC SYSTEMS between January 1, 2003 and the present, including any bid proposals. | RFP 13,14, 225, 293, 360, 361 |
| 363 | Produce all contracts between You, or any related entity, and any federal, state, county, or foreign government or quasi-governmental entity. This request has no time limit. | RFP 13,14, 225, 293, 362, 364 |
| 364 | Produce copies of all extensions or renewals of agreements between You and any governmental entities, including without limitation any federal, state, county, or foreign government or quasi-governmental entity. | RFP 13, 14, 225, 293, 363 |
| 365 | Produce Documents and Communications concerning negotiations of agreements between You and any federal, state, county, or foreign government or quasi-governmental entity, including copies of agreements, bid submissions made by You, test certification and compliance reports and results, and Your efforts to procure such agreements, including any lobbying efforts. | RFP 13, 14, 213, 214, 293, 366, 367, 571 |
| 366 | Produce, without limiting your response to any other requests, any bid submissions made by You to any governmental entities, including without limitation any federal, state, county, or foreign government or quasi-governmental entity, regardless of the outcome of such bid submissions. | RFP 13, 14, 362, 365, 367, 399, 541, |
| 367 | Produce, without limiting your response to any other requests, any Documents reflecting negotiations concerning bid submissions made by You to any governmental entities, including without limitation any federal, state, county, or foreign government or quasi-governmental entity, regardless of the outcome of such bid submissions. | RFP 13, 14, 217, 293, 365, 366 |
| 368 | Produce Documents and Communications concerning and between You and "third-party validators" as referenced in Paragraph 349 of the COMPLAINT. | RFP 24, 67 |
| 369 | Produce all contracts between You and third parties where the contract entitles the THIRD PARTY to receive a percentage of the proceeds from a contract between You and a governmental entity (or otherwise ties the THIRD PARTY's compensation to whether or not You secure a contract with a governmental entity). | RFP 293 |
| 370 | Produce Documents and Communications concerning any negotiations with any U.S. governmental, state, county, or municipal entity for the provision of election technology and services. | RFP 13, 293, 371 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|-------|-------------------|------------------------------|
| 371 | Produce Documents and Communications reflecting the provision by You of technology or services anywhere in the United States. | RFP 13, 361, 362 |
| 372 | Produce Documents and Communications with or concerning the Los Angeles Department of Elections or any employee, official, affiliate, or member thereof. | RFP 20, 82, 343, 522 |
| 373 | Produce Documents and Communications sufficient to identify and show the reason why a State or County in the U.S. did not contract with You, including without limitation, why You were not used, or not contracted with in Nevada, Arizona, Georgia, Pennsylvania, Michigan, Wisconsin, and Texas. This request has no time limitation. | RFP 75, 193, 194, 312, 315, 343, 371 |
| 374 | Produce Documents and Communications sufficient to identify and show the reason why both Utah and Utah's Republican caucus did not continue to use SMARTMATIC SYSTEMS in its elections, as referenced in Paragraph 40 of the COMPLAINT. | RFP 67, 343, 373, 456 |
| 375 | Produce Documents and Communications concerning and between You and officials from China, Russia, Serbia, Cuba, Venezuela, Brazil, the Philippines, Spain, Argentina, Bolivia, Germany, Uganda, or any other country with a history of communism or socialism or history of election irregularity, concerning SMARTMATIC SYSTEMS. | RFP 14, 343, 381, 386 |
| 376 | Produce Documents and Communication concerning and between You and officials from any country referenced in the COMPLAINT, including but not limited to Barbados, Australia, United Kingdom, Panama, Haiti, Belgium, Singapore, Netherlands, Mexico, Ecuador, Brazil, Estonia, Taiwan, the Philippines, Colombia, Argentina, Honduras, Pakistan, Italy, Jamaica, and El Salvador, as referenced in Paragraph 11 of the COMPLAINT. | RFP 14, 67, 86, 293, 343, 406 |
| 377 | Produce Documents and Communications reflecting any decision by a governmental entity not to certify SMARTMATIC SYSTEMS. This request has no time limit. | RFP 24, 25, 482 |
| 378 | Produce Documents and Communications concerning Your relationships or partnerships with companies located in China, Russia, Serbia, Cuba, Venezuela, Brazil, the Philippines, Spain, Argentina, Bolivia, Germany, Uganda, or any other country with a history of communism or socialism or history of election irregularity, including but not limited to any work these foreign companies have performed on SMARTMATIC SYSTEMS. | RFP 14, 37, 293, 381, 388 |
| 379 | Produce Documents and Communications sufficient to identify and show any payment, funding, or grants to You from China, Russia, Serbia Cuba, Venezuela, Brazil, the Philippines, Spain, Argentina, Bolivia, Germany, Uganda, or any other country with a history of communism or socialism or history of election irregularity. | RFP 14, 293, 375, 378, 381 |
| 380 | Produce Documents and Communications concerning or with any officer, employee, contractor, affiliate, representative, or agent of You and (a) Hugo Chavez or anyone working for him; (b) Nicolás Maduro or anyone working for him. | RFP 37, 38, 40, 41 |
| 381 | Produce Documents and Communications concerning Venezuelan Elections, including but not limited to any election irregularity in Venezuela, and the use, procurement, or sale of SMARTMATIC SYSTEMS in Venezuela. | RFP 37, 38, 40, 41 |
| 382 | Produce Documents and Communications concerning the work You performed in 2018 to modernize elections in Venezuela, as is alleged in the COMPLAINT. | RFP 37, 381, 439, 449 |
| 383 | Produce Documents and Communications concerning the reasons why You stopped working on Venezuelan elections in 2017, as is alleged in Paragraph 120 and Paragraph 234 of the COMPLAINT. | RFP 37, 67, 142, 143, 199, 381 |
| 384 | Produce Documents and Communications sufficient to identify and show any payment, funding, or grants received from the Venezuelan government, any Venezuelan official, or any Venezuelan citizen. | RFP 14, 37, 293, 381 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| 385 | Produce Documents and Communications concerning or with (a) Fidel Castro or Raul Castro, their family, or anyone working for them; and (b) Cuban elections. | RFP 156, 375, 378, 379, 386, 388 |
| 386 | Produce Documents and Communications concerning any sale, purchase, negotiation, or agreement between You and China, Russia, Serbia, Cuba, Venezuela, Brazil, the Philippines, Spain, Argentina, Bolivia, Germany, Uganda, or any other country with a history of communism or socialism or history of election irregularity, concerning SMARTMATIC SYSTEMS. | RFP 37, 293, 375, 378, 379, 381 |
| 387 | Produce Documents and Communications sufficient to identify and show any election irregularity in any foreign country where SMARTMATIC SYSTEMS were used. This request has no date limitation. | RFP 13, 26, 44, 343, 503 |
| 388 | Produce Documents and Communications between You and any citizen of China, Serbia, Russia, Cuba, Venezuela, Brazil, the Philippines, Spain, Argentina, Bolivia, Germany, Uganda, or any other country with a history of communism or socialism or history of election irregularity, concerning  SMARTMATIC SYSTEMS. | RFP 293, 378, 381, 388 |
| 389 | Produce Documents and Communications, including videos and transcripts, concerning any interviews of any of the PLAINTIFFS' chairmen or employees in the Philippines. | RFP 18, 375, 392, 396 |
| 390 | Produce Documents and Communications concerning and between You and COMELEC relating to any data breach or election irregularity. | RFP 18, 44, 343, 375, 392 |
| 391 | Produce Documents and Communications concerning claims by Ferdinand Marcos Jr. that he was robbed of the vice presidency because of "Smartmatic" and COMELEC. | RFP 18, 375, 390, 398, 400, 401 |
| 392 | Produce Documents and Communications concerning and between You and the COMELEC Chairman, Saidamen Pangarungan, or any of his officials, employees, or agents, relating to any data breach or election irregularity. | RFP 18, 44, 343, 375, 390 |
| 393 | Produce Documents and Communications concerning and between You and the Republic of the Philippines' Senate Electoral Reforms Committee relating to any data breach or election irregularity. | RFP 18, 44, 343, 375, 390, 392 |
| 394 | Produce Documents and Communications concerning any of Your employees' testimony before the Philippines' legislature or any legislative committee relating to SMARTMATIC SYSTEMS. This request has no time limit. | RFP 18, 44, 343, 375, 390, 392 |
| 395 | Produce Documents and Communications concerning any Philippines government inquiry, subpoena, or request for information concerning SMARTMATIC SYSTEMS. This request has no time limit. | RFP 18, 375, 343 |
| 396 | Produce Documents and Communications concerning and between You and COMELEC Chairman George Garcia, or his officials, employees, or agents, relating to Your role in the Philippines elections. | RFP 18, 343, 375, 395 |
| 397 | Produce Documents and Communications concerning Your data breach, as referenced in https://www.dailymotion.com/video/x8a5ls7, including but not limited to irregular file downloads. | RFP 18, 44, 202 |
| 398 | Produce Documents and Communications concerning and between You and COMELEC relating to the use of SMARTMATIC SYSTEMS in the Philippines 2022 election, or primary leading up to the 2022 election, including without limitation the data breach of SMARTMATIC SYSTEMS and any flaws, vulnerabilities, weaknesses, or bugs in SMARTMATIC SYSTEMS that contributed, or was claimed to contribute, to this data breach. | RFP 18, 44, 397 |
| 399 | Documents and Communications that concern Your bids or proposals to the Philippines government and any concerns expressed over such bids, proposals, or use of SMARTMATIC SYSTEMS in the Philippines. | RFP 18, 343, 375 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| 400 | Produce Documents and Communications concerning any hacking of SMARTMATIC SYSTEMS in the Philippines, as referenced in http://metronewscentral.net/in-and-around-the-metro/comelec-keeps-smartmatic-as-tech-provider, including without limitation the hacker group XSOS. | RFP 18, 44, 401 |
| 401 | Produce Documents and Communications concerning the hacking of COMELEC in 2016, as referenced in https://www.dailymotion.com/video/x8a5ls7. | RFP 18, 44, 400 |
| 402 | Produce Documents and Communications concerning the article published by the New York Times on September 9, 2009 titled "The Business of Voting Machines," https://www.nytimes.com/2009/09/10/opinion/10thu2.html. | RFP 42, 43 |
| 403 | Produce Documents and Communications sufficient to identify and show the relationship between You and (a) Jarltech International; (b) Ed520 Enterprise; and (c) H Y N D International. This includes without limitation any agreements, licenses, or contracts. | RFP 293 |
| 404 | Produce Documents and Communications in the possession, custody, or control of any of the PLAINTIFFS or any of their current or former attorneys that were sent by or received from Andres Bautista. | RFP 18, 355 |
| 405 | Produce Documents and Communications sufficient to identify any consultants to whom any of the PLAINTIFFS paid at least $750,000 in connection with the 2004 Venezuelan elections. | RFP 37, 381 |
| 406 | Produce Documents and Communications between You and any THIRD PARTY concerning any of the SMARTMATIC SYSTEMS and the 2020 PRESIDENTIAL ELECTION. | RFP 68, 312, 343 |
| 407 | Produce Documents and Communications sufficient to identify and show any attempt by You to request a correction or retraction by OAN relating to any statement described in the COMPLAINT. | RFP 4, 5, 6, 42, 43, 68, 72, 101, 104, 105, 312, 407 |
| 408 | Produce Documents and Communications concerning or with any federal, state, county, city, or foreign country law enforcement agency concerning voting machine equipment vulnerability or voting machine software vulnerability, regardless of the manufacturer, between January 1, 2010 and the present. | RFP 26, 68, 343, 406, 486 |
| 409 | Produce Documents and Communications concerning or with any legislative committee, sub-committee, task force, or other federal or state legislative body concerning voting machine equipment vulnerability or voting machine software vulnerability, regardless of the manufacturer, between January 1, 2010 and the present. | RFP 26, 68, 343, 406, 486 |
| 410 | Produce Documents and Communications concerning or with any federal, state or local elections official concerning voting machine equipment vulnerability or voting machine software vulnerability, regardless of the voting machine manufacturer, between January 1, 2010 and the present. | RFP 26, 68, 406, 486 |
| 411 | Produce Documents and Communications concerning or between You and the U.S. Election Assistance Commission ("EAC") relating to electronic voting machines, equipment, or services. This request has no time limit. | RFP 22, 68, 100, 312, 315, 406, 412, 493, 513 |
| 412 | Produce all Documents concerning the U.S. Election Assistance Commission ("EAC") and National Institute of Standards and Technology's ("NIST") hardware and software testing, the EAC's Voluntary Voting System Guidelines ("VVSG"), logic and accuracy testing, and updates to hardware or software after EAC certification. This request has no time limit. | RFP 20, 24, 22, 100, 312, 315, 406, 411, 493, 513 |
| 413 | Produce Documents and Communications concerning any evaluations or testing conducted by independent testing laboratories accredited by the EAC on any SMARTMATIC SYSTEMS. This request has no time limit. | RFP 20, 24, 22, 100, 312, 315, 406, 411, 493, 513 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| 414 | Produce Documents and Communications concerning and between You and (a) DOMINION; (b) Election Systems & Software, Inc.; (c) Hart Intercivic, Inc.; (d) Unisyn Voting Solutions; (e) Clear Ballot; (f) Hart Verity Voting; (g) Bitza Corporation; (h) SEQUOIA; (i) Konnech Corporation; (j) Premier Election Solutions, Inc. (F/K/A Diebold Election Systems, Inc.); or (k) any other voting technology company. | RFP 33, 41, 37, 91, 92, 93, 235, 325, 326, 327, 331, 332, 333, 334, 335, 336, 338, 339, 340, 587 |
| 415 | Produce Documents and Communications exchanged between You and any state, county, or local governmental entity relating to the 2020 PRESIDENTIAL ELECTION. | RFP 68, 312, 343, 406 |
| 416 | Produce Documents and Communications exchanged between You and employees of the State of California or its political subdivisions since January 1, 2018 relating to the 2020 PRESIDENTIAL ELECTION. | RFP 312, 343, 406, 415 |
| 417 | Produce Documents and Communications exchanged between You and employees of the State of California or its political subdivisions since January 1, 2020 that reference OAN. | RFP 68, 312, 343, 406, 415, 416 |
| 418 | Produce Documents and Communications sent to, or received from, ABC, CBS, NBC, CNN, MSNBC, the New York Times, Washington Post, or any OTHER MEDIA ORGANIZATIONS or other media, social media or broadcast source relating to the 2020 PRESIDENTIAL ELECTION. | RFP 311, 312, 406, 419 |
| 419 | Produce Documents and Communications sent to, or received from, any OTHER MEDIA ORGANIZATIONS or other media, social media or broadcast source relating to voting machines, hacking of voting machines, voting machine security or vulnerabilities, or any other issue concerning voting machines and election integrity. This request has no time limit. | RFP 68, 311, 406, 418 |
| 420 | Produce Documents and Communications sent to, or received from, the Republican or Democratic National Committees, Republican or Democratic Parties, any political candidate, any political campaign, any Political Action Committee or any other public interest funder relating to voting machines, hacking of voting machines, voting machine security or vulnerabilities, or any other issue concerning voting machines and election integrity. This request has no time limit. | RFP 68, 406 |
| 421 | Produce Documents and Communications between You and individuals responsible for tabulating votes, certifying election results, or involved with the use, maintenance, or support of SMARTMATIC SYSTEMS during the 2020 PRESIDENTIAL ELECTION, including poll watchers, county officials, non-partisan groups, and those in any county in which a lawsuit was filed against You. | RFP 68, 73, 312, 406 |
| 422 | Produce Documents and Communications sent to, or received from, individuals responsible for tabulating votes, certifying election results, or involved with the use, maintenance, or support of SMARTMATIC SYSTEMS, including poll watchers, county officials, and non-partisan, including those in any county in which a lawsuit was filed against You. This request has no time limit. | RFP 68, 406 |
| 423 | Produce Documents and Communications sent to, or received from, the Department of Justice, Federal Bureau of Investigation, and any local, state and federal regulatory, investigative, legislative or judicial authority after January 1, 2003. | RFP 22, 68, 406, 438 |
| 424 | Produce Documents and Communications since June 1, 2020, between You or anyone acting on Your behalf (e.g., agents, representatives, employees, independent contractors, spokespersons, related companies, and shareholders) and any present or former employee, contractor, or contributor of Fox News Corporation or Fox News Network. | RFP 311 |
| 425 | Produce Documents and Communications concerning the changes in vote counts in the 2014 and 2018 Brazilian elections. | RFP 67, 375, 376, 378, 445, 454, 458 |
| 426 | Produce Documents and Communications concerning any of the PLAINTIFFS and Frankfurt, Germany. | RFP 375, 378, 379, 386, 388 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|-------|--------------------|-------------------------------|
| 427 | Documents and Communications concerning any of the PLAINTIFFS and Barcelona, Spain. | RFP 375, 378, 379, 386, 388 |
| 428 | Produce Documents that You contend support, establish, or demonstrate that the COMPLAINED OF BROADCASTS and/or the COMPLAINED OF STATEMENTS are not literally or substantially true, or imply false statements of fact. There is no time limit on this Request. | RFP 42, 43, 104, 105, 429, 430, 431 |
| 429 | Produce Documents and Communications concerning Your claim for Defamation for False Statements and Implications. | RFP 42, 43, 428, 430, 431 |
| 430 | Produce Documents and Communications concerning Your claim for Injurious Falsehood for False Statements and Implications about Your Election Technology and Software. | RFP 42, 43, 428, 429, 431 |
| 431 | Produce Documents and Communications concerning Your assertion that the COMPLAINED OF STATEMENTS are false. | RFP 42, 43, 104, 105, 428, 429, 430 |
| 432 | Produce Documents and Communications concerning the testing, analysis, reporting, certification, decertification, or the refusal to certify equipment or software provided, maintained or supported by You, including without limitation SMARTMATIC SYSTEMS. This request has no time limit. | RFP 20, 24, 25, 412, 413 |
| 433 | Produce Documents and Communications concerning pre-2020 PRESIDENTIAL ELECTION or post-2020 PRESIDENTIAL ELECTION studies, reporting, or analysis of SYSTEMS provided, maintained, or supported by You. | RFP 17, 73, 176, 227, 312, 479 |
| 434 | Produce Documents and Communications concerning any federal, state, county, or foreign government testing, auditing, or certification results associated with SMARTMATIC SYSTEMS. This request has no time limit. | RFP 19, 20, 24, 25, 412, 413 |
| 435 | Produce Documents and Communications concerning complaints or criticisms of You during the 2020 PRESIDENTIAL ELECTION, including any legal actions filed by or against You. | RFP 17, 62, 176, 227, 293, 312 |
| 436 | Produce Documents and Communications concerning the performance of SYSTEMS provided, maintained, or supported by You in the 2020 PRESIDENTIAL ELECTION. | RFP 17, 62, 176, 227, 293, 312 |
| 437 | Produce Documents and Communications concerning any criticisms of, or concerns about, the use of equipment or software provided, maintained or supported by You between January 1, 2003 and the present, including without limitation SMARTMATIC SYSTEMS. | RFP 17, 62, 176, 227, 293, 312 |
| 438 | Produce Documents and Communications concerning any investigations, whether formal or informal, relating to the use of equipment or software provided, maintained or supported by You between January 1, 2003 and the present, including without limitation SMARTMATIC SYSTEMS. | RFP 28, 30, 40, 41, 93 |
| 439 | Produce Documents and Communications, including agreements, investigation reports, audits, or complaints, concerning Your use or provision of hardware or software, including without limitation SMARTMATIC SYSTEMS, for the 2004 Venezuela election, as alleged in Paragraph 29 of the COMPLAINT. | RFP 17, 37, 176, 227, 293, 381, 382, 449 |
| 440 | Produce Documents and Communications, including agreements, investigation reports, audits, or complaints, concerning "Smartmatic's election technology and software [] used in multiple U.S. states as well as Washington, D.C." from 2005 to 2007, as alleged in Paragraph 30 of the COMPLAINT. | RFP 67, 293, 371, 438 |
| 441 | Produce Documents and Communications, including agreements, investigation reports, audits, or complaints, concerning Your use or provision of hardware or software, including without limitation SMARTMATIC SYSTEMS, for the 2007 Curacao election, as alleged in Paragraph 31 of the COMPLAINT. | RFP 17, 176, 227, 293, 438 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|-------|--------------------|-----------------------------|
| 442 | Produce Documents and Communications, including agreements, investigation reports, audits, or complaints, concerning Your use or provision of hardware or software, including without limitation SMARTMATIC SYSTEMS, for the 2008 Philippines election, as alleged in Paragraph 32 of the COMPLAINT. | RFP 17, 176, 227, 293, 438 |
| 443 | Produce Documents and Communications, including agreements, investigation reports, audits, or complaints, concerning Your use or provision of hardware or software, including without limitation SMARTMATIC SYSTEMS, for the 2010 Philippines election, as alleged in Paragraph 34 of the COMPLAINT. | RFP 17, 176, 227, 293, 438 |
| 444 | Produce Documents and Communications, including agreements, investigation reports, audits, or complaints, concerning the United Nations Development Program's selection of You "to supply biometric technology and associated services in order to upgrade Zambia's voter registration," as alleged in Paragraph 34 of the COMPLAINT. | RFP 67, 293, 438 |
| 445 | Produce Documents and Communications, including agreements, investigation reports, audits, or complaints, concerning Your use or provision of hardware or software, including without limitation SMARTMATIC SYSTEMS, for the 2012 "election services" for Brazil, as alleged in Paragraph 36 of the COMPLAINT. | RFP 17, 176, 227, 293, 438 |
