**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| SMARTMATIC USA CORP., SMARTMATIC HOLDING B.V., AND SGO CORPORATION LIMITED, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:21-cv-02900-CJN |
| v. | ) ) | |
| HERRING NETWORKS, INC., D/B/A ONE AMERICA NEWS NETWORK, | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF FINANCIAL DOCUMENTS**

Defendant Herring Networks, Inc., d/b/a One America News Network ("OAN") files this

Response to Plaintiffs' Motion to Compel Production of Financial Documents ("Motion," ECF

No. 124) pursuant to Rule 37 of the Federal Rules of Civil Procedure and respectfully shows the

Court the following:[1]

**I.       INTRODUCTION**

Plaintiffs Smartmatic USA Corp., Smartmatic Holding B.V., and SGO Corporation

Limited (collectively, "Smartmatic" or "Plaintiffs") continuously mischaracterize the discovery

record in this case. The parties mutually exchanged discovery responses and objections on

---

[1] Defendant OAN's Response is filed subject to, and without waiving the arguments raised in, Defendant's Emergency Motion to Strike Plaintiffs' Motions Filed in Violation of the Court's Standing Order filed December 7, 2023 (ECF No. 131). It is well established that the presiding District Judge's requirement of seeking leave before filing discovery motions continues to apply even when discovery matters are referred to a Magistrate Judge. *See Hudert v. Alion Sci. & Tech. Corp.*, No. 1:05-cv-545, 2011 WL13262554, at *1 (D.D.C. Mar. 15, 2011). Judge Nichols's Standing Order, issued over two years ago, unequivocally states that "[t]he Parties may not file a discovery motion without leave of Court" (ECF No. 5, ¶ 11), and that continues to apply in this case until and unless it has been countermanded by another Court order—which it has not.

December 16, 2022, pursuant to agreement. The parties did not engage in meet-and-confer efforts until January 25, 2023. OAN made its proposal regarding Plaintiffs' financial-document requests during the parties' first meet-and-confer conference on January 25 and memorialized the proposal in a letter on February 17. And as OAN has made clear to Plaintiffs, OAN has been and is willing to produce: (i) documents concerning any relationship between OAN's financials and either Plaintiffs or the alleged defamatory statements; and (ii) documents reflecting any revenue generated by the specific broadcasts containing the alleged defamatory statements. But Plaintiffs have repeatedly rejected OAN's proposal without good reason.

In fact, it is OAN that has been hurt by Plaintiffs' approach to discovery, where Plaintiffs have ignored noticed depositions without even asking the Court for relief, failed to wait (when they did ask) for a ruling, and successfully moved for a stay of all remaining depositions noticed by OAN but for one third-party deposition (of former Smartmatic/Sequoia President Jack Blaine). *See* ECF. No. 136 at 32. It has been more than two years since this lawsuit was filed on November 3, 2021, and the December 8, 2023 fact-discovery deadline mandated by the Court's October 2022 Scheduling Order has now passed.  Plaintiffs cannot reasonably argue that wide-ranging discovery seeking financial documents that have no bearing on the issue of actual malice and Plaintiffs' claim for punitive damages is appropriate, let alone warranted.

## II.    BACKGROUND

On October 21, 2022, Plaintiffs served their First Set of Requests for Production ("RFP") on OAN. ECF No. 124-2. This Motion concerns three of Plaintiffs' RFPs—Nos. 49, 50, and 51:

> 49.    Documents sufficient to show OANN's financial condition, including profits, margins, revenue and advertising revenue.

> 50.    All balance sheets, profit and loss statements or other financial statements prepared by or for OANN reflecting the financial position of OANN during the years 2020, 2021, and 2022 including, without limitation, periodic

financial statements whether weekly, monthly, quarterly, semi-annual or annual statements and occasional statements.

      51.    Documents and Communications concerning OANN's generation or loss of revenue or profits for [sic] OANN's effect on OANN's valuation (whether internally valued or externally valued) or stock price between January 1, 2020 and the present.

*Id.* at 18–19.[2]

On December 16, 2022, OAN served its Responses and Objections to the requests. ECF No. 124-3. OAN's general objections to the requests included grounds of privilege, duplicativeness, irrelevance, non-proportionality , and vagueness, *id.* at 4–5; and OAN's specific objections to RFP Nos. 49, 50, and 51 included grounds of irrelevance, overbreadth, nonproportionality, as well as the fact that the requests (a) seek confidential proprietary business information and (b) are untethered to any Smartmatic entity, *id.* at 51–53.

