# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SMARTMATIC USA CORP., *et al.*,

                    Plaintiffs,

     v.

HERRING NETWORKS, INC.,

                   Defendant.

No. 1:21-cv-02900-CJN

Judge Carl J. Nichols

## PLAINTIFFS' RULE 56(D) RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON ACTUAL MALICE

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................... 1

OVERVIEW OF ARGUMENT ............................................................................... 3

BACKGROUND ..................................................................................................... 5

PROCEDURAL HISTORY ..................................................................................... 6

I.      OANN failed to produce documents responsive to Smartmatic's first set of
        requests for production. .............................................................................. 8

II.     OANN broke its promise and failed to produce documents responsive to
        Smartmatic's second set of requests for production. .................................. 10

III.    OANN failed to produce documents from dozens of custodians involved
        with the production of the defamatory programs.......................................... 11

IV.     OANN delayed identifying additional defamatory broadcasts that it
        published. .................................................................................................... 12

V.      OANN delayed identifying relevant sources for the defamatory statements
        made during its programs, including individuals and organizations. ............ 13

VI.     Magistrate Judge Upadhyaya granted two emergency motions to pause
        depositions pending resolution of discovery disputes. ................................ 15

VII.    Smartmatic moved to extend the discovery schedule given OANN's
        failure to produce documents and comply with written discovery
        obligations. .................................................................................................. 16

VIII.   Magistrate Judge Upadhyaya has outlined a new protocol for the parties to
        address the dozens of discovery related issues pending and upcoming.......... 17

LEGAL STANDARD .............................................................................................. 19

ARGUMENT ........................................................................................................... 20

I.      Smartmatic has satisfied the Convertino elements to support allowing
        Smartmatic to complete fact and expert discovery before ruling on
        summary judgment........................................................................................ 20

        A.      Smartmatic intends to discover facts establishing that OANN acted
                with actual malice once OANN completes its document production
                and its witnesses are deposed........................................................... 21

1.    Smartmatic needs documents and deposition testimony
      from the hosts of programs that published the defamatory
      statements ....................................................................................... 22

2.    Smartmatic needs documents and deposition testimony
      from the production teams who participated in the
      defamatory programs. ................................................................... 23

3.    Smartmatic needs documents and deposition testimony
      from the OANN executives who participated in,
      supervised, and controlled the defamatory programs. ............................. 25

4.    Smartmatic needs documents and deposition testimony
      from OANN's so-called sources. ........................................................ 27

5.    Smartmatic needs fact discovery to enable its expert to
      evaluate whether OANN violated generally accepted
      journalism practices. ...................................................................... 28

B.    Smartmatic cannot submit the evidence necessary to establish that
      OANN acted with actual malice because OANN has stymied
      Smartmatic's discovery efforts. ................................................................ 30

C.    The information Smartmatic seeks to oppose summary judgment is
      discoverable. ................................................................................................ 35

II.   OANN and its counsel should be sanctioned for its pattern of harassing
      behavior ......................................................................................................... 36

CONCLUSION ................................................................................................................. 41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,
  421 U.S. 240 (1975) ..................................................................................................36

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ...................................................................................................36

*Convertino v. U.S. Dept. of Justice*,
  684 F. 3d 93 (D.C. Cir. 2012) .....................................................................19, 20, 35

*FERC v. City Power Mktg., LLC*,
  235 F. Supp. 3d 152 (D.D.C. 2017) ..........................................................................29

*Gonzalez-Ramos v. ADR Vantage, Inc.*,
  2020 WL 7136840 (D.D.C. 2020) .............................................................................29

*Hall v. Dep't of Homeland Sec.*,
  219 F. Supp 3d 112 (D.D.C. 2016) .....................................................................36, 41

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657, 109 S. Ct. 2678, 105 L. Ed. 2d 562 (1989) ..................................21, 28

*Ikossi v. Dep't of Navy*,
  516 F.3d 1037 (D.C. Cir. 2008) ................................................................................35

*Jeffries v. Barr*,
  965 F.3d 843 (D.C. Cir. 2020) .............................................................................19, 20

*Johnson v. BAE Sys., Inc.*,
  307 F.R.D. 220 (D.D.C. 2013) ..................................................................................41

*Kelley v. Wren*,
  782 S.E.2d 406 (S.C. Ct. App. 2016) ........................................................................28

*Laker Airways Ltd. v. Pan Am. World Airways*,
  103 F.R.D. 42 (D.D.C. 1984) ....................................................................................30

*Lohrenz v. Donnelly*,
  350 F.3d 1272 (D.C. Cir. 2003) ................................................................................21

*Londrigan v. Fed. Bureau of Investigation*,
  670 F.2d 1164 (D.C. Cir. 1981) ................................................................................35

*Morales v. Humphery*,
309 F.R.D. 44 (D.D.C. 2015) ........................................................................................35

*Murphy v. Boston Herald, Inc.*,
865 N.E.2d 746 (Mass. 2007) .......................................................................................28

*New York Times Co. v. Sullivan*,
376 U.S. 254 (1964) ......................................................................................................21

*Parsi v. Daioleslam*,
778 F.3d 116 (D.C. Cir. 2015) ................................................................................36, 41

*Resolution Trust Corp. v. N. Bridge Assoc.*,
22 F.3d 1198 (1st Cir. 1994) .........................................................................................20

*Richie v. Vilsack¸*
287 F.R.D. 103 (D.D.C. 2012) ......................................................................................35

*Sagar v. Lew*,
309 F.R.D. 18 (D.D.C. 2015) ........................................................................................35

*Smartmatic USA Corp., et al. v. Lindell, et al.*,
Case No. 22-cv-00098-WMW-JFD (D. Minn), ECF No. 52 .........................................6

*Smartmatic USA Corp., et al. v. Newsmax Media, Inc.*,
Case No. N21C-11-028 EMD (Del. Super. Ct. Feb. 3, 2023), D.I. 137 .......................6

*Smartmatic v. Fox, et al.*,
Index No. 151136/2021, NYSCEF Doc. Nos. 856, 857, 859, 860, 861 (New
York County, New York) ................................................................................................6

*St. Amant v. Thompson*,
390 U.S. 727 (1968) ................................................................................................21, 28

*Thompson v. Fathom Creative, Inc.*,
626 F. Supp. 2d 48 (D.D.C. 2009) ...........................................................................29, 35

*US Dominion, Inc. v. Powell*,
554 F. Supp. 3d 42 (D.D.C. 2021) ...........................................................................20, 21

*Zinna v. The Bd. Of Cnty. Comm'rs of The Cnty of Jefferson*,
250 F.R.D. 527 (D. Colo. 2007) ...................................................................................30

**Other Authorities**

Federal Rules of Civil Procedure Rule 56 .............................................................................1, 35

Rule 26 ...................................................................................................................................41

Rule 26(a)(1) .................................................................................................... *passim*

Rule 33 ................................................................................................................... 12

Rule 56(d) .......................................................................................................... *passim*

Rule 56(f) ............................................................................................................... 35

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Court's inherent authority, Plaintiffs Smartmatic USA Corp., Smartmatic International Holdings B.V., and SGO Corporation Limited (collectively, "Smartmatic"), by counsel, submit its Rule 56(d) Response in Opposition to Defendant's Motion for Summary Judgment and respectfully request that this Court deny Defendant Herring Network Inc.'s (d/b/a OANN) ("OANN") Motion for Partial Summary Judgment On Actual Malice (Dkt. 136) and permit additional discovery.

## <u>INTRODUCTION</u>

The activities on December 8, 2023 tell the Court everything it needs to know about OANN and the disingenuousness of its motion. On December 8, Magistrate Judge Upadhyaya denied OANN's frivolous motion for recusal. OANN sought Magistrate Judge Upadhyaya's recusal six days after this Court referred all discovery disputes to Magistrate Judge Upadhyaya. OANN's motion had the effect of freezing all discovery in the case. OANN had (and has) refused to voluntarily comply with its discovery obligations. Smartmatic has been required to file multiple motions to compel, a letter requesting leave to file further motions to compel, and raised dozens of discovery deficiencies during meet-and-confers. But, for seven months, Smartmatic has not been able to obtain relief from OANN's deficient discovery because Magistrate Judge Upadhyaya's recusal was pending. December 8 signaled a new start for the litigation because Smartmatic finally had a judge who could require OANN to comply with its discovery obligations.

On December 8, OANN produced more than 15,000 additional documents, finally served documents that had been previously produced by third parties, and amended fifteen interrogatory answers. Why is that remarkable? Because, for seven months, OANN failed to comply with its discovery obligations. OANN intentionally withheld documents from relevant custodians (and continues to do so). OANN intentionally withheld documents that had been produced by third parties – depriving Smartmatic of information OANN already possessed. And OANN intentionally

omitted material information from its interrogatory answers. OANN had been hiding and concealing facts for months. OANN has still not complied with its written discovery obligations – far from it – and its late attempt to cure *some* of its many deficiencies on December 8 speaks volumes.

Remarkably, on December 9, OANN filed the pending motion for partial summary judgment. Smartmatic has not had the opportunity to take depositions of *any* OANN witnesses or *any* third parties because OANN has refused to produce relevant documents. Smartmatic has been waiting for seven months for orders compelling OANN to comply with its document production and other discovery obligations so that Smartmatic could commence depositions. But, instead of producing the relevant documents and instead of working in good faith to amend the discovery schedule to start depositions *after* a court could rule on pending discovery disputes, OANN filed a motion for partial summary judgment predicated on Smartmatic not obtaining discovery to support its claims. OANN conveniently ignores that its misconduct – coupled with the delay caused by its motion for recusal – prevented discovery from proceeding in an orderly fashion.

OANN's motion is not just frivolous, it is sanctionable. Since changing counsel, OANN has engaged in a pattern of misconduct exemplifying what happens when unscrupulous advocacy cannot be monitored and controlled through court oversight. Nonetheless, now that Magistrate Judge Upadhyaya can start to rule on discovery issues, Smartmatic looks forward to the parties completing document production and then moving through fact depositions and expert discovery. OANN's attempt to obtain partial summary judgment *without* meaningfully participating in discovery and *before* depositions have commenced is improper, unprecedented, and absurd. The Court should deny the motion or defer ruling until after the parties complete fact and expert discovery.

