# Exhibit L



Chicago
New York
Washington, DC
London
San Francisco
Los Angeles
Singapore
Dallas
Miami
vedderprice.com

Brian W. Ledebuhr
Shareholder
+1 312 609 7845
bledebuhr@vedderprice.com

April 28, 2023

**VIA EMAIL**

Michael Bloom, Esq.
Olivia Sullivan, Esq.
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606
mbloom@beneschlaw.com
osullivan@beneschlaw.com

Re: *Smartmatic USA Corp., et al. v. Herring Networks, Inc., d/b/a One America News Network*, Case No. 1:21-cv-02900-CJN (D.D.C.)

Dear Counsel:

On behalf of Herring Networks, Inc. ("Herring"), we write in response to portions of your April 27, 2023 letter (the "April 27 Letter") sent on behalf of Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited (together, "Plaintiffs").[1] Herring disagrees with how Plaintiffs have characterized the issues but agrees that there are multiple areas that are now ripe for consideration by the Court. Herring is prepared to proceed with a conference with Judge Nichols to address not only the spurious issues raised by Plaintiffs in the April 27 Letter, but also the numerous significant problems with Plaintiffs' discovery responses to date that were addressed in Herring's April 25 letter. We understand that you intend to contact the Court by the close of business today to request a conference, and we ask that you attach this letter and Herring's April 25 letter to any such correspondence so that the Court can be fully informed about the issues to be addressed by both sides.

**Plaintiffs' failed efforts to manufacture discovery disputes**

It is apparent from the April 27 Letter that you are intent on manufacturing purported discovery deficiencies by Herring to prop up an ill-founded argument that immediate document productions should be ordered without human review, as has been ordered in other distinguishable cases related to news coverage of voting machine companies after the 2020 presidential election. But this is a different case, in a different jurisdiction, in a different procedural posture, with a different set of facts, and there is no justification for an artificially accelerated discovery timeframe or production without human review for proportionality, privilege, etc.

---

[1] Herring is reviewing and analyzing the search term issues addressed in Section I of the April 27 Letter and will provide a separate response next week.

222 North LaSalle Street | Chicago, Illinois 60601 | T +1 312 609 7500 | F +1 312 609 5005

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.

Michael Bloom, Esq.
Olivia Sullivan, Esq.
April 28, 2023
Page 2

Let there be no misunderstanding here: Herring has a team of reviewers ready to commence review of search-term-responsive documents. And the review manager for that team is prepared to submit a declaration under oath to the Court to that effect, if necessary. The problem is that Plaintiffs are playing games with respect to agreeing to search terms, which is a necessary prerequisite to commencing the review and production. And it also appears Plaintiffs can conduct only one review/production at a time (which makes no sense), as confessed by you in a footnote buried in tiny font in the April 27 Letter. *See* April 27 Letter, n. 1. That perhaps explains, in part, why Plaintiffs' production in this case is a tiny fraction of Plaintiffs' production in the Related Litigation. But it doesn't explain why Plaintiffs can't produce immediately what has already been reviewed and produced in the Related Litigation, as well as third-party discovery already produced to Plaintiffs in this Litigation. Immediate production of those materials will be a topic we address with the Court. And one point we will make is that Plaintiffs are sandbagging Herring while Plaintiffs cry wolf.

Herring has not concealed or withheld any documents, and this case is more than **seven months** from the close of discovery. In fact, Herring has committed to producing documents on May 24, less than a month from now — including the "Smartmatic"-search-term documents that Plaintiffs are nonsensically demanding be produced immediately.

Recognizing that the search terms would not be finalized by the parties in the anticipated timeframe, Herring approached Plaintiffs with a reasonable, good-faith suggestion that the parties extend the production timeline by just a few weeks to allow for this process to play out. Plaintiffs responded by threatening Court action and making groundless accusations that Herring is acting in bad faith, even though the primary relief Plaintiffs claim they will seek from the Court (an accelerated timetable for producing documents) likely will be moot by the time motions to compel are briefed and decided by the Court.

Plaintiffs' latest proposed calendar — including an absurd May 1 deadline for Herring to produce the "Smartmatic" search documents (just one business day from now) — is of course unreasonable and Herring will not agree to it. Herring remains committed to producing documents by May 24, and if Plaintiffs believe that necessitates an extension of the May 31 deadline to propound additional requests for production, Herring has no objection to that. But rather than simply ask Herring to agree to that document-request extension, Plaintiffs, once again, create a false issue for Court consideration.

