# Exhibit R



Chicago
New York
Washington, DC
London
San Francisco
Los Angeles
Singapore
Dallas
Miami
vedderprice.com

Brian W. Ledebuhr
Shareholder
+1 312 609 7845
bledebuhr@vedderprice.com

March 20, 2023

**VIA EMAIL**

Michael E. Bloom, Esq.
Olivia E. Sullivan, Esq.
BENESCH, FRIEDLANDER,
COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
mbloom@beneschlaw.com
osullivan@beneschlaw.com

Re: ***Smartmatic USA Corp., et al. v. Herring Networks, Inc. d/b/a One America News Network,* Case No. 1:21-cv-02900-CJN (D.D.C.)**

Dear Counsel:

We are in receipt of your letter dated February 27, 2023 (the "February 27 Letter") and write in response as to Plaintiffs' first set of discovery requests and the associated objections and responses of defendant Herring Networks, Inc. ("Herring"). Subject to the parties' recent meet and confer efforts on March 7, 2023 (the "March 7 Meeting") and March 9, 2023 (the "March 9 Meeting"), we also write to memorialize and otherwise clarify the relevant points from those meetings. Without conceding or otherwise waiving any of Herring's general or specific objections, Herring responds as follows:

### Document Production

As previously discussed, the parties agreed to produce documents on March 3, 2023 and April 7, 2023. As for the date by which the parties' production of documents will conclude, Plaintiffs stated in their February 27 Letter, "Smartmatic agrees to resume discussions on this issue after search terms and custodians are agreed upon by the parties." Accordingly, Herring acknowledges that the parties are in agreement on this point.

222 North LaSalle Street | Chicago, Illinois 60601 | T +1 312 609 7500 | F +1 312 609 5005

Vedder Price P.C. is affiliated with Vedder Price LLP, which operates in England and Wales, Vedder Price (CA), LLP, which operates in California, Vedder Price Pte. Ltd., which operates in Singapore, and Vedder Price (FL) LLP, which operates in Florida.

March 20, 2023
Page 2

We also understand that, based on discussion during the March 9 Meeting, Plaintiffs have agreed to produce to Herring all documents produced to defendants in the Related Litigation,[1] including documents Plaintiffs have produced (or will produce) to Newsmax.

In Herring's letter dated February 17, 2023 (the "February 17 Letter"), Herring raised various issues related to search terms. In the February 27 Letter, Plaintiffs stated "Smartmatic responded to the search term issues raised in OANN's correspondence in a letter sent to counsel dated February 20, 2023." Herring responded to the search term issue addressed in Plaintiffs' February 20 correspondence via Herring's letter dated February 22, 2023 ("Herring's February 22 Letter"), wherein Herring requested that Plaintiffs provide the lists of search terms used by all parties in the Related Litigation.

During the March 7 Meeting, we reiterated that Herring's position is that the parties should agree to a global list of search terms to be run across all custodians for all requests for production (each, individually, an "RFP" and, collectively, "RFPs"). Plaintiffs indicated that they would consider this position. Plaintiffs also clarified that the search terms they proposed for Herring to run on its custodians in Plaintiffs' letter dated February 10, 2023 (the "February 10 Letter") were substantially similar to the terms ordered by the court in Plaintiffs' case against Newsmax. Plaintiffs also clarified that the search terms it had proposed in Plaintiffs' letter dated February 22, 2023 ("Plaintiffs' February 22 Letter") to be run on Plaintiffs' custodians are from a list that Plaintiffs proposed in the Related Litigation against Fox and Newsmax, but noted that the agreement as to those search terms has not yet been finalized in those cases.

During the March 9 Meeting, we advised that Herring is in the process of evaluating the extent to which it will agree to Plaintiffs' proposed search terms. We noted that we will likely seek to narrow some of the search terms that appear to be facially objectionable, and Herring is in the process of running certain of Plaintiffs' proposed search terms on its proposed custodians to further inform the analysis. And Herring reiterates its request that Plaintiffs share **all** search terms used in the Related Litigation.

Herring notes that any position as to proposed search terms is subject to meeting and conferring regarding relevant provisions in the parties' ESI Protocol [Docket No. 50], including, but not limited to, agreement on relevant technology assisted review (TAR) methodologies.

## Custodians

During the March 7 Meeting, Plaintiffs and Herring discussed the parties' recently proposed lists of custodians, which were exchanged on March 3, 2023.

---

[1] The "Related Litigation" is defined in our February 17, 2023 letter at p. 2 as *Smartmatic USA Corp., et al. v. Fox News Network, LLC, et al.*, Index No. 151136-2021 (New York County, New York); *Smartmatic USA Corp., et al. v. Newsmax Media, Inc.*, Case No. N21C-11-028 EMD (Del. Super. Ct.); *Smartmatic USA Corp., et al. v. Sidney Powell*, Case No. 21-cv-02995 (D.D.C.); and *Smartmatic USA Corp., et al. v. Lindell, et al.*, Case No. 22-cv-00098 (D. Minn.).

March 20, 2023
Page 3

Plaintiffs stated that they do not believe Herring's custodian list is sufficient and requested that Herring provide additional personnel, if any, that served as guest bookers, associate producers, executive producers, show runners, social media personnel, and C-suite level executives. Herring indicated it would further investigate whether there are any additional custodians and, during the March 9 Meeting, Herring clarified that there were no additional C-suite executives beyond those already disclosed (i.e., Robert Herring, Sr., Charles Herring, and Bobby Herring). As to other potential custodians, Herring has identified none to date. But if further investigation and/or the running of the eventual search terms agreed to by the parties reveals other potential custodians, Herring certainly will cooperate with Plaintiffs as to associated discovery, to the degree proportional to the needs of the case and not otherwise objectionable.

