# Exhibit U



Carl C. Butzer
(214) 953-5902 (Direct Dial)
(214) 661-6609 (Direct Fax)
cbutzer@jw.com

November 5, 2023

**<u>Via Email</u>**
Olivia Sullivan, Esq.
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606
ckovacs@beneschlaw.com
osullivan@beneschlaw.com

   Re: ***Smartmatic USA Corp., et al. v. Herring Networks, Inc., d/b/a One America News Network***, Case No. 1:21-cv-02900-CJN (D.D.C.)

Dear Olivia:

  I write in response to the letter dated October 13 that you sent John Edwards on October 18 regarding Smartmatic's request to add 39 more OAN custodians.[1]

  At the outset, this is Smartmatic's <u>fourth</u> request to designate additional custodians (65 custodians on May 5, 10 custodians on May 26, and 6 custodians on September 6). Each time, OAN obliged, so long as the requested custodians were relevant and likely to possess unique, responsive information (agreeing to 35 custodians on May 15, 7 custodians on June 22, and 5 custodians on September 12).

  But your latest request goes too far. Smartmatic, which has spent months complaining about having to produce documents for the 51 Smartmatic custodians, seeks to expand the pool of OAN custodians by more than 50%—***which would bring the total number of OAN custodians from 68 to 107***. You claim that your "analysis of OANN'S production to date revealed records" revealing that the 39 individuals "*are* custodians of unique information" yet you do not cite a single "record" to support that contention. What little explanation you have provided at best betrays Smartmatic's erroneous presumption that it is entitled to ESI from nearly every current and former OAN employee, regardless of their tangential (or non-existent) connection to the facts at issue. At worst, from what we can glean based on your vague explanations, you've falsely characterized the documents themselves.

---

[1] Most, if not all, of the 39 custodians are referenced in OAN's July and August productions. You cite the timing of OAN's supplemental interrogatory responses to justify the requests, but those responses were served more than a month before your October 18 letter. And at least 17 of the 39 were previously requested by Smartmatic.

November 5, 2023
Page 2

I address the rest of your comments below.

1. You complain that OAN's document production is "lackluster." But we've fully refuted that complaint in our responses to the only two letters (of September 11 and October 13) you've sent us on the topic. In the meantime, we continue to review the ca. 150,000 documents Smartmatic produced long after the substantial completion deadline. Have you now substantially completed production, or should we expect more document productions from Smartmatic? In your most recent filing (Dkt. 113), you tell the Court that Smartmatic "intends to produce more documents at OANN's request." Please explain.

2. You argue that all individuals identified in response to Smartmatic's broadly worded Interrogatory Nos. 1 & 2 (a) should be added as custodians, and (b) are considered by OAN to be relevant. Not so. Your Interrogatory No. 1, in its broadest construction, seeks the names of "all Persons who … made *any* decision regarding the contents of" any broadcast, article, post, etc. that the Complaint alleges are defamatory (emphasis added). Your Interrogatory No. 2, in its broadest construction, seeks the names of all current or former OAN employees "who had *any* role in … making decisions related to content aired … regarding SMARTMATIC, DOMINION, …" (emphasis added). We answered your two broad questions, but many of the identified individuals are not relevant and, as you have said repeatedly, we are in the best position to know whether the requested individuals should be designated as custodians. Perhaps more to the point, Smartmatic has not shown, which it must, that the additional 39 requested custodians would provide *unique* relevant information not already obtained from *the current stable of 68 OAN custodians*. *See Garcia Ramirez v. U.S. Immigration & Customs Enf't*, 331 F.R.D. 194, 197 (D.D.C. 2019) (*quoting Enslin v. Coca-Cola Co.*, No. 2:14-cv-06476, 2016 WL 7042206, at *2 (E.D. Pa. June 8, 2016)) (The requesting party bears the burden of "articulat[ing] a basis for the court to find that ESI in the possession of the additional custodians would be different from, and not simply duplicative of, information that the responding party has already produced."); *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 297 F.R.D. 99, 107–08 (S.D.N.Y. 2013).

3. In a letter addressed to you dated September 12 (attached), we already agreed to add Alex Heredia as a custodian, and we've produced the responsive, non-privileged documents that were captured by your search terms.

4. You've identified six video editors: Cecilia Castro-Duenas, Michael Guzman, Brandon Lesky, Travis Burgher, Gary Gaur, and Ivan Burgueno. Video editors have no material input into content; they merely execute requests. And there is no reason to believe these six individuals possess relevant, responsive documents not already captured by OAN's 68 custodians. We therefore do not agree to add these six video editors as custodians.

5. You've identified 13 individuals who did not work on any of the complained-of broadcasts: Rachel Acenas, Colin Eustace, Miles Hall, Jeremy Hartley, Christina Howitson, Jacob Miller, Griffin Morris, Zach Peterson, Trevor Tilston, Scott Wheeler, Alexander Yphantides, Allysia Britton, and Frank Lara-Risco. Your only basis for requesting eleven of them is that they were identified in response to Smartmatic's broadly worded Interrogatory No. 2 (*see* above). There is no reason to believe they possess relevant, responsive documents not already captured by OAN's 68 custodians. As for Ms. Britton and Mr. Lara-Risco, you claim they communicated with existing

custodians about election fraud. Many people did and that assertion alone cannot justify adding them as custodians. For these reasons, we do not agree to add these 13 individuals as custodians.

