IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC HOLDING B.V., AND SGO CORPORATION LIMITED,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>HERRING NETWORKS, INC., D/B/A ONE AMERICA NEWS NETWORK,<br><br>　　　　Defendant. | No. 1:21-cv-02900-CJN |

**DEFENDANT'S UNOPPOSED MOTION FOR ISSUANCE OF LETTERS OF REQUEST
FOR PRODUCTION OF DOCUMENTS**

Herring Networks, Inc., D/B/A One America News Network ("OAN") files this Unopposed Motion for Issuance of Letters of Request for Production of Documents as follows:

**Summary**

1.　OAN asks the Court to issue letters of requests pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, T.I.A.S. No. 7444, 23 U.S.T. 2555 ("Hague Evidence Convention"). OAN seeks letters directed to the central authorities of Venezuela and Brazil for evidence that is directly relevant to this matter. OAN also asks the Court to issue letters of requests to the judicial authorities of certain other countries that are not parties to the Hague Evidence Convention, including the Philippines, Belgium, Oman, and Kenya. A central allegation in this case is the contention by Plaintiffs (together, "Smartmatic") that OAN had information available to it "that showed its statements about Smartmatic being controlled by corrupt dictators (Maduro and Chavez) was (sic) false."[1] Smartmatic also contends that false

---

[1] Complaint, Dkt. 1 at pp. 3, 153. All page references are to the ECF page number.

1

statements about it resulted in reputational harm. Smartmatic has specifically confirmed that it is "asserting reputational harm in foreign countries."[2] This is consistent with its Complaint, which alleges global harm.[3]

2.  Smartmatic's conduct abroad—and its negative impact on Smartmatic's reputation prior to any broadcast by OAN—is directly relevant to this suit. The same is true of investigations conducted in other countries of Smartmatic's conduct. Further, Smartmatic's continued attempts to obtain contracts abroad—and any reasons why it did or did not obtain them—are relevant to its claim that OAN's broadcasts damaged Plaintiffs' ability to conduct business abroad.

3.  The public record is rife with references to investigations of, and scandals involving, Smartmatic, including in the Philippines, Kenya, and Venezuela,[4] as well as major

---

[2] Ex. 1, Email from C. Kovacs, Counsel for Plaintiff, to J. Edwards and others, Counsel for OAN (Aug. 15, 2023).

[3] Complaint, Dkt. 1 at pp. 184-85 (claiming that "Smartmatic's reputation has been irreparably tarnished," that "[p]rior to the 2020 U.S. election" Smartmatic had a reputation that guaranteed secure, accurate and auditable elections, and that "[i]ndividuals responsible for selecting voting systems in the United States *and across the world* understood they would not be second-guessed if they selected Smartmatic") (emphasis added); *see also id.* at p. 438 (Smartmatic listing many international subsidiaries operating around the globe).

[4] **The Philippines,** *see, e.g.,* ABS-CBN News, *Smartmatic, Comelec personnel ordered indicted for Halalan 2016 script alteration* (June 7, 2017), https://news.abs-cbn.com/news/06/07/17/smartmatic-comelec-personnel-ordered-indicted-for-halalan-2016-script-alteration (noting the Philippines "Department of Justice (DOJ) has ordered the indictment of several Smartmatic and Commission on Elections (Comelec) personnel for changing the script in the election transparency server on election night during the May 2016 national and local polls."); Inquirer News, *Smartmatic Faces Probe* (May 14, 2016), https://newsinfo.inquirer.net/785566/smartmatic-faces-probe (noting the Philippines Commission on Elections ("Comelec") "formed a committee to investigate its technology partner Smartmatic for the unauthorized change in the data packet for a transparency server that gave rise to accusations of fraud in the count of votes in Monday's national elections"); CNN Philippines, *Solon: Bautista's 'receipt of fee for Smartmatic referral' casts doubt on 2016 polls* (Aug. 8, 2017), https://www.cnnphilippines.com/news/2017/08/08/Comelec-Andy-Bautista-Smartmatic-unexplained-wealth.html (Philippines politician accuses Smartmatic of bribing chairman of Philippines Commission on Elections by funneling bribes through law firm); **Kenya**, *see* Reuters, *Kenya police arrest three election commission contractors* (July 22, 2022), https://www.reuters.com/article/kenya-election-idAFL4N2Z31EA (noting police in Kenya

problems involving Smartmatic in Oman and Brazil, as confirmed in Smartmatic's own documents. The discovery sought is highly relevant to Smartmatic's reputation before the allegedly false statements were made by OAN, which impacts the claim for irreparable harm and alleged damages. The discovery sought in Venezuela is also directly relevant to the claim that OAN disparaged Smartmatic through purported statements that "the company reportedly meddled with a 2004 Venezuela election to secure a win for the Chávez regime"[5] and "[had] connections to corrupt dictators."[6] The discovery sought in the Philippines, Belgium, and Kenya relates to Smartmatic's provision of election-related services in the years leading up to and extending beyond the 2020 U.S. presidential election, and issues, problems, and/or investigations related to Smartmatic in those jurisdictions.[7]

4. Smartmatic's corporate reputation is directly at issue. This is especially true because Smartmatic claims it has suffered international damages. Thus Smartmatic's conduct in

---

arrested three Smartmatic employees on their arrival at the country's main airport in Nairobi when apparently failing to declare sensitive election-related "stickers"); **Venezuela**, *see* Ex. 2, New York Times, *Voting Machine Company Submits to Inquiry* (Oct. 31, 2006) (describing Smartmatic as a "major American voting-machine company that has come under federal scrutiny because of its primary owner's past business ties to the leftist government of Venezuela," and noting that Smartmatic and a company owned by some of the same people as Smartmatic (Bizta) were awarded a Venezuelan government contract, only weeks before which a Venezuelan official and elections-systems advisor to Chavez joined Bizta's board); New York Times, *U.S. Investigates Voting Machines' Venezuela Ties* (Oct. 29, 2006), https://www.nytimes.com/2006/10/29/washington/29ballot.html (noting that Smartmatic and Bizta were awarded Venezuelan contract for 2004 election, that "[t]he concerns about possible ties between the owners of Smartmatic and the Chávez government have been well known to United States foreign-policy officials since before the 2004 recall election in which Mr. Chávez, a strong ally of President Fidel Castro of Cuba, won by an official margin of nearly 20 percent" and that "[o]pposition leaders asserted that the balloting had been rigged," although some experts believed there were no irregularities).

[5] Complaint, Dkt. 1 at p. 35.

[6] *Id.* at p. 36.

[7] *See also supra* n.4.

these countries and associated publicity is relevant due to its impact on Smartmatic's global reputation. The Court should issue the requested letters of request.

## Argument

5. OAN seeks discovery from two categories of countries (those who are parties to the Hague Evidence Convention and those who are not), and each category is addressed below.

### A. Letters of Request under the Hague Evidence Convention to Venezuela and Brazil.

6. The Court should issue the attached proposed letters of request to Venezuela and Brazil because this is the type of situation in which the Hague Evidence Convention provides relief, and the discovery sought is relevant to the issues in this case. The Hague Evidence Convention procedures are available whenever they will facilitate the gathering of evidence by the means authorized in the Convention. *Société Nationale Industrielle Aéropostiale v. U.S. Dist. Ct.*, 482 U.S. 522, 541 (1987) ("*Aéropostiale*"). The Hague Evidence Convention is in force between the United States and both Venezuela and Brazil. *See* 23 U.S.T. 2555, art. 42; Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/?cid=82 (showing Venezuela and Brazil have each adopted the Hague Evidence Convention) (last visited Sept. 12, 2023).

7. Under the Hague Evidence Convention, "[i]n civil or commercial matters a judicial authority of a Contracting State may, in accordance with the provisions of the law of that State, request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act." 23 U.S.T. 2555, art. 1. The Hague Evidence Convention is reproduced at 28 U.S.C. § 1781, which "codifies the Hague Convention and empowers federal courts to 'transmit[ ] a letter rogatory or request ... to [a] foreign or international tribunal [or] officer[.]'" *Jaguar Land Rover Ltd. v. DR. ING. H.C. F. Porsche AG*,

4

No. 21-MC-62-ZMF, 2021 WL 3075698, at *1 (D.D.C. June 22, 2021) (quoting 28 U.S.C. § 1781(b)(2).

8. The Hague Evidence Convention contemplates that letters of request will be sent to the "central authority" designated by the relevant signatory to the Hague Evidence Convention. The recipient state will then execute the letter of request.

9. When weighing requests for international discovery, courts should not overlook factors relevant to international comity, even requests pursuant to the Hague Evidence Convention. *McCarthy v. Johnson*, --- F. Supp. 3d ----, No. 21-MC-4 (GMH), 2022 WL 16834019, at *3 (D.D.C. Nov. 9, 2022) (citing *Jaguar Land Rover Ltd.*, 2021 WL 3075698, at *1). "Traditionally, there are five factors in any comity analysis: (1) 'the importance to the [investigation] ... of the documents or other information requested'; (2) 'the degree of specificity of the request'; (3) 'whether the information originated in the United States'; (4) 'the availability of alternative means of securing the information'; and (5) 'the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interest of the state where the information is located.'" *Jaguar Land Rover Ltd.*, 2021 WL 3075698, at *1 (quoting *Aéropostiale*, 482 U.S. at 544 n.28). "However, 'some of the international comity concerns noted by the Court [in *Aerospatiale*] are lessened when only use of the Hague Convention is at issue because all the relevant nations have consented to the treaty process.'" *Id.* (quoting *Arcelik A.S. v. E.I. DuPont de Nemours & Co.*, 856 Fed.Appx. 392, 399 (3d Cir. 2021)) (alteration in original); *accord McCarthy*, 2022 WL 16834019, at *3.

10. When analyzing requests related to countries that have joined the Hague Evidence Convention, the first three comity factors are the most important. *McCarthy*, 2022 WL 16834019,

at *3 (citing *Jaguar Land Rover Ltd.*, 2021 WL 3075698, at *1); Restatement (Third) of Foreign Relations Law § 473 reporters n.5 (Am. L. Inst. 1987).

11. Venezuela has adopted a declaration that it will only execute letters of request relating to pre-trial document discovery when the following conditions apply:

(a) that proceedings have been instituted;
(b) that the documents requested to be exhibited or transcribed shall be reasonably identified as regards their date, contents or other relevant information;
(c) that any facts or circumstances giving the plaintiff reasonable cause to believe that the documents asked for are known to the person requested to produce them so that they are or were in the possession or under the control or in the custody of that person, shall be specified;
(d) that the connection between the evidence or information sought and the pending litigation be made quite clear.[8]

Brazil does not have a similar stipulation.

12. OAN has prepared proposed letters of request addressed to the designated central authorities of each of Venezuela and Brazil accompanied with certified translations.[9] OAN requests the following documents from the following witnesses in countries that are parties to the Hague Evidence Convention:

- **Venezuela**: (1) Minutes or notes of meetings between representatives of the Venezuelan government (including Hugo Chavez) and representatives of Smartmatic, including Antonio Mugica (also known as Antonio Mugica Rivero); (2) Check or payment records showing payment from Sociedad de Capital de Riesgo to Bizta Corp. in June of 2003 in exchange for a 28% ownership in Bizta Corp., and the document showing the 28% ownership; (3) Check or payment records from Bizta Corp. reflecting payments made to Venezuelan governmental officials or former officials; and (4) Investigative statements or memoranda reflecting the Venezuelan

---

[8] Declarations/Reservations of Venezuela, Hague Conference on Private International Law, https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=566&disp=resdn (last visited Aug. 1, 2023).
[9] Under the Hague Evidence Convention, "[a] Letter of Request shall be in the language of the authority requested to execute it or be accompanied by a translation into that language." 23 U.S.T. 2555, art. 4.

6

government's investigation of Smartmatic or its representatives in connection with Smartmatic's voting system.

- **Brazil**: (1) Smartmatic's proposal as received by the Tribunal Superoir Eleitoral ("TSE") regarding the TSE 2019-2020 bidding process (Bidding Notice No. 43/2019) for the manufacture of new electronic voting machines, and documents reflecting the decision regarding Smartmatic's proposal; (2) Documents, if any, indicating that TSE considered any statement appearing on OAN's television broadcast in deciding whether to award or not award a contract to Smartmatic.

13. All comity factors weigh in favor of issuing a letter of request, including each of the first three, which are considered the most important.

- **Importance:** The documents sought are important because they relate to (1) Smartmatic's reputation prior to the OAN broadcasts at issue; and (2) Smartmatic's claim that it has been damaged abroad by the OAN broadcasts. As noted above, the public record is replete with references to issues, problems, and investigations involving Smartmatic and impacting Smartmatic's reputation. Additionally, as noted, Smartmatic's own documents indicate reasons (other than OAN) explaining why it has not obtained contracts abroad.

- **Specificity**: The document requests are specific, as reflected above and in the attached letters of request.

- **Origination outside of the U.S.:** The documentation and information originated outside the U.S.

- **No alternative means**: There are no alternative means of securing the information, as the information is in the hands of the entities/individuals in Venezuela and Brazil discussed above.

- **No undermining of important interests through compliance**: While compliance with the request will not undermine important interests of the states where the information is located (Venezuela and Brazil), noncompliance *will* undermine the U.S.'s interests in distributing equal justice and due process in this matter. Importantly, and as noted above, this factor is not nearly as important when the Hague Evidence Convention controls since, among other reasons, "[w]hen a court orders resort to the Convention or to other means of international judicial assistance, it commits the issue whether compliance with the request would undermine important interests of the state where the information is located *to the courts or other authorities of that state*." Restatement (Third) of Foreign Relations Law § 473 reporters n.5 (1987) (emphasis added).

7

14. The proposed Letters of Request attached hereto conform to the requirements of Article 3 of the Hague Evidence Convention. Specifically, the Letters of Request describe the requesting judicial authority, the nature of the proceedings for which the evidence is required, the identity of the entities from whom evidence is sought, and the particular documents to be obtained.

15. In the case of the Letter of Request to Venezuela, the additional conditions imposed by Venezuela are also satisfied and are set forth in the Letter of Request: (1) proceedings have already been instituted (there is a pending lawsuit); (2) the documents requested are reasonably identified; (3) the facts and circumstances give reasonable cause to believe that the government of Venezuela knows of the documents requested; and (4) the connection between the evidence sought and the pending litigation is clear.

16. Accordingly, OAN requests that the Court issue the attached proposed Letters of Request under the Hague Evidence Convention to Venezuela and Brazil.

**B.      Letters Rogatory to the Philippines, Kenya, Belgium, Oman.**

17. OAN requests that the Court issue the attached letters rogatory to the Philippines, Kenya, Belgium, and Oman, which are not parties to the Hague Evidence Convention. "It is well-established that courts have the authority to request the assistance of foreign tribunals, through letters rogatory, in order to obtain discovery from foreign entities." *See Dist. Title v. Warren*, No. CV 14-1808 ABJ/DAR, 2016 WL 10749155, at *4 (D.D.C. Dec. 23, 2016) (citations omitted) (issuing letters rogatory to New Zealand who "is not a signatory to the Hague Convention"). This can be done under Fed. R. Civ. P. 28(b) and 28 U.S.C. § 1781(b). *See Dist. Title*, 2016 WL 10749155, at *4-7.

18. "The District of Columbia Circuit has held that a court must set forth 'some good reason . . . to deny a party the judicial assistance requested by means of a letter rogatory[.]'" *Dist. Title*, 2016 WL 10749155, at *4 (citing *Zassenhaus v. Evening Star Newspaper Co.*, 404 F.2d 1361 (D.C. Cir. 1968)) (ellipsis and alteration in original). "In its current form, Federal Rule of Civil Procedure 28(b) allows for depositions to be taken in a foreign country 'under a letter of request, whether or not captioned a 'letter rogatory,' and may be issued on '[(A)] [on] appropriate terms after an application and notice of it; and [(B)] without a showing that taking the deposition in another manner is impracticable or inconvenient." *Id.* (citing Rule 28(b)(1)(B) & (2)).[10] Additionally, "[t]he United States Code also provides that letters rogatory may be transmitted directly from a tribunal in the United States to the foreign or international tribunal, officer, or agency to whom it is addressed and its return in the same manner." *Id.* (citing 28 U.S.C. § 1781(b)(2) and *Estate of Klieman v. Palestinian Auth.*, 272 F.R.D. 253, 256 (D.D.C. 2011)). These principles have been extended to document discovery. *See id.* at *3 & 6 (holding party was entitled to obtain letters rogatory regarding relevant documents).

19. OAN requests the following documents from the following witnesses in countries that are not parties to the Hague Evidence Convention:

- **The Philippines**: (1) From the Philippine Commission on Elections ("Comelec"), Philippine Department of Justice, and the Philippines Department of Information and Communications Technology ("DICT") documents regarding issues, problems, and investigations relating to Smartmatic's software, machines, voting or election technology, or support services used in elections, including specifically: (a) relating to the 2017 indictments of several

---

[10] The court in *District Title* noted that "[p]rior to the 1963 Amendment of the Rule, however, letters rogatory could issue 'only when necessary or convenient'." *Id.* at *5. The court observed that, according to the "Advisory Committee's Notes regarding the 1963 Amendment, the removal of the 'necessary and convenient' limitation and the additional language eliminating the moving party's requirement to show that no other means of discovery is available, *indicate to the court that the amendment was intended to facilitate a more liberal utilization of this method of obtaining foreign discovery*." *Id.* at *5.

9

employees of Plaintiff (Marlon Garcia, Neil Baniqued, Mauricio Herrera) and Comelec personnel relating to changing the script in the election transparency server on election night during the May 2016 national and local polls; (b) payments made to Comelec Chairman Andres Bautista from a law firm (Divina Law) representing Plaintiff, and which resulted in a House Resolution (no. 1171) filed by House Deputy Minority Leader Harry Roque seeking a legislative inquiry regarding payments;  (c) the arrest of Ricardo Argana (quality assurance tester for Smartmatic) relating to Argana's dealings with Winston Steward in providing access to Smartmatic's servers through his computer in the Comelec office; and (c) the 2008 ARMM (Autonomous Region of Muslim Mindanao) election, and several precincts in Wao, Lanao del Sur, showing zero results, after which someone from Smartmatic accessed the machines and made corrections from Manila. (2) The petition filed with Comelec by Eliseo Rio, Jr., Augusto Lagman, Franklin Ysaac, and Leonardo Odoño (former Comelec officials) in or about June of 2023 to disqualify Smartmatic from participating in the bidding for the 2025 automated election system.

- **Kenya**: From the Kenyan national police service's investigative unit, the Directorate of Criminal Investigations (DCI): (1) reports and supporting documents related to its determination that three Smartmatic employees (Salvador Javier Suarez, Jose Gregorio Comargo Castellano and Joel Gustavo Rodriguez Garcia) had illegal access to Kenya's electoral commission servers five months ahead of the country's general election on August 9, 2022[11]; and (2) records reflecting the arrest of those three Smartmatic employees on July 22, 2022 on their arrival at the country's airport in Nairobi.

- **Oman**: From the Ministry of Interior and Industrial Management Technology & Contracting, documents and communications regarding Smartmatic software, machines, voting or election technology, or support services used during the 2016 Oman Municipal Election and errors that occurred in connection with the election relating to the voting system software and equipment, including documents and communications on, before, or after election day regarding any issues with Smartmatic's voting technology, Smartmatic removing any equipment or personnel from the country, any investigation or review of the results of the 2016 election, or other voting machine problems relating to the 2016 Oman elections.

---

[11] *IEBC servers were breached, forensic analysis shows* | Nation, https://nation.africa/kenya/news/politics/iebc-systems-were-breached-analysis-shows-3929366 (Aug. 29, 2022); *see also DCI report: Venezuelans infiltrated IEBC systems* | Nation, https://nation.africa/kenya/news/politics/dci-venezuelans-infiltrated-iebc-systems-3928666 (Aug. 28, 2022) ("The three Venezuelans at the heart of poll rigging claims may have infiltrated the country's electoral system thereby compromising the credibility of the August 9 polls, a forensic analysis report has revealed. The report by the Directorate of Criminal Investigations (DCI) has disclosed how the three foreigners had unfettered access to the Independent Electoral and Boundaries Commission (IEBC) result transmission server and could log into the systems remotely. . . .").

- **Belgium**: From IBZ (Intérieur Binnenlandse Zaken) Federal Public Service Interior, (1) Smartmatic's proposals and associated communications to provide election-related services or products from 2020 through the present, or Plaintiff's other submissions to IBZ; and (2) documents, if any, showing why Smartmatic was not selected.

20. These documents are crucial and directly relevant to causation and damages for all the reasons discussed above.

## Conclusion

21. For the foregoing reasons, OAN respectfully requests that this Court issue the attached Letters of Requests, which counsel for OAN will then transmit to the designated central authorities listed as the recipients (in the case of countries that are parties to the Hague Evidence Convention) or to local counsel in the respective countries for transmittal to the appropriate judicial authorities (in the case of countries that are not parties to the Hague Evidence Convention), and for such other relief to which it is justly entitled.

Dated: December 26, 2023

By: */s/ John K. Edwards*

**JACKSON WALKER LLP**
Charles L. Babcock
(admitted *pro hac vice*)
Nancy W. Hamilton
(admitted *pro hac vice*)
John K. Edwards
(admitted *pro hac vice*)
Joel R. Glover
(admitted *pro hac vice*)
Bethany Pickett Shah
(admitted *pro hac vice*)
1401 McKinney Suite 1900
Houston, TX 77010
Tel: (713) 752-4200
Fax: (713) 308-4110
cbabcock@jw.com
nhamilton@jw.com
jedwards@jw.com
jglover@jw.com
bpickett@jw.com

Jonathan D. Neerman
D.C. Bar No. 90003393
Carl C. Butzer
(admitted *pro hac vice*)
Minoo Sobhani Blaesche
(admitted *pro hac vice*)
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Tel: (214) 953-5664
Fax: (214) 661-6899
jneerman@jw.com
cbutzer@jw.com
mblaesche@jw.com

**BOYDEN GRAY & ASSOCIATES**
Trent McCotter
D.C. BAR NO. 1011329
801 17th St NW, #350
Washington, DC 20006
(202) 706-5488
mccotter@boydengrayassociates.com

*Counsel for Herring Networks, Inc.*

## CERTIFICATE OF CONFERENCE

I hereby certify that Plaintiffs have indicated that they are unopposed to the relief sought in this Motion.

*/s/ John K. Edwards*
John K. Edwards

## CERTIFICATE OF SERVICE

I hereby certify that on December 26, 2023, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will electronically mail notification of the filing to all counsel of record who are registered ECF users.

/s/ R. Trent McCotter
R. Trent McCotter