# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SMARTMATIC USA CORP., SMARTMATIC HOLDING B.V., AND SGO CORPORATION LIMITED, | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:21-cv-02900-CJN-MAU |
| v. | ) ) | |
| HERRING NETWORKS, INC., D/B/A ONE AMERICA NEWS NETWORK, | ) ) ) | |
| Defendant. | ) ) | |
| SMARTMATIC USA CORP., SMARTMATIC HOLDING B.V., AND SGO CORPORATION LIMITED, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 1:23-mc-00138-CJN |
| v. | ) ) | |
| HERRING NETWORKS, INC., D/B/A ONE AMERICA NEWS NETWORK, | ) ) | |
| Defendant, | ) ) | |
| v. | ) | |
| GEORGE SOROS, | ) ) | |
| Respondent. | ) ) | |

## CONSOLIDATED MEMORANDUM OF LAW ON BEHALF OF NON-PARTIES OPEN SOCIETY INSTITUTE AND GEORGE SOROS IN OPPOSITION TO DEFENDANT OAN'S MOTIONS TO COMPEL

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND ..................................................................................................4

      A.      Mr. Soros and the Open Society Institute. ....................................................4

      B.      Smartmatic's Complaint. ...............................................................................5

      C.      Defendant's Document Requests to Mr. Soros and OSI............................6

      D.      The October 30, 2023 Decision of the New York Supreme Court. ............9

ARGUMENT .........................................................................................................................12

  I.      THE SUBPOENAS SEEK MATERIALS THAT ARE NOT RELEVANT
        OR MATERIAL TO DEFENDANT'S "SUBSTANTIAL TRUTH"
        DEFENSE. ..............................................................................................12

      A.      Even Though Statements Asserting that Mr. Soros Owned or
          Funded Smartmatic Are Not Alleged to Be Defamatory or
          Injurious, Mr. Soros and OSI Searched For Documents
          Demonstrating Funding or Ownership of Smartmatic, But There
          Was Nothing To Produce............................................................................13

      B.      Smartmatic Does Not Dispute Certain Basic Facts of Lord Malloch
          Brown's Career, but If Smartmatic Were to Do So, OSI Will
          Produce Documents Sufficient to Prove Those Facts Are True. ...............15

      C.      Defendant's On-Air Assertions of a "Tie" Between Mr. Soros and
          Smartmatic Are Not Alleged to be False or Defamatory and Thus
          Defendant Has No Obligation to Prove the Existence of Such a
          Connection, Which In Any Event Is Undisputed......................................19

      D.      Defendant Did Not Seek Discovery from Mr. Soros or OSI
          Regarding Its On-Air Assertion That Mr. Soros Was "Tied" to
          "Software" that Could "Alter Vote Totals," Presumably Because It
          Knows That Such A Claim Cannot Be Proven "Substantially
          True." .......................................................................................................21

  II.     DEFENDANT'S DOCUMENT REQUESTS ARE
        EXTRAORDINARILY BROAD AND AMOUNT TO A FISHING
        EXPEDITION FOR IRRELEVANT INFORMATION. ......................................22

  III.    THE BURDEN IMPOSED BY THE SUBPOENAS SIGNIFICANTLY
        OUTWEIGHS THE VALUE OF THE SOUGHT DOCUMENTS. ....................25

  IV.    DEFENDANT'S REQUEST FOR ATTORNEYS' FEES SHOULD BE
        DENIED AND DEFENDANT SHOULD PAY COSTS AND EXPENSES
        INCURRED BY MR. SOROS AND OSI IN RESPONDING TO THE
        SUBPOENAS AND OPPOSING THESE MOTIONS TO COMPEL.................27

CONCLUSION..................................................................................................................................30

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                          <u>Page(s)</u>

*Alexander v. F.B.I.*,
    186 F.R.D. 21 (D.D.C. 1998)...................................................................................24

*Black v. Sheraton Corp. of Am.*,
    47 F.R.D. 263 (D.D.C 1969), *aff'd,* 564 F.2d 550 (D.C. Cir. 1977).........................12

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991)...................................................................................................27

*Cusumano v. Microsoft Corp.*,
    162 F.3d 708 (1st Cir. 1998)...................................................................................24

*Dell Inc. v. DeCosta*,
    233 F. Supp. 3d 1 (D.D.C. 2017)............................................................................25

*Diamond Servs. Mgmt. Co. v. Knobbe, Martens, Olson & Bear, LLP*,
    339 F.R.D. 334 (D.D.C. 2021)...........................................................................24, 25

*Durnan v. U.S. Dep't of Com.*,
    777 F. Supp. 965 (D.D.C. 1991).............................................................................18

*In re Exxon Valdez*,
    142 F.R.D. 380 (D.D.C. 1992)................................................................................27

*Freeman v. Seligson*,
    405 F.2d 1326 (D.D.C. 1968) ................................................................................26

*In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*,
    659 F. Supp. 3d 54 (D.D.C. 2023).........................................................................24

*PaineWebber Inc. v. Acstar Insurance Co.*,
    211 F.R.D. 247 (S.D.N.Y. 2002) ............................................................................27

*Porter v. Pinkerton Gov't Servs., Inc.*,
    304 F.R.D. 24 (D.D.C. 2014)..................................................................................26

*United States v. Kellogg Brown & Root Servs., Inc.*,
    284 F.R.D. 22 (D.D.C. 2012)..................................................................................22

*United States v. Libby*,
    432 F. Supp. 2d 26 (D.D.C. 2006) .........................................................................23

*Webster v. Spencer*,
    No. CV 17-1472 (DLF), 2019 WL 13290770 (D.D.C. June 12, 2019)...................22

**Other Authorities**

Fed. R. Civ. P. 26 (b) (1).................................................................................................11

Non-Parties George Soros and the Open Society Institute ("OSI") respectfully submit this joint memorandum of law in opposition to the Motions to Compel (defined in footnote 1) filed by Defendant Herring Networks, d/b/a One America News Network ("OAN" or "Defendant").[1]

## PRELIMINARY STATEMENT

Defendant has filed Motions to Compel against Mr. Soros and OSI—a non-profit organization operating in the United States that is part of Open Society Foundations ("OSF"), a network of entities across the world that administer charitable giving—claiming that these non-parties possess documents relevant to Defendant's "substantial truth" defense to Smartmatic's defamation and injurious falsehood causes of action. Smartmatic's claims emanate from assertions made on Defendant's network concerning a purported effort by Smartmatic to "rig" the 2020 Election, which were broadcast alongside other allegedly false statements concerning, among other things (i) Smartmatic's past efforts to rig elections in Venezuela; (ii) Smartmatic's ownership by South American dictators; and (iii) Smartmatic's affiliation with Dominion Voting Systems during the 2020 Election.

In the course of making these assertions about Smartmatic, Defendant's anchors, on a handful of occasions, invoked Mr. Soros's name, even though Mr. Soros has never owned, funded or worked for Smartmatic and certainly had no role in rigging the 2020 Election. Any

---

[1] On December 5, 2023, Defendant filed two motions to compel. First, in this Court, Defendant filed its Motion to Compel Third Party Open Society Institute to Comply with Rule 45 Subpoena (Dkt. 126) (the "OSI Motion to Compel," cited herein as "Mot. (OSI)"). Second, Defendant filed a Motion to Compel Third Party George Soros to Comply with Rule 45 Subpoena. The second motion was filed in the District Court for the Southern District of New York. *Smartmatic USA Corp., et al v. Herrings Networks, Inc.*, Case No. 7:23-mc-00469- NSR (Dkts. 1-3) (the "Soros Motion to Compel," (cited herein as "Mot. (Soros)") and with the OSI Motion to Compel, the "Motions to Compel"). On December 12, 2023, Mr. Soros and Defendant stipulated to the transfer of that proceeding, and the Soros Motion to Compel, to this Court pursuant to FRCP 45(f), which was subsequently So Ordered by the Hon. Nelson S. Roman. (Dkts. 8-9.) The Soros Motion to Compel has now been transferred to this Court. See *Smartmatic USA Corp., et al v. Herrings Networks, Inc.*, Case No. 1:23-mc-00138-CJN. This consolidated opposition is being filed contemporaneously on the docket in both cases.

consumer of media knows why Defendant's on-air personalities alluded to Mr. Soros:  for a certain segment of the population, "his name is invoked as an all-purpose symbolism of liberalism run amok."[2]  In its Complaint, however, with one exception, Smartmatic does not allege that the stray references to Mr. Soros were defamatory or injurious, but instead alleges that *other* statements made *alongside* the Soros-related remarks constitute actionable falsehoods.  The *one* statement aired on Defendant's network regarding Mr. Soros that Smartmatic alleges to be defamatory and injurious involves an assertion that there were "ties" between the "software" Smartmatic developed to "alter vote totals" and Mr. Soros—a claim so absurd that Defendant did not even bother to ask for documents in its subpoenas about any role Mr. Soros had in connection with Smartmatic's "software."

Even though Smartmatic's causes of action are not based on statements about Mr. Soros (with the one exception noted above), Defendant nevertheless served Mr. Soros with a subpoena containing 23 unique document requests.  It served an even more expansive subpoena on OSI, asserting 32 different demands for documents.  These subpoenas are extraordinary in their breadth, demanding, among many other things, communications of Mr. Soros and OSI with (i) leading political and business figures, including both former President Clinton and former Secretary of State Hillary Clinton; (ii) representatives of various domestic and foreign governments; and (iii) any communication that happens to mention the "certification" of either the 2016 or the 2020 Presidential Elections, with no other limitation.  Defendant's requests have absolutely no connection to the handful of "Soros" references made on-air by Defendant's

---

[2]        Kenneth P. Vogel, Scott Shane, and Patrick Kingsley, "How Vilification of George Soros Moved from the Fringes to the Mainstream," New York Times (October 31, 2018), attached hereto as Ex. 1.  References to "Ex. __" refer to documents attached to the Declaration of Casey E. Donnelly, dated January 5, 2024, filed contemporaneously herewith.

anchors—references which are not alleged to be defamatory in any event—and constitute the type of blatantly improper fishing expedition that is expressly prohibited by federal law.

Nonetheless, in an effort to avoid motion practice, Mr. Soros and OSI agreed to search for and produce documents concerning the "substantial truth" of certain claims that Mr. Soros owned or funded Smartmatic, as asserted several times during Defendant's broadcasts.  No documents were found because Mr. Soros has never owned or funded Smartmatic.  (In its Motions to Compel, Defendant spuriously claims that this lack of production is evidence of "bad faith" by these non-parties.)  Other statements repeated on Defendant's network mention Mr. Soros and repeat facts that appear to be uncontested—namely, that the chairman of Smartmatic's parent company, SGO, also served on OSF's Global Board.  Mr. Soros and OSI offered to produce materials sufficient to prove such board service, if Smartmatic was contesting this point—which apparently it is not, because the facts are indisputable and a matter of public record.  Demanding anything further from Mr. Soros and OSI would require these non-parties to engage in time-consuming, burdensome and harassing discovery to look for information that is irrelevant to the issues before this Court.

Indeed, the arguments advanced by Defendant here in support of its subpoenas have already been rejected by another court in a related litigation commenced by Smartmatic against the Fox News Network.  In that case, pending in New York Supreme Court, Fox anchors are alleged to have made defamatory statements about Smartmatic that are substantially similar to those aired on OAN.  There, like here, Fox subpoenaed Mr. Soros and OSI, making the same arguments about the supposed relevance of the requested discovery, but the New York state court, in October of 2023, denied Fox's motion to compel, in its entirety, finding that the discovery sought was *not* relevant or material to any disputed issues in that case.  *See Smartmatic*

*USA Corp., et al. v. Fox Corp., et al.*, No. 151136/2021 (N.Y. Sup. Ct. Feb. 4, 2021) ("the Fox Action").  This Court should do the same and deny Defendant's Motions to Compel.

## FACTUAL BACKGROUND

### A.      Mr. Soros and the Open Society Institute.

Mr. Soros is a prolific philanthropist.  As a child, Mr. Soros, who is Jewish, lived through the Nazi occupation of Hungary and the experience left a profound impact on his worldview.  Having witnessed firsthand the atrocities that can result from authoritarian regimes, Mr. Soros has spent decades, and donated billions of dollars, to charitable causes that are aimed at promoting democracy, free speech and the right to vote.  In the 1980s, Mr. Soros founded a network of entities—now commonly referred to as the "Open Society Foundations"—which are located across the globe and which provide financial grants to projects and organizations that promote civil and human rights.  OSI is a non-profit operating in the United States as part of the Open Society Foundations, also referred to as OSF.

The Complaint describes certain undisputed facts concerning current OSF President, Lord Mark Malloch Brown.  *See, e.g.*, Compl. ¶ 131.  Over the course of his career, Malloch Brown has held a number of roles in the business sector.  In 2007, he served for a brief time as the Vice Chair of Soros Fund Management.  (Ex. 2.)  From 2010 to 2014, Malloch Brown served as Chairman of Global Affairs for FTI Consulting, the international business advisory firm.  (*Id.*)  From 2014 through 2020, Malloch Brown also served as the Chairman of the Board for SGO, a holding company which owns a number of entities, including Smartmatic, but also Sterisafe, a health tech company, AirLabs, a venture focused on air purification, and Folio, a development company specializing in digital identification products.  (Exs. 2, 3.)  During this same period, Malloch Brown served on the board of various non-profits, including OSF's Global Board.  (Ex.

4.)  In 2021, after the events and statements giving rise to this action, Malloch Brown resigned from all for-profit ventures and accepted a new position as OSF's President.  (Ex. 3.)

### B.    Smartmatic's Complaint.

On November 3, 2021, Smartmatic commenced this action against Defendant.  The Complaint filed by Smartmatic is 192 pages long and asserts two causes of action.  The first is for defamation in connection with "false statements and implications" broadcast by Defendant about Smartmatic.  (Compl. ¶ 441.)  The second cause of action is for injurious falsehood in connection with "false statements and implications" broadcast by Defendant in connection with Smartmatic's "election technology and software."  (Compl. ¶ 456.)

The Complaint identifies the precise statements that Smartmatic contends are actionable. For both causes of action, those statements are the same and are set forth in paragraphs 184, 196, 205, 218, and 227 of the Complaint.  (*See* Compl. ¶ 441 (describing paragraphs 184, 196, 205, 218, and 227 as setting forth the actionable statements for the First Cause of Action) and Compl. ¶ 456 (describing the same paragraphs as containing the actionable statements for the Second Cause of Action).)  These five paragraphs—*e.g.*, paragraphs 184, 196, 205, 218, and 227— contain approximately 70 statements alleged to be false and explain why Smartmatic believes each of those statements to be defamatory and injurious.  (*See, e.g.*, Compl. ¶ 184 (identifying precise statements at issue and explaining that each "create[s] the impression that Smartmatic's election technology and software were widely used, including in Dominion's voting machine system") *and* Compl. ¶ 196 (identifying precise statements at issue and explaining that each "create[s] the impression that Smartmatic had fixed, rigged and stolen the 2020 U.S. election[.]").)  Of the approximately 70 statements identified in these five paragraphs, nine include a stray reference to Mr. Soros.

In its Motions to Compel, Defendant inaccurately states that Mr. Soros and OSI are the subject of 18 "unique" statements alleged to be "defamatory."  *See* Mot. (OSI) at 10; Shah Decl. (OSI) ¶ 2; Mot. (Soros) at 12; Shah Decl. (Soros) ¶ 2.  However, the paragraphs that Defendant cites in support of this contention—*i.e.*, paragraphs 93, 95-97, 99, 102, 104, 105-106, 111, 113, 129, 131, 171—are *not* the paragraphs containing the statements actually at issue in Smartmatic's first and second causes of action.  Indeed, Defendant cites to multiple statements that are not repeated in the five operative paragraphs—*i.e.,* 184, 196, 205, 218, and 227—and thus, are *not* alleged to have defamed or injured Smartmatic *at all*.  *See, e.g.*, Mot. (OSI) at 11; Mot. (Soros) at 13 citing Compl. ¶ 93 (describing statement of OAN guest that is not alleged as actionable), ¶¶ 104, 105 (describing statement of OAN guest that is not alleged as actionable); ¶ 106 (describing statement of OAN guest that is not alleged as actionable); ¶ 111 (describing statement of OAN guest that is not alleged as actionable); ¶ 131 (describing statement of OAN anchor regarding Malloch Brown that is not alleged as actionable).

In fact, of the four examples of "defamatory statements" about Mr. Soros that Defendant excerpts for the Court in its Motions to Compel, *three* are among those not alleged to be actionable.  *See* Mot. (Soros) at 3-4, Mot. (OSI) at 3 (excerpting statement by Michael Johns, described at Compl. ¶ 93, which is not at issue in this case); Mot. (Soros) at 4, Mot. (OSI) at 4 (excerpting statement by Evi Kokalari-Angelakis, described at Compl. ¶ 104, which is not at issue in this case); Mot. (Soros) at 5, Mot. (OSI) at 4 (excerpting statement by OAN reporter regarding Malloch Brown, described at Compl. ¶ 131, which is not at issue in this case).

## C.    Defendant's Document Requests to Mr. Soros and OSI.

Notwithstanding the fact that neither Mr. Soros nor OSI is the subject of the statements alleged to be false and defamatory in this case (with one minor exception), Defendant served subpoenas duces tecum on Mr. Soros on July 10, 2023 and on OSI on August 9, 2023.

Defendant's document requests are, in a word, sweeping.  The subpoenas seek from OSI thirty-two (32) categories of documents, and from Mr. Soros twenty-three (23).   For example, Defendant seeks *any* communications, with *any* party, from *any* period in time, that "concerns" Smartmatic or Dominion (which is not a party to this case).  *See* Ex. B to Shah Decl. to Mot. (OSI) (hereafter, "Subpoena (Soros)") at Reqs. 1-4; Ex. C to Shah Decl. to Mot. (OSI) (hereafter, "Subpoena (OSI)") at Reqs. 2-5.  The subpoenas also seek a variety of documents, regardless of their connection to Smartmatic or Defendant, including, among other things, "all documents or communications" concerning:

- "AT&T, INC. and/or DIRECTV, LLC, [or any] agent or individual working on behalf of AT&T or DIRECT TV, LLC," *see* Subpoena (Soros) at Req. 6;

- "Ex-Cle Soluciones," a Venezuelan technology company, *see* Subpoena (OSI) at Req. 26;

- "U.S. Representative Carolyn Maloney's 2006 letters to the Secretary of the Treasury," *see* Subpoena (Soros) at Req. 17; and

- the general topic of the "certification of the 2016 or 2020 Presidential Election in the United States," *see* Subpoena (Soros) at Req. 16.

One particularly egregious request demands "all documents or communications," *on any and every subject*, that any employee of OSI had with any of the following governmental and nongovernmental entities, so long as the communication is dated after January 1, 2020:  (i) the Department of Homeland Security; (ii) the Cyber and Infrastructure Security Agency; (iii) the Election Infrastructure Information Sharing and Analysis Center; (iv) the Center for Internet Security; (v) the Election Integrity Partnership; (vi) the Stanford Internet Observatory; (vii) the University of Washington Center for an Informed Public; (viii) Graphika; and (ix) the Atlantic Council's Digital Forensic Research Lab.  *See* Subpoena (OSI) at Req. 25.  As if that list were not broad enough, Defendant tacks on "and any other working group" to the end— thus ensuring

that, any time during the past four years that an OSI employee sent a document to two or more people who were "working" on something, Defendant receives a copy.

Moreover, the subpoenas seek materials that are not only irrelevant, but confidential and private. For instance, Request No. 11 to Mr. Soros seeks all communications between any employee of "OSF"—a network which consists of entities located around the world—and Malloch Brown, who served as a member of OSF Global Advisory Board. *See* Subpoena (Soros) at Req. 11. The request is not bounded by subject matter in any way. In other words, Defendant demands a search through the files of every employee associated with the international OSF network, for communications with one of OSF's Board members, over a six year period, regarding any and every subject matter, no matter how unrelated to Smartmatic or the claims at issue in this case.

After timely service of responses and objections, the parties met and conferred, both telephonically and by email. Counsel for Mr. Soros and OSI repeatedly pressed Defendant to explain what reasonable basis it had for believing that Mr. Soros or OSI would have any communications relevant or material to Defendant's defense against Smartmatic, but no response was ever provided. Instead, Defendant tried to negotiate search terms to govern its proposed search for irrelevant materials. The terms Defendant proposed were as sweeping as its subpoenas. Defendant informs the Court that it only asked Mr. Soros and OSI to run "merely four search strings," *see* Mot. (OSI) at 1; Mot. (Soros) at 2, but that description is misleading, as each of the four "strings" contains dozens of variations. *See* Ex. H to Shah Decl. to Mot. (OSI). When Defendant's proposed search terms are broken out into individual searches, they number not four, but 2,595 searches. A copy of the searches Defendant demanded from Mr. Soros and OSI, broken out into individual searches, is attached as Ex. 5.

**D.       The October 30, 2023 Decision of the New York Supreme Court.**

While the meet and confers between Defendant and these non-parties were proceeding, the same arguments that Defendant presents in its Motions to Compel were being litigated in a parallel action in New York Supreme Court.  In addition to the present case, Smartmatic has also filed a defamation action in New York against Fox News Corporation and a number of Fox's on-air personalities, alleging that Smartmatic was injured by assertions that were broadcast on Fox regarding Smartmatic's purported efforts to rig the 2020 Election.  The alleged defamatory statements at issue in the Fox Action are substantially similar to those at issue in the present case.

Like Defendant's on-air anchors here, Fox's on-air commentators made a handful of stray remarks about Mr. Soros while otherwise asserting various claims about Smartmatic and its alleged rigging of the 2020 Election.  Specifically, on-air commentators at Fox (i) briefly referred to the fact that Malloch Brown served as a member of OSF's Global Board; (ii) stated that Malloch Brown and Mr. Soros were "close;" and (iii) asserted, in the midst of a longer broadcast about Smartmatic's purported efforts to rig the 2020 Election, that there was a "connection" between Smartmatic and Mr. Soros.

Like Defendant here, Fox served subpoenas on both Mr. Soros and OSI, demanding every document in their custody or control that referenced "Smartmatic," no matter how distant in time or subject it might be from the question of whether Smartmatic "rigged" the 2020 Election.  Mr. Soros and OSI objected to Fox's overbroad subpoena requests, but agreed to search for and produce to Fox (i) any record of agreements with, or concerning, Smartmatic and/or Antonio Mugica (Smartmatic's CEO); (ii) any records of funding or grants to Smartmatic or any affiliated entities by Mr. Soros or any of the OSF entities; and (iii) any record of Mr. Soros's involvement in Smartmatic's purported efforts to "rig" the 2020 Election.  No responsive records were found.

Fox then filed a motion to compel, arguing that because one of the statements described as defamatory by Smartmatic included an assertion that there was a "connection" between Mr. Soros and Smartmatic, Fox was entitled to every communication in the possession of Mr. Soros or OSI that referenced Smartmatic.   In addition, Fox pointed to "two meetings" involving Smartmatic (both from 2014) that it claimed gave it a reasonable basis for its discovery demands. (Ex. 6 (Transcript of Oct. 30, 2023 Argument in Fox Action) at 9.)[3]

On October 30, 2023, the Honorable David B. Cohen heard Fox's motion and denied it in its entirety.   *Id.* at 43-44.   Justice Cohen found that the handful of references broadcast on Fox regarding Mr. Soros and his purported "connection" to Smartmatic were, at most, a "peripheral matter," *id.* at 44, because the "central" issue of the case was the various assertions broadcast on Fox regarding Smartmatic's purported efforts to "rig" the 2020 Election.   *Id.*   Indeed, during oral argument, counsel for Smartmatic informed Justice Cohen that the "connection" between Smartmatic, through Malloch Brown, and Mr. Soros was not a "disputed issue."   *Id.* at 37; *see also id.* at 39 (acknowledgement by Justice Cohen that "everybody in the room," including Smartmatic "says that [it] is substantially true" that Mr. Soros had a "connection to Smartmatic.").   As Justice Cohen explained, Fox's on-air assertions regarding a "George Soros connection" to Smartmatic were *not* "the defamatory statement" at issue in Smartmatic's Complaint.   *Id.* at 41.   Given that Fox's obligation, if anything, was to prove that it was

---

[3]      In its Motions to Compel, Defendant cryptically states, without elaboration, that it is "aware of documents related to Soros's advancement and support of Smartmatic's business opportunities." (Mot. (OSI) at 6; Mot. (Soros) at 6.)  Defendant chose not to present this purported evidence, or any other evidence, to the Court with its Motions to Compel.  In addition, we have asked Defendant to provide a good faith basis to conclude that Mr. Soros and OSI would have documents relevant to this action, let alone the broad requests served that have no apparent relationship to this case.  Defendant has not done so.  In any event, to the extent that Defendant is obliquely referring to the same two meetings that Fox described for Justice Cohen, or any of the other evidence produced by Smartmatic in these cases, Justice Cohen found such evidence to be unavailing and not supportive of the discovery requests served on these non-parties.

"substantially true" that Smartmatic engaged in election fraud in 2020, and *not* to prove that there was some "connection" between Smartmatic and Mr. Soros, Justice Cohen found that Fox's subpoena sought materials that were "not relevant to, or material or necessary to" its defenses. *Id*. at 43. The court accordingly denied Fox's motion to compel in its entirety.

In its Motions to Compel, Defendant weakly attempts to distinguish the decision in the Fox Action by arguing that in the Fox Action, there were only six alleged statements regarding Mr. Soros or OSI, whereas there are 18 in this case. *See* Mot. (OSI) at 11; Mot. (Soros) at 12. As discussed above, *see supra* at 6, Defendant's citation to "18 statements" constitutes a misreading of the Complaint; in fact, there are only nine stray, largely duplicative, references to Mr. Soros in the statements actually alleged by Smartmatic to be defamatory or injurious.[4] Moreover, save for one assertion about Mr. Soros's purported "tie" to vote-altering election "software," *see* Compl. ¶ 196(j), Smartmatic has not alleged that any of these stray references to Mr. Soros were defamatory or injurious, so Defendant has no obligation to present a "substantial truth" defense with respect to these remarks.

---

[4]     In fact, even when taking into account the statements about Mr. Soros that are not alleged to be actionable, Defendant is wrong when it claims there are 18 "unique" statements relevant to these non-parties, as Defendant double-counts the statements in paragraphs 93, 99, 131, and 171(cc), where both Mr. Soros and "Open Society" are referenced in the same sentence.  Thus, at most, there are 14 "unique" references to Soros/"Open Society," nine of which are discussed at length in Argument, Section I of this brief.  Of the remaining five, three relate to the undisputed fact that Malloch Brown served on the OSF Board.  *See* Compl. ¶¶ 93, 111, 106.  One additional reference, found at Paragraph 105, is not an assertion of fact at all, but instead involves a comment from an OAN anchor that the network needed to "continue to look" to see if there might be a "connection" between Mr. Soros and Dominion.  And in the final reference, OAN guest, Evi Kokalari Angelakis, states that the Clintons and *Dominion* have worked together to "raise money to help voter fairness" in "countries, like, I don't know, Albania," or unnamed other countries that "don't have a strong economy."  Compl. ¶ 104. Ms. Kokalari Angelakis then briefly swerves to offer a non sequitur about how "George Soros" sees "weak states" as a "perfect playground," before reverting back to her argument that the Clintons expected victory in the 2016 Presidential Election because they "knew Dominion and the software, Smartech—Smartmatic was in existence and that's how they were going to get the election."  *Id.* The focus of the speaker's speculative assertions are the Clintons and Dominion, not Mr. Soros.

## ARGUMENT

Subpoenaed documents must be "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26 (b) (1). The subpoenaing party has the burden to show the documents requested are "necessary to the establishment of [their] claim" and that they are "material[] and relevan[t]." *Black v. Sheraton Corp. of Am.*, 47 F.R.D. 263, 273–74 (D.D.C 1969), *aff'd,* 564 F.2d 550 (D.C. Cir. 1977) (internal citations omitted).

## I. THE SUBPOENAS SEEK MATERIALS THAT ARE NOT RELEVANT OR MATERIAL TO DEFENDANT'S "SUBSTANTIAL TRUTH" DEFENSE.

Defendant's subpoenas seek materials irrelevant to this litigation. As described above, the Complaint, at paragraphs 184, 196, 205, 218, and 227, sets forth the statements, broadcast by Defendant, that Smartmatic contends are false and actionable, as well an explanation of *why* those statements were defamatory or injurious to Smartmatic. Mr. Soros's name is briefly referenced within nine of the statements, which otherwise concern Smartmatic's alleged rigging of the 2020 Election or similar themes. In fact, most of the "Soros" references are repetitive and fall easily into only a few categories, each discussed below.[5]

---

[5] In only one paragraph, repeated in both Motions to Compel, does Defendant make any effort to address the actual substance of the statements about Mr. Soros and OSI, and to link them to the disputed issues in this case. *See* Mot. (OSI) at 9, Mot. (Soros) at 10-11. That paragraph is largely an exercise in obfuscation and misdirection. Defendant states, for instance, that the statements relate to Mr. Soros's or OSI's connections with Venezuela, Albania and Dominion, among others—even though the statements, which are examined in this brief in detail, clearly relate to *Smartmatic's* alleged connections with those countries and Dominion, not connections Mr. Soros or OSI has with those countries or Dominion. Mot. (OSI) at 9, Mot. (Soros) at 10 ("The complaint broadly discusses, among other things, Soros's and Open Societies ties with Smartmatic and *their* connections with Venezuela, Albania, Chavez, Maduro, Castro, socialist regimes and Dominion") (emphasis added). Likewise, Defendant falsely claims that the statements at issue in this case relate to "Soros's and Open Society's relationships with left-wing organizations, causes and politicians and their influence on elections." Mot. (OSI) at 9, Mot. (Soros) at 11. In fact, not only are the statements Defendant cites generally not among those alleged be actionable by Smartmatic, but upon examination, the statements repeatedly come back to the same alleged facts – Mr. Soros's alleged ownership of Smartmatic and Malloch Brown's

**A.**    **Even Though Statements Asserting that Mr. Soros Owned or Funded Smartmatic Are Not Alleged to Be Defamatory or Injurious, Mr. Soros and OSI Searched For Documents Demonstrating Funding or Ownership of Smartmatic, But There Was Nothing To Produce.**

Four of the nine references to Mr. Soros refer to his purported funding or ownership of Smartmatic.  For example, on November 16, 2020, ten days after the 2020 Presidential election, Mike Dinow, an OAN anchor, hosted the network's 11pm newscast.  (Ex. 7 (containing assertions cited as actionable in Compl. ¶¶ 218(a), (c), 227(d)).).  As part of the segment, Rudy Giuliani made an appearance, commenting that the alleged rigging of the 2020 Election was "not terribly different than what's going on in Venezuela."  At that point, Mr. Dinow interjected to say that he had seen a "report" by conservative news site, Gateway Pundit, asserting that Smartmatic "reportedly meddled with a 2004 Venezuela election to secure a win for the Chavez regime."  *Id.*  According to Mr. Dinow, Gateway Pundit also reported that Smartmatic was "partially owned by the Maduro regime and George Soros" and that Smartmatic's "voting machine system funded by George Soros" had been used to "install a socialist regime in Venezuela back in the early 2000s."  *Id.*  In addition, Mr. Dinow reported that a former aide to "Hugo Chavez" had been appointed to Smartmatic's board of directors.  *Id.*  A chyron ran along the bottom of the screen summarizing Mr. Dinow's remarks:

---

Board service at OSF.  In short, any effort at trial by Defendant to prove "substantial truth" must be tethered to the actual statements themselves and discovery should be similarly tailored.



Exhibit 5A, *News Room*, 11PM (11/16/2020) at 09:42.

Three days later, on November 19, 2020, Defendant aired a similar chyron during a broadcast with anchor Patrick Hussion, which repeated the claim that Smartmatic was partially owned by the "Maduro regime" and "George Soros," as Mr. Dinow had reported three days earlier:



Exhibit 9A, *Breaking News Live* (11/19/2020) at 05:18.

The Complaint alleges that Defendant defamed Smartmatic by making "false statements and implications," *see* Compl. ¶¶ 441, 446, that "Smartmatic was founded and funded by corrupt dictators from socialist and communist countries." *See* Compl. ¶¶ 217, 218. In particular,

Smartmatic has alleged that Mr. Dinow's assertions that Smartmatic was "partially owned by the Maduro regime," had installed a "Chavez" aide on its board, and had meddled with the "2004 Venezuela election," as well as the accompanying chyron (and the similar one broadcast on November 19, 2020), were false and injurious to Smartmatic because they suggested that "Smartmatic was founded and funded by corrupt dictators from socialist and communist countries."  (*See* Compl. ¶¶ 217, 218(a), (b) (referring to Nov. 16, 2020 chyron), (c), (g) (referring to Nov. 19, 2020 chyron).)  Smartmatic also alleges that these same comments and the November 16, 2020 chyron falsely implied that "Smartmatic's election rigging technology and software were designed to fix, rig, and steal elections" and "have been used to fix, rig and steal elections before."  (Compl. ¶ 227(d), (e) (referring to Nov. 16, 2020 chyron).)

In other words, the Complaint makes clear that Smartmatic is *not* alleging that the statements made by Mr. Dinow regarding Mr. Soros's purported ownership of Smartmatic were defamatory or injurious to Smartmatic.  As such, Defendant has no obligation to prove the truth of those statements.  Nevertheless, both Mr. Soros and OSI agreed to search for and produce documents evidencing any funding or investment that they (or any of the entities associated with OSF) provided to Smartmatic.  No such documents were found, because Mr. Soros and the OSF entities do not, and have never, owned or provided funding to Smartmatic.  Defendant almost certainly expected such a result, as this fact has been widely reported previously.  (Ex. 10.)

**B.    Smartmatic Does Not Dispute Certain Basic Facts of Lord Malloch Brown's Career, but If Smartmatic Were to Do So, OSI Will Produce Documents Sufficient to Prove Those Facts Are True.**

Three of the nine stray references to Mr. Soros involve assertions of fact about Malloch Brown that are indisputably true, a matter of public record, and unlikely to be contested by Smartmatic.

For example, Smartmatic alleges that it was defamed and injured by certain statements made on November 17, 2020 by Kara McKinney, on her show, *Tipping Point with Kara McKinney*.  (Ex. 8 (containing assertions cited as actionable in Compl. ¶¶ 184(i), 196(f), 227(f)).)  During this broadcast, Ms. McKinney commented that there was a "systemic" flaw in the administration of the 2020 Election.  She told her viewers that Dominion's "voting system" had been used in "around 30 states" and that Smartmatic was a "subsidiary" of Dominion.  *Id.*  Ms. McKinney stated that "the chairman of [Smartmatic] is also a board member for George Soros's Open Society Foundation" while also claiming that "a member of Biden's transition team, Peter Neffenger, [was] a member of the Board of Directors for Smartmatic."  *Id.*  Ms. McKinney went on to say that Smartmatic's "software" had been "used a few years back to rig elections in Venezuela."  *Id.*

Smartmatic has alleged that Ms. McKinney's statements about Smartmatic's technology being used in "30 states" were defamatory and injurious because they created the false "impression that Smartmatic's election technology and software were widely used…during the 2020 U.S. election."  *See* Compl. ¶ 184(i).  Smartmatic has also alleged that Defendant defamed and injured Smartmatic by creating a false impression that Smartmatic had "fixed, rigged and stolen the 2020 U.S. election for Joe Biden and Kamala Harris and the Democratic Party," including through Ms. McKinney's statements concerning Peter Neffenger, who served on Biden's transition team.  *See* Compl. ¶ 196(f).  Finally, Smartmatic alleges that Ms. McKinney's statements regarding Smartmatic's software being used to rig a 2004 Venezuelan election falsely implied that "Smartmatic's election rigging technology and software were designed to fix, rig, and steal elections" and "have been used to fix, rig and steal elections before."  (Compl. ¶ 227(f).)

At no point in the Complaint, however, does Smartmatic claim that it was defamed or injured by Ms. McKinney's statement that "the chairman of [Smartmatic] is also a board member for George Soros's Open Society Foundation."  Nor could Smartmatic make such an allegation, given that it is a *fact* that Malloch Brown served as the Chair of Smartmatic's parent company, SGO, while also serving as a board member for OSF.  Public records (and presumably discovery obtained from Smartmatic) confirm that Malloch Brown held both positions, so if such a proposition is contested, Defendant has easy recourse to public materials proving that Ms. McKinney's statement about Malloch Brown was "substantially true."  Nevertheless, OSI has agreed that should Smartmatic dispute that Malloch Brown served on the OSF Global Board, OSI will produce documents sufficient to show the dates of Malloch Brown's membership. Nothing further would be necessary in order for Defendant to prove that it was "substantially true" that "the chairman of [Smartmatic] [was] also a board member for George Soros's Open Society Foundation."

Similarly, Defendant also does not require any discovery from Mr. Soros or OSI to prove the "substantial truth" of certain statements made by a reporter for Defendant during a December 5, 2020 *News Room* broadcast.  (Ex. 9 (containing assertions cited as actionable in Compl. ¶¶ 184(w), 196(p), (q)).)  During this segment, a reporter asserted that "a manufacturer of electronic voting systems connected to billionaire George Soros is caught lying about its ties to Dominion Voting Systems Corporation" and told viewers that a "report" had "verified that the Soros-linked Smartmatic may be connected to the sale of election technology to Dominion, which is being used to count votes in at least 24 US states."  *Id*.  The reporter then went on to explain what he meant by the "connect[ion]" or "link[]" between Mr. Soros and Smartmatic:

> Chairman Mark Malloch Brown sits on the board of George Soros's Open Society Foundation…Malloch Brown has also served as Vice Chairman of Soros'

investment funds. Meantime, Smartmatic has faced controversy in the past with allegations of rigging the 2013 election in Venezuela, on behalf of embattled socialist President Nicolas Maduro.

*Id*.

Public records confirm that in 2007, Malloch Brown served as Vice Chairman of certain investment funds associated with Mr. Soros, as well as Malloch Brown's position on OSF's Global Board. (Ex. 2.) Because these are well known facts, Smartmatic has never argued that it was false or defamatory for Defendant's on-air anchors to assert that there was a "link" between Smartmatic and Mr. Soros. *See supra* at 10 (describing acknowledgment from Smartmatic to Justice Cohen that the "connection" between Smartmatic, through Malloch Brown, and Mr. Soros is not a "disputed issue.") Because Smartmatic is not arguing that Defendant's reporting of a "link" between Mr. Soros and Smartmatic was defamatory—nor could it, given the undisputed facts of Malloch-Brown's career—Defendant is entitled to no discovery on that issue. *Durnan v. U.S. Dep't of Com.,* 777 F. Supp. 965, 966 n.1 (D.D.C. 1991) (where issue is "undisputed," a party "is not entitled to discovery.")

The same reasoning applies to statements about Malloch Brown found in a December 7, 2020 article, posted to OAN's website, which Smartmatic contends contains certain assertions that were defamatory and injurious. (Ex. 11 (containing assertions cited as actionable in Compl. ¶¶ 184(x), 196(r), 218(y), 227(u)).) The article is entitled: "Chairman of Smartmatic's Parent Company to Become President of George Soros's 'Open Society Foundations'." *Id*. Smartmatic, however, has *not* alleged that the article's headline or its reporting of Lord Malloch Brown's appointment, in December 2020, to serve as president of OSF, was false or defamatory. Instead, Smartmatic complains about *other* assertions in the article—namely, (i) the article's claim that Smartmatic sold technology to Dominion, and (ii) the article's reference to an effort

-18-

by Smartmatic to rig an election in Venezuela in favor of Nicholas Maduro.  *See* Compl. ¶¶ 184(x); 196(r); 218(y); 227(u).

Even if Defendant was, for some reason, required to prove the "substantial truth" of the article's headline, Defendant will need no discovery from OSI or Mr. Soros to present its defense.  OSF issued an official press release at the time of the appointment, which is widely available to the public, and OSF's website confirms Malloch Brown's position as OSF President. (Ex. 12.)  Nothing further would be required for Defendant to demonstrate that the article's headline and reporting of Malloch Brown's appointment was "substantially true," and indeed Mr. Soros and OSI have no reason to believe that Smartmatic would even contest this fact.

C.    **Defendant's On-Air Assertions of a "Tie" Between Mr. Soros and Smartmatic Are Not Alleged to be False or Defamatory and Thus Defendant Has No Obligation to Prove the Existence of Such a Connection, Which In Any Event Is Undisputed.**

Another of the nine stray references to Mr. Soros was made by OAN on-air personality Kara McKinney during a December 1, 2020 broadcast of *Tipping Point*.  (Ex. 13 (containing assertions cited as actionable in Compl. ¶ 218(v)).)  Aside from her reference to Mr. Soros, Smartmatic alleges that Ms. McKinney's statements were false and are actionable, as she made numerous assertions about Smartmatic's supposed connection to corrupt South American dictators.  In particular, Smartmatic alleges that Defendant defamed it by making "false statements and implications," *see* Compl. ¶¶ 441, 446, that suggested that "Smartmatic was a Venezuelan company that was founded and funded by corrupt dictators from socialist and communist countries," *see* Compl. ¶¶ 217, 218, including through the December 1, 2020 broadcast, *see id.* at 218(v), where Ms. McKinney stated:

It's time for Tipping Point.   Tonight, is there anyone left to defend this constitutional republic?  That's the question I think we're all asking ourselves after the Attorney General caves to Democrats on election fraud. . .What we find is that 95% of all political contributions made by employees at Dominion Voting

Systems between 2014 and 2020 went for Democrats. It's the same story at Smartmatic, 86% of their employee contributions went to democratic candidates . . .Now this comes despite Smartmatic's own website declaring, quote, "Smartmatic's founders and employees adhere to a strict ethics code that, among other things, prohibits them from making political donations." *So here you have Dominion, which is a foreign owned company and uses computer chips made in China, and Smartmatic, which had ties to Soros and the Castro regime in Venezuela, involved in the US elections.* At this point, many people are wondering where the Justice Department or the FBI is, after days and days of credible testimony.

Ex. 13 (emphasis added).

Importantly, Smartmatic has *not* alleged that it was defamed by Ms. McKinney's assertion that there was a "tie" between it and Mr. Soros—nor could Smartmatic reasonably do so, given that it is a public fact that Lord Malloch Brown served simultaneously on both the board of Smartmatic's parent company and OSF's Global Board, as discussed above. Rather, Smartmatic alleges that it was defamed by Ms. McKinney's assertion of a connection between Smartmatic and "the Castro regime in Venezuela." *See* Compl. ¶ 218, 218(v). It is *that* assertion that Defendant must prove was "substantially true." The fact that Ms. McKinney happened to mention Mr. Soros in the same sentence as assertions regarding the "Castro regime" does not provide a legitimate basis for Defendant to insist on a search of the private files and communications of two non-parties, especially where Smartmatic's Complaint makes clear that what it contends to be defamatory and injurious was the impression left by Ms. McKinney that "Smartmatic was a Venezuelan company that was founded and funded by corrupt dictators from socialist and communist countries," *see* Compl. ¶ 218, 218(v), and *not* anything to do with Mr. Soros or OSI.

-20-

**D.     Defendant Did Not Seek Discovery from Mr. Soros or OSI Regarding Its On-Air Assertion That Mr. Soros Was "Tied" to "Software" that Could "Alter Vote Totals," Presumably Because It Knows That Such A Claim Cannot Be Proven "Substantially True."**

The final relevant reference to Mr. Soros—and the only one alleged to be defamatory or injurious to Smartmatic—was made during a November 20, 2020 broadcast of *In Focus with Stephanie Hamil*.  (Ex. 14 (containing assertions cited as actionable in Compl. ¶¶ 184(q), 196(j)).)   In this segment, Ms. Hamil informed Defendant's viewers that "attorney Sidney Powell" had said during a press conference that the "software used in the voting machines across the country [during the 2020 Election] c[ould] be manipulated to alter vote totals" and that such "software" was "tied" to "Democrat donor George Soros and the Clinton Foundation."  *Id.*  Ms. Hamil then repeated Ms. Powell's statement that Smartmatic "use[s] software that [is] controlled by foreign interests" as well as Ms. Powell's assertion that votes in the 2020 Election were "counted overseas."  *Id.*

Smartmatic alleges that Defendant defamed it by making "false statements and implications," *see* Compl. ¶¶ 441, 446, that suggested that "Smartmatic's election technology and software were widely used, including in Dominion's voting machine system, during the 2020 Election," *see* Compl. ¶ 184, including through Ms. Hamil's repetition of Ms. Powell's assertion that "the voting machines across the country [during the 2020 Election] c[ould] be manipulated to alter vote totals."  *See id.* ¶ 184(q).  Smartmatic also alleges that Defendant defamed it by making "false statements and implications," *see* Compl. ¶¶ 441, 446, that suggested that Smartmatic had "fixed, rigged and stolen the 2020 U.S. election for Joe Biden and Kamala Harris and the Democratic Party," including through Ms. Hamil's repetition of Ms. Powell's assertion that "the software" which could "alter vote totals" was "tied" to "Democrat donor George Soros and the Clinton Foundation."  Compl. ¶ 196(j).

-21-

In order to prove that the November 20, 2020 broadcast was "substantially true," Defendant will need to demonstrate, among other things, that Smartmatic's software "could be manipulated to alter vote totals." *See id.* ¶ 184(q).  Defendant will then need to demonstrate that Mr. Soros was "tied" to Smartmatic's election-rigging "software."  To the extent Ms. Hamil is referring to Malloch Brown, that relationship is not in dispute, as discussed above.  To the extent the speaker is implying that Mr. Soros played some role in the software's development, implementation or otherwise, Defendant never asked these non-parties to search for communications demonstrating involvement by Mr. Soros in any manipulative "software" that could change votes.  *See generally* Subpoena (Soros); Subpoena (OSI).  Presumably that is because even Defendant accepts that Mr. Soros had absolutely no role in the oversight or development of any "software" used to "alter vote totals" in the 2020 Election.

## II.   DEFENDANT'S DOCUMENT REQUESTS ARE EXTRAORDINARILY BROAD AND AMOUNT TO A FISHING EXPEDITION FOR IRRELEVANT INFORMATION.

Although Federal Rule 26 "should be broadly and liberally construed, courts must prevent fishing expeditions, discovery abuse and inordinate expense by tailor[ing] discovery to the issues involved in the particular case." *Webster v. Spencer*, No. CV 17-1472 (DLF), 2019 WL 13290770, at *1 (D.D.C. June 12, 2019) (internal quotations omitted) citing *Hardrick v. Legal Servs. Corp.*, 96 F.R.D. 617, 618 (D.D.C. 1983).  In particular, "overbroad and far-ranging discovery requests" constitute the type of "fishing expeditions [and] discovery abuse" that federal courts may not countenance.  *United States v. Kellogg Brown & Root Servs., Inc.,* 284 F.R.D. 22, 37 (D.D.C. 2012) (internal quotations omitted).

Defendant's subpoenas do not come close to compliance with Rule 26.  Indeed, it is notable that Defendant's Motions to Compel fail to specifically describe even a single one of the 23 document requests that it served on Mr. Soros.  They are equally silent as to the 32 document

requests served on OSI.  The omission of such specificity speaks to the inappropriate nature of Defendant's demands.  In addition to demanding *every* document and communication (with no date limitation) that "concerns" Smartmatic or Dominion (an entity which is not even a party to this litigation), Defendant has also demanded a plethora of materials that have absolutely nothing to do with the handful of stray references to Mr. Soros that are contained in the Complaint.

In addition to the broad and irrelevant requests described above, *see supra* at 6-8, Defendant has, for example, also demanded every communication between Mr. Soros and a person named William E. Kennard, regardless of subject matter or date.  (*See* Subpoena (Soros) at Req. 5.)  More than 20 years ago, between 1997 and 2001, Mr. Kennard worked for President Clinton.  He now works for an investment firm which has apparently invested in Dominion (not Smartmatic).  Defendant has not even attempted to articulate any good faith basis for believing that Mr. Soros possesses any communication with Mr. Kennard that would be material and relevant to defeating Smartmatic's causes of action against Defendant.  Likewise, Defendant seeks every document or communication in Mr. Soros's custody or control concerning *either* Smartmatic's *or* Dominion's "connection"—whatever that might mean—to the "governments of Venezuela, Kenya, the Philippines, China or *any other country outside of the United States*."  (*Id.* at Req. 7 (emphasis added).)  Here again, Defendant is silent as to any good faith basis it has for believing that Mr. Soros possesses communications about a "connection" between Smartmatic, Dominion and literally *every country* in the world, and certainly has not articulated any basis describing why such communications would be material and relevant to defeating Smartmatic's causes of action against Defendant.  Each of the 23 requests directed at Mr. Soros are equally offensive to Rule 26's strictures.  *United States v. Libby*, 432 F. Supp. 2d 26, 39 (D.D.C. 2006) (a subpoena must "reasonably specify the information contained or believed to be contained in

the documents sought," to prevent "improper fishing expedition[s]" where "the defendant appears to merely hope[] that something useful will turn up").

The 32 document requests that Defendant served on OSI constitute, if possible, an even more invasive fishing expedition than the requests served on Mr. Soros, as the subpoena to OSI not only encompasses the same document requests sent to Mr. Soros, but goes even further.  For example, Defendant demands that OSI produce all communications in its custody or control with any agent, employee or representative of the governments of Brazil or Kenya relating to their elections, voting equipment or technology, *see* Subpoena (OSI) at Reqs. 30, 31, and any agent, employee or representative of the Venezuelan government, irrespective of subject matter, *id*. at Reqs. 27-29.  Defendant demands all communications in OSI's possession concerning or with "Ex-Cle Soluciones," a company which is nowhere mentioned in the Complaint.  *Id.* at Req. 26. Finally, as described above, *see supra* at 7, Defendant has demanded that OSI search the files of every employee for "all documents or communications," *on any and every subject*, that any employee had with *nine* different agencies and non-governmental entities, as well as "any other working group" that exists in the world, so long as those communications postdate January 1, 2020 (four years ago).  *Id*. at Req. 25.  *None* of the 32 requests included in Defendant's subpoena to OSI complies with Rule 26's principles.

To the contrary, both of Defendant's subpoenas are plainly fishing expeditions and prohibited under the federal discovery rules.  The quashing of such requests is the appropriate remedy.  *Diamond Servs. Mgmt. Co. v. Knobbe, Martens, Olson & Bear, LLP*, 339 F.R.D. 334, 339, 340 (D.D.C. 2021) (quashing a subpoena against a non-party because "[d]iscovery [] is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.").

### III.   THE BURDEN IMPOSED BY THE SUBPOENAS SIGNIFICANTLY OUTWEIGHS THE VALUE OF THE SOUGHT DOCUMENTS.

It is black-letter law that when "[t]he burden of producing [ ] information outweighs its relevance" a subpoena must be quashed or modified. *In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y,* 659 F. Supp. 3d 54, 58–59, 61 (D.D.C. 2023); *see also Alexander v. F.B.I.,* 186 F.R.D. 21, 34 (D.D.C. 1998) (internal citations omitted) (undue burden of a subpoena is measured by factors such as "relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed."). Courts are particularly sensitive to the effects of overbroad discovery requests on non-parties.[6] *See, e.g.*, *Cusumano v. Microsoft Corp.,* 162 F.3d 708, 717 (1st Cir. 1998) ("Concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs."). Thus, courts do not hesitate to quash non-party subpoenas and deny motions to compel on grounds of undue burden. *See, e.g.*, *Diamond Servs. Mgmt. Co.*, 339 F.R.D. at 341.

In addition to the blatantly inappropriate requests discussed above, *see supra* at 6-8, Defendant seeks *every* document and communication in the possession of Mr. Soros and OSI that "concerns" Smartmatic, in any manner, without date limitation. This is precisely the type of "unlimited" discovery request that federal courts have found to be improper. *See, e.g.*, *Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3-4 (D.D.C. 2017) (document requests are "overbroad and unduly burdensome" when they "could reasonably be expected" to cover thousands of documents spanning a decade). Indeed, as Justice Cohen commented during oral argument in the Fox Action, Fox's request that Mr. Soros and OSI search for and produce every document in their

---

[6]    Defendant's complaint that Mr. Soros's "resources vastly outstrip those of OAN," *see* Mot. (Soros) at 16; Mot. (OSI) at 14, does not justify its service of a clearly improper subpoena.

possession that "relates" to Smartmatic was the "broadest request" Fox could have come up with. (*See* Ex. 6 at 9-10.)  Here, as described above, *see supra* at 8, Defendant has also demanded that Mr. Soros and OSI *run more than 2,500 different searches* to find the (irrelevant) discovery it seeks.

As discussed above, there is *no* probative value to Defendant's requests, because the stray references to Mr. Soros in the Complaint are not alleged to be defamatory or injurious to Smartmatic.  Yet, Defendant insists that it is entitled, among many other things, to the collection and review of every communication between Malloch Brown and Mr. Soros or any employee of OSI.  *See* Subpoena (Soros) at Req. 11.  This alone is a substantial burden, even when employing the use of search terms like "Smartmatic."  As described above, Malloch Brown served on OSF's Global Board for many years and had a long-standing relationship with Mr. Soros.  From 2014 through 2020, however, Malloch Brown used an SGO and/or Smartmatic email address (with those terms also often appearing in his signature block), even for communications that had nothing to do with Smartmatic, such as OSF Global Board business.  Defendant also appears to believe that it is entitled to carte blanche discovery from the many entities associated with OSF's network (which operates countries across the globe), including searches for emails and communications concerning entities located outside of the United States.  (Subpoena (Soros) at Req. 11; *see generally* OSI Subpoena (defining "You" to mean "Open Society Foundations" (instead of the Open Society Institute, which is the entity actually served) including every employee of OSF)).  In short, Defendant has demanded the active review of thousands of documents to perhaps isolate a handful of irrelevant emails that refer to Smartmatic (and which Defendant likely already has, or can get, from Smartmatic itself).  This is the antithesis of discovery reasonably calculated to lead to admissible evidence.

As Justice Cohen found, the discovery that Defendant seeks from Mr. Soros and OSI relates, at most, to "peripheral" matters, *see* Ex. 6 at 44, that serve only to distract from the actual issue of whether Defendant can prove that it was "substantially true" that Smartmatic "rigged" the 2020 Election.  Mr. Soros and OSI should not be expected—especially given their status as non-parties—to conduct time consuming and expensive review of personal and private communications to facilitate fringe arguments that have nothing to do with Mr. Soros or OSI and where there is no factual basis to believe they would have relevant information.  *See Porter v. Pinkerton Gov't Servs., Inc*., 304 F.R.D. 24, 27 (D.D.C. 2014) (subpoena will not be enforced when the "subpoena is unreasonable, oppressive, annoying, or embarrassing"); *Freeman v. Seligson*, 405 F.2d 1326, 1334 n.35 (D.D.C. 1968) (authorizing the district court to quash or modify a subpoena as "justice requires to protect the party or witness (under subpoena) from annoyance, embarrassment, or oppression").

## IV.  DEFENDANT'S REQUEST FOR ATTORNEYS' FEES SHOULD BE DENIED AND DEFENDANT SHOULD PAY COSTS AND EXPENSES INCURRED BY MR. SOROS AND OSI IN RESPONDING TO THE SUBPOENAS AND OPPOSING THESE MOTIONS TO COMPEL.

In its Motions to Compel, Defendant argues that Mr. Soros and OSI should be held in contempt for their objections to the subpoenas served on them and should be forced to pay Defendant's legal fees.  *See* Mot. (OSI) at 15; Mot. (Soros) at 16-17.  These arguments are meritless.  Defendant does not provide the Court with a single case in which a non-party, which timely responded and objected to a Rule 45 subpoena, met and conferred with the issuing party, and then filed a fulsome opposition to a motion to compel, has been held in "contempt" for these actions and forced to pay the attorneys' fees of the issuing party.  In fact, this is the ordinary and proper method of responding a Rule 45 subpoena.  Indeed, this Court has found that so long as a subpoena recipient issued a "timely object[ion]" to the subpoena, Rule 45's contempt

provisions are simply *inapplicable*.  *In re Exxon Valdez*, 142 F.R.D. 380, 385 (D.D.C. 1992) (holding that the "Rule 45 [] contempt provision [] has no application [] where [non-party] timely objected to the subpoena").  The cases cited by Defendant, *PaineWebber Inc. v. Acstar Insurance Co.*, 211 F.R.D. 247, 249 (S.D.N.Y. 2002) and *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991), involved subpoena recipients who failed to object or respond to the subpoena and defied several court orders.  Those cases are clearly inapplicable here.

Notwithstanding its total lack of legal authority, Defendant offers three arguments in support of its request for a contempt finding against Mr. Soros and OSI and the awarding of attorneys' fees to Defendant, none of which has merit.  First, Defendant argues that Mr. Soros is a "billionaire" and OSI is a "multi-billion dollar organization," whereas Defendant is a "small family-run media outlet."  *See* Mot. (OSI) at 15; Mot. (Soros) at 17.  These statements, even if true, are unavailing, as relative financial resources is neither a basis to force a party to engage in discovery or to shift litigation-related expenses.  Second, Defendant argues that Mr. Soros and OSI "misrepresented that [they] would search for and produce certain documents," but never conducted such searches.  *Id*.  That is simply not true.  As stated above, *see supra* at 9, the non-parties agreed to, and did, conduct searches for certain categories of documents—there was simply nothing to produce.  Finally, Defendant argues that legal fees should be shifted because the non-parties never made a proposal of search terms to "counter" the more than 2,500 searches Defendant asked them to run.  Mot. (OSI) at 15; Mot. (Soros) at 17.  This argument is specious.  During the parties' meet and confers, counsel for Mr. Soros and OSI gave Defendant the opportunity to explain why it believed that Mr. Soros or OSI would possess documents material to OAN's defense, but Defendant never provided a meaningful response.  Mr. Soros and OSI were under no obligation to propose terms for searches meant to identify irrelevant documents

that Defendant is not entitled to, especially where another court had already determined that subpoenas similar to those served by Defendant were improper.

To the contrary, an award of legal fees, costs and expenses in favor of Mr. Soros and OSI is warranted here.[7] As discussed above, Defendant served extensive discovery requests on both parties, seeking various categories of patently irrelevant materials, which there was no basis to believe Mr. Soros or OSI would possess. Counsel for Mr. Soros and OSI nevertheless met and conferred with Defendant in good faith on multiple occasions over a period of three months, but Defendant never offered a valid basis for its discovery requests. Moreover, while that process was going on, these same issues were being litigated in the Fox Action—a fact that Defendant was well aware of. Rather than take guidance from that decision, however, Defendant instead sought a "second bit of the apple" and burdened this Court with a new motion (filed in contravention of this Court's rules),[8] in the hopes of obtaining a different result from that ordered in the Fox Action. Defendant's strategy is a waste of the Court's resources and unfairly taxing to these non-parties, who have been unfairly dragged into discovery in two actions they have nothing to do with. Defendant should not be permitted to spout conspiracy theories on the airwaves and then use those same statements to require non-parties to engage in extensive

---

[7]   In light of the standing orders governing the filing of motions in this case, *see* Dkt. 5, 153, each of which require prior judicial permission before any such filing, Mr. Soros and OSI have not filed their own motion seeking attorneys' fees from Defendant. But, for the reasons set forth herein, such relief is justified here. We respectfully request that because Defendant has filed the instant motion, the Court deem this response as sufficient to comply with the requirement for a pre-motion conference, as described in the December 21, 2023 Standing Order, at 2. Mr. Soros and OSI reserve their rights to file a motion for attorneys' fees under Fed. R. Civ. P. 54(d)(2), in the event the Court grants leave and permits such a motion to be filed.

[8]   *See* Standing Order for Civil Cases, Dkt. 5 ("In the event that a discovery dispute arises, the Parties shall make a good faith effort to resolve or narrow the areas of disagreement. If the Parties are unable to resolve the discovery dispute, then the Parties shall arrange for a telephonic conference with the Court... The Parties may not file a discovery motion without leave of Court."); *see also* Dkt. 153.

litigation at their own expense.  Under these circumstances, it is appropriate to award costs and

defenses to these non-parties.

**CONCLUSION**

The Court should deny Defendant's Motions to Compel in their entirety, including

Defendant's request for attorneys' fees.


Dated: Washington, DC
        January 5, 2024


By:     _/s/ Elizabeth J. Bower_
        Elizabeth J. Bower

WILLKIE FARR & GALLAGHER LLP
Elizabeth Bower
1875 K Street, N.W.
Washington DC 20006-1238
(202) 303-1252
EBower@willkie.com

WILLKIE FARR & GALLAGHER LLP
Benjamin P. McCallen (*pro hac vice pending*)
2029 Century Park East, Suite 2900
Los Angeles, CA 90067
(310) 855-3143
bmccallen@willkie.com

WILLKIE FARR & GALLAGHER LLP
Casey E. Donnelly (*pro hac vice pending*)
787 Seventh Avenue
New York, New York 10019
(212) 728-8000
cdonnelly@willkie.com