# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SMARTMATIC USA CORP., SMARTMATIC HOLDING B.V., AND SGO CORPORATION LIMITED, | |
| Plaintiffs, | Civil Action No. 1:21-cv-02900-CJN-MAU |
| v. | |
| HERRING NETWORKS, INC., D/B/A ONE AMERICA NEWS NETWORK, | |
| Defendant. | |

## DEFENDANT'S MOTION TO STRIKE OR DISMISS PLAINTIFFS' DAMAGE CLAIMS FOR RULE 16 VIOLATIONS AND DISCOVERY ABUSE OR ALTERNATIVELY, MOTION IN LIMINE TO PRECLUDE EVIDENCE OF ALLEGED DAMAGES

## <u>**TABLE OF CONTENTS**</u>

Page

TABLE OF AUTHORITIES ............................................................................................... iii

I.     INTRODUCTION ................................................................................. 1

II.    STATEMENT OF FACTS AND PROCEDURAL HISTORY............................ 7

    A.    Agreed Scheduling Order. .........................................................7

    B.    Plaintiffs' "Consolidated" Amended Disclosures after the close of discovery. .................................................................................8

        1.    Lost International Profits ................................................8

        2.    Domestic (United States) Lost Profits ............................9

        3.    Diminution in Enterprise Value ....................................10

        4.    Out-of-Pocket Expenses................................................10

III.    ARGUMENT AND AUTHORITIES .................................................... 11

    A.    Legal Standard .......................................................................11

    B.    Plaintiffs Violated the Scheduling Order ..................................11

    C.    Violation of Other Court Orders ..............................................13

    D.    Striking or Dismissing Plaintiffs' Damages Claim Is Proper Because Plaintiffs Failed to Support Their Alleged Damages Pursuant to the Federal Rules and the Court's Agreed-Upon Scheduling Order. .............14

        1.    Plaintiffs' "Omnibus" Responses to Discovery Requirements are Sufficiently Flagrant to Justify Dismissal of Claims Under Rule 37(c) and (d)(1)(A). ..................................15

        2.    Plaintiffs' Failure to Provide Computation of Damages Information Mandated by Rule 26(a) Initial Disclosures Requires Dismissal, Striking Damage Pleadings..........................18

    E.    Alternatively, Plaintiffs Must Be Precluded from Relying on Undisclosed Evidence of Their Claimed Damages. ..................................21

IV.    CONCLUSION AND PRAYER ......................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*303 Creative LLC v. Elenis*,
   600 U.S. 570 (2023) ................................................................................................1

*3M Co. v. Boulter*,
   842 F. Supp. 2d 85 (D.D.C. 2012) ........................................................................14

*\*Am. Prop. Constr. Co. v. Sprenger Lang Found.*,
   274 F.R.D. 1 (D.D.C. 2011) ...............................................................................3, 20

*Armenian Assembly of Am., Inc. v. Cafesjian*,
   746 F. Supp. 2d 55 (D.D.C. 2010) ........................................................................21

*Bergman v. District of Columbia*,
   182 F.R.D. 352 (D.D.C. 1998) ..............................................................................20

*Big Lots Stores, Inc. v. Luv N' Care, Ltd.*,
   302 F. App'x 423 (6th Cir. 2008) ..........................................................................21

*Burns v. Levy*,
   No. CV 13-898 (CKK), 2019 WL 6465142 (D.D.C. Dec. 2, 2019) .............16, 19, 20

*Circuitronix, LLC v. Kinwong Elec. (Hong Kong) Co.*,
   993 F.3d 1299 (11th Cir. 2021) .............................................................................21

*City of Rome v. Hotels.com L.P.*,
   549 F. App'x. 896 (11th Cir. 2013) ...................................................................19, 20

*Companhia Brasileira Carbureto de Calcio-CBCC v. Applied Indus. Materials Corp.*,
   No. CV 01-2678, 2013 WL 12310613 (D.D.C. May 29, 2013) .................................3

*Dellums v. Powell*,
   566 F.2d 231 (D.C. Cir. 1977) ..............................................................................12

*Design Strategy, Inc. v. Davis*,
   469 F.3d 284 (2d Cir. 2006) ..................................................................................21

*FAA. v. Cooper*,
   566 U.S. 284 (2012) .............................................................................................14

*G-K Props. v. Redevelopment Agency*,
   577 F.2d 645 (9th Cir. 1978) ................................................................................13

iii

*Green Edge Enters., LLC v. Rubber Mulch Etc., LLC*,
  620 F.3d 1287 (Fed. Cir. 2010)..................................................................................20

*Hoffman v. Constr. Protective Servs., Inc.*,
  541 F.3d 1175 (9th Cir. 2008) ............................................................................16, 17

*Hull v. Eaton Corp.*,
  825 F.2d 448 (D.C. Cir. 1987) (per curiam) ............................................................11

*Klayman v. Judicial Watch, Inc.*,
  6 F.4th 1301 (D.C. Cir. 2021)..................................................................................11

*Martin Marietta Corp. v. Evening Star Newspaper Co.*,
  417 F. Supp. 947 (D.D.C. 1976) ..............................................................................14

*Nat'l Hockey League v. Metro. Hockey Club, Inc.*,
  427 U.S. 639 (1976) (per curiam) ............................................................................11

*Nymbus, Inc. v. Chrome Fed. Credit Union*,
  No. 18-CV-25081, 2021 WL 8894791 (S.D. Fla. June 3, 2021) ................................6

*\*In re Pro. Hockey Antitrust Litig.*,
  63 F.R.D. 641 (E.D. Pa. 1974), *aff'd*, 427 U.S. 639 (1976) ......................15, 17, 18

*Smartmatic USA Corp., et al., v. Michael J. Lindell*,
  No. 0:22-cv-00098 (D. Minn. Jan. 18, 2022).............................................................2

*St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.*
  No. CIV.A.05 2115 CKK, 2007 WL 1589495 (D.D.C. June 1, 2007), *aff'd sub nom. Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217
  (D.C. Cir. 2011) ..........................................................................................................6

*Steinbuch v. Cutler*,
  463 F. Supp. 2d 4 (D.D.C. 2006) ..............................................................................20

*Stewart v. VMSB, LLC*,
  No. 19-cv-22593, 2020 WL 4501830 (S.D. Fla. July 27, 2020) ................................6

*W. Va. Bd. of Educ. v. Barnette*,
  319 U.S. 624 (1943)....................................................................................................1

*\*Walls v. Paulson*,
  250 F.R.D. 48 (D.D.C. 2008)..........................................................6, 15, 17, 18, 21

*\*Weisberg v. Webster*,
  749 F.2d 864 (D.C. Cir. 1984) ............................................................................12, 13

*Whetstone Candy Co. v. Nat'l Consumers League*,
    360 F. Supp. 2d 77 (D.D.C. 2004) ........................................................................14

*Xereas v. Heiss*,
    933 F. Supp. 2d 1 (D.D.C. 2013) ..........................................................................14

*Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001) ......................................................................16, 17

**State Cases**

*Robertson v. District of Columbia*,
    269 A.3d 1022 (D.C. 2022) ..................................................................................14

*Smartmatic USA Corp., et al., v. Fox Corp. et al.*,
    No. 151136/2021 (N.Y. Sup. Ct. Feb. 4, 2021) ..................................................2, 5

*Smartmatic USA Corp., et al., v. Newsmax Media, Inc.*,
    No. N21C-11-028 (Del. Super. Ct. Nov. 3, 2021) .............................2, 5, 8, 9, 20

**Rules**

Fed .R. Civ. P. 16(f) .....................................................................................................19

Fed. R. Civ. P. 16 ..................................................................................7, 11, 18, 21

Fed. R. Civ. P. 16(f)(1)(C) ...........................................................................................11

Fed. R. Civ. P. 26 ...............................................................................................6, 16, 21

Fed. R. Civ. P. 26(a) ..................................................................................16, 17, 18, 20

Fed. R. Civ. P. 26(a)(1) ..........................................................................................15, 16

Fed. R. Civ. P. 26(a)(1)(A)(i) ......................................................................................16

Fed. R. Civ. P. 26(a)(1)(A)(ii) .....................................................................................16

Fed. R. Civ. P. 26(a)(1)(A)(iii) ..............................................................................16, 17

Fed. R. Civ. P. 26(a)(1)(E) ...........................................................................................19

Fed. R. Civ. P. 26(a)(2) .................................................................................................19

Fed. R. Civ. P. 26(e) .........................................................................................6, 16, 18

Fed. R. Civ. P. 26(e)(1) .................................................................................................19

Fed. R. Civ. P. 26(e)(1)(A) ...........................................................................................16

Fed. R. Civ. P. 30(b)(6) ...................................................................................................4, 6

Fed. R. Civ. P. 33 .............................................................................................................16

Fed. R. Civ. P. 33(b)(3) ....................................................................................................15

Fed. R. Civ. P. 33(b)(5) ....................................................................................................15

Fed. R. Civ. P. 34 .............................................................................................................16

Fed. R. Civ. P. 37 ...........................................................................................7, 12, 20, 21

Fed. R. Civ. P. 37 (b)(2)(A)(ii)–(iv) .................................................................................11

Fed. R. Civ. P. 37(b)(2)(A)(iii) .........................................................................................11

Fed. R. Civ. P. 37(b)(2)(A)(v) ..........................................................................................11

Fed. R. Civ. P. 37(c) .........................................................................................................15

Fed. R. Civ. P. 37(c)(1) ........................................................................................16, 18, 21

Fed. R. Civ. P. 37(d)(1)(A) ...............................................................................................15

Defendant Herring Networks, Inc., d/b/a One America News Network ("OAN") moves to dismiss or strike Plaintiffs' damages claims for their violation of the Court's scheduling order of October 11, 2022 (ECF No. 42) ("Scheduling Order") and/or other pretrial orders and for discovery abuse. Alternatively, OAN moves for an order *in limine* regarding Plaintiffs' purported evidence of damages and causation ("Motion").

OAN requests a 60-minute hearing (30 minutes for each side) due to the massive and constitutionally suspect damages sought (over $2 billion[1]) which, if awarded, would silence this small, family owned, television channel, thus eliminating one more, albeit conservative, voice from what the United States Supreme Court has long held is the "fixed star of our constitutional constellation;" that is, the "marketplace of ideas" protected by the First Amendment. *See 303 Creative LLC v. Elenis*, 600 U.S. 570, 584–85 (2023) (quoting *W. Va. Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943)). The Motion is ripe for decision because, under the Scheduling Order, fact discovery closed on December 8, 2023, and Plaintiffs' January 19, 2024 expert disclosure deadline passed without their designation of any experts or production of any expert reports on damages (or any other topic).

## I.     INTRODUCTION

Three Plaintiffs, Smartmatic USA Corp. ("SMUSA"), Smartmatic International Holdings, B.V. ("SM Int.") and SGO Corporation, Ltd. ("SGO") began their quest for damages against OAN on November 3, 2021 to much fanfare and publicity alleging over $2 billion in damages purportedly caused by OAN's reporting and opinion commentary on the controversial 2020 Presidential Election. The complaint against OAN mirrored virtually identical damage claims

---

[1] *See* ECF. No. 1 at 190, ¶ 438.

against other, separately sued, alleged defamers including Fox Corp., Fox News, Lou Dobbs, Maria Bartiromo, Jeanine Pirro, Newsmax, Rudy Giuliani, Sidney Powell, Mike Lindell and My Pillow.[2]

SMUSA, one of the Plaintiffs, issued a press release which accompanied the OAN filing and stated that "[t]he damage to Smartmatic from this parallel universe of lies and disinformation has reverberated across the United States and in dozens of countries around the world . . . . The global repercussions for our company cannot be overstated."[3] An article posted the next day to the web site of Plaintiffs' lawyers announced the filing of the suit and quoted Plaintiffs' that "the election conspiracy theories the networks peddled have cost the company $2 billion in value."[4]

A year later, shortly after entry of the agreed Scheduling Order, SMUSA, SM Int. and SGO served their single consolidated "initial disclosures" and, as to damages, said that they did "not currently have sufficient information to provide a complete computation of its damages" but promised that the amount of damages "will be established through discovery and expert testimony," which, they said, will be disclosed "in compliance with the expert disclosure schedule

---

[2] *Smartmatic USA Corp., et al., v. Fox Corp. et al.*, No. 151136/2021 (N.Y. Sup. Ct. Feb. 4, 2021) (Fox Corp., Fox News, Giuliani, Powell, Dobbs, Bartiromo, and Pirro); *Smartmatic USA Corp., et al., v. Newsmax Media, Inc.*, No. N21C-11-028 (Del. Super. Ct. Nov. 3, 2021) (Newsmax); *Smartmatic USA Corp., et al., v. Michael J. Lindell*, No. 0:22-cv-00098 (D. Minn. Jan. 18, 2022) (Lindell and My Pillow, Inc.).

[3] Ex. 1-A, *Smartmatic Files Defamation Claims Against Newsmax and OANN*, SMARTMATIC (Nov. 3, 2021), https://www.smartmatic.com/us/media/smartmatic-files-defamation-claims-against-newsmax-and-oann/.

[4] Ex. 1-B, Khorri Atkinson, *Voting Tech Firm Smartmatic Sues OAN, Newsmax*, LAW360 (Nov. 3, 2021), https://www.beneschlaw.com/a/web/30677/8nKC4z/voting-tech-firm-smartmatic-sues-oan-newsmax-law360.pdf.

set forth in the Court's case management order."[5] They also promised to "make available … the documents and/or other evidentiary material … on which computation of the above category of damages [general compensatory damages, special damages, punitive damages, etc.] is based."[6]

Subsequently, Plaintiffs, by their own count, improperly dumped over 8 million pages of documents (OAN believes it to be over 10,000,000) on Defendant (ECF No. 155-1 at 4),[7] without differentiating which Plaintiff is the source of the documents or what documents, if any, relate to damages sought for which plaintiff.[8] Many of the documents produced that could conceivably relate to damages <u>predate</u> the 2020 election and OAN's coverage complained of by Plaintiffs[9] or

---

[5] Ex. 1-E, Pls' Initial Disclosures, at 9 (Nov. 3, 2022).

[6] *Id.* at 10.

[7] Plaintiffs "cannot hide their claim for damages in a stack of documents." *Companhia Brasileira Carbureto de Calcio-CBCC v. Applied Indus. Materials Corp.*, No. CV 01-2678, 2013 WL 12310613, at *4 (D.D.C. May 29, 2013). It is Plaintiffs' "burden to specifically identify, itemize, and document [their] claimed damages"— *not* the defendant's burden to "weed through" document production to determine what the Plaintiffs claim. *Am. Prop. Constr. Co. v. Sprenger Lang Found.*, 274 F.R.D. 1, 9–10 (D.D.C. 2011).

[8] We are confident that many of the dumped documents do not support damages (or anything else) such as the Spanish translations of lengthy novels and  other literary works such as *The Three Musketeers, Tarzan*, *The Names of Christ*, *The Lady of the Camellias, and The Woman with the Velvet Necklace, See, e.g.*, SMMT-OAN03050670 – SMMT-OAN03051101 *(The Three Musketeers)*; SMMT-OAN01165037 – SMMT-OAN01165243 (*Tarzan*); SMMT-OAN01162827 - SMMT-OAN01163024 (*The Woman with the Velvet Necklace*); SMMT-OAN01168093 - SMMT-OAN01168208 (*The Names of Christ*); SMMT-OAN00118287 - SMMT-OAN01181398 (*The Lady of the Camellias*). Plaintiffs also produced the full text of over 400 other books scattered throughout their production, none of which concern the 2020 (or any other) election. *See, e.g.,* SMMT-OAN03046314 – SMMT-OAN03060474; SMMT-OAN05781990 – SMMTOAN05806045; SMMT-OAN07695037 – SMMT-OAN7695772; SMMT-OAN08125143 – SMMT-OAN08128465; SMMT-OAN08758141 – SMMT-OAN08814644; SMMT-OAN10353919 – SMMT-OAN010354074; SMMT-OAN01161529 – SMMT-OAN01181843.

[9] *See, e.g.*, SMMT-OAN03184505; SMMT-OAN02432965; SMMT-OAN00950232.

relate to completely irrelevant topics such as one or more of the Plaintiffs' bid to manufacture and sell COVID-19 masks.[10] Some of the documents rebut damages.[11]

Plaintiffs also promised to "timely disclose expert opinions pursuant to the Federal Rules of Civil Procedure and any scheduling order entered by the Court," in response to a request for production of documents where OAN sought "documents and communications relating to the method, manner, procedure, or formulation by which You calculated Your damages."[12] No experts have been disclosed; no reports have been produced; and Plaintiffs' time to do so expired on January 19, 2024, the deadline under the Scheduling Order.

After the initial disclosures, another year passed without Plaintiffs providing any evidence of their damages (other then, possibly, documents hidden among the millions of pages of their document dump although what documents we identified demonstrated there was no damage) so, on September 13, 2023, Defendant served separate notices of depositions on each of the three Plaintiffs pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure to take place on three consecutive days beginning on October 3, 2023 in Plaintiffs' lawyers' office in Chicago. At least fourteen of the twenty-three Topics of Testimony focused on damages.[13] Plaintiffs moved for a protective order (ECF. No. 96) with respect to these depositions but did not (and to this day have

---

[10] *See, e.g.*, SMMT-OAN01003524; SMMT-OAN01461406; SMMT-OAN01462453; SMMT-OAN09299467 SMMT-OAN09299780.

[11] *See, e.g.*, SMMT-OAN00227682; SMMT-OAN00228649; SMMT-OAN00227907.

[12] *See* Ex. 1-U, Pls.' Omnibus Resps. & Objs. to Def.'s First Set of Reqs. for Produc. at 52 (Dec. 16, 2022) (Request No. 83).

[13] *See* Ex. 1-V, Notice of Rule 30(b)(6) Dep. to SGO Corp. Ltd.; Ex, 1-W, Notice of Rule 30(b)(6) Dep. to Smartmatic Int'l Holding B.V.; Ex. 1-X, Notice of Rule 30(b)(6) Dep. to Smartmatic USA Corp.

not) secured a ruling granting protection (even temporarily). Nor did the motion for protection challenge any of the Topics of Testimony. Nevertheless, prior to the scheduled dates, Plaintiffs advised OAN in writing that the 30(b)(6) witnesses would not appear on the noticed days and times (or any other proffered date or time).[14] In addition, even after lengthy meet and confer sessions, Plaintiffs refused to provide existing deposition transcripts of their damages experts in the *Fox* and *Newsmax* cases and would not provide the Plaintiffs' expert reports from those litigations[15] which are known to exist.[16]

Fact discovery closed on December 8, 2023. Plaintiffs prevented OAN from taking all but one deposition (of a former SMUSA employee) and neither attempted to nor took any depositions themselves. On January 19, 2024, Plaintiffs ignored the Scheduling Order's deadline to designate experts and provide expert reports despite repeated promises, over several years, to provide that very information which, they had represented, their unidentified experts were said to possess.

These failures have consequences. As judges from this Court and Circuit have repeatedly found:

> A Scheduling Order is 'intended to serve as the unalterable road map (absent good cause) for the remainder of the case' …. 'A scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril' …. Indeed '[d]isregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation and reward the indolent and the cavalier.'

---

[14] Ex. 1-Y, Email from Caitlin Kovacs, counsel for Plaintiffs, to John Edwards, counsel for OAN (Sept. 27, 2023). Plaintiffs did move for emergency relief on two subsequent occasions (ECF No. 105; ECF No. 113) and were granted a temporary stay by the Magistrate Judge. (Oct. 21, 2023 Minute Order; Nov. 11, 2023 Minute Order.)

[15] Ex. 1-U, Pls.' Omnibus Resps. & Objs. to Def.'s First Set of Reqs. for Produc. at 45 (Dec. 16, 2022) (Request No. 71); *see also* Ex. 1-P; Ex. 1-DD.

[16] *See* Ex. 1-DD.

*St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc.* No. CIV.A.05 2115 CKK, 2007 WL 1589495, \*16–17 (D.D.C. June 1, 2007), *aff'd sub nom. Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.,* 630 F.3d 217 (D.C. Cir. 2011) (citations omitted).

"[T]he notion that a party can avoid disclosing its damage computation until it can calculate damages with certainty, lacks merit." *See Nymbus, Inc. v. Chrome Fed. Credit Union*, No. 18-CV-25081, 2021 WL 8894791, at \*5 (S.D. Fla. June 3, 2021) ("[T]he obligation to supplement under Rule 26(e) 'does not extend discovery in perpetuity, rendering the Court's deadlines toothless'" (quoting *Stewart v. VMSB, LLC*, No. 19-cv-22593, 2020 WL 4501830 at \*2 (S.D. Fla. July 27, 2020)). "For pretrial deadlines to have any meaning, and for parties to adequately prepare for trial, a 'timely' supplemental disclosure of an entirely new and substantial category of damages, must occur — at a minimum — during the discovery period." *Id.* at \*4.

Plaintiffs apparently believe the Federal Rules are optional. They are not. *See Walls v. Paulson*, 250 F.R.D. 48, 52 (D.D.C. 2008). Plaintiffs' cavalier attitude demonstrates a callous disregard of responsibilities counsel owe to the Court, OAN, and other litigants in this Court. Their practices exemplify bad faith and have worked to OAN's harm and detriment.

Consequently, contrary to the express language of the Scheduling Order and Rules 26(a)(1)(iii), 33(1)(b), 34 (b)(A), and 36 (a)(4), Plaintiffs have failed and refused to provide (1) individual Rule 26 initial disclosures, (2) computations of each individual Plaintiff's damages, (3) individual sworn interrogatories, (4) individual responses to requests for production, and (5) individual responses to requests for admission. Plaintiffs also failed to appear and provide witnesses for three Rule 30(b)(6) depositions noticed by OAN primarily on the subject of damages**.**

The uncontested facts here are far more egregious than those found in the cited (and many other) cases and Defendant is entitled to relief by either striking or dismissing the damage claims

as authorized by Rules 16 and 37 of the Federal Rules of Civil Procedure. In the alternative, the Court should preclude introduction of any evidence of damages or causation for the reasons discussed.

## II.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

A detailed recitation of the pertinent facts is found in the Declaration of John K. Edwards filed contemporaneously herewith and is incorporated by reference as if repeated verbatim. For emphasis we report the following:

### A.   Agreed Scheduling Order.

On September 26, 2022, the Court ordered the parties to meet and confer by telephone to discuss issues identified by Local Civil Rule 16.3(c) and to propose a scheduling order. (*See* ECF No. 41 at 1.) Following that conference, the parties jointly proposed a scheduling order setting (among other dates) (a) May 31, 2023 as the deadline to serve document requests; (b) December 8, 2023 as the deadline for completion of fact discovery; and (c) January 19, 2024 as the deadline for Plaintiffs to designate expert witnesses and produce expert reports. (*See id.* at 4.)

On October 11, 2022, the Court entered the Scheduling Order adopting the parties' jointly proposed discovery deadlines, including the deadlines to serve document requests, complete fact discovery, and designate experts and produce expert reports. (*See* ECF No. 42 at 1.)[17]

---

[17] Plaintiffs moved to modify the Scheduling Order (*see* ECF No. 96 at 20; *see also* ECF No. 132 ("supplemental motion" to amend Scheduling Order)) and OAN opposed the motion. This Court has neither consented to nor granted a modification of the Scheduling Order. Nor should it. (*See* ECF No. 98.)

**B.  Plaintiffs' "Consolidated" Amended Disclosures after the close of discovery.**

On January 4, 2024, over a year after their Initial Disclosures failed to provide any computation of their damages—and nearly a month after the close of the fact discovery period under the Court's Scheduling Order—Plaintiffs served equally inadequate amended disclosures.[18] In their Amended Disclosures, Plaintiffs identified six new witnesses (not identified in their initial disclosures) who, they say, may have knowledge or discoverable information about Plaintiffs' damages.[19]

### 1.   Lost International Profits

With their Amended Disclosures, Plaintiffs produced an Excel spreadsheet purporting to explain their "estimated lost profits for 2021–2025 from lost, potential or reduced scope international opportunities."[20] In a letter accompanying their Amended Disclosures, Plaintiffs explained that the spreadsheet had been provided to a different news media organization (Newsmax) in separate litigation in the Superior Court of Delaware.[21] Plaintiffs claim that the international opportunities shown on the *Newsmax* Spreadsheet represent opportunities lost "as a direct and proximate result of" an undefined "disinformation campaign" that OAN allegedly "participated in" — but do not specify *which* claimed opportunities were purportedly lost as a

---

[18] Ex. 1, Decl. of John K. Edwards ¶ 27; Ex. 1-H, Pls.' Am. Initial Disclosures (Jan. 4, 2024) ("Amended Disclosures").

[19] Ex. 1-H at 7–8.

[20] *Id.* at 10.

[21] Ex. 1-I, Letter from J. Erik Connolly, counsel for Plaintiffs, to Chip Babcock & John Edwards, counsel for OAN, at 1 (Jan. 4, 2024); *see also* ECF No. 175-3 *("Newsmax* Spreadsheet"). It is unclear if Plaintiffs made any changes to the *Newsmax* Spreadsheet or if the spreadsheet is an exact copy of the document created for their claims against Newsmax.

direct and proximate result of the complained-of statements in this litigation (if any) or which Plaintiff, if any, suffered harm.[22] Plaintiffs assert that they are under "no obligation to provide OAN[]" with information about their purported lost international profits "until the disclosure of [their] damages report" but that they provided the *Newsmax* Spreadsheet "as a professional courtesy."[23] Plaintiffs, as we have noted, did not provide a damages report prior to the Court's Scheduling Order deadline.

Neither the Amended Disclosures nor the accompanying letter identify any discovery responses or documents produced in the litigation to substantiate Plaintiffs' "estimated lost profits." Plaintiffs have produced 2,483,354 documents in this litigation, consisting of 10,790,677 pages.[24]

### 2.   Domestic (United States) Lost Profits

Plaintiffs did not provide any computation of damages for any alleged lost profits in the U.S. nor do they identify any supporting documents. Rather, Plaintiffs promise that they "ha[ve] previously produced virtually all of this CRM [Customer Relationship Management] data to OAN[] (and will produce the remaining shortly)."[25] Further, Plaintiffs assert that "[t]he quantification of the full scope of lost profit damages in connection with the U.S. market are subject to expert review, analysis and discovery. [Plaintiffs'] expert will include his/her discussion

---

[22] *See* Ex. 1-H at 10; Ex. 1-I at 1.

[23] Ex. 1-I at 1.

[24] Ex. 1, Decl. of John K. Edwards ¶ 63.

[25] Ex. 1-H at 11.  After 5:00pm cst on February 2, 2024, just before this filing, Plaintiffs' counsel served a link purporting to be additional CMR documents, almost 2 months after the close of discovery.

of the damages related to the United States, including the methodology for quantifying those damages, in his/her report when it is served."[26] Again, no expert report was provided and the CRM does not appear to contain any information from which Plaintiffs' damages could be ascertained.

### 3.      Diminution in Enterprise Value

In their Initial Disclosures, Plaintiffs promised they would "disclose [their] computation of economic damages in compliance with the expert disclosure schedule set forth in the Court's case management order."[27] But Plaintiffs did not provide any additional information about their purported diminished business value in their Amended Disclosures, and this is not a proper measure of damages in any event. Instead, Plaintiffs promise that "the quantification of the full scope of damages will be the subject of expert discovery."[28]

### 4.      Out-of-Pocket Expenses

In their Amended Disclosures, Plaintiffs provided the same "in excess of" numbers for their purported out-of-pocket expenses as stated in their Complaint.[29] Plaintiffs do not identify any receipts, invoices, or other documentation to substantiate the amounts that Plaintiffs claimed they have already incurred. Instead, Plaintiffs promise that they "will substantiate these expenses through documents produced in this litigation (e.g., invoices for out-of-pocket expenses), testimony and/or expert review, analysis and discovery."[30]

---

[26] *Id.*

[27] *See* Ex. 1-E, Pls.' Initial Disclosures at 8 (Nov. 3, 2022).

[28] Ex. 1-H, Pls.' Am. Disclosures at 11 (Jan. 4, 2024).

[29] *Id.*

[30] *Id.*

### III.    ARGUMENT AND AUTHORITIES

#### A.    Legal Standard

Rule 16 (f)(1)(C) allows the Court to sanction "a party" who "fails to obey a Scheduling or other pretrial order." The rule gives the court discretion to issue "*any* just orders" including those authorized by Rule 37 (b)(2)(A)(ii)–(iv). *See* Fed. R. Civ. P. 16(f)(1)(C) (emphasis added). Rule 37 sections (b)(2)(A)(iii) and (v) authorize the court to strike pleadings or dismiss all or part of the case while section (ii) allows the Court to prohibit introduction of evidence. The Court's decision is reviewed for abuse of discretion. *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976) (per curiam) (affirming dismissal under Rule 37 because "[T]he question, of course, is not whether this Court or the Court of Appeals, would as an original matter have dismissed the action, it is whether the District Court abused its discretion in doing so."); *Hull v. Eaton Corp.*, 825 F.2d 448, 452 (D.C. Cir. 1987) (per curiam) ("The determination of an appropriate discovery sanction is left to the discretion of the trial court"); *Klayman v. Judicial Watch, Inc.,* 6 F.4th 1301, 1313 (D.C. Cir. 2021) (applying abuse of discretion standard to Rule 16 violation).

#### B.    Plaintiffs Violated the Scheduling Order

The Scheduling Order required the parties to complete fact discovery by December 8, 2023. Plaintiffs prevented Defendant from taking 30(b)(6) depositions on damages without obtaining any relief from the Court prior to the scheduled deposition dates and responded to written discovery with the repeated promise that damages would be revealed by their experts and their accompanying reports. The deadline for such disclosure and reports from Plaintiffs was January 19, 2024, and it passed without the designation of *any* experts on damages or the production of expert reports. As of this filing, Plaintiffs have failed to designate a single expert or provide any reports. Nor have they obtained any relief from the Court allowing their disobedience of the

Scheduling Order. There is no explanation for this conduct other than willful disobedience of the Court's Scheduling Order.

On the date suit was filed, through a press release and other public comment and within the Complaint itself, OAN was accused of causing billions in damages; yet, Plaintiffs' initial disclosures a year later said that "Smartmatic does not currently have sufficient information to provide a complete computation of damages."[31] Neither did Plaintiffs provide even an incomplete computation but merely copied the general allegations from the Complaint and promised that damages would "be established through discovery and expert testimony."[32]

In *Weisberg v. Webster*, 749 F.2d 864, 871 (D.C. Cir. 1984) the Court held that a Rule 37 dismissal of the case requires willfulness or at least gross negligence. There can be no argument here that Plaintiffs' noncompliance with court orders was anything less that willful. *See id*. The D.C. Circuit has noted the Supreme Court's admonition in *National Hockey League* against too much leniency toward the recalcitrant party, which the Court said, "has special significance in the case of interrogatories which are supposed to be served and answered without the need for judicial prompting." *Id*. (quoting *Dellums v. Powell*, 566 F.2d 231, 235 (D.C. Cir. 1977)). The Court in *Weisberg* continued, "if 'parties are allowed to flout their obligations choosing to wait and make a response until a trial court has lost patience with them, the effect will be to embroil trial judges in day-to-day supervision of discovery, a result directly contrary to the overall scheme of the federal discovery rules.' That appears to be exactly what happened here.'" *Id*. at 871 (quoting *Dellums*, 566 F.2d at 235–36).

---

[31] Ex. 1-E at 8, Pls' Initial Disclosures (Nov. 3, 2022).

[32] *Id.*

The *Wiesberg* Court looked to other cases in other circuits and determined that the appellants' behavior was on par with the sort of behavior which justified dismissal elsewhere. Citing the Ninth Circuit in *G-K Properties v. Redevelopment*, where the court upheld the dismissal of the case, the plaintiff was ordered on October 28, 1975 to produce documents and did so; however, four months later they had not completely responded to the court's order. *Id.* On February 10, 1976, the defendants moved for dismissal as a sanction for failure to comply with the discovery order. Three days prior to the hearing the plaintiff tendered the request documents but the court rejected the tender and dismissed the case "to protect the integrity of its order." *See id.* at 872. The Ninth Circuit said "the trial court acted properly" and added:

> We encourage such orders. Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents. It is even more important to note, in this era of crowded dockets, that they also deprive other litigants of an opportunity to use the courts as a serious dispute-settlement mechanism.

*Id.* (quoting *G-K Props. v. Redevelopment Agency*, 577 F.2d 645, 647 (9th Cir. 1978)).

## C.    Violation of Other Court Orders

Plaintiffs further repeatedly violated this Court's orders regarding pre-trial motion practice. Rather than follow the Court's Standing Order (ECF No. 5 ¶ 11), which provides that "[t]he Parties may not file a discovery motion without leave of Court," Plaintiffs bypassed the requirement and simply filed motions on this Court's docket where they languished; undoubtedly, in whole or in part, because the Court had not been alerted to the existence of a controversy. (*See also* ECF No. 153 at 2 (reiterating leave-of-court requirement).)

Plaintiffs further violated the Court's Standing Order requiring that requests for extensions of time be filed four days prior to the date of the deadline. In violation of the Standing Order, Plaintiffs moved for an extension on the day of the Court's deadline to serve additional requests

for production of documents and then, two months later, without waiting for Court approval served 37 additional requests for production to OAN anyway.

**D.   Striking or Dismissing Plaintiffs' Damages Claim Is Proper Because Plaintiffs Failed to Support Their Alleged Damages Pursuant to the Federal Rules and the Court's Agreed-Upon Scheduling Order.**

In the District of Columbia, proof of harm caused by the defendant's statements is an essential element of a defamation claim. *Robertson v. District of Columbia*, 269 A.3d 1022, 1031 (D.C. 2022). Corporate plaintiffs (like Plaintiffs here) may obtain only special damages for alleged defamation. *Martin Marietta Corp. v. Evening Star Newspaper Co.*, 417 F. Supp. 947, 955 (D.D.C. 1976). "'[S]pecial damages,' are limited to 'actual pecuniary loss, which must be specially pleaded and proved.'" *Xereas v. Heiss*, 933 F. Supp. 2d 1, 19 (D.D.C. 2013) (quoting *FAA. v. Cooper*, 566 U.S. 284, 295 (2012)). In the defamation context, corporate plaintiffs' special damages are traditionally limited to lost profits suffered as a result of the defamation. *Martin Marietta*, 417 F. Supp. at 955.

Injurious falsehood claims likewise require proof of pecuniary harm to the plaintiff proximately caused by the defendant's false statements. *Whetstone Candy Co. v. Nat'l Consumers League*, 360 F. Supp. 2d 77, 81 (D.D.C. 2004). Unlike defamation, injurious falsehood encompasses injury not to the plaintiff's reputation but to "the plaintiff's interest in, or the quality of, the plaintiff's property." *Id.* at 81 n.5. The plaintiff's alleged harm must be the "natural and direct result" of the defendant's conduct. *3M Co. v. Boulter*, 842 F. Supp. 2d 85, 118 (D.D.C. 2012).

1.  **Plaintiffs' "Omnibus" Responses to Discovery Requirements are Sufficiently Flagrant to Justify Dismissal of Claims Under Rule 37(c) and (d)(1)(A).**

Simply put, the Federal Rules require a party to provide individual responses. *See* Fed. R. Civ. P. 26(a)(1); 33(b)(1)–(2), (5); 34(b)(2)(A)–(B); 36(a)(1), (4). This is particularly true in a complex case such as this where three separate corporate entities, organized, in whole or in part, under the laws of foreign countries, claim billions of dollars in damages caused by allegedly defamatory statements from one small media company, especially when Plaintiffs have made identical damage claims against other, much larger, media organizations. Plaintiffs' "omnibus" responses do not provide any individualized or itemized answers despite the particularized information required of them. *See In re Pro. Hockey Antitrust Litig.*, 63 F.R.D. 641, 645 (E.D. Pa. 1974) (exercising discretion in dismissing litigation where plaintiffs provided "all-encompassing" unsigned and unsworn interrogatory answers), *aff'd*, 427 U.S. 639, 642 (1976) (holding district court judge did not abuse his discretion in finding bad faith and concluding extreme sanction of dismissal was appropriate).

Here, as in *In re Professional Hockey*, Plaintiffs' omnibus answers to interrogatories fall drastically short of any minimal good faith compliance because they do not provide individual answers as to each Plaintiff, some are unsworn and unsigned, and the documents adverted to therein, in lieu of answers, were wholly unspecified. Rule 33(b)(5) could not be more clear: "the person who makes the answers must sign them," and Rule 33(b)(3) requires "[e]ach interrogatory must be answered separately and fully in writing under oath." The requirement "is critical because 'interrogatories serve not only as a discovery device but as a means of producing admissible evidence; there is no better example of an admission of a party opponent, which is admissible because it is not hearsay, than an answer to an interrogatory." *Walls v. Paulson*, 250 F.R.D. 48, 52

(D.D.C. 2008). Accordingly, Plaintiffs' interrogatory answers fall drastically short of any minimal good faith compliance with Rule 33.

Plaintiffs' omnibus Rule 26 initial disclosures and amended Rule 26(a) disclosures also fail to provide individual responses in contravention of the rule. Federal Rule of Civil Procedure 26(a)(1) could not be more clear: "*a party must*, without awaiting a discovery request, provide other parties" the requisite information, including (i) the name … of each individual likely to have discoverable information -- along with the subjects of that information …; (ii) a copy or description by category and location — of *all documents….that the disclosing party* has in its possession custody or control and *may use to support its claims or defense*s … ; and (iii) a *computation by each category of damages* claimed *by the disclosing party* – who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material…*on which each computation is based, including materials bearing on the nature and extent of the injuries suffered* … . Fed. R. Civ. P. 26(a)(1)(A) (i), (ii) and (iii) (emphasis added).

Rule 26(e)(1)(A) also requires disclosing parties supplement their prior disclosures "in a timely manner" when the prior response is "incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." *See Hoffman v. Constr. Protective Servs., Inc*., 541 F.3d 1175, 1179–80 (9th Cir. 2008)[33] (quoting *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001)) (excluding opt-out plaintiffs' damages claims where damage calculations were not disclosed for each individual plaintiff). Having violated Rule 26(e), Plaintiffs are subject to sanction under Rule 37(c)(1), which contains

---

[33] *Hoffman v. Constr. Protective Services, Inc*., 541 F.3d 1175, 1179–80 (9th Cir. 2008) is cited in *Burns v. Levy*, No. CV 13-898 (CKK), 2019 WL 6465142, at *24 (D.D.C. Dec. 2, 2019).

an "automatic and mandatory exclusion sanction unless they plaintiff has shown that the violation is either substantially justified or harmless. *Walls v. Paulson*, 250 F.R.D. 48, 53 (D.D.C. 2008).

In *Hoffman v. Construction Protective Services, Inc.*, 541 F.3d 1175, 1179–80 (9th Cir. 2008), for example, the Ninth Circuit rejected opt-out plaintiffs' argument that collective Rule 26(a) computation of damages disclosures were sufficient. *See id.* The court held Rule 26(a)(1)(A)(iii) mandated disclosure by *each party* of a computation of each category of damages claimed and, further, that the plaintiffs failure to disclose was not justified. *Id.* The court also found the failure to disclose was not harmless because "[l]ater disclosure of damages would have most likely required the court to create a new briefing schedule and perhaps re-open discovery, rather than simply set a trial date. Such modifications to the court's and the parties' schedules supports a finding that the failure to disclose was not harmless." *Id.* at 1180. Noting "[t]he implementation of the sanction is appropriate 'even when a litigant's entire cause of action ... [will be] precluded,'" the court held the district court acted within its discretion when it precluded presentation of undisclosed evidence of damages. *Id.* at 1180 (alterations in original) (quoting *Yeti*, 259 F.3d at 1106).

Here, as in *In re Professional Hockey*, and *Hoffman*, complete individualized disclosure by each Plaintiff of all responsive and relevant information bearing on essential interrogatories[34] and the Rule 26(a) disclosures pertaining to damages is critical; otherwise, OAN will be afforded no opportunity to prepare its defense, "particularly when one of the key elements of that defense will be predicated upon negating or reducing the type and amount of damages which [P]laintiffs contend are directly attributable to the conduct of [OAN]." *In re Pro. Hockey*, 63 F.R.D. at 655.

---

[34] *E.g.*, Ex 1-L (Interrogatory Nos. 4 and 8).

"We know that each and every day some corporations fail solely due to their own inadequate financial capitalization [or product's success] regardless of whether . . . the plaintiffs' failures were attributable to . . . defendants' purported [conduct]." *Id.* at 655. "Effective discovery is exceedingly vital so that defendants are enabled to prepare their cases *before* trial as opposed to being required to wait until the actual trial before the weaknesses or the strengths of the opposition's cases become known or are made apparent." *Id.* at 655–56. That is the case here. Thus, the prejudice and harm occasioned OAN by Plaintiffs' conduct is apparent.

Furthermore, reopening discovery at this juncture, more than two years after suit was filed in order to cure this prejudice, will cause additional harm to OAN in terms of the monumental cost of time and money beyond that already spent. Given the breadth and scope of Plaintiffs' transgressions, Plaintiffs will essentially be given a fresh start should the Court choose to reopen discovery at this late date.

> **2.** **Plaintiffs' Failure to Provide Computation of Damages Information Mandated by Rule 26(a) Initial Disclosures Requires Dismissal, Striking Damage Pleadings.**

Here, Plaintiffs' "omnibus" responses not only fail to disclose Plaintiffs' *individual* responses to the requisite categories of information but they also fail to provide damages computations and supporting documents as required under Rule 26(a).[35] As noted above, the Amended Disclosures were served after the December 8, 2023 close of discovery as set by this Court's Scheduling Order and are untimely under Rule 26(e) (must be made in timely manner). Consequently, they violate Rule 37(c)(1) and, therefore, should be excluded. *Walls*, 250 F.R.D. at 53. Rule 16 also authorizes the court to impose sanctions if a party "fails to obey a scheduling or

---

[35] *See* Exs. 1-E, 1-I, Pls.' Initial & Am. Disclosures.

pretrial order." Fed .R. Civ. P. 16(f); *Burns*, 2019 WL 6465142 at \*25 (excluding lost income damages); *see also City of Rome v. Hotels.com L.P.*, 549 F. App'x. 896, 904-05 (11th Cir. 2013) (upholding exclusion of category of "back tax damages" because plaintiff and their experts did not provide computation of damages, and rejecting argument that the failure to comply with discovery obligations was justified because they did not have the data).

Moreover, Plaintiffs' omnibus initial disclosures list six categories of damages but no computations whatsoever.[36] Fed. R. Civ. P. 26(e)(1) also requires disclosures must be supplemented or corrected in a timely manner. Plaintiffs' disclosures were not supplemented until January 4, 2024, more than fourteen months later, after the initial disclosures and after the discovery deadline had passed. Even so they fair no better. In their Initial Disclosures and again in their untimely Amended Initial Disclosures, Plaintiffs reiterate:

> Smartmatic does not currently have sufficient information to provide a complete computation of its damages. The amount of damages adequate to compensate Smartmatic for Defendant's defamatory statements will be established through discovery and expert testimony. *Smartmatic will disclose its computation of economic damages in compliance with the expert disclosure schedule set forth in the Court's case management order.*[37]

This is grossly inadequate. Rule 26(a)(1)(E) states "a party is not excused from making its disclosures because it has not fully investigated the case." Fed. R. Civ. P. 26(a)(1)(E). Moreover, despite the Court's January 19, 2024 deadline to disclose Plaintiffs' experts, they have not served Rule 26(a)(2) disclosures.

Furthermore, the supplemental disclosures refers to an Excel spreadsheet produced in

---

[36] *See* Ex. 1-E, Pls.' Initial Disclosures dated November 3, 2022: III. Computation of Damages.

[37] *See* Ex. 1-I (emphasis added).

*separate litigation* against Newsmax (*Smartmatic USA Corp., et al., v. Newsmax Media, Inc.*, No. N21C-11-028 (Del. Super. Ct. Nov. 3, 2021)) which, they say, shows "Smartmatic's estimated lost profits for 2021–2025 from lost, potential **or** reduced scope international opportunities." Nothing more. Once again, there are no *computations of each category of damages* allegedly caused by OAN's alleged conduct.[38] The response is patently inadequate; it consists of nothing more than a generalized, non-exhaustive list of categories of damages and excuses for failing to provide a complete response. *See Am. Prop. Const. Co. v. Sprenger Lang Found.,* 274 F.R.D. 1, 9 (D.D.C. 2011); *see also Steinbuch v. Cutler*, 463 F. Supp. 2d 4, 12 (D.D.C. 2006) (response that "specifics [as to damages] unknown at this moment" held "utterly deficient"); *Bergman v. District of Columbia*, 182 F.R.D. 352, 359 (D.D.C. 1998) (response that damages were identified in the complaint and that party would supplement its response after consultation with an expert held insufficient).

It is Plaintiffs' burden to specifically identify, itemize, and document their damages, and they cannot shift the burden to OAN to "weed through the stack of invoices without explanation or clarification to determine what exactly Plaintiffs are claiming in this matter." *Am. Prop. Const.*, 274 F.R.D. at 9–10. For the foregoing reasons, Plaintiffs' disclosures are patently inadequate and under Rule 26(a) and (3) and pursuant to Rule 37 evidence relating to any of the damages listed in the Complaint must be excluded. *See also Burns*, 2019 WL 6465142, at *18; *see also City of Rome*, 549 F. App'x at 904–05 (upholding exclusion of category of "back tax damages" because plaintiffs and their experts did not provide computation of damages, and rejecting argument that failure to comply with discovery obligations was justified because they did not have data); *Green Edge*

---

[38] *See* Ex. 1-I Pls.' Am. Disclosures at III. Computation of Damages.

*Enters., LLC v. Rubber Mulch Etc., LLC*, 620 F.3d 1287, 1304 (Fed. Cir. 2010) (upholding district court's exclusion of evidence relating to "exemplary damages" because plaintiff did not present computation of damages); *Big Lots Stores, Inc. v. Luv N' Care, Ltd.*, 302 F. App'x 423, 429–30 (6th Cir. 2008) (upholding trial court's preclusion of evidence relating to lost profits and storage costs because plaintiff repeatedly did not include damages in disclosures or discovery responses and failed to provide computations); *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295–96 (2d Cir. 2006) (upholding district court's exclusion of evidence relating to "lost profits" category of damages because plaintiff neither disclosed those damages in disclosures nor provided computation of lost profits damages).

For all of these reasons, the Court should strike or dismiss Plaintiffs' claim for damages based on lack of sufficient proof of pecuniary harm.

### E. Alternatively, Plaintiffs Must Be Precluded from Relying on Undisclosed Evidence of Their Claimed Damages.

In the alternative, Plaintiffs' repeated failures to adequately disclose computations of their damages within the deadlines established by the Court's Scheduling Order violate both the letter and the spirit of Rule 26. And both Rule 37 and Rule 16 provide that precluding a party from introducing certain evidence or supporting certain claims is an appropriate sanction for such failure. *See Armenian Assembly of Am., Inc. v. Cafesjian*, 746 F. Supp. 2d 55, 66 (D.D.C. 2010); *see also* Fed. R. Civ. P. 37(c)(1); LCvR 26.2(a). "This automatic sanction provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence, whether at a trial, at a hearing, or on a motion" by the Court's deadline. Fed. R. Civ. P. 37 advisory committee's note to 1993 amendment. The sanction is both "automatic and mandatory." *Armenian Assembly*, 746 F. Supp. 2d at 66 (quoting *Walls*, 250 F.R.D. at 53); *see also Circuitronix, LLC v. Kinwong Elec. (Hong Kong) Co.*, 993 F.3d 1299, 1307–08 (11th Cir. 2021) (no abuse of discretion

for district court to exclude lost profit damages after plaintiff failed to disclose computations of its lost profits).

Given Plaintiffs' repeated violation of the Court's Scheduling Order and the resulting harm to OAN, such a sanction is warranted here.

## IV.    CONCLUSION AND PRAYER

Plaintiffs brought claims for actual damages of over $2 billion against this small, family-run media company, and repeatedly promised that they would substantiate these claims through expert testimony. Plaintiffs agreed to a scheduling order, which the Court later adopted, in which fact-discovery closed on December 8, 2023, and their expert disclosures and reports were due on January 19, 2024. Yet, Plaintiffs failed to permit depositions of its witnesses, failed to adequately disclose individualized computation of damages, and failed to disclose a single expert or produce any expert reports. With those deadlines now passed, Plaintiffs cannot proceed to trial without sufficient evidence of actual damages for a jury to find in their favor. OAN respectfully requests that the Court strike or dismiss Plaintiffs claim of damages in support of their claims for defamation and injurious falsehood — or, in the alternative, order *in limine* that Plaintiffs be precluded from introducing any damages evidence including any forthcoming expert testimony or evidence.

Dated: February 2, 2024                    By:    /s/ *Charles L. Babcock*

**JACKSON WALKER L.L.P.**
Charles L. Babcock
(admitted *pro hac vice*)
Nancy W. Hamilton
(admitted *pro hac vice*)
John K. Edwards
(admitted *pro hac vice*)
Joel R. Glover
(admitted *pro hac vice*)
Bethany Pickett Shah
(admitted *pro hac vice*)
1401 McKinney Suite 1900
Houston, TX 77010
Tel: (713) 752-4200
Fax: (713) 308-4110
cbabcock@jw.com
nhamilton@jw.com
jedwards@jw.com
jglover@jw.com
bpickett@jw.com

Jonathan D. Neerman
D.C. Bar No. 90003393
Carl C. Butzer
(admitted *pro hac vice*)
Minoo Sobhani Blaesche
(admitted *pro hac vice*)
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Tel: (214) 953-5664
Fax: (214) 661-6899
jneerman@jw.com
cbutzer@jw.com
mblaesche@jw.com

**BOYDEN GRAY PLLC**
R. Trent McCotter
D.C. BAR NO. 1011329
801 17th St NW, #350
Washington, DC 20006
(202) 706-5488
tmccotter@boydengray.com

*Counsel for Defendant*

23

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of February 2024, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will electronically mail notification of the filing to all counsel of record who are registered ECF users.

/s/ *Charles L. Babcock*
Charles L. Babcock