# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SMARTMATIC USA CORP., <br> SMARTMATIC HOLDING B.V., AND <br> SGO CORPORATION LIMITED, <br><br> Plaintiffs, <br> v. <br><br> HERRING NETWORKS, INC., D/B/A <br> ONE AMERICA NEWS NETWORK, <br><br> Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 1:21-cv-02900-CJN-MAU |

## DECLARATION OF JOHN K. EDWARDS IN SUPPORT OF OAN'S MOTION TO STRIKE OR DISMISS PLAINTIFFS' DAMAGE CLAIMS FOR RULE 16 VIOLATIONS AND DISCOVERY ABUSE OR ALTERNATIVELY, MOTION IN LIMINE TO PRECLUDE EVIDENCE OF ALLEGED DAMAGES

I, John K. Edwards, declare as follows:

1.      I am over the age of 21 and competent to make this declaration. I am an attorney at the law firm of Jackson Walker LLP, and am counsel for Defendant Herring Networks, Inc., d/b/a One America News Network ("OAN"). I have personal knowledge of the facts stated in this declaration and those facts are true and correct. I submit this Declaration in support of OAN's Motion to Strike or Dismiss Plaintiffs' Damage Claims for Rule 16 Violations and Discovery Abuse or Alternatively, Motion in Limine to Preclude Evidence of Alleged Damages.

**THREE PLAINTIFFS SUE OAN FOR ALLEGED DAMAGES IN THE BILLIONS.**

**Plaintiffs' Complaint– November 2021.**

2.      More than two years ago, on November 3, 2021, three companies filed this lawsuit against OAN. *See* ECF No. 1.[1]

---

[1] All references in this Declaration to pages on the Court's docket are references to the ECF pages.

3.     Plaintiffs allege that Plaintiff Smartmatic USA Corp. ("Smartmatic USA") is a Delaware corporation based in Florida that "provided election technology and software for Los Angeles County" in the 2020 U.S. Presidential election. *Id.* ¶ 10.

4.     Plaintiffs allege Plaintiff Smartmatic International Holding B.V. ("Smartmatic International") is a Dutch corporation based in Amsterdam that owns "multiple companies", "in [the] United States (Smartmatic USA Corp.), Barbados, Australia, United Kingdom, Panama, Haiti, Belgium, Singapore, Netherlands, Mexico, Ecuador, Brazil, Estonia, Taiwan, and the Philippines as well as branches in Colombia, Argentina, Honduras, Pakistan, Italy, Jamaica, and El Salvador." *Id.* ¶ 10 & n.2.

5.     Plaintiffs allege Plaintiff SGO Corporation Limited ("SGO Corporation") is a United Kingdom company based in the United Kingdom, and that it is the parent company of Smartmatic International. *Id.* ¶ 12.

6.     Plaintiffs allege that "[e]ach of the companies owned by SGO Corporation" was "injured as a result of OANN's disinformation campaign … in the United States and throughout the world." *Id.* ¶ 13.

7.     In the Complaint, Plaintiffs refer to all three Plaintiffs together throughout as "Smartmatic." *Id.*

8.     For example, Plaintiffs claim that OAN's alleged conduct "was a substantial cause of *Smartmatic's* diminished business value and prospects, particularly in the United States." *Id.* ¶ 434 (emphasis added.)

9.     In the Complaint, Plaintiffs also contend that OAN's alleged conduct "substantially contributed to a 'no win' situation for *Smartmatic*" that "has significantly diminished *Smartmatic's* business value and prospects." *Id.* ¶¶ 436, 438 (emphasis added). Plaintiffs further allege that

"[p]rior to the 2020 U.S. election, based on its historical business and pipeline, *Smartmatic's* business was valued in excess of $3.0 billion based on a modest multiplier," that the "general and widespread publication and distribution of OANN's defamatory statements about *Smartmatic* were a substantial cause of a portion of this business valuation decline." *Id.* ¶ 438 (emphasis added). The "Smartmatic[] business pipeline," Plaintiffs allege, "includes sales and opportunities through subsidiaries wholly-owned by Smartmatic International Holding B.V. in the United States, Barbados, Australia, United Kingdom, Panama, Haiti, Belgium, Singapore, Netherlands, Mexico, Ecuador, Brazil, Estonia, Taiwan, and the Philippines as well as branches in Colombia, Argentina, Honduras, Pakistan, Italy, Jamaica, and El Salvador." *Id.* ¶ 438 & n.21.

    10.    In their prayer for relief, Plaintiffs seek the following relief for "Smartmatic":

| | |
|---|---|
| a. | Compensatory damages in an amount to be determined at trial; |
| b. | Actual, consequential and special damages in an amount to be determined at trial; |
| c. | Punitive damages; |
| d. | Reasonable and necessary attorneys' fees; |
| e. | Reasonable and necessary costs of the suit; |
| f. | Prejudgment and post-judgment interest at the highest lawful rates; and |
| g. | Such other and further relief as this Court deems just and appropriate. |

*Figure 1: Plaintiffs' Prayer for Relief (ECF No. 1 ¶ 469)*

**Plaintiffs and their lawyers claim to the press that "Smartmatic" suffered billions in damages.**

11.     On the same day the Complaint was filed, Smartmatic USA, one of the Plaintiffs, issued a press release from its Boca Raton, Florida office, stating that "[t]he damage to Smartmatic from this parallel universe of lies and disinformation has reverberated across the United States and in dozens of countries around the world . . . . The global repercussions for our company cannot be overstated." Exhibit 1-A, *Smartmatic Files Defamation Claims Against Newsmax and OANN*, SMARTMATIC (Nov. 3, 2021), https://www.smartmatic.com/us/media/smartmatic-files-defamation-claims-against-newsmax-and-oann/.

12.     An article posted the next day to the website of Plaintiffs' lawyers announced the filing of the suit and stated that "the election conspiracy theories the networks [Newsmax was also sued the same day] peddled have cost the company $2 billion in value." Exhibit 1-B, Khorri Atkinson, *Voting Tech Firm Smartmatic Sues OAN, Newsmax*, LAW360 (Nov. 3, 2021), https://www.beneschlaw.com/a/web/30677/8nKC4z/voting-tech-firm-smartmatic-sues-oan-newsmax-law360.pdf.

13.     On April 21, 2023, Plaintiffs' lead lawyer, Erik Connolly, gave an interview to Don Lemon on CNN. Mr. Connolly explained that Plaintiffs "are looking for recovery of the enterprise value loss." He also described the alleged damages as follows:

> Whenever you are measuring these types of damages, you have to look at it as the total opportunities that we lost. And the opportunities that we lost, and this is what we are experiencing day after day, is global. We are suffering these consequences in **Asia**, we are suffering these consequences in **Africa**, we are suffering these consequences in **South America**, and in **Europe**. So, when you take into consideration damages, you look at the overall damage done to us globally, and you look at how it impacted our enterprise value. . . . Smartmatic, before this disinformation, had a global reputation as being the election technology company that you go to. . . . Now, their reputation globally, is a company that has rigged elections.

4

Exhibit 1-C (emphasis added), *Transcripts: CNN This Morning*, CNN, at 11 (Apr. 21, 2023), https://transcripts.cnn.com/show/ctmo/date/2023-04-21/segment/05 (transcript of Don Lemon interview of Erik Connolly, counsel for Plaintiffs).

### Plaintiffs allege to OAN and the Court that "Smartmatic" suffered billions in damages.

14.    On April 15, 2022, Plaintiffs told the Court that OAN's alleged conduct "harmed Smartmatic's reputation and made it less likely that individuals responsible for selecting voting systems . . . would work with Smartmatic, resulting in a decline in Smartmatic's business valuation. (*See, e.g.*, *id.* ¶¶ 434-438.)." ECF No. 22 at 10.

15.    In a letter dated October 10, 2023, Plaintiffs' attorneys informed OAN that Plaintiffs are seeking "$2.7 billion in damages." Ex. 1-D, Letter from Olivia Sullivan, counsel for Plaintiffs, to Carl C. Butzer, counsel for OAN, at 11 (with OAN's subsequent interlineated responses in red). A true and correct copy of a letter OAN received from Olivia Sullivan, counsel for Plaintiffs, with OAN's subsequent interlineated responses in red (excluding exhibits), is attached as Exhibit 1-D. My colleague, Carl C. Butzer, sent this interlineated version to Olivia Sullivan, counsel for Plaintiffs, on October 12, 2023, and I was copied on this correspondence.

16.    On December 22, 2023, Plaintiffs argued to the Court that "Smartmatic lost business in the United States and across the world. It has lost hundreds of millions in profits and over $1 billion in lost enterprise value." ECF No. 155 at 12.

**AFTER TWO YEARS, PLAINTIFFS HAVE FAILED TO PROVIDE SUFFICIENT INFORMATION ABOUT THEIR CLAIMED DAMAGES IN THEIR RULE 26(a)(1)(A) DISCLOSURES.**

### Plaintiffs' Initial Disclosures – November 2022.

17.    On November 3, 2022, one year after the case was filed, Plaintiffs served their Rule 26(a)(1) Disclosures ("Initial Disclosures"). A true and correct copy of Plaintiffs' Initial

Disclosures is attached as <u>Exhibit 1-E</u>. In the Initial Disclosures, Plaintiffs again referred to all three Plaintiffs throughout as "Smartmatic."

18.     In Section I of their Initial Disclosures, Plaintiffs identified nine individuals as being likely to have discoverable information that Plaintiffs believed they may use to support their claim for damages: Eduardo Correia, "Chief Technical Officer, Smartmatic"; Fernando Hernandez, "Vice President, Voting Systems, Smartmatic"; James Long, "U.S. Voting Systems Director, Smartmatic"; Elie Moreno, "Global Services Vice President, Smartmatic"; Antonio Mugica, "Chief Executive Officer, Smartmatic"; Pedro Mugica, "Global Sales President, Smartmatic"; Roger Piñate Jr., "President, Smartmatic"; Roger Vicente Piñate, "Chief Financial Officer, Smartmatic"; and Samira Saba, "Communications Director, Smartmatic." *Id.* at 2–6. Plaintiffs did not identify which of the Plaintiff entities, if any, were connected to these individuals as officers, directors, or otherwise, nor on whose behalf they could testify.

19.     In Section II of their Initial Disclosures, Plaintiffs identified eight categories of documents they may use to support their claims – all of which would be "in the possession, custody, and control of Smartmatic." *Id.* at 7–8. These categories included documents and communications relating to negotiations and contracts with customers who purchased or licensed products and/or software; bids and proposals for potential projects; financial records, including audited and unaudited financial statements and other accounting records; business plans, budgets, and projections; sales and marketing, including advertisements, marketing emails, and similar communications; and costs expended to mitigate the impact of OAN's allegedly defamatory statements. *Id.*

20.     At Section III, Computation of Damages, Plaintiffs claimed they did "not currently have sufficient information to provide a complete computation of [their] damages" and provided

only a general list of categories of damages that mirrored the "Prayer for Relief" in the Complaint
filed a year earlier:

| | |
|---|---|
| a. | Compensatory damages in an amount to be determined at trial; |
| b. | Actual, consequential and special damages in an amount to be determined at trial; |
| c. | Punitive damages; |
| d. | Reasonable and necessary attorneys' fees; |
| e. | Reasonable and necessary costs of the suit; |
| f. | Prejudgment and post-judgment interest at the highest lawful rates; and |
| g. | Such other and further relief as this Court deems just and appropriate. |

*Figure 2: Plaintiffs' Prayer for Relief (ECF No. 1 ¶ 469) – November 2021*

- general compensatory damages in an amount to be proven at trial;
- actual, consequential, and special damages, including Smartmatic's lost profits, diminution in enterprise value, and costs incurred to attempt to mitigate the harm caused by Defendants' defamatory statements;
- punitive damages due to Defendants' willful behavior;
- pre-judgment and post-judgment interest;
- Smartmatic's expenses and costs, including attorney's fees; and
- such other and further relief that the Court deems just and appropriate.

*Figure 3: Plaintiffs' Initial Disclosures, Ex. 1-E at 8–9 –November 2022*

One year into the case, this was the entirety of Plaintiffs' disclosure of damages. No computations
were provided.

21.     Plaintiffs added that the amount of purported actual damages:

> will be established through discovery and expert testimony. Smartmatic will disclose its computation of economic damages in compliance with the expert disclosure schedule set forth in the Court's case management order.

*Id.* at 8.

22.     Plaintiffs also stated in their Initial Disclosures that they would "make available for inspection and copying the documents and/or other evidentiary material, not privileged or protected from disclosure, on which computation of the above categories of damages is based." *Id.* at 9.

23.     On October 9, 2023, two months before the fact discovery deadline of December 8, 2023 set by this Court's Scheduling Order (ECF No. 42), OAN's counsel wrote to Plaintiffs' counsel that OAN has requested on several occasions that Plaintiffs identify the damages they are "seeking against OAN with specificity":

> Rule 26(a)(1)(iii) requires disclosure of the "computation" of each category of damages, including disclosure of the documents upon which the computation is based and materials bearing on the nature and extent of injuries suffered. The attached disclosure regarding Section III, Computation of Damages, is grossly deficient – [Plaintiffs have] not provided information that satisfies the obligation to identify both its computation of damages and the documents upon which the computation relies. Please let me know by <u>Wednesday, October 11</u> whether Smartmatic agrees to amend its response to Section V, Computation of Damages, to provide computations by category of damages and documents/materials required by Rule 26(a)(1)(iii) by this <u>Friday, October 13</u>. If we cannot reach agreement on timing and scope of an appropriate response this week, we'll address this issue with Judge Nichols.

Ex. 1-F. A true and correct copy of my October 9, 2023 email to Caitlin Kovacs and Olivia Sullivan, counsel for Plaintiffs, is attached as <u>Exhibit 1-F</u>.

24.     On October 13, 2023, Plaintiffs replied that they disagreed they must provide more information about damages when they have "produced thousands of documents discussing the damage caused by the disinformation," and "damages will be the subject of expert discovery." Ex.

1-G. Plaintiffs added that "the full scope of damages caused by OANN" was somehow dependent on *OAN's* document production. In any event, OAN's document production had already been substantially complete by August 28, 2023. *Id.*; *see* ECF No. 161-2 at 4–7. A true and correct copy of the October 13, 2023 email I received from Caitlin Kovacs, counsel for Plaintiffs, is attached as Exhibit 1-G.

25.     On October 17, 2023, in accordance with the Court's Standing Order on discovery disputes (ECF No. 5), OAN sent a proposed Motion to Compel Amended Initial Disclosures to Judge Nichols's chambers. OAN thereafter forwarded the proposed motion to Magistrate Judge Upadhyaya's chambers on November 7, 2023, following instructions from Judge Nichols's Courtroom Deputy.

26.     On December 20, 2023, the parties engaged in a joint discovery status hearing with Magistrate Judge Upadhyaya. Following the hearing, the Court issued written orders requiring Plaintiffs to respond to OAN's Motion to Compel Amended Initial Disclosures by January 9, 2024. ECF No. 153 at 2.

**Plaintiffs' Amended Initial Disclosures – January 2024.**

27.     On January 4, 2024—over a year after their Initial Disclosures failed to provide any computation of their damages, and nearly a month after the close of the fact discovery period under the Court's Scheduling Order (*see* ECF No. 42)—Plaintiffs served amended disclosures. A true and correct copy of Plaintiffs' Amended Initial Disclosures ("Amended Initial Disclosures") is attached as Exhibit 1-H. Plaintiffs again referred to all three Plaintiffs in their Amended Initial Disclosures and throughout as "Smartmatic."

28.     In their Amended Initial Disclosures, Plaintiffs identified six new witnesses who may have knowledge or discoverable information about each Plaintiffs' alleged damages but who

9

were not identified in the Initial Disclosures: Jèsus Gil, "Digital Transformation Vice President"; Juan Jose Garcia Gonzalez, "Sales Director for Mexico"; Peter Jones, "Business Development Vice President"; Shawn Pollock, "Director of Business Development for Smartmatic Canada"; Andrès Rombolà, "Sales President for Latin America"; and Edwin Smith, "Director of Certification." Ex. 1-H at 7–8. Again, Plaintiffs did not identify which of the Plaintiff entities, if any, were connected to these individuals as officers, directors, or otherwise, nor on whose behalf they could testify. These witnesses were only disclosed after the December 8, 2023 deadline under the Court's Scheduling Order.

29.     In Section II of their Amended Initial Disclosures, Plaintiffs identified the same eight categories of documents they may use to support their claims. As with the Initial Disclosures, Plaintiffs stated that all of these documents would be "in the possession, custody, and control of Smartmatic." *Id.* at 8–9.

30.     At Section III, Computation of Damages, Plaintiffs *again* claimed they did "not currently have sufficient information to provide a complete computation of [their] damages" and – as they did in their Initial Disclosures served over one year ago – provided only a general list of categories of damages that mirrored the "Prayer for Relief" in the Complaint filed more than two years ago. *Id.* at 9-10; ECF No. 1 ¶ 469.

31.     The Amended Initial Disclosures also included a "Supplemental Response," which purports to address Plaintiffs' damages claims for (1) lost profits concerning international opportunities, (2) lost profits in the U.S. market, and (3) out-of-pocket expenses. However, the Amended Initial Disclosures do not include a "computation of damages" for any category of damages sought specifically from OAN. Ex. 1-H at 10–11.

10

32.     The "Supplemental Response" concludes with the following: **"Smartmatic reiterates that the investigation of its damages as a result of Defendant's participation in the disinformation campaign regarding Smartmatic is ongoing and the quantification of the full scope of damages will be the subject of expert discovery."** *Id.* at 11 (emphasis added).

33.      Along with the Amended Initial Disclosures, Plaintiffs' lead counsel, Erik Connolly, served on OAN a letter dated January 4, 2023. A true and correct copy of the January 4 letter, from J. Erik Connolly, counsel for Plaintiffs, addressed to Chip Babcock and myself as counsel for OAN ("January 4 Letter"), is attached as Exhibit 1-I.

34.     In the letter, Plaintiffs repeated the allegation from the more-than-two-year-old Complaint, "that as a result of the disinformation campaign that OANN participated in, Smartmatic's business value declined in excess of $2 billion 'based on [Plaintiffs'] historical business and pipeline.' Compl. ¶ 438." Ex. 1-I at 1.

35.     Mr. Connolly also reiterated the vague contention, made in Plaintiffs' more-than-one-year-old Initial Disclosures, that Plaintiffs allege "lost profits as a direct and proximate result of OANN's conduct." *Id.* He claimed Plaintiffs have "been working to identify business opportunities impacted by the disinformation campaign." *Id.*

36.     The January 4 Letter also attaches and refers to a spreadsheet, that Plaintiffs represented as originally produced by Plaintiffs in their lawsuit against Newsmax (*Smartmatic USA Corp., et al. v. Newsmax Media, Inc.*, C.A. No. N21C-11-028 EMD (Del. Sup. Ct.)), entitled: "Smartmatic Impacted International Opportunities Estimated Revenues and Risk Adjusted Profits – HIGHLY CONFIDENTIAL.xlsx" ("*Newsmax* Spreadsheet"), a copy of which can be found at ECF No. 175-3.

**The "Supplemental Response" in the Amended Initial Disclosures Fails to Provide a Damage Computation Concerning Alleged International Lost Profits.**

37.     As to claimed international lost profits, Plaintiffs' "Supplemental Response" refers to the *Newsmax* Spreadsheet, arguing that it "sets forth Smartmatic's estimated lost profits for 2021–2025 from lost, potential or reduced scope international opportunities as a direct and proximate result of the disinformation campaign that Defendant participated in regarding Smartmatic."

38.     But as Mr. Connolly explained in the January 4 Letter, the *Newsmax* Spreadsheet had been provided with a damages report served in a *different* case pending in the Superior Court of Delaware involving a *different* news media organization – *Newsmax* – because "Newsmax (similar to OANN) participated in **a** disinformation campaign . . . ." *Id.* at 1 (emphasis added). Mr. Connolly then provided "notes" about the *Newsmax* Spreadsheet in the context of *Newsmax*'s alleged disinformation campaign. *Id.* at 1–2. Plaintiffs do not specify *which* claimed opportunities were purportedly lost as a direct and proximate result of the complained-of statements in *this* litigation (if any). *See* Ex. 1-I at 1; *see also* ECF No. 175-3.

39.     Neither the Amended Initial Disclosures nor the accompanying January 4 Letter identify any specific discovery responses or documents produced in the litigation to substantiate each Plaintiffs' "estimated lost profits."

40.     During a January 8, 2024 meet and confer, OAN stated its objection to the "Supplemental Response" because the *Newsmax* Spreadsheet does not adequately identify with required specificity the documents used as the basis for the computations contained in the spreadsheet. OAN asked Plaintiffs' counsel to identify the documents used as the basis for the computations contained in the *Newsmax* Spreadsheet. They replied that the documents – "screenshots" of Plaintiffs' CRM ("Customer Relationship Management") database – could be

found in the (millions of pages of) documents Plaintiffs have produced. I asked that the documents used as the basis for the computations be identified with particularity, either by Bates number or another method that sufficiently identifies the documents out of the morass of documents produced by the Plaintiffs. Plaintiffs declined, stating they were not required to do so. A true and correct copy of the January 8, 2024 letter that I sent to Christopher Letkewicz and Olivia Sullivan, counsel for Plaintiffs, in which I memorialized the parties' meet and confer, is attached as <u>Exhibit 1-K</u>.

41.     Thus, as of January 8, 2024, OAN was left to hunt for the CRM records among the more than 10 million pages of documents Plaintiffs have produced.

42.     Following the January 8, 2024 meet and confer, we undertook numerous word searches to locate the CRM screenshots that Plaintiffs claimed they had produced. After identifying on our own one such CRM screenshot among the millions of pages of documents produced thus far in the litigation, we then used keyword searches to locate similar documents. These searches revealed 863 documents. Using further keyword searches based on the claimed lost opportunities Plaintiffs identified in the *Newsmax* Spreadsheet, a team of three attorney reviewers reviewed individual documents to determine whether they appeared to be relevant based on the limited information disclosed by Plaintiffs. This review took more than 30 hours. While we were able to locate some documents that purported to show opportunities that one or more Plaintiff entities allegedly lost (though none of these documents reference the complained-of publications as the reason for such loss, and many referenced other, entirely unrelated reasons) and some documents related to the opportunities identified on the *Newsmax* Spreadsheet (though not all), we are unable to determine based on Plaintiffs' limited disclosures whether we have received all such documents related to Plaintiffs' alleged damages.

**The "Supplemental Response" in the Amended Initial Disclosures Fails to Provide a Damage Computation Concerning Alleged Damages in the U.S. Market.**

43.     As for alleged lost profits in the U.S. market, in the "Supplemental Response" Plaintiffs assert:

> Smartmatic additionally states that as direct and proximate result of the disinformation campaign that Defendant participated in regarding Smartmatic, Smartmatic lost opportunities and thus, lost profits in the U.S. market.

Ex. 1-H at 10. Plaintiffs provide only an "example" here. This example begins with discussion of the market share of a former subsidiary from *more than 15 years ago*:

> By way of example only, when Smartmatic acquired Sequoia Voting Systems in 2005, Sequoia had approximately 7-8% of the U.S. market, and when Smartmatic divested itself of Sequoia in 2007, Sequoia had approximately 30% of the U.S. market. Smartmatic re-entered the U.S. market in earnest in 2018 when it was awarded a $282 million contract with Los Angeles County, the largest county in the United States in terms of registered voters. Smartmatic planned on using the success of Los Angeles County to expand its business to additional opportunities in the United States market.

*Id.*

44.     The "example" continues with discussion of a "recent study" by the Election Infrastructure Initiative, a copy of which is attached as <u>Exhibit 1-CC</u>. *Id.* at 10-11. This "recent study" appears to have been published in December 2021, and we have found no evidence that Plaintiffs ever produced it to OAN. In any event, Plaintiffs do not provide any explanation of how this study – more than two years into this lawsuit – can lead to any computation of damages for the U.S. market.

45.     As with the claimed international lost profits, Plaintiffs merely refer OAN to Plaintiffs' "previously produced" CRM database. Ex. 1-H at 11.

46.     **Plaintiffs then reveal that they have not even produced all of the CRM database they intend to produce, claiming they "will produce the remaining shortly."** *Id.*

14

47.     Plaintiffs have provided no computations related to the U.S. market. Plaintiffs admitted as much in the January 4 Letter:

> Smartmatic further notes that it continues to seek lost profits related to the United States. The quantification of the full scope of those damages are the subject of expert review, analysis and discovery. Smartmatic's expert will include his/her discussion of the damages related to the United States, including the methodology for quantifying those damages, in his/her report when it is served.

Ex. 1-I at 3.

### The "Supplemental Response" in the Amended Initial Disclosures Fails to Provide Any Additional Information about Plaintiffs' Claim for Out-of-Pocket Expenses.

48.     And as to out-of-pocket expenses, in the "Supplemental Response" Plaintiffs merely set forth the same "in excess of" numbers for their purported out-of-pocket expenses as stated in their November 2021 Complaint.

a.     Smartmatic has been required to spend in excess of $400,000 on public relations and crisis management following OANN's publication of its defamatory statements and will spend millions more in the coming years.

b.     Smartmatic has been required to spend in excess of $100,000 on cybersecurity following OANN's publication of its defamatory statements and will spend millions more in the coming years.

c.     Smartmatic has been required to spend in excess of $700,000 on retention and recruitment for personnel following OANN's publication of its defamatory statements and will spend millions more in the coming years.

*Figure 4: Plaintiffs' Complaint (ECF No. 1 ¶ 432)*

> Smartmatic further states that as set forth in the Complaint, Smartmatic has incurred out-of-pocket expenses as a direct and proximate result of Defendant's participation in the disinformation campaign regarding Smartmatic, including (a) in excess of $400,000 on public relations and crisis management, (b) in excess of $100,000 in cybersecurity, and (c) in excess of $700,000 on retention and recruitment for personnel. Smartmatic will substantiate these expenses through documents produced in this litigation (e.g., invoices for out-of-pocket expenses), testimony and/or expert review, analysis and discovery.

*Figure 5: Plaintiffs' Amended Disclosures, Ex. 1-H at 11.*

Plaintiffs did not identify any receipts, invoices, or other documentation to substantiate the amounts they claimed they have already incurred. Instead, Plaintiffs once again promised that they "will substantiate these expenses through documents produced in this litigation (e.g., invoices for out-of-pocket expenses), testimony and/or expert review, analysis and discovery." *Id.*

### The "Supplemental Response" in the Amended Initial Disclosures Provides No Information on Plaintiffs' Damages Claim Based on Diminution in Enterprise Value.

49.     As for alleged diminished business value, in the "Supplemental Response" Plaintiffs promised only that "the quantification of the full scope of damages will be the subject of expert discovery." Ex. 1-H at 11. During the January 8, 2024 meet and confer, we stated our objection that the amended disclosures neither provide computations nor identify documents serving as the basis for such computations for alleged loss of enterprise value damages. *See* Ex. 1-K at 2. Plaintiffs reiterated that they are only required to identify – at a high level – the categories of claimed damages, and that computations and identification of specific documents should await expert reports. *Id.*

50.     On January 31, 2024, Plaintiffs filed a response to OAN's Motion to Compel Amended Initial Disclosures (ECF No. 143-4), as directed by Magistrate Judge Upadhyaya. (ECF

No. 175).  In the response, Plaintiffs acknowledged identifying six new individuals "likely to have discoverable information" regarding "customer relationships, sales and damages" in its Amended Disclosures served on January 4, 2024, almost a month after the fact discovery deadline. *Id.* at 1. Also in their response, Plaintiffs' counsel referred to the January 8, 2024 meet-and-confer where they claim to have "answered OANN's questions regarding the Disclosure." *Id.* Plaintiffs' response, and the supporting declaration of Olivia Sullivan, fail to inform the Court of OAN's multiple objections to the Amended Initial Disclosures stated during the meet-and-confer, as detailed in a letter memorializing the conference sent to Plaintiffs' counsel that same day, January 8, 2024. *See* Ex. 1-K.

**FOR TWO YEARS, PLAINTIFFS HAVE STYMIED OAN'S ATTEMPTS TO OBTAIN INFORMATION ABOUT PLAINTIFFS' ALLEGED DAMAGES THROUGH INTERROGATORIES, AND PLAINTIFFS FAIL TO IDENTIFY ANY ALLEGED DAMAGES.**

51.     On October 24, 2022, OAN served three identical sets of interrogatories, one on each Plaintiff. True and correct copies of the relevant excerpts of OAN's First Set of Interrogatories to each of SGO Corporation Limited, Smartmatic International Holding B.V., and Smartmatic USA Corporation are collectively attached as Exhibit 1-L.

52.     Interrogatory No. 4 requested the identification of all entities from which each of the Plaintiffs sought a contract, and information about whether any Plaintiff won the contract, the work performed, the term limit, and the reason for termination or non-renewal of the contract. *See* Ex. 1-L at 10.

53.     On December 16, 2022, Plaintiffs failed to respond individually to OAN's interrogatories and instead served "omnibus" answers and objections to OAN's First Set of Interrogatories. A true and correct copy of Plaintiffs' Omnibus Answers and Objections to Defendant's First Set of Interrogatories is attached as Exhibit 1-M.

54.     For Interrogatory No. 4, Plaintiffs collectively responded that they would "produce [their] contracts for the provision of voting technology, and any bids, RFI responses and RFP responses submitted by [Plaintiffs] for the provision of voting technology, within the relevant time period of January 1, 2020 to the present as identified by Defendant." Ex. 1-M at 8.

55.     In a letter to Plaintiffs' counsel dated July 25, 2023, I requested that Plaintiffs amend their response to Interrogatory No. 4 because it neither identifies the information sought nor complies with Federal Rule of Civil Procedure 33(d). Ex. 1-N. A true and correct copy of the July 25, 2023 letter that I sent to Caitlin Kovacs and Olivia Sullivan, counsel for Plaintiffs, is attached as Exhibit 1-N. I asked Plaintiffs' counsel that, by August, 2, 2023, Plaintiffs amend their answers to provide the information requested by Interrogatory No. 4, or to identify by Bates number those documents Plaintiffs referenced in their response to the interrogatory. *Id.*

56.     In response, Plaintiffs' counsel stated: "on the issue of identifying documents responsive to Interrogatory No. 4, Smartmatic believes the parties need to meet and confer on this point. The parties previously discussed how to approach the identification of documents in response to Interrogatories, but the parties did not reach a final decision." Ex. 1-O at 2. A true and correct copy of this letter that I received from Olivia E. Sullivan, counsel for Plaintiffs, dated August 15, 2023, is attached as Exhibit 1-O.

57.     On September 1, 2023, I again expressed my concern to Plaintiffs' counsel about Plaintiffs' failure to provide sufficient information about their claimed damages:

> we are many months into the litigation, and Smartmatic has yet to disclose to us what types of damages it is claiming and in which countries and jurisdictions it is claiming damages based on potential engagements that include terminated or non-renewed contracts. We asked for this information long ago as it pertains to international discovery (*e.g*., RFPs 26, 27, 28, 30, 37, 40-41, 57-58, and ROGs 4, 7, 12), but even during our call last week you were unable to tell us without first reviewing OAN's document production.

Ex. 1-P. A true and correct copy of my email on September 1, 2023 to Caitlin Kovacs and Olivia Sullivan, counsel for Plaintiffs, is attached as <u>Exhibit 1-P</u>.

58.     Again on September 18, 2023, OAN counsel asked Plaintiffs to supplement their response to Interrogatory No. 4. *See* Ex. 1-Q. A true and correct copy of my September 18, 2023 letter to Caitlin Kovacs, Olivia Sullivan, and Amakie Amattey, counsel for Plaintiffs, is attached as <u>Exhibit 1-Q</u>. We also advised Plaintiffs we had been unable to identify documents responsive to Interrogatory No. 8 (pertaining to the historical performance of and annual revenues for each Plaintiff), and requested supplemental answers to help locate the documents. We wrote:

> We expect each Plaintiff to produce responsive documents in response to these RFPs, particularly those related to damages claims. *See, e.g., Sec. Indus. & Fin. Markets Ass'n v. U.S. Commodity Futures Trading Comm'n*, 67 F. Supp. 3d 373, 406–07 (D.D.C. 2014) (collecting cases, describing the general rule that corporations are treated as separate legal entities).

*Id.* at 2. Plaintiffs refused. Instead, Plaintiffs continued to insist that (1) they "produced all of the bids [they have] submitted since 2017" in response to Interrogatory No. 4, though they declined to identify a single document by Bates number, and (2) they produced financial statements in response to Interrogatory No. 8, though the Bates numbers they provided as examples were non-responsive. *See* Ex. 1-J, Letter from Caitlin Kovacs, counsel for Plaintiffs, to Carl C. Butzer, counsel for OAN, at 2 (Oct. 10, 2023) (with OAN's subsequent interlineated responses in red). A true and correct copy of a letter OAN received from Caitlin Kovacs, counsel for Plaintiffs, with OAN's subsequent interlineated responses in red, is attached as <u>Exhibit 1-J</u>. I sent this interlineated version to Olivia Sullivan, counsel for Plaintiffs, on October 16, 2023.

59.     On November 2, 2023, OAN again sought information about each Plaintiff entity's damages through its Third Set of Interrogatories. True and correct copies of OAN's Third Set of

Interrogatories to each of SGO Corporation Limited, Smartmatic International Holding B.V., and Smartmatic USA Corporation are collectively attached as Exhibit 1-R.

60.     Interrogatory No. 24 sought:

> all bids You submitted to any domestic or foreign governmental entity, whether in response to a request for solicitation, request for proposal, request for bid, invitation to bid, or otherwise, where you were not selected as a winning bidder or contract awardee, and for each instance, identify the reason(s) provided to You for not being selected.

Ex. 1-R at 4.

61.     On December 4, 2023, Plaintiffs served "omnibus" answers and objections to OAN's Third Set of Interrogatories. A true and correct copy of Plaintiffs' Omnibus Answers and Objections to Defendant's Third Set of Interrogatories is attached as Exhibit 1-S.

62.     Plaintiffs collectively objected to Interrogatory No. 24 as "duplicative of Defendant's Interrogatory No. 4" and "overly broad, burdensome, and vague," among other objections. Ex. 1-S at 6. Plaintiffs provided no response to the substance of the Interrogatory and did not promise to produce documents in response to OAN's request. *See id.* at 5–6.

63.     As of close of business on February 2, 2024, Plaintiffs had produced 2,483,354 documents in this litigation, consisting of 10,790,677 pages.  After 5:00pm cst on February 2, 2024 (nearly two months after fact discovery closed, and just before this filing), Plaintiffs' counsel sent OAN's counsel an email with what they say is a "link to Smartmatic's latest production which contains additional CRM documents." Plaintiffs' prior production includes the full text of over 400 books scattered throughout their production, including Spanish translations of lengthy novels and other literary works such as *The Three Musketeers, Tarzan*, *The Names of Christ*, *The Lady of the Camellias*, and *The Woman with the Velvet Necklace*. *See, e.g.*, SMMT-OAN03046314 – SMMT-OAN03060474;     SMMT-OAN05781990     –     SMMTOAN05806045;     SMMT-

OAN07695037 – SMMT-OAN7695772; SMMT-OAN08125143 – SMMT-OAN08128465; SMMT-OAN08758141 – SMMT-OAN08814644; SMMT-OAN10353919 – SMMT-OAN010354074; SMMT-OAN01161529 – SMMT-OAN01181843. Many of the documents produced that could conceivably relate to damages predate the 2020 election and OAN's coverage complained of by Plaintiffs, *see, e.g.*, SMMT-OAN03184505; SMMT-OAN02432965; SMMT-OAN00950232, or relate to completely irrelevant topics such as one or more of the Plaintiffs' bid to manufacture and sell COVID-19 masks, *see, e.g.*, SMMT-OAN01003524; SMMT-OAN01461406; SMMT-OAN01462453; SMMT-OAN09299467 SMMT-OAN09299780. Some of the documents rebut damages. *See, e.g.*, SMMT-OAN00227682; SMMT-OAN00228649; SMMT-OAN00227907.

**OAN SEEKS INFORMATION ABOUT PLAINTIFFS' ALLEGED DAMAGES THROUGH REQUESTS FOR PRODUCTION, AND PLAINTIFFS AGAIN POINT TO THEIR EXPERT REPORTS.**

64.    On October 24, 2022, OAN served its First Set of Requests for Production to each Plaintiff entity. True and correct copies of excerpts of the relevant portions of OAN's First Set of Requests for Production to each of SGO Corporation Limited, Smartmatic International Holding B.V., and Smartmatic USA Corporation are collectively attached as Exhibit 1-T.

65.    Document Request No. 57 to each Plaintiff sought "Documents and Communications that support Your request for no less than $2.7 billion in actual, consequential, and special damages in the above-captioned case, as well as Documents and Communications that demonstrate the actions any Smartmatic Entity has undertaken to mitigate its alleged damages." Document Request No. 58 to each Plaintiff sought "Documents sufficient to show the date and amount of monetary damages You have sought for any claim of reputational harm that You have made over the past five years (including claims associated with any other defamation lawsuits You have filed). Documents and Communications relating to the method, manner, procedure, or

formulation by which You calculate Your economic damages." Document Request No. 83 to each Plaintiff sought "Documents and Communications relating to the method, manner, procedure, or formulation by which You calculate Your economic damages." *See* Ex. 1-T at 28.

66.     On December 16, 2022, Plaintiffs again failed to respond individually to OAN's separate requests and instead served "omnibus" responses and objections to OAN's First Set of Requests for Production. A true and correct copy of Plaintiffs' Omnibus Responses and Objections to Defendant's First Set of Requests for Production is attached as Exhibit 1-U.

67.     Plaintiffs collectively objected to Request No. 83 about Plaintiffs' damages as "seek[ing] premature expert discovery." Ex. 1-U at 51. Plaintiffs once again promised that they would "timely disclose expert opinions pursuant to the Federal Rules of Civil Procedure and any Scheduling Order entered by the Court." *Id.* Plaintiffs added that they "w[ould] produce responsive documents, to the extent they exist and can be located by a reasonable search." *Id.*

68.     I also wrote to Plaintiffs' counsel objecting to the "omnibus" responses served on behalf of all three Plaintiffs with respect to many requests for production, including document requests about damages. I wrote: "Those omnibus responses are improper as to RFP Nos. 56-59, 64-66, 83-87, and 98 because they specifically seek information about each or any of the defined 'Smartmatic Entity(ies)'. We expect each Plaintiff to produce responsive documents in response to these RFPs, particularly those related to damages claims. *See, e.g., Sec. Indus. & Fin. Markets Ass'n v. U.S. Commodity Futures Trading Comm'n*, 67 F. Supp. 3d 373, 406–07 (D.D.C. 2014) (collecting cases, describing the general rule that corporations are treated as separate legal entities). Please produce, and identify by Bates number, all responsive documents for each Plaintiff entity." *See* Ex. 1-Z. Plaintiffs failed to do so. A true and correct copy of my September 20, 2023 letter to Caitlin Kovacs and Olivia Sullivan, counsel for Plaintiffs, is attached as Exhibit 1-Z.

**OAN SEEKS INFORMATION ABOUT PLAINTIFFS' ALLEGED DAMAGES THROUGH DEPOSITIONS, AND PLAINTIFFS REFUSE TO APPEAR.**

69.    On September 13, 2023, Defendant served separate notices of depositions on each of the three Plaintiffs pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, to take place on three consecutive days beginning on October 3, 2023 in Plaintiffs' lawyers' offices in Chicago. A true and correct copy of OAN's Notice of Rule 30(b)(6) Deposition to SGO Corporation is attached as Exhibit 1-V. A true and correct copy of OAN's Notice of Rule 30(b)(6) Deposition to Smartmatic International is attached as Exhibit 1-W. A true and correct copy of OAN's Notice of Rule 30(b)(6) Deposition to Smartmatic USA is attached as Exhibit 1-X. At least fourteen of the twenty-three Topics of Testimony focused on damages. Plaintiffs moved for a protective order (ECF No. 96) with respect to these depositions but did not secure a ruling granting protection before the scheduled depositions. Nor did the motion for protection challenge any of the Topics of Testimony. Nevertheless, prior to the scheduled dates, Plaintiffs advised OAN in writing that the Rule 30(b)(6) witnesses would not appear on the noticed days and times. A true and correct copy of an email I received from Caitlin Kovacs, counsel for Plaintiffs, on September 26, 2023 is attached as Exhibit 1-Y.

70.    Prior to the December 8 fact discovery deadline, in addition to noticed depositions of several current or former Smartmatic employees and Rule 30(b)(6) witnesses who simply failed to appear for deposition, OAN attempted to depose, among others, the persons identified by Plaintiffs in their Initial Disclosures as potentially having knowledge or discoverable information about Plaintiffs' alleged damages. On October 18, 2023, OAN noticed the depositions of Eduardo Correia, Edwin Smith, Fernando Hernandez, James Long, Antonio Mugica, Pedro Mugica, Roger Pinate, Jr., Roger Vincente Pinate, and Samira Saba. Pursuant to the Notices, these depositions were to take place between October 25 and November 21, 2023. A true and correct copy of my

23

October 18, 2023 email to Caitlin Kovacs, counsel for Plaintiffs, serving these ten deposition notices is attached as <u>Exhibit 1-AA</u>. Plaintiffs moved to quash these deposition notices (ECF No. 105 at 11), and the Court stayed them on October 21, 2023. OAN also requested from Plaintiffs dates before December 8 for depositions of the following individuals, all of whom were later identified by Plaintiffs after the discovery deadline as having knowledge related to Plaintiffs' alleged damages: Jèsus Gil, Juan Jose Garcia Gonzalez, Peter Jones, and Andrès Rombolà. A true and correct copy of my November 17, 2023 email to Caitlin Kovacs, counsel for Plaintiffs, requesting these four depositions is attached as <u>Exhibit 1-BB</u>. Plaintiffs failed to provide any deposition dates for these individuals.

71.     Plaintiffs thus blocked OAN from taking all of the depositions OAN noticed or sought to take before the end of the fact discovery period (with the exception of a former employee of an SMUSA related entity), including on the topic of Plaintiffs' alleged damages.

**OAN SEEKS INFORMATION ABOUT PLAINTIFFS' ALLEGED DAMAGES THROUGH DISCOVERY OF PLAINTIFFS' EXPERTS' REPORTS AND SWORN TESTIMONY PROVIDED IN PLAINTIFFS' RELATED LITIGATIONS, AND PLAINTIFFS REJECT OAN'S REQUESTS.**

72.     Prior to the December 8, 2023 fact discovery deadline, OAN sought discovery relating to Plaintiffs' alleged damages by requesting the deposition transcripts and related exhibits, as well as the submitted damages reports, in Plaintiffs' related defamation lawsuits. On August 14, 2023, OAN specifically sought Plaintiffs' position on whether they would produce the expert reports issued in the Fox News litigation. Ex. 1-P. The next day, Plaintiffs responded that no expert reports were yet available in the Fox News litigation and, "[o]nce expert reports are exchanged, we will consider producing them here if they are relevant." *Id.* Plaintiffs never produced any expert reports from the Fox News litigation—or any of its ongoing defamation lawsuits.

73.     On December 2, 2023, I emailed counsel for Plaintiffs seeking an agreement for the parties to exchange deposition transcripts and related exhibits for the parties' respective experts, employees, and representatives from the related lawsuits. Ex. 1-DD. In response, counsel for Plaintiffs confirmed Plaintiffs "will not agree to exchange the deposition transcripts and exhibits of [Plaintiffs'] experts from the other cases." *Id.* A true and correct copy of my email on December 2, 2023 to Caitlin Kovacs and Olivia Sullivan, counsel for Plaintiffs, and Ms. Sullivan's response, is attached as Exhibit 1-DD.

**PLAINTIFFS FAIL TO DESIGNATE ANY EXPERTS OR SERVE ANY EXPERT REPORTS.**

74.     Under the Court's scheduling order, Plaintiffs' expert disclosures and production of expert reports were due on January 19, 2024. ECF No. 42. Plaintiffs failed to designate any testifying experts or serve any expert reports on any subject either on or before January 19, 2024.

**OAN IS SIGNIFICANTLY PREJUDICED BY PLAINTIFFS' DISREGARD FOR THE COURT'S SCHEDULING ORDER AND FAILURE TO PROVIDE ADEQUATE DISCLOSURE OF DAMAGES.**

75.     Because of Plaintiffs' failures to provide complete initial disclosures and expert disclosures under Rule 26, their subsequent failures to provide such information in response to interrogatories and requests for production (and their "omnibus" responses to individual requests), their refusals to appear for any depositions, and their failure to designate any experts or produce expert reports, OAN has been significantly hindered in developing its defenses to each Plaintiff's claimed damages.

76.     OAN similarly has been hampered in preparing its experts to develop opinions about each Plaintiff's claimed damages. OAN's experts cannot rebut opinions Plaintiffs have failed to disclose.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on February 2, 2024.

John K. Edwards