**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| SMARTMATIC USA CORP.,<br>SMARTMATIC HOLDING B.V., AND<br>SGO CORPORATION LIMITED,<br><br>    Plaintiffs,<br><br>  v.<br><br>HERRING NETWORKS, INC., D/B/A<br>ONE AMERICA NEWS NETWORK,<br><br>    Defendant. | Civil Action No. 1:21-cv-02900-CJN |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR RELIEF WITH
RESPECT TO ALLEGED VIOLATIONS OF THE PROTECTIVE ORDER AND
SUBMISSION OF MATERIALS IN SUPPORT OF PLAINTIFFS' RESPONSE TO
OANN'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I.     INTRODUCTION .................................................................................................. 1

II.    OVERVIEW OF ARGUMENT ............................................................................ 3

III.   BACKGROUND .................................................................................................. 5

       A.     Smartmatic Uncovers OANN's Criminal Activity ................................. 6

       B.     Smartmatic Writes OANN Regarding Its Deficient Production Of
              Documents Evidencing Its Executives' Distribution of The
              Spreadsheet ............................................................................................. 9

       C.     OANN Attempts to Cover Up Its Criminal Activity By Clawing
              Back Its Dissemination of The Spreadsheet ........................................... 9

       D.     OANN's Privilege Log Reveals It Is Improperly Withholding
              Several Additional Documents Further Evidencing Its Criminal
              Dissemination of The Spreadsheet ...................................................... 12

       E.     "Thank You Caitlin" ............................................................................. 13

       F.     OANN Informs Smartmatic That It Is Filing A Motion To Force
              Smartmatic To Destroy Evidence of OANN's Criminal Activity ....... 14

IV.    LEGAL STANDARD ........................................................................................ 15

V.     ARGUMENT ..................................................................................................... 15

       A.     The Joint Defense Privilege Does Not Protect A Communication
              Between Two Non-Attorneys Sharing And Discussing Illegally
              Obtained Information ............................................................................ 17

       B.     The Crime-Fraud Exception Cuts Off Any Application of Privilege
              to [REDACTED] Dissemination of the Stolen Passwords ............................. 19

              1.     OANN's Dissemination of the Stolen Passwords Appears To
                     Have Violated the Electronic Communications Privacy Act,
                     18 U.S.C. §§ 2510–2523 ("ECPA") .......................................... 20

              2.     OANN's Dissemination of the Spreadsheet Appears To
                     Have Violated the Computer Fraud and Abuse Act, 18
                     U.S.C. § 1030 ("CFAA") .......................................................... 21

              3.     OANN's Dissemination of the Spreadsheet Constitutes
                     "Misconduct Fundamentally Inconsistent With The Basic
                     Premises Of The Adversary System" ....................................... 22

i

VI.     OANN's Request for Sanctions Is Baseless ................................................................ 24

        A.      Smartmatic Acted In Good Faith In Compliance With The
                Protective Order And The Federal Rules ............................................................ 24

                1.      Smartmatic's Review of Ex. BB Pre-Dated OANN's
                        Clawback Letter ...................................................................................... 24

                2.      Smartmatic Complied with The Parties' Protective Order ...................... 26

                3.      Smartmatic Complied with Federal Rule of Civil Procedure
                        26(b)(5)(B) ............................................................................................... 27

                4.      Smartmatic Conducted Itself in Good Faith ............................................ 28

VII.    OANN Has Waived Any Ability To Request Relief ....................................................... 31

VIII.   CONCLUSION............................................................................................................... 33

# TABLE OF AUTHORITIES

## CASES

*Amobi v. D.C. Dep't of Corr.*, 262 F.R.D. 45, 54 (D.D.C. 2009)..................................................... 34

*BioConvergence LLC v. Attariwala*, No. 20-mc-101 (RC), 2023 WL 2086078, at
    *14 (D.D.C. Feb. 17, 2023) ..................................................................................... 18

*Certain Underwriters at Lloyd's, London v. Nat'l R.R. Passenger Corp.,* 218 F.
    Supp. 3d 197, 201 (E.D.N.Y. 2016)......................................................................... 35

*Coleman v. Am. Broadcasting Cos., Inc.*, 106 F.R.D. 201, 208 (D.D.C. 1985) .......................... 24

*Coomer v. Lindell*, No. 1:22-cv-01129-NYW-SKC (D. Colo.), 2023 WL 9320313................... 19

*EEOC v. George Washington University*, 502 F. Supp. 3d 62 (D.D.C. 2020) ............................ 26

*Feld v. Fireman's Fund Ins. Co.*, 292 F.R.D. 129, 137 (D.D.C. 2013)........................................ 18

*In re Disposable Contact Lens Antitrust Litigation* ............................................................... 27, 28

*In re Grand Jury Subpoenas*, 902 F.2d 244 (4th Cir. 1990).................................................. 17, 20

*In re Grand Jury*, 374 U.S. App. D.C. 428, 434, 475 F.3d 1299, 1305 (2007)........................... 20

*In re International Mineral Resources B.V.*, No. 14-mc-340(GK), 2015 WL
    4555248, at *5 (D.D.C. July 28, 2015).............................................................. 20, 23

*In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985)............................................................. 20

*Jones v. United States*, 828 A.2d 169, 175 (D.C. 2003) ........................................................... 18

*Minebea Co., Ltd. v. Papst*, 228 F.R.D. 13 (D.D.C. 2005)............................................... 17, 18, 20

*Priority One Servs., Inc. v. W & T Travel Servs., LLC*, 987 F. Supp. 2d 1, 4 (D.D.C.
    2013) ......................................................................................................................... 15

*Recycling Sols., Inc. v. District of Columbia*, 175 F.R.D. 407, 409 (D.D.C. 1997) .................... 23

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980) ........................................................ 15

*Shepherd v. Am. Broadcasting Cos., Inc.*, 62 F.3d 1469, 1475 (D.C. Cir. 1995)......................... 15

*Twin Falls NSC, LLC v. S. Idaho Ambulatory Surgery Ctr., LLC*, 2020 WL
    5523384, at *19 (D. Idaho Sept. 14, 2020)........................................................... 25

*United States v. Cioni*, 649 F.3d 276, 284 (4th Cir. 2011) ........................................................ 22

*Williams v. District of Columbia*, 806 F. Supp. 2d 44 n.9 (D.D.C. 2011) .............................. 29, 33

**STATUTES**

18 U.S.C. § 1030(a)(2)(C) ............................................................................................................ 22

18 U.S.C. § 1030(c)(2)(A) ............................................................................................................ 22

18 U.S.C. § 2518(10)(a)(i) ........................................................................................................... 25

Fed. R. Civ. P. 26(b)(5)(B) .......................................................................................................... 29

Fed. R. Evid. 502(b) ..................................................................................................................... 33

Smartmatic USA Corp., Smartmatic Holding B.V. and SGO Corporation Limited (collectively, "Plaintiffs" or "Smartmatic") file herein their response to Defendant Herring Networks d/b/a One America News Network's ("OANN" or "Defendant") motion for sanctions, styled as a "Motion For Relief From Plaintiffs' Violations Of Judge Nichols's Protective Order And Use Of OAN's Clawbacked Material In Support Of Their Summary Judgment Response" ("Motion," Dkt. 171, Jan. 19, 2024).

## I.    __INTRODUCTION__

When it filed this case, Smartmatic understood it was the victim of a monthslong disinformation campaign by OANN, likely directed by members of the Herring family who owned and controlled the network. OANN used its hosts and anchors to spread terrible lies about Smartmatic following the 2020 election, including telling its audience that Smartmatic rigged the election for Joe Biden, stole the election from Donald Trump, and used its voting machines to switch votes so to rob the voters of their chosen president. OANN's lies had real world consequences. Not only did they contribute to shattering people's faith in democracy, but they also caused Smartmatic's employees to receive death threats and Smartmatic's business prospects to dwindle.

Through discovery, Smartmatic learned that OANN's disinformation campaign was only part of the plan to attack Smartmatic. Starting in July 2023, OANN produced a series of emails revealing that Charles Herring received what purported to be illegally obtained passwords for the email systems of Smartmatic employes (the "Stolen Passwords"). Mr. Herring and others at OANN received the Stolen Passwords, and information about other targets of OANN's disinformation campaign, from an anonymous "friend." Instead of destroying the Stolen Passwords, Mr. Herring and OANN were intent on them being used. Mr. Herring responded to the friend with "thank you" and asked him to send more information. OANN executives also sent the Stolen Passwords and

1

other information from the "friend" to Mike Lindell and Jane Doe. Mr. Lindell and Ms. Doe were both actively involved in spreading lies about the 2020 election being stolen, including stolen by Smartmatic. OANN executives provided the Stolen Passwords as part of OANN's efforts to be helpful.[1]

The actions taken by Mr. Herring and others at OANN upon receipt of the Stolen Passwords constitute potential criminal activities under state and federal law (discussed below). And, relevant to this pending Motion, the attempted cover up is as bad as the crime. The cover up here is the attempt by OANN and its counsel to manufacture a privilege to protect ████ REDACTED ████ transmittal of the Stolen Passwords to Ms. Doe. ████ REDACTED ████ and Ms. Doe were never in an attorney-client relationship. ████ REDACTED ████ did not seek any legal advice or transmit any legal advice to Ms. Doe. Ms. Doe did not provide any legal advice or transmit any legal advice to ████ REDACTED ████. What we have here is one person ████ REDACTED ████ sharing stolen information with another person (Ms. Doe). That is a crime, not a privileged communication.

OANN and its counsel know there is no privilege – they never even pretended a privilege existed until *after* Smartmatic told OANN about the exchange and demanded more discovery. But they nonetheless filed the present Motion because Smartmatic had the audacity to reference the Stolen Passwords and OANN's potential criminal behavior in its opposition to OANN's motion for summary judgment. Smartmatic's passing reference to OANN's exchange with Ms. Doe was not only proper, but it also perfectly illustrated the prematurity of OANN's summary judgment

---

[1] Mr. Lindell's receipt of the Stolen Passwords from Charles Herring was made public in *Eric Coomer v. Michael J. Lindell*, Case No. 1:22-cv-01129-NYW-SKC (D. Colo.) (Dkt. No. 235). Smartmatic is using an anonymous name (Jane Doe) to refer to the other recipient as a professional courtesy. OANN included Jane Doe's actual name on its after-the-fact privilege log, which OANN did not designate as confidential. Accordingly, Smartmatic could identify Jane Doe by name by filing OANN's non-confidential privilege log as an exhibit. But Smartmatic believes taking the high road is the right road, regardless of whether the professionalism is reciprocated. Smartmatic will give OANN time designate its privilege log as confidential if it desires to do so.

motion. OANN has refused to produce scores of documents relevant to OANN's actual malice, including motive. OANN's internal and external discussions about the Stolen Passwords represent circumstantial evidence that OANN *intended* to harm Smartmatic and *intended* to undermine people's confidence in the 2020 election. Yet OANN has stonewalled Smartmatic's efforts to obtain discovery on this event and many others. It is time to start litigating the merits of this case, not wasting time with more frivolous motions.

## II.   OVERVIEW OF ARGUMENT

OANN's Motion to sanction Smartmatic for referencing a non-privileged communication between an OANN executive and Ms. Doe is just the latest attempt by OANN and its counsel to force Smartmatic to incur unnecessary attorneys' fees. OANN wants to make prosecuting the case too expensive for Smartmatic so its lawyers – who apparently have a blank check – are filing motion after motion no matter how frivolous.   The frivolous nature of this Motion is best demonstrated by three facts. ***First***, OANN is *not* asking this Court to find that OANN's exchange with Ms. Doe about the Stolen Password is privileged. OANN cannot make that request because the exchange is obviously not privileged. There is no attorney-client relationship between the OANN executive and Ms. Doe. OANN and Ms. Doe were not exchanging or conveying legal advice or strategy. And neither the executive nor Ms. Doe was not seeking legal advice. This communication is one person providing illegally obtained information to another person. It is hypocrisy for OANN to ask the Court to sanction Smartmatic for referencing an exchange that OANN cannot establish is privileged.

***Second***, OANN did *not* object to Smartmatic's inclusion of the exchange in its submission to the Court. The chronology of events here is telling:

- OANN produced the exchange between OANN and Ms. Doe on October 6, 2023 without any designation of it being privileged.

- OANN did not claim the exchange was privileged until November 5, 2023, after Smartmatic flagged the exchange to OANN and demanded additional discovery.

- OANN did not move the Court for any finding or limitation on Smartmatic's use of the exchange after Smartmatic told OANN the exchange was obviously not privileged. Smartmatic made that clear to OANN on December 1, 2023.

- OANN did not include the exchange on any privilege log until December 8, 2023, two months after production.

- OANN did not move the Court for any finding or limitation on Smartmatic's use of the exchange after Smartmatic told OANN that its privilege log entry further illustrated that the exchange was not privileged. Smartmatic made that clear to OANN on December 22, 2023.

- OANN did not object when Smartmatic told OANN on December 24 that it would be including the exchange in the documents provided to the Court for *in camera* review. Instead, OANN said "thank you."

- OANN did not say anything to Smartmatic about the alleged improper use of the exchange until January 16, twenty-five days after Smartmatic filed its opposition to the motion for summary judgment and nineteen days after Smartmatic provided the exchange to the Court.

If OANN and its counsel had a good faith basis for claiming the exchange was privileged, or a good faith basis for claiming that Smartmatic should not have referred to the exchange its opposition brief, this sequence of events would be far different.

**Third**, Smartmatic's conduct could hardly be described as "bad faith" and OANN has not demonstrated anything by "clear and convincing evidence." Smartmatic unequivocally told OANN the exchange was not privileged when OANN first made the frivolous claim. Smartmatic never joined OANN's ruse that the exchange was somehow privileged so to limit the use of the exchange; and, OANN never sought a court order that it was privileged. Smartmatic believed, therefore, it was proper to reference the non-privileged communication in its opposition brief. But, out of an abundance of caution, Smartmatic (1) did not quote from the exchange in its opposition brief, (2) did not reveal identities in its opposition brief, (3) flagged for OANN in advance that it would be providing the Court with a copy of the exchange – without objection by OANN, and (4)

4

did not file the exchange on the public docket but only provided it to the Court *in camera*. Smartmatic acted professionally, not "vexatiously, wantonly, or for oppressive reasons."

The real issue raised by OANN's Motion is how off track the parties are in this litigation. Smartmatic has been seeking court intervention for months, including with multiple requests to reset the schedule. Smartmatic has been unsuccessful in its efforts to get OANN to litigate the case in a professional manner, where everyone complies with their discovery obligations and everyone goes about discovery in the regular and normal course. OANN is more interested in making Smartmatic spend money than it is litigating the merits of the case. Let's get to the merits of this case. Let's get fact discovery restarted. Let's get this case moving. This Motion for sanctions is frivolous. Smartmatic did nothing wrong by referring to a non-privileged communication from OANN about illegally obtained information. The fact that Smartmatic and this Court must deal with this Motion is a perfect example of how far OANN has taken us off track.

### III.   BACKGROUND

Beyond forcing Smartmatic to spend time and money drafting an opposition, Smartmatic does not understand why OANN would file a motion that highlights that its own executive had a non-privileged communication with Ms. Doe about the Stolen Passwords. The Herrings' involvement with the Stolen Passwords is already a matter of public record in the *Coomer* litigation. OANN produced multiple documents in this case showing OANN's dissemination and discussion of the Stolen Passwords, none claimed to be privileged and some not even designated as confidential. Smartmatic can make those part of the public record immediately. And OANN did nothing to press its manufactured claim of privilege for the exchange with Ms. Doe until 25 days *after* Smartmatic filed its opposition. The background to this present motion paints a clear picture of unethical conduct – by OANN and its counsel, not Smartmatic.

### A.    Smartmatic Uncovers OANN's Criminal Activity

In the fall of 2023, through its review of OANN's document production, Smartmatic discovered that OANN had participated in a crime by soliciting, reviewing, and disseminating information designed to assist bad actors with hacking into Smartmatic's email communications. (Declaration of Caitlin A. Kovacs, ¶ 2).



emailed OANN (Ex. C, OAN_SMMT_00828464). The author wrote, "I believe the attached documents will be very useful to you in your investigation into Dominion's Eric Coomer. … [the] excel document includes lists of voting system employees, friends of Coomer, etc. before they were scrubbed from the internet. The second excel is a method to find potential accounts of Coomer online or by testing other websites." (*Id*.) The attached spreadsheet contained an appalling amount of personal information about Eric Coomer, Mr. Coomer's friends and contacts, REDACTED , and Smartmatic employees.

One tab of the spreadsheet is dedicated entirely to personal information related to every Smartmatic employee REDACTED could identify. (Ex. D, OAN_SMMT_00942992).

---

[2] Unless otherwise specified, all exhibits refer to the corresponding exhibit in the Declaration of Caitlin A. Kovacs.



This is the information being referred to as the Stolen Passwords, the illegally obtained information that was provided to [REDACTED] and subsequently disseminated to others by [REDACTED].

In his email to Charles Herring, [REDACTED] wrote: "Please send these to other defendants/researchers/investigators/collaborators in order to effectively manage the workload." (Ex. C). He then signed his email, "A friend." *Id.* The author's postscript at the bottom encouraged Mr. Herring to conceal the Stolen Passwords and other documents from the authorities: "Certain information contained within might be worth keeping quiet for now for the element of surprise/allowing Coomer to lie further in more interviews/court but I will leave it to your discernment. I can provide a word doc instead of the pdf if needed." (Ex. C). Mr. Herring responded an hour later, saying "**Thank you!** 😊 **If you come across any addition [sic] information,** _**please pass along**_**. Charles.**" (Ex. C) (emphasis added).[3]

On January 8, 2021, three days after receiving the Stolen Passwords, [REDACTED] forwarded the Stolen Passwords and other information to another "collaborator," [REDACTED] [REDACTED]. The collaborator was Jane Doe, one of the people at the forefront of the

---

[3] Mr. Herring was not the only one who received the Stolen Passwords and other information from the same anonymous friend. [REDACTED] [REDACTED] OANN produced each of these communications [REDACTED] many months ago. OANN has never claimed that any of them are privileged. (Kovacs Decl., ¶ 9).

disinformation campaign who was among those responsible for spreading disinformation about Smartmatic and another voting machine company, Dominion. 

This exchange between █REDACTED█ and Ms. Doe is the email that Smartmatic submitted for *in camera* review (Dkt. 155-1, Ex. BB) on December 28, 2023, along with the Stolen Passwords that █REDACTED█ disseminated (Dkt. 155-1, Ex. CC). The email does not contain or request legal advice. █REDACTED█ has never claimed that he sent the email at the behest of counsel. And OANN has never claimed that Ms. Doe was OANN's attorney or that she was serving as an attorney for any party in the *Coomer* litigation. In the email exchange at issue, she told █REDACTED█ █REDACTED█ (Ex. H); (Dkt. 155-1, Ex. BB).

Upon reviewing these communications, Smartmatic realized that OANN must have in its possession other documents related to the information provided by the anonymous friend, including documents about the Stolen Passwords, that it had *not* produced. (Kovacs Decl., ¶ 11). For example, OAN_SMMT_00996295 contains Ms. Doe's reply to █REDACTED█ email, but OANN has never produced █REDACTED█ initial email to Ms. Doe. (Kovacs Decl., ¶ 12). Smartmatic also knew, based on documents produced by Mr. Lindell, that the Herrings had sent the same information to Mike Lindell. (Ex. I). Mr. Lindell's production shows that:

- Charles Herring sent the Stolen Passwords and other documents received from █REDACTED█ to Bobby Herring on April 8, 2022. (*Id.*).

- That same day, April 8, 2022, Bobby Herring forwarded those documents to Mike Lindell, writing: "Let me know if this comes thru ok. Robert." (*Id.*)

OANN has not produced these communications either. Nor has OANN ever claimed that they were privileged communications. (Kovacs Decl., ¶ 13).  The only thing that was clear to Smartmatic following its review of ██REDACTED██ exchange with Ms. Doe, and its review of the documents OANN produced about the Stolen Passwords, was that there were more documents in OANN's possession, custody and control.

### B.      Smartmatic Writes OANN Regarding Its Deficient Production Of Documents Evidencing Its Executives' Distribution of The Spreadsheet

On October 24, 2023, Smartmatic sent OANN a letter "regarding a set of documents demonstrating several potential violations of the Computer Fraud and Abuse Act (CFAA) contained within OANN's production." (Ex. J, C. Kovacs Letter to C. Butzer, 10/24/23). Due to the sensitive nature of these documents, they included what purported to be passwords for Smartmatic employees and others, Smartmatic "request[ed] a supplemental production containing all documents and communications relating to Smartmatic's findings below" within three business days. (Ex. J, at 1).  That letter pointed to several documents evidencing OANN's receipt and dissemination of the Stolen Passwords, including the communication now at issue.  Smartmatic pointed to the "email that demonstrates ██REDACTED██ requested additional information from this source (OAN_SMMT_00828464) and another that demonstrates ██REDACTED██ sent the document to [Jane Doe] ██████REDACTED██████ (OAN_SMMT_0996295)." (Ex. J at 1.)

### C.      OANN Attempts to Cover Up Its Criminal Activity By Clawing Back Its Dissemination of The Spreadsheet

OANN did nothing for twelve days. OANN responded to Smartmatic's letter on Sunday, November 5, 2023. (Ex. K, C. Butzer Letter to C. Kovacs, 11/5/2023).  OANN represented that it would       "produce     several      non-privileged    documents      that      relate      to ██████REDACTED██████ within the agreed-upon timeframe which were not

9

previously produced." (*Id.*)  However, it claimed that the communication between ████████ REDACTED and Jane Doe had been "inadvertently produced" and was "protected by the joint defense privilege." (*Id.*)  OANN represented, "We will send a separate clawback letter regarding this document." (*Id.*) The twelve-day delay in responding, coupled with the absence of an immediate clawback request, already had Smartmatic's radar on heightened alert for gamesmanship.

OANN sent the promised clawback letter on November 20, 2023, fifteen days after the first letter and nearly a month after Smartmatic first flagged the exchange between ████████ REDACTED and Ms. Doe. (Ex. L, C. Butzer Letter to O. Sullivan, 11/20/23).  The letter stated: "We have found that certain privileged documents were inadvertently included in Defendant Herring Networks, Inc., d/b/a One America News Network's ("Herring") previous productions. Specifically, the documents bates labeled OAN_SMMT_00996295, OAN_SMMT_009962956, and OAN_SMMT_00996297 (the "Inadvertent Production Material")." (*Id.*)  The letter did not provide any basis for the assertion of privilege and demanded that Smartmatic "promptly make a good faith effort to destroy the Inadvertent Production Material and any copies thereof." (*Id.*)  OANN further declared that "[t]he Inadvertent Production Material may not be used for any purpose in this case." (*Id.*)

Upon receipt of this correspondence, Smartmatic already knew the content of the document OANN was attempting to claw back, since it had reviewed it closely and repeatedly in connection with its own deficiency letter to OANN nearly a month earlier. Smartmatic could not conceive of any legitimate basis on which OANN could claim that this document was in any way privileged, so it requested a meet and confer regarding OANN's clawback attempt. (Kovacs Decl., ¶ 17). During the parties' meet and confer, on December 1, OANN confirmed that Jane Doe was not and has never been OANN's lawyer, so the email was not protected by attorney-client privilege.  (*Id.*).

Rather, OANN claimed that the communication was sent pursuant to a joint defense privilege because ███████████████ REDACTED ███████████████. (Kovacs Decl., ¶ 20).

Smartmatic knew OANN was not telling the truth, so it put the lie to the test. First, Smartmatic asked OANN whether there was any writing evidencing this alleged joint defense agreement, and whether OANN would produce it if so. (Kovacs Decl., ¶ 20). OANN represented that it would investigate. (*Id*.). Nothing has been produced. (*Id*.)  Second, Smartmatic asked OANN to produce a privilege log, which it still had not done as of the date of the meet and confer, and to include in writing its basis for the contention that the emails between ███ REDACTED ███ and Ms. Doe were privileged. (Kovacs Decl., ¶ 21). This was a way to test how far OANN and its counsel would go to fabricate a claim of privilege.

Smartmatic also explained to OANN that the parties' Amended Confidentiality Agreement and Protective Order only allows a party to claw back "Protected Information." (Kovacs Decl., ¶ 22; Dkt. 48 ("Protective Order")).  Under the Order:

> if information protected from disclosure pursuant to Federal Rules of Civil Procedure 5.2 or 26(c) ('Protected Information') is inadvertently produced, the Producing Party shall take reasonable steps to correct the error, including a request to the Receiving Party for its return … the Receiving Party shall promptly return the Protected Information and destroy all copies thereof.

(Dkt. 48, ¶19(b)-(c)).  Because the face of the document at issue made clear that it was not in fact protected under *any* doctrine, much less Federal Rules of Civil Procedure 5.2 or 26(c), OANN had no right to claw it back under the Protective Order, and Smartmatic had no obligation to destroy it. (Kovacs Decl., ¶ 22). Nevertheless, Smartmatic told OANN it was willing to evaluate OANN's privilege log and any joint defense agreement OANN may have had with Ms. Doe to see if there was any legitimate basis for OANN's clawback request. (*Id*.)

> **D.**     **OANN's Privilege Log Reveals It Is Improperly Withholding Several Additional Documents Further Evidencing Its Criminal Dissemination of The Spreadsheet**

The clock keeps ticking with OANN doing nothing. OANN produced its first privilege log to Smartmatic on December 8. (Kovacs, Decl. ¶ 23). The log contained an entry for ███████ email to Ms. Doe, which was described as: ████████████████████████

████████████████████████████████████████████████

████████████████████████ (Kovacs Decl., ¶ 24). Apart from the conclusory language at the beginning, this description reinforced Smartmatic's own reading of the document – which is that it was an email sent from one non-attorney to another non-attorney without any exchange or seeking of legal guidance and advice. It is just two separate parties to a lawsuit exchanging an email, albeit one which may constitute a crime.

Smartmatic also identified several other entries on OANN's privilege log that seemed to relate to OANN's further dissemination and use of the Stolen Passwords and other illegally obtained information. For example, one entry shows a ████████ communication from ████████████████████████████████████████ ████████████ (Kovacs Decl., ¶ 25). The log describes this email as being sent ██ ████████ (*Id.*) Other entries suggest that OANN ████████████ ████████████████ (Kovacs Decl., ¶ 26). ████████████ ████████████████████████████ (*Id.*) OANN is withholding ████████ based on its alleged "joint defense" privilege. (*Id.*)

After reviewing OANN's privilege log and receiving no evidence of any joint defense agreement, Smartmatic asked to meet and confer with OANN regarding several issues with OANN's privilege determinations as reflected in OANN's privilege log. (Kovacs Decl., ¶ 27). That same day, December 22, Smartmatic also reminded OANN that ████████ dissemination

of the Stolen Passwords to Ms. Doe and her response to that communication were in no way privileged: "Since this document is not Protected Information, Section 19(c) of the Protective Order does not apply, and Smartmatic is under no obligation to destroy it." (Ex. O, C. Kovacs Email to C. Butzer, 12/22/23). OANN did not respond to either email until January 2024.

E.    "**Thank You Caitlin**"

Smartmatic filed its response to OANN's partial motion for summary judgment ("Response") on December 22, 2023. (Dkt. 155). In that motion, Smartmatic cited to ████████ email to Ms. Doe and the attached Stolen Passwords as evidence of actual malice and potential criminal activity. (Dkt. 155-1, Ex. BB; Dkt. 155-1, Ex. CC). However, as a professional courtesy, Smartmatic did not describe the email with Ms. Doe in detail and did not file the documents on the public docket. (Kovacs Decl., ¶ 31). Instead, Smartmatic submitted both documents to the Court *in camera*, four days after notifying OANN of its plan to do so. (*Id.*) Smartmatic did not need to take these precautions because the documents were not "Protected Information" under the Protective Order. Smartmatic did so as a professional courtesy to ████████████ ████████ and due to the sensitive nature of the stolen information.

On December 24, 2024, Smartmatic's attorney Caitlin Kovacs sent OANN copies of Ex. BB and CC to the Response, which consisted of ████████ email to Ms. Doe and the Stolen Passwords, respectively. (Ex. R, C. Kovacs Email to OANN, 12/24/23). The cover email stated: "Attached are Exhibits BB and CC to Smartmatic's response to OANN's motion for partial summary judgment. **The Court does not yet have these documents**. We will keep you looped in on any communications with the Court about in-camera review." (*Id.*) (emphasis added). OANN responded: "**Thank you Caitlin**." (Ex. R, C. Babcock Email to C. Kovacs, 12/24/23) (emphasis added). OANN did not object. Nor tell Smartmatic that the documents could not be used or

provided to the Court. (Kovacs Decl., ¶ 34). OANN's "thank you" was a tacit acknowledgement of the absurdity of trying to claim the documents were privileged in the first place.

Four days later, on December 28, 2023, Smartmatic sent the Court an email delivering Ex. BB and CC for *in camera* review.  (Ex. S, C. Kovacs Email to Judge Nichols, 12/28/23); (Ex. T, C. Kovacs Cover Letter to Judge Nichols, 12/28/23).   OANN never responded to that email. (Kovacs Decl., ¶ 36). OANN has *never* asked the Court to refrain from reviewing the documents. (*Id*.) And OANN has *never* asked the Court to find the documents to be privileged. From October 2023, when Smartmatic told OANN about the exchange, through December 2023, when Smartmatic provided the exchange to the Court for an *in camera* review, Smartmatic has consistently made clear to OANN that the documents are not Protected Information and OANN has done nothing to have the Court designate them as such.

**F.      OANN Informs Smartmatic That It Is Filing A Motion To Force Smartmatic To Destroy Evidence of OANN's Criminal Activity**

Again the clock keeps ticking with OANN doing nothing to protect the now-allegedly privileged communication between ▮▮REDACTED▮▮ and Ms. Doe. Recall, on December 22, Smartmatic *again* told OANN that the exchange between ▮▮REDACTED▮▮ and Ms. Doe was *not* privileged and therefore *not* Protected Information under the Protective Order. (Ex. O, C. Kovacs Email to C. Butzer, 12/22/23). This was not a new position, but the same position Smartmatic had since October 2023. OANN did not respond to Smartmatic's December 22 email until January 16, **25 days** later. On that day, OANN informed Smartmatic that it would be filing the instant motion "for relief from Plaintiffs' violations of the Federal Rules and the Court's Protective Order." (Kovacs Decl., ¶ 40; Ex. O, C. Butzer email to C. Kovacs, 1/16/24). From silent acquiescence, to "Thank You Caitlin," to a motion for sanctions. OANN was strategically deciding when it would or would not take a stand on whether ▮▮REDACTED▮▮ exchange with Ms. Doe was privileged.

The parties met and conferred regarding OANN's motion on January 17. (Kovacs Decl., ¶ 41). Smartmatic then expressed to OANN what it argues herein today: Smartmatic never had an obligation to enable OANN's attempt to cover up evidence of its own crime.  The document is not, was not, and never has been Protected Information under the Protective Order so referencing it in the opposition was proper. Moreover, OANN had every opportunity to object before Smartmatic submitted Ex. BB (and CC) to the Court, but instead of doing so, it simply thanked Smartmatic for the heads-up and sat on its hands.  Smartmatic documented its position regarding OANN's motion in an email following the meet and confer.  (Ex. O, C. Kovacs Email to C. Butzer, 1/17/24, pp. 2-3). OANN replied on January 19, the same day it filed the motion.  *(Id.,* C. Butzer Email to C. Kovacs, 1/19/24).

## IV.    LEGAL STANDARD

In order for sanctions to be warranted under the Court's inherent power, "a court must make 'specific finding[s]' that a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons,' by 'clear and convicting evidence.'" *Priority One Servs., Inc. v. W & T Travel Servs., LLC*, 987 F. Supp. 2d 1, 4 (D.D.C. 2013) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)).  "'[N]egligent, even sloppy, performance by [] counsel,' is insufficient to award monetary sanctions under a court's inherent power." *Id.* at 5.  Regardless of whether the sanction requested is monetary, the Supreme Court has noted that "[b]ecause inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Shepherd v. Am. Broadcasting Cos., Inc.*, 62 F.3d 1469, 1475 (D.C. Cir. 1995) (quoting *Roadway Express*, 447 U.S. at 764).

## V.    ARGUMENT

OANN's motion for sanctions is predicated on the false assumption that [REDACTED] exchange with Ms. Doe was Protected Information under the Protective Order. But the exchange

with Ms. Doe is not Protected Information and OANN's after-the-fact attempt to cloak it is as such is fraudulent. The joint defense privilege does not apply because the exchange is between two non-lawyers sharing illegally obtained information. They are not exchanging legal advice and guidance. Moreover, even if the joint defense privilege applied, the crime-fraud exception eviscerates the privilege. [REDACTED] dissemination of the Stolen Passwords qualifies as a potential crime under state and federal statutes. Smartmatic cannot be sanctioned for referencing a non-privileged exchange between [REDACTED] and Ms. Doe.

Even if the Court *now* finds that the exchange is privileged, and *now* qualifies as Protected Information, Smartmatic still should not be sanctioned. Smartmatic had a good faith basis for believing the exchange was not privileged, and therefore not Protected Information, when it referenced the exchange in its opposition brief. Smartmatic had made that position clear to OANN multiple times since it (Smartmatic) first discovered the exchange. OANN has never provided any factual or legal basis to refute or rebut that position. Indeed, by its actions and inactions through December 2023, OANN reinforced and seemingly acquiesced to the conclusion that the exchange was not privileged and, therefore, was not Protected Information. Smartmatic's passing reference to the exchange in its opposition was not done in bad faith. It was done based on its good faith belief that OANN's original assertion of a privilege was fraudulent and its "Thank You Caitlin" email was final acquiescence to that fact.

Finally, it is worth noting that OANN, not Smartmatic, is the party drawing attention to [REDACTED] exchange with Ms. Doe. Smartmatic did not detail the exchange in its opposition brief. Smartmatic did not name names in its opposition brief. Smartmatic made a passing reference to the exchange because it was evidence of actual malice (motive) and submitted the documents (with OANN's consent) for *in camera* review. That is not acting "vexatiously, wantonly, or for

oppressive reasons." Smartmatic was acting in good faith and subtly. OANN, on the other hand, has decided to draw attention to potentially criminal behavior by one of its ████████ for reasons passing understanding. If OANN was really concerned about preserving a privilege, if this was really about Protected Information, OANN would have handled everything about the document differently from the day it was produced without any privilege designations or redactions.

### A.   The Joint Defense Privilege Does Not Protect A Communication Between Two Non-Attorneys Sharing And Discussing Illegally Obtained Information

OANN does not argue that the document at issue is attorney-client privileged. It does not because it cannot. ███████████ OANN claimed that it withheld Ex. BB on the basis of the "Joint Defense" privilege. ██████████████ But a joint defense does not create a privilege on its own, and Ex. BB does not meet the requirements for protection from disclosure.

"[T]he joint defense or common interest rule presupposes the existence of an otherwise valid privilege." *Minebea Co., Ltd. v. Papst*, 228 F.R.D. 13, 16 (D.D.C. 2005) (quoting *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990)).  Before any privilege could possibly apply to a joint-defense communication, the communication needs to "first satisfy the traditional requisites for the attorney-client or work product privilege before they become or remain privileged." *Id.*  "Without showing the applicability of the attorney-client privilege, [a party's] claim of a common interest privilege must also fail." *BioConvergence LLC v. Attariwala*, No. 20-mc-101 (RC), 2023 WL 2086078, at *14 (D.D.C. Feb. 17, 2023).  Thus, for the joint privilege to even potentially apply, the communication must be "(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *Feld v. Fireman's Fund Ins. Co.*, 292 F.R.D. 129, 137 (D.D.C. 2013) (quoting *Jones v. United States*,

828 A.2d 169, 175 (D.C. 2003)).  If privileged and shared amongst co-defendants, the joint defense privilege maintains that privilege if "(1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived."  *Minebea*, 228 F.R.D. at 16.

Ex. BB includes communications between ▮REDACTED▮ and Ms. Doe, ▮REDACTED▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  The communication includes information provided by a third party, including the Stolen Passwords.  On the face of the document, no legal advice is sought or given. There is no question, and OANN does not argue otherwise, that the document is not covered by the attorney-client privilege.  That alone disqualifies any protection offered by the joint defense privilege.  *See Bioconvergence LLC*, 2023 WL 2086078 at *14.  The Court does not need to do any further analysis. OANN produced Ex. BB on October 6, 2023 because the exchange was clearly not privileged. OANN's attempt to cloak it with a privilege after-the-fact was fraudulent on its face. The cover up here, a fraudulent claim of privilege, is as bad as the underlying crime.

Moreover, OANN has implicitly conceded that the joint defense privilege cannot apply. A similar document appears to have been produced in the *Coomer* litigation.  *See* Plaintiff's Omnibus Response to Defendants' Omnibus Motion for Summary Judgment at ¶ 45, *Coomer v. Lindell*, No. 1:22-cv-01129-NYW-SKC (D. Colo.), 2023 WL 9320313 ("On April 8, 2022, Lindell received an email from Robert Herring. Robert Herring had forwarded Lindell an email from his son, Charles. The subject line of the email was "Re: Eric Coomer information," and attached to the email was a series of documents containing detailed information about Dr. Coomer and his friends and relatives, as well as password information for employees of several voting systems providers.") As far as Smartmatic knows, OANN has not taken any actions to protect Mr. Herring's exchange

with Mr. Lindell even though OANN and Lindell were both defendants in the *Coomer* litigation –

████████████ REDACTED ████████████.

### B.     The Crime-Fraud Exception Cuts Off Any Application of Privilege to ██REDACTED██ Dissemination of the Stolen Passwords

██REDACTED██ dissemination of the Stolen Passwords to Ms. Doe is evidence of a number of state and federal crimes. It also constitutes behavior that is wholly inconsistent with the civil discovery process; sharing hacked passwords to a common adversary's email systems is not the kind of "joint effort" that the joint defense privilege was designed to encourage or protect. Therefore, the crime-fraud exception keeps privilege from attaching to Ex. BB.

"Attorney-client communications are not privileged if they 'are made in furtherance of a crime, fraud, or other misconduct.'" *In re Grand Jury*, 374 U.S. App. D.C. 428, 434, 475 F.3d 1299, 1305 (2007), quoting *In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985). The crime-fraud exception is established when there is prima facie evidence that, if believed by the trier of fact, would establish the elements of a crime, fraud, or another "type of misconduct fundamentally inconsistent with the basic premises of the adversary system." *In re International Mineral Resources B.V.*, No. 14-mc-340(GK), 2015 WL 4555248, at *5 (D.D.C. July 28, 2015) (citations omitted). Since the joint defense privilege "presupposes the existence of an otherwise valid privilege," the crime-fraud exception will therefore defeat a joint defense privilege claim as well. *See Minebea Co. v. Papst*, 228 F.R.D. 13, 16 (D.D.C. 2005), quoting *In re Grand Jury Subpoenas, 89-3 & 89-4, John Doe 89-129 (Under Seal)*, 902 F.2d 244 (4th Cir. 1990). Smartmatic below analyzes several of the ways in which ██REDACTED██ dissemination of the Stolen Passwords qualifies for the crime-fraud exception, but this is by no means an exhaustive list of the potential federal and state statutes that may be implicated by ██REDACTED██ misconduct.

1. **OANN's Dissemination of the Stolen Passwords Appears To Have Violated the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510–2523 ("ECPA")**

The ECPA declares that "anyone who intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any electronic communication" … "shall be punished" via federal fines or up to five years in prison, or "shall be subject to suit" by the Federal Government. § 2511(1)(a), (4), (5). The same penalties and consequences apply to "anyone who intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." § 2511(1)(c).

Ex. BB is evidence that ███REDACTED███ "intentionally disclose[d], or endeavor[ed] to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." § 2511(1)(c). ███REDACTED███ received the Stolen Passwords from an anonymous source who did not even disclose his first name, much less his zip code. Between the anonymity of the source and the nature of the information the Stolen Passwords provided, ███REDACTED███ certainly had "reason to know" that the purported passwords may have been "obtained through the interception of a wire, oral, or electronic communication." His further dissemination of information that he had reason to believe was uncovered through hacking activity seems to be evidence of his intentional disclosure of illegally intercepted information.

Ex. BB may also constitute evidence that ███REDACTED███ "procure[d]" Jane Doe "to intercept or endeavor to intercept … electronic communication[s]" from Smartmatic employees. (Dkt. 155-1, Ex. BB; Ex.H). ███REDACTED███ cover email to Ms. Doe said: ███REDACTED███



REDACTED

(*Id.*)

The day before [REDACTED] sent his email, [REDACTED]

### 2. OANN's Dissemination of the Spreadsheet Appears To Have Violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA")

The CFAA prohibits individuals from "intentionally [accessing] a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). Individuals convicted under the CFAA are subject to fines or imprisonment for up to one year. 18 U.S.C. § 1030(c)(2)(A). Conspiring with others to acquire and disseminate another party's passwords, even if the at-issue individual was not the one who literally obtained the passwords, is a violation of the CFAA. *See United States v. Cioni*, 649 F.3d 276, 284 (4th Cir. 2011). In *Cioni*, the defendant worked with another individual to obtain email passwords without the consent of the email account owners. *Id.* That the defendant did not herself obtain the passwords was irrelevant, and the court concluded that "it was sufficient to show that Cioni conspired unlawfully to access computers and electronic storage facilities containing

21

unopened emails for the purpose of accessing other computers and harassing, annoying, and harming [the victims]." *Id.*

Here, whether ▮REDACTED▮ someone from OANN hacked Smartmatic employees' accounts is irrelevant. After receiving the Stolen Passwords, ▮REDACTED▮ disseminated the illegally obtained information to Ms. Doe and Mr. Lindell and perhaps others. That is potentially illegal under the CFAA. Charles Herring also solicited even *more* illegally obtained information, writing to the anonymous source: "Thank you! 😊 If you come across any addition [sic] information, *please pass along*. Charles." (Ex. C) (emphasis added). The fact that ▮REDACTED▮ may not have done the hacking does not make their conduct upon receipt of the Stolen Passwords any less a crime.

### 3. **OANN's Dissemination of the Spreadsheet Constitutes "Misconduct Fundamentally Inconsistent With The Basic Premises Of The Adversary System"**

As noted above, D.C. courts have adopted the notion that the crime-fraud exception can apply even when no actual crime has been committed, but the party has engaged in the "type of misconduct fundamentally inconsistent with the basic premises of the adversary system." *In re International Mineral Resources B.V.*, No. 14-mc-340(GK), 2015 WL 4555248, at *5 (D.D.C. July 28, 2015). Courts have found the exception applies in situations involving various types of wrongdoing. *See, e.g.*, *Recycling Sols., Inc. v. District of Columbia*, 175 F.R.D. 407, 409 (D.D.C. 1997) (applying the exception to a communication regarding counsel assisting in litigation designed to facilitate ethnic discrimination); *Coleman v. Am. Broadcasting Cos., Inc.*, 106 F.R.D. 201, 208 (D.D.C. 1985) (noting that another court applied the crime-fraud exception to communications made in furtherance of intentional, non-business torts).

Here, there is no question that soliciting and distributing the login credentials of employees of a company charged with administering national elections across the globe amounts to grave misconduct.  Further, ████REDACTED████ disseminated this information regarding a company that it had already repeatedly and maliciously defamed on national television, and sent the purported login credentials to people who were actively trying to break into other election infrastructure in an attempt to influence elections.  Ms. Doe, for example, ████████REDACTED████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████

OANN's after-the-fact claim that it can shield ████REDACTED████ dissemination of the Stolen Passwords because the dissemination was related to OANN and Doe's "joint effort" to defend themselves in the litigation is worrisome.  Here's what that actually means: OANN and Doe were undertaking a "joint effort" to *hack into Smartmatic's systems* so that they could *illegally obtain evidence* to use in a civil case brought against them for defamation.  It is painful to have to state this affirmatively, but here goes: hacking is not a permitted method by which a civil defendant may pursue discovery in the United States of America. *See, e.g.*, 18 U.S.C. § 2518(10)(a)(i) (allowing a party to suppress evidence obtained in violation of the ECPA); *Twin Falls NSC, LLC v. S. Idaho Ambulatory Surgery Ctr., LLC*, 2020 WL 5523384, at *19 (D. Idaho Sept. 14, 2020) ("[A]ny information obtained illegally may not be used in future discovery or depositions.").

Because ██REDACTED██ and Ms. Doe's "joint effort" to hack into Smartmatic's email systems is misconduct fundamentally inconsistent with the basic premises of the adversary system, the crime-fraud exception keeps privilege from attaching to their communication.

### VI.    OANN's Request for Sanctions Is Baseless

The fact that Ex. BB is painfully and obviously not privileged, and not Protected Information under the Protective Order, means that Smartmatic's passing reference to it in its opposition brief violated nothing. Smartmatic made it abundantly clear to OANN that it would not go along with OANN's manufactured claim of a joint defense privilege. Ex. BB is not and was never Protected Information. But, even if the Court disagrees and finds that Ex. BB is Protected Information, Smartmatic should not be sanctioned for its good faith use of the exchange in its opposition brief.

### A.    Smartmatic Acted In Good Faith In Compliance With The Protective Order And The Federal Rules

OANN omits several material facts to manufacture a narrative of Smartmatic's alleged bad faith. OANN misleads the Court by omitting (a) *how* Smartmatic first became aware of the contents of Ex. BB, (b) the efforts Smartmatic undertook to give OANN the opportunity to object before Smartmatic submitted Ex. BB to the Court *in camera*, and (c) OANN's own consent to Smartmatic's submission.  Smartmatic conducted itself in good faith with regard to Ex. BB, and fully complied with the applicable Protective Order and Federal Rules.

### 1.    Smartmatic's Review of Ex. BB Pre-Dated OANN's Clawback Letter

OANN argues that Smartmatic should be sanctioned for reviewing Ex. BB – which, to be clear, OANN produced to Smartmatic. In support of this position, OANN relies entirely on two decisions: *EEOC v. George Washington University* and *In re Disposable Contact Lens Antitrust*

*Litigation*.  However, neither case supports OANN's request for sanctions because they involve parties who reviewed the at-issue document only *after* first receiving a claw back request.

In *EEOC v. George Washington University*, an issue arose regarding a claim of inadvertent production to the EEOC.  502 F. Supp. 3d 62 (D.D.C. 2020).  This Court noted that "[t]he agency had not previously reviewed the emails" at issue.  *Id.* at 69.  But upon receiving the notice of inadvertent production, counsel for the EEOC went ahead and "'reviewed the headers and glanced at or skimmed portions' of the identified emails." *Id.*  Ultimately, this Court held that sanctions were not warranted in that matter.  *Id.* at 90.[4] Similarly*, In re Disposable Contact Lens Antitrust Litigation* involved a party that reviewed documents for the first time only *after* receiving notice of the inadvertent production.  No. 3:15-md-2626-J-20JRK, WL 7115998, at 1-2 (D.D.C. Oct. 24, 2016).  *Disposable Contact Lens* further acknowledged that when the procedures in a protective order differ from those in the Federal Rules, "[s]uch agreements and orders ordinarily control if they adopt procedures different from those in Rule 26(b)(5)(B)." *Id.* at *3.

OANN's reliance on these two cases fails because this is not a situation in which Smartmatic was first informed of an inadvertent production and then set off to review the purportedly privileged document.  Rather, this is a case in which Smartmatic brought the so-clearly-not-privileged document to OANN's attention as evidence of a crime and OANN's ongoing improper withholding of evidence.  Smartmatic found the document in its ordinary review of OANN's document production, reviewed it extensively, compared it with the remainder of OANN's production, and then drafted a letter asking OANN to produce other documents similar

---

[4] Importantly, this Court in *EEOC* did not simply determine whether an ethical or protective-order violation had occurred without simultaneously analyzing the validity of the privilege claim itself.  Indeed, this Court conducted a full review of the privilege assertions being made by the producing party.  *EEOC*, at 78–81.  OANN's suggestion that the Court do otherwise *here* is absurd, as it asks the Court to order Smartmatic to destroy a document without any consideration as to whether that document is *actually privileged*.

and related to Ex. BB.  (Ex. J, C. Kovacs Letter to C. Butzer, 10/24/23). To Smartmatic's disappointment and surprise, rather than abandoning its previous attempt at a cover-up by agreeing to produce the additional documents it was withholding, OANN decided to lean right in and *expand* that cover-up attempt. However, OANN's claw back letter did not operate to erase the knowledge of the document from Smartmatic's memory, and Smartmatic was under no obligation to feign ignorance as to the insanity of OANN's request.  Because Smartmatic had extensively reviewed Ex. BB before receiving OANN's claw back request, neither *EEOC v. George Washington University* nor *In re Disposable Contact Lens Antitrust Litigation* is on-point, and neither supports the imposition of sanctions in this matter.

### 2.  Smartmatic Complied with The Parties' Protective Order

The Protective Order in this case states that "if information protected from disclosure pursuant to Federal Rules of Civil Procedure 5.2 or 26(c) ('Protected Information') is inadvertently produced, the Producing Party shall take reasonable steps to correct the error, including a request to the Receiving Party for its return … the Receiving Party shall promptly return the Protected Information and destroy all copies thereof."  (Dkt. 48, ¶19(b)-(c)). Clearly, the obligation to "promptly return" and "destroy all copies thereof" applies *only* to "Protected Information," defined as information protected by Federal Rules of Civil Procedure 5.2 or 26(c).

Federal Rule of Civil Procedure 5.2 protects only personal privacy information, such as "an individual's social-security number, taxpayer-identification number, or birth date." F.R.C.P. 5.2(a).  No such information appears on the face of Ex. BB. Federal Rule of Civil Procedure 26(c) relates to protective orders parties may seek from a court, and provides for potential limitations on the discovery of certain information, including for example "a trade secret or other confidential research, development, or commercial information." F.R.C.P. 26(c)(G). Neither rule comes anywhere *close* to protecting the communication between REDACTED and Ms.

Doe evidenced in Ex. BB. Because Smartmatic already knew that Ex. BB did not qualify as "Protected Information" under the terms of the Protective Order, Smartmatic was under no obligation to destroy it after receiving OANN's claw back letter.

### 3. Smartmatic Complied with Federal Rule of Civil Procedure 26(b)(5)(B)

OANN claims that upon receipt of the clawback notice, Smartmatic had only two choices: accept the privilege claim or challenge it to the Court. Motion at 8. Not so. As shown above, at the time OANN sent its clawback notice, Smartmatic already knew Ex. BB could not be privileged under any interpretation of the law. Federal Rule 26(b)(5)(B) only applies if the information "is subject to a claim of privilege or of protection as trial-preparation material." Fed. R. Civ. P. 26(b)(5)(B). Since Ex. BB is not subject to a claim of privilege, which Smartmatic already knew at the time of the notice, Smartmatic had no obligation to return, sequester, or destroy the document. *See id*. Furthermore, the plain text of Rule 26(b)(5)(B) dictates only that the receiving party "may promptly present the information to the court under seal for a determination of the claim," not that it is required to do so. *Id*.; *see also Williams v. District of Columbia*, 806 F. Supp. 2d 44, 52 n.9 (D.D.C. 2011) ("The Rule provides that the receiving party '*may* promptly present the information to the court under seal for a determination of the claim,' Fed. R. Civ. P. 26(b)(5)(B) (emphasis added), but does not require it to do so.")

OANN's claim otherwise is absurd, as it puts the onus on Smartmatic to expend its own resources if it does not wish to be complicit with OANN's cover-up of ⬛REDACTED⬛ crime. OANN's interpretation of Rule 26(b)(5)(B) essentially reads out the "[i]f information is subject to a claim of privilege" portion of the rule, and would enable a party to assert wholly meritless privilege claims in an attempt to delay proceedings, abuse the litigation process by causing the other party to expend resources, or – as is the case with OANN – conceal criminal activity. This

is not a situation in which OANN is making a legitimate or even colorable privilege claim and Smartmatic is abusing that notice to gain advantage.  Instead, this is OANN abusing the joint privilege doctrine in an attempt to cover up its own crime, after *Smartmatic* alerted OANN of evidence to that effect.

OANN hinges its argument on *EEOC v. George Washington University*, but it ignores the materially different situation the court analyzed in that case.  502 F. Supp. 3d 62, 73 (D.D.C. 2020).  In *EEOC*, the entire analysis of the receiving party's options and obligations is premised on the receiving party having not reviewed the inadvertently produced document.  *Id.*  Smartmatic does not disagree that after an inadvertent disclosure is noticed, a receiving party cannot perform its own independent review of that information to verify the privilege claim.  That is not what happened here.  When, in the ordinary course of reviewing documents, counsel finds evidence that the opposing party has acquired and disseminated their client's employees' email passwords, knowledge of that document is indelible.  It cannot be unlearned.  Due to its sensitive nature, addressing the document was a high priority.  Smartmatic studied the document and analyzed the legal implications of ▮▮REDACTED▮▮ conduct.  (Ex. J).  Had the document contained *any* indication that it was privileged, Smartmatic would not have conducted this analysis.  But there was no such indication.  OANN's claims that Smartmatic's knowledge of Ex. BB is the result of post-notice review is disingenuous, as OANN received – well before it ever sent its notice – Smartmatic's thorough analysis of the document.  (*Id.*)

### 4.  Smartmatic Conducted Itself in Good Faith

Smartmatic was transparent with OANN about its position from the start.  (Kovacs Decl., ¶¶ 18-22, 27, 40-42).  In each meet and confer, Smartmatic reminded OANN that the exchange was not privileged and was not Protected Information under the Protective Order. OANN was unable to credibly refute Smartmatic's concerns about the meritlessness of the clawback request.

It never provided any evidence of a joint defense agreement between OANN and Ms. Doe. It never explained how it could possibly qualify for a joint defense privilege when legal advice and guidance were never discussed in the exchange. And its description of the exchange on its privilege log reinforced that it could not possibly qualify as privileged. Smartmatic was transparent with OANN when it sent the email on December 22 repeating its position on Ex. BB and repeating that it had no obligation to destroy it.

OANN makes much of the fact that Smartmatic cited to Ex. BB in its opposition to OANN's motion for summary judgment. What it ignores is that (a) Smartmatic did so only after telling OANN for weeks the document was not privileged or Protected Information and that (b) Smartmatic's description of Ex. BB in its opposition provides even less information than OANN's own *non-confidential* privilege log.  OANN's privilege log shows that ▮REDACTED▮ forwarded the Stolen Passwords received from ▮REDACTED▮ to Ms. Doe ▮REDACTED▮. (Ex. A, OANN Privilege Log, p. 19).  The description reads: ▮REDACTED▮

▮REDACTED▮

▮REDACTED▮ (*Id.*).  OANN produced its log without any confidentiality designation. (Kovacs Decl., ¶ 23).  So, apparently, OANN would be OK with that description, including Ms. Doe's real name, being made public and being used.

Smartmatic's description is far more nuanced and reveals less than is apparent from the log. Smartmatic's description:

> "Discovery to date has uncovered that <u>certain members of the executive team</u> were in communication with <u>an individual who has already pled guilty</u> to crimes relating to the 2020 election. **Exhibit BB** is a true and accurate copy of an e-mail from an OANN executive to this individual on January 8, 2021, as produced by OANN in this litigation. **Exhibit CC** is a true and accurate copy of a document attached to that email containing what is identified as passwords of Smartmatic employees. This document was

> originally produced in native excel format and included multiple
> tabs of information. For purposes of this filing, Smartmatic
> converted the document to PDF and only included information
> relevant to the computer fraud and abuse allegations. The contents
> of this document have not otherwise been altered. **Exhibits BB
> and CC** will be provided to the Court for *in camera* review." (Dkt.
> 155) (underline added; bold and italics in original.)

Smartmatic did not name the OANN executive. Smartmatic did not name Ms. Doe. Smartmatic

provided very little information in its opposition. Far more would be learned by filing on the public

docket OANN's non-confidential privilege log, which Smartmatic has not done (again as a

professional courtesy).

Moreover, Smartmatic provided these documents for *in camera* review as a professional

courtesy to ▮REDACTED▮ and to protect the sensitive information in the Stolen Passwords.

Smartmatic's Response filed December 22, 2023 made that plan clear.  In its December 24 email

to OANN, Smartmatic reiterated its plan to submit the documents *in camera*, attached pdfs of Ex.

BB and CC, and made clear that "[t]he Court does not yet have these documents. We will keep

you looped in on any communications with the Court about in-camera review." (Ex. R, C. Kovacs

Email to OANN, 12/24/23) (emphasis added).   OANN responded saying only: "Thank you

Caitlin." (Ex. R, C. Babcock Email to C. Kovacs, 12/24/23) (emphasis added). Smartmatic

reasonably interpreted OANN's email as consent, especially where OANN had not responded to

Smartmatic's previous email confirming its position that Ex. BB was not privileged and was not

subject to claw back.

Smartmatic's submission of Ex. BB and CC to the Court *in camera* four days later was, of

course, in good faith.  (*See* Ex. S, Ex. T, C. Kovacs Email and Letter to the Court).  Smartmatic

had given OANN multiple opportunities to object to Smartmatic's position and plans, and in

response, received only a "Thank you" email.  Smartmatic had no reason to believe that OANN

was continuing to assert privilege over Ex. BB in light of OANN's conduct (and the objective absurdity of the claim itself).

### VII.   OANN Has Waived Any Ability To Request Relief

As Smartmatic has shown, Ex. BB is not privileged.  But even if it were, OANN has waived any ability it may have had to request the relief it seeks.  OANN delayed taking reasonable steps to rectify the disclosure.  It delayed after disclosing the document.  It delayed after Smartmatic raised a concern that ▮REDACTED▮ had committed a crime, using the document as evidence.  It delayed after Smartmatic told OANN it did not believe the document was privileged and would not be destroying it.  It *consented* after Smartmatic told OANN of its intent to send the document to the Court.  And it delayed after Smartmatic sent the document to the Court.  This amounts to waiver.

When a party discloses otherwise privileged material, that disclosure constitutes a waiver unless "(1) the disclosure is inadvertent; (2) the holder of the privilege or protection took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." *Williams v. District of Columbia*, 806 F. Supp. 2d 44, 48 (2011) (quoting Fed. R. Evid. 502(b)). Merely notifying the other party of the inadvertent disclosure is not always sufficient to demonstrate reasonable steps to rectify the error.  *Id.* at 51–52.

*Williams* is instructive.  The producing party notified the other party that privileged material had been inadvertently disclosed, but when the other party did not promptly return the material, the producing party did nothing for a period of time.  *Id.* at 52.  The *Williams* court noted that the producing party's delay of two years and eight months was overwhelmingly unreasonable, but it also noted case law finding that "attempts to rectify the error 55 days after discovery as a

'prompt effort' was a 'debatable position.'" *Id.* (quoting *Amobi v. D.C. Dep't of Corr.*, 262 F.R.D. 45, 54 (D.D.C. 2009)).

Here, OANN was on notice by October 24, 2023 that Ex. BB had been produced.  (Ex. J, C. Kovacs Letter to C. Butzer, 10/24/23).  OANN waited 12 days before responding, indicating that the document was produced inadvertently and that a clawback letter would follow.  (Ex. K, C. Butzer Letter to C. Kovacs, 11/5/23). OANN waited an additional 15 days to send the clawback letter.  (Ex. L, C. Butzer Letter to C. Kovacs, 11/20/23).  After Smartmatic confirmed on December 22, 2023, following the parties' meet and confer, that it would not destroy the document, OANN did nothing.  (Ex. O, C. Kovacs Email to C. Butzer, 12/22/23). After Smartmatic provided a copy of Ex. BB to OANN, indicating that it *had not yet* sent it to the Court for *in camera* review but that it planned to do so, OANN merely said, "Thank you Caitlin."  (Ex. R, C. Babcok Email to C. Kovacs, 12/24/23).  When Smartmatic sent Ex. BB to the Court, OANN said nothing.  (Ex. S, Ex. T, C. Kovacs Communications to Court, 12/28/23).  In fact, in light of OANN's consent and otherwise silence, Smartmatic considered this issue resolved until January 16, 2024, when OANN alerted Smartmatic that it would be filing the instant Motion.  (Ex. O, C. Butzer Email to C. Kovacs, 1/16/23).  Ultimately, OANN waited 87 days from the day it was on notice of the disclosure to seek relief from the Court.

If OANN had truly believed that Ex. BB was privileged, it could and would have (a) asked Smartmatic not to submit the document to the Court instead of saying "Thank you"; (b)  asked the Court not to review Ex. BB once it had been sent; and/or (c) responded to Smartmatic's December 22 email promptly instead of waiting until January 16.  OANN did none of these things. And to this day, well over a month after the Court first received Ex. BB, OANN *has never* asked the Court to refrain from examining it.  Because OANN consented to the disclosure of Ex. BB

*before* Smartmatic submitted it, objected to that disclosure (for the first time) a full three weeks later, and still has not made any effort to shield Ex. BB from the Court's review, OANN has waived its right to claim any privilege over Ex. BB and waived its right to seek sanctions against Smartmatic for the disclosure it consented to. *Certain Underwriters at Lloyd's, London v. Nat'l R.R. Passenger Corp.,* 218 F. Supp. 3d 197, 201 (E.D.N.Y. 2016) (failure to object to use of information constitutes waiver).

## VIII.   CONCLUSION

OANN's motion for sanctions is another attempt to divert attention from the fact that OANN defamed Smartmatic and should be made to answer for that defamation. There are limits to zealous advocacy. Manufacturing a privilege where none exists is one line that should not be crossed. OANN and its counsel have crossed that line. Filing a frivolous motion for sanctions predicated on a passing reference to an obviously-not-privileged communication is another line that has likewise now been crossed. Smartmatic understands that OANN may not like the fact that **REDACTED** potential criminal activity is evidence of actual malice (motive) but it is. OANN does not get to conceal that evidence and Smartmatic should not be sanctioned for a passing reference to that evidence. The motion should be denied.

Date: February 2, 2024

<div style="text-align: right">

*/s/ J. Erik Connolly*
J. Erik Connolly (D.C. Bar No. IL0099)
Nicole E. Wrigley (D.C. Bar No. IL0101)
Ronald S. Betman (admitted *pro hac vice*)
Caitlin A. Kovacs (admitted *pro hac vice*)
Olivia E. Sullivan (admitted *pro hac vice*)
BENESCH, FRIEDLANDER, COPLAN
  & ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312.212.4949
econnolly@beneschlaw.com
nwrigley@beneschlaw.com
rbetman@beneschlaw.com

</div>

ckovacs@beneschlaw.com
osullivan@beneschlaw.com

James R. Bedell (admitted *pro hac vice*)
BENESCH, FRIEDLANDER, COPLAN
 & ARONOFF LLP
127 Public Square, Suite 4900
Cleveland, OH 44114
Telephone: 216.363.4500
jbedell@beneschlaw.com

*Attorneys for the Plaintiffs Smartmatic USA*
*Corp., Smartmatic International Holding B.V.,*
*and SGO Corporation Limited*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of February, 2024, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which I understand to have served counsel for the parties, and sent a copy to counsel via email.

<div style="margin-left:40%">

*/s/ J. Erik Connolly*
J. Erik Connolly

*One of the Attorneys for the Plaintiffs*
*Smartmatic USA Corp., Smartmatic International*
*Holding B.V., and SGO Corporation Limited*

</div>