# EXHIBIT B

UNITED STATES DISTRICT AND BANKRUPTCY COURTS
FOR THE DISTRICT OF COLUMBIA

SMARTMATIC USA CORP, et al.,   Civil No.  21-cv-02900

      Plaintiffs,

    v.                          Washington, D.C.

HERRING NETWORKS, INC.,         February 6, 2024

      Defendant.        2:00 p.m.

------------------------/

TRANSCRIPT OF DISCOVERY HEARING
BEFORE THE HONORABLE MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiffs:    CAITLIN KOVACS, ESQUIRE
                       OLIVIA SULLIVAN, ESQUIRE
                       CHRIS LETKEWICZ, ESQUIRE


For the Defendant:     CHARLES L. BABCOCK, ESQUIRE
                       MINOO BLAESCHE, ESQUIRE
                       JOHN EDWARDS, ESQUIRE
                       TRENT MCCOTTER, ESQUIRE
                       CARL BUTZER, ESQUIRE
                       JONATHAN NEERMAN, ESQUIRE


Court Reporter         Lisa K. Bankins RMR FCRR RDR
                       United States District Court
                       District of Columbia
                       333 Constitution Avenue, NW
                       Washington, D.C. 20001



Proceedings recorded by mechanical stenography,
transcript produced by notereading.

```
1              P R O C E E D I N G S

2          THE COURTROOM DEPUTY:  Good afternoon, Your

3    Honor.  This is Civil Case Number 21-2900, Smartmatic USA

4    Corp., et al. v. Herring Networks, Inc.  This matter is

5    set for a discovery hearing.  Parties, please introduce

6    yourselves for the record, starting with plaintiffs'

7    counsel.

8          MS. KOVACS:  Hello, Your Honor.  We're happy to

9    be here again.  I'm Caitlin Kovacs from Benesch

10   Friedlander here on behalf of the Smartmatic plaintiffs

11   and I'll let my colleagues introduce themselves as well.

12         THE COURT:  Good afternoon, Ms. Kovacs.

13         MS. SULLIVAN:  Good afternoon, Your Honor --

14         THE COURT:  You need to speak into the mic.

15         MS. SULLIVAN:  Good afternoon, Your Honor.

16   Olivia Sullivan on behalf of plaintiff, Smartmatic.

17         THE COURT:  Good afternoon.

18         MR. LETKEWICZ:  Good afternoon, Your Honor.

19   Chris Letkewicz on behalf of plaintiff, Smartmatic.

20         THE COURT:  Okay.  Good afternoon.

21         MR. BABCOCK:  Good morning, Your Honor.  Good

22   afternoon, Your Honor --

23         THE COURT:  It's afternoon by my count.

24         MR. BABCOCK:  Charles Babcock on behalf of

25   defendant, OAN.
```

```
 1              THE COURT:  Good afternoon.
 2              MS. BLAESCHE:  Good afternoon, Your Honor.
 3   Minoo Blaesche on behalf of defendant.
 4              THE COURT:  Good afternoon.
 5              MR. EDWARDS:  Good afternoon, Your Honor.  John
 6   Edwards on behalf of the defendant.
 7              THE COURT:  Good afternoon.
 8              MR. McCOTTER:  And Trent McCotter also on behalf
 9   of the defendant, judge.
10              THE COURT:  Okay.
11              MR. BUTZER:  Carl Butzer also on behalf of
12   defendant.
13              THE COURT:  Okay.
14              MR. NEERMAN:  And, Your Honor, Jonathan Neerman
15   here on behalf of the defendant.
16              THE COURT:  Good afternoon.  Who from each side
17   is going to be addressing the Court this afternoon?
18              MS. KOVACS:  For our side, Your Honor, it will
19   be primarily myself with a couple of Round 1 items
20   assigned to each of Ms. Sullivan and Mr. Letkewicz.
21              THE COURT:  Okay.
22              MR. BABCOCK:  Your Honor, depending on which
23   direction we go, I'll be primarily talking to the Court.
24   But everybody except Mr. Butzer -- we don't let him out to
25   speak to people -- will be talking about the various
```

1    motions.

2            THE COURT:  Okay.  So given that there are some

3    documents that you all will be looking at -- typically, I

4    require counsel to stand and come to the podium.  But

5    you're welcome to do that.  But if you'd like, if you are

6    consulting documents at the desk, you can stay there.

7    It's really up to you.  But I just want to make sure

8    everyone really needs to speak into the mic at any given

9    time.

10           Okay.  I have a list of things that I'm going to

11   go through today.  First, I'm going to address the second

12   motion for extension of time to complete discovery, which

13   is at 165, which Judge Nichols has referred to me.  I am

14   going to grant the motion.

15           I will say, however, that I've been pretty

16   disappointed in how discovery has proceeded thus far.

17   We're going to address certain topics.  But specifically,

18   this extension of discovery is your extension.  And one

19   thing I will not tolerate is, you know, any party sitting

20   on their hands.  To be very frank, Smartmatic, I would

21   have noticed depositions if I were in your shoes.  The

22   motion for recusal did not stay discovery.

23           Now there may have been disputes that, you know,

24   you were not able to get -- either side was not able to

25   get a ruling on while the motion for recusal was pending,

1    but that did not stay discovery.  And so this is the last

2    opportunity.  I've spoken to Judge Nichols.  He agrees.

3    So there will be an extension granted consistent with what

4    plaintiff has asked for.  But I'm going to be scrutinizing

5    very closely how that time is being spent.  And if it's

6    being spent by either side needlessly engaging in

7    discovery disputes that can be and should be resolved

8    through professional interactions between counsel, then I

9    will consider any request for sanctions as allowed by the

10   rules.  But, you know, that's the one chance to try to get

11   all of your depositions in discovery done.

12              All right.  Does anyone have any questions on

13   that?  We will enter an order consistent with my ruling.

14              MR. BABCOCK:  That's fine, Your Honor.  There

15   are two schedules -- this is Charles Babcock for the

16   record.  There are two schedules.  The first motion that I

17   think you referenced was that one proposed schedule by the

18   plaintiffs and then they amended that on December 8th and

19   proposed a different schedule.  And obviously, two months

20   have passed now since that proposed schedule.

21              So the defendant hasn't asked for anything.  We

22   were content to go forward with the schedule that Judge

23   Nichols set out.  But it may require some discussion among

24   the parties about where we are today and what the schedule

25   should be because there has not been a joint request for a

1    new schedule.  Only the plaintiffs.  And their most recent

2    suggestion is out of date.

3              THE COURT:  Well, I'm adopting the schedule

4    that's requested in ECF-165, which was filed about a month

5    ago.

6              MR. BABCOCK:  Okay.  I'm sorry.  I missed on

7    that.

8              THE COURT:  Okay.  All right.  So that is the

9    schedule that will govern.

10             I have a list -- I have four motions that by my

11   calculations are mooted by a ruling on 165.  Let me list

12   what they are and then if anyone disagrees, let me know.

13   But I will deny the following motions as moot unless I

14   hear from either party that they're still a live

15   controversy.  And that's -- and I'll give you a chance to

16   look at your notes.

17             I have ECF-54, ECF-65, ECF-96 and ECF-132.  I'll

18   let Ms. Kovacs go first after she's reviewed her notes.

19             MS. KOVACS:  Thank you, Your Honor.  So just to

20   make sure that both parties are on the same page, I have

21   in front of me what those motions were.  I believe Docket

22   54 was Smartmatic's motion for an extension of time to

23   serve our document request.  65 was defendant's opposed

24   motion for leave to file a surreply in opposition to that

25   motion.  96 is Smartmatic's motion for protective order to

1    stay depositions and amend the scheduling order.  And

2    Docket 132 was our supplemental motion along the same

3    lines.

4              And, Your Honor, we do agree that those would

5    all be mooted.  I think that that would handle also one of

6    the disputes on the chart today regarding whether

7    Smartmatic's second set of RFP's were served timely.

8              THE COURT:  Okay.  Mr. Babcock?

9              MR. BABCOCK:  We agree to those --

10             THE COURT:  Okay.  Very well.

11             MR. BABCOCK:  Yes.  Thank you, Your Honor.

12             THE COURT:  Great.  Thank you.  I will deny

13   those four motions as moot.

14             Okay.  Next is 169, which is the -- it was filed

15   I think by my direction as a joint motion, but it's not

16   really completely agreed upon.  Joint motion for

17   deposition protocol order.  Now that I've granted an

18   extension of discovery, I don't know whether the disputes

19   amongst you as to the timing and number of depositions is

20   still alive.  But I am going -- I would like to get a DPO

21   ironed out today.  As I said, you should be off to the

22   races if you aren't already.  I hope no one has been

23   sitting waiting on any rulings from this Court.  No more

24   stays of depositions.  No more waiting to see how I rule.

25   Okay?

1        I'm expecting -- and honestly, Smartmatic, I am

2   looking at you because I am very surprised that plaintiff

3   did not notice any depositions last year.  Very surprised.

4   But I'm hoping that we can get this DPO ironed out and get

5   right into the discovery you guys need to take.

6        MS. KOVACS:  Thank you, Your Honor.  We

7   appreciate that and understand and I would say your ruling

8   is very much in line with our goals.  We'd like to get

9   back to the merits of this case and get it wrapped up and

10   moving on to trial as soon as possible.  So thank you very

11   much for that guidance.

12        THE COURT:  Okay.  169, I looked at the proposed

13   deposition protocol order and it largely looks good, but I

14   do realize that there is a dispute over the number and

15   length of depositions.  And so I will hear from each side

16   as to what their request is and I'm just going to make a

17   decision and we're going to adopt and I'll ask you guys to

18   submit a revised DPO.  I know I asked for a Word version,

19   but I think I'd like to hear from the parties first as to

20   their respective positions on the -- I think it's the only

21   issue that you guys don't agree on, right, for the DPO?

22        MS. KOVACS:  That's right, Your Honor.  I

23   believe it's -- we're pretty close on the number of hours.

24   We don't have a huge dispute there.  We had proposed a

25   hundred hours total of deposition time and OANN had

1    proposed a hundred and twenty.  The dispute we have --

2    apart from that 20-hour difference -- is whether the

3    parties should be limited by the number of depositions

4    period that occur.  Smartmatic's view is that we need that

5    and that it would be in accordance with how the federal

6    rules view the default limit, which is ten depositions.

7          The proposal that there be only an hours limit

8    would allow for OANN theoretically to have a hundred and

9    twenty hours that they spend on 60 depositions, which in

10   our view would be inefficient and abusive.  And so our

11   proposal is that we have both an hours and a number of

12   depositions limit.  Our proposal on a number of

13   depositions was 25, Your Honor.

14         THE COURT:  Okay.  So the plaintiffs' proposal

15   is that there would be no more than 25 depositions and you

16   just allocate that 100 hours amongst the 25 deponents with

17   no deponent to exceed seven hours or is it contemplated

18   that one deponent is going to be sitting for more than

19   seven hours?

20         MS. KOVACS:  The protocol calls for the default

21   to be seven hours and then if either party thinks that if

22   there is a particular deposition that should exceed that,

23   that we would meet and confer and try to figure that out.

24   But most of these would be seven.

25         THE COURT:  But all of that would come out of

1  your total hours?

2          MS. KOVACS:  Yes, Your Honor.

3          THE COURT:  Okay.  What is defendant's view on

4  this?  Mr. Neerman?

5          MR. NEERMAN:  Good afternoon, Your Honor.

6          THE COURT:  Good afternoon.

7          MR. NEERMAN:  Jonathan Neerman for the record.

8  And, Your Honor, you are correct that shortly after the

9  December 20th hearing, the parties diligently worked

10  together on submitting the deposition protocol and the

11  only outstanding issue was the number and length.

12          In the Herring Networks' view, plaintiffs'

13  position is much too restrictive.  And you don't only need

14  to listen to us, Your Honor, but if you read Smartmatic's

15  own words, in their response to our motion for summary

16  judgment, they take the position -- and this is Document

17  155-1 -- they take the position that they need over 70

18  depositions.

19          So what they have told Judge Nichols in their

20  Rule 56(d) opposition to OANN's motion for summary

21  judgment conflicts what they are arguing here with the

22  deposition protocol.

23          We believe that the parties need flexibility

24  because of the size of this case and the number of

25  witnesses and the number of documents involved.  That's

1      why we suggest we have an hours limit and not a numbers

2      limit.  There may be witnesses, Your Honor, who we only

3      need for an hour because of one email they wrote or, you

4      know, one particular broadcast at issue, in which case we

5      would burn a witness as a result and we believe that a

6      case as complex as this, we need that flexibility.

7                  I would also note, Your Honor, that --

8                  THE COURT:  But OAN was willing and content to

9      have discovery closed.  And so it seems a little

10     inconsistent that you're now saying you don't want any

11     limit on the number of deponents.

12                 MR. NEERMAN:  Well, Your Honor, depending on

13     what Judge Nichols does with our motion for summary

14     judgment, that's correct.  But if you'll remember, we did

15     notice depositions or we've noticed depositions prior to

16     the discovery cutoff.  So we believe that if Judge Nichols

17     denies our motion for summary judgment and discovery does

18     continue full tilt, that we should be allowed and both

19     sides should be allowed the flexibility to develop their

20     case as needed.

21                 THE COURT:  Well, I will tell you that no party

22     should be restricting themselves on the hope or view that

23     Judge Nichols is going to rule any one way before the

24     discovery period is over.  I don't know whether he will be

25     taking those motions up before discovery is over.

1          So as I said, you are getting this opportunity

2    and again, no party should be waiting on the Court for

3    something.  Particularly, get the discovery needed and get

4    it done.

5          MR. NEERMAN:  Agreed, Your Honor.

6          THE COURT:  Well, I'm not inclined to allow --

7    I'm sorry.  Were you done, Mr. Neerman?

8          MR. NEERMAN:  Just one last point, Your Honor.

9    If you remember the last hearing, we had suggested -- in

10   fact I was assigned the homework.  I think I was the only

11   attorney assigned homework at that hearing.  We based this

12   deposition protocol largely on a similar protocol we

13   developed in the Dominion litigation, which involves more

14   parties and more hours.  But in that case, we did the same

15   thing where we had an hour limitation, but not a witness

16   limitation.  So that was the one of the bases that we

17   discussed during our meet and confer.

18         THE COURT:  Okay.  Well, I'm not -- thank you,

19   Mr. Neerman.  I'm not inclined to just allow an unlimited

20   number of depositions.  Although I will adopt the

21   defendant's request for a hundred and twenty hours.  I

22   will -- given the complexity of this case, I will allow 30

23   depositions per side at a hundred and twenty.  And if

24   there's a particular reason that you need more,

25   Mr. Neerman, I'll ask that you confer -- that defendant

1    confer with plaintiffs.  This should not be something that

2    needs to come before the Court.  And try to work

3    cooperatively if you need to exceed that number.  Okay?

4          All right.  So I will modify the deposition

5    protocol order, 30 depositions per side not to exceed 120

6    hours in total.

7          And do you agree, Mr. Neerman, that if there are

8    some deponents that need to be more than seven hours, that

9    that's allowable --

10         MR. NEERMAN:  Of course, Your Honor.

11         THE COURT:  -- and you all can just discuss it.

12   Okay.  Very well.  Thank you.

13         MR. NEERMAN:  Your Honor, would you like us to

14   submit the modified order?

15         THE COURT:  You know, I actually would.  If you

16   all could get that in by tomorrow close of business?

17         MR. NEERMAN:  Should we email it to the

18   chambers?

19         THE COURT:  Yes, please.

20         MR. NEERMAN:  Will do.  Thank you, Your Honor.

21         THE COURT:  Thank you.  I think everything else

22   in the deposition protocol order is agreed upon.  So I

23   will adopt -- once you submit it to me, I will adopt the

24   balance of the DPO as an order of the Court.

25         Okay.  I have before me ECF Numbers 157 and 158,

1    which are the unopposed motions for letters rogatory for

2    international discovery.  I just would like to confirm

3    that plaintiffs has no response or no opposition to two

4    those motions.

5            MS. KOVACS:  That is right, Your Honor.  We do

6    not oppose them.

7            THE COURT:  Okay.  I will grant those two

8    motions.

9            What I would ask counsel to do which I've done

10   in the past with other similar motions, if there is

11   something specific that the Court actually needs to order

12   to fashion whatever specific document you need to effect

13   that international discovery and send it to chambers or

14   submit it to the Court.

15           MR. EDWARDS:  Your Honor --

16           THE COURT:  Yes.

17           MR. EDWARDS:  -- John Edwards on behalf of the

18   defendant.  We actually brought with us copies of the

19   motion, the orders actually that need to be signed and

20   flagged where they need to be signed if that would be of

21   assistance to the Court.

22           THE COURT:  Yes.  That's fine.  Thank you.  You

23   can hand it up to my law clerk.  Is that the only

24   international discovery you all are seeking?

25           MR. EDWARDS:  At this time, Yes, Your Honor.

 1                 THE COURT:  Okay.  Mr. Neerman?

 2                 MR. NEERMAN:  I'm sorry, Your Honor.  Jonathan

 3     Neerman again for the record.  To clarify, judge, the

 4     plaintiffs' position -- back to the deposition protocol.

 5                 THE COURT:  Okay.

 6                 MR. NEERMAN:  The number of deponents,

 7     plaintiffs included 30(b)(6) and third party witnesses in

 8     their total, but the Herring Networks did not.  So do

 9     you -- is it the Court's intention that 30(b)(6) witnesses

10     and third parties be included in that or only party

11     witnesses?

12                 THE COURT:  That is the total for deposition

13     fact and -- I assumed that that was the total that each

14     side was proposing for fact deposition.  I did not

15     understand that this was the expert deposition limit.

16                 MR. NEERMAN:  That is correct, Your Honor.

17                 THE COURT:  Yes.  That's going to be all in.

18                 MR. NEERMAN:  Very good.  Thank you, Your Honor.

19                 THE COURT:  Thank you.

20                 Okay.  I have ECF Number 173 before me.  This is

21     a motion for leave to file document under seal by OAN and

22     I don't believe that there's any objection.

23                 MS. KOVACS:  I think that's right, Your Honor.

24                 THE COURT:  Do you want to confirm that before I

25     grant this motion?

1          MS. KOVACS:  Just one moment, Your Honor.

2    Confirmed, Your Honor.  No opposition.

3          THE COURT:  All right.  I will grant that

4    motion.

5          I have ECF Number 176, which is a motion for

6    leave to file a document under seal by Smartmatic and just

7    want to confirm there's no objection or opposition by OAN

8    to that motion.

9          MR. BABCOCK:  We have no objection to that, Your

10   Honor.

11         THE COURT:  Okay.  I will grant ECF-176.

12         Okay.  That takes me to four of the -- what the

13   parties are calling and I will call the Round 1 issues,

14   some of which I have some specific questions and will

15   entertain brief argument on.  And that's ECF -- just so

16   everyone knows what's coming -- 130, ECF-81 and then ECF

17   Numbers 143-4 and 143-5, which -- the last two aren't

18   technically motions, but is what OAN filed to preserve its

19   rights to raise these particular discovery disputes.  But

20   for ease of reference, I will refer to these as motions.

21         So ECF-130 is Smartmatic's motion to compel

22   documents from related actions.  So I will hear from

23   Smartmatic on that.  And again I have some specific

24   questions.  But if Smartmatic wants to address that motion

25   very briefly, it can.

1          MS. KOVACS:  Thank you, Your Honor.
2    Smartmatic's motion is that OAN be ordered to produce the
3    documents that it has produced in three other litigations.
4    Its litigation with Dominion, with Ruby Freeman and
5    Wandrea Moss and also with Eric Coomer.
6          The basis is that OAN was involved in one
7    disinformation campaign designed to spread what it knew
8    was false information, that the 2020 election was being
9    stolen.  This was one campaign, Your Honor, with one
10   purpose.  And specifically, with respect to Dominion and
11   Eric Coomer, the allegations that OAN was repeating and
12   endorsing were that Smartmatic and Dominion were the same
13   company involved in a conspiracy to steal the election
14   from Donald Trump in favor of Joseph Biden.
15         And so there have been a number of other cases
16   in this district in particular, Your Honor, where there
17   have been facts that are so similar and overlapping and
18   legal issues so similar and overlapping that the Court has
19   seen fit to order the reproduction of documents from
20   another case in that related case.  And here we think
21   that's a -- it is clear that that is called for because it
22   is both efficient and relatively sure that the documents
23   that were produced by OAN in those other cases would be
24   relevant here particularly to actual malice.  And we think
25   that OAN --

1          THE COURT:  Well, I mean I can see some

2    comparison and analogue in the Dominion case.  But I,

3    frankly, did not think that -- I don't think Smartmatic

4    was very specific in why the lawsuits again -- or that

5    Ms. Freeman and Ms. Moss brought, why all of the documents

6    in that case would be documents that you could otherwise

7    seek on your own.

8          I mean if you are relying on AT&T, the argument

9    that you are making is we could get all of these documents

10   in this case.  I'm not sure that's -- I'm not sure that's

11   true with respect to those two individuals.

12          MS. KOVACS:  I'm happy to speak to that.  So the

13   allegation that was made against Freeman and Moss was that

14   they were helping in an effort to steal the election from

15   Donald Trump in Georgia and that is also one of the states

16   where they allege that Dominion and Smartmatic were

17   working to overturn the election in a vast conspiracy that

18   the Democrats were running.  Right?  And, of course, we

19   know that Smartmatic was actually only operating in L.A.

20   County and that was easily ascertainable by anyone who

21   wanted to know at the time.  But the allegations that they

22   spread were that Smartmatic and Dominion were part of the

23   conspiracy to overturn the election in Georgia, which is

24   being run by the Democrats.  And all of the information

25   that they were relying on was coming from Sidney Powell,

1   Rudy Giuliani, from other folks that they should have had

2   reason to know were not credible.

3        And so if there is information which we think

4   that there would be a vast amount of in their production

5   to Freeman and Moss regarding their views as to the

6   veracity of the claims that Powell, that Giuliani, that

7   the Trump campaign were making regarding those

8   individuals, then that would go to actual malice in our

9   case as well, Your Honor, because of the fact that all of

10  the information was coming from that particular source.

11        THE COURT:  Couldn't there be specific documents

12  in the productions in the Moss and Freeman case or the

13  Coomer case that are specific to that case that, you know,

14  seeking -- trying to seek all documents from those actions

15  are -- is quite broad?

16        MS. KOVACS:  It is, Your Honor.  And I think we

17  have case law on this point saying that if there are

18  slivers of evidence that come out that are irrelevant, if

19  you could think of it say some information that they had

20  about Freeman or Moss that was specific to them as an

21  individual and had nothing to do with the veracity of the

22  claims being made against them, perhaps that might be

23  irrelevant.  But I think that is an extraordinarily narrow

24  set of documents that that would be the case for.  And

25  other courts who have examined that potential have said

1   that there is little harm in having a sliver of irrelevant

2   documents produced.  If otherwise, the burden is low,

3   which it would be here and the likelihood of finding

4   relevant evidence otherwise is quite high.

5            THE COURT:  What is the status of document

6   production in those three cases?  Do you know?

7            MS. KOVACS:  I believe that OAN has produced a

8   number of documents to Dominion and there was a settlement

9   with Mr. Coomer I believe.  Is that right?  And as to the

10  status of the other document productions, we don't have

11  more information about where they are at that stage.

12           THE COURT:  Okay.  Thank you.  I'll hear from

13  OAN.

14           MS. KOVACS:  Thank you.  Your Honor, may I make

15  one more point that I forgot?

16           THE COURT:  Yes.

17           MS. KOVACS:  Thank you.  Which was that I'd like

18  to make very clear that OAN issued the exact same RFP's to

19  us three days after we issued this RFP to them, which Your

20  Honor may have seen on the papers.

21           THE COURT:  Yes.  I'm aware of that.

22           MS. KOVACS:  Thank you, Your Honor.

23           THE COURT:  Okay.  Now this is a motion that I

24  don't believe OAN has had a chance to respond to on the

25  papers.  So if there's a particular argument you have in

1    response, I'll be happy to hear it.

2              MS. BLAESCHE:  Thank you, Your Honor.  Minoo

3    Blaesche for the record.  I think it would be helpful to

4    first start out before I address the sensitive arguments

5    to let Your Honor know what we've actually done in

6    discovery because I think it would be very helpful.

7              So after about six months of negotiation on

8    search terms and custodians, we applied Smartmatic's

9    search queries to 68 agreed-upon custodians, reviewed them

10   for responsiveness and produced them.

11             Our case in Dominion took a little bit longer.

12   So we started producing documents in Dominion in October.

13   We looked at what we produced in Dominion that we did not

14   produce in Smartmatic and as required by the federal rule,

15   Rule 34, we reviewed everything that we produced in

16   Dominion that we had not produced in Smartmatic.  And to

17   the extent it was responsive to their request or relevant,

18   we produced them on December 8th.  So the -- what's

19   remaining are documents that are irrelevant or

20   nonresponsive that we produced to Dominion.

21             THE COURT:  You say you have produced all the

22   Dominion documents?

23             MS. BLAESCHE:  We haven't produced all of them.

24   What we did was we looked at what we produced in Dominion

25   that we didn't produce in Smartmatic and then reviewed

1    them for responsiveness or relevance in the Smartmatic

2    case and we produced those.

3                THE COURT:  Okay.  But the argument is that that

4    kind of artificially cuts out the documents that are

5    responsive to the request that seeks all the documents.

6                MS. BLAESCHE:  Sure.  Of course.  It does.  And

7    substantively, their argument for clone discovery is

8    improper.  I think the AT&T case can be distinguished.

9    There it was a government action and a private cause of

10   action and they were trying to narrow and reduce the

11   burden.  We've already gone through and reviewed the delta

12   of the Dominion documents and if they're responsive, we

13   produced them.

14               In addition, even though Smartmatic would like

15   this to be about the entire 2020 election, that's not what

16   the case is about.  It's about specific complaint of

17   statements.  The overlapping complaint of statements

18   between Dominion and Smartmatic, the only ones that

19   overlap are the ones involving Mike Lindell and we've

20   produced everything to Smartmatic involving Lindell.

21               THE COURT:  Didn't you seek documents from other

22   cases that you thought were related cases?  You sought the

23   whole of Smartmatic's productions from those other cases.

24               MS. BLAESCHE:  That is correct.  And during meet

25   and confers, we made a more specific request that we only

1    want the responsive documents.  Also we are very

2    separately --

3              THE COURT:  When you say responsive, responsive

4    to what?

5              MS. BLAESCHE:  To our case.

6              THE COURT:  Okay.  But discovery works in the

7    following way.  You make requests and each request --

8    there may be documents that are or not responsive to that

9    as you know.  So what I'm asking is were you -- I mean OAN

10   was not asking for all of the productions from the other

11   cases, the Lindell case and the other ones that Ms. Kovacs

12   mentioned?

13             MS. BLAESCHE:  The specific RFP does ask for

14   that.  But in the subsequent meet and confers, we

15   confirmed we just want the responsive documents --

16             THE COURT:  Responsive to what?

17             MS. BLAESCHE:  To our document requests.

18             THE COURT:  Your other document requests.

19             MS. BLAESCHE:  Correct.

20             THE COURT:  Okay.  So what distinction do you

21   draw between the position that OAN is taking regarding the

22   other lawsuits and -- if you draw one -- and the documents

23   that Smartmatic is seeking?

24             MS. BLAESCHE:  So the distinction is that

25   Smartmatic has sued multiple defendants, either

1    individuals or entities, for what we would argue is the
2    same reputational injury and harm.  So what they have
3    produced is very relevant to causation, to damages they
4    may sustained.  Whereas for us, it's a different complaint
5    of statements.  They have to prove actual malice that's
6    specific to each statement.  Actual malice is not a
7    generalized -- just in general, they had actual malice.
8         THE COURT:  Okay.  I don't think that's -- I
9    don't think that's terribly persuasive, to be frank with
10   you.
11         Are the productions in the Dominion case, the
12   Coomer case and the Freeman and Moss case in their own
13   separate databases that can be culled and produced?
14         MS. BLAESCHE:  They are in separate databases.
15   I just need to -- for the record, we didn't produce
16   anything in Freeman and Moss.  So that's not an issue.
17         THE COURT:  All right.  So that actually is
18   helpful to my concern about that case because I think it's
19   a little different.
20         Okay.  All right.  Thank you, ma'am.
21         I am going to grant that motion and I will order
22   that the productions from the Dominion case and the Coomer
23   case only should be produced.  The Freeman and Moss case,
24   there are no documents in the defendant's possession,
25   custody or control.  So I will grant the motion with

1     respect to the Dominion and the Coomer case.

2           This is an instance in which OAN sought

3     particular documents.  I think what you're seeking from

4     Smartmatic is not too different from what Smartmatic is

5     seeking from OAN and there should be parity in those

6     requests and so I will grant that particular motion.

7           I have ECF-81.

8           MS. KOVACS:  Thank you, Your Honor.  Before we

9     move on, may I ask one question?  Could we have perhaps a

10    deadline by which we could get that production from OAN

11    given that --

12          THE COURT:  I want to be able to make sure they

13    have enough time to produce.  Ma'am, do you have a --

14    some -- I'm sorry.  Ms. -- is it Blaesche?

15          MS. BLAESCHE:  Blaesche.

16          THE COURT:  Blaesche.

17          MS. BLAESCHE:  I think we can get it done in two

18    weeks.

19          THE COURT:  Okay.  I think that's reasonable.

20          MS. KOVACS:  Thank you, Your Honor.

21          THE COURT:  Fourteen days.  Thank you.

22          Okay.  This is Smartmatic's motion for a

23    protective order from OAN's second set of document

24    production or second set of document requests.

25          Ms. Sullivan, I'll hear from you briefly, but I

1    have a number of questions about this motion.

2              MS. SULLIVAN:  Certainly, Your Honor.  Just as a

3    brief overview here, as expressed in Smartmatic's paper,

4    OAN served in its second set of requests for production

5    over 1500 RFP's, the majority of which are extremely

6    duplicative --

7              THE COURT:  Let's not call them 1500.  There are

8    three sets of 500 identical requests.  Okay?  So I'm

9    reading your papers very carefully and I want everyone to

10   be straight with me.  There are 500.

11             MS. SULLIVAN:  Correct.  But in OAN's most

12   recent filing that they submitted on Friday, the motion to

13   dismiss, one of their arguments is that Smartmatic is not

14   allowed to answer the requests for productions in an

15   omnibus matter and that they are three separate sets for

16   three separate plaintiffs.  So it is -- OAN cannot have it

17   both ways.  That it is either only 500 and we are allowed

18   to answer them omnibus because they don't believe that

19   that is proper.  So in fact if it is true that we have to

20   answer them individually, there are 500 sets of three,

21   just to be clear.

22             THE COURT:  Okay.  But if you have the same

23   objections and responses, you just copy, paste.

24             MS. SULLIVAN:  Correct.  But in function, once

25   we submit our objections and answers, we would also then

1    have to meet and confer and there could be different

2    documents that they want from different plaintiffs on

3    these 15 or 500 requests for production, which could lead

4    to a lot more work if we're talking about these in terms

5    of individual plaintiff entities.  And we're not treating

6    this as an omnibus response when we move forward with

7    things like meet and confers and briefing these issues.

8            These RFP's have created -- would create an

9    undue burden on Smartmatic if we were not granted a

10   protective order.  Even if we just look at the fact that

11   there are 500 per plaintiff entity, these are extremely

12   duplicative amongst one another within that second set.

13   But also duplicative with the first set of RFP's and there

14   are numerous courts in this jurisdiction and others that

15   prohibit against this practice of having duplicative

16   RFP's.  It's not efficient.  It's unduly burdensome.  It

17   adds expense and parties --

18           THE COURT:  What's your burden?  What's your --

19   because this is one thing I didn't see in your motion is

20   what the actual burden is on Smartmatic to answer these

21   requests.

22           MS. SULLIVAN:  The burden that Smartmatic would

23   have in answering these requests, first of all, is

24   assessing them against what has already been produced and

25   figuring out which ones are duplicative, analyzing which

1    ones we will in fact respond to, which ones we think that

2    we should not have to respond to and then based on how

3    contentious the first set of RFP's were, it took the

4    parties over six months to meet and confer.

5          On those RFP's, there were 50 letters sent back

6    and forth, there were numerous motions to compel that

7    resulted from those and that was when we were talking

8    about a hundred RFP's.  So the burden to not only just

9    answer 500 RFP's, but the burden on Smartmatic to assess

10   these and to negotiate with OAN and engage in meet and

11   confers and I'm sure there will be a lot of disputes with

12   regard to these RFP's because Smartmatic will take the

13   position that things have already been produced in

14   response.  And I would assume that motions to compel and

15   briefing -- or not briefing -- but discovery conferences

16   would come from the second set of RFP's.

17         THE COURT:  So what I'm not following -- and I

18   don't think Smartmatic has made a specific argument about

19   this -- is other than the cost of litigation or other than

20   the burden of having to respond to them, is there

21   something specific that Smartmatic would have to do?

22         So, for example, sometimes a motion for

23   protective order is brought where the discovery -- a

24   specific discovery sought is just really hard to access.

25   It's like one piece of paper in a warehouse with a billion

1    other pages of documents and it's, you know, marginally

2    relevant.

3            Here you're asking the Court to just issue a

4    protective order for an entire swath of document requests

5    without specifying, other than the burden of having to

6    prosecute your case and respond to the discovery requests,

7    no other specific burden, no other particular document

8    requests that are, you know, would be really hard for

9    Smartmatic to go and obtain.

10           MS. SULLIVAN:  So in Smartmatic's motion, it did

11   not address specifics as to the 500 RFP's and what they

12   might require Smartmatic to do.  But, for example, there

13   are more than a handful that are related to international

14   discovery and work that Smartmatic did in more than 30

15   jurisdictions around the world.  So these documents would

16   potentially be difficult for Smartmatic to obtain.  There

17   is also a number of documents --

18           THE COURT:  But these are arguments you're --

19   you didn't raise in your papers.  You're telling me this

20   for the first time.  Right?  I don't remember reading

21   anything about international discovery.

22           MS. SULLIVAN:  Correct.  In the papers,

23   Smartmatic --

24           THE COURT:  I have another question.  What is

25   the actual practical burden on Smartmatic?  If a request

1    that is being served in a second set of requests is

2    essentially duplicative of a request that was in the first

3    tranche of documents -- document requests and documents

4    that Smartmatic produced, what I would do is see response

5    to number whatever from the first set of document

6    requests.  How is that burdensome?

7            MS. SULLIVAN:  That in and of itself is not

8    necessarily burdensome.  But it is evident from, for

9    example, the meet and confer that the parties had with

10   regards to these, that they do not believe that they are

11   duplicative.

12           So even if Smartmatic says see RFP from the

13   first set, we believe this is duplicative, that doesn't

14   end what the work that Smartmatic has to do.  We will then

15   have to defend whether or not it is duplicative and

16   provide OAN proof of things that it's already produced.

17   That would make it duplicative.  And then again as I

18   mentioned, engaging in these meet and confers, especially

19   when we are coming towards the end of discovery and then

20   potentially having further discovery disputes about

21   individual RFP's and whether or not they are duplicative

22   with what's already been produced would create a large

23   burden of financially and timewise on Smartmatic as it is

24   trying to --

25           THE COURT:  Aren't you seeking almost $2 billion

1    in damages?  Well, actually, I don't know what damages
2    Smartmatic is seeking.  We'll get to that motion in a
3    minute.  But I mean Smartmatic is seeking something like
4    $2 billion in damages.  Possibly more.  Right?
5              MS. SULLIVAN:  I mean Smartmatic has not --
6              THE COURT:  This is a complex case.
7              MS. SULLIVAN:  Correct, Your Honor.  And we
8    don't disagree that this is a complex case.  One of the
9    arguments that Smartmatic put forward in its papers is
10   that we recognize that this is a complex case, that there
11   is a need for, you know, very broad discovery here.  And
12   with respect to the first set of RFP's, Smartmatic has
13   engaged in good faith and has produced almost three
14   million documents spanning from 2023 back to 1997 because
15   this is such a complex case because there are so many
16   issues within this case.  Smartmatic recognizes that.  But
17   it does not think that it is necessary to add 500
18   additional RFP's if discovery has already been extensive
19   and proportional to the needs of this case.
20             THE COURT:  But is the remedy of the Court just
21   without any real parsing out of this specific request, the
22   remedy of just issuing a blanket protective order against
23   that entire second set of requests?  Is that really the
24   right remedy?  It doesn't seem targeted at all.  Your
25   request is not targeted.  And I don't think you have met

1    your burden.

2         MS. SULLIVAN:  So, first, the other burden here

3    is to show that the burden to Smartmatic, it is outweighed

4    by the particularized need for this information.  And if

5    it is in fact duplicative information, then there is no

6    need for it.  So any slight burden --

7         THE COURT:  Ms. Sullivan, what I'm trying to get

8    across is because Smartmatic has not specified to me --

9    you've taken the time to say, look, you know, here is a

10   set of 70 requests that are duplicative, these requests

11   and actually itemized them.  Here's a second bucket, which

12   go to international discovery that we don't think are

13   necessary and here's a list of those requests.  And here's

14   another bucket of documents that we just think are so

15   overbroad and so far reaching that they are not

16   proportional to the needs of the case.  You're asking me

17   to just issue a blanket protective order without doing

18   that sort of analysis.  I'm not inclined to do it.

19        So what I'm saying is I don't -- I don't really

20   know how you can ask the Court to do that without

21   undertaking that exercise.  Now I understand Smartmatic's

22   position that it shouldn't have to.  I'm going to reject

23   that position.  Okay?  So unless you have anything

24   further, I'll hear from defendants.  But I just don't -- I

25   don't really think that that's the answer.

1          MS. SULLIVAN:  One other point just to address

2     that.  If I may?

3          THE COURT:  Sure.

4          MS. SULLIVAN:  Courts in the past and there are

5     several cited, for example, the Stokes case from the

6     Northern District of California, the court rejected the

7     RFP's wholesale because of the sheer volume and didn't

8     think that it was necessary for either the party who those

9     requests were served upon or the court to endeavor to

10    evaluate every single RFP individually just because of the

11    sheer volume.

12          And there are several other cases that

13    Smartmatic cites where the Court says, you know, we looked

14    at broad categories; they seem to be redundant.  The

15    Billick case that we cite specifically says that if there

16    are redundant categories.  And Smartmatic laid out several

17    redundant categories and provided examples of those RFP's

18    relating to Dominion damages, actual malice, et cetera.

19    And then the court there then said the entire set was

20    quashed, but that the party could have another chance to

21    serve a second set of RFP's, but limited the number that

22    could be served.  So they were more targeted.

23          THE COURT:  Well, OAN said in its response to

24    this motion that it was willing to meet and confer

25    further.  Have you -- since the motion and opposition were

1    filed, have you called them and taken them up on that and

2    tried to narrow this request?

3            MS. SULLIVAN:  No, we have not, Your Honor.

4            THE COURT:  Why not?

5            MS. SULLIVAN:  We met and conferred with OAN on

6    this issue and provided them with very specific examples

7    of egregious in our opinion duplication RFP's that were

8    functionally word for word as between the two sets and

9    internally.  In turn, OAN agreed to get rid of 90 of the

10   requests and did not agree to get rid of some of the ones

11   that were identical word for word and just would not

12   engage in a conversation about what truly was duplicative.

13   So at that point, Smartmatic decided that it would file

14   its motion for a protective order and would wait from a

15   ruling from the Court just because OAN was not engaging in

16   conversations about what truly was duplicative.

17           THE COURT:  Is it Smartmatic's position that

18   every single one of the 500 requests are duplicative of

19   previous requests?

20           MS. SULLIVAN:  Our position is that a majority

21   of the requests are.  They fall into duplicative

22   categories which courts have recognized can be a basis for

23   undue burden, duplicative categories seeking generally the

24   same information and again --

25           THE COURT:  Hold on.  So the short answer is no?

```
 1              MS. SULLIVAN:  No.

 2              THE COURT:  Okay.  Have you done an exercise to

 3    determine which of the requests or how many of their

 4    requests are not duplicative in your view?

 5              MS. SULLIVAN:  We have generally looked at all

 6    of the requests, but it's very hard to compare with even

 7    within the 500 because OAN does slightly vary the wording

 8    of the requests.  But we have found that I would say

 9    almost all of them if not all of them do fall into at

10    least duplicative categories.  You know, there are 50

11    RFP's related to damages that could have been one or two

12    RFP's.

13              And so Smartmatic also is of the position that

14    because OAN has the burden to narrowly craft discovery

15    requests as to not cause undue burden such as analyzing

16    500 RFP's for whether or not they are duplicative,

17    Smartmatic need not engage fully in an exercise looking at

18    every single RFP and figuring out whether how duplicative

19    it is.

20              THE COURT:  Okay.  Thank you.  Oh, actually,

21    Ms. Sullivan, I do have one followup question.  How many

22    requests were in OAN's first set of document requests?

23              MS. SULLIVAN:  I believe it was a hundred and

24    three.

25              THE COURT:  Okay.  Thank you.
```

1          MR. EDWARDS:  Good afternoon, Your Honor.  John

2    Edwards on behalf of the defendant.  I think Your Honor

3    hit the nail on the head asking what the burden is in

4    responding to discovery in the normal course of litigation

5    and there is no burden.  If they truly claim and believe

6    that some requests are duplicative of prior requests, they

7    can simply make that objection.  But they didn't choose to

8    do that.  Instead, they sought to quash an entire set of

9    discovery when there's clearly unique and separate

10   requests that are not duplicate.  Most of which are not.

11   The ones that they claim are duplicative, the problem is,

12   Your Honor, they objected to the first set, many requests

13   saying they are overbroad.  So we took that objection.

14   Said okay, we'll create and craft more narrow requests and

15   make them very specific.  Well, those are subsumed in some

16   cases by a request in the first set.  But we did that

17   because of the overly broad objection.

18          And we tried to meet and confer with them.  We

19   said, look, we can withdraw 92 of the requests because we

20   do think they could be subsumed arguably in some other

21   requests, but we want you to withdraw your overly broad

22   objection to the first request so we can be sure you are

23   going to produce the documents.

24          THE COURT:  But are they -- does Smartmatic say

25   it was withholding documents pursuant to the overbroad

1    objection or that it was just making the objection and

2    producing them --

3           MR. EDWARDS:  Well, we asked them twice.  The

4    first time we asked them, we said could you just withdraw

5    the objection.  They said no, we're not going to do that.

6    We're not going to accept your proposal.  And so we came

7    back and said, well, will you at least tell us you are not

8    withholding documents and they wouldn't do that either.

9    And that was right when they filed their motion.

10          So the simple cure to this was to have an actual

11   meet and confer over the specific requests and not just

12   simply tell us either withdraw all of them or we're going

13   to file a motion.  That was the position they put us in.

14   And we certainly were not going to withdraw all of them,

15   but we were happy to engage them on specific requests

16   where they can show the duplication.

17          Now when they filed their motion, they attached

18   a chart as an exhibit where they claimed, okay, here is

19   the RFP's that we think are duplicative.  Well, we went

20   back through there and they're not duplicative and we

21   created our own chart.  Attached to our response is

22   Attachment A, where we color coded and showed the Court

23   where they objected and actual language comparing the two,

24   the first set and the second set.  And in every instance,

25   there's changes of meaning and changing of the terms that

1    make these separate and unique requests.

2         But this is something that should not be before

3    the Court.  We shouldn't be wasting time doing this --

4         THE COURT:  Well, I agree with that.

5         MR. EDWARDS:  We should have had a meet and

6    confer and they declined.  When I asked them, let's go

7    over the RFP's that you claim are problematic and they

8    declined to do that.  They said nope, you withdraw all of

9    them or we quash.  That was the choice they gave us.  And

10   so we have no other option than to come here today and ask

11   you not to quash the entire set, have them respond.  And

12   they've had so much time already.  They've wasted so much

13   effort crafting these charts and trying to show

14   duplication when they could have just answered the

15   discovery.

16        THE COURT:  Well, I was actually thinking that.

17   You know, the time that's being spent briefing this issue

18   and the time of the Court could be spent responding to

19   these requests.

20        But is it true that OAN is taking the position

21   the plaintiffs cannot respond to these requests, that they

22   are identical requests to different plaintiffs in an

23   omnibus fashion?  I can understand that position with

24   respect to interrogatories.  But with respect to document

25   requests, that seems -- that's a little bit overkill.

 1            MR. EDWARDS:  Well, the problem, Your Honor, is

 2    that they responded to all of our discovery, whether it's

 3    requests for admissions, requests for production and

 4    interrogatories in an omnibus consolidated manner, which

 5    we can't differentiate between the plaintiffs and it's a

 6    problem for a request for production because they produced

 7    documents to us with only one Bates label prefix and

 8    that's supposed to be from all three plaintiffs.  Well, we

 9    don't know whether this document that we think is

10    important, is it from this plaintiff or this plaintiff --

11            THE COURT:  What practical effect does that have

12    on your case?

13            MR. EDWARDS:  It has a substantial effect --

14            THE COURT:  There are three related entities.

15            MR. EDWARDS:  On causation and damages in

16    particular, Your Honor.  Some of these are foreign

17    companies and we need to know which company is claiming

18    what damages and what jurisdiction.

19            THE COURT:  Well, you have a tool to get that

20    information if you want.  I don't think it's taking a

21    position that they can't respond in a cohesive fashion to

22    these.  I mean you can ask in depositions, you can ask in

23    interrogatories and, you know, frankly, I think that's

24    probably the more effective way.  I don't want to tell you

25    how to defend your case.

1          But, you know, 1500 requests on top of the

2     hundred-plus requests that have already been served, if

3     OAN is taking the position that each entity has to respond

4     to the 500 each separately, I do think that's overkill.

5          MR. EDWARDS:  Well, and, Your Honor, it's not so

6     much the response.  It's the production of the documents.

7     If they produce a document that purports to show he lost a

8     contract here, well, whose contract was it, which

9     plaintiff?  We are left to guess.  And as you say, perhaps

10    follow up in a deposition or some other way.  But it's not

11    a very efficient way to do it.  If they would identify

12    which of the plaintiff entities is producing the document,

13    it would be much more efficient.

14         THE COURT:  Well, I'm not going to allow, you

15    know, 500 requests per plaintiff and I think that's not

16    proportional to the needs of the case.  That said, I also

17    don't agree that a blanket protective order is in order

18    here.  So what I'm going to do is to order you all to

19    confer and I'm actually going to take a break and you're

20    going to talk now and figure out a path forward where you

21    get rid of the duplicative requests.

22         If Smartmatic is claiming that -- if this is

23    true -- and I'll allow Ms. Sullivan to respond -- if it's

24    true that Smartmatic on the one hand is taking the

25    position that requests are over broad and then on the

1    other hand, won't withdraw that objection or at least make

2    the representation that it's not standing -- withholding

3    any documents based on that objection and then claiming

4    that it's entitled to a blanket protective order, it's not

5    going to fly in this court.  Okay?  In this courtroom

6    anyway.

7         So I'm going to ask you all to -- I'll let you

8    make any additional arguments you want, sir, but I'm going

9    to take a break and have you guys come up with a plan to

10   address this problem during the break.

11        MR. EDWARDS:  Thank you, Your Honor.  The only

12   other point I was going to make is when you refer to the

13   proportionality of the number of requests, I mean you did

14   point out they are seeking over $2 billion in damages.

15   The complaint is over 400 paragraphs with a number of

16   exhibits, over 3,000 pages of exhibits.  So it's a

17   substantial case, a complex case and there's other cases

18   we've cited in our opposition papers indicating in a

19   complex case, courts allow 1800 and 2000 requests --

20        THE COURT:  I've certainly had to respond to --

21   as a former defense attorney, I've had to certainly

22   respond to thousands of requests before and I get that.

23        What I'm not inclined to do is to say -- to put

24   an artificial number.  I think hundreds of requests

25   depending on what they're seeking is not -- in a case of

1       this complexity facially unreasonable.  But I also don't

2       think that requests should be being served just to try to

3       smoke out what their objections are in response to the

4       first, you know, set of requests.  That's information that

5       counsel should be freely giving to the other side.  If

6       you're withholding documents based on an objection, you

7       should be telling the other side and not leaving -- if

8       this is true, not leaving OAN to have to guess and serve

9       additional requests that are specific because that creates

10      the problem that we're here dealing with.

11              So I'm going to take a break and have you all

12      discuss a plan forward for narrowing that set of requests,

13      getting the information that you need and which also, you

14      know, addresses this fact -- this issue that there are a

15      certain number of, even by your own admission, duplicative

16      requests, which I understand why you had to serve those.

17              MR. EDWARDS:  And I'm not conceding they're

18      duplicative.  I'm just saying that they do fall within --

19              THE COURT:  If they're subsumed.  I think you

20      said subsumed.  Right?

21              MR. EDWARDS:  Right.

22              THE COURT:  But if they're -- let me give you

23      all some guidance here as you're talking.  If there's some

24      requests that's subsumed in part or wholly by different

25      requests, Smartmatic, if your argument is that they are

1    overbroad or your objection is that the first request was

2    overbroad, then I think you need to convey to OAN whether

3    or not you're actually withholding documents or not based

4    on that objection or that you will be withholding

5    documents or not.

6                MS. SULLIVAN:  Do you mind if I address that

7    point very briefly?

8                THE COURT:  Just a second.  And then with

9    respect to additional requests, if there are additional

10   requests from OAN, which again I raised in my colloquy

11   with Ms. Sullivan, I can't tell based on this motion

12   whether there's a whole set of document requests that

13   don't overlap at all with the first set.

14               And if the -- you know, if any party is asking

15   me to make a ruling that they're not proportional to the

16   needs of the case, I simply cannot do that when only broad

17   arguments have been made to me.

18               And we can do the painful exercise of going

19   through request by request, you will not be happy, either

20   side, to sit here with me for as long as -- I have a very

21   high tolerance for this process to try to cull this out.

22   You don't want to do that.  So I think you guys can try to

23   find a way forward to get the information you need without

24   just having repetitive requests.

25               MR. EDWARDS:  And, Your Honor, I think in their

1   papers they said -- they made a reference to not

2   withholding.  But when I made a proposal to withdraw the

3   92, that was the condition they set.  If you would

4   withdraw your objection or tell us you're not withholding

5   and they rejected that proposal.  That's the only thing we

6   could do.

7          THE COURT:  Yeah.  It's not going to fly.  So I

8   think you all need to talk.  But neither is, you know,

9   this barrage of 1500 document requests.  That's not going

10  to fly either.  So I think you all need to talk about a

11  path forward, which I'll let you do on a break.  Thank

12  you, sir.

13         MS. SULLIVAN:  Your Honor, do you mind if I

14  briefly address that one --

15         THE COURT:  Briefly.  Yeah.

16         MS. SULLIVAN:  In Smartmatic's reply brief, we

17  specifically stated that the parties agreed prior to

18  Jackson Walker becoming counsel that if the parties were

19  going to withhold any documents based on objections, they

20  would let the other party know.  We have not withheld

21  anything based on objections.  So there has been nothing

22  to notify OAN of.  We have told OAN that in writing.  It's

23  in our reply brief.  So Smartmatic is not withholding

24  anything.

25         And also Mr. Edwards said that the conditions of

1    removing the 92 is that we make that representation and

2    that was not the only condition.  The other condition was

3    that we re-negotiate search terms with regard to the first

4    set of RFP's and re-negotiate timeframes.  At that point

5    Smartmatic had already spent six months negotiating search

6    terms and timeframes and was not withholding anything

7    based on objections.  So we felt that it was improper to

8    have to go back and re-negotiate all of those things just

9    because they served a broad number of RFP's.

10             THE COURT:  Okay.  Well, I'm not going to be

11   policing the meet and confers.  I'm not going to sit and

12   listen to complaints from either side just for the sake of

13   listening to them.  You guys can, given the respective

14   sophistication of the teams before me, work this out.

15             And as I said, I'm -- well, let me be very

16   frank.  I'm troubled by some positions that are being

17   taken by both sides.  And sanctions will very much be on

18   the table going forward.  If I think that either side is

19   unnecessarily taking up time or trying to either evade its

20   discovery obligations or trying to bury the other side in

21   discovery, I'm not going to tolerate it.

22             If you need discovery and you show me that you

23   need it, I will -- you know, I'll hear that.  But these

24   are things you guys can work out amongst yourselves.  So

25   keep this in mind going forward.  If I have to rule on

1  these sorts of piddly issues about what was said, what

2  wasn't said and, you know, what conditions were placed,

3  it's just not -- you know, there are certain discovery

4  disputes that are very validly brought before the Court

5  and that's what I'm here for.  But I think you all can

6  work out this particular, definitely this particular

7  dispute amongst yourselves.

8          So why don't you all take about ten minutes to

9  try to come up with a plan for how you're going to figure

10  out what subset of these 500 or 1500, however you want to

11  phrase it, requests Smartmatic needs to respond to and

12  I'll hear your plan when I get back.

13          And then I'll take up OAN's two motions at --

14  oh, I'm sorry.  I have -- yeah.  143-4 and 143-5, I'll

15  take up when I come back.

16          MR. EDWARDS:  Thank you, Your Honor.

17          THE COURT:  Thank you.

18          (Recess.)

19          THE COURT:  Okay.  Whoever wants to approach to

20  let me know what you all discussed.

21          MR. EDWARDS:  Your Honor, John Edwards on behalf

22  of the defendant.  We conferred with Smartmatic's counsel

23  and I think we have a path forward on the dispute over the

24  second set of RFP's issued by defendant.

25          The parties agree that we, the defendant, will

withdraw the 92 RFP's that we had previously offered to do

with the stipulation that Smartmatic is not withholding

any documents under the corresponding claim of duplication

in the first set.  These are identified at Docket 89-1,

Exhibit B to our response.

          By the end of the week, Smartmatic is going to

send us the categories of the RFP's that they would like

withdrawn because they believe documents have already been

produced.  But also by Friday, defendant will send a list

of the RFP's that we deem should be answered and are not

in any way duplicative.  And then we have already set a

meet and confer to discuss both of those items next

Tuesday, the 13th.

          THE COURT:  Okay.  All right.  Ms. Sullivan, is

that accurate?

          MS. SULLIVAN:  That is accurate.  We also agree

that Smartmatic would be answering the RFP's that we agree

upon in an omnibus fashion.

          THE COURT:  Okay.

          MR. EDWARDS:  Understood.

          THE COURT:  Very well.  Okay.  Good.  Thank you,

all.

          Okay.  In light of that agreement and process

going forward, I will deny ECF Number 81, the motion for

protective order.

1          Okay.  I have ECF-143-4, which is OAN's opposed

2     motion to compel initial disclosure -- amended initial

3     disclosures from Smartmatic.  Who is going to be

4     addressing that?  And one thing I'd ask you, Mr. Babcock,

5     to do right off the bat is to tell me why OAN thinks that

6     this issue is not moot -- not mooted by Smartmatic's

7     service of the amended initial disclosures.

8          MR. BABCOCK:  Because it was -- it continued to

9     be deficience.  They say that if -- with respect to the

10    United States, they've produced damages in the Customer

11    Relationship Management database, the CRM database --

12         THE COURT:  Yes.  Actually, before you continue,

13    something I should have done.  If we're going to be

14    talking about that Exhibit B that I allowed to be filed

15    under seal, I am going to seal the courtroom.

16         MR. BABCOCK:  Thank you.

17         THE COURT:  So I just want to make sure to

18    everyone and I may have questions about it.  But if you do

19    want to talk about it, I have no problem doing that under

20    seal.

21         MR. BABCOCK:  Yeah.  I think it will certainly

22    come up.  I think I could discuss it in a way that

23    wouldn't reveal what was in it.  But maybe not.  So --

24         THE COURT:  Yeah.

25         MR. BABCOCK:  -- I will rely on my colleagues

1    across the aisle to jump up if I've crossed the line

2    anywhere.

3         THE COURT:  Well, this is one instance in which

4    I will allow counsel to interrupt each other if there

5    is -- if anyone starts discussing anything that's already

6    been granted or to be filed under seal, I will allow that

7    because I'm sure it's inadvertent by any side.  But let's

8    try to do our best to keep it all in the public record and

9    then if there's something specific we have to talk about,

10   we'll do so.

11        MR. BABCOCK:  Yeah.  Having represented media

12   for 30-plus years, I'm very much in favor of having a

13   public record.

14        You asked why it's not moot.  I guess the short

15   answer is because we still believe that their disclosures

16   even as supplemented are inadequate.  And I'd be happy to

17   address why we think they're inadequate.

18        THE COURT:  Let's do that because I want to go

19   straight to the amended initial disclosures and is it --

20   my understanding is that OAN's position is that it's only

21   the section discussing computation of damages that's

22   deficient at this point.  Is that correct?

23        MR. BABCOCK:  That's our primary objection and,

24   frankly, the only thing that is before the Court I think

25   in terms of the briefing.  Wouldn't want to waive any

1    other objections if we find some later.  But that's what

2    we're mad about now.

3                THE COURT:  Okay.  So what is it about the

4    amended initial disclosures that does not comply with

5    26(a)(1)?

6                MR. BABCOCK:  Okay.  There's been some talk

7    about previously about omnibus responses.  And however

8    appropriate it may be with respect to request for

9    production of documents, it is certainly not appropriate

10   with respect to damages.

11               We have three plaintiffs here.  They are all

12   claiming damages.  We don't know -- purportedly caused by

13   OAN.  Despite the fact that these three plaintiffs have

14   also sued a number of other media entities and individuals

15   associated with media entities and then just individuals

16   like Sidney Powell and Rudy Giuliani and Mike Lindell and

17   that group of people, they don't break out at all whether

18   it's SGO, whatever that is or Smartmatic USA or Smartmatic

19   International.  They don't tell us, you know, who's got

20   what.

21               We do know from our own investigation that

22   Smartmatic International has a number of subsidiary

23   corporations that apparently do business in foreign

24   jurisdictions.  Are they the ones that have been damaged?

25   Are they the ones with the contracts?  Are they the ones

1    that are trying to get business and can't?  Are they the

2    ones that have lost profits?  If so, is International the

3    inappropriate party to bring a claim for their damages?

4            In other words, the omnibus approach, which they

5    have taken throughout this litigation in response to

6    interrogatories, in response to requests for admission, in

7    response to request for production and now in this initial

8    and supplemental disclosure, they don't break out the

9    individual plaintiffs that are claiming damages.  So that

10   is one in our view substantial deficiency.

11           The second deficiency is they don't identify the

12   documents that would support their claim of damages other

13   than in very broad categories.  The Court can see from the

14   initial disclosure and not supplemented other than through

15   this spreadsheet that -- by the way, the spreadsheet was

16   not -- it's for a different case.  It's not for this case.

17   You can tell that from the transmittal letter that is

18   Exhibit I think 3 maybe to their or Exhibit C to their

19   response.  They say they are giving that to us as a

20   courtesy.  This is a spreadsheet for the Newsmax case,

21   another virtually identical lawsuit against another media

22   company called Newsmax.

23           But they tell us and they said in the papers

24   that we can find the documents on damages in the Customer

25   Relationship Management database.  And they don't tell us

1    anything more than that.

2            Although I do know that on Friday, after hours,

3    this past Friday, just three days ago, they sent us

4    another group of documents that they purported to be from

5    this management database.  But prior to that, they had

6    made productions.  We think we had found what they are

7    talking about in this CRM database.  In Document

8    Production 18 and Document Production 11, those

9    productions had a million pages of documents in them.

10   Some of them completely unrelated to damages or to any CRM

11   database.  So we think it's not sufficient for them to

12   merely say, oh, there are some documents out there; go

13   find them.

14           THE COURT:  Well, I mean they're not -- I mean

15   Smartmatic isn't required to delineate by Bates number or

16   even specify in detail which particular documents at this

17   stage in the initial disclosures which specific documents

18   support damages.  It's categories of documents, right,

19   that the rule requires?

20           MR. BABCOCK:  Well, I think we've cited some

21   authority that they can't just say we've now produced ten

22   million pages and go find it.  I think that that kind of a

23   needle in the haystack is not what the rules provide.

24           And I think the Court has to consider this

25   motion in context.  We filed it in October.  And prior to

1    that, we had tried to take the deposition of eight of the

2    nine people that their initial disclosures said had

3    something to do with damages and they had blocked all of

4    those.  And we indicated the ninth person we'd like to

5    take, but it was after your second order which said no

6    more depositions.  So we didn't notice him.  We just wrote

7    them and said, hey, we wanted to take this guy.

8              Now after fact discovery, but I know it's been

9    reopened, they've identified six more people.  We sent

10   them a 30(b)(6) notice on damages largely on damages and

11   they blocked that.

12             THE COURT:  What's the basis for not producing a

13   30(b)(6) witness though?

14             MR. BABCOCK:  I'm sorry.  What?

15             THE COURT:  What was Smartmatic's reason for not

16   producing a 30(b)(6) witness on damages?

17             MR. BABCOCK:  They said we hadn't produced

18   documents to them.  Well, the 30(b)(6) was to find out

19   what they had.  We don't have information about their

20   damages.

21             So and then on top of that, this disclosure we

22   thought was very perfunctory.

23             And final I think frustration that we felt

24   occurred after we filed this motion.  But time after time,

25   including in the initial and the supplemental disclosures,

1   they say we can't figure out what our -- the full extent

2   of our damages so we can compute them for you, but you can

3   rely on experts.  You can rely on our expert.  You know,

4   look at our expert.  That's replete through all their

5   responses to our discovery.

6           And then January 19th, the expert deadline

7   passed and they didn't disclose an expert and they didn't

8   give us a report.  And now the deadline that they

9   proposed -- I think I was too quick to apologize.  That

10  schedule that you're going to enact was their schedule.

11  It wasn't ours.  But that's fine.

12          THE COURT:  Well, you didn't propose one.

13          MR. BABCOCK:  No.  We didn't propose one.

14          THE COURT:  You didn't even propose one in the

15  alternative.

16          MR. BABCOCK:  No.  We didn't.  We didn't.

17          THE COURT:  So, you know --

18          MR. BABCOCK:  So fair enough.  So we'll spank

19  ourselves for that.

20          THE COURT:  Well, I'm not saying you were

21  spanked.  I'm just saying you gave me nothing to consider.

22          MR. BABCOCK:  No.  That's fair.  You couldn't do

23  anything else.  But that's -- I mean maybe we would have

24  proposed something slightly different.  But we wouldn't

25  have proposed any longer so.  But now their experts aren't

1      due until January 7th.  So --

2                THE COURT:  January 7th?

3                MR. BABCOCK:  I mean June 7th.  June 7th.  And

4      the fact discovery closes under this new proposal on May

5      5th.  So we are really in the dark about a major part of

6      their case where they're -- now they're up to -- if this

7      spreadsheet is right, I don't know if this is what they

8      want from Newsmax, but they're up to 2.9 billion now.  Up

9      from two billion against us if the spreadsheet is accurate

10     in terms of what they claim.  And we're in the dark and

11     we're going to stay in the dark until June 7th.  That

12     doesn't seem right.

13                And our view is that they ought to be made to

14     completely disclose what their damages are.  I mean even

15     the spreadsheet is so limited to International in the

16     Newsmax case.  On U.S., even the documents that they gave

17     us Friday, the only U.S. entity that we can find and

18     admittedly it was a bunch of documents that we tried to

19     look at over the weekend was Louisiana.  And one of the

20     requests for proposal that they've got in there was they

21     have a bid to provide Louisiana with office supplies.  So

22     not even election machines.  Although there is one

23     proposal in Louisiana.  But Louisiana has a long-term

24     contract now with Dominion.  So I mean that's the kind of

25     thing we don't know where they are coming from.

1          THE COURT:  Well, you're not suggesting that

2    Rule 26 requires absolute precision at this stage as to

3    the damages, are you?

4          MR. BABCOCK:  Well, it depends what you mean by

5    absolute precision.  But if --

6          THE COURT:  Well, my reading of the rule is that

7    it requires you to disclose what you know now.  What you

8    know at the time that the disclosures are due with the

9    obligation to amend as you get more information.

10          MR. BABCOCK:  Yeah.  I think that's fair except

11    that on the issue of damages, the cases and we cited some

12    of them say, look, you ought to know what your damages are

13    going into the case.  They certainly appeared to know what

14    their damages were because they issued a press release on

15    the day they sued us and said OAN has caused us two

16    billion in damages.  Well, did they make that number up or

17    did they have some basis for it?

18          THE COURT:  You don't have to look at the press

19    release.  It's in the complaint, too.

20          MR. BABCOCK:  Excuse me?

21          THE COURT:  I say you don't have to look at the

22    press release.  It's in the complaint as well.  At least

23    in my reading of the complaint, there is an allegation

24    that the company was devalued by approximately two million

25    dollars.

1          MR. BABCOCK:  Yeah.  I should have started with

2    the complaint.  The press release --

3          THE COURT:  I try to stick with the papers.

4          MR. BABCOCK:  Yeah.  And the next day they have

5    a news article posted on the website and they gave a

6    lengthy interview to Don Lemon on CNN.  So I mean they've

7    been talking about their damages and we find it improbable

8    that they don't have some better idea of what OAN, you

9    know, a small family-owned cable T.V. channel has caused

10   them.

11         THE COURT:  I'm looking at your counsel table.

12   You may want to --

13         MR. BABCOCK:  Excuse me?

14         THE COURT:  I said I'm looking at your counsel

15   table.  I think you have a sophisticated team.

16         MR. BABCOCK:  Well, they brought that up in one

17   of their papers about how, you know, we're aggressively

18   defending this case and how many lawyers we have.  And I'd

19   love to get that out on the table.  There is an insurance

20   policy that requires defense and in light of the damages

21   and in light of the limited indemnity obligation, the

22   insurance company has taken a very aggressive posture.

23         THE COURT:  Let me make it clear.  I'm not

24   suggesting that OAN, no matter its size, doesn't have the

25   right to aggressively defend the suit.  I'm just simply

1    saying I don't really think it -- you know, let's stick to

2    the argument.  The relative size of the parties, you

3    know --

4              MR. BABCOCK:  Yeah.  Well, it doesn't matter to

5    them because two billion or one billion or half a billion

6    will wipe them out.  So that's why they're taking it very

7    seriously.

8              THE COURT:  Okay.  So the complaints at least as

9    to where the amended initial disclosures fall short is

10   that it's not delineated between and amongst the

11   plaintiffs and specifically with respect to the

12   computation of damages.

13             MR. BABCOCK:  Yes.  That's certainly true.

14             THE COURT:  It doesn't identify which documents

15   support the damages or the location --

16             MR. BABCOCK:  I think they have to do better

17   than they've done.  You know, better than to say, hey, we

18   produced ten million pages of documents and it's in there.

19   I think they have to do better than that.

20             THE COURT:  Right.  I'm just saying stick with

21   me though.  I want to understand the list of complaints

22   there are.

23             MR. BABCOCK:  Right.  I wrote them out.

24             THE COURT:  So according to OAN, the amended

25   disclosures don't identify which documents -- a category

1    of documents and location of those documents support

2    damages claim.  Are there any other complaints as to why

3    the initial disclosures fall short?

4              MR. BABCOCK:  Yes.  I think I've already

5    mentioned they don't differentiate among the plaintiffs.

6              THE COURT:  Yes.

7              MR. BABCOCK:  And if the Smartmatic spreadsheet

8    is meant to apply to us, it has a bunch of keys to it that

9    aren't -- you know, they are just, you know, A, B, C, T.

10   Some of it's explained in the letter, but it's certainly

11   not identified in the disclosures.

12             It doesn't address loss profits related to the

13   United States.  And they include the statement,

14   "Smartmatic's expert will include his or her discussion of

15   damages related to the U.S."  And I think again we cited

16   cases that say that that is insufficient under the

17   disclosures to just lay it off on the expert that

18   typically is identified and deposed late in the case as it

19   is here.  So now we're not going to get to the expert

20   until June 7th and we're in the dark until then.

21             I think we sent you a courtesy copy over the

22   weekend of a motion that we filed to dismiss their damages

23   claim with Judge Nichols because until a few minutes ago,

24   Judge Nichols had the scheduling order which is still in

25   place until the Court granted an extension and they have

1    not done anything about getting -- they just didn't comply

2    with it.  In the face of not having an order from him

3    extending it, they just blew by the expert discovery

4    deadline and that to us was -- left us in a bad spot.

5           THE COURT:  Well, hopefully, my comments today

6    will clarify how little I will tolerate any party sitting

7    on their rights or sitting on the schedule to wait for

8    rulings from the Court.  So hopefully, that's been made

9    very clear today.

10          MR. BABCOCK:  Well, I hope -- I'd just like to

11   say for the record I don't think OAN has rested on its

12   rights and I think we have been scrupulous in trying to

13   follow your orders, of course, but Judge Nichols'

14   procedures about how you do it, which is why we hadn't

15   filed these motions before with him because we weren't,

16   you know, permitted to.

17          THE COURT:  Okay.  Thank you, sir.

18          MR. BABCOCK:  Thank you, Your Honor.

19          THE COURT:  Mr. Letkewicz?

20          MR. LETKEWICZ:  Letkewicz.

21          THE COURT:  Letkewicz.

22          MR. LETKEWICZ:  Yes.

23          THE COURT:  Okay.

24          MR. LETKEWICZ:  So I'll just respond to the four

25   different complaints that I understand that OAN is making

1    to our amended initial disclosures and starting with the

2    fact that we did not delineate against different parties.

3                    THE COURT:  Um-hum.

4                    MR. LETKEWICZ:  The first time that we became

5    aware of this complaint was when Mr. Babcock got up here

6    and told you that.  It is not in their papers.  It was not

7    ever discussed in the meet and confers.  And so we don't

8    believe that, you know, this was such a big issue.  We

9    think they would have raised that earlier.  So --

10                   THE COURT:  So are you going to amend?

11                   MR. LETKEWICZ:  To delineate against the

12   specific entities?

13                   THE COURT:  Yes.

14                   MR. LETKEWICZ:  I believe we don't need to do so

15   under the rules.

16                   THE COURT:  How --

17                   MR. LETKEWICZ:  Because ultimately --

18                   THE COURT:  Sir, let me --

19                   MR. LETKEWICZ:  I'm sorry.  I didn't mean to

20   talk over you.

21                   THE COURT:  That's fine.  What in the rules

22   allows the plaintiffs to file an omnibus initial

23   disclosure as to damages?

24                   MR. LETKEWICZ:  It says that there has to be a

25   computation of damages and we've provided the computation

1    of damages.  It's ultimately for all parties.

2              THE COURT:  I haven't seen a computation of

3    damages.  You want to point me to it?

4              MR. LETKEWICZ:  Sure.  So we specifically

5    referenced this international opportunities Excel that

6    includes a computation of our damages with respect to

7    international opportunities.

8              THE COURT:  Are these -- I want to be careful

9    about --

10             MR. LETKEWICZ:  Sure.

11             THE COURT:  -- about talking about the document

12   which is under seal.

13             MR. LETKEWICZ:  Sure.

14             THE COURT:  That document does not apportion any

15   damages to OAN.

16             MR. LETKEWICZ:  I would agree.  Yes.  It does

17   not specifically apportion anything to OAN.  What I would

18   say is that -- I would say two things.  One, that at this

19   point, we are giving our best calculation at this point in

20   time based on the information and discovery that we have

21   and that's what we are providing.  We have not received

22   discovery, for example, on OAN's reach.  And so that could

23   obviously impact what the ultimate number is.

24             THE COURT:  On OAN's what?

25             MR. LETKEWICZ:  On OAN's damages.  Like the

1    reach.  Like where the statements -- how far out.  You

2    know, do they reach internationally?  You know, would

3    people in -- you know, for example, if we claim damages in

4    Angola.  Did such statements somehow make its way out to

5    Angola?

6              THE COURT:  Okay.

7              MR. LETKEWICZ:  And the other thing is that

8    we're -- as a matter of law, we're not obligated to

9    apportion damages from OAN to President Trump, Mike

10   Lindell, Fox.  They certainly can raise that argument.

11   But we do not have an obligation to have to apportion out

12   that -- those damages --

13             THE COURT:  You have an obligation to say what

14   your damages are as a result of the defendant's conduct

15   and that is not something that Smartmatic has done.  You

16   admit that?

17             MR. LETKEWICZ:  Well, we say, Your Honor,

18   that -- we cite the Excel and we say as a direct and

19   proximate result of the disinformation campaign that

20   defendant participated in regarding Smartmatic.

21             THE COURT:  So does the spreadsheet encompass

22   all of the damages -- are all of the numbers or the

23   figures in the spreadsheet, all of them relate to OAN?

24   All of the lost opportunities?  I mean you've heard --

25             MR. LETKEWICZ:  Certainly a portion -- I

1    apologize.

2              THE COURT:  You've heard Mr. Babcock say that

3    there are some contracts that are listed there that don't

4    have anything to do with OAN.

5              MR. LETKEWICZ:  Well, we would -- based on the

6    information that we have at this time, we would disagree

7    with that statement.

8              THE COURT:  Okay.  Let me ask you a question.

9    The initial disclosures that Smartmatic -- the first

10   iteration of the initial disclosures --

11             MR. LETKEWICZ:  Um-hum.

12             THE COURT:  -- you believe that complied with

13   Rule 26?

14             MR. LETKEWICZ:  We believe it did because based

15   on the information that we had at that time, this is a

16   very complicated analysis and where there is such a

17   complicated analysis, it is appropriate to be relying on

18   experts and to be able to put forth a more detailed number

19   once there is expert discovery --

20             THE COURT:  But there's no number.  That's the

21   problem.  There was absolutely zero details.  You filed a

22   federal lawsuit and at least the first iteration had --

23   was basic as to put it very kindly the amount of

24   information you had.

25             Now you've amended the disclosures to include a

1    little bit of additional information, but -- and it

2    doesn't require absolute precision.  So I'm not saying

3    that you are required to put in the figure down to the

4    dollar and cent.  But you must have information supporting

5    some measure of damages because you had to have that in

6    order to file your complaint under Rule 11.

7         And you made an allegation that the company was

8    devalued by approximately $2 billion, but there's no

9    documents that support that valuation, no category of

10   damages relating to a devaluation of the company.  None of

11   that.  And Rule 26 requires you to set forth that

12   information and doesn't -- the rule could not be more

13   clear that you're not allowed to rest on that excuse that

14   certain documents have not been produced in discovery,

15   particularly by the other side.  Rule 26 could not be more

16   clear on that issue.

17        MR. LETKEWICZ:  Well, I agree.  What we've given

18   in this updated response though is a more specific amount

19   with specific numbers there based on additional

20   information that we have learned in working with our

21   expert.

22        THE COURT:  Where is the information relating to

23   the devaluation of the company as set forth in your own

24   complaint in the initial disclosures?

25        MR. LETKEWICZ:  In the devaluation?

1          THE COURT:  Yes.  Let me just be very clear for
2  the record.
3          MR. LETKEWICZ:  Sure.
4          THE COURT:  Paragraph 438 of your complaint
5  discusses a no-win situation that a significantly
6  diminished Smartmatic's business value and prospects.  And
7  you allege that Smartmatic's business was valued in excess
8  of three billion based on a modest multiplier.  Now
9  following OAN's publication of its defamatory statements,
10  Smartmatic's business is valued at less than one billion.
11          And I don't see anything -- certainly not in the
12  first iteration of amended disclosures, nothing about
13  that.  I don't see anything in the amended disclosures.
14  At a minimum, I would expect to see at least that, you
15  know, on the understanding that you amend as you go
16  forward in the lawsuit.  You're not allowed to just say my
17  expert will get around to it.  I mean the rule is so clear
18  on that.
19          MR. LETKEWICZ:  Yeah.  And I think we've tried
20  to be as specific as we can be based on the information
21  that we have.
22          THE COURT:  Okay.  Well, I don't think it --
23  it's not going to cut it.  Have you looked at the measure
24  of damages that each of the plaintiffs has suffered or
25  done any sort of analysis on that topic?

1      MR. LETKEWICZ:  Yeah.  We've done analysis on

2  that topic and that's a big part of what is set forth here

3  in the Excel that we reference in the amended initial

4  disclosures.

5      THE COURT:  But only one company operates

6  internationally.  Right?  Only one plaintiff?

7      MR. LETKEWICZ:  So the way it works is that --

8  so there are -- so that Smartmatic International

9  essentially rolls up to SGO, which is the holding company

10  and that is the parent of the entities that operate

11  internationally.

12      THE COURT:  Okay.  Where is the category of

13  documents and location -- so Rule 26(a)(1)(a)(ii) requires

14  a copy or description by category and location of all

15  documents used to support your claims and defenses

16  including damages.  Where is that listed?

17      MR. LETKEWICZ:  So if we go back to -- let's see

18  here -- in page 8.  So we're now talking about documents

19  supporting Smartmatic's claims.  In the second bullet, it

20  says "documents and communications in the possession,

21  custody or control of Smartmatic relating to bids and

22  proposals for potential projects."

23      On the next page, it says "documents and

24  communications in the possession, custody and control of

25  Smartmatic relating to its financial records, including

1    audited and unaudited financial statements and other

2    accounting records."

3         Then says "documents and communications in

4    possession, custody and control of Smartmatic relating to

5    its business plan, budgets and projections."

6         And then we also say that when we talk about the

7    computation of damages that we would make available for

8    inspection and copying the documents and any other

9    evidentiary material not privileged or protected from

10   disclosure on which the computation of the above

11   categories of damages is based, we also reference the CRM

12   data as well in our amended disclosures.

13        THE COURT:  All right.  With respect to the

14   specific buckets of damages, there is no -- you would

15   agree with me there's no computation at all in your

16   amended disclosures.

17        MR. LETKEWICZ:  I would disagree with that with

18   respect to the international --

19        THE COURT:  Okay.  Set aside the international.

20   We talked about that.  With respect to the compensatory

21   damages, special damages, consequential damages, punitive

22   damages, attorneys fees -- I'm not even sure if you're

23   entitled to attorneys fees.  But I mean there's just no --

24   there's no computation here.

25        MR. LETKEWICZ:  Well, so focusing on the U.S.

1   here, we focused on the factors that we are going to take

2   into account to calculate our damages and that's how we're

3   going to determine which again we're working with our

4   expert to come up with a more specific number.

5            And with respect to the out-of-pocket expenses,

6   we explained that these are going to be substantiated

7   through invoices, testimony and expert reviews.  So that's

8   I think pretty straight forward how that will be

9   computed.

10           THE COURT:  Okay.  I still come back to the $2

11   billion figure.  There should be -- even if it's not a

12   final computation, some -- I mean that's the one

13   allegation of harm that you've alleged with any

14   specificity in the complaint.  I don't see that here in

15   your initial disclosures, how Smartmatic got there.  And,

16   you know, even if it's not final analysis, there has to be

17   some computation listed in the initial disclosures.  Why

18   is that not --

19           MR. LETKEWICZ:  To be clear, in the complaint we

20   weren't alleging $2 billion of damages against OAN.  We

21   were saying that our -- because as you're aware, we filed

22   other lawsuits and as part of that, OAN -- as part of

23   that, our value went down from three billion to one

24   billion.

25           When we went to the discussion in our accounts

1  as to damages, we did not put that forward a specific

2  figure.

3          THE COURT:  Okay.  Is there anything further,

4  sir?

5          MR. LETKEWICZ:  No.  That's all I have.

6          THE COURT:  Okay.  Thank you.  Briefly, any

7  response?

8          MR. BABCOCK:  Well, we are making progress, Your

9  Honor.  Apparently, they're not alleging $2 billion of

10  damages against OAN.  But what are they alleging?  Mr. --

11  I hope I pronounce this right -- Letkewicz says that

12  they've been working with their expert.  Well, they should

13  have finished working with their expert.  Their deadline

14  was January 19th.  So they should have been done with

15  their expert unless they knew something that we didn't

16  know, that the judge was going to grant a motion to

17  extend.  Judge Nichols I'm talking about.  They should be

18  done.  So their expert analysis, which they refer to,

19  should go into the amended disclosures.  They have been

20  working with them and they should be done.

21          THE COURT:  Well, that's not the deadline now.

22          MR. BABCOCK:  Well, it's certainly within your

23  power to tell them to do that.  Whether you think that's

24  appropriate or not, it's -- you know, I just observe based

25  on counsel's comments, they've been working with an expert

1    and they've been telling us for two and half years or one

2    and a half years, just wait, our expert is going to tell

3    you everything.  And we waited for a long time and we

4    haven't heard anything.

5         One last thing.  They say they are waiting for

6    documents from us on OAN's reach.  Well, they have

7    documents on our reach.  It's not as much as it used to be

8    because AT&T and Verizon cancelled their contracts, their

9    distribution contracts with us.

10        But in terms of foreign, we have produced

11   documents that show the very few subscribers that we have

12   overseas and what countries they live in.  So they have

13   that information and they know that.  They're not waiting

14   on us for anything.

15        THE COURT:  Well, that argument itself is not

16   terribly persuasive to me --

17        MR. BABCOCK:  Yeah.  Me neither.  But I just

18   wanted to mention it.

19        THE COURT:  Okay.  All right.  Thank you.

20        MR. BABCOCK:  Thank you, Your Honor.  Are there

21   any other questions?

22        THE COURT:  No.

23        MR. BABCOCK:  Thank you.

24        THE COURT:  Okay.  I'm prepared to rule on this

25   dispute.  Rule 26 very clearly requires a list of

1   information that a party is to disclose without waiting

2   for any sort of request from the other -- from its

3   opponent.  And one of the things that Rule

4   26(a)(1)(a)(iii) requires is a computation of each

5   category of damages claimed by the disclosing party who

6   must also make available for inspection and copying as

7   under Rule 34 the documents or other evidentiary material

8   unless privileged or protected from disclosure on which

9   each computation is based, including materials bearing on

10  the nature and extent of injuries suffered.

11          Implicit in this rule is the fact that the

12  injuries suffered is injuries suffered on account of

13  defendant's conduct.  That's what the rule is getting at.

14  In addition, the rule requires a copy or a description by

15  category and location of all documents, electronically

16  stored information and tangible things that the disclosing

17  party has in its possession, custody or control and may

18  use to support its claims or defenses unless the use would

19  be solely for impeachment.  And that particular subsection

20  of the rule encompasses documents relating to damages.

21          Of course, the rule also states that a party is

22  not excused from making its disclosures because it has not

23  fully investigated the case or because it challenges the

24  sufficiency of another party's disclosures or because

25  another party has not made its disclosures.

1          When OAN raised this dispute, the first set of

2     initial disclosures that Smartmatic had served were

3     clearly deficient.  There was no computation of damages at

4     all and very little, if any, description of the category

5     and location of documents supporting the damages claims.

6          The amended disclosures provide a little bit

7     more information, but there is still no computation of the

8     categories of damages that any plaintiff has suffered

9     allegedly on account of OAN's conduct in this case.

10          And so I am going to grant the motion with

11     respect to the computation of damages argument.  At this

12     stage, plaintiff should have some idea of the damages that

13     it has suffered.  It may not be the final.  You can

14     reserve your rights to amend.  That's quite common.  But

15     what we're not entitled to do is simply withhold the

16     information and say you'll get it during expert discovery.

17     Again the rule could not be more clear on this.  And this

18     is something that should have been relayed at the

19     beginning of the case and amended throughout the case.

20          In addition, the documents -- the categories of

21     documents supporting the damages claims are very broad and

22     do not provide any specificity as to where the documents

23     are, what they are.  I understand there is a disclosure of

24     the CRM database.  So that's at least something.  But I

25     don't find that -- if there are other documents that go to

1      the damages, Smartmatic needs to disclose it.

2              Now with respect to this argument that's been

3      raised that the party plaintiffs have not specified which

4      damages each one of them has suffered, I'll just say at

5      this stage, if Smartmatic does not choose to amend on the

6      basis at least to separate the calculation of damages even

7      on a, you know, even on a provisional basis while you wait

8      for experts to weigh in, you do so at your own peril.  I'm

9      making that very clear right now.

10             If there's a reason -- I don't -- you know, I

11     don't purport to know what it is -- that Smartmatic

12     decided to bring this lawsuit on behalf of three different

13     party plaintiffs, then there must be some meaning in the

14     corporate forum.  And if you choose not to disclose

15     damages or apportion damages or even give a again a

16     provisional assessment of damages that each party has

17     suffered, then that's something that the Court will and

18     can and will consider at a later time if there's any sort

19     of challenge to these disclosures.

20             So I'm going to order plaintiffs to amend the

21     disclosures within 14 days to provide a computation as it

22     has it right now of the category of documents or --

23     sorry -- of category of damages and to amend to provide to

24     the extent there are additional categories of documents

25     supporting those damages.

1          Any questions on this issue?

2          MR. LETKEWICZ:  Just one clarification.  On the

3  apportionment, you're just talking about the different

4  plaintiff entities.  Right?

5          THE COURT:  Right.  I'm saying if you choose not

6  to after you've heard what you've heard today, then you do

7  that at your own peril.

8          MR. LETKEWICZ:  Understood, Your Honor.

9          THE COURT:  Knowing what the remedy is for a

10  party not providing initial disclosures, the remedies, as

11  you know can be quite severe.  So I'm just making that

12  very clear right now.

13          MR. LETKEWICZ:  Understood.  Thank you very

14  much, Your Honor.

15          THE COURT:  You're welcome.

16          Okay.  Anything else?

17          MR. BABCOCK:  Not from OAN, Your Honor.  Thank

18  you.

19          THE COURT:  The last issue that I'm taking up

20  today is 143-5.  That is the defendant's opposed motion to

21  compel source code and machine inspection.  And I think

22  this issue Smartmatic has not had the opportunity to file

23  a response.  So I will hear from both sides.  But

24  Mr. Edwards?

25          MR. EDWARDS:  John Edwards again for the

1    defendant.  Your Honor, we served a request for inspection

2    on Smartmatic to request several categories of tangible

3    items under Rule 34(a)(2), specifically certain source

4    code specimens and exemplar voting machine and the reason

5    we did that is because the complaint spells out quite

6    clearly that they consider it to be defamatory certain

7    publications and broadcasts that were made by my client,

8    specifically with regard to the election technology and

9    software.

10          And at the complaint in paragraphs 84 through

11   110, they go into a great deal of detail about their

12   complaints about statements concerning their technology

13   and in fact they refer to Ms. Powell saying that the

14   software that Smartmatic created was designed for the

15   purpose of shifting vote results, also that fraud was

16   possible due to a core design in the Smartmatic software

17   that allows manipulation.  And also at paragraph 226, they

18   claim that OAN went too far by claiming that there had

19   been rigged elections in prior -- in the prior events in

20   elections in other countries prior to the 2020 election in

21   paragraph 226.

22          So we think considering the breadth of the

23   complaints made by Smartmatic concerning statements

24   associated with their voting machines and software that we

25   are entitled to inspect that software and hardware to

1    determine the veracity of these statements, whether in

2    fact they were true or false.

3              Of course, in a defamation case, the plaintiff

4    has the burden to prove falsity.  But also the defendant

5    can show that the statements complained of are literally

6    or substantially true.  An investigation of their code in

7    looking at their machine would help us accomplish

8    determination of those two things.

9              So we sent what we consider to be very narrow

10   requests for source code and an exemplar machine that was

11   used in L.A. County.  Smartmatic likes to say that they

12   were only used in L.A. County.  That that was the only

13   contract they had in the 2020 election.  But we do know

14   that Smartmatic used to own a company called Sequoia

15   Voting Systems and after a federal investigation in the

16   mid 2000's, they were forced to divestify themselves of

17   that company based on a concern about foreign ownership of

18   voting machine companies.

19             So ultimately, through a series of bankruptcy

20   proceedings and sale, Sequoia was acquired by Dominion and

21   Dominion was operating in many, many more states during

22   the 2020 election.  But they were also using Sequoia

23   machines and Sequoia machines were in the past under the

24   umbrella of Smartmatic and those machines were used in at

25   least five states.  We have reason to believe --

1          THE COURT:  But operated by Dominion.  Right?

2          MR. EDWARDS:  Dominion owned Sequoia and were

3    supporting the systems at that time.

4          THE COURT:  Right.

5          MR. EDWARDS:  But what our experts want to know

6    is to what extent did the machines in these other states

7    during the 2020 election incorporate or use technology and

8    software that was developed by Smartmatic and/or Sequoia

9    when Smartmatic owned Sequoia.  And so when Smartmatic

10   says we only operate in L.A. County, that's only a very

11   superficial look at the scenario because we believe

12   there's going to be code and technology that Smartmatic

13   and Sequoia created used in other jurisdictions.  That's

14   just one aspect of why we want to look at the code, but

15   it's also because of their complaint which goes on and on

16   about defamation concerning their technology and software.

17         So we served this request for inspection and

18   tried to keep it as narrow as we could and they basically

19   sent back a response saying no, you're not going to get

20   any of this.  And unlike at Dominion, Dominion has agreed

21   to allow us to see their source code.  It's just a matter

22   of hammering out a protective order to ensure that it's

23   done under controlled circumstances.  And that's exactly

24   what should happen here.

25         We should be allowed to have our expert inspect

1    an exemplar source code from not only L.A. County, but

2    code they had developed previously so we can determine

3    whether the statements in the complaint are true or false

4    about how the code was developed, does it have provisions

5    in the code that would allow manipulation of votes.  They

6    say it's false to insinuate that.  Well, we're entitled to

7    test whether that statement is true or false.

8            THE COURT:  Why do you need source code though

9    that goes back to 2000?

10           MR. EDWARDS:  Well, because the jurisdictions in

11   which the claim of manipulated election results go back to

12   the mid 2000's.  It goes back to Venezuela.  It goes back

13   to the Philippines and other countries where they say,

14   hey, it's false and defamatory to claim our code was

15   created to allow manipulation of vote totals in these

16   foreign dictator-controlled countries.  And they say

17   that's defamatory.  Okay.  Well, we need to see the code

18   they developed in the mid 2000's that was used for those

19   purposes to know whether it's true or false.

20           THE COURT:  Well --

21           MR. EDWARDS:  They're claiming defamation and

22   we're entitled to test whether or not what they're saying

23   is true or false.  And in fact for our defense of

24   substantial truth, it is required that we be able to see

25   and test that code.

1          THE COURT:  What are the paragraphs of the

2     complaint that you listed were in your view relevant to

3     this dispute?

4          MR. EDWARDS:  84 through 110.  But specifically,

5     with respect to what I quoted from Powell, it would be

6     paragraph 227.  There's a listing of complaints about --

7     what Powell was saying about their software shifting

8     votes.  And that would be Subsection B and Subsection P.

9          Also in paragraph 226, they accuse us of

10     alleging that Smartmatic has rigged election in other

11     countries prior to the 2020 election.

12          Those are the core paragraphs, but there are

13     other instances in which the complaint refers to an attack

14     on their election technology, their software and their

15     machines.  Questioning it.  And that's actually the gist

16     of their complaint overall is that there's been a

17     defamation of the plaintiffs based on challenging their

18     technology and software.

19          THE COURT:  And what would the source code tell

20     you or not tell you?

21          MR. EDWARDS:  Several things.  Whether or not it

22     was designed to allow the functionality of shifting votes

23     or shaving or padding votes.  There's been a lot of

24     research and studies published about code that's been

25     studied and whether or not it allows for that to occur and

1    that's one thing we want to know because if it does have

2    evidence of being designed for that purpose or having that

3    ability, that would go to whether or not the complaint of

4    statements are true or false or substantially true.

5              THE COURT:  I don't think it gets you all the

6    way there.

7              MR. EDWARDS:  Well, I mean they do say that the

8    claim -- it's defamatory to say that their code was

9    designed to manipulate an election.  Well, if our expert

10   looks at the source code and says Module A of this

11   provision of the code allows you to shave or pad a vote,

12   then that's probative of whether the complaint of

13   statement is true or false.

14             And I wanted to call the Court's attention to

15   one case out of this district, Montgomery versus Risen.

16   It's 197 F.Supp. 3d. 219.  That's DDC (2016).  Judge

17   Contreras.  It was a defamation claim was made --

18             THE COURT:  Have you shared this case with

19   Smartmatic's counsel?

20             MR. EDWARDS:  I have not.  We've just located it

21   fairly recently.

22             THE COURT:  Okay.  From now on, everyone, any

23   time you appear before me, I don't want to hear something

24   for the -- a case specifically or any authority for the

25   first time that has not been disclosed to the other side.

1    You ostensibly knew it before you stood up today.

2              MR. EDWARDS:  All right.  So I'll just refer

3    that case for both counsel and the Court.  But the

4    objections that Smartmatic makes in this case or -- I'm

5    sorry -- in response to our request for inspection is

6    primarily that they don't own the code, that they sold it

7    to L.A. County.  And actually, in fact they provided the

8    code to a third party called SLI Compliance and then SLI

9    Compliance provides it to the county and it's placed in

10   escrow.  There's a process called a trusted build where

11   the files are actually employed by the county.  But they

12   still have possession of the code or the code they

13   provided to SLI Compliance and they have an exemplar

14   machine, a ballot marking device that's available for

15   inspection.

16             And the reason we know that, Your Honor, is

17   because on the docket in the Lindell case, Docket Number

18   203 and this is the case Smartmatic filed and its pending

19   in the District Court of Minnesota, in September of just

20   last year, they represented that they have a ballot

21   marking device, an exemplar that they've given to their

22   own expert.  So it's available for inspection.  They made

23   it available for Lindell.  So we think we're entitled to

24   have our experts review that ballot marking device that

25   they've made available to Lindell and allow us to look at

1    it as well.

2              And we're happy to negotiate a protective order

3    to ensure that their experts maintain the confidentiality

4    of whatever they see and there's tight controls.  But it's

5    clearly relevant to the claims in the case and it could be

6    done in a way that doesn't impose any undue burden on

7    Smartmatic.  And it's something like I said that we've

8    already discussed with Dominion and it's being done in

9    that case as well.

10             And in fact, the L.A. County contract itself has

11   a provision that says in terms of confidentiality that if

12   a court enters an order allowing it, then it's fine.

13             THE COURT:  Yeah.  Okay.  All right.  Thank you,

14   sir.

15             MR. EDWARDS:  Thank you, Your Honor.

16             MS. SULLIVAN:  Olivia Sullivan on behalf of

17   plaintiffs.  So Smartmatic has not had an opportunity as

18   you mentioned, Your Honor, to brief this issue.  So I

19   think it is important to get just a little bit of

20   background about what Smartmatic actually did in the 2020

21   election which is the election at the crux of this case.

22             Smartmatic only provided technology in L.A.

23   County during the 2020 election.  I'll address OAN's

24   assertions about Sequoia in a minute.  But specifically

25   looking at L.A. County, L.A. County has a system called

1    the Voting Solutions For All People System.  It has a
2    number of components.  Some of those components include a
3    vote by mail ballot, an electronic poll book, an
4    interactive sample ballot, a tally system and a ballot
5    marking device.
6            The only piece of technology that Smartmatic
7    developed for the 2020 election for L.A. County is the
8    ballot marking device.  Smartmatic played no role in the
9    development of either the hardware or the software for any
10   other piece of technology used in the Voting Solution For
11   All People System.  So I think that's important to
12   understand when assessing the request for inspections.
13           THE COURT:  Is OAN required to take your word
14   for it or can they test the assertions in the complaint?
15           MS. SULLIVAN:  I know they can test the
16   assertions in the complaint, but there's publicly
17   available information that would allow them to do so.
18   There's tons of publicly available information about which
19   company developed each piece of the Voting Solutions For
20   All People.  For example, the E-Poll Book was developed by
21   Know, Inc.  So there's plenty of information available
22   about what Smartmatic's specific role in the 2020 election
23   was in L.A. County.
24           And then they can also test our assertion.
25   We've given a verified answer in response to written

1    discovery that we were only in L.A. County.  And as Your

2    Honor mentioned, Dominion operated Sequoia machines.  But

3    Smartmatic did not operate those pieces of technology.

4            And again there's an issue here.  I think OAN

5    does not understand exactly what was operated by Dominion

6    in those Sequoia machines.  When Smartmatic did have

7    ownership of Sequoia, it developed the Edge Plus II

8    software for Sequoia's machines that already existed.

9    Sequoia was an already functioning voting machine company.

10    The Edge Plus II software was not used in the 2020

11    election.  If you go to Secretary of State websites, it

12    will tell you what software and what components make up

13    each of these voting machines in the five states that OAN

14    alleges where Smartmatic technology was used.

15            There is no evidence that Smartmatic operated

16    anything or provided any software or hardware outside of

17    L.A. County for the 2020 election.

18            THE COURT:  So with respect to any requests for

19    source code for any technology that was used outside of

20    L.A. County, is it your position that Smartmatic has no

21    information in its possession, custody or control

22    responsive to those requests?

23            MS. SULLIVAN:  Correct, Your Honor.  We have

24    nothing outside of L.A. County and honestly, we don't have

25    anything for L.A. County within our custody, possession or

1    control, which I will also address.

2          There are two types of possession, custody or

3    control.  Both actual and legal.  And Smartmatic has

4    neither of those with regard to the technology that it

5    developed for the 2020 election in L.A. County.  The

6    contract with L.A. County assigns over all rights to

7    intellectual property to L.A. County.  So Smartmatic no

8    longer owns the source code, any version of it, any copy

9    of it.  It all belongs to L.A. County.

10          The same with the ballot marking device that

11   Smartmatic developed with L.A. County.  Those are under

12   the full possession, custody and control of L.A. County.

13   They are currently stored in a warehouse that is locked

14   that is not accessible to Smartmatic at its own free will

15   and the warehouse is owned by L.A. County.

16          THE COURT:  So Smartmatic gave all of that

17   source code to L.A. County and destroyed any copies it had

18   pursuant to the contract?

19          MS. SULLIVAN:  Smartmatic did not destroy all

20   copies.  But because all of it, the source code that

21   Smartmatic has was developed as part of its project, that

22   is still under the jurisdiction of source code that L.A.

23   County owns.  It owns all of the rights to these versions

24   and copies and files and anything associated with what

25   Smartmatic developed as a contractor of L.A. County.  So

1    Smartmatic is not able to actually hand this over without

2    the permission of L.A. County.  And Smartmatic asked L.A.

3    County if it would be willing to allow Smartmatic to grant

4    OAN access to inspect the source code and L.A. County

5    declined.  They don't think that it is necessary -- they

6    expressed this in their response to OAN's subpoena.  They

7    don't think it is necessary and they are very worried

8    about the disclosure of their source code, especially if

9    it could tamper in any way with the rules that it has to

10   comply with under the California election code.

11            THE COURT:  Well, has OAN sought to compel

12   compliance with that subpoena?

13            MS. SULLIVAN:  No.  As far as I'm aware, Your

14   Honor, they have not sought to compel L.A. County, which

15   is the route that we would suggest.  And as OAN mentioned,

16   this exact issue was taken up in the District of Minnesota

17   in our Lindell case and the court there declined to order

18   Smartmatic to produce any source code or machines from the

19   2020 election, finding that Lindell should go straight to

20   L.A. County because that's the best way to get the actual

21   source code that was used in the 2020 election and the

22   best way for L.A. County to control the process of having

23   their source code reviewed.

24            Obviously, there's a lot of concerns about

25   election technology and how -- the security of it.  So

1    L.A. County is in the best position to be moved to compel

2    if it is actually relevant or necessary that source code

3    is inspected.

4            THE COURT:  But -- okay.  Whoever is in the best

5    position.  But you're also saying that Smartmatic doesn't

6    have access to any of this information?

7            MS. SULLIVAN:  Correct.  The source --

8            THE COURT:  I mean whoever owns it is a

9    different issue whether it's in your possession, custody

10   or control and ownership are -- can be two different

11   things.

12           MS. SULLIVAN:  Correct.  Smartmatic does not

13   have ownership nor does it have -- because I want to be

14   specific, too.  OAN's request for inspection asks for the

15   source code and machines that were used in the 2020

16   election in L.A. County.  Smartmatic does not have the

17   source code, the build file or the machines that were used

18   in the L.A. County -- actually used in L.A. County.

19           So Smartmatic developed the source code, but

20   then handed it over to SLI Compliance as required by

21   California election code.  SLI Compliance did an in-depth

22   analysis of the source code and all of the hardware to be

23   used in the 2020 election.  Once it was certified under

24   California law, L.A. County had ten days to put it in an

25   escrow account.  The escrow account holds the source code

1   and the trusted build file and the encryption keys that

2   are all necessary to operate the election technology and

3   at no point has Smartmatic had access to that escrow

4   account.

5           THE COURT:  Okay.

6           MS. SULLIVAN:  The other issue here is that

7   again there is -- Smartmatic would also argue there's not

8   a need for a source code review here.  There is -- I'm not

9   sure how you feel about me bringing up cases since we

10  didn't have a chance to brief this issue.  But I will just

11  say there are several cases in which courts have found

12  that when the issue is highly sensitive source code, it's

13  not just a question of whether or not it's relevant, but

14  whether it is necessary.  And Smartmatic's position is

15  that a review of the source code is not necessary here for

16  OAN to test Smartmatic's assertions about truth or

17  falsity.  So there is nothing that OAN could particularly

18  gain from reviewing the source code that Smartmatic used

19  in this election or other elections.

20          THE COURT:  Why wouldn't it be necessary?  I

21  mean it goes to the heart of the allegations that

22  Smartmatic has made about why OAN statements were

23  allegedly false.  I don't think there's anything

24  particularly outrageous about that.

25          MS. SULLIVAN:  So I'm not saying that it's

1    outrageous.  But what I would like to focus on is that

2    there is a case, for example, Congo, in the District of

3    New Jersey where the court found that there were other

4    ways to understand source code and to evaluate source code

5    rather than handing it over because in situations where

6    it's highly sensitive source code as it is here, L.A.

7    County is the largest voting jurisdiction in this country

8    and election security is of the utmost concern.  If there

9    are other ways to learn about the source code or test the

10   allegations related to the source code, that should be the

11   default, not disclosure of the source code even where

12   there is a confidentiality order in place.  So there are a

13   lot --

14            THE COURT:  What are the other ways?

15            MS. SULLIVAN:  So one of them is to look at

16   information that is available about the source code.  So,

17   for example, there's publicly available information that

18   was issued by both the California Secretary of State and

19   SLI Compliance, which does a full analysis of Smartmatic's

20   source code.

21            So when the source code was tested for

22   certification before the 2020 election, SLI Compliance

23   actually wrote up a report that even addresses things like

24   whether or not the source code is capable of flipping

25   votes, whether it can be modified, exploited, whether

1      there's a back door in the software.

2              So when you're asking the question is it true or

3      false that Smartmatic's source code was designed to rig

4      elections, you can find that the answer is no from those

5      publicly available reports.  You don't have to do an

6      independent analysis of the source code.  There are

7      also --

8              THE COURT:  Okay.  That's fine.  But you don't

9      have it anyway.  So --

10             MS. SULLIVAN:  Correct.  We don't have it anyway

11     and we also think though that this argument applies -- you

12     know, there are several reasons Smartmatic would contend

13     that OAN should have not access to its source code from

14     every election project it's worked on since 2020.  That's

15     incredibly overbroad and would cause a number of issues

16     including the fact that in many instances, Smartmatic

17     signs over the intellectual property rights to its source

18     code in these jurisdictions.  But again in countries like

19     Venezuela and the Philippines, there are always reports

20     issued related to the source code, the certification and

21     the validity of those elections.

22             So if you want to know if Smartmatic rigged an

23     election in Venezuela, there are reports that say it did

24     not.  You don't need the source code from two decades ago

25     for a piece of technology that has nothing to do with the

1     2020 election.

2              THE COURT:  The conceptual problem I have with

3     that argument is that it requires the defendants to have

4     to rely on the conclusion of someone else instead of

5     allowing the defendants to test those assertions for

6     themselves, which a defendant is entitled to do.  Which

7     any party is entitled to do.

8              MS. SULLIVAN:  Correct.  Well, the Congo case

9     that I mentioned also says that one way to test these

10    assertions is by deposition.  And that is again a safer

11    way for there to be sworn testimony about how the software

12    was designed and what the ultimate outcome of these

13    elections were, whether it was rigged or not.  Smartmatic

14    has engineers that can testify to whether or not its

15    source code has any of these issues that OAN has claimed

16    it has.

17             And again if that is the easier route when we're

18    talking about decades and hundreds of projects across more

19    than 30 countries and technology that's highly sensitive,

20    the best option is to get this information from publicly

21    available sources, through depositions and through

22    documents that Smartmatic has produced.  It has produced

23    user manuals related to its technology.

24             THE COURT:  Is there any information -- any

25    source code that is in Smartmatic's possession, custody or

1  control that is responsive to any of the seven requests

2  that are at issue here?

3         MS. SULLIVAN:  There certainly would be source

4  code in Smartmatic's possession, custody or control.  I

5  can't speak to specifics because we're again we're talking

6  about technology over 20 years in 30 jurisdictions.  But

7  Smartmatic certainly has retained some of its source code

8  throughout the years for various projects.

9         I would also just like to note and this goes to

10  Your Honor's point about making sure that the parties are

11  meeting and conferring and like talking through these

12  things.  OAN never met and conferred with Smartmatic about

13  what it does or does not have in its possession, custody

14  or control.  OAN served these seven requests for

15  inspections.  As written, Smartmatic believed that it does

16  not have most of that stuff in its possession, custody and

17  control or they are not relevant or are really broad.  And

18  then OAN filed this motion.

19         So now when OAN is saying, oh, we would take an

20  exemplar of a voting machine, we would take a copy.  That

21  was not what was asked for in a request for inspection and

22  that was never something OAN asked for informally in a

23  meet and confer.  The only time we saw that was in the

24  motion that they filed.

25         THE COURT:  When was the motion filed?

1           MS. SULLIVAN:  Well, the motion was noticed I

2    guess on December 13th.

3           THE COURT:  Have you reached out to -- try to

4    talk to OAN since the motion was filed to meet and confer

5    to try to resolve this?

6           MS. SULLIVAN:  No.  In OAN's motion, the last

7    page, they said that because Smartmatic disagreed with all

8    of -- did not agree to any of the requests for inspection,

9    there was no further room for negotiation.  So OAN

10   foreclosed that possibility, never reached out to

11   Smartmatic and I don't think that it's proper for it to

12   seem as though we're not even willing to hand over

13   exemplars when that conversation has never been had

14   between the parties.

15          THE COURT:  Okay.  Well, look, I'm just not -- I

16   don't want to hear in this case from anybody about there

17   was no opportunity to talk about something because this

18   motion has been pending now for, you know, almost seven

19   weeks.  You can certainly pick up the phone and talk to

20   each other.  I have no tolerance for this from anybody.

21   Okay?

22          The next time you all appear before me, I want

23   you to actually renew your discussions on pending

24   discovery disputes because I will not hear we didn't have

25   an opportunity to discuss.  From the moment I take the

1    bench, you have the opportunity to discuss things.

2              MS. SULLIVAN:  Understood, Your Honor.

3              THE COURT:  Is there anything further?

4              MS. SULLIVAN:  I would just like to -- I don't

5    believe we have anything further, Your Honor.

6              THE COURT:  Okay.  Thank you.  All right.  I'll

7    hear from you briefly, Mr. Edwards.  But I'm actually

8    going to go through request by request.  If you have

9    anything you want to just respond to, that's fine.  But

10   I'm going to go through these seven requests with both

11   parties and try to understand what is and is not in the

12   possession, custody or control of Smartmatic.

13             MR. EDWARDS:  All right.  I'll be brief, Your

14   Honor.  Ms. Sullivan referred to the L.A. contract, which

15   is shockingly they produced in this case and marked it

16   attorney-eyes only.  It's a government contract.  But in

17   any event, the confidentiality provision of this contract

18   specifically says that a court order -- let me read it.

19   "Disclosures which are required by law such as a court

20   order and which are made with the explicit written

21   authorization of the county are allowable."

22             THE COURT:  But the point Ms. Sullivan was

23   making is that they don't even have access to the

24   information.  So I can't order it even if they did.

25             MR. EDWARDS:  That's next.  I'm getting to that,

1    Your Honor.  But just so we know, the contract does not

2    preclude access.

3            Then she says they don't have possession of it.

4    Well, there's an aff -- a declaration was made by James

5    Long, a Smartmatic employee, and filed in the Lindell case

6    on February 16th of last year, 2023.  Docket 90.

7            THE COURT:  Is this before me?  This

8    declaration?

9            MR. EDWARDS:  No.

10           THE COURT:  Okay.  I'm not going to consider new

11   information.  You all knew -- you had advance notice that

12   I was going to take this issue up.  I don't have this

13   information, sir.

14           MR. EDWARDS:  All right.  Well, let me just

15   conclude with these two points.  The first one is

16   Ms. Sullivan only addressed the other counties or other

17   states in the United States for the 2020 election.  But

18   again, the complaint of statements talk about other

19   elections in other countries.  They have possession of the

20   source code.  They are essentially a source code

21   developer.  They have repositories.  Our expert tells us

22   that they maintain everything.  You don't delete anything.

23   They have possession of the code they gave to SLI

24   Compliance that became the trusted build at L.A. County.

25   They certainly have that and we have reason to believe

1    that.

2              THE COURT:  Well, if counsel is telling me they

3    don't and I find out that they do, we're going to have a

4    problem.

5              MR. EDWARDS:  And, Your Honor, just to go back

6    to Montgomery versus Risen, my counsel at the table

7    reminded me during -- when I sat down that we did bring

8    this case to their attention and it was cited and referred

9    to five times in our summary judgment motion.

10             And it's an important case because there was a

11   defamation claim made by a tech developer against a book

12   publisher, who said that his software which he claimed,

13   the developer claimed to help detect hidden terrorist

14   messages and decipher Al-Qaeda codes embedded Al Jazeera

15   broadcasts was a hoax.  They say that software can't do

16   that.  So he sued for defamation.  And the magistrate

17   judge ordered the source code to be produced so they could

18   test whether in fact the source code to do what he said it

19   could do.  And the guy refused to produce the source code.

20             And it went up.  And so the district court

21   eventually affirmed the magistrate and said, you know, if

22   you're not going to produce the source code, I'm going to

23   dismiss your claim because you can't prove falsity.

24             If the guy is claiming your source code can't do

25   something that you say it can, well, you better produce

1    the source code so we can confirm it.  So his defamation

2    claim was dismissed and it was affirmed on appeal to the

3    D.C. Circuit.  So I think it's an important case.

4            And if Smartmatic is not going to produce the

5    code they have available to them, then they are going to

6    have to suffer the consequences of not being able to prove

7    falsity.

8            THE COURT:  Okay.  All right.  Thank you.

9            All right.  I am going to go through these seven

10   requests to get an understanding of -- and I'm going to

11   just rule request by request.

12           With respect to Number 1 -- I actually don't

13   know if this is the number that corresponds to the

14   request.  Is it actually Request Number 1 of the --

15           MR. EDWARDS:  That's for the source code?

16           THE COURT:  Yeah.

17           MR. EDWARDS:  L.A. County?

18           THE COURT:  Yeah.  Okay.  So -- just a moment.

19   Okay.  This is Smartmatic Systems including source code

20   used in L.A. County during the 2020 presidential election

21   and there's a number of subsections of information that's

22   requested.  Does everyone see where I am?

23           MR. EDWARDS:  Yes, Your Honor.

24           THE COURT:  Ms. Sullivan?

25           MS. SULLIVAN:  Yes, Your Honor.

1      THE COURT:  So this is the information that

2  Smartmatic is saying it has no access to.  Is that

3  correct?

4      MS. SULLIVAN:  Correct.  So I just want to be

5  very clear because OAN brought up this claim again.  This

6  request is asking for the source code that was used in

7  L.A. County during the 2020 presidential election.  What

8  was used is a specific copy of the source code and trusted

9  build file.  Smartmatic does not have that specific copy.

10  Smartmatic has, of course, copies that, you know, it has

11  through developing the source code, but not the final

12  source code that was actually used in the machines in

13  2020.

14      And the other point that I was making earlier

15  just again to be very clear, the L.A. County contract says

16  that anything developed, designed and/or provided by

17  Smartmatic in the course of providing services shall be

18  the sole property of L.A. County.  So even those copies

19  that Smartmatic does have from the development process are

20  still the property of L.A. County and should be disclosed

21  by compelling L.A. County at their parameters.

22      THE COURT:  Okay.  And this is the subject of a

23  subpoena to L.A. County.  Is that right?

24      MR. EDWARDS:  We did subpoena, Your Honor.  And

25  L.A. County told us to go to Smartmatic.

1          THE COURT:  Okay.  Well, you have tools at your

2   disposal.  I'm going to deny the motion to compel with

3   respect to that Request Number 1 because it's seeking the

4   source code used in the election.  And I'm getting

5   representation from Smartmatic that the actual source code

6   used in the election is not in Smartmatic's possession,

7   custody or control.  That's right.  Correct?

8          MS. SULLIVAN:  Correct.  It is the source code

9   from the escrow account.  Smartmatic does not have actual

10   or legal access to it.

11          THE COURT:  Okay.  With respect to Number 2,

12   this is Smartmatic Systems including source code that

13   Smartmatic is aware was used in whole or part in any

14   state, county or local government voting process in the

15   2020 election outside of L.A. County and that is unaltered

16   from the last date of use in the 2020 presidential

17   election.

18          Now what's Smartmatic's specific position on

19   this one?

20          MS. SULLIVAN:  Well, specifically, Smartmatic

21   is -- it asks for source code that Smartmatic is aware was

22   used.  Smartmatic is not aware of any source code

23   responsive to this request that was used or exists.

24          As I mentioned, Smartmatic only operated in L.A.

25   County.  Any claim that there was source code being used

1   from Sequoia machines by Dominion, Smartmatic is not aware

2   of that and is only aware that any technology it developed

3   for Sequoia has already been phased out prior to the 2020

4   election.  So Smartmatic is aware this -- no source code

5   exists that's responsive to this request.

6               THE COURT:  Okay.  I'm not going to compel

7   something that counsel is representing doesn't --

8               MR. EDWARDS:  If that's the representation on

9   the record, Your Honor, so be it.

10              THE COURT:  Yeah.  I think you take it and you

11  know what to do with that information if you want to test

12  that assertion further.  So I will deny the motion with

13  respect to that request.

14              Number 3 is source code in the possession,

15  custody or control of Smartmatic that was written in whole

16  or in part by Smartmatic, Sequoia and/or any third party

17  since 2000 that is not included in Request 1 or 2 above.

18              I'm going to deny this one.  I think it's

19  overbroad and not tailored to -- not tailored to the

20  allegations in the complaint.

21              Same with Number 4.  I don't see how this is

22  tailored to the allegations in the complaint.

23              Okay.  Number 5.  Source code in the possession,

24  custody or control of Smartmatic that was previously owned

25  by another company or a third party, including but not

1    limited to Sequoia, Dominion or ES & S and sold or

2    licensed through or otherwise obtained by Smartmatic.

3              Is there anything responsive to this request in

4    Smartmatic's possession, custody or control?

5              MS. SULLIVAN:  Smartmatic may have in its

6    custody or control source code that was previously owned

7    by another company.  Smartmatic takes the position that

8    this request is not relevant.  This request doesn't even

9    ask for source code that was used in another election.

10   And all of OAN's statements about Smartmatic was that its

11   software was designed to rig these elections and did in

12   fact rig elections.  This is just asking for any source

13   code that Smartmatic has in its possession.  I'm not sure

14   why that's relevant.  It's also overbroad.  Smartmatic

15   again has operated in more than 30 countries and has

16   partnered with other election companies in those

17   jurisdictions.  There could be source code that was

18   exchanged for those specific projects.

19             But again, these statements that OAN is

20   referencing saying that Smartmatic software was designed

21   to rig elections, those statements were all in reference

22   to the Smartmatic software that was used in the 2020

23   election.  And that software did not exist previously.  So

24   I'm really not sure how it's relevant if Smartmatic has

25   generally in its possession source code from other

1    parties.

2              THE COURT:  Okay.  Mr. Edwards, what was this

3    designed to --

4              MR. EDWARDS:  Well, Your Honor, I think Number 6

5    is what we're really driving at because --

6              THE COURT:  Right.

7              MR. EDWARDS:  -- because that's the claims in

8    the complaint are directly related to these other

9    countries that are supposedly dictator controlled that

10   they were designing code for.

11             THE COURT:  Okay.  Right.  That's what I was

12   thinking as well.  So I will deny the motion to compel

13   with respect to Number 5.

14             But with respect to Number 6, I mean OAN does

15   have a point that plaintiffs argued that one of the

16   alleged disinformation campaigns targeted Smartmatic's

17   alleged, you know, role in elections in Venezuela and the

18   Philippines.

19             So is there any information in Smartmatic's

20   possession, custody or control responsive to Number 6?

21             MS. SULLIVAN:  There is information in their

22   possession, custody or control.  Our assertion here though

23   is again source code -- this is still incredibly broad.

24   Smartmatic operated in Venezuela from the year 2000 to

25   2017 and none of the software that was used in Venezuela

1    is the same as the software that was used in the 2020

2    election.  It was entirely different types of technology.

3              So the statements that OAN is discussing is

4    saying that Smartmatic used the very same software that

5    was used to rig elections in Venezuela.  That claim is not

6    true and we're still talking about the 2020 software.

7              These assertions about whether or not the source

8    code from Venezuela or a number of Philippines' elections

9    is both overbroad and not relevant to the statements that

10   were actually made.

11             THE COURT:  Are there allegations about the 2018

12   Venezuelan election?

13             MS. SULLIVAN:  No, they are not, Your Honor.

14             THE COURT:  Okay.

15             MS. SULLIVAN:  Well, Your Honor, at paragraph

16   226 of the complaint, it states "OAN went as far as to

17   accuse Smartmatic of having rigged elections in other

18   countries prior to 2020 U.S. election."

19             Ms. Sullivan is trying to tie this to the 2020

20   election when in fact the defamatory statements predate

21   the 2020 election involve foreign country use of

22   Smartmatic systems.  And that's indeed what Powell --

23   what they complain Powell said was that the software was

24   designed to assist these dictators in foreign countries to

25   manipulate the vote and get elected.  And that's why

1   Number 6 in particular is tailored toward that and it's

2   highly relevant.  And I think Ms. Sullivan said they do

3   have in their possession, custody and control responsive

4   to the source code --

5           THE COURT:  Which paragraph are you looking at

6   of the complaint, sir?

7           MR. EDWARDS:  Let's see.  Well, the Powell

8   statements are in 227.  The statement I quoted from a

9   moment ago about the rigged elections in other countries

10  is in 226.

11          THE COURT:  Okay.  Well, I think with respect to

12  Number 6 --

13          MR. EDWARDS:  Well, Your Honor -- I'm sorry to

14  interrupt --

15          THE COURT:  There needs to be a narrowing of

16  that timeframe.

17          MR. EDWARDS:  And I was just going to refer --

18  my colleague pointed out -- in paragraph 95, there is

19  specific reference to the Venezuelan election.  And

20  they're complaining in that statement, too, about the 2004

21  Venezuelan election.  Specifically, it reports that

22  "voting machine systems funded by George Soros were used

23  to install a socialist regime in Venezuela back in the

24  early 2000's."

25          THE COURT:  Which paragraph?

1          MR. EDWARDS:  This is paragraph 95.

2          THE COURT:  All right.  Well, I will consider --

3    just a moment.  I think the request is very broad and so I

4    will allow -- I will grant the motion with respect to this

5    request.  But I need counsel to provide a much more

6    tailored timeframe.  And if there is a request or a

7    concern about confidentiality, I don't know if there is,

8    but there should be a discussion about whether this should

9    be AEO or maybe just AEO plus experts.  I don't know what

10   confidentiality concerns there are.

11         But if you can, Mr. Edwards, come up with

12   parameters, temporal parameters for this one and talk to

13   Ms. Sullivan about this and then submit a proposal to

14   chambers.  I will grant the motion in part on this

15   request.

16         MR. EDWARDS:  I will do that, Your Honor.  Thank

17   you.

18         THE COURT:  And then Number 7 is Smartmatic

19   Systems in a functional test environment capable of

20   generating test ballots, casting test ballots, scanning

21   test ballots and tabulating test ballots, all using the

22   same source code and configured with the same parameter

23   settings as used in L.A. County, California in the 2020

24   presidential election.

25         What's the objection to this request?

 1              MS. SULLIVAN:  Your Honor, the same as the

 2     first.  The functional test environment capable of

 3     recreating the 2020 election, Smartmatic would have

 4     absolutely no way to do that.  What this is asking for is

 5     for the entire VSOP system to be offered to OAN to cast

 6     and test ballots and tabulate ballots.

 7              Again, Smartmatic has no control over the other

 8     parts of the VSOP system, not its own as well.  But the

 9     functional test environment would have to be something

10     that -- I'm not even sure L.A. County could recreate this.

11     Smartmatic certainly not -- could not provide a functional

12     test environment with all of these pieces.

13              And as far as we are aware, there is no --

14     there's no voting system that is configured as it was on

15     the day of the 2020 election and that is because there

16     have been elections since then and this system gets

17     updated.  So VSOP System 2.2 was used during the 2020

18     election.  And currently on the machines in the system is

19     VSOP 3.0.

20              So this not only doesn't exist, but Smartmatic

21     certainly has no possession, custody or control or any of

22     the ability to recreate the functional test environment.

23              THE COURT:  Who would have that information?

24     L.A. County?

25              MS. SULLIVAN:  L.A. County would have the best

1   indication of what could be recreated for OAN.  But if

2   they're asking for configured with the same parameters and

3   settings as L.A. County, again that's certainly not

4   something Smartmatic could provide.  And as I mentioned

5   earlier, there are very specific parameters such as hash

6   codes and encryption keys that are placed into the system

7   to protect it.  And those are things that only L.A. County

8   has been able to do and can do.  Smartmatic cannot

9   configure the machines themselves.  They didn't do so for

10  the 2020 election.

11          MR. EDWARDS:  And, Your Honor, one clarification

12  I would like if I could get it is whether Smartmatic has

13  in their possession, custody or control a copy of the

14  source code that was presented in escrow for L.A. County.

15          MS. SULLIVAN:  Smartmatic has a copy of the

16  source code that was given to SLI Compliance and SLI

17  Compliance then took the source code and built the trusted

18  build file and then put it in escrow.  Smartmatic never

19  touched the source code after it gave it to SLI

20  Compliance.  So Smartmatic never had in its custody that

21  specific source code file that was put into escrow.

22          THE COURT:  The short answer is no.

23          MR. EDWARDS:  Well, it sounds like there's not a

24  difference between the source code escrow and the source

25  code they have.

1          THE COURT:  That's not what I hear.  I hear that

2     SLI could have modified it and then put it in escrow.

3          MR. EDWARDS:  I don't think SLI can modify it.

4          MS. SULLIVAN:  We would argue there's certainly

5     a -- and we argued this in the Lindell case and I know

6     they brought the transcript.  There is certainly a chain

7     of custody issue.  We cannot represent that there were no

8     modifications.  We don't believe that there was.  But we

9     cannot say for certain because it was out of our custody

10    and control after it was handed over to SLI Compliance.

11         And again even if we had a copy, that is still

12    source code that was designed under the L.A. County

13    contract.  So Smartmatic would still need permission from

14    L.A. County or a court order to provide copies of things

15    it developed for L.A. County and it still has the same

16    security concerns if it is in fact similar.

17         THE COURT:  So are you saying that this is not

18    the actual source code that was used -- what the copy that

19    you have, that Smartmatic has is not the actual source

20    code used in the election?

21         MS. SULLIVAN:  It is not the actual file that

22    was loaded onto the voting machines for the 2020 election.

23         MR. EDWARDS:  It's not the same file, Your

24    Honor.  But it's the same code.  It's a copy.  It's a copy

25    of the code.

1        THE COURT:  Well, but the problem is it belongs

2   to L.A. County.

3        MR. EDWARDS:  Well, the contract says that a

4   court order would allow Smartmatic to share it, especially

5   under a protective order.

6        THE COURT:  Well, if you had subpoenaed L.A.

7   County, you have the right to seek compliance with that

8   subpoena.

9        MR. EDWARDS:  We could do that.  We also have an

10  obligation to avoid burdening a third party when the party

11  itself has the code.

12        THE COURT:  Well, except I have a party that

13  owns the code and it would certainly be burdensome on them

14  if they are here, they don't have any right to participate

15  in this discussion of this discovery dispute and I'm going

16  to order them to produce something that they own and they

17  haven't had a chance to weigh in on this.

18        So you have two options.  I could take this

19  issue up later and have a representative from L.A. County

20  involved in this discussion, which is a quick way to get

21  through you having to go seek to enforce in, you know,

22  another jurisdiction --

23        MR. EDWARDS:  Right.  But I think Ms. Sullivan

24  already represented that they went to L.A. County and they

25  said no.  I mean we could bring them in here and have you

1   hear them.  But they've already told Smartmatic no and

2   they told us no.

3            THE COURT:  Yeah.  Well, I'm going to order you

4   all with respect to Number 7 to come up with a better way

5   to try to get at this.  I don't think I have the L.A.

6   County contract.  So I'm happy to take this under

7   advisement and take a look at it.  If it has been filed,

8   can someone direct me to where in the docket it has been

9   filed?

10           MR. EDWARDS:  It has not been filed.  It's

11  marked AEO by Smartmatic.  I don't know if they were

12  sticking by that designation or not.

13           THE COURT:  Is that a public contract?

14           MR. EDWARDS:  Well, it says contract by and

15  between County of Los Angeles and Smartmatic.  But it's

16  marked attorneys' eyes only and produced by Smartmatic.

17           THE COURT:  Is this an AEO document or is it a

18  public contract?

19           MS. SULLIVAN:  I believe it's a public contract.

20  It might have been inadvertently marked as AEO.

21           THE COURT:  Okay.  I want you guys to meet and

22  confer on this.  If you have -- if Smartmatic has a copy,

23  even if it has to make a caveat, you know, that it was not

24  necessarily the copy that was put into escrow and with a

25  court order, that information, the copy can be shared with

1    counsel, then I will hear from you all at the next hearing

2    on this particular topic.

3            And I don't have the ability to compel L.A.

4    County to be here.  But you all can and potentially should

5    alert L.A. County that its rights are potentially being

6    discussed over here.  Then if it wants to participate in

7    the next hearing, it can do so.

8            So I will keep Number 7 under advisement and

9    will defer on that.  But with respect to Number 6, I will

10   grant the motion in part and then deny with respect to

11   requests 1 through 5.

12           Okay.  I just want to discuss what remains open.

13   Those are all the Round 1 issues.

14           Okay.  With respect to Round 2, you all should

15   have understood by now, I am going to expect you all to

16   continue talking to resolve issues even if motions have

17   been filed.  There's nothing that prohibits you all from

18   trying to bring them before me and I have a very low

19   tolerance for arguments being made that have no basis in

20   the rules or the law.

21           So with respect to Smartmatic Number 1, which is

22   the motion to compel financial documents, is this still a

23   live controversy?

24           MS. SULLIVAN:  It is, Your Honor.  And I have

25   asked Mr. Babcock if he would be willing to discuss with

1  me again before our next hearing and I think he's

2  indicated he's open to that idea.  So we will be trying to

3  meet and confer on this again before we come before you

4  next time.

5          THE COURT:  Okay.

6          MR. BABCOCK:  Yes.  I did say that and there may

7  be a way forward on that short of court intervention.

8  Maybe not.  But we'll try.

9          THE COURT:  Okay.  Great.  Just a moment.

10         (Pause.)

11         THE COURT:  All right.  That's one.  That's

12  Round 2.  Another issue is that there's a whole host of

13  Smartmatic -- what's called Smartmatic 8 of forthcoming

14  discovery disputes.  But I don't have any of this

15  information before me.  So I don't know whether any or all

16  of this is still a live controversy.

17         MS. SULLIVAN:  I'm sorry, Your Honor.  Are you

18  talking about Smartmatic 5?

19         THE COURT:  8.  Smartmatic 8.  It just says

20  forthcoming discovery disputes and there's a long line

21  of --

22         MS. SULLIVAN:  Yes.  Yes, Your Honor.  So

23  looking through them, motion to compel designation of

24  additional custodians.  We had received amended

25  disclosures from OAN in the fall and there are a number of

1    witnesses that were identified for the first time.  I

2    believe Mr. Edwards referred to that list that you

3    referred to in our response to motion for summary judgment

4    and we had asked to add in a number of those custodians

5    and OAN declined.

6              So we would like to schedule another try -- we

7    have before -- at meeting and conferring with OAN before

8    we come before you next to see if they are willing to add

9    any of those 60-some witnesses we disclosed for the first

10   time in the fall as custodians for document production.

11   But that does remain an open issue.

12             THE COURT:  Okay.  Well, the last thing that's

13   listed in Round 2 is a motion to compel responses to

14   interrogatories and RFP's.  That's OAN 7.  Is that still a

15   live controversy?

16             MR. EDWARDS:  Your Honor, I will talk to counsel

17   and we're going to meet and confer about that.

18             THE COURT:  Okay.  All right.  Great.  All

19   right.  Well, then that's all that you all have listed as

20   Round 2 issues.  So what I'd like to do is to get you all

21   to really make every single good faith effort to try to

22   resolve the Round 2 issues and then file with the Court by

23   Friday close of business a status report as to what, if

24   any, of the Round 2 issues are still live controversies.

25             And while you're at it, if there are Round 3 and

1    Round 4 topics that you guys can try to resolve now that

2    you've gotten some idea of how I'm resolving these

3    disputes and whether you want to raise them before me at

4    the next hearing or not, I don't know.  But if there's

5    anything you all want to take up again that's listed in

6    the chart, I encourage you to do so.  I'm not going to

7    be -- I'm not going to have my feelings hurt if you guys

8    have resolved any of these particular disputes on your own

9    as I expect you to be able to do.

10             MR. BABCOCK:  Well, we don't want you to be

11   bored or not have any --

12             THE COURT:  I'm not bored.  Not bored.  That's

13   the one thing I am not at the moment is bored.

14             All right.  So that's what I'll do and then I'd

15   like to see where the parties are.  In fact I mean like I

16   said, with respect to Round 3 and 4, if you all want to

17   submit an updated status report and just tell me what from

18   this chart that you filed on the 2nd of January is still

19   open from Rounds 2 through 4, then I will schedule a

20   further hearing to deal with any additional disputes in

21   short order.

22             MS. SULLIVAN:  Thank you, Your Honor.  I realize

23   we have one open question if you don't mind.

24             THE COURT:  Okay.  Just a moment.

25             MS. SULLIVAN:  Sure.

1           (Pause.)

2           THE COURT:  Yes.

3           MS. SULLIVAN:  At the beginning of today, I

4   think you resolved whether Smartmatic's second set of

5   RFP's have been served timely and OAN will now respond to

6   those.  Generally, I think they would have had thirty

7   days.  Since we're looking at closing fact discovery in

8   three months, I was wondering if we might get an order

9   that they could respond in two weeks if they think that

10  that's feasible for them.

11          THE COURT:  I don't know how many requests are

12  at issue.

13          MR. BABCOCK:  And, Your Honor, I am right on the

14  cusp of a flight --

15          THE COURT:  Yeah.

16          MR. BABCOCK:  -- to meet another federal judge

17  in a jurisdiction that's somewhat south of us.

18          THE COURT:  I have to go as well pretty soon.

19  But I'm not inclined to, you know, move up the time within

20  which OAN has to respond to discovery requests.  I mean I

21  don't know how many are at issue and how quickly -- how

22  many requests are at issue?

23          MS. SULLIVAN:  30, Your Honor.

24          THE COURT:  Yeah.  I'm not going to order that.

25  But I would ask that -- OAN, obviously, you have a very

1   short period of time to complete discovery.  So to the

2   extent you can get that information over to Smartmatic as

3   soon as possible so you all can get your depositions done,

4   I would encourage you to do that.

5          I know that my law clerk has a quick question

6   for someone from OAN if they can stay with participation

7   of plaintiffs about the international discovery, the

8   letters rogatory, just making sure we have the information

9   in the form properly that you need it.  So if you -- at

10  least someone from OAN can stick around.

11         Otherwise, I will wait to hear from you all.

12  Joint deposition protocol by tomorrow close of business

13  and a status report on the outstanding discovery disputes

14  by close of business Friday after you have met and

15  conferred.

16         MR. BABCOCK:  Thank you, Your Honor.  May I be

17  excused?  I'm on an international --

18         THE COURT:  You can head out.  Yes.  Thank you.

19  Anything else?

20         MS. SULLIVAN:  Nothing else.  Thank you.

21         THE COURT:  Thank you all very much.

22         (Proceedings concluded.)

23

24

25

1                        <u>CERTIFICATE OF REPORTER</u>

2

3          I, Lisa K. Bankins, an Official Court Reporter

4    for the United States District Court for the District of

5    Columbia, do hereby certify that I reported, by machine

6    shorthand, in my official capacity, the proceedings had

7    and testimony adduced upon the detention hearing in the

8    case of the Smartmatic USA Corp., et al. versus Herring

9    Networks, Inc., Civil Number 21-cv-02900, in said court on

10   the 6th day of February, 2024.

11

12         I further certify that the foregoing 117 pages

13   constitute the official transcript of said proceedings, as

14   taken from my machine shorthand notes, together with the

15   backup tape of said proceedings to the best of my ability.

16

17         In witness whereof, I have hereto subscribed my

18   name, this 8th day of February, 2024.

19

20

21                              *Lisa K. Bankins*

22                              Lisa K. Bankins
                                Official Court Reporter
23

24

25

MR. BABCOCK: [49]  2/21 2/24 3/22
5/14 6/6 7/9 7/11 16/9 48/8 48/16 48/21
48/25 49/11 49/23 50/6 52/20 53/14
53/17 54/13 54/16 54/18 54/22 55/3
56/4 56/10 56/20 57/1 57/4 57/13 57/16
58/4 58/13 58/16 58/23 59/4 59/7 60/10
60/18 70/8 70/22 71/17 71/20 71/23
75/17 113/6 115/10 116/13 116/16
117/16
MR. BUTZER: [1]  3/11
MR. EDWARDS: [56]  3/5 14/15 14/17
14/25 36/1 37/3 38/5 39/1 39/13 39/15
40/5 41/11 42/17 42/21 43/25 46/16
46/21 47/20 75/25 78/2 78/5 79/10
79/21 80/4 80/21 81/7 81/20 82/2 83/15
95/13 95/25 96/9 96/14 97/5 98/15
98/17 98/23 99/24 101/8 103/4 103/7
105/7 105/13 105/17 106/1 106/16
108/11 108/23 109/3 109/23 110/3
110/9 110/23 111/10 111/14 114/16
MR. LETKEWICZ: [35]  2/18 60/20
60/22 60/24 61/4 61/11 61/14 61/17
61/19 61/24 62/4 62/10 62/13 62/16
62/25 63/7 63/17 63/25 64/5 64/11
64/14 65/17 65/25 66/3 66/19 67/1 67/7
67/17 68/17 68/25 69/19 70/5 75/2 75/8
75/13
MR. McCOTTER: [1]  3/8
MR. NEERMAN: [14]  3/14 10/5 10/7
11/12 12/8 13/10 13/13 13/17
13/20 15/2 15/6 15/16 15/18
MS. BLAESCHE: [13]  3/2 21/2 21/23
22/6 22/24 23/5 23/13 23/17 23/19
23/24 24/14 25/15 25/17
MS. KOVACS: [19]  2/8 3/18 6/19 8/6
8/22 9/20 10/2 14/5 15/23 16/1 17/1
18/12 19/16 20/7 20/14 20/17 20/22
25/8 25/20
MS. SULLIVAN: [63]  2/13 2/15 26/2
26/11 26/24 27/22 29/10 29/22 30/7
31/5 31/7 32/2 33/1 33/4 34/3 34/5
34/20 35/1 35/5 35/23 43/6 44/13 44/16
47/16 83/16 84/15 85/23 86/19 87/13
88/7 88/12 89/6 89/25 90/15 91/10 92/8
93/3 94/1 94/6 95/2 95/4 98/25 99/4
100/8 100/20 102/5 103/21 104/13
104/15 107/1 107/25 108/15 109/4
109/21 111/19 112/24 113/17 113/22
115/22 115/25 116/3 116/23 117/20
THE COURT: [248]
THE COURTROOM DEPUTY: [1]  2/2

## $

$2 [7]  30/25 31/4 41/14 65/8 69/10
69/20 70/9

## 0

02900 [2]  1/3 118/9

## 1

100 [1]  9/16
11 [2]  52/8 65/6
110 [2]  76/11 80/4
117 [1]  118/12
120 [1]  13/5
130 [2]  16/16 16/21
132 [2]  6/17 7/2
13th [2]  47/13 94/2
14 [1]  74/21

143-4 [2]  16/17 46/14
143-5 [3]  16/17 46/12 75/20
15 [1]  27/3
1500 [5]  26/5 26/7 40/1 44/9 46/10
155-1 [1]  10/17
157 [1]  13/25
158 [1]  13/25
165 [3]  4/13 6/4 6/11
169 [2]  7/14 8/12
16th [1]  96/6
173 [1]  15/20
176 [2]  16/5 16/11
18 [1]  52/8
1800 [1]  41/19
197 [1]  81/16
1997 [1]  31/14
19th [2]  54/6 70/14

## 2

2.2 [1]  107/17
2.9 [1]  55/8
20 [1]  93/6
20-hour [1]  9/2
2000 [4]  41/19 79/9 101/17 103/24
2000's [4]  77/16 79/12 79/18 105/24
20001 [1]  1/21
2004 [1]  105/20
2016 [1]  81/16
2017 [1]  103/25
2018 [1]  104/11
2020 [40]  17/8 22/15 76/20 77/13 77/22
78/7 80/11 83/20 83/23 84/7 84/22
85/10 85/17 86/5 87/19 87/21 88/15
88/23 90/22 91/14 92/1 96/17 98/20
99/7 99/13 100/15 100/16 101/3 102/22
104/1 104/6 104/18 104/19 104/21
106/23 107/3 107/15 107/17 108/10
109/22
2023 [1]  31/14 96/6
2024 [3]  1/6 118/10 118/18
203 [1]  82/18
20th [1]  10/9
21-2900 [1]  2/3
21-cv-02900 [2]  1/3 118/9
219 [1]  81/16
226 [5]  76/17 76/21 80/9 104/16 105/10
227 [2]  80/6 105/8
25 [3]  9/13 9/15 9/16
26 [8]  50/5 56/2 64/13 65/11 65/15
67/13 71/25 72/4
2900 [1]  2/3
2:00 [1]  1/7
2nd [1]  115/18

## 3

3,000 [1]  41/16
3.0 [1]  107/19
30 [13]  12/22 13/5 15/7 15/9 29/14
53/10 53/13 53/16 53/18 92/19 93/6
102/15 116/23
30-plus [1]  49/12
333 [1]  1/21
34 [3]  21/15 72/7 76/3
3d [1]  81/16

## 4

400 [1]  41/15
438 [1]  66/4

50 [2]  28/5 35/10
500 [15]  26/8 26/10 26/17 26/20 27/3
27/11 28/9 29/11 31/17 34/18 35/7
35/16 40/4 40/15 46/10
54 [2]  6/17 6/22
56 [1]  10/20
5th [1]  55/5

## 6

60 [1]  9/9
60-some [1]  114/9
65 [2]  6/17 6/23
68 [1]  21/9
6th [1]  118/10

## 7

70 [2]  10/17 32/10
7th [6]  55/1 55/2 55/3 55/3 55/11 59/20

## 8

81 [3]  16/16 25/7 47/24
84 [2]  76/10 80/4
89-1 [1]  47/4
8th [3]  5/18 21/18 118/18

## 9

90 [2]  34/9 96/6
92 [4]  36/19 44/3 45/1 47/1
95 [2]  105/18 106/1
96 [2]  6/17 6/25

## A

ability [4]  81/3 107/22 112/3 118/15
able [9]  4/24 4/24 25/12 64/18 79/24
87/1 98/6 108/8 115/9
about [85]  3/25 5/24 6/4 19/20 20/11
21/7 22/15 22/16 22/16 24/18 26/1 27/4
28/8 28/18 29/21 30/20 34/12 34/16
44/10 46/1 46/8 48/14 48/18 48/19 49/9
50/2 50/3 50/7 50/7 52/7 53/19 55/5
57/7 57/17 60/1 60/14 62/9 62/11 62/11
66/12 67/18 68/6 68/20 70/17 75/3
76/11 76/12 77/17 78/16 79/4 80/6 80/7
80/24 83/20 83/24 84/18 84/22 87/8
87/24 89/9 89/16 89/22 89/24 90/9
90/16 92/11 92/18 93/6 93/10 93/12
94/16 94/17 96/18 102/10 104/6 104/7
104/11 105/9 105/20 106/7 106/8
106/13 113/18 114/17 117/7
above [2]  68/10 101/17
absolute [3]  56/2 56/5 65/2
absolutely [2]  64/21 107/4
abusive [1]  9/10
accept [1]  37/6
access [9]  28/24 87/4 88/6 89/3 91/13
95/23 96/2 99/2 100/10
accessible [1]  86/14
accomplish [1]  77/7
accordance [1]  9/5
according [1]  58/24
account [7]  69/2 72/12 73/9 88/25 88/25
89/4 100/9
accounting [1]  68/2
accounts [1]  69/25
accurate [3]  47/15 47/16 55/9
accuse [2]  80/9 104/17
acquired [1]  77/20
across [3]  32/8 49/1 92/18
action [2]  22/9 22/10

actions [2]  16/22 19/14
actual [17]  17/24 19/8 24/5 24/6 24/7
27/20 29/25 33/18 37/10 37/23 86/3
87/20 100/5 100/9 109/18 109/19
109/21
actually [28]  13/15 14/11 14/18 14/19
18/19 21/5 24/17 31/1 32/11 35/20
38/16 40/19 43/3 48/12 80/15 82/7
82/11 83/20 87/1 88/2 88/18 90/23
94/23 95/7 98/12 98/14 99/12 104/10
add [3]  31/17 114/4 114/8
addition [3]  22/14 72/14 73/20
additional [10]  31/18 41/8 42/9 43/9
43/9 65/1 65/19 74/24 113/24 115/20
address [13]  4/11 4/17 16/24 21/4 29/11
33/1 41/10 43/6 44/14 49/17 59/12
83/23 86/1
addressed [1]  96/16
addresses [2]  42/14 90/23
addressing [2]  3/17 48/4
adds [1]  27/17
adduced [1]  118/7
admission [2]  42/15 51/6
admissions [1]  39/3
admit [1]  63/16
admittedly [1]  55/18
adopt [4]  8/17 12/20 13/23 13/23
adopting [1]  6/3
advance [1]  96/11
advisement [2]  111/7 112/8
AEO [5]  106/4 106/9 111/11 111/17
111/20
aff [1]  96/4
affirmed [2]  97/21 98/2
after [14]  6/18 10/8 20/19 21/7 52/2
53/5 53/8 53/24 53/24 75/6 77/15
108/19 109/10 117/14
afternoon [19]  2/12 2/13 2/15 2/17
2/18 2/20 2/22 2/23 3/1 3/2 3/4 3/5 3/7
3/16 3/17 10/5 10/6 36/1
again [31]  2/9 12/2 15/3 16/23 18/4
30/17 34/24 43/10 59/15 69/3 73/17
74/15 75/25 85/4 89/7 91/18 92/10
92/17 93/5 96/18 99/5 99/15 102/15
102/19 103/23 107/7 108/3 109/11
113/1 113/3 115/5
against [18]  18/13 19/22 27/15 27/24
31/22 51/21 55/9 61/2 61/11 69/20
70/10 97/11
aggressive [1]  57/22
aggressively [2]  57/17 57/25
ago [6]  6/5 52/3 59/23 91/24 105/9
agree [14]  7/4 7/9 8/21 13/7 34/10 38/4
40/17 46/25 47/16 47/17 62/16 65/17
68/15 94/8
agreed [7]  7/16 12/5 13/22 21/9 34/9
44/17 78/20
agreed-upon [1]  21/9
agreement [1]  47/23
agrees [1]  5/2
aisle [1]  49/1
al [5]  1/3 2/4 97/14 97/14 118/8
Al-Qaeda [1]  97/14
alert [1]  112/5
alive [1]  7/20
all [110]  4/3 5/11 5/12 6/8 7/5 9/25 13/4
13/11 13/16 14/24 15/17 16/3 18/5 18/9
18/24 19/9 19/14 21/21 21/23 22/5
23/10 24/17 24/20 27/23 31/24 35/5

35/9 35/9 37/12 37/14 38/8 39/2 39/8
40/16 41/7 42/11 42/23 45/18 45/8
44/10 45/8 46/5 46/8 46/20 47/14 47/22
49/8 50/11 50/17 53/3 54/4 62/1 63/22
63/2 63/23 63/24 67/14 68/13 68/15
70/5 71/19 72/15 73/4 81/5 82/2 83/13
84/1 84/11 84/20 86/6 86/9 86/16 86/19
86/20 86/23 88/22 89/2 94/7 94/22 95/6
95/13 96/11 96/14 98/8 98/9 102/10
102/21 106/2 106/21 107/12 111/4
112/1 112/4 112/13 112/14 112/15
112/17 113/11 113/15 114/18 114/18
114/19 114/19 114/20 115/5 115/14
115/16 117/3 117/11 117/21
allegation [4]  18/13 56/23 65/7 69/13
allegations [7]  17/11 18/21 89/21 90/10
101/20 101/22 104/11
allege [2]  18/16 66/7
alleged [5]  69/13 103/16 103/17
allegedly [2]  73/9 89/23
alleges [1]  85/14
alleging [4]  69/20 70/9 70/10 80/10
allocate [1]  9/16
allow [18]  9/8 12/6 12/19 12/22 40/14
40/23 41/19 49/4 49/6 78/21 79/5 79/15
80/22 82/25 84/17 87/3 106/4 110/4
allowable [2]  13/9 95/21
allowed [9]  5/9 11/18 11/19 26/14 26/17
48/14 65/13 66/16 78/25
allowing [2]  83/12 92/5
allows [4]  61/22 76/17 80/25 81/11
almost [4]  30/25 31/13 35/9 94/18
along [1]  7/2
already [20]  7/22 22/11 27/24 28/13
30/16 30/22 31/18 38/12 40/2 45/5 47/8
47/11 49/5 59/4 83/8 85/8 85/9 101/3
110/24 111/1
also [38]  3/8 3/11 7/5 11/7 17/5 18/15
23/1 26/25 27/13 29/17 35/13 40/16
42/1 42/13 44/25 47/9 47/16 50/14 68/6
68/11 72/6 72/21 76/15 76/17 77/4
77/22 78/15 80/9 84/24 86/1 88/5 89/7
91/7 91/11 92/9 93/9 102/14 110/9
alternative [1]  54/15
Although [4]  12/20 52/2 55/22
always [1]  91/19
am [12]  4/13 7/20 8/1 8/2 24/21 48/15
73/10 98/9 98/22 112/15 115/13 116/13
amend [8]  7/1 56/9 61/10 66/15 73/14
74/5 74/20 74/23
amended [18]  5/18 48/2 48/7 49/19 50/4
58/9 58/24 61/1 64/25 66/12 66/13 67/3
68/12 68/16 70/19 73/6 73/19 113/24
among [1]  5/23 59/5
amongst [6]  7/19 9/16 27/12 45/24 46/7
58/10
amount [3]  19/4 64/23 65/18
analogue [1]  18/2
analysis [10]  32/18 64/16 64/17 66/25
67/1 69/16 70/18 88/22 90/19 91/6
analyzing [2]  27/25 35/15
Angeles [1]  111/15
Angola [2]  63/4 63/5
another [17]  17/20 27/12 29/24 32/14
33/20 51/21 51/21 52/4 72/24 72/25
101/25 102/7 102/9 110/22 113/12
114/6 116/16
answer [11]  26/14 26/18 26/20 27/20
28/9 32/25 34/25 49/15 84/25 91/4
108/22

answered [2]  38/14 47/19
answering [2]  27/23 47/17
answers [1]  26/25
any [72]  4/8 4/19 5/9 5/12 7/23 8/3
11/10 11/23 15/22 31/21 32/6 41/3 41/8
43/14 44/19 47/3 47/11 49/7 49/25
52/10 54/25 59/2 60/6 62/14 66/25 68/8
69/13 70/6 71/21 72/2 73/4 73/8 73/22
74/18 75/1 78/20 81/22 81/24 83/6 84/9
85/16 85/18 85/19 86/8 86/8 86/17 87/9
87/18 88/6 92/7 92/15 92/24 92/24 93/1
94/8 95/17 100/13 100/22 100/25 101/2
101/16 102/12 103/19 107/21 110/14
113/14 113/15 114/9 114/24 115/8
115/11 115/20
anybody [2]  94/16 94/20
anyone [4]  5/12 6/12 18/20 49/5
anything [31]  5/21 24/16 29/21 32/23
44/21 44/24 45/6 49/5 52/1 54/23 60/1
62/17 64/4 66/11 66/13 70/3 71/4 71/14
75/16 85/16 85/25 86/24 89/23 95/3
95/5 95/9 96/22 99/16 102/3 115/5
117/19
anyway [3]  41/6 91/9 91/10
anywhere [1]  49/2
apart [1]  9/2
apologize [2]  54/9 64/1
apparently [2]  50/23 70/9
appeal [1]  98/2
appear [2]  81/23 94/22
APPEARANCES [1]  1/11
appeared [1]  56/13
applied [1]  21/8
applies [1]  91/11
apply [1]  59/8
apportion [5]  62/14 62/17 63/9 63/11
74/15
apportionment [1]  75/3
appreciate [1]  8/7
approach [2]  46/19 51/4
appropriate [4]  50/8 50/9 64/17 70/24
approximately [2]  56/24 65/8
are [187]
aren't [5]  7/22 16/17 30/25 54/25 59/9
arguably [1]  36/20
argue [3]  24/1 89/7 109/4
argued [2]  103/15 109/5
arguing [1]  10/21
argument [14]  16/15 18/8 20/25 22/3
22/7 28/18 42/25 58/2 63/10 71/15
73/11 74/2 91/11 92/3
arguments [7]  21/4 26/13 29/18 31/9
41/8 43/17 112/19
around [3]  29/15 66/17 117/10
article [1]  57/5
artificial [1]  41/24
artificially [1]  22/4
as [107]  2/11 5/9 6/13 7/13 7/15 7/19
7/21 8/10 8/10 8/16 8/19 11/5 11/6 11/6
11/20 12/1 13/24 16/20 19/5 19/9 19/20
20/9 21/14 23/9 26/2 26/3 27/6 29/11
30/17 30/23 34/8 35/15 35/15 37/18
40/9 41/21 42/23 43/20 43/20 45/15
49/16 51/19 56/2 56/9 56/22 58/8 59/2
59/18 61/23 63/8 63/14 63/18 64/23
65/23 66/15 66/20 66/20 68/12 69/21
69/22 69/22 70/1 71/7 71/7 72/6 73/22
74/21 75/10 78/18 78/18 83/1 83/9
83/17 85/1 86/21 86/25 87/13 87/13
87/18 88/20 90/6 93/15 94/12 95/19

## A

as... [23]  100/24 103/12 104/1 104/16
104/16 106/23 107/1 107/8 107/13
107/13 107/14 108/3 108/4 108/5
111/20 114/10 114/19 114/23 115/9
116/18 117/2 117/3 118/13
ascertainable [1]  18/20
aside [1]  68/19
ask [14]  8/17 12/25 14/9 23/13 25/9
32/20 38/10 39/22 39/22 41/7 48/4 64/8
102/9 116/25
asked [12]  5/4 5/21 8/18 37/3 37/4 38/6
49/14 87/2 93/21 93/22 112/25 114/4
asking [11]  23/9 23/10 29/3 32/16 36/3
43/14 91/2 99/6 102/12 107/4 108/2
asks [2]  88/14 100/21
aspect [1]  78/14
assertion [3]  84/24 101/12 103/22
assertions [7]  83/24 84/14 84/16 89/16
92/5 92/10 104/7
assess [1]  28/9
assessing [2]  27/24 84/12
assessment [1]  74/16
assigned [3]  3/20 12/10 12/11
assigns [1]  86/6
assist [1]  104/24
assistance [1]  14/21
associated [3]  50/15 76/24 86/24
assume [1]  28/14
assumed [1]  15/13
attached [2]  37/17 37/21
Attachment [1]  37/22
attack [1]  80/13
attention [2]  81/14 97/8
attorney [3]  12/11 41/21 95/16
attorney-eyes [1]  95/16
attorneys [2]  68/22 68/23
attorneys' [1]  111/16
audited [1]  68/1
authority [2]  52/21 81/24
authorization [1]  95/21
available [14]  68/7 72/6 82/14 82/22
82/23 82/25 84/17 84/18 84/21 90/16
90/17 91/5 92/21 98/5
Avenue [1]  1/21
avoid [1]  110/10
aware [11]  20/21 61/5 69/21 87/13
100/13 100/21 100/22 101/1 101/2
101/4 107/13

## B

BABCOCK [8]  1/15 2/24 5/15 7/8 48/4
61/5 64/2 112/25
back [19]  8/9 15/4 28/5 31/14 37/7
37/20 45/8 46/12 46/15 67/17 69/10
78/19 79/9 79/11 79/12 79/12 91/1 97/5
105/23
background [1]  83/20
backup [1]  118/15
bad [1]  60/4
balance [1]  13/24
ballot [8]  82/14 82/20 82/24 84/3 84/4
84/4 84/8 86/10
ballots [6]  106/20 106/20 106/21 106/21
107/6 107/6
Bankins [4]  1/19 118/3 118/21 118/22
bankruptcy [2]  1/1 77/19
barrage [1]  44/9
based [20]  12/11 28/2 41/3 42/6 43/3
43/11 44/19 44/21 45/7 62/20 64/5

64/14 65/19 66/8 66/20 68/11 70/24
72/9 77/17 80/15
bases [1]  12/16
basic [1]  64/23
basically [1]  78/18
basis [7]  17/6 34/22 53/12 56/17 74/6
74/7 112/19
bat [1]  48/5
Bates [2]  39/7 52/15
be [153]
bearing [1]  72/9
became [2]  61/4 96/24
because [63]  5/25 8/2 10/24 11/3 17/21
19/9 21/6 24/18 26/18 27/19 28/12
31/14 31/15 32/8 33/7 33/10 34/15 35/7
35/14 36/17 36/19 39/6 42/9 45/9 47/8
48/8 49/7 49/15 49/18 56/14 58/5 59/23
60/15 61/17 64/14 65/5 69/21 71/8
72/22 72/23 72/24 76/5 78/11 78/15
79/10 81/1 82/17 86/20 87/20 88/13
90/5 93/5 94/7 94/17 94/24 97/10 97/23
99/5 100/3 103/5 103/7 107/15 109/9
becoming [1]  44/18
been [46]  4/15 4/23 5/25 7/22 17/15
17/17 27/24 28/13 30/22 31/18 35/11
40/2 43/17 44/21 47/8 49/6 50/6 50/24
53/8 57/7 60/8 60/12 65/14 70/12 70/14
70/19 70/25 71/1 73/18 74/2 76/19
80/16 80/23 80/24 81/25 94/13 94/18
101/3 107/16 108/8 111/7 111/8 111/10
111/20 112/17 116/5
before [30]  1/9 11/23 11/25 13/2 13/25
15/20 15/24 21/4 25/8 38/2 41/22 45/14
46/4 48/12 49/24 60/15 81/23 82/1
90/22 94/22 96/7 112/18 113/1 113/3
113/3 113/15 114/7 114/7 114/8 115/3
beginning [2]  73/19 116/3
behalf [14]  2/10 2/16 2/19 2/24 3/3 3/6
3/8 3/11 3/15 14/17 36/2 46/21 74/12
83/16
being [15]  5/5 5/6 17/8 18/24 19/22 30/1
38/17 42/2 45/16 81/2 83/8 98/6 100/25
112/5 112/19
believe [27]  6/21 8/23 10/23 11/5 11/16
15/22 20/7 20/9 20/24 26/18 30/10
30/13 35/23 36/5 47/8 49/15 61/8 61/14
64/12 64/14 77/25 78/11 95/5 96/25
109/8 111/19 114/2
believed [1]  93/15
belongs [2]  86/9 110/1
bench [1]  95/1
Benesch [1]  2/9
best [9]  49/8 62/19 87/20 87/22 88/1
88/4 92/20 107/25 118/15
better [6]  57/8 58/16 58/17 58/19 97/25
111/4
between [9]  5/8 22/18 23/21 34/8 39/5
58/10 94/14 108/24 111/15
bid [1]  55/21
Biden [1]  17/14
bids [1]  67/21
big [2]  61/8 67/2
Billick [1]  33/15
billion [18]  28/25 30/25 31/4 41/14 55/8
55/9 56/16 58/5 58/5 58/5 65/8 66/8
66/10 69/11 69/20 69/23 69/24 70/9
bit [5]  21/11 38/25 55/1 73/8 83/19
BLAESCHE [6]  1/15 3/3 21/3 25/14
25/15 25/16
blanket [1]  31/22 32/17 40/17 41/4

blew [1]  60/3
blocked [2]  53/3 53/11
book [3]  84/3 84/20 97/11
bored [4]  115/11 115/12 115/12 115/13
both [13]  6/20 9/11 11/18 17/22 26/17
45/17 47/12 75/23 82/3 86/3 90/18
95/10 104/9
breadth [1]  76/22
break [7]  40/19 41/9 41/10 42/11 44/11
50/17 51/8
brief [7]  16/15 26/3 44/16 44/23 83/18
89/10 95/13
briefing [5]  27/7 28/15 28/15 38/17
49/25
briefly [7]  16/25 25/25 43/7 44/14 44/15
70/6 95/7
bring [5]  51/3 74/12 97/7 110/25 112/18
bringing [1]  89/9
broad [3]  19/15 31/11 33/14 36/17
36/21 40/25 43/16 45/9 51/13 73/21
93/17 103/23 106/3
broadcast [1]  11/4
broadcasts [2]  76/7 97/15
brought [7]  14/18 18/5 28/23 46/4 57/16
99/5 109/6
bucket [2]  32/11 32/14
buckets [1]  68/14
budgets [1]  68/5
build [6]  82/10 88/17 89/1 96/24 99/9
108/18
built [1]  108/17
bullet [1]  67/19
bunch [2]  55/18 59/8
burden [24]  20/2 22/11 27/9 27/18
27/20 27/22 28/8 28/9 28/20 29/5 29/7
29/25 30/23 32/1 32/2 32/3 32/6 34/23
35/14 35/15 36/3 36/5 77/4 83/6
burdening [1]  110/10
burdensome [4]  27/16 30/6 30/8 110/13
burn [1]  11/5
bury [1]  45/20
business [10]  13/16 50/23 51/1 66/6
66/7 66/10 68/5 114/23 117/12 117/14
BUTZER [3]  1/17 3/11 3/24

## C

cable [1]  57/9
CAITLIN [2]  1/12 2/9
calculate [1]  69/2
calculation [2]  62/19 74/6
calculations [1]  6/11
California [4]  33/6 87/10 88/21 88/24
90/18 106/23
call [3]  16/13 26/7 81/14
called [8]  17/21 34/1 51/22 77/14 82/8
82/10 83/25 113/13
calling [1]  16/13
calls [1]  9/20
came [1]  37/6
campaign [4]  17/7 17/9 19/7 63/19
campaigns [1]  103/16
can [61]  4/6 5/7 8/4 13/11 14/23 16/25
18/1 22/8 24/13 25/17 32/20 34/22 36/7
36/19 36/22 37/16 38/23 39/22 39/22
43/18 43/22 45/13 45/24 46/5 51/13
51/17 51/24 54/2 54/2 54/3 55/17 63/10
66/20 73/13 74/18 75/11 77/5 79/2
84/14 84/15 84/24 88/10 90/25 91/4
92/14 94/19 97/25 98/1 106/11 108/8
109/3 111/8 111/25 112/4 112/7 115/1

**C**

can... [5] 117/2 117/3 117/6 117/10 117/18
can't [11] 39/5 39/21 43/11 51/1 52/21 54/1 93/5 95/24 97/15 97/23 97/24
cancelled [1] 71/8
cannot [6] 26/16 38/21 43/16 108/8 109/7 109/9
capable [3] 90/24 106/19 107/2
capacity [1] 118/6
careful [1] 62/8
carefully [1] 26/9
CARL [2] 1/17 3/11
case [85] 2/3 8/9 10/24 11/4 11/6 11/20 12/14 12/22 17/20 17/20 18/2 18/6 18/10 19/9 19/12 19/13 19/13 19/17 19/24 21/11 22/2 22/8 22/16 23/5 23/11 24/11 24/12 24/12 24/18 24/22 24/23 24/23 25/1 29/6 31/6 31/8 31/10 31/15 31/16 31/19 32/16 33/5 33/15 39/12 39/25 40/16 41/17 41/17 41/19 41/25 43/16 51/16 51/16 51/20 55/6 55/16 56/13 57/18 59/18 72/23 73/9 73/19 73/19 77/3 81/15 81/18 81/24 82/3 82/4 82/17 82/18 83/5 83/9 83/21 87/17 90/2 92/8 94/16 95/15 96/5 97/8 97/10 98/3 109/5 118/8
cases [14] 17/15 17/23 20/6 22/22 22/22 22/23 23/11 33/12 36/16 41/17 56/11 59/16 89/9 89/11
cast [1] 107/5
casting [1] 106/20
categories [14] 33/14 33/16 33/17 34/22 34/23 35/10 47/7 51/13 52/18 68/11 73/8 73/20 74/24 76/2
category [9] 58/25 65/9 67/12 67/14 72/5 72/15 73/4 74/22 74/23
causation [2] 24/3 39/15
cause [3] 22/9 35/15 91/15
caused [3] 50/12 56/15 57/9
caveat [1] 111/23
cent [1] 65/4
certain [7] 4/17 42/15 46/3 65/14 76/3 76/6 109/9
certainly [23] 26/2 37/14 41/20 41/21 48/21 50/9 56/13 58/13 59/10 63/10 63/25 66/11 70/22 93/3 93/7 94/19 96/25 107/11 107/21 108/3 109/4 109/6 110/13
CERTIFICATE [1] 117/23
certification [2] 90/22 91/20
certified [1] 88/23
certify [2] 118/5 118/12
cetera [1] 33/18
chain [1] 109/6
challenge [1] 74/19
challenges [1] 72/23
challenging [1] 80/17
chambers [3] 13/18 14/13 106/14
chance [6] 5/10 6/15 20/24 33/20 89/10 110/17
changes [1] 37/25
changing [1] 37/25
channel [1] 57/9
CHARLES [3] 1/15 2/24 5/15
chart [5] 7/6 37/18 37/21 115/6 115/18
charts [1] 38/13
choice [1] 38/9
choose [4] 36/7 74/5 74/14 75/5
CHRIS [2] 1/13 2/19

Circuit [1] 98/3
circumstances [1] 78/23
cite [2] 33/15 63/18
cited [6] 33/5 41/18 52/20 56/11 59/15 97/8
cites [1] 33/13
Civil [3] 1/3 2/3 118/9
claim [21] 36/5 36/11 38/7 47/3 51/3 51/12 55/10 59/2 59/23 63/3 76/18 79/11 79/14 81/8 81/17 97/11 97/23 98/2 99/5 100/25 104/5
claimed [5] 37/18 72/5 92/15 97/12 97/13
claiming [8] 39/17 40/22 41/3 50/12 51/9 76/18 79/21 97/24
claims [9] 19/6 19/22 67/15 67/19 72/18 73/5 73/21 83/5 103/7
clarification [2] 75/2 108/11
clarify [2] 15/3 60/6
clear [15] 17/21 20/18 26/21 57/23 60/9 65/13 65/16 66/1 66/17 69/19 73/17 74/9 75/12 99/5 99/15
clearly [5] 36/9 71/25 73/3 76/6 83/5
clerk [2] 14/23 117/5
client [1] 76/7
clone [1] 22/7
close [5] 8/23 13/16 114/23 117/12 117/14
closed [1] 11/9
closely [1] 5/5
closes [1] 55/4
closing [1] 116/7
CNN [1] 57/6
code [116] 75/21 76/4 77/6 77/10 78/12 78/14 78/21 79/1 79/2 79/4 79/5 79/8 79/14 79/17 79/25 80/19 80/24 81/8 81/10 81/11 82/6 82/8 82/12 82/12 85/19 86/8 86/17 86/20 86/22 87/4 87/8 87/10 87/18 87/21 87/23 88/2 88/15 88/17 88/19 88/21 88/22 88/25 89/8 89/12 89/15 89/18 90/4 90/4 90/6 90/9 90/10 90/11 90/16 90/20 90/21 90/24 91/3 91/6 91/13 91/18 91/20 91/24 92/15 92/25 93/4 93/7 96/20 96/20 96/23 97/17 97/18 97/19 97/22 97/24 98/1 98/5 98/15 98/19 99/6 99/8 99/11 99/12 100/4 100/5 100/8 100/12 100/21 100/22 100/25 101/4 101/14 101/23 102/6 102/9 102/13 102/17 102/25 103/10 103/23 104/8 105/4 106/22 108/14 108/16 108/17 108/19 108/21 108/24 108/25 109/12 109/18 109/20 109/24 109/25 110/11 110/13
coded [1] 37/22
codes [2] 97/14 108/6
cohesive [1] 39/21
colleague [1] 105/18
colleagues [2] 2/11 48/25
colloquy [1] 43/10
color [1] 37/22
COLUMBIA [3] 1/1 1/20 118/5
come [16] 4/4 9/25 13/2 19/18 28/16 38/10 41/9 46/9 46/15 48/22 69/4 69/10 106/11 111/4 113/3 114/8
coming [5] 16/16 18/25 19/10 30/19 55/25
comments [2] 60/5 70/25
common [1] 73/14
communications [1] 67/20 67/24 68/3
companies [1] 39/17 77/18 102/16

company [16] 17/13 39/17 51/22 56/24 57/22 65/7 65/10 65/23 67/5 67/9 77/14 77/17 84/19 85/9 101/25 102/7
compare [1] 35/6
comparing [1] 37/23
comparison [1] 18/2
compel [15] 16/21 28/6 28/14 48/2 75/21 87/11 87/14 88/1 100/2 101/6 103/12 112/3 112/22 113/23 114/13
compelling [1] 99/21
compensatory [1] 68/20
complain [1] 104/23
complained [1] 77/5
complaining [1] 105/20
complaint [31] 22/16 22/17 24/4 41/15 56/19 56/22 56/23 57/2 61/5 65/6 65/24 66/4 69/14 69/19 76/5 76/10 78/15 79/3 80/2 80/13 80/16 81/3 81/12 84/14 84/16 96/18 101/20 101/22 103/8 104/16 105/6
complaints [8] 45/12 58/8 58/21 59/2 60/25 76/12 76/23 80/6
complete [2] 4/12 117/1
completely [3] 7/16 52/10 55/14
complex [7] 11/6 31/6 31/8 31/10 31/15 41/17 41/19
complexity [2] 12/22 42/1
compliance [14] 82/8 82/9 82/13 87/12 88/20 88/21 90/19 90/22 96/24 108/16 108/17 108/20 109/10 110/7
complicated [2] 64/16 64/17
complied [1] 64/12
comply [5] 50/4 60/1 87/10
components [8] 84/2 84/2 85/12
computated [1] 69/9
computation [18] 49/21 58/12 61/25 61/25 62/2 62/6 68/7 68/10 68/15 68/24 69/12 69/17 72/4 72/9 73/3 73/7 73/11 74/21
compute [1] 54/2
conceding [1] 42/17
conceptual [1] 92/2
concern [4] 24/18 77/17 90/8 106/7
concerning [3] 76/12 76/23 78/16
concerns [3] 87/24 106/10 109/16
conclude [1] 96/15
concluded [1] 117/22
conclusion [1] 92/4
condition [3] 44/3 45/2 45/2
conditions [2] 44/25 46/2
conduct [3] 63/14 72/13 73/9
confer [18] 9/23 12/17 12/25 13/1 27/1 28/4 30/9 33/24 36/18 37/11 38/6 40/19 47/12 93/23 94/4 111/22 113/3 114/17
conferences [1] 28/15
conferred [4] 34/5 46/22 93/12 117/15
conferring [2] 93/11 114/7
confers [7] 22/25 23/14 27/7 28/11 30/18 45/11 61/7
confidentiality [6] 83/3 83/11 90/12 95/17 106/7 106/10
configure [1] 108/9
configured [3] 106/22 107/14 108/2
confirm [4] 14/2 15/24 16/7 98/1
confirmed [2] 16/2 23/15
conflicts [1] 10/21
Congo [2] 90/2 92/8
consequences [1] 98/6
consequential [1] 68/21
consider [8] 5/9 52/24 54/21 74/18 76/6

**C**

consider... [3]  77/9 96/10 106/2
considering [1]  76/22
consistent [2]  5/3 5/13
consolidated [1]  39/4
conspiracy [3]  17/13 18/17 18/23
constitute [1]  118/13
Constitution [1]  1/21
consulting [1]  4/6
contemplated [1]  9/17
contend [1]  91/12
content [2]  5/22 11/8
contentious [1]  28/3
context [1]  52/25
continue [3]  11/18 48/12 112/16
continued [1]  48/8
contract [19]  40/8 40/8 55/24 77/13
 83/10 86/6 86/18 95/14 95/16 95/17
 96/1 99/15 109/13 110/3 111/6 111/13
 111/14 111/18 111/19
contractor [1]  86/25
contracts [4]  50/25 64/3 71/8 71/9
Contreras [1]  81/17
control [28]  24/25 67/21 67/24 68/4
 72/17 85/21 86/1 86/3 86/12 87/22
 88/10 93/1 93/4 93/14 93/17 95/12
 100/7 101/15 101/24 102/4 102/6
 103/20 103/22 105/3 107/7 107/21
 108/13 109/10
controlled [3]  78/23 79/16 103/9
controls [1]  83/4
controversies [1]  114/24
controversy [4]  6/15 112/23 113/16
 114/15
conversation [2]  34/12 94/13
conversations [1]  34/16
convey [1]  43/2
Coomer [7]  17/5 17/11 19/13 20/9 24/12
 24/22 25/1
cooperatively [1]  13/3
copies [7]  14/18 86/17 86/20 86/24
 99/10 99/18 109/14
copy [7]  26/23 59/21 67/14 72/14 86/8
 93/20 99/8 99/9 108/13 108/15 109/11
 109/18 109/24 109/24 111/22 111/24
 111/25
copying [2]  68/8 72/6
core [2]  76/16 80/12
CORP [3]  1/3 2/4 118/8
corporate [1]  74/14
corporations [1]  50/23
correct [19]  10/8 11/14 15/16 22/24
 23/19 26/11 26/24 29/22 31/7 49/22
 85/23 88/7 88/12 91/10 92/8 99/3 99/4
 100/7 100/8
corresponding [1]  47/3
corresponds [1]  98/13
cost [1]  28/19
could [38]  13/16 18/6 18/9 19/19 25/9
 25/10 27/1 27/3 33/20 33/22 35/11
 36/20 37/4 38/14 38/18 44/6 48/22
 62/22 65/12 65/15 77/18 78/18 83/5
 87/9 89/17 97/17 97/19 102/17 107/10
 107/11 108/1 108/4 108/12 109/2 110/9
 110/18 110/25 116/9
couldn't [2]  19/11 54/22
counsel [18]  2/7 4/4 5/8 14/9 42/5 44/18
 46/22 49/4 57/11 57/14 81/19 82/3 97/2
 97/6 101/7 106/5 112/1 114/16
counsel's [1]  70/25

count [1]  2/23
countries [11]  96/18
countries [13]  71/12 76/20 79/13 79/16
 80/11 91/18 92/19 96/19 102/15 103/9
 104/18 104/24 105/9
country [2]  90/7 104/21
county [73]  18/20 77/11 77/12 78/10
 79/1 82/7 82/9 82/11 83/10 83/23 83/25
 83/25 84/7 84/23 85/1 85/17 85/20
 85/24 85/25 86/5 86/6 86/7 86/9 86/11
 86/12 86/15 86/17 86/23 86/25 87/2
 87/3 87/4 87/14 87/20 87/22 88/1 88/16
 88/18 88/18 88/24 90/7 95/21 96/24
 98/17 98/20 99/7 99/15 99/18 99/20
 99/21 99/23 99/25 100/14 100/15
 100/25 106/23 107/10 107/24 107/25
 108/3 108/7 108/14 109/12 109/14
 109/15 110/2 110/7 110/19 110/24
 111/6 111/15 112/4 112/5
couple [1]  3/19
course [9]  13/10 18/18 22/6 36/4 60/13
 72/21 77/3 90/10 99/17
court [48]  1/19 1/20 3/17 3/23 7/23 12/2
 13/2 13/24 14/11 14/14 14/21 17/18
 29/3 31/20 32/20 33/6 33/9 33/13 33/19
 34/15 37/22 38/3 38/18 41/5 46/4 49/24
 51/13 52/24 59/25 60/8 74/17 82/3
 82/19 83/12 87/17 90/3 95/18 95/19
 97/20 109/14 110/4 111/25 113/7
 114/22 118/3 118/4 118/9 118/22
Court's [2]  15/9 81/14
courtesy [2]  51/20 59/21
courtroom [2]  41/5 48/15
courts [7]  1/1 19/25 27/14 33/4 34/22
 41/19 89/11
craft [2]  35/14 36/14
crafting [1]  38/13
create [3]  27/8 30/22 36/14
created [5]  27/8 37/21 76/14 78/13
 79/15
creates [1]  42/9
credible [1]  19/2
CRM [5]  48/11 52/7 52/10 68/11 73/24
crossed [1]  49/1
crux [1]  83/21
cull [1]  43/21
culled [1]  24/13
cure [1]  37/10
currently [2]  86/13 107/18
cusp [1]  116/14
custodians [5]  21/8 21/9 113/24 114/4
 114/10
custody [28]  24/25 67/21 67/24 68/4
 72/17 85/21 85/25 86/2 86/12 88/9
 92/25 93/4 93/13 93/16 95/12 100/7
 101/15 101/24 102/4 102/6 103/20
 103/22 105/3 107/21 108/13 108/20
 109/7 109/9
Customer [2]  48/10 51/24
cut [1]  66/23
cutoff [1]  11/16
cuts [1]  22/4
cv [2]  1/3 118/9

**D**

D.C [3]  1/5 1/21 98/3
damaged [1]  50/24
damages [81]  24/3 31/1 31/1 31/4 33/18
 35/11 39/15 39/18 41/14 48/10 49/21
 50/14 51/9 51/9 51/12 51/24

52/10 52/18 53/3 53/10 53/10 53/16
 53/20 53/25 53/24 56/3 56/11 56/12
 56/14 56/16 57/7 57/20 58/12 58/15
 59/2 59/15 59/22 61/23 61/25 62/1 62/3
 62/6 62/15 62/25 63/3 63/9 63/12 63/14
 63/22 65/5 65/10 66/24 67/16 68/7
 68/11 68/14 68/21 68/21 68/21 68/22
 69/2 69/20 70/1 70/10 72/5 72/20 73/3
 73/5 73/8 73/11 73/12 73/21 74/1 74/4
 74/6 74/15 74/15 74/16 74/23 74/25
 dark [4]  55/5 55/10 55/11 59/20
 data [1]  68/12
 database [7]  48/11 48/11 51/25 52/5
 52/7 52/11 73/24
 databases [2]  24/13 24/14
 date [2]  6/2 100/16
 day [5]  56/15 57/4 107/15 118/10
 118/18
 days [6]  20/19 25/21 52/3 74/21 88/24
 116/7
 DDC [1]  81/16
 deadline [6]  25/10 54/6 54/8 60/4 70/13
 70/21
 deal [2]  76/11 115/20
 dealing [1]  42/10
 decades [2]  91/24 92/18
 December [4]  5/18 10/9 21/18 94/2
 decided [2]  34/13 74/12
 decipher [1]  97/14
 decision [1]  8/17
 declaration [2]  96/4 96/8
 declined [5]  38/6 38/8 87/5 87/17 114/5
 deem [1]  47/10
 defamation [8]  77/3 78/16 79/21 80/17
 81/17 97/11 97/16 98/1
 defamatory [6]  66/9 76/6 79/14 79/17
 81/8 104/20
 default [3]  30/15 39/25 57/25
 defend [3]  30/15 39/25 57/25
 defendant [20]  1/7 1/15 2/25 3/3 3/6 3/9
 3/12 3/15 5/21 12/25 14/18 36/2 46/22
 46/24 46/25 47/9 63/20 76/1 77/4 92/6
 defendant's [7]  6/23 10/3 12/21 24/24
 63/14 72/13 75/20
 defendants [4]  23/25 32/24 92/3 92/5
 defending [1]  57/18
 defense [3]  41/21 57/20 79/23
 defenses [2]  67/15 72/18
 defer [1]  112/9
 deficience [1]  48/9
 deficiency [2]  51/10 51/11
 deficient [2]  49/22 73/3
 definitely [1]  46/6
 delete [1]  96/22
 delineate [3]  52/15 61/2 61/11
 delineated [1]  58/10
 delta [1]  22/11
 Democrats [2]  18/18 18/24
 denies [1]  11/17
 deny [8]  6/13 7/12 47/24 100/2 101/12
 101/18 103/12 112/10
 depending [3]  3/22 11/12 41/25
 depends [1]  56/4
 deponent [2]  9/17 9/18
 deponents [4]  9/16 11/11 13/8 15/6
 deposed [1]  59/18
 deposition [17]  7/17 8/13 8/25 9/22
 10/10 10/22 12/12 13/4 13/22 15/4
 15/12 15/14 15/15 40/10 53/1 92/10
 117/12

**D**

depositions [23] 4/21 5/11 7/1 7/19 7/24 8/3 8/15 9/3 9/6 9/9 9/12 9/13 9/15 10/18 11/15 11/15 12/20 12/23 13/5 39/22 53/6 92/21 117/3
depth [1] 88/21
description [3] 67/14 72/14 73/4
design [1] 76/16
designation [2] 111/12 113/23
designed [13] 17/7 76/14 80/22 81/2 81/9 91/3 92/12 99/16 102/11 102/20 103/3 104/24 109/12
designing [1] 103/10
desk [1] 4/6
Despite [1] 50/13
destroy [1] 86/19
destroyed [1] 86/17
detail [2] 52/16 76/11
detailed [1] 64/18
details [1] 64/21
detect [1] 97/13
detention [1] 118/7
determination [1] 77/8
determine [4] 35/3 69/3 77/1 79/2
devaluation [3] 65/10 65/23 65/25
devalued [2] 56/24 65/8
develop [1] 11/19
developed [17] 12/13 78/8 79/2 79/4 79/18 84/7 84/19 84/20 85/7 86/5 86/11 86/21 86/25 88/19 99/16 101/2 109/15
developer [3] 96/21 97/11 97/13
developing [1] 99/11
development [2] 84/9 99/19
device [6] 82/14 82/21 82/24 84/5 84/8 86/10
dictator [2] 79/16 103/9
dictator-controlled [1] 79/16
dictators [1] 104/24
did [36] 4/22 5/1 8/3 11/14 12/14 15/8 15/14 18/3 21/13 21/24 29/10 29/14 34/10 36/16 41/13 56/16 56/17 61/2 63/4 64/14 70/1 76/5 78/6 83/20 85/3 85/6 86/19 88/21 91/23 94/8 95/24 97/7 99/24 102/11 102/23 113/6
didn't [21] 21/25 22/21 24/15 27/19 29/19 33/7 36/7 53/6 54/7 54/7 54/12 54/13 54/14 54/16 54/16 60/1 61/19 70/15 89/10 94/24 108/9
difference [2] 9/2 108/24
different [17] 5/19 24/4 24/19 25/4 27/1 27/2 38/22 42/24 51/16 54/24 60/25 61/2 74/12 75/3 88/9 88/10 104/2
differentiate [2] 39/5 59/5
difficult [1] 29/16
diligently [1] 10/9
diminished [1] 66/6
direct [2] 63/18 111/8
direction [2] 3/23 7/15
directly [1] 103/8
disagree [3] 31/8 64/6 68/17
disagreed [1] 94/7
disagrees [1] 6/12
disappointed [1] 4/16
disclose [6] 54/7 55/14 56/7 72/1 74/1 74/14
disclosed [3] 81/25 99/20 114/9
disclosing [2] 72/5 72/16
disclosure [10] 48/2 51/8 51/14 53/21 61/23 68/10 72/8 73/23 87/8 90/11
disclosures [37] 48/3 48/7 49/15 49/19

**D continued**

50/4 52/17 53/2 53/25 56/8 58/9 59/25 59/9 59/11 59/17 61/7 64/9 64/10 64/20 65/24 66/12 66/13 67/4 68/12 68/16 69/15 69/17 70/19 72/22 72/24 72/25 73/2 73/6 74/19 74/21 75/10 95/19 113/25
discovery [63] 1/9 2/5 4/12 4/16 4/18 4/22 5/1 5/7 5/11 7/18 8/5 11/9 11/16 11/17 11/24 11/25 12/3 14/2 14/13 14/24 16/19 21/6 22/7 23/6 28/15 28/23 28/24 29/6 29/14 29/21 30/19 30/20 31/11 31/18 32/12 35/14 36/4 36/9 38/15 39/2 45/20 45/21 45/22 46/3 53/8 54/5 55/4 60/3 62/20 62/22 64/19 65/14 73/16 85/1 94/24 110/15 113/14 113/20 116/7 116/20 117/1 117/7 117/13
discuss [8] 13/11 42/12 47/12 48/22 94/25 95/1 112/12 112/25
discussed [5] 12/17 46/20 61/7 83/8 112/6
discusses [1] 66/5
discussing [3] 49/5 49/21 104/3
discussion [6] 5/23 59/14 69/25 106/8 110/15 110/20
discussions [1] 94/23
disinformation [3] 17/7 63/19 103/16
dismiss [3] 26/13 59/22 97/23
dismissed [1] 98/2
disposal [1] 100/2
dispute [9] 8/14 8/24 9/1 46/7 46/23 71/25 73/1 80/3 110/15
disputes [15] 4/23 5/7 7/6 7/18 16/19 28/11 30/20 46/4 94/24 113/14 113/20 115/3 115/8 115/20 117/13
distinction [2] 23/20 23/24
distinguished [1] 22/8
distribution [1] 71/9
district [13] 1/1 1/1 1/20 1/20 17/16 33/6 81/15 82/19 87/16 90/2 97/20 118/4 118/4
divestify [1] 77/16
do [90] 4/5 7/4 8/14 13/7 13/20 14/5 14/9 15/8 15/24 19/21 20/6 23/20 25/13 28/21 29/12 30/4 30/10 30/14 32/18 32/20 35/9 35/21 36/8 36/20 37/5 37/8 38/8 40/4 40/11 40/18 41/23 42/18 43/6 43/16 43/18 43/22 44/6 44/11 44/13 47/1 48/5 48/18 49/8 49/10 49/18 50/21 50/23 52/2 53/3 54/22 58/16 58/19 60/14 61/14 63/23 61/3 64/4 70/23 73/15 73/22 74/8 75/6 77/13 79/8 81/7 84/17 91/5 91/25 92/6 92/7 97/3 97/15 97/18 97/19 97/24 101/11 105/2 106/16 107/4 108/8 108/8 108/9 110/9 110/9 112/7 114/20 115/6 115/9 115/14 117/4 118/5
docket [7] 6/21 7/2 47/4 82/17 82/17 96/6 111/8
document [28] 6/23 10/16 14/12 15/21 16/6 20/5 20/10 23/17 23/18 25/23 25/24 29/4 29/7 30/3 30/5 35/22 38/24 39/9 40/7 40/12 43/12 44/9 52/7 52/8 62/11 62/14 111/17 114/10
documents [89] 4/3 4/6 10/25 16/22 17/3 17/19 17/22 18/5 18/6 18/9 19/11 19/14 19/24 20/2 20/8 21/12 21/19 21/22 22/4 22/5 22/12 22/21 23/1 23/8 23/15 23/22 24/24 25/3 27/2 29/1 29/15 29/17 30/3 30/3 31/14 32/14 36/23 36/25 37/8 39/7 40/6 41/3 42/6 43/3 43/16 44/17 47/8 47/8 50/9 51/12 51/24

52/4 52/9 52/12 54/25 52/17 52/18 53/18 53/16 53/18 54/14 54/18 58/25 59/1 59/1 65/9 65/14 67/13 67/15 67/18 67/20 67/23 68/3 68/8 71/6 71/7 71/11 72/7 72/15 72/20 73/5 73/20 73/21 73/22 73/25 74/22 74/24 92/22 112/22
does [31] 5/12 11/13 11/17 22/6 23/13 31/17 35/7 36/24 39/11 50/4 62/14 62/16 63/21 74/5 79/4 81/1 85/5 88/12 88/13 88/16 90/19 93/13 93/13 93/15 96/1 98/22 99/9 99/19 100/9 103/14 114/11
doesn't [14] 30/13 31/24 55/12 57/24 58/4 58/14 59/12 65/2 65/12 83/6 88/5 101/7 102/8 107/20
doing [3] 32/17 38/3 48/19
dollar [1] 65/4
dollars [1] 56/25
Dominion [33] 12/13 17/4 17/10 17/12 18/2 18/16 18/22 20/8 21/11 21/12 21/13 21/16 21/20 21/22 21/24 22/12 22/18 24/11 24/22 25/1 33/18 55/24 77/20 77/21 78/1 78/2 78/20 78/20 83/8 85/2 85/5 101/1 102/1
Don [1] 57/6
don't [94] 3/24 7/18 8/21 8/24 10/13 11/10 11/24 15/22 18/3 20/10 20/24 24/8 24/9 26/18 28/18 29/20 31/1 31/8 31/25 32/12 32/19 32/19 32/24 32/25 39/9 39/20 39/24 40/17 42/1 43/13 43/22 46/8 50/12 50/17 50/19 51/8 51/11 51/25 53/19 55/7 55/25 56/18 56/21 57/8 58/1 58/25 59/5 60/11 61/7 61/14 64/3 66/11 66/13 66/22 69/14 73/25 74/10 74/11 81/5 81/23 82/6 85/24 87/5 87/7 89/23 91/5 91/8 91/10 91/24 94/11 94/16 95/4 95/23 96/3 96/12 96/22 97/3 98/12 101/21 106/7 106/9 109/3 109/8 110/14 111/5 111/11 112/3 113/14 113/15 115/4 115/10 115/23 116/11 116/21
don't know [1] 50/12
Donald [2] 17/14 18/15
done [20] 5/11 12/4 12/7 14/9 21/5 25/17 35/2 48/13 58/17 60/1 63/15 66/25 67/1 70/14 70/18 70/20 78/23 83/6 83/8 117/3
door [1] 91/1
down [3] 65/3 69/23 97/7
DPO [5] 7/20 8/4 8/18 8/21 13/24
draw [2] 23/21 23/22
driving [1] 103/5
due [3] 55/1 56/8 76/16
duplicate [1] 36/10
duplication [4] 34/7 37/16 38/14 47/3
duplicative [30] 26/6 27/12 27/13 27/15 27/25 30/2 30/11 30/13 30/15 30/17 30/21 32/5 32/10 34/12 34/16 34/18 34/21 34/23 35/4 35/10 35/16 35/18 36/6 36/11 37/19 37/20 40/21 42/15 42/18 47/11
during [11] 12/17 22/24 41/10 73/16 77/21 78/7 83/23 97/7 98/20 99/7 107/17

**E**

E-Poll [1] 84/20
each [17] 3/16 3/20 8/15 15/13 23/7 24/6 40/3 40/4 49/4 66/24 72/4 72/9 74/4 74/16 84/19 85/13 94/20

**E**

earlier [3]  61/9 99/14 108/5
early [1]  105/24
ease [1]  16/20
easier [1]  92/17
easily [1]  18/20
ECF [16]  6/4 6/17 6/17 6/17 13/25
  15/20 16/5 16/11 16/15 16/16 16/16
  16/21 25/7 47/24 48/1
ECF-130 [1]  16/21
ECF-132 [1]  6/17
ECF-143-4 [1]  48/1
ECF-165 [1]  6/4
ECF-176 [1]  16/11
ECF-54 [1]  6/17
ECF-65 [1]  6/17
ECF-81 [2]  16/16 25/7
ECF-96 [1]  6/17
Edge [2]  85/7 85/10
EDWARDS [12]  1/16 3/6 14/17 36/2
  44/25 46/21 75/24 75/25 95/7 103/2
  106/11 114/2
effect [3]  14/12 39/11 39/13
effective [1]  39/24
efficient [4]  17/22 27/16 40/11 40/13
effort [3]  18/14 38/13 114/21
egregious [1]  34/7
eight [1]  53/1
either [15]  4/24 5/6 6/14 9/21 23/25
  26/17 33/8 37/8 37/12 43/19 44/10
  45/12 45/18 45/19 84/9
elected [1]  104/25
election [64]  17/8 17/13 18/14 18/17
  18/23 22/15 55/22 76/8 76/20 77/13
  77/22 78/7 79/11 80/10 80/11 80/14
  81/9 83/21 83/21 83/23 84/7 84/22
  85/11 85/17 86/5 87/10 87/19 87/21
  87/25 88/16 88/21 88/23 89/2 89/19
  90/8 90/22 91/14 91/23 92/1 96/17
  98/20 99/7 100/4 100/6 100/15 100/7
  101/4 102/9 102/16 102/23 104/2
  104/12 104/18 104/20 104/21 105/19
  105/21 106/24 107/3 107/15 107/18
  108/10 109/20 109/22
elections [16]  76/19 76/20 89/19 91/4
  91/21 92/13 96/19 102/11 102/12
  102/21 103/17 104/5 104/8 104/17
  105/9 107/16
electronic [1]  84/3
electronically [1]  72/15
else [6]  13/21 54/23 75/16 92/4 117/19
  117/20
email [2]  11/3 13/17
embedded [1]  97/14
employed [1]  82/11
employee [1]  96/5
enact [1]  54/10
encompass [1]  63/21
encompasses [1]  72/20
encourage [2]  115/6 117/4
encryption [2]  89/1 108/6
end [3]  30/14 30/19 47/6
endeavor [1]  33/9
endorsing [1]  17/12
enforce [1]  110/21
engage [4]  28/10 34/12 35/17 37/15
engaged [1]  31/13
engaging [3]  5/6 30/18 34/15
engineers [1]  92/14
enough [2]  25/13 54/18

ensure [2]  78/22 83/3
enter [1]  9/18
enters [1]  83/12
entertain [1]  16/15
entire [7]  22/15 29/4 31/23 33/19 36/8
  38/11 107/5
entirely [1]  104/2
entities [9]  24/1 27/5 39/14 40/12 50/14
  50/15 61/12 67/10 75/4
entitled [9]  41/4 68/23 73/15 76/25 79/6
  79/22 82/23 92/6 92/7
entity [3]  27/11 40/3 55/17
environment [5]  106/19 107/2 107/9
  107/12 107/22
Eric [2]  17/5 17/11
ES [1]  102/1
escrow [11]  82/10 88/25 88/25 89/3
  100/9 108/14 108/18 108/21 108/24
  109/2 111/24
especially [3]  30/18 87/8 110/4
ESQUIRE [9]  1/12 1/12 1/13 1/15 1/15
  1/16 1/16 1/17 1/17
essentially [3]  30/2 67/9 96/20
et [4]  1/3 2/4 33/18 118/8
evade [1]  45/19
evaluate [2]  33/10 90/4
even [28]  22/14 27/10 30/12 35/6 42/15
  49/16 52/16 54/14 55/14 55/16 55/22
  68/22 69/11 69/16 74/6 74/7 74/15
  90/11 90/23 94/12 95/23 95/24 99/18
  102/8 107/10 109/11 111/23 112/16
event [1]  95/17
events [1]  76/19
eventually [1]  97/21
ever [1]  61/7
every [6]  33/10 34/18 35/18 37/24 91/14
  114/21
everybody [1]  3/24
everyone [6]  4/8 16/16 26/9 48/18 81/22
  98/22
everything [5]  13/21 21/15 22/20 71/3
  96/22
evidence [4]  19/18 20/4 81/2 85/15
evident [1]  30/8
evidentiary [2]  68/9 72/7
exact [2]  20/18 87/16
exactly [2]  78/23 85/5
examined [1]  19/25
example [9]  28/22 29/12 30/9 33/5
  62/22 63/3 84/20 90/2 90/17
examples [2]  33/17 34/6
exceed [4]  9/17 9/22 13/3 13/5
Excel [3]  62/5 63/18 67/3
except [3]  3/24 56/10 110/12
excess [1]  66/7
exchanged [1]  102/18
excuse [3]  56/20 57/13 65/13
excused [2]  72/22 117/17
exemplar [6]  76/4 77/10 79/1 82/13
  82/21 93/20
exemplars [1]  94/13
exercise [4]  32/21 35/2 35/17 43/18
exhibit [5]  37/18 47/5 48/14 51/18 51/18
exhibits [2]  41/16 41/16
exist [2]  102/23 107/20
existed [1]  85/8
exists [2]  100/23 101/5
expect [3]  66/14 112/15 115/9
expecting [1]  8/1
expense [1]  27/17

expenses [1]  69/5
expert [28]  15/15 94/3 94/4 54/6 54/7
  59/14 59/17 59/19 60/3 64/19 65/21
  66/17 69/4 69/7 70/12 70/13 70/15
  70/18 70/25 71/2 73/16 78/25 81/9
  82/22 96/21
experts [8]  54/3 54/25 64/18 74/8 78/5
  82/24 83/3 106/9
explained [2]  59/10 69/6
explicit [1]  95/20
exploited [1]  90/25
expressed [2]  26/3 87/6
extend [1]  70/20
extending [1]  60/3
extension [7]  4/12 4/18 4/18 5/3 6/22
  7/18 59/25
extensive [1]  31/18
extent [6]  21/17 54/1 72/10 74/24 78/6
  117/2
extraordinarily [1]  19/23
extremely [2]  26/5 27/11
eyes [2]  95/16 111/16

**F**

F.Supp [1]  81/16
face [1]  60/2
facially [1]  42/1
fact [26]  12/10 15/13 15/14 19/9 26/19
  27/10 28/1 32/5 42/14 50/13 53/8 55/4
  61/2 72/11 76/13 77/2 79/23 82/7 83/10
  91/16 97/18 102/12 104/20 109/16
  115/15 116/7
fact and [1]  15/13
factors [1]  69/1
facts [1]  17/14
fair [3]  54/18 54/22 56/10
fairly [1]  81/21
faith [2]  31/13 114/21
fall [7]  34/21 35/9 42/18 58/9 59/3
  113/25 114/10
false [12]  17/8 77/2 79/3 79/6 79/7
  79/14 79/19 79/23 81/4 81/13 89/23
  91/3
falsity [4]  77/4 89/17 97/23 98/7
family [1]  57/9
family-owned [1]  57/9
far [7]  4/16 32/15 63/1 76/18 87/13
  104/16 107/13
fashion [4]  14/12 38/23 39/21 47/18
favor [2]  17/14 49/12
FCRR [1]  1/19
feasible [1]  116/10
February [4]  1/6 96/6 118/10 118/18
federal [5]  9/5 21/14 64/22 77/15 116/16
feel [1]  89/9
feelings [1]  115/7
fees [2]  68/22 68/23
felt [2]  45/7 53/23
few [2]  59/23 71/11
figure [7]  9/23 40/20 46/9 54/1 65/3
  69/11 70/2
figures [1]  63/23
figuring [2]  27/25 35/18
file [16]  6/24 15/21 16/6 34/13 37/13
  61/22 65/6 75/22 88/17 89/1 99/9
  108/18 108/21 109/21 109/23 114/22
filed [25]  6/4 7/14 16/18 34/1 37/9 37/17
  48/14 49/6 52/25 53/24 59/22 60/15
  64/21 69/21 82/18 93/18 93/24 93/25
  94/4 96/5 111/7 111/9 111/10 112/17

**F**

filed... [1]  115/18
files [2]  82/11 86/24
filing [1]  26/12
final [5]  53/23 69/12 69/16 73/13 99/11
financial [3]  67/25 68/1 112/22
financially [1]  30/23
find [11]  43/23 50/1 51/24 52/13 52/22
  53/18 55/17 57/7 73/25 91/4 97/3
finding [2]  20/3 87/19
fine [7]  5/14 14/22 54/11 61/21 83/12
  91/8 95/9
finished [1]  70/13
first [35]  4/11 5/16 6/18 8/19 21/4 27/13
  27/23 28/3 29/20 30/2 30/4 30/5 30/13 31/12
  32/2 35/22 36/12 36/16 36/22 37/4
  37/24 42/4 43/1 43/13 45/3 47/4 61/4
  64/9 64/22 66/12 73/1 81/25 96/15
  107/2 114/1 114/9
fit [1]  17/19
five [3]  77/25 85/13 97/9
flagged [1]  14/20
flexibility [3]  10/23 11/6 11/19
flight [1]  116/14
flipping [1]  90/24
fly [3]  41/5 44/7 44/10
focus [1]  90/1
focused [1]  69/1
focusing [1]  68/25
folks [1]  19/1
follow [2]  40/10 60/13
following [4]  6/13 23/7 28/17 66/9
followup [1]  35/21
forced [1]  77/16
foreclosed [1]  94/10
foregoing [1]  118/12
foreign [7]  39/16 50/23 71/10 77/17
  79/16 104/21 104/24
forgot [1]  20/15
form [1]  117/9
former [1]  41/21
forth [5]  28/6 64/18 65/11 65/23 67/2
forthcoming [2]  113/13 113/20
forum [1]  74/14
forward [15]  5/22 27/6 31/9 40/20 42/12
  43/23 44/11 45/18 45/25 46/23 47/24
  66/16 69/8 70/1 113/7
found [4]  35/8 52/6 89/11 90/3
four [4]  6/10 7/13 16/12 60/24
Fourteen [1]  25/21
Fox [1]  63/10
frank [3]  4/20 24/9 45/16
frankly [3]  18/3 39/23 49/24
fraud [1]  76/15
free [1]  86/14
freely [1]  42/5
Freeman [9]  17/4 18/5 18/13 19/5 19/12
  19/20 24/12 24/16 24/23
Friday [7]  26/12 47/9 52/2 52/3 55/17
  114/23 117/14
Friedlander [1]  2/10
front [1]  6/21
frustration [1]  53/23
full [4]  11/18 54/1 86/12 90/19
fully [2]  35/17 72/23
function [1]  26/24
functional [5]  106/19 107/2 107/9
  107/11 107/22
functionality [1]  80/22
functionally [1]  34/8

functioning [1]  85/9
funded [1]  105/22
further [10]  30/20 32/24 33/5 70/3 94/9
  95/3 95/5 101/12 115/20 118/12

**G**

gain [1]  89/18
gave [7]  38/9 54/21 55/16 57/5 86/16
  96/23 108/19
general [1]  24/7
generalized [1]  24/7
generally [4]  34/23 35/5 102/25 116/6
generating [1]  106/20
George [1]  105/22
Georgia [2]  18/15 18/23
get [42]  4/24 4/25 5/10 7/20 8/4 8/4 8/8
  8/9 12/3 12/3 13/16 18/9 25/10 25/17
  31/2 32/7 34/9 34/10 39/19 40/21 41/22
  43/23 46/12 51/1 56/9 57/19 59/19
  66/17 73/16 78/19 83/19 87/20 92/20
  98/10 104/25 108/12 110/20 111/5
  114/20 116/8 117/2 117/3
gets [2]  81/5 107/16
getting [6]  12/1 42/13 60/1 72/13 95/25
  100/4
gist [1]  80/15
Giuliani [3]  19/1 19/6 50/16
give [6]  6/15 42/22 54/8 74/15
given [9]  4/2 4/8 12/22 25/11 45/13
  65/17 82/21 84/25 108/16
giving [3]  42/5 51/19 62/19
go [28]  3/23 4/11 5/22 6/18 19/8 29/9
  32/12 38/6 45/8 49/18 52/12 52/22
  66/15 67/17 70/19 73/25 76/11 79/11
  81/3 85/11 87/19 95/8 95/10 97/5 98/9
  99/25 110/21 116/18
goals [1]  8/8
goes [6]  78/15 79/9 79/12 79/12 89/21
  93/9
going [80]  3/17 4/10 4/11 4/14 4/17 5/4
  7/20 8/16 8/17 9/18 11/23 15/17 24/21
  32/22 36/23 37/5 37/6 37/12 37/14
  40/14 40/18 40/20 41/5 41/7 41/8
  41/12 42/11 43/18 44/7 44/9 44/19
  45/10 45/11 45/18 45/21 45/25 46/9
  47/6 47/24 48/3 48/13 48/15 54/10
  55/11 56/13 59/19 61/10 66/23 69/1
  69/3 69/6 70/16 71/2 73/10 74/20 78/12
  78/19 95/8 95/10 96/10 96/12 97/3
  97/22 97/22 98/4 98/5 98/9 98/10 100/2
  101/6 101/18 105/17 110/15 111/3
  112/15 114/17 115/6 115/7 116/24
gone [1]  22/11
good [23]  2/2 2/12 2/13 2/15 2/17 2/18
  2/20 2/21 2/21 3/1 3/2 3/4 3/5 3/7 3/16
  8/13 10/5 10/6 15/18 31/3 36/1 47/21
  114/21
got [4]  50/19 55/20 61/5 69/15
gotten [1]  115/2
govern [1]  6/9
government [3]  22/9 95/16 100/14
grant [14]  4/14 14/7 15/25 16/3 16/11
  24/21 24/25 25/6 70/16 73/10 87/3
  106/4 106/14 112/10
granted [5]  5/3 7/17 27/9 49/6 59/25
great [4]  7/12 76/11 113/9 114/18
group [2]  76/17 52/4
guess [4]  40/9 42/8 49/14 94/2
guidance [2]  8/11 42/23
guy [3]  53/7 97/19 97/24

  45/13 45/24 111/21 113/1 115/7

**H**

had [49]  8/24 8/25 12/9 12/15 19/1
  19/19 19/21 20/24 21/16 24/7 30/9 38/5
  38/12 41/20 41/21 42/16 45/5 47/1 52/5
  52/6 52/9 53/1 53/2 53/3 53/19 59/24
  64/15 64/22 64/24 65/5 73/2 75/22
  76/18 77/13 79/2 83/17 86/17 88/24
  89/3 94/13 96/11 108/20 109/11 110/6
  110/17 113/24 114/4 116/6 118/6
hadn't [2]  53/17 60/14
half [3]  58/5 71/1 71/2
hammering [1]  78/22
hand [5]  14/23 40/24 41/1 87/1 94/12
handed [2]  88/20 109/10
handful [1]  29/13
handing [1]  90/5
handle [1]  7/5
hands [1]  4/20
happen [1]  78/24
happy [8]  2/8 18/12 21/1 37/15 43/19
  49/16 83/2 111/6
hard [3]  28/24 29/8 35/6
hardware [4]  76/25 84/9 85/16 88/22
harm [3]  20/1 24/2 69/13
has [92]  4/13 4/16 5/4 5/25 7/22 14/3
  17/3 17/18 20/7 20/24 23/25 27/24
  28/18 30/14 31/5 31/12 31/13 31/18
  32/8 35/14 39/13 40/3 44/21 50/22
  52/24 55/23 56/15 57/9 57/22 59/8
  60/11 61/24 63/15 66/24 69/16 72/17
  72/22 72/25 73/8 73/13 74/4 74/16
  74/22 75/22 77/4 78/20 80/10 81/25
  83/10 83/17 83/25 84/1 85/20 86/3
  86/21 87/9 87/11 89/3 89/22 91/25
  92/14 92/15 92/15 92/16 92/22 92/22
  93/7 94/13 94/18 99/2 99/10 99/10
  101/3 102/13 102/15 102/15 102/24
  107/7 107/21 108/8 108/12 108/15
  109/15 109/19 110/11 111/7 111/8
  111/10 111/22 111/23 116/20 117/5
hash [1]  108/5
hasn't [1]  5/21
have [226]
haven't [4]  21/23 62/2 71/4 110/17
having [13]  20/1 27/15 28/20 29/5 30/20
  43/24 49/11 49/12 60/2 81/2 87/22
  104/17 110/21
haystack [1]  52/23
he [7]  5/2 11/24 40/7 97/12 97/16 97/18
  112/25
he's [2]  113/1 113/2
head [2]  36/3 117/18
hear [20]  6/14 8/15 8/19 16/22 20/12
  21/1 25/25 32/24 45/23 46/12 75/23
  81/23 94/16 94/24 95/7 109/1 109/1
  111/1 112/1 117/11
heard [5]  63/24 64/2 71/4 75/6 75/6
hearing [11]  1/9 2/5 10/9 12/9 12/11
  112/1 112/7 113/1 115/4 115/20 118/7
heart [1]  89/21
Hello [1]  2/8
help [2]  77/7 97/13
helpful [3]  21/3 21/6 24/18
helping [1]  18/14
her [2]  6/18 59/14
here [40]  2/9 2/10 3/15 10/21 17/20
  17/24 20/3 26/3 29/3 31/11 32/2 32/9

## H

here... [28]  37/18 38/10 40/8 40/18
42/10 42/23 43/20 46/5 50/11 59/19
61/5 67/2 67/18 68/24 69/1 69/14 78/24
85/4 89/6 89/8 89/15 90/6 93/2 103/22
110/14 110/25 112/4 112/6
here's [3]  32/11 32/13 32/13
hereby [1]  118/5
hereto [1]  118/17
HERRING [5]  1/6 2/4 10/12 15/8 118/8
hey [3]  53/7 58/17 79/14
hidden [1]  97/13
high [2]  20/4 43/21
highly [4]  89/12 90/6 92/19 105/2
him [4]  3/24 53/6 60/2 60/15
his [3]  59/14 97/12 98/1
hit [1]  36/3
hoax [1]  97/15
Hold [1]  34/25
holding [1]  67/9
holds [1]  88/25
homework [2]  12/10 12/11
honestly [2]  8/1 85/24
Honor [106]  2/3 2/8 2/13 2/15 2/18 2/21
2/22 3/2 3/5 3/14 3/18 3/22 5/14 6/19
7/4 7/11 8/6 8/22 9/13 10/2 10/5 10/8
10/14 11/2 11/7 11/12 12/5 12/8 13/10
13/13 13/20 14/5 14/15 14/25 15/2
15/16 15/18 15/23 16/1 16/2 16/10 17/1
17/9 17/16 19/9 19/16 20/14 20/20
20/22 21/2 21/5 25/8 25/20 26/2 31/7
34/3 36/1 36/2 36/12 39/1 39/16 40/5
41/11 43/25 44/13 46/16 46/21 60/18
63/17 70/9 71/20 75/8 75/14 75/17 76/1
82/16 83/15 83/18 85/2 85/23 87/14
95/2 95/5 95/14 96/1 97/5 98/23 98/25
99/24 101/9 103/4 104/13 104/15
105/13 106/16 107/1 108/11 109/24
112/24 113/17 113/22 114/16 115/22
116/13 116/23 117/16
Honor's [1]  93/10
HONORABLE [1]  1/9
hope [4]  7/22 11/22 60/10 70/11
hopefully [2]  60/5 60/8
hoping [1]  8/4
host [1]  113/12
hour [3]  9/2 11/3 12/15
hours [16]  8/23 8/25 9/7 9/9 9/11 9/16
9/17 9/19 9/21 10/1 11/1 12/14 12/21
13/6 13/8 52/2
how [32]  4/16 5/5 7/24 9/5 28/2 30/6
32/20 35/3 35/18 35/21 39/25 46/9
57/17 57/18 60/6 60/14 61/16 63/1 69/2
69/8 69/15 79/4 87/25 89/9 92/11
101/21 102/24 115/2 116/11 116/21
116/21 116/21
however [3]  4/15 46/10 50/7
huge [1]  8/24
hum [2]  61/3 64/11
hundred [8]  8/25 9/1 9/8 12/21 12/23
28/8 35/23 40/2
hundred-plus [1]  40/2
hundreds [2]  41/24 92/18
hurt [1]  115/7

## I

I'd [8]  8/19 20/17 48/4 49/16 57/18
60/10 114/20 115/14
I'll [24]  2/11 3/23 6/15 6/17 8/17 12/25
20/12 21/1 25/25 32/24 40/23 41/7
I'm [93]  2/9 4/10 4/11 5/4 6/3 6/6 8/1 8/4
8/16 12/6 12/7 12/18 12/19 15/2 18/10
18/10 18/12 20/21 23/9 25/14 26/8
28/11 28/17 32/7 32/18 32/19 32/22
40/14 40/18 40/19 41/7 41/8 41/23
42/11 42/17 42/18 45/10 45/11 45/15
45/16 45/21 46/5 46/14 49/7 49/12
53/14 54/20 54/21 57/11 57/14 57/23
57/25 58/20 61/19 65/2 68/22 70/17
71/24 74/8 74/20 75/5 75/11 75/19 82/4
87/13 89/8 89/25 94/15 95/7 95/10
95/25 96/10 97/22 98/10 100/2 100/4
101/6 101/18 102/13 102/24 105/13
107/10 110/15 111/3 111/6 113/17
115/2 115/6 115/7 115/12 116/19
116/24 117/17
I've [8]  4/15 5/2 7/17 14/9 41/20 41/21
49/1 59/4
idea [4]  57/8 73/12 113/2 115/2
identical [4]  26/8 34/11 38/22 51/21
identified [5]  47/4 53/9 59/11 59/18
114/1
identify [4]  40/11 51/11 58/14 58/25
ii [3]  67/13 85/7 85/10
iii [1]  72/4
impact [1]  62/23
impeachment [1]  72/19
Implicit [1]  72/11
important [5]  39/10 83/19 84/11 97/10
98/3
impose [1]  83/6
improbable [1]  57/7
improper [2]  22/8 45/7
inadequate [2]  49/16 49/17
inadvertent [1]  49/7
inadvertently [1]  111/20
inappropriate [1]  51/3
INC [4]  1/6 2/4 84/21 118/9
inclined [5]  12/6 12/19 32/18 41/23
116/19
include [4]  59/13 59/14 64/25 84/2
included [3]  15/7 15/10 101/17
includes [1]  62/2
including [8]  53/25 67/16 67/25 72/9
91/16 98/19 100/12 101/25
inconsistent [1]  11/10
incorporate [1]  78/7
incredibly [2]  91/15 103/23
indeed [1]  104/22
indemnity [1]  57/21
independent [1]  91/6
indicated [2]  53/4 113/2
indicating [1]  41/18
indication [1]  108/1
individual [4]  19/21 27/5 30/21 51/9
individually [2]  26/20 33/10
individuals [5]  18/11 19/8 24/1 50/14
50/15
inefficient [1]  9/10
informally [1]  93/22
information [52]  17/8 18/24 19/3 19/10
19/19 20/11 32/4 32/5 34/24 39/20 42/4
42/13 43/23 53/19 56/9 62/20 64/6
64/15 64/24 65/1 65/4 65/12 65/20
65/22 66/20 71/13 72/1 72/16 73/7
73/16 84/17 84/18 84/21 85/21 88/6
90/16 90/17 92/20 92/24 95/24 96/11
96/13 98/21 99/1 101/11 103/19 103/21

initial [23]  48/2 48/2 48/7 49/19 50/4
51/7 51/14 52/17 53/2 53/25 58/9 59/3
61/1 61/22 64/9 64/10 65/24 67/3 69/15
69/17 73/2 75/10
injuries [3]  72/10 72/12 72/12
injury [1]  24/2
insinuate [1]  79/6
inspect [3]  76/25 78/25 87/4
inspected [1]  88/3
inspection [11]  68/8 72/6 75/21 76/1
78/17 82/5 82/15 82/22 88/14 93/21
94/8
inspections [2]  84/12 93/15
install [1]  105/23
instance [3]  25/2 37/24 49/3
instances [2]  80/13 91/16
instead [2]  36/8 92/4
insufficient [1]  59/16
insurance [2]  57/19 57/22
intellectual [2]  86/7 91/17
intention [1]  15/9
interactions [1]  5/8
interactive [1]  84/4
internally [1]  34/9
international [17]  14/2 14/13 14/24
29/13 29/21 32/12 50/19 50/22 51/2
55/15 62/5 62/7 67/8 68/18 68/19 117/7
117/17
internationally [3]  63/2 67/6 67/11
interrogatories [5]  38/24 39/4 39/23 51/6
114/14
interrupt [1]  49/4 105/14
intervention [1]  113/7
interview [1]  57/6
introduce [2]  2/5 2/11
investigated [1]  72/23
investigation [3]  50/21 77/6 77/15
invoices [1]  69/7
involve [1]  104/21
involved [4]  10/25 17/6 17/13 110/20
involves [1]  12/13
involving [2]  22/19 22/20
ironed [2]  7/21 8/4
irrelevant [4]  19/18 19/23 20/1 21/19
is [387]
isn't [1]  113/12
issue [32]  8/21 10/11 11/4 24/16 29/3
32/17 34/6 38/17 42/14 48/6 56/11 61/8
65/16 75/1 75/19 75/22 83/18 85/4
87/16 88/9 89/6 89/10 89/12 92/3 96/12
109/7 110/19 113/12 114/11 116/12
116/21 116/22
issued [6]  20/18 20/19 46/24 56/14
90/18 91/20
issues [12]  16/13 17/18 27/7 31/16 46/1
91/15 92/15 112/13 112/16 114/20
114/22 114/24
issuing [1]  31/22
it [248]
it's [87]  2/23 4/7 5/5 7/15 8/20 8/23
22/16 24/4 24/18 27/16 27/16 28/25
29/1 30/16 35/6 39/2 39/5 39/20 40/5
40/6 40/10 40/23 41/2 41/4 41/4 41/16
44/7 44/22 46/3 49/7 49/14 49/20 50/18
51/16 51/16 52/11 52/18 53/8 56/19
56/22 58/10 58/18 59/10 59/18 62/13
66/23 69/11 69/16 70/22 70/24 71/7
78/15 78/21 78/22 79/6 79/14 79/19
81/8 81/16 82/9 82/22 83/4 83/7 83/8

**I**

it's... [23]  83/12 88/9 89/12 89/13 89/25
90/6 91/14 94/11 95/16 97/10 98/3
100/3 101/18 102/14 102/24 105/1
109/23 109/24 109/24 109/24 110/10
111/15 111/19
itemized [1]  32/11
items [3]  3/19 47/12 76/3
iteration [3]  64/10 64/22 66/12
its [36]  16/18 17/4 26/4 31/9 33/23
34/14 45/19 57/24 60/1 63/4 66/9
67/25 68/5 72/2 72/17 72/18 72/22
72/25 82/18 85/21 86/14 86/21 91/13
91/17 92/14 92/23 93/7 93/13 93/16
102/5 102/10 102/13 102/25 107/8
108/20 112/5
itself [4]  30/7 71/15 83/10 110/11

**J**

Jackson [1]  44/18
James [1]  96/4
January [5]  54/6 55/1 55/2 70/14 115/18
Jazeera [1]  97/14
Jersey [1]  90/3
JOHN [6]  1/16 3/5 14/17 36/1 46/21
75/25
joint [4]  5/25 7/15 7/16 117/12
JONATHAN [4]  1/17 3/14 10/7 15/2
Joseph [1]  17/14
judge [18]  1/10 3/9 4/13 5/2 5/22 10/19
11/13 11/16 11/23 15/3 59/23 59/24
60/13 70/16 70/17 81/16 97/17 116/16
judgment [6]  10/16 10/21 11/14 11/17
97/9 114/3
jump [1]  49/1
June [4]  53/3 55/3 55/11 59/20
jurisdiction [6]  27/14 39/18 86/22 90/7
110/22 116/17
jurisdictions [7]  29/15 50/24 78/13 79/10
91/18 93/6 102/17
just [94]  4/7 6/19 8/16 9/16 12/8 12/19
13/11 14/2 16/1 16/6 16/15 23/15 24/7
24/15 26/2 26/21 26/23 27/10 28/8
28/24 29/3 31/20 31/22 32/14 32/17
32/24 33/1 33/10 34/11 34/15 37/1 37/4
37/11 38/14 42/2 42/18 43/8 43/24 45/8
45/12 46/3 48/17 50/15 52/3 52/21 53/6
54/21 57/25 58/20 59/9 59/17 60/1 60/3
60/10 60/24 66/1 66/16 68/23 70/24
71/2 71/17 74/4 75/2 75/3 75/11 78/14
78/21 81/20 82/2 82/19 83/19 89/10
89/13 93/9 94/15 95/4 95/9 96/1 96/14
97/5 98/11 98/18 99/14 99/15 102/12
105/17 106/3 106/9 112/12 113/9
113/19 115/17 115/24 117/8

**K**

keep [4]  45/25 49/8 78/18 112/8
keys [3]  59/8 89/1 108/6
kind [1]  22/4 52/22 55/24
kindly [1]  64/23
knew [4]  17/7 70/15 82/1 96/11
know [101]  4/19 4/23 5/10 6/12 7/18
8/18 11/4 11/24 13/15 18/19 18/21 19/2
19/13 20/6 21/5 23/9 29/1 29/8 31/1
31/11 32/9 32/20 33/13 35/10 38/17
39/9 39/17 39/23 40/1 40/15 42/4 42/14
43/14 44/8 44/20 45/23 46/2 46/3 46/20
50/12 50/19 50/21 52/2 53/8 54/3 54/17
55/7 55/25 56/7 56/8 56/12 56/13 57/9

**L**

L.A [69]  18/19 77/11 77/12 78/10 79/1
82/7 83/10 83/22 83/25 83/25 84/7
84/23 85/1 85/17 85/20 85/24 85/25
86/5 86/6 86/7 86/9 86/11 86/12 86/15
86/17 86/22 86/25 87/2 87/2 87/4 87/14
87/20 87/22 88/1 88/16 88/18 88/18
88/24 90/6 95/14 96/24 98/17 98/20
99/7 99/15 99/18 99/20 99/21 99/23
99/25 100/15 100/24 106/23 107/10
107/24 107/25 108/3 108/7 108/14
109/12 109/14 109/15 110/2 110/6
110/19 110/24 111/5 112/3 112/5
label [1]  39/7
laid [1]  33/16
language [1]  37/23
large [1]  30/22
largely [1]  8/13 12/12 53/10
largest [1]  90/7
last [12]  5/1 8/3 12/8 12/9 16/17 71/5
75/19 82/20 94/6 96/6 100/16 114/12
late [1]  59/18
later [3]  50/1 74/18 110/19
law [7]  14/23 19/17 63/8 88/24 95/19
112/20 117/5
lawsuit [4]  51/21 64/22 66/16 74/12
lawsuits [3]  18/4 23/22 69/22
lawyers [1]  57/18
lay [1]  59/17
lead [1]  27/3
learn [1]  90/9
learned [1]  65/20
least [11]  35/10 37/7 41/1 56/22 58/8
64/22 66/14 73/24 74/6 77/25 117/10
leave [3]  6/24 15/21 16/6
leaving [2]  42/7 42/8
left [2]  40/9 60/4
legal [3]  17/18 86/3 100/10
Lemon [1]  57/6
length [2]  8/15 10/11
lengthy [1]  57/6
less [1]  66/10
let [18]  2/11 3/24 6/11 6/12 6/18 21/5
41/7 42/22 44/11 44/20 45/15 46/20
57/23 61/18 64/8 66/1 95/18 96/14
let's [7]  26/7 38/6 49/7 49/18 58/1 67/17
105/7
LETKEWICZ [7]  1/13 2/19 3/20 60/19
60/20 60/21 70/11
letter [2]  51/17 59/10
letters [3]  14/1 28/5 117/8
licensed [1]  102/2
light [3]  47/23 57/20 57/21
like [30]  4/5 7/20 8/8 8/19 13/13 14/2
20/17 22/14 27/7 28/25 31/3 47/7 50/16
53/4 60/10 62/25 63/1 83/7 90/1 90/23
91/18 93/9 93/11 95/4 108/12 108/23
114/6 114/20 115/15 115/15

**likelihood** [1]  20/3
likes [1]  19/9
limit [7]  9/6 9/7 9/12 11/1 11/2 11/11
15/15
limitation [2]  12/15 12/16
limited [5]  9/3 33/21 55/15 57/21 102/1
Lindell [12]  22/19 22/20 23/11 50/16
63/10 82/17 82/23 82/25 87/17 87/19
96/5 109/5
line [3]  8/8 49/1 113/20
lines [1]  7/3
Lisa [4]  1/19 118/3 118/21 118/22
list [8]  4/10 6/10 6/11 32/13 47/9 58/21
71/25 114/2
listed [7]  64/3 67/16 69/17 80/2 114/13
114/19 115/5
listen [2]  10/14 45/12
listening [1]  45/13
listing [1]  80/6
literally [1]  77/5
litigation [5]  12/13 17/4 28/19 36/4 51/5
litigations [1]  17/3
little [10]  11/9 20/1 21/11 24/19 38/25
60/6 65/1 73/4 73/6 83/19
live [6]  6/14 71/12 112/23 113/16
114/15 114/24
loaded [1]  109/22
local [1]  100/14
located [1]  81/20
location [6]  58/15 59/1 67/13 67/14
72/15 73/5
locked [1]  86/13
long [5]  43/20 55/23 71/3 96/5 113/20
long-term [1]  55/23
longer [3]  21/11 54/25 86/8
look [15]  6/16 27/10 32/9 36/19 54/4
55/19 56/12 56/18 56/21 78/11 78/14
82/25 90/15 94/15 111/7
looked [6]  8/12 21/13 21/24 33/13 35/5
66/23
looking [10]  4/3 8/2 35/17 57/11 57/14
77/7 83/25 105/5 113/23 116/7
looks [2]  8/13 81/10
Los [1]  111/15
loss [1]  59/12
lost [3]  40/7 51/2 63/24
lot [5]  27/4 28/11 80/23 87/24 90/13
Louisiana [4]  55/19 55/21 55/23 55/23
love [1]  57/19
low [2]  20/2 112/18

**M**

ma'am [2]  24/20 25/13
machine [11]  75/21 76/4 77/7 77/10
77/18 82/14 85/9 93/20 105/22 118/5
118/14
machines [19]  55/22 76/24 77/23 77/23
77/24 78/6 80/15 85/2 85/6 85/8 85/13
87/18 88/15 88/17 99/12 101/1 107/18
108/9 109/22
mad [1]  50/2
made [23]  18/13 19/22 22/25 28/18
43/17 44/1 44/2 52/6 55/13 60/8 65/7
72/25 76/7 76/23 81/17 82/22 82/25
89/22 95/20 96/4 97/11 104/10 112/19
magistrate [3]  1/10 97/16 97/21
mail [1]  84/3
maintain [2]  83/3 96/22
major [1]  55/5
majority [2]  26/5 34/20

**57/17** 58/1 58/3 58/17 59/9 59/9 60/16
61/8 62/2 63/2 63/8 66/15 69/16 70/10
70/24 71/13 74/7 74/10 74/11 75/11
77/13 78/5 79/19 81/1 82/16 84/15
84/21 91/12 91/22 94/18 96/1 97/21
98/13 99/10 101/11 103/17 106/7 106/9
109/5 110/21 111/11 111/23 113/15
115/4 116/11 116/19 116/21 117/5
Knowing [1]  75/9
knows [1]  16/16
KOVACS [5]  1/12 2/9 2/12 6/18 23/11

# M

make [25]  4/7 6/20 8/16 20/14 20/18
23/7 25/12 30/17 36/7 36/15 38/1 41/1
41/8 41/12 43/15 45/1 48/17 56/16
57/23 63/4 68/7 72/6 85/12 111/23
114/21
makes [1]  82/4
making [12]  18/9 19/7 37/1 60/25 70/8
72/22 74/9 75/11 93/10 95/23 99/14
117/8
malice [6]  17/24 19/8 24/5 24/6 24/7
33/18
management [3]  48/11 51/25 52/5
manipulate [2]  81/9 104/25
manipulated [1]  79/11
manipulation [3]  76/17 79/5 79/15
manner [1]  39/4
manuals [1]  92/23
many [11]  31/15 35/3 35/21 36/12 57/18
77/21 77/21 91/16 116/11 116/21
116/22
marginally [1]  29/1
marked [4]  95/15 111/11 111/16 111/20
marking [6]  82/14 82/21 82/24 84/5 84/8
86/10
material [2]  68/9 72/7
materials [1]  72/9
matter [6]  2/4 26/15 57/24 58/4 63/8
78/21
may [18]  4/23 5/23 11/2 20/14 20/20
23/8 24/4 25/9 33/2 48/18 50/8 55/4
57/12 72/17 73/13 102/5 113/6 117/16
maybe [5]  48/23 51/18 54/23 106/9
113/8
McCOTTER [2]  1/16 3/8
me [47]  4/13 6/11 6/12 6/21 13/23 13/25
15/20 16/12 26/10 29/19 32/8 32/16
42/22 43/15 43/17 43/20 45/14 45/15
45/22 46/20 48/5 54/21 56/20 57/13
57/23 58/21 61/18 62/3 64/8 66/1 68/15
71/16 71/17 81/23 89/9 94/22 95/18
96/7 96/14 97/2 97/7 111/8 112/18
113/1 113/15 115/3 115/17
mean [27]  18/1 18/8 23/9 31/3 31/5
39/22 41/13 52/14 52/14 54/23 55/3
55/14 55/24 56/4 57/6 61/19 63/24
66/17 68/23 69/12 81/7 88/8 89/21
103/14 110/25 115/15 116/20
meaning [2]  37/25 74/13
meant [1]  59/8
measure [2]  65/5 66/23
mechanical [1]  1/24
media [4]  49/11 50/14 50/15 51/21
meet [23]  9/23 12/17 22/24 23/14 27/1
27/7 28/4 28/10 30/9 30/18 33/24 36/18
37/11 38/5 45/11 47/12 61/7 93/23 94/4
111/21 113/3 114/17 116/16
meeting [2]  93/11 114/7
mention [1]  71/18
mentioned [9]  23/12 30/18 59/5 83/18
85/2 87/15 92/9 100/24 108/4
merely [1]  52/12
merits [1]  8/9
messages [1]  97/14
met [4]  31/25 34/5 93/12 117/14
mic [2]  2/14 4/8
mid [3]  77/16 79/12 79/18
might [4]  19/22 29/12 111/20 116/8
Mike [3]  22/19 50/16 63/9
million [5]  31/14 52/9 52/22 56/24 58/18

mind [4]  43/6 44/13 45/25 115/23
minimum [1]  66/19
Minnesota [2]  82/19 87/16
MINOO [3]  1/15 3/3 21/2
minute [1]  31/3 83/24
minutes [2]  46/8 59/23
missed [1]  82/6
modest [1]  66/8
modifications [1]  109/8
modified [3]  13/14 90/25 109/2
modify [2]  13/4 109/3
Module [1]  81/10
moment [8]  16/1 94/25 98/18 105/9
106/3 113/9 115/13 115/24
Montgomery [2]  81/15 97/6
month [1]  6/4
months [5]  5/19 21/7 28/4 45/5 116/8
moot [4]  6/13 7/13 48/6 49/14
mooted [3]  6/11 7/5 48/6
more [34]  7/23 7/24 9/15 9/18 12/13
12/14 12/24 13/8 20/11 20/15 22/25
27/4 29/13 29/14 31/4 33/22 36/14
39/24 40/13 52/1 53/6 53/9 56/9 64/18
65/12 65/15 65/18 69/4 73/7 73/17
77/21 92/18 102/15 106/5
morning [1]  2/21
Moss [9]  17/5 18/5 18/13 19/5 19/12
19/20 24/12 24/16 24/23
most [5]  6/1 9/24 26/11 36/10 93/16
motion [69]  4/12 4/14 4/22 4/25 5/16
6/22 6/24 6/25 6/25 7/2 7/15 7/16 10/15
10/20 11/13 11/17 14/19 15/21 15/25
16/4 16/5 16/8 16/21 16/24 17/2 20/23
24/21 24/25 25/6 25/22 26/1 26/12
27/19 28/22 29/10 31/2 33/24 33/25
34/14 37/9 37/13 37/17 43/11 47/24
48/2 52/25 53/24 59/22 70/16 73/10
75/20 93/18 93/24 93/25 94/1 94/4 94/6
94/18 97/9 100/2 101/12 103/12 106/4
106/14 112/10 112/22 113/23 114/7
114/13
motions [17]  4/1 6/10 6/13 6/21 7/13
11/25 14/1 14/8 14/10 16/18 16/20
28/6 28/14 46/13 60/15 112/16
move [3]  25/9 27/6 116/19
moved [1]  88/1
moving [1]  8/10
MOXILA [1]  1/9
Mr [4]  3/20 3/24 70/10 112/25
Mr. [18]  7/8 10/4 12/7 12/19 12/25 13/7
15/1 20/9 44/25 48/4 60/19 61/5 64/2
75/24 95/7 103/2 106/11 114/2
Mr. Babcock [4]  7/8 48/4 61/5 64/2
Mr. Coomer [1]  20/9
Mr. Edwards [6]  44/25 75/24 95/7 103/2
106/11 114/2
Mr. Letkewicz [1]  60/19
Mr. Neerman [6]  10/4 12/7 12/19 12/25
13/7 15/1
Ms [7]  3/20 6/18 25/14 40/23 95/14
105/2 110/23
Ms. [15]  2/12 18/5 18/5 23/11 25/25
32/7 35/21 43/11 47/14 76/13 95/22
96/16 98/24 104/19 106/13
Ms. Freeman [1]  18/5
Ms. Kovacs [2]  2/12 23/11
Ms. Moss [1]  18/5
Ms. Powell [1]  76/13
Ms. Sullivan [10]  25/25 32/7 35/21
43/11 47/14 95/22 96/16 98/24 104/19

106/13
much [10]  8/8 8/11 10/13 38/12 38/12
40/6 40/13 45/17 49/12 71/7 75/14
106/5 117/21
multiple [1]  23/25
multiplier [1]  66/8
must [3]  65/4 72/6 74/13
my [23]  2/11 2/23 5/13 6/10 7/15 14/23
24/18 43/10 48/25 49/20 56/6 56/23
60/5 66/16 76/7 97/6 105/18 115/7
117/5 118/6 118/14 118/15 118/17
myself [1]  3/19

# N

nail [1]  36/3
name [1]  118/18
narrow [6]  19/23 22/10 34/2 36/14 77/9
78/16
narrowing [2]  42/12 105/15
narrowly [1]  35/14
nature [1]  72/10
necessarily [2]  30/8 111/24
necessary [10]  31/17 32/13 33/8 87/5
87/7 88/2 89/2 89/14 89/15 89/20
need [35]  2/14 8/5 9/4 10/13 10/17
10/23 11/3 11/6 12/24 13/3 13/8 14/12
14/19 14/20 24/15 31/11 32/4 32/6
35/17 39/17 42/13 43/2 43/23 44/8
44/10 45/22 45/23 61/14 79/8 79/17
89/8 91/24 106/5 109/13 117/9
needed [2]  11/20 12/3
needle [1]  52/23
needlessly [1]  5/6
needs [10]  4/8 13/2 14/11 31/19 32/16
40/16 43/16 46/11 74/1 105/15
NEERMAN [10]  1/17 3/14 10/4 10/7
12/7 12/19 12/25 13/7 15/1 15/3
negotiate [5]  28/10 45/3 45/4 45/8 83/2
negotiating [1]  45/5
negotiation [2]  21/7 94/9
neither [3]  44/8 71/17 86/4
NETWORKS [4]  1/6 2/4 15/8 118/9
Networks' [1]  10/12
never [6]  93/12 93/22 94/10 94/13
108/18 108/20
new [4]  6/1 55/4 90/3 96/10
news [1]  57/5
Newsmax [4]  51/20 51/22 55/8 55/16
next [12]  7/14 47/12 57/4 67/23 94/22
95/25 112/1 112/7 113/1 113/4 114/8
115/4
Nichols [10]  4/13 5/2 5/23 10/19 11/13
11/16 11/23 59/23 59/24 70/17
Nichols' [1]  60/13
nine [1]  53/2
ninth [1]  53/4
no [68]  1/3 7/22 7/23 7/24 9/15 9/17
11/21 12/2 14/3 14/3 16/2 16/7 16/9
24/24 29/7 32/5 34/3 34/25 35/1
36/5 37/5 38/10 48/19 53/5 54/13 54/16
54/22 57/24 64/20 65/8 65/9 66/5 68/14
68/15 68/23 68/24 70/5 71/22 73/3 73/7
78/19 84/8 85/15 85/20 86/7 87/13 89/3
91/4 94/6 94/9 94/17 94/20 96/9 99/2
101/4 104/13 107/4 107/7 107/13
107/14 107/21 108/22 109/7 110/25
111/1 111/2 112/19
no-win [1]  66/5
none [2]  65/10 103/25
nonresponsive [1]  21/20

**N**

nope [1] 38/8
normal [1] 36/4
Northern [1] 33/6
not [255]
note [2] 11/7 93/9
notereading [1] 1/24
notes [3] 6/16 6/18 118/14
nothing [9] 19/21 44/21 54/21 66/12
85/24 89/17 91/25 112/17 117/20
notice [5] 8/3 11/15 53/6 53/10 96/11
noticed [3] 4/21 11/15 94/1
notify [1] 44/22
now [34] 4/23 5/20 7/17 11/10 20/23
32/21 37/17 40/20 50/2 51/7 52/21 53/8
54/8 54/25 55/6 55/8 55/24 56/7 59/19
64/25 66/8 67/18 70/21 74/2 74/9 74/22
75/12 81/22 93/19 94/18 100/18 112/15
115/1 116/5
number [63] 2/3 7/19 8/14 8/23 9/3 9/11
9/12 10/11 10/24 10/25 11/11 12/20
13/3 15/6 15/20 16/5 17/15 20/8 26/1
29/17 30/5 33/21 41/13 41/15 41/24
42/15 45/9 47/24 50/14 50/22 52/15
56/16 62/23 64/18 64/20 69/4 82/17
84/2 91/15 98/12 98/13 98/14 98/21
100/3 100/11 101/14 101/21 101/23
103/4 103/13 103/14 103/20 104/8
105/1 105/12 106/18 111/4 112/8 112/9
112/21 113/25 114/4 118/9
numbers [5] 11/1 13/25 16/17 63/22
65/19
numerous [2] 27/14 28/6
NW [1] 1/21

**O**

OAN [89] 2/25 11/8 15/21 16/7 16/18
17/2 17/6 17/11 17/23 17/25 20/7 20/13
20/18 20/24 23/9 23/21 25/2 25/5 25/10
26/4 26/16 28/10 30/16 33/23 34/5 34/9
34/15 35/7 35/14 38/20 40/3 42/8 43/2
43/10 44/22 44/22 48/5 50/13 56/15
57/8 57/24 58/24 60/11 60/25 62/15
62/17 63/9 63/23 64/4 69/20 69/22
70/10 73/1 75/17 76/18 84/13 85/4
85/13 87/4 87/11 87/15 89/16 89/17
89/22 91/13 92/15 93/12 93/14 93/18
93/19 93/22 94/4 94/9 99/5 102/19
103/14 104/3 104/16 107/5 108/1
113/25 114/5 114/7 114/14 116/5
116/20 116/25 117/6 117/10
OAN's [17] 25/23 26/11 35/22 46/13
48/1 49/20 62/22 62/24 62/25 66/9 71/6
73/9 83/23 87/6 88/14 94/6 102/10
OANN [2] 8/25 9/8
OANN's [1] 10/20
objected [2] 36/12 37/23
objection [18] 15/22 16/7 16/9 36/7
36/13 36/17 36/22 37/1 37/1 37/5 41/1
41/3 42/6 43/1 43/4 44/4 49/23 106/25
objections [8] 26/23 26/25 42/3 44/19
44/21 45/7 50/1 82/4
obligated [1] 63/8
obligation [5] 56/9 57/21 63/11 63/13
110/10
obligations [1] 45/20
observe [1] 70/24
obtain [2] 29/9 29/16
obtained [1] 102/2
obviously [4] 5/19 62/23 87/24 116/25

occur [2] 9/4 80/25
occurred [1] 93/24
October [2] 21/12 52/25
off [3] 7/21 48/5 59/17
offered [2] 47/1 107/5
office [1] 55/21
official [4] 118/3 118/6 118/13 118/22
oh [4] 35/20 46/14 52/12 93/19
okay [96] 2/20 3/10 3/13 3/21 4/2 4/10
6/6 6/8 7/8 7/10 7/14 7/25 8/12 9/14
10/3 12/18 13/3 13/12 13/25 14/7 15/1
15/5 15/20 16/11 16/12 20/12 20/23
22/3 23/6 23/20 24/8 24/20 25/19 25/22
26/8 26/22 32/23 35/2 35/20 35/20
36/14 37/18 41/5 45/10 46/19 47/14
47/19 47/21 47/23 48/1 50/3 50/6 58/8
60/17 60/23 63/6 64/8 66/22 67/12
68/19 69/10 70/3 70/6 71/19 71/24
75/16 79/17 81/22 83/13 88/4 89/5 91/8
94/15 94/21 95/6 96/10 98/8 98/18
98/19 99/22 100/1 100/11 101/6 101/23
103/2 103/11 104/14 105/11 111/21
112/12 112/14 113/5 113/9 114/12
114/18 115/24
OLIVIA [3] 1/12 2/16 83/16
omnibus [9] 26/15 26/18 27/6 38/23
39/4 47/18 50/7 51/4 61/22
once [4] 13/23 26/24 64/19 88/23
one [66] 4/18 5/10 5/17 7/5 7/22 9/18
11/3 11/4 11/23 12/8 12/16 16/1 17/6
17/9 17/9 18/15 20/15 23/22 25/9 26/13
27/12 27/19 28/25 31/8 33/1 34/18
35/11 35/21 39/7 40/24 44/14 48/4 49/3
51/10 54/12 54/13 54/14 55/19 55/22
57/16 58/5 62/18 66/10 67/5 67/6 69/12
69/23 71/1 71/5 72/3 74/4 75/2 78/14
81/1 81/15 90/15 92/9 96/15 100/19
101/18 103/15 106/12 108/11 113/11
115/13 115/23
ones [12] 22/18 22/19 23/11 27/25 28/1
28/1 34/10 36/11 50/24 50/25 50/25
51/2
only [41] 6/1 8/20 9/7 10/11 10/13 11/2
12/10 14/23 15/10 18/19 22/18 22/25
24/23 26/17 28/8 39/7 41/11 43/16 44/5
45/2 49/20 49/24 55/17 67/5 67/6 77/12
77/12 78/10 78/10 79/1 83/22 84/6 85/1
93/23 95/16 96/16 100/24 101/2 107/20
108/7 111/16
open [5] 112/12 113/2 114/11 115/19
115/23
operate [4] 67/10 78/10 85/3 89/2
operated [7] 78/1 85/2 85/5 85/15
100/24 102/15 103/24
operates [1] 67/5
operating [2] 18/19 77/21
opinion [1] 34/7
opponent [1] 72/3
opportunities [3] 62/5 62/7 63/24
opportunity [7] 5/2 12/1 75/22 83/17
94/17 94/25 95/1
oppose [1] 14/6
opposed [3] 6/23 48/1 75/20
opposition [7] 6/24 10/20 14/3 16/2 16/7
33/25 41/18
option [2] 38/10 92/20
options [1] 110/18
order [46] 5/13 6/25 7/1 7/17 8/13 13/5
13/14 13/22 13/24 14/11 17/19 24/21
25/17 26/20 28/23 29/4 31/22 32/17

34/14 40/17 40/17 40/17 40/18 41/4 47/25
53/5 53/24 60/2 69/6 74/20 78/22 83/2
83/12 87/17 90/12 95/18 95/20 95/24
109/14 110/4 110/5 110/16 111/3
111/25 115/21 116/8 116/24
ordered [2] 17/2 97/17
orders [2] 14/19 60/13
ostensibly [1] 82/1
other [74] 14/10 17/3 17/15 17/23 19/1
19/25 20/10 22/21 22/23 23/10 23/11
23/18 23/22 28/19 28/19 29/1 29/5 29/7
29/7 32/2 33/1 33/12 36/20 38/10 40/10
41/1 41/12 41/17 42/5 42/7 44/20 45/2
45/20 49/4 50/1 50/14 51/4 51/12 51/14
59/2 63/7 65/15 68/1 68/8 69/22 71/21
72/2 72/7 73/25 76/20 78/6 78/13 79/13
80/10 80/13 81/25 84/10 89/6 89/19
90/3 90/9 90/14 94/20 96/16 96/16
96/18 96/19 99/14 102/16 102/25 103/8
104/17 105/9 107/7
others [1] 27/14
otherwise [5] 18/6 20/2 20/4 102/2
117/11
ought [2] 55/13 56/12
our [62] 3/18 6/23 7/2 8/8 9/10 9/10
9/12 10/15 11/13 11/17 12/17 19/8
21/11 23/5 23/17 26/25 34/7 34/20
37/21 37/21 39/2 41/18 44/23 47/5 49/8
49/23 50/21 51/10 54/1 54/2 54/3 54/4
54/5 55/13 61/1 62/6 62/19 65/20 68/12
69/2 69/3 69/21 69/23 69/25 71/2 71/7
78/5 78/25 79/14 79/23 81/9 82/5 82/24
84/24 85/25 87/17 96/21 97/9 103/22
109/9 113/1 114/3
ours [1] 54/11
ourselves [1] 54/19
out [44] 3/24 5/23 6/2 7/21 8/4 9/23 9/25
19/18 21/4 22/4 27/25 31/21 33/16
35/18 40/20 41/14 42/3 43/21 45/14
45/24 46/6 46/10 50/17 51/8 52/12
53/18 54/1 57/19 58/6 58/23 63/1 63/4
63/11 69/5 76/5 78/22 81/15 94/3 94/10
97/3 101/3 105/18 109/9 117/18
outcome [1] 92/12
outrageous [2] 89/24 90/1
outside [4] 85/16 85/19 85/24 100/15
outstanding [2] 10/11 117/13
outweighed [1] 32/3
over [27] 8/14 10/17 11/24 11/25 26/5
28/4 37/11 38/7 40/25 41/14 41/15
41/16 46/23 55/19 59/21 61/20 86/6
87/1 88/20 90/5 91/17 93/6 94/12 107/7
109/10 112/6 117/2
overall [1] 80/16
overbroad [9] 32/15 36/13 36/25 43/1
43/2 91/15 101/19 102/14 104/9
overkill [2] 38/25 40/4
overlap [2] 22/19 43/13
overlapping [3] 17/17 17/18 22/17
overly [2] 36/17 36/21
overseas [1] 71/12
overturn [2] 18/17 18/23
overview [1] 26/3
own [16] 10/15 18/7 24/12 37/21 42/15
50/21 65/23 74/8 75/7 77/14 82/6 82/22
86/14 107/8 110/16 115/8
owned [6] 57/9 78/2 78/9 86/15 101/24
102/6
ownership [4] 77/17 85/7 88/10 88/13
owns [6] 86/8 86/23 86/23 88/8 110/13

P

p.m [1] 1/7
pad [1] 81/11
padding [1] 80/23
page [4] 6/20 67/18 67/23 94/7
pages [6] 29/1 41/16 52/9 52/22 58/18
118/12
painful [1] 43/18
paper [2] 26/3 28/25
papers [12] 20/20 20/25 26/9 29/19
29/22 31/9 41/18 44/1 51/23 57/3 57/17
61/6
paragraph [10] 66/4 76/17 76/21 80/6
80/9 104/15 105/5 105/18 105/25 106/1
paragraphs [4] 41/15 76/10 80/1 80/12
parameter [1] 106/22
parameters [5] 99/21 106/12 106/12
108/2 108/5
parent [1] 67/10
parity [1] 25/5
parsing [1] 31/21
part [11] 18/22 42/24 55/5 67/2 69/22
69/22 86/21 100/13 101/16 106/14
112/10
participate [2] 110/14 112/6
participated [1] 63/20
participation [1] 117/6
particular [18] 9/22 11/4 12/24 16/19
17/16 19/10 20/25 25/3 25/6 29/7 39/16
46/6 46/6 52/16 72/19 105/1 112/2
115/8
particularized [1] 32/4
particularly [5] 12/3 17/24 65/15 89/17
89/24
parties [24] 2/5 5/24 6/20 8/19 9/3 10/9
10/23 12/14 15/10 16/13 27/17 28/4
30/9 44/17 44/18 46/25 58/2 61/2 62/1
93/10 94/14 95/11 103/1 115/15
partnered [1] 102/16
parts [1] 107/8
party [29] 4/19 6/14 9/21 11/21 12/2
15/7 15/10 33/8 33/20 43/14 44/20 51/3
60/6 72/1 72/5 72/17 72/21 72/25 74/3
74/13 74/16 75/10 82/8 92/7 101/16
101/25 110/10 110/10 110/12
party's [1] 72/24
passed [2] 5/20 54/7
past [4] 14/10 33/4 52/3 77/23
paste [1] 26/23
path [3] 40/20 44/11 46/23
Pause [2] 113/10 116/1
pending [4] 4/25 82/18 94/18 94/23
people [8] 3/25 50/15 27/11 40/15
53/2 53/9 63/3
84/1 84/11 84/20
per [4] 12/23 13/5 27/11 40/15
perfunctory [1] 53/22
perhaps [3] 19/22 25/9 40/9
peril [2] 74/8 75/7
period [3] 9/4 11/24 117/1
permission [2] 87/2 109/13
permitted [1] 60/16
person [1] 53/4
persuasive [2] 24/9 71/16
phased [1] 101/3
Philippines [3] 79/13 91/19 103/18
Philippines' [1] 104/8
phone [1] 94/19
phrase [1] 46/11
pick [1] 94/19
piddly [1] 46/1

piece [5] 28/25 84/6 84/10 84/19 91/25
pieces [2] 85/5 107/12
place [2] 59/25 90/12
placed [3] 46/2 82/9 108/6
plaintiff [16] 2/16 2/19 5/4 8/2 27/5
27/11 39/10 39/10 40/9 40/12 40/15
67/6 73/8 73/12 75/4 77/3
plaintiffs [28] 1/4 1/12 2/10 5/18 6/1
13/1 14/3 15/7 26/16 27/2 38/21 38/22
39/5 39/8 50/11 50/13 51/9 58/11 59/5
61/22 66/24 74/3 74/13 74/20 80/17
83/17 103/15 117/7
plaintiffs' [4] 2/6 9/14 10/12 15/4
plan [5] 41/9 42/12 46/9 46/12 68/5
please [2] 2/5 13/19
plenty [1] 84/21
plus [5] 40/2 49/12 85/7 85/10 106/9
pocket [1] 69/5
podium [1] 4/4
point [18] 12/8 19/17 20/15 33/1 34/13
41/12 41/14 43/7 45/4 49/22 62/3 62/19
62/19 89/3 93/10 95/22 99/14 103/15
pointed [1] 105/18
points [1] 96/15
policing [1] 45/11
policy [1] 57/20
poll [2] 84/3 84/20
portion [1] 63/25
position [24] 10/13 10/16 10/17 15/4
23/21 28/13 32/22 32/23 34/17 34/20
35/13 37/13 38/20 38/23 39/21 40/3
40/25 49/20 85/20 88/1 88/5 89/14
100/18 102/7
positions [2] 8/20 45/16
possession [30] 24/24 67/20 67/24 68/4
72/17 82/12 85/21 85/25 86/2 86/12
88/9 92/25 93/4 93/13 93/16 95/12 96/3
96/19 96/23 100/6 101/14 101/23 102/4
102/13 102/25 103/20 103/22 105/3
107/21 108/13
possibility [1] 94/10
possible [3] 8/10 76/16 117/3
Possibly [1] 31/4
posted [1] 57/5
posture [1] 57/22
potential [2] 19/25 67/22
potentially [4] 29/16 30/20 112/4 112/5
Powell [9] 18/25 19/6 50/16 76/13 80/5
80/7 104/22 104/23 105/7
power [1] 70/23
practical [2] 29/25 39/11
practice [1] 27/15
precision [3] 56/2 56/5 65/2
preclude [1] 96/2
predate [1] 104/20
prefix [1] 39/7
prepared [1] 71/24
presented [1] 108/14
preserve [1] 16/18
President [1] 63/9
presidential [4] 98/20 99/7 100/16
106/24
press [4] 56/14 56/18 56/22 57/2
pretty [4] 4/15 8/23 69/8 116/18
previous [1] 34/19
previously [6] 47/1 50/7 79/2 101/24
102/6 102/23
primarily [3] 3/19 3/23 82/6
primary [1] 49/23

prior [11] 11/15 36/6 44/17 52/5 52/25
76/19 78/19 78/20 80/1 101/3 104/18
private [1] 22/9
privileged [2] 68/9 72/8
probably [1] 39/24
probative [1] 81/12
problem [10] 36/11 39/1 39/6 41/10
42/10 48/19 64/21 92/2 97/4 110/1
problematic [1] 38/7
procedures [1] 60/14
proceeded [1] 4/16
proceedings [6] 1/24 77/20 117/22
118/6 118/13 118/15
process [6] 43/21 47/23 82/10 87/22
99/19 100/14
produce [13] 17/2 21/14 21/25 24/15
25/13 36/23 40/7 87/18 97/19 97/22
97/25 98/4 110/16
produced [39] 1/24 17/3 17/23 20/2 20/7
21/10 21/13 21/15 21/16 21/18 21/20
21/21 21/23 21/24 22/12 22/20 22/20
24/3 24/13 24/23 27/24 28/13 30/4
30/16 30/22 31/13 39/6 47/9 48/10
52/21 53/17 58/18 65/14 71/10 92/22
92/22 95/15 97/17 111/16
producing [5] 21/12 37/2 40/12 53/12
53/16
production [14] 19/4 20/6 25/10 25/24
26/4 27/3 39/3 39/4 50/6 50/9 51/7 52/8
52/8 114/10
productions [5] 19/12 20/10 22/23 23/10
24/11 24/22 26/14 52/6 52/9
professional [1] 5/8
profits [2] 51/2 59/12
progress [1] 70/8
prohibit [1] 27/15
prohibits [1] 112/17
project [2] 86/21 91/14
projections [1] 68/5
projects [4] 67/22 92/18 93/8 102/18
pronounce [1] 70/11
proof [1] 30/16
proper [2] 26/19 94/11
properly [1] 117/9
property [4] 86/7 91/17 99/18 99/20
proportional [4] 31/19 32/16 40/16 43/15
proportionality [1] 41/13
proposal [11] 9/7 9/11 9/12 9/14 37/6
44/2 44/5 55/4 55/20 55/23 106/13
proposals [1] 67/22
propose [3] 54/12 54/13 54/14
proposed [9] 5/17 5/19 5/20 8/12 8/24
9/1 54/9 54/24 54/25
proposing [1] 15/14
prosecute [1] 29/6
prospects [1] 66/6
protect [1] 108/7
protected [2] 68/9 72/8
protective [14] 6/25 25/23 27/10 28/23
29/4 31/22 32/17 34/14 40/17 41/4
47/25 78/22 83/2 110/5
protocol [11] 7/17 8/13 9/20 10/10 10/22
12/12 12/13 13/5 13/22 15/4 117/12
prove [4] 24/5 77/4 97/23 98/6
provide [11] 30/16 52/23 55/21 73/6
73/22 74/21 74/23 106/5 107/11 108/4
109/14
provided [8] 33/17 34/6 61/25 82/7
82/13 83/22 85/16 99/16
provides [1] 82/9

**P**

providing [3] 62/21 75/10 99/17
provision [3] 81/11 83/11 95/17
provisional [2] 74/7 74/16
provisions [1] 79/4
proximate [1] 63/19
public [5] 49/8 49/13 111/13 111/18 111/19
publication [1] 66/9
publications [1] 76/7
publicly [5] 84/16 84/18 90/17 91/5 92/20
published [1] 80/24
publisher [1] 97/12
punitive [1] 68/21
purport [1] 74/11
purported [1] 52/4
purportedly [1] 50/12
purports [1] 40/7
purpose [3] 17/10 76/15 81/2
purposes [1] 79/19
pursuant [2] 36/25 86/18
put [12] 31/9 37/13 41/23 64/18 64/23 65/3 70/1 88/24 108/18 108/21 109/2 111/24

**Q**

Qaeda [1] 97/14
quash [3] 36/8 38/9 38/11
quashed [1] 33/20
queries [1] 21/9
question [8] 25/9 29/24 35/21 64/8 89/13 91/2 115/23 117/5
Questioning [1] 80/15
questions [7] 5/12 16/14 16/24 26/1 48/18 71/21 75/1
quick [1] 54/9 110/20 117/5
quickly [1] 116/21
quite [5] 19/15 20/4 73/14 75/11 76/5
quoted [2] 80/5 105/8

**R**

races [1] 7/22
raise [4] 16/19 29/19 63/10 115/3
raised [4] 43/10 61/9 73/1 74/3
rather [1] 90/5
RDR [1] 1/19
re [3] 45/3 45/4 45/8
re-negotiate [3] 45/3 45/4 45/8
reach [5] 62/22 63/1 63/2 71/6 71/7
reached [2] 94/3 94/10
reaching [1] 32/15
read [2] 10/14 95/18
reading [4] 26/9 29/20 56/6 56/23
real [1] 31/21
realize [2] 8/14 115/22
really [14] 4/7 4/8 7/16 28/24 29/8 31/23 32/19 32/25 55/5 58/1 93/17 102/24 103/5 114/21
reason [8] 12/24 19/2 53/15 74/10 76/4 77/25 82/16 96/25
reasonable [1] 25/19
reasons [1] 91/12
received [2] 62/21 113/24
recent [2] 6/1 26/12
recently [1] 81/21
Recess [1] 46/18
recognize [1] 31/10
recognized [1] 34/22
recognizes [1] 31/16

record [11] 2/6 5/16 10/7 15/3 21/3 24/15 49/8 49/15 60/1 65/2 101/3
recorded [1] 1/24
records [2] 67/25 68/2
recreate [2] 107/10 107/22
recreated [1] 108/1
recreating [1] 107/3
recusal [2] 4/22 4/25
reduce [1] 22/10
redundant [3] 33/14 33/16 33/17
refer [6] 16/20 41/12 70/18 76/13 82/2 105/17
reference [6] 16/20 44/1 67/3 68/1 102/21 105/19
referenced [2] 5/17 62/5
referencing [1] 102/20
referred [5] 4/13 95/14 97/8 114/2 114/3
refers [1] 80/13
refused [1] 97/19
regard [4] 28/12 45/3 76/8 86/4
regarding [5] 7/6 19/5 19/7 23/21 63/20
regards [1] 30/10
regime [1] 105/23
reject [1] 32/22
rejected [2] 33/6 44/5
relate [1] 63/23
related [12] 16/22 17/20 22/22 29/13 35/11 39/14 59/12 59/15 90/10 91/20 92/23 103/8
relating [7] 33/18 65/10 65/22 67/21 67/25 68/4 72/20
Relationship [2] 48/11 51/25
relative [1] 58/2
relatively [1] 17/22
relayed [1] 73/18
release [4] 56/14 56/19 56/22 57/2
relevance [1] 22/1
relevant [15] 17/24 20/4 21/17 24/3 29/2 80/2 83/5 88/2 89/13 93/17 102/8 102/14 102/24 104/9 105/2
rely [4] 48/25 54/3 54/3 92/4
relying [3] 18/8 18/25 64/17
remain [1] 114/11
remaining [1] 21/19
remains [1] 112/24
remedies [1] 75/10
remedy [4] 31/20 31/22 31/24 75/9
remember [3] 11/14 12/9 29/20
reminded [1] 97/7
removing [1] 45/1
renew [1] 94/23
reopened [1] 53/9
repeating [1] 17/11
repetitive [1] 43/24
replete [1] 54/4
reply [2] 44/16 44/23
report [5] 54/8 90/23 114/23 115/17 117/13
reported [1] 118/5
Reporter [4] 1/19 118/1 118/3 118/22
reports [4] 91/5 91/19 91/23 105/21
repositories [1] 96/21
represent [1] 109/7
representation [4] 41/2 45/1 100/5 101/8
representative [1] 110/19
represented [3] 49/11 82/20 110/24
representing [1] 101/7
reproduction [1] 17/19
reputational [1] 24/2
request [50] 5/9 5/25 6/23 8/16 12/21

record [11] 21/17 22/5 22/25 23/7 23/25 30/2 31/21 31/25 34/2 36/16 96/22 99/6 43/1 43/19 43/19 50/8 51/7 72/2 76/1 76/2 78/17 82/5 84/12 88/14 93/21 95/8 95/8 98/11 98/11 98/14 98/14 99/6 100/3 100/23 101/5 101/13 101/17 102/3 102/8 102/8 102/3 106/5 106/6 106/15 106/25
requested [2] 6/4 98/22
requests [85] 23/7 23/17 23/18 25/6 25/24 26/4 26/8 26/14 27/3 27/21 27/23 29/4 29/6 29/8 30/1 30/3 30/6 31/23 32/10 32/10 32/13 33/9 34/10 34/18 34/19 34/21 35/3 35/4 35/6 35/8 35/15 35/22 35/22 36/6 36/6 36/10 36/12 36/14 36/19 36/21 37/11 37/15 38/1 38/19 38/21 38/22 38/25 39/3 39/3 40/1 40/2 40/15 40/21 40/25 41/13 41/19 41/22 41/24 42/2 42/4 42/9 42/12 42/16 42/24 42/25 43/9 43/10 43/12 43/24 44/9 46/11 51/6 55/20 77/10 85/18 85/22 93/1 93/14 94/8 95/10 98/10 112/11 116/11 116/20 116/22
require [4] 4/4 5/23 29/12 65/2
required [7] 21/14 52/15 65/3 79/24 84/13 88/20 95/19
requires [10] 52/19 56/2 56/7 57/20 65/11 67/13 71/25 72/4 72/14 92/3
research [1] 80/24
reserve [1] 73/14
resolve [4] 94/5 112/16 114/22 115/1
resolved [3] 5/7 115/8 116/4
resolving [1] 115/2
respect [34] 17/10 18/11 25/1 31/12 38/24 38/24 43/9 48/9 50/8 50/10 58/1 62/6 68/13 68/18 68/20 69/5 73/11 74/2 80/5 85/18 98/12 100/3 100/11 101/13 103/13 103/14 105/11 106/4 111/4 112/9 112/10 112/14 112/21 115/16
respective [2] 8/20 45/13
respond [18] 20/24 28/1 28/2 28/20 29/6 38/11 38/21 39/21 40/3 40/23 41/20 41/22 46/11 60/24 95/9 116/5 116/9 116/20
responded [1] 39/2
responding [2] 36/4 38/18
response [23] 10/15 14/3 21/1 27/6 28/14 30/4 33/23 37/21 40/6 42/3 47/5 51/5 51/6 51/7 51/19 65/18 70/7 75/23 78/19 82/5 84/25 87/6 114/3
responses [4] 26/23 50/7 54/5 114/13
responsive [16] 21/17 22/5 22/12 23/1 23/3 23/3 23/8 23/15 23/16 85/22 93/1 100/23 101/5 102/3 103/20 105/3
responsiveness [2] 21/10 22/1
rest [1] 65/13
rested [1] 60/11
restricting [1] 11/22
restrictive [1] 10/13
result [3] 11/5 63/14 63/19
resulted [1] 28/7
results [2] 76/15 79/11
retained [1] 93/7
reveal [1] 48/23
review [3] 82/24 89/8 89/15
reviewed [6] 6/18 21/9 21/15 21/25 22/11 87/23
reviewing [1] 89/18
reviews [1] 69/7
revised [1] 8/18
RFP [5] 20/19 23/13 30/12 33/10 35/18

**R**

RFP's [34]  7/7 20/18 26/5 27/8 27/13
27/16 28/3 28/5 28/8 28/9 28/12 28/16
29/11 30/21 31/12 31/18 33/7 33/17
33/21 34/7 35/11 35/12 35/16 37/19
38/7 45/4 45/9 46/24 47/1 47/7 47/10
47/17 114/14 116/5
rid [3]  34/9 34/10 40/21
rig [5]  91/3 102/11 102/12 102/21 104/5
rigged [6]  76/19 80/10 91/22 92/13
104/17 105/9
right [58]  5/12 6/8 8/5 8/21 8/22 13/4
14/5 15/23 16/3 18/18 20/9 24/17 24/20
29/20 31/4 31/24 37/9 42/20 42/21
47/14 48/5 52/18 55/7 55/12 57/25
58/20 58/23 67/6 68/13 70/1 71/19
74/9 74/22 75/4 75/5 75/12 78/1 78/4
82/2 83/13 95/6 95/13 96/14 98/8 98/9
99/23 100/7 103/6 103/11 106/2 110/7
110/14 110/23 113/11 114/18 114/19
115/14 116/13
rights [8]  16/19 60/7 60/12 73/14 86/6
86/23 91/17 112/5
Risen [2]  81/15 97/6
RMR [1]  1/19
rogatory [2]  14/1 117/8
role [3]  84/8 84/22 103/17
rolls [1]  67/9
room [1]  94/9
Round [12]  3/19 16/13 112/13 112/14
113/12 114/13 114/20 114/22 114/24
114/25 115/1 115/16
Rounds [1]  115/19
route [2]  87/15 92/17
Ruby [1]  17/4
Rudy [2]  19/1 50/16
rule [28]  7/24 10/20 11/23 21/14 21/15
45/25 52/19 56/2 56/6 64/13 65/6 65/11
65/12 65/15 66/17 67/13 71/24 71/25
72/3 72/7 72/11 72/13 72/14 72/20
72/21 73/17 76/3 98/11
rules [7]  5/10 9/6 52/23 61/15 61/21
87/9 112/20
ruling [6]  4/25 5/13 6/11 8/7 34/15 43/15
rulings [2]  7/23 60/8
run [1]  18/24
running [1]  18/18

**S**

safer [1]  92/10
said [37]  7/21 12/1 19/25 33/19 33/23
36/14 36/19 37/4 37/5 37/7 38/8 40/16
42/20 44/1 44/25 45/15 46/1 46/2 51/23
53/2 53/5 53/7 53/17 56/15 57/14 83/7
94/7 97/12 97/18 97/21 104/23 105/2
110/25 115/16 118/9 118/13 118/15
sake [1]  45/12
sale [1]  77/20
same [19]  6/20 7/2 12/14 17/12 20/18
24/2 26/22 34/24 86/10 101/21 104/1
104/4 106/22 106/22 107/1 108/2
109/15 109/23 109/24
sample [1]  84/4
sanctions [2]  5/9 45/17
sat [1]  97/7
saw [1]  93/23
say [43]  4/15 8/7 19/19 21/21 23/3 32/9
35/8 36/24 40/9 41/23 48/9 51/19 52/12
52/21 54/1 56/12 56/21 58/17 59/16
60/11 62/18 62/18 63/13 63/17 63/18

64/2 66/16 68/6 74/5 73/16 74/4 77/11
79/8 79/18 79/16 81/7 81/8 89/11 91/23
97/15 97/25 109/9 113/6
saying [23]  11/10 19/17 32/19 36/13
42/18 54/20 54/21 58/1 58/20 65/2
69/21 75/5 76/13 78/19 79/22 80/7 88/5
89/25 93/19 99/2 102/20 104/4 109/17
says [18]  30/12 33/13 33/15 61/24
67/20 67/23 68/3 70/11 78/10 81/10
83/11 92/9 95/18 96/3 99/15 110/3
111/14 113/19
scanning [1]  106/20
scenario [1]  78/11
schedule [13]  5/17 5/19 5/20 5/22 5/24
6/1 6/3 6/9 54/10 54/10 60/7 114/6
115/19
schedules [2]  5/15 5/16
scheduling [2]  7/1 59/24
scrupulous [1]  60/12
scrutinizing [1]  5/4
seal [7]  15/21 16/6 48/15 48/15 48/20
49/6 62/12
search [4]  21/8 21/9 45/3 45/5
second [12]  4/11 7/7 25/23 25/24 26/4
27/12 28/16 30/1 31/23 32/11 33/21
37/24 43/8 46/24 51/11 53/5 67/19
116/4
Secretary [2]  85/11 90/18
section [1]  49/21
security [3]  87/25 90/8 109/16
see [20]  7/24 18/1 27/19 30/4 30/12
51/13 66/11 66/13 66/14 67/17 69/14
78/21 79/17 79/24 83/4 98/22 101/21
105/7 114/8 115/15
seek [5]  17/9 19/14 22/21 110/7 110/21
seeking [12]  14/24 19/14 23/23 25/3
25/5 30/25 31/2 31/3 34/23 41/14 41/25
100/3
seeks [1]  22/5
seem [4]  31/24 33/14 55/12 94/12
seems [2]  11/9 38/25
seen [3]  17/19 20/20 62/2
send [3]  14/13 47/7 47/9
sensitive [4]  21/4 89/12 90/6 92/19
sent [6]  28/5 53/19 59/21 77/9 78/19
separate [2]  24/13 24/14 26/15 26/16
36/9 38/1 74/6
separately [2]  23/2 40/4
September [1]  82/19
Sequoia [17]  77/14 77/20 77/22 77/23
78/2 78/8 78/9 78/13 83/24 85/2 85/6
85/7 85/9 101/1 101/3 101/16 102/1
Sequoia's [1]  85/8
series [1]  77/19
seriously [1]  58/7
serve [4]  6/23 33/21 42/8 42/16
served [13]  7/2 30/4 31/1 33/9 33/22
40/2 42/2 45/9 73/2 76/1 78/17 93/14
116/5
service [1]  48/7
services [1]  99/17
set [41]  2/5 5/23 7/7 19/24 25/23 25/24
26/4 27/12 27/13 28/3 28/16 30/1 30/5
30/13 31/12 31/23 32/10 33/19 33/21
35/22 36/8 36/12 36/16 37/24 37/24
38/11 42/4 42/12 43/12 43/13 44/3 45/4
46/24 47/4 47/11 65/11 65/23 67/2
68/19 73/1 116/4
sets [4]  26/8 26/15 26/20 34/8
settings [2]  106/23 108/3

settlement [1]  20/8
seven [10]  9/17 9/19 9/21 9/24 13/8
93/1 93/14 94/18 95/10 98/9
several [7]  33/5 33/12 33/16 76/2 80/21
89/11 91/12
severe [1]  75/11
SGO [2]  50/18 67/9
shall [1]  99/17
share [1]  110/4
shared [2]  81/18 111/25
shave [1]  81/11
shaving [1]  80/23
she [1]  96/3
she's [1]  6/18
sheer [2]  33/7 33/11
shifting [3]  76/15 80/7 80/22
shockingly [1]  95/15
shoes [1]  4/21
short [8]  34/25 49/14 58/9 59/3 108/22
113/7 115/21 117/1
shorthand [2]  118/6 118/14
shortly [1]  10/8
should [41]  5/7 5/25 7/21 9/3 9/22 11/18
11/19 11/22 12/2 13/1 13/17 19/1 24/23
25/5 28/2 38/2 38/5 42/2 42/5 42/7
47/10 48/13 57/1 69/11 70/12 70/14
70/17 70/19 70/20 73/12 73/18 78/24
78/25 87/19 90/10 91/13 99/20 106/8
106/8 112/4 112/14
shouldn't [2]  32/22 38/3
show [7]  32/3 37/16 38/13 40/7 45/22
71/11 77/5
showed [1]  37/22
side [17]  3/16 3/18 4/24 5/6 8/15 12/23
13/5 15/14 42/5 42/7 43/20 45/12 45/18
45/20 49/7 65/15 81/25
sides [3]  11/19 45/17 75/23
Sidney [2]  18/25 50/16
signed [2]  14/19 14/20
significantly [1]  66/5
signs [1]  91/17
similar [5]  12/12 14/10 17/17 17/18
109/16
simple [1]  37/10
simply [5]  36/7 37/12 43/16 57/25 73/15
since [8]  5/20 33/25 89/9 91/14 94/4
101/17 107/16 116/7
single [4]  33/10 34/18 35/18 114/21
sir [8]  41/8 44/12 60/17 61/18 70/4
83/14 96/13 105/6
sit [2]  43/20 45/11
sitting [5]  4/19 7/23 9/18 60/6 60/7
situation [1]  66/5
situations [1]  90/5
six [4]  21/7 28/4 45/5 53/9
size [3]  10/24 57/24 58/2
SLI [14]  82/8 82/8 82/13 88/20 88/21
90/19 90/22 96/23 108/16 108/16
108/19 109/2 109/3 109/10
slight [1]  32/6
slightly [2]  35/7 54/24
sliver [1]  20/1
slivers [1]  19/18
small [1]  57/9
SMARTMATIC [203]
Smartmatic's [37]  6/22 6/25 7/7 9/4
10/14 16/21 17/2 21/8 23/22 25/22 26/3
29/10 32/21 34/17 44/16 46/22 48/6
53/15 59/14 66/6 66/7 66/10 67/19
81/19 84/22 89/14 89/16 90/19 91/3

S

Smartmatic's... [8] 92/25 93/4 100/6 100/18 102/4 103/16 103/19 116/4
smoke [1] 42/3
so [202]
socialist [1] 105/23
software [28] 76/9 76/14 76/16 76/24 76/25 78/8 78/16 80/7 80/14 80/18 84/9 85/8 85/10 85/12 85/16 91/1 92/11 97/12 97/15 102/11 102/20 102/22 102/23 103/25 104/1 104/4 104/6 104/23
sold [2] 82/6 102/1
sole [1] 99/18
solely [1] 72/19
Solution [1] 84/10
Solutions [2] 84/1 84/19
some [37] 4/2 5/23 13/8 16/14 16/14 16/23 18/1 19/19 25/14 34/10 36/6 36/15 36/20 39/16 40/10 42/23 42/23 45/16 50/1 50/6 52/10 52/12 52/20 56/11 56/17 57/8 59/10 64/3 65/5 69/12 69/17 73/12 74/13 84/2 93/7 114/9 115/2
somehow [1] 63/4
someone [4] 92/4 111/8 117/6 117/10
something [24] 12/3 13/1 14/11 28/21 31/3 38/2 48/13 49/9 53/3 54/24 63/15 70/15 73/18 73/24 74/17 81/23 83/7 93/22 94/7 97/25 101/7 107/9 108/4 110/16
sometimes [1] 28/22
somewhat [1] 116/17
soon [3] 8/10 116/18 117/3
sophisticated [1] 57/15
sophistication [1] 45/14
Soros [1] 105/22
sorry [11] 6/6 12/7 15/2 25/14 46/14 53/14 61/19 74/23 82/5 105/13 113/17
sort [4] 32/18 66/25 72/2 74/18
sorts [1] 46/1
sought [6] 22/22 25/2 28/24 36/8 87/11 87/14
sounds [1] 108/23
source [93] 19/10 75/21 76/3 77/10 78/21 79/1 79/8 80/19 81/10 85/19 86/8 86/17 86/20 86/22 87/4 87/8 87/18 87/21 87/23 88/2 88/7 88/15 88/17 88/19 88/22 88/25 89/8 89/12 89/15 89/18 90/4 90/4 90/6 90/9 90/10 90/11 90/16 90/20 90/21 90/24 91/3 91/6 91/13 91/17 91/20 91/24 92/15 92/25 93/3 93/7 96/20 96/20 97/17 97/18 97/19 97/22 97/24 98/1 98/15 98/19 99/6 99/8 99/11 99/12 100/4 100/5 100/8 100/12 100/21 100/22 100/25 101/4 101/14 101/23 102/6 102/9 102/12 102/17 102/25 103/23 104/7 105/4 106/22 108/14 108/16 108/17 108/19 108/21 108/24 108/24 109/12 109/18 109/19
sources [1] 92/21
south [1] 116/17
spank [1] 54/18
spanked [1] 54/21
spanning [1] 31/14
speak [5] 2/14 3/25 4/8 18/12 93/5
special [1] 68/21
specific [40] 14/11 14/12 16/14 16/23 18/4 19/11 19/13 19/20 22/16 22/25

23/13 24/6 28/18 28/21 28/24 29/7 31/21 34/8 36/15 37/1 37/16 42/9 49/9 52/17 61/12 65/18 65/19 66/20 68/14 69/4 70/1 84/22 88/14 99/8 99/9 100/18 102/18 105/19 108/5 108/21
specifically [15] 4/17 17/10 33/15 44/17 62/4 62/17 76/3 76/8 80/4 81/24 83/24 95/18 100/20 105/21
specificity [2] 69/14 73/22
specifics [2] 29/11 93/5
specified [2] 32/8 74/3
specify [1] 52/16
specifying [1] 29/5
specimens [1] 76/4
spells [1] 76/5
spend [1] 9/7
spent [5] 5/5 5/6 38/17 38/18 45/5
spoken [1] 5/2
spot [1] 60/4
spread [2] 17/7 18/22
spreadsheet [9] 51/15 51/15 51/20 55/7 55/9 55/15 59/7 63/21 63/23
stage [5] 20/11 52/17 56/2 73/12 74/5
stand [1] 4/4
standing [1] 41/2
start [1] 21/4
started [2] 21/12 57/1
starting [2] 2/6 61/1
starts [1] 49/5
state [3] 85/11 90/18 100/14
stated [1] 44/17
statement [7] 24/6 59/13 64/7 79/7 81/13 105/8 105/20
statements [22] 22/17 22/17 24/5 63/1 63/4 66/9 68/1 76/12 76/23 77/1 77/5 79/3 81/4 89/22 96/18 102/10 102/19 102/21 104/3 104/9 104/20 105/8
states [15] 1/1 1/10 1/20 18/15 48/10 59/13 72/21 77/21 77/25 78/6 85/13 96/17 96/17 104/16 118/4
status [5] 20/5 20/10 114/23 115/17 117/13
stay [6] 4/6 4/22 5/1 7/1 55/11 117/6
stays [1] 7/24
steal [2] 17/13 18/14
stenography [1] 1/24
stick [4] 57/3 58/1 58/20 117/10
sticking [1] 111/12
still [19] 6/14 7/20 49/15 59/24 69/10 73/7 82/12 86/22 99/20 103/23 104/6 109/11 109/13 109/15 112/22 113/16 114/14 114/24 115/18
stipulation [1] 47/2
Stokes [1] 33/5
stolen [1] 17/9
stood [1] 82/1
stored [2] 72/16 86/13
straight [4] 26/10 49/19 69/8 87/19
studied [1] 80/25
studies [1] 80/24
stuff [1] 93/16
subject [1] 99/22
submit [7] 8/18 13/14 13/23 14/14 26/25 106/13 115/17
submitted [1] 26/12
submitting [1] 10/10
subpoena [5] 87/6 87/12 99/23 99/24 110/8
subpoenaed [1] 110/6
subpoenaed [1] 118/17

subscribers [1] 71/11
subscription [3] 72/9 80/8 80/8
subsection [3] 72/9 80/8 80/8
subsections [1] 98/21
subsequent [1] 23/14
subset [1] 46/10
subsidiary [1] 50/22
substantial [4] 39/13 41/17 51/10 79/24
substantially [2] 77/6 81/4
substantiated [1] 69/6
substantively [1] 22/7
subsumed [5] 36/15 36/20 42/19 42/20 42/24
such [7] 31/15 35/15 61/8 63/4 64/16 95/19 108/5
sued [4] 23/25 50/14 56/15 97/16
suffer [1] 98/6
suffered [8] 66/24 72/10 72/12 72/12 73/8 73/13 74/4 74/17
sufficiency [1] 72/24
sufficient [1] 52/11
suggest [2] 11/1 87/15
suggested [1] 12/9
suggesting [2] 56/1 57/24
suggestion [1] 6/2
suit [1] 57/25
SULLIVAN [18] 1/12 2/16 3/20 25/25 32/7 35/21 40/23 43/11 47/14 83/16 95/14 95/22 96/16 98/24 104/19 105/2 106/13 110/23
summary [6] 10/15 10/20 11/13 11/17 97/9 114/3
superficial [1] 78/11
supplemental [3] 7/2 51/8 53/25
supplemented [2] 49/16 51/14
supplies [1] 55/21
support [7] 51/12 52/18 58/15 59/1 65/9 67/15 72/18
supporting [6] 65/4 67/19 73/5 73/21 74/25 78/3
supposed [1] 39/8
supposedly [1] 103/9
sure [24] 4/7 6/20 17/22 18/10 18/10 22/6 25/12 28/11 33/3 36/22 48/17 49/7 62/4 62/10 62/13 66/3 68/22 89/9 93/10 102/13 102/24 107/10 115/25 117/8
surprised [2] 8/2 8/3
surreply [1] 6/24
sustained [1] 24/4
swath [1] 29/4
sworn [1] 92/11
system [11] 83/25 84/1 84/4 84/11 107/5 107/8 107/14 107/16 107/17 107/18 108/6
systems [7] 77/15 78/3 98/19 100/12 104/22 105/22 106/19

T

T.V [1] 57/9
table [5] 45/18 57/11 57/15 57/19 97/6
tabulate [1] 107/6
tabulating [1] 106/21
tailored [5] 101/19 101/19 101/22 105/1 106/6
take [24] 8/5 10/16 10/17 28/12 40/19 41/9 42/11 46/8 46/13 46/15 53/1 53/5 53/7 69/1 84/13 93/19 93/20 94/25 96/12 101/10 110/18 111/6 111/7 115/5
taken [7] 32/9 34/1 45/17 51/5 57/22 87/16 118/14
takes [2] 16/12 102/7

taking [9]   11/25 23/21 38/20 39/20 40/3
40/24 45/19 58/6 75/19
talk [14]   40/20 44/8 44/10 48/19 49/9
50/6 61/20 68/6 94/4 94/17 94/19 96/18
106/12 114/16
talked [1]   68/20
talking [18]   3/23 3/25 27/4 28/7 42/23
48/14 52/7 57/7 62/11 67/18 70/17 75/3
92/18 93/5 93/11 104/6 112/16 113/18
tally [1]   84/4
tamper [1]   87/9
tangible [2]   72/16 76/2
tape [1]   118/15
targeted [4]   31/24 31/25 33/22 103/16
team [1]   57/15
teams [1]   45/14
tech [1]   97/11
technically [1]   16/18
technology [22]   76/8 76/12 78/7 78/12
78/16 80/14 80/18 83/22 84/6 84/10
85/3 85/14 85/19 86/4 87/25 89/2 91/25
92/19 92/23 93/6 101/2 104/2
tell [17]   11/21 37/7 37/12 39/24 43/11
44/4 48/5 50/19 51/17 51/23 51/25
70/23 71/2 80/19 80/20 85/12 115/17
telling [4]   29/19 42/7 71/1 97/2
tells [1]   96/21
temporal [1]   106/12
ten [5]   9/6 46/8 52/21 58/18 88/24
term [1]   55/23
terms [1]   21/8 27/4 37/25 45/3 45/6
49/25 55/10 71/10 83/11
terribly [2]   24/9 71/16
terrorist [1]   97/13
test [22]   79/7 79/22 79/25 84/14 84/15
84/24 89/16 90/9 92/5 92/9 97/18
101/11 106/19 106/20 106/20 106/21
106/21 107/2 107/6 107/9 107/12
107/22
tested [1]   90/21
testify [1]   92/14
testimony [3]   69/7 92/11 118/7
than [19]   9/15 9/18 13/8 28/19 28/19
29/5 29/13 29/14 38/10 51/13 51/14
52/1 58/17 58/17 58/19 66/10 90/5
92/19 102/15
thank [48]   6/19 7/11 7/12 8/6 8/10 12/18
13/12 13/20 13/21 14/22 15/18 15/19
17/1 20/12 20/14 20/17 20/22 21/2
24/20 25/8 25/20 25/21 35/20 35/25
41/11 44/11 46/16 46/17 47/21 48/16
60/17 60/18 70/6 71/19 71/20 71/23
75/13 75/17 83/13 83/15 95/6 98/8
106/16 115/22 117/16 117/18 117/20
117/21
that [777]
that's [100]   5/10 5/14 6/4 6/15 8/22
10/25 11/14 13/9 14/22 15/17 15/23
16/15 17/21 18/10 18/10 22/15 24/5
24/8 24/9 24/16 25/19 32/25 38/17
38/25 39/8 39/23 40/4 40/15 42/4 42/24
44/5 44/9 46/5 49/5 49/21 49/23 50/1
54/4 54/11 54/22 54/23 55/24 56/10
58/6 58/13 60/8 61/21 62/21 64/20 67/2
69/2 69/7 69/12 70/5 70/21 70/23 72/13
73/14 73/24 74/2 74/17 78/10 78/13
78/23 79/17 80/15 80/24 81/1 81/12
81/16 82/14 84/11 87/20 91/8 91/14
92/19 95/9 95/25 98/15 98/21 100/7

101/5 101/8 102/14 103/7 103/11
102/21 104/25 108/3 109/1 113/7 113/11
113/11 114/12 114/14 114/19 115/5
115/12 115/14 116/10 116/17
their [69]   4/20 6/1 8/16 8/20 10/15 10/19
11/19 15/8 19/4 19/5 21/17 22/7 24/12
26/13 35/3 37/9 37/17 42/3 43/25 49/15
51/3 51/12 51/18 51/18 53/2 53/19 54/4
54/10 54/25 55/6 55/14 56/14 57/7
57/17 59/22 60/7 61/6 70/12 70/13
70/13 70/15 70/18 71/8 71/8 76/11
76/12 76/24 77/6 77/7 78/15 78/16
78/21 80/7 80/14 80/14 80/16
80/17 81/8 82/21 83/3 87/6 87/8 87/23
97/8 99/21 103/21 105/3 108/13
them [61]   14/6 19/20 19/22 20/19 21/9
21/10 21/18 21/23 22/1 22/13 26/7
26/18 26/20 27/24 28/20 32/11 34/1
34/1 34/6 35/9 35/9 36/15 36/18 37/2
37/3 37/4 37/12 37/14 37/15 38/6 38/9
38/11 45/13 52/9 52/10 52/11 52/13
53/7 53/10 53/18 54/2 56/12 57/10 58/5
58/6 58/23 63/23 70/20 70/23 74/4
84/17 90/15 98/5 110/13 110/16 110/25
111/1 112/18 113/23 115/3 116/10
themselves [5]   2/11 11/22 77/16 92/6
108/9
then [52]   5/8 5/18 6/12 9/21 16/16 19/8
21/25 26/25 28/2 30/14 30/17 30/19
32/5 33/19 33/19 40/25 41/3 43/2 43/8
46/13 47/11 49/9 50/15 53/21 54/6
59/20 68/3 68/6 74/13 74/17 75/6 81/12
82/8 83/12 84/24 88/20 93/18 96/3 98/5
106/13 106/18 107/16 108/17 108/18
109/2 112/1 112/6 112/10 114/19
114/22 115/14 115/19
theoretically [1]   9/8
there [131]
there's [42]   12/24 15/22 16/7 20/25 36/9
37/25 41/17 42/23 43/12 49/9 50/6
64/20 65/8 68/15 68/23 68/24 74/10
74/18 78/12 80/6 80/16 80/23 82/10
83/4 84/16 84/24 84/21 85/4 87/24 89/7
89/23 90/17 91/1 96/4 98/21 107/14
108/23 109/4 112/17 113/12 113/20
115/4
these [55]   9/24 16/19 16/20 18/9 27/3
27/4 27/7 27/8 27/11 27/20 27/23 28/10
28/12 29/15 29/18 30/10 30/18 32/10
38/1 38/13 38/19 38/21 39/16 39/22
45/23 46/1 46/10 47/4 50/13 60/15 62/8
69/6 74/19 77/1 78/6 79/15 85/13 86/23
91/18 92/9 92/12 92/15 93/11 93/14
95/10 96/15 98/9 102/11 102/19 103/8
104/7 104/24 107/12 115/2 115/8
they [223]
they're [20]   6/14 22/12 37/20 41/25
42/17 42/19 42/22 43/15 49/17 52/14
55/6 55/6 55/8 58/6 70/9 71/13 79/21
79/22 105/20 108/2
they've [13]   38/12 38/12 48/10 53/9
55/20 57/6 58/17 70/12 70/25 71/1
82/21 82/25 111/1
thing [12]   4/19 12/15 27/19 44/5 48/4
49/24 55/25 63/7 71/5 81/1 114/12
115/13
things [17]   4/10 27/7 28/13 30/16 45/8
45/24 62/18 72/3 72/16 77/8 80/21
88/11 90/23 93/12 95/1 108/7 109/14
think [105]   5/17 7/5 7/15 8/19 8/20

12/10 13/21 15/23 17/20 17/24 18/3
18/3 18/4 18/19 18/19 19/23 21/3 21/6
22/8 24/8 24/9 24/18 25/3 25/17 25/19
28/1 28/18 31/17 31/25 32/12 32/14
32/25 33/8 36/2 36/20 37/19 39/9 39/20
39/23 40/4 40/15 41/24 42/2 42/19 43/2
43/22 43/25 44/8 44/10 45/18 46/5
46/23 48/21 48/22 49/17 49/24 51/18
52/6 52/11 52/20 52/22 52/24 53/23
54/9 56/10 57/15 58/1 58/16 58/19 59/4
59/15 59/21 60/11 60/12 61/9 66/19
66/22 69/8 70/23 75/21 76/22 81/5
82/23 83/19 84/11 85/4 87/5 87/7 89/23
91/11 94/11 98/3 101/10 101/18 103/4
105/2 105/11 106/3 109/3 110/23 111/5
113/1 116/4 116/6 116/9
thinking [2]   38/16 103/12
thinks [2]   9/21 48/5
third [6]   15/7 15/10 82/8 101/16 101/25
110/10
thirty [1]   116/6
this [195]
those [51]   6/21 7/4 7/9 7/13 11/25 14/4
14/7 17/23 18/11 19/7 19/14 20/6 22/2
22/23 25/5 28/5 28/7 32/13 33/8 33/17
36/15 42/16 45/8 47/12 52/8 53/4 59/1
63/12 74/25 77/8 77/24 79/18 80/12
84/2 85/3 85/6 85/22 86/4 86/11 91/4
91/21 92/5 99/18 102/16 102/18 102/21
108/7 112/13 114/4 114/9 116/6
though [8]   22/14 53/13 58/21 65/18 79/8
91/11 94/12 103/22
thought [2]   22/22 53/22
thousands [1]   41/22
three [18]   17/3 20/6 20/19 26/8 26/15
26/16 26/20 31/13 35/24 39/8 39/14
50/11 50/13 52/3 66/8 69/23 74/12
116/8
through [24]   4/11 5/8 22/11 37/20 43/19
51/14 54/4 69/7 76/10 77/19 80/4 92/21
92/21 93/11 95/8 95/10 98/9 99/11
102/2 110/21 112/11 113/23 115/19
throughout [3]   51/5 73/19 93/8
thus [1]   4/16
tie [1]   104/19
tight [1]   83/4
tilt [1]   11/18
time [35]   4/9 4/12 5/5 6/22 8/25 14/25
18/21 25/13 29/20 32/9 37/4 38/3 38/12
38/17 38/18 45/19 53/24 53/24 56/8
61/4 62/20 64/6 64/15 71/3 74/18 78/3
81/23 81/25 93/23 94/22 113/4 114/1
114/10 116/19 117/1
timeframe [2]   105/16 106/6
timeframes [2]   45/4 45/6
timely [2]   7/7 116/5
times [1]   97/9
timewise [1]   30/23
timing [1]   7/19
today [11]   4/11 5/24 7/6 7/21 38/10 60/5
60/9 75/6 75/20 82/1 116/3
together [2]   10/10 118/14
told [6]   10/19 44/22 61/6 99/25 111/1
111/2
tolerance [3]   43/21 94/20 112/19
tolerate [3]   4/19 45/21 60/6
tomorrow [2]   13/16 117/12
tons [1]   84/18
too [7]   10/13 25/4 54/9 56/19 76/18
88/14 105/20

## T

took [4]  21/11 28/3 36/13 108/17
tool [1]  39/19
tools [1]  100/1
top [2]  40/1 53/21
topic [3]  66/25 67/2 112/2
topics [2]  4/17 115/1
total [6]  8/25 10/1 13/6 15/8 15/12 15/13
totals [1]  79/15
touched [1]  108/19
toward [1]  105/1
towards [1]  30/19
tranche [1]  30/3
transcript [4]  1/9 1/24 109/6 118/13
transmittal [1]  51/17
treating [1]  27/5
TRENT [2]  1/16 3/8
trial [1]  8/10
tried [6]  34/2 36/18 53/1 55/18 66/19 78/18
troubled [1]  45/16
true [18]  18/11 26/19 38/20 40/23 40/24 42/8 58/13 77/2 77/6 79/3 79/7 79/19 79/23 81/4 81/4 81/13 91/2 104/6
truly [3]  34/12 34/16 36/5
Trump [4]  17/14 18/15 19/7 63/9
trusted [5]  82/10 89/1 96/24 99/8 108/17
truth [2]  79/24 89/16
try [17]  5/10 9/23 13/2 42/2 43/21 43/22 46/9 49/8 57/3 94/3 94/5 95/11 111/5 113/8 114/6 114/21 115/1
trying [12]  19/14 22/10 30/24 32/7 38/13 45/19 45/20 51/1 60/12 104/19 112/18 113/2
trying to [1]  30/24
Tuesday [1]  47/13
turn [1]  34/9
twenty [4]  9/1 9/9 12/21 12/23
twice [1]  37/3
two [25]  5/15 5/16 5/19 14/3 14/7 16/17 18/11 25/17 34/8 35/11 37/23 46/13 55/9 56/15 56/24 58/5 62/18 71/1 77/8 86/2 88/10 91/24 96/15 110/18 116/9
types [2]  86/2 104/2
typically [2]  4/3 59/18

## U

U.S [5]  55/16 55/17 59/15 68/25 104/18
ultimate [2]  62/23 92/12
ultimately [3]  61/17 62/1 77/19
Um [2]  61/3 64/11
Um-hum [2]  61/3 64/11
umbrella [1]  77/24
unaltered [1]  100/15
unaudited [1]  68/1
under [23]  15/21 16/6 47/3 48/15 48/19 49/6 55/4 59/16 61/15 62/12 65/6 72/7 76/3 77/23 78/23 86/11 86/22 87/10 88/23 109/12 110/5 111/6 112/8
understand [12]  8/7 15/15 32/1 38/23 42/16 58/21 60/25 73/23 84/12 85/5 90/4 95/11
understanding [3]  49/20 66/15 98/10
understood [5]  47/20 75/8 75/13 95/2 112/15
undertaking [1]  32/21
undue [4]  27/9 34/23 35/15 83/6
unduly [1]  27/16
unique [2]  36/9 38/1
UNITED [7]  1/1 1/10 1/20 48/10 59/13

96/17 118/4
unless [3] 6/15 32/23 70/15
unlike [1] 78/20
unlimited [1] 12/19
unnecessarily [1] 45/19
unopposed [1] 14/1
unreasonable [1] 42/1
unrelated [1] 52/10
until [6] 55/1 55/11 59/20 59/20 59/23 59/25
up [36] 4/7 8/9 11/25 14/23 34/1 40/10 41/9 45/19 46/9 46/13 46/15 48/24 49/1 55/6 55/8 55/8 56/16 57/16 61/5 67/9 69/4 75/19 82/1 85/12 87/16 89/9 90/23 94/19 96/12 97/20 99/5 106/11 110/19 111/4 115/5 116/19
UPADHYAYA [1] 1/9
updated [3] 65/18 107/17 115/17
upon [6] 7/16 13/22 21/9 33/9 47/18 118/7
us [37] 10/14 13/13 14/18 20/19 24/4 37/7 37/12 37/13 38/9 39/7 44/4 47/7 50/19 51/19 51/23 51/25 52/3 54/8 55/9 55/17 56/15 56/15 59/8 60/4 60/4 71/1 71/6 71/9 71/14 77/7 78/21 80/9 82/25 96/21 99/25 111/2 116/17
USA [4] 1/3 2/3 50/18 118/8
use [5] 72/18 72/18 78/7 100/16 104/21
used [39] 67/15 71/7 77/11 77/12 77/14 77/24 78/13 79/18 84/10 85/10 85/14 85/19 87/21 88/15 88/17 88/18 88/23 89/18 98/20 99/6 99/8 99/12 100/4 100/6 100/13 100/22 100/23 100/25 101/9 102/22 103/25 104/1 104/4 104/5 105/22 106/23 107/17 109/18 109/20
user [1] 92/23
using [2] 77/22 106/21
utmost [1] 90/8

## V

validity [1] 91/21
validly [1] 46/4
valuation [1] 65/9
value [2] 66/6 69/23
valued [2] 66/7 66/10
various [2] 3/25 93/8
vary [1] 35/7
vast [2] 18/17 19/4
Venezuela [9] 79/12 91/19 91/23 103/17 103/24 103/25 104/5 104/8 105/23
Venezuelan [3] 104/12 105/19 105/21
veracity [3] 19/6 19/21 77/1
verified [1] 84/25
Verizon [1] 71/8
version [2] 8/18 86/8
versions [1] 86/23
versus [3] 81/15 97/6 118/8
very [54] 4/20 5/5 7/10 8/2 8/3 8/8 8/10 13/12 15/18 16/25 18/8 21/6 23/1 24/3 26/9 31/11 34/6 35/6 36/15 40/11 43/7 43/20 45/15 45/17 46/4 47/21 49/12 51/13 53/22 57/22 58/6 60/9 64/16 64/23 66/1 71/1 71/25 73/4 73/21 74/9 75/12 75/13 77/9 78/10 87/7 99/5 99/15 104/4 106/3 108/5 112/18 116/25 117/21
view [10] 9/4 9/6 9/10 10/3 10/12 11/22 35/4 51/10 55/13 80/2
views [1] 19/5
virtually [1] 51/21

volume [2] 33/7 33/11
vote [5] 79/15 79/15 81/11 84/3 104/25
votes [5] 79/5 80/8 80/22 80/23 90/25
voting [15] 76/4 76/24 77/15 77/18 84/1 84/10 84/19 85/9 85/13 90/7 93/20 100/14 105/22 107/14 109/22
VSOP [4] 107/5 107/8 107/17 107/19

## W

wait [5] 34/14 60/7 71/2 74/7 117/11
waited [1] 71/3
waiting [6] 7/23 7/24 12/2 71/5 71/13 72/1
waive [1] 49/25
Walker [1] 44/18
Wandrea [1] 17/5
want [41] 4/7 11/10 15/24 16/7 23/1 23/15 25/12 26/9 27/2 36/21 39/20 39/24 41/8 43/22 46/10 48/17 48/19 49/18 49/25 55/8 57/12 58/21 62/3 62/8 78/5 78/14 81/1 81/23 88/13 91/22 94/16 94/22 95/9 99/4 101/11 111/21 112/12 115/3 115/5 115/10 115/16
wanted [4] 18/21 53/7 71/18 81/14
wants [3] 16/24 46/19 112/6
warehouse [3] 28/25 86/13 86/15
was [173]
was used [1] 109/18
Washington [2] 1/5 1/21
wasn't [2] 46/2 54/11
wasted [1] 38/12
wasting [1] 38/3
way [22] 11/23 23/7 39/24 40/10 40/11 43/23 47/11 48/22 51/15 63/4 67/7 81/6 83/6 87/9 87/20 87/22 92/9 92/11 107/4 110/20 111/4 113/7
ways [4] 26/17 90/4 90/9 90/14
we [285]
we'd [2] 8/8 53/4
we'll [5] 31/2 36/14 49/10 54/18 113/8
we're [36] 2/8 4/17 8/17 8/23 27/4 27/5 37/5 37/6 37/12 42/10 48/13 50/2 55/10 55/11 57/17 59/19 59/20 63/8 63/8 67/18 69/2 69/3 73/15 79/6 79/22 82/23 83/2 92/17 93/5 93/5 94/12 97/3 103/5 104/6 114/17 116/7
we've [14] 11/15 21/5 22/11 22/19 41/18 52/20 52/21 61/25 65/17 66/19 67/1 81/20 83/7 84/25
website [1] 57/5
websites [1] 85/11
week [1] 47/6
weekend [2] 55/19 59/22
weeks [3] 25/18 94/19 116/9
weigh [2] 74/8 110/17
welcome [2] 4/5 75/15
well [91] 2/11 6/3 7/10 11/12 11/21 12/6 12/18 13/12 18/1 19/9 31/1 33/23 36/15 37/3 37/7 37/19 38/4 38/16 39/1 39/8 39/19 40/5 40/8 40/14 45/10 45/15 47/21 49/3 52/14 52/20 53/18 54/12 54/20 56/1 56/4 56/6 56/16 56/22 57/16 58/4 60/5 60/10 63/17 64/5 65/17 66/22 68/12 68/25 70/8 70/12 70/21 70/22 71/6 71/15 79/6 79/10 79/17 79/20 81/7 81/9 83/1 83/9 87/11 92/8 94/1 94/15 96/4 96/14 97/2 97/25 100/1 100/20 103/4 103/12 104/15 105/7 105/11 105/13 106/2 107/8 108/23 110/1 110/3 110/6 112/9 113/4 113/14 114/12

**W**

well... [3]  114/19 115/10 116/18
went [7]  37/19 69/23 69/25 76/18 97/20 104/16 110/24
were [61]  4/21 4/24 5/22 6/21 7/7 12/7 17/12 17/12 17/23 18/14 18/16 18/18 18/22 18/22 18/25 19/2 19/7 22/10 22/22 23/9 27/9 28/3 28/5 28/6 28/7 33/9 33/22 33/25 34/7 34/11 35/22 37/14 37/15 44/18 46/2 54/20 56/14 69/21 73/2 76/7 77/2 77/12 77/16 77/22 77/23 77/24 78/2 80/2 85/1 88/15 88/17 89/22 90/3 92/13 102/21 103/10 104/10 105/22 109/7 111/11 114/1
weren't [2]  60/15 69/20
what [127]
what's [9]  16/16 21/18 27/18 27/18 30/22 53/12 100/18 106/25 113/13
whatever [4]  14/12 30/5 50/18 83/4
when [32]  23/3 27/6 28/7 30/19 36/9 37/9 37/17 38/6 38/14 41/12 43/16 44/2 46/12 46/15 61/5 68/6 69/25 73/1 78/9 78/9 84/12 85/6 89/12 90/21 91/2 92/17 93/19 93/25 94/13 97/7 104/20 110/10
where [31]  5/24 12/15 14/20 17/16 18/16 20/11 28/23 33/13 37/16 37/18 37/22 37/23 40/20 56/5 55/25 58/9 63/1 64/16 65/22 67/12 67/16 73/22 79/13 82/10 85/14 90/3 90/5 90/11 98/22 111/8 115/15
Whereas [1]  24/4
whereof [1]  118/17
whether [38]  7/6 7/18 9/2 11/24 30/15 30/21 35/16 35/18 39/9 43/2 43/12 50/17 70/23 77/1 79/3 79/7 79/19 79/22 80/21 80/25 81/3 81/12 88/9 89/13 89/14 90/24 90/25 90/25 92/13 92/14 97/18 104/7 106/8 108/12 113/15 115/3 116/4
which [75]  3/22 4/12 4/13 6/4 7/14 9/6 9/9 11/4 12/13 14/1 14/9 16/5 16/14 16/17 18/23 19/3 20/3 20/17 20/19 25/2 25/10 26/5 27/3 27/23 27/25 28/21 32/11 34/22 35/3 36/10 39/4 39/17 40/8 40/12 42/13 42/16 43/10 44/11 48/1 49/3 51/4 52/16 52/17 53/5 58/14 58/25 59/24 60/14 62/12 67/9 68/10 69/3 70/18 72/8 74/3 78/15 79/11 80/13 83/21 84/18 86/1 87/14 89/11 90/19 92/6 92/6 95/14 95/19 95/20 97/12 105/5 105/25 110/20 112/21 116/20
while [3]  4/25 74/7 114/25
who [9]  3/16 11/2 18/20 19/25 33/8 48/3 72/5 97/12 107/23
who's [1]  50/19
whoever [3]  46/19 88/4 88/8
whole [5]  22/23 43/12 100/13 101/15 113/12
wholesale [1]  33/7
wholly [1]  42/24
whose [1]  40/8
why [19]  11/1 18/4 18/5 34/4 42/16 46/8 48/5 49/14 49/17 58/6 59/2 60/14 69/17 78/14 79/8 89/20 89/22 102/14 104/25
will [77]  3/18 3/25 4/3 4/15 4/19 5/3 5/9 5/13 6/9 6/13 7/12 8/15 11/21 11/24 12/20 12/22 12/22 13/4 13/20 13/23 13/23 14/7 16/3 16/11 16/13 16/14 16/20 16/22 24/21 24/25 25/6 28/1 28/11 28/12 30/14 37/7 43/4 43/19

45/17 45/23 46/22 47/9 47/24 48/21 49/23 49/7 49/6 58/6 59/14 60/6 66/6 66/17 69/8 74/17 74/18 75/23 85/12 86/1 86/14 89/10 94/24 101/12 103/12 106/2 106/4 106/4 106/14 106/16 112/1 112/8 112/9 112/9 113/2 114/16 115/19 116/5 117/11
willing [6]  11/8 33/24 87/3 94/12 112/25 114/8
win [1]  66/5
wipe [1]  58/6
withdraw [10]  36/19 36/21 37/4 37/12 37/14 38/8 41/1 44/2 44/4 47/1
withdrawn [1]  47/8
withheld [1]  44/20
withhold [2]  44/19 73/15
withholding [11]  36/25 37/8 41/2 42/6 43/3 43/4 44/2 44/4 44/23 45/6 47/2
within [8]  27/12 31/16 35/7 42/18 70/22 74/21 85/25 116/19
without [7]  29/5 31/21 32/17 32/20 43/23 72/1 87/1
witness [5]  11/5 12/15 53/13 53/16 118/17
witnesses [7]  10/25 11/2 15/7 15/9 15/11 114/1 114/9
won't [1]  41/1
wondering [1]  116/8
word [6]  8/18 34/8 34/8 34/11 34/11 84/13
wording [1]  35/7
words [2]  10/15 51/4
work [7]  13/2 27/4 29/14 30/14 45/14 45/24 46/6
worked [2]  10/9 91/14
working [7]  18/17 65/20 69/3 70/12 70/13 70/20 70/25
works [2]  23/6 67/7
world [1]  29/15
worried [1]  87/7
would [96]  4/20 7/4 7/5 7/20 8/7 9/5 9/8 9/10 9/15 9/23 9/24 9/25 11/5 11/7 13/13 13/15 14/2 14/9 14/20 17/23 18/6 19/4 19/8 19/24 20/3 21/3 21/6 22/14 24/1 26/25 27/8 27/22 28/14 28/16 28/21 29/8 29/15 30/4 30/17 30/22 34/11 34/13 34/14 35/8 40/11 40/13 44/3 44/20 47/7 47/17 51/12 54/23 61/9 62/16 62/17 62/18 63/2 64/5 64/6 66/14 68/7 68/14 68/17 72/18 77/7 79/5 80/5 80/8 80/19 81/3 84/17 87/3 87/15 89/7 90/1 91/12 91/15 93/3 93/9 93/19 93/20 95/4 107/3 107/9 107/23 107/25 108/12 109/4 109/13 110/4 110/13 112/25 114/6 116/6 116/25 117/4
wouldn't [5]  37/8 48/23 49/25 54/24 89/20
wrapped [1]  8/9
writing [1]  44/22
written [4]  84/25 93/15 95/20 101/15
wrote [4]  11/3 53/6 58/23 90/23

**Y**

yeah [20]  44/7 44/15 46/14 48/21 48/24 49/11 56/10 57/1 57/4 58/4 66/19 67/1 71/17 83/13 98/16 98/18 101/10 111/3 116/15 116/24
year [4]  8/3 82/20 96/6 103/24
years [5]  49/12 71/1 71/2 93/6 93/8
Yes [24]  7/11 10/2 13/19 14/16 14/22

14/25 15/17 20/16 20/21 48/12 58/13 59/4 59/6 60/22 67/13 82/16 66/1 98/23 98/25 113/6 113/22 113/22 116/2 117/18
you [350]
you'd [1]  4/5
you'll [2]  11/14 73/16
you're [26]  4/5 11/10 25/3 29/3 29/18 29/19 32/16 40/19 42/6 42/23 43/3 44/4 46/9 54/10 56/1 65/13 66/16 68/22 69/21 75/3 75/15 78/19 88/5 91/2 97/22 114/25
you've [8]  32/9 63/24 64/2 64/25 69/13 75/6 75/6 115/2
your [159]
yourselves [3]  2/6 45/24 46/7

**Z**

zero [1]  64/21