**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| SMARTMATIC USA CORP., SMARTMATIC HOLDING B.V., AND SGO CORPORATION LIMITED, | ) ) ) ) | |
| Plaintiffs, | ) | Civil Action No. 1:21-cv-02900-CJN- |
| v. | ) | MAU |
| | ) | |
| HERRING NETWORKS, INC., D/B/A ONE AMERICA NEWS NETWORK, | ) ) ) | |
| Defendant. | ) ) | |

**OAN'S MOTION TO COMPEL THIRD PARTY ATLANTIC COUNCIL**
**TO COMPLY WITH RULE 45 SUBPOENA**

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................................... 1

II.     BACKGROUND ............................................................................................................. 5

III.    LEGAL STANDARD ..................................................................................................... 7

IV.     ARGUMENT .................................................................................................................. 8

        A.      Atlantic Council is required to produce documents that are relevant to
                Smartmatic's claims and OAN's defense of Smartmatic's lawsuit. ...................... 8

        B.      Atlantic Council's unsupported burden objections do not outweigh OAN's
                need for this information. .................................................................................... 13

V.      CONCLUSION ............................................................................................................. 17

CERTIFICATE OF SERVICE ................................................................................................. 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexander v. FBI*,
　186 F.R.D. 21 (D.D.C. 1998)................................................................. 13, 14, 15

*Association of Am. Physicians & Surgeons v. Clinton*,
　837 F.Supp. 454 (D.D.C. 1993) ......................................................................15

*Athridge v. Aetna Cas. & Sur. Co.*,
　184 F.R.D. 181 (D.D.C. 1998)........................................................................17

*BuzzFeed, Inc. v. U.S. Dep't of Just.*,
　318 F. Supp. 3d 347 (D.D.C. 2018) ................................................................16

*Cherokee Nation v. U.S. Dept. of the Int.*,
　531 F. Supp. 3d 87 (D.D.C. 2021) ..................................................................12

*In re Denture Cream Prods. Liab. Litig.*,
　292 F.R.D. 120 (D.D.C. 2013)....................................................7, 8, 11, 12, 15

*DL v. District of Columbia*, 251 F.R.D. 38 (D.D.C. 2008) ........................................17

*Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC*,
　286 F.R.D. 8 (D.D.C. 2012)........................................................................8, 13

*Missouri v. Biden*,
　83 F.4th 350, 372, 396 (5th Cir. 2023) ...........................................................3

*Missouri v. Biden*,
　No. 3:22-CV-01213, 2023 WL 4335270 (W.D. La. July 4, 2023) .........................3

*Murthy v. Missouri*,
　144 S. Ct. 7 (Oct. 20, 2023) ..........................................................................3

*Nationstar Mortgage, LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*,
　316 F.R.D. 327 (D. Nev. 2016).......................................................................15

*Novelty, Inc. v. Mt. View Mktg.*,
　265 F.R.D. 370 (S.D. Ind. 2009).....................................................................17

*Pleasants v. Allbaugh*,
　208 F.R.D. 7 (D.D.C. 2002)............................................................................13

*Pro–Football, Inc. v. Harjo*,
　191 F. Supp. 2d 77 (D.D.C. 2002) ..................................................................13

*Stati v. Republic of Kazakhstan*,
   No. 14-cv-1638, 2020 WL 3259244 (D.D.C. June 5, 2020) ...................................................7

*Watts v. SEC*,
   482 F.3d 501 (D.C. Cir. 2007) ............................................................................ 7, 8, 11, 16

*Westinghouse Elec. Corp. v. City of Burlington*,
   351 F.2d 762 (D.C. Cir. 1965) .............................................................................................16

**Other Authorities**

*Annual Report 2022/2023: Financial Summary*, ATLANTIC COUNCIL (May 10,
   2023) (identifying total assets as in excess of $86 million as of 2022),
   https://www.atlanticcouncil.org/in-depth-research-reports/report/annual-
   report-2022-2023-financial-summary/ [https://perma.cc/MLF8-KP3P]...............................16

Center for Cybersecurity Policy & Law, *CyberNextDC 2020 - Day 2 Closing
   Keynote - Alex Stamos*, at 14:00–16:01, YOUTUBE (Nov. 18, 2020),
   https://youtu.be/sBqhadpw7mo. .......................................................................................4, 9

ELECTION INTEGRITY P'SHIP, THE LONG FUSE: MISINFORMATION AND THE 2020
   ELECTION (2021), https://stacks.stanford.edu/file/druid:tr171zs0069/EIP-
   Final-Report.pdf [https://perma.cc/UKH5-EB7E] ..................................................................3

Fed. R. Civ. P. 26........................................................................................................ 7, 8, 15, 16

Fed. R. Civ. P. 34...................................................................................................................12

Fed. R. Civ. P. 45............................................................................................................. 1, 7, 12

INTERIM STAFF OF THE H. COMM. ON THE JUDICIARY AND THE SELECT SUBCOMM.
   ON THE WEAPONIZATION OF THE FED. GOV'T, 118TH CONG., THE
   WEAPONIZATION OF "DISINFORMATION" PSEUDO-EXPERTS AND
   BUREAUCRATS: HOW THE FEDERAL GOVERNMENT PARTNERED WITH
   UNIVERSITIES TO CENSOR AMERICANS' POLITICAL SPEECH (Nov. 6, 2023),
   *available at* https://judiciary.house.gov/sites/evo-subsites/republicans-
   judiciary.house.gov/files/evo-media-document/EIP_Jira-Ticket-Staff-Report-
   11-7-23-Clean.pdf ................................................................................2, 3, 4, 5, 9, 10

JUDICIARY, *Jira Ticket Dataset* (Nov. 14, 2023),
   https://judiciary.house.gov/media/in-the-news/jira-ticket-dataset .........................................10

Defendant Herring Networks, Inc. d/b/a One America News Network ("OAN") files this Motion to Compel Third Party Atlantic Council to Comply with Rule 45 Subpoena. OAN served on Respondent Atlantic Council of the United States, Inc. ("Atlantic Council") a Rule 45 document subpoena seeking information responsive to 18 requests for production, all of which are relevant to the claims and defenses in this defamation suit brought by Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited (together, "Smartmatic").

Atlantic Council has failed to produce a single document responsive to OAN's targeted requests, even rejecting OAN's straightforward request that Atlantic Council simply produce what it recently collected and produced to the House Judiciary Committee, which is investigating Atlantic Council's work in censoring reporting on the 2020 U.S. election, including election reporting from OAN. Atlantic Council has further refused to even collect documents or run the 6 narrow search queries OAN has proposed. Because Atlantic Council will not produce documents responsive to OAN's valid subpoena absent court intervention, OAN is forced to bring this motion and respectfully requests that the Court compel Atlantic Council to produce documents responsive to OAN's subpoena within 7 days of the Court's order.

## I.   INTRODUCTION

In this action, Smartmatic, a voting machine company, has sued OAN, a family-run media outlet, for over a billion dollars in damages, based in part on statements it alleges to be defamatory because they contradict the claims of members of the Election Integrity Partnership ("EIP") concerning the security of voting systems in the 2020 U.S. election. ECF No. 1, Compl. ¶¶ 298, 332(b), 366–67; Compl. Ex. 122, ECF No. 1-152 (statement signed by EIP co-member; cited by Smartmatic to assert that OAN's reporting was defamatory); *see also, e.g.*, Compl. ¶¶ 4, 292–97, 299–301 (Smartmatic relying on election experts like Atlantic Council's fellow EIP member, and

government agencies that it worked directly with to assert that OAN's election reporting was "disinformation").

The Atlantic Council is a founding member of the EIP, which is "a consortium of 'disinformation' academics" that engaged in a coordinated effort with federal agencies to "launder [the federal government's] censorship activities in hopes of bypassing the First Amendment and public scrutiny." INTERIM STAFF OF THE H. COMM. ON THE JUDICIARY AND THE SELECT SUBCOMM. ON THE WEAPONIZATION OF THE FED. GOV'T, 118TH CONG., THE WEAPONIZATION OF "DISINFORMATION" PSEUDO-EXPERTS AND BUREAUCRATS: HOW THE FEDERAL GOVERNMENT PARTNERED WITH UNIVERSITIES TO CENSOR AMERICANS' POLITICAL SPEECH, at 1 (Nov. 6, 2023) (hereinafter **Ex. C**, House Committee Report), *available at* https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/EIP_Jira-Ticket-Staff-Report-11-7-23-Clean.pdf (accessed Feb. 19, 2024).

As detailed in a recent House Judiciary Committee report, the Atlantic Council's Digital Forensic Research Lab is one of "the nation's self-described 'leading institutions focused on understanding misinformation and disinformation in the social media landscape'" and employed "well known figures in the censorship-industrial complex, such as . . . Senior Director of the Atlantic Council's Digital Forensic Research Lab (DFRLab) Graham Brookie." *Id.* at 11, 44. The Atlantic Council accomplished this censorship by working with the government and flagging as "disinformation" or "misinformation" content published by OAN and others concerning the 2020 election. *See generally id.* at 1–3, 11; *id.* at 8 (describing the Atlantic Council as "operationalizing the study of disinformation, tracking information campaigns, [and] exposing attempts to pollute the information space"). Having flagged content it disfavored, the EIP would then send the content to social media platforms with specific recommendations on how the content should be censored.

*Id.* at 3; *see also, e.g.*, *Missouri v. Biden*, No. 3:22-CV-01213, 2023 WL 4335270, at \*33–39, 52–53, 59, 70–85 (W.D. La. July 4, 2023) (discussing the EIP's work with government agencies to censor reporting it disfavored by classifying it as disinformation, including reporting by OAN).[1]

As the House Judiciary Committee's investigation of Atlantic Council and the EIP has revealed, the targets of the EIP's censorship often included accurate information and opinions. (**Ex. C**, House Committee Report, at 2.) And in fact, documents produced to the House demonstrate that OAN was a victim of Atlantic Council and the EIP's effort to deplatform views it disagreed with. *Id*. at 66 n.163. Egregiously, Atlantic Council and the EIP specifically sought to censor OAN's election reporting as disinformation *despite not even fact checking it*. *See, e.g.*, *id.* at 67 & n.171 ("[C]oncerning a tweet from One America News Network, a [EIP] contributor wrote: 'We have not seen a fact-check on this direct story, but this story is targeted at discrediting the validity of vote-by-mail.'" (quotation omitted)); *see also id*. at 4 (detailing OAN's journalists and guests, including Chanel Rion, Jack Posobiec, and Tom Fitton, as individuals "who [were] being censored" by the EIP); *see also* ELECTION INTEGRITY P'SHIP, THE LONG FUSE: MISINFORMATION AND THE 2020 ELECTION 87, 92–95, 133–34, 191 (2021), https://stacks.stanford.edu/file/druid:tr171zs0069/EIP-Final-Report.pdf [https://perma.cc/UKH5-EB7E] (EIP admitting to censoring OAN's election reporting regarding voting machines and censoring election reporting regarding Smartmatic that is similar to OAN's reporting). And it has been further revealed that the EIP and the Atlantic Council used the label "disinformation" as a means of targeting reporting on the 2020 U.S. election that they subjectively considered to be

---

[1] The Fifth Circuit's partial vacatur in *Missouri v. Biden* did not address or disturb the underlying factual findings of the district court that censorship occurred. 83 F.4th 350, 372, 396 (5th Cir. 2023). And the grant of certiorari by the Supreme Court has not disturbed those relevant factual findings. *Murthy v. Missouri*, 144 S. Ct. 7 (Oct. 20, 2023).

"garbage" or simply did not like. Center for Cybersecurity Policy & Law, *CyberNextDC 2020 - Day 2 Closing Keynote - Alex Stamos*, at 14:00–16:01, YOUTUBE (Nov. 18, 2020), https://youtu.be/sBqhadpw7mo. The nature and extent of Atlantic Council's censorship efforts came to light only after the Committee exercised its subpoena powers on Atlantic Council and other EIP members. (**Ex. C**, House Committee Report, at 39–40.)

OAN's subpoena to Atlantic Council is targeted to elicit information about Atlantic Council's classification of OAN's reporting as so-called "disinformation" and the criteria Atlantic Council and the EIP employed in doing so. Such information is relevant to this lawsuit because Smartmatic's complaint broadly alleges a "disinformation campaign" on the part of OAN to spread purported untruths about the integrity of voting systems in the 2020 U.S. election, allegedly harming Smartmatic in the process. *E.g.*, Compl. ¶ 13; *see also* Shah Decl. ¶ 8 (noting that a search of Smartmatic's complaint results in 132 hits for "disinformation"). OAN's statements, according to Smartmatic, constituted "disinformation" because so-called experts like Atlantic Council or its fellow EIP members deemed them such. Despite their clear bias, their "disinformation" classifications were then relied upon by Smartmatic. The information sought therefore goes directly to the substantial truth of OAN's statements complained of by Smartmatic. Moreover, information concerning Atlantic Council and the EIP's censorship of OAN is relevant because it bears on Smartmatic's alleged damages, which Smartmatic asserts to be over a billion dollars.

Despite this clear relevance, Atlantic Council has refused to produce *any* documents responsive to OAN's subpoena, instead resting on unfounded relevance objections and unsubstantiated claims of burden. To date, Atlantic Council has not credibly rebutted OAN's detailed description of the relevance of this information and has refused to produce any evidence of its purported burden in complying with the subpoena, despite OAN's numerous requests for

such evidence. Indeed, to remove any suggestion of burden, OAN even proposed that Atlantic Council simply provide what it already turned over to the House Judiciary Committee and produce documents responsive to only 6 narrow search queries, limited by custodian. But Atlantic Council rejected even this straightforward proposal and attempt to compromise. OAN is therefore forced to bring this motion to compel.

## II.   BACKGROUND

On November 17, 2023, OAN served on Atlantic Council a subpoena issued by this Court. (**Ex. A**, Atlantic Council Subpoena.) The subpoena contained 18 requests for production. *Id.* at 6–8. Atlantic Council served its objections on November 29, 2023. (**Ex. B**, Atlantic Council's Objections.) In them, Atlantic Council refused to search for or produce any responsive documents. *See id.* at 1–7. Counsel for OAN immediately reached out for a meet-and-confer. (**Ex. E**, Email Corresp. Beginning Nov. 29, 2023 re Meet & Confer); *see* Shah Decl. ¶ 5.

Counsel for OAN and Atlantic Council met and conferred via videoconference conference on December 6, 2023, and again on December 22, 2023 where counsel for OAN explained the relevance of its requests. Shah Decl. ¶ 7. In follow-up correspondence with counsel, OAN explained that information sought by the subpoena concerning Atlantic Council's work with the EIP "is highly relevant for many reasons," including the House Judiciary Committee Report's revelation that the EIP targeted OAN's election reporting as "disinformation." (**Ex. E**, Email Corresp. Beginning Nov. 29, 2023 re Meet & Confer). "Understanding the metrics that Atlantic Council used to determine falsity or misinformation—and whether Atlantic Council improperly relied on Smartmatic's self-serving narrative to classify OAN's reporting as disinformation— would therefore by highly relevant to the claims at issue in this lawsuit, including the substantial truth of the statements in question." *Id.* OAN also explained why this information was relevant to Smartmatic's assertion of damages, noting that "the Atlantic Council's involvement in censoring

OAN broadcasts potentially decreased the audience for those broadcasts, which is relevant to a damages calculation, among other things." *Id.* OAN proposed that Atlantic Council simply produce documents that it had already collected and produced to the House Judiciary Committee in connection with its EIP work and requested that Atlantic Council run 6 narrow search queries in satisfaction of the rest of OAN's requests. *Id.*; *see* (**Ex. D**, OAN's Proposed Search Terms).

Another conference with counsel was held on January 15, 2024, where Atlantic Council objected to certain search queries and also asserted that producing documents it had already produced to Congress would be burdensome. Shah Decl. ¶ 11. During the course of OAN's conferral efforts, OAN asked Atlantic Council to support its bare assertions of burden by some form of evidence, such as running a search and providing the ensuing hit counts. *Id.* ¶¶ 9, 11. After the conference, however, Atlantic Council rejected OAN's request for a hit report, stating it "we decline your invitation to create or share any hit reports or any other information with you at this point for a number of reasons, including, but not limited to the fact that there is no such requirement under the rules." *Id.* ¶ 12; (**Ex. E**, Email Corresp. Beginning Nov. 29, 2023 re Meet & Confer). Atlantic Council proposed instead to run just 3 of OAN's 6 search queries across only their production to the House Judiciary Committee and on the condition that OAN would accept this fractional production in full satisfaction of the subpoena. *Id.* In response, OAN explained that this "would be imperfect compliance with only *one* of" OAN's requests—"a far cry from good faith compliance with [OAN's] subpoena" and rejected this counterproposal. *Id.* ¶ 13; (**Ex. E**, Email Corresp. Beginning Nov. 29, 2023 re Meet & Confer). Nevertheless, "in the spirit of compromise" OAN indicated its willingness to "reconsider terms" Atlantic Council objected to if it could "provide a credible basis for [the] objection" but insisted that the search terms be run across the Atlantic Council custodians that the EIP had publically identified in their Final Report as having

worked on these issues. *Id.* But at other conferences held on January 31 and February 13, Atlantic Council declared an impasse, rejecting OAN's compromise and refusing to run *any* search terms across its relevant custodians and refusing to provide any evidence of burden. Shah Decl. ¶ 14. Atlantic Council refused to even tell OAN how many documents in the House production would hit upon OAN's search terms. *Id.*

To date, Atlantic Council has not produced any documents, provided any evidence of its purported burden, or even run a search for responsive documents. *Id.* ¶¶ 14–16.

## III.    LEGAL STANDARD

Rule 45 allows the party serving a subpoena to move "for an order compelling production" of requested documents if the commanded person has failed to comply. Fed. R. Civ. P. 45(d)(2)(B)(i).  A trial court is within its discretion to compel compliance with a Rule 45 subpoena when the discovery sought is relevant. *See In re Denture Cream Prods. Liab. Litig.*, 292 F.R.D. 120, 123–24 (D.D.C. 2013). A discovery request is relevant if there is "*any* possibility that the information sought may be relevant to the claim or defense of any party." *Id.* at 124 (emphasis added); *see also Watts v. SEC*, 482 F.3d 501, 507 (D.C. Cir. 2007). A subpoena respondent "resisting discovery" bears the burden of objecting to a subpoena and proving that the "documents requested are either unduly burdensome or privileged." *In re Denture Cream*, 292 F.R.D. at 123– 24 (internal quotation marks and citations omitted); Fed. R. Civ. P. 45(e)(1)(D); *see Stati v. Republic of Kazakhstan*, No. 14-cv-1638, 2020 WL 3259244, at *4 (D.D.C. June 5, 2020) ("The undue burden standard for Rule 45 . . . mirrors the standard included within Rule 26.").

In ruling on a motion to compel, a court first determines whether the subpoena seeks relevant information and then assesses any objections, including those which involve claims of undue burden. *Stati*, 2020 WL 3259244, at *4 (granting motion to compel compliance with Rule 45 subpoena). "The person objecting to production has a *heavy burden* to show that the subpoena

should not be enforced." *Millennium TGA, Inc. v. Comcast Cable Commc'ns LLC*, 286 F.R.D. 8, 11 (D.D.C. 2012) (emphasis added). In determining whether an undue burden exists, courts consider a number of factors including "whether the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *In re Denture Cream*, 292 F.R.D. at 123 (quoting *Watts*, 482 F.3d at 509); *see also* Fed. R. Civ. P. 26(b)(2)(C)(i).

## IV.    ARGUMENT

### A.    Atlantic Council is required to produce documents that are relevant to Smartmatic's claims and OAN's defense of Smartmatic's lawsuit.

In its objections to the subpoena and throughout the meet-and-confer process, Atlantic Council refused to even search its custodians' mailboxes for responsive documents. Indeed, Atlantic Council has refused to turn over documents pertaining to its work with EIP that it has already collected and produced to the U.S. House of Representatives and had refused to even run 6 search queries across the records of publicly identified relevant custodians. There is no reason why Atlantic Council cannot immediately produce such documents now. Given Atlantic Council's unwillingness to even make a good faith attempt at complying with OAN's subpoena, the Court should overrule Atlantic Council's objections and order production of documents responsive to all of OAN's requests.

OAN's requests are relevant because they concern documents that bear on the substantial truth of the statements complained of in Smartmatic's complaint, Smartmatic's damages claims, and OAN's defenses. The subpoena seeks 18 relevant categories of information, all of which relate to the claims at issue in Smartmatic's lawsuit against OAN. (**Ex. A**, Atlantic Council Subpoena, at 6–8.)

The complaint broadly alleges, among other things, a "disinformation campaign" on the part of OAN to spread purported untruths about the integrity of voting systems in the 2020 U.S. election, allegedly harming Smartmatic in the process. *E.g.*, Compl. ¶ 13. Smartmatic attempts to demonstrate the falsity of OAN's statements on the basis that they contradicted the assertions of "election security specialists" such as EIP members and various governmental entities—including the Cybersecurity and Infrastructure Security Agency ("CISA") that outsourced its censorship work to Atlantic Council and the EIP to suppress reporting on the 2020 election. Compl. ¶¶ 298, 332(b), 366–67; Compl. Ex. 122; *see also, e.g.*, *id.* ¶¶ 67, 288-292, 297, 300. *See generally* (**Ex. C**, House Committee Report, at 1). Smartmatic erroneously concludes that because certain experts had determined that there was "no credible evidence" of irregularities in the 2020 election,[2] that contrary views constituted "misinformation,"[3] and therefore OAN was guilty of making false statements. Indeed, Smartmatic's complaint parrots the EIP and uses their own verbiage of "disinformation" 132 times throughout its complaint[4]—a label that EIP and the Atlantic Council used to target reporting that they subjectively considered to be "garbage" or simply did not like.[5]

Smartmatic relies on the branding of OAN's reporting as "disinformation" by so-called experts in an attempt to demonstrate falsity, and Atlantic Council, as a key member of the EIP, had its very own "disinformation professionals" doing just that. (**Ex. C**, House Committee Report, at 40.) Moreover, it is clear, even from the *few* examples the House highlighted of the EIP's

---

[2] Compl. ¶¶ 298, 316(c), 332(b), 366.
[3] *E.g.*, *id.* at ¶ 365.
[4] *See* Shah Decl. ¶ 8.
[5] Center for Cybersecurity Policy & Law, *CyberNextDC 2020 - Day 2 Closing Keynote - Alex Stamos*, at 14:00–16:01, YOUTUBE (Nov. 18, 2020), https://youtu.be/sBqhadpw7mo.

censorship activities and the information contained in the "Jira" tickets[6] it used to track so-called misinformation, that the EIP targeted election reporting that Smartmatic has put at issue in its complaint. The tickets show, for instance, that the EIP censored OAN's 2020 election reporting, OAN journalists, OAN guests, and reporting on Dominion, voting software issues, voting machine irregularities in key swing states, reporting on fraudulent methods used in Venezuela that were now being used in the U.S., and reporting on voter fraud, among others things. *See, e.g.*, H. COMM. ON THE JUDICIARY, *Jira Ticket Dataset* at EIP-418, EIP-961, EIP-247, EIP-329, EIP-612, EIP-798, EIP-822, EIP-870, EIP-949, EIP-986, EIP-989, EIP-985, EIP-1003, EIP-1004, EIP-1008, EIP-1007, EIP-1010, and EIP-1020 (Nov. 14, 2023), https://judiciary.house.gov/media/in-the-news/jira-ticket-dataset (follow "Weaponization Committee" hyperlink; then search spreadsheet's "Issue Key" column for pinpoint citations). The House's Report, and these tickets alone justify the relevance of OAN's requests.

Atlantic Council cannot credibly deny its involvement in censoring OAN's broadcasts for purportedly constituting so-called misinformation. *See, e.g.*, (**Ex. C**, House Committee Report, at 67 & n.171) (discussing the failure of the EIP to even fact check OAN's article despite classifying it as misinformation). Indeed, Atlantic Council and other members of the EIP notably admit *in their very own report* that they censored OAN's reporting on the security of voting machines. ELECTION INTEGRITY P'SHIP, *supra*, at 87, 92-93, 133–34, 191; *see also id.* at 92–93 (admitting to censoring OAN's election reporting related to voting machines specifically); *id.* at 93–95 (admitting to censoring similar election reporting regarding Smartmatic and Dominion).

As a result, OAN's substantial-truth defense requires inquiry into, at a minimum:

---

[6] "Jira" refers to the name of the software system and platform that "allowed for real-time collaboration by 'members of the EIP, government partners, and platform partners.'" (**Ex. C**, House Committee Report, at 55 (quotation omitted).)

(1) the criteria that Atlantic Council and its EIP co-members employed in designating certain election reporting as misinformation, *see* RFP Nos. 13, 16 (**Ex. A**, Atlantic Council Subpoena at 8);

(2) any communications Atlantic Council and the EIP had with Smartmatic in relation to censorship directed at election reporting, *see* RFP Nos. 1–5 (*id.* at 6–7), as such communications would reveal the extent to which Atlantic Council and the EIP relied on Smartmatic's self-serving narrative to conclude such reporting constituted "misinformation";

(3) the extent to which Atlantic Council ignored countervailing evidence, inappropriately relied on self-interested third parties (*e.g.*, voting machine companies), or failed to even fact-check OAN's reporting or similar reporting before labeling it as "disinformation," *see* RFP Nos. 7–8, 17 (*id.* at 7–8);

(4) the extent to which Atlantic Council targeted media organizations like OAN and similar reporting, *see* RFP Nos. 6, 9 (*id.* at 7);

(5) documents Atlantic Council produced in connection with related legal proceedings or records requests, *see* RFP Nos. 10–12, 18 (*id.* at 7–8); and

(6) the successfulness of Atlantic Council and the EIP's efforts to censor content they deemed "misinformation," *see* RFP Nos. 14–15 (*id.* at 8), which success would have necessarily limited viewership of, and revenue generated by, the complained-of coverage, as well as the reputational harm Smartmatic claims and alleged damages. *See* Compl. ¶¶ 438, 452–54, 466–68

Given the clear relevance of these categories of information, Atlantic Council has failed to establish that there is no "possibility" that the information OAN seeks is relevant, as information relating to the foregoing topics is plainly discoverable. *See In re Denture Cream*, 292 F.R.D. at 124 ("[A] request for discovery should be considered relevant if there is *any possibility* that the information sought may be relevant to the claim or defense of any party." (emphasis added) (quotation omitted)); *see Watts*, 482 F.3d at 507 (D.C. Cir. 2007). Nor can Atlantic Council show

that this evidence would have "no possible bearing" on Smartmatic's claims or OAN's defenses. *Cherokee Nation v. U.S. Dept. of the Int.*, 531 F. Supp. 3d 87, 98 (D.D.C. 2021) ("[D]iscovery generally should be allowed 'unless it is clear that the information sought can have no possible bearing on the claim or defense of a party.'" (quotation omitted)). OAN must be permitted to test and defend against Smartmatic's defamation claims, and in order to do so, is entitled to all of this requested information, as it is relevant to Smartmatic's claims and OAN's defenses. *See In re Denture Cream*, 292 F.R.D. at 124.

Despite OAN's conferral efforts, Atlantic Council has done nothing to rebut the reasons OAN has provided to illustrate the relevance of the requests for production. Shah Decl. ¶ 15; *see* (**Ex. E**, Email Corresp. Beginning Nov. 29, 2023 re Meet & Confer). Atlantic Council cannot refuse to produce documents bearing on the substantial truth of OAN's statements and Smartmatic's alleged damages simply because Atlantic Council is a third party to this action. *See* Fed. R. Civ. P. 45 advisory committee's note to 1970 amendment ("[T]he scope of discovery through a [nonparty] subpoena is the same as that applicable to Rule 34 and other discovery rules."). To the contrary, OAN is entitled to all evidence that is relevant to Smartmatic's claims and OAN's defenses. This includes all evidence bearing on the full extent of Atlantic Council and the EIP's collusion with governmental and other actors to censor OAN's election-related statements, and the success or failure of those censorship efforts, which bear on Smartmatic's alleged damages. After all, if OAN's content was being censored, that necessarily limited viewership of and revenue generated by the complained-of coverage, as well as the reputational harm Smartmatic claims as alleged damages. *See In re Denture Cream*, 292 F.R.D. at 124. Accordingly, Atlantic Council must comply with OAN's subpoena.

**B.      Atlantic Council's unsupported burden objections do not outweigh OAN's need for this information.**

This Court should disregard Atlantic Council's unsupported assertions of burden. Atlantic Council identifies no evidence of the purported burden it asserts. This is especially notable because Atlantic Council cannot credibly claim that it would be unduly burdensome to produce documents it has already collected and produced elsewhere. Nor has Atlantic Council even attempted to do the bare minimum, such a run a search, provide hit reports, or even identify custodians who have responsive information. Shah Decl. ¶¶ 12, 14–16; *see* (**Ex. E**, Email Corresp. Beginning Nov. 29, 2023 re Meet & Confer). Atlantic Council has failed to provide any credible reasons for disputing OAN's 6 narrowly tailored search terms or disputing the relevance of the custodians that the EIP has publicly identified as having worked on these issues. *See also Alexander v. FBI*, 186 F.R.D. 21, 38 (D.D.C. 1998) (observing that subpoena respondent "has an obligation to conduct a reasonable search to ensure that non-privileged documents that are relevant or likely to lead to the discovery of admissible evidence are produced").

Atlantic Council's perfunctory objections cannot surmount the "heavy burden" a subpoena respondent faces in order to successfully resist a subpoena. *See Millennium TGA*, 286 F.R.D. at 11; *Pleasants v. Allbaugh*, 208 F.R.D. 7, 12 (D.D.C. 2002) ("[T]he party opposing discovery must make a specific showing, supported by declaration, as to why the production sought would be unreasonably burdensome." (citing *Pro–Football, Inc. v. Harjo*, 191 F. Supp. 2d 77, 80 (D.D.C. 2002))). Indeed, Atlantic Council to this date has refused to provide any evidence of the purported burden on which it is relying in part to not produce documents, stating, "we decline your invitation to create or share any hit reports or any other information with you at this point for a number of reasons, including, but not limited to the fact that there is *no such requirement* under the rules." **Ex. E**, Email Corresp. Beginning Nov. 29, 2023 re Meet & Confer (emphasis added); *see* Shah

Decl. ¶¶ 12, 15. But indeed there is such a requirement for evidence of asserted burden. As this Court has noted, the party alleging undue burden "must make a *specific, detailed showing* of the burden [the disputed] search would require." *Alexander*, 194 F.R.D. at 313–15 (emphasis added). Atlantic Council's refusal to provide evidence of burden should be dispositive of this issue.

But despite Atlantic Council's unsupported assertions of burden, in a good faith attempt to compromise, OAN proposed that instead of identifying, collecting, and producing documents responsive to each request of the subpoena, Atlantic Council could instead simply (a) turn over documents responsive to Request No. 10—*i.e.*, documents it had *already collected and produced* to Congress[7]—and (b) produce documents responsive to just 6 narrow search queries limited by publicly-identified relevant custodians. Shah Decl. ¶ 13; *see* (**Ex. E**, Email Corresp. Beginning Nov. 29, 2023 re Meet & Confer). Nevertheless, Atlantic Council's counsel rejected this straightforward proposal, refusing even to provide evidence of the so-called burden of running these 6 queries or turning over documents *already produced elsewhere*. **Ex. E**, Email Corresp. Beginning Nov. 29, 2023 re Meet & Confer (emphasis added); *see* Shah Decl. ¶¶ 11–16.

Atlantic Council's refusal to provide evidence of burden is revealing. It cannot provide such evidence because no real undue burden exists. Because Atlantic Council has already produced these exact same documents to the House, it will not be burdensome for Atlantic Council to simply send OAN that same exact production. And OAN's search terms consist of only 6 narrowly tailored queries—search terms which OAN was "happy to reconsider" so long as Atlantic Council could provide a credible basis for their objection. (**Ex. E**, Email Corresp. Beginning Nov. 29, 2023 re Meet & Confer); *see* (**Ex. D**, OAN's Proposed Search Terms). Yet, instead of identifying any supporting evidence, Atlantic Council has chosen instead to stonewall OAN's generous proposal

---

[7] *See* (**Ex. A**, Atlantic Council Subpoena, at 7).

and compromise efforts, refusing to reasonably comply with even a single request in OAN's subpoena. Shah Decl. ¶¶ 14–16.

Absent evidence of the burden of running six individual searches and re-producing responsive documents it has produced elsewhere, Atlantic Council's claims of undue burden are meritless. *See Alexander*, 194 F.R.D. at 313–15 (noting that party alleging undue burden "must make a specific, detailed showing of the burden [the disputed] search would require" and identifying "estimated required staff hours, estimated cost, or some other specific showing" as types of evidence that might support an undue burden argument); *Association of Am. Physicians & Surgeons v. Clinton*, 837 F.Supp. 454, 458 n.2 (D.D.C. 1993) (noting that assertions of a burden without "specific estimates of staff hours needed to comply" will be "categorically rejected"). "A party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment. "As a result, it has long been clear that a party claiming that discovery imposes an undue burden must 'allege specific facts which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence.'" *Nationstar Mortgage, LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 334 (D. Nev. 2016) (quotation omitted). Yet, despite OAN's efforts, Atlantic Council to this date has refused to provide any evidence of the purported burden on which it is relying in part to not produce documents. Shah Decl. ¶ 15.

In determining whether an undue burden exists, courts can consider whether "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *In re Denture*

*Cream*, 292 F.R.D. at 123 (quoting *Watts*, 482 F.3d at 509); *see* Fed. R. Civ. P. 26(b)(1). These considerations weigh against sustaining Atlantic Council's objection to OAN's subpoena.

Smartmatic seeks over a billion dollars in this case, a factor that alone justifies OAN's relevant, targeted subpoena. *See BuzzFeed, Inc. v. U.S. Dep't of Just.*, 318 F. Supp. 3d 347, 361 (D.D.C. 2018) (finding no undue burden for non-party to comply with defamation defendant's subpoena given the amount in controversy); *Westinghouse Elec. Corp. v. City of Burlington*, 351 F.2d 762, 767 (D.C. Cir. 1965) ("The fact that these are very important cases with large sums of money at stake is relevant in determining the reasonableness of the [third-party] subpoena."). The complaint's numerous references to "disinformation" and reliance on election-statements of a member of the EIP demonstrate the importance of the discovery in resolving Smartmatic's claims and OAN's defenses. *See* Shah Decl. ¶¶ 7–8. So too does the fact that Smartmatic's damages, if any, necessarily depend on the reach of OAN's broadcasts. *See id.* at ¶ 7. If Atlantic Council successfully censored OAN's reporting, any diminution of viewership attributable to Atlantic Council and the EIP necessarily limits the damages recoverable by Smartmatic, including damages relating to reputational harm and loss of business value and prospects, in this action. *See* Compl. ¶¶ 438, 452–54, 466–68.

Finally, Atlantic Council's financial resources do not prohibit it from complying with OAN's subpoena. Any purported burden in turning over documents it *has already collected and produced* to Congress or producing documents responsive to 6 narrow search queries is negligible. *See Annual Report 2022/2023: Financial Summary*, ATLANTIC COUNCIL (May 10, 2023) (identifying total assets as in excess of $86 million as of 2022), https://www.atlanticcouncil.org/in-depth-research-reports/report/annual-report-2022-2023-financial-summary/ [https://perma.cc/MLF8-KP3P].

16

The remainder of Atlantic Council's boilerplate objections should likewise be disregarded. *See Novelty, Inc. v. Mt. View Mktg.*, 265 F.R.D. 370, 375 (S.D. Ind. 2009) ("'[G]eneral objections' made without elaboration, whether placed in a separate section or repeated by rote in response to each requested category, are not 'objections' at all—and will not be considered." (citing *DL v. District of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008))); *Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998) ("[G]eneral objections do not comply with Fed. R. Civ. P. 34(b) and courts disfavors them.").

\*      \*      \*

OAN is entitled to full compliance with its subpoena, as the requested information goes to the veracity of statements Smartmatic challenges as defamatory, as well as information pertaining to the extent of Smartmatic's claimed damages. This information bears on the substantial truth of OAN's challenged statements, are necessary to OAN's defense, and are material to challenging Smartmatic's claims and damages calculation. OAN therefore asks the Court to enter an order compelling Atlantic Council to produce documents responsive to OAN's document subpoena no later than 7 days after the granting of this Motion.

## V.      CONCLUSION

The Court should render an order compelling Atlantic Council to produce documents responsive to the document subpoena no later than 7 days after the granting of this Motion.

By:   */s/ John K. Edwards*

**JACKSON WALKER L.L.P.**
Charles L. Babcock
(admitted *pro hac vice*)
Nancy W. Hamilton
(admitted *pro hac vice*)
John K. Edwards
(admitted *pro hac vice*)
Joel R. Glover

(admitted *pro hac vice*)
Bethany Pickett Shah
(admitted *pro hac vice*)
1401 McKinney Suite 1900
Houston, TX 77010
Tel: (713) 752-4200
Fax: (713) 308-4110
cbabcock@jw.com
nhamilton@jw.com
jedwards@jw.com
jglover@jw.com
bpickett@jw.com

Jonathan D. Neerman
D.C. Bar No. 90003393
Carl C. Butzer
(admitted *pro hac vice*)
Minoo Sobhani Blaesche
(admitted *pro hac vice*)
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Tel: (214) 953-5664
Fax: (214) 661-6899
jneerman@jw.com
cbutzer@jw.com
mblaesche@jw.com

**BOYDEN GRAY PLLC**
R. Trent McCotter
D.C. BAR NO. 1011329
801 17th St NW, #350
Washington, DC 20006
(202) 706-5488
tmccotter@boydengray.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of March, 2024, concurrent with the electronic filing of this paper, OAN will serve a copy of this filing (including exhibits) via electronic mail and certified mail to counsel for Atlantic Council at the following addresses:

John Parker Sweeney

18

Bradley Arant Boult Cummings LLP
1615 L Street NW, Suite 1350
Washington, D.C. 20036
Tel.: (202) 393-7150
Fax: (202) 719-8316
jsweeney@bradley.com

Andrew Johnson
Bradley Arant Boult Cummings LLP
One Federal Place
1819 5th Avenue N
Birmingham, AL 35203
Tel.: (205) 521-8295
Fax: (205) 488-6295
ajohnson@bradley.com

*/s/ R. Trent McCotter*
R. Trent McCotter