UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SMARTMATIC USA CORP, *et al.*,<br><br>                    *Plaintiffs*,<br><br>   *v.*<br><br>HERRING NETWORKS, INC. d/b/a ONE AMERICA NEWS NETWORK,<br><br>                    *Defendant*,<br><br>   *v.*<br><br>ATLANTIC COUNCIL OF THE UNITED STATES, INC.,<br><br>           *Non-party Respondent*. | Case No. 1:21-cv-02900-CJN |
| SMARTMATIC USA CORP, *et al.*,<br><br>                    *Plaintiffs*,<br><br>   *v.*<br><br>HERRING NETWORKS, INC. d/b/a ONE AMERICA NEWS NETWORK,<br><br>                    *Defendant.* | Related to:<br>Case No. 1:24-mc-15-CJN |

**NON-PARTY THE ATLANTIC COUNCIL OF THE UNITED STATES, INC.'S
RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL COMPLIANCE
WITH RULE 45 SUBPOENA**

John Parker Sweeney
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street NW, Ste. 1350
Washington, D.C. 20036
(202) 393-7150
jsweeney@bradley.com

*Counsel for Non-party Respondent the
Atlantic Council*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

I.      INTRODUCTION ................................................................................... 1

II.     BACKGROUND ..................................................................................... 3

        A.      Despite its historically lofty mission, the Atlantic Council is a non-profit
                with constrained resources. ...................................................................... 3

        B.      The Atlantic Council has nothing to do with Smartmatic's lawsuit against
                OAN. .......................................................................................................... 6

        C.      OAN served the Atlantic Council with a sweepingly broad subpoena that
                is highly unlikely to yield any relevant or admissible evidence. ............. 6

        D.      The Atlantic Council conferred with OAN in good faith to address its
                concerns before OAN moved to compel. ................................................. 7

III.    LEGAL STANDARD .............................................................................. 8

IV.     ARGUMENT ......................................................................................... 11

        A.      OAN's Subpoena seeks documents and information that are irrelevant to
                Smartmatic's claims or OAN's defenses. ............................................... 11

        B.      OAN's Failure to Establish the Relevance of Each Individual Request Is
                Fatal to Its Motion. ................................................................................. 16

        C.      OAN's Subpoena Constitutes an Improper Fishing Expedition. .......... 17

        D.      Responding to OAN's Subpoena Would Unduly Burden the Atlantic
                Council and Outweigh Any Potentially Relevant Evidence. ................ 19

V.      CONCLUSION ..................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addamax Corp. v. Open Software Found., Inc.*,
148 F.R.D. 462 (D. Mass. 1993) ............................................................. 9

*Agility Pub. Warehousing Co. K.S.C. v. Dep't of Def.*,
110 F. Supp. 3d 215 (D.D.C. 2015) ......................................................... 19

*Am. Elec. Power Co. v. U.S.*,
191 F.R.D. 132 (D. Ohio Dec. 17, 1999) ................................................ 18

*Ameritox, Ltd. v. Millennium Labs, Inc.*,
No. 12-cv-7493, 2012 WL 6568226 (N.D. Ill. Dec. 14, 2012) ................. 8

*Andrades v. Holder*,
286 F.R.D. 64 (D.D.C. 2012) .................................................................. 20

*Burlington Northern & Santa Fe Ry. Co. v. Garcia*,
No. 98-cv-740, 2000 WL 36740225 (D. N.M. Jan. 31, 2000) .................. 8

*Buzzfeed, Inc. v. U.S. Dep't of Just.*,
318 F. Supp. 3d 347 (D.D.C. 2018) .................................................... 9, 11

*Byrd v. Reno*,
No. 96-cv-2375, 1998 WL 429676 (D.D.C. Feb. 12, 1998) ................... 16

*Concord Boat Corp. v. Brunswick Corp.*,
169 F.R.D. 44 (S.D.N.Y. 1996) .............................................................. 20

*Cusumano v. Microsoft Corp.*,
162 F.3d 708 (1st Cir. 1998) ..................................................................... 9

*Dart Industries Co., Inc. v. Westwood Chemical Co., Inc.*,
649 F.2d 646 (9th Cir. 1980) ..................................................................... 9

*Dell Inc. v. DeCosta*,
233 F. Supp. 3d 1 (D.D.C. 2017) ............................................................ 19

*Diamond Servs. Mgmt. Co. v. Knobbe, Martens, Olson & Bear, LLP*,
339 F.R.D. 334 (D.D.C. 2021) .................................................... 18, 19, 20

*Echostar Communications Corp. v. The News Corporation Ltd.*,
180 F.R.D. 391 (D. Colo. 1998) ............................................................. 11

*Exxon Shipping Co. v. U.S. Dept. of Interior*,
  34 F.3d 774 (9th Cir. 1994) ................................................................................................9

*Flatow v. The Islamic Republic of Iran*,
  202 F.R.D. 35 (D.D.C. 2001) ..............................................................................................19

*Food Lion v. United Food & Com. Workers Int'l Union, AFL-CIO-CLC*,
  103 F.3d 1007 (D.C. Cir. 1997) .................................................................................. *passim*

*Guy Chem. Co., Inc. v. Romaco AG*,
  243 F.R.D. 310 (N.D. Ind. 2007) ........................................................................................10

*Hall v. Johnson & Johnson*,
  Nos. 18-cv-1833, 21-cv-20040, 22-cv-658, 2022 WL 1284466 (D. N.J. Apr.
  29, 2022) ...............................................................................................................................8

*Haworth, Inc. v. Herman Miller, Inc.*,
  998 F.2d 975 (Fed. Cir. 1993) ..............................................................................................9

*Hume v. Consolidated Grain & Barge, Inc.*,
  No. 15-cv-935, 2016 WL 7385699 (E.D. La. Dec. 21, 2016) ...............................................8

*Lamaute v. Power*,
  339 F.R.D. 29 (D.D.C. 2021) .........................................................................................10, 16

*Laxalt v. McClatchy*,
  116 F.R.D. 455 (D. N.V. 1986) .............................................................................................8

*Linder v. Calero-Portocarrero*,
  180 F.R.D. 168 (D.D.C. 1998) ............................................................................................19

*Luppino v. Mercedes-Benz Fin. Servs. USA, LLC*,
  No. 13-cv-50212, 2013 WL 1844075 (E.D. Mich. Apr. 11, 2013) ........................................8

*Mowat Constr. Co. v. Dorena Hydro, LLC*,
  No. 6:14-cv-94, 2015 WL 13867691 (D. Or. May 18, 2015) ...............................................8

*In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*,
  659 F. Supp. 3d 54 (D.D.C. 2023) ......................................................................................20

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340 (1978) ..............................................................................................................2

*Parrott v. District of Columbia*,
  2024 WL 124748 (D.D.C. Jan. 11, 2024) .....................................................................10, 15

*Porter v. Pinkerton Gov't Servs., Inc.*,
  304 F.R.D. 24 (D.D.C. 2014) ...............................................................................................10

*Rendon Grp., Inc. v. Rigsby*,
 268 F.R.D. 124 (D.D.C. 2010)....................................................................................19

*Rexing Quality Eggs v. Rembrandt Enters, Inc.*,
 No. 17-cv-141, 2018 WL 11456638 (S.D. Ind. Aug. 24, 2018)..........................................8, 10

*Slate v. Am. Broad. Companies, Inc.*,
 274 F.R.D. 350 (D.D.C. 2011)....................................................................................16

*Smartmatic USA Corp. v. Newsmax Media, Inc.*,
 2023 WL 1525024 (Del. Super. Feb. 3, 2023)...........................................................................5

*Solarex Corp. v. Arco Solar, Inc.*,
 121 F.R.D. 163 (E.D.N.Y. 1988)..................................................................................18

*Tetratec Corp. v. E.I. DuPont De Nemours & Co., Inc.*,
 No. 90-1867, 1992 WL 202169 (E.D. Pa. Aug. 12, 1992).....................................................9

*U.S. v. Kellogg Brown & Root Servs., Inc.*,
 284 F.R.D. 22 (D.D.C. 2012)......................................................................................17

*U.S. v. Libby*,
 432 F. Supp. 2d 26 (D.D.C. 2006)...............................................................................17

*Watts v. S.E.C.*,
 482 F.3d 501 (D.C. Cir. 2007).................................................................................8, 10

*Webster v. Spencer*,
 No. 17-cv-1472, 2019 WL 13290770 (D.D.C. June 12, 2019)............................................16

*In re Wells Fargo Bank, N.A.*,
 No. 18-cv-2617, 2019 WL 2223934 (S.D. Cal. May 22, 2019)..............................................8

**Other Authorities**

Election Integrity Partnership, *The Long Fuse: Misinformation and the 2020
 Election* v (2021)....................................................................................................4, 5

FED. R. CIV. P. 45(d)(3)(A)..........................................................................................9

MELVIN SMALL, THE ATLANTIC COUNCIL—THE EARLY YEARS 20 (1998) ..............................1, 11

U.S. HOUSE OF REPRESENTATIVES, COMMITTEE ON THE JUDICIARY
 AND THE SELECT SUBCOMMITTEE ON THE WEAPONIZATION OF
 THE FEDERAL GOVERNMENT, THE WEAPONIZATION OF CISA:
 HOW A "CYBERSECURITY" AGENCY COLLUDED WITH BIG TECH
 AND "DISINFORMATION" PARTNERS TO CENSOR AMERICANS,
 (June 26, 2023)...................................................................................................14, 15

## I.     INTRODUCTION

Plaintiffs Smartmatic USA Corp., Smartmatic International Holding B.V., and SGO Corporation Limited (collectively, "Smartmatic") are large multi-national corporations that manufacture and implement electronic voting systems, among other systems. Defendant Herring Networks, Inc. d/b/a One America News Network ("OAN") is a media company that operates cable television networks along with ancillary platforms, such as social-media accounts. Smartmatic claims that OAN deliberately lied about the former's operations to undermine public trust in the 2020 election.[1]

The Atlantic Council of the United States, Inc. ("the Atlantic Council" or "the Council") is a non-partisan, non-profit organization with a narrow mission focused on international affairs, security, and economic prosperity through collaboration.[2] This mission is more critical now than ever considering the geopolitical landscape and ongoing global conflicts. Litigation completely undermines the Atlantic Council's values of constructive, global engagement and the Atlantic Council's history of selecting leadership "from the moderate internationalist wings of both [major political] parties."[3]

Even though the Atlantic Council has absolutely nothing to do with the underlying dispute, OAN served it with a non-party subpoena under Federal Rule of Civil Procedure 45 (the "Subpoena"). *See* **Ex. A**. That Subpoena requests 18 extraordinarily broad categories of documents from numerous persons, some of whom have only the slightest (if any) connection to the Atlantic Council. In an attempt to cooperate in good faith—and avoid litigation—the Atlantic Council

---

[1] The Atlantic Council takes no position whatsoever on the merits of the underlying litigation.

[2] https://www.atlanticcouncil.org/about/

[3] MELVIN SMALL, THE ATLANTIC COUNCIL—THE EARLY YEARS 20 (1998), *available at* https://www.nato.int/acad/fellow/96-98/small.pdf.

sought to reach an agreement with OAN. Unsatisfied and unwilling to agree to any reasonable terms, OAN instead moved to compel the production of documents that are irrelevant and will severely burden the Atlantic Council given its historic unfamiliarity with litigation.

The Court should deny OAN's motion for two reasons. *First*, OAN seeks documents and information that are irrelevant to any element of any claim *or* defense in this lawsuit. Indeed, OAN does not—and cannot—assert that the Atlantic Council has any first-hand knowledge of any fact relevant to the underlying case. Given this lack of connection to the current dispute, the Subpoena is highly unlikely to yield any probative evidence. That alone dooms the Subpoena because "when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n. 17 (1978). "Likewise, discovery should be denied when a party's aim is to … embarrass or harass the [entity] from [which it] seeks discovery." *See id*. Yet, that is exactly what OAN seeks to accomplish.

*Second*, complying with OAN's Subpoena would unduly burden the Atlantic Council's modest resources while actively undermining its critical mission. The Subpoena's 18 requests for production are facially overbroad, demanding an absurd amount of information from practically anyone affiliated with the Atlantic Council over the past five years—including any mention by anyone at the Atlantic Council of any media coverage of the 2020 election. Responding would require the Atlantic Council to devote substantial time and funding to coordination amongst staff, affiliates, and counsel—all at the expense of the Atlantic Council's public-interest oriented mission while conflict and war ravage parts of Europe and the Middle East. Complying with the Subpoena would also needlessly thrust the Atlantic Council into high-profile, politically charged litigation that would frustrate its ability to collaboratively engage with individuals and groups of all viewpoints— a core tenet of its mission. Even though any documents produced would be irrelevant to the actual

litigation, the Atlantic Council's reputation of neutrality would be further tainted by mere association with this case. This Court should not countenance such an undue burden on a third-party, especially a non-partisan, non-profit organization that has for over 60 years been driven by its mission: "shaping the global future together."

The Court should therefore deny OAN's motion to compel.

## II.   BACKGROUND

### A.   Despite its historically lofty mission, the Atlantic Council is a non-profit with constrained resources.

The United States, Canada, and several Western European nations signed the North Atlantic Treaty in April 1949.[4] That seminal treaty forms the legal basis of—and is ultimately implemented by—the North Atlantic Treaty Organization (NATO). Then, in 1954, a network of various organizations scattered throughout NATO-member countries formed the Atlantic Treaty Association to promote NATO's mission and values.[5]

In an effort to consolidate the various U.S. organizations and groups that supported NATO and the Atlantic Treaty Association, several distinguished Americans recommended forming the Atlantic Council in 1961.[6] Since its founding nearly 65 years ago, the Atlantic Council has formed 16 programs and centers that publish policy papers and engage in research and education

---

[4] https://www.nato.int/cps/en/natolive/official_texts_17120.htm

[5] https://www.nato.int/cps/en/natohq/topics_69053.htm

[6] https://www.atlanticcouncil.org/about/history/

initiatives.[7] All of its programming is "based on the conviction that a healthy transatlantic relationship is fundamental to progress in organizing a strong international system."[8]

One of the Atlantic Council's 16 centers is the Digital Forensic Research Lab (DFRLab). Started in 2016, DFRLab (i) researches "disinformation, online harms, foreign interference, platform policy and approaches," (ii) "set[s] research standards and train others around the world in techniques and practices[,]" and (iii) "collaborate[s] with the global community working to ensure the digital world is a rights-reinforcing and democratic one."[9] Spanning five continents, DFRLab's 30+ member team conducts those efforts around the globe.

Pertinent to the Subpoena, the DFRLab participated in the Election Integrity Partnership ("EIP"), which "aimed to create a model for whole-of-society collaboration and facilitate cooperation among partners dedicated to a free and fair election." Election Integrity Partnership, *The Long Fuse: Misinformation and the 2020 Election* v (2021) ("EIP Final Report"), available at https://stacks.stanford.edu/file/druid:tr171zs0069/EIP-Final-Report.pdf [https://perma.cc/UKH5-EB7E]. The EIP did not study alleged falsehoods about specific candidates, parties, or partisan political issues. *Id*. at 5. Nor did the EIP directly engage in fact-checking, but rather relied on third-party government officials and media sources. *See id*. at pp. 35, 119–22. The EIP's final report referred to Smartmatic three times in the body and three times in footnotes. *See id*. at 94–96, 137–38. That is unsurprising because Smartmatic, as a massive election software company, "has

---

[7] For example, the Scowcroft Center for Strategy and Security advocates for increased diplomacy efforts and intelligence funding. The Millennium Leadership Program encourages youth leadership and engagement in policy issues. And numerous other centers and programs focus on individual regions throughout the world. *See* https://www.atlanticcouncil.org/programs/

[8] *See id*.

[9] https://dfrlab.org/about/

processed more than 5 billion … votes worldwide" over 20 years. *See Smartmatic USA Corp. v. Newsmax Media, Inc.*, 2023 WL 1525024, *2 (Del. Super. Feb. 3, 2023) (quotation omitted). And the EIP's report referred to OAN five times (including in two footnotes). *See* EIP Final Report at 87, 92, 133–34, 191. Again, that is no surprise because OAN touts itself as a news network that reports on elections. Yet, nothing in the EIP's report links OAN to Smartmatic whatsoever.

It also bears emphasizing that the EIP was just one project and one small aspect of the DFRLab's global mission. And the DFRLab itself, while critical, is only one of the Atlantic Council's 16 centers. The Atlantic Council otherwise prides itself on its intellectual independence policy, which maintains strict intellectual independence for all of its projects and publications.[10]

But, despite the Atlantic Council's best efforts, it has recently been drawn into two lawsuits (including this one) that have absolutely nothing to do with its mission or its core activities. The first case is currently on appeal before the Court of Appeals for the Fifth Circuit, and no discovery has been conducted in that case. Such litigation diverts limited resources away from the Atlantic Council's core mission, leaving stakeholders and clients (i.e. transatlantic democracies) in the lurch. And litigation, especially of this politically charged nature, further isolates would-be allies

---

[10] The Atlantic Council's staff, fellows, and directors generate their own ideas and programming, consistent with the Council's mission, their related body of work, and the independent records of the participating team members. The Council as an organization does not adopt or advocate positions on particular matters. The Council's publications always represent the views of the author(s) rather than those of the institution.

The Atlantic Council maintains strict intellectual independence for all of its projects and publications. Council staff, fellows, and directors and those who the Council engages to work on specific projects, are responsible for generating and communicating intellectual content resulting from Council projects. The Council requires all donors to agree to the Council maintaining independent control of the content and conclusions of any products resulting from sponsored projects. The Council also discloses sources of financial support in its annual reports to ensure transparency. *See* https://www.atlanticcouncil.org/intellectual-independence-policy/

on all sides of the political spectrum who would otherwise engage toward global solutions with the Atlantic Council.

> **B.      The Atlantic Council has nothing to do with Smartmatic's lawsuit against OAN.**

As explained above, Smartmatic is comprised of large, multi-national corporations that manufacture and implement electronic voting systems. OAN is a media company that operates cable television networks along with ancillary platforms, such as social-media accounts.

Smartmatic brought claims against OAN for defamation and injurious falsehood. More specifically, Smartmatic says that OAN knowingly conveyed that Smartmatic conspired to steal the 2020 election by switching votes from then-President Donald Trump to current President Joe Biden. Smartmatic's complaint identifies numerous instances where OAN supposedly spread such claims on its television network and social-media accounts. Smartmatic then refers to numerous statements allegedly contradicting OAN's claims. *See* Doc. 1.

So what does a non-profit think tank like the Atlantic Council have to do with a defamation case involving two massive, sophisticated corporations? Absolutely nothing. The Atlantic Council is not a party to this litigation, nor does it (or anyone affiliated with it) appear anywhere in Smartmatic's 469-paragraph Complaint or in OAN's answer. *See id*; Doc. 34.

> **C.      OAN served the Atlantic Council with a sweepingly broad subpoena that is highly unlikely to yield any relevant or admissible evidence.**

On November 17, 2023 OAN served the Atlantic Council with a Subpoena pursuant to Federal Rule of Civil Procedure 45. That Subpoena included 18 requests for production. *See* **Ex. A**.

The Atlantic Council responded by objecting to each request pursuant to Rule 45(d)(2)(B). **Ex. B**. Principally, the Atlantic Council emphasized its non-profit, non-partisan nature and that it has no relationship with either OAN or Smartmatic nor any involvement with the underlying litigation. The Subpoena otherwise seeks information that is not relevant to any claim or defense

in the action and is therefore (i) beyond the scope of discovery allowed under Rule 26(b)(1) and (ii) not reasonably calculated to lead to the discovery of admissible evidence in the underlying case. *See id*. Adding to those core flaws, the subpoena is overly broad and the undue burden of responding would far outweigh any likely benefit. Thus, the subpoena amounts to unnecessary harassment of a non-profit organization just to conduct a political fishing expedition.

OAN did not serve the Atlantic Council with any written responses to these objections. While OAN informally made offers to narrow its requests, responding would still impose serious burdens on the Atlantic Council. Given its total lack of familiarity with litigation, the Atlantic Council cannot even begin to accurately quantify the burden of responding. It is, however, safe to say that responding would substantially disrupt many staff members from their normal duties and waste limited financial resources. And that does not even factor in attorney fees or the amount of time it would take to answer stakeholder concerns about the Atlantic Council's involvement in this politically charged litigation. In short, the Atlantic Council faces substantial financial and reputational difficulty if it is forced to respond.

> **D.    The Atlantic Council conferred with OAN in good faith to address its concerns before OAN moved to compel.**

Counsel for the Atlantic Council engaged in several meet and confer sessions with counsel for OAN. *See* **Ex. C** (Dec. of A. Johnson). Throughout the meet and confer process it was made clear that the Atlantic Council objected to and disputed the relevance of any material in its possession and the overall enforceability of the subpoena on this basis. *See* Doc. 194, **Ex. D** (email of Thursday, January 25, 2024 9:23 AM). Nevertheless, and despite the belief that the subpoena is not valid under Rule 45, the Atlantic Council attempted to resolve the dispute by offering to conduct limited searches into its Congressional production for straightforward terms such as the parties to this action. *Id*.

Throughout the meet and confer process it was also made clear that the Atlantic Council needed finality in any agreement on the subpoena, meaning that any agreed production would end the obligations under the subpoena. OAN's counsel, however, would only consider agreeing to this component of the meet and confer after a wholesale search by the Atlantic Council and not restricted to the Congressional subpoena response. *See* Doc. 194, **Ex. D** (email of Thursday, January 25, 2024 3:54 PM).

While counsel did discuss the burden of the production, that discussion focused on the fact that the Atlantic Council is a non-profit and is not sophisticated when it comes to litigation or document production. *See id*. (email of Thursday, January 25, 2024 9:23 AM). Burden was also discussed in the context of cost-shifting or sharing, which OAN's counsel declined. *Id*.

Moreover, and again, the Atlantic Council's primary objection and focus was the lack of relevance or connection to this case, all while seeking to find an agreeable compromise to avoid burdening the Court with this motion.

## III.   LEGAL STANDARD

"Federal Rule of Civil Procedure 45 authorizes court-issued subpoenas to obtain discovery from third parties," but that ability is limited. *Watts v. S.E.C.*, 482 F.3d 501, 503, 507 (D.C. Cir. 2007) (Kavanaugh, J.). It is "well established that nonparties to litigation enjoy greater protection from discovery than normal parties."[11] *Laxalt v. McClatchy*, 116 F.R.D. 455, 458 (D. N.V. 1986).

---

[11] Federal courts across the country have echoed this proposition for over 30 years. *See Hall v. Johnson & Johnson*, Nos. 18-cv-1833, 21-cv-20040, 22-cv-658, 2022 WL 1284466, *3 (D. N.J. Apr. 29, 2022); *In re Wells Fargo Bank, N.A.*, No. 18-cv-2617, 2019 WL 2223934, *3 (S.D. Cal. May 22, 2019); *Rexing Quality Eggs v. Rembrandt Enters, Inc.*, No. 17-cv-141, 2018 WL 11456638, *2 (S.D. Ind. Aug. 24, 2018); *Hume v. Consolidated Grain & Barge, Inc.,* No. 15-cv-935, 2016 WL 7385699, *3 (E.D. La. Dec. 21, 2016); *Mowat Constr. Co. v. Dorena Hydro, LLC*, No. 6:14-cv-94, 2015 WL 13867691, *2 (D. Or. May 18, 2015); *Luppino v. Mercedes-Benz Fin. Servs. USA, LLC*, No. 13-cv-50212, 2013 WL 1844075, *8 (E.D. Mich. Apr. 11, 2013); *Ameritox, Ltd. v. Millennium Labs, Inc.*, No. 12-cv-7493, 2012 WL 6568226, *3 (N.D. Ill. Dec. 14, 2012); *Burlington Northern & Santa Fe Ry. Co. v. Garcia*, No. 98-cv-740, 2000 WL 36740225, *2 (D.

Indeed, courts have historically recognized that third parties receive "special protection against the time and expense of complying with subpoenas" and that "quite strong considerations indicat[e] that discovery would be more limited to protect third parties from harassment, inconvenience, or disclosure of confidential documents." *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d 774, 780 (9th Cir. 1994); *Dart Industries Co., Inc. v. Westwood Chemical Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980) (quotation omitted). As such, courts "properly require [parties] to seek discovery from [their] party opponent[s] before burdening [a] nonparty … with [any] ancillary proceeding." *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993). And, even when third parties do become involved in some ancillary discovery dispute, "concern for the unwanted burden thrust upon [them] is a factor entitled to special weight in evaluating the balance of competing needs." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998).

With those general principles in mind, courts undertake two separate inquires when evaluating a motion to compel discovery from a third party under Rule 45. *First*, while conducting the threshold *relevance inquiry*, courts "must consider whether the discovery sought is relevant to a party's claim or defense in the underlying litigation, as defined in Rule 26(b)(1)." *Buzzfeed, Inc. v. U.S. Dep't of Just.*, 318 F. Supp. 3d 347, 356 (D.D.C. 2018). *Second*, during the *undue burden assessment*, courts must determine whether the relevant subpoena subjects a third-party "to undue burden" or "requires disclosure of privileged or other protected matter[.]" *See id.*; FED. R. CIV. P. 45(d)(3)(A).

Starting with the relevance inquiry, parties moving to compel discovery from non-parties must "demonstrate a … nexus between third- and fourth-party documents and the elements

---

N.M. Jan. 31, 2000); *Addamax Corp. v. Open Software Found., Inc.*, 148 F.R.D. 462, 468 (D. Mass. 1993); *Tetratec Corp. v. E.I. DuPont De Nemours & Co., Inc.*, No. 90-1867, 1992 WL 202169 *1 (E.D. Pa. Aug. 12, 1992).

necessary to the underlying cause of action ….” or defense. *Food Lion v. United Food & Com. Workers Int’l Union, AFL-CIO-CLC*, 103 F.3d 1007, 1014 (D.C. Cir. 1997). Courts must consider the relevance … of each discovery request in turn[.]” *Lamaute v. Power*, 339 F.R.D. 29, 35 (D.D.C. 2021). And, in terms of burdens, the movant “bears the burden of showing that the requested information is relevant. *Parrott v. District of Columbia*, 2024 WL 124748, *6 (D.D.C. Jan. 11, 2024). That required “showing of relevance must [also] be commensurate with th[e] breadth” of the movant’s requests. *See id*.; *see also Rexing Quality Eggs v. Rembrandt Enters, Inc.*, No. 17-cv-141, 2018 WL 11456638, *2 (S.D. Ind. Aug. 24, 2018) (recognizing that a “serving party has the burden of establishing the appropriateness of a subpoena duces tecum served on a nonparty”). Only after the movant establishes relevance does “the burden shift[ ] to the party opposing discovery to show why the discovery should not be *permitted*.” *Lamaute*, 339 F.R.D. at 35. So, at bottom, “the relevance standard of Rule 26 is not without bite.” *Food Lion*, 103 F.3d at 1012.

Turning to the undue burden assessment, “[e]ven if the information [sought] is relevant, … subpoenas must still be quashed or modified if they are unduly burdensome….” *Porter v. Pinkerton Gov’t Servs., Inc.*, 304 F.R.D. 24, 29 (D.D.C. 2014). And two rules guide the undue burden assessment. *First*, “[t]he Rule 45 ‘undue burden’ standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties.” *Watts*, 482 F.3d at 509. Indeed, “[n]on-party status is a *significant factor* to be considered in determining whether the burden imposed by a subpoena is undue.” *Guy Chem. Co., Inc. v. Romaco AG*, 243 F.R.D. 310, 313 (N.D. Ind. 2007) (emphasis added). *Second*, Rule 26(b) demands that courts “consider a number of factors potentially relevant to the question of undue burden,” *id*., including:

  i.  whether the discovery sought is “unreasonably cumulative or duplicative”;

  ii. whether the discovery sought “can be obtained from some other source that is more convenient, less burdensome, or less expensive”; and

> iii. whether the discovery sought is "proportional to the needs of the case," taking into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit[.]"

*Buzzfeed*, 318 F. Supp. 3d at 358 (quoting FED. R. CIV. P. 26(b)(1), (2)(C)).

## IV.   ARGUMENT

### A.   OAN's Subpoena seeks documents and information that are irrelevant to Smartmatic's claims or OAN's defenses.

"Under the circumstances presented by this case, [OAN] must meet a burden of proof heavier than the ordinary burden imposed under Rule 26." *See Echostar Communications Corp. v. The News Corporation Ltd.*, 180 F.R.D. 391, 394 (D. Colo. 1998). That is because "the status of a[n] … entity as a non-party is a factor which weighs against disclosure" under Rule 26. *Id.* (citing *Am. Std. Inc. v. Pfizer, Inc.*, 828 F.2d 734, 738 (Fed. Cir. 1987)).

Smartmatic's Complaint does not mention the Atlantic Council in any way. Doc. 1. That, of course, makes sense because the Atlantic Council has *nothing* to do with Smartmatic or any of its operations. Nor does the Atlantic Council have any connection to OAN. And Smartmatic's Complaint also eschews any reference to Atlantic Council's DFRLab or its participation in the EIP. Likewise, OAN's Answer does not reference the Atlantic Council or the DFRLab. Doc. 34.

Recall, the Atlantic Council has a non-partisan interest in free and fair elections to further transatlantic peace around the globe. But it has no stake in which candidates or parties govern. Of course, hundreds of Atlantic Council employees, volunteers, and others associated with the organization have personal views and preferences—but those views and preferences are not reflective of the Atlantic Council's official positions as is made clear by its Intellectual Independence Policy. To the contrary, the Atlantic Council's "calculated bipartisanship" has historically mean that its "leadership c[omes] from both [major political] parties. *See* SMALL,

*supra* n. 3 at 20–21. And, more pertinent to the underlying claims, there is no basis for believing that the Atlantic Council affected OAN's reporting on Smartmatic. As such, no document or communication that OAN seeks from the Atlantic Council could possibly make any element of Smartmatic's claims or OAN's defenses any more or less likely. *See Food Lion*, 103 F.3d at 1013–14.

Nonetheless, OAN insists that the 18 requests within its Subpoena "go[ ] directly to the substantial truth of OAN's statements complained of by Smartmatic." Mot. to Compel at 4. Elsewhere, OAN maintains that its requests "bear on the substantial truth of the statements complained of in Smartmatic's complaint, Smartmatic's damages claims, and OAN's defenses." *Id*. at 8. Rather than addressing each of its 18 requests individually, however, OAN boils them down into 6 categories of information that its "substantial-truth defense requires inquiry into." *Id*. at 10–11.

The first information category that OAN identifies is "the criteria that Atlantic Council and its EIP co-members employed in designating certain election reporting as misinformation." *Id*. at 11. At the outset, whatever any Atlantic Council personnel believed, based on other public reporting about the truth or falsity of OAN's reporting on the 2020 election is simply irrelevant to whether that reporting was actually true or false or what OAN chose to publish. As for the EIP, the Atlantic Council does not purport to speak for a multi-member group. The EIP issued a nearly 300-page public final report that explained its activities in detail. *See* https://perma.cc/UKH5-EB7E. But, even if the request were relevant, the Atlantic Council has never sought, or been able, to censor anyone or remove information from any social media platform—such decisions are purely in the hands of each social media platform. And the Atlantic Council has no first-hand knowledge about the veracity of OAN's reporting on Smartmatic's voting-machine software. The

same goes for the DFRLab and the EIP, which also only had access to the same public information that everyone else (including OAN) did. OAN presumably knows (or could easily check) if its own posts were censored in some way or labeled as "misinformation." And OAN could also request such information from social-media platforms that are solely responsible for removing posts, blocking users, or otherwise enforcing their individual content policies.

The second category seeks "communications the Atlantic Council and the EIP had with Smartmatic in relation to censorship directed at election reporting[.]" Mot. to Compel at 11. Again, this request is irrelevant because it has nothing to do with whether OAN's reporting on the 2020 election was true or false. An example is instructive. Suppose the Atlantic Council sent Smartmatic an e-mail inviting its employees to an event discussing the importance of truth in democratic elections throughout the 20th Century. That hypothetical e-mail, which would be directly responsive to the broad subpoena, would not make any element of Smartmatic's claims or OAN's defenses any more or less likely. *See Food Lion*, 103 F.3d at 1013–14. This is the same for any other hypothetically responsive documents that would be similarly irrelevant.

Third, OAN seeks to investigate "the extent to which Atlantic Council ignored countervailing evidence, inappropriately relied on self-interested third parties (e.g., voting machine companies), or failed to even fact-check OAN's reporting or similar reporting before labeling it as 'disinformation[.]'" Mot. to Compel at 11. Each of those topics concern the Atlantic Council' *opinions* about OAN's reporting and the basis for those opinions—not whether OAN's reporting was actually true or false. Even assuming that the Atlantic Council somehow incorrectly classified OAN's reporting as "disinformation" and "ignored countervailing evidence, inappropriately relied on self-interested third parties …, or failed to even perform a fact-check OAN's reporting," those facts would not make any element of Smartmatic's claims or OAN's

defenses any more or less likely. *See Food Lion*, 103 F.3d at 1013–14. Most Americans have beliefs regarding the veracity of 2020 election news coverage. And the Atlantic Council's views concerning OAN's reporting (to the extent it even has any) are no more probative than anyone else's.

Fourth, OAN aims to uncover "the extent to which Atlantic Council targeted media organizations like OAN and similar reporting[.]" Mot. to Compel at 11. Whether the Atlantic Council "targeted" any media organizations—which it certainly did not—makes no difference whatsoever in the underlying litigation. This case is about whether OAN's reporting was true or false as it related to Smartmatic's role in the 2020 election. How Smartmatic became aware of any specific reporting and who made them aware are legally irrelevant details. Any truth-based defense that OAN may have also has nothing to do with the Atlantic Council's conduct. Either OAN's reporting was truthful or it was not. The Atlantic Council has no role in that inquiry. The fourth category of information would have no possible bearing on the claim or defense.

Fifth, OAN requests "documents Atlantic Council produced in connection with related legal proceedings or records requests[.]" Mot. to Compel at 11. How exactly do random documents that the Atlantic Council may have produced to other third parties relate to OAN's reporting on Smartmatic during the 2020 election? Well, they don't. The Atlantic Council produced documents to the House Committee on the Judiciary pursuant to a subpoena. But that Congressional subpoena did not focus in any way on OAN or Smartmatic. That subpoena focused on the Committee's oversight of the federal government activity regarding First Amendment protected speech.[12] The

---

[12] U.S. HOUSE OF REPRESENTATIVES, COMMITTEE ON THE JUDICIARY AND THE SELECT SUBCOMMITTEE ON THE WEAPONIZATION OF THE FEDERAL GOVERNMENT, THE WEAPONIZATION OF CISA: HOW A "CYBERSECURITY" AGENCY COLLUDED WITH BIG TECH AND "DISINFORMATION" PARTNERS TO

Committee's report makes clear that: "[t]his interim report focuses primarily on the censorship efforts of the Cybersecurity and Infrastructure Security Agency (CISA), a component of the Department of Homeland Security (DHS)…"[13] Documents produced for that limited purpose would be irrelevant to the underlying litigation. Indeed, OAN makes no attempt to explain why or how the entirety of that production is relevant or proportionate to the needs of this case. And, notably, the Atlantic Council has not produced any documents in the case it is actually a party to as that case is on appeal to the Fifth Circuit.

Sixth, OAN inquires into "the successfulness of Atlantic Council and the EIP's efforts to censor content they deemed 'misinformation[.]'" Mot. to Compel at 11. This inquiry harkens back to the first. Whether the Atlantic Council was "successful"—whatever that means—in censoring any content—which it never had the power or will to do—makes no difference. This case is about OAN's reporting on Smartmatic during the 2020 election. It is not about any third party's alleged efforts to correct or censor "misinformation" writ large. This broad, vague category of information again fails the basic relevance test. *See Food Lion*, 103 F.3d at 1013–14.

Based on the foregoing, OAN has failed to demonstrate the relevancy of its requests— much less that any relevance is commensurate with the breadth of its requests—which it bears the burden to do. *See Parrott*, 2024 WL 124748 at *6.

---

CENSOR AMERICANS, (June 26, 2023), *available at* https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/cisa-staff-report6-26-23.pdf

[13] *Id*. at 5.

**B.      OAN's Failure to Establish the Relevance of Each Individual Request Is Fatal to Its Motion.**

Even if the Atlantic Council possessed any relevant documents, the Court should still deny OAN's motion to compel because it does not establish the relevance of each individual document request.

Courts in this district "address[] the relevance of each category of document requests separately." *Slate v. Am. Broad. Companies, Inc.*, 274 F.R.D. 350, 352 (D.D.C. 2011); *see also Lamaute*, 339 F.R.D. at 35; *Byrd v. Reno*, No. 96-cv-2375, 1998 WL 429676, *10 (D.D.C. Feb. 12, 1998).

The Atlantic Council is prejudiced by OAN's failure to specify the relevance of each document request. Just consider the sixth request for "All Documents and Communications concerning OAN its guests, its episodes, or its owners, officers, on-air personalities or other employees." *See* **Ex. A**. Presumably, OAN has produced thousands of episodes and even more documents that feature hundreds of guests and on-air personalities. And OAN surely has a large number of employees as well. So, even assuming such documents exist, how could an Atlantic Council employee's email relating to one of OAN's numerous guests or employees be relevant to this litigation? The Atlantic Council is left to wonder. Next, consider OAN's ninth request, which seeks "All Documents and Communications relating to Other Media Organizations coverage of Smartmatic, Dominion, and/or the 2020 Election." *See id*. Again, how is determining whether an Atlantic Council employee sent an e-mail involving the 2020 election likely to lead to admissible evidence in this case? The Atlantic Council does not believe that it could. This absence of requisite specificity as to even a single request—and the Atlantic Council's inability to respond to any relevance argument that is targeted to any actual request—is alone reason to deny the Subpoena on the basis that OAN failed to carry its burden to establish relevance.

### C.    OAN's Subpoena Constitutes an Improper Fishing Expedition.

When applying Rule 26, "courts must prevent fishing expeditions, discovery abuse and inordinate expense by tailor[ing] discovery to the issues involved in the particular case." *Webster v. Spencer*, No. 17-cv-1472, 2019 WL 13290770, *1 (D.D.C. June 12, 2019) (internal quotation marks omitted) (citing *Hardrick v. Legal Servs. Corp.*, 96 F.R.D. 617, 618 (D.D.C. 1983)). In particular, "overbroad and far-ranging discovery requests" constitute the type of "fishing expeditions [and] discovery abuse" that federal courts may not countenance. *U.S. v. Kellogg Brown & Root Servs., Inc.,* 284 F.R.D. 22, 37 (D.D.C. 2012) (internal quotation marks omitted); *U.S. v. Libby*, 432 F. Supp. 2d 26, 39 (D.D.C. 2006) (a subpoena must "reasonably specify the information contained or believed to be contained in the documents sought," to prevent "improper fishing expedition[s]" where "the defendant appears to merely hope[] that something useful will turn up" (internal quotation marks omitted)).

The Subpoena is an improper fishing expedition. That is why OAN does not even describe—much less attempt to individually explain the relevance or proportionality of—a single one of the 18 individual requests, and instead apportions them into six broad categories of information.

To begin, the Subpoena defines "'You' 'Your' 'Yours' and/or 'Atlantic Council,'" to include "all parents, subsidiaries, affiliates, successors and predecessors, officers, directors, partners, members, principals, employees, shareholders, agents, representatives, and/or any other Persons acting, or purporting to act, on behalf of Atlantic Council." **Ex. A** at 5. In 2021, the Atlantic Council employed 314 individuals, relied on approximately 200 volunteers, and was governed by a 35-member board.[14] So, in effect, each request is directed towards over 500 individuals.

---

[14] https://apps.irs.gov/pub/epostcard/cor/520742294_202112_990_2023031321093817.pdf

The Subpoena then broadly seeks "[a]ll Documents and Communications concerning OAN its guests, its episodes, or its owners, officers, on-air personalities or other employees." One 2021 estimate suggested that OAN had approximately 150 employees.[15] OAN also has at least eight different shows,[16] each of which feature various hosts and guests on a regular basis. That means there are hundreds to thousands of individuals that have been involved with OAN in some manner as contemplated by the Subpoena. It is unclear how the Atlantic Council would even begin to define that universe of individuals without diverting significant time and funds from its other programming.

So, at bottom, OAN seeks to compel a non-profit with limited resources to comb through communications between numerous individuals over several years to find a (non-existent) needle in that haystack capable of mitigating Smartmatic's claims. That is a bridge too far and beyond what is required by the federal rules.

This Court has an obligation to prevent the abuse of the discovery process by preventing precisely the sort of fishing expedition that OAN is engaged in here, and it should do so by denying the motion to compel and quashing OAN's Subpoena in its entirety. *See Diamond Servs. Mgmt. Co. v. Knobbe, Martens, Olson & Bear, LLP*, 339 F.R.D. 334, 339-40 (D.D.C. 2021) (quashing subpoena against non-party because "[d]iscovery [] is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support").

---

[15] https://web.archive.org/web/20210418090435/https://www.nytimes.com/2021/04/18/business/media/oan-one-america-trump.html

[16] https://www.oann.com/category/shows/

**D.      Responding to OAN's Subpoena Would Unduly Burden the Atlantic Council and Outweigh Any Potentially Relevant Evidence.**

When assessing whether a subpoena imposes an undue burden upon its recipient, as with the relevancy inquiry, "the status of a person as a non-party is a factor that weighs against disclosure" *Am. Elec. Power Co. v. U.S.*, 191 F.R.D. 132, 136 (D. Ohio Dec. 17, 1999). But non-party status is not just any factor. Rather, it "is *significant* in determining whether compliance [with a discovery demand] would constitute an undue burden." *Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988) (emphasis added, quotation omitted, and alteration in original).

Courts in this District otherwise do not hesitate to quash or modify non-party subpoenas and deny motions to compel on grounds of undue burden where a subpoena sweeps in far more irrelevant documents than relevant ones. *See, e.g., Rendon Grp., Inc. v. Rigsby*, 268 F.R.D. 124, 129 (D.D.C. 2010) ("The list of documents sought in the subpoena would not only result in the production of documents relevant to [the defense], but thousands of documents completely unrelated to it."); *Agility Pub. Warehousing Co. K.S.C. v. Dep't of Def.*, 110 F. Supp. 3d 215, 222 (D.D.C. 2015) (where relevance of documents requested was "slim," relevance "c[ould] not outweigh the other [factors] stacked against it"); *Linder v. Calero-Portocarrero*, 180 F.R.D. 168, 174-75 (D.D.C. 1998) (where "records responsive to plaintiffs' . . . search would only be marginally relevant," relevance could not overcome burdensome "time and expense required"); *Flatow v. The Islamic Republic of Iran*, 202 F.R.D. 35, 38 (D.D.C. 2001) (protective order was merited where information requested was of "relatively little use" and "production of it would entail extensive labor"); *see also Linder*, 180 F.R.D. at 175 ("volume of material requested" is an important factor in assessing "[w]hether compliance with a requested search would be unduly

burdensome depends") (citing *Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 404 (D.C. Cir. 1984)); *Diamond Servs. Mgmt. Co.*, 339 F.R.D. at 339–40.

As described above, the Subpoena sweeps in vast amounts of totally irrelevant documents. That alone is reason enough to quash it. *See, e.g., Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3–4 (D.D.C. 2017) (document requests are "overbroad and unduly burdensome" when they "could reasonably be expected" to cover thousands of documents spanning years); *Rendon Grp. Inc.*, 268 F.R.D. at 129.

Apart from the irrelevancy however, complying with the Subpoena would be extremely burdensome, in terms of time, resources, and reputation. Atlantic Council staff are unfamiliar with litigation and therefore cannot even begin to estimate the amount of resources necessary to respond to this Subpoena.. At the risk of beating a dead horse, the Atlantic Council has no litigation budget and would need to divert funds from other core programs to fund this fishing expedition. All the while, Atlantic Council stakeholders will be left with the impression that is somehow involved in this polarizing litigation. This is why the Atlantic Council studiously avoided litigation for over 60 years.

Even if the Court concluded that some unspecified subset of OAN's 18 requests sought the production of some minimally relevant material (and it should not), in a case involving such enormous overbreadth and burden, the Court should quash the Subpoena rather than attempt to reform it itself. *See, e.g., In re Non-Party Subpoena to Ctr. for Study of Soc. Pol'y*, 659 F. Supp. 3d 54, 60-61 (D.D.C. 2023) ("Although Rule 45 empowers a district court to modify a subpoena, this Court declines to do so" where it was unclear which of the "voluminous documents . . . might assist" the party's claim); *Diamond Servs. Mgmt.*, 339 F.R.D. at 339–40; *Andrades v. Holder*, 286 F.R.D. 64, 66 (D.D.C. 2012) (quashing subpoenas where requests were "excessively broad"

and "not narrowly tailored [to the] claim"); *see also Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 53-54 (S.D.N.Y. 1996) ("Although Rule 45 empowers a district court to 'modify' a subpoena, this Court declines to do so . . . virtually half of the twenty-two requests for documents in the Brunswick Subpoena are vague, inexplicit, and overbroad." (internal citations omitted)). If, however, the Court believes that any production is warranted (and it is not), at most the Court should order the Atlantic Council to search the documents it has already collected and produced to the House Judiciary Committee for the words OAN and Smartmatic (and variations).

## V.    CONCLUSION

For the reasons stated above, along with those outlined in the Atlantic Council's initial objections to OAN's Subpoena, the Court should deny OAN's motion to compel.

Respectfully submitted, April 1, 2024.

*/s/ John Parker Sweeney*
John Parker Sweeney
BRADLEY ARANT
BOULT CUMMINGS LLP
1615 L Street NW
Suite 1350
Washington, D.C. 20036
(202) 393-7150
jsweeney@bradley.com


*Counsel for Non-Party Respondent
the Atlantic Council*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was served on all

counsel of record on the 1st day of April 2024 pursuant to the Federal Rules of Civil Procedure.

econnolly@beneschlaw.com
nwrigley@beneschlaw.com
mbloom@beneschlaw.com
lmuench@beneschlaw.com
edillingham@beneschlaw.com
ltortorella@beneschlaw.com
kwatsonmoss@beneschlaw.com
jbedell@beneschlaw.com
jloftus@beneschlaw.com

*Counsel for Plaintiff*


cbabcock@jw.com
nhamilton@jw.com
Jedwards@jw.com
jglover@jw.com
bpickett@jw.com
jneerman@jw.com
cbutzer@jw.com
mblaesche@jw.com
mccotter@boydengrayassociates.com

*Counsel for Defendant*


*/s/ John Parker Sweeney*
John Parker Sweeney