| 446 | Produce Documents and Communications, including agreements, investigation reports, audits, or complaints, concerning Your use or provision of hardware or software, including without limitation SMARTMATIC SYSTEMS, for the 2012 Belgium automated election, as alleged in Paragraph 36 of the COMPLAINT. | RFP 293, 438, 447 |
| 447 | Produce Documents and Communications, including agreements, investigation reports, audits, or complaints, concerning the 2012 "contract to design and manufacture [Belgium's] election hardware and software for the next 15 years," as alleged in Paragraph 36 of the COMPLAINT, including Documents and Communications concerning SMARTMATIC SYSTEMS, for the term of the contract. | RFP 293, 438, 446 |
| 448 | Produce Documents and Communications, including agreements, investigation reports, audits, or complaints, concerning Your use or provision of hardware or software, including without limitation SMARTMATIC SYSTEMS, for the 2013 Philippines election, as alleged in Paragraph 37 of the COMPLAINT. | RFP 18, 293, 438 |
| 449 | Produce Documents and Communications, including agreements, investigation reports, audits, or complaints, concerning Your use or provision of hardware or software, including without limitation SMARTMATIC SYSTEMS, for the 2013 Venezuela election, as alleged in Paragraph 37 of the COMPLAINT. | RFP 37, 293, 381, 438, 439, 449 |
| 450 | Produce Documents and Communications concerning Your assertion that "[a]ll parties audited the voting platform 15 times," as alleged in Paragraph 37 of the COMPLAINT. | RFP 19, 20, 42, 43, 67, 73, 191, 201, 434, 440, 450, 494, 495, 502, 512 |
| 451 | Produce Documents and Communications, including agreements, investigation reports, audits, criticisms, or complaints, concerning You or any SMARTMATIC SYSTEMS, relating to the 2014 Ecuador election referenced in Paragraph 38 of the COMPLAINT. | RFP 17, 62, 176, 227, 293 |
| 452 | Produce Documents and Communications, including agreements, investigation reports, audits, criticisms, or complaints, concerning You or any SMARTMATIC SYSTEMS, relating to the 2014 Belgium European Union Parliamentary election referenced in Paragraph 38 of the COMPLAINT. | RFP 293, 446, 447, 438 |
| 453 | Produce Documents and Communications, including agreements, investigation reports, audits, criticisms, or complaints, concerning You or any SMARTMATIC SYSTEMS, relating to the 2014 Bulgaria election referenced in Paragraph 38 of the COMPLAINT. | RFP 17, 176, 227, 293, 438 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|-------|--------------------|-----------------------------|
| 454 | Produce Documents and Communications, including agreements, investigation reports, audits, criticisms, or complaints, concerning You or any SMARTMATIC SYSTEMS, relating to the 2014 Brazil election referenced in Paragraph 38 of the COMPLAINT. | RFP 17, 176, 227, 293, 438 |
| 455 | Produce Documents and Communications, including agreements, investigation reports, audits, criticisms, or complaints, concerning You or any SMARTMATIC SYSTEMS, relating to the 2015 Argentina election referenced in Paragraph 39 of the COMPLAINT. | RFP 17, 176, 227, 293, 438 |
| 456 | Produce Documents and Communications, including agreements, investigation reports, audits, criticisms, or complaints, concerning You or any SMARTMATIC SYSTEMS, relating to the 2016 Utah Republican caucus referenced in Paragraph 40 of the COMPLAINT. | RFP 17, 176, 227, 293, 438 |
| 457 | Produce Documents and Communications, including agreements, investigation reports, audits, criticisms, or complaints, concerning You or any SMARTMATIC SYSTEMS, relating to the 2016 Philippines election referenced in Paragraph 40 of the COMPLAINT. | RFP 17, 176, 227, 293, 438 |
| 458 | Produce Documents and Communications, including agreements, investigation reports, audits, criticisms, or complaints, concerning You or any SMARTMATIC SYSTEMS, relating to the 2016 Brazil election referenced in Paragraph 40 of the COMPLAINT. | RFP 17, 176, 227, 293, 438 |
| 459 | Produce Documents and Communications, including agreements, investigation reports, audits, criticisms, or complaints, concerning You or any SMARTMATIC SYSTEMS, relating to the 2016 Oman election referenced in Paragraph 40 of the COMPLAINT. | RFP 17, 176, 227, 293, 438 |
| 460 | Produce Documents and Communications, including agreements, investigation reports, audits, criticisms, or complaints, concerning You or any SMARTMATIC SYSTEMS, relating to the 2017 Italy election referenced in Paragraph 41 of the COMPLAINT. | RFP 17, 176, 227, 293, 438 |
| 461 | Produce Documents and Communications, including agreements, investigation reports, audits, criticisms, or complaints, concerning You or any SMARTMATIC SYSTEMS, relating to the 2017 Armenia election referenced in Paragraph 41 of the COMPLAINT. | RFP 17, 176, 227, 293, 438 |
| 462 | Produce Documents and Communications, including agreements, investigation reports, audits, criticisms, or complaints, concerning You or any SMARTMATIC SYSTEMS, relating to the 2017 Estonia election referenced in Paragraph 41 of the COMPLAINT. | RFP 17, 176, 227, 293, 438 |
| 463 | Produce Documents and Communications, including agreements, investigation reports, audits, criticisms, or complaints, concerning You or any SMARTMATIC SYSTEMS, relating to the 2018 Philippines election referenced in Paragraph 42 of the COMPLAINT. | RFP 17, 18, 176, 227, 293, 438 |
| 464 | Produce Documents and Communications, including agreements, investigation reports, audits, criticisms, or complaints, concerning You or any SMARTMATIC SYSTEMS, relating to the 2018 Norway referendum referenced in Paragraph 42 of the COMPLAINT. | RFP 17, 176, 227, 293, 438 |
| 465 | Produce Documents and Communications, including agreements, investigation reports, audits, criticisms, or complaints, concerning You or any SMARTMATIC SYSTEMS, relating to the 2018 Belgium election referenced in Paragraph 42 of the COMPLAINT. | RFP 17, 176, 227, 293, 438 |
| 466 | Produce Documents and Communications, including agreements, investigation reports, audits, criticisms, or complaints, concerning You or any SMARTMATIC SYSTEMS, relating to the 2019 Estonia election referenced in Paragraph 43 of the COMPLAINT. | RFP 17, 176, 227, 293, 438 |
| 467 | Produce Documents and Communications, including agreements, investigation reports, audits, criticisms, or complaints, concerning You or any SMARTMATIC SYSTEMS, relating to the 2019 European Parliament elections referenced in Paragraph 43 of the COMPLAINT. | RFP 20, 67, 293, 438 |
| 468 | Produce Documents and Communications, including agreements, investigation reports, audits, criticisms, or complaints, concerning You or | RFP 17, 18, 176, 227, 293, 438 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|-------|-------------------|-------------------------------|
| | any SMARTMATIC SYSTEMS, relating to the 2019 Philippines election referenced in Paragraph 43 of the COMPLAINT. | |
| 469 | Produce Documents and Communications relating to claims made as to the effectiveness, security, or accuracy of SMARTMATIC SYSTEMS used in Kenya's 2016 general election, including without limitation claims made in any petitions filed with Kenya's Supreme Court contesting the outcome of that election. | RFP 17, 176, 227, 293, 438 |
| 470 | Produce Documents and Communications sent to, or received from, You concerning tabulation errors when Your software or hardware was used during any election, including without limitation SMARTMATIC SYSTEMS. This request has no time limit. | RFP 26, 477 |
| 471 | Produce Documents and Communications concerning "Ranked Choice Voting," "RCV Method," or any algorithms that can be used to alter, manipulate, change, correct or tabulate votes or election data. This request has no time limit. | RFP 506, 507, 508 |
| 472 | Produce Documents and Communications reflecting support and maintenance efforts concerning Your voting systems, including its hardware and software, since January 1, 2003, including without limitation SMARTMATIC SYSTEMS. | RFP 76, 228, 230 |
| 473 | Produce Documents and Communications that show that Your equipment or software have the ability, or had the ability at any time, to connect to the internet by any method, including without limitation SMARTMATIC SYSTEMS. This request has no time limit. | RFP 42, 474, 498 |
| 474 | Produce Documents and Communications that show how Your equipment or software is, or can be, connected to computer networks or other computers, hardware, or the internet, including Documents and Communications showing that Your voting machines, including without limitation SMARTMATIC SYSTEMS, are connected to one or more other computer(s). | RFP 42, 473, 498 |
| 475 | Produce Documents and Communications and any other material saved to a USB thumb drive used by any of Your technicians or contractors during the 2020 PRESIDENTIAL ELECTION. | RFP 230, 312 |
| 476 | Produce Documents and Communications sufficient to identify Your technicians, contractors, employees, or agents during the 2020 PRESIDENTIAL ELECTION. | RFP 8, 9, 76, 79, 299, 312, 467 |
| 477 | Produce Documents and Communications concerning the any error, potential error, mistake, flaw, criticism, or concern relating to the tabulation of votes in the 2020 PRESIDENTIAL ELECTION. | RFP 19, 42, 73, 312, 496 |
| 478 | Produce Documents and Communications concerning any inaccurate votes or vote tabulations in the use of SMARTMATIC SYSTEMS in the 2020 PRESIDENTIAL ELECTION. | RFP 19, 26, 42, 73, 312, 496 |
| 479 | Produce Documents and Communications concerning pre-2020 PRESIDENTIAL ELECTION or post-2020 PRESIDENTIAL ELECTION analysis, studies, or reports concerning electronic voting machines, equipment, or software between January 1, 2003 and the present. | RFP 17, 26, 42, 73, 176, 227, 443 |
| 480 | Produce Documents and Communications concerning the sourcing of components, parts or equipment for the provision of voting equipment or services and the sourcing of programming services for the provision of voting software services. This request includes but is not limited to documents and communications relating to the sourcing of parts and software programming by You. This request has no time limit. | RFP 18, 79, 292, 293, 312, 480 |
| 481 | Produce Documents sufficient to show the database, storage device or cloud, or website where information concerning bugs or vulnerabilities associated with any of Your voting machine hardware or software, including without limitation SMARTMATIC SYSTEMS, was or is stored, between January 1, 2003 and the present. | RFP 18, 224, 234 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| 482 | Produce any test certification and compliance reports and results of any of the SMARTMATIC SYSTEMS provided by or to any governmental entities, including without limitation states and counties. | RFP 20, 24, 42, 365, 412 |
| 483 | Produce Documents sufficient to show the words used by You to identify and track bugs or potential bugs concerning Your voting machine hardware or software between January 1, 2003 and the present. | RFP 125, 319, 321, 322, 323, 398, 481, 496, 520, 523 |
| 484 | Produce Documents sufficient to show the words used by You to identify and track security issues concerning Your voting machines or software, including without limitation, SMARTMATIC SYSTEMS, between January 1, 2003 and the present. | RFP 26, 42, 486, 497 |
| 485 | Produce Documents and Communications sufficient to show any actual or potential error, bug, flaw, mistake, defect, or fault in any of Your voting machine hardware or software, or components thereof, that causes or has ever caused SMARTMATIC SYSTEMS to produce an incorrect or unexpected result, or to behave in unintended ways. | RFP 26, 42, 73, 312, 486, 496 |
| 486 | Produce Documents and Communications concerning any potential or existing security vulnerabilities or security flaws that have been reported, identified, discovered, or are known concerning any voting systems, scanners, products, software, or equipment manufactured, sold, leased, maintained, serviced, or supported by You that were used for the 2020 PRESIDENTIAL ELECTION. | RFP 26, 44, 73, 312, 485 |
| 487 | Produce Documents and Communications concerning any attempts to hack any voting systems, scanners, products, software, or equipment manufactured, sold, leased, maintained, serviced, or supported by You that were used for the 2020 PRESIDENTIAL ELECTION. | RFP 26, 42, 44, 73, 312 |
| 488 | Produce Documents and Communications concerning any votes that may have been compromised in the 2020 PRESIDENTIAL ELECTION relating to any voting systems, scanners, products, software, or equipment manufactured, sold, leased, maintained, serviced, or supported by You. | RFP 26, 42, 44, 73, 312 |
| 489 | Produce Documents and Communications concerning the ability or inability of any voting systems manufactured, sold, leased, maintained, serviced, or supported by You and used for the 2020 PRESIDENTIAL ELECTION, including without limitation SMARTMATIC SYSTEMS, to connect to Wifi, a computer network, or the Internet. | RFP 42, 312, 473, 474, 490 |
| 490 | Produce Documents and Communications concerning the ability or inability of any ballot marking devices, tabulators, scanners, or other devices manufactured, sold, leased, maintained, serviced, or supported by You to connect to Wifi, a computer network, or the Internet. This request has no time limit. | RFP 42, 73, 312, 473, 474, 489 |
| 491 | Produce Documents and Communications concerning any vulnerability disclosures made to the Cybersecurity and Infrastructure Security Agency about Your software or hardware, including without limitation SMARTMATIC SYSTEMS. This request has no time limit. | RFP 21, 22, 42, 100, 312 |
| 492 | Produce Documents and Communications concerning any of Your voting machines or systems that were reset on or about November 3, 2020 because of an unauthorized access event. | RFP 26, 42, 44, 73, 312 |
| 493 | Produce Documents and Communications concerning any anomalies reported to You or the U.S. Election Assistance Commission concerning SMARTMATIC SYSTEMS that were made, serviced, owned, or maintained by You between 2003 and the present. | RFP 22, 68, 100, 312, 315, 406, 412, 493, 513 |
| 494 | Produce Documents and Communications reflecting any effort to audit or verify the voting results in the 2020 PRESIDENTIAL ELECTION. | RFP 19, 20, 42, 43, 67, 73, 191, 201, 312, 434, 440, 450, 494, 495, 502, 512 |
| 495 | Produce Documents and Communications concerning all post-election audits or any other actions conducted by third-parties to verify that the votes counted by SMARTMATIC SYSTEMS accurately recorded the intended preference of participating voters. | RFP 19, 20, 42, 43, 67, 73, 191, 201, 312, 434, 440, 450, 494, 495, 502, 512 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| 496 | Produce Documents and Communications concerning any actual or potential bugs, errors, problems, glitches, flaws, vulnerabilities, BACKDOORs, weaknesses, or complaints concerning SMARTMATIC SYSTEMS since January 1, 2003. | RFP 20, 42, 82, 125, 231, 319, 321, 343, 481, 483, 496, 514, 515, 516, 518, 520, 523 |
| 497 | Produce Documents and Communications concerning all cybersecurity breaches of SMARTMATIC SYSTEMS, including without limitation software, hardware, or other components, during any foreign or domestic election since January 1, 2003, including but not limited to Documents sufficient to show the date of the breach, the nature of the breach, the specific software or component breached, the quantity and location of the voting equipment affected by the breach, and any remedial actions taken by any PLAINTIFFS to correct the breach. | RFP 44, 175, 497 |
| 498 | Produce Documents and Communications sufficient to show any actual or potential error, bug, flaw, mistake, defect, or fault in any SMARTMATIC SYSTEMS. | RFP 20, 42, 82, 125, 231, 319, 321, 343, 481, 483, 496, 514, 515, 516, 518, 520, 523 |
| 499 | Produce Documents and Communications concerning any potential or existing security vulnerabilities or flaws that have been reported, identified, discovered, or are known by You concerning any SMARTMATIC SYSTEMS that were used in the 2020 PRESIDENTIAL ELECTION. | RFP 18, 19, 26, 42, 312 |
| 500 | Produce Documents and Communications concerning any actual or potential security error, bug, flaw, mistake, or fault detected in any SMARTMATIC SYSTEMS. | RFP 20, 42, 82, 125, 231, 319, 321, 343, 481, 483, 496, 514, 515, 516, 518, 520, 523 |
| 501 | Produce Documents and Communications concerning performance reports of SMARTMATIC SYSTEMS. | RFP 42, 241, 312, 436 |
| 502 | Produce Documents and Communications concerning weaknesses in Your "auditability (sic) of election results,"   as alleged in Paragraph 211 of the COMPLAINT. | RFP 19, 20, 42, 43, 67, 73, 191, 201, 434, 440, 450, 494, 495, 502, 512 |
| 503 | Produce Documents and Communications concerning election irregularities where SMARTMATIC SYSTEMS were used. This request has no time or geographic limit. | RFP 42, 125, 319, 321, 322, 323, 387, 523 |
| 504 | Produce Documents and Communications concerning complaints or criticisms of You concerning Your operations or conduct during any U.S. Presidential Election, including any legal actions filed by or against You. | RFP 42, 62, 244, 245, 312, 356, 371 |
| 505 | Produce Documents and Communications relating to any criticisms or concerns about the use of equipment or software provided, maintained, or supported by You between January 2003 and the present. | RFP 42, 62, 244, 245, 312, 356, 371 |
| 506 | Produce Documents and Communications concerning any allegation of fraud, malfeasance, or manipulation of SMARTMATIC SYSTEMS. This request has no time or geographic limitation. | RFP 42, 269, 507, 508 |
| 507 | Produce Documents and Communications in Your possession, custody or control concerning fraud, cheating, manipulation, lying, stealing, deceit, rigging, tampering, meddling or illegal conduct in any election. | RFP 42, 269, 506, 508 |
| 508 | Produce Documents and Communications in Your possession, custody or control referencing one or more votes in an election having been switched, changed, tainted, rigged, manipulated, lost, fabricated, created, destroyed, hidden, altered or stolen. | RFP 42, 269, 507, 506 |
| 509 | Produce Documents and Communications in Your possession, custody or control concerning:  (i) either or both of former President Donald J. Trump or Hillary Clinton; (ii) the 2016 U.S. presidential election; and (iii) fraud, cheating, manipulation, lying, stealing, deceit, rigging, tampering, meddling or illegal conduct in the 2016 U.S. presidential election.  This request seeks documents dated from September 1, 2016 to the present. | RFP 42, 43, 309, 310, 510 |
| 510 | Produce Documents and Communications in Your possession, custody or control stating or indicating that former President Donald J. Trump had not won the 2016 U.S. presidential election and/or was not the legitimate winner of, or the legitimate president following, the 2016 U.S. presidential election. This request seeks documents dated from November 1, 2016 to the present. | RFP 42, 43, 309, 310, 509 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| 511 | Produce Documents and Communications concerning any votes that may have been compromised in any U.S. election where SMARTMATIC SYSTEMS was involved. | RFP 26, 44, 42, 269, 312, 371 |
| 512 | Produce Documents and Communications sufficient to show any deficiencies or weaknesses in Your ability to audit Your technology. | RFP 19, 20, 42, 43, 67, 73, 191, 201, 434, 440, 450, 494, 495, 502, 512 |
| 513 | Produce Documents and Communications concerning evidence, and Your confirmation of or investigation into the absence of evidence, that You deleted, lost, changed, or compromised votes in connection with the 2020 PRESIDENTIAL ELECTION or any other election, including all sources for such evidence. This includes statements from the Trump Administration Cybersecurity and Infrastructure Security Agency, the Trump Administration Election Assistance Commission, the Michigan Secretary of State, the Georgia Secretary of State, the Maricopa County Board of Supervisors, then-United States Attorney General William Barr, Chris Christie, any election security expert, and You. This request has no time limit. | RFP 18, 73, 312, 371, 438 |
| 514 | Produce Documents and Communications, including negotiations and agreements, concerning Los Angeles County's selection of SMARTMATIC USA in June 2018 to "manufacture and implement a new election system for the county," as alleged in Paragraph 48 of the COMPLAINT. | RFP 20, 82, 293, 312, 343, 515, 516,517 |
| 515 | Produce Documents and Communications concerning the design, research, development, engineering, manufacturing, testing, or evaluation of the "custom-designed BMDs . . . as part of [Los Angeles County's] VSAP initiative," as alleged in Paragraph 53 of the COMPLAINT. | RFP 20, 82, 231, 312, 343, 514, 516, 517 |
| 516 | Produce Documents and Communications concerning the "systems integration of the BMDs," as alleged in Paragraph 54 of the COMPLAINT, including without limitation Documents and Communications sufficient to evidence guidelines, policies, procedures, requirements, standards, or testing concerning the "systems integration of the BMDs." | RFP 20, 82, 231, 312, 343, 514, 515 |
| 517 | Produce Documents and Communications concerning the technology and services SMARTMATIC USA provided to Los Angeles County under the VSAP initiative, as enumerated in Paragraph 55 of the COMPLAINT, including without limitation Documents and Communications sufficient to evidence guidelines, policies, procedures, requirements, standards, or testing concerning the technology and services alleged in Paragraph 55 of the COMPLAINT. | RFP 20, 82, 231, 312, 343, 514, 515, 516, 518 |
| 518 | Produce Documents and Communications concerning complaints or criticisms of You relating to the technology and services SMARTMATIC USA provided to Los Angeles County under the VSAP initiative, as enumerated in Paragraph 55 of the COMPLAINT. | RFP 20, 82, 62, 312, 356, 435, 437, 504, 505, 517, 524 |
| 519 | Produce Documents and Communications concerning Your use or provision of hardware or software, including without limitation SMARTMATIC SYSTEMS, for the March 3, 2020 California presidential primary election in Los Angeles County, as alleged in Paragraph 56 of the COMPLAINT. | RFP 20, 82, 204, 205, 312, 517 |
| 520 | Produce Documents and Communications concerning the "19,445 BMDs deployed for the [November general] election" compared to the total "31,000 BMDs manufactured by Smartmatic," as alleged in Paragraph 58 of the COMPLAINT, including without limitation Documents and Communications sufficient to evidence bugs, problems, glitches, or other issues precluding deployment of any BMDs. | RFP 20, 82, 125, 231, 319, 312, 321, 343, 481, 483, 496, 514, 515, 516, 518, 523 |
| 521 | Produce Documents and Communications concerning the software used for the SMARTMATIC USA system referred to as "VSAP 2:1" used in Los Angeles County, California during the 2020 election, including  user | RFP 20, 82, 62, 231, 232, 312, 343, 514, 515, 516, 518 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| | or support manuals, source code, user instructions, and any other material concerning the operation of VSAP 2:1. | |
| 522 | Produce Documents and Communications exchanged between You, on the one hand, and Los Angeles County, the California Secretary of State, or any State, County, or Local government official, on the other hand, concerning the VSAP 2:1 system between January 1, 2016 and the present. | RFP 20, 82, 253, 254, 312, 343, 372 |
| 523 | Produce Documents and Communications concerning any potential bugs, glitches, software flaws, hardware flaws, or irregularities relating to any of the SMARTMATIC SYSTEMS used in Los Angeles County in 2020. | RFP 20, 82, 125, 231, 319, 321, 343, 481, 483, 496, 514, 515, 516, 518, 520, 523 |
| 524 | Produce Documents and Communications concerning any criticisms of any of the SMARTMATIC SYSTEMS used in Los Angeles County in 2020. | RFP 20, 62, 82, 312, 356, 435, 437, 504, 505, 517, 524 |
| 525 | Produce Documents and Communications concerning Your assertion that OAN "acted with fault, at least negligence, and with actual malice," in publishing the COMPLAINED OF BROADCASTS or COMPLAINED OF STATEMENTS, as alleged at Paragraph 462 of the COMPLAINT. | RFP 42, 43, 67, 312, 526, 527, 528 |
| 526 | Produce Documents and Communications concerning Your assertion that OAN published the COMPLAINED OF BROADCASTS or COMPLAINED OF STATEMENTS with "hatred, ill-will or spite, and/or for improper motives," as alleged at Paragraph 463 of the COMPLAINT. | RFP 42, 43, 67, 312, 525, 527, 528 |
| 527 | Produce Documents and Communications concerning Your assertion that OAN did not have any source or evidence for the statements set forth at Paragraphs 242–249 of the COMPLAINT. | RFP 42, 43, 67, 312, 525, 526 |
| 528 | Produce Documents and Communications concerning Your assertion that OAN "purposefully avoided learning the truth about Smartmatic and its election technology and software," as alleged at Paragraphs 250–254 of the COMPLAINT. | RFP 42, 43, 67, 312, 525, 526 |
| 529 | Produce Documents and Communications concerning the allegation that "[OAN] did not interview anyone with personal knowledge of Your involvement in the 2020 U.S. election or the allegations being made about Smartmatic," and that "[OAN] purposefully avoided inviting guests with personal knowledge" as alleged in Paragraph 253 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67, 104, 105, 312, 527 |
| 530 | Produce Documents and Communications concerning the allegation that "[OAN] possessed and/or had access to information that showed its statements were false," as alleged in Paragraph 255 of the COMPLAINT. | RFP 42, 43, 67, 312, 531 |
| 531 | Produce Documents and Communications concerning the allegation that a "myriad of information was available to [OAN] that showed its statements about Smartmatic and the use of its technology and software to fix, rig, and steal the 2020 U.S. election were false," as alleged in Paragraphs 287 and 346 of the COMPLAINT. | RFP 42, 43, 67, 104, 105, 312, 530 |
| 532 | Produce Documents and Communications concerning the statements contained in the SMARTMATIC RETRACTION DEMAND to OAN, including any drafts thereof, as set forth in Paragraphs 285, 318, 334, 353 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 68, 72, 101, 104, 105, 312, 407 |
| 533 | Produce Documents and Communications concerning the allegation that OAN doubted or had reason to doubt the veracity of the guests on their shows, as alleged in Paragraphs 355 and 378 of the COMPLAINT. | RFP 4, 5, 6, 42, 43, 67, 527, 529 |
| 534 | Produce Documents and Communications concerning or evidencing a "code of conduct or ethics" applicable to OAN, as alleged at Paragraph 402 of the COMPLAINT, or any other broadcasting company. | RFP 43,67, 535 |
| 535 | Produce Documents and Communications concerning the allegation that "[OAN] violated at least eleven generally accepted journalism standards," as alleged at Paragraphs 404–420 of the COMPLAINT. | RFP 43, 67, 534 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| 536 | Produce Documents and Communications concerning, evidencing, or reflecting whether any of Your customers or potential customers, international or domestic, viewed any of the COMPLAINED OF BROADCASTS or COMPLAINED OF STATEMENTS. | RFP 56, 72, 75, 104, 105, 312, 537, 539, 542 |
| 537 | Produce Documents and Communications concerning, evidencing, or reflecting any complaints by Your customers or potential customers, international or domestic, concerning any of the COMPLAINED OF BROADCASTS or COMPLAINED OF STATEMENTS. | RFP 56, 72, 75, 104, 105, 536, 539, 542 |
| 538 | Produce Documents and Communications concerning and between You and any customer or potential customer relating to the security risks posed by the use of SMARTMATIC SYSTEMS, including but not limited to the possibility of SMARTMATIC SYSTEMS being hacked or otherwise accessed by unauthorized third parties. | RFP 44, 75, 536, 537 |
| 539 | Produce Documents and Communications concerning, evidencing, or reflecting whether any of Your customers or potential customers, international or domestic, declined to contract with, or continue to contract with, You as a proximate result of viewing any of the COMPLAINED OF BROADCASTS or COMPLAINED OF STATEMENTS. | RFP 56, 72, 75, 104, 105, 312, 536, 537, 542 |
| 540 | Produce Documents and Communications concerning any failure to obtain a contract relating to SMARTMATIC SYSTEMS due to alleged political and/or reputational obstacles in the United States market between January 1, 2016 and January 1, 2020. | RFP 56, 72, 75, 104, 105, 312, 301, 371, 536, 537, 542 |
| 541 | Produce Documents and Communications subsequent to November 3, 2020 concerning any (i) termination of any contract with any PLAINTIFFS; (ii) withdrawal of any request for proposal from any PLAINTIFFS; or (iii) refusal to accept a bid from any PLAINTIFFS. | RFP 56, 72, 312, 312, 301, 371, 536, 537, 540, 542 |
| 542 | Produce Documents and Communications concerning, evidencing, or reflecting any action taken by Your customers or potential customers, international or domestic, that harmed You as a proximate result of viewing any of the COMPLAINED OF BROADCASTS or COMPLAINED OF STATEMENTS. | RFP 56, 72, 104, 105, 301, 536, 537, 538, 539, 541 |
| 543 | Produce Documents and Communications concerning, evidencing, or reflecting whether any of Your customers or potential customers, international or domestic, read any of the "reactions" to "[OAN]'s publications" as set forth at Paragraph 429 (a)-(i) of the COMPLAINT. | RFP 56, 72, 86, 104, 105, 301, 312, 406, 537, 538, 539, 542 |
| 544 | Produce Documents and Communications concerning Your assertion at Paragraph 430 of the COMPLAINT that "Smartmatic's name and brand similarly suffered with government officials, particularly those in the United States" as a result of any of the COMPLAINED OF BROADCASTS or COMPLAINED OF STATEMENTS. | RFP 45, 56, 67, 72, 275, 276, 315, 316, 343, 371, 569 |
| 545 | Produce Documents and Communications concerning Your assertion at Paragraph 431 of the COMPLAINT that "certain government officials" became critical of You as result of the COMPLAINED OF BROADCASTS or COMPLAINED OF STATEMENTS. | RFP 45, 56, 67, 73, 104, 105, 312, 315, 316, 371, 343, 545 |
| 546 | Produce Documents and Communications concerning Your assertion at Paragraph 432 of the COMPLAINT that You faced a "crisis situation" as a result of the COMPLAINED OF BROADCASTS or COMPLAINED OF STATEMENTS. | RFP 47, 48, 49, 50, 67, 104, 105, 249, 312, 547, 549, 569 |
| 547 | Produce Documents and Communications concerning Your assertion at Paragraph 432 of the COMPLAINT that "Smartmatic's officers and employees have been threatened," and its operations "have come under attack – physical and electronically," as a result of the COMPLAINED OF BROADCASTS or COMPLAINED OF STATEMENTS. | RFP 47, 48, 49, 50, 67, 104, 105, 249, 312, 546, 549, 569 |
| 548 | Produce Documents and Communications reflecting any expenditures made by any PLAINTIFFS to protect any PLAINTIFFS' officers or employees from any threats of (or actual) physical violence purportedly caused by the COMPLAINED OF BROADCASTS or COMPLAINED OF STATEMENTS. | RFP 47, 48, 49, 50, 67, 104, 105, 312, 546, 549 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| 549 | Produce Documents and Communications concerning the claimed "out-of-pocket" expenses incurred by You as set forth in Paragraph 432–433 of the COMPLAINT. | RFP 47, 48, 49, 50, 67, 249, 312, 546, 547, 550, 569 |
| 550 | Produce Documents and Communications concerning Your assertion that the "out-of-pocket" expenses incurred by You, as set forth in Paragraph 432–433 of the COMPLAINT, were substantially caused by the COMPLAINED OF BROADCASTS or COMPLAINED OF STATEMENTS. | RFP 47, 48, 49, 50, 67, 249, 312, 546, 547, 549, 569 |
| 551 | Produce Documents and Communications concerning Your assertion that the COMPLAINED OF BROADCASTS or COMPLAINED OF STATEMENTS were "a substantial cause of Smartmatic's diminished business value and prospects, particularly in the United States," as alleged at Paragraphs 434, 435, and 438 of the COMPLAINT. | RFP 51, 52, 53, 67, 104, 105, 553, 556, 559, 560, 607 |
| 552 | Produce Documents and Communications concerning Your assertion that the COMPLAINED OF BROADCASTS or COMPLAINED OF STATEMENTS caused individuals to be "less likely to select Smartmatic" as an electronic voting systems supplier, as alleged at Paragraphs 436–437 of the COMPLAINT. | RFP 67, 104, 105, 312, 541, 542, 544, 545 |
| 553 | Produce Documents and Communications concerning Your assertion that Your business value and prospects   have been ignificantly diminished as a result of the COMPLAINED OF BROADCASTS or COMPLAINED OF STATEMENTS, as alleged at Paragraph 438 of the COMPLAINT. | RFP 51, 52, 53, 67, 104, 105, 312, 551, 554, 556, 559, 560, 561, 562, 607 |
| 554 | Produce Documents and Communications concerning Your assertion that prior to the 2020 election, "Smartmatic's business was valued in excess of $3.0 billion based on a modes multiplier," as alleged at Paragraph 438 of the COMPLAINT. | RFP 51, 52, 53, 67, 83, 312, 551, 553, 556, 559, 560, 561, 562, 607 |
| 555 | Produce Documents and Communications concerning any diminished "sales and opportunities through subsidiaries," identified in Footnote 21, Paragraph 438 of the COMPLAINT, as a result of the COMPLAINED OF BROADCASTS or COMPLAINED OF STATEMENTS. | RFP 67, 104, 105, 312, 553, 552 |
| 556 | Produce Documents and Communications concerning Your assertion that following [OAN]s publication of its defamatory statements, Smartmatics business is valued at less than $1 billion,as alleged at Paragraph 438 of the COMPLAINT. | RFP 51, 52, 53, 67, 551, 553, 559, 560, 607 |
| 557 | Produce Documents and Communications concerning, evidencing, or reflecting any formal or informal business valuations of You conducted between January, 2016 and the present. | RFP 51, 52, 53, 64 |
| 558 | Produce Documents and Communications reflecting all revenue generated by You from 2010 to the present. | RFP 66, 98, 589 |
| 559 | Produce Documents and Communications concerning Your "diminished business value and prospects," as alleged in Paragraph 434 of the COMPLAINT. | RFP 51, 52, 53, 67, 551, 553, 556, 560, 607 |
| 560 | Produce Documents and Communications concerning Your claim that "Smartmatic's business was valued in excess of $3.0 billion," as alleged in Paragraph 437 of the COMPLAINT. | RFP 51, 52, 53, 67, 551, 553, 556, 559, 607 |
| 561 | Produce Documents and Communications concerning Your value, enterprise value, book value, fair market value, estimated value, retained earnings and/or stockholders equity. | RFP 51, 64, 562 |
| 562 | Produce Documents and Communications referencing the fair market value, book value, estimated value or other value of any assets, property, equipment, software, intellectual property, buildings, land, machinery, inventories, pension assets and/or right-of-use assets owned by any PLAINTIFFS. | RFP 51, 225, 561 |
| 563 | Produce all loan agreements or other contracts containing one or more financial covenants by any PLAINTIFFS that were entered into, or in effect, from January 1, 2016 to the present. | RFP 64, 98, 293 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| 564 | Produce Documents and Communications concerning Your claim for compensatory and per se damages against OAN. | RFP 57, 58 |
| 565 | Produce Documents and Communications concerning Your claim for actual damages against OAN. | RFP 57 |
| 566 | Produce Documents and Communications concerning Your claim for consequential damages against OAN. | RFP 57 |
| 567 | Produce Documents and Communications concerning Your claim for special damages against OAN. | RFP 57 |
| 568 | Produce Documents and Communications concerning Your claim for punitive damages against OAN. | RFP 57, 59 |
| 569 | Produce Documents and Communications concerning the allegation that Your reputation has been irreparably tarnished, as alleged in Paragraph 432 of the COMPLAINT. | RFP 54, 581 |
| 570 | Produce Documents and Communications concerning any business opportunity allegedly lost by You as a result of any action taken by OAN. | RFP 75, 86, 406, 567 |
| 571 | Produce Your accounting records from January 1, 2016 to the present reflecting all business development, public relations, crisis management, and/or lobbying expenditures. | RFP 47, 513, 214, 263, 293, 365, 366, 367, 565 |
| 572 | Produce Your accounts receivable/vendor advances aging schedules concerning each period, and all related Documents and Communications, from January 2014 to present. | RFP 79, 292, 293 |
| 573 | Produce Your accounts receivable impairment reports, including expected credit losses analyses, for each period from January 2014 to present. | RFP 64, 98, 589 |
| 574 | Produce Documents evidencing all qualitative and quantitative analyses evaluating impairments of financial and non-financial assets of You for all financial reporting periods from 2014 to the present. | RFP 64, 573, 589 |
| 575 | Produce Documents and Communications sufficient to show Your financial performance forecasts and projections from January 1, 2003 to present. | RFP 66, 90, 283 |
| 576 | Produce Documents and Communications concerning donations made by You to any not-for-profit entity from January 1, 2015 to March 26, 2021. | RFP 216, 221 |
| 577 | Produce Documents and Communications concerning financial audits of You, including without limitation all annual and quarterly audited financial statements of You from 2010 to present. | RFP 64, 85, 98, 588 |
| 578 | Produce Documents and Communications concerning Your efforts to receive investments from prospective investors, including without limitation all offering memoranda or other pitch materials, from January 1, 2003 to present. | RFP 64, 74, 85, 301, 585 |
| 579 | Produce Documents and Communications concerning Your negotiations with prospective or actual customers, regardless of the result of such negotiations. | RFP 301 |
| 580 | Product Documents and Communications concerning or between any former, potential, or current customers referencing Your sale of SEQUOIA, Your connection to Venezuela, or any reference to allegations related to the effectiveness, security, or accuracy of SMARTMATIC SYSTEMS used in Venezuela, Kenya, and/or the Philippines, or any other political challenge or obstacle in connection with Your sales efforts. | RFP 336, 338, 331, 381, 414, 579 |
| 581 | Produce Documents and Communications reflecting any expenditures made by You to attempt to mitigate purported harm to Your business purportedly caused by the COMPLAINED OF STATEMENTS, including but not limited to any purported harm to Your reputation. | RFP 47, 101, 258, 259, 260, 261, 262, 263, 571 |
| 582 | Produce Documents and Communications, including without limitation any draft and final agreements, concerning any funding received by You concerning this ACTION. | RFP 63, 583, 584 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| 583 | Produce Documents and Communications relating to all sources of funding You are using to pay costs, expenses, or fees for this case or any other lawsuit filed by any PLAINTIFFS related to the 2020 PRESIDENTIAL ELECTION, including but not limited to Smartmatic USA Corp., et al. v. Fox News Network, LLC, et al., Index No. 151136-2021 (New York County, New York); Smartmatic USA Corp. and SGO Corporation Unlimited v. Newsmax Media, Inc., Case No. N21C-11-028 EMD (Del. Super. Ct.); Smartmatic USA Corp., et al. v. Sidney Powell, Case No. 21-cv-02995 (D.D.C.); Smartmatic USA Corp., et al. v. Lindell, et al., Case No. 22-cv-00098 (D. Minn.), including each entity or individual providing funds, contingency services, pro bono services and the related or oral written agreements. | RFP 63, 312, 582, 584 |
| 584 | Produce Documents and Communications relating to any offer or proposal by any third-party individual or entity to pay costs, expenses, or fees for this ACTION or any other lawsuit filed by any PLAINTIFFS related to the 2020 PRESIDENTIAL ELECTION, including but not limited to Smartmatic USA Corp., et al. v. Fox News Network, LLC, et al., Index No. 151136-2021 (New York County, New York); Smartmatic USA Corp. and SGO Corporation Unlimited v. Newsmax Media, Inc., Case No. N21C-11-028 EMD (Del. Super. Ct.); Smartmatic USA Corp., et al. v. Sidney Powell, Case No. 21-cv-02995 (D.D.C.); Smartmatic USA Corp., et al. v. Lindell, et al., Case No. 22-cv-00098 (D. Minn.), including each third-party individual or entity that offered or proposed to provide funds, contingency services, pro bono services, regardless of whether the offer or proposal was accepted. | RFP 63, 312, 583 |
| 585 | Produce Documents and Communications concerning requests for financing made by You from January 1, 2003 to present, including without limitation loan applications and related Documents and Communications. | RFP 63, 563 |
| 586 | Produce Documents and Communications concerning Your itemization of lost profits as detailed in Appendix 1 of Your First Amended Complaint in Smartmatic USA Corp. v. Fox Corp., Index No. 151136/2021, IAS Part 58 (Supreme Court of the State of New York, County of New York). | RFP 75,98, 588, 589 |
| 587 | Produce Documents and Communications concerning the Sale and Security Agreement between You and SEQUOIA concerning Your divestiture of SEQUOIA. This request includes but is not limited to the Sale and Security Agreement, communications between You and any government agency, official, or employee relating to Your acquisition and/or divestiture of SEQUOIA, and all documents and communications relating to the negotiation, execution of and compliance with the Sale and Security Agreement. | RFP 33, 41, 235, 325, 326, 327, 331, 332, 333, 334, 335, 336, 338, 414 |
| 588 | Produce Documents and Communications concerning Your historical profit margins from January 1, 2010 to the present, including without limitation all internal financial statements prepared on a monthly, quarterly, and annual basis including income statements showing gross profit, contribution margin, or operating profit. | RFP 64, 98, 589 |
| 589 | Produce Documents and Communications, including without limitation internal accounting documents, concerning revenue, gross profit, contribution margin, and operating profit by customer on a monthly, quarterly, and annual basis from 2010 to present. | RFP 98, 586, 588 |
| 590 | Produce Documents and Communications concerning the impact on You, including any damages allegedly suffered by You, caused by or resulting from any alleged actions, statements, or broadcasts of Fox News since November 1, 2020. | RFP 58, 605 |
| 591 | Produce Documents and Communications concerning the impact on You, including any damages allegedly suffered by You, caused by or resulting from any alleged actions, statements, or broadcasts of Newsmax since November 1, 2020. | RFP 58, 605 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|---|---|---|
| 592 | Produce Documents and Communications concerning the impact on You, including any damages allegedly suffered by You, caused by or resulting from any alleged actions, statements, or broadcasts of Donald Trump since November 1, 2020. | RFP 58, 605 |
| 593 | Produce Documents and Communications concerning the impact on You, including any damages allegedly suffered by You, caused by or resulting from any alleged actions, statements, or broadcasts of Sidney Powell since November 1, 2020. | RFP 58, 605 |
| 594 | Produce Documents and Communications concerning the impact on You, including any damages allegedly suffered by You, caused by or resulting from any alleged actions, statements, or broadcasts of Rudy Giuliani since November 1, 2020. | RFP 58, 605 |
| 595 | Produce Documents and Communications concerning the impact on You, including any damages allegedly suffered by You, caused by or resulting from any alleged actions, statements, or broadcasts of MY PILLOW, INC. since November 1, 2020. | RFP 58, 605 |
| 596 | Produce Documents and Communications concerning the impact on You, including any damages allegedly suffered by You, caused by or resulting from any alleged actions, statements, or broadcasts of Michael J. Lindell since November 1, 2020. | RFP 58, 605 |
| 597 | Produce Documents and Communications concerning the impact on You, including any damages allegedly suffered by You, caused by or resulting from any alleged actions, statements, or broadcasts of Patrick Byrne since November 1, 2020. | RFP 58, 605 |
| 598 | Produce Documents and Communications concerning the impact on You, including any damages allegedly suffered by You, caused by or resulting from any alleged actions, statements, or broadcasts of Powell, P.C. since November 1, 2020. | RFP 58, 605 |
| 599 | Produce Documents and Communications concerning the impact on You, including any damages allegedly suffered by You, caused by or resulting from any alleged actions, statements, or broadcasts of Lou Dobbs since November 1, 2020. | RFP 58, 605 |
| 600 | Produce Documents and Communications concerning the impact on You, including any damages allegedly suffered by You, caused by or resulting from any alleged actions, statements, or broadcasts of Maria Bartiromo since November 1, 2020. | RFP 58, 605 |
| 601 | Produce Documents and Communications concerning the impact on You, including any damages allegedly suffered by You, caused by or resulting from any alleged actions, statements, or broadcasts of Jeanine Pirro since November 1, 2020. | RFP 58, 605 |
| 602 | Produce Documents and Communications concerning the impact on You, including any damages allegedly suffered by You, caused by or resulting from any alleged actions, statements, or broadcasts of Defending the Republic, Inc. since November 1, 2020. | RFP 58, 605 |
| 603 | Produce Documents and Communications concerning the impact on You, including any damages allegedly suffered by You, caused by or resulting from any alleged actions, statements, or broadcasts of Joe Oltmann since November 1, 2020. | RFP 58, 605 |
| 604 | Produce Documents and Communications concerning the impact on You, including any damages allegedly suffered by You, caused by or resulting from any alleged actions, statements, or broadcasts of The Gateway Pundit since November 1, 2020. | RFP 58, 605 |
| 605 | Produce Documents and Communication concerning any analyses relating to the amount of damages allegedly suffered by You, caused by or resulting from any alleged actions, statements, or broadcasts of any Person. | RFP 58, 590, 591, 592, 593, 594, 595, 596, 597, 598, 599, 600, 601, 602, 603, 604 |
| 606 | Produce Documents and Communications concerning periodic internal management reports, including without limitation any Documents and | RFP 51, 551, 559 |

| RFP # | Second Set of RFPs | Duplicative First Set of RFPs |
|-------|--------------------|-------------------------------|
|       | Communications concerning the increase or decrease in business with current and/or prospective customers. | |
| 607 | Produce Documents and Communication concerning analyses relating to the amount of recovery of the business value of You as a result of the passage of time as new information has come out related to the COMPLAINED OF STATEMENTS and allegations in Your COMPLAINT. | RFP 51, 52, 53 |

# EXHIBIT 1-H



Caitlin Alejandrina Kovacs
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Direct Dial: 312.624.6392
Fax: 312.767.9192
ckovacs@beneschlaw.com

October 10, 2023

Carl C. Butzer
Jackson Walker LLP
2323 Ross Avenue, Suite 600
Dallas, TX 75201

> Re:   *Smartmatic USA Corp., et al. v. Herring Networks, Inc. d/b/a One America News Network*; Case No. 1:21-cv-02900-CJN

Carl,

We write in response to OANN's September 18, 2023 Letter claiming deficiencies in Smartmatic's responses to OANN's Interrogatories Nos. 3, 4, 8, 10, 12–14, 16, and 19–23, and requesting that Smartmatic supplement those responses. Each of the interrogatories are addressed in turn.

**Interrogatory No. 3:**  Smartmatic only agreed to produce organizational charts sufficient to show the corporate structure of Smartmatic during the relevant time period. Smartmatic has done just that. (*e.g.*, SMMT-OAN00001123, SMMT-OAN00005395, SMMT-OAN00064502, SMMT-OAN00064508, SMMT-OAN00007805, SMMT-OAN00007947). Your position is contrary to the express terms of the Interrogatory, which seeks the identification of each and every Smartmatic Entity. The documents you reference do not provide this information for all such entities, including for the entities identified in Footnotes 2 and 21 of the Complaint. SMMT-OAN00001123 provides cursory, and very little, responsive information. SMMT-OAN00005395 reflects a very limited discussion of "Smartmatic's history" and does not have responsive information. SMMT-OANN00064502 is a chart as of February 2010 only; and similarly, SMMT-OANN00064508 is a chart as of January 2012 only. These documents cover only a limited period and are not exhaustive of the Smartmatic Entities. SMMT-OAN00007805 is a chart of limited use identifying only 4 entities and related officers. SMMT-OAN00007947 is part of a larger document reflecting a financial statements for Smartmatic USA only and for only 2013 and 2014. OANN complains that Smartmatic's response forces OANN to "sift through Plaintiffs' documents." Smartmatic reminds OANN of the parties' agreement to identify only the categories of responsive documents. *See* OANN's February 17, 2023 Letter. *By your choice, that is no longer an agreement.* On September 11, you sent us an 8-page letter claiming that OAN's productions "demonstrated a serious failure to produce many categories of documents …," and which went on —RFP-by-RFP— to detail the alleged deficiencies. You demanded that if the documents had been produced (which they were), that we *"identify the documents by Bates number."* (Your 9/11/2023 Letter at p. 7). We are seeking the same information. *Please let us know by Tuesday, October 17 whether we are at an impasse on this issue.* We believe Smartmatic's response is adequately descriptive to locate the responsive documents in Smartmatic's production.

October 10, 2023
Page 2

Here, and elsewhere throughout Smartmatic's interrogatory responses, we have asked you to provide certain information and you have opted to refer to the production of your business records under Rule 33(d), but without any specificity. "Making only a general reference to a mass of documents or records is an abuse of Rule 33(d)." *United States ex rel. Landis v. Tailwind Sports Corp.*, 317 F.R.D. 592, 594 (D.D.C. 2016) (internal quotes omitted). Just recently, a district court held an interrogatory response directing the requester to "over 25,600 Bates-numbered documents. . . . does not fulfill the requirement that the responding party specify which records contain the information sought by the interrogatory." *D.C. ex rel. Z-Modular, LLC v. MCN Build, Inc.*, No. 18-CV-2947 (RJL/GMH), 2020 WL 4001458, at *5 (D.D.C. July 15, 2020). Here there are over two million documents. With that many documents, Rule 33(d) requires you to "provide the responsive information specifically or designate a narrow page range for the information sought." *Haughton v. D.C.*, 161 F. Supp. 3d 100, 102 (D.D.C. 2014) (Ketanji Brown Jackson, J.) (affirming magistrate order compelling identification where defendant "directed Plaintiff to hundreds—if not thousands—of pages of documents without including an index of the material or pinpointing a particular range of pages in which the requested information could be found."). Either comply by providing specific bates numbers, or amend the answers with responsive information to this and the remaining interrogatories where OAN is directed to review produced documents, by *Friday, October 20*.

**Interrogatory No. 4:**   OANN requested Smartmatic to supplement its response to Interrogatory No. 4 on July 25, 2023, and the parties have already extensively met and conferred about Smartmatic's response. Smartmatic's position has remained unchanged since OANN included Interrogatory No. 4 in the parties' forthcoming joint submission to the Court. Additionally, Smartmatic has produced all of the bids it has submitted since 2017. Where, by bates number? *Please let us know by Friday, October 20.*

**Interrogatory No. 8:**  As indicated in OANN's letter, Smartmatic objected to the breadth of OANN's Interrogatory No. 8, which seeks information on "the amount of revenue derived by each Smartmatic Entity in each state" since Smartmatic *first* "began performing business in the United States." Smartmatic also objected "to the extent that it seeks information that is not relevant to any claim or defense asserted in the Action and is not reasonably calculated to lead to the discovery of admissible evidence." Smartmatic stands on those objections and the others raised in its response. Agreed that we are at an impasse and will move to compel.

Smartmatic has repeatedly directed OANN to the parties' previous agreement to refer OANN to categories of documents that describe the responsive categories of documents. *See* OANN's February 17, 2023 Letter. Again, based on your September 11 letter, that is no longer the agreement. As OANN acknowledges, Smartmatic agreed to produce documents with information on Smartmatic's revenue from 2016 to present. Smartmatic believes that the numerous financial statements produced by Smartmatic are sufficient (*e.g.*, SMMT- OAN00011850, SMMT-OAN00011994, SMMT-OAN00056919; SMMT-OAN00056987, SMMT-OAN00057047, SMMT-OAN0007945). First, these documents are only for Smartmatic USA (only for 2017-2018) and SGO (only for 2020). Second, these documents are non-responsive to the Interrogatory, which requests revenue derived by each entity in each state. Where, by bates number, are the

October 10, 2023
Page 3

responsive documents? If not produced and you refuse to produce them, with identifying bates numbers, we are an impasse and will move to compel. *Please let us know by Friday, October 20.*

**Interrogatory No. 10:**   Smartmatic agreed to produce documents sufficient to identify Smartmatic employees with primary responsibility for the development, testing, implementation, inspection, maintenance, updating, imaging, uploading or downloading of any Smartmatic's voting machines and software utilized in the 2020 U.S. presidential election. Smartmatic otherwise objected to Interrogatory No. 10, in part, because it is irrelevant and overbroad. OANN never pushed back on Smartmatic's objections previously, and Smartmatic never represented that it would further respond. Based on the objections raised in Smartmatic's December 2022 response, Smartmatic has satisfied its obligations with respect to Interrogatory No. 10. No, it has not – you only state in the response that "Smartmatic will produce documents sufficient to identify" the employees, and then only for the requested activities "in the 2020 Election." First, where, by bates number, are the documents produced identifying the employees? Second, you have improperly re-written the Interrogatory and now claim it has been answered. If you decline to amend to provide a full and responsive answer to the Interrogatory as written, we are at an impasse and will move to compel. *Please let us know by Friday, October 20.*

**Interrogatory No. 12:**   Smartmatic agreed to produce documents sufficient to identify persons who have raised issues concerning any security issues, vulnerabilities, vote tabulation errors, or bribes relating to the voting machines and technology developed by Smartmatic and utilized in the 2020 U.S. presidential election, to the extent that they exist and can be located by a reasonable search. Again, Smartmatic has improperly rewritten the Interrogatory to limit it to only certain issues and only for the 2020 U.S. presidential election. Subject to its objections to the relevance and breadth of the request, Smartmatic later offered to produce responsive documents dating from 2018. *See* Smartmatic's February 22, 2023 Letter, at 17–18. This is still improper because you refuse to go back to the start of Smartmatic. Have the documents referenced been produced? If so, identify by bates number. OANN was unsatisfied with this compromise and asked requested leave to file a motion to compel Smartmatic's response. Smartmatic will not be further supplementing its response if OANN still intends to move to compel Smartmatic's response. We agree that we are at an impasse and will move to compel.

**Interrogatories Nos. 13–14:**   Pursuant to its objections based on the overbreadth and irrelevance of the requests, Smartmatic agreed to produce documents sufficient to identify post-election audits of the machines or software developed by Smartmatic and utilized in the 2020 Presidential election, to the extent that they exist and can be located by reasonable search. Once again, Smartmatic has improperly rewritten Interrogatory 13 to limit it to post-election audits and to the 2020 Presidential election, when the information sought applies to audits of any of the Smartmatic Entity voting machines, equipment, hardware, software, and/or servers – at any time and in any jurisdiction. OANN has not pushed back on Smartmatic's responses to Interrogatories Nos. 13 and 14 until now. Smartmatic stands on its responses and objections. Agreed that we are at an impasse and will move to compel.

**Interrogatory No. 16:**   OANN states that Smartmatic "unilaterally narrow[ed] the responsive timeframe to the 2020 elections." That timeframe is consistent with Smartmatic's position throughout the litigation where OANN has attempted to broaden the scope of discovery

into matters irrelevant to Smartmatic's defamation claims. We disagree that it is irrelevant. Smartmatic's position is that only the 2020 U.S. presidential election is relevant, and OANN had not taken issue with Smartmatic's response to Interrogatory No. 16 until now. Smartmatic stands on its objections and response to Interrogatory No. 16. Agreed that we are at an impasse and will move to compel.

**Interrogatory No. 19:** Smartmatic stands on its objections and response to Interrogatory No. 19. As alleged in the Complaint, Smartmatic was not involved in the 2020 U.S. elections outside of Los Angeles County. *See, e.g.*, Compl. ¶ 63. The Interrogatory does not use the word "involved" – it seeks the identity and description of SMARTMATIC SYSTEMS used in the 2020 Presidential Election. We know that such systems were used in jurisdictions outside of LA County, whether Smartmatic was "involved" or not. In response to Interrogatory No. 19, Smartmatic described the work that it performed on Los Angeles County's behalf during the 2020 U.S. presidential election. As OANN is surely aware, Smartmatic has already agreed to inform OANN if it were withholding any information pursuant to any objection. *See* Smartmatic's February 3, 2023 Letter. Agreed that we are at an impasse and will move to compel.

**Interrogatory No. 20:** Interrogatory No. 20 is duplicative of Interrogatory Nos. 4 and 10, in response to which Smartmatic has objected to the unlimited time frame and geographic scope of the requests as "overly burdensome, overbroad, and not proportional to the needs of the case." Neither in response to Interrogatory No. 4 (subcontractors) nor No. 10 (persons involved in the enumerated activities) has Smartmatic provided the requested information; it also has not done so in response to Interrogatory No. 20, which seeks identity of vendors and contractors used in the 2020 election. If documents that specifically provide the requested information have been produced, tell us where, by bates number. Any proportionality analysis clearly weighs in favor of disclosure based on damages plead by Smartmatic. Smartmatic is willing to meet and confer about Interrogatory No. 20 but otherwise stands on its response and objections. We propose a meet and confer at 10 a.m. on *Friday, October 20.*

**Interrogatory No. 21:** Interrogatory No. 21 requests information about OANN's defamatory statements, all of which OANN can locate in Smartmatic's complaint. Smartmatic's response directs OANN to the relevant paragraphs within the complaint. Smartmatic stands on its objections and response to Interrogatory No. 21. OAN is entitled to a sworn answer that identifies the complained of defamatory statements, not just a pleading. Agreed that we are at an impasse and will move to compel.

**Interrogatory No. 22:** Interrogatory No. 22 requests information about OANN's defamatory statements, all of which OANN can locate in Smartmatic's Complaint. Smartmatic's response directs OANN to the relevant paragraphs within the complaint. Smartmatic stands on its objections and response to Interrogatory Nos. 22. OAN is entitled to a sworn answer that identifies the complained of defamatory statements, not just a pleading. Agreed that we are at an impasse and will move to compel.

**Interrogatory No. 23:** OANN asks that Smartmatic withdraw its objection based on the confidentiality of the requested information, arguing that the objection is improper. Smartmatic declines. OANN has raised the same objection in response to Smartmatic's Interrogatories Nos.

October 10, 2023
Page 5

19 and 20. The parties have previously discussed the propriety of raising this objection. *See* OANN's February 17, 2023 Letter, at 5. Smartmatic stands on its objections and response to Interrogatory No. 23. Agreed that we are at an impasse and will move to compel, particularly with respect to LA County (unless agreed otherwise) since both Smartmatic and LA County have consented to production of responsive documents in related litigation yet refuse to produce responsive documents in this case.

Sincerely,

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP

/s/ Caitlin A. Kovacs

Caitlin Alejandrina Kovacs

CAK:cjw

37783634v.1

# EXHIBIT 1-I



Chicago
New York
Washington, DC
London
San Francisco
Los Angeles
Singapore
Dallas
Miami
vedderprice.com

January 23, 2023

Brian W. Ledebuhr
Shareholder
+1 312 609 7845
bledebuhr@vedderprice.com

**VIA EMAIL**

Michael E. Bloom, Esq.
mbloom@beneschlaw.com
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
mbloom@beneschlaw.com

*Re:*   *Smartmatic USA Corp, et al. v. Herring Networks, Inc. d/b/a One America News Network,*
  **Case No. 1:21-cv-02900-CJN (D.D.C.)**

Dear Mr. Bloom:

I'm writing to provide the position of defendant Herring Networks, Inc ("Herring") on some (but not all) of the deficiencies in Plaintiffs' Omnibus Responses to Herring's First Set of Written Discovery Requests (the "Discovery Responses") dated December 16, 2022, which include Plaintiffs' objections and responses to Herring's First Sets of Requests for Production ("RFPs"), Interrogatories, and Requests for Admission ("RFAs" and, collectively the "Requests").[1]  In accordance with Paragraph 11 of the Court's Standing Order, I write to address numerous deficiencies with the hope that we may engage in a reasonable and good faith attempt to resolve these deficiencies without the need for court intervention.  We would like to discuss these issues with you at our meet and confer conferences scheduled for January 25, 2023 at 10:30 a.m. Central Time and January 27, 2023 at 2 p.m. Central Time.

I.   <u>Specific Topics</u>

  A.   **U.S.-Based Investigations and Criticisms of Smartmatic Entities and Their Election-Related Technology**

Many of Herring's Requests seek documents or information relating to investigations conducted of Smartmatic Entities by U.S. federal, state, and local governmental bodies; U.S.-based criticisms of or concerns about Smartmatic Entities; and potential contracts lost by or certifications not granted to Smartmatic Entities from U.S. election authorities because of potential concerns with election security, vulnerabilities, vote tabulation errors, or alleged corrupt business practices.  (*See, e.g.*, **RFPs 13, 21, 22, 23, 24, 25, 27, 28, 35, 36, 40, 62; Interrogatories 4, 12; RFAs 4, 14, 15, 18, 53, 54.**)  In several instances,

---

[1]Capitalized terms not specifically defined herein shall have the meanings assigned to them in Herring's First Set of Requests for Production to Smartmatic USA Corp., Herring's First Set of Requests for Production to Smartmatic International Holding B.V., and Herring's First Set of Requests for Production to SGO Corporation Limited.

222 North LaSalle Street  |  Chicago, Illinois 60601  |  T +1 312 609 7500  |  F +1 312 609 5005

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.

Michael E. Bloom, Esq.
January 23, 2023
Page 2

Plaintiffs objected to RFPs seeking documents related to these topics on the grounds that the RFPs allegedly are not relevant to any claim or defense, not reasonably calculated to lead to the discovery of admissible evidence, overbroad, vague, and unduly burdensome, and stated that Plaintiffs would not produce documents in response to the RFPs.  (*See* **RFPs 23, 24, 27, 28, 35, 36, 41**.)  In other instances, Plaintiffs objected for the same reasons, and artificially narrowed the scope of the RFPs or Interrogatories to specific subject matters or time frames only.  (*See* **RFPs 13, 21, 22, 24, 25, 40, 62**; **Interrogatories 4, 12**.)  And with regard to certain RFAs relating to these topics, Plaintiffs refused to admit or deny the RFAs.  (**RFAs 4, 14, 15, 18, 53, 54**).  It is improper for Plaintiffs to refuse to produce documents responsive to, or answer certain of, the foregoing Requests or otherwise unilaterally decide to narrow the scope of Requests.

Among other reasons, documents and information related to governmental investigations of Smartmatic Entities, criticisms of Smartmatic Entities or their election-related technology or practices, lost business or certifications related to concerns with election security, vulnerabilities, or alleged corrupt business practices reflect on Plaintiffs' reputations, which are relevant in a defamation case and are appropriate fodder for discovery in a defamation action.  *Faigin v. Kelly*, 184 F.3d 67, 83 (1st Cir. 1999) (finding that evidence of plaintiff's reputation prior to the publication of the alleged defamatory statements was relevant to the truth of the alleged defamatory statements and plaintiff's alleged damage to his reputation); *Camphausen v. Schweitzer*, 2010 WL 4539452 at *3 (N.D. Ill. Nov. 3, 2010) (granting defendant's motion to compel discovery in defamation case concerning plaintiff's prior misconduct and reputation); *see also Logan v. Dist. of Columbia*, 447 F. Supp. 1328, 1332 (D.D.C. 1978) (granting summary judgment to defendant where plaintiff could not demonstrate injury to his reputation where his reputation was irrefutably damaged prior to the alleged defamatory statements*); Pederson v. Preston*, 260 F.R.D. 61, 64 (D.D.C. 2008) (noting that the scope of discovery in civil actions is broad and allows for discovery of any non-privileged matter relevant to a claim or defense).  The investigations that are the subject of the Requests, or the potential lack of certification/validation or lost contracts, directly target Plaintiffs' reputations and the efficacy and security of Smartmatic Entities' technology used or proposed to be used in elections.  For this reason and others, these topics are referenced directly in Herring's Amended Answer and Affirmative and Other Defenses (ECF No. 36) ("Answer" or "Ans."). (*See, e.g.*, Ans. ¶¶ 29-35, 37.)

Additionally, these topics directly relate to Herring's reasonable belief in the truth, or, at least, substantial truth, of the alleged defamatory statements themselves and are appropriate subjects of discovery.  *Tavouloureas v. Piro*, 93 F.R.D. 11, 22 (D.D.C. 1981) (granting defendant's motion to compel where information sought would bear on the truth or falsity of the allegedly defamatory statements); *Benevis, LLC v. Mauze & Bagby, PLLC*, 2015 WL 12763537 at *4 (S.D. Tex. Dec. 14, 2015) (compelling plaintiff to provide documents related to prior government investigations for fraud where it was germane to the truth or substantial truth of the allegedly defamatory statements).  We note that in certain instances, Plaintiffs admit that certain governmental investigations either occurred, are occurring, or were reported on by the media, which means Herring's request for information and documents relevant to these investigations are based in fact.  (*See, e.g.*, Plaintiffs' Ans. to RFAs 19, 22, 23, 24, 25, 30, 33, 37.)  We also note that Plaintiffs have not taken the position that documents or information responsive to the above

Michael E. Bloom, Esq.
January 23, 2023
Page 3

Requests do not exist, which means Plaintiffs are instead trying to prevent Herring from obtaining information relevant to Herring's defenses.

In light of these facts and the case law supporting our position that these areas of inquiry are relevant to Herring's defenses, we're confident the Court would order Plaintiffs to provide fulsome responses to these Requests and we ask that you meet and confer with us about these topics.

**B.      Foreign Investigations and Criticisms of Smartmatic Entities and Their Election-Related Technology Used or Proposed to Be Used in Foreign Elections**

The second category of inquiry is investigations by governmental agencies or authorities outside of the United States, criticisms of or concerns about Smartmatic Entities raised about elections outside of the United States, and potential contracts lost or certifications not granted by foreign election authorities because of potential concerns with election security, vulnerabilities, vote tabulation errors, or alleged corrupt business practices.  (*See, e.g.*, **RFPs 11, 26, 27, 29, 30, 79; Interrogatories 4, 12**.)  Similar to Plaintiffs' responses to the first category of requests, Plaintiffs objected to RFPs seeking documents related to these topics on the grounds that the RFPs allegedly are not relevant to any claim or defense, not reasonably calculated to lead to the discovery of admissible evidence, and are overbroad, vague and unduly burdensome, and stated that Plaintiffs would not produce documents in response to the RFPs.  (*See* **RFPs 11, 27, 29, 30 79**.)  In other instances, Plaintiffs objected for the same reasons and artificially narrowed the scope of the RFPs or Interrogatories to specific subject matters or time frames only.  (*See* **RFP 26; Interrogatories 4, 12**.)  It is improper for Plaintiffs to refuse to produce documents responsive to, or answer certain of, the foregoing Requests or otherwise unilaterally decide to narrow the scope of Requests.

Specifically, RFP 26 seeks "[d]ocuments and Communications regarding issues or concerns raised about any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers, including but not limited to issues or concerns about a potential election security breach, vulnerabilities, or vote tabulation errors from the formation of all Smartmatic Entities to the present, including but not limited to those Documents and Communications *concerning elections in Venezuela, the Philippines, and Kenya*." (Emphasis added.)  After making numerous objections, Plaintiffs artificially narrowed their response to documents "sufficient to identify" complaints or concerns expressed to Smartmatic regarding the security of voting machines and technology developed by Smartmatic for use in the 2020 Presidential Election.  At minimum, however, Smartmatic must produce documents and communications that relate to issues and concerns about elections involving Smartmatic Entities' technology that occurred in Venezuela, the Philippines, and Kenya from 2004 to the present.

Documents and information related to criticisms of Smartmatic Entities or their election-related technology, conduct, or alleged corrupt business practices by jurisdictions outside of the United States, and investigations of Smartmatic Entities conducted by foreign entities relating to elections conducted by Smartmatic Entities in their jurisdictions, reflect on Plaintiffs' reputations, which is relevant in a defamation case and is therefore appropriate for discovery in a defamation action.  *Faigin*, 184 F.3d at 83; *Camphausen*, 2010 WL 4539452 at *3.  This is particularly true because throughout the Complaint,

Michael E. Bloom, Esq.
January 23, 2023
Page 4

Smartmatic Entities tout their purported success and expansion in numerous foreign jurisdictions including Venezuela and the Philippines. (Compl. ¶¶ 11, 32-43.) Yet, as Plaintiffs admit, Plaintiffs were and are currently the subject of investigations regarding security issues or potential corruption in connection with those elections. (*See*, *e.g.*, Plaintiffs' Ans. to RFAs 35-37, 39.) The investigations and criticisms that are the subject of the Requests directly target Plaintiffs' reputations and the efficacy and security of Smartmatic Entities' technology used or proposed to be used in these elections.

Additionally, these topics directly relate to Herring's reasonable belief in the truth, or, at least, substantial truth, of the alleged defamatory statements themselves and is appropriate for discovery. *Tavouloureas*, 93 F.R.D. at 22; *Benevis*, 2015 WL 12763537 at *4. We note that in certain instances, Plaintiffs admit that certain governmental investigations occurred, are occurring, or were reported on by the media, which means Herring's request for information and documents relevant to these investigations are based in fact. We also note, again, that Plaintiffs have not taken the position that documents or information responsive to the above Requests do not exist, which means Plaintiffs are instead trying to prevent Herring from obtaining information relevant to Plaintiffs' factual allegations and Herring's defenses.

In light of these facts and the case law supporting our position that these areas of inquiry are relevant to Herring's defenses, we're confident the Court would order Plaintiffs to provide fulsome responses to these Requests and we ask that you meet and confer with us about these topics.

### C.    Formation and Origination of Smartmatic and Its Connections to Venezuela

The third category of inquiry includes the Smartmatic Entities' origins, connections with Venezuela and overall corporate structure. (*See*, *e.g.*, **RFPs 8, 9, 10, 38, 39; Interrogatory 15; RFAs 6, 8, 9**.) Plaintiffs' refusal to produce documents related to these topics is perplexing because Plaintiffs repeatedly accuse Herring of engaging in defamation based on its reporting of Smartmatic Entities' connections to and origins with Venezuela and Hugo Chávez's campaigns and election. (*See* Compl. ¶¶ 93, 95, 96, 98, 99, 102, 106, 108, 111, 119, 120, 122, 123, 125, 131, 132, 136, 170, 171, 178, 196, 217, 218.) Specifically, Plaintiffs allege that Herring defamed Plaintiffs by "stat[ing] and impl[ying]" that "Smartmatic is a Venezuelan company. . . ." (Compl. ¶ 170.) Plaintiffs also allege that Smartmatic USA Corp. is not owed, operated, or controlled by a Venezuelan company (Compl. ¶ 222) and that "**Smartmatic**" was not founded or funded by the Venezuelan government. (*Id.* ¶ 223.) (Emphasis added.) Notably, Plaintiffs do not specify which Smartmatic Entity "was not founded or funded by the Venezuelan government." Indeed, it is the connections by certain Smartmatic Entities with Venezuela that prompted an investigation by the Committee on Foreign Investment in the United States in 2006 that resulted in the Smartmatic Entities' divestiture of Sequoia, which was ultimately sold to Dominion Voting Systems, Inc. (Pl.'s Ans. to RFA 24, 25, 28; Ans. ¶¶ 32-40.) Herring is entitled to take discovery to test the veracity of Plaintiffs' allegations about Smartmatic Entities' origination, Smartmatic USA Corp.'s corporate ownership structure, and the extent to which Smartmatic USA Corp. or any other Smartmatic Entity may have been owned, controlled, or affiliated with any Venezuelan entities. At minimum, this discovery is relevant to Herring's reasonable belief in the truth, or, at least, substantial truth, of the alleged defamatory statements themselves. *Tavouloureas*, 93 F.R.D. at 22.

Michael E. Bloom, Esq.
January 23, 2023
Page 5

Additionally, Plaintiffs refuse to produce documents in response to RFP 38, which requests documents related to Smartmatic Entities' arbitration against the Venezuelan government related to Venezuela's decision to stop using Smartmatic Entities for elections. Yet Plaintiffs themselves allege that "Smartmatic" ceased participating in elections in Venezuela in 2017 after the government announced irregularities in connection with that election. (Compl. ¶ 225.) Herring is entitled to discovery related to the Smartmatic Entities' claims in that arbitration, particularly because the arbitration involves irregularities in connection with the 2017 Venezuelan election that may be related to problems with Smartmatic technology or concerns about security. As with the previous topics, this topic relates directly to Plaintiffs' reputation, which is relevant in a defamation case and is therefore proper fodder for discovery in a defamation action.

In light of these facts and that these areas of inquiry are relevant to Plaintiffs' claims and Herring's defenses, we're confident the Court would order Plaintiffs to provide fulsome responses to the Request and we ask that you meet and confer with us about these topics.

**D.     Smartmatic Entities' Relationship with Dominion Entities**

The fourth topic relates to Smartmatic Entities' relationship with the Dominion Entities. (*See*, *e.g.*, **RFPs 31, 33, 34, 81; Interrogatory 17**.) Plaintiffs refused to produce documents in response to RFP 34 and artificially narrowed the scope of each of Herring's Requests, which is also perplexing because Plaintiffs repeatedly accuse Herring of engaging in defamation based on its reporting of Smartmatic Entities' connections with various Dominion Entities. (*See* Compl. ¶¶ 90, 92, 95, 96, 99,101, 102, 104, 105, 106, 111, 112, 117, 123, 124, 127.) But Plaintiffs artificially narrowed their responses to Herring's Requests seeking information about these connections to only specific documents, e.g., contracts reflecting Smartmatic Entities' acquisition and sale of Sequoia and documents and communications from 2018 to the present relating to sales or licensing agreements with one or more Dominion Entities. As with the third category, however, Herring is entitled to take discovery to test the truth of Plaintiffs' allegations that Herring engaged in defamation by reporting on Smartmatic Entities' connections with Dominion Entities. Moreover, communications with Dominion Entities related to the Smartmatic Entities' divestiture of Sequoia and sale to Dominion Voting Systems, Inc. reflect on Plaintiffs' reputation, which, as with the previous topics, relate directly to Plaintiffs' reputation and are relevant in a defamation case. Finally, documents and communications relating to this category are directly relevant to Herring's reasonable belief in the truth, or, at least, substantial truth, of the alleged defamatory statements themselves. *Tavouloureas*, 93 F.R.D. at 22; *Benevis,* 2015 WL 12763537 at *4. Accordingly, this information is relevant and discoverable.

In light of the fact that these areas of inquiry are relevant to Plaintiffs' claims and Herring's defenses, we're confident the Court would order Plaintiffs to provide fulsome responses to the Request and we ask that you meet and confer with us about these topics.

Michael E. Bloom, Esq.
January 23, 2023
Page 6


**E.     The Location and Identity of Voting Technology Created By, Purchased By or Affiliated with Smartmatic Entities**

The fifth category relates to the location of voting technology created by or affiliated with Smartmatic Entities. (*See, e.g.*, **RFP 15; Interrogatory 9**.)  In these Requests, Herring seeks documents and communications relating to the location of all voting machines, hardware, servers, and/or software that are or have been affiliated with, developed, facilitated, or funded by the Smartmatic Entities from 2005 to the present.  (RFP 15.)  Similarly, Herring asks Plaintiffs to identify all hardware or software licensed or purchased by any Smartmatic Entity for purposes of its election machines.  (Interrog. 9.)  Plaintiffs lodged numerous objections to these Requests, including that they allegedly are overly burdensome, not relevant to any claim or defense, not reasonably calculated to lead to the discovery of admissible evidence, and are vague and ambiguous.

Similar to the fourth category, Plaintiffs accuse Herring of engaging in defamation by reporting on or airing stories about Smartmatic Entities' connections with other voting machine companies, including the Dominion Entities and ES&S.  (*See* Compl. ¶¶ 90, 92, 95, 96, 99, 101, 102, 104, 105, 106, 111, 112, 117, 123, 124, 127, 162, 163, 135.)  The location of technology created or purchased by, or affiliated with Smartmatic Entities, and information relating to Smartmatic Entities' licensing or purchase of voting technology, is directly relevant to Herring's reasonable belief in the truth, or, at least, substantial truth, of the alleged defamatory statements themselves and therefore subject to discovery.  *Tavouloureas*, 93 F.R.D. at 22; *Benevis,* 2015 WL 12763537 at *4.

While Herring does not agree with Plaintiffs' objections, Herring is willing to consider narrowing the scope of these requests in an effort to avoid burdening the Court with a motion to compel.  Specifically, Herring is willing to narrow RFP 15 to Documents and Communications showing any voting machine technology (e.g. hardware, software, and servers) that Smartmatic Entities developed, created, or contributed to since 2004 that (1) required any updates or patches to address technical failures or inaccurate results/vote tabulation errors or (2) resulted in any governmental investigations or criticisms about security concerns or corruption.

With regard to Interrogatory 9, Herring similarly would be willing to narrow the Interrogatory to ask Plaintiffs to identify all hardware and/or software, including servers licensed or purchased by any Smartmatic Entity for purposes of its election machines from 2004 to the present, including the identity of the company from which the Smartmatic Entity licensed or purchased the hardware or software, and the year in which each Smartmatic Entity purchased or began licensing the hardware and/or software, to the extent such hardware or software (1) required any updates or patches to address technical failures or inaccurate results/vote tabulation errors or (2) resulted in any governmental investigations or criticisms about security concerns or corruption.

This proposed narrowing is subject to reservation against waiver of the broader requests and a right to enforce the broader requests in the future.

Michael E. Bloom, Esq.
January 23, 2023
Page 7

In light of the fact that these areas of inquiry are relevant to Plaintiffs' claims and Herring's defenses, we would like to meet and confer with you about the above proposal.

**F.     Documents and Information Directly Related to Plaintiffs' Allegations**

Several of Herring's Requests seek information specifically related to Plaintiffs' Complaint allegations. (*See, e.g.*, **RFP 17** (seeking documents and communications related to case studies referenced in Paragraph 45 of the Complaint); **19** (seeking documents and communications related to Smartmatic's involvement in U.S. elections referenced in Paragraph 233 of the Complaint); **67** (seeking documents and communications that relate to the Complaint or form the basis for the Complaint); **Interrogatories 13, 14** (requesting information related to audits and audit trails referenced in Paragraph 233 of the Complaint).) Despite this, Plaintiffs artificially narrowed the scope of these Requests to only specific case studies, specific audits performed, and documents "cited in the Complaint."  Of course, documents and information related to (and not just specifically cited in) Plaintiffs' allegations are proper subjects of discovery, and Plaintiffs cannot unilaterally narrow the scope of discovery.  *In re Rail Freight Fuel Surcharge Antitrust Litig. (No. II)*, 2021 WL 1909777 at *5 (D.D.C. May 12, 2021) (noting that relevancy is "broadly construed and encompasses any material that bears on, or that reasonably leads to other matters that could bear on, any issue that is or may be in the case").

We would like to meet and confer with you about Plaintiffs' reasons for artificially narrowing the scope of the Requests and confirm that Plaintiffs will produce all of the documents requested.

**G.     Plaintiffs' "Omnibus Responses"**

As Plaintiffs acknowledge, Herring served each of Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited with unique sets of RFPs, Interrogatories, and RFAs.  However, Plaintiffs chose to respond to each set in a single "Omnibus" response on behalf of "Smartmatic."  As Plaintiffs know, to prevail in its defamation claims, each Smartmatic Entity must prove lost profits as a result of specific reputational harm.  *BYD Co. Ltd. v. Alliance for Am. Mfg.*, 2021 WL 156445 (D.D.C. Apr. 21, 2021) (holding that a corporate plaintiff in a defamation case is limited to actual damages in the form of lost profits); *Airlie Found., Inc. v. Evening Star Newspaper Co.*, 337 F. Supp. 421, 431-32 (D.D.C. 1972) (proximate cause must exist between the alleged harm and the defamatory statement).

While Herring reserves all rights related to all of Plaintiffs' improper "omnibus" Discovery Responses, Herring specifically requests that each Plaintiff serve supplemental answers and responses related to its alleged reputational damage or financial harm, specifically: **RFPs 56, 57, 58, 59, 64, 65, 66, 83, 84, 85, 87, 98** and **Interrogatory No. 8**.  We would like to meet and confer with you about the above proposal.

**H.     Plaintiffs' Artificially Narrowed Time Frames**

In response to numerous Requests, Plaintiffs artificially narrowed the applicable scope and time frames to documents and information relating only to the "2020 Presidential Election," despite Herring

Michael E. Bloom, Esq.
January 23, 2023
Page 8

specifically requesting documents and information originating before the November 3, 2020 general election, including preceding foreign and domestic presidential, primary, and local elections. As discussed in relation to Categories A-E, documents and information from Smartmatic Entities' origination and participation in elections occurring in 2004 and after, reflect on Plaintiffs' reputation, which is relevant in a defamation case and is therefore proper fodder for discovery in a defamation action.

Similar to Plaintiffs' request to Herring, we would like to meet and confer with you regarding the relevant scope and time frames for **RFPs 5, 6, 13, 14, 16, 18, 19, 26, 58, 61, 62, 64, 65, 72, 74, 80, 85, 96, 101** and **Interrogatories 10, 11, 12, 13, 14, 15,** and **16**.

## I.    Miscellaneous Documents

Herring served Requests seeking documents or information about various topics to which Plaintiffs refused to provide a response. Notably, Plaintiffs have not asserted that documents responsive to the Requests do not exist; instead, Plaintiffs objected on the basis of relevance and either refused to respond (**RFPs 60, 63, 88, 91-93, 97** and **Interrogatory 5**) or artificially narrowed the scope of the request in a way that excludes documents that are relevant to Plaintiffs' reputation and Herring's reasonable belief as to the truth or substantial truth of statements about Smartmatic Entities (**RFPs 44, 67, 68, 82**). This suggests that Plaintiffs are in possession or control of responsive documents and refuse to produce them. These Requests seek information and documents about the following topics:

- Any breach of any Smartmatic Entity's voting software or hardware (regardless of whether the hardware or software was used in any election or performed by "white hat" hackers) (**RFP 44**);

- Plaintiffs' fees and costs accrued to date and sources of income (**RFPs 60, 88**);

- Plaintiffs' sources of funding (**RFP 63, Interrogatory 5**);

- Communications (including intra-office communications) between any Smartmatic Entity and a variety of other parties engaged in litigation with Herring relating to Herring's reporting on the November 3, 2020 election or other political issues involving Smartmatic Entities (**RFP 68**);

- Plaintiffs' relationship with Konnech Corporation (**RFPs 91-93**);

- Documents and communications relating to an October 19, 2022 Elon University webinar, "*Engendering Trust in Election Outcomes*" (**RFP 96**); and

- Smartmatic Entities' participation in Los Angeles County's elections in 2020 (**RFP 82**).

These topics are relevant to Smartmatic Entities' alleged damages, Smartmatic Entities' reputation, and Herring's reasonable belief as to the truth or substantial truth of certain alleged defamatory statements, and are therefore discoverable. We would like to meet and confer with you about Plaintiffs' responses to the above Requests.

Michael E. Bloom, Esq.
January 23, 2023
Page 9

**J.      Interrogatory No. 11 – Information Related to Software Updates Conducted on Smartmatic Entities' Voting Technology**

We would like to meet and confer with you about Plaintiffs' answer to Interrogatory No. 11, which requested information related to software updates that occurred on any Smartmatic voting machine equipment through the November 3, 2020 general election. Plaintiffs artificially narrowed the scope of the request to identifying the VSAP 1.0, VSAP 2.0, VSAP 2.1, VSAP 2.2, and VSAP 3.0 technology that was certified by the California Secretary of State in the "2020 Presidential Election" and asserted that Plaintiffs were "not responsible for applying software updates to the voting machines or equipment utilized in the 2020 Presidential Election." In response to Interrogatory No. 11, Plaintiffs artificially narrowed the scope of their answer to the U.S. Presidential Election that occurred on November 3, 2020. But as Plaintiffs know, and as asserted in Herring's Answer, questions and criticisms have been raised by at least one expert retained by the California Secretary of State regarding the "multiple digital and physical vulnerabilities" with Smartmatic Entities' VSAP technology. In addition, Smartmatic Entities faced significant criticism related to the deployment of its VSAP technology during the Los Angeles County primary elections, including that the primary elections were "mired with technical problems that led to lengthy wait times and multiple after-incident reviews" that prompted calls for an investigation by Los Angeles County and the California Secretary of State. (Ans. ¶ 54.) Information about any updates that Smartmatic installed, deployed, or directed during the March 2020 primary elections (and any other updates Smartmatic installed, deployed or directed at any time during the relevant time frame) and remedial measures Smartmatic may have taken to address security or technical concerns raised about its technology is relevant to the Smartmatic Entities' reputation, and Herring's reasonable belief as to the truth or substantial truth of statements about Smartmatic Entities, and are therefore discoverable.

Plaintiffs need to provide a more fulsome response to this Interrogatory, and we would like to meet and confer with you about this issue.

**K.      Document References Pursuant to Fed. R. Civ. P. 33(d)**

Plaintiffs state that they will produce documents sufficient to respond to **Interrogatories 3, 4, 10, and 12-14**. For each of these interrogatories, this is the only response provided. Herring contends that these responses do not comport with Federal Rule of Civil Procedure 33(d). Moreover, in conjunction with this statement, Plaintiffs assert various objections. Herring would like clarification whether it will be withholding responsive documents on the basis of these objections.

Herring acknowledges that, in their discovery letter dated January 3, 2023 (the "Discovery Letter"), Plaintiffs set forth a similar concern regarding Herring's own interrogatory responses that reference document production. Similar to Plaintiffs' contention in their Discovery Letter, Herring contends that Plaintiffs have failed to provide sufficient information to identify the documents they intend to rely upon, aside from repeating select words from the interrogatory itself to vaguely describe the documents in question.

Michael E. Bloom, Esq.
January 23, 2023
Page 10

Furthermore, Herring shares Plaintiffs' concern that the representation that documents will be produced in response to these interrogatories "to the extent that they exist and can be located by a reasonable search" creates a situation where Herring will be unable to discern, in the event that Plaintiffs fail to supplement, whether (i) no such documents exist; or (ii) Plaintiffs are withholding documents on the basis of some purported objection or privilege. Herring is similarly concerned that, as to all aforementioned interrogatories in this section, the interrogatories cannot be fully answered by documents alone. Many of these interrogatories reference, potentially, verbal communications or other actions taken by Plaintiffs that will not be memorialized in writing.

As Plaintiffs suggest in their Discovery Letter, Herring agrees that the parties should meet and confer to discuss this issue and a protocol to set forth "a minimum level of specificity" that the parties must provide when referring documents in response to a given Interrogatory.

## II.    **Potential Narrowed Requests**

In response to certain of Herring's Requests, Plaintiffs lodged numerous objections, including that the Request is purportedly not relevant to any claims or defenses and is not reasonably calculated to lead to the discovery of admissible evidence and is overbroad and unduly burdensome. Plaintiffs further stated that they would be willing to produce responsive documents if the Request is narrowed in scope. (*See*, *e.g.*, Pl.s' Resp. to **RFPs 37, 71, 76, 86, 90, 94, 95, 99, 100, 102;** Pl.'s Ans. to **Interrogatories 6, 7, 8**.) Herring disagrees with Plaintiffs' contention that their objections to the RFPs are appropriate.

However, solely in an effort to come to agreement and avoid unnecessary motion practice, Herring proposes narrowing the scope of each Request as set forth in Addendum A to this letter. We would like to meet and confer with you regarding Plaintiffs' objections and Herring's proposals. This proposed narrowing is subject to reservation against waiver of the broader requests and a right to enforce the broader requests in the future.

This letter is not intended to, and does not, identify all of the deficiencies in Plaintiffs' Discovery Responses, and Herring reserves all rights to address additional and other deficiencies contained in those Discovery Responses. In the meantime, we hope that Plaintiffs will address the improper objections and other deficiencies identified in this letter so that Herring can avoid unnecessary motion practice. If we cannot come to an agreement about these issues, Herring will have no choice but to file a motion to compel. We look forward to discussing these issues with you at our upcoming January 25 and January 27 meet and confer conferences.

Best regards,

Brian W. Ledebuhr
Shareholder

BWL

### Addendum A

This proposed narrowing is subject to reservation against waiver of the broader requests and a right to enforce the broader requests in the future.

| RFP | ROG | SUBJECT | PROPOSED NARROWING |
|---|---|---|---|
| 37 | | Documents and Communications regarding any Smartmatic Entity's operations, from that Smartmatic Entity's inception to the present, in Venezuela, including but not limited to participation in Venezuelan elections, as well as oral agreements, written contracts, licensing agreements, noncompete agreements, non-solicitation agreements, cooperation agreements, common-interest agreements, joint defense agreements, settlement agreements, and any other form of agreement with Bizta Corp. and CANTV. | Documents and Communications related to any Smartmatic Entity's Venezuela operations to the extent they relate to:<br>- Funding or support by the Venezuelan government or Hugo Chávez's campaign or government<br>- Any Smartmatic Entity's participation or role in Venezuelan elections |
| 71 | | All discovery and hearing information (i.e., written discovery requests, written discovery responses, subpoenas, subpoena responses, open records act requests, open records act responses, deposition notices, deposition transcripts, deposition videos, hearing transcripts, and similar material) related to, arising out of, or produced in the lawsuits filed by any Smartmatic Entity relating to the U.S. 2020 local, state, and federal elections, including but not limited to *Smartmatic USA Corp., et al. v. Fox News Network, LLC, et al.*, Index No. 151136-2021 (New York Cty., NY); *Smartmatic USA Corp. and SGO Corporation Unlimited v. Newsmax Media, Inc.*, Case No. N21C-11-028 EMD (Del. Super. Ct.); *Smartmatic USA Corp., et al. v. Sidney Powell*, Case No. 21-cv-02995 (D.D.C.); *Smartmatic USA Corp., et al. v. Lindell, et al.*, Case No. 22-cv-00098 (D. Minn.). | All hearing and deposition transcripts<br><br>All of Smartmatic's responses and objections to opposition discovery requests (including Documents produced)<br><br>All third-party subpoenas and FOIA (or similar) requests issued by any party and responses to same (including Documents produced)<br><br>All expert reports |
| 76 | 6 | (**RFP 76**) Portions of personnel files of all employees and personnel of Smartmatic Entities who have worked on any Smartmatic Entity's voting | Personnel files/identification of any employees against whom any |

1

| RFP | ROG | SUBJECT | PROPOSED NARROWING |
|---|---|---|---|
| | | equipment or software utilized or employed in the U.S. 2020 local, state, and federal elections that refer to or address any disciplinary actions, errors, problems or concerns relating to (1) software coding; (2) design or maintenance of any Smartmatic Entity's machines; (3) political affiliations or actions; or (4) public commentary on the 2020 Presidential Election.<br><br>(**ROG 6**) Identify all current or former employees of, or personnel affiliated with, any Smartmatic Entity, including but not limited to those who have been or are currently employed by the U.S. government or in any federal, state or city-wide official, office or campaign, who have been or are referenced in any criminal charge, civil complaint or administrative proceeding in which any Smartmatic Entity was identified as a defendant, respondent or subject of a government investigation. | disciplinary action of any kind was taken related to the identified issues |
| 86 | | All meeting minutes and other Documents concerning meetings of any Smartmatic Entity Board of Directors. | Any meeting minutes, Documents, or Communications relating to any Board meeting to the extent any security breaches or concerns, alleged corruption or criminal activity, government investigations relating to concerns about security breaches or alleged corruption or criminal activity, or Herring was discussed (from inception to present) |
| 90 | | All Documents concerning projections of any Smartmatic Entity's future business plans, including but not limited to prospective contracts and clients. | Business plans to the extent related to any Smartmatic Entity's plans relating to elections or voting technology |
| 94 | | Documents and Communications concerning any goods provided or services performed by any Smartmatic Entity in connection with the United States Department of Defense from 2004 to the present. | Narrow to 2009 to the present |

| RFP | ROG | SUBJECT | PROPOSED NARROWING |
|-----|-----|---------|--------------------|
| 95 | | Documents and Communications concerning any goods provided or services performed by any Smartmatic Entity in connection with the Federal Voting Assistance Program from 2004 to the present. | Narrow to 2018 to the present |
| 99 | | Documents and Communications, including any written common interest agreements, between or among (i) any Smartmatic Entity, including its attorneys, including but not limited to Benesch, Friedlander, Coplan & Aronoff LLP and Robins Kaplan LLP; and (ii) any Dominion Entity, Eric Coomer, Ruby Freeman and/or Shaye Moss, or any of their respective attorneys or others, including but not limited to Susman Godfrey LLP, Clare Locke LLP, Brownstein Hyatt Farber Schreck LLP, Rodney Smolla (President, Vermont Law School), Snell & Wilmer L.L.P., Farnan LLP, Cain & Skarnulis PLLC, Recht Kornfeld PC, Dowd Bennett LLP, United To Protect Democracy, Inc., DuBose Miller, Ballard Spahr LLP, Kurt G. Kastorf Law Firm, Michael Linhorst, Willkie Farr & Gallagher, LLP, Ballard Spahr, David A. Schulz (Floyd Abrams Lecturer in Law and Senior Research Scholar in Law, Yale Law School), the Yale Law School Media and Information Access Clinic, Floyd Abrams (Senior Counsel, Cahill Gordon & Reindel LLP), the Yale Law School Abrams Institute for Freedom of Expression at the Information Society Project, Lee Levine, the Media Law Resource Center, and/or George Freeman (Executive Director, Media Law Resource Center). | Narrow to any Communications and common interest/joint defense agreements with any plaintiff in any voting machine litigation or with counsel for any party in the case captioned *Herring Networks, Inc. v. AT&T Inc. et al.* (San Diego Super. Ct. Case No. 37-2022-00008623-CU-BC-CTL) |
| 100 | | Documents and Communications concerning any analysis performed in connection with security and/or vulnerability assessments for voting machines and software, including but not limited to any such analysis performed by MITRE, the National Election Security Laboratory, Professor J. Alex Halderman, Harri Hursti or any state or federal agency, including but not limited to the Cybersecurity and Infrastructure Security Agency. | Limit to 2018 to the present |
| 102 | | Documents and Communications related to any Smartmatic Entity's efforts to distinguish its voting hardware and software technology from any Smartmatic Entity competitor's voting hardware and software technology, including but | Limit to 2006 to the present |

| RFP | ROG | SUBJECT | PROPOSED NARROWING |
|---|---|---|---|
|  |  | not limited to any Dominion Entity's voting hardware and software technology, from that Smartmatic Entity's inception to the present. |  |
|  | 7 | Identify all instances in which any Smartmatic Entity's voting machines, equipment, hardware, software and/or servers were not certified by any national, state, county or local governmental agency in either the United States or abroad, as well as the reason for the lack of certification. | Limit to instances in which certification did not occur because of security concerns |
|  | 8 | From the time any Smartmatic Entity began performing any business in the United States, provide the amount of annual revenue derived by each Smartmatic Entity in each state. | Narrow definition of "performing any business" to obtained a contract with any federal, state or local agency to conduct or consult about elections |

# EXHIBIT 1-J



Chicago
New York
Washington, DC
London
San Francisco
Los Angeles
Singapore
Dallas
Miami
vedderprice.com

February 9, 2023

Jeanah Park
Shareholder
+1 312 609 7532
jpark@vedderprice.com

**VIA EMAIL**

Olivia E. Sullivan, Esq.
Benesch, Friedlander, Coplan & Aronoff LLP
71 South Wacker Drive
Suite 1600
Chicago, IL 60606-4637
osullivan@beneschlaw.com

Re:    *Smartmatic USA Corp., et al. v. Herring Networks, Inc. d/b/a One America News Network* – Case No. 1:21-cv-02900-CJN (U.S. District Court for the District of Columbia)

Dear Ms. Sullivan:

Thank you for meeting and conferring with us on January 27 and January 31, 2023 concerning the deficiencies in Plaintiffs' Omnibus Responses to Herring's First Set of Written Discovery Requests (the "Responses"), which include Plaintiffs' objections and responses to Herring's First Sets of Requests for Production ("RFPs"), Interrogatories, and Requests for Admission ("RFAs" and, collectively, the "Requests").[1]  As you know, we outlined the deficiencies in detail in our letter dated January 23, 2023 (the "January 23 Letter").  I'm writing to summarize our conversations and note open issues that require further discussion or follow-up.  Please note that we request responses by February 15, 2023 to all proposals, which we sent to you in writing in the January 23 Letter and/or discussed during our meet and confer conference on January 25, January 27, and January 31, 2023.

**Potential Narrowed Requests**

In the Discovery Responses, Plaintiffs identified several RFPs and Interrogatories that Plaintiffs expressed a willingness to respond to if Herring narrowed them.  (*See, e.g.*, Pls.' Resp. to **RFPs 37, 71, 76, 86, 90, 94, 95, 99, 100, 102;** Pl.s' Answers to **Interrogs. 6, 7, 8**.)  While Herring disagrees with Plaintiffs' objections, in the interest of resolving potential discovery disputes, we provided you with proposals to narrow each of these requests in the January 23 Letter.  During our January 27 meet and confer, while we were prepared to discuss the proposals, you indicated you preferred to respond in writing and would do so in one week, on **February 3**.  We again raised the proposed narrowed topics on January 31, but you repeated that you preferred to respond in writing and would do so by the end of the week (i.e.,

---

[1] Capitalized terms not specifically defined herein shall have the meanings assigned to them in Herring's First Set of Requests for Production to Smartmatic USA Corp., Herring's First Set of Requests for Production to Smartmatic International Holding B.V., and Herring's First Set of Requests for Production to SGO Corporation Limited.

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.

Olivia E. Sullivan, Esq.
February 9, 2023
Page 2

February 3).  However, as of the date of this letter, we have not received any response.  We ask that you respond to these proposals no later than February 15.

## The Location and Identity of Smartmatic Voting Technology (RFP 15; Interrogatory 9)

In the January 23 Letter, we noted Plaintiffs' objections to RFP 15 and Interrogatory 9, which seek Documents, Communications, and information relating to the location of all voting machines, hardware, software, and/or servers that are or have been affiliated with, developed, facilitated, or funded by the Smartmatic Entities.  We pointed out that this information is relevant to Herring's reasonable belief in the truth, or, at least, substantial truth, of the alleged defamatory statements themselves and therefore subject to discovery.  (*See* January 23 Letter at 6.)  While Herring disagrees with Plaintiffs' objections, in the interest of resolving any discovery disputes, we proposed narrowing RFP 15 to Documents and Communications showing any voting machine technology (e.g., hardware, software, and servers) that Smartmatic Entities developed, created, or contributed to since 2004 that (1) required any updates or patches to address technical failures or inaccurate results/vote tabulation errors or (2) resulted in any governmental investigations or criticisms about security concerns or corruption.  We proposed narrowing Interrogatory 9 similarly.

During our January 27 meet and confer conference, you indicated that you would respond to our proposals in writing.  However, you have not yet responded and we ask that you do so no later than February 15.

## U.S.-Based Investigations and Criticisms of Smartmatic Entities and Their Election-Related Technology (RFPs 13, 21, 22, 23, 24, 25, 27, 28, 35, 36, 40, 62; Interrogatories 4, 12; RFAs 4, 14, 15, 18, 53, 54)

This category of Requests seeks Documents and Communications relating to (i) investigations conducted of Smartmatic Entities by U.S. federal, state, and local governmental bodies; (ii) U.S.-based criticisms of or concerns about Smartmatic Entities; and (iii) potential contracts lost by or certifications not granted to Smartmatic Entities from U.S. election authorities because of potential concerns with election security, vulnerabilities, vote tabulation errors, or alleged corrupt business practices**.**  In our January 23 Letter and during our January 27 meet and confer conference, we discussed at length that this category of Requests reflects on Plaintiffs' respective reputations, which are relevant in a defamation case and are appropriate for discovery in a defamation action.  *Faigin v. Kelly*, 184 F.3d 67, 83 (1st Cir. 1999) (finding that evidence of plaintiff's reputation prior to the publication of the alleged defamatory statements was relevant to the truth of the alleged defamatory statements and plaintiff's alleged damage to his reputation); *Camphausen v. Schweitzer*, 2010 WL 4539452, at *3 (N.D. Ill. Nov. 3, 2010) (granting defendant's motion to compel discovery in defamation case concerning plaintiff's prior misconduct and reputation).  We also discussed that these topics directly relate to Herring's reasonable belief in the truth, or, at least, substantial truth, of the alleged defamatory statements themselves and are appropriate subjects of discovery.  *Tavouloureas v. Piro*, 93 F.R.D. 11, 22 (D.D.C. 1981) (granting defendant's motion to

Olivia E. Sullivan, Esq.
February 9, 2023
Page 3

compel where information sought would bear on the truth or falsity of the allegedly defamatory statements).

Notwithstanding the authority we cited, with regard to RFP 23 (seeking Documents and Communications related to Representative Maloney's 2006 letter to the U.S. Treasury Department and the related CFIUS investigation), you asserted that these documents are not relevant to any claims or defenses, and stated Plaintiffs are standing on their objections.  Unless you inform us that you have changed your position by February 15, we are at an impasse regarding RFP 23 and will be forced to seek Court intervention.

Similarly, with regard to RFP 35 (seeking Documents and Communications related to Smartmatic's participation in the 2006 Chicago primaries) and RFP 36 (seeking Documents and Communications related to Smartmatic's contract with Allegheny County and why that contract was terminated), you asserted these Documents and Communications are not relevant to any claims or defenses, notwithstanding that Smartmatic's disastrous performance in the 2006 Chicago primaries and its connections to Venezuela prompted the CFIUS investigation into Smartmatic, and stated Plaintiffs are standing on their objections.  Unless you inform us that you have changed your position by February 15, we are at an impasse regarding RFPs 35 and 36 and will be forced to seek Court intervention.

With regard to RFPs 27, 28, and 40 (which seek Documents and Communications related to alleged corrupt business practices and concerns raised by the DOJ related to the 2004 Venezuelan election and the 2016 Philippines election), we explained to you that the defamatory statements Plaintiffs allege Herring made relate directly to Smartmatic's role in foreign elections, including elections in Venezuela. You informed us that you would reconsider your objections as they relate to Smartmatic's role in Venezuelan elections.  Please advise no later than February 15 with your position as to whether you will produce responsive documents related to Venezuela.

With regard to Documents and Communications related to the 2016 Philippines election, however, you informed us that you would stand on your relevance objections.  Unless you inform us you have changed your positions by February 15, we are at an impasse regarding this category of documents in RFPs 27, 28, and 40 and will be forced to seek Court intervention.

With regard to RFPs 21 and 22 (seeking Documents and Communications exchanged with the U.S. or foreign governments related to Smartmatic Entities' voting technology), we pointed out that Smartmatic's responses to these RFPs artificially narrowed the scope to Documents/Communications relating to allegations of election fraud or tampering.  We discussed that we also are seeking Documents and Communications relating to concerns raised about security, vulnerabilities, vote tabulation errors, corruption, or bribery.  You stated that you would consider producing Documents and Communications responsive to these issues as well.  Please share your position regarding these RFPs by February 15.

With regard to RFP 62 and Interrogatory 12 (seeking Documents and Communications demonstrating negative feedback or criticism concerning any Smartmatic Entities' voting technology from formation to present), we discussed both in our January 23 Letter and during the January 27 meet and

Olivia E. Sullivan, Esq.
February 9, 2023
Page 4

confer that Plaintiffs artificially narrowed their responses to Documents and Communications relating to the 2020 election. You raised that responding to the RFP and Interrogatory as written would be unduly burdensome, notwithstanding that the parties have not exchanged search terms, let alone hit reports to support a burden or proportionality objection. Nevertheless, solely to avoid motion practice on this issue, we proposed narrowing both Requests to negative feedback or criticism expressed by any governmental entity or agency, any journalist or media entity, or any cybersecurity expert. We also agreed to narrow the timeframe of both Requests to 2004 to the present. You stated you would consider this proposal and get back to us. Please advise by February 15 where you stand on this proposal.

With regard to RFPs 24 and 25 (seeking Documents and Communications relating to certification, authentication, validation, or lack thereof of any Smartmatic Entity's voting machines by any U.S. or foreign governmental entity or by PricewaterhouseCoopers (PwC), SLI Global, or the Carter Center), you stated that you would inquire as to whether there any Documents or Communications received from or exchanged with PwC, SLI Global, or the Carter Center and if not, you would represent as such. You also stated that you would reconsider Plaintiffs' relevance objections to these Requests. Please advise by February 15 where you stand regarding these Requests.

With regard to RFP 13 (seeking Documents and Communications relating to any agreement between any Smartmatic Entity and any state, county, or local government from 2005 to the present) and Interrogatory 4 (asking Plaintiffs to identify all entities with whom any Smartmatic Entity sought a contract, the work performed term limit, and reason for termination or non-renewal), we discussed that while Plaintiffs agreed to produce responsive documents, Plaintiffs artificially narrowed the timeframe to 2018 to the present. We discussed that whether and to what extent any Smartmatic Entities lost any bids or contracts (or any contracts were not renewed) relates to the Smartmatic Entities' reputations, including the extent to which its customers lost confidence in the reliability or security of the Smartmatic Entities' technology. You stated that you would reconsider Plaintiffs' relevance objections if we agreed to narrow the timeframe of these Requests. You also informed us that one of the reasons you selected 2018 as the start date is that was the approximate time Smartmatic reentered the U.S. market. However, we note that in Plaintiffs' answers to the second set of Interrogatories propounded by Newsmax Media, Inc. in the matter *Smartmatic USA Corp., et al. v. Newsmax Media, Inc.*, (Del. Sup. Ct., C.A. No. N21C-11-028-EMD), Plaintiffs stated that Smartmatic reentered the U.S. market in 2016. While we disagree with Plaintiffs' objections, we would be willing to narrow the time limit of RFP 13 and Interrogatory 4 to 2006 (e.g., the time that Smartmatic Entities' acquired Sequoia). Please advise by February 15 whether you will be willing to produce responsive documents and supplement Plaintiffs' response to Interrogatory 4 as narrowed.

**<u>Foreign Investigations and Criticisms of Smartmatic Entities and Their Election-Related Technology Used or Proposed for Use in Foreign Elections (RFPs 11, 26, 27, 29, 30, 79; Interrogatories 4, 12</u>)**

This category of Requests seeks Documents and Communications relating to (i) investigations by governmental agencies or authorities outside of the United States; (ii) criticisms of or concerns about Smartmatic Entities raised about elections outside of the United States; and (iii) potential contracts lost or

Olivia E. Sullivan, Esq.
February 9, 2023
Page 5

certifications denied by foreign election authorities because of concerns with election security, vulnerabilities, vote tabulation errors, or alleged corrupt business practices. In our January 23 Letter and during our January 31 meet and confer call, we discussed that, like the above category, this category of Requests relates to Smartmatic Entities' reputation and the truth or substantial truth of the allegedly defamatory statements made by Herring, and are therefore a proper subject for discovery.

RFP 11 seeks the human resources records of Antonio Mugica, Roger Piñate, Alfredo Anzola, Marlon Garcia, Neil Baniqued, and Mauricio Herrera related to their involvement in procuring services with (Philippine election authority) Comelec or in any Philippine election from May 2016 to the present. Smartmatic Entities' objected based on relevance (among other grounds) and stated they refused to produce responsive documents. Solely in the interest of avoiding motion practice on this issue, we agreed to narrow RFP 11 to human resources records reflecting any investigation conducted by Smartmatic Entities of these individuals. You stated you would consider this narrowed proposal and get back to us. Please advise by February 15 where you stand regarding this proposal.

RFP 27 seeks Documents and Communications regarding issues or concerns raised about any Smartmatic Entity's alleged corrupt business practices, including but not limited to issues or concerns raised by the United States Department of Justice related to the 2004 Venezuelan election and any alleged violation of the Foreign Corrupt Practices Act in connection with the 2016 Philippines election. Smartmatic Entities lodged a relevance objection (among others) to this RFP, but stated during our January 31 meet and confer call that it would reconsider its position regarding Documents and Communications relating to Venezuelan elections. Please advise by February 15 where you stand regarding this issue.

With regard to Documents and Communications relating to the 2016 Philippines election, however, you stated that Plaintiffs would stand on their objections. Unless you inform us that you have changed your position by February 15, we are at an impasse regarding this issue in RFP 27 and will be forced to seek Court intervention.

RFP 29 seeks Documents and Communications regarding Comelec's consideration of whether it will purchase or lease new equipment or software from any Smartmatic Entity for the upcoming 2025 midterm elections because of concerns that the equipment or software will malfunction and/or are insecure. In their Responses, Smartmatic Entities stated they would not produce responsive documents based on their objections. During our January 31 meet and confer call, you stated that you would reconsider Smartmatic's position regarding the 2025 election. Please advise by February 15 where you stand regarding this issue.

RFP 79 seeks Documents and Communications concerning any vendors or other contractors or affiliates based outside the United States that manufacture, produce, license, or are otherwise involved with any hardware, software, or other components used in any Smartmatic Entity's voting equipment, systems, machines and/or software from 2004 to the present. Once again, in their Responses, Smartmatic Entities stated they would not produce responsive documents based on their objections. During our January 31 meet and confer, we stated that while Herring reserves all rights as to Plaintiffs' improper objections, solely to avoid motion practice, we propose narrowing the scope of RFP 79 to vendors or

Olivia E. Sullivan, Esq.
February 9, 2023
Page 6

affiliates involved in any election with any Smartmatic Entity since 2004 in which a governmental entity has questioned the security or accuracy of any Smartmatic Entity technology or has raised concerns about the vulnerability of such technology.  You stated that you would consider this proposal and get back to us.  Please advise by February 15 where you stand regarding this proposal.

RFP 26 seeks Documents and Communications regarding issues or concerns raised about any Smartmatic Entity's voting machines, equipment, hardware, software, and/or servers, including but not limited to issues or concerns about a potential election security breach, vulnerabilities, or vote tabulation errors, from the formation of all Smartmatic Entities to the present, including Documents and Communications concerning elections in Venezuela, the Philippines, and Kenya.  In our January 23 Letter and during the January 31 meet and confer, we discussed that Plaintiffs artificially narrowed the scope of their Responses to the 2020 presidential election in the United States.  Solely to avoid motion practice on this topic, we agreed to narrow the scope of this RFP to Documents and Communications related to issues or concerns raised by any governmental entity or agency, any journalist or media entity, or any cybersecurity expert.  You stated that you would consider this proposal and get back to us.  Please advise by February 15 where you stand regarding this proposal.

**Formation and Origination of Smartmatic and Its Connections to Venezuela (RFPs 8, 9, 10, 38, 39; Interrogatory 15)**

This category of inquiry seeks Documents and Communications related to the Smartmatic Entities' origins, connections with Venezuela, and overall corporate structure.  As we discussed in our January 23 letter and during the January 31 meet and confer call, this category seeks information related to, at minimum, Smartmatic's reputation and the truth or substantial truth of the allegedly defamatory statements made by Herring, and is therefore proper fodder for discovery.

RFP 10 seeks all versions of all Smartmatic Entities' websites from inception to present.  Plaintiffs refused to produce documents responsive to this Request based on objections of relevance, burden, and proportionality, asserting that Herring can obtain this information from the "Wayback Machine."  We raised that Herring is not required to seek this information from an alternative source that presents authentication, hearsay, and other evidentiary issues, particularly when Smartmatic Entities are the only parties in possession of all versions of their own websites.[2]  We also stated that as to Plaintiffs' relevance objections, if Smartmatic Entities' removed information suggesting they were connected to Venezuela or were founded by Venezuelan citizens to shield this information from the public following criticism raised by Representative Maloney or the CFIUS, such actions would be relevant.

We also stated that while we don't know what Smartmatic Entities have access to, to the extent Smartmatic Entities archived versions of its websites over the years, it likely only archived material updates to the websites.  We also clarified that we are most interested in information relating to Smartmatic

---

[2] Notably, this is an argument Smartmatic Entities have made themselves in the *Smartmatic v. Lindell* case, Case No. 22-cv-00098.  *See* Smartmatic Mot. to Compel, D.E. 80 at 26 (citing *Firstcom, Inc. v. Qwest Corp.*, 2006 WL 8443647, at *4 (D. Minn. Feb. 16, 2006) ("The rules of discovery do not permit a party to withhold materials simply because the opponent could discover it on his or her own.")).

Olivia E. Sullivan, Esq.
February 9, 2023
Page 7

Entities' founding, history, ownership, and formation, as well as any information contained in a typical "About Us" tab on a corporate website. You stated that you would reconsider Plaintiffs' response to RFP 10 and get back to us. Please advise by February 15 where you stand regarding this issue.

RFP 38 seeks Documents and Communications regarding the currently pending international arbitration between SGO Corporation Limited and the Bolivarian Republic of Venezuela (ICSID Case No. ARB(AF)/22/2), with John Henry Rooney (U.S.) appointed as the arbitrator. Once again, Plaintiffs refused to produce documents responsive to this RRP. We discussed Plaintiffs' improper relevance and burden objections, and solely to avoid motion practice on this issue, we suggested narrowing the scope of this Request to pleadings, filings, and communications with the arbitrator. You stated that you would produce pleadings and filings from the proceeding, and noted you would consider producing communications with the arbitrator and get back to us. Please advise by February 15 where you stand.

RFP 39 seeks Documents and Communications relating to Lord Mark Malloch-Brown and any Smartmatic Entity, including but not limited to Documents and Communications relating to his June 21, 2015 interview regarding Smartmatic, as referenced in Paragraph 343 of the Complaint. Plaintiffs refused to produce documents responsive to this RFP. During our January 31 meet and confer conference, we pointed out that documents responsive to this request are clearly relevant to Herring's truth and substantial truth defense (among others) because Plaintiffs accuse Herring of allegedly defaming Smartmatic by making statements related to Smartmatic Entities' relationship with Lord Malloch-Brown.

Solely to avoid motion practice on this issue, we proposed narrowing the scope of RFP 39 to Documents and Communications relating to Malloch-Brown's role at any Smartmatic Entity, his job description and responsibilities, any policies or initiatives he was involved in or oversaw at any Smartmatic Entity, the interview cited in Paragraph 343 of the Complaint, or the reasons for his departure from the Smartmatic Entities. You stated that you would consider this proposal and get back to us. Please advise by February 15 where you stand regarding this proposal and if you've agreed to produce responsive documents.

RFPs 8 and 9 seek Documents regarding the formation of any Smartmatic Entity and demonstrating Smartmatic Entities' corporate governance and ownership structure. We discussed that Plaintiffs artificially narrowed the scope of their responses to existing organizational chart, citing relevance and proportionality objections. You highlighted that SGO Corp is public and that its docs are all publicly available, and we raised that Herring is not required to seek this information from an alternative source that presents authentication, hearsay, and other evidentiary issues. Solely to avoid motion practice on this issue, we suggested narrowing the scope of these Requests to any corporate filing made with any governmental entity on behalf of any Smartmatic Entity (including, for example, articles

Olivia E. Sullivan, Esq.
February 9, 2023
Page 8

of organization, capitalization tables, membership lists).  You stated that you would consider this proposal and get back to us.  Please advise by February 15 where you stand regarding this proposal.

**Smartmatic Entities' Relationship with Dominion Entities (RFPs 31, 33, 34, 81; Interrogatory 17)**

As discussed in our January 23 Letter and during our January 25 and 31 meet and confer conferences, information relating to Smartmatic Entities' relationship with the Dominion Entities is relevant to Plaintiffs' reputation Plaintiffs' reputation, which is relevant in a defamation case.  Additionally, documents relating to this category are directly relevant to Herring's reasonable belief in the truth, or, at least, substantial truth, of the alleged defamatory statements themselves.

We are in receipt of Michael Bloom's letter dated February 3, 2023 (the "February 3 Letter"), which concerns those portions of the meet-and-confer conferences relating to Plaintiffs' discovery requests and Herring's objections and responses to the same.  While we will provide a more fulsome response to the February 3 Letter under separate cover, we note that Plaintiffs also proposed to produce certain Documents and Communications in connection with Dominion.  (February 3 Letter at 2-3.)  Our response to Plaintiffs' proposal is as follows.

RFP 34 seeks Documents relating to Smartmatic Entities' relationship with Premier Election Solutions (formerly known as Diebold Election Systems) ("Premier").  Plaintiffs refused to produce documents responsive to this RFP, primarily based on their relevance objections.  During our meet and confer conference, we asked you to confirm whether any responsive documents exist so we can consider whether to further discuss this RFP.  You stated you would inquire and get back to us.  In the February 3 Letter, Plaintiffs proposed producing Documents and communications between Smartmatic and Premier "related to the negotiation of any agreement between Smartmatic and Premier concerning the 2020 U.S. Presidential election, to the extent they exist and can be located by a reasonable search."  However, we do not agree that this artificial limitation—namely, to the 2020 U.S. Presidential election only—is appropriate.  By way of example, the relationship between Smartmatic Entities and Premier before the 2020 U.S. Presidential election is both relevant and likely to lead to the discovery of admissible evidence concerning the truth, or substantial truth, of certain of the alleged defamatory statements.  And, we note that Plaintiffs have not yet advised as to whether any documents responsive to this request even exist, regardless of the application of Plaintiffs' artificial limitation.  Please advise by February 15 whether documents responsive to RFP 34 exist, and if so, whether Plaintiffs will reconsider expanding the scope of its proposal beyond the 2020 U.S. Presidential election.

RFPs 31 and 81 seek Documents and Communications relating to any business relationship between any Smartmatic Entity and any Dominion Entity, including contracts, licensing agreements, joint defense, common interest, or cooperation agreements.  Plaintiffs artificially narrowed the scope of their response to this RFP to sales and licensing agreements and agreements relating to the use of Smartmatic and Dominion Entities' technology from 2018 to the present.  In the February 3 Letter, Plaintiffs advised that they agreed to produce "documents and communications regarding (1) sales or licensing agreements between Smartmatic and Dominion, (2) any use by Dominion of voting-technology software owned by Smartmatic, (3) any use by Smartmatic of voting technology software owned by Dominion, from January

Olivia E. Sullivan, Esq.
February 9, 2023
Page 9

1, 2018 to present; [and] [(4)] any communications between Smartmatic and Dominion related to OANN's defamatory statements." While we agree that these documents are responsive and we look forward to reviewing them, we cannot discern whether Plaintiffs propose a time limitation in connection with their proposed (1) and (2) above, and we continue to disagree with Plaintiffs' artificial time limitation for their proposed (3). During our meet and confer conferences, we discussed that **any** agreement between Smartmatic and Dominion Entities are relevant to Herring's defenses. Moreover, in addition to the categories proposed by Plaintiffs above, solely in the interest of resolving discovery disputes (and reserving our rights) we proposed narrowing the scope of this RFP to settlement agreements, cooperation agreements (e.g., related to government investigations), and joint defense or common interest agreements. You stated that you did not believe that joint defense or common interest agreements between Smartmatic and Dominion Entities are relevant to any claims or defenses, and refused to state whether any such agreement even exists. You stated, however, that you would consider our proposal regarding RFPs 31 and 81. Please advise by February 15 whether you have changed your position regarding joint defense or common interest agreements, and where you stand regarding the production of **all** agreements between Smartmatic and Dominion Entities.

RFP 33 seeks Documents and Communications relating to Smartmatic Entities' relationship with Sequoia Voting Systems, Inc. or any other Sequoia entity (collectively, "Sequoia"), including contracts, licensing agreements, joint defense, common interest, or cooperation agreements. Plaintiffs artificially narrowed the scope of their response to this RFP to the contracts evidencing the acquisition and divestiture of Sequoia. During our meet and confer conference, we pointed out that in addition to the documents reflecting Smartmatic Entities' acquisition and divestiture of Sequoia, at minimum, Plaintiffs must produce sales and licensing agreements, and Communications relating to the acquisition and divestiture of Sequoia. You stated that you would consider this proposal and get back to us. In the February 3 Letter, Plaintiffs proposed producing all "Documents and Communications relating to Smartmatic's decision to acquire and then to divest Sequoia," as well as "Communications between Smartmatic and Dominion related to Smartmatic's divestiture and sale of Sequoia." Plaintiffs' proposal, however, excludes the sales and licensing agreements that we discussed during our meet and confer conference. Please advise by February 15 where you stand regarding this proposal.

### Documents and Communications Directly Related to Plaintiffs' Allegations (RFPs 17 and 19)

RFPs 17 and 19 seek Documents and Communications directly related to the allegations contained in Paragraphs 45 and 233 concerning case studies that allegedly demonstrated the accuracy and efficiency of Smartmatic Entities' technology. While Plaintiffs agreed only to produce the case studies and audit trails purportedly referenced in the Complaint, we discussed that drafts of the case studies and Communications relating to these case studies and audit trails also are relevant. However, you refused to produce Communications relating to case studies and audit trails, asserting that doing so would be overly burdensome. You did not explain the extent to which Plaintiffs investigated the number of potentially

Olivia E. Sullivan, Esq.
February 9, 2023
Page 10

responsive Communications.  Unless Plaintiffs change their position regarding Communications, we are likely at an impasse on this issue.  Please advise by February 15 whether Plaintiffs' position has changed.

**Interrogatory No. 11**

This interrogatory asked Plaintiffs to identify instances when any Smartmatic Entity's equipment received software updates or any other maintenance from January 1, 2020 to November 3, 2020, and for each instance, identify the number of machines impacted, the nature of the update or maintenance, the relevant date, the location of the machines on the date of the update or maintenance and on November 3, 2020, whether the machines were employed in the U.S. 2020 local, state, and federal elections, and any problems, concerns or issues that arose as a result of the updates or maintenance.

Plaintiffs' answer identified only the VSAP version of Smartmatic technology certified by the California Secretary of State.  After discussion during our January 31 meet and confer conference, Plaintiffs agreed to supplement their answer to Interrogatory 11.  We ask that you do so by February 15.

**RFP 44**

This RFP seeks Documents and Communications related to any breach of any Smartmatic Entity's voting software or hardware from the formation of any such Smartmatic Entity to the present.  Plaintiffs artificially narrowed their response to this RFP to documents reflecting an "actual breach" of any Smartmatic technology.  However, we discussed during our meet and confer call that we also are seeking Documents and Communications related to any breach accomplished by a "white hat" hacker and any related analysis.  You stated that you would consider this proposal and get back to us.  Please advise by February 15 where you stand regarding this proposal.

**RFP 82**

This RFP seeks Documents and Communications concerning any Smartmatic Entity's efforts to secure a contract with the County of Los Angeles, State of California, to provide voting equipment and/or software for the U.S. 2020 local, state, and federal elections.  We discussed that Plaintiffs artificially narrowed its response to this Request to exclude Communications with Los Angeles County regarding Smartmatic Entities' participation in the 2020 elections in Los Angeles County.

You informed us that Smartmatic Entities executed a nondisclosure agreement with Los Angeles County ("NDA") and that the NDA precludes Smartmatic Entities from producing responsive Communications.  But we discussed that the Court has now entered a protective order and Plaintiffs' concerns about confidentiality are addressed through that protective order.  We requested that you produce the NDA to us and also produce responsive Communications.  You stated that you would consider doing so and would get back to us.  Please advise by February 15 where you stand regarding this proposal.

**General Objections**

Olivia E. Sullivan, Esq.
February 9, 2023
Page 11

        During the course of our discussions on January 25, 27 and 31, 2023, we also discussed whether
Smartmatic intended to produce documents subject to the objections that were stated in its discovery
responses.  The parties both agreed that once they determine whether documents were being withheld
from productions based on objections, each party would confirm which documents were withheld pursuant
to objections, and instances where no non-privileged responsive documents exist, in supplemental
discovery responses for both requests for production and interrogatories.

        Finally, this is not intended to be an exhaustive summary of the deficiencies in Plaintiffs'
Responses and or Herring's objections to Plaintiffs' Responses.  Nor is the above a complete recitation of
the parties' discussions regarding those deficiencies or Herring's objections to Plaintiffs' responses.
Herring reserves all rights.

Very truly yours,

Jeanah Park
Shareholder


JP/dm

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SMARTMATIC USA CORP.,
SMARTMATIC HOLDING B.V., AND
SGO CORPORATION LIMITED,

    Plaintiffs,

 v.

HERRING NETWORKS, INC., D/B/A
ONE AMERICA NEWS NETWORK,

   Defendant.

No. 1:21-cv-02900-CJN

### ORDER GRANTING DEFENDANT'S MOTION TO COMPEL DISCOVERY RESPONSES

 Upon consideration of OAN's Motion to Compel Discovery Responses and any response, pleadings, exhibits, and applicable law, the Court FINDS that OAN's Motion should be and hereby is GRANTED. Therefore, it is ORDERED that Plaintiffs shall provide complete answers to Interrogatory Nos. 8, 12, 13, 14, 21, 22, and 23, as set forth in the Motion and contained in OAN's First Set of Interrogatories and Second Set of Interrogatories, within fourteen (14) days of this Order.

 It is further ORDERED that Plaintiffs shall provide all documents that are responsive to Requests for Production Nos. 8, 10, 12, 14, 18–19, 33–34, 36, 39, 61, 65, 72, 80, 88, 91–93, 96—97, and 101–02, as set forth in the Motion and contained in OAN's First Requests for Production, within fourteen (14) days of this Order.

 It is further ORDERED that OAN is awarded reasonable attorneys' fees and expenses it incurred in bringing this Motion to Compel Discovery Responses. OAN is invited to submit an application for those fees and expenses with supporting documentation within fourteen (14) days of this order.

1

Signed this _____ day of _____, 2023.


_____

HONORABLE MOXILA A. UPADHYAYA
United States Magistrate Judge