On January 3, 2023, Plaintiffs' counsel wrote to OAN's counsel, requesting a meet-and-confer concerning RFP Nos. 49–51. (**Ex. A**, Butzer Decl. ¶ 4.) Counsel for the parties met and conferred on January 25 and January 27, 2023. (*Id.* ¶ 5.) During those conferences, OAN tentatively proposed to produce: (i) communications concerning any relationship between its financials and any Smartmatic entity or the alleged defamatory statements; and (ii) any documents reflecting any revenue generated by the specific broadcasts containing the alleged defamatory statements at issue in Smartmatic's complaint, to the extent OAN is in possession, custody, or control of responsive and non-privileged documents. (*Id.*) As OAN explained, however, it would be premature to produce financial statements until the case is ripe for a damages analysis. (*Id.*)

---

[2] Plaintiffs also requested documents related to OAN's financial condition in RFP Nos. 67, 84, and 90, which are the subject of Plaintiffs' motion to compel documents responsive to Plaintiffs' untimely Second Set of Requests for Production (ECF No. 129). Those requests are not the subject of this Motion. *See* ECF No. 124 at 2 & n.1, 5.

After the telephone conferences, on February 17, OAN wrote a letter to Plaintiffs memorializing OAN's proposed compromise and providing case law that supported OAN's positions and demonstrated the overbroad, irrelevant, and premature nature of Plaintiffs' requests. (*Id.* ¶ 6.)

Plaintiffs rejected OAN's proposed compromise by letter on February 27, and declared an impasse without responding to the merits of OAN's position and ignoring the case law OAN provided. (*Id.* ¶ 7.) OAN responded on March 20, and—to avoid the need for judicial intervention—disagreed that the parties were at an impasse, indicated that it remained willing to meet and confer on the RFPs, and requested that Plaintiffs respond to the case law cited by OAN. (*Id.* ¶ 8.) In their reply on March 23, Plaintiffs once again refused to acknowledge the case law supporting OAN's positions and declared that Plaintiffs "do[] not intend to waste time" and would instead file this Motion. (*Id.* ¶ 9.)

Because Plaintiffs' flat-out rejection of OAN's proposed compromise and supporting case law did not constitute good-faith participation in the meet-and-confer process, OAN by letter dated March 27 urged Smartmatic to reconsider. (*Id.* ¶ 10.) But Plaintiffs stood by their intention to seek judicial intervention. (*Id.* ¶ 11.)

To avoid wasting this Court's resources, between September 25, 2023, and December 3, 2023, OAN produced to Plaintiffs documents reflecting the amount of ad revenue generated by the specific broadcasts containing the alleged defamatory statements. *See* (*id.* ¶ 12.)

## III.   ARGUMENT

Federal Rule of Civil Procedure 26(b)(1) permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). This right, however, is subject to Rule 26(b)(2)(C), which limits discovery that is, among other things, burdensome or outside the scope of Rule 26(b)(1). FED. R. CIV. P. 26(b)(2)(C). Accordingly, "'the relevance standard of Rule 26 is not without bite,' and will not

allow parties to 'explore matter which does not presently appear germane on the theory that it might conceivably become so.'" *Wall v. Reliance Standard Life Ins. Co.*, 341 F.R.D. 1, 5 (D.D.C. 2022) (quoting *Food Lion, Inc. v. United Food & Com. Workers Int'l Union*, 103 F.3d 1007, 1012–13 (D.C. Cir. 1997)).

The party moving to compel responses to an RFP "bears the initial burden of establishing that the information sought in the RFP is relevant and proportional to the needs of the case." *Id.* at 6. "The burden then shifts to the non-moving party 'to explain why discovery should not be permitted.'" *Id.* (quoting *Jewish War Veterans of the United States of America, Inc. v. Gates*, 506 F. Supp. 2d 30, 42 (D.D.C. 2007)). "Rule 26 vests the Court with 'broad discretion to tailor discovery narrowly.'" *SoundExchange, Inc. v. Muzak, LLC*, No. 15-CV-0476-RCL, 2019 WL 3997468, at *3 (D.D.C. Aug. 23, 2019) (quoting *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998)).

### A.    Plaintiffs' Requests are Not Relevant to Actual Malice.

Plaintiffs assert that their RFPs related to OAN's finances are relevant to Plaintiffs' allegations that OAN acted with "actual malice" when OAN allegedly defamed Plaintiffs. But a small news network's profit motive is not evidence of actual malice.  "If a profit motive could somehow strip communications of the otherwise available constitutional protection, our cases from *New York Times*[3] to *Hustler Magazine*[4] would be little more than empty vessels."  *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667 (1989). A defendant's goal of "increas[ing] its circulation [] *cannot provide a sufficient basis* for finding actual malice." *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 590 (D.C. Cir. 2016) (emphasis added); *see Houlahan v. World Wide Assoc.*

---

[3] *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).

[4] *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988).

*of Specialty Programs & Sch.*, 2006 WL 8433976, at *9 (D.D.C. Oct. 27, 2006) (denying discovery on financial documents for this reason).

Although it is true that "in some circumstances motive-based evidence can be probative" of actual malice, "the mere presence of some ulterior motive—whether a profit motive, a motive to produce the most interesting stories, or a personal desire to harm the subject of a story—is not enough to support a finding of actual malice." *Jankovic*, 822 F.3d at 596 (citations omitted). "This is so even though such motives may naturally provide publishers with an incentive to achieve an end without regard to the truth of what they publish." *Id.* (citing *Tavoulareas v. Piro*, 817 F.2d 762, 797 (D.C. Cir. 1987)). Absent evidence that the publisher's alleged motive is coupled with other evidence that the publisher was willing to publish false allegations, improper motive alone is not probative of actual malice. *Id.* Thus, the word "probative" is key for the improper motive to be relevant to actual malice.

In *Jankovic*, the D.C. Circuit found that evidence of a bad motive—demanding money in exchange for not writing negative stories—was not probative of actual malice. 822 F.3d at 596. The Circuit held that for the extortion motive to matter for actual malice, the plaintiff needed to couple it with evidence "that the extortion motive caused [defendants] to risk publishing an *untrue* statement about him." *Id.* Instead, the "only evidence show[ed] that [defendant's] motive to extort was consistent with blackmailing individuals with reports *he believed to be true*." *Id.* (emphasis added). Indeed, when the plaintiff asked the defendant to stop publishing "lies," the defendant "responded that he believed what he wrote was true and that he had reliable sources to prove it." *Id.* Thus, evidence of improper or ulterior motive did not matter because it was not coupled with evidence that the motive caused the defendant to publish false allegations.

OAN relied on press coverage, government documents and investigations, as well as sources it believed at the time of publication were credible in its broadcasts and posts. *See* ECF No. 136 at 12, n.3. But Plaintiffs propose that OAN's broadcasts and posts about Smartmatic published after several independent sources "confirmed" OAN's allegations were unsupported are probative of actual malice because OAN willingly continued to make "false statements about Smartmatic" to increase its viewership and profits, warranting the financial-document discovery Plaintiffs request. ECF No. 124 at 8.  However, Plaintiffs' list of "numerous independent sources" supposedly "confirm[ing]" OAN's reporting was unsupported are neither numerous nor of substance to establish serious doubt or error on OAN's part that would warrant the breadth of financial discovery Plaintiffs' RFPs seek. *See id.*

*First*, Plaintiffs assert that OAN continued to publish "false statements" against Smartmatic after the U.S. Attorney General stated on December 1, 2020, that the Department of Justice found no evidence of widespread election fraud. *Id.*; ECF No. 1, ¶ 301. But a single, broad-stroked statement addressing general election fraud and not specifically directed to Smartmatic's actions is not sufficient to establish that OAN knew that its broadcasts about Smartmatic were unsupported. "There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

*Second*, Plaintiffs complain that despite a retraction demand dated December 18, 2020, from Dominion and a similar retraction request from Smartmatic dated December 11, 2020, OAN "did not acknowledge that there was no evidence to support its claims" regarding Smartmatic. ECF No. 124 at 8; ECF No. 1, ¶¶ 63–64. But Plaintiffs' general denials and Dominion's retraction demand do not establish knowledge or serious doubt as to falsity. *See e.g., Edwards v. Nat'l*

*Audubon Soc'y, Inc.*, 556 F.2d 113, 121 (2d Cir. 1977) (actual malice "cannot be predicated on the mere denials, however, vehement; such denials are so commonplace in the world of polemical charge and counticharge that, in themselves, they hardly alert the conscientious reporter to the likelihood of error").

*Third*, Plaintiffs assert that other news networks issued redactions of their statements about Smartmatic that put OAN on notice that its broadcasts about Smartmatic were "false." ECF No. 124 at 8; ECF No. 1 ¶¶ 142–43. But Plaintiffs fail to support their claim that the actions of other news networks imputed knowledge to OAN that its broadcasts about Smartmatic were unsupported, let alone false.

Because Plaintiffs' list of "independent sources" neither show that OAN willingly published unsupported allegations against Smartmatic or even had serious doubts about the validity of its broadcasts and posts about Smartmatic, Plaintiffs' RFPs for financial documents are not probative of actual malice and should be denied.

**B.      Plaintiffs' Requests Are Not Relevant to Their Claim for Punitive Damages.**

Plaintiffs cannot circumvent the rule that an improper or ulterior motive does not matter if it is not coupled with evidence that the motive caused the defendant to publish false allegations by simply relabeling their requests as relevant to "punitive damages." A plaintiff must show clear and convincing evidence of actual malice to obtain punitive damages. *See Straw v. Chase Revel, Inc.*, 813 F.2d 356, 361 (11th Cir. 1987) ("[I]n *Gertz* [*v. Welch*] the Supreme Court held that punitive or presumed damages may not be awarded in a defamation case unless the plaintiff can show that Defendant acted with actual malice."). In the District of Columbia, "[t]he test for punitive damages . . . is a rigorous one." *Rosenthal v. Sonnenschein Nath & Rosenthal, LLP*, 985 A.2d 443, 455 (D.C. 2009). "The party seeking punitive damages . . . bears the burden of proving 'egregious

conduct and the requisite mental state by clear and convincing evidence.'" *Hickey v. Scott*, 162 F. Supp. 3d 1, 2 (D.D.C. 2011) (quoting *Rosenthal*, 985 A.2d at 455). Because punitive damages require *clear and convincing* evidence of actual malice, a profit motive is *a fortiori* irrelevant to that inquiry. At the very least, discovery into punitive damages is premature. *See John Does I-VI v. Yogi*, 110 F.R.D. 629, 633 (D.D.C. 1986) ("[D]iscovery concerning defendants' financial status … should not be revealed until necessary to prove up punitive damages," if any).

Moreover, Plaintiffs' reliance on *Freeman v. Giuliani*, 2023 WL 5600316 (D.D.C. Aug. 30, 2023), is misplaced because the defendant in that case already "conced[ed] liability on punitive damages." *Id.* at *24. In *Freeman*, Giuliani was initially directed to produce responses to the plaintiffs' requests for financial information "in order to evaluate [Giuliani's] claim of an inability to afford the cost of access to, and search of, the TrustPoint dataset or to use a professional vendor," *Id*. at *7. When Giuliani did not comply, his defense was that he stipulated to all the factual elements of the plaintiffs' claims, thereby obviating his discovery obligations. *Id*. at *21. The Court found Giuliani's defense was not effective and sanctioned him for his willful discovery violations, including ordering Giuliani to produce information on the income generated by his businesses for the quantification of damages, including possible punitive damages. *Id*. at *24–26. The facts in this case do not compare, and, unlike Giuliani's concession of liability, Plaintiffs have not met their burden to show that their discovery requests for OAN's financial documents are relevant to both the issue of actual malice or Plaintiffs' claim for punitive damages.

## IV.    CONCLUSION

For these reasons, Plaintiffs' Motion to Compel Production of Financial Documents should be denied and Defendant's objections to Plaintiffs' Requests for Production Nos. 49, 50, and 51 should be sustained.

By: */s/ John K. Edwards*

**JACKSON WALKER L.L.P.**
Charles L. Babcock
(admitted *pro hac vice*)
Nancy W. Hamilton
(admitted *pro hac vice*)
John K. Edwards
(admitted *pro hac vice*)
Joel R. Glover
(admitted *pro hac vice*)
Bethany Pickett Shah
(admitted *pro hac vice*)
1401 McKinney Suite 1900
Houston, TX 77010
Tel: (713) 752-4200
Fax: (713) 308-4110
cbabcock@jw.com
nhamilton@jw.com
jedwards@jw.com
jglover@jw.com
bpickett@jw.com

Jonathan D. Neerman
D.C. Bar No. 90003393
Carl C. Butzer
(admitted *pro hac vice*)
Minoo Sobhani Blaesche
(admitted *pro hac vice*)
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Tel: (214) 953-5664
Fax: (214) 661-6899
jneerman@jw.com
cbutzer@jw.com
mblaesche@jw.com

**BOYDEN GRAY PLLC**
Trent McCotter
D.C. BAR NO. 1011329
801 17th St NW, #350
Washington, DC 20006
(202) 706-5488
tmccotter@boydengray.com

*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of December, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which I understand to have served counsel for the parties.

*<u>/s/ R. Trent McCotter</u>*
R. Trent McCotter