## OVERVIEW OF ARGUMENT

Rule 56(d) empowers the Court to deny or defer ruling on a motion for summary judgment when the non-movant establishes that it requires discovery to respond to the motion. OANN's motion focuses on the fact-intensive question of whether it acted with actual malice when publishing the defamatory reports. Smartmatic needs discovery to respond to OANN's empty protestations of innocence. First, Smartmatic needs discovery from OANN. To date:

- OANN has not completed document production for the hosts who made defamatory statements;

- OANN has not completed document production for executives with supervisory and editorial control over the content of the defamatory programs;

- OANN has not started document production for dozens of producers and bookers involved in the production of the defamatory programs; and

- OANN's hosts, executives, producers, and bookers have not been deposed.

OANN has produced a fraction of the documents necessary to examine its witnesses on whether they acted with actual malice, and none of the OANN witnesses have been deposed yet because OANN has not meaningfully engaged in document production. Smartmatic needs discovery relating to OANN's actual malice to respond to its claim of lacking actual malice.

Second, Smartmatic needs discovery from OANN's so-called sources, including depositions. OANN has not been forthright about its so-called sources. OANN did not disclose many of its so-called sources until it supplemented its interrogatory answers and Rule 26(a)(1) disclosures in October and December 2023, approximately one year *after* the so-called sources should have been disclosed. Other sources were revealed for the first time in the affidavits accompanying its motion for partial summary judgment. Smartmatic needs to depose these so-called sources to establish (1) they are not credible, (2) they did not possess any evidence to support

their claims against Smartmatic, and (3) they did not provide OANN any support for their claims. Reliance on unreliable sources is acting with reckless disregard for the truth.

Third, Smartmatic needs discovery on OANN's failure to comply with generally accepted journalistic practices. One of Smartmatic's experts will evaluate and opine on whether OANN's hosts and producers complied with generally accepted principles such as validation of allegations before publication, use of original sources, and correcting information through the life of a news story. (*See* Ex. 2, Society of Professional Journalists Code of Ethics). The same expert will assess whether OANN complied with the requirement that news organizations minimize harm by balancing the public's need for information with harm to those affected by the news coverage. (*Id.*) If the expert concludes that OANN and its hosts and producers violated generally accepted journalism practices, that opinion will support a finding of reckless disregard for the truth. The parties have not disclosed, much less completed, expert discovery. (*See* Dkt. 42).

The self-evident fact that Smartmatic is entitled to discovery to establish that OANN acted with actual malice begs the question of why OANN filed the pending motion. OANN has taken advantage of a confluence of events to stymie discovery. Prior to December 8, the day it filed this motion, OANN had produced approximately 243,000 documents (mostly junk) in contrast to Smartmatic's production of over 2.5 million documents. Smartmatic has been raising deficiencies in OANN's document production incessantly since March 2023, including multiple motions to compel, a letter requesting leave to file other motions to compel, and twenty-four demand letters to OANN. But none of these discovery issues have been resolved because (1) this Court referred all discovery issues to Magistrate Judge Upadhyaya, (2) OANN filed a frivolous motion to recuse Magistrate Judge Upadhyaya, and (3) Magistrate Judge Upadhyaya did not issue an order denying

recusal until December 8, 2023. Smartmatic has not been able to get any relief on any discovery issues for several months.

Most litigants would not exploit the fact that the D.C. courts have busy dockets and Magistrate Judge Upadhyaya had other pressing matters to handle before ruling on the recusal motion. OANN is not most litigants. Knowing that Smartmatic could not proceed with depositions absent meaningful document production, and knowing Smartmatic could not get meaningful document production without Court intervention, OANN moved for partial summary judgment on the basis that Smartmatic cannot establish (without the evidence that OANN has been withholding) that OANN acted with actual malice. It is a game of "catch me if you can." OANN would not voluntarily comply with its discovery obligations, no judge was available to force OANN to comply with its discovery obligations while the motion to recuse was pending, so OANN wants to be rewarded for depriving Smartmatic of relevant discovery.

Fortunately, Rule 56(d) is designed to thwart that type of misconduct. Rule 56(d) permits a non-movant to obtain discovery to oppose a motion for summary judgment. Here, Smartmatic clearly needs discovery (document production and depositions) from OANN to establish that OANN acted with actual malice. Accordingly, pursuant to Rule 56(d), OANN's motion should be denied or deferred. But, respectfully, that is not enough. OANN's motion for partial summary judgment was just the latest action taken to harass Smartmatic and force it to incur unnecessary expenses. OANN should be sanctioned to discourage a continuation of this behavior by OANN and its counsel.

## BACKGROUND

The Court is already familiar with the general factual background of this case. Smartmatic is an international provider of election technology and services. (Dkt. 1, Complaint, at ¶ 24). During the 2020 election, Smartmatic provided ballot marking devices and support services to Los

Angeles County. (*Id*. at ¶ 7). Smartmatic technology and software was not used anywhere else in the country. (*Id*. at ¶ 62). Nonetheless, in November and December 2020, OANN published over 45 programs during which its hosts and guests stated and implied that Smartmatic voting machines had switched votes to favor Joe Biden and participated in a conspiracy to rig the 2020 election against Donald Trump. (*Id*. at ¶¶ 80-169). The claims were widely debunked by credible sources across the political spectrum. (*Id*. at ¶¶ 256-354). OANN's claims are now frequently referred to as the "Big Lie," and contributed to the tragic January 6 insurrection.

Smartmatic's reputation and business were devastated by the Big Lie. (*Id*. at ¶¶ 426-439). Smartmatic lost business in the United States and across the world. It has lost hundreds of millions in profits and over $1 billion in lost enterprise value. (*Id*. at ¶ 438). Even worse, its name is now synonymous with election fraud for millions of people around the world. Recognizing that it will never recover, Smartmatic initiated lawsuits in 2021 against the primary proponents of disinformation, including OANN, Fox Corporation, Fox News Network, Newsmax, Rudy Giuliani, Sidney Powell, and Mike Lindell/MyPillow. (Exhibit 1, J. Erik Connolly Affidavit, ¶ 2). Every court that has considered Smartmatic's claims has denied motions to dismiss.[1] Each of the cases are in various stages of discovery with the case against OANN dragging behind some of the others due to OANN's failure to meaningfully engage in discovery.

## PROCEDURAL HISTORY

Discovery in this case grinded to a halt because OANN filed a frivolous motion to recuse Magistrate Judge Upadhyaya. On May 31, 2023, this Court referred all discovery disputes to

---

[1] *Smartmatic v. Fox, et al.*, Index No. 151136/2021, NYSCEF Doc. Nos. 856, 857, 858, 859, 860, 861 (New York County, New York); *Smartmatic USA Corp., et al. v. Lindell, et al.,* Case No. 22-cv-00098-WMW-JFD (D. Minn), ECF No. 52; *Smartmatic USA Corp., et al. v. Newsmax Media, Inc.*, Case No. N21C-11-028 EMD (Del. Super. Ct. Feb. 3, 2023), D.I. 137; *Smartmatic USA Corp., et al. v. Newsmax Media, Inc.*, Case No. N21C-11-028 EMD (Del. Super. Ct. Aug. 23, 2023), D.I. 381.

Magistrate Judge Upadhyaya. (5/31/23 Minute Order). Six days later, on June 5, OANN sought Magistrate Judge Upadhyaya's recusal because her former law firm briefly represented the President of Venezuela. (Dkt. 150, at 2-3). Frivolous as it may be, the motion impacted Magistrate Judge Upadhyaya's ability to rule on discovery disputes. Magistrate Judge Upadhyaya denied the recusal motion on December 8, 2023 (Dkt. 133), which finally opened the door to the Magistrate Judge evaluating, overseeing, and ruling on the various written discovery disputes (document production and interrogatories) that have prevented the case from moving to fact depositions and expert discovery.

Fortunately, the case is now positioned to move forward. Magistrate Judge Upadhyaya held an in-person conference with the parties on December 20. (12/20/23 Minute Order). Among other things, Magistrate Judge Upadhyaya (1) established a streamlined process for the parties to resolve pending and future discovery disputes; (2) ordered the parties to submit an agreed deposition protocol by January 2, 2024; (3) ordered the parties to submit a prioritized list of outstanding discovery disputes that indicates the order in which the Court should address each dispute, along with a list of disputes that have been mooted; and (4) suggested that the parties submit a new proposed discovery schedule to this Court by January 2, 2024. (Exhibit 3, Caitlin A. Kovacs Declaration, ¶ 2); (*See* Dkt. 153). Critically, Magistrate Judge Upadhyaya instructed the parties to take into consideration the volume of discovery disputes that the Magistrate Judge must resolve when proposing a new schedule to this Court. (Kovacs Decl., ¶ 4). Smartmatic and Magistrate Judge Upadhyaya recognize the obvious fact that discovery in this case was not able to proceed along the original schedule for reasons outside of Smartmatic's control.

I.      **OANN failed to produce documents responsive to Smartmatic's first set of requests for production.**

Smartmatic served its first set of requests for production ("RFP" or "RFPs") on October 21, 2022. (Connolly Aff., ¶ 3). OANN served written responses on December 16, 2022, but slowly rolled out its production of documents. (Connolly Aff., ¶ 4–5). The parties agreed to produce documents on February 3, March 3, and April 7. (Connolly Aff., ¶ 5). On February 3, OANN produced 56 documents, which were comprised of news articles and legal documents about Smartmatic that OANN downloaded from the internet in late 2022, two years after the disinformation campaign. (*Id*.). Then, on March 3, OANN produced another 41 documents. (*Id*.). Anticipating that OANN would continue to make small, meaningless productions, Smartmatic informed OANN that it would seek Court intervention unless OANN agreed to a document production schedule. (*Id*.). On March 31, OANN agreed to produce documents on April 28 and May 5 and finalize productions by May 19. (Connolly Aff., ¶ 6).

OANN, however, broke that promise. On April 20, mere days before OANN's production deadline, OANN informed Smartmatic that it would not meet any of the agreed-upon document production dates. (Connolly Aff., ¶ 7). OANN later stated that the earliest it could make its next production was May 24. (*Id*.) A partial production was made on May 24, but it was still a fraction of what was due. (Connolly Aff., ¶ 8). And then matters got worse when OANN brought in new counsel who claimed that they needed additional time to produce additional documents. (Connolly Aff., ¶ 9). Document production effectively came to a halt as new counsel got up to speed. (*Id*.)

As of August 28, 2023, the original deadline for the production of documents, OANN had produced only 238,500 documents. (Connolly Aff., ¶ 10). Most of the documents produced by that date were junk, including tweets about the weather, irrelevant marketing blasts, and off-topic articles. (*Id*.). OANN trickled out a few additional productions between August 28 and

December 8, bringing its total production to 248,000 documents (Connolly Aff., ¶ 12). In contrast, by August 28, Smartmatic had produced over 8.8 million pages of documents, comprising more than 2 million documents. (Connolly Aff., ¶ 11). And, to date, Smartmatic has produced approximately 2.4 million documents to OANN, more than ten times the production made by OANN. (Connolly Aff., ¶ 12).

On December 8, the day before it filed its motion for partial summary judgment, OANN produced another 5,000 documents of its own and an additional 10,000 documents from third parties. (Connolly Aff., ¶ 13). But its production in response to Smartmatic's first set of RFPs remains deficient. On May 5, before this Court referred discovery disputes to Magistrate Judge Upadhyaya, Smartmatic and OANN submitted a joint notice in which Smartmatic requested leave to file a motion to compel complete production from OANN in response to its first set of RFPs. (Connolly Aff., ¶ 14). The Court has not yet granted Smartmatic leave to file the motion to compel, perhaps believing the issue was moot given the assignment to Magistrate Judge Upadhyaya. But, as noted above, Magistrate Judge Upadhyaya did not address Smartmatic's request while her recusal was pending. Now that the recusal motion has been denied, and OANN is not going to appeal the decision, Smartmatic can proceed with resolving this dispute in front of Magistrate Judge Upadhyaya.

OANN's productions after Smartmatic submitted its pre-motion letter to the Court cured *some* but not all the deficiencies with its responses to the first set of RFPs. Among other things, based on Smartmatic's review of the productions so far, it appears that OANN has still failed to produce *all responsive* documents relating to:

- Employment decisions (RFP Nos. 7, 8, 26);

- Oversight, structure, and decision-making authority (RFP Nos. 5, 27, 29, 33, 47);

- Meetings that occurred regarding Smartmatic and Dominion (RFP No. 35); and,

- Downloads of OANN applications, subscriptions, and clicks. (RFP No. 46).[2]

(Connolly Aff., ¶ 15). Smartmatic will address these lingering deficiencies with Magistrate Judge Upadhyaya now that the Magistrate Judge has denied OANN's recusal motion. Between this Court referring all discovery disputes to Magistrate Judge Upadhyaya, and Magistrate Judge Upadhyaya not ruling on discovery disputes with the pending recusal motion, Smartmatic has been without a means to force OANN's compliance with the first set of RFPs until now.

## II. OANN broke its promise and failed to produce documents responsive to Smartmatic's second set of requests for production.

First impressions make a lasting impression. OANN's new counsel made a telling first impression. In May, as the original deadline for the production of documents approached, OANN agreed that Smartmatic could serve additional RFPS after May 31, 2023. (Dkt. 54 at ¶ 8). OANN's delayed production necessitated this extension. Smartmatic could not identify holes in OANN's production until it received OANN's productions, which were slow coming. (Dkt. 64). Smartmatic and OANN confirmed the extension in a letter and via email. (Connolly Aff., ¶ 16). Accordingly, on May 31, Smartmatic filed a motion for an extension of time to serve the second set of RFPs. (Dkt. 54). Consistent with the parties' agreement and Smartmatic's motion, Smartmatic served its second set of RFPs on July 31, 2023. (Connolly Aff., ¶ 17).

The Problem: OANN's new counsel decided to break the agreement made by OANN's prior counsel. As a sign of what was to come, OANN's new counsel took the position that Smartmatic was not permitted to serve a second set of RFPs after May 31, 2023. (*See* Dkt. 62 at ¶ 1). OANN's new counsel persisted with this position even after Smartmatic provided copies of the exchanges memorializing the agreement that had been previously reached. (Dkt. 64). Shame

---

[2] Smartmatic has not been able to complete its review of the document production made by OANN on December 8, one day before OANN moved for partial summary judgment.

on Smartmatic for not realizing that an agreement made with OANN (through its original counsel) would mean nothing to OANN (through its new counsel).

Smartmatic's second set of RFPs includes several categories of documents that OANN has not yet produced. (Connolly Aff., ¶ 18). Among other things, Smartmatic's second set of RFPs seeks the production of documents relating to the distribution of OANN's programs, ratings, viewers, and subscriber metrics, OANN's political donations, and other lawsuits involving OANN. (*Id.*). OANN has not produced any documents responsive to the second set of RFPs and has not indicated that the documents already produced are responsive to the second set of RFPs. (See Dkt. 129 at p. 5–6). The second set of RFPs represents another sizeable portion of document production that Smartmatic is still waiting to receive. Magistrate Judge Upadhyaya suggested that Smartmatic re-raise its request to extend the deadline with this Court in the parties' forthcoming supplemental motion to amend the schedule, which Smartmatic is hopeful will resolve OANN's objection and cause OANN to finally produce documents in response. (Kovacs Decl., ¶ 2–4).

## III.   OANN failed to produce documents from dozens of custodians involved with the production of the defamatory programs.

Yet another glaring, unresolved deficiency in OANN's document production is its failure to include dozens of relevant custodians. And, making matters worse, OANN tried to conceal these custodians. OANN served its Rule 26(a)(1) disclosures on November 3, 2022. (Connolly Aff., ¶ 19). Given the nature of this litigation involving the publication of defamatory programs, one would expect Rule 26(a)(1) disclosures to list producers, bookers, and others involved behind the scenes with the production of the defamatory publications. OANN's initial Rule 26(a)(1) disclosures did not include any of these obviously relevant witnesses. (*Id.*). Nor did OANN's answer to Smartmatic's first set of interrogatories ("ROG" or "ROGs"), which ask for the identification of all persons who drafted, edited, reviewed, developed, investigated, approved,

produced, or directed the defamatory publications or the statements within them. (Connolly Aff., ¶ 20). The omission made no sense.

Smartmatic then started to do the work that OANN was required to do pursuant to Rule 26(a)(1) and Rule 33. (Connolly Aff., ¶ 21). Smartmatic investigated the identity of potential producers and bookers at OANN and, in March 2023, informed OANN that it needed to update its disclosure of relevant witnesses because it had failed to identify these individuals. (*Id*.). On March 20, OANN told Smartmatic that it could not identify any guest bookers, associate producers, executive producers, show runners, social media personnel, and C-suite-level executives. (Connolly Aff., ¶ 22). But that was not true. On September 14, ten months after serving its Rule 26(a)(1) disclosures and nine months after serving its answers to Smartmatic's first set of ROGs, OANN served amended answers to Smartmatic's interrogatories number 1, 2, 3, and 5. The amended answers included over sixty new individuals, including the previously unnamed producers and bookers. (Connolly Aff., ¶ 23). OANN had been hiding their identity for months.

OANN's next move was both shocking (from an ethical perspective) and not surprising (given their pattern of misconduct). After receiving OANN's untimely disclosure of individuals with knowledge relevant to the claims and defenses, Smartmatic asked OANN to add them as custodians for the documents requested in the first and second set of RFPs. (Connolly Aff., ¶ 24). On November 5, OANN refused. (Connolly Aff., ¶ 25) Smartmatic sent an additional letter to OANN, providing specific reasons why each witness should be designated as a custodian. (*Id.*) On December 8, OANN refused again. (*Id.*) This is another issue that Smartmatic must have Magistrate Judge Upadhyaya resolve. (*Id.*).

## IV.   OANN delayed identifying additional defamatory broadcasts that it published.

Consistent with OANN's pattern of withholding information, OANN did not identify additional defamatory broadcasts until the parties were almost a year into discovery. As is typically

done in defamation actions, in Smartmatic's first set of interrogatories, Smartmatic asked OANN to identify any broadcasts during the relevant period that mentioned Smartmatic. (Connolly Aff., ¶ 26). OANN served its answers in December 2022. In its answers, OANN did not identify any broadcasts in which Smartmatic was mentioned except those already identified in Smartmatic's Complaint. (Connolly Aff., ¶ 27). Smartmatic had no reason to question OANN's answer because OANN should have the most comprehensive information about its broadcasts.

Then, in October 2023, ten months later, OANN amended its answers to Smartmatic's interrogatories and identified thirteen broadcasts and republications of broadcasts that were not in Smartmatic's Complaint. (Connolly Aff., ¶ 28). It should not have taken OANN a year to identify its own broadcasts. OANN identified additional broadcasts and republications of broadcasts in its December 8, 2023 supplemental interrogatory answers. (Connolly Aff., ¶ 29). Withholding the identification of these broadcasts, which OANN clearly could have and should have disclosed earlier, was pure gamesmanship. More broadcasts and republications means more discovery is needed from OANN about the individuals involved with those publications and circumstances surrounding the publications.

## V.     OANN delayed identifying relevant sources for the defamatory statements made during its programs, including individuals and organizations.

OANN played a similar game of "hide-and-seek" with respect to their so-called sources for their defamatory statements about Smartmatic. On November 3, 2022, OANN served its initial Rule 26(a)(1) disclosures. (Connolly Aff., ¶ 19). OANN identified *zero* sources for their allegedly defamatory statements in their initial disclosures. (Connolly Aff., ¶ 30). Zero. That all changed *thirteen* months later. On December 5, 2023, OANN served amended Rule 26(a)(1) disclosures that added *over 80* new individuals, companies, and organizations. (Connolly Aff., ¶ 31). The new list includes U.S. and foreign nationals, several secretaries of state, federal agencies, and a host of

other companies and organizations. (*Id.*). While Smartmatic is familiar with some of the names, OANN's failure to include them in its initial Rule 26(a)(1) disclosure is inexplicable and its decision to wait until December 5 to amend the disclosure is prejudicial.

OANN compounded the prejudice by providing incomplete answers to Smartmatic's first set of interrogatories. Smartmatic served three interrogatories to obtain the identity of OANN's so-called sources. (Connolly Aff., ¶ 32). Smartmatic asked for all sources of information for visuals used during the defamatory programs (ROG 7), all information provided to OANN regarding alleged election fraud (ROG 10), and all evidence OANN possessed indicating its defamatory statements were true (ROG 18). (*Id.*). On December 16, 2022, with its answers to Smartmatic's first set of ROGs, OANN refused to answer each one of these interrogatories. (*Id.*). This is information that OANN clearly possessed at the time it responded to the interrogatories. OANN should know what sources it allegedly relied upon for the defamatory statements and programs, but OANN did not provide the information . . . at first.

OANN, as has been its pattern, waited to supplement its interrogatories to prejudice Smartmatic and elongate the time needed for discovery. OANN supplemented its answers to these interrogatories on October 6, 2023, *ten months* after its initial answers. (Connolly Aff., ¶ 33). At that time, OANN supplemented its answer to ROG 7 with a 150-row chart identifying sources, supplemented its answer to ROG 18 by identifying *one* person's investigation of Smartmatic, and added a variety of named and unnamed people and entities to its answer to ROG 10. (*Id.*). OANN's supplement to ROG 10 stated:

> As a result, OAN personnel received extensive information regarding allegations of fraud or irregularities involving the election technologies or systems used during the 2020 Presidential Election from numerous sources, not all of which are identifiable at this time. By identifying information in response to this Interrogatory, Herring does not represent that it considered such information in its reporting or otherwise found such information

> credible. Some of these sources include: concerns raised about voting machines and voting machine companies by others; reports from media publications; news alerts from a variety of other media outlets and sources, including Dataminr, the Associated Press, Reuters, WikiLeaks, and the Epoch Times; interviewees including those listed in response to Interrogatory No. 12; declarants in elections lawsuits; Congressional hearings; emails from "tipsters" around the United States; and viewer comment forms that contained information regarding allegations of fraud or irregularities.

(Connolly Aff., Exhibit Y). This introduces more questions than answers, such as which articles, which declarants, which Congressional hearings, which tipsters, and which viewer comments. Regardless, the real problem from a discovery perspective is that OANN did not provide this information until eleven months after Smartmatic served the first set of ROGs.

## VI.     Magistrate Judge Upadhyaya granted two emergency motions to pause depositions pending resolution of discovery disputes.

OANN not only failed to meaningfully and timely engage in written discovery, but also attempted to exploit its own shortcomings to gain a strategic advantage. Smartmatic's document production does not suffer from the same deficiencies as OANN's. Smartmatic started its document production on February 3, 2023. (Connolly Aff., ¶ 34). Over the course of the next ten months, Smartmatic produced over 2.4 million documents. (*Id.*). Smartmatic has already produced to OANN documents covering over 20 years of its corporate history from 51 different custodians located in the United States and across the world. (*Id.*). Smartmatic's fulsome production positioned OANN to start noticing party and third-party witnesses for depositions. It also positioned OANN to start serving serial third-party subpoenas.

The problem was disparity. OANN was positioned to start depositions because Smartmatic's production was fulsome. Smartmatic was not. Accordingly, when OANN started to notice and request deposition dates, Smartmatic explained that the parties should wait to start depositions until after Magistrate Judge Upadhyaya was able to resolve the outstanding discovery issues and OANN completed document production. (Dkt. 105). OANN refused. (*Id.*). It proceeded

to notice multiple party and non-party witnesses for depositions. (*Id*.). This required Smartmatic to file an emergency motion to quash until this Court or Magistrate Judge Upadhyaya could start ruling on the outstanding discovery issues. (See Dkt. 105). Magistrate Judge Upadhyaya granted that motion on October 21, 2023.[3] (10/21/23 Minute Order).

Then, just six days after Magistrate Judge Upadhyaya granted Smartmatic's motion and stayed depositions, OANN served another four deposition notices. (Dkt. 113). OANN set these four depositions for the exact dates it had set the depositions that were stayed by the 10/21/23 Minute Order. (*Id*.). Smartmatic was forced to file yet another emergency motion. (*Id*.). In this emergency motion, Smartmatic asked to stay all depositions. (*Id*. at 15). Magistrate Judge Upadhyaya granted Smartmatic's motion on November 11, and temporarily stayed depositions pending further order of the Court. (11/11/23 Minute Order). The Magistrate Judge lifted that stay on December 20 during the parties' conference and ordered the parties to prepare a deposition protocol to be used going forward. (Dkt. 153).

**VII.   Smartmatic moved to extend the discovery schedule given OANN's failure to produce documents and comply with written discovery obligations.**

On September 18, almost three months ago, Smartmatic filed a motion to amend the discovery schedule. (Dkt. 96). The Court had previously set a schedule to complete fact discovery by December 8, 2023, and expert discovery by May 3, 2024. (Dkt. 42). But by September 2023, it was clear the schedule needed to change. OANN had only produced a fraction of the relevant documents from agreed-upon custodians, refused to add dozens of relevant custodians even though they participated in producing the defamatory productions, and had not fully responded to interrogatories. (*See* Dkt. 96). As of September 2023, Smartmatic had not been able to commence

---

[3] Ironically, OANN appealed that ruling to this Court, arguing Magistrate Judge Upadhyaya did not have the authority to enter the emergency order, which proves Smartmatic's point: Smartmatic has had nowhere to turn to for over six months to require OANN to comply with its discovery obligations.

depositions because it needed documents to conduct them. (*Id*. at p. 11). OANN would not turn over documents. (*Id*. at p. 5–7).

The solution was obvious: amend the discovery schedule so that depositions would begin after Magistrate Judge Upadhyaya denied the recusal motion and was able to resolve the numerous discovery issues. Smartmatic filed the motion on September 18. (Dkt. 96). Smartmatic renewed that motion again on December 8.  (Dkt. 132). The Court has not yet ruled on Smartmatic's motion or entered a new discovery schedule. However, even the discovery schedule proposed in Smartmatic's motion will soon become moot. On December 20, Magistrate Judge Upadhyaya strongly advised the parties to submit a new discovery schedule to this Court by January 2, 2024. (Kovacs Decl., ¶ 3). Magistrate Judge Upadhyaya further instructed the parties to take into consideration the large backlog of discovery issues that the Magistrate Judge must resolve and the time it will take to resolve those issues. (Kovacs Decl., ¶ 4).  Magistrate Judge Upadhyaya also encouraged the parties to try to agree on a new, reasonable schedule. (*Id*. at ¶ 3).

## VIII.   Magistrate Judge Upadhyaya has outlined a new protocol for the parties to address the dozens of discovery related issues pending and upcoming.

Magistrate Judge Upadhyaya has moved quickly to position the parties to start depositions and proceed through discovery in 2024 now that she has denied the recusal motion. On December 8, the Magistrate Judge denied OANN's recusal motion. (Dkt. 133). On December 11, OANN confirmed that it would not appeal the Magistrate Judge's order. (Dkt. 141). Upon receiving that information, Magistrate Judge Upadhyaya ordered the parties to provide a joint letter identifying pending discovery motions and issues. (12/12/23 Minute Order). The Magistrate Judge told the parties to use ten pages to outline the issues. (*Id*.). The number of issues was so voluminous, however, that *OANN* suggested that the parties jointly move Magistrate Judge Upadhyaya to double that length, allowing the parties to use 20 pages to outline the open discovery

issues. (Dkt. 144). The Magistrate Judge granted that request, and on December 14, the parties submitted a joint notice identifying over 20 discovery disputes that were pending or forthcoming. (Dkt. 147).

Several of the pending discovery motions and issues are particularly pertinent to actual malice. First, Smartmatic filed a motion to compel OANN's financial documents on December 1, 2023. (Dkt. 124). In this motion, Smartmatic outlined how OANN's financial documents are relevant to OANN's motive for publishing defamatory statements, and motive is a factor when determining actual malice. (*Id*. at p. 6-10). Second, on December 5, Smartmatic filed a motion to compel the production of documents in response to Smartmatic's second set of RFPs. (Dkt. at 128). Many of the requests that OANN refuses to answer bear on the issue of actual malice. *Infra* Part I. Third, on December 5, Smartmatic filed a motion to compel the production of documents from related actions. (Dkt. at 130). As explained in the motion, OANN refused to produce documents from the other lawsuits in which it was accused of making defamatory statements related to fraud in the 2020 election. (*Id*. at p. 2–5). Fourth, Smartmatic will be asking Magistrate Judge Upadhyaya to require OANN to expand the custodians used for document production to include many of the relevant witnesses *first disclosed by OANN* in its supplemental interrogatory answer on September 14.

Magistrate Judge Upadhyaya held an in-person conference with the parties on December 20, 2023. The parties can now finally move toward completing written discovery (including document production), scheduling and completing depositions, and moving toward finishing fact and expert discovery. First, as noted above, Magistrate Judge Upadhyaya suggested the parties submit a new discovery schedule to this Court by January 2, 2024. (Kovacs Decl. ¶ 2). Second, Magistrate Judge Upadhyaya ordered the parties to establish a deposition protocol, a tacit

acknowledgment that the parties were not yet in a position to start depositions. (Dkt. 153). Third, the Magistrate Judge told the parties that discovery issues would be resolved without the delay associated with full briefing schedules. Magistrate Judge Upadhyaya is going to handle the majority of the disputes based on oral argument after the parties have exhausted the meet-and-confer process. (*Id.*) Smartmatic welcomes this recent development as it has been waiting seven months to get resolution of the many issues it has with OANN's discovery responses to date.

## **LEGAL STANDARD**

Rule 56(d) exists to prevent a party, like OANN, from trying to take advantage of deficient discovery. "Rule 56(d) provides an avenue of relief for nonmovants who can show, by affidavit or declaration, that for specified reasons they cannot present facts essential to justify their opposition to summary judgment."[4] *Jeffries v. Barr*, 965 F.3d 843, 855 (D.C. Cir. 2020). Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). "To obtain relief, a Rule 56(d) movant must: (1) outline the particular facts the party defending against summary judgment intends to discover and describe why those facts are necessary to the litigation; (2) explain why the party could not produce those facts in opposition to the pending summary judgment motion; and (3) show that the information is in fact discoverable." *Jeffries*, 965 F.3d at 854 (referencing the "*Convertino*" elements).

"While the district court enjoys broad discretion in structuring discovery, summary judgment is premature unless all parties have had a full opportunity to conduct discovery." *Convertino v. U.S. Dept. of Justice*, 684 F. 3d 93, 99 (D.C. Cir. 2012). A Rule 56(d) "motion

---

[4] Internal citations and quotations omitted throughout.

requesting time for additional discovery should be granted almost as a matter of course unless the non-moving party has not diligently pursued discovery of the evidence." *Id.* "Consistent with the salutary purpose underlying [Rule 56(d)], district courts should construe motions that invoke the rule generously, holding parties to the rule's spirit rather than its letter." *Resolution Trust Corp. v. N. Bridge Assoc.*, 22 F.3d 1198, 1203 (1st Cir. 1994) (cited by *Convertino*, 684 F.3d at 99). For that reason, the Court should look "beyond a litigant's declaration to his briefing in analyzing whether the *Convertino* elections have been satisfied." *Jeffries*, 965 F.3d at 855.

## ARGUMENT

OANN's failure to comply with its discovery obligations, coupled with discovery disputes pending for months while Magistrate Judge Upadhyaya's recusal was pending, created an environment that limited Smartmatic's ability to obtain the evidence needed to establish that OANN acted with actual malice. OANN has not produced documents in its possession, custody, and control showing what it knew or did not know when publishing the defamatory statements. OANN's witnesses have not been deposed on whether they knew that what they published was false or acted with reckless disregard. OANN's so-called sources have not been deposed to determine if they were credible or not when discussing the claims with OANN. And Smartmatic's journalism expert has not had the opportunity to evaluate the evidence, much less opine, on whether OANN violated generally accepted journalism principles. Smartmatic has been deprived, by circumstances beyond its control, of the evidence needed to oppose the pending motion.

I. **Smartmatic has satisfied the *Convertino* elements to support allowing Smartmatic to complete fact and expert discovery before ruling on summary judgment.**

OANN's motion for partial summary judgment focuses on whether Smartmatic can introduce sufficient evidence that it acted with actual malice. Motion at 3. Actual malice is a fact-intensive inquiry that focuses on the defendant's state of mind. *US Dominion, Inc. v. Powell*, 554

F. Supp. 3d 42, 59 (D.D.C. 2021). A defendant's protestation of innocence, claiming that he or she believed what they said, is not dispositive. *New York Times Co. v. Sullivan*, 376 U.S. 254, 267 (1964) ("Good motives and belief in truth do not negate an inference of malice"). Instead, a plaintiff can establish actual malice by introducing direct or circumstantial evidence showing that those involved in the production of the defamatory program knew what was said was false or acted with reckless disregard for the truth. *Powell*, 554 F. Supp. 3d at 59. Reckless disregard for the truth can be established in a variety of ways, including showing that the defendant relied on unreliable sources, made or repeated inherently improbably claims, failed to investigate the claims before publication, and/or acted with an improper purpose.[5] Discovery *from the defendant* is obviously vital regardless of how the plaintiff chooses to prove its case.

### A. Smartmatic intends to discover facts establishing that OANN acted with actual malice once OANN completes its document production and its witnesses are deposed.

The fact that the header of this section states a self-evident truth illustrates the absurdity of OANN's motion for partial summary judgment. Yes, Smartmatic needs discovery from OANN to establish that OANN acted with actual malice. (Connolly Aff., ¶ 35). OANN is the only one with that evidence because it relates to OANN's actions, inactions, and state of mind. (*Id.*). The following is an overview of the discovery that Smartmatic still needs from OANN to establish actual malice.

---

[5] *See, e.g., St. Amant v. Thompson*, 390 U.S. 727, 732 (1968) (making inherently improbable claims, having obvious reasons to doubt a source, and lack of verification of information can all be evidence of actual malice); *Lohrenz v. Donnelly*, 350 F.3d 1272, 1284 (D.C. Cir. 2003) (failure to investigate and ignoring contradictory facts can be factors in establishing actual malice); *US Dominion, Inc. v. Powell*, 554 F. Supp. 3d 42, 60 (D.D.C. 2021) (actual malice can be proven by demonstrating the defendant was subjectively aware its story was fabricated or inherently improbable, or based on unverified sources or sources that there were obvious reasons to doubt); *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667–68, 109 S. Ct. 2678, 2686, 105 L. Ed. 2d 562 (1989) (findings of ill-will or motive can be "supportive of the court's ultimate conclusion" that the defendant acted with actual malice).

       **1.**      **Smartmatic needs documents and deposition testimony from the hosts of programs that published the defamatory statements.**

OANN published defamatory statements about Smartmatic on a variety of programs, and each program was hosted by a different individual or set of individuals. The defamatory statements were made during After Hours (hosted by Alex Salvi), News Room (hosted by Elma Aksalic, Mike Dinow, John Hines, Samantha Lomibao, and Emily Finn), Tipping Point (hosted by Kara McKinney), Breaking News Live (hosted by Patrick Hussion), Real America (hosted by Dan Ball), In Focus with Stephanie Hamill (hosted by Stephanie Hamill), Weekly Briefing (hosted by Christina Bobb), and The Real Story (hosted by Natalie Harp). (*See generally*, Dkt. 1). Defamatory statements were also made in a special about Michael Lindell hosted by Pearson Sharp and in more than twenty broadcasts on OANN of Mike Lindell's documentaries: Absolute Proof, Absolute Interference, Scientific Proof, and Absolute 9-0. Smartmatic needs discovery (documents and deposition testimony) from each of these hosts – at least fourteen individuals – to help establish that they knew what was stated and implied during their program was false or acted with reckless disregard for the truth.

With respect to documentation, Smartmatic needs documentation from each of these hosts to determine: (1) when did the host decide to cover the election fraud claims, including claims about Smartmatic, (2) the host's interaction with guests on the shows prior to airing of the show to evaluate the credibility of the guest and the claims the guest would make, (3) the investigation conducted by the host or ordered by the host into the election fraud claims generally and Smartmatic fraud claims specifically, (4) the host's awareness, through media reports or direct communications, that the election fraud claims were meritless as were the claims being made about Smartmatic, and (5) the host's familiarity with how viewers were reacting to the defamatory

statements made on his or her show to show ill-intent. (Connolly Aff., ¶ 36). Each of these categories of documents goes directly to establishing that the hosts acted with actual malice. (*Id.*).

With respect to depositions, Smartmatic needs to depose the hosts to determine whether he or she knew the statements were false or acted with reckless disregard for the truth. (Connolly Aff., ¶ 37). Among other things, deposition testimony from the hosts will generate evidence regarding: (1) the investigation they conducted about election fraud generally and Smartmatic specifically prior to their programs, (2) the basis for their "beliefs" about the election fraud claims generally and Smartmatic specifically before, during, and after their programs, (3) their understanding of the inherent improbability of the election fraud claims generally and Smartmatic specifically given the security around the election and post-election audits, (4) their attempts, or lack thereof, to balance their reporting, interview people who would debunk the election fraud claims, and correct the record after receiving retraction demands, (5) their personal motivations for embracing the election fraud claims and defaming Smartmatic, and (6) oral conversations that they had with their production teams, executives, and others about the merits of election fraud claims generally and Smartmatic claims specifically before, during, and after publishing the defamatory programs. (*Id.*)

### 2. Smartmatic needs documents and deposition testimony from the production teams who participated in the defamatory programs.

The general rule is that a plaintiff must bring actual malice home to the individuals involved in the publication of the defamatory programs. The hosts, obviously, fit the bill. But they are not the only ones. Smartmatic can establish actual malice through the knowledge and reckless disregard of other individuals who participated in the production and airing of the 45 defamatory programs at issue. *Powell*, 554 F. Supp. 3d at 59. In this case, based on OANN's September 14

ROG answers, Smartmatic needs discovery from over fifty producers, bookers, editors, writers, and assistants (the "production teams") to establish actual malice.[6] (Connolly Aff., ¶ 38).

The documentation that Smartmatic needs from the production teams is similar to what Smartmatic needs from the hosts. (Connolly Aff., ¶ 39). Among other things, Smartmatic needs (1) communications with the hosts discussing the upcoming content of the show and subjects likely to be covered by the guests appearing on the shows, (2) communications between hosts and others at OANN regarding the election fraud claims generally and Smartmatic specifically to test whether they believed what was being aired on the programs and said by the hosts, (3) due diligence they performed about the guests appearing on the shows with respect to credibility and bias, and (4) due diligence they performed about the election fraud claims generally and Smartmatic specifically to determine if they knew the claims were false based on the investigation or acted with reckless disregard because third-party sources were describing the claims as baseless. (*Id.*).

Smartmatic also needs to depose members of the production teams once it obtains a complete set of document production from them. (Connolly Aff., ¶ 40). Smartmatic needs to depose members of the production teams to obtain evidence regarding what they knew, what they did not know, and what they should have known before, during, and after the publication of the defamatory programs. (*Id.*). Among other things, at the depositions, Smartmatic will obtain evidence regarding (1) what each of them believed regarding the election fraud claims generally and Smartmatic claims specifically at the time of the defamatory programs, (2) oral conversations that they had with each other, the hosts, and others at OANN about the election fraud claims

---

[6] The following are some, but not all, of the producers, bookers, editors, writers, and assistants that OANN has disclosed so far and from whom Smartmatic needs discovery to establish actual malice: Cecilia Castro-Duenas, Michael Guzman, Brandon Lesky, Travis Burgher, Ivan Burgeono, Rachel Acenas, Colin Eustace, Miles Hall, Jeremy Hartley, Christina Howitson, Jacob Miller, and Griffin Morris. (Connolly, Aff., ¶ 39). As noted above, OANN has thus far refused to add these individuals to their list of custodians for the first or second set of RFPS. This is obviously an untenable position. OANN will not provide documentation from individuals whose knowledge goes directly to establishing actual malice.

generally and Smartmatic specifically, (3) oral conversations they had with or about the guests who appeared on the defamatory programs about their claims and basis, or lack of basis, for their claims, (4) the investigation they conducted into the election fraud claims generally and Smartmatic specifically before the defamatory programs were broadcast, and (5) their attempts, or lack thereof, to prevent the publication of the defamatory statements about Smartmatic before and after the broadcast of the defamatory programs. (*Id*.).

> **3.    Smartmatic needs documents and deposition testimony from the OANN executives who participated in, supervised, and controlled the defamatory programs.**

Smartmatic also needs discovery from OANN's executives to bolster its evidence of actual malice. (Connolly Aff., ¶ 41). OANN has identified three executives overseeing operations, including Robert Herring, Sr., Charles Herring, and Robert Herring, Jr. (the "executive team"). (*Id*.) The executive team has critical evidence on actual malice. (*Id*.). With respect to documentation, Smartmatic needs the executive team to produce (1) communications about the defamatory programs, (2) communications with the hosts and production teams regarding coverage of the election fraud claims generally and Smartmatic claims specifically, (3) instructions to the hosts, production teams, and others to endorse the election fraud claims generally and Smartmatic claims specifically, (4) ratings and viewership information considered by the executives during the disinformation campaign that created an incentive to promote and endorse the election fraud claims, (5) advertising and financial records showing an incentive to promote and endorse election fraud claims, and (6) communications demonstrating that the executives knew or were aware that the election fraud claims generally and Smartmatic claims specifically were baseless. (*Id*.).

Smartmatic also needs to take depositions of the executive team to obtain evidence of actual malice. (Connolly Aff., ¶ 42). During the depositions, Smartmatic will obtain evidence

regarding (1) oral communications that the executive team had amongst themselves regarding the profitability of endorsing the election fraud claims generally and Smartmatic fraud claims specifically, (2) oral communications that the executive team had with hosts and the production teams about endorsing the election fraud claims generally and Smartmatic fraud claims specifically, (3) the executive team's knowledge of sources debunking the election fraud claims generally and Smartmatic fraud claims specifically, (4) the executive team's implementation and monitoring of whether the defamatory programs complied with generally accepted journalism practices, and (5) the executive team's knowledge that the defamatory programs were disseminating and endorsing the election fraud claims generally and Smartmatic fraud claims specifically. (*Id*.).

Additionally, discovery from the executive team is critical to establishing actual malice because the executive team *may* have engaged in criminal activities to further the election fraud claims generally and Smartmatic fraud claims specifically. (Connolly Aff., ¶ 43). Discovery to date has uncovered that certain members of the executive team were in communication with an individual who has already pled guilty to crimes relating to the 2020 election. (*Id*.).[7] Discovery to date has also uncovered that certain members of the executive team appear to have violated state and federal laws regarding data privacy in connection with promoting election fraud claims.[8] (*Id*.). Further document production and depositions of the executive team will likely illuminate the scope of criminal activity (if any) by the executive team, which is evidence of their improper motive and, hence, circumstantial evidence of actual malice.[9] (*See id*.).

---

[7] Smartmatic will provide the Court with the discovery documents evidencing this point *in camera*.

[8] Smartmatic will provide the Court with the discovery documents evidencing this point *in camera*.

[9] As a result of other litigation, Smartmatic is aware of other documents showing misconduct, if not criminal activity, by members of the executive team. OANN did not produce these documents in this litigation, suggesting either spoliation or improper withholding of evidence. This is another issue that the Magistrate Judge will need to address.

### 4. Smartmatic needs documents and deposition testimony from OANN's so-called sources.

In October 2023, OANN amended its interrogatory answers to include dozens of additional individuals, companies, and organizations that it claimed were sources for its defamatory programs and statements. *Supra* Part V. In December 2023, OANN amended its Rule 26(a)(1) disclosure to add over *80* new individuals that it claimed were individuals with relevant knowledge and information regarding its claims and defenses. (Connolly Aff., ¶ 31). The individuals, companies, and organizations that OANN has finally disclosed as being sources for its defamatory programs and statements (the "third-party sources") are important sources for discovery to establish actual malice. (Connolly Aff., ¶ 44).

With respect to documentation, Smartmatic needs to obtain documents from the third parties regarding (1) their communications with OANN, (2) information they provided to OANN to support the defamatory statements made by them and others during the defamatory programs, and (3) due diligence, if any, conducted by the third-party sources to support the election fraud claims generally and Smartmatic fraud claims specifically. (Connolly Aff., ¶ 45). Smartmatic likewise needs full and complete document production from OANN regarding (1) its communication with the third-party sources, (2) its evaluation of the credibility of the third-party sources, and (3) its familiarity with criticism of the third-party sources from other news organizations and politicians across the political spectrum. (*Id*.). This documentation will help to establish that OANN acted with actual malice because it knowingly or recklessly relied on unreliable sources. (*Id*.).

With respect to depositions, Smartmatic must examine the third-party sources on a range of topics to establish that (1) they were not reliable sources for election fraud claims generally and Smartmatic fraud claims specifically and (2) OANN knew or recklessly disregarded that the third-

party sources were not reliable sources on these topics. (Connolly Aff., ¶ 46). The depositions of the third-party sources will establish these points by probing their lack of firsthand knowledge to support their claims, their lack of documentation or evidence to support their claims, and the inconsistency of their claims with credible sources and common sense. (*Id.*). The depositions of the third-party sources will bring actual malice home to OANN by showing that OANN did not ask these third-party sources for support for their claims, and the third-party sources did not provide OANN with any support for their claims. (*Id*)

> ### 5. Smartmatic needs fact discovery to enable its expert to evaluate whether OANN violated generally accepted journalism practices.

Courts have established the commonsense rule that certain types of evidence are not sufficient to establish actual malice by themselves but, in combination with other evidence, can and do establish actual malice. *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968). This is true of evidence relating to motive. *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667-669 (1989). It is also true of evidence showing that defendant failed to comply with generally accepted journalism practices. *Kelley v. Wren*, 782 S.E.2d 406, 413 (S.C. Ct. App. 2016) (finding an expert's testimony on journalistic standards relevant to helping the jury decide the issue of actual malice). While evidence that defendant departed – even grossly so – from generally accepted principles will not establish actual malice by itself, such evidence can support a finding of reckless disregard for the truth in combination with other evidence. *See, e.g., Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 667-669 (1989) (newspaper's departure from accepted standards can support a finding of actual malice); *Murphy v. Boston Herald, Inc.*, 865 N.E.2d 746, 765–66 (Mass. 2007) (noting that "evidence concerning a reporter's apparent reckless lack of care may be one factor in the actual malice inquiry").

Smartmatic will supplement its evidence that OANN acted with actual malice with evidence that OANN violated generally accepted journalism practices (assuming that is the conclusion reached by Smartmatic experts). (Connolly Aff., ¶ 47). Among other things, Smartmatic's expert will evaluate whether OANN verified claims before publishing those claims, whether OANN properly vetted the credibility of sources before republishing and endorsing their claims, whether OANN minimized harm in the way that it presented and distributed its claims about the 2020 election being rigged, whether OANN sought out sources contrary to those put on air and published, and whether OANN provided Smartmatic and other subjects of its coverage an opportunity to respond to those allegations. (*Id.*). Smartmatic needs discovery into each of these facts (document production and depositions) so that its expert can evaluate whether OANN complied with generally accepted journalism practices. (*Id.*).

***

It is axiomatic that a non-movant should be permitted to take depositions of witnesses before being required to respond to a motion for summary judgment. *Thompson v. Fathom Creative, Inc.*, 626 F. Supp. 2d 48, 54 (D.D.C. 2009). The rationale for permitting these depositions is magnified when, as here, the plaintiff has also been deprived of a complete and full document production from the defendant. *FERC v. City Power Mktg., LLC*, 235 F. Supp. 3d 152, 155–56 (D.D.C. 2017). And the rationale for permitting these depositions is further magnified when, as here, the stated grounds for partial summary judgment are the defendant's state of mind, which can only be fully examined through depositions. *Gonzalez-Ramos v. ADR Vantage, Inc.*, 2020 WL 7136840, at *4 (D.D.C. 2020) ("Given the centrality of [proposed deponent's] existing declarations to dispositive issues in this litigation, the need for [] deposition testimony is self-

evident"). Smartmatic clearly has a need for documents and depositions of OANN to respond to the motion for partial summary judgment.

**B.**     **Smartmatic cannot submit the evidence necessary to establish that OANN acted with actual malice because OANN has stymied Smartmatic's discovery efforts.**

OANN's failure to comply with its discovery obligations, coupled with Magistrate Judge Upadhyaya's inability to resolve discovery issues pending the recusal motion, are the reasons that Smartmatic cannot submit the evidence necessary to establish that OANN acted with actual malice at this time. OANN's pattern of misconduct is outlined in the Procedural History section. *Infra* Parts I-V. The pattern includes (1) failing to produce documents in response to Smartmatic's first set of RFPs, (2) failing to produce documents in response to Smartmatic's second set of RFPs, (3) failing to include relevant custodians in its searches and productions in response to Smartmatic's first and second set of RFPs, and (4) failing to identify relevant witnesses, custodians, and sources until September and December 2023. (*See, e.g.*, Connolly Aff., ¶¶ 15, 23, 25, 31; Dkts. 64, 129). The individual and cumulative effect of this misconduct has been to deprive Smartmatic of relevant document production and written discovery, which made proceeding with depositions impractical and inefficient.

It is universally recognized that a party is entitled to obtain documents from party witnesses before proceeding to depose the party witnesses. That is part of the orderly progression of litigation and why document production precedes depositions in most scheduling orders. *Laker Airways Ltd. v. Pan Am. World Airways*, 103 F.R.D. 42, 51 (D.D.C. 1984) (delaying depositions until disputes over document production could be resolved); *Zinna v. The Bd. Of Cnty. Comm'rs of The Cnty of Jefferson*, 250 F.R.D. 527, 530 (D. Colo. 2007) (granting Motion to Stay Depositions until Plaintiff complies with written discovery requests). Here, OANN embarked on a strategy designed to deprive Smartmatic of the documentation that it needed to commence depositions. OANN slow-

rolled its document production, failed to complete production, and failed to include relevant custodians. (*See, e.g.*, Connolly Aff., ¶¶ 15, 23, 25, 31; Dkts. 64, 129).

OANN's total document production prior to December 8 was less than 243,000 documents, did not include dozens of relevant custodians, and did not include documents responsive to multiple categories of relevant material. (Connolly Aff., ¶ 48). Much of the production is junk, including articles and materials that OANN's attorneys located after the fact to artificially inflate the size of the production. (*Id.*). To put OANN's production in perspective, Smartmatic has produced over 2.4 million documents and over 8.8 million pages already (10x the size of OANN's production). (Connolly Aff., ¶ 12, 34). In Smartmatic's litigation against Newsmax over the publication of similar defamatory statements, the defendant has produced over three times more documents than OANN. (Connolly Aff., ¶ 49). OANN's production is deficient by any measure.

Normally, a defendant's deficient production of documents would not be without recourse. The plaintiff would bring the issue to the court's attention, the court would compel production with a specific deadline, and the defendant would comply or face sanctions. That normal process has not been available to Smartmatic. In May, this Court referred all discovery disputes to Magistrate Judge Upadhyaya. (5/31/23 Minute Entry). That referral and instruction have been repeated on more than one occasion. (*See also* 7/10/23 Minute Order). But, six days after the referral, OANN sent a frivolous letter to Magistrate Judge Upadhyaya seeking her recusal and later filed a formal motion for recusal. (Dkt. 78). That motion had the effect of precluding Magistrate Judge Upadhyaya from ruling on any discovery issues. Smartmatic could not get a ruling on discovery issues with this Court because it had referred discovery issues to Magistrate Judge Upadhyaya. Smartmatic could not raise discovery issues from Magistrate Judge Upadhyaya because of the pending recusal motion. Smartmatic did not have a judge that could force OANN

to make its document productions. That logjam was finally cleared on December 8 when Magistrate Judge Upadhyaya denied the motion for recusal. (Dkt. 134).[10]

Even though Smartmatic could not obtain relief from OANN's deficient document production for the last seven months, Smartmatic did what it could to put the case on a reasonable and orderly path toward depositions. First, Smartmatic appealed to OANN's professionalism, which got nowhere. Starting in March and continuing through December, Smartmatic explained to OANN that depositions could not begin until document production was completed. (Connolly Aff., ¶ 50). Smartmatic suggested the parties agree to a new schedule that took into consideration the delay created by the recusal motion. (*Id*.). OANN refused to agree to a new schedule and refused to voluntarily fix its deficient document production. (*Id*.).

Second, Smartmatic moved this Court for an order amending the scheduling order to allow for depositions to commence after Magistrate Judge Upadhyaya could resolve discovery disputes. Smartmatic first moved for an amended scheduling order in September 2023. (Dkt. 96). By that time, OANN had only produced 238,000 documents. It was also apparent at that time that, even if Magistrate Judge Upadhyaya denied the recusal motion that same month, there would not be enough time to get all the production issues resolved, and complete depositions, prior to the original December 8 deadline. (*See* Connolly Aff., ¶ 50–52). Smartmatic renewed its motion to amend the discovery schedule on December 8, but as of this submission, the Court has not yet had the opportunity to rule on either of those motions. (Dkt. 132).

In response to these facts, OANN will argue that Smartmatic has not been diligent because it did not notice depositions of OANN and third-party witnesses prior to December 8. Four

---

[10] The frivolous nature of OANN's motion is illustrated by the fact that OANN did not even appeal Magistrate Judge Upadhyaya's order denying the recusal motion. If OANN truly believed the grounds raised in its motion required recusal, they would have pursued it with this Court. Moreover, the Court need only review the briefing and order on the recusal motion to appreciate the leaps of imagination underlying OANN's so-called grounds for recusal.

problems with that argument. First, OANN conveniently ignores that noticing such depositions would have been a waste of time given that OANN had not come close to completing its document production and OANN was still identifying new sources and witnesses as late as December 5, three days before the original close of discovery. (Connolly Aff., ¶ 52). It would have been inefficient for Smartmatic to take depositions of OANN witnesses based on the woefully incomplete document production because Smartmatic would just have to take those depositions again after OANN fixed its document production. Duplicative and repetitive depositions may be acceptable and profitable for OANN's counsel, but they are not acceptable to Smartmatic.

Second, OANN cannot deny that the parties were unable to get the discovery motions, including production-related issues, resolved while Magistrate Judge Upadhyaya considered the recusal motion. After denying the recusal motion, Magistrate Judge Upadhyaya asked the parties to submit a joint letter outlining pending discovery issues. (12/12/23 Minute Order). OANN identified fourteen discovery issues for Magistrate Judge Upadhyaya. (Dkt. 147 at p. 7-14). OANN has not even filed five of those disputes, and six are only partially briefed. (*Id.*) And OANN, in a submission with this Court, indicated that there were several discovery related issues that it was *now* going to raise with Magistrate Judge Upadhyaya because this Court had previously not been available to resolve the issues. (Dkt. 143). After filing its motion for partial summary judgment, OANN has fully acknowledged that discovery issues have been held in limbo for the last seven months.

Third, Magistrate Judge Upadhyaya's rulings on Smartmatic's emergency motions are consistent with the recognition that the parties should not proceed with depositions until (1) both parties could commence depositions and (2) document production was substantially complete. Smartmatic *twice* moved for an emergency motion to prevent OANN from proceeding with

depositions when Smartmatic was not able to do so, given OANN's deficient document production. (See Dkt. 105; Dkt. 113). Magistrate Judge Upadhyaya *twice* granted an emergency motion, stating that depositions are "temporarily stayed pending further order of the Court." (10/21/23 and 11/11/23 Minute Orders). Magistrate Judge Upadhyaya's order was a recognition that the parties were not in a position to proceed to depositions at that point due to the disparity in document production.

Fourth, OANN's argument that Smartmatic was positioned to depose its witnesses and third parties prior to December 8 is belied by the paltry volume of documents produced by OANN on those witnesses and third parties. For example, OANN submitted affidavits from eleven OANN witnesses in support of its motion for partial summary judgment. (See Dkt. 136, Exs. B, C, E-M.) Looking at just this self-selected group of witnesses, OANN has only produced some of the documents for these witnesses in response to Smartmatic's first set of RFPs and *no* documents from these witnesses in response to Smartmatic's second set of RFPs. (*See* Connolly Aff., ¶ 15, 36, 38; Dkts. 64, 129). OANN also included an affidavit from Glen Chong, a "source" that OANN did not identify until December 5, 2023. (Motion, Ex. D); (Connolly Aff., ¶ 54). There are only two documents that reference Mr. Chong in OANN's production, and Smartmatic has not had the opportunity to subpoena him for additional documents. (*Id*.). Smartmatic is in no position to depose even these witnesses based on OANN's deficient document production. (*Id*.).

\*\*\*

Smartmatic has not received the documents needed to oppose OANN's motion because OANN has not produced the documents. Smartmatic has not taken the depositions needed to oppose OANN's motion because OANN has not produced the documents for those deponents and slow-rolled even its identification of potential witnesses. Under these circumstances, courts have

universally found the second *Convertino* element satisfied justifying Rule 56(d) discovery. *See, e.g., Sagar v. Lew*, 309 F.R.D. 18, 19 (D.D.C. 2015) (defendant's refusal to produce documents warranted additional discovery under 56(d)); *Londrigan v. Fed. Bureau of Investigation*, 670 F.2d 1164, 1175 (D.C. Cir. 1981) (further ruling on a Rule 56(f) request to allow depositions that will supplement written discovery)[11]; *Thompson v. Fathom Creative, Inc.*, 626 F. Supp. 2d 48, 53 (D.D.C. 2009) (denying summary judgment as premature where neither party deposed one another); *Ikossi v. Dep't of Navy*, 516 F.3d 1037, 1046-47 (D.C. Cir. 2008) (reversing grant of summary judgment where party's 56(f) affidavit sufficiently expressed need to depose witnesses).

## C. The information Smartmatic seeks to oppose summary judgment is discoverable.

Smartmatic presumes this *Convertino* element is not disputed. Smartmatic seeks completion of document production by OANN (a party to the litigation), depositions of OANN's hosts, production team, and executive team (parties to the litigation), and documents and depositions of third-party sources, including those whom OANN has only recently disclosed. (Connolly Aff., ¶¶ 35–47). The discovery Smartmatic seeks is the typical discovery provided in litigation, and, as such, it is the type of discovery that courts universally find is discoverable under the third *Convertino* element. *See, e.g.*, C*onvertino*, 684 F.3d at 100 (D.C. Cir. 2012) (potential deposition or document disclosures provided "ample evidence to suggest that additional discovery could reveal" facts at issue); *Morales v. Humphery*, 309 F.R.D. 44, 48 (D.D.C. 2015) (attorney's affidavit generally pointing to discovery concerns satisfies the third prong); *Richie v. Vilsack¸* 287 F.R.D. 103, 107 (D.D.C. 2012) ("Besides outlining particular facts she intends to discover,

---

[11] In 2010, Rule 56(f) became Rule 56(d). There were no substantive changes to the text of the rule. *See* 2010 Amendment to Fed. R. Civ. P. 56 ("Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)...").

[plaintiff] has sufficiently explained why she could not produce these facts and has shown that the information is in fact discoverable.").

## II.     OANN and its counsel should be sanctioned for its pattern of harassing behavior.

Federal courts have the inherent power "to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991); *Hall v. Dep't of Homeland Sec.*, 219 F. Supp 3d 112, 119 (D.D.C. 2016). This includes the Court's inherent authority to sanction a party and its counsel for conduct that is designed to harass. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258 (1975) (court may assess attorneys' fees where the party has acted in "bad faith, vexatiously, wantonly, or for oppressive reasons"). To support an award of sanctions, the district court must find clear and convincing evidence of bad faith conduct. *Parsi v. Daioleslam*, 778 F.3d 116, 131 (D.C. Cir. 2015).

The actions of OANN and its counsel, since the change in counsel was made in May, merits sanctions, with its motion for partial summary judgment just the latest example of harassing behavior. OANN and its counsel are not attempting to work cooperatively or professionally so the parties can move the case in an orderly fashion through discovery. OANN is looking to unnecessarily increase the time and money Smartmatic must invest to litigate its claims against OANN – seeking to bleed Smartmatic of money *after* it had already hurt Smartmatic financially with the defamation campaign. This pattern of misconduct is not surprising given the nature of OANN's insurance coverage – the Court really should review the policy to understand what is driving this behavior – but it is still a sad statement about our profession.

First, OANN and its counsel abused the discovery process to harass Smartmatic. Smartmatic was made aware of OANN's new counsel on May 31, 2023.  (Connolly Aff., ¶ 55). That same day, OANN served over 1,500 RFPs on Smartmatic. (*Id*.). OANN had previously served 306 RFPs, and Smartmatic was on its way to producing over 2.4 million documents in

response. (Dkt. 81). But, as a gesture of their bad faith, OANN's new counsel served a facially absurd 1,500 RFPs as its first discovery act in the case. Many RFPs were duplicative of one another, making it clear that OANN did not care about crafting requests to get the information it actually needed, it only cared about the volume of requests. (*See generally* Dkt. 81). It certainly set the tone of what was to come. Smartmatic, of course, moved to strike the harassing RFPs. (Dkt. 81).

Second, the next step by OANN's new counsel was to break an agreement that had been reached by Smartmatic and OANN before they entered the case. In April, when it became apparent that OANN would not substantially complete its document production by the May 31 deadline, OANN stated in a letter to Smartmatic that it would not object to an extension of the deadline to serve RFPs. (Connolly Aff., ¶ 16). Again, in May, OANN stated that it would not oppose Smartmatic's motion for an extension of the deadline. (Connolly Aff., ¶ 16). After new counsel entered the case, new counsel did not confirm its position on the motion for extension of time. (Dkt. 54, ¶ 8). Presuming it remained unopposed, Smartmatic proceeded with filing its Motion for Extension of Time (Dkt. 54). OANN later filed an opposition and refused to respond to Smartmatic's second set of RFPs as untimely, forcing Smartmatic to file a motion to compel. (Dkts. 64, 129). OANN should not be allowed to flip-flop on agreements relied upon by Smartmatic simply because it brought in new counsel with a different attitude. (*See* Dkt. 129).

Third, speaking of document production, OANN and its counsel concealed documents produced by third parties in response to subpoenas. (Connolly Aff., ¶ 56). From April through September, OANN issued subpoenas to ten (10) different entities, including Michigan Secretary of State, Cook County, Illinois, North Carolina Secretary of State, Georgia Tech, Nevada Secretary of State, Edelman, Arizona Secretary of State, California Secretary of State, Chicago Board of

Elections, and Wisconsin Election Commission. (*Id.*). OANN did not produce any of the documents it received from these ten entities until December 8, the day before it filed its motion for partial summary judgment. (*Id.*). These documents were produced to OANN in September, October, and November. (*Id.*). Tellingly, OANN had previously chastised Smartmatic for taking *five days* to produce documents from third parties and insisted that Smartmatic produce documents from third parties within 48 hours. (Connolly Aff., ¶ 57). Hypocrisy. OANN held back on producing documents from third parties until December 8 after demanding 48-hour compliance by Smartmatic.

Fourth, OANN forced Smartmatic to file serial motions to stay depositions until OANN complied with its document production obligations and discovery disputes were resolved. In September, when it was apparent that depositions could not be completed by December 8, Smartmatic filed a motion with this Court to stay depositions and amend the discovery schedule. (Dkt. 96). While that motion was pending, OANN issued fourteen (14) deposition notices. Smartmatic moved to quash the depositions (Dkt. 105), which Magistrate Judge Upadhyaya granted on October 21. (10/21/23 Minute Order). Then, after that motion was granted, OANN noticed another four depositions for the same days as the depositions that had been quashed by the Magistrate Judge. (Dkt. 113 at p. 12). This required Smartmatic to file another emergency motion that Magistrate Judge Upadhyaya granted on November 11. (11/11/23 Minute Order). OANN knew its deposition notices were improper but proceeded all the same to force Smartmatic to incur the expense and burden of filing another emergency motion.

Fifth, OANN concealed the identity of relevant witnesses by serving woefully inadequate Rule 26(a)(1) disclosures and answers to Smartmatic's first set of ROGS. *Infra* Part I. OANN added more than eighty new witnesses to its Rule 26(a)(1) disclosure on December 5, thirteen

months after serving its initial Rule 26(a)(1) disclosures and mere days before filing its motion for partial summary judgment. (Connolly Aff., ¶ 31). OANN added sixty-seven new individuals to its interrogatory answers in September, ten months after serving its initial answer to the interrogatories. (Connolly Aff., ¶ 58). Forgetting four or five names from a Rule 26(a)(1) disclosure or a few names from an interrogatory answer is understandable. Waiting a year to identify over sixty new witnesses is not. It is gamesmanship.

Sixth, OANN withheld additional broadcasts and republications that made defamatory statements about Smartmatic. *Infra* at IV. Smartmatic's interrogatory No. 17, issued on October 21, 2022, asked OANN to "Identify every instance where a OANN ON-AIR PERSONALITY referenced SMARTMATIC, whether in writing or in a broadcast." (Connolly Aff., Ex. X). In its answer, OANN only identified the publications Smartmatic included in its Complaint. (Connolly Aff., ¶ 59). It was not until December 8th, the day before OANN moved for partial summary judgment, that OANN identified the full list of broadcasts. (*Id*.). There is no good faith reason why it took OANN almost a year to amend its answer. Identifying its own broadcasts should be an incredibly easy task for OANN. The disclosure of broadcasts and republication is critical because it reflects on the intentionality of the disinformation campaign and informs damages. (*Id.*). OANN's intentional delay in identifying additional broadcasts hindered Smartmatic's ability to develop its claims over the last year.

Seventh, OANN filed a frivolous motion to recuse Magistrate Judge Upadhyaya for the sole purpose of obstructing the discovery process. Magistrate Judge Upadhyaya's Memorandum Opinion makes it clear just how frivolous the motion was:

- "OANN does not claim that I have any actual bias in this case and does not question my impartiality, integrity or commitment to fairness in this case or generally." (Dkt. 150 at 9).

- "OANN also speculates, with no support to this or any other record, that my alleged "personal knowledge regarding the disputed evidentiary facts—including Venezuela's elections, their legitimacy, or the technology used—is another independent basis requiring recusal." ECF No. 79 at 20. OANN's arguments are without merit." (Id. at 10).

- "Again, OANN fails to offer any factual support for its arguments, and none exists." (Id. at 11).

- "When examined closely, OANN's argument for recusal boils down to an argument that I should recuse because both cases have something to do with Venezuela and Maduro. It is insufficient[…]" (Id. at 15).

- "Despite OANN's attempt to create a meaningful overlap between the two cases, that connection does not exist." (Id. at 15).

- "OANN makes a half-hearted argument for recusal because one of my former law partners represented companies which allegedly were a "high-level" contributor to Maduro. . . OANN also concedes that this basis alone would not warrant my recusal." (Id. at 17).

"This alleged connection does not come close to what is required under § 455(a)." (*Id.* at 17). The complete lack of support for OANN's motion makes it clear that it was filed because OANN knew that it would prevent the Court from ruling on discovery disputes and would significantly slow the pace of Smartmatic's discovery. Seeking a judge's recusal should not be done lightly and is an extraordinary request—it certainly should not be used for gamesmanship.

Eighth, OANN moving for partial summary judgment on December 8 was designed solely to harass. OANN knows depositions have not taken place. OANN knows it disclosed over eighty new witnesses three days earlier. OANN knows dozens of discovery issues have not yet been resolved – so many that OANN requested 20 pages just to identify them for Magistrate Judge Upadhyaya. (Connolly Aff., ¶ 53); (Dkt. 144). And OANN knows that it was still making its paltry document production on December 8, when it not only produced third-party documents but its own documents as well. Given all this, OANN knew its motion for partial summary was in bad faith

because Smartmatic is entitled, under Rule 56(d), to discovery before responding to a motion for summary judgment.

Smartmatic does not lightly seek sanctions against an opposing party and its counsel. Smartmatic did not seek sanctions earlier in the year when OANN's misconduct started nor when it grew in frequency. But the sequence of events on December 8 was the proverbial straw that broke the camel's back. OANN's conduct since bringing on brand new counsel is inconsistent with the Federal Rules of Civil Procedure and inconsistent with this Court's requirement that "lawyer[s] should use the law's procedures only for legitimate purposes and not to harass or intimidate others." Model Rules of Professional Conduct, Preamble (adopted by this Court's Local Rules, *see* LCvR 83.15(a)). OANN's conduct is the type that should not only be discouraged amongst litigants and their counsel but also sanctioned. *See, e.g.*, *Hall*, 219 F. Supp. 3d at 121 (harassing and repeated behavior of counsel justified sanctions); *Parsi*, 778 F.3d at 132 (appellant's withholding of relevant documents supported an award of sanctions); *Johnson v. BAE Sys., Inc.*, 307 F.R.D. 220, 229 (D.D.C. 2013) (Rule 26 violations warranted sanctions).

## CONCLUSION

OANN's motion for partial summary judgment is unprecedented and absurd. OANN knows that discovery in this case has been held in limbo because of OANN's frivolous motion to recuse Magistrate Judge Upadhyaya. The parties would be well on their way to completing fact discovery if OANN had meaningfully engaged in document production and/or Smartmatic was able to get relief from this Court or Magistrate Judge Upadhyaya for the last seven months. But neither of those options were available. Now that Magistrate Judge Upadhyaya can engage with the parties' disputes, Smartmatic anticipates that the parties will be able to move expeditiously to complete document production, move to depositions, and then finish expert discovery. The parties can finally get back on a normal track. OANN's motion for partial summary judgment is a

frivolous sideshow – only done because it harasses Smartmatic and OANN's counsel has every incentive to harass.

For these reasons, Smartmatic respectfully requests that the Court deny or defer ruling on OANN's motion for summary judgment until after Smartmatic has had the opportunity to take the discovery set forth above and in the accompanying affidavits, which includes allowing Smartmatic to complete fact and expert discovery. Smartmatic also asks the Court to enter an order sanctioning OANN and its counsel for a pattern of misconduct culminating in the filing of the pending motion for partial summary judgment on December 8.

\*      \*      \*

Date: December 22, 2023

> /s/ J. Erik Connolly
> J. Erik Connolly (D.C. Bar No. IL0099)
> Nicole E. Wrigley (D.C. Bar No. IL0101)
> Caitlin A. Kovacs (admitted pro hac vice)
> Olivia Sullivan (admitted pro hac vice)
> BENESCH, FRIEDLANDER, COPLAN
>   & ARONOFF LLP
> 71 South Wacker Drive, Suite 1600
> Chicago, IL 60606
> Telephone: 312.212.4949
> econnolly@beneschlaw.com
> nwrigley@beneschlaw.com
> ckovacs@beneschlaw.com
> osullivan@beneschlaw.com
>
> *Attorneys for the Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 22nd day of December 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which I understand to have served counsel for the parties.

*/s/ J. Erik Connolly*
J. Erik Connolly

*One of the Attorneys for the Plaintiffs*
*Smartmatic USA Corp., Smartmatic International*
*Holding B.V., and SGO Corporation Limited*