In light of the foregoing, any relief Plaintiffs intend to seek from the Court related to the production of documents will be utterly pointless. Fulsome productions from applying search terms will have occurred before the Court rules, there is no basis for expedited relief, and Herring does not oppose an extension of the deadline to propound document requests.

The hypocrisy of Plaintiffs' letter is palpable. According to Plaintiffs, every problem that Plaintiffs face in discovery has a valid justification, while even the slightest inconsequential delay by Herring is evidence of bad faith. As noted above, buried in a footnote on page 9 of the April 27 Letter is Plaintiffs' acknowledgment that they have not produced all of the documents from the Related Litigation because

Michael Bloom, Esq.
Olivia Sullivan, Esq.
April 28, 2023
Page 3

"Smartmatic's e-discovery vendor cannot process more than one production at a time, and Smartmatic's focus for the last two months has been processing productions for Fox, Newsmax, and Lindell, as those cases are much further ahead and had impending discovery deadlines." Why a vendor can't process more than one production at a time is a mystery to Herring, particularly when the vendor is simply producing what has already been produced in the Related Litigation. Presumably, all that production would require is copying data to storage media and turning it over. Plaintiffs have **millions** of pages that they have agreed to produce and that are ready to be produced that they readily admit they have no intention of producing until late May. There is no justification for that, other than sandbagging.

The ESI Protocol says, "The parties agree to meet and confer over the use of search tools and methodologies, including the use of search terms and TAR, **before any particular tool or methodology is applied**." (Emphasis added). Plaintiffs suggest for the first time at page 7 of the April 27 Letter that Herring could/should proceed with production on the agreed-upon-search terms while the parties continue to negotiate the others. That is inconsistent with the ESI protocol; nevertheless, that's what Herring will now do. Herring requests that Plaintiffs do the same, starting Monday. Please confirm by 5 p.m. Central Monday that Plaintiffs are doing that. If that agreement is reciprocal (which it should be), while the agreed-to-search-term review and production occurs, we can continue to negotiate and try to agree to other search terms and seek Court intervention if complete agreement cannot be achieved.

### Search term issues

Plaintiffs' heavy focus on the character-limit problems with Plaintiffs' proposed search terms to be run on Herring's custodians obscures the fact that there were myriad substantive problems with the search terms, many of which remain unresolved. Even if it were true that the character-limit problem could be efficiently solved simply by splitting the terms (it's not), Herring was under no obligation to simply accept Plaintiffs' overly broad terms once Plaintiffs split them into shorter terms. Plaintiffs apparently hope to rely on the terms used in the Newsmax case and the orders from the Newsmax case to employ a "take-it-or-leave-it" approach based on false assertions of bad faith by Herring. But Herring is not Newsmax, and this case is not in the Delaware Superior Court. Herring is fully entitled to make its own search term objections, and if it becomes necessary for the Court to address disputes, Judge Nichols will make his own rulings.

### Interrogatories 1, 2, 3, and 5

Plaintiffs also have failed to identify any actual problem with Herring's supplemental responses to Interrogatories 1, 2, 3, and 5. Plaintiffs complain that "OANN merely repeated the names of individuals that are already agreed-upon custodians and were already referenced by Smartmatic in its complaint." But the fact that these supplemental responses were **consistent with** separate sources of information is hardly evidence of inadequate responses. To date, Herring has identified 20 individuals in response to Plaintiffs' discovery requests — all before applying search terms and reviewing for responsiveness and potential additional custodians. Thus, the supplemental responses were adequate, and it is unclear what Plaintiffs would ask the Court to order in a motion to compel.

Michael Bloom, Esq.
Olivia Sullivan, Esq.
April 28, 2023
Page 4

**Plaintiffs' discovery deficiencies**

Nothing in the April 27 Letter breaks the impasse on any of the eight discovery issues Herring identified in its April 25 letter, and Herring intends to proceed with all eight issues before the Court. That said, Plaintiffs' letter contained a number of inaccurate statements about six of the eight issues that warrant correction.

First, with respect to Plaintiffs' refusal to produce documents related to government investigations, Plaintiffs' severely-narrowed proposal to, in part, run the search term "CFIUS" is far from sufficient to satisfy Herring's requests, which is why Plaintiffs continue to maintain their objections. In response to RFP Nos. 27, 28, and 40 (which seek documents and communications relating to 2004 Venezuelan election and 2016 Philippines election), Plaintiffs wrote on February 22, "Smartmatic has not changed its position and will not produce documents responsive to these requests." In their April 19 letter, as it relates to government investigation documents, Plaintiffs only agreed to produce contracts with the Venezuelan government, BIZTA, and SBC Consortium. But Plaintiffs have not agreed to run search terms and have not agreed to produce anything related to Kenya or the Philippines. Moreover, despite claiming that they would meet and confer about "relevant investigations that Smartmatic will incorporate into its search terms," Plaintiffs flatly rejected such search terms in the April 19 letter. The fact that a New York judge may have agreed with Plaintiffs is irrelevant here — particularly now that Plaintiffs' lead counsel has publicly emphasized that Plaintiffs' case is global in scope. *See* Erik Connolly's April 21, 2023 interview with Don Lemon on CNN ("[D]amages are on a global scale, not just limited to the United States.").

Second, with respect to Plaintiffs' refusal to produce documents related to criticism and reputational issues, Herring's requests are broader than the alternative search terms that Plaintiffs proposed — and Plaintiffs provided no hit reports for those terms, so they may yield nothing at all. Additionally, in response to RFP Nos. 15 and 100, Plaintiffs wrote on February 22 that, "Smartmatic stands on its objections and will not produce documents responsive to this request."

Third, with respect to Plaintiffs' refusal to produce documents related to lack of damages, Plaintiffs continue to parse which jurisdictions it believes are relevant. Meanwhile, Plaintiffs' lead counsel is telling the entire world repeatedly, including Don Lemon on his final broadcast with CNN on April 21, that Plaintiffs' damages relate to global loss of business. Herring is entitled to discover why Plaintiffs' purportedly lost contracts in Venezuela and the Philippines and explore any issues Kenya is having with Plaintiffs. If Plaintiffs claim damages globally (which their lead counsel has clearly and repeatedly said they are), Herring is entitled to global discovery on that claim.

Fourth, with respect to Plaintiffs' refusal to produce documents related to vendors and manufacturers, Herring already offered to narrow the scope of the requests to vendors, contractors, or affiliates involved in any election with any Smartmatic entity since 2004 in which a governmental entity questioned the security or accuracy of any Smartmatic entity technology or raised concerns about vulnerability to hacking. Plaintiffs refused this modification. Moreover, the fact that Plaintiffs have "dozens" of manufacturers and vendors does not automatically mean the request is overbroad.

Michael Bloom, Esq.
Olivia Sullivan, Esq.
April 28, 2023
Page 5


Fifth, Plaintiffs, for the first time, have offered to produce "non-privileged" Board of Director meeting minutes for Smartmatic USA Corp.  While this is a good start, RFP No. 86 requests all meeting minutes and documents concerning Board of Director meetings for all Smartmatic entities, not just Smartmatic USA Corp.  Herring offered a reasonable compromise — production of all Smartmatic entity Board of Director minutes reflecting discussions of security breaches, corruption, criminal activity, and technical failures, but Plaintiffs refused.  Herring therefore must move on this issue.

Finally, with respect to Plaintiffs' litigation funding documents (including related communications), it is apparent that Plaintiffs continue to play more games.  Plaintiffs should be required to state whether responsive documents exist so that the parties can stop wasting their time if they do not.  Plaintiffs resisted this discovery in the New York case both before the judicial hearing officer and on appeal before the judge.  Ordered to produce, Plaintiffs now claim they have no such documents in their possession, custody or control, but they dodge the direct questions: (1) why did Plaintiffs resist this discovery if no such documents are in their possession, custody, or control (regardless of what happens in "the future"), and (2) do such documents exist at all (even if not purportedly in Plaintiffs' possession, custody, or control)? Plaintiffs should answer these questions directly.

We look forward to addressing these issues with the Court, and we reiterate our request that you attach both this letter and Herring's April 25 letter to any communications with the Court.


Regards,

*[signature: Brian Ledebuhr]*

Brian W. Ledebuhr