During the March 7 Meeting, Herring requested that Plaintiffs add the following people to Herring's proposed list of Plaintiffs' custodians: Andres Rombolá, Peter Neffenger, Paul DiGregorio, Gracia Hillman, Marlon Garcia, Neil Baniqued, and Jose Gregorio Camargo Castellanos. During the March 9 Meeting, Plaintiffs agreed to add Mr. Rombolá and indicated that they are still determining whether to agree to add the remaining people custodians. Please advise whether Plaintiffs will add the others as custodians.

## General Objections

***General Objections***. Herring acknowledges that the parties each confirmed agreement that, once they determine whether documents are being withheld from production based on objections, each party will (i) advise to what degree documents were withheld pursuant to objections; and (ii) identify instances where no responsive non-privileged documents are within that party's possession, custody or control.

***Presumptive Contextual and Temporal Scope***. Herring believes that it would be most efficient for the parties to agree to a presumptive contextual and temporal scope to apply to the parties' discovery requests, subject to a specific and compelling rebuttal that justifies discovery beyond the presumptive scope.[2] Specifically, Herring proposes the following presumptive contextual and temporal scope for all discovery: any documents, communications or information that reference or otherwise relate to any Smartmatic entity and/or any Dominion entity, for the period January 1, 2020 to November 3, 2021 (i.e., the date of Plaintiffs' Complaint filing). This presumptive scope would clarify the parties' prior general and specific objections and various meet and confers, and it is (of course) subject to any party's identifying and justifying a broader scope for certain specific discovery requests. Please advise as to

---

[2] By way of example only, for the reasons discussed during the parties' meet and confer conferences and in their correspondence, the presumptive contextual and temporal scopes have been justifiably rebutted with respect to certain of Herring's discovery requests, including those that seek documents and information relating to any Smartmatic entities' involvement in elections in Venezuela and the Philippines, governmental investigations of any Smartmatic entities, and any Smartmatic entity's relationship with any Dominion entity (as defined in Herring's First Set of Requests for Production) (*e.g.,* RFPs 8, 9, 10, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 33, 34, 35, 36, 38, 39, 40, 62, 79, 81, and Interrogatories 4, 12, 13).

March 20, 2023
Page 4

whether Plaintiffs agree to this proposed scope, and we suggest a meet and confer to further discuss those specific discovery requests where the presumptive scope should be adjusted.

**Relevance of Dominion.** In the February 27 Letter, Plaintiffs state that they already agreed in Plaintiffs' February 22 Letter "to produce Dominion-related documents in response to OANN's proposal" as set out in Herring's letter dated February 9, 2023 (the "February 9 Letter"). Note that Herring previously offered, in the February 17 Letter, to "withdraw its objections and produce all responsive, non-privileged documents relating to any Dominion entity" provided that "Plaintiffs agree to our proposal" offered in the February 9 Letter.

As to Herring's RFPs 31 and 81, we noted during the Marth 9 Meeting that Plaintiffs had previously agreed to produce documents related to Plaintiffs' acquisition and divestiture of Sequoia Voting Systems. During the March 9 Meeting, Plaintiffs clarified that they had previously agreed to produce licensing agreements relevant to this topic. Plaintiffs also stated that their proposed search terms related to these requests were intended to be broad and capture any type of agreement between any Smartmatic entity and any Dominion entity, including agreements related to the use of software. Finally, Plaintiffs confirmed that they are not placing a time frame on their searches related to Dominion.

Subject to this understanding, Herring will agree to withdraw its objections to producing documents related to any Dominion entity in response to the applicable requests for production,[3] and Herring will produce non-privileged documents from January 1, 2020 to November 3, 2021 related to any Dominion entity that are responsive to the aforementioned requests, to the extent they are within Herring's possession, custody, or control and can be located by reasonable search.

**Herring's Financial Statements.** In response to RFPs 49, 50, and 51, Herring tentatively offered in its February 17 Letter to produce "communications concerning any relationship between Herring's financials and any Smartmatic entity or the alleged defamatory statements" as well as "any documents reflecting any revenue generated by the specific broadcasts containing the alleged defamatory statements at issue in Plaintiffs' Complaint (the 'Accused Broadcasts'), to the extent Herring is in possession, custody, or control of non-privileged documents."

We note that Plaintiffs have failed to acknowledge the case law we provided in support of Herring's tentative proposal as to these requests in the February 27 Letter. While you have stated that you reject our proposal, we remain willing to meet and confer on these requests and disagree that the parties are at an impasse. We request that you respond to the case law provided to facilitate a more informed discussion, so that the parties may continue to explore a reasoned agreement on this topic.

**Scope of Trump Related Requests**. With regard to RFPs 15, 16, and 17, Herring proposed in its February 17 Letter that Plaintiffs further narrow these requests to address proportionality and relevance issues by: (i) removing references to Dominion (subject to Plaintiffs' decision as to whether to accept our proposed compromise in the February 9 Letter); (ii) revising the definition of the TRUMP CAMPAIGN

---

[3] Plaintiffs' RFP Nos. 2, 4, 6, 9, 10, 11, 15, 16, 17, 18, 35, 37, 39, 41, and 43.

March 20, 2023
Page 5

to only those individuals identified in the definition itself; (iii) revising the definition of THE TRUMP ADMINISTRATION to specific individuals; and (iv) for each request, limit the scope of issues concerning the 2020 presidential election to allegations of election fraud involving Smartmatic or Dominion (as opposed to all issues and topics related to the 2020 presidential election itself).

Plaintiffs' February 27 Letter states that they "believe that the dispute with regard to these requests can be resolved with search terms," claiming that the proposed search terms will narrow the scope of the defined terms TRUMP CAMPAIGN and TRUMP ADMINISTRATION. Plaintiffs also state that they will "attach terms to several of the searches to narrow them to issues related to election fraud."

During the March 9 Meeting, Plaintiffs clarified that the search terms they proposed for Herring to run as to these requests are the terms that have been ordered or otherwise agreed to in their litigation against Fox and Newsmax. We indicated that we will consider these search terms and determine whether they resolve Herring's continued objections to the relevance and proportionality of this request. We also agreed that Herring's objections to these request will likely be resolved via search term negotiations, and we further note that we intend to apply the agreed upon terms against Herring's proposed temporal scope above (i.e., January 1, 2020 to November 3, 2021).

***Document Sharing Across Cases***. Herring acknowledges that Plaintiffs' February 22 Letter addresses their position as to this issue in the context of Herring's RFP No. 71. Herring's response to Plaintiffs' position is set forth in Herring's letter dated March 6 (the "March 6 Letter").

***Confidential and Proprietary Business Information Objection***. Plaintiffs' February 27 Letter states that "Smartmatic agrees to withdraw its objections based on 'confidential and proprietary business information' but reserves the right to raise the objection with regard to future requests." We note, however, that in their March 14, 2023 letter, Plaintiffs continue to assert confidentiality objections in response to Herring's discovery requests seeking documents and information relating to, for example, any Smartmatic entity's business relationship with Los Angeles County, among other requests. (See March 14, 2023 letter at 1, 4.)

**Plaintiffs' Requests for Production**

**RFP 7**: Plaintiffs sought "documents sufficient to show any and all employment agreements and/or contracts in effect for, and compensation paid to, the OANN ON-AIR PERSONALITIES from 2016 to the present." During the meet and confer calls, Herring objected to this request as vague and overly broad (particularly as to the definition of "OANN ON-AIR PERSONALITIES"), and further objected to the time frame.

In Plaintiffs' letter dated February 3 (the "February 3 Letter"), Plaintiffs proposed narrowing the time frame from January 1, 2020 to the date that Plaintiffs served their discovery requests (i.e., October 21, 2022). In the February 17 Letter, Herring tentatively proposed that Plaintiffs agree to limit the definition of "OANN ON-AIR PERSONALITIES" to those Herring employees (current and former) who are

identified in Plaintiffs' complaint ("Plaintiffs' Complaint) as having made the alleged defamatory statements at issue.

In the February 27 Letter, Plaintiffs responded that they do not agree to limit the request to only ON-AIR PERSONALITIES that made the alleged defamatory statements. However, Plaintiffs have offered to narrow the definition of ON-AIR PERSONALITIES, for this request, to Elma Aksalic, Dan Ball, Christina Bobb, Mike Dinow, Emily Finn, Stephanie Hamill, John Hines, Patrick Hussion, Samantha Lomibao, Kara McKinney, Alex Salvi, and Pearson Sharp. Plaintiffs reserved their right to expand this list to the extent discovery reveals additional relevant ON-AIR PERSONALITIES.

Reserving the right to object to any requested expansion of the above list of persons, Herring generally agrees to Plaintiffs' proposal as to RFP 7, subject to Plaintiffs' agreeing to Herring's proposed presumptive temporal scope (i.e., January 1, 2020 to November 3, 2021) instead of the temporal scope referenced in the February 3 Letter (i.e., January 1, 2020 to October 21, 2022). This proposal is subject, of course, to the extent such non-privileged documents exist and are within Herring's possession, custody or control and can be located through a reasonable search. Please advise if Plaintiffs are willing to accept this proposed time frame.

**RFP 8**: Plaintiffs sought "Documents and Communications concerning job performance of the OANN ON-AIR PERSONALITIES from January 1, 2019 to the present, including but not limited to performance reviews, discussions of promotions, raises, demotions, terminations, pay increases or decreases or any other changes in employment status." In its response and objections to this request, as well as during the meet and confer calls, Herring objected to this request as vague and overly broad (particularly as to the definition of "OANN ON-AIR PERSONALITIES"), and further objected to the time frame for this request.

In the February 3 Letter, Plaintiffs narrowed their request to those "OANN ON-AIR PERSONALITIES referenced in Smartmatic's Complaint" but otherwise maintained the same request. In the February 17 Letter, Herring proposed that Plaintiffs agree to narrow its definition of "OANN ON-AIR PERSONALITIES" globally throughout their discovery requests to those Herring employees (current and former) who are identified in Plaintiffs' Complaint as having made the alleged defamatory statements at issue.

In the February 27 Letter, Plaintiffs responded that they will narrow the definition of ON-AIR PERSONALITIES, for this request, to Elma Aksalic, Dan Ball, Christina Bobb, Mike Dinow, Emily Finn, Stephanie Hamill, John Hines, Patrick Hussion, Samantha Lomibao, Kara McKinney, Alex Salvi, and Pearson Sharp. Plaintiffs reserved their right to expand this list to the extent discovery reveals additional relevant ON-AIR PERSONALITIES. Plaintiffs also agreed to narrow the time frame of the request to January 1, 2020 to October 21, 2022 (the date of Smartmatic's discovery requests).

Reserving the right to object to any requested expansion of the above list of persons, Herring generally agrees to Plaintiffs' proposal as to RFP 8, subject to Plaintiffs agreeing to Herring's proposed presumptive temporal scope (i.e., January 1, 2020 to November 3, 2021) instead of the temporal scope

March 20, 2023
Page 7

referenced in the February 3 Letter (i.e., January 1, 2020 to October 21, 2022). This proposal is subject, of course, to the extent such non-privileged documents exist and are within Herring's possession, custody or control and can be located through a reasonable search. Please advise if Plaintiffs are willing to accept this proposed time frame.

**RFP 18**: Plaintiffs sought "Documents and Communications with or concerning the RNC relating to SMARTMATIC, DOMINION, the 2020 PRESIDENTIAL ELECTION, DONALD TRUMP, the TRUMP ADMINISTRATION, or the TRUMP CAMPAIGN." In its response and objections to this request, as well as during the meet and confer calls, Herring objected to this request as vague (particularly as to communications with the RNC that could pertain to topics not relevant to this litigation) and overly broad (particularly as to any Dominion entity and Plaintiffs' definitions of the "RNC," the "TRUMP ADMINISTRATION" and "TRUMP CAMPAIGN"), and Herring also objected to the lack of a specific time frame for this request.

In the February 3 Letter, Plaintiffs attempted to narrow the request to "Documents and Communications with or concerning the RNC relating to SMARTMATIC, DOMINION, the 2020 PRESIDENTIAL ELECTION, or OANN's coverage of the same." In the February 17 Letter, Herring replied that the definition of "RNC" remains overly broad and that communications with the RNC concerning the 2020 presidential election generally will include topics that run far afield from the claims and defenses in this case. Accordingly, Herring proposed that Plaintiffs: (i) remove reference to Dominion (subject to Plaintiffs' decision as to whether to accept our proposed compromise in the February 9 Letter); (ii) identify specific individuals and/or search terms in connection with the RNC; and (iii) limit the scope of the issues concerning to the 2020 presidential election to allegations of election fraud (as opposed to all issues and topics related to 2020 presidential election itself).

Plaintiffs stated in the February 27 Letter that they believe that the dispute with regard to this request can be resolved with search terms. Plaintiffs represent that their proposed search terms will narrow the request by identifying specific RNC related terms and by limiting the scope of topics.

During the March 9 Meeting, we indicated that we are considering these search terms and will determine whether they resolve Herring's continued objections to the relevance and proportionality of this request. We agreed with Plaintiffs that Herring's objections to these request will likely be resolved via search term negotiations. In the meantime, given that this request seeks information beyond Herring's proposed contextual scope (i.e., documents, communications or information that reference or otherwise relates to Smartmatic and/or Dominion), Herring proposes narrowing the time frame of the request to the presumptive period of July 1, 2020 to November 3, 2021. Please advise if Plaintiffs are willing to accept this proposed time frame.

**RFP 20**: Plaintiffs sought "Documents and Communications concerning MY PILLOW, INC. advertising on any OANN platform and Documents sufficient to show all advertising revenue paid to OANN for airing or otherwise placing MY PILLOW, INC. advertisements on any OANN platform, including a breakdown of such revenue on a monthly basis, detail regarding total volume of such ads (under each of the metrics OANN uses to measure ad volume), on which platforms and (where applicable)

March 20, 2023
Page 8

which specific programs the ads were placed or aired, and what percentage of OANN's overall advertising revenue MY PILLOW, INC. accounted for over time. There is no time limit on this Request." In its response and objections to this request, as well as during the meet and confer calls, Herring objected to this request a vague, overly broad, and without a proper time frame.

In the February 3 Letter, Plaintiffs proposed to limit the timeframe to January 1, 2016 to the date of their discovery requests (i.e., October 21, 2022). In the February 17 Letter, Herring proposed narrowing this request to a more reasonable scope and time frame — such as the programs that aired the alleged defamatory statements from January 1, 2020 to the date of Plaintiffs' Complaint (November 3, 2021).

In Plaintiffs' February 27 Letter, Plaintiffs responded that they are willing to narrow the time frame of the request to January 1, 2018 to the date of Smartmatic's discovery requests (October 21, 2022), but are otherwise unwilling to narrow the request.

Herring disagrees that the history of the relationship between Herring and Lindell and MY PILLOW, INC. — including the revenue that Plaintiffs assume Herring has generated from them — is relevant to the issue of actual malice. Moreover, Plaintiffs have not justified how their exceedingly broad temporal scope is relevant to the issue of actual malice   Notwithstanding, Herring will consider withdrawing its objection as to the proposed time frame if Plaintiffs agree that the applicable period for this request will be January 1, 2020 to the date of Plaintiffs' Complaint (November 3, 2021). Please advise as to whether Plaintiffs agree to Herring's proposed compromise as to RFP 20.

**RFP 24**: Plaintiffs requested "Documents and Communications with or concerning any current, former, or future OANN EMPLOYEES entering or leaving employment with the TRUMP ADMINISTRATION or TRUMP CAMPAIGN. The timeframe for this request is January 1, 2016 to the present." In its response and objections to this request, as well as during the meet and confer calls, Herring objected to this request as overly broad and suggested during the meet and confer calls that Plaintiffs narrow the request by proposing specific names of Herring employees.

In the February 3 Letter, Plaintiffs propose revising this request to seek "Documents and Communications with or concerning any current or former, [sic] OANN EMPLOYEES entering or leaving employment with the TRUMP ADMINISTRATION or TRUMP CAMPAIGN, *related to SMARTMATIC, DOMINION, the 2020 PRESIDENTIAL ELECTION, or* OANN's *coverage of the same.* The time frame for this request is January 1, 2020 to the present" (italics added).

In the February 17 Letter, Herring first noted that it was unclear whether the language in italics was a purposeful addition to the request proposed that Plaintiffs (i) remove the italicized language; (ii) remove reference to Dominion (subject to Plaintiffs' decision as to whether to accept our proposed compromise in the February 9 Letter); (iii) revise their definition of the TRUMP CAMPAIGN for this request to "a paid position in the Trump Campaign"; (iv) revise their definition of THE TRUMP ADMINISTRATION for this request to "a paid position in the Trump Administration"; and (v) limit the scope of the issues concerning to the 2020 presidential election to allegations of election fraud (as opposed to all issues and topics related to 20202 presidential election itself).

March 20, 2023
Page 9

In the February 27 Letter, Plaintiffs indicated that they accept this proposal. After further consideration, however, we are concerned that this request is disjointed and unintelligible even as narrowed. To clarify, Herring requested in the February 17 Letter that the italicized language be removed because, as written, it was vague and ambiguous as to whether the italicized clause of the request intended to narrow either: (i) the individuals should be identified based on the reason for which the Herring employee entered or left employment with the Trump Administration or Trump Campaign (i.e. *the fact that the individual entered or left employment* with the Trump Administration or Trump Campaign was related to Smartmatic, Dominion, the 2020 presidential election, or Herring's coverage of the same); or (ii) the documents and communications sought based on whether Smartmatic, Dominion, the 2020 presidential election, or Herring's coverage of the same were referenced or discussed.

As narrowed, however, it is unclear as to whether Herring will realistically be able to identify the employees who fall into this category. Additionally, the narrowed request would ostensibly capture documents and communications that are completely unrelated to the claims or defenses in this case. Accordingly, in the spirit of compromise, Herring proposes rewording the request as follows:

> "Documents and Communications regarding SMARTMATIC or DOMINION, or OANN's coverage of same, with or concerning any OANN EMPLOYEE who had previously or subsequently a paid position with the TRUMP ADMINISTRATION or TRUMP CAMPAIGN. The time limit for this request shall be January 1, 2020 to November 3, 2021."

As to this proposal, the agreed upon narrowed definitions of TRUMP ADMINISTRATION and TRUMP CAMPAIGN would remain applicable.

We believe that this proposed narrowing would adequately address Herring's concerns as to relevance and proportionality. While Herring remains concerned as to whether it will be realistically identify these individuals in the first place, Herring is willing to investigate and provide non-privileged documents responsive to the proposed request, to the extent they exist, are located within its possession, custody or control and can be located by reasonable search. Please advise as to whether Plaintiffs agree to Herring's proposal as to RFP 24.

**RFP 26**: Plaintiffs requested "Documents and Communications with or concerning the hiring, firing, retention, resignation, promotion, or demotion or contract negotiation with any OANN EMPLOYEES." Similar to RFP 7, Herring objected to this request as overly broad and not related to any Smartmatic entity or coverage of allegations of election fraud in the 2020 election, and Herring also objected to the extent there was no temporal limitation to this request. During the meet and confer, Herring suggested that Plaintiffs identify the Herring employees who are relevant to this request.

In the February 3 Letter, Plaintiffs proposed narrowing this request to "Documents and Communications with or concerning the hiring, firing, retention, resignation, promotion, or demotion or contract negotiation with any OANN EMPLOYEES referenced in Smartmatic's Complaint." In the February 17 Letter, Herring proposed further narrowing of this request to January 1, 2020 to present (but

did not define what the present is; as noted in prior objections, the term is inherently ambiguous).  In the February 27 Letter, Plaintiffs responded that they are willing to narrow the time frame of the request to January 1, 2018 to present.

Herring notes that the scope of this request goes beyond Herring's proposed presumptive contextual scope.  Notwithstanding, to alleviate Herring's concerns related to proportionality and relevance, Herring proposes limiting the time frame of this request to the same presumptive period that Herring proposes for RFPs 7 and 8, namely, January 1, 2020 to the date of Plaintiffs' Complaint (November 3, 2021).  If Plaintiffs agree to this proposed compromise, Herring will investigate and provide non-privileged documents responsive to the request within its proposed time frame, to the extent they exist, are located within its possession, custody or control and can be located by reasonable search.  Please advise as to whether Plaintiffs agree to Herring's proposed narrowing as to RFP 26.

**RFP 27**:  Plaintiffs sought "Documents and Communications concerning decisions, suggestions, or instructions for OANN to include or exclude content, guests, or OANN EMPLOYEES on any OANN PROGRAMS, or to change or alter OANN's schedule or lineup."  In its response and objections to this request, as well as during the meet and confer calls, Herring objected to this request as overly broad, not limited in time or scope, and not related to Smartmatic or allegations of election fraud in the 2020 election. Herring also noted during the meet and confers that this request was disproportionate to the needs to the case to the extent the definition of "ACCUSED PROGRAMS" is without an appropriate time frame and applies beyond the Accused Broadcasts.  For context, we noted that changes to a program's schedule and lineup may happen frequently and have nothing to do with the claims or defenses here.

In the February 3 Letter, Plaintiffs proposed narrowing this request to "Documents and Communications concerning decisions, suggestions, or instructions for OANN to include or exclude content, guests, or OANN EMPLOYEES on any ACCUSED BROADCASTS, or to change or alter OANN's schedule or lineup."  In the February 17 Letter, Herring noted that "ACCUSED BROADCASTS" is not a defined term, and sought clarification as to whether that term was intended to refer to those specific Herring broadcasts referenced in Plaintiffs' Complaint which include the alleged defamatory statements.

In the February 27 Letter, Plaintiffs clarified that they intended to state "ACCUSED PROGRAMS" rather than "ACCUSED BROADCASTS."  Accordingly, Herring understands Plaintiffs' current proposal for this request to read as "Documents and Communications concerning decisions, suggestions, or instructions for OANN to include or exclude content, guests, or OANN EMPLOYEES on any ACCUSED PROGRAMS, or to change or alter OANN's schedule or lineup."

Plaintiffs' proposed narrowing of this request amounts to no meaningful difference as it relates to Herring's valid concerns regarding the proportionality and burden of this request.  As the request currently stands, Plaintiffs seek every decision as to content for each broadcast of the fourteen ACCUSED PROGRAMS over a period of three years (i.e. January 1, 2020 to "present").  This amounts to thousands, if not tens of thousands, of hours of programming.  By Herring's very existence as a media company, its programming is consistently subject to change in content for the sake of effective broadcasting.  Many, if

March 20, 2023
Page 11

not most, of these changes have absolutely nothing to do with the claims or defenses in this case. The contextual scope of this request is exceedingly broad, and goes far beyond Herring's proposed contextual and temporal scope above.

However, in the spirit of compromise, Herring proposes that Plaintiffs narrow this request to July 1, 2020 to the date of the last defamatory statement alleged in Plaintiffs' Complaint, and for the "content" to reference or relate to Smartmatic or Dominion. Such limitations would be effective to address Herring's concerns as to proportionality and burden. If Plaintiffs agree to this proposed compromise, Herring will investigate and provide non-privileged documents responsive to the request within the proposed time frame, to the extent they exist, are located within its possession, custody or control and can be located by reasonable search. Please advise as to whether Plaintiffs agree to Herring's proposed narrowing as to RFP 27.

**RFP 30**: Plaintiffs sought "Documents sufficient to show OANN's corporate governance structure." Herring objected to this request as not limited in time or scope and as not related to either Smartmatic or the 2020 election. In the February 3 Letter, Smartmatic noted that it "agreed to produce documents related to Smartmatic's corporate governance structure" and that Herring "stated that based on Smartmatic's willingness to produce documents in response to OANN's requests related to corporate governance structure" Herring would reconsider its objections to this request.

In the February 17 Letter, Herring noted that "it remains to be seen whether Plaintiffs will continue to improperly define 'Smartmatic' as an omnibus entity." Herring also stated that "if Plaintiffs will agree to provide documents sufficient to demonstrate their corporate governance structure for their various entities, then Herring will agree to produce any responsive, non-privileged documents in connection with this request, provided that such documents exist, are within Herring's possession, custody or control, and can be located after a reasonable search."

In the February 27 Letter, Plaintiffs state that they are "willing to produce documents response to OANN's RFPs 8 and 9 (notwithstanding objections) and would be willing to answer an Interrogatory regarding the Plaintiff entities' owners, officers, and board members" as set forth in Plaintiffs' February 22 Letter. In Plaintiffs' February 22 Letter, Plaintiffs agreed to "produce the formation documents for Smartmatic USA Corp. and Smartmatic International Holding B.V." and "to produce all responsive publicly available documents for SGO Corporation Limited" in response to Herring's RFPs 8 and 9.

As set forth in the March 6 Letter, Herring is not satisfied with Plaintiffs' proposal in regard to Herring's RFPs 8 and 9. During the March 9 Meeting, however, Plaintiffs stated that they would produce the charter documents for each of the "thirty-plus" entities that are under the "Smartmatic" umbrella in addition to the documents it proposed producing as to these requests in Plaintiffs' February 22 Letter. Plaintiffs stated that they are unwilling to produce additional documents as to the non-plaintiff Smartmatic entities, citing concerns that such a production would be unduly burdensome.

March 20, 2023
Page 12

Subject to its reservation to request additional responsive documents related to the thirty-plus non-Plaintiff Smartmatic entities, Herring agrees to provide non-privileged documents responsive to Plaintiffs' RFP 30 to the extent they exist, are located within its possession, custody or control and can be located by reasonable search.

**RFP 33**: Plaintiffs sought "Documents sufficient to show each Person responsible for creating, researching, writing, editing, or approving the content of the OANN ACCUSED PROGRAMS including the OANN DEFAMATORY STATEMENTS and LINDELL PROGRAMS." In its response and objections to this request, as well as during the meet and confer calls, Herring objected to this request as overly broad, not related to any Smartmatic Entity, and not limited in temporal scope.

In the February 3 Letter, Plaintiffs propose narrowing this request to "Documents sufficient to show each Person responsible for creating, researching, writing, editing, or approving the content of the OANN ACCUSED PROGRAMS including the OANN DEFAMATORY STATEMENTS and LINDELL PROGRAMS from January 1, 2020 to the date that Smartmatic filed its Complaint." In the February 17 Letter, Herring proposed further narrowing the scope of this request to the Accused Broadcasts containing the alleged defamatory statements. In the February 27 Letter, Plaintiffs rejected this proposal, arguing that the persons involved in the ACCUSED PROGRAMS is relevant regardless of whether they were specifically involved with a broadcast containing an alleged defamatory statement.

During the March 9 Meeting, we requested that Plaintiffs provide additional context as to why they rejected our proposal contained in the February 17 Letter, so that we may have a better understanding of their position as to the relevance and proportionality of this request. Plaintiffs responded that their position is that they are entitled to know the identity of persons who make decisions about Herring's programming at a high-level related to overall strategy and general content determinations. Plaintiffs are concerned that narrowing the request as Herring suggested would not necessarily capture that information.

To alleviate concerns about both proportionality and relevance, Herring proposes limiting the scope of the ACCUSED PROGRAMS to content referencing or relating to Smartmatic or Dominion. This proposal goes beyond the ACCUSED BROADCASTS and the alleged defamatory statements, but still maintains some sort of connection to the claims and defenses in this case. If Plaintiffs agree to this proposed compromise, Herring will investigate and provide non-privileged documents responsive to the request within the proposed time frame, to the extent they exist, are located within its possession, custody or control and can be located by reasonable search. Please advise as to whether Plaintiffs agree to Herring's proposed narrowing as to RFP 33.

**RFP 34**: Plaintiffs sought "Documents and Communications concerning appearances by Rudolph Giuliani, Sidney Powell, Michael Lindell, Russell Ramsland, Colonel Phil Waldron, and/or Michael Flynn on OANN PROGRAMS between November 1, 2020 and the present, including any drafts, scripts or other programming-related Documents, and any Documents or Communications concerning ratings associated with the broadcasts of these appearances." In its written responses and during the meet and confer calls, Herring objected to this request as overly broad because it goes beyond the Accused Broadcasts and applies to topics on programs and broadcasts that do not involve the alleged defamatory statements.

March 20, 2023
Page 13

In the February 3 Letter, Plaintiffs advised that they are not willing to narrow the scope of this request because Herring's "knowledge related to the credibility of the referenced sources is relevant to its actual malice." Plaintiffs further stated that "[w]hether [Herring] knew the sources were not reliable based on its dealings with them in connection with the ACCUSED PROGRAMS or based on a different broadcast or news story is irrelevant" and Plaintiffs are "entitled to discover any documents and communications that relate to the referenced sources." In the February 17 Letter, Herring disputed this assertion, but requested that Plaintiffs narrow the scope of this request to November 1, 2020 and the last broadcast of any alleged defamatory statement. In the February 27 Letter, Plaintiffs responded that they are willing to narrow the time frame of this request to January 1, 2020 to November 3, 2021.

Herring disagrees with Plaintiffs' argument as to the relevance of this request, and reiterated its concern as to the burden related to this request during the March 9 Meeting. Herring emphasizes that the proposed time frame of January 1, 2020 (which curiously expands Plaintiffs' proposed original date of November 1, 2020) to November 3, 2021 goes well beyond the period of time relevant to any alleged defamatory statement, and the unlimited contextual scope goes beyond the issues concerning the claims and defenses in this case. Notwithstanding, in a good faith effort to avoid unnecessary intervention from the court, Herring proposes: (i) narrowing the temporal scope of this request to November 1, 2020 to the date of Plaintiffs' Complaint (November 3, 2021); and (ii) limiting the scope of the OANN PROGRAMS to those that reference or relate to Smartmatic or Dominion. This proposal goes beyond the ACCUSED PROGRAMS, the ACCUSED BROADCASTS and the alleged defamatory statements, but still maintains some sort of connection to the claims and defenses in this case. If Plaintiffs agree to this proposed compromise, Herring will investigate and provide non-privileged documents responsive to the request, to the extent they exist, are located within its possession, custody or control and can be located by reasonable search. Please advise as to whether Plaintiffs agree to Herring's proposed compromise as to RFP 34.

**RFP 46**: Plaintiffs sought "Documents sufficient to show the number of persons who (1) installed the OANN application through AT&T; (2) bought a subscription to any OANN media service; and (3) clicked or read any media published by OANN, between January 1, 2018 and present." In its response and objections to this request, as well as during the meet and confer calls, Herring objected to this request as overly broad and impermissibly vague because the phrase "installed the OANN application through AT&T" was unintelligible.

In the February 3 Letter, Plaintiffs proposed narrowing the requests to "Documents sufficient to show the number of persons who: (1) had access to OANN from January 1, 2018 to the date of Smartmatic's Complaint; and (2) clicked or read any media published by OANN on the ACCUSED PROGRAMS, from January 1, 2018 to the date of Smartmatic's Complaint." In the February 17 Letter, Herring requested further clarity as to the scope of this request, stating that every person subscribed to DirecTV "had access" to OAN, and noting as well that it is impossible for Herring to determine who actually "read any media published by OANN." Herring also proposed that the time frame of the request be narrowed to January 1, 2020 to the date of Plaintiffs' Complaint (November 3, 2021).

March 20, 2023
Page 14

In the February 27 Letter, Plaintiffs proposed to narrow the request as follows: "Documents sufficient to show the number of persons who: (1) had access to OANN from January 1, 2018 to the date of SMARTMATIC's COMPLAINT; and (2) clicked on any media published by OANN on the ACCUSED PROGRAMS, from January 1, 2018 to the date of SMARTMATIC'S COMPLAINT." Plaintiffs refused to narrow the time frame of the request.

As to the first portion of their request, in the February 27 Letter, Plaintiffs stated that they agreed that every person that subscribed to DirecTV "had access" to OANN. Plaintiffs then specifically clarified that they "[seek] the number of DirecTV subscribers that could have accessed OANN."

As we noted during the March 9 Meeting, Herring and DirecTV are entirely distinct and unrelated entities. Accordingly, information regarding the number of persons subscribed to DirecTV at any given point in time is highly unlikely to be within Plaintiffs' possession, custody, or control. Nevertheless, Herring will investigate and produce non-privileged responsive documents to the extent they are within its possession, custody or control and can be located through a reasonable search.

During the March 9 Meeting, we requested clarification regarding the second portion of the narrowed request. We noted that Herring understands the definition of ACCUSED PROGRAMS to refer to specific on-air television programs and that we did not understand how any person could "click" on media published on a television program. Plaintiffs clarified that they are looking for the number of times an ACCUSED PROGRAM that was broadcast by Herring on the internet (e.g. its website or social media) was played. With that understanding, we responded that the request is incredibly broad given that the proposed time frame is over three years and extends to every broadcast on the ACCUSED PROGRAMS. Plaintiffs acknowledged that, while they are not aware of the manner in which Herring would track these metrics, they are requesting any metric available that would serve to demonstrate how many times an ACCUSED PROGRAM was viewed on the internet.

Herring maintains that the contextual and temporal scope of this request is unreasonable. Herring emphasizes that the proposed time frame of January 1, 2018 to November 3, 2021 goes well beyond the period of time relevant to any alleged defamatory statement, and the unlimited contextual scope goes beyond the issues concerning the claims and defenses in this case. Herring proposes: (i) narrowing the temporal scope of this request to November 1, 2020 to the date of Plaintiffs' Complaint (November 3, 2021); and (ii) limiting the scope of the OANN PROGRAMS to those that reference or relate to Smartmatic or Dominion. This proposal goes beyond the ACCUSED PROGRAMS, the ACCUSED BROADCASTS and the alleged defamatory statements, but still maintains some sort of connection to the claims and defenses in this case. If Plaintiffs agree to this proposed compromise, Herring will investigate and provide non-privileged documents responsive to the request, to the extent they exist, are located within its possession, custody or control and can be located by reasonable search. Please advise as to whether Plaintiffs agree to Herring's proposed compromise as to RFP 46.

March 20, 2023
Page 15

## Plaintiffs' Interrogatories

**Interrogatory 4**: Plaintiffs requested that Herring identify the individuals involved in the social media accounts run by Herring and its associated personalities, including the identification of each individual's roles, titles, and relationship to Herring.  Herring answered this interrogatory subject to its objections that the interrogatory was vague and overly broad.  During the meet and confer calls, Herring also noted that its objections to this interrogatory were similar to its objections to RFP 28; namely, that the discovery request was not limited in time or scope, overly broad, and not related to Plaintiffs or allegations of fraud in the 2020 election.

In the February 3 Letter, Plaintiffs proposed amending the interrogatory to seek information regarding "the accounts on which social media posts referenced in Smartmatic's complaint were posted." In the February 17 Letter, Herring responded that Plaintiffs' proposed amendment to this interrogatory appears to be a distinction without a difference, as it still applies to social media accounts as a whole and without limitation to the alleged defamatory statements from those social media accounts.  Herring also noted that the interrogatory is not limited in temporal scope.

In the February 27 Letter, Plaintiffs proposed limiting the time frame of the interrogatory to January 1, 2020 to November 3, 2021, but refused to otherwise narrow the scope of the interrogatory.

As indicated in Herring's response to this interrogatory, and as reiterated during the March 9 Meeting, the Twitter account handles included in the interrogatory (with the exception of "@OANN") are the personal accounts of individuals who post on them.  Any statements made on those accounts are the statements of the individuals who own the accounts in their personal capacity.  To be clear, these accounts are not, and never have been, under Herring's possession, custody or control, nor are they reviewed, approved, or otherwise subject to the decisions of Herring.  The same is true of any other social media account controlled by any "OANN ON-AIR PERSONALITY."  Thus, Herring agrees to respond to this interrogatory with the requested information, to the extent it may be located by reasonable search, only as to those social media accounts that are in the possession, custody, or control of Herring, including the specifically listed Twitter account @OANN, from January 1, 2020 to November 3, 2021.

**Interrogatory 5**: Plaintiffs requested that Herring identify "all OANN EMPLOYEES or other Persons who have any level of decision-making control over the substance of the OANN ACCUSED PROGRAMS and that OANN describe the nature of that control." In the February 3 Letter, Plaintiffs proposed narrowing the time frame of this interrogatory to January 1, 2020 and November 3, 2021. In the February 17 Letter, Herring continued to object to Plaintiffs' use of ACCUSED PROGRAMS as overbroad, but agreed to produce non-privileged, responsive documents within its possession, custody, or control, to the extent such documents exist and can be found through a reasonable search conducted in good faith.

In Plaintiffs' letter dated February 20, 2023, Plaintiffs requested that Herring provide a written response to this interrogatory, and stated their position that Plaintiffs "are not required to wait to identify custodians until OANN produces documents in response to these interrogatories."

March 20, 2023
Page 16

      During the March 9 Meeting, Plaintiffs noted that the negotiations regarding this interrogatory remain open. They further stated that, Subject to the parties' recent discussions regarding identification of additional custodians on each side, there was nothing further to discuss.

      Herring understands that the parties' concerns related to this interrogatory will be resolved upon mutual resolution as to the parties' ongoing discussions concerning search terms and custodians. Accordingly, and as set forth in the February 17 Letter, Herring will produce non-privileged, responsive documents within its possession, custody, or control, to the extent such documents exist, in response to this interrogatory.

      After considering Herring's proposals herein, please advise as to whether there are any remaining issues, and if so, we propose an additional meet and confer to evaluate whether the parties can resolve them.

Regards,

*/s/ Brian Ledebuhr*

Brian W. Ledebuhr
Shareholder

BWL