6. Gienel Agcaoili: Ms. Agcaoili may have copy-edited one complained-of broadcast. There is no reason to believe she possesses relevant, responsive documents not already captured by OAN's 68 custodians. We therefore do not agree to add her.

7. As to three of the requested custodians, there already are three designated custodians from each of the shows they worked on. Victoria Buddie worked on *Real America with Dan Ball* with custodians Dan Ball, Peyton Drew, and Justin Brown. Alec Parent was involved with *Tipping Point with Kara McKinney*. Custodians Kara McKinney, Jennesh Agagas, and Chris Boyle also worked on that show. Jon Marrone worked on *In Focus with Stephanie Hamill* with custodians Stephanie Hamill, Caroline Midkiff, and Avery Swigart. There is no reason to believe that Buddie, Parent, or Marrone would possess *unique* relevant information not already obtained from designated custodians. We therefore decline to add them as custodians.

8. As to five individuals, you erroneously contend they were actively involved in the Lindell programs. First, as OAN has repeatedly stated, no one at OAN had any involvement in the preparation, content, or production of the Lindell programs. More specifically, neither Richard Pollock nor Dante Colella were "involved in" airing *Scientific Proof* and did not work on any of the complained-of broadcasts. Nor was Ravi Butler, a production assistant (a highly technical role). As we suspect you are aware, Mr. Butler's receipt of the airing schedule for *Scientific Proof* does not mean he was "involved in" the airing of the show, and certainly does not justify adding him as a custodian. Alfred Molo had no material input in the "production of videos on election fraud, including Mike Lindell's Scientific Proof." Gabriel Yaffe did not "actively communicate[] with Mike Lindell and My Pillow about appearances on OANN and airing Lindell's documentaries." As far as we can tell, he was cc'ed on a handful of emails we've already produced. He also did not work on any complained-of broadcasts. For these reasons, we do not agree to add Pollock, Colella, Butler, Molo, or Yaffe as custodians.

9. Luis Bravo: As OANN's Master Control Supervisor, Mr. Bravo communicates with Bobby Herring and may communicate with a carrier on an emergency basis (*e.g.*, if there is no signal). We do not know why you would associate Mr. Bravo with Comscore. We do not agree to add him as a custodian.

10. Neil McCabe: Many people around the country "discussed election fraud" in 2020 and 2021. That does not mean Mr. McCabe should be added as a custodian. Moreover, he did not work or appear on any complained-of broadcast. We do not agree to add him as a custodian.

11. Natalie Mooney: Ms. Mooney was a booking producer for *After Hours with Alex Salvi*, but Smartmatic's complaint about that show has nothing to do with any guests. We do not agree to add her as a custodian.

12. Tim Robertson: As you suggest, Charles Herring and the other 67 OAN custodians may have asked Mr. Robertson to post content on the OAN website – which would uncover any

November 5, 2023
Page 4

---

responsive documents captured by your search terms. But this cannot be a basis for designating him as a custodian. We do not agree to add him.

  13. Jared Buchwitz: Mr. Buchwitz's role was purely technical, and as far as we can tell, he was cc'ed on a few emails about the Georgia election. We do not agree to add him as a custodian.

  14. Hang Danh: OAN has already explained—twice—that as a traffic programmer, Ms. Danh's role is purely technical. She manually inputs requested programming changes and distributes electronic program guides. As you implicitly acknowledge, any such material would already be captured by the documents of the designated 68 custodians. We do not agree to add her as a custodian.

  15. Julie (Kelly) Dell: As you point out, Dell was a purely *technical* director. She did not provide material input into any complained-of broadcast. And your vague assertion that the "Herrings contacted her when they wanted content recorded for later airing on OANN" is no justification for adding her. Rather, that is an acknowledgment that she possess no unique relevant information that would not already have been obtained from the Herrings.

  16. Trey Miller: Miller was a "pilot," which is a purely technical role. He has no material input on broadcast content, including guests—your assertion that he was "actively involved in booking guests" for *Tipping Point* is unsupported. To the extent that he may have been involved with a *Tipping Point* broadcast, Kara McKinney, Jennesh Agagas (a Booker), and Chris Boyle are already designated custodians. We decline to add him as a custodian.

  17. Aaron Cornils: Mr. Cornils is an engineer and IT manager—purely technical roles. Mr. Cornils has no material input on content. We do not agree to add him as a custodian.

  18. Brian Maresco: As OAN explained in a June 22 letter, Mr. Maresco was on medical leave from April 2020 until June 2021—nearly the entire duration of the relevant time period. As for your ambiguous claim that he "talked with OANN employees about the veracity of OANN's election fraud coverage"—can you please provide more information (*i.e.*, documents, identity of employees, etc.)? We are unaware of what you are talking about.

                Sincerely,

                Carl C. Butzer